JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
NATALIE LYONS (SBN 293026)
nlyons@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Tel.: (510) 271-8443
Fax: (510) 868-4521

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL
(*Pro Hac Vice*)
tmerrill@law.harvard.edu
JOSHUA D. ROVENGER
(*Pro Hac Vice*)
jrovenger@law.harvard.edu
KYRA A. TAYLOR
(*Pro Hac Vice*)
ktaylor@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, TRESA APODACA, ALICIA DAVIS, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education,<br><br>And<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>   *Defendants*. | Case No.: 19-cv-03674-WHA<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY**<br><br>**Judge:** William H. Alsup<br><br>**Date Filed:** July 23, 2019 |

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**

**NOTICE OF MOTION AND REQUESTED RELIEF**...................................................1

**MEMORANDUM OF POINTS AND AUTHORITIES**...............................................2

    **I.**    **INTRODUCTION**.........................................................................................2

    **II.**    **BACKGROUND** ..........................................................................................3

        **A.** Statutory and Regulatory Framework ......................................................3

        **B.** Factual Background ..............................................................................6

                1.   Students assert their right to borrower defense and the Department grants 31,000 applications before January 20, 2017..................................................................................................6

                2.   The Department hits the brakes and refuses to decide borrower defenses.......................................................................................9

                3.   The Department's inaction is causing Students ongoing harm…14

        **C.** Procedural History .................................................................................17

    **III.**    **THE COURT SHOULD CERTIFY THE STUDENT CLASS**

        **A.** Students satisfy Rule 23(a). ......................................................................18

                1.   The proposed class consists of more than 158,000 Students.......18

                2.   All Plaintiffs' claims turn on whether the Department has a mandatory duty to adjudicate borrower defenses and whether its inaction violates that duty..................................19

                3.   The claims and defenses of the named representatives are identical to those of other Students.  .....................................20

                4.   Class representatives and class counsel have no conflicts of interests and will vigorously prosecute the action on behalf of the class............................................................................21

        **B.** Students satisfy Rule 23(b) ......................................................................22

        **C.** Students present similar claims to other classes that this Court has certified .............................................................................................23

    **IV.**    **ALTERNATIVELY, THE COURT SHOULD STAY A DECISION ON THIS MOTION PENDING CLASS DISCOVERY** ..............................25

    **V.**    **CONCLUSION**...........................................................................................25

MOTION FOR CLASS CERTIFICATION        Case No: 19-cv-03674-WHA

# TABLE OF AUTHORITIES

**Cases**

*Am. Council of the Blind v. Astrue,*

No. C 05-04696 WHA, 2008 WL 4279674 (N.D. Cal. Sept. 11, 2008) ......................... 24

*B.K. by next friend Tinsley v. Snyder,*

922 F.3d 957 (9th Cir. 2019) ...................................................................................... 20

*Bauer v. DeVos,*

Memorandum and Opinion Order, Doc. No. 87 (D.D.C. Sept. 12, 2018). ..................... 8

*Calvillo Manriquez v. DeVos,*

345 F. Supp. 3d 1077 (N.D. Cal. 2018) ................................................................... 5, 12

*Calvillo Manriquez v. DeVos,*

No. 17-cv-07210-SK, ECF No. 96 (N.D. Cal. Oct. 15, 2018) ......................................... 12

*Castro v. ABM Industries, Inc.,*

325 F.R.D. 332 (N.D. Cal. 2018) ............................................................................... 21

*Dalton v. Lee Publi'ns. Inc.,*

270 F.R.D. 555 (S.D. Cal. 2010) ............................................................................... 21

*Hart v. Colvin,*

310 F.R.D. 427 (N.D. Cal. 2015) ............................................................................... 23

*I.N. by & through Zarinah F. v. Kent,*

No. C 18-03099 WHA, 2019 WL 1516785 (N.D. Cal. Apr. 7, 2019) ............................. 23

*Jiahao Kuang v. United States Dep't of Def.,*

340 F. Supp. 3d 873 (N.D. Cal. 2018) ................................................................... 23, 24

*Manolete v. Bolger,*

767 F.2d 1416 (9th Cir. 1985). .................................................................................. 25

*Manriquez v. DeVos,*

No. 18-16375 (9th Cir., *filed* July 24, 2018) ............................................................ 12

*Parsons v. Ryan,*

754 F.3d 657 (9th Cir. 2014) .................................................................................... 19

*Viet. Veterans of Am. v. C.I.A.,*

MOTION FOR CLASS CERTIFICATION          Case No: 19-cv-03674-WHA

288 F.R.D. 192 (N.D. Cal. 2012) ............................................................ 24

*Vinole v. Countrywide Home Loans, Inc.*,

    571 F.3d 935 (9th Cir. 2009) ............................................................ 25

*White v. E-Loan, Inc.*,

    No. C 05-02080 SI, 2006 WL 2411420 (N.D. Cal. Aug. 18, 2006) ................................ 18

**Statutes**

5 U.S.C. § 706 ............................................................................ 17, 18

11 U.S.C. § 523 ............................................................................ 7

15 U.S.C. § 1681s-2 ........................................................................ 5

20 U.S.C. § 1070 .......................................................................... 3

20 U.S.C. § 1071 .......................................................................... 3

20 U.S.C. § 1078 .......................................................................... 3

20 U.S.C. § 1087a ......................................................................... 3

20 US.C. § 1087e .......................................................................... 4

31 U.S.C. § 3711 .......................................................................... 5

**Regulations**

34 C.F.R. § 30.33 ......................................................................... 5

34 C.F.R. § 682.209 ....................................................................... 4

34 C.F.R. § 685.206 ....................................................................... 4, 5

34 C.F.R. § 685.222 ....................................................................... 4, 5

81 Fed. Reg. 66642 (Sept. 28, 2016) ....................................................... 8

81 Fed. Reg. 75926 (Nov. 1, 2016) ......................................................... 8

82 Fed. Reg. 27621 (June 16, 2017) ........................................................ 8

82 Fed. Reg. 49155 (Oct. 24, 2017) ........................................................ 8

83 Fed. Reg. 6458 (Feb. 14, 2018) ......................................................... 8

**Rules**

Fed. R. Civ. P. 23 ........................................................................ *passim*

**Other Authorities**

MOTION FOR CLASS CERTIFICATION        Case No: 19-cv-03674-WHA

*Newberg on Class Actions* § 3:16 (5th ed. 2019) ................................................................. 19

U.S. Dep't of Educ., *List of Heald and Everest/WyoTech Programs Covered by Department Findings* ................................................................................................................. 12

Staff of S. Health, Education, Labor, and Pensions Comm., 112th Cong., *For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success* ...... 6

Tariq Habash and Robert Shireman, *How College Enrollment Contracts Limit Students' Rights*, The Century Foundation (April 27, 2016) ...................................................................... 7

Test. of James Manning, Transcript of U.S. Dept. of Educ. Borrower Defense and Financial Rulemaking Committee (Nov. 14, 2017) .......................................................... 9, 14

U.S. Dep't of Educ., *American Career Institute Borrowers to Receive Automatic Group Relief for Federal Student Loans* (Jan. 13, 2017) .......................................................... 8

