# EXHIBIT 3

## United States Department of Education
## Fourth Report of the Special Master for Borrower Defense to the Under Secretary
## June 29, 2016

This is my fourth and final report as Special Master to the United States Department of Education (the Department or ED) with regard to borrower defense (BD) issues. As disclosed in my last report, responsibility for Borrower Defense has now been transferred to the new Enforcement Office within Federal Student Aid. I am pleased to report that this transition has been accomplished effectively and professionally. The leadership of the Enforcement Office has informed me that it will continue to issue periodic reports on borrower defense issues.

This report will primarily address two important and complementary subjects: (i) the number and status of claims filed by former students at schools owned by Corinthian Colleges, Inc. (CCI); and (ii) the Department's continuing efforts to reach CCI students who may be eligible for borrower defense relief, including students with FFEL and Perkins loans.

With regard to CCI claims, this report shows a sharp increase in the number of claims filed, many of which followed the Department's March 25, 2016 announcement of job placement rate findings for Everest and WyoTech. From the beginning of my tenure in the fall of 2015 through June 24, 2016, the Department has approved 3,787 BD claims by former CCI students, with an aggregate loan amount of $73,110,502. In addition, as of June 24, 2016, closed school loan relief has been granted to 7,386 CCI students, with an aggregate outstanding principal of $97,613,625. Any remaining BD claims not yet adjudicated will be addressed by the Enforcement Office.

The Department has increased its outreach activities to make former CCI students aware of the availability of borrower defense relief. Section III of this report details several of the Department's recent outreach efforts.

I leave my engagement as Special Master with a profound sense of gratitude for the opportunity to have worked with the Department's extraordinarily talented and hardworking staff on a matter of critical importance to borrowers. In this work, we were fully supported by the Department's leadership. I am heartened by the appointment of talented professionals to continue this work in the newly created Enforcement Office and am confident that the Department's best work on borrower defense is yet to come. I look forward to following and supporting its progress as a citizen and taxpayer.

Joseph A. Smith, Jr.
Special Master for Borrower Defense
U.S. Department of Education

### I.     Borrower Defense Claims

As discussed in prior reports, ED established the Borrower Defense Program to enhance its ability to address claims by borrowers seeking relief from unlawful practices by institutional participants in its student loan programs. In this report, I use the term Borrower Defense Program (or BD Program) to refer to the Department's plans, systems, and processes designed to enable aggrieved borrowers to assert a defense to repayment of their federal student loans. As of June 24, 2016, ED had received 26,603 BD claims. The claims break down as follows:

| School | Total Claims |
|---|---:|
| Heald (Corinthian) | 8,079 |
| Everest (Corinthian) | 12,925 |
| WyoTech (Corinthian) | 2,181 |
| Other (schools with more than 10 claims) | 2,641 |
| Other (no more than 10 claims about one school) | 777 |
| **Total** | **26,603** |

The chart above shows that claims from former students of schools owned and operated by CCI account for 87% of claims received to date.

### A.  CCI Claims Based on Department Findings

All of the BD relief granted during the period covered by this report (March 2, 2016 to June 24, 2016) relates to claims by former students of CCI schools. As discussed in prior reports, this relief has been based on: (i) the Department's analysis of the requirements of its BD regulations (including applicable state law); (ii) findings by the Department, in cooperation with state attorneys general, of misstatements of placement rate data relating to the particular programs attended by the borrowers seeking relief; and (iii) corresponding claims by former students. The chart below sets forth in detail the relief granted as of June 24, 2016, in terms of both number and aggregate principal amount of loans as to which relief has been granted.

| School | Loans Approved for Discharge through 3/1/16 | Loans Approved for Discharge from 3/2/16 through 6/24/16 | Total Loans Approved for Discharge |
|---|---|---|---|
| **Heald** | 1,812<br>$37,767,392 | 1,366<br>$25,770,136 | 3,178<br>$63,537,528 |
| **Everest** | 196<br>$4,091,658 | 310<br>$4,180,652 | 506<br>$8,272,310 |
| **WyoTech** | 40<br>$488,769 | 63<br>$811,895 | 103<br>$1,300,664 |
| **Total** | **2,048<br>$42,347,819** | **1,739<br>$30,762,683** | **3,787<br>$73,110,502** |

### B. Other CCI Borrower Defense Claims

As stated in prior reports, borrowers who did not participate in a program covered by the Department's job placement rate findings may still be eligible for relief based on other allegations of misconduct. In this regard, the Department has received BD applications that include allegations of multiple misrepresentations to borrowers. These claims include important substantive issues. To address them, the BD Team has conducted extensive investigation into these claims, as well as research on whether these allegations constitute a claim under state law as required by the BD regulations now in effect. The BD Team will continue to investigate, research, and adjudicate these claims as part of the FSA Enforcement Office.

In the coming weeks, the Enforcement Office expects to begin ruling on BD claims based on allegations not covered by the Department's job placement findings. The Department will report on its progress on these claims in its next report.

