

United Student Aid Funds, Inc.
Mailing Address
P.O. Box 6028
Indianapolis, IN 46206-6028
www.usafunds.org

9998 Crosspoint Blvd.
Suite 310
Indianapolis, IN 46256-3307

**EXHIBIT 7**

*Helping Students Succeed.*

April 18, 2017

Abigail Shafroth, Esq.
Staff Attorney
National Consumer Law Center
7 Winthrop Square
Boston, MA  02110-1245

Re:  Borrower Defense to Repayment for          G

Dear Ms. Shafroth:

USA Funds is in receipt of your letter dated March 17, 2017 in which you request that we recognize Ms. G         complete defense to the repayment of her federal student loans, and that we suspend collections on said loans.

In its capacity as a guaranty agency in the FFEL program, USA Funds is required to act on behalf of the Department of Education (ED) to pursue collections on defaulted loans. We must follow ED's regulations and guidance in fulfillment of our fiduciary responsibilities to ED with respect to these federal loans.

Guarantors have never been authorized by ED to discharge FFELP loans under a defined borrower defense to repayment process. Rather, ED has directed guarantors to provide discharge relief in very specific and limited circumstances, applicable to limited classes of loans identified in audits conducted by their personnel.

In addition, I would like to acknowledge your reference to the December 23, 2016 letter from which you quote "return of funds paid back on FFEL loans to private holders would have to be pursued with such holders directly".  Guarantors have neither current regulatory authority nor Dear Colleague letter (DCL) guidance that allows us to refund payments on behalf of ED due to a borrower assertion of defense to repayment.

Very recently, new 'borrower defense to repayment' regulations have been promulgated, which you reference in your letter, wherein you ask that we take immediate action on behalf of your client. In order to provide implementation guidance specific to those regulations, ED published a DCL on January 18, 2017. Enclosed is the letter (GEN-17-01; please see the specific references applicable to FFELP loans). Also enclosed are the two new regulations referenced in ED's letter.

In this DCL, ED states that FFEL loan holders may implement these provisions before they become mandatory on July 1, 2017.  However, in both the specific regulations and

the content of the DCL, it is stated that the loan holder may not take action to cease collections until notified by ED. We understand their 'early implementation permission' statement to mean that if we are notified by ED that they are in receipt of a borrower defense to repayment application prior to July 1, we may cease collections at that time and throughout the time it takes ED to make the eligibility determination. USA Funds certainly intends to cease collections in this circumstance if notified by ED earlier than July 1, 2017.

I personally called the servicing staff of ED who are conducting the review of borrowers' defense to repayment applications to inquire whether they can accelerate their notice to us of their having received a borrower's application, so that we may cease collections on the applicable account. I was informed that it takes them 60-90 days to 'get the application into their system', and we should expect to be notified by them to cease collections within generally up to 120 days after the borrower submits the application to them. In addition, I was told that it will take another 12-14 months for ED to make determination of eligibility on a borrower's application.

I am sorry we cannot take action to the benefit of your client at this point in time. I believe you indicated that Ms. G_____ has already submitted her application to ED, but if she has not, we do encourage her to submit her application to ED at this site:

https://studentaid.ed.gov/sa/repay-loans/forgiveness-cancellation/borrower-defense

Sincerely,

*Barbara A. Wilhelm*

Director, Claim Management
USA Funds, Inc.
(317) 578-6060



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF POSTSECONDARY EDUCATION

January 18, 2017

GEN-17-01

Subject: Treatment of Federal Family Education Loan (FFEL) Program Loans When a Borrower Asserts a Defense to Repayment

Summary: This letter provides lenders and guaranty agencies participating in the FFEL Program (collectively referred to herein as "FFEL loan holders") with additional details about two provisions of the recently finalized borrower defense regulations - 34 CFR 682.211(i)(7) and 34 CFR 682.410(b)(6)(viii). This letter also outlines the process FFEL loan holders will follow to implement these regulations, whether they do so on the effective date of July 1, 2017, or if they choose to implement them early, per the Secretary's designation.

Dear Colleague:

The Department of Education (the Department) has received a number of inquiries from borrowers and their representatives seeking clarification on the treatment of FFEL Program Loans on which borrowers may wish to assert a defense to repayment of the loan, known as a "borrower defense." The purpose of this letter is to clarify this process for FFEL loan holders.

