JOSEPH H. HUNT
Assistant Attorney General

DAVID L. ANDERSON
United States Attorney

MARCIA BERMAN
Assistant Branch Director

R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900
Richmond, VA 23219
(202) 616-8098 (phone)
(804) 819-7417 (fax)
robert.c.merritt@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ELISABETH DEVOS, in her official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION <br><br> Defendants. | No. 19-cv-03674-WHA <br><br> **DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** <br><br> Date:  October 24, 2019 <br> Time:  8:00 a.m. <br> Place:  Courtroom 12, 19th Floor <br> Honorable William H. Alsup |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 2

I.      Statutory And Regulatory Background ..................................................... 2

II.     Factual Background ................................................................................... 5

III.    This Lawsuit .............................................................................................. 7

LEGAL STANDARDS ........................................................................................ 8

ARGUMENT ....................................................................................................... 9

I.      Count 2 Does Not Plausibly Allege Final Agency Action .................... 10

II.     Count 2 Does Not Plausibly Allege That The Department's Inaction Is The
        Functional Equivalent of Final Agency Action .................................... 12

CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado, Inc. v. Nielsen*,
  327 F. Supp. 3d 1284 (S.D. Cal. 2018) ........................................................................ 11, 14

*Ammons v. Great Lakes Chem. Corp.*,
  No. C85-2400R, 1986 WL 10743 (W.D. Wash. July 23, 1986) ...................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 9

*Bark v. U.S. Forest Serv.*,
  37 F. Supp. 3d 41 (D.D.C. 2014) .................................................................................. 9, 10

*Bennett v. Spear*,
  520 U.S. 154 (1997) .......................................................................................................... 10

*Brown v. U.S. Customs & Border Prot.*,
  132 F. Supp. 3d 1170 (N.D. Cal. 2015) ............................................................................. 8

*California v. U.S. Dep't of Educ.*,
  No. 3:17-cv-7106 (N.D. Cal. 2017) .................................................................................... 6

*Ecology Ctr., Inc. v. U.S. Forest Serv.*,
  192 F.3d 922 (9th Cir. 1999) ............................................................................................ 12

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
  543 F.3d 586 (9th Cir. 2008) .............................................................................................. 8

*Farrell v. Tillerson*,
  315 F. Supp. 3d 47 (D.D.C. 2018) .................................................................................... 13

*Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of Interior*,
  478 F. Supp. 2d 11 (D.D.C. 2007) .................................................................................... 12

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) .............................................................................................. 9

*High Sierra Hikers Ass'n v. U.S. Forest Serv.*,
  436 F. Supp. 2d 1117 (E.D. Cal. 2006) .............................................................................. 9

*Hi-Tech Pharmacal Co. v. FDA*,
  587 F. Supp. 2d 1 (D.D.C. 2008) ...................................................................................... 13

*In re Murray Energy Corp.*,
   788 F.3d 330 (D.C. Cir. 2015) ................................................................ 11

*Leigh v. Salazar*,
   No. 3:13-cv-00006-MMD, 2014 WL 4700016 (D. Nev. Sept. 22, 2014) ................................ 14

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .......................................................................... 9, 10

*Mamigonian v. Biggs*,
   710 F.3d 936 (9th Cir. 2013) ................................................................... 8

*Manriquez v. DeVos*,
   No. 3:17-cv-7210 (N.D. Cal. 2017) .............................................................. 6

*Manriquez v. DeVos*,
   No. 18-16375 (9th Cir. 2018) .................................................................. 7

*Menzel v. Scholastic, Inc.*,
   No. 17-cv-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ............................. 11

*Norton v. S. Utah Wilderness All.* ("*SUWA*"),
   542 U.S. 55 (2004) ...................................................................... 9, 10, 12

*ONRC Action v. Bureau of Land Mgmt.*,
   150 F.3d 1132 (9th Cir. 1998) ................................................................ 13

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) .................................................................. 9

*Rosario v. U.S. Citizenship & Immigration Servs.*,
   No. C15-0813-JLR, 2017 WL 3034447 (W.D. Wash. July 8, 2017) ............................. 13, 14

*San Luis & Delta-Mendota Water Auth. v. Locke*,
   776 F.3d 971 (9th Cir. 2014) .................................................................. 9

