JOSEPH H. HUNT
Assistant Attorney General
David L. Anderson
United States Attorney
MARCIA BERMAN
Assistant Branch Director
KATHRYN C. DAVIS
R. CHARLIE MERRITT
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
(202) 616-8298 (phone)
(202) 616-8470 (fax)
Kathryn.C.Davis@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, *et al.*,<br><br>        Plaintiffs,<br><br>   v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION<br><br>        Defendants. | No. 19-cv-03674-WHA<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY**<br><br>Date:  October 24, 2019<br>Time:  8:00 a.m.<br>Place:  Courtroom 12, 19th Floor<br>Honorable William H. Alsup |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

I.     STATUTORY AND REGULATORY BACKGROUND ....................................................... 2

II.    THE DEPARTMENT'S EFFORTS TO DETERMINE
BORROWER DEFENSES .................................................................................................... 4

III.   PLAINTIFFS' CLASS CERTIFICATION REQUEST ........................................................ 6

LEGAL STANDARD ................................................................................................................... 7

ARGUMENT ................................................................................................................................ 8

I.     THE PROPOSED CLASS AND SUB-CLASS CANNOT SATISFY THE
COMMONALITY AND TYPICALITY REQUIREMENTS OF RULE 23(a) ..................... 8

     A.   Plaintiffs Have Not Shown That the Department Has a
Policy of Refusing to Adjudicate Borrower Defense Claims ............................ 9

     B.   Disparate Facts and Circumstances Will Affect
the Outcome of the Legal Issue. ..................................................................... 13

II.    THE PROPOSED CLASS AND SUB-CLASS DO NOT SATISFY THE
REQUIREMENTS OF RULE 23(b) BECAUSE CLASS-WIDE
INJUNCTIVE RELIEF IS NOT AVAILABLE ................................................................. 17

     A.   The Proposed Class is not Amenable to A Uniform Remedy. ........................ 18

     B.   The Proposed Injunction Does Not Comply
with Specificity Requirements. ...................................................................... 20

     C.   Certification of the Sub-Class is Inappropriate Because the Relief
Sought Only Would Initiate an Individualized Process. ................................. 22

III.   CLASS CERTIFICATION SHOULD BE DENIED TO THE SUBCLASS
BECAUSE THE SUB-CLASS'S CLAIM MUST BE DISMISSED ................................... 23

IV.   PRE-CERTIFICATION DISCOVERY IS NOT WARRANTED ........................................ 24

CONCLUSION    .............................................................................................................. 25

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

i

# **TABLE OF AUTHORITIES**

**Cases**

*American Council of the Blind v. Astrue,*
   2008 WL 4279674 (N.D. Cal. Sept. 11, 2008)........................................................ 20

*Artis v. Yellen,*
   307 F.R.D. 13 (D.D.C. 2014) ................................................................................ 22

*Bauer v. DeVos,*
   325 F. Supp. 3d 74 (D.D.C. 2018)........................................................................... 3

*Bauer v. DeVos,*
   332 F. Supp. 3d 181 (D.D.C. 2018)......................................................................... 3

*Bauer v.DeVos,*
   No. 17-cv-1330 (D.D.C. 2018)................................................................................ 3

*Burton v. City of Belle Glade,*
   178 F.3d 1175 (11th Cir. 1999)............................................................................. 21

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ........................................................................................ 7, 13

*California v. U.S. Dep't of Educ.,*
   No. 17-cv-07106 (N. D. Cal. 2017)........................................................................ 5

*Cobell v. Norton,*
   392 F.3d 461 (D.C. Cir. 2004).............................................................................. 21

*Cuviello v. City of Oakland,*
   2009 WL 734676 (N.D. Cal. Mar. 19, 2009) ........................................................ 20

*DL v. Dist. of Columbia,*
   713 F.3d 120 (D.C. Cir. 2013)................................................................................ 9

*Doninger v. Pac. Nw. Bell, Inc.,*
   564 F.2d 1304 (9th Cir. 1977) .............................................................................. 24

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011)............................................................................... 8, 9

*Fla. Power & Light Co. v. Lorion,*
   470 U.S. 729 (1985) ........................................................................................... 25

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

ii

*Gen. Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................... 8

*Holmes v. Cont'l Can Co.*,
  706 F.2d 1144 (11th Cir. 1983) ............................................................................ 18

*In re Online DVD Rental Antitrust Litig.*,
  2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ...................................................... 13

*In re Pesticide Action Network N. Am.*,
  532 Fed. App'x 649 (9th Cir. 2013) ................................................................ 13, 18

*Inland Empire Pub. Lands Council v. Glickman*,
  88 F.3d 697 (9th Cir. 1996) ................................................................................. 25

*Jamie S. v. Milwaukee Pub. Sch.*,
  668 F.3d 481 (7th Cir. 2012) .......................................................................... 22, 23

*Jhamb v. Cal. Physicians Serv.*,
  1996 WL 61281 (N.D. Cal. Feb. 6, 1996) ............................................................ 23

*Jiahao Kuang v. U.S. Dep't of Def.*,
  340 F. Supp. 3d 873 (N.D. Cal. 2018) .................................................................. 19

*Lamumba Corp. v. City of Oakland*,
  2007 WL 3245282 (N.D. Cal. Nov. 2, 2007) ..................................................... 7, 22

*Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*,
  216 F.3d 577 (7th Cir. 2000) ............................................................................... 18

*Lujan v. Nat'l Wildlife Fed.*,
  497 U.S. 871 (1990) ............................................................................................. 18

*Manriquez v. DeVos*,
  No. 18-16375 (9th Cir. 2018) ................................................................................ 5

*Manriquez v. Devos*,
  No. 17-cv-07210 (N. D. Cal. 2017) ........................................................................ 5

*Mantolete v. Bolger*,
  767 F.2d 1416 (9th Cir. 1985) .............................................................................. 24

*Martin v. O'Rourke*,
  891 F.3d 1338 (Fed. Cir. 2018) ............................................................................ 14

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

iii

*Martinez v. Brown*,
    2011 WL 1130458 (S.D. Cal. Mar. 25, 2011)............................................................... 19

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
    336 F.3d 1094 (D.C. Cir. 2003)...................................................................................... 14

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)...................................................................................... 7, 8

*NLRB v. USPS*,
    486 F.3d 683 (10th Cir. 2007)........................................................................................ 20

*NLRB v. Express Pub. Co.*,
    312 U.S. 426 (1941)........................................................................................................ 21

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) (*SUWA*).................................................................................. 18, 21

*Nw. Immigrant Rights Project v. U.S. Citizenship & Immigration Servs.*,
    325 F.R.D. 671 (W.D. Wash. 2016)............................................................................... 10

*O'Connor v. Boeing N. Am., Inc.*,
    184 F.R.D. 311 (C.D. Cal. 1998).................................................................................... 22

*ONRC Action v. Bureau of Land Mgmt.*,
    150 F.3d 1132 (9th Cir. 1998)........................................................................................ 10

*Padilla v. ICE*, 354 F. Supp. 3d 1218 (W.D. Wash. 2018) ............................................... 14

*Parsons v. Ryan*,
    784 F.3d 571 (9th Cir. 2015)............................................................................... 8, 22, 25

*Rosario v. U.S. Citizenship & Immigration Servs.*,
    2017 WL 3034447 (W.D. Wash. July 8, 2017)............................................................... 10

*Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ....................................................................................................... 22

*Shook v. Bd. of Cty. Comm'rs of Cty. of El Paso*,
    543 F.3d 597 (10th Cir. 2008)........................................................................................ 19

*Telecomms. Research & Action Center v. FCC*,
    750 F.2d 70 (D.C.Cir.1984) (*TRAC*) ..................................................................... 14, 17

*Vietnam Veterans of Am. v. CIA*,

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

iv

288 F.R.D. 192 (N.D. Cal. 2012) ................................................................................................ 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................................... passim

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .............................................................................................. 9

**Statutes**

5 U.S.C. § 706 ......................................................................................................................... passim

20 U.S.C. § 1070 ..................................................................................................................... 2, 17

20 U.S.C. § 1087a ......................................................................................................................... 2

20 U.S.C. § 1087e ......................................................................................................................... 3

20 U.S.C. §§ 1071-1087-4 ............................................................................................................ 2

