| | |
|---|---|
| JOSEPH JARAMILLO (SBN 178566) | EILEEN M. CONNOR (SBN 248856) |
| jjaramillo@heraca.org | econnor@law.harvard.edu |
| NATALIE LYONS (SBN 293026) | TOBY R. MERRILL |
| nlyons@heraca.org | (*Pro Hac Vice*) |
| HOUSING & ECONOMIC RIGHTS ADVOCATES | tmerrill@law.harvard.edu |
| 1814 Franklin Street, Suite 1040 | JOSHUA D. ROVENGER |
| Oakland, CA 94612 | (*Pro Hac Vice*) |
| Tel.: (510) 271-8443 | jrovenger@law.harvard.edu |
| Fax: (510) 868-4521 | KYRA A. TAYLOR |
| | (*Pro Hac Vice*) |
| | ktaylor@law.harvard.edu |
| | LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL |
| | 122 Boylston Street |
| | Jamaica Plain, MA 02130 |
| | Tel.: (617) 390-3003 |
| | Fax: (617) 522-0715 |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, TRESA APODACA, ALICIA DAVIS, and JESSICA JACOBSON on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education, <br><br> And <br><br> THE UNITED STATES DEPARTMENT OF EDUCATION, <br><br> *Defendants*. | Case No. 19-cv-03674-WHA <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION OR, IN THE ALTERNATIVE, LIMITED CLASS DISCOVERY** <br><br> Date:   October 24, 2019 <br> Time:   8:00 a.m. <br> Place:  Courtroom 12 <br> Honorable William H. Alsup |

Nearly 180,000 Students have asserted a borrower defense to the Department of Education (Department) and are awaiting a decision on their application. Despite its obligation to resolve these claims, and in a departure from past practice, the Department has intentionally and systematically refused to adjudicate any borrower defense since at least June 12, 2018. It points to past "efforts" to decide borrower defenses, but cannot point to any present, good faith efforts to do so.[1] As a result, the number of Students with pending borrower defenses, and whose personal, financial, familial, and professional lives are harmed by the Department's inaction, continues to grow. The proposed class therefore brings suit under section 706(1) of the Administrative Procedure Act (APA), because an order compelling the Department to start and continue deciding borrower defenses would resolve the common illegality that the Students have endured.

Given the patent application of Rule 23 to those facts, Defendants are primarily left arguing the merits of Plaintiffs' section 706(1) claim. But, even if Defendants were right on the merits (they are not), a "class certification hearing is not a dress rehearsal of the trial on the merits (let alone a dress rehearsal of the remedy proceedings)." *Parsons v. Ryan*, 754 F.3d 657, 689 n. 35 (9th Cir. 2014). Defendants' attempt to defeat class certification based on individual differences between Students' borrower defenses fares no better, since it misconstrues Plaintiffs' section 706(1) claim for relief. Whether an individual borrower defense will succeed or fail, and the circumstances impacting an individual's borrower defense application, are not at issue. Instead, Plaintiffs challenge the Department's systemic policy of refusing to adjudicate borrower defenses and seek a Court order requiring the Department to re-start and continue decision-making until the class members' claims are resolved.

At bottom, the Department's blanket refusal to decide borrower defenses is the common thread across the proposed class. Its refusal to satisfy its legal duty unites every Student and

---

[1] The Department's supposed "efforts" all come well before it halted adjudication of borrower defenses. These "efforts" could not possibly address or explain their ongoing refusal to decide borrower defenses. *Compare* Opposition at 4 *with* Motion at 7-8 (the appointment of a Special Master took place in 2015 and the Borrower Defense Unit was established in 2016). *See also* Opp. at 4-5 (Department established review panel in 2017); *id.* at 5 ("improved" adjudicatory process and adjudication of borrower defenses announced on December 20, 2017).

PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION         Page 1 of 9
No. 19-cv-03674-WHA

renders class treatment appropriate under Rule 23. The Court should therefore certify the proposed class.[2]

## I.   Plaintiffs Satisfy Rule 23(a)

As detailed in Plaintiffs' class certification motion, ECF No. 20 (Motion), Plaintiffs satisfy the commonality requirement of Rule 23(a) because they share the "common contention" that the Department's blanket refusal to decide borrower defenses violates section 706(1).[3] Motion at 19-20; *Parsons*, 754 F.3d at 675 (commonality met with "even a single common question"). Likewise, an injunction requiring the Department to resume and continue adjudication of borrower defenses would remedy the indefinite uncertainty caused the Department's unlawful conduct "'in one stroke.'" *Parsons*, 754 F.3d at 685 (citation omitted)); Motion at 13-17; *see also Bautista-Perez v. Holder*, No. C 07-4192 TEH, 2009 WL 2031759, *7 (N.D. Cal. July 9, 2009) (J. Alsup) (commonality does not require "identical injury"). And, the claims of the seven named Plaintiffs are "reasonably co-extensive with those of absent class members," because they are subject to the same unlawful conduct and all suffer similar harms from not knowing when or if the Department will decide their pending borrower defense. *Parsons*, 754 F.3d at 685 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (internal quotations omitted)); Complaint at ¶¶ 236-370. *See also Garcia v. Johnson*, No. 14-cv-01775-YGR, 2014 WL 6657591, at *14 (N.D. Cal. Nov. 21, 2014) (typicality met where agency should have "timely provided" determinations on "reasonable fear" claims for asylum and named plaintiffs sought "relief identical to that which the members of the proposed class would seek: the timely provision of a reasonable fear determination").

---

[2] In their Motion for Class Certification, Plaintiffs also asked the Court to certify a sub-class of certain student borrowers. *See* ECF No. 20. Because Plaintiffs are not moving forward on their claims specific to those individuals, *see* ECF No. 41 (dismissing count 2), Plaintiffs no longer seek certification of this sub-class.

[3] This is not a claim alleging that "inaction equates to agency action" as Defendants imply. Opp. at 10 (citing, *inter alia*, *ONRC Action v. BLM*, 150 F.3d 1132, 1136 (9th Cir. 1998)). Plaintiffs squarely allege that the Department is refusing to grant or deny borrower defenses in a manner that violates of section 706(1) of the APA, which forbids agencies from unlawfully withholding or unreasonably delaying agency action. Complaint at ¶¶ 377-89.

In response to Plaintiffs' demonstration of commonality, Defendants primarily argue that the Department has not engaged in systemic inaction. Defs. Opposition to Class Certification, ECF No. 38 (Opp.), at 9-13; Opp. at 11. Although Defendants want the Court to decide *now* whether the Department has engaged in this policy of inaction, "the question [at class certification] is not whether [Plaintiffs] have stated a cause of action or will prevail on the merits, but rather, *whether the requirements of Rule 23 are met.*" *Briggs v. United States*, No. C 07-05760 WHA, 2009 WL 113387, at *7 (N.D. Cal. Jan. 16, 2009) (J. Alsup) (emphasis added). Here, Plaintiffs have affirmatively established the common question of whether the Department's systemic refusal to decide borrower defenses is unlawful. *B.K. v. Snyder,* 922 F.3d 957, 969, 971 (9th Cir. 2019). ("[C]lass certification is not a decision on the merits[.]")

In any event, as a factual matter, Plaintiffs have shown that the Department intentionally and systematically refuses to decide borrower defenses. There is no dispute that the Department has not adjudicated a claim since June 12, 2018; a Department official has stated that the agency is in a "holding pattern";[4] and the Department's most recent data shows that there are over 179,000 borrower defenses pending.[5] Plaintiffs have further alleged that this agency-wide cessation was preceded by a "sharp curtail[ing]" of the Department's infrastructure for deciding borrower defenses, Complaint, ECF No. 1, at 22, and that the Department has failed to develop and maintain processes for deciding borrower defenses. Motion at 10. The Department has a legal duty to reach a final decision on each borrower defense assertion, *see, e.g.* 20 U.S.C. § 1087e(h); 34 C.F.R. § 682.209(g),34 C.F.R. §§685.206(c)(1) & 685.222, 34 C.F.R. ECF Nos. 20-11 & 20-12 (Master Promissory Notes); Compl. at ¶¶ 52-76; there is simply no dispute that it has refused to satisfy that duty for well over a year.

