IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, TRESA APODACA, ALICIA DAVIS, and JESSICA JACOBSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education, and THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendants. | No. C 19-03674 WHA<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |

**INTRODUCTION**

In this putative class action arising under the Higher Education Act and the APA, plaintiffs move for class certification. For the reasons stated below, the motion is **GRANTED**.

**STATEMENT**

Many for-profit colleges have left numerous students saddled with debt. Certain of these schools used fraudulent tactics to enroll students, such as inflating job placement numbers. Members of the instant putative class — including plaintiffs Theresa Sweet, Chenelle Archibald, Daniel Deegan, Samuel Hood, Tresa Apodaca, Alicia Davis, and Jessica Jacobson — sought to cancel their federal student loans with defendant United States Department of

Education under the "borrower defense" rule, which allows defrauded students to apply for loan forgiveness based on their school's misconduct.

Plaintiffs allege that since June 2018, the Department has arbitrarily and capriciously stonewalled (and continues to stonewall) the relief process with its "blanket refusal" to process their borrower claims. In June 2019, they brought the instant putative class action, seeking to compel the Department to at least begin deciding applications again. Plaintiffs fired the opening salvo soon thereafter with the instant motion for class certification. Most of the underlying facts were developed on briefing for the instant motion and are briefly summarized herein.

### 1. BORROWER DEFENSE REGULATORY SCHEME.

Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1070 *et seq.*, authorizes the Secretary of Education "to assist in making available the benefits of postsecondary education to eligible students" through financial-assistance programs. *See id*. §§ 1070(a), 1071(a)(1). These loan programs include the William D. Ford Federal Direct Loan Program ("Direct Loan Program"), which allows students attending "participating institutions of higher education" to secure direct loans from the federal government, and the Federal Family Education Loan ("FFEL") Program, which allows the Department to reinsure guaranteed loans made to students by financial institutions. *Id.* §§ 1078, 1087a.

The Act allows the Department to cancel a student federal loan repayment based on a school's misconduct. In implementing the Direct Loan Program, the Secretary "shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan under this part." 20 U.S.C. § 1087e(h). The FFEL Program, which has been ineffective since 2010, had already provided for borrower defense claims (Dkt. No. 20-13 at 4).

In January 1994, the Secretary promulgated regulations setting forth the first variation of the "borrower defense" rule for direct loans — later amended in December 1994 and effective 1995 — which allowed a borrower to "assert as a defense against repayment of his or her loan 'any act or omission of the school attended by the [borrower] that would give rise to a cause of

action against the school under applicable State law.' " 60 Fed. Reg. 37,768, 37,770 (July 21, 1995) (quoting 34 C.F.R. § 685.206(c) (1995)). This standard still applies to all loans "first disbursed prior to July 1, 2017." 34 C.F.R. § 685.206 (2018).

In May 2015, Corinthian Colleges, Inc. ("Corinthian") — "a publicly traded company [that] operat[ed] numerous postsecondary schools that enrolled over 70,000 students at more than 100 campuses nationwide" — collapsed. 81 Fed. Reg. 39,330, 39,335 (June 16, 2016). In the wake of Corinthian's bankruptcy filing and the Department's finding "that the college had misrepresented its job placement rates," Corinthian students submitted a "flood of borrower defense claims." *Id*. at 39,330, 39,335.

In response to the heightened demand, the Department began creating a streamlined process and infrastructure for adjudicating the borrower defense claims. In June 2015, the Department appointed a special master "to create and oversee a process to provide debt relief for these Corinthian borrowers" and created a "Borrower Defense Unit" to handle those claims (Dkt. No. 20-15 at 7). 81 Fed. Reg. at 39,335. In November 2016, it promulgated new borrower defense regulations — scheduled to take effect on July 1, 2017 — to codify the process for adjudication and to set a new standard for borrower defense claims. *See* 34 C.F.R. §§ 685.206, 685.222 (2018). The regulations required a borrower to submit an application with evidence supporting his or her claim and allowed the Secretary to designate an official to resolve the claim. *Id*. § 685.222(e).

In 2017, the Department created a Borrower Defense Review Panel to examine the Department's borrower defense process and make recommendations on how to address pending claims going forward. That panel "decided to honor approximately 16,000 borrower defense claim approvals made, but not effectuated, prior to January 20, 2017" (Compl. ¶¶ 164–65; Dkt. No. 20-15 at 33).

