JOSEPH H. HUNT
Assistant Attorney General

DAVID L. ANDERSON
United States Attorney

MARCIA BERMAN
Assistant Branch Director

R. CHARLIE MERRITT
KATHRYN C. DAVIS
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 616-8098
Fax: (202) 616-8470
E-mail: robert.c.merritt@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendants. | No. 3:19-cv-03674-WHA<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  February 13, 2020<br>Time:  8:00 a.m.<br>Place:  Courtroom 12, 19th Floor<br>Honorable William Alsup |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

   I.   PLAINTIFFS' APA SECTION 706(1) CLAIM HAS BECOME MOOT ........................ 2

   II.  THE HEA'S ANTI-INJUNCTION PROVISION PREVENTS THE COURT
       FROM ISSUING COERCIVE RELIEF AGAINST THE SECRETARY
       FOR THE INACTION AT ISSUE IN THIS CASE ........................................................ 6

   III. THE DEPARTMENT'S DELAY IN ISSUING FINAL BORROWER
       DEFENSE DECISIONS WAS NOT PER SE UNREASONABLE ................................. 7

   IV. THE DEPARTMENT'S DELAY WAS REASONABLE ................................................. 9

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Am. Ass'n of Cosmetology Sch. v. Riley*,
   170 F.3d 1250 (9th Cir. 1999) ................................................................ 6

*Californians for Renewable Energy v. EPA*,
   No. C 15-3292 SBA, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018) .................. 5

*Calise Beauty School, Inc. v. Riley*,
   941 F. Supp. 425 (S.D.N.Y. 1996) ...................................................... 6, 7

*Calvillo Manriquez v. DeVos*,
   345 F. Supp. 3d 1077 (N.D. Cal. 2018) ......................................... 7, 11, 12

*Canterbury Career Sch., Inc. v. Riley*,
   833 F. Supp. 1097 (D.N.J. 1993) ............................................................ 7

*Cent. Sierra Envtl. Res. Ctr. v. Stanislaus Nat'l Forest*,
   304 F. Supp. 3d 916 (E.D. Cal. 2018) ....................................... 9, 13, 15

*Ctr. for Envtl. Health v. McCarthy*,
   192 F. Supp. 3d 1036 (N.D. Cal. 2016) ................................................ 15

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019) .................................................................... 14

*Forest Guardians v. Babbit*,
   174 F.3d 1178 (10th Cir. 1999) .......................................................... 8

*Gator.com Corp. v. L.L. Bean, Inc.*,
   398 F.3d 1125 (9th Cir. 2005) ............................................................ 3

*Grand Canyon Trust v. U.S. Bureau of Reclamation*,
   691 F.3d 1008 (9th Cir. 2012) ........................................................ 1, 5

*Gross v. Bell Sav. Bank PaSA*,
   974 F.2d 403 (3d Cir. 1992) .............................................................. 6

*In Def. of Animals v. U.S. Dep't of Interior*,
   808 F. Supp. 2d 1254 (E.D. Cal. 2011) .................................................. 3

*In re A Cmty. Voice*,
   878 F.3d 779 (9th Cir. 2017) ............................................................ 10

*In re Barr Labs. Inc.*,
   930 F.2d 72 (D.C. Cir. 1991) ................................................................................ 15

*In re Bluewater Network*,
   234 F.3d 1305 (D.C. Cir. 2000) .............................................................................. 8

*In re Cal. Power Exch. Corp.*,
   245 F.3d 1110 (9th Cir. 2001) ................................................................................ 1

*In re Pesticide Action Network N. Am.*,
   532 F. App'x 649 (9th Cir. 2013) ........................................................................... 10

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*,
   156 F.3d 1279 (D.C. Cir. 1998) ............................................................................. 12

*Indep. Mining Co. v. Babbitt*,
   105 F.3d 502 (9th Cir. 1997) ................................................................................. 13

*Liangcai Dai v. USCIS*, No. 16-cv-05381 AB (AFMx),
   2017 WL 10574062 (C.D. Cal. Apr. 7, 2017) ....................................................... 13

*Liberty Fund, Inc. v. Chao*,
   394 F. Supp. 2d 105 (D.D.C. 2005) ....................................................................... 11

*McCrary v. Gutierrez*,
   495 F. Supp. 2d 1038 (N.D. Cal. 2007) ................................................................ 15

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ................................................................................................. 12

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ................................................................................................... 4

*NRDC v. U.S. Nuclear Regulatory Comm'n*,
   680 F.2d 810 (D.C. Cir. 1982) ................................................................................. 5

*Oceana v. Bureau of Ocean Energy Mgmt.*,
   37 F. Supp. 3d 147 (D.D.C. 2014) ........................................................................... 9

*Portland Audubon Soc'y v. Endangered Species Comm.*,
   984 F.2d 1534 (9th Cir. 1993) ................................................................................. 5

*Pub. Util. Comm'n of State of Cal. v. FERC*,
   100 F.3d 1451 (9th Cir. 1996) ................................................................................. 5

*Sierra Club v. Thomas*,
   828 F.2d 783 (D.C. Cir. 1987) ........................................................................ 12, 15

*Skalka v. Kelly*,
   246 F. Supp. 3d 147 (D.D.C. 2017) ........................................................................ 8, 9

