JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
NATALIE LYONS (SBN 293026)
nlyons@heraca.org
HOUSING & ECONOMIC RIGHTS ADVOCATES
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Tel.: (510) 271-8443
Fax: (510) 868-4521

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL
(*Pro Hac Vice*)
tmerrill@law.harvard.edu
KYRA A. TAYLOR
(*Pro Hac Vice*)
ktaylor@law.harvard.edu
LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, *et al.*, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> ELISABETH DEVOS, Secretary of Education, and THE UNITED STATES DEPARTMENT OF EDUCATION, <br><br> *Defendants*. | Case No. 19-cv-03674-WHA <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date: February 13, 2020 <br> Time: 8:00 a.m. <br> Place: Courtroom 12, 19th Floor <br> Honorable William Alsup |

Defendants accept they have a mandatory duty to decide borrower defenses and essentially concede that they have had a long-standing policy of withholding those decisions. Defs. Opp. to Pls. Record Mot. (ECF No. 75) at 4. The Court's Section 706(1) inquiry need extend no further. *Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068 (9th Cir. 2016).  The Department would obfuscate the Court's analysis with representations that it issued borrower defense decisions on one day in December 2019—resolving *at most* 7 percent of class members' borrower defenses—and thus, it has "restarted" the decisionmaking process that will afford relief to the class. Defendants' representations neither moot the case, nor do they provide credible evidence on which the Court may determine that they have ceased their policy of inaction. Indeed, there is no evidence to show that the recently issued decisions demonstrate Defendants' internal capacity to decide the merits of all class members' claims. The available evidence, scant though it is, affirmatively indicates otherwise: that Defendants' moratorium on developing new tools to facilitate merits decisions on *all* pending borrower defenses continues to the present day.

Ultimately, Defendants' bald acknowledgment of their policy to withhold decisions on borrower defenses rests on the premise that it was reasonable of the Secretary to halt decisions until her preferred policy, the newly issued relief methodology, could become agency policy. Not only does this justification lack reason—a relief methodology cannot (alone) resolve all pending borrower defenses—it was manifestly unreasonable for the Department to withhold borrower defense decisions until the relief method was in place. Mandatory duties do not sway with policy preference, especially when the Department had the tools and capacity, developed under the previous administration, to continue issuing decisions while it pursued a policy change.

Defendants' long-standing and ongoing policy of inaction on borrower defenses defies reason, harms the tens of thousands of borrowers who wait in limbo for the Department to act and thereby, violates Section 706(1).

**I. The Department's recent action does not moot the claim of the class**

Defendants' single day of action on borrower defenses—December 11, 2019—does not vitiate the APA claim of the class. The vast majority of class members' borrower defenses remain

2

Pls. Reply ISO Motion for Summary Judgment                    Case No: 19-cv-03674-WHA

pending, including those of the named Plaintiffs, and there is no evidence showing that the Department has developed necessary eligibility memoranda and protocols to resolve the burgeoning backlog of applications, or that its relief methodology can be applied to the entire class.

Even if some members' claims have been decided,[1] there is a "distinction between issues that have become moot and parties whose interest in the issue may have become moot [that] is especially visible in the context of class actions." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1087 (9th Cir. 2011). Here, Defendants are claiming that the adjudication of 16,045 borrower defenses moots the case as to all members of the class. Simple math tells a different story: as of November 12, 2019, more than 225,000 Students were awaiting a decision. Administrative Record (ECF Nos. 56-3-4) at 340 (Nevin Decl. ¶ 16). Thus, *at least* 208,995 class members have received no relief, and Defendants would moot the case based on the issuance of decisions on just 7.1% of pending applications. *See Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1296 (S.D. Cal. 2018) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (quoting *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012)). But Defendants have not demonstrated that they have actually abandoned their policy of inaction as to the vast majority of the class—they have not demonstrated whether they are eligible for relief. And if they did indeed "restart the conveyor belt of decisionmaking" for a single day, their action