U.S. Dep't of Educ., *Closed School Database* ................................................................. 7

U.S. Dep't of Educ., *Fact Sheet: Protecting Students from Abusive Career Colleges* (June 8, 2015) ........................................................................................................................... 7

U.S. Dep't of Educ., *Student Aid Enforcement Unit Formed to Protect Students, Borrowers, Taxpayers* (Feb. 8, 2016) .................................................................................... 8

U.S. Dep't of Educ., *U.S. Department of Education Fines Corinthian Colleges $30 million for Misrepresentation* (April 14, 2015) ................................................................. 7

U.S. Dept. of Educ., *Improved Borrower Defense Discharge Process Will Aid Defrauded Borrowers, Protect Taxpayers* (Dec. 20, 2017) .......................................................... 12

U.S. Dep't of Educ., *Education Department Appoints Special Master to Inform Debt Relief Process* (June 25, 2015) ...................................................................................... 8

U.S. Dep't of the Treasury, Bureau of the Fiscal Service, Agreement to Certify Federal Nontax Debts ................................................................................................................... 5

Video of Undersecretary Diane Auer Jones at the Bipartisan Policy Center (April 23, 2019) .... 13

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT before the Honorable William H. Alsup, Plaintiffs will, and hereby do move the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order certifying a class and subclass. In the alternative, Plaintiffs seek limited discovery in support of class certification. Plaintiffs' motion is based on this submission, the accompanying declarations and exhibits, and the other pleadings and documents on file in this case.

## RELIEF REQUESTED (CIVIL L.R. 7-2(B)(3))

Plaintiffs request that this Court issue an order pursuant to Fed. R. Civ. P. 23 certifying a class of:

> All people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*, No. 17-7106 (N.D. Cal.).

Plaintiffs also request that the Court certify a subclass under Rule 23(c)(5) of:

> All people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to the U.S. Department of Education, who meet the *prima facie* criteria for a loan discharge (as established in Department policies, including but not limited to Department memoranda on "CCI Transferability of Credit" claims, "CCI Guaranteed Employment Claims," and "ITT Guaranteed Employment claims"), and who have not received notice of their borrower defense decision.

Plaintiffs further request that the Court appoint Theresa Sweet, Chenelle Archibald, Daniel Deegan, Samuel Hood, Tresa Apodaca, Alicia Davis, and Jessica Jacobson as class representatives, and that it appoint the undersigned as class counsel.

In the alternative, Plaintiffs ask the Court to hold this motion in abeyance and permit limited discovery in support of the motion for class certification.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The proposed class includes more than 158,000 students (Students) who borrowed federal student loans to attend school, mainly for-profit career training programs. Over the past four years, Students, pursuant to the Higher Education Act (HEA), U.S. Department of Education (Department) regulations, and their loan contracts, have asserted to the Department that their loans should be cancelled because of their school's misconduct (borrower defense). But, the Department refuses to grant or deny their applications. To escape this limbo, the Students all seek the same thing: an order compelling the Department to start granting or denying their borrower defense assertions. The Court should allow them to pursue this relief collectively.

The central questions in this case—whether the Department has a mandatory duty to decide borrower defenses and whether its blanket refusal to do so is *per se* unlawful under the Administrative Procedure Act (APA)—should be resolved on a class-wide basis. The proposed class satisfies Rule 23(a): (1) By the Department's admission, over 158,000 Students have a pending borrower defense assertion; (2) Students share common questions of law, including whether the Department has an obligation to decide borrower defenses and whether its categorical refusal to do so violates that duty; (3) Named Plaintiffs, like the other Students, have asserted a borrower defense but remain in limbo because of the Department's inaction; and, (4) Named Plaintiffs and class counsel will vigorously challenge the Department's abdication of its responsibility.

Students also satisfy Rule 23(b). They all seek the same remedy: an order compelling the Department to start granting or denying borrower defenses. Such an order would benefit all Students because it would compel the Department to adjudicate a Student's application sooner than it would under its current policy of inaction. Put another way, it would push each individual Student's application closer to resolution.

2

Finally, before January 20, 2017, the Department concluded that certain Students established a borrower defense if the school made specified misrepresentations to them. Thousands of Students whose claims are covered by these policies, as enumerated in specific Department memoranda (including, but not limited to the Borrower Defense Unit (BDU) memoranda on ITT Guaranteed Employment Claims, CCI Guaranteed Employment Claims, and CCI Transferability of Credit Claims), seek certification of a sub-class. These Students, including Named Plaintiffs Apodaca and Davis, challenge the Department's policy of refusing to grant their borrower defenses as both arbitrary and capricious and inconsistent with the Department's legal obligations. This sub-class, too, independently satisfies Rules 23(a) & (b).

Because each Student challenges the same Department practice (its complete inaction), this litigation is well suited for class resolution. The Court should certify the proposed class and sub-class or, in the alternative, stay a decision pending class discovery.

## II.   BACKGROUND

### A.   Statutory and Regulatory Framework

Under Title IV of the HEA, 20 U.S.C. § 1070, *et seq.*, the Department is responsible for overseeing the federal student loan program, including the Federal Family Education Loan (FFEL), 20 U.S.C. § 1071, *et. seq.*, and William D. Ford Direct Loan Programs, 20 U.S.C. § 1087a, *et seq*. Under the Direct Loan Program, the Department directly lends money to eligible student borrowers so that they can attend "participating institutions of higher education," as approved and regulated by the Department. 20 U.S.C. § 1087a. Under the FFEL program (under which no new loans have been issued since July 1, 2010), private lenders issued student loans, which were then insured by guaranty agencies, and in turn reinsured by the Department. 20 U.S.C. § 1078.

In 1993, Congress amended the HEA and directed the Secretary of the Department (Secretary) to "specify in regulations which acts or omissions of an institution of higher education

a borrower may assert as a defense to repayment of a loan made under this part[.]" 20 US.C. § 1087e(h). In 1995, the Secretary promulgated regulations that permit a Direct Loan borrower to assert, as a defense to repayment, "any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law." 34 C.F.R. §685.206(c)(1). This regulation was in effect from 1995 until at least July 1, 2017. 34 C.F.R. §685.222.

For FFEL loans, a holder is also, by regulation, "subject to all claims and defenses that the borrower could assert against the school with respect to that loan" if a sufficiently close relationship existed between the school and the lender. 34 C.F.R. § 682.209(g). And, Direct loans and FFEL loans share the same terms, conditions, and benefits, under the HEA. 20 U.S.C. §1087e(a)(1).

In addition to the HEA and Department regulations, Students' loan contracts allow them to assert a borrower defense. Between 1995 and at least October 2018, all Direct Loans have been issued pursuant to a Master Promissory Note (MPN) that informs borrowers that he or she "may assert, as a defense against collection of [his or her] loan, that the school did something wrong or failed to do something that it should have done," provided that "the school's act or omissions directly relates to [his or her] loan or to the educational services that the loan was intended to pay for, and if what the school did or did not do would give rise to a legal cause of action against the school under applicable state law." Decl. of Kyra Taylor (Taylor Decl.), Master Promissory Note Direct Loans at p. 7, (Ex. 1).[1] Since approximately 1994, every FFEL loan has been governed by a MPN that provides that the borrower is entitled to assert, as a defense to repayment of the loan,

---

[1] All numerical exhibits cited are attached to the Taylor Declaration.