### C. Claims by State

BD claims have been received from borrowers around the country, with particular concentrations from borrowers in California and Florida. The chart below lists the twenty states with the most claims received as of June 24, 2016, based on the borrower's state of residence at the time the claim was submitted:

| State | Claims Received | State | Claims Received |
|---|---:|---|---:|
| **CA** | 9,697 | **PA** | 496 |
| **FL** | 2,040 | **VA** | 452 |
| **TX** | 1,338 | **OH** | 451 |
| **IL** | 1,074 | **NY** | 442 |
| **WA** | 1,023 | **CO** | 417 |
| **MA** | 1,006 | **NC** | 406 |
| **GA** | 957 | **IN** | 286 |
| **HI** | 726 | **NV** | 284 |
| **OR** | 659 | **MD** | 272 |
| **MI** | 655 | **AZ** | 262 |

### D. Information for FFEL and Perkins Program Borrowers

The Department has received a number of inquiries seeking clarification regarding the treatment of borrower defense claims made by Federal Family Education Loan (FFEL) Program and Federal Perkins (Perkins) Program borrowers. FFEL and Perkins loans pose several distinct challenges in the borrower defense context. While FFEL loans (which have not been issued since 2010) included a borrower defense provision, the FFEL standard for borrower defense has additional requirements, such as requiring the borrower to prove a referral relationship against the school. Thus, the FFEL standard is harder to satisfy than the standards available to William D. Ford Federal Direct Loan (Direct Loan) borrowers. Furthermore, non-federal lenders initiated FFEL loans, and to the extent such lenders still hold these loans, borrowers would have to bring their borrower defense claims against these non-federal loan holders. Perkins loans simply do not have a borrower defense provision.

The Department seeks to put FFEL and Perkins borrowers on equal footing to the extent possible with federal Direct Loan borrowers. The Department has determined that FFEL and Perkins borrowers who submit borrower defense claims will be evaluated under the same standards as those available to Direct Loan borrowers if those borrowers consolidate their FFEL and/or Perkins loans into Direct Consolidation Loans. This equal treatment is possible because Direct Consolidation Loans are a type of Direct Loan that can be treated as such for borrower defense purposes. However, because the Department is limited by statute to discharging and refunding no more than the amount of the Direct Loan at issue, and because the Department will not have received funds previously repaid to a private loan holder, only discharge of the remaining balance on the consolidated loan will be available through this route. Any return of funds paid back on FFEL loans to private holders would have to be pursued with such holders directly. In addition, no return of amounts paid on Perkins loans will be available.

Prior to consolidation, the Department will provide FFEL and Perkins borrower defense claimants with the opportunity to obtain a pre-determination with respect to whether they are eligible for relief under the Direct Loan regulations. For FFEL and Perkins borrower defense claimants who are determined to be eligible, the Department will advise such borrowers to consolidate their loans to obtain relief and will inform them that relief cannot be granted until the loans are consolidated. For FFEL and Perkins borrowers who have already filed borrower defense claims, the Department is in the process of reviewing those claims, and no further action is required by those claimants at this time. The Department will continue to develop further guidance for FFEL and Perkins borrowers who wish to file borrower defense applications.

### E.  Federal Tax Implications

The United States Department of the Treasury (Treasury) has analyzed the federal income tax implications of BD relief for students who attended CCI schools and, as a result, has issued a revenue procedure concluding that such students do not need to include discharged amounts in their taxable income. This revenue procedure is available at https://www.irs.gov/pub/irs-drop/rp-15-57.pdf.

It should be emphasized that the revenue procedure mentioned above applies only to students who attended CCI schools. BD relief to borrowers whose loans relate to programs at other schools may have different and possibly adverse tax consequences. The Department urges potential recipients of such relief to consult competent tax advisors. The Department will communicate with Treasury regarding the number of BD claims relating to other schools and provide borrowers with information as appropriate.

### III.  The Department's Outreach Activities

The Department is making numerous efforts to reach borrowers who may be eligible for loan discharges under the CCI job placement rate findings, and continues to work to improve its outreach efforts. This outreach consists of multiple rounds of emails and postal mail to CCI borrowers who had their first loan disbursement as early as January 1, 2010. This includes email and postal mail to over 280,000 Everest and WyoTech borrowers and over 55,000 Heald borrowers. The average open rate for these email campaigns ranges between approximately 30% and 40% depending on the specific group of borrowers (for example, the open rate is lower for campaigns in which borrowers are receiving an email for the second time). These open rates are significantly higher than the average open rates for government and education industry email campaigns generally. Notably, the Department has refined these outreach efforts based on its experience with outreach to Heald borrowers. For example, the Department expanded its

outreach to include parent PLUS borrowers and enhanced the overall readability of the communications.

In addition, the Department is working closely with numerous state attorneys general who plan to contact borrowers in their states about BD through a variety of means, including telephone calls, postal mail, and/or email.  The Department expects that a number of states will soon be actively participating in CCI Borrower Defense outreach.  The Illinois and Maryland AGs' offices, among others, have been instrumental in helping to organize these outreach partnerships.  The Department also will soon launch a Facebook ad pilot designed to test whether social media is an effective means of reaching borrowers – many of whom may not regularly check email and/or postal mail.  In addition, the Department is exploring a comprehensive servicer outreach pilot to determine whether BD outreach might be improved when also conducted by servicers.