On November 1, 2016, the Department issued final regulations related to borrower defense (81 FR 75926). One provision of those regulations (34 CFR 682.211(i)(7)) states that "[t]he lender must grant a mandatory administrative forbearance to a borrower upon being notified by the Secretary that the borrower has made a borrower defense claim related to a loan that the borrower intends to consolidate into the Direct Loan Program for the purpose of seeking relief..." The lender will grant this forbearance in yearly increments or for a period designated by the Secretary until the loan is consolidated or until the lender is notified by the Secretary to discontinue the forbearance. Another provision of these regulations (34 CFR 682.410(b)(6)(viii)) states, "Upon notification by the Secretary that the borrower has made a borrower defense claim related to a loan that the borrower intends to consolidate into the Direct Loan Program for the purpose of seeking relief... the guaranty agency must suspend all collection activities on the affected loan for the period designated by the Secretary."

The Secretary designated 34 CFR 682.211(i)(7) and 682.410(b)(6)(viii) for early implementation. Therefore, FFEL loan holders may implement these provisions before they become mandatory on July 1, 2017, and we encourage them to do so.

Preliminary Determination of Potential Eligibility for Borrower Defense Claims

The Department is reviewing FFEL borrower defense claims that it has already received and will provide FFEL borrowers with a preliminary determination as to whether the borrowers are eligible for borrower defense loan discharge under Direct Loan regulations. In contrast to what

400 MARYLAND AVE S.W., WASHINGTON, DC 20202
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

would be required for a borrower to qualify for a borrower defense loan discharge on a FFEL Program Loan under 34 CFR 682.209(g), a borrower may qualify for a borrower defense loan discharge on a Direct Consolidation Loan that repays a FFEL Program Loan without having to establish the provision of an improper inducement, or a referral or affiliate relationship, between the lender of the underlying FFEL Program Loan and the school.

Consolidation

For borrowers who are preliminarily determined to have a valid borrower defense claim, the Department will provide the borrower with information on how to consolidate their loans into a Direct Consolidation Loan to be eligible for relief under a borrower defense. Borrowers whose claims are determined to be ineligible for relief under a borrower defense even if they were to consolidate will be notified that their claim would not be successful.

Forbearance or Suspension of Collection Activity

When a borrower submits a borrower defense claim to the Department in connection with a FFEL Program Loan, and after the Department has determined that the borrower has provided all required information, the Department will notify the FFEL loan holder in writing to place the borrower's loan(s) into administrative forbearance (if the borrower is not in default on the loan(s)) or to suspend collection activity on the borrower's loan(s) (if the borrower is in default on the loan(s)).

When a request is made by the Department that a FFEL loan holder grant forbearance or suspend collection activity on a FFEL Program Loan, lenders and guaranty agencies who have implemented section 682.211(i)(7) or 682.410(b)(6)(viii) early will be required to place the borrower's loan(s) into forbearance or to suspend collection, whichever is applicable. For a defaulted borrower, the suspension of collection activity would include suspending any Treasury offset and/or wage garnishment processes.

FFEL Program lenders may also, for a non-defaulted FFEL loan, apply an administrative forbearance to cover any period of delinquency that exists at the time the prospective period of forbearance is granted (34 CFR 682.211(f)(2)). The administrative forbearance should be applied to the borrower's account as soon as practicable after the Department makes the request.

If a borrower contacts a FFEL loan holder requesting to shorten or remove the administrative forbearance or suspension of collection activity, or to restrict it to certain loans, the FFEL loan holder must honor the borrower's request. The Department will advise borrowers to contact their FFEL loan holder with those specific requests.

Existing regulations require the lender to notify the borrower whenever an administrative forbearance is granted and about specific items, including giving the borrower the opportunity to decline the forbearance (34 CFR 682.211(e)(1) and (e)(2)(vi)). These have not changed, and nothing in this letter affects those requirements.

If a borrower inquires about forbearance related to a borrower defense claim, FFEL loan holders should direct the borrower to the borrower defense hotline (855-279-6207) for assistance with that claim or to the borrower defense webpage, available at StudentAid.gov/borrower-defense.

Other Borrower Repayment Options

If a FFEL loan holder has applied an administrative forbearance due to a borrower defense claim, the FFEL loan holder is not precluded from discussing other available options to aid the borrower in managing his or her loan payments. For example, a borrower who is eligible for administrative forbearance who might be eligible for a zero dollar payment under the Income-Based Repayment (IBR) plan could be counseled about the benefits of the IBR plan.