*Sierra Club v. Thomas*,
   828 F.2d 783 (D.C. Cir. 1987) ............................................................... 13

*Skalka v. Kelly*,
   246 F. Supp. 3d 147 (D.D.C. 2017) ........................................................... 14

*Student Loan Mktg. Ass'n v. Riley*,
   907 F. Supp. 464 (D.D.C. 1995) ............................................................... 2

*Terenkian v. Republic of Iraq*,
  694 F.3d 1122 (9th Cir. 2012) ..................................................................... 9

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  136 S. Ct. 1807 (2016) ......................................................................... 10, 12

*Vill. of Bensenville v. FAA*,
  457 F.3d 52 (D.C. Cir. 2006) ..................................................................... 12

**<u>Statutes</u>**

5 U.S.C. § 551 .................................................................................................... 9

5 U.S.C. § 701 .................................................................................................... 9

5 U.S.C. § 704 .................................................................................................... 9

5 U.S.C. § 706 ........................................................................................... 1, 8, 9

20 U.S.C. § 1070 *et seq.* ................................................................................... 2

20 U.S.C. § 1078 ............................................................................................... 3

20 U.S.C. § 1087a *et seq.* ................................................................................. 2

20 U.S.C. § 1087e ............................................................................................. 3

20 U.S.C. § 1087*ll* ........................................................................................... 2

20 U.S.C. §§ 1071-1087-4 ................................................................................ 2

**<u>Rules</u>**

Fed. R. Civ. P. 12 .......................................................................................... 2, 8

**<u>Regulations and Administrative Materials</u>**

34 C.F.R. § 685.205 .......................................................................................... 4

34 C.F.R. § 685.206 ....................................................................................... 3, 4

34 C.F.R. § 685.222 ....................................................................................... 4, 5

59 Fed. Reg. 42,646 (Aug. 18, 1994) ............................................................... 3

60 Fed. Reg. 37,768 (July 21, 1995) ............................................................... 3

81 Fed. Reg. 39,330 (June 16, 2016) ........................................................... 4, 5

81 Fed. Reg. 75,926 (Nov. 1, 2016) ............................................................... 3

## NOTICE OF MOTION AND MOTION TO DISMISS

Notice is hereby given that on October 24, 2019, at 8:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable William H. Alsup, in Courtroom 12 of the 19th Floor of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendants will move the Court to dismiss Count 2 of Plaintiffs' Complaint.

Defendants move pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and seek an Order dismissing with prejudice Count 2 of Plaintiffs' Complaint.  The basis for this motion is set forth more fully in the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs, unsatisfied with the pace at which the U.S. Department of Education ("Department") is adjudicating borrower defense claims, *i.e.*, claims by federal student loan borrowers for relief from their repayment obligations based on the misconduct of their school, seek an order compelling the Department to issue decisions on the pending claims of a class of individuals Plaintiffs assert numbers more than 158,000.  *See* Class Action Compl. for Declaratory & Inj. Relief ("Compl.") ¶¶ 10, 373, ECF No. 1.  This is a challenge, then, to alleged agency inaction, and whether the Department has "brought to conclusion the applications presented to it within a reasonable time."  *Id*. ¶ 384.  That will depend on facts and circumstances specific to each named Plaintiff and is best decided with reference to the administrative record that will be filed in this case.  The Court's task in resolving this motion to dismiss is a simpler one because, in addition to their claim seeking to compel agency action unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1), *see* Compl. ¶¶ 377-389 (Count 1), which is the appropriate vehicle under the Administrative Procedure Act ("APA") to challenge an agency's failure to act, Plaintiffs bring a claim based on the same alleged inaction under Section 706(2) of the APA, which allows courts, in limited circumstances, to "hold unlawful and set aside agency *action*," 5 U.S.C. § 706(2) (emphasis added).  The Court should dismiss that claim because it does not identify the type of discrete, final agency action that is a prerequisite to judicial review under the APA.