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................... passim

Fed. R. Civ. P. 65 .................................................................................................................... 18, 20

**Regulations**

34 C.F.R. § 685.206 ............................................................................................................ 3, 16, 17

34 C.F.R. § 685.222 ............................................................................................. 3, 4, 15, 16, 17, 23

59 Fed. Reg. 42646 ....................................................................................................................... 2

81 Fed. Reg. 39330 ....................................................................................................................... 4

81 Fed. Reg. 75926 ....................................................................................................................... 3

82 Fed. Reg. 49155 ....................................................................................................................... 3

83 Fed. Reg. 6458 ......................................................................................................................... 3

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

v

### INTRODUCTION

Plaintiffs have moved under Federal Rule of Civil Procedure 23 to certify a class consisting of individuals who have a borrower defense application pending with the U.S. Department of Education (the Department), as well as a sub-class of those individuals whose borrower defense claims "meet the *prima facie* criteria for a loan discharge []as established by Department policies." Pls.' Mot. for Class Cert. or, in the Alternative, Limited Class Disc. at 1, ECF No. 20 (Pls.' Mot.). Certification of Plaintiffs' proposed class action is not permissible because Plaintiffs have failed to meet their burden of demonstrating the four prerequisites to certification set forth in Federal Rule of Civil Procedure Rule 23(a) and of showing that the injunctive relief requested can be provided uniformly across the putative class and sub-class, as required by Rule 23(b)(2).

Plaintiffs do not meet the commonality and typicality requirements of Rule 23(a) because their claims do not present questions of law and fact that can be resolved by this Court "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs have not shown the Department has implemented a policy of refusing to grant or deny borrower defenses, as they allege, and their own submissions contradict that claim. Indeed, Plaintiffs intend to request dismissal of the sub-class's "policy" challenge, which Defendants recently moved to dismiss. Nor can Plaintiffs show that the Department has per se "unlawfully withheld or unreasonably delayed" decisions on their borrower defense claims. 5 U.S.C. § 706(1). Thus, the Court's resolution of Plaintiffs' Administrative Procedure Act (APA) claims will require individualized determinations that will be dependent on the disparate circumstances of each borrower defense.

For the same reasons, Plaintiffs do not demonstrate that the relief they request—an injunction compelling the Department to grant or deny borrower defenses—will provide relief to each named Plaintiff and class member in a single order, as required by Rule 23(b). The requested relief is likewise defective because it is not sufficiently specific and merely commands the Department to "obey the law," which risks injecting the Court into day-to-day agency operations to determine how best the Department should comply with its statutory and regulatory mandates. Injunctive relief as to the proposed sub-class likewise is deficient because, instead of providing final relief, it will only trigger subsequent individualized determinations of putative sub-class members'

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

1

eligibility for loan discharge.

Certification of the proposed sub-class is inappropriate for an additional reason: the Court lacks jurisdiction over the claim asserted on its behalf and the parties agree on that claim's dismissal.

Moreover, there is no reason for this Court to grant relief on Plaintiffs' alternative request for class discovery.  Plaintiffs have attached or cited to a number of materials in support of their class allegations, primarily from statements or other materials of the Department itself.   That evidence does not support class certification—in fact, it undercuts Plaintiffs' allegations—and they have not shown how discovery will likely lead to persuasive evidence substantiating their claims.

The Court should deny Plaintiffs' Motion.

## **BACKGROUND**

## I.   STATUTORY AND REGULATORY BACKGROUND

The Secretary of Education is charged with carrying out certain student loan programs in furtherance of Title IV of the Higher Education Act of 1965 (HEA), 20 U.S.C. § 1070 *et seq.*, which was enacted "to assist in making available the benefits of postsecondary education to eligible students" through financial assistance to students and institutions of higher education.  *Id.* § 1070(a). Under this authority, Congress created the William D. Ford Federal Direct Loan Program (Direct Loan Program), *see id.* § 1087a *et seq.*, and the Federal Family Education Loan (FFEL) Program, *see id.* §§ 1071-1087-4.

Although borrowers in these loan programs are obligated to repay any federal loans received, Congress has authorized the Secretary, in certain circumstances, to "relieve the borrower of his or her obligation to repay a loan on the basis of an act or omission of the borrower's school."  59 Fed. Reg. 42646, 42649 (Aug. 18, 1994).  Pursuant to its authority under the HEA, the Department promulgated regulations in 1994 (effective 1995) which were "intended to ensure that institutions participating in the FFEL and Direct Loan Programs have a similar potential liability" and permitted a borrower to "assert as a defense against repayment of his or her loan 'any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law.'"   60 Fed. Reg. 37768, 37769-70 (July 21, 1995) (quoting 34 C.F.R. §

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

2

685.206(c) (1995)); *see* 20 U.S.C. § 1087e(h) (providing authority with respect to Direct Loans). This standard is applicable to all loans "first disbursed prior to July 1, 2017."    34 C.F.R. § 685.206(c)(1).

The Department promulgated new borrower defense regulations in 2016.  *See* 81 Fed. Reg. 75926 (Nov. 1, 2016).  Those regulations announced a new standard for loans first disbursed on or after July 1, 2017, pursuant to which a borrower can assert a borrower defense—defined as "an act or omission of the school attended by the student that relates to the making of a Direct Loan for enrollment at the school or the provision of educational services for which the loan was provided"— where (1) the borrower or a governmental agency "has obtained against the school a nondefault, favorable contested judgment based on State or Federal law in a court or administrative tribunal of competent jurisdiction," (2) the borrower's school "failed to perform its obligations under the terms of a contract with the student," or (3) the borrower's school (or its representatives) "made a substantial misrepresentation . . . that the borrower reasonably relied on to the borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan." 34 C.F.R. § 685.222(a)-(d).[1]

The 2016 regulations also established procedures for the assertion and adjudication of borrower defense claims, regardless of when a loan was first disbursed.[2]  *See id.* §§ 685.206(c)(2); 685.222(a)(2).  The regulations require that individual borrowers submit an application providing evidence supporting their claim and "any other information or supporting documentation reasonably

---

[1] On August 30, 2019, the Department publicly announced a new rule, rescinding in large part the 2016 regulations and establishing new standards governing the assertion and consideration of borrower defenses for loans first disbursed on or after July 1, 2020.  *See* https://www2.ed.gov/policy/highered/reg/hearulemaking/2017/borrower-defense-final-rule.pdf (unofficial version).

[2] The 2016 regulations were set to take effect on July 1, 2017; however, the Department delayed the effective date of the regulations.  *See* 83 Fed. Reg. 6458 (Feb. 14, 2018); 82 Fed. Reg. 49155 (Oct. 24, 2017); 82 Fed. Reg. 27621 (June 16, 2017).  The delay was challenged by two borrowers and a coalition of state attorneys general.  *See Bauer v. DeVos*, No. 17-cv-1330 (D.D.C. 2018).  In September 2018, the *Bauer* court granted the plaintiffs' motion for summary judgment, 325 F. Supp. 3d 74 (D.D.C. 2018), and vacated the final rule delaying the 2016 regulations, 332 F. Supp. 3d 181 (D.D.C. 2018).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

3

requested by the Secretary," and provide for the Secretary to designate an official to resolve the claim through a fact-finding process and issue a written decision.  *Id*. § 685.222(e)(1)(ii).  If the borrower defense is approved, the Department official designated to decide the claim "determines the appropriate amount of relief to award the borrower, which may be a discharge of all amounts owed to the Secretary on the loan at issue and may include the recovery of amounts previously collected by the Secretary on the loan, or some lesser amount."  *Id*. § 685.222(i)(1).