---

[4] In their effort to distinguish the meaning of Ms. Auer Jones' quote, Opp. at 12, Defendants fail to rebut Plaintiffs' primary assertion: that the Department has not adjudicated a single borrower defense since June 12, 2018. If anything, the portion of her quote that Defendants emphasize further underscores the Department's bad faith. They continue to claim that they are "committed" to deciding claims and making "efforts" to do so despite their refusal to bring a single claim to resolution for well over a year.

[5] *See* U.S. Dep't of Educ., Borrower Defense–Quarterly Report for quarter end 3/31/2019, *available at* https://www.help.senate.gov/imo/media/doc/BDQ12019Report.pdf

Defendants next argue that the "ultimate determination of liability" on Plaintiffs' section 706(1) claim would require a review of the individual circumstances underlying every members' borrower defenses. Opp. at 13. This barely disguised attempt to argue the merits of Plaintiffs' claim is misplaced. Furthermore, it incorrectly presumes that the case would be determined by the factors enumerated in *Telecommunications Research and Action Center (TRAC) v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984), Opp. at 13-14 & 14 n. 14 (quoting the *TRAC* factors). Because Defendants have simply refused to act at all, the *TRAC* factors are an imperfect fit. The Court need only review the Department's mandatory nondiscretionary duty to decide borrower defenses and determine whether its blanket refusal to adjudicate them violates that duty. *See Vietnam Veterans of Am. v. Cent. Intelligence Agency*, 811 F.3d 1068, 1071 (9th Cir. 2016); *see also Ctr. for Food Safety v. Hamburg,* 954 F. Supp. 2d 965, 970 (N.D. Cal. 2013) (holding agency committed unlawful withholding by not following statutory deadline and the *TRAC* factors were inapposite.)

Of course, even if *TRAC* does apply, class treatment is *still* appropriate. The Court can evaluate Plaintiffs' section 706(1) claim on a classwide basis; it need not—as Defendants suggest—rely on a "per se" length of delay rule to do so. Opp. at 18. *See, e.g.*, *Kuang v. United States Dep't of Def.*, 340 F. Supp. 3d 873, 890 (N.D. Cal. 2018) (class certification granted) (section 706(1) challenge to agency inaction on applications for active military service); *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194, 1203-04 (W.D. Wash. 2008) (granting class certification in a challenge to agency delay on adjudicating naturalization applications). Indeed, because the Department is refusing to decide *any* claim under *any* time frame, the Department's conduct is equally unreasonable under any "rule of reason" analysis. *See Dehrizi v. Johnson*, No. CV-15-00008-PHX-ESW, 2016 WL 270212, at *5 (D. Ariz. Jan. 21, 2016) ("Defendants may not indefinitely delay a decision mandated by law.").

Nor is this factor the only probative one. Plaintiffs have also shown that the Department's inaction causes a significant impact on the "health and welfare" of all class members, and that further delay prejudices members of the class. Motion at 14-17. Furthermore, Plaintiffs have alleged facts that question whether impropriety undergirds the Department's inaction. *See, e.g.*, Complaint at ¶¶ 150-51 (Secretary DeVos appointed individuals with personal and professional connections to the for-profit college industry to oversee the Department, including borrower

defense decisions); Motion at 10-11 (Secretary DeVos issued discharges approved by the previous Administration "with extreme displeasure"); *id.* at 13 (the Department's misleading claim that it is in a "holding pattern" from deciding *all* borrower defenses because of an injunction that applies to a narrow set of borrowers and not to any members of the proposed class).

Defendants finally challenge commonality and typicality by pointing to individual differences in the substance of Students' borrower defense assertions. But, these distinctions are irrelevant for purposes of class certification. *See Parsons*, 754 F.3d at 675 ("[W]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." (internal citation and quotations omitted)). The 180,000 Students are bound together by the Department's illegal inaction. Their complaint does not ask the court to opine on the substance or process for adjudicating their individual borrower defenses, but to instead remedy their "limbo" status. As Plaintiffs previously explained, "[i]t is as if the Department has placed all borrower defense applications on a conveyor belt, and then chose to halt that belt, and the proposed class merely seeks to "re-start the machinery and push each Student's application forward." Motion at 23; *see Roshandel*, 554 F. Supp. at 1203-04 (holding that commonality was met, as "[w]hether [p]laintiffs [met] the individual requirements for naturalization and whether individual factors caused the delay in adjudication [was] *irrelevant to class certification*" (emphasis added)).