Shortly before the 2016 regulations' effective date (July 1, 2017), the Department stayed the regulations under Section 705 of the APA, which delay another federal court found arbitrary and capricious in September 2018. *Bauer v. DeVos*, 325 F. Supp. 3d 74, 110 (D.D.C. 2018) (Judge Randolph Moss). In May 2018, yet another federal court in this district preliminarily

enjoined the Department's use of its new "partial relief methodology," which methodology provided for, in some cases, less than full discharges depending on the level of harm suffered by borrowers at particular Corinthian programs (Dkt. No. 38 at 5). *Calvillo Manriquez v. Devos*, 345 F. Supp. 3d 1077 (N.D. Cal. 2018) (Magistrate Judge Sallie Kim). The appeal of this preliminary injunction is currently pending before our court of appeals.[1]

### 2. THE INSTANT ACTION.

Borrowers continue to seek to cancel their student loans. Yet the Department has not decided a borrower defense claim since June 2018. Plaintiffs are former students of for-profit schools who have asserted borrower defense claims as early as 2015. They allege that the Department's inaction continues to cause putative class members ongoing harm (Compl. ¶¶ 181, 187, 205–35).

For example, plaintiff Theresa Sweet graduated from the Brooks Institute of Photography ("Brooks"), a for-profit school offering programs in the visual arts, in 2006. Brooks represented to her that "80–90% of graduates got employed immediately after graduating"; "promised that they would help [her] get a job from 'faculty networking' or from the job placement assistance office"; and "promised that Brooks credits would transfer to other colleges and universities." Sweet borrowed about $46,107 in FFEL loans (and over $140,000 in private loans). Investigations eventually revealed that Brooks had violated state law, such as misrepresenting students' post-graduation income. Brooks shut down in August 2016. Sweet now works in a hospital as a certified nurse's assistant. She has never held a job that used her Brooks education. She could not transfer her credits from Brooks to other colleges or universities. Sweet asserted her borrower defense to the Department in the fall of 2016. The Department has yet to act on her application. Meanwhile, the interest on her loans continues to grow, with her federal loans now at $65,000. The debt has affected her credit, which in turn has affected her career prospects, and other aspects of her life (*id.* ¶¶ 237–39, 244–54; Dkt. No. 20-2 ¶¶ 5–6).

---

[1] The Department has subsequently finalized new borrower defense regulations, which "rescind[] in large part the 2016 regulations and establish[] new standards governing" borrower defense claims for loans first disbursed on or after July 1, 2020 (Dkt. No. 38 at 3 n.1).

4

In June 2019, plaintiffs filed the instant putative class action, alleging that the Department "refuses to grant or deny" any of the over 158,000 pending borrower defense applications as a matter of policy. They assert a single claim under Section 706(1) of the APA under the theory that the Department's inaction constituted unlawfully withheld and unreasonably delayed agency action. They seek injunctive relief compelling the Department to begin deciding borrower defense claims again. That is, they seek to "escape this limbo" and simply want a decision — whether an approval or denial — on their applications (Compl. ¶¶ 187, 377–89; Dkt. No. 20 at 2).[2]

Plaintiffs now move to represent other borrower defense claimants and certify the following class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*, No. 17-7106 (N.D. Cal.).

In the alternative, plaintiffs seek an order holding the instant motion in abeyance until further discovery (Dkt. No. 20 at 1).

Defendants oppose, arguing that plaintiffs failed to show that their claim can be resolved with a common answer, that plaintiffs' claim is typical, or that the proposed class is amenable to a single injunctive relief (Dkt. No. 38 at 1–2). This order follows full briefing and oral argument.

**ANALYSIS**

Class certification is appropriate when a plaintiff can show that all of the prerequisites of Rule 23(a) and one of the requirements of Rule 23(b) has been met. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013). Rule 23(a) considers whether "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of

---

[2] A prior order granted defendants' unopposed motion to dismiss Claim 2 (Dkt. No. 41). Plaintiffs correspondingly dropped their request to certify a subclass of students originally raised under Section 706(2) (Dkt. No. 42 at 2 n.2).

5

the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

1. **RULE 23(A).**

    A. **Numerosity.**

    The proposed class — which encompasses over 158,000 members — satisfies the numerosity requirement (Dkt. No. 20-20 at 19).

    B. **Adequacy.**

    A proposed class representative is adequate if they "will fairly and adequately protect the interests of the class." Rule 23(a)(4). Our court of appeals has explained that a representative meets this standard if they (1) have no conflicts of interest with other class members, and (2) will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

    Nothing in the record suggests that plaintiffs' interests deviate from the interests of other class members — plaintiffs and other class members seek to recover from the same alleged injury in the same manner based on the alleged policy and practices of the Department. Nor does it suggest any risk that plaintiffs (or their counsel) would fail to prosecute the action vigorously on behalf of the class. Accordingly, this order finds that plaintiffs are adequate representatives for the proposed class.