*Telecomms. Research & Act Ctr. v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) ........................................................................ 9, 13

*Toor v. Holder*,
   717 F. Supp. 2d 100 (D.D.C. 2010) ........................................................................ 5

*Towns of Wellesley, Concord & Norwood v. FERC*,
   829 F.2d 275 (1st Cir. 1987) ........................................................................ 9

*Tufail v. Neufeld*,
   No. 2:14-cv-02545-TLN-CMK, 2016 WL 1587218 (E.D. Cal. Apr. 20, 2016) ...................... 13

*Umhey v. Cty. of Orange*,
   957 F. Supp. 525 (S.D.N.Y. 1997) ........................................................................ 6

*United Steelworkers of Am. v. Rubber Mfrs. Ass'n*,
   783 F.2d 1117 (D.C. Cir. 1986) ........................................................................ 9

*W. Rangeland Conservation Ass'n v. Zinke*,
   265 F. Supp. 3d 1267 (D. Utah 2017) ........................................................................ 8

**Statutes**

5 U.S.C. § 555 ........................................................................ 8

20 U.S.C. § 1082 ........................................................................ 6

20 U.S.C. § 1087e ........................................................................ 12

**Regulations**

34 C.F.R. § 685.206 ........................................................................ 14

34 C.F.R. § 685.222 ........................................................................ 14

# INTRODUCTION

Through this lawsuit, Plaintiffs seek, according to their own framing, a "simple" order "compelling the [U.S. Department of Education (Department)] to start granting or denying their borrower defenses and vacating the Department's policy of withholding resolution." Compl. ¶ 10, ECF No. 1. Defendants explained, in their opening brief seeking summary judgment, *see* ECF No. 63 (Defs.' MSJ), and their certified administrative record, ECF No. 56, why Plaintiffs were never entitled to that kind of order, both because this Court lacks jurisdiction to order coercive relief against the Secretary of Education (Secretary) while she is acting (even if not at a pace that Plaintiffs find satisfactory) in accordance with her delegated statutory duties, and because the Department's temporary, roughly 18-month delay in issuing final decisions on borrower defense claims was not "so 'egregious' as to warrant mandamus." *In re Cal. Power Exch. Corp.*, 245 F.3d 1110, 1124-25 (9th Cir. 2001). Defendants represented then that the Department's delay in issuing final decisions was largely attributable to its reasoned policy judgment that, before doing so, it should have a comprehensive methodology in place to determine the amount of relief for successful claimants.

As of December 10, 2019, that relief methodology is now in place and the Department has, in the Court's words, "restart[ed] the processing of"—or at least the action of issuing final decisions on—"borrower defense claims." Order Granting Mot. for Class Cert. at 13, ECF No. 46 (Class Cert. Order). Plaintiffs choose to ignore this development, which occurred nearly two weeks before they filed their opposition brief, even as they cite a Politico article for the proposition that the Secretary has "order[ed] partial loan relief for many" student borrowers. *See* Opp'n to Defs.' Mot. & Pls.' Cross Mot. for Summ. J. (Opp'n) at 15 n.27, ECF No. 67. Because the Department has "start[ed to] grant[] or deny[] [Plaintiffs'] borrower defenses," Compl. ¶ 10, there is no longer any inaction for Plaintiffs to challenge, the Court can no longer grant "effective relief," and Plaintiffs' "claim is moot and must be dismissed." *Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1016-17 (9th Cir. 2012) (cleaned up).[1]

---

[1] Defendants are submitting today a supplement to their Administrative Record that addresses these developments. *See* ECF No. 71.

Even putting the mootness issue aside, Plaintiffs' brief provides no basis for the Court to find that the Department's (now terminated) delay in issuing final borrower defense decisions was unreasonable. Because it is undisputed that Congress has provided no timeline for the Department to either resolve any particular borrower defense claim or clear the present backlog of borrower defense claims, the question before the Court is not, as Plaintiffs would have it, whether the Department has failed to act in accordance with its (undisputed) mandatory duty to resolve borrower defense claims. It is instead whether the Department's delay in finally resolving such claims was reasonable. The Department has explained the reasons for its delay in an administrative record consisting of, *inter alia*, the kind of sworn declarations submitted by agency officials that are routinely accepted in cases brought under Section 706(1) of the Administrative Procedure Act (APA) to explain agency inaction.[2] And that explanation—namely that among the many competing demands on agency resources, the Department prioritized the establishment of a comprehensive methodology for awarding borrower defense relief before resuming issuing final decisions—is consistent with the Department's authority under the Higher Education Act (HEA) and is a reasonable basis for its temporary halt in issuing final borrower defense decisions. Nothing Plaintiffs submit in their abbreviated briefing on this issue undermines that conclusion. The Court should thus grant Defendants summary judgment for the reasons explained in Defendants' opening brief and for the additional reason that Defendants have subsequently taken concrete action mooting Plaintiffs' claim.