---

[1] Defendants' assertion that *all* decisions issued on December 11, 2019 regard members' applications is undermined by their acknowledgment that those decisions "mostly consist[ed] of Corinthian and ITT borrowers," Defs' Opp. (ECF No. 72) at 4, and the lack of evidence showing that the individuals who received decisions are members of the class. Many (though not all) Corinthian borrowers have been explicitly carved out this class because of their membership in the class of *Calvillo Manriquez v. DeVos*, Court No. 3:17-cv-07210-SK (N.D. Cal.). As the Department acknowledged in *Calvillo*, although the class in that case "does not include all Corinthian students. . . because a Corinthian borrower's membership in the class depends upon the basis of his or her borrower defense claim . . . it may not be immediately discernable whether a borrower is a member of the class without a full review of his or her borrower defense application." *Id.* at ECF No. 111-2 (Sep. 18, 2019), 2 n. 2 (Compliance Report) (further noting that it was "treating all Corinthian students" as part of the *Calvillo* class for purposes of reporting its noncompliance with the court's preliminary injunction).

is a drop in the bucket of the tens of thousands of class members whose applications remain in limbo.

Even if Defendants could demonstrate—they have not—that class members no longer have Article III standing, they have the "formidable burden of showing that it is clear [their policy of inaction]" is forever extinguished and that the Department does not intend to "return[ed] to [its] old ways," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000) (voluntary cessation exception to mootness). A case cited by Defendants, *Californians for Renewable Energy v. United States EPA*, No. C 15-3292 SBA, 2018 U.S. Dist. LEXIS 56105 (N.D. Cal. Mar. 30, 2018) is instructive. There, the Environmental Protection Agency resolved all of the plaintiffs Title VI administrative complaints that undergirded their claims for relief, yet the court held that their claims were not moot, admonishing, *inter alia*, that district courts have "broad authority to grant injunctive relief to prevent future misconduct where the 'defendant's past and present misconduct indicates a strong likelihood of future violations.'" *Id.* at *48 (quoting *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990)). Furthermore, it found, under the voluntary cessation exception, that the EPA "failed to carry 'its formidable burden of showing that it is absolutely clear' [the plaintiffs would] not encounter future delays in the processing of their Title VI complaints in a manner that violates applicable regulations." *Id.* at *51-*58 (quoting *Friends of the Earth*, 528 U.S. at 189-90). So too here, the Department has not met its burden to demonstrate it has, in fact, ceased its policy of inaction and will timely resolve all class members' borrower defenses.

Defendants have not proffered any evidence that they have developed the necessary mechanisms to adjudicate the merits of all class members' borrower defenses—and thereby, clear the mounting backlog of pending borrower defenses. Whereas the Borrower Defense Unit (BDU) relies on the development of "established criteria" and "protocols" to issue determinations on the merits of borrower defenses, AR at 345-46 (Nevin Dec.), there is no evidence indicating that the Department has established criteria or protocols that would facilitate

decisions on the merits of all class members' applications.[2] It is not disputed that the Department halted creation of eligibility memoranda. AR at 502-03, 533 n. 21 (Inspector General Report). And it has continued the moratorium on developing eligibility memoranda, despite receiving borrower defenses from schools and programs for which it has none. Pls. Record Mot. (ECF No. 66), Ex. 32[3] at 20-21 (Department response to Sen. Murray QFR). Indeed, the recently issued decisions "mostly consist[ed] of Corinthian and ITT borrowers," Defs. Opp. (ECF No. 72) at 4, for which varied memoranda and protocols already exist. AR at 347-48. The Court can hardly be assured by the Defendants' vague promises to "issu[e] thousands more [decisions] in the next several weeks on a rolling basis," Defs. Opp. at 4, without evidence showing that Defendants are capable of deciding the merits of all members' borrower defenses. Defendants' one-day departure from its policy of inaction fails to demonstrate that the Department has, in fact, "restarted granting or denying [borrower defense] claims," in any meaningful sense. Defs. Opp. at 5.