MOTION FOR CLASS CERTIFICATION                    Case No: 19-cv-03674-WHA

"all claims and defenses that the borrower could assert against the school." Federal Stafford Loan Master Promissory Note, (Ex. 2).

Other legal requirements also obligate the Department to consider a Student's objection to the enforceability of his or her debt. Under the Federal Claims Collection Act of 1966, "[b]efore disclosing information to a consumer reporting agency," the Department is required "on a request of a person alleged by the agency to be responsible for the claim, for a review of the obligation of the person, including an opportunity for reconsideration of the initial decision on the claim." 31 U.S.C. § 3711(e)(2); *accord* 34 C.F.R. § 30.33(b)(3)(ii). Furthermore, because agencies are statutorily required to refer delinquent non-tax debts to the Department of Treasury for centralized collection, the Secretary enters into an annual certification agreement with the Treasury, in which she must certify that she "has considered any and all evidence presented by the Debtor disputing the Creditor Agency's determination that would preclude collection of the Debt." *See* U.S. Dep't of the Treasury, Bureau of the Fiscal Service, Agreement to Certify Federal Nontax Debts (revised September 2014).

If a Student establishes a borrower defense, the Department must notify her of its decision and provide her with some relief. *Calvillo Manriquez v. DeVos*, 345 F. Supp. 3d 1077, 1100 (N.D. Cal. 2018). A successful borrower defense relieves the borrower "of the obligation to repay all or part of the loan and associated costs and fees[.]" 34 C.F.R. § 685.206; *id.* § 685.222(i). The Secretary must also update her reporting to consumer reporting agencies, and may provide additional relief, including refunding the borrower for amounts paid on the loan, and re-instating the borrower's eligibility under Title IV. *See* 34 C.F.R. § 685.206; *Id.* § 685.222(i); *see also* 15 U.S.C. § 1681s-2(a)(1)(A).

MOTION FOR CLASS CERTIFICATION                    Case No: 19-cv-03674-WHA

**B.** **Factual Background**

   **1.** *Students assert their right to borrower defense and the Department grants 31,000 applications before January 20, 2017*

Over the past several decades, hundreds of thousands of students borrowed federal student loans to attend various for-profit colleges, including ITT, Corinthian, the Art Institutes, Salter College, DeVry University, Brooks Institute of Photography, and more. These schools promised quality training and high-paying careers. Under the Department's watch, the companies actually delivered worthless products that left students ill equipped to find jobs in their course of study and saddled them with thousands of dollars in debt, damaged credit, and depleted access to federal student aid. *See* Staff of S. Health, Education, Labor, and Pensions Comm., 112th Cong., *For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success* at pp. 3-8 (2012), *available at* https://perma.cc/37F4-Q2QC (HELP Report).

By way of example, Brooks Institute of Photography showed Named Plaintiff Theresa Sweet false job placement rates, guaranteed her job placement assistance, lied about its admissions standards, and falsely assured Ms. Sweet that her credits would transfer to any other school. Decl. of Theresa Sweet (Sweet Decl.), at ¶¶ 5-6. Likewise, Heald College told Named Plaintiff Apodaca that graduates were in "very high demand" at Kaiser, UC Davis, and Sutter, that it would provide substantial job placement assistance, and that her program had a 98% job placement rate. Decl. of Tresa Apodaca (Apodaca Decl.), at ¶¶ 6-7. These statements were all proven false. *Id.* And, Salter College told Named Plaintiff Archibald that she would be guaranteed a job after graduation and that she would only be borrowing $300 in student loans. Decl. of Chenelle Archibald (Archibald Decl.) at ¶¶ 6-8. These were also false. *Id.*

Students who attend for-profit schools account for 13% of the student population, but 47% of all federal student loan defaults. *See* HELP Report at 8 & 114. Although this debt has weighed Students down for years, the Department failed to create any mechanism by which Students could

seek relief through borrower defense until 2015. This absence was exacerbated by Students' inability to seek recourse from their school. Approximately 98% of students surveyed in one study who attended for-profit schools signed pre-dispute forced arbitration provisions. *See* Tariq Habash and Robert Shireman, *How College Enrollment Contracts Limit Students' Rights*, The Century Foundation (April 27, 2016) *available at* https://tcf.org/content/report/how-college-enrollment-contracts-limit-students-rights/. And, student loans are presumptively non-dischargeable in bankruptcy. 11 U.S.C. § 523(8).

This trap finally became untenable for Students in 2015. After the Department fined Corinthian $30 million for making substantial misrepresentations to its students, U.S. Dep't of Educ., *U.S. Department of Education Fines Corinthian Colleges $30 million for Misrepresentation* (April 14, 2015)*, available at* https://perma.cc/348D-5CKX, it became the first massive for-profit chain to collapse, U.S. Dep't of Educ., *Fact Sheet: Protecting Students from Abusive Career Colleges* (June 8, 2015), *available at* https://perma.cc/2X6M-9GMT. Several others, including ITT, Brooks Institute of Photography, the Art Institutes, Argosy University, South University, Vatterott College, Arizona Summit Law School, FastTrain College, Marinello School of Beauty, Brightwood College, and Virginia College, followed suit. *See* U.S. Dep't of Educ., *Closed School Database*, *available at* https://www2.ed.gov/offices/OSFAP/PEPS/closedschools.html.

In response, thousands of former Corinthian Students began to organize and submit borrower defense assertions. U.S. Dep't of Educ., *Fourth Report of the Special Master for Borrower Defense to the Under Secretary* at pp. 1-2 (June 29, 2016) (Ex. 3) (Fourth SM Report). Hundreds of Students from other for-profit schools did the same. Recognizing that these "borrowers have a right to assert a defense to repayment claim," the Department started to build a process and infrastructure to adjudicate the assertions. Memoranda from James W. Runcie, Chief Operating Officer, Federal Student Aid to Sharon Mar, Office of Information and Regulatory

Affairs, OMB at p. 3 (June 4, 2015) (Ex. 4). To that end, it appointed a Special Master in June 2015. *See* U.S. Dep't of Educ., *Education Department Appoints Special Master to Inform Debt Relief Process* (June 25, 2015), *available at* https://perma.cc/Z7BN-7Q4N. The Special Master served until June 2016, and recommended that the loans of 3,787 borrowers be discharged. Fourth SM Report, Ex. 3 at p.1.