Finally, the Department has developed a "universal" BD application form to facilitate BD applications from all borrowers, regardless of their schools or alleged bases for BD relief.  Once released, the form will standardize and simplify the BD application process for students who are not covered by specific ED findings.  ED expects this form to become the primary means by which non-findings based BD claims are submitted going forward.  The universal form has been published in the Federal Register at 81 Fed. Reg. 41530, and is pending required Paperwork Reduction Act clearance.  The Department invites interested persons to submit comments on the form by August 26, 2016.  To access and review the form and all related documents, please visit *http://www.regulations.gov* and search the Docket ID number ED–2016–ICCD–0075.

## IV.   CCI Closed School Claims

As discussed in my prior report, a significant number of former CCI students who were enrolled at or around the time the colleges ceased operations have elected to seek a closed school discharge.  As of June 24, 2016, CCI borrowers have filed 12,254 applications for closed school relief.  Of those, 7,386 were eligible for relief, resulting in $97,613,625 of relief to borrowers, approximately 60 are still pending, and the remaining applications were not eligible under the closed school discharge requirements because, among other things, applicants graduated or withdrew prior to the June 20, 2014 deadline.  FSA continues to work through closed school discharge applications and anticipates additional relief to be granted in the coming months.

Approved closed school applications from CCI students break down as follows:

| School | Applications Received as of June 24, 2016 | Applications Granted as of June 24, 2016 | Loan Amounts |
|---|---|---|---|
| Heald | 7,253 | 4,722 | $69,187,570 |
| Everest | 3,607 | 2,167 | $24,420,435 |
| WyoTech | 1,394 | 497 | $4,005,620 |
| **Total** | **12,254** | **7,386** | **$97,613,625** |

## V.     The Department's Proposed Borrower Defense Regulations

To further protect borrowers and taxpayers, the Department recently announced new proposed borrower defense regulations. These regulations, which followed an extensive negotiated rulemaking process, would clarify, simplify, and strengthen the existing regulations that have governed borrower defense during my tenure as Special Master. The proposed regulations would create an improved process for borrowers who have been wronged, as well as create a process for group-wide loan discharges, which could be granted with or without applications from borrowers, when groups of students have been subject to misconduct. The proposed regulations also establish triggers that would require institutions to put up funds if events occur that indicate they are at financial risk. In addition, the proposed regulations would make it simpler for eligible students to receive closed-school discharges.

As set forth in my first report in September 2015, my paramount goal as Special Master was to help develop a fair, transparent, and efficient system for providing debt relief to deserving borrowers. I believe that the proposed regulations would go a long way toward making this goal a reality.

The proposed regulations were published in the Federal Register on June 16, 2016 and the public comment period ends August 1, 2016. The Department will publish final regulations by November 1, 2016.

## VI.    Conclusion

The BD program has made progress, but much remains to be done. To that end, the new Enforcement Office continues to grow, hiring additional attorneys and support staff to work on borrower defense, investigations, and related matters to accelerate progress on providing relief to defrauded borrowers. Under new and able leadership, and with additional resources, the BD Team expects, in the coming months, to begin adjudicating CCI claims that are not based on job placement rate findings, as well as claims by borrowers from schools other than CCI. Overall, by housing the BD program within the FSA Enforcement Office, the Department has made the program a permanent part of its broader effort to ensure greater accountability in Title IV lending.

As stated in previous reports, these efforts require close collaboration with a wide range of stakeholders, including state attorneys general, federal law enforcement agencies, advocates for students, members of Congress, and others.  Interaction with these stakeholders has been critical to the BD program's progress, and I hope and trust that it will continue.

In closing, I will take the liberty of expressing a personal opinion.  I have led a fortunate life because of education.  The privileges I have enjoyed and do enjoy are due to the educational attainments of my parents and grandparents and the opportunities that they gave me to get an education.  As a citizen and taxpayer, I can think of no better use of public funds than the opening of educational opportunity to all Americans.

Unfortunately, although the college investment still pays off for most students who graduate, any students that enroll in colleges that engage in the deceptive, fraudulent practices evidenced at CCI risk having their investment do more harm than good – leaving them with worthless degrees and substantial debt.  This result not only harms the students affected, it harms our country as a whole.  I am confident that the creation of the Enforcement Office and growth of the BD program—along with numerous other ED efforts, including gainful employment, increased accreditor accountability, and others—will go a long way toward ensuring that that the federal student loan program does what it was designed to do:  help students build a better life for themselves, their families, and the nation.

***

If any individual wishes to assert a defense to repayment of his or her federal student loan(s), please submit materials via email to FSAOperations@ed.gov or by mail to: U.S. Department of Education, PO Box 194407, San Francisco, CA 94119.

Information regarding what to include in your borrower defense application is provided at: StudentAid.gov/borrower-defense.