Similarly, nothing in this letter prevents a FFEL borrower from entering into a voluntary agreement to repay the loan through a rehabilitation agreement, loan consolidation, other satisfactory repayment arrangements, or any other voluntary payment, as provided under current regulations. A payment on a loan for which the borrower has asserted a defense to repayment claim will not prevent the borrower's claim from being granted.

We believe that these procedures will streamline the process for borrowers and FFEL loan holders. If you have any questions about this guidance, please contact the borrower defense hotline at (855) 279-6207.

Sincerely,

Gail McLarnon,
Acting Deputy Assistant Secretary
for Policy, Planning, and Innovation

**§682.211 Forbearance.**

(B) Evidence showing the amount of the monthly payments owed by the borrower or endorser to other entities for the most recent month for the borrower's or endorser's Title IV loans.

(ii) Before granting a forbearance to a borrower or endorser under paragraph (h)(2)(ii)(B) of this section, the lender shall require the borrower or endorser to submit documentation showing the beginning and ending dates that the Department of Defense considers the borrower to be eligible for a partial repayment of his or her loan under the Student Loan Repayment Programs.

(iii) Before granting a forbearance to a borrower under paragraph (h)(2)(ii)(C) of this section, the lender must require the borrower to—

(A) Submit documentation for the period of the annual forbearance request showing the beginning and anticipated ending dates that the borrower is expected to perform, for that year, the type of service described in §682.216(c); and

(B) Certify the borrower's intent to satisfy the requirements of §682.216(c).

(i) *Mandatory administrative forbearance.* (1) The lender shall grant a mandatory administrative forbearance for the periods specified in paragraph (i)(2) of this section until the lender is notified by the Secretary or a guaranty agency that the forbearance period no longer applies. The lender may not require a borrower who is eligible for a forbearance under paragraph (i)(2)(ii) of this section to submit a request or supporting documentation, but shall require a borrower (or endorser, if applicable) who requests forbearance because of a military mobilization to provide documentation showing that he or she is subject to a military mobilization as described in paragraph (i)(4) of this section.

(2) The lender is not required to notify the borrower (or endorser, if applicable) at the time the forbearance is granted, but shall grant a forbearance to a borrower or endorser during a period, and the 30 days following the period, when the lender is notified by the Secretary that—

(i) Exceptional circumstances exist, such as a local or national emergency or military mobilization; or

(ii) The geographical area in which the borrower or endorser resides has been designated a disaster area by the president of the United States or Mexico, the Prime Minister of Canada, or by a Governor of a State.

(3) As soon as feasible, or by the date specified by the Secretary, the lender shall notify the borrower (or endorser, if applicable) that the lender has granted a forbearance and the date that payments should resume. The lender's notification shall state that the borrower or endorser—

(i) May decline the forbearance and continue to be obligated to make scheduled payments; or

(ii) Consents to making payments in accordance with the lender's notification if the forbearance is not declined.

(4) For purposes of paragraph (i)(2)(i) of this section, the term "military mobilization" shall mean a situation in which the Department of Defense orders members of the National Guard or Reserves to active duty under sections 688, 12301(a), 12301(g), 12302, 12304, and 12306 of title 10, United States Code. This term also includes the assignment of other members of the Armed Forces to duty stations at locations other than the locations at which they were normally assigned, only if the military mobilization involved the activation of the National Guard or Reserves.

(5) The lender shall grant a mandatory administrative forbearance to a borrower (or endorser, if applicable) during a period when the borrower (or endorser, if applicable) is making payments for a period of—

(i) Up to 3 years of payments in cases where the effect of a variable interest rate on a standard or graduated repayment schedule would result in a loan not being repaid within the maximum repayment term; or

(ii) Up to 5 years of payments in cases where the effect of decreased installment amounts paid under an income-sensitive repayment schedule would result in the loan not being repaid within the maximum repayment term.

(6) The lender shall grant a mandatory administrative forbearance to a borrower for a period not to exceed 60 days after the lender receives reliable information indicating that the borrower (or student in the case of a PLUS loan) has died, until the lender receives documentation of death pursuant to §682.402(b)(3).