Plaintiffs assert that the Department has adopted a "policy under which it will not grant any borrower defenses pending the outcome" of a preliminary injunction appeal considering the permissibility of the Department's method for awarding borrower defense relief.  Compl. ¶ 391. But they identify no such policy, written or otherwise, relying instead on inferences drawn from the Department's delay in adjudicating claims and public statements by Department officials that are legally insufficient to create a reviewable final agency action.  Mere delay in adjudicating claims, however, is not the same thing as a refusal to adjudicate them at all or an effective denial that could be reviewed as final agency action.  Moreover, by Plaintiffs' own definition, the "policy" they attempt to cobble together is in no sense final.  Deferring consideration of borrower defense claims pending a litigation result does not mark the consummation of the agency's decision-making process with respect to those claims, nor does it finally adjudicate them in a manner that determines the rights and obligations of the claimants.  Because Count 2 identifies no discrete agency action at all, much less *final* agency action, the Court should dismiss Count 2 for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

### I.    Statutory And Regulatory Background

Under Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 *et seq.*, the Department can enter into an agreement with an institution of higher education that permits students to receive federal grants and loans to pay for the cost of attendance at the school.  The William D. Ford Federal Direct Loan Program ("Direct Loan Program"), the largest student loan program authorized under Title IV, *see* 20 U.S.C. § 1087a *et seq.*, allows students to apply for and receive Direct Loans from the federal government to pay for their educational expenses, including tuition as well as living expenses.  *Id*. § 1087*ll*.  Title IV also includes the Federal Family Education Loan ("FFEL") Program, under which "financial institutions ma[d]e low-interest loans to students or their families, which are guaranteed by state or non-profit guaranty agencies that are reinsured by the United States, through the Department of Education."  *Student Loan Mktg. Ass'n v. Riley*, 907 F. Supp. 464, 467 (D.D.C. 1995); *see also* 20 U.S.C. §§ 1071-1087-4.  Effective July 1, 2010,

no new loans are authorized under the FFEL Program.  20 U.S.C. § 1078(a)(1); Compl. ¶ 35.  The HEA provides that, unless otherwise specified, Direct Loans "shall have the same terms, conditions, and benefits, and be available in the same amounts, as loans made" under the FFEL program.  20 U.S.C. § 1087e(a)(1).

Generally, students are obligated to repay any federal loans received.  Congress and the Department, however, have authorized the Secretary, in certain circumstances, to "relieve the borrower of his or her obligation to repay a loan on the basis of an act or omission of the borrower's school."  U.S. Department of Education, Notice of Proposed Rulemaking, 59 Fed. Reg. 42,646, 42,649 (Aug. 18, 1994).  FFEL borrowers have long been able to assert a defense to repayment during the loan collection process based on "some action or failure of the borrower's school."  *See* Department of Education, Notice of Interpretation, 60 Fed. Reg. 37,768, 37,770 (July 21, 1995). For Direct Loans, the HEA authorizes the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment." 20 U.S.C. § 1087e(h).  Pursuant to this authority, the Department promulgated regulations in 1994 (effective 1995) which were "intended to ensure that institutions participating in the FFEL and Direct Loan Programs have a similar potential liability" and permitted a borrower to "assert as a defense against repayment of his or her loan 'any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law.'" 60 Fed. Reg. at 37,769-70 (quoting 34 C.F.R. § 685.206(c) (1995)).  This standard is applicable to all loans "first disbursed prior to July 1, 2017."  34 C.F.R. § 685.206(c)(1) (2018).

The Department promulgated new borrower defense regulations in 2016.  *See* 81 Fed. Reg. 75,926 (Nov. 1, 2016).  Those regulations announced a new standard for loans first disbursed after July 1, 2017, pursuant to which a borrower can assert a borrower defense—defined as "an act or omission of the school attended by the student that relates to the making of a Direct Loan for enrollment at the school or the provision of educational services for which the loan was provided"—where (1) the borrower or a governmental agency "has obtained against the school a nondefault, favorable contested judgment based on State or Federal law in a court or administrative

tribunal of competent jurisdiction," (2) the borrower's school "failed to perform its obligations under the terms of a contract with the student," or (3) the borrower's school (or its representatives) "made a substantial misrepresentation . . . that the borrower reasonably relied on to the borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan."  34 C.F.R. § 685.222(a)-(d).[1]