## II.     THE DEPARTMENT'S EFFORTS TO DETERMINE BORROWER DEFENSES

Prior to 2015, the Department's borrower defense regulation was "rarely used."  81 Fed. Reg. 39330, 39330 (June 16, 2016).  That year, however, Corinthian Colleges, Inc. (Corinthian), "a publicly traded company operating numerous postsecondary schools that enrolled over 70,000 students at more than 100 campuses nationwide, filed for bankruptcy."  *Id*. at 39335.  Thereafter, the Department received a "flood of borrower defense claims submitted by Corinthian students."  *Id*. at 39330.  "Corinthian's collapse almost immediately produced over 1,000" such claims, U.S. Dep't of Ed., *First Report of the Special Master for Borrower Defense to the Under Secretary*, at 5 (Sept. 3, 2015),[3] a number that approached 100,000 by the end of 2017, *see* U.S. Dep't of Ed., Office of Inspector General, *Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process*, at 3 (Dec. 8, 2017), ECF No. 20-15(OIG Report).  In 2016 alone, the Department received 77,340 borrower defense applications, many of which were submitted by Corinthian students.  *See* U.S. Dep't of Ed., *Borrower Defense Claims: Data Analysis*, at 6 (Nov. 2017).[4]

During this time, the existing regulatory scheme was "silent on the process a borrower follows to assert a borrower defense claim."  81 Fed. Reg. at 39335.  As the number of claims continued to increase, the Department reviewed and adapted its infrastructure for resolving such claims, appointing a Special Master to "creat[e] [] a process to evaluate borrower defense claims" and then creating a special "Borrower Defense Unit" (BDU) within its FSA Enforcement Unit.  *See* OIG Report at 7.  Later, in 2017, the Department established a review panel to examine the

---

[3] http://docplayer.net/2211064-Creation-of-a-simple-application-for-debt-relief-for-all-borrowers-applying-for-loan-discharges-based-on-borrower-defense.html
[4] https://www2.ed.gov/policy/highered/reg/hearulemaking/2017/borrowerdefense.html

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

4

Department's existing borrower defense process and make recommendations on how to resolve pending claims going forward. *See id.* at 33. At the conclusion of this "careful review to ensure a fair and efficient process," the Department introduced, on December 20, 2017, an "improved discharge process for borrower defense to repayment . . . claims." U.S. Dep't of Ed., *Improved Borrower Defense Discharge Process Will Aid Defrauded Borrowers, Protect Taxpayers* (Dec. 20, 2017) (December Press Release).[5] In that press release, the Department announced that it had "approved for discharge 12,900 pending claims submitted by former Corinthian . . . students, and 8,600 pending claims have been denied." *Id.* The Department "adjudicated [claims] systematically" under this new methodology (which Defendants refer to as the "partial relief methodology" because it provided for, in some cases, less than full discharges depending on the harm suffered by borrowers at particular Corinthian programs). *Id.* The partial relief methodology has been challenged in two lawsuits filed in this District. *See California v. U.S. Dep't of Ed.*, No. 17-cv-7106 (N.D. Cal. 2017); *Manriquez v. DeVos*, No. 17-cv-7210 (N.D. Cal. 2017). On May 25, 2018, the court granted in part, and denied in part the *Manriquez* plaintiffs' motion for a preliminary injunction and preliminarily enjoined the Department from using the partial relief methodology. *See Manriquez*, Order at 36-37, ECF No. 60 (*Manriquez* PI); *see also Manriquez*, Order, ECF No. 89 (clarifying the scope of the preliminary injunction). The Department appealed the *Manriquez* PI, which is now ripe for a decision from the Ninth Circuit. *See Manriquez v. DeVos*, No. 18-16375 (9th Cir. 2018).[6]

Since the partial relief methodology was enjoined, the Department continues to be inundated with borrower defense claims. *See, e.g.*, U.S. Dep't of Ed., *Borrower Defense - Quarterly Report - for quarter end 3/31/2019* (showing 21,571 new borrower defenses received) (March 2019 Quarterly Report).[7] Nevertheless, the Department remains committed to resolving pending borrower defense claims. *See, e.g.*, Dep'ts of Labor, Health and Human Servs., and Ed., and Related Agencies Approp.

---

[5] https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-taxpayers

[6] In May 2017, the Department also discharged in full 16,000 claims approved during the prior Administration. *See* Mem. from James Manning, Acting Undersecretary, to the Sec'y of Ed. (May 4, 2017), ECF No. 20-21. These discharges did not involve the partial relief methodology.

[7] https://studentaid.ed.gov/sa/about/data-center/student/loan-forgiveness/borrower-defense-data

Defendants' Opposition to Plaintiffs' Motion for Class Certification
Or, In the Alternative, Limited Class Discovery
Case No.: 19-cv-03674-WHA

5

for Fiscal Year 2019 Hr'g Before the Subcomm. of the S. Comm. on Approp., 115th Cong., 154-55 (2018) (Resps. to Sen. Richard J. Durbin's Questions For the Record) (Durbin QFR).[8]

## III.     PLAINTIFFS' CLASS CERTIFICATION REQUEST

Plaintiffs filed a class action complaint on June 25, 2019, challenging the Department's alleged delay in adjudicating borrower defense claims.  *See* Compl. ¶¶ 181-82, ECF No. 1 (asserting that the Department "last approved a borrower defense application on June 12, 2018" and "last denied" one on May 24, 2018).  Plaintiffs bring a claim under APA § 706(1), which authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed."  *See id.* ¶¶ 377-89 (Count 1).  Plaintiffs also brought a claim under APA § 706(2), claiming that the Department's purported "policy" to "not grant any borrower defenses pending the outcome of [*Manriquez*]" is arbitrary and capricious.  *Id.* ¶¶ 391, 394; *see id.* ¶¶ 390-404 (Count 2).  Plaintiffs recently indicated, however, that they do not oppose Defendants' request for dismissal of that claim and "will request [] the Court dismiss Count 2."  Jt. Case Mgmt. Stmt. at 6, ECF No. 36.   Plaintiffs seek injunctive relief compelling the Department to grant or deny borrower defenses and to notify borrowers of such decisions.  *Id.* at 61 (Prayer for Relief ¶¶ F-H).

On July 23, 2019, Plaintiffs moved to certify a class consisting of every Direct Loan and FFEL borrower who has asserted a borrower defense and "whose borrower defense has not been granted or denied on the merits."  Pls.' Mot. at 1.  The proposed class expressly excludes Corinthian borrowers who are members of the class certified in *Manriquez*.  *Id.*  Plaintiffs also seek to certify a sub-class that includes every Direct Loan and FFEL borrower who has asserted a borrower defense, "who meet[s] the *prima facie* criteria for a loan discharge (as established in Department policies, including but not limited to [three Department memoranda]), and who have not received notice of their borrower defense decision."  *Id.*[9]  Plaintiffs brought their now abandoned APA § 706(2) claim (Count 2) exclusively on behalf of two named Plaintiffs and the proposed sub-class.

On September 12, 2019, Defendants filed a Partial Motion to Dismiss, seeking dismissal of

---

[8] https://www.govinfo.gov/content/pkg/CHRG-115shrg89104815/pdf/CHRG-115shrg89104815.pdf
[9] Defendants assume that because Plaintiffs carve the *Manriquez* class out of the proposed class in this suit, that *Manriquez* class members are likewise excluded from the proposed sub-class.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

6

1   Plaintiffs' § 706(2) claim (Count 2) for lack of jurisdiction pursuant to Federal Rule of Civil

2   Procedure 12(b)(1).   *See* Defs.' Partial Mot. to Dismiss, ECF No. 35 (Defs.' Mot.).   As noted,

3   Plaintiffs do not intend to oppose Defendants' Motion.   *See* Jt. Case Mgmt. Stmt. at 6.

### LEGAL STANDARD

5   Federal Rule of Civil Procedure 23 provides "an exception to the usual rule that litigation is

6   conducted by and on behalf of the individual named parties only," *Wal-Mart*, 564 U.S. at 248

7   (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)), but it allows for such an exception

8   only where a would-be class representative meets a series of conditions set forth in the rule.   *See*

9   Fed. R. Civ. P. 23(a) ("[p]rerequisites" to class certification) and 23(b) (additional requirements).

10   First, under Rule 23(a), the party seeking certification must demonstrate that:  "(1) the class

11   is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

12   common to the class; (3) the claims or defenses of the representative parties are typical of the claims

13   or defenses of the class; and (4) the representative parties will fairly and adequately protect the

14   interests of the class." Fed. R. Civ. P. 23(a).  The class definition also must set forth a class which

15   is ascertainable and clearly identifiable.  *Lamumba Corp. v. City of Oakland,* 2007 WL 3245282, at

16   *3 (N.D. Cal. Nov. 2, 2007).