Ultimately, this Court's analysis in *Kuang* remains on point. *See* Motion at 23-24 (explaining that the *Kuang* plaintiffs asserted, among other claims, a challenge under section 706(1) to U.S. Department of Defense (DOD) policy of delaying legal permanent residents (LPRs) from entering active military status) *citing Kuang*, 340 F. Supp. 3d at 890. Defendants' sole attempt to distinguish *Kuang* is to emphasize an internal memorandum that the *Kuang* plaintiffs cited as evidence of a policy and then to argue that no such memo or policy exists here. Opp. at 19-20. *See Kuang*, 340 F. Supp. 3d at 889-90 (discussing the memorandum). But, this is not the time to argue about whether Plaintiffs' have proven their case, *Briggs*, 2009 WL 113387, at *7-8, and the existence of a formal policy memo is not dispositive as to whether the

Department is engaging in systemic inaction on borrower defenses.[6] Indeed, Plaintiffs have already shown the Department has made a conscious choice not to decide a borrower defense since June 12, 2018, and the Department has not disputed that fact. Plaintiffs have met their Rule 23(a) burden.

## II.     Plaintiffs Satisfy Rule 23(b)

Plaintiffs also satisfy Rule 23(b)(2) because the Department has "refused to act on grounds that apply generally to the class," and a single injunction requiring the Department to start and to continue adjudicating borrower defenses would apply to "the class as a whole." Rule 23(b)(2). *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) ("[I]t is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole.").

Defendants first argue that each class member "would be entitled to a different injunction or declaratory judgment." This is wrong. As explained, Plaintiffs do not seek this Court's review of the Department's adjudication of individual borrower defenses asserted by any Student, nor are Plaintiffs' claims contingent on individualized factual circumstances. Instead, Plaintiffs allege that the Department is engaged in an unlawful policy of inaction that impacts all members of the proposed class and an injunction requiring the Department to actually decide members' applications would rectify their common injury.

On this point, the Ninth Circuit's decision in *Hayes* is instructive. There, the defendants similarly argued, among other things, that members of the proposed class of detained immigrants were held pursuant to different statutes and thus could be entitled to different relief based on

---

[6] Contrary to Defendants' assertions, Plaintiffs do not need to show that there is a formalized policy dictating the Department's course of conduct. Nor, unlike a claim seeking to set aside agency action under 5 U.S.C. § 706(2), do Plaintiffs need to establish a "final agency action." Moreover, even in the context of a 5 U.S.C. § 706(2) claim, a policy need not be a written policy. *See, e.g. Arkema Inc. v. E.P.A.*, 618 F.3d 1, 7-8 (D.C. Cir. 2010); *Arcadian Gas Pipeline System v. FERC*, 878 F.2d 865, 868-69 (5th Cir. 1989); *U.S. Aid Funds, Inc. v. King*, 200 F. Supp. 3d 163, 171-72 (D.D.C. 2016); *Randolph v. Colvin*, 15-cv-1097, 2016 WL 524460 at *4 (S.D. Ill. Feb. 10, 2016); *Mercy Medical Skilled Nursing Facility v. Thompson*, No. 99-2765, 2004 WL 3541332, at *3 (D.D.C. May 14, 2004). It is sufficient that the Department has deliberately decided to engage in systemic inaction.

their underlying challenges. 591 F.3d at 1125. As here, the defendants there "miss[ed] the point of Rule 23(b)(2)." *Id.* The rule "does not require [courts] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Id*; *see also Parsons*, 754 F.3d at 688 ("[The Rule 23(b)(2)] inquiry does not require an examination of the viability or bases of the class members' claims for relief."); *Garcia*, 2014 WL 6657591, at *15 (to meet the Rule 23(b)(2) threshold, it is "sufficient that plaintiffs here allege a pattern of activity that is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct" (internal citation and quotations omitted)). Plaintiffs satisfy that requirement here.

Defendants also argue that Plaintiffs cannot obtain the injunction they seek. This, too, is wrong. The proposed injunction would not require the Department to simultaneously "address hundreds of thousands of borrower defense claims . . . with a single all-or-nothing order." Opp. at 19. Instead, an injunction requiring Defendants to resume and reasonably continue the adjudication of borrower defenses (in other words, re-start and continue the conveyor belt), would resolve—in "one stroke"—the harm stemming from the Department's inaction. *See, e.g.*, *Afghan and Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Pompeo*, No. 18-cv-01388, 2019 WL 4575565 (D.D.C. Sept. 20, 2019) (ordering agency to decide claims in a timely way and put forth a plan to resolve the backlog of withheld decisions).