    C. **Commonality & Typicality.**

    Commonality is satisfied if "there are questions of law or fact common to the class." Rule 23(a)(2). "A common contention need not be one that will be answered, on the merits, in favor of the class. It only must be of such a nature that it is capable of classwide *resolution*." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (citations omitted).

    Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). "The test of typicality is whether other

members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

"The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

The parties largely do not dispute that plaintiffs have alleged common questions — namely, "whether the Department has a mandatory duty to decide borrower defenses and whether its blanket refusal to do so is *per se* unlawful under the Administrative Procedure Act" (Dkt. Nos. 20 at 2; 38 at 9). Defendants, however, contend that the common questions do not have common answers because (1) plaintiffs have not shown that the Department is operating under a uniform policy regarding the pending borrower defense claims, and (2) the pending claims are "factually diverse" and thus require "an individualized analysis . . . to determine if the Department has unreasonably delayed action with respect to any particular claim" (Dkt. No. 38 at 9). They further assert that plaintiffs similarly failed to show typicality. This order disagrees.

*First*, defendants improperly argue the merits at the class certification stage. They fault plaintiffs for "identify[ing] no such policy [of inaction], written or otherwise, relying instead on inferences drawn from the Department's delay in adjudicating claims and from various publicly available materials relating to the Department's processing of borrower defense claims" (*id*. at 10). They complain that plaintiffs do not allege any facts regarding some explicit order from on high within the Department (*ibid*.).

7

Defendants further take issue with plaintiffs' other proffered "evidence," such as plaintiffs' mischaracterization of a Department official's statement that borrower defense adjudication is in a "holding pattern" (*id*. at 12). They paint plaintiffs' evidentiary showing as amounting to "cobbled-together excerpts of statements and reports from which [p]laintiffs cherry-pick information" (*id*. at 10). Defendants further point to other evidence they believe suggest a lack of a uniform policy, such as the Department's statements that it is "working tirelessly to reduce the number of pending claims" and is "reviewing other options" for new a methodology after another court in this district preliminarily enjoined its use of a "partial relief methodology" (Dkt. Nos. 20-19 at 58; 38 at 12).

*But here is a fact no one disputes: the Department has decided zero applications since June 2018* (Dkt. No. 20-20 at 20; Compl. ¶ 181). As represented during oral argument, over 210,000 borrower defense claims now remain pending and the Department has failed to grant or deny a single application since June 2018. This is especially striking considering that between July 2016 and January 20, 2017, the Department had decided approximately 27,996 borrower defenses applications (Compl. ¶ 135). Even if this gaping contrast might possibly be explained in part by the preliminary injunction in *Manriquez*, it nonetheless evidences the uniform policy of inaction alleged here where the proposed class explicitly excludes Corinthian borrowers who are members of the *Manriquez* class. According to plaintiffs, the Department "has a legal duty to reach a final decision on each borrower defense assertion" and it is undisputed that — despite the swelling backlog — "it has refused to satisfy that duty for well over a year" (*id*. ¶¶ 52–76; Dkt. No. 42 at 3).

Further, the Department allegedly "has sharply curtailed its borrower defense infrastructure" since January 2017 (*id*. ¶ 149). And, the activities defendants cite to that actually relate to the Department's adjudication of borrower defense claims largely pre-date June 2018, when the Department went radio silent (*see* Dkt. No. 38 at 11–13). Nor do defendants offer any timeline for final agency action or explain any *recent* concrete steps taken

8

by the Department (other than mere statements by Department officials) toward resolving the backlog. This order finds plaintiffs' evidentiary showing is sufficient at this stage of litigation.