## **ARGUMENT**

## I. **PLAINTIFFS' APA SECTION 706(1) CLAIM HAS BECOME MOOT**

In their opening summary judgment brief filed on December 5, 2019, Defendants represented that the Department had made substantial progress towards developing a comprehensive methodology for awarding relief to successful borrower defense claimants and

---

[2] Plaintiffs have separately filed a motion to strike the Department's declarations from the administrative record and to supplement and complete the record with various other documents. *See* ECF No. 66. Defendants believe that the Court currently has before it everything it needs to resolve the parties' cross motions for summary judgment, and will oppose Plaintiffs' motion, as well as their motion pursuant to Federal Rule of Civil Procedure 56(d), *see* ECF No. 68, on January 16, 2020, pursuant to the Court's January 2, 2020 Order, ECF No. 70.

that, once such methodology was in place, the Department would use it to issue final decisions on pending borrower defense claims in the near future.  *See, e.g.*, Defs.' MSJ at 23.  Since the Department filed its brief, this is exactly what has happened.  Because a claim becomes moot where "changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief," *In Def. of Animals v. U.S. Dep't of Interior*, 808 F. Supp. 2d 1254, 1261 (E.D. Cal. 2011) (quoting *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005)), the Court should dismiss Plaintiffs' case for this reason alone.

Simultaneously with this filing, Defendants are filing a supplement to the Administrative Record (AR), including a declaration from General Mark A. Brown, Chief Operating Officer of Federal Student Aid (FSA), introducing certain additional documents that the Department has publicly released since it filed its AR and summary judgment brief.  *See* Suppl. Admin. R. (Suppl. AR) 586-88, ECF No. 71 (Decl. of Mark A. Brown, Jan. 9, 2020 (Brown Decl.)).  As described in that declaration, the Department issued a press release on December 10, 2019, announcing the Department "has implemented a new methodology for assessing borrower defense to repayment . . . claims."  Suppl. AR 602 (U.S. Dep't of Educ., *Secretary DeVos Approves New Methodology for Providing Student Loan Relief to Borrower Defense Applicants* (Dec. 10, 2019) (Dec. 10 Press Release)).  While the substance and merits of that new methodology are generally beyond the scope of this litigation, the Department's press release, as well as the accompanying policy statement explaining the operation and legal underpinnings of the new methodology, *see* Suppl. AR 589-601 (U.S. Dep't of Educ., *Tiered relief methodology to adjudicate certain borrower defense claims* (Dec. 10, 2019) (Dec. 10 Policy Statement)), confirm that it is a "scientifically robust statistical methodology to determine harm," Suppl. AR 602 (Dec. 10 Press Release).  As explained in the record, developing such a complex methodology was a time-consuming process, which in part explained the Department's delay in adjudicating borrower defense claims.  Admin R. (AR) 006-009, ECF No. 56 (Decl. of Diane Auer Jones ¶¶ 14-23, Nov. 14, 2019 (Jones Decl.)).

For purposes of this case, however, the most important aspect of the Department's December 10, 2019 announcement is that the new methodology would be immediately applied to issue final decisions on class members' borrower defense applications.  The press release stated

that "[h]undreds of claims adjudicated utilizing the new methodology, mostly consisting of Corinthian and ITT borrowers, will be released this week" and that FSA would "also resume" issuing decisions to borrowers who "are ineligible for relief," including for "thousands of claims that were effectively denied by the prior administration."  Suppl. AR 602-03 (Dec. 10 Press Release).  The Brown Declaration further provides that on December 11, 2019, the Department issued a total of 16,045 decisions under the new relief methodology, granting 789 claims, determining that 15,256 claims were ineligible for discharge, and sending notices to each borrower of these final decisions.  Suppl. AR 588 (Brown Decl. ¶ 7).  Further, "FSA is in the process of issuing an additional 1,000 decisions and anticipates issuing thousands more in the next several weeks on a rolling basis."  Suppl. AR 588 (Brown Decl. ¶ 8).

All the relief to which Plaintiffs would be entitled under APA Section 706(1) has been provided by the Department's action to resume issuing final decisions on borrower defense claims, pursuant to a workable and comprehensive methodology the Department has made clear will be applied to the claims of all class members.  *See* Suppl. AR 597 (Dec. 10 Policy Statement) (clarifying that new methodology will be applied to all borrower defense claims others than those submitted by members of the *Manriquez* class, who are explicitly excluded from the class in this case).  As Defendants explained in their opening brief, *see* Defs.' MSJ at 16 n.7, § 706(1) "empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (cleaned up).  Here, the agency inaction at issue is the lack of final borrower defense decisions over the 18-month period between June 2018 and December 2019, not the Department's delay with respect to any particular application.  The Court confirmed as much when it granted class certification, noting that Plaintiffs seek not "a specific ruling for each application," but "simply . . . to restart the decision-making process."  Class Cert. Order at 12.  Indeed, both Plaintiffs and the Court have characterized this case as challenging a single "alleged policy of inaction,"[3] *id.*, which "is curable by a single injunction" "compelling defendants to restart the

_____

[3] Plaintiffs frequently refer to an alleged "policy of inaction" with respect to borrower defense claims, *e.g.*, Opp'n at 18, and assert that the Department issued a "blanket order to halt decisionmaking on Students' claims," *id.* at 3.  But whether the Department's inaction is

processing of borrower defense claims," *id*. at 13; *see also* Compl. ¶ 10 (Plaintiffs seek "an order compelling the Department to start granting or denying their borrower defenses"); Compl. ¶¶ 388-89 (similarly requesting that Court compel the Department to "start" granting and denying borrower defense claims). The Department, through the action announced on December 10, 2019, has ended its temporary (and reasonable) inaction with respect to issuing final decisions on borrower defense claims, restarted issuing such decisions, and restarted granting or denying the claims of class members.