The Department's action also fails to satisfy Plaintiffs' request for relief: to ensure timely adjudication of all members' claims. Pls. Motion (ECF No. 67) at 2-3, 30 (seeking resolution of pending borrower defenses within twelve months). Defendants' notion that the Court can "hardly order [the Department] at this point to do something that it has already done," Defs. Opp. at 72, relies on a false premise—that any action by the Department on even one application could resolve Defendants' unlawful inaction as to all applications.

---

[2] As described in Plaintiffs' Rule 56(d) and Administrative Record Motions, ECF Nos. 66, 68, the purported "protocols" included in the record the Department lodged are insufficient. The "Standard Protocol" (which is undated, watermarked DRAFT, and includes a link to another document "Types of Claims 10.23.2018" which was not provided) does not identify whether it applies the 1994 or 2016 regulations. It also does not identify how to determine whether a borrower has "stated a BD claim." Additionally, it does not dictate when those claims should be granted. AR 494-495.

[3] Defendants do not oppose Plaintiffs' request (ECF No. 66) to supplement the AR with additional documents. Defs. Opp. to Pls. Record Mot. at 3-5.

## II. HEA anti-injunction provision does not preclude the relief sought by the Class

The core of Plaintiffs' APA claim challenges the failure of the Department (under the Secretary's direction) to fulfill its statutory duty to decide borrower defenses. Thus, "the conduct alleged is determined to be beyond the statutory limits on the Secretary's power," and the Court has jurisdiction to issue injunctive relief. *See Gearhart v. U.S. Dep't of Educ.*, No. 19-CV-00750-YGR, 2019 WL 5535798, at *5 (N.D. Cal. Oct. 25, 2019) (citing *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031-32 (9th Cir. 2013)).

Defendants rely primarily on *Am. Ass'n of Cosmetology Sch. v. Riley*, 170 F.3d 1250 (9th Cir. 1999), but this case is limited by its peculiar factual context. Plaintiffs there sought declaratory relief that would invalidate a series of final agency actions—without directly challenging those actions—and require the Department to restore program eligibility to entities it had deemed ineligible. The Ninth Circuit objected to the styling of the case but was careful to vacate the summary judgment order while affirming the result, and expressly preserved the ability of individual entities to seek restoration of program eligibility through a direct APA challenge. *Id.* at 1254-56. This ruling did not disturb the principle that, despite the language of the HEA, a court may order specific relief under the APA to correct *ultra vires* action pursuant to a properly presented APA claim. *Id.* at 1255-56. This was confirmed in the subsequent case of *Mashiri*, in which the Ninth Circuit emphasized that the HEA anti-injunction provision may be overridden by the Supreme Court's decisions in *Larson* and *Dugan*, which made clear that the failure to waive sovereign immunity is not dispositive as to all actions by federal officers:

> [W]here the [federal] officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief.

724 F.3d at 1032 (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949) and citing *Dugan v. Rank*, 372 U.S. 609 (1963)) (action for mandamus relief). As in *Mashiri*, Secretary DeVos' authority over borrower defenses is "limited by statute," and Plaintiffs' claim that she has exceeded her statutory authority is not limited by the HEA's anti-injunction

clause. *Id. See also Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068, 1075-76 (9th Cir. 2016) (equating Section 706(1) to a mandamus action).

Because Secretary DeVos "is not doing the business which the sovereign has empowered [her] to do or [she] is doing it in a way which the sovereign has forbidden," she cannot hide behind the HEA. *Mashiri*, 724 F.3d at 1032. The Court has jurisdiction under Section 706(1) to review the Secretary's actions and "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), as other courts have similarly held. Pls. Motion at 21-22 (collecting cases).