In June 2016, the Special Master transferred authority over borrower defense applications to a permanent borrower defense unit (BDU) inside the Department. *See* U.S. Dep't of Educ., *Student Aid Enforcement Unit Formed to Protect Students, Borrowers, Taxpayers* (Feb. 8, 2016) *available at* https://perma.cc/LX74-C7WQ. At that time, the BDU had seven full-time attorneys, though it quickly grew to include a Director, 10 attorneys, and 19 contracted staff. U.S. Dep't of Educ., Office of Inspector Gen., *Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process* at p. 7 (Dec. 8, 2017) (Ex. 5) (IG Report). The Department also created a universal borrower defense form, 81 Fed. Reg. 66642 (Sept. 28, 2016), and finalized changes to the borrower defense regulation, set to become effective on July 1, 2017, 81 Fed. Reg. 75926 (Nov. 1, 2016).[2]

In the six-months before January 20, 2017, the BDU granted approximately 28,000 borrower defense applications, U.S. Dep't of Educ., Fed. Student Aid Enforcement Office, *Report on Borrower Defense* at pp. 2-3(Oct. 28, 2016) (Ex. 6) (BD Report); U.S. Dep't of Educ., *American Career Institute Borrowers to Receive Automatic Group Relief for Federal Student Loans* (Jan. 13, 2017), *available at* https://perma.cc/L7KS-LA6H. This brought the prior administration's total

---

[2] The Department attempted to delay implementation of this regulation three times in 2017 and 2018. *See* 82 Fed. Reg. 27621 (June 16, 2017); 82 Fed. Reg. 49155 (Oct. 24, 2017); 83 Fed. Reg. 6458 (Feb. 14, 2018). A federal court found that this attempted delay "did not come close" to being lawful under the APA, and the regulation went into effect on October 16, 2018. *See Bauer v. DeVos,* Memorandum and Opinion Order, Doc. No. 87 (D.D.C. Sept. 12, 2018).

MOTION FOR CLASS CERTIFICATION                    Case No: 19-cv-03674-WHA

number of approvals to 31,773. *See* IG Report, Ex. 5 at p. 3. The Department focused on students who attended a handful of for-profit schools and who alleged a number of specific claims. In memoranda, the Department set forth the criteria of eligibility for each of the following claims:

- "Job Placement Rate" claims for former Corinthian Students (those who attended specific Corinthian programs, at certain times, as enumerated and published by the Department);

- "Transferability of Credit" claims for former Corinthian Students (established in an October 2016 BDU memo);

- "Guaranteed Employment" claims for former Corinthian Students (established in a January 2017 BDU memo); and,

- "Guaranteed Employment" claims for former ITT students (established in a January 2017 BDU memo).

*See* IG Report, Ex. 5 at p.10. The Department also granted a group discharge (that is, without individual applications) to former Massachusetts students of American Career Institute. *See* IG Report, Ex. 5 at p. 32.

Although it turned a blind eye to the for-profit industry and the impact of Students' debt for decades, the Department was finally moving in the right direction by January 20, 2017. It anticipated that it "expect[ed] to resolve all pending eligible [Corinthian job placement rate] findings claims by Spring 2017." BD Report, Ex. 6 at p.1. And, it told one of its loan servicers that it would, after lodging an individual's application, "make [a] determination of eligibility on a borrower's application" within 12-14 months. Letter from Barbara A. Wilhelm, Director Claim Management, USA Funds, Inc. to Abby Shafroth, Staff Attorney, National Consumer Law Center (April 18, 2017) (Ex. 7).

### 2. The Department hits the brakes and refuses to decide borrower defenses

At the time the new administration came into office on January 20, 2017, there were over 50,000 pending borrower defense applications. *See* Test. of James Manning, Transcript of U.S. Dept. of Educ. Borrower Defense and Financial Rulemaking Committee, 8:18-9:6 (Nov. 14, 2017)

(Manning Testimony). Around that time (in February 2017), there were ten schools other than Corinthian that had over 100 pending borrower defense applications. *See* U.S. Dept. of Educ., *Borrower Defense Unit Claims Review Protocol* at p. 10 (BDU Protocol) (Ex. 8). There were also six schools with 31-100 pending borrower defense applications, 28 schools with 11-30 borrower defense applications, and 797 schools with 10 or fewer applicants. *Id.*

The new administration looked at these numbers and slashed the Department's resources to adjudicate borrower defense applications. By June 2018, the BDU had six full-time employees and one part-time employee. Test. of Secretary Betsy DeVos, the Sen. Subcomm. on Appropriations on the Department's FY 2019 Budget Request, at p. 98 (June 5, 2018) (Ex. 9) (June 2018 DeVos Testimony). By March 28, 2019, the Department acknowledged that "existing staff and contractors are insufficient to address the existing applications." U.S. Dept. of Educ. Response to Sen. Patty Murray's Questions for the Record at pp. 19-20 (Mar. 28, 2019) (Ex. 10) (Murray QFR).

At the same time that it sharply reduced its staffing, it put a "pause" on deciding borrower defense applications. In March 2017, the Department assembled a "Borrower Defense Review Panel" and ordered the BDU to "pause . . . submitting claims for approval and . . . developing additional memoranda for new categories of claims that qualify for discharge." IG Report, Ex. 5 at p.34 n.21 (FSA's response to the IG Report). Thus "[f]rom January 20, 2017, through July 31, 2017, BDU did not complete or begin preparing any legal memoranda to protect students from fraudulent practices." *Id.* at p.10. The Department did effectuate loan discharges for 16,000 borrowers for whom the prior administration granted applications, but had not provided relief. *Id.* at pp. 3-4. This action was approved by Secretary DeVos "with extreme displeasure." *See Cal. v. DeVos*, No. 3:17-cv-07106-SK, ECF No. 65-3 (N.D. Cal. *filed* July 8, 2019) (Ex. 11).

MOTION FOR CLASS CERTIFICATION                    Case No: 19-cv-03674-WHA

**DECISION:**

**Recommendation**: Proceed with discharge for direct and non-direct loans for all impacted borrowers. Direct OUS and the CFO's Internal Control Unit to set up interim procedures to process claims until new borrower defense regulations are adopted and take effect. Proceed with requesting OIG launch a review of the borrower defense program.

Approve ___X___ Signature *[signature]*

Disapprove _____ Signature _____

Needs more discussion _____ Signature _____

Modify _____ Signature _____

Other/Comments:

_with extreme displeasure_

_____

By December 2017, the BDU had still not "established any additional categories of valid borrower defense claims since January 20, 2017," IG Report, Ex. 5 at p.16, and failed to identify any new facts "relevant to the review of Corinthian Colleges claims," or "findings of fraud regarding ITT Tech[,]" Murray QFR, Ex. 10, at pp. 20-21. And, the Department never followed the recommendations of its Office of Inspector General: that the Chief Operating Officer for Federal Student Aid (FSA) request approval, and document its plan of action "to resume consideration and determination of whether additional categories of claims with common facts qualify for discharge, establish and document policies and procedures for reviewing and making determinations on unique or other claims for which FSA had no associated legal memorandum; and establish timeframes . . . ." IG Report, Ex. 5 at pp. 18-19; *see also* Letter from Antigone Potamianos, Counsel to the Inspector General to Eileen Connor, Legal Services Center Harvard Law School, *Re: FOIA Request No. 19-00509-F* (Feb. 11, 2019) (Ex. 12).