<u>(7) The lender must grant a mandatory administrative forbearance to a borrower upon being notified by the Secretary that the borrower has made a borrower defense claim related to a loan that the borrower intends to consolidate into the Direct Loan Program for the purpose of seeking relief in accordance with §685.212(k). The mandatory administrative forbearance shall be granted in yearly increments or for a period</u>

Base Document: 2016 GPO Compilation
81 FR 75926, November 1, 2016 – Final Rule [These regulations are effective July 1, 2017. Consistent with the Department's objective to improve servicing processes for title IV borrowers, the Secretary is exercising his authority under section 482(c) to designate §682.211(i)(7) for early implementation beginning on November 1, 2016, at the discretion of each loan holder, guaranty agency, or institution, as applicable.]

**§682.410 Fiscal, administrative, and enforcement requirements.**

initiates proceedings to offset a borrower's State or Federal income tax refunds and other payments made by the Federal Government to the borrower, it may not initiate those proceedings sooner than 60 days after sending the notice described in paragraph (b)(5)(ii)(A) of this section.

(vi) A guaranty agency must initiate administrative wage garnishment proceedings against all eligible borrowers, except as provided in paragraph (b)(6)(vii) of this section, by following the procedures described in paragraph (b)(9) of this section.

(vii) A guaranty agency may file a civil suit against a borrower to compel repayment only if the borrower has no wages that can be garnished under paragraph (b)(9) of this section, or the agency determines that the borrower has sufficient attachable assets or income that is not subject to administrative wage garnishment that can be used to repay the debt, and the use of litigation would be more effective in collection of the debt.

**(viii) Upon notification by the Secretary that the borrower has made a borrower defense claim related to a loan that the borrower intends to consolidate into the Direct Loan Program for the purpose of seeking relief in accordance with §685.212(k), the guaranty agency must suspend all collection activities on the affected loan for the period designated by the Secretary.**

(7) *Special conditions for agency payment of a claim.* (i) A guaranty agency may adopt a policy under which it pays a claim to a lender on a loan under the condition described in §682.404(b)(3)(ii).

(ii) Upon the payment of a claim under a policy described in paragraph (b)(7)(i) of this section, the guaranty agency shall—

(A) Perform the loan servicing functions required of a lender under §682.208, except that the agency is not required to follow the consumer reporting agency reporting requirements of that section;

(B) Perform the functions of the lender during the repayment period of the loan, as required under §682.209;

(C) If the borrower is delinquent in repaying the loan at the time the agency pays a claim thereon to the lender or becomes delinquent while the agency holds the loan, exercise due diligence in accordance with §682.411 in attempting to collect the loan from the borrower and any endorser or co-maker; and

(D) After the date of default on the loan, if any, comply with paragraph (b)(6) of this section with respect to collection activities on the loan, with the date of default treated as the claim payment date for purposes of those paragraphs.

(8) *Preemption of State law.* The provisions of paragraphs (b)(2), (5), and (6) of this section preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements of these provisions.

(9) *Administrative garnishment.* (i) If a guaranty agency decides to garnish the disposable pay of a borrower who is not making payments on a loan held by the agency, on which the Secretary has paid a reinsurance claim, it must do so in accordance with the following procedures:

(A) At least 30 days before the initiation of garnishment proceedings, the guaranty agency must mail to the borrower's last known address, a written notice described in paragraph (b)(9)(i)(B) of this section.

(B) The notice must describe—

*(1)* The nature and amount of the debt;

*(2)* The intention of the agency to collect the debt through deductions from disposable pay;

*(3)* An explanation of the borrower's rights;

*(4)* The deadlines by which a borrower must exercise those rights; and

*(5)* The consequences of failure to exercise those rights in a timely manner.

(C) The guaranty agency must offer the borrower an opportunity to inspect and copy agency records related to the debt.

(D) The guaranty agency must offer the borrower an opportunity to enter into a written repayment agreement with the agency under terms agreeable to the agency.

(E)*(1)* The guaranty agency must offer the borrower an opportunity for a hearing in accordance with paragraphs (b)(9)(i)(F) through (J) of this section and other guidance provided by the Secretary, for any objection regarding the existence, amount, or enforceability of the debt, and any objection that withholding from the borrower's disposable pay in the amount or at the rate proposed in the notice would cause financial hardship to the borrower.

*(2)* The borrower must request a hearing in writing. At the borrower's option, the hearing may be oral or written. The time and location of the hearing is established by the guaranty agency. An oral hearing may, at the borrower's option, be conducted either in-person or by telephone conference. The agency notifies the borrower of the process for arranging the time and location of an oral hearing. All telephonic charges are the responsibility of the agency. All travel expenses incurred by the borrower in connection with an in-person oral hearing are the responsibility of the borrower.