In recognition of the fact that the 1994 regulations did "not provide a process for claims," U.S. Department of Education, Notice of Proposed Rulemaking, 81 Fed. Reg. 39,330, 39,346 (June 16, 2016), the 2016 regulations established procedures for the assertion and adjudication of borrower defense claims, regardless of when a loan was first disbursed.  *See* 34 C.F.R. §§ 685.206(c)(2) (2018); 685.222(a)(2).  The regulations require that individual borrowers submit an application providing evidence supporting their claim and "any other information or supporting documentation reasonably requested by the Secretary," and provide for the Secretary to designate an official to resolve the claim through a fact-finding process and issue a written decision.  *Id.* § 685.222(e).  If the borrower defense is approved, the Department official designated to decide the claim "determines the appropriate amount of relief to award the borrower, which may be a discharge of all amounts owed to the Secretary on the loan at issue and may include the recovery of amounts previously collected by the Secretary on the loan, or some lesser amount."  *Id.* § 685.222(i).  The 2016 regulations codified the Department's long-standing practice, *see, e.g.*, U.S. Department of Education, *Fact Sheet: Protecting Students from Abusive Career Colleges* (June 8, 2015)[2], of placing the loans of borrower defense applicants in forbearance[3] or, for

---

[1] On August 30, 2019, the Department publicly announced a new rule, rescinding in large part the 2016 regulations and establishing new standards governing the assertion and consideration of borrower defenses for loans first disbursed after July 1, 2020.  *See* https://www2.ed.gov/policy/highered/reg/hearulemaking/2017/borrower-defense-final-rule.pdf (unofficial version).

[2] https://www.ed.gov/news/press-releases/fact-sheet-protecting-students-abusive-career-colleges.

[3] When a borrower is in "forbearance," the Department "permit[s] the temporary cessation of payments, allow[s] an extension of time for making payments, or temporarily accept[s] smaller payments than previously scheduled."  34 C.F.R. § 685.205(a).

borrowers already in default, suspending collection activity during the pendency of their application.  34 C.F.R. § 685.222(e)(2).

## II.      Factual Background

Prior to 2015, the Department's borrower defense regulation was "rarely used."  81 Fed. Reg. at 39,330.  That year, however, Corinthian Colleges, Inc. ("Corinthian"), "a publicly traded company operating numerous postsecondary schools that enrolled over 70,000 students at more than 100 campuses nationwide, filed for bankruptcy."  *Id.* at 39,335.  Thereafter, the Department received a "flood of borrower defense claims submitted by Corinthian students.  *Id.* at 39,330.  "Corinthian's collapse almost immediately produced over 1,000" such claims, U.S. Department of Education, *First Report of the Special Master for Borrower Defense to the Under Secretary*, at 5 (Sept. 3, 2015)[4] (cited in Compl. ¶ 125), a number that approached 100,000 by the end of 2017.  *See* U.S. Department of Education, Office of Inspector General, *Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process*, at 3 (Dec. 8, 2017) ("OIG Report")[5] (cited in Compl. ¶ 169).  In 2016 alone, the Department received 77,340 borrower defense applications, many of which were submitted by Corinthian students.  *See* U.S. Department of Education, Office of Postsecondary Education, *Borrower Defense Claims: Data Analysis*, at 6 (Nov. 2017).[6]

During this time, the existing regulatory scheme was "silent on the process a borrower follows to assert a borrower defense claim."  81 Fed. Reg. at 39,335.  As the number of claims continued to increase, the Department reviewed and adapted its infrastructure for resolving such claims, appointing a Special Master to "creat[e] a process to evaluate borrower defense claims" and then creating a special "Borrower Defense Unit" within its FSA Enforcement Unit.  *See* OIG Report at 7-8.  Later, in 2017, the Department established a review panel to examine the Department's existing borrower defense process and make recommendations on how to resolve

---

[4] https://www.republicreport.org/wp-content/uploads/2015/09/report-special-master-borrower-defense-1.pdf.

[5] https://www2.ed.gov/about/offices/list/oig/auditreports/fy2018/i04r0003.pdf.