17   Second, the proposed class must satisfy one of the three requirements listed in Rule 23(b).

18   *See Wal-Mart*, 564 U.S. at 344-47.  Plaintiffs rely only on Rule 23(b)(2), which applies "when 'the

19   party opposing the class has acted or refused to act on grounds that apply generally to the class, so

20   that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as

21   a whole.'"  *Id.* at 360 (quoting Fed. R. Civ. P. 23(b)(2)).

22   "The party seeking class certification has the burden of affirmatively demonstrating that the

23   class meets the requirements of [Rule] 23."  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588

24   (9th Cir. 2012).  "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart*, 564 U.S. at 350.

25   Instead, Plaintiffs "must be prepared to prove that there are *in fact* sufficiently numerous parties,

26   common questions of law or fact, etc."  *Id.*  As a result, "[w]hen considering class certification under

27   Rule 23, district courts are not only at liberty to, but must perform 'a rigorous analysis [to ensure]

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

7

that the prerequisites of Rule 23(a) have been satisfied.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *Wal-Mart*, 564 U.S. at 350-51); *Mazza*, 666 F.3d at 588 ("Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.") (citation omitted).  This, in turn, necessarily may "entail some overlap with the merits of the plaintiff's underlying claim." *Ellis*, 657 F.3d at 980; *see also Parsons v. Ryan*, 784 F.3d 571, 575 (9th Cir. 2015) ("The commonality analysis will often overlap with plaintiffs' merits contentions.").

## ARGUMENT

### I.   THE PROPOSED CLASS AND SUB-CLASS CANNOT SATISFY THE COMMONALITY AND TYPICALITY REQUIREMENTS OF RULE 23(a)

Both the "commonality" and "typicality" provisions of Rule 23(a) "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Wal-Mart*, 564 U.S. at 349 n.5; *see also Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (explaining that the "commonality" and "typicality" provisions of Rule 23(a) "tend to merge").

The Supreme Court has cautioned that the language of Rule 23(a)(2) "is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.'"  *Wal-Mart*, 564 U.S. at 349 (citation omitted).  Plaintiffs must show more than "merely that [the proposed class and sub-class members] have all suffered a violation of the same provision of law."  *Id.* ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'").  Rather, their "claims must depend upon a common contention  . . . *of such a nature that it is capable of classwide resolution.*"  *Id.* (emphasis added).  This means that a class may be certified only if "plaintiffs share similar potentially viable claims whose 'truth or falsity' can be resolved one way or the other '*in one stroke.*'"  *Parsons*, 784 F.3d at 575 (emphasis added) (quoting *Wal-Mart*, 564 U.S. at 350).[10]  In other words, "[w]hat matters to class certification is not the raising of common

---

[10] Similarly, "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

8

'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal alternations omitted).  Plaintiffs' burden is significant, requiring evidence and proof that a common question, injury, and contentions in fact exist.  *Ellis*, 657 F.3d at 983.

Class certification must be denied here because the named Plaintiffs' and proposed class and sub-class members' claims cannot be resolved "in one stroke."  Although Plaintiffs arguably have raised common questions (*i.e.,* has the Department violated APA § 706(1) by not yet issuing an approval or denial of their borrower defense claims?), those questions do *not* have a common answer.  First, Plaintiffs have not met their burden of showing that the Department is operating under a policy applicable to pending borrower defense claims as a whole; in fact, Plaintiffs have *dropped* the sub-class's claim directly challenging the alleged "policy."  Second, since those pending borrower defense claims are factually diverse, an individualized analysis is necessary to determine if the Department has unreasonably delayed action with respect to any particular claim.  Accordingly, the Court cannot uniformly address the claims raised in this action on a class-wide basis as required by Rule 23(a), and Plaintiffs' motion for class certification must be denied.

### A. Plaintiffs Have Not Shown That the Department Has a Policy of Refusing to Adjudicate Borrower Defense Claims.

The Supreme Court held in *Wal-Mart* that a named plaintiff may bridge the "wide gap" between his individual claim and "the existence of a class of persons who have suffered the same injury" by showing the injury results from a policy applicable class-wide.  *Wal-Mart*, 564 U.S. at 352-53.  But this manner of bridging the gap requires "[s]ignificant proof that [the defendant] operated under a general policy."  *Id.* at 353 (alteration in original).  And where such proof of the policy is absent, the plaintiff has not shown commonality under Rule 23(a).  *Id.* (holding that the plaintiffs failed to show a policy of discrimination by Wal-Mart where evidence showed that the policy forbid and penalized discrimination); *see DL v. Dist. of Columbia*, 713 F.3d 120, 127-28 (D.C. Cir. 2013) (denying class certification where the named plaintiffs showed "no single or uniform

---

class members have been injured by the same course of conduct."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

9

policy or practice that bridges all [the plaintiffs'] claims"); *see also Nw. Immigrant Rights Project v. U.S. Citizenship & Immigration Servs.*, 325 F.R.D. 671, 695 (W.D. Wash. 2016) (denying class certification in a case raising a § 706(1) claim where the "anecdotal evidence in the record" was insufficient to meet the plaintiffs' burden of demonstrating commonality). That is the case here.

Plaintiffs' claims of commonality and typicality between the named plaintiffs and the proposed class and sub-class members is founded on erroneous speculation that the Department has made a universal decision not to grant or deny any pending borrower defense claims. Pls.' Mot. at 19-20 (alleging a "blanket refusal to adjudicate borrower defenses" and a "policy of refusing to grant borrower defenses" of proposed sub-class members); *see id.* at 20 (alleging "the Department is universally refusing to grant or deny any borrower defense"). Plaintiffs' attempt to muster evidentiary support for such theory, however, fails to meet their significant burden under Rule 23(a). *See, e.g.*, *Wal-Mart*, 564 U.S. at 353. In fact, much of the evidence they cite undercuts the allegation that the Department is implementing a "policy of inaction." Pls.' Mot. at 2.

Plaintiffs identify no such policy, written or otherwise, relying instead on inferences drawn from the Department's delay in adjudicating claims and from various publicly available materials relating to the Department's processing of borrower defense claims. Plaintiffs allege no *facts* about an order being given to cease from adjudicating all borrower defense claims or from granting applications of proposed sub-class members because of the *Manriquez* litigation. Moreover, the fact that the Department has not recently issued a borrower defense decision does not constitute a discrete, deliberate determination by the agency to refuse to issue decisions on pending claims across-the-board. *Cf. Rosario v. U.S. Citizenship & Immigration Servs.*, 2017 WL 3034447, at *7 (W.D. Wash. July 8, 2017) (delay in adjudicating application for federal benefit "does not constitute final agency action"); *cf. ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1136 (9th Cir. 1998) (citing cases finding that "inaction equates to agency action" where it is "based on an evaluation of the merits and a reasoned decision not to act"). Indeed, the fact that Plaintiffs' evidentiary showing amounts to cobbled-together excerpts of statements and reports from which Plaintiffs cherry-pick information only emphasizes the lack of a uniform, or "policy," decision in this case.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

10

A closer review of the materials relied upon by Plaintiffs demonstrates both that the Department has engaged in the process of adjudicating borrower defenses since the change in Administration in January 2017, and that the delay in issuing decisions on pending claims results from myriad reasons, not a purported "policy of refus[al]."  Pls.' Mot. at 21.  For example, as evidence of a policy, Plaintiffs point to the Department's decision in 2017 to temporarily stop adjudicating borrower defense claims while the Inspector General reviewed the overall adjudication process—a review the Department requested—and while the new Administration reviewed applicable policies.  *See id.* at 10-11.  As even Plaintiffs acknowledge, this was merely a "pause" of the process, *id.* at 10, and not even a complete one at that.  Although some aspects of the adjudication process were put on hold, evidence submitted by Plaintiffs shows that the BDU continued to review and summarize unique borrower defense claims, continued to review certain types of claims to make preliminary determinations based on findings set forth in Department memoranda, and developed a new claims management tool.  *See* OIG Report at 4, 13.[11]  The Department also reviewed and updated the methodology it used to determine the amount of relief granted to borrowers whose borrower defense claims have been approved.  *See* Durbin QFR at 155; *see also* December Press Release.