Nor, finally, is the requested injunction a "bare injunction to follow the law." *See, e.g., NLRB v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941) (follow-the-law injunction broadly prohibits a defendant from violating the law in a manner that would "subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation"); *Cf. Cuviello v. City of Oakland*, 2009 U.S. Dist. LEXIS 102537, *11 (N.D. Cal. Mar. 19, 2009) (striking injunction broadly ordering city "not to violate Plaintiffs First Amendment Rights"). And even so, that argument bears little weight in the Ninth Circuit, which has "not adopted a rule against 'obey the law' injunctions per se.'" *United States v. Maricopa Cty.*, 151 F.Supp.3d 998 (D. Ariz. 2015) (citation and internal quotations omitted).

Ultimately, Plaintiffs' requested injunction satisfies the Rule 23(b)(2) requirement to "describe[ ] the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law, and that can be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony." *B.K.,* 922 F.3d at 972; *see also Ashker v. Governor of Cal.*, No. C 09-5796 CW, 2014 WL 2465191, at *7 (N.D. Cal. June 2, 2014) ("[N]umerous courts have expressly held that plaintiffs are not required to satisfy Rule 65(d) in order to obtain class certification"). Plaintiffs therefore satisfy the various requirements of Rule 23 and class certification is proper.

**III.   In the Alternative, Plaintiffs are Entitled to Class Discovery**

Although Plaintiffs believe that their allegations establish class certification, if the Court disagrees, Plaintiffs request discovery on the limited question of whether the Department has engaged in a systematic policy of inaction. *See Vinole*, 571 F.3d at 942 ("[T]he better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." (internal citation omitted)).

It is undisputed that the Department has not decided a single borrower defense since June 12, 2018. Furthermore, Plaintiffs have demonstrated a thread of agency conduct, starting in January 2017, designed to curtail the granting of borrower defenses. Motion at 9-14. Defendants—who control all non-public evidence as to their decision-making—cannot simultaneously claim that Plaintiffs have failed to demonstrate a policy of inaction and that discovery on that question would be useless. *Brum v. MarketSource, Inc.,* No. 2:17-cv-241-JAM-EFB, 2018 WL 3861558, at *3 (E.D. Cal. Aug. 14, 2018) (granting class discovery and noting that the defendants were "the parties in possession and control" of information relevant to class certification "and absent an order compelling them to produce the requested discovery, plaintiffs [would] not be able to obtain evidence necessary for a class certification motion"). Plaintiffs have either established the existence of that policy or, at a minimum, shown that "discovery is likely to produce substantiation of the class allegations." *Manolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).

In the alternative, a properly lodged administrative record in this case should contain the Department's explanation for its inaction. Thus, if the Court needed additional information,

Plaintiffs would also be amenable to consolidating a decision on class certification with the merits so that the Court has the benefit of the complete administrative record.

## IV.     CONCLUSION

The Department's unlawful refusal to decide *any* borrower defenses continues to harm all members of the proposed class by creating an indefinite uncertainty that infects Students' personal, financial, familial and professional lives. Every Student therefore seeks the exact same thing: an order finding the Department liable under section 706(1) and compelling it to start deciding borrower defenses and continue apace—until it has adjudicated all members' borrower defenses. The Court should allow Students to seek this relief on a collective basis.

Respectfully submitted,

*/s/ Natalie Lyons*

Joseph Jaramillo (SBN 178566)
Natalie Lyons (SBN 293026)
HOUSING & ECONOMIC RIGHTS ADVOCATES
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Tel: (510) 271-8443
Fax: (510) 280-2448

Eileen M. Connor (SBN 248856)
Toby R. Merrill (*Pro Hac Vice*)
Kyra A. Taylor (*Pro Hac Vice*)
Joshua D. Rovenger (*Pro Hac Vice*)
LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2019, I electronically filed the foregoing document with the Clerk of Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Executed on October 1, 2019, in Oakland, California.

*/s/ Natalie Lyons*
Natalie Lyons