Defendants rely on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and *DL v. D.C.*, 713 F.3d 120 (D.C. Cir. 2013), for the proposition that plaintiffs failed to offer sufficient evidence that the Department operated under a general policy of inaction and thus failed to show commonality. Their reliance is misplaced. Both *Wal-Mart* and *DL* held that a class broadly defined only by the contention that the putative class members "have all suffered a violation of the same provision of law" insufficiently showed commonality. *Id.* at 350; *DL*, 713 F.3d at 126. The Supreme Court in *Wal-Mart*, which involved a nationwide Title VII class claim, noted that "[s]ignificant proof" that the defendant "operated under a general policy of discrimination" would have satisfied commonality. *See Wal-Mart*, 564 U.S. at 353 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)) (alteration in original). It found that proof of such a policy, however, was "entirely absent" where the defendant gave its local supervisors discretion over policy matters and the plaintiffs could not identify "a common mode of exercising discretion that pervade[d] the entire company" other than their expert's inadequate testimony that the defendant had a " 'strong corporate culture,' that ma[de] it 'vulnerable' to 'gender bias.' " *Id.* at 353–56. Similarly in *DL*, the United States Court of Appeals for the District of Columbia Circuit held that there was no commonality where the plaintiffs in a putative IDEA class action merely alleged systemic IDEA violations based on multiple, disparate compliance failures stemming from different causes. *DL*, 713 F.3d at 128.

Here, in contrast, plaintiffs do not submit only a threadbare allegation of harm. Rather, they have identified a single uniform policy — namely, the Department's alleged "blanket refusal" to adjudicate borrower defenses — which "bridges all their claims" (*see* Dkt. No. 20 at 19). *DL*, 713 F.3d at 127. And, this alleged uniform policy is supported by the undisputed fact that the Department has failed to adjudicate a single borrower defense claim in over a year.

Nor is *Northwest Immigrant Rights Project v. United States Citizenship and Immigration Services*, 325 F.R.D. 671 (Judge James Robart) (W.D. Wash. 2016) — which defendants cite for the proposition that "anecdotal evidence" is insufficient to show

9

commonality for a Section 706(1) claim — persuasive. The issue there related to different circumstances that affected the tolling or resetting of the adjudication timetable at issue for each putative class members' claim. The district court found that the plaintiffs failed to submit sufficient evidence as to the frequency with which the tolling circumstances occurred to support commonality and only offered "anecdotal evidence." *Id.* at 695. In contrast, no such tolling issue exists here. And, plaintiffs rely on a uniform policy, which their submitted declarations evidence.

Instead, defendants appear to fault plaintiffs for failing to fully prove their claim at this early stage. This order, however, will not require such an evidentiary showing, as a ruling on the merits at this stage is improper. While class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim," it does not grant "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013). "Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether" plaintiffs have satisfied the requirements for class certification. *Ibid.* In other words, though plaintiffs must show a common method of proof, they need not actually prove their case at this stage. Here, plaintiffs' evidentiary showing points to more than an amorphous, undefined systemic conduct. This is sufficient at this stage.

*Second*, defendants misconstrue plaintiffs' claim. They argue that the putative class members' borrower defense claims were "both factually and procedurally diverse, and thus not amenable to class-wide resolution" (Dkt. No. 38 at 14). Specifically, they argue that plaintiffs' claim — that the Department had a mandatory legal duty to decide borrower defense claims and that its failure to do so *per se* constituted unlawful withholding or unreasonable delay under the APA — cannot be determined on a class-wide basis because "[t]here is no per se rule as to how long is too long to wait for agency action" (Dkt. No. 38 at 13 (quoting *In re Pesticide Action Network N. Am.*, 532 F. App'x 649, 651 (9th Cir. 2013)). Rather, according to defendants, a Section 706(1) violation must be assessed by the *TRAC* factors, the "six-factor test articulated in

10

*Telecommunications Research and Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984)." *Id*. at 650. Those six factors include:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 1997) (quoting *TRAC*, 750 F.2d at 80) (alterations omitted). Defendants contend that the differences in "filing dates, factual allegations, adjudication processes, and applicable legal standards among the pending borrower defense claims" that must be considered under *TRAC* in determining unreasonable delay prevent commonality (Dkt. No. 38 at 17).

But these factual differences are irrelevant where plaintiffs define their harm by a single policy. *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), is instructive. There, the inmate plaintiffs asserted Eighth Amendment violations by the defendants. In upholding class certification, our court of appeals rejected the defendants' argument that the plaintiffs' claims amounted to "an aggregation of many claims of individual mistreatment," which purportedly "impede[d] the generation of common answers." *Id*. at 675–76. The appellate court reasoned that the complaint "d[id] not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient." *Id*. at 676. Rather, plaintiffs pointed to "policies and practices of statewide and systemic application" that "expose[d] all inmates in [the defendants'] custody to a substantial risk of serious harm." *Ibid*. That is,

> What all members of the putative class . . . ha[d] in common [was] their alleged exposure, as a result of specified statewide [] policies and practices that govern[ed] the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants [we]re allegedly deliberately indifferent. As the district court recognized, although a presently existing risk may ultimately result in different future harm for different inmates — ranging from no harm at all to death — every inmate suffer[ed] exactly the same constitutional injury when he [was] exposed to a

11

> single statewide [] policy or practice that create[ed] a substantial risk of serious harm.