The Department has thus taken action which "prevents the court from granting effective relief," rendering Plaintiffs' claim moot and subject to dismissal. *Grand Canyon Trust*, 691 F.3d at 1016-17 (citation omitted); *see also Californians for Renewable Energy v. EPA*, No. C 15 3292 SBA, 2018 WL 1586211, at *14 (N.D. Cal. Mar. 30, 2018) ("In general, when an administrative agency has performed the action sought by a plaintiff in litigation, a federal court 'lacks the ability to grant effective relief.'" (quoting *Pub. Util. Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996)); *Toor v. Holder*, 717 F. Supp. 2d 100, 104 n.2 (D.D.C. 2010) ("Courts often find mootness . . . when an agency action is first challenged [under § 706(1)], and is then rendered during litigation."). Because the Court can "hardly order [the Department] at this point to do something that it has already done," *NRDC v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982), it should dismiss Plaintiffs' claim as moot because "no live controversy remains as to [the Department's] delay," *Toor*, 717 F. Supp. 2d at 104 n.2

---

characterized as a policy or simply a practice, it is undisputed that the Department did not issue any final decisions for approximately 18 months between June 2018 and December 2019. The question before this Court is whether that delay in issuing final decisions was reasonable, and Defendants have certified an administrative record with sworn declarations from agency officials attesting to the reasons for the delay. That explanation is either sufficient to justify the Department's delay or it is not (and Defendants contend that it is), but the record is entitled to a presumption of regularity, which can only be overcome by a "showing of impropriety in the process." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). Plaintiffs have not made such a showing, and the Court should reject their suggestion that further "details" about the Department's pause in issuing final decisions on borrower defense claims are material facts upon which the resolution of this case depends. *See* Opp'n at 3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   THE HEA'S ANTI-INJUNCTION PROVISION PREVENTS THE COURT FROM ISSUING COERCIVE RELIEF AGAINST THE SECRETARY FOR THE INACTION AT ISSUE IN THIS CASE

The HEA provides that no "injunction . . . or other similar process . . . shall be issued against the Secretary" in the "performance of, and with respect to, the functions, powers, and duties, vested in [her] by" the statutory provisions governing the student loan programs authorized by the HEA.  20 U.S.C. § 1082(a)(2).  Accordingly, as Defendants explained in their opening brief, the statute forbids the relief Plaintiffs seek, *i.e.*, an order compelling Defendants to make borrower defense decisions and declaratory relief which would "produce the same effect as an injunction." *See Am. Ass'n of Cosmetology Sch. v. Riley*, 170 F.3d 1250, 1254 (9th Cir. 1999).  Nonetheless, Plaintiffs contend the HEA's plain language does not apply because they have brought a claim under the APA alleging "unlawful agency action."  Opp'n at 21.  But it is not the case that any APA claim overrides the HEA's anti-injunction provision because, as Plaintiffs cannot help but acknowledge, *id*. at 22, the Ninth Circuit's *American Association of Cosmetology Schools* decision, which held that "coercive" relief of any kind, "no matter what name it's given," is "prohibited by the anti-injunction statute," was rendered in an APA case, *see* 170 F.3d at 1253-54. And while Plaintiffs attempt to distinguish that case by contending that the relief the court refused to order against the Secretary was "plainly coercive," Opp'n at 22, they do not explain why their own case differs; it is established that "remedies such as injunction or mandamus are clearly considered coercive."  *Umhey v. Cty. of Orange*, 957 F. Supp. 525, 530 (S.D.N.Y. 1997).

Plaintiffs are left arguing, then, that the "anti-injunction provision does not apply if the Secretary exceeds her legal authority."  Opp'n at 21.  As noted above, however, it cannot be the case that *any* allegation that a federal officer or agency acts unlawfully provides jurisdiction to the federal courts to issue an injunction against the Secretary; rather, the anti-injunction provision can only be overcome where the Secretary "exercises powers that are clearly outside [her] statutory authority."  *Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425, 428 (S.D.N.Y. 1996); *see also, e.g.*, *Gross v. Bell Sav. Bank PaSA*, 974 F.2d 403, 407 (3d Cir. 1992) (interpreting similar anti-injunction provision and finding that courts only have "the ability to restrain the [Resolution Trust corporation] where [it] is acting clearly outside its statutory powers").  "A government official's

illegal action is not *ipso facto* beyond his delegated authority," and so a court does not have the power to order coercive relief against acts that merely "constitute a wrongful exercise of . . . . proper administrative functions." *Calise Beauty School*, 941 F. Supp. at 430 (citation omitted).

Here, as explained further below, Plaintiffs simply challenge the pace at which Defendants are processing and issuing final decisions on borrower defense applications. But these are functions that Congress has delegated to the Secretary. Indeed, Congress has not enacted a timetable pursuant to which borrower defense decisions must be made (nor, for that matter, has the Department through any regulation), instead delegating to the Secretary significant discretion in the administration of the Department's borrower defense program—including the discretion to determine a comprehensive methodology for awarding relief to successful claimants. *See Calvillo Manriquez v. DeVos*, 345 F. Supp. 3d 1077, 1103 (N.D. Cal. 2018) (finding that "there is no question that the Secretary has the power to determine the amount of relief a borrower can obtain" and that "creat[ing] a policy to determine whether students obtained value and if so, how much, is . . . a legitimate exercise of the Secretary's discretion under the [HEA]"). As such, the Department's temporary delay in issuing decisions while, consistent with its statutory authority, it (among other things) developed such a methodology to award relief in the Secretary's preferred manner, is not "clearly outside" the Secretary's authority.[4] *See Calise Beauty Sch.*, 941 F. Supp. at 428. The HEA's anti-injunction provision thus applies to preclude the coercive relief that Plaintiffs seek.

## III. THE DEPARTMENT'S DELAY IN ISSUING FINAL BORROWER DEFENSE DECISIONS WAS NOT PER SE UNREASONABLE

Plaintiffs spend much effort arguing that the Department has a "mandatory duty" to adjudicate borrower defenses, and that the Department did not issue any final decisions for a period

---

[4] It is not the case then, as Plaintiffs contend, that Defendants' reading of the anti-injunction provision prevents any plaintiff from ever seeking a remedy against the Department's unlawful withholding of agency action. Opp'n at 22. If that withholding was truly "outside the scope of the authority vested in [the Secretary]," as, for example, if the Secretary was given "no discretion" under a particular statutory provision and acted inconsistently with or failed to act at all under the statutory mandate, then a court would have jurisdiction to award "appropriate" injunctive relief. *Canterbury Career Sch., Inc. v. Riley*, 833 F. Supp. 1097, 1103-04 (D.N.J. 1993).

of approximately 18 months. *See* Opp'n at 19-20. But contrary to Plaintiffs' apparent contention to the contrary, these undisputed facts are the beginning, not the end, of the Court's inquiry in this case. *See, e.g.*, *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000) (a court "not only must satisfy [itself] that there indeed exists . . . a [clear] duty [to act], but that the agency has 'unreasonably delayed' the contemplated action"). In contending that Defendants have "breached" their duty, Opp'n at 19, or "ignore[d] the mandate" to issue final decisions on borrower defense claims, *id.* at 23, Plaintiffs improperly conflate the delay at issue in this case with the legally distinct situation in which an agency has *withheld* action. But "the distinction between agency action 'unlawfully withheld' and 'unreasonably delayed' turns on whether Congress imposed a date-certain deadline on agency action." *W. Rangeland Conservation Ass'n v. Zinke*, 265 F. Supp. 3d 1267, 1277 (D. Utah 2017) (quoting *Forest Guardians v. Babbit*, 174 F.3d 1178, 1190 (10th Cir. 1999)). As the Tenth Circuit has explained:

> if an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions—such as the APA's general admonition that agencies conclude matters presented to them "within a reasonable time," *see* 5 U.S.C. § 555(b)—a court must compel only action that is delayed unreasonably. Conversely, when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act.

*Forest Guardians*, 174 F.3d at 1190. In other words, in the absence of a congressionally-mandated timeline for the completion of agency action, a court cannot find that an agency has acted unlawfully, or "breached" its duty to act, unless it finds that the agency's *delay* in taking the required action is *unreasonable*. *See also Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) ("If the agency does have a clear duty to act, and Congress has not prescribed a deadline for the action, the question becomes whether the agency's delay is unreasonable.").

Indeed, the *Skalka* case provides a much more useful framework for analyzing the delay in this case than Plaintiffs' reductive position that they are entitled to summary judgment merely because the Department has a duty to decide borrower defense claims and delayed doing so for approximately 18 months. *See* Opp'n at 19-21. *Skalka* presented a similar situation as is at issue here, namely that "the agency has decided, for a considered policy reason, to suspend processing what it admits are required adjudications." *Skalka*, 246 F. Supp. 3d at 153. The court then found

that suspension both lawful and reasonable because, *inter alia* and as here, "there is no deadline or timeframe prescribed by Congress," "Congress has given the agencies wide discretion," and "[t]he Court would be outside its limited role . . . if it required the agencies to invest the high degree of resources that would be necessary" to adjudicate the relevant applications at the pace desired by the plaintiffs. *Id.* at 153-54. Here, the Court should reach the same result applying the "*TRAC* factors". *See* Defs.' MSJ at 14 (listing factors articulated in *Telecomms. Research & Act Ctr. v. FCC* (*TRAC*), 750 F.2d 70 (D.C. Cir. 1984).

Ultimately, then, Plaintiffs are incorrect to contend that the Department's "conduct is per se unreasonable." Opp'n at 19. Rather, "because context means everything in assessing an alleged undue delay, there is no *per se* rule as to what amount of time constitutes undue delay." *Oceana v. Bureau of Ocean Energy Mgmt.* 37 F. Supp. 3d 147, 184-85 (D.D.C. 2014). As explained below and in Defendants' opening brief, the context here makes clear that the Department's delay, which has now concluded in any event, comported with the "rule of reason." *See* Defs.' MSJ at 17-24.

## IV.   THE DEPARTMENT'S DELAY WAS REASONABLE

As noted above, the Department is no longer delaying issuing final borrower defense decisions, so discussion of its prior delay is academic. As the D.C. Circuit has recognized, where an agency has already taken action to moot a plaintiff's claim of delay, courts should decline any "invitation to 'punish' [the agency] for its past delay by imposing a mandatory, accelerated timetable." *United Steelworkers of Am. v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986) (per curiam).

1.   To the extent the Court does not find that Plaintiffs' claim is moot, it should uphold the reasonableness of the Department's temporary suspension of final decisions on borrower defense claims. At the very least, it should treat the Department's announcement and application of a new borrower defense relief methodology as significant evidence weighing against a finding of unreasonable delay. *See Towns of Wellesley, Concord & Norwood v. FERC*, 829 F.2d 275, 277 (1st Cir. 1987) (per curiam) (declining to "interfere in ongoing agency proceedings" where a final decision had been delayed fourteen months, given agency assurances that "it is moving in a diligent manner to conclude" the matter before it); *Cent. Sierra Envtl. Res. Ctr. v. Stanislaus Nat'l Forest*,

304 F. Supp. 3d 916, 951 (E.D. Cal. 2018) (collecting cases for proposition that where agency provided a "concrete timeline," paired with "relatively short delay" of less than two years, courts declined to find the delay unreasonable under the APA).

As noted above, Plaintiffs primarily try to make this an unlawful withholding case based on the Department's asserted ignorance of a non-existent statutory deadline to act, and so devote remarkably little space in their opposition brief to whether the Department's delay was reasonable. But when Plaintiffs get around to arguing that point, they stake their claim to summary judgment on the assertion[5] that "no evidence suggests an end in sight for the class . . . as a whole." Opp'n at 23. Plaintiffs are wrong because the Department's original record *did* provide such assurance. *See, e.g.*, AR 007 (Jones Decl. ¶ 18) (noting that, since the preliminary injunction issued in *Manriquez*, the Department had "undertaken significant efforts to explore and develop an alternative approach for determining the amount of relief to be given . . . to all borrowers with approved borrower defense claims"); AR 009 (Jones Decl. ¶ 22) (stating that the Department was "working towards announcing and implementing a new partial relief methodology within the next few weeks"); AR 010 (Jones Decl. ¶25) ("Once established, the new methodology will allow the Department to expeditiously determine the level of relief to award to successful [borrower defense] applicants in a clear, consistent, and fair manner."). But more importantly, the Department has subsequently taken "concrete steps" towards adjudicating the claims before it, *see In re Pesticide Action Network N. Am.*, 532 F. App'x 649, 651 (9th Cir. 2013), announcing a methodology for awarding relief to successful claimants on December 10, 2019, and issuing final decisions to more than 16,000 borrowers since that time, with current estimates to issue thousands more decisions in the next several weeks. *See* Suppl. AR 588 (Brown Decl. ¶¶ 7-8). As discussed above, Defendants

---

[5] Plaintiffs cite *In re A Cmty. Voice*, 878 F.3d 779, 787 (9th Cir. 2017), for the proposition that "a reasonable time for agency action is typically counted in weeks or months, not years." Opp'n at 23. That decision, however, recognized the Ninth Circuit's prior statement, cited in Defendants' opening brief, that actionable unreasonable delays typically involve "years, not months," and distinguished the situation before it – which involved a delay of more than seven years – from others in which the Ninth Circuit had declined to order relief in the nature of mandamus in cases involving delays of "only months or a few years." *In re Cmty. Voice*, 878 F.3d at 787; *see also id.* at 786 (further basing decision to order mandamus relief on factors not present here, such as the "absence of a reasonable timetable" provided by the agency and threatened "harm to health").

have, like Plaintiffs requested, "start[ed] granting or denying [Plaintiffs'] borrower defenses," Compl. ¶ 10, so there is no basis for the Court to interfere at this point with the agency's ongoing internal processes.  *See Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 116 (D.D.C. 2005) ("Under the 'rule of reason,' the agency's provision of a projected timeline for balancing competing priorities—one that provides relief in the foreseeable future—weighs against issuance of mandamus.").

2.      Plaintiffs offer nothing in response to these developments, choosing to ignore them (even though they were publicly announced nearly two weeks before Plaintiffs filed their brief). Instead, Plaintiffs attempt to call into question Defendants' "policy judgment" in favor of developing a comprehensive relief methodology before resuming issuing final decisions on borrower defense claims.  But while stating on multiple occasions that Defendants have not justified this basis for delay, *see, e.g.*, Opp'n at 3, 19, 23, Plaintiffs offer little support for *why* that is the case; to the extent they try to do so, their reasoning is not persuasive.

For example, Plaintiffs suggest that the Department may lack the discretion to formulate its preferred methodology for awarding relief to successful borrower defense claimants.  *See* Opp'n at 2 ("[t]o the extent that the Secretary has discretion regarding borrower defense claims, this discretion . . . does not allow for a prolonged or indefinite hiatus" while a partial relief methodology is developed).  But Plaintiffs point to no statute or regulation preventing the Department from taking such action,[6] and the Secretary's discretion in this area can hardly be disputed.  Indeed, Congress has said nothing about borrower defense other than that the Department must "specify in regulations which acts or omissions" give rise to one, 20 U.S.C. § 1087e(h), and neither the

---

[6] Plaintiffs assert, in their "counter-statement of facts," that the Department previously interpreted its 1994 borrower defense regulation as "incorporating and relying on 'applicable state law' . . . as to both eligibility and relief under the Direct Loan Program."  Opp'n at 9.  Plaintiffs do not actually make any argument based on this point, but to the extent they are suggesting that this "interpretation" prevents the Secretary from exercising her discretion to develop a comprehensive relief methodology, they are wrong.  As another court has found, the 1994 regulation "does not reference state law" in addressing "the amount or type of relief" available to successful borrower defense claimants, and even if the Department previously interpreted that regulation to incorporate state law with respect to relief, that would not prevent the Department from changing course at a later time consistent with the discretion afforded under the plain text of both the 1994 and 2016 borrower defense regulations.  *See Manriquez*, 345 F. Supp. 3d at 1103-04.

Department's 1994 nor 2016 regulations governing borrower defense provide a mechanism by which the Secretary should calculate how much loan relief to award successful claimants. *See* Defs.' MSJ at 21. As *Manriquez* squarely held, "there is no question that the Secretary has the power to determine the amount of relief a borrower can obtain," and devising a methodology to calculate relief based on educational value and harm suffered is "a legitimate exercise of the Secretary's discretion under the [HEA]." *Manriquez*, 345 F. Supp. 3d at 1103. Plaintiffs thus offer nothing to suggest that the development of a comprehensive borrower defense relief methodology was an improper basis on which to condition resuming the issuance of final borrower defense decisions.

Moreover, given the Secretary's inherent discretion to adjudicate and award relief on borrower defense claims according to her chosen method, it does not matter, as Plaintiffs contend, whether the Department's approach under the prior administration (*i.e.*, prior to 2017) "would have substantially eliminated the backlog in applications within months." Opp'n at 3. Whether those procedures would have cleared the backlog or not, the Secretary was entitled to review existing borrower defense procedures and establish her preferred method for reviewing and awarding relief on such claims. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring) ("A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations."); *see also Sierra Club v. Thomas*, 828 F.2d 783, 798 (D.C. Cir. 1987) (where Congress assigns an agency a "broad mandate" and "finite resources to satisfy [its] responsibilities, the agency cannot avoid setting priorities among them").

As a last resort, Plaintiffs contend, in conclusory fashion, that the Department's delay is unreasonable because it has "manifested bad faith." Opp'n at 24. But of course, the general rule is 180 degrees from Plaintiffs' assertion that "[a]gency motivations matter," *id.*; when courts review agency action under the APA, "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law." *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998). And in § 706(1) cases in particular, the standard makes explicit that "the court need *not* 'find any impropriety lurking behind agency

lassitude in order to hold that agency action is unreasonably delayed.'"  *TRAC*, 750 F.2d at 80 (emphasis added) (cleaned up); *see also Cent. Sierra Envtl. Res. Ctr*, 304 F. Supp. 3d at 952 (noting that, for this reason, the "final *TRAC* factor requires no analysis").  Moreover, the case law Plaintiffs invoke merely provides that "where an agency has manifested bad faith, *as by singling someone out for bad treatment or asserting utter indifference to a congressional deadline*, the agency will have a hard time claiming legitimacy for its priorities." *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 510 (9th Cir. 1997) (emphasis added) (cleaned up).  Neither circumstance is present here,[7] as Plaintiffs do not assert that Defendants have singled anyone out for "bad treatment."  And try as Plaintiffs might to have it the other way, Defendants have not ignored any congressional *deadline* for the simple reason that Congress has not set one for final decisions on borrower defense claims.  Plaintiffs' bare assertion that the Department has ignored Congress by temporarily not "mak[ing] borrower defenses available to students" (for reasons Plaintiffs have failed to demonstrate are illegitimate), Opp'n at 24, falls well short of carrying their considerable burden for demonstrating agency bad faith. *See, e.g.*, *Liangcai Dai v. USCIS*, No. 16-cv-05381 AB (AFMx), 2017 WL 10574062, at *2 (C.D. Cal. Apr. 7, 2017) (noting that plaintiff alleging bad faith must make a showing that is "significant," "strong," "substantial," or "prima facie").

3.  As Defendants explained in their opening brief, while the "primary driver" of the Department's delay was its desire to develop and implement a comprehensive borrower defense relief methodology before resuming issuing final decisions on such claims, other demands on the Department's time during the relevant time period also provide context for and help explain the delay. *See* Defs.' MSJ at 19-21.  These include the time and resources needed to, *inter alia*, actually develop the comprehensive relief methodology announced on December 10, 2019; implement the Department's 2016 borrower defense regulations; develop and issue new borrower

---

[7] Plaintiffs' reliance on *Tufail v. Neufeld*, No. 2:14-cv-02545-TLN-CMK, 2016 WL 1587218 (E.D. Cal. Apr. 20, 2016), which has nothing to do with bad faith, *see id.* at *8, is misplaced.  There, unlike here, the relevant application had "been pending for almost 14 years," which "weigh[ed] substantially against a finding of reasonability," and the defendants did "not allow a fact-specific inquiry because they provide[d] no analysis to indicate why a delay is required in this instance and have made no showing that they might adjudicate Plaintiff's application at any particular time in the future." *Id.* at *6-7.

defense regulations; and create and implement a new borrower defense claims management system. *See id.* at 19-20. Plaintiffs quibble with the Department's characterization of these factors, but do not demonstrate that the explanation the Department has provided "'is incongruent with what the record reveals about the agency's priorities and decisionmaking process.'" Opp'n at 27 (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019)).

Regarding the Department's implementation of the 2016 regulation, the point is merely that those regulations "significantly changed the rules for considering borrower defense claims," AR 004 (Jones Decl. ¶ 8), and that, once they became effective, their implementation took "considerable time and effort," AR 005 (Jones Decl. ¶ 10). Contrary to Plaintiffs' contention, then, *see* Opp'n at 25, what the Department represented about the pace of borrower defense claims adjudication while those regulations were delayed and before they took effect has no bearing on the resources that were required to implement them once they actually did take effect in 2018.[8] Nor did the Department argue that the borrower defense rulemaking process it engaged in in 2018 and 2019 "preclude[d] resolution of pending applications." Opp'n at 26. Again, the Department merely made the point that responding to more than 38,000 comments on its proposed rule was one of the many priorities competing for attention and resources during the period the Department was not issuing final decisions on borrower defense. *See* AR 005 (Jones Decl. ¶ 12). Such an uncontroversial statement is certainly not "directly contradicted" by statements of Department

---

[8] Plaintiffs also create confusion in their description of the 2016 regulation, contending that "*all* loans of Students with pending claims" are governed by the substantive state law standard set forth in the 1994 regulation, and questioning whether the 2016 regulation's procedures apply to any of Plaintiffs' loans. Opp'n at 3-4; *see also id.* at 8. As Defendants have explained, it does not matter, for purposes of this case, which regulation applies to a particular loan, given that both regulations provide the Secretary discretion to determine relief for successful claimants, justifying the Department's primary basis for delay in this case. *See, e.g.*, Defs.' MSJ at 21. Even so, Plaintiffs' characterization is puzzling. The 2016 regulation is clear that the new substantive standard it announces for the adjudication of borrower defense claims applies to loans first disbursed on or after July 1, 2017, *see* 34 C.F.R. § 685.222(a)(2), and that the new procedures it announced for the assertion and adjudication of claims apply to both loans first disbursed on or after that date, *id.*, as well as loans first disbursed before that date, *id.* § 685.222(a)(1); 685.206(c)(2). And in any event, it is undisputed that the 2016 regulation made other changes, such as imposing a notice requirement, which "required FSA to develop a process to give notice to schools when their students file borrower defense claims and to track responses and receive and store evidence." AR 345 (Decl. of Colleen M. Nevin ¶ 37, Nov. 14, 2019).

officials in November 2017, one month before the Department announced its first partial relief methodology, that the Department anticipated resolving pending claims "starting soon." Opp'n at 26.

Similarly, the Department explained that resource-based staffing issues during the period of the delay constrained its ability to work through pending claims. Plaintiffs seek to cast these staffing shortages, which are a fact of life in administrative agencies, *see, e.g.*, *Ctr. for Envtl. Health v. McCarthy*, 192 F. Supp. 3d 1036, 1044 (N.D. Cal. 2016) ("An agency has broad discretion to choose how to best marshal its limited resources and personnel to carry out its delegated responsibilities." (citation omitted)), as vaguely nefarious, *see* Opp'n at 26-27. But their bare contention that the Department's resource constraints were somehow "deliberate" choices to prevent the adjudication of borrower defense claims, *id.*, is insufficient to rebut the presumption of regularity attaching to the agency's description of its staffing shortages. *See, e.g.*, *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007). At the end of the day, then, Plaintiffs have offered no basis for the Court to second-guess the Department's weighing of the competing demands on its limited resources, which the Department "is in a unique—and authoritative— position" to assess. *In re Barr Labs. Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991) (noting that "[s]uch budget flexibility as Congress has allowed the agency is not for [courts] to hijack").

4.      Plaintiffs end their brief by arguing that the third *TRAC* factor, the effect of the Department's delay on "human welfare and class members' interests," weighs "heavily in favor" of Plaintiffs. Opp'n at 27. Defendants do not dispute that some members of the class have been harmed in various ways while they await final decision on their borrower defense claims. But as Defendants noted in their opening brief, this factor is "not dispositive," and must be considered in light of other relevant factors, including how reasonable the agency delay is and "the effect of expediting action on other agency priorities." *See Cent. Sierra Envtl. Res. Ctr.*, 304 F. Supp. 3d at 952. As explained above, those other factors tip heavily in favor of denying relief in the nature of mandamus here, such that the overall balance of the *TRAC* factors favors Defendants. *See Sierra Club*, 828 F.2d at 798 ("[W]]hether the public health and welfare will benefit or suffer from accelerating . . . particular [agency action] depends crucially upon the competing priorities that

consume [the agency's] time, since any acceleration here may come at the expense of delay of [agency] action elsewhere.").

## **CONCLUSION**

For the foregoing reasons, and those stated in Defendants' opening summary judgment brief, the Court should grant Defendants' summary judgment motion, deny Plaintiffs' summary judgment motion, and enter final judgment for Defendants on all claims.

Dated: January 9, 2020                        Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar No. 89400)
KATHRYN C. DAVIS (DC Bar No. 985055)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 616-8098
Fax: (202) 616-8470
robert.c.merritt@usdoj.gov

*Counsel for Defendants*