### III. Defendants' policy of inaction on borrower defenses is unlawful and per se unreasonable

Defendants have answered the threshold question under *SUWA*—they admit "there is no dispute that the Department has a mandatory duty to resolve borrower defense claims." Defs. Opp. to Pls. Record Mot. At 4; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (*SUWA*). And Defendants essentially admit they have maintained a policy of inaction on borrower defenses. *E.g.*, Defs. Opp. at 4 n. 3. Having established the Department's policy to abdicate its mandatory duty to adjudicate borrower defenses, the Court's Section 706(1) analysis should end here. *SUWA*, 542 U.S. at 63-64; *Vietnam Veterans of Am.*, 811 F.3d at 1079 ("It is clear that section 706(1) applies to the situation where a federal agency refuses to act in disregard of its legal duty to act."). *See also* Pls. Mot. at 18-21. Yet, Defendants insist that the reasonableness of their policy of inaction matters.[4] Even if it does, their inaction has been and continues to be unreasonable.

---

[4] Defendants assert that this is an "unreasonable delay" case, requiring analysis under *TRAC*. Defs. Opp. at 7-8. Plaintiffs maintain that the Court should follow *Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068 (9th Cir. 2016) in finding that Defendants' withholding of decisions on borrower defenses is a breach of its mandatory duty and thus, a violation of Section 706(1). Indeed, in the case cited by Defendants, *Skalka v. Kelly*, 246 F. Supp. 3d 147 (D.D.C. 2017), the court's first determination regarded whether the agency action had been unlawfully withheld, and only then did it turn to the *TRAC* factors. *Id.* at 153. Unlike here, the *Skalka* court found no unlawful withholding or agency delay based on circumstances outside the agency's control. *Id.* at 153-55. Nonetheless, if the Court finds that the case is subject to analysis under *TRAC*, Plaintiffs have shown that they will prevail under that analysis. Pls. Mot. at 22-30.

Defendants seek to convince the Court that they have "restarted" the process of adjudicating borrower defenses, and they proffer the new relief methodology and recent issuance of borrower defense decisions as "significant" evidence favoring the reasonableness underlying their allegedly extinct policy of inaction. Defs. Opp. at 9-10. But holes in their "evidence" belie its credibility. First, the issuance of 15,256 *denials* could not logically turn on finalizing the *relief* methodology. Rather, the Department concluded that the applications were ineligible for relief, but withheld issuing final decisions until this litigation challenged its inaction. Decl. of Diane Auer Jones, ¶ 26, 27, AR at 11. Second, the recently released relief methodology—the primary justification for Defendants' argument that their inaction was reasonable, Defs. Opp. at 9-12— could not possibly facilitate future *merits* decisions on borrower defenses. The relief methodology can only be used once the Department has determined an individual's eligibility for relief. As discussed *supra*, the Department has not developed eligibility memoranda or protocols to cover all pending claims. Pls. Record Mot. at Ex. 35. Instead the recent borrower defense decisions merely demonstrate that the Department issued decisions on claims for which such memoranda and protocols already existed. Defs. Opp. at 4 (decisions primarily regarded Corinthian and ITT claims); AR at 347-48 (describing various Corinthian and ITT memoranda). Thus, Defendants have provided little information to credibly demonstrate that their long-standing policy of withholding decisions on borrower defenses is, in fact, at an end.

The policy itself has been unreasonable since the Secretary instituted it. Defendants assert that the withholding of borrower defense adjudications has been reasonably and primarily anchored in the Secretary's "inherent discretion to adjudicate and award relief … according to her chosen method." Defs. Opp. at 12. They concede that creation of the "relief methodology" was the "basis on which [the Department] condition[ed] resuming the issuance of final borrower defense decisions." *Id.* None of these explanations override the Department's mandatory duty to resolve class members' borrower defenses. *Vietnam Veterans of Am.*, 811 F.3d at 1079 (citing *SUWA,* 542 U.S. at 66). *See also Tufail v. Neufeld*, No. 2:14-cv-02545-TLN-CMK, 2016 U.S.

Dist. LEXIS 53035, at *18-*19 (E.D. Cal. Apr. 19, 2016) (agency could not indefinitely delay a mandatory decision until a new policy was decided).

In this context, it *does* matter a great deal that "the Department's approach under the prior administration (i.e., prior to 2017) would have substantially eliminated the backlog in applications within months." Defs. Opp at 12. *See* Pls. Motion at 3 (noting that prior to January 2017, the Department developed "legal and policy memoranda and protocols" that facilitated deciding "30,000 claims in six months"). The inaction was not a consequence of incapacity; it was a choice. It was manifestly unreasonable for the Department (at the Secretary's direction) to halt all decisions on pending borrower defenses—when it had mechanisms and capacity to continue adjudicating them—simply because the Secretary disfavored the ultimate result of adjudications under those mechanisms. *See Tufail*, 2016 U.S. Dist. LEXIS 53035, at *19 ("The APA is not intended to permit agencies to define the reasonability of their actions by issuing their own memoranda."). Indeed, Secretary DeVos has publicly acknowledged her distaste for the borrower defense regime established by the previous administration, noting that "all [a Student] had to do was raise his or her hand to be instantly entitled to so-called free money." Pls. Mot., Ex. 35, at 5:13. This distaste for those policies likewise animated Defendants' failure to timely implement the 2016 regulations, contrary to their representations otherwise. Defs. Opp. at 14-15. Rather, the Department went to extensive lengths to avoid their implementation, Pls. Opp. at 6-8, and only began the necessary implementation processes after being reprimanded by federal court order in October 2018. *Id.*; AR at 338-39, 345 (Nevins Dec.).

The Department had a duty to decide borrower defenses—and the means—yet it affirmatively chose to withhold decisions on borrower defense claims. From January 20 – July 31, 2017, the Department placed a moratorium on all decisionmaking. Pls. Opp. at 12. From July 2018 to December 2019, no decisions were issued on borrower defense applications. Defs. Opp. at 4. And the freeze on development of eligibility memoranda to facilitate merits decisions on new types (e.g., schools and programs) of claims began in January 2017 and continues to the present day. AR at 502, 509 (IG Report); Pls. Record Mot., Ex. 32 at 21-22. One isolated day

issuing decisions does not demonstrate total abandonment of the Department's acknowledged policy of inaction.

While the Secretary has a great deal of discretion within HEA statutory framework, she and the Department do not have discretion to exceed the bounds of that authority. Thus, they are accountable to the class under Section 706(1) for unreasonably abandoning their mandatory duty to decide borrower defenses. *Vietnam Veterans of Am.*, 811 F.3d at 1079 (citing *SUWA*, 542 U.S. at 66 ("[D]iscretion in the manner in which the duty may be carried out does not mean that the [Department] does not have a duty to perform [this] 'discrete action' within the meaning of § 706(1) and *SUWA*.").

## CONCLUSION

For the foregoing reasons, and those detailed in Plaintiffs' Motion, ECF No. 67, Plaintiffs respectfully request that the Court (1) declare that the Department of Education has a mandatory duty to resolve on the merits the borrower defense applications of the Named Plaintiffs and the Class, (3) declare the Defendants have failed to do so in violation of section 706(1) of the Administrative Procedure Act, and (4) order that the Defendants submit for approval within 30 days a plan whereby they resolve all pending borrower defense applications within 12 months.

Dated: January 23, 2020                                  Respectfully submitted,

*/s/ Natalie Lyons*

Joseph Jaramillo (SBN 178566)
Natalie Lyons (SBN 293026)
HOUSING & ECONOMIC RIGHTS ADVOCATES
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Tel: (510) 271-8443
Fax: (510) 280-2448

Eileen M. Connor (SBN 248856)
Toby R. Merrill (*Pro Hac Vice*)
Kyra A. Taylor (*Pro Hac Vice*)

LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

*Counsel for Plaintiffs*

11

Pls. Reply ISO Motion for Summary Judgment         Case No: 19-cv-03674-WHA

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2020, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Executed on January 23, 2020, in Oakland, California.

*/s/ Natalie Lyons*
NATALIE LYONS