Rather than addressing new categories of claims, the Department announced on December 20, 2017 that it would instead focus its resources on *reducing* relief for Students who satisfied the criteria under existing Corinthian memoranda (guaranteed employment, job placement rate, and transferability of credits). U.S. Dept. of Educ., *Improved Borrower Defense Discharge Process*

MOTION FOR CLASS CERTIFICATION          Case No: 19-cv-03674-WHA

*Will Aid Defrauded Borrowers, Protect Taxpayers* (Dec. 20, 2017) *available at* https://perma.cc/AWX3-NYAC (Dec. 20, 2017 Press Release). Using data from the Social Security Administration that was intended for a different purpose, the Department created a new "partial relief" methodology for these Students. The upshot of its plan was to force Corinthian Students with valid borrower defenses to repay the majority of their student loans. *See* Relief Determination Charts, *Calvillo-Manriquez v. DeVos*, No. 3:17-cv-07210-SK, ECF Doc. 40-2 & 42-2 (Filed April 12, 2018) (Ex. 13). At that time, the Department granted or partially denied the claims of 12,900 Corinthian Students, and completely denied the claims of 8,600 Students. *See* Dec. 20, 2017 Press Release.

A class of former Corinthian Students who asserted a job placement rate claim are challenging that methodology in separate litigation. *See Calvillo Manriquez v. DeVos*, No. 17-cv-07210-SK, ECF No. 96 (Oct. 15, 2018) (certifying class of the subset of former Corinthian Students). The Court has preliminarily enjoined the Corinthian partial relief methodology, *see Calvillo Manriquez v. DeVos,* 345 F. Supp. 3d 1077 (N.D. Cal. 2018), and the action is stayed pending the Department's interlocutory appeal of the injunction, *Manriquez v. DeVos*, No. 18-16375 (9th Cir., *filed* July 24, 2018).[3]

---

[3] Plaintiffs here propose a class that specifically carves out the members of the *Calvillo Manriquez* litigation (that is, former Corinthian Students who asserted job placement rate claims and attended a program included on two lists published by the Department). *See* U.S. Dep't of Educ., *List of Heald and Everest/WyoTech Programs Covered by Department Findings*, *available at* https://perma.cc/DBM5-BVAY; https://perma.cc/5J64-SE7L; *see also Calvillo Manriquez v. DeVos*, No. 17-cv-07210-SK, ECF No. 96 (N.D. Cal. Oct. 15, 2018) (defining the class as "[a]ll persons who borrowed a Direct Loan to finance the cost of enrollment at a program covered by the Department's job placement rate findings . . . and who have not received a full discharge of associated student loan debt and a return of any money the Department collected on the loan, once they submit an attestation or analogous form verifying that they are covered by the Department's job placement rate findings . . . and that they relied, in substantial part, on Corinthian's misleading job placement rates in deciding to enroll").

MOTION FOR CLASS CERTIFICATION          Case No: 19-cv-03674-WHA

The Department last granted a borrower defense application on June 12, 2018, and last denied an application on the merits on May 24, 2018. *See* Murray QFR, Ex. 10 at p. 20. The Department has purportedly refused to grant *any* borrower defenses because of the *Calvillo Manriquez* injunction, stating that it is "in a holding pattern . . . waiting for a court ruling," and for "clear direction from the court." Video of Undersecretary Diane Auer Jones at the Bipartisan Policy Center at 1:02:30 (April 23, 2019), *available at* https://bipartisanpolicy.org/event/schools-out-forever-reforming-the-college-closure-process/.

Because of the Department's inaction, the number of pending borrower defense claims has skyrocketed. As of December 31, 2018—the last date for which the Department has released data—158,100 Students were awaiting a decision on their borrower defense assertion. *See* U.S. Dep't of Educ., *Borrower Defense Quarterly Report for quarter end 12/31/2018*, (Ex. 14) (Dec. 2018 Quarterly Report). Of those, the Department had "designated approved, but [ ] not yet [ ] formally discharged" 23,900 applications. Murray QFR, Ex. 10 at p. 20. After Corinthian, which has over 50,000 borrower applications pending, the following five companies presently comprise the bulk of asserted borrower defenses:

| School | Number of Applications Submitted | Percent of Applications Decided |
|---|---|---|
| ITT Educational Services | 19,123 | 1% |
| DeVry | 13,543 | 0% |
| Apollo Group (University of Phoenix) | 8,139 | 0% |
| EDMC (Art Institutes, Argosy, South University) | 6,284 | 0% |
| Career Education Corp (Including Brooks, Sanford-Brown, Le Cordon Bleu, and others) | 5,667 | 0% |

*Id.* at 53.

In the face of this evidence of its inaction, the Department continues to tell Students and the public that it is actively deciding borrower defenses. In November 2017, during a negotiated

rulemaking session, the Department's Under Secretary, James Manning, said: "I can promise you we are working night and day to get these claims and I expect a consistent downward trend in the number of pending claims starting soon, very soon." Manning Testimony at 15:9-14. In June 2018, the Department told the Senate Committee on Appropriations that it was "working tirelessly to reduce the number of pending claims." June 2018 DeVos Testimony, Ex. 9 at p. 58. And, the Department recently told Congress that "we plan to increase our adjudication of borrower defense applications in the future." Dec. 2018 Quarterly Report, Ex. 14 at p. 2.

### 3. The Department's inaction is causing Students ongoing harm.

Testimony from the seven proposed class representatives and 892 Students illustrates the harm that the Department's inaction is causing. *See* Decl. of Joshua D. Rovenger (Rovenger Decl.), at ¶ 2.[4] Nearly three quarters of these Students (73%) do not believe that higher education made their lives better. *See* Rovenger Decl. at ¶ 28. And yet, although the Department has had an average of approximately 955 days to review their applications, *see* Rovenger Decl. at ¶ 19, every Student still waits in limbo for a decision, *see* Hood Decl. at ¶ 14; Sweet Decl. at ¶ 8; Davis Decl. at ¶ 13; Deegan Decl. at ¶ 9; Jacobson Decl. at ¶ 10; Archibald Decl. at ¶ 12; Apodaca Decl. at ¶ 9; Rovenger Decl. at ¶18.

The damage from this limbo permeates nearly every aspect of these Students' lives. Approximately 92% have reported feeling stress, psychological harm (including suicidal ideation), or physical manifestations of that distress because of the Department's inaction. Rovenger Decl. at ¶ 25; *see, e.g.*, Deegan Decl. at ¶12 ("While I wait for the Department to decide my Borrower Defense, I am constantly thinking about my DeVry debt . . . .The anxiety is worse because I have no idea when the Department will make a decision and when repayment would begin"); Jacobson

---

[4] All alphabetical exhibits cited are attached to the Rovenger Declaration.

MOTION FOR CLASS CERTIFICATION                    Case No: 19-cv-03674-WHA

Decl. at ¶ 12 ("While I have waited for the Department to decide my assertion, I have been depressed because I feel like I am trapped by my NEIA debt."); Archibald Decl. at ¶ 13; Sweet Decl. at ¶ 10; Davis Decl. at ¶ 18; Apodaca Decl. at ¶ 12; Ex. B, pt. 3 at p.655, Aff. of A.S. at ¶ 16 ("I stress about my student loans and being able to repay them. Not knowing how much I will have to pay back when all is said and done or what the status of this application is has made the stress much worse and caused anxiety attacks. Had I known then what I know now I would have never gone to that school"); Ex. B, pt.1 at p.14, Aff. of E.C. at ¶ 17 ("[T]his delay has caused me a lot of stress and sleepless nights. I have been calling the department hotline, for over a year to get my loans in Administrative forbearance after they received my application. I had to send the application two times. Every time I called I got a different answer.").

The Department's inaction thwarts Students' ability to form families. Almost half (47%) reported delaying having children or getting married because of their student loan debt and the Department's inaction. Rovenger Decl. at ¶ 24; *see, e.g.*, Jacobson Decl. at ¶13 ("My partner has proposed marriage multiple times, and although I want to get married, I refuse to say yes because I don't want to burden him with my NEIA debt"); Deegan Decl. at ¶¶ 13-14 ("I have also decided to delay having children because, without knowing what will happen to my DeVry debt, I cannot know whether I can afford to have them."); Ex. B, pt. 1 at p. 22, Aff. of J.L. at ¶ 15 ("I have been in a committed relationship for years, but our goals are to get out of debt before we can afford to move forward. Just affording groceries each week requires me to have a second job. I am working 65+ hours a week, just to make ends meet."); Ex. B, pt. 1 at p. 25, Aff of S.O. at ¶ 14 ("We just don't have the money to get married with the burden of all the student loan debt.").

The Department's inaction threatens Students' financial stability. Even though they have asserted a borrower defense, the Department has sent notice demanding payment—and for some it has garnished wages or offset taxes—to 32% of these Students. Rovenger Decl. at ¶ 21; *see, e.g.*,

Davis Decl. ¶ 15 ("In 2017 and 2018, the Department warned me that it will garnish my wages and seize my tax refund to repay my FMU/Corinthian debt, even though I had already submitted a Borrower Defense."). It has likewise made it difficult for nearly 95% of these Students to financially plan for their future. Rovenger Decl. at ¶ 22; *see, e.g.*, Hood Decl. at ¶¶ 16-18; Sweet Decl. at ¶ 11; Deegan Decl. at ¶ 11; Davis Decl. at ¶ 23; Apodaca Decl. at ¶ 14; Archibald Decl. at ¶ 14; Jacobson Decl. ¶ 14; Ex. B, pt. 1 at p. 45, Aff. of B.P. at ¶ 14 ("I have been trying to buy a home for the last 3 years, but my student loans are counting against my debt to income ratio. I am unable to buy a car due to my student loans. I am unable to save for my kids' college education because I have to put that money into an account in case my application is denied"); Ex. B, pt. 1 at p. 28, Aff. of D.S. at ¶¶ 14 & 16 ("My life is essentially on hold until this is dealt with . . . the lack of a decision hangs over me."). And, as their overall debt burden rises while they wait, approximately 67% of these Students have experienced difficulty securing financing for life's necessities. Rovenger Decl. at ¶ 26; *see, e.g.*, Hood Decl. at ¶¶ 16-17; Archibald Decl. at ¶ 15 ("I applied to 10 different banks for a car loan, but was repeatedly rejected because of to my debt-to-income ratio"); Ex. B, pt. 1 at p. 17, Aff. of H.S. at ¶ 16 ("I have been denied many apartments because of my loans. Right now I'm living in my friend's basement because I have nowhere else to go").

The Department's inaction also halts Students' professional lives. Roughly 61% of these Students have deferred future education while their borrower defense remains pending. Rovenger Decl. at ¶ 23; *see, e.g.*, Hood Decl. at ¶ 18 ("I am waiting to make any major professional decisions until I know what will happen to my debt"); Sweet Decl. at ¶ 13 ("I am now a certified nursing assistant, and I want to return to school to become a nurse. However, I cannot afford to return to school because I do not know whether I will have to repay my Brooks debt."); Apodaca Decl. at ¶ 18; Ex. B, pt. 1 at p. 10, Aff. of D.R. at ¶ 24 ("I'm afraid of the student loan costs that would end

MOTION FOR CLASS CERTIFICATION          Case No: 19-cv-03674-WHA

up stacking on top of what I already have. At this point I am also not eligible for any type of future student loans and I am not able to afford education out of pocket"); Ex. B, pt. 1 at p. 38, Aff. of A.S. at ¶ 14 ("I feel cheated out of the education that I originally sought. I have wanted to go back to school for a more purposeful degree. I can't do that with the amount of debt that I have. I can't get more federal aid. And I wouldn't want more loans anyway. . . I feel trapped by my inability to move forward with my life").

It is perhaps no surprise that the Department's inaction has eroded Students' faith in government. Nearly 85% of these Students reported that they have lost faith that the government will protect Students like them. Rovenger Decl. at ¶ 27; *see, e.g.*, Ex. B, pt. 1 at p. 3, Aff. of T.C. at ¶ 20 ("I was not protected in 2009 when I was given false information or again when the same school made promises to use my previous credit towards the same degree at a cheaper price and that once again it was covered. I have been told for years that my application is under review, but nothing more."); Ex. B, pt. 1 at p. 20, Aff. of J.M. at ¶ 18 ("We were basically victims of fraud. I felt confident a few years ago when filling out the forms, but it's been so long that it doesn't seem like anything will happen"); Ex. B, pt. 1 at p. 32, Aff. of T.E. at ¶ 16 ("[S]tudents like me have been fighting and trying to get relief for five or more years. It is discouraging to see that nothing has been done to help anyone even after all of this time.").

## C.  Procedural History

On June 25, 2019, Named Plaintiffs Apodaca, Davis, and Jacobson—four years after they asserted their borrower defense—along with four other Students, filed this case against the Department. *See* Compl., ECF No. 1. The entire Student class asserted a claim under the APA, 5 U.S.C. § 706(1), alleging that the Department's inaction constitutes unreasonably withheld and unreasonably delayed agency action. *Id.* at p. 57. Students seek an order compelling the Department to start granting and denying borrower defenses. *Id.* at p. 58.

A subclass of Students (those whose applications are addressed by existing Department policy) also raised a count under 5 U.S.C. § 706(2), because the Department's policy of refusing to grant borrower defenses is arbitrary and capricious and contrary to law. *See* ECF No. 1 at p. 58. This subclass seeks an order vacating the Department's policy of refusing to grant borrower defenses. *Id.* at p. 60.

## III. THE COURT SHOULD CERTIFY THE STUDENT CLASS

Students satisfy all of the requirements for class certification: over 158,000 Students are challenging a common policy, under the same theory, seeking the same remedy. The Court should permit the case to move forward as a class action.

### A. Students satisfy Rule 23(a)

Students meet the four elements of Rule 23(a): (1) the proposed class of over 158,000 Students is sufficiently numerous, (2) all class members allege common legal theories and claims in seeking to compel the Department to decide borrower defenses, (3) Named Plaintiffs, who themselves have waited for years for a decision, are typical of the class, and (4) Named Plaintiffs and Class Counsel have no conflicts of interests and will vigorously prosecute the action on behalf of the class.

#### 1. *The proposed class consists of more than 158,000 Students*

This proposed class is "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). The Department has publicly stated that there were at least 158,110 Students with a pending borrower defense as of December 31, 2018. *See* Dec. 2018 Quarterly Report, Ex. 14. And, it has confirmed that it has not granted or denied a borrower defense application since that time. *See* Murray QFR, Ex. 10, at p. 20. Students easily satisfy the numerosity requirement. *See White v. E-Loan, Inc.*, No. C 05-02080 SI, 2006 WL 2411420 at *2 (N.D. Cal. Aug. 18, 2006) (concluding that a proposed class of "100,000 members . . . easily satisfies the numerosity requirement").

MOTION FOR CLASS CERTIFICATION          Case No: 19-cv-03674-WHA

Even assuming that the proposed sub-class also needs to satisfy Rule 23(a)(1), *but see* 1 *Newberg on Class Actions* § 3:16 (5th ed. 2019), it is likewise sufficiently numerous. Students are aware of at least 99 Corinthian students in Massachusetts who submitted a borrower defense application asserting claims covered by the Department's policy. *See* Taylor Decl. at ¶ 22; Sample Everest Massachusetts Borrower Defense Application (Ex. 15). And, according to the Department, there are approximately 23,900 borrower defense applicants whose borrower defense assertions have been "designated approved" by the Department based on its prior policies but "have not yet been formally discharged due to the partial relief methodology announced December 21, 2017." Murray QFR, Ex. 10 at p. 20. The Department has not granted any relief to this subset of Students. *Id.* Thus, the sub-class is also sufficiently numerous for certification.

> ### 2. *All Plaintiffs' claims turn on whether the Department has a mandatory duty to adjudicate borrower defenses and whether its inaction violates that duty.*

Commonality is met where there are "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). More specifically, there must be a "'common contention' such that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation omitted)

Every Student's claim implicates the same legal question: Does the Department's blanket refusal to adjudicate borrower defenses constitute an unlawful withholding or unreasonably delayed action in violation of section 706(1) of the APA? That broad question splinters into three specific legal and factual questions that resolve every Student's case:

- Does the Department have a mandatory legal duty to adjudicate and grant some borrower defenses?

- As a factual matter, has the Department failed to grant or deny any borrower defenses from any Student since June 2018? and,

19

- If the Department has a mandatory legal duty to decide claims, but is not doing so, does that *per se* constitute an unlawful witholding or unreasonable delay under the APA?

The sub-class, too, shares common questions. Namely: (1) Does the Department have a policy of refusing to grant borrower defenses; (2) does that policy constitute a final agency action; and, (3) does the policy violate the Department's legal obligation to grant some borrower defenses or is it an otherwise arbitrary and capricious reading and application of the injunction in *Calvillo Manriquez v. DeVos*.

Ultimately, these questions all arise from the Department's complete inaction. Students establish commonality under such circumstances.

### 3. The claims and defenses of the named representatives are identical to those of other Students.

Plaintiffs' claims are also "typical" of the other Students, Rule 23(a)(3), because the named Plaintiffs share with "other members . . . the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and … other class members have been injured by the same course of conduct." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 970 (9th Cir. 2019) (internal quotations and citation omitted).

 More specifically, each Named Plaintiff, like every other Student, has submitted a borrower defense application to the Department. *See* Hood Decl. at ¶ 12-13; Archibald Decl. at ¶ 11; Apodaca Decl. at ¶ 8; Davis Decl. at ¶ 11-12; Deegan Decl. at ¶ 8; Jacobson Decl. at ¶ 9; Sweet Decl. at ¶ 7. Each Named Plaintiff, like every other Student, is awaiting a decision because the Department is universally refusing to grant or deny any borrower defense assertion. *See* Hood Decl. at ¶ 14; Archibald Decl. at ¶ 12; Apodaca Decl. at ¶ 9; Davis Decl. at ¶ 13; Deegan Decl. at ¶ 9; Jacobson Decl. at ¶ 10; Sweet Decl. at ¶ 16. And each Named Plaintiff, like every other Student, seeks an order compelling the Department to start granting or denying borrower defenses.

MOTION FOR CLASS CERTIFICATION          Case No: 19-cv-03674-WHA

*See* Hood Decl. at ¶ 19; Archibald Decl. at ¶ 18; Apodaca Decl. at ¶ 20; Davis Decl. at ¶ 25; Deegan Decl. at ¶ 18; Jacobson Decl. at ¶ 17; Sweet Decl. at ¶ 16.

Named Plaintiffs Apodaca and Davis also have claims that are typical of the sub-class. They have all asserted a borrower defense and their claims are all covered by pre-existing borrower defense memoranda (Plaintiff Davis asserted CCI guaranteed employment and transferability of credit claims; Plaintiff Apodaca asserted CCI guaranteed employment claims). Davis Decl. at ¶ 6; Apodaca Decl. at ¶ 6 And yet, the Department has not granted their borrower defense applications, has not notified them of a decision, and has not discharged their debts. Apodaca Decl. at ¶ 9; Davis Decl. at ¶ 13. They all challenge the Department policy of refusing to grant borrower defenses, and all seek to vacate that agency action. Apodaca Decl. at ¶ 20; Davis Decl. at ¶ 25.

### 4. *Class representatives and class counsel have no conflicts of interests and will vigorously prosecute the action on behalf of the class.*

Rule 23(a) finally requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also* Fed. R. Civ. P. 23(g). Courts examine "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if] the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Castro v. ABM Industries, Inc.,* 325 F.R.D. 332, 342 (N.D. Cal. 2018) (internal citation and quotation omitted). "[A]ny conflicts must be serious and irreconcilable in order to defeat certification." *Dalton v. Lee Publi'ns. Inc.*, 270 F.R.D. 555, 560 (S.D. Cal. 2010) (citations omitted).

Named Plaintiffs are adequate representatives of the class and Plaintiffs Apodaca and Davis are adequate representatives of the sub-class. Named Plaintiffs have overlapping interests and claims with the rest of the class and all seek the exact same remedy. Hood Decl. at ¶ 19; Archibald Decl. at ¶ 18; Apodaca Decl. at ¶ 20; Davis Decl. at ¶ 25; Deegan Decl. at ¶ 18; Jacobson Decl. at ¶ 17; Sweet Decl. at ¶ 16. They are not aware of any conflicts of interest. Apodaca Decl.

at ¶ 21; Davis Decl. at ¶ 26; Jacobson Decl. at ¶ 18; Archibald Decl. at ¶ 19; Deegan Decl. at ¶ 19; Hood Decl. at ¶ 20; Sweet Decl. at ¶ 17. They have retained competent and experienced counsel to litigate the case for them, indicating that they are ready, able, and willing to prosecute the case vigorously on behalf of the class. Apodaca Decl. at ¶ 22; Davis Decl. at ¶ 27; Jacobson Decl. at ¶ 19; Archibald Decl. at ¶ 20; Deegan Decl. at ¶ 20; Hood Decl. at ¶ 21; Sweet Decl. at ¶ 18. And, they strongly desire to vigorously prosecute this case on behalf of the class. Apodaca Decl. at ¶ 23; Davis Decl. at ¶ 28; Jacobson Decl. at ¶ 20; Archibald Decl. at ¶ 21; Deegan Decl. at ¶ 21; Hood Decl. at ¶ 22; Sweet Decl. at ¶ 19.

Proposed class counsel also satisfy Rule 23(a) and Rule 23(g). Fed. R. Civ. P 23(g) (setting forth the standards for appointing class counsel). Undersigned counsel are attorneys at Housing and Economic Rights Advocates and the Harvard Legal Service Center's Project on Predatory Student Lending. Taylor Decl. at ¶ 1; Decl. of Natalie Lyons (Lyons Decl.) at ¶ 1. These organizations have represented and/or advised hundreds of former students regarding the borrower defense process. Taylor Decl. at ¶ 2; Lyons Decl. at ¶¶ 2-4. Counsel have knowledge of, and familiarity with, the relevant laws and regulations concerning federal student loans and borrower defense. Taylor Decl. at ¶¶ 2-4; Lyons Decl. at ¶¶ 2-5. Counsel also has experience representing Rule 23 classes of student loan borrowers, including the certified class of students in *Calvillo-Manriquez*, and Rule 23 classes more generally. Taylor Decl. at ¶ 3; Lyons Decl. at ¶ 5. Counsel is not aware of any conflicts with members of the proposed class. Taylor Decl. at ¶ 5; Lyons Decl. at ¶ 7.

Thus, Students satisfy Rule 23(a) and class certification is appropriate.

**B.    Students satisfy Rule 23(b)**

The class also satisfies Rule 23(b)(2) because the Department "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

22

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As here, "[t]hese requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *I.N. by & through Zarinah F. v. Kent*, No. C 18-03099 WHA, 2019 WL 1516785, at *3 (N.D. Cal. Apr. 7, 2019) (Alsup, J.) (internal quotation omitted) (certifying a Rule 23(b)(2) class that only sought injunctive, uniform class-wide relief); *Hart v. Colvin*, 310 F.R.D. 427, 439 (N.D. Cal. 2015) (certifying a Rule 23(b)(2) class that sought a declaration that the agency action in question was unlawful).

The Department has engaged in a "pattern or practice" that is "generally applicable" to all Students: it is unlawfully refusing to grant or deny any borrower defense. Named Plaintiffs, on behalf of the class, seek to compel the Department to fulfill its legal duty and to start deciding borrower defenses. Such an order would re-start the Department's decision-making process, propelling each individual's claim towards adjudication. Put another way, it is as if the Department has placed all borrower defense applications on a conveyor belt, and then chose to halt that belt; the requested injunction would re-start the machinery and push each Student's application forward.

Similarly, the proposed subclass satisfies Rule 23(b)(2). The Department's memoranda establish criteria for borrower defense that each member of the subclass satisfies, but the Department is denying them relief as a matter of policy. Thus, they seek an order vacating the Department's policy of refusing to grant established borrower defenses.

### C. Students present similar claims to other classes that this Court has certified

At bottom, this matter is comparable to other cases seeking to compel agency action and where this Court has certified a class. Most telling is *Jiahao Kuang v. United States Dep't of Def*. There, a class of lawful permanent residents brought claims under APA, including one under § 706(1), seeking to compel the Department of Defense to make a determination as to whether they

could access into the military (enlist) and ship to basic training. 340 F. Supp. 3d 873, 891 & 908-09 (N.D. Cal. 2018), *order clarified sub nom. Kuang v. United States Dep't of Def.*, No. 18-cv-03698-JST, 2019 WL 718632 (N.D. Cal. Feb. 20, 2019), *vacated on other grounds*, *Jiahao Kuang v. United States Dep't of Def.*, No. 18-17381, 2019 WL 2847079 (9th Cir. July 2, 2019). The Department was delaying accession because it had adopted a policy requiring more intensive security investigations of the class members. Ultimately, class members sought to compel the Department to start making these determinations, and the Court recognized that the claim turned on whether a uniformly applied department policy was lawful. The Court found that Rules 23(a) & (b) were satisfied and certified the class. *Id.*; *see also Am. Council of the Blind v. Astrue*, No. C 05-04696 WHA, 2008 WL 4279674, at *4 (N.D. Cal. Sept. 11, 2008) (Alsup, J.) (certifying class of blind individuals asserting that the SSA must provide alternative forms of communication to allow them to have equal access to participate in SSA programs); *Viet. Veterans of Am. v. C.I.A.*, 288 F.R.D. 192 (N.D. Cal. 2012) (certifying class of veterans asserting, among other claims, one under the APA seeking to compel the Department to provide class members certain notice and to provide them healthcare).

In this case, Students are likewise seeking to compel the Department to make a determination on their applications, and the government is similarly withholding a decision because of a common policy or practice (its policy of complete inaction). The case similarly turns on "the validity of" the Department's "policy" of refusing to grant or deny applications, "which applies equally on a classwide basis." *Kuang*, 340 F. Supp. 3d at 891. As in *Kuang*, whether the Department's inaction in this case "is valid, and the scope of Plaintiffs' entitlement to relief, if any, are questions eminently capable of class wide resolution." *Id.* (citation omitted). Accordingly, the Court should certify the proposed class and subclass.

MOTION FOR CLASS CERTIFICATION                    Case No: 19-cv-03674-WHA

## IV. Alternatively, the Court should stay a decision on this motion pending class discovery.

Students believe that evidence subject to judicial notice—accompanying this filing or otherwise—warrants class treatment in this case. But, if the Court disagrees, Plaintiffs request that the Court delay judgment on class certification and permit limited class discovery.

Trial courts have wide discretion to permit class discovery, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009), particularly where plaintiffs demonstrate "that discovery is likely to produce substantiation of the class allegations." *Manolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). In such cases, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." *Vinole*, 571 F.3d at 942 (internal citation omitted).

Here, Students have alleged that the Department has uniformly refused to decide borrower defenses. Discovery would further crystalize the degree to which the Department has formalized this practice and would thus speak to commonality and typicality. Furthermore, discovery aimed at the precise number of subclass members, along with discovery shedding light on the Department's policy of refusing to grant borrower defenses pending ongoing litigation, would be relevant to certification of the proposed sub-class.

## V. CONCLUSION

The Department is refusing to follow the HEA, its regulations, its loan contracts with Students, and other legal requirements that require it to grant or deny borrower defenses. As a result, over 158,000 Students with pending applications wait in limbo. Because they all seek the same thing—to compel the Department to start deciding their borrower defense assertions—the Court should certify the class and allow them to do so collectively.

Respectfully submitted,

/s *Joshua D. Rovenger*

MOTION FOR CLASS CERTIFICATION        Case No: 19-cv-03674-WHA

Joseph Jaramillo (SBN 178566)
Natalie Lyons (SBN 293026)
HOUSING & ECONOMIC RIGHTS
ADVOCATES
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Tel: (510) 271-8443
Fax: (510) 280-2448

Eileen M. Connor (SBN 248856)
Toby R. Merrill (*Pro Hac Vice*)
Kyra A. Taylor (*Pro Hac Vice*)
Joshua D. Rovenger (*Pro Hac Vice*)
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

*Attorneys for Plaintiffs*

MOTION FOR CLASS CERTIFICATION          Case No: 19-cv-03674-WHA