[6] https://www2.ed.gov/policy/highered/reg/hearulemaking/2017/borrowerdefense.html.

pending claims going forward.  *See* Compl. ¶¶ 164-166.  At the conclusion of this "careful review to ensure a fair and efficient process," the Department introduced, on December 20, 2017, an "improved discharge process for borrower defense to repayment . . . claims."  U.S. Department of Education, *Improved Borrower Defense Discharge Process Will Aid Defrauded Borrowers, Protect Taxpayers* (December 20, 2017) ("December Press Release").[7]  In that press release, the Department announced that it had "approved for discharge 12,900 pending claims submitted by former [Corinthian] students, and 8,600 pending claims have been denied."  *Id.*  The Department "adjudicated [claims] systematically" under this new methodology (which Defendants refer to as the "partial relief methodology" because it provided for, in some cases, less than full discharges depending on the harm suffered by borrowers at particular Corinthian programs), *id.*, resolving more than 16,000 claims between December 2017 and May 2018.  *See* U.S. Department of Education, Resp. to Sen. Patty Murray's Questions for the Record, at 32-33 (Mar. 28, 2019).[8]

The partial relief methodology has been challenged in two lawsuits filed in this District.  *See California v. U.S. Dep't of Educ.*, No. 3:17-cv-7106 (N.D. Cal. 2017); *Manriquez v. DeVos*, No. 3:17-cv-7210 (N.D. Cal. 2017).  On May 25, 2018, the court granted in part, and denied in part the *Manriquez* plaintiffs' motion for a preliminary injunction and preliminarily enjoined the Department from using the partial relief methodology.  *See Manriquez*, Order at 36-37, ECF No. 60 ("*Manriquez* PI").  The court found that the plaintiffs had demonstrated a likelihood of success with respect to their claim that the partial relief methodology violated the Privacy Act.  *Id.* at 17-22.  The Court further ordered the Department to "cease all efforts to collect debts" from borrowers who had attended certain Corinthian programs and who had either (1) received only partial relief under the partial relief methodology, or (2) had a pending application for borrower defense.  *Manriquez*, Am. Order, ECF No. 70; *see also Manriquez*, Order, ECF No. 89 (clarifying the scope of the preliminary injunction).  The Department filed a notice of appeal of the *Manriquez* PI on

---

[7]https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-taxpayers.

[8]https://www.help.senate.gov/imo/media/doc/SenMurrayQFRresponses32819LHHShearing.pdf

July 24, 2018. *Manriquez*, Notice of Appeal, ECF No. 81. Briefing concluded on March 5, 2019, and the appeal is now ripe for a decision from the Ninth Circuit. *See Manriquez v. DeVos*, No. 18-16375 (9th Cir. 2018).

Since the partial relief methodology was enjoined, borrowers have continued to file borrower defense claims. *See, e.g.*, Compl. ¶ 187. While the Department has at times been required to divert the limited resources of its staff to other projects, the Department remains committed to resolving pending borrower defense claims. *See* Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations for Fiscal Year 2019 Hearing Before the Subcomm. of the S. Comm. on Appropriations, 115th Cong., 154-55 (2018) (Department of Education Answers to Sen. Richard J. Durbin's Questions)[9] (cited in Compl. ¶ 203); *see also* Compl. ¶¶ 203-04.

**III.    This Lawsuit**

Plaintiffs filed their class action complaint on June 25, 2019, challenging the Department's delay in adjudicating borrower defense claims. *See* Compl. ¶¶ 181-82 (asserting that the Department "last approved a borrower defense application on June 12, 2018" and "last denied" one on May 24, 2018). They seek to certify a class consisting of every Direct Loan and FFEL borrower who has asserted a borrower defense—regardless of when such borrower defense was asserted—and "whose borrower defense has not been granted or denied on the merits." Compl. ¶ 371. The proposed class expressly excludes Corinthian borrowers who are members of the class certified in *Manriquez*. *Id.* According to Plaintiffs, the relief requested in this lawsuit is "simple," namely "an order compelling the Department to start granting or denying [Plaintiffs'] borrower defenses and vacating the Department's policy of withholding resolution." *Id.* ¶ 10. This case, then, is about alleged agency inaction, *i.e.*, the Department's alleged failure or, as Plaintiffs put it, "refusal," to adjudicate borrower defense claims. *See, e.g.*, Compl. ¶ 1 ("The question in this case is whether the Department's refusal to decide borrower defenses is lawful.").

---

[9] https://www.govinfo.gov/content/pkg/CHRG-115shrg89104815/pdf/CHRG-115shrg89104815.pdf.

Plaintiffs accordingly bring a claim under the APA, 5 U.S.C. § 706(1), which authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." *See* Compl. ¶¶ 377-89 (Count 1). In addition to this challenge to the Department's alleged inaction on borrower defense claims, Plaintiffs also bring a challenge, under 5 U.S.C. § 706(2), to "final agency action." *See* Compl. ¶¶ 390-404 (Count 2). Plaintiffs allege that the Department has "adopted a policy under which it will not grant any borrower defenses pending the outcome of [*Manriquez*]." *Id*. ¶ 391. Plaintiffs base this claim not on any written policy or other official action of the agency, but rather upon Plaintiffs' speculation that the Department's office of Federal Student Aid ("FSA") "was recently ordered to cease granting borrower defense applications because of the litigation" and alleged public statements by "Department officials" that "the Department cannot and will not grant borrower defenses pending the litigation." *Id*. ¶¶ 392-93. As relief for this claim, Plaintiffs ask that the Court "vacate" the Department's "refusal to grant borrower defenses." *Id*. ¶ 404. Because this claim fails to plausibly allege any final agency action, the Court should dismiss it pursuant to Rule 12(b)(1).

## LEGAL STANDARDS

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs fail to adequately allege the existence of final agency action within the meaning of the APA. As the Ninth Circuit has stated, "finality is a jurisdictional requirement to obtaining judicial review under the APA." *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008); *see also Mamigonian v. Biggs*, 710 F.3d 936, 942 (9th Cir. 2013) (dismissing case because "there was no final agency action [under the APA] for subject matter jurisdiction" (citation omitted)). Where, as here, defendants assert a facial challenge to a complaint's invocation of federal jurisdiction, courts evaluate the motion under the "same standards" applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Brown v. U.S. Customs & Border Prot.*, 132 F. Supp. 3d 1170, 1171-72 (N.D. Cal. 2015). That is, the Court's task is to "determine whether the complaint alleges 'sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face.'" *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Courts review "agency action" under a "deferential standard of review," *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014), setting such action aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA also authorizes review of agency inaction in 5 U.S.C. § 706(1), which authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." As discussed in more detail below, "[s]uits under the APA challenging both agency action under section 706(2), and agency inaction under section 706(1), require that the action or inaction being challenged be a 'final agency action.'" *High Sierra Hikers Ass'n v. U.S. Forest Serv.*, 436 F. Supp. 2d 1117, 1140 (E.D. Cal. 2006).

## **ARGUMENT**

The Court should dismiss Count 2 because it fails to plausibly allege final agency action. The APA expressly limits judicial review to "final agency action." 5 U.S.C. § 704. The term "agency action" is not "so all-encompassing as to authorize . . . judicial review over everything done" by an agency, *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (citation omitted), and the APA defines the term to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. §§ 551(13); 701(b)(2). "These various types of agency action all share a common feature—they are limited to 'discrete' actions by an agency." *Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014) (quoting *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 63 (2004)); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("Under the terms of the APA, [a plaintiff] must direct its attack against some particular 'agency action' that causes it harm."). Judicial review is only available over such discrete, circumscribed agency action that is "final." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006). Two conditions comprise a "final agency action": "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second,

the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

Here, Plaintiffs' Count 2, like their Count 1, is directed at the Department's *failure* to act. But while Section 706(1) authorizes challenges to agency inaction where "a plaintiff asserts that an agency *failed* to take a *discrete* agency action that it is *required to take*," *SUWA*, 542 U.S. at 64 (first emphasis added), Plaintiffs bring Count 2 under Section 706(2) and frame it as a challenge to agency *action*.  Because Plaintiffs do not plausibly allege the existence of any final agency action for the Court to review, however, the Court is without jurisdiction to review Count 2.

## I.   Count 2 Does Not Plausibly Allege Final Agency Action

The premise of Count 2 is that the Department has "adopted a policy under which it will not grant any borrower defenses pending the outcome of" the *Manriquez* appeal, Compl. ¶ 391, which "policy" Plaintiffs assert is "final agency action," *id*. ¶ 394.  As a preliminary matter, Plaintiffs have not identified any discrete agency action at all, much less a reviewable final agency action.  Rather than "identify some 'agency action' that affects [them] in the specified fashion," *Lujan*, 497 U.S. at 882, as is required under the APA, Plaintiffs have "attached a 'policy' label to their own amorphous description of the [Department's] practices," *Bark*, 37 F. Supp. 3d at 50.  And while Plaintiffs are quick to attach this label, their only real attempt to describe the so-called "policy" does not come until page 58 of their 61-page Complaint (setting forth Count 2), which follows 57 pages devoid of any specific factual allegations on that point.  Even there, Plaintiffs' conclusory allegations are insufficient to establish the existence of discrete agency action.

Plaintiffs identify "no written rules, orders, or even guidance documents . . . that set forth the supposed policies challenged here." *Bark*, 37 F. Supp. 3d at 50.  Instead, they vaguely claim "[u]pon information and belief" that "FSA was recently ordered to cease granting borrower defense applications because of the [*Manriquez*] litigation," and allege that "Department officials have also publicly stated, at least four times since June 2018, that the Department cannot and will not grant borrower defenses pending the litigation." Compl. ¶¶ 392-93.  While agency policy need

not be "in writing to be final and judicially reviewable," Plaintiffs must allege sufficient facts to "plausibly show the existence of the unwritten policy the Plaintiffs ask this Court to infer." *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1319-20 (S.D. Cal. 2018) (citation omitted). Plaintiffs fail to do so. Notably, they allege no *facts* about an order being given to cease granting applications because of the *Manriquez* litigation. Compl. ¶ 392. *See Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) (noting that, although facts "may be alleged upon information and belief, that does not mean that conclusory allegations are permitted," and that "[a] conclusory allegation based on information and belief remains insufficient under *Iqbal*/*Twombly*").

Nor do Plaintiffs identify the Department's public statements that "the Department cannot and will not grant borrower defenses pending the [*Manriquez*] litigation." Compl. ¶ 393. That omission is striking given the level of detail in the rest of the Complaint, which includes many quotations from statements made by Department officials at particular times. *See, e.g.*, Compl. ¶¶ 163, 164, 167, 191, 196-200. Indeed, the Complaint includes a quotation from a Department official that *contradicts* Plaintiffs' policy claim. *Id.* ¶ 203 ("In June 2018, [after the *Manriquez* injunction first issued,] a Department representative told the Senate Committee on Appropriations that it was 'working tirelessly to reduce the number of pending claims.'"). In any event, the bare allegation that Department officials made public statements about a particular issue, "unconnected to any final rule or other final agency action," *In re Murray Energy Corp.*, 788 F.3d 330, 336 (D.C. Cir. 2015), does not sufficiently allege the existence of discrete, circumscribed "agency action" that is necessary to facilitate judicial review under APA Section 706(2). *See also Ammons v. Great Lakes Chem. Corp.*, No. C85-2400R, 1986 WL 10743, at *3 (W.D. Wash. July 23, 1986) (finding that public statements by agency officials "are not final agency action because they are not definitive of legal rights or duties," "do not have the force of law," and "do not impose any burden" on regulated entities).

Moreover, any contention that the Department's purported "policy" of refusing to grant borrower defense clams is *final* action is belied by Plaintiffs' own characterization of that "policy."

As noted above, the "agency action" that Plaintiffs challenge is the Department's failure to "grant any borrower defenses *pending the outcome* of [*Manriquez*]." Compl. ¶ 391 (emphasis added); *see also id*. ¶ 393 (alleging that the Department has stated that it will not "grant borrower defenses *pending the litigation*" (emphasis added)). At most, this suggests that the Department is temporarily not granting any claims during an expressly limited period of time, *i.e.*, until the *Manriquez* litigation is resolved. According to Plaintiffs' allegations, then, the Department has not consummated its decision-making process or taken any action conclusively determining the rights of Plaintiffs or the members of their putative class. *See Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 925 (9th Cir. 1999) (noting that "steps leading to an agency decision," that are not the "final action itself," do not "mark[] the culmination of a decision making process"); *Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of Interior*, 478 F. Supp. 2d 11, 24 (D.D.C. 2007) (agency action that "reflects an interim or interlocutory decision to postpone the decisionmaking process to a more convenient time and to a more comprehensive process" before "any change in the status quo" is "not final agency action").

Nor can Plaintiffs establish that the alleged "policy" is one from which "rights or obligations have been determined." *Hawkes*, 136 S. Ct. at 1813. As noted above, borrowers are not required to make any payments on their loans until their claims are conclusively decided, *see supra* pp. 4-5, so the Department's mere delay in deciding claims does not have the same effect as its denial of such claims, *i.e.*, it does not render borrowers' loans legally enforceable and subject to repayment. *See Vill. of Bensenville v. FAA*, 457 F.3d 52, 69 (D.C. Cir. 2006) (agency action not final where it "only affects [plaintiff's] rights adversely on the contingency of future administrative action" (citation omitted)). "A failure to act is not the same thing as a denial." *SUWA*, 542 U.S. at 63. The former is "simply the omission of an action without formally rejecting a request," *id*., and, as alleged here, is not a final agency action subject to challenge under the APA Section 706(2).

## II.   Count 2 Does Not Plausibly Allege That The Department's Inaction Is The Functional Equivalent Of Final Agency Action

Ultimately, as Plaintiffs make clear throughout their Complaint, this is a case about the Department's alleged inaction, not any action that it has actually taken. *See, e.g.*, Compl. at 32

(subheading alleging that "[t]he Department's inaction causes class members ongoing harm"); *id.* ¶ 373(b) (asserting that a question common to Plaintiffs' putative class is "whether the Department's policy of inaction constitutes an unlawful withholding"). To the extent Plaintiffs can bring a Section 706(2) claim based on such inaction, they "must show that it is the functional equivalent of final agency action" on borrower defense claims. *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 10 (D.D.C. 2008). They cannot do so.

The D.C. Circuit has recognized that a court may review an agency's "failure to act under Section 706(2)" in the rare circumstance where "administrative inaction has the same impact on the rights of the parties as an express denial of relief." *Id.* (quoting *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987)). As explained above, the Department's mere delay in adjudicating borrower defense claims is not the same thing as a denial of those claims or even an outright refusal to issue a decision on them. The Complaint itself alleges that the Department represented, after the *Manriquez* PI was issued, that it is continuing to work to reduce the number of pending borrower defense claims, Compl. ¶ 203, and the delay does not impact borrowers, who continue to be placed in forbearance during the time in which their claim is pending, in the same way as an outright denial of their claims. *See Rosario v. U.S. Citizenship & Immigration Servs.*, No. C15-0813-JLR, 2017 WL 3034447, at *7 (W.D. Wash. July 18, 2017) (delay in adjudicating application for federal benefit "does not constitute final agency action"); *cf. ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1136 (9th Cir. 1998) (noting that challenges to an agency's failure to act are generally reviewed under Section 706(1), and distinguishing cases finding that "inaction equates to agency action" on the basis that "the lack of action was based on an evaluation of the merits and a reasoned decision not to act"). Thus, Plaintiffs cannot challenge the Department's inaction with respect to borrower defense claims on the theory that it constitutes an effective denial of those claims. *Cf. Farrell v. Tillerson*, 315 F. Supp. 3d 47, 61-62 (D.D.C. 2018) (final agency action requirement satisfied where agency sent plaintiff a letter indicating that it "carefully reviewed the plaintiff's request" and "rendered a decision that [it] could not approve that request,"

and making clear that "the [agency] would not proceed to continue to evaluate [plaintiff's] submission [unless further steps were taken]" (citations omitted)).

Because Count 2 challenges the Department's failure to grant borrower defenses, it "is more appropriately channeled through Section 706(1)." *Al Otro Lado*, 327 F. Supp. 3d at 1309 (noting that "Section 706(2) is typically reserved for completed agency actions whose validity can be assessed according to the bases for setting aside agency action set forth in that provision"); *see also Rosario*, 2017 WL 3034447, at *7 n.6 ("[T]he APA channels failure-to-act claims into Section 706(1)."). Because Plaintiffs already bring a Section 706(1) claim in Count 1, the Court should dismiss Count 2 as an independent cause of action. *See Leigh v. Salazar*, No. 3:13-cv-00006-MMD-VPC, 2014 WL 4700016, at *4 (D. Nev. Sept. 22, 2014) (noting that "the relief the APA provides for a failure to act is that 'the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed,'" and construing claim challenging agency's "failure to act" as "seeking relief under § 706(1)" (citation omitted)); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 n.6 (D.D.C. 2017) (rejecting Section 706(2) challenge to agency inaction and analyzing under Section 706(1) instead).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss with prejudice Count 2 of Plaintiffs' Complaint.

Dated: September 12, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT
Trial Attorney (VA Bar No. 89400)
United States Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900
Richmond, VA 23219
Tel: (202) 616-8098

Fax:  (804) 819-7417
Email:  robert.c.merritt@usdoj.gov

*Counsel for Defendants*