It is also undisputed that since January 2017, notwithstanding the internal review period, the Department has issued decisions on tens of thousands of borrower defense claims.  In May 2017, the Department discharged in full 16,000 claims that were approved under the prior Administration.  *See* Mem. from James Manning, Acting Undersecretary, to the Sec'y of Ed. (May 4, 2017), ECF No. 20-21.  It further announced in December 2017 that it was discharging in full or in part 12,900 claims submitted by former Corinthian students, and denying 8,600 pending claims.  *See* December Press Release (cited in Pls.' Mot. at 11-12).  And approximately 2,400 additional claims were later approved for partial discharge.  *See* U.S. Dep't of Ed., Resp. to Sen. Patty Murray's Questions for the Record (Mar. 28, 2019), at 20, ECF No. 20-20 (approximately 23,900 borrower defense

---

[11] The Department has further explained that, during the temporary hold, BDU staff worked on "developing a database to manage [borrower defense] claims and migrating the existing . . . system into it;" "supporting the [Inspector General] review . . . ;" "assessing the population of [borrower defense] claims beyond just those from Corinthian;" and "developing and pilot-testing various review process streams."  *See* Durbin QFR at 154.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

11

applications approved  but not yet discharged due to the partial relief methodology) (Murray QFR).

As further evidence of an alleged policy, Plaintiffs claim that the Department is currently "refus[ing] to grant *any* borrower defenses because of the . . . *Manriquez* injunction," relying solely on a selectively quoted statement of a Department official during a Q&A session in April 2019.  Pls.' Mot. at 13 (citing Video of Principal Deputy Under Secretary Diane Auer Jones at the Bipartisan Policy Center at 1:02:30 (Apr. 23, 2019) (Q&A Video).[12]  Plaintiffs conspicuously fail to quote the official's full comment.  She said, "[U]ntil we have clear direction from the court *or a different methodology* that doesn't run the same challenges . . . [the Department is] in a holding pattern."  *Id.* at 1:03:15 (emphasis added).  The official's reference to the *Manriquez* injunction and appeal thus cannot bear Plaintiffs' characterization as a "refus[al]" to grant claims, Pls.' Mot. at 13, especially where the official went on to say that the Department is in fact "reviewing other options" for a methodology, Q&A Video at 1:03:40.  Plaintiffs' misrepresentation is even more egregious because the official's comments about *Manriquez* were directed only to claims where a borrower is eligible for partial relief under the Department's methodology.  *See id.* at 1:03:15.  The official specifically stated that the Department is "continuing to move forward to process if a student should get 100% relief or [if] they are not eligible" for relief.  *Id.* at 1:03:00.  The official's statements are consistent with responses the Department provided to Senator Patty Murray in March 2019, in which it indicated that "[t]he Department is considering alternative relief methodologies" and also "has decided to move forward with processing denials while awaiting the court's decisions [in *Manriquez*]."  Murray QFR at 20.

Indeed, not only does Plaintiffs' evidence reflect a number of actions the Department has taken since 2017 related to borrower defense claims, it also shows there is no single or universally applicable reason for the alleged delay in issuing additional decisions on the hundreds of thousands of claims that are pending.  In a recent letter to Senator Murray, the Department cited on-going litigation, the prioritization of the Department's efforts to implement the 2016 borrower defense regulations and to transition to a new borrower defense application processing platform, support of

---

[12] https://bipartisanpolicy.org/event/schools-out-forever-reforming-the-college-closure-process/

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

12

oversight and transparency efforts, as well as limited available resources to explain the nominal change in the Department's quarterly borrower defense numbers.[13]  *See* Letter from Mark Brown, Chief Operating Officer, to Senator Patty Murray (Mar. 29, 2019), at 1-2, ECF No. 20-24.  This evidence only further belies Plaintiffs' "policy" theory.

Because Plaintiffs have failed to prove that the named Plaintiffs and proposed class and sub-class share the same injury based on the same course of conduct—*i.e.*, a Department policy of refusing to adjudicate any borrower defenses—it has not met the requirements of Rule 23(a)(2) and (a)(3), and class certification should be denied.

**B.**    **Disparate Facts and Circumstances Will Affect the Outcome of the Legal Issue.**

Class treatment is also unavailable if it is likely that "differences in the factual background of each claim will affect the outcome of the legal issue." *Califano*, 442 U.S. at 701.  Thus, "commonality" and "typicality" are absent if the ultimate determination of liability would require an inquiry into each class member's unique circumstances. *See Wal-Mart*, 564 U.S. at 352; *see also In re Online DVD Rental Antitrust Litig.*, 2010 WL 5396064, at *4 (N.D. Cal. Dec. 23, 2010) ("In evaluating typicality, the court should consider whether the named plaintiffs' individual circumstances are markedly different . . . .") (internal citations omitted).

Plaintiffs argue incorrectly that the Court can resolve all claims of the named Plaintiffs and proposed class members by determining that the Department has a mandatory legal duty to decide borrower defense claims and that its failure to grant or deny claims since June 2018 "*per se* constitute[s] an unlawful withholding or unreasonable delay under the APA." Pls.' Mot. at 19-20. But "[t]here is no per se rule as to how long is too long to wait for agency action." *In re Pesticide Action Network N. Am.*, 532 F. App'x 649, 651 (9th Cir. 2013) (citation omitted).  Rather, the Court's

---

[13] The Department has explained that the BDU experienced decreased staffing levels as the result of voluntary separations by numerous employees in January 2017.  *See* Murray QFR at 21.  In addition to employees, however, the BDU is also supported by contractor staff.  *See* Durbin QFR at 154 (explaining that the Department "currently ha[d] approximately 16 contractor staff (as of July 9, 2018) in place supporting BD processing" and was "ramping up" additional contractor support). The Department is currently taking action to address insufficient staffing, including posting an announcement to fill the vacant BDU positions.  *See* U.S. Dep't of Ed., *"FSA-2019-0009" Vacancy Details* (attached as Ex. 1); *see also* Murray QFR at 20.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

13

analysis of whether an agency's inaction violates APA § 706(1) "is governed by the six-factor test articulated in *Telecommunications Research and Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) [(*TRAC*)], known as the '*TRAC* factors.'" *Id.* at 650.[14] "Resolution of a claim of unreasonable delay is [therefore] ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). After all, "a two-year delay [of agency action] may be unreasonable in one case, and it may not be in another." *Martin v. O'Rourke*, 891 F.3d 1338, 1346 (Fed. Cir. 2018).

Plaintiffs' submissions show that the borrower defense claims of the named Plaintiffs and putative class are both factually and procedurally diverse, and thus not amenable to class-wide resolution. *See Padilla v. ICE*, 354 F. Supp. 3d 1218, 1229-30 (W.D. Wash. 2018) (questioning "whether the issue of 'unreasonable delay' is amenable to resolution by class action lawsuit, as, absent a statutory deadline," the court's analysis "will require individualized factual inquiries to determine . . . 'reasonableness.'").

For example, the length of time that a borrower defense claim has been pending varies widely among the named Plaintiffs and the proposed class. Plaintiffs Apodaca, Jacobson, and Davis initially filed their borrower defense claims in the spring of 2015. *See* Compl. ¶¶ 265, 343, 364. Plaintiffs Sweet, Archibald, and Deegan filed their claims in 2016. *Id.* ¶¶ 247, 289, 309. But Plaintiff Hood initially filed his claim last year, in January 2018. *Id.* ¶ 328. The Department's publicly available statistics show that tens of thousands of borrower defense claims were submitted even more recently,

---

[14] Those factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) . . . the effect of expediting delayed action on agency activities of a higher or competing priority; (5) . . . the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 79–80.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

14

including 21,571 claims asserted in the first quarter of 2019, and thus some putative class members' claims have been pending for only a matter of months.  *See* March 2019 Quarterly Report.

The nature of the named Plaintiffs' borrower defense claims are likewise disparate.  Each Plaintiff attended a different program at a different campus operated by different for-profit schools.  *See, e.g.*, Compl. ¶¶ 279-80 (Plaintiff Archibald attended a business administration certificate program at Salter College's West Boylston, Massachusetts campus, which is owned by Premier Education Group); *id.* ¶ 318 (Plaintiff Hood enrolled in a bachelor degree program in information security at ITT Tech's Cordova, Tennessee campus).  These differences are also reflected more broadly across the pending borrower defense claims.  Plaintiffs' Complaint alleges that as of February 2017 the Department had received borrower defense applications from students attending *over 840 different schools*.  *Id.* ¶¶ 159-62.  The Complaint similarly shows the variation of alleged wrongdoings by for-profit schools that the named Plaintiffs asserted in their borrower defense claims.[15]  *See, e.g., id.* ¶ 283 (alleging, *inter alia*, that Salter College lied to Plaintiff Archibald about available financial aid and took out a loan for her without her knowledge or permission); *id.* ¶ 360 (alleging that the New England Art Institute falsely represented to Plaintiff Jacobson the quality of technology she would use in her media arts and animation program).  The facts about the particular school attended by a borrower and the alleged wrongdoing of that school are, of course, relevant to the adjudication of borrower defense claims.

There are also differences in the way the Department could adjudicate the named Plaintiffs' and proposed class's borrower defenses and, in any case, the regulatory scheme sets forth an individualized adjudication process.  For most borrowers, that process begins by submitting an application detailing the particular factual basis of their claims and attaching supporting evidence.  34 C.F.R. § 685.222(e)(1)(i); *see* U.S. Dep't of Ed., *Application for Borrower Defense to Loan Repayment* at 1-9, ECF No. 20-25.  The Department resolves each claim "through a fact-finding

---

[15] As noted below, the Department has issued findings with respect to certain categories of borrower defense claims against particular for-profit schools that, if established, make a borrower eligible for relief.  *See* OIG Report at 9-10.  Although these findings are related to a large number of claims, they do not cover all pending claims.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

15

process" and issues a written decision based on its findings. 34 C.F.R. § 685.222(e)(3)-(4). Even if a borrower defense is approved, the adjudication process requires a second step, before a decision is issued, to determine the appropriate amount of relief to award the borrower. *Id.* § 685.222(i). That decision too is based on the particular circumstances of the borrower's claim. *Id.*

The Department can also undertake to determine claims on a categorical basis if there are common facts and claims among a group of borrower defenses. *See id.* § 685.222(e), (f). The Department followed a similar process with respect to certain borrower defense claims by former Corinthian students, *see* Durbin QFR at 155, for which the Department implemented an expedited adjudication procedure not otherwise available to unique borrower defense claims, *see* U.S. Dep't of Ed., *Fact Sheet: Protecting Students from Abusive Career Colleges* (June 8, 2015) (implementing process for qualifying students to "have their loans forgiven and receive refunds for amounts paid based on a simple attestation");[16] *see also* Attestation for Certain Heald College Students;[17] *see also* Attestation for Certain Everest and WyoTech Students (Everest/WyoTech Attestation).[18]

Moreover, the standards of eligibility applicable among the proposed class will differ depending on whether the putative class member's loan was disbursed before or after July 1, 2017. For loans disbursed before that date, the Department applies the 1994 regulations' state-based standard that requires it to conduct a more time-consuming analysis to determine which state's law applies to a particular borrower's claim and whether the applicable law would support the borrower's eligibility.[19] *See* 34 C.F.R. § 685.206(c)(1). For loans disbursed on or after July 1, 2017, the 2016 regulations allow borrowers to establish eligibility under three enumerated grounds that do not depend of state choice of law questions. *Id.* § 685.222(b)-(d). Notably, each of the named Plaintiffs' borrower defense claims relates to a loan that is subject to the state-based eligibility standards. The proposed class however, are not limited by loan disbursement date and almost certainly include

---

[16] https://www.ed.gov/news/press-releases/fact-sheet-protecting-students-abusive-career-colleges
[17] https://studentaid.ed.gov/sa/sites/default/files/heald-attestation-text-only.htm
[18] https://studentaid.ed.gov/sa/sites/default/files/ev-wy-attestation-text-only.htm
[19] As shown in the Department's most recent quarterly report, the borrower defense claims currently pending with the Department include claims asserted by students from all 50 states, the District of Columbia, and numerous U.S. territories. *See* March 2019 Quarterly Report.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

16

borrowers who are asserting claims related to loans covered by the 2016 eligibility standard.[20]

These differences in filing dates, factual allegations, adjudication processes, and applicable legal standards among the pending borrower defense claims—including the named Plaintiffs' claims—will materially affect the legal outcome in this suit.  These are exactly the types of facts and circumstances the Court must consider under *TRAC* to determine whether the Department has been acting unreasonably in deciding (or not deciding) borrower defenses.  *See TRAC*, 750 F.2d at 80.  That analysis will be especially qualitative here because "Congress has [not] provided a timetable or other indication of the speed with which it expects [the Department] to proceed" in adjudicating borrower defense claims, nor has the Department.  *Id.*; *see generally* 20 U.S.C. § 1070 *et seq.*; *see also generally* 34 C.F.R. §§ 685.206, 685.222.  Thus, what is or is not a reasonable amount of time to adjudicate a borrower defense is dependent on any number of variables particular to each claim.

Plaintiffs do not address or acknowledge any of these factors.  Instead, they purport to satisfy Rule 23(a)'s prerequisites on the basis that all proposed class members share the common *result* that their requests remain pending.  *See, e.g.*, Pls.' Mot. at 20.  But this result cannot be divorced from the factual circumstances of each borrower defense claim, nor can it produce a common answer.  Because those circumstances go to the heart of whether the Department has unlawfully withheld or unreasonably delayed borrower defense decisions, they affect the outcome of the legal issue raised by named Plaintiffs and thus preclude class treatment.

## II.    THE PROPOSED CLASS AND SUB-CLASS DO NOT SATISFY THE REQUIREMENTS OF RULE 23(b) BECAUSE CLASS-WIDE INJUNCTIVE RELIEF IS NOT AVAILABLE

Even if Plaintiffs could satisfy all of the requirements of Rule 23(a), they would still need to satisfy Rule 23(b).  They cannot.  Rule 23(b)(2)—the only 23(b) provision asserted by Plaintiffs— "applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  *Wal-Mart*, 564 U.S. at 360.  It does not apply when class members "would be entitled

---

[20] Although the proposed class and sub-class definitions are limited to borrowers who have already asserted borrower defenses, it is worth noting that future borrowers whose loans are disbursed on or after July 1, 2020 will be subject to yet another borrower defense eligibility standard as set forth in the Department's new regulations.  *See supra* n.1.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

17

to a different injunction or declaratory judgment against the defendant." *Id.*  Instead, class relief must be "indivisible," premised on "conduct . . . that . . . can be enjoined or declared unlawful only as to all of the class members or as to none." *Id.*  "[T]he (b)(2) class is distinguished . . . by class cohesiveness . . . Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 n.8 (11th Cir. 1983); *see also Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 580 (7th Cir. 2000) ("Rule 23(b)(2) operates under the presumption that . . . the case will not depend on adjudication of facts particular to any subset of the class nor require [distinct] remed[ies].").  The proposed class and sub-class in this case lack cohesiveness, because there is no single injunction or declaratory relief that could apply to each member of the diverse putative class.  The requested injunction also fails to meet the requisite specificity requirements of Federal Rule of Civil Procedure 65, and thus class certification should be denied on that independent ground.

### A.  The Proposed Class is not Amenable to A Uniform Remedy.

Plaintiffs rely principally on the argument that Rule 23(b) is satisfied because "[t]he Department has engaged in a 'pattern or practice' that is 'generally applicable' to all Students" by "refusing to grant or deny any borrower defense." Pls.' Mot. at 23.  The Supreme Court has made clear that an essential predicate to a pattern and practice claim is a showing that the defendant agency has acted pursuant to a discrete, and identifiable, policy or practice, which threatens to cause the plaintiff continuing injury.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (*SUWA*); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871 (1990).  As explained above, Plaintiffs have not demonstrated that the Department has a policy of refusing to grant or deny borrower defense claims in general, or to refuse to grant borrower defenses of putative sub-class members.  Plaintiffs have in fact abandoned their "policy" challenge set forth in Count 2.  *Supra* § I.A.  Nor have Plaintiffs shown a per se violation of APA § 706(1), because "[t]here is no per se rule as to how long is too long to wait for agency action," *In re Pesticide Action Network N. Am.*, 532 F. App'x at 651, and neither Congress nor the Department has not imposed a timeframe in which the Department must adjudicate borrower defenses.  *See supra* § I.B.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

18

The Court cannot therefore address hundreds of thousands of borrower defense claims, or even the claims of the six named Plaintiffs, with a single all-or-nothing order. *See Martinez v. Brown*, 2011 WL 1130458, at *13 (S.D. Cal. Mar. 25, 2011) ("[T]he Court cannot certify a Rule 23(b)(2) class if it finds that . . . the allegedly wrongful conduct of the defendant cannot be corrected without specific tailoring of the injunction to individual members."); *Shook v. Bd. of Cty. Comm'rs of Cty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) ("[U]nder Rule 23(b)(2) the class members' injuries must be sufficiently similar that they can be addressed in a[] single injunction that need not differentiate between class members").[21]  Whether, and if so what, injunctive relief is justified would depend on the Court's assessment of the Department's action (or inaction) with respect to any named Plaintiff's or putative class member's borrower defense claim, a determination that will necessarily require the Court to consider the facts and circumstances of such claims.  *See Wal-Mart*, 564 U.S. at 360 ("[C]laims for *individualized* relief . . . do not satisfy the Rule.").

For the same reasons, this case is distinguishable from *Jiahao Kuang v. U.S. Department of Defense*, 340 F. Supp. 3d 873 (N.D. Cal. 2018), on which Plaintiffs rely.  Pls.' Mot. at 23-24.  *Jiahoa Kuang* involved a challenge to a Department of Defense (DoD) memorandum that instituted a new policy requiring a completed background investigation before lawful permanent residents (LPRs) who had enlisted in the military could report to initial training.  *Jiahao Kuang*, 340 F. Supp. 3d at 889.  Two LPR service members whose ship-out dates had been delayed due to their pending investigations challenged the new policy on APA and constitutional grounds.  *Id.* at 890.  They also sought to certify a class of approximately 3,500 similarly situated LPRs, and the government *did not* oppose the plaintiffs' motion for class certification.  *Id.* at 890, 891.  The court held that the plaintiffs' claims met the requirements of Rule 23(a) and 23(b)(2) because they presented "primarily facial challenges to the validity of DoD's policy, which applies equally on a classwide basis," and because

---

[21] Nor could this problem be remedied by splitting the proposed class members into subcategories based on unidentified criteria.  "Where the relief sought by a putative class needs to be tailored to unenumerated subgroups, a class action is not appropriate."  *Martinez*, 2011 WL 1130458 at *15.  As detailed above, *supra* § I.B, there are countless combined factors that may affect the amount of time necessary to adjudicate a borrower defense claim on a case-by-case basis, even where the Department has made findings about certain schools.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

19

they sought "unitary declaratory and injunctive relief" from the challenged memorandum. *Id.* at 891, 893. Unlike in that case, here there is no such policy—written or otherwise—or a "single course of conduct" by the Department that has resulted in a uniform injury to the class as a whole. *Id.* at 892. *Jiahoa Kuang* thus has no relevance here.[22]

This suit is not amenable to class-wide relief, and the Court should deny class certification.

## B.   The Proposed Injunction Does Not Comply with Specificity Requirements.

Federal Rule of Civil Procedure 65(d) requires that "[e]very order granting an injunction must . . . state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Since Plaintiffs' proposed injunction does not meet this requirement, it cannot serve as the basis for maintaining the proposed class or sub-class.

The injunctive relief requested by Plaintiffs includes an order compelling the Department to, *inter alia*: (1) "grant class members' individual borrower defense assertions if they are eligible for a borrower defense," (2) "deny class members' individual borrower defense assertions if they are not eligible for a borrower defense," and (3) "notify the class members of their borrower defense decisions." Compl. at 61 (Prayer for Relief ¶¶ F-H). This proposed injunction must fail because Rule 65's specificity requirements preclude a court from issuing an injunction ordering a defendant to "obey the law." *See, e.g.*, *Cuviello v. City of Oakland*, 2009 WL 734676, at *3 (N.D. Cal. Mar. 19, 2009) (holding that injunctions requiring lawful arrests and barring interference with free speech rights "are 'obey the law' injunctions and thus not enforceable."). As numerous courts have recognized, "[i]njunctions that broadly order the enjoined party simply to obey the law and not violate the statute are generally impermissible." *NLRB v. USPS*, 486 F.3d 683, 691 (10th Cir. 2007);

---

[22] The other cases Plaintiffs cite are equally unavailing. The class certified in *American Council of the Blind v. Astrue* challenged the Social Security Administration's "policies regarding its disclosures to blind individuals," policies that were "common across the class." 2008 WL 4279674, at *5 (N.D. Cal. Sept. 11, 2008). The court's class certification decision in *Vietnam Veterans of America v. CIA* likewise depended on the existence of "regulations and [policy] directives" that the plaintiffs alleged created a legal duty to provide certain notice and medical care to military servicemen who participated in human testing programs. 288 F.R.D. 192, 213 (N.D. Cal. 2012). The court denied class certification on another claim related to secrecy oaths, because, like here, the plaintiffs had failed to show "a policy requiring that secrecy oaths be given." *Id.* at 214.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

20

*see Burton v. City of Belle Glade*, 178 F.3d 1175, 1200-01 (11th Cir. 1999).

An injunction to follow the law is particularly inappropriate in a case brought against a government agency because it could potentially subject the agency to charges of contempt for every alleged failure to comply, and would deprive the agency of the framework Congress created for adjudicating such claims under the applicable statute—here, the APA. *Cobell v. Norton*, 392 F.3d 461, 475 (D.C. Cir. 2004) (vacating an "obey the law" injunction because "defendants would be subject to contempt charges for every legal failing, rather than simply to the civil remedies provided in the APA."); *see NLRB v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941) ("the mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute").  Here, Plaintiffs claim that they merely seek an order that "re-start[s]" the Department's decision-making on borrower defenses, which they allege will "push each Student's application forward" like a "conveyor belt."  Pls.' Mot. at 23.  As an initial matter, the relief sought in the Complaint is an order compelling the Department to grant or deny the Plaintiffs' and proposed class and sub-class members' borrower defense claims, not just to re-start that process.  Compl. at 61 (Prayer for Relief).  But even the order that Plaintiffs claim they seek does not sufficiently specify what is required of the Department to comply because the Department is not required by statute or regulation to issue borrower defense decisions in any particular timeframe or in any particular order.  *See supra* 17.  Theoretically, the named Plaintiffs or putative class and sub-class members could return to this Court any time they felt dissatisfied with the pace of the Department's adjudication process or if they believed their individual borrower defense claims were not being acted upon quickly enough.  It would therefore "ultimately become the task of [this] [C]ourt . . . to work out compliance with [the agency's] broad statutory mandate, injecting [it] into day-to-day agency management."  *SUWA*, 542 U.S. at 66-67.  As the Supreme Court explained in *SUWA*, "[t]he prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with [its] congressional directives is not contemplated by the APA."  *Id.* at 67.

Accordingly, Plaintiffs' request for class relief requiring that the Department grant or deny borrower defense requests seeks an impermissible "obey the law" injunction, and should be denied.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

21

**C.**   **Certification of the Sub-Class is Inappropriate Because the Relief Sought Only Would Initiate an Individualized Process.**

Certification of the proposed sub-class fails for the additional reason that the requested injunction would not result in final relief.  Class certification is not appropriate under Rule 23(b)(2) "if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only."  *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 499 (7th Cir. 2012).  This standard is critical because the purpose of a class is to "enable[] a federal court to adjudicate claims of multiple parties at once, instead of in separate suits."  *Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010); *see also Parsons*, 784 F.3d at 575 (Rule 23's "purpose . . . is efficiency.").  "If individualized relief is sought—even individual injunctive relief—the named plaintiffs must look elsewhere in Rule 23(b) to obtain certification."  *Jamie S.*, 668 F.3d at 499.

The relief sought by the proposed sub-class could not satisfy Rule 23(b)(2)'s standard because whether the requested relief is proper as to any putative sub-class member is by Plaintiffs' own definition "contingent on an individualized merits determination" of the member's borrower defense.[23]  *Artis v. Yellen*, 307 F.R.D. 13, 24 (D.D.C. 2014).  Specifically, Plaintiffs seek injunctive relief on behalf of a proposed sub-class of borrowers whose pending borrower defense claims "meet the *prima facie* criteria for a loan discharge []as established in Department policies."  Pls.' Mot. at 1.  Under Plaintiffs' theory, the injunction would compel the Department to begin issuing approvals to putative sub-class members who have "established a borrower defense."  Compl.  ¶¶ 344-46.

Whether any putative sub-class member has successfully demonstrated legal entitlement to a

---

[23] Courts have also approached this issue in the context of determining whether a plaintiff has sufficiently defined a class, as inherently required by Rule 23.  *See, e.g.*, *Artis*, 307 F.R.D. at 24.  "A class definition should be precise, objective, and presently ascertainable."  *Lamumba Corp.*, 2007 WL 3245282, at *3.  For example, classes defined by determined attributes have been found sufficient.  *Id.* at *4 (objective factors such as business ownership and race sufficiently defined class, but class defined by the subjective state of mind of class members was insufficient); *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 329 (C.D. Cal. 1998) (plaintiffs had reasonably defined class by geographical boundaries).  By contrast, "[u]sing a future decision on the merits to specify the scope of the class," as Plaintiffs do here, "makes it impossible to determine who is in the class" at the time of certification.  *Artis*, 307 F.R.D. at 24.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

22

borrower defense loan discharge and, if so, what amount of relief is due will depend on the Department's individual review and determination of each such borrower defense claim.  *See* 34 C.F.R. § 685.222(e).  This is true regardless of the fact that Plaintiffs allege these borrower defense claims are covered by Department findings that particular for-profit schools engaged in certain conduct that violated state law.  As in the case of former Corinthian students, borrowers who attended covered programs were nonetheless required to submit information and documentation substantiating their borrower defense claims, and the Department expressly indicated that such claims may be granted *or denied*.  *See, e.g.*, Everest/WyoTech Attestation (requiring certain borrower attestations and documentary proof of enrollment in covered programs, and indicating next steps in cases where "[the] claim made using this form is successful" and "if [the] claim is denied").

In other words, Plaintiffs' requested injunction merely would trigger "a system for eventually providing individualized relief," and thus "[i]t does not, on its own, provide 'final' relief to any [sub-class] member."  *Jamie S.*, 668 F.3d at 499.  The Court should deny sub-class certification.

## III.    CLASS CERTIFICATION SHOULD BE DENIED TO THE SUB-CLASS BECAUSE THE SUB-CLASS'S CLAIM MUST BE DISMISSED

The Court should deny certification of the proposed sub-class because the claim for which Plaintiffs seek to certify the sub-class must be dismissed.  *See Jhamb v. Cal. Physicians Serv.*, 1996 WL 61281, at *3, 4 (N.D. Cal. Feb. 6, 1996) ("[a] plaintiff with no justiciable claim . . . in the litigation cannot assert claims on behalf of a class").

Plaintiffs seek certification of a sub-class to challenge under APA § 706(2) the Department's alleged policy of refusing to grant their borrower defense claims as both "arbitrary and capricious and inconsistent with the Department's legal obligations."  Pls.' Mot. at 3; *see id.* at 20.  For the reasons explained in Defendants' Partial Motion to Dismiss, the Court lacks jurisdiction over Plaintiffs' claim because they have not identified a final agency action that is judicially reviewable under § 706(2).  *See generally* Defs.' Mot.[24]  Plaintiffs do not intend to oppose Defendants' Motion and agree that the claim should be dismissed.  *See* Jt. Case Mgmt. Stmt. at 6.

---

[24] Defendants hereby incorporate by reference the arguments in their Partial Motion to Dismiss and Memorandum in Support thereof.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

23

Because Plaintiffs will be dropping the claim for which the proposed sub-class would be certified, and because the Court lacks jurisdiction over that claim in any event, it should deny certification of the proposed sub-class.

## IV.     PRE-CERTIFICATION DISCOVERY IS NOT WARRANTED

The Court should likewise deny Plaintiffs' alternative request for limited class discovery. Although a court may grant class discovery in cases "to aid the determination of whether a class action is maintainable," *Mantolete v. Bolger*, 767 F.2d 1416, 1424-25 (9th Cir. 1985), *as amended* (Aug. 27, 1985), it does not abuse its discretion in denying discovery "where the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites" or fail to "demonstrate that discovery . . . [is] likely to produce persuasive information substantiating the class action allegations," *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977).

Here, Plaintiffs' alternate claim for discovery (a mere paragraph in their motion) alleges only that "[d]iscovery would further crystalize the degree to which the Department has formalized" its purported uniform refusal to decide borrower defenses and would "shed[] light on the Department's policy of refusing to grant borrower defenses pending [the *Manriquez*] litigation." Pls.' Mot. at 25. But as demonstrated above, the evidence Plaintiffs submit in support of their motion not only fails to show that there is some purported decision of the Department not to act on pending borrower defense claims, but actually *undercuts* their contention. *See supra* 11-13. Notably, this evidence consists almost exclusively of statements by Department officials or information provided in Department documents. Plaintiffs have completely failed to demonstrate that the discovery of additional information from the Department would produce "persuasive" evidence that could "substantiat[e]" claims that are belied by the record they submitted. *Doninger*, 564 F.2d at 1313.

Regardless, as a matter of law, discovery is not warranted because Plaintiffs have also failed to meet the pre-requisites of Rule 23. *Id.* As explained above, there is no *per se* violation of § 706(1), as Plaintiffs suggest. In order to resolve their claim, the Court must conduct a case-by-case inquiry into the widely diverse pool of borrower defense claims at issue in the proposed class and sub-class. *See supra* § I. There are also numerous deficiencies with respect to the injunctive relief Plaintiffs

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

24

request.  That relief would (a) not address the claims of the named Plaintiffs and proposed class and sub-class in a single order; (b) constitute an improper "obey the law" order; and (c) merely initiate an individualized determination of relief for putative sub-class members.  *See supra* § II.  And the claim for which the Plaintiffs seek sub-class certification must be dismissed.  *See supra* § III.

Finally, this action presents claims that are especially unsuitable for discovery.  Plaintiffs bring their suit only under the APA and thus, as they acknowledge, judicial review is limited to the administrative record to be filed with the Court.  *See* Jt. Case Mgmt. Stmt. at 7 ("[t]he parties agree that this APA case should be decided on the administrative record"); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985).  Absent exceptional circumstances, which are not presented here, discovery is not appropriate in APA cases because judicial review is limited to the record compiled by the agency.  *Inland Empire Pub. Lands Council v. Glickman*, 88 F.3d 697, 703-04 (9th Cir. 1996), *as amended* (July 15, 1996).  Here, Plaintiffs' proposed class discovery is essentially merits-focused, because at bottom it seeks discovery of the reasons underlying the Department's alleged inaction on borrower defense claims.  *See Parsons*, 784 F.3d at 575 (class certification questions "often overlap with plaintiffs' merits contentions.").  Because the Court's review of those reasons would normally be limited to the administrative record, it should not allow Plaintiffs to end-run APA review in this matter through class discovery on the very same issue.  To the extent the Court is inclined to allow Plaintiffs the opportunity to present additional evidence in support of their class certification motion, it should hold Plaintiffs' request for discovery in abeyance until after the administrative record is lodged.  Indeed, Plaintiffs have in effect agreed to proceed in this manner. *See* Jt. Case Mgmt. Stmt. at 7 (indicating the parties' belief that class discovery will not be needed, but reserving Plaintiffs "right to seek such discovery if the Court needs additional evidence, beyond . . . the pleadings, judicially-noticeable [facts], or . . . the administrative record").

Class discovery is not warranted in this matter, and should be denied.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for class certification or, in the alternative, class discovery.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

25

1

Dated: September 20, 2019

Respectfully submitted,

2

3

JOSEPH H. HUNT
Assistant Attorney General

4

5

MARCIA BERMAN
Assistant Branch Director

6

*/s/ Kathryn C. Davis*
KATHRYN C. DAVIS (DC Bar No. 985055)

7

R. CHARLIE MERRITT (VA Bar No. 89400)
Trial Attorneys

8

United States Department of Justice
Civil Division, Federal Programs Branch

9

1100 L Street, NW
Washington, DC 20530

10

Tel:  (202) 616-8298

11

Fax:  (202) 616-8470
Email:  Kathryn.C.Davis@usdoj.gov

12

13

*Counsel for Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY
Case No.: 19-cv-03674-WHA

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2019, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Executed on September 20, 2019, in Washington, D.C.

/s/ *Kathryn C. Davis*
Kathryn C. Davis