*Id.* at 678. Thus the key question, which could have been "determined in one stroke," centered on "whether the specified statewide policies and practices to which they [we]re all subjected by [the defendants] expose[d] them to a substantial risk of harm." *Ibid.* "[E]ither each of the policies and practices" — which were "the 'glue' that h[eld] together the putative class" — was "unlawful as to every inmate or it [was] not." *Ibid.*

So too here. Plaintiffs' point is that, whether a borrower defense claim has been pending for three years or three months, all claims were subject to the same alleged policy of inaction. In other words, it is the Department's (alleged) systemic abdication of its obligation to process borrower defense claims — not the length of delay itself — that plaintiffs challenge as a *per se* APA violation. Nor are plaintiffs seeking a specific ruling for each application, which would indeed require an individualized inquiry. Rather, they simply seek to restart the decision-making process to ultimately obtain *a* decision. At bottom, plaintiffs challenge the policy of inaction — to which each class member was subjected — not the outcome of each application. As in *Parsons*, "[t]hat inquiry does not require us to determine the effect of th[at] polic[y] . . . upon any individual class member . . . or to undertake any other kind of individualized determination." *Ibid.* Thus even if *TRAC* applies, the analysis of those six factors — *i.e.*, the "rule of reason" applicable here (where the hold on processing claims is allegedly indefinite), the existence (or nonexistence) of a congressionally-provided timetable, the effect on human welfare and the putative class members' interests, and the Department's competing priorities (or lack thereof) — would still be driven by the alleged policy of inaction. Defendants have not sufficiently shown otherwise. Accordingly, plaintiffs satisfy the commonality and typicality requirements.

### 2. **RULE 23(b)(2) & RULE 65(d).**

Rule 23(b)(2) allows class treatment only when a single injunction or declaratory judgment would provide relief to each member of the class. *Wal-Mart*, 564 U.S. at 360. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted

12

— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Ibid*. (internal quotation marks omitted).

Defendants argue that the proposed class is not amenable to a uniform remedy primarily for the same reasons they asserted in opposing the commonality prong — namely, that plaintiffs failed to show the existence of a systemic policy of inaction (*see* Dkt. No. 38 at 18–20). Again, this order disagrees for the reasons discussed above. Rule 23(b)(2)'s requirements are satisfied where "class members complain of a pattern or practice that is generally applicable to the class as a whole." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)). Such is the case here, where the Department's alleged policy of inaction applies to the proposed class as a whole. This common harm inflicted by an alleged common policy is curable by a single injunction.

Nor must plaintiffs "specify the precise injunctive relief they will ultimately seek at the class certification stage." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019). Rule 23(b)(2) "ordinarily will be satisfied when plaintiffs have described the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law, and that can be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony." *Parsons*, 754 F.3d at 689 n.35. Here, under these circumstances, the requested relief of a single order compelling defendants to restart the processing of borrower defense claims outlines the "general contours" of the requested injunction at this stage. A more specific remedy, such as a plan setting forth a timeline for resolving the backlog of applications, can be fashioned later in this litigation. Defendants ultimately have not sufficiently shown otherwise that "crafting uniform injunctive relief will be impossible." *B.K.*, 922 F.3d at 973 ("It [] does not matter whether crafting appropriate injunctive relief will be difficult or not. Those merits questions . . . do not preclude certification as a matter of law unless . . . crafting uniform injunctive relief will be impossible."). Rules 23(b)(2) and 65(d) are satisfied.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for class certification is **GRANTED**. The following class is **CERTIFIED**:

> All people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*, No. 17-7106 (N.D. Cal.).

This class definition shall apply for all purposes, including settlement. Plaintiffs Theresa Sweet, Chenelle Archibald, Daniel Deegan, Samuel Hood, Tresa Apodaca, Alicia Davis, and Jessica Jacobson are hereby **APPOINTED** as class representatives. Plaintiffs' counsel from the Harvard Legal Service Center's Project on Predatory Student Lending and the Housing and Economic Rights Advocates, are hereby **APPOINTED** as class counsel. By **NOVEMBER 6 AT NOON**, the parties shall jointly submit a proposal for class notification with a plan to distribute notice, including by first-class mail.

**IT IS SO ORDERED.**

Dated: October 30, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE