# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

THERESA SWEET, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, TRESA APODACA, ALICIA DAVIS, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,

      *Plaintiffs,*

      v.

ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education,

And

THE UNITED STATES DEPARTMENT OF EDUCATION,

      *Defendants.*

Case No.: 19-cv-03674-WHA

**AFFIDAVIT OF ERNST MUTCHNICK**

I, Ernst Mutchnick, state as follows:

1.    I am submitting this affidavit in relation to the above-captioned case.

2.    I borrowed federal student loans in order to attend Brooks Institute.

3.    On October 20, 2016, I emailed a borrower defense application to the United States Department of Education, asking for these loans to be cancelled.

4.    In between the time that I first submitted an application for loan cancellation and when I received the denial notice, the Department told me they did not have my application, and I should resubmit it. A copy of both applications are attached as Exhibit A and B.

5.    My application states Brooks Institute mislead me by falsely stating they had a 98% job placement rate, and I would be able to make $50,000 after I graduated.

6.    In between the time that I resubmitted my application for loan cancellation and when I received the denial notice, my loans were in forbearance but I made voluntary payments.

1

7.    On July 8, 2020, I received correspondence from the Department of Education, stating that my claim had been denied. A copy of that correspondence is attached as Exhibit C.

8.    The denial notice says that I failed to state a legal claim about whether Brooks Institute engaged in misconduct related to transferring credits. I do not understand what it means to fail to state a legal claim.

9.    The denial notice says that I provided insufficient evidence that Brooks Institute engaged in misconduct related to career services. I do not understand how the evidence I provided was insufficient.

10.    The denial notice says that I failed to state a legal claim about whether Brooks Institute engaged in misconduct related to admissions and urgency to enroll.

11.    The denial notice says that I provided insufficient evidence that Brooks Institute engaged in misconduct related to employment prospects.

12.    The denial notice says that I failed to state a legal claim actionable under the borrower defense regulation about whether Brooks Institute engaged in misconduct related to program cost and nature of loans. I do not understand what it means to fail to state a claim actionable under the borrower defense regulation or how this is different from failing to state a legal claim.

13.    I am disappointed that the Department denied my application. I do not believe the Department looked at the evidence that I submitted.

14.    The denial notice states that I may ask for reconsideration. I am not sure what this means.

I swear under penalty of perjury that the foregoing is true.


Executed on:   August 20, 2020
            Long Island, New York


*Ernst Mutchnick*

Ernst Mutchnick

2

AFFIDAVIT

# Exhibit A

## Brooks Institute of Photography (BIP) & Brooks Institute (BI)
## Borrower defense to repayment Application

Pursuant to 20 U.S.C. § 1087e(h), 34 C.F.R. § 685.206(c)(1), and Master Promissory Note (MPN) under the William D. Ford Federal Direct Loan (Direct Loan) Program and Federal Family Education Loan (FFEL) Program As detailed below, I, <u>Ernst Mutchnick</u>, am hereby applying for a full discharge of my federal student loans according to the "Defense to Repayment" provisions of the Higher Education Act and promulgating regulations.

**Section 1: Borrower Information**

**SSN** (last 4 only)
██████

**Name**
Ernst Mutchnick

**Address**
████████████████

| **City** | **State** | **Zip Code** |
|---|---|---|
| ████████ | NY | ██████ |

**Telephone**
████████████

**Email**
████████████████

**Borrower is**
√ Employed
☐ In field of study
√ Out of field of study
☐ Unemployed

**Loan Servicer**
Navient (originally Citibank)

**Section 2: School Information**

**School Name** (the school changed its name)
**Brooks Institute of Photography**
321 Alameda Padre Serra
Santa Barbara, CA 93103-1809
**AND**
**Brooks Institute**
5301 N Ventura Ave.
Ventura, CA 93001

**Dates of Attendance** (From-To)
3/7/2003 – 3/4/2006

**Name of program**
Professional Photography

**Type of Credential**
Bachelor of Arts

**Status**
√ Completed
☐ Withdrew

**Section 3: Illegal Conduct Of School**

I assert that certain acts and omissions by **Brooks Institute of Photography, Santa Barbara CA and Brooks Institute, Ventura CA** and/or its agents/representatives give me a defense to repayment of my federal student loan(s) under state and federal law and the terms of my federal student loan agreement(s).

**The illegal conduct by Brooks Institute of Photography, Santa Barbara CA and Brooks Institute, Ventura CA includes:**

**Misleading me about how this program would affect my job prospects, including:**

√ Citing false and/or misleading job placement statistics and salary information to convince me to enroll in
√ **Brooks Institute of Photography, Santa Barbara CA**
☐ **Brooks Institute, Ventura CA**

**Explain:**

My admissions representative told me that there was a 98% job placement rate. She asked me what I would want to be earning when I graduated, and I conservatively said $50,000 to start. She told me this was very reasonable. In reality this was not a reasonable expectation at all…

√ **Misleading me about the type of job placement assistance the school intended to provide me.**

**Explain:**

I was told that Brooks Institute had a lot of direct connections in the industry and that

after I graduated, Career Services would help get me in touch with these connections for job interviews.  I wasn't expecting to be handed a job, but based on what I was lead to believe, I was expecting to be at least directed towards interviews for jobs that I could qualify for, and that paid $50,000+/yr. Career Services directed me mostly to job leads that I had found myself online, on job boards like monster.com or indeed.com. There were some leads from former graduates looking for assistants, or on campus jobs, but these weren't jobs that would enable me to start paying off my enormous school debt. Some jobs that were posted on job boards would have paid better, but they required a lot more experience, and there was no direct connection to Brooks.

☐ **Other false/misleading conduct relating to job prospects.**

**Explain:**

N/A

**Misleading me about the quality of the program, including:**

☐ **The pass rate of program graduates in required licensing exams/certifications.**

**Explain:**

N/A

√ **The fact that my program lacked the required accreditation to allow me to work in my field and/or transfer my credits to another college.**

**Explain:**

I was not made aware of the lack of accreditation when I enrolled.

☐ **Other false/misleading conduct relating to the quality of the program.**

**Explain:**

N/A

**Misleading me about how I would pay for the program, including:**
√ **Misleading me about the true cost of the program.**

**Explain:**

I don't recall being given a specific total dollar amount that the program would cost me, but I did express that I was worried about how I would pay back the loans. My admissions counselor assured me that after my first year of living in California, if I had a good GPA, I would then qualify for the Cal Grant. She also assured me that there were many scholarships for older students. I was very enthusiastic and determined to do well in the program because I was pursuing my passion. After a year at Brooks, I applied for the Cal Grant. I had a 4.0 GPA. I was denied because I already had a BS degree from another college in NY. This was very upsetting to me since I had been told without a doubt, that I would get the Cal Grant if I had a good GPA. My admissions counselor had all my education history in front of her when she told me this. I feel that she should have known that I wouldn't be eligible due to my previous degree. Also, her assurance that there were so many scholarships for older students was also false. It's simply not true. I spent hours researching scholarships throughout my time at Brooks, and there were only a handful that I was actually qualified to apply for. The vast majority of scholarships are for graduating High School seniors. I was only able to get one scholarship, which I believe may have been as much as $500. To add insult to injury, the cost of tuition increased substantially during the time I was there, from $2975 to $3960 per session (roughly a 33% increase). That amounted to roughly $6000 more for my 3rd year of studies than it cost me in my first year. In addition there was also a $600 fee added to the tuition each session, that wasn't there during the 1st year. I don't know what that was for. If it was the registration fee and lab fee, then that increased by 200% while I was there.

Even though I was maxed out in the amount of loans I could take out, it wasn't enough. I also racked up about $12,000 in credit card debt during my time at school to cover expenses beyond what my loans paid. I did not work while studying at Brooks. My school loans covered everything from tuition, photography expenses, rent, car payments, food, etc.

☐**Misleading me about whether I would have to borrow money to attend,**
☐**Brooks Institute of Photography, Santa Barbara CA**
☐ **Brooks Institute, Ventura CA**
**rather than having it paid for entirely in grants.**

**Explain:**

N/A

√ **Misleading me about the amount of student loans I was borrowing.**

**Explain:**

I was made to feel very confident that I would be able to pay my tuition with other means other than just loans. Specifically with the Cal Grant and the "many" scholarships available to older students. Then the steep rise in tuition during the 3 years I was there was also shocking, and that was on top of not getting the grant or scholarships.

☐ **Misleading me about whether my loans were federal or private.**

**Explain:**
N/A

√ **Misleading me about the terms of repayment on my federal student loans, including what my monthly payments would be.**

**Explain:**
First of all, I was lead to believe that a starting salary of $50,000 at graduation was very reasonable. I was also told that the monthly payments would be income based. Based on the tuition rate at the time and the assurances about the Cal Grant and scholarships, I had estimated that my school loan debt could get to the $75,000 range, rather than $160,000. Still a huge amount of money, but it seemed like it would be manageable with my expected income. Based on everything I had been told and assurances given to me, I felt this would be a good investment.

After I graduated, I had my loans in forbearance and deferment for as long as I was allowed. I was making payments when I could. The rest of my income went to rent, my car, and food. This was mainly when my loans were with Citibank and AES.

My federal loans were then sold to Sallie Mae and my private loans to Discover. It was around this time when I was told that I would need to start making payments in full. These payments were not income based, but I had moved back in with my parents and I've been sacrificing every other aspect of my life to make these payments.

Regarding my private loans with Discover, I called them earlier this year to see if I could get the monthly payments lowered, but they would not lower them to something income based. They offered me a deferment or forbearance, I don't remember which, for 6 months only, while interest keeps accruing and that's all they were able to offer me. When I asked what would happen if I couldn't pay that much, since I don't have a high income, they said that my cosigner would have to pay. Up until now my cosigner has not had to pay a dime. I've been keeping up, but that means most of my income has been going to these loans. My parents are both retired and on a fixed income. I can't rely on them to pay for my loans, and I don't want them to get into financial problems because of my debt.

This past June I got an email from Discover starting out with "Congratulations! Since you have made the required number of consecutive, on-time monthly payments, you may be eligible for a cosigner release. I filled out the application, and they responded with a denial letter. The main reason for being denied was "Borrower income insufficient in relation to debt". That same letter shows my FICO score as ███. They wouldn't lower my payments to an amount affordable for my income, yet they knew my income was not enough to make the payments.  As I am making major sacrifices in my life by living with my parents, and keeping my other expenses to food and medical, I have been paying my loans all along with my own income.

It's unfortunate that I needed a cosigner at the time of enrollment, but without him, I would have been in the same situation as many other students are, with crazy interest rates in the double digits.  18%?!!  I'm hearing horror stories now of some of these students whose loan debt has skyrocketed to $300,000 and $400,000!  That's insane!

Due to my cosigner, all my loans started out at interest rates under 3%.  I consolidated my federal loans at 4.5% soon after I graduated, as I feared the interest would continue getting higher. My private loan interest rate rose as high as 8.5% at one point.  Luckily, they have been below 4% for quite some time now, but that could change at any moment.

Moving back in with my parents has not been ideal for me, but it's also not ideal for them. They had their own plans that have been put on hold due to my living with them again.  I have been back living here for 8 years! It's not a good situation for any of us, but there just doesn't seem to be any other possible way to pay this debt without going into default and causing my parents financial harm.


√ **Other false/misleading conduct in relation to financial aid.**

**Explain:**

 During my interview with my counselor, I mentioned that I was thinking about attending 6 months or so in the future so that I could perhaps save up some money beforehand. My counselor said that there was no guarantee that I could be placed later, and that I should start in the next session. She said it was almost full, but that they could probably squeeze me in. In reality, when I started classes, I came to realize that my starting class was the smallest during my entire time at Brooks.

 I started Brooks when I was 30 years old. I had been working 2 part time jobs prior to my enrollment. I had no savings and never had a job that offered a 401K, so I had nothing in retirement savings either. I was debt free however. Brooks was supposed to be my way to a better future and even though I had no savings to contribute to my education, my counselor pushed me to enroll with promises of the Cal Grant and scholarships and a high

income at graduation.

**Misleading me about my options as the school shut down, including:**
☐ **Misleading me about the likelihood that the school would shut down.**

**Explain:**
N/A

☐ **Misleading me about my rights and options regarding the teach-out at School, including failing to inform me that I had a right to decline the teach out and receive a full discharge of my federal student loans.**
**Explain:**
 N/A

☐ **Other misleading behavior, including:**

**Explain:**
N/A

**Superior Court of the State of California for the County of Los Angeles 2006**
**(Class Members enrolled 1999-2005)**

√ **I was part of the Mark Nilsen, Zoe Curylo and Amanda Johnson On Behalf of Themselves And All Other Similarly Situated, lawsuit** *and I accepted the settlement offer.*
**Plaintiffs**
**vs.**
Careeer Education Corporation (CEC)
Brooks Institute of Photography
**Defendants**

☐ **I have significant amounts of documents and/or data and have included a few pieces here. Please let me know if you need the additional documents. Reproduction cost is very high.**

√ If needed, I have the letter regarding my settlement from the lawsuit.

☐ *I was part of the Mark Nilsen, Zoe Curylo and Amanda Johnson On Behalf of Themselves And All Other Similarly Situated, lawsuit* **and I recused myself from the Class and settlement offer in order to reserve the right to potentially pursue SallieMae for the fraud, crime and harm committed** *in conjunction with*

*with their Private Loans, including the CEC Signature Loan, Financial Aid office kick-backs, disregard and elimination of content stated in Promissory Note, radical increase of percentage rate after six month grace period and bills sent to students in the 5 and 6 figure realm, demanded payment in full, harassment of borrowers employer/s, family members and friends, payment to defer or forebear due to economic hardship, refusal to put things in writing or give mailing address when asked numerous times, hours spent in attempt to find a solution for repayment and SallieMae all or nothing attitude etc…*

**Plaintiffs**

**vs.**

**Careeer Education Corporation (CEC)**

**Brooks Institute of Photography**

**Defendants**

☐ **I have significant amounts of documents and/or data and have included a few pieces here. Please let me know if you need the additional documents. Reproduction cost is very high.**

☐ **I was not part** of the said Class Action Lawsuit, **and I attended during the Class Action period** of
1999-2005.

☐ **I was not part** of the said Class Action Lawsuit, and **I attended after the Lawsuit** (note name change to BI from BIP due to post-settlement "restructuring").
☐ **Brooks Institute of Photography, Santa Barbara CA**
☐ **Brooks Institute, Ventura CA**
**in 2006, and was told almost the same fraudulent things (see above description) the people in the Class Action Lawsuit experienced, which was the basis for their suit.**

☐ **I have significant amounts of documents and/or data and have included a few pieces here. Please let me know if you need the additional documents. Reproduction cost is very high.**

Furthermore, the long history of systematic illegal activity and inadequate programs created a high likelihood that school's reputation would be irreparably damaged to the point where the degrees they issued would be worthless.

√ **Brooks Institute of Photography, Santa Barbara CA**
☐ **Brooks Institute, Ventura CA**
never notified me or otherwise made me aware that that my degree would be worthless due to misconduct.

√ **Brooks Institute of Photography, Santa Barbara CA**
☐ **Brooks Institute, Ventura CA**

Absent this conduct, I would not have chosen to attend and/or continue attending

√ **Brooks Institute of Photography, Santa Barbara CA**

☐ **Brooks Institute, Ventura CA**

I decided to pursue a *postgraduate education* because I wanted to gain the relevant skills to find a more fulfilling career with higher earning potential than I was able to obtain previously. I chose to attend

√ **Brooks Institute of Photography, Santa Barbara CA**

☐ **Brooks Institute, Ventura CA**

because they represented to me that their program would give me useful skills, that their degree would allow me to earn more than I did previously, and that these benefits would outweigh the burden of paying off the obligations I would incur to finance the degree.

**Because of this conduct, I have suffered injury, including:**

√ **Federal student loan debt, which has caused me stress, forced me to divert funds from other aspects of my life and otherwise unduly burdened me.**

**Explain:**

My school loan debt has caused me a lot of stress, and at times bouts of depression, especially at times when I don't have work for months at a time.

There was a lot of pressure when I graduated to find work that would allow me to make my loan payments. I would spend hours at a time browsing multiple job search sites to find potential jobs to apply to, that would allow me to use my degree, and that also paid enough so that I could survive and pay my bills.  The search was futile.

After a month of job searching, I applied to a job with a commercial real estate research company and was hired.  My job title was Research Photographer and I did take pictures, but they were not quality, professional photos. 99% of my co-workers in the same job were not trained photographers, but had real estate backgrounds. I took the job because at the time of hire, they allowed you to work however many hours you wanted, including weekends and holidays. I saw it as an opportunity to make a difference in my loan payments. Over time, the parameters of the job changed and I was only allowed to work hourly (40 hours a week) without overtime. I was living paycheck to paycheck and sometimes I couldn't make rent payments on time. At that time my loans were in deferment or in forbearance, so most of my income was going to rent, car payments and food. All I did was work. I had nothing left over to even start thinking about making substantial contributions towards my loans.  I kept that job for 3 years but it was going nowhere and my income was actually decreasing due to changes in the job.

My parents had told me not to be proud and to come back to live with them in NY so that I could save on rent, and pay more towards my school loans.  I considered my options. Up to that point my loans were in forbearance and deferment and I couldn't make ends meet and I was working 60 hours a week.  What would I do once the big loan payments started coming due? In 2009, I moved back to NY to live with my parents.  I was 36.  I'm

now 43 and still living with my parents. I love my parents, but it's definitely not a healthy living situation for me. My parents are retired.  I live in their home, but I can't have friends over whenever I want, or live the way I would live if I were on my own. I'm in a smaller room than when I grew up, and I'm living in the same house as I was then. It's not a comfortable situation for any of us.

My school loans have ruined my chances of a normal life. All my income goes to pay for them and for basic necessities. I'm lucky to have supportive parents who are not charging me rent and allow me to use their car. I totaled my car in 2010 and haven't gotten a new one since. I used the insurance money that I got from that accident and put it towards my loans. When I'm not working, I rarely go out here in NY. I don't want to use my parent's car when it's not really necessary, and I don't want to spend money anyway, going out meeting people, etc. It's a sad way to live. I'm kind of in a holding pattern imprisoned by this debt. I calculated that if nothing changes in my employment, and I stay living with my parents, I would pay off my loans when I'm 50. Then I can start paying on the $40,000 I owe my parents, for the highest-interest bearing loan they paid off for me in 2007. They did that so I would save on the accrued interest. They loaned me that money interest free. The only reason they even had that money, was because both of my father's parents had just passed away within a year of each other, and that was his inheritance.


√ **The inability to enroll in another degree-granting program.**

**Explain:**

This may or may not be an issue for me. I have a 2nd Bachelor's degree, which I earned in 1995. I have thought about going back to school to earn a Masters in Accounting, but everything is still uncertain. I don't know if the credit hours earned from my Bachelor's degree in 1995 will still be considered acceptable after so many years to start a Master's. From what I have learned about Brooks' accreditation, starting a Master's degree based on my degree from there, will not be possible.


√ **A difficult time finding employment, either in the field I went to school for or otherwise.**

**Explain:**

After years of trying to find a way to become employed as a photographer, I have pretty much given up on the idea. Unfortunately, there are very few staff photographer positions and many of those positions aren't advertised, but are word-of-mouth opportunities. I attempted to start my own business twice, but without the financial backing to get started with building websites, marketing, studio space, paying others to help me, etc. this went nowhere. It's really impossible to start a business when you're under a mountain of debt and bills need to be paid. I graduated with school loan debt of $160,000 (federal and

private combined) plus an additional $12,000 in credit card debt. I opted not to go into default, which would probably have been the only way I could have had a chance to get my businesses off the ground. I didn't want to go into more debt to start these businesses, especially with no guarantee that they would even work out.  At the same time I needed to work full time to pay bills.

Finding good paying jobs in other industries is nearly impossible without going back to school. The idea of going back to school for a 3rd time is an idea that I have dismissed for years because that would mean more loans and more debt. In 2009, I decided to return to what I was doing prior to going to Brooks, and that was seasonal work as a freelance tour guide. Through connections I was able to get better paying guiding jobs from 2010 onwards, but the work is sporadic and seasonal and I never know how much work I'll have over the course of a year. This means I can't save for retirement since I always need to have at least several months worth of money in my account to pay for my loans, even during the off-season, when I don't have work. I started a new Tour Director job this year which may lead me in a better financial direction, but that remains to be seen. They offer a 401k as well as other benefits including health, after working a certain number of days, which I may or may not reach this year. At the present moment I am not been working for a couple of months, but am on-call. I am new to the company, and jobs are given out based on seniority and performance. I feel that I could easily reach the 126 days of work needed in 2017, to earn health benefits, etc. but that remains to be seen.  If this company doesn't work out for me financially, then I will probably return to school in order to earn a Master's in Accounting. If I were to do this, I would probably already be 45 years old going into that program.

☐ **Missing the opportunity to go to another, better higher education institution and lacking the eligibility for enough federal loans to do so now.**

**Explain:**
N/A
I don't know whether or not I am maxed out in federal loans, but based on my experience, I do not want to take out additional loans for any education going forward.

√ **Other injury, including pain and suffering.**

**Explain:**

 I went to Brooks because it promised a better life. I worked very hard there for 3 years to ensure that for myself. I graduated magna cum laude. That didn't matter. It didn't open any doors for me. That's very painful… I spent 3 years of my life invested in bettering myself so that I could finally be doing something that I really enjoy, and be able to make a great living at it. I would not have attended Brooks Institute of Photography had I

known that I was there under false pretenses. Because the career help that I was promised was not there, I took a job to ensure that I could pay my bills. It was the first offer I got, and I stayed with that job for 3 years, even though I was miserable. It was not in my field of study and it was not a good company to work for, but I had bills to pay, so I stayed. I was always looking for work in photography and applying to the occasional promising job listing, but it was just impossible to even get an interview.  After moving back in with my parents, I have been working as a Tour Guide and Tour Director for various tour operators around the US. While working, my mind is taken off my financial problems, but once I get back to NY and sit in my room all day, I have been depressed for weeks at a time. It's when the realization hits, that I'm not really getting anywhere. I have sometimes paid upwards of 75% of my yearly income for my loans! I'll apply to good paying jobs that I feel I qualify for, and I'll get no response. I think about my options for work in NY in minimum wage jobs after getting 2 Bachelor's degrees, one with honors, and that's depressing! I feel like I will never be able to retire... I often wonder when I'll be able to start my life…

It is embarrassing to be 43 years old and living with my parents. I can't afford to live on my own and also pay my school loans. We only have one life, and this just isn't the way it's supposed to be.

**Section 4: Defense To Repayment of Federal Student Loans**

The above conduct gives rise to a cause or causes of action under California law, which relate(s) directly to my loan and/or the provision of educational services for which the loan was given, including:

**California EDUCATION CODE**
**SECTION 94928-94929.9**

 94928.  As used in this article, the following terms have the following meanings:  (a) "Cohort population" means the number of students that began a program on a cohort start date.   (b) "Cohort start date" means the first class day after the cancellation period during which a cohort of students attends class for a specific program.  (c) "On-time graduates" means the number of students who complete a program within 100 percent of the published program length. An institution may separately state completion information for students completing the program within 150 percent of the original contracted time, but that information may not replace completion information for students completing within the original scheduled time. Completion information shall be separately stated for each campus or branch of the institution.  (d) "Graduates available for employment" means the number of graduates minus the number of graduates unavailable for employment.  (e) (1) "Graduates employed in the field" means graduates who are gainfully employed in a single position for which the institution represents the program prepares its graduates, beginning within six months after a student completes the applicable educational program. For occupations for which the state requires passing an examination, the period of employment shall begin within six months of the announcement of the examination results for the first examination available after a student completes an applicable educational program.   (2) The bureau shall define by July 1, 2014,

specific measures and standards for determining whether a student is gainfully employed in a full-time or part-time position for which the institution represents the program prepares its graduates, including self-employment or conducting freelance work, and may set the standards for the hours per week and duration of employment and utilize any job classification methodology the bureau determines appropriate for this purpose, including, but not limited to, the United States Department of Labor's Standard Occupational Classification codes.   (3) This subdivision shall not prohibit the bureau from authorizing an institution to aggregate single positions held by a graduate for purposes of meeting the hours per week standards established by the bureau.   (f) "Graduates unavailable for employment" means graduates who, after graduation, die, become incarcerated, are called to active military duty, are international students that leave the United States or do not have a visa allowing employment in the United States, or are continuing their education at an accredited or bureau-approved postsecondary institution.   (g) "Students available for graduation" means the cohort population minus the number of students unavailable for graduation.   (h) "Students unavailable for graduation" means students who have died, been incarcerated, or called to active military duty.   94929.  (a) An institution shall annually report to the bureau, as part of the annual report, and publish in its School Performance Fact Sheet, the completion rate for each program. Except as provided in subdivision (b), the completion rate shall be calculated by dividing the number of on-time graduates by the number of students available for graduation.   (b) In lieu of calculating graduation data pursuant to subdivision (a), an institution may report graduation data reported to, and calculated by, the Integrated Postsecondary Education Data System of the United States Department of Education.   94929.5.  (a) An institution shall annually report to the bureau, as part of the annual report, and shall publish in its School Performance Fact Sheet, all of the following:   (1) The job placement rate, calculated by dividing the number of graduates employed in the field by the number of graduates available for employment for each program that is either (1) designed, or advertised, to lead to a particular career, or (2) advertised or promoted with any claim regarding job placement.   (2) The license examination passage rates for the immediately preceding two years for programs leading to employment for which passage of a state licensing examination is required, calculated by dividing the number of graduates who pass the examination by the number of graduates who take the licensing examination the first time that the examination is available after completion of the educational program. The institution shall use state agency licensing data to calculate license examination passage rates. If those data are unavailable, the institution shall calculate the license examination passage rate in a manner consistent with regulations adopted by the bureau.   (3) Salary and wage information, consisting of the total number of graduates employed in the field and the annual wages or salaries of those graduates stated in increments of five thousand dollars ($5,000).   (4) If applicable, the most recent official three-year cohort default rate reported by the United States Department of Education for the institution and the percentage of enrolled students receiving federal student loans.   (b) Nothing in this section shall limit the bureau's authority to collect information from an institution to comply with this section and ensure, by regulation and other lawful means, that the information required by this section, and the manner in which it is collected and reported, is all of the following:   (1) Useful to students.   (2) Useful to policymakers.   (3) Based upon the most credible and verifiable data available.   (4) Does not impose undue compliance burdens on an institution.   (c) Data and information disclosed pursuant to paragraphs (1) to (3), inclusive, of subdivision (a) is not required to include students who satisfy the qualifications specified in subdivision (d) of Section 94909, but an institution shall disclose on its fact sheet and to the bureau whether its data, information, or both, excludes any students pursuant to this subdivision.   94929.7.  (a) The

information used to substantiate the rates and information calculated pursuant to Sections 94929 and 94929.5 shall do both of the following:   (1) Be documented and maintained by the institution for five years from the date of the publication of the rates and information.   (2) Be retained in an electronic format and made available to the bureau upon request.   (b) An institution shall provide a list of employment positions used to determine the number of graduates employed in the field for purposes of calculating job placement rates pursuant to this article.   (c) The bureau shall identify the specific information that an institution is required to document and maintain to substantiate rates and information pursuant to this section.   94929.8.  (a) On or before January 1, 2011, and pursuant to Section 94877, the bureau shall establish, by regulation, a uniform method for institutions to obtain statistically valid, current, and representative data to comply with this article.   (b) A violation of the regulations adopted pursuant to subdivision (a) is a material violation of this chapter.   94929.9.  (a) The bureau shall consider the graduate salary and other outcome data and reporting requirements that are utilized by the United States Department of Education, the Student Aid Commission, accrediting agencies, and student advocate associations. The bureau shall consider the reporting requirements of public postsecondary institutions in California to evaluate the feasibility of adopting these reporting requirements for private postsecondary institutions. The bureau shall make recommendations to the Legislature, on or before December 31, 2016, on how reporting requirements under this chapter should be altered to ensure accurate, useful, and consistent reporting by private postsecondary institutions to the bureau and students.   (b) The bureau is authorized to enter into a personal services contract with an appropriate independent contractor to assist in the evaluation required by subdivision (a). In this connection, the Legislature finds, pursuant to Section 19130 of the Government Code, that this is a new state function.   (c) (1) A report to be submitted to the Legislature pursuant to subdivision (a) shall be submitted in compliance with Section 9795 of the Government Code.   (2) Pursuant to Section 10231.5 of the Government Code, this section is repealed January 1, 2017.

Common law action for Fraudulent Misrepresentation; and/or common law action for Fraudulent Concealment.

Additionally, the above conduct violates federal law, including:

1. The Federal Trade Commission Act and Federal Trade Commission regulations, which prohibit "a school, in promoting a course of training, to misrepresent the availability of employment after graduation from a course, the success that the member graduates have realized in obtaining such employment, or the salary that the member's graduates will receive in such employment." 16 C.F.R. § 254.4(d).

2. Title IV of the Higher Education Act and Amendments, and Department of Education regulations, which prevent schools from participating in Title IV programs from committing "substantial misrepresentation" in interactions with students and prospective students.


**Section 5: Requested Relief**

Therefore, I request that the Servicer and/or Department of Education take the following steps:

1. Cancel any remaining principal, interest, fees and costs associated with my federal student

loans, borrowed to attend
√ **Brooks Institute of Photography, Santa Barbara CA**
☐ **Brooks Institute, Ventura CA**

2. Cease any collection actions against me in relation to my federal student loans, borrowed to attend
√ **Brooks Institute of Photography, Santa Barbara CA**
**There are no collection actions against me. I have been paying on time and in full for quite some time. I would like to continue making payments while this investigation is going on. I do not want additional interest to accrue in the event that this claim is denied.**
☐ **Brooks Institute, Ventura CA**

3. Return any sums paid, whether voluntarily or involuntarily, toward my federal student loans, borrowed to attend
√ **Brooks Institute of Photography, Santa Barbara CA**
☐ **Brooks Institute, Ventura CA**

4. Remove any adverse reports related to my federal student loans, borrowed to attend School, from all consumer credit reporting agencies.
√ **Brooks Institute of Photography, Santa Barbara CA**
☐ **Brooks Institute, Ventura CA**

5. Restore my eligibility to receive funds under Title IV, including by restoring any portions of my lifetime eligibility for Pell Grants and federal student loans previously used in order to attend Brooks Institute of Photography, Santa Barbara CA

I request a notification of a hearing or a determination of my asserted defense to repayment within thirty (30) days, in writing. Should you deny any, or all, of my defense, please inform me of the process for appealing this decision, in writing. I reserve the right to submit supplementary information in support of this application.

**Section 6: Borrower Acknowledgment, Certifications, Assignment, And Authorization**

I acknowledge that any person who knowingly makes a false statement or misrepresentation on this form or any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. § 1097.

I certify, under penalty of perjury, that all of the information I have provided on this form and in any accompanying documentation is true and accurate to the best of my knowledge and belief.

I certify that I will provide, upon request, testimony, a sworn statement, or other documentation reasonably available to me that demonstrates to the satisfaction of the Department that I meet the qualifications for defense to repayment of my student loans.

I certify that, if my defense is successful, upon request I will provide assistance and cooperation

to the U.S. Department of Education (the Department) in any proceedings or enforcement actions against the school related to my defense or the conduct asserted herein.

I hereby assign and transfer to the U.S. Department of Education (the Department) any right to a refund on the amount discharged that I may have received from the school and/or any owners, affiliates, or assignees of the school, and from any third party that may pay claims for a refund because of the actions or omissions of the school, up to the amount discharged by the Department on my loan(s).

I authorize the loan holder to which I submit this request (and its agents or contractors) to contact me regarding my request or my loan(s), including repayment of my loan(s), at the number that I provide on this form or any future number that I provide for my cellular telephone or other wireless device using automated telephone dialing equipment or artificial or prerecorded voice or text messages.

**Borrower's Signature**    Ernst Mutchnick    **Date** 10/20/2016

# Exhibit B

# Federal Student Aid
An OFFICE of the U.S. DEPARTMENT of EDUCATION

PROUD SPONSOR of
the AMERICAN MIND ®

---

**Exit**

---

## U.S. DEPARTMENT OF EDUCATION
## APPLICATION FOR BORROWER DEFENSE TO LOAN REPAYMENT

If your school misled you or engaged in other misconduct, you may be eligible for "borrower defense to repayment," which is the forgiveness of some or all of your federal student loan debt.

**FORM INSTRUCTIONS:** To apply, you must complete, sign, and submit this form to the U.S. Department of Education for review.

You may attach additional documents, such as transcripts, enrollment agreements, and promotional materials from your school. Once completed, please submit this form and any additional documents you believe will help us review your application by email to FSAOperations@ed.gov or by mail to: U.S. Department of Education, PO Box 429060, San Francisco, CA 94142.

Fields marked with an asterisk (*) are required for your application to be considered complete.

---

### SECTION 1. BORROWER INFORMATION

Please provide contact information for the borrower.

*First Name  Ernst
Middle Name  M
*Last Name  Mutchnick
*Date of Birth  ▆▆▆▆
* Social Security Number  ▆▆▆▆▆
*Phone Number  ▆▆▆▆
*Email Address  ▆▆▆▆▆▆
*Street Address  ▆▆▆▆▆
*City  ▆▆▆▆        *State  NY        *Zip Code  ▆▆▆

*Are you a PARENT who took out a federal loan on behalf of the student?  ☐ Yes  ☑ No

*If yes, please enter the full name of the student (Last, First, Middle)

*If yes, please enter the student's Social Security Number (XXX–XX–XXXX) ————————

## SECTION II. SCHOOL INFORMATION

*School  Brooks Institute (Brooks Institute of Photography)

Campus (including on-line campuses for distance education borrowers) ————————

*Location (City, State)  Santa Barbara, CA

Enrollment Dates at this school:
*From Date (MM/YYYY)  03/2003
* To (Month, Year):  03/2006

☐ If you are still attending this school/campus, please indicate "still enrolled".
☐ Check if the enrollment dates above are approximate, or if you are unsure of them.

If your attendance at the school listed above was not or has not been continuous (for example, from October 2015 to March 2016, then again from August 2016 to November 2016), please describe all dates that you attended:

> 

*Program Name or Major (e.g. Nursing, Medical Assistant, Paralegal)  Professional Photography
Credential/Degree Sought (e.g. Certificate, Diploma, Associates, Bachelors, Masters)  Bachelors

If you enrolled in multiple programs at the school listed above, please describe all programs that you were enrolled in.

> 

*Current Status at school:
☐ Attending  ☐ Withdrew  ☐ Transferred  ☑ Graduated

## SECTION III. OTHER LOAN REDUCTION OR TUITION RECOVERY REQUESTS

* Have you made any other requests to have your Federal loans forgiven (for example, under a closed school discharge or false certification discharge from the U.S. Department of Education)?
☑ Yes  ☐ No

* If yes, please describe these other request(s), including the amount of any loan forgiveness that you received, and attach any documentation about the requests, if available.

> I applied for Borrowers Defense on 10/20/2016. I emailed my application to FSAOperations@ed.gov.
> There was no formal application process available at the time and it was suggested to apply that way. It
> was said that I might not hear anything for 6 months to a year. I did receive a general email response
> the same day, so I know the email went through. I called today to find out if my application was in the
> system and I was told that it was not. It was suggested that I resubmit my application here.

* Have you made any requests to anyone else to recover tuition amounts that you paid to your school (for

example, a lawsuit against the school or a claim made to a tuition recovery program)?

☑ Yes    ☐ No

\* If yes, please describe these other request(s), including the amount of the payment that you received (if any), and attach any documentation about the requests, if available.

> I was a Class Member of the CEC California Class Action and received a pro rata share of $6,270.43

---

### SECTION IV. BASIS FOR BORROWER DEFENSE

Answer the questions for each section below that applies to you.

For each section below that applies to you, please provide a detailed description of why you believe you are entitled to borrower defense, including the following information:

1. What the school told you or failed to tell you.
2. How the school communicated with you, whether in a brochure, online, over the phone, by email, or in person.
3. The name/title of people who you believe misled you (if known).
4. Why you believe you were misled.

Attach any related documents, such as transcripts, enrollment agreements, promotional materials from the school, emails with school officials or your school's manual, or course catalog.

**Note: You only need to provide information for the sections below that apply to you, but you must complete at least one section. If you are a Parent PLUS borrower, the word "you" in the following sections also refers to the student.**

If you need more space to complete any section, please attach additional pages to your application.

### EMPLOYMENT PROSPECTS

Did the school mislead you (or fail to tell you important information) about promises of future employment, likelihood of finding a job, eligibility for certification or licensure in your field of study, how many students graduate, and/or earnings after graduation?

☑ Yes    ☐ No

If yes, you must provide _detailed_ information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

1 My admissions representative told me that there was a 98% job placement rate. She asked me what I would want to be earning when I graduated, and I conservatively said $50,000 to start. She told me this was very reasonable. In reality this was not a reasonable expectation at all... When I started my first session, other students told me that they had been told that they could earn $100,000 upon graduation.
2 After years of trying to find a way to become employed as a photographer, I have pretty much given up on the idea. Unfortunately, there are very few staff photographer positions and many of those positions aren't advertised, but are word-of-mouth opportunities. It was very rare that I'd find out about a photography job offering $50,000. More realistically, the average photographer was earning more in the range of $25,000-$35,000 in 2006. This was hardly a path I could follow with $160,000 in school loan debt. I had done my research on this school prior to applying and they were considered one of the top 2 schools in the country for this program. Everything I found online pointed to this being an exceptional school. I had no reason to doubt what my representative was telling me. What I did not know was that the school was bought by a corporation (CEC) in 1999, and that things had started to spiral downwards regarding their student recruitment practices. The effects of this were not yet known, when I applied.
3 After graduating, I attempted to start my own business twice, but without the financial backing to get started with building websites, marketing, studio space, paying others to help me, etc. this went nowhere. It's really impossible to start a business when you're under a mountain of debt and bills need to be paid. I graduated with school loan debt of $160,000 (federal and private combined) plus an additional $12,000 in credit card debt. I opted not to go into default, which would probably have been the only way I could have had a chance to get my businesses off the ground. I didn't want to go into more debt to start these businesses, especially with no guarantee that they would even work out. At the same time I needed to work full time to pay bills. Finding good paying jobs in other industries is nearly impossible without going back to school. The idea of going back to school for a 3rd time is an idea that I have dismissed for years because that would mean more loans and more debt. In 2009, I decided to return to what I was doing prior to going to Brooks, and that was seasonal work as a freelance tour guide. Through connections I was able to get better paying guiding jobs from 2010 onwards, but the work is sporadic and seasonal and I never know how much work I'll have over the course of a year. This means I can't save for retirement since I always need to have at least several months worth of money in my account to pay for my loans, even during the off-season, when I don't have work. I started a new Tour Director job in 2016, which may lead me in a better financial direction, but that remains to be seen. They offer a 401k as well as other benefits including health, after working a certain number of days, which I did not qualify for in 2016. At the present moment I have not worked in 6 months, but I am on-call. I am new to the company, and jobs are given out based on seniority and performance. I missed out on work (and the resulting number of days worked to get benefits) with this company last year because I had a scheduled gig outside of that job prior to being hired. It makes me very tentative to take on other temporary work with other employers as it may end up conflicting again. It's very unsettling, but I feel that I could easily reach the 126 days of work needed in 2017, to earn health benefits, etc. but that remains to be seen. If this company doesn't work out for me financially, then I will probably return to school in order to earn a Master's in Accounting. If I were to do this, I would probably already be 45 years old going into that program. Whatever path I take, I need to do something in order to have more income, so that I can pay my loans, as well as afford rent and other expenses at the same time. If nothing changes, I will remain living with my parents into my 50's...
4 This was communicated to me by phone, by my admissions representative.
5 Unfortunately, I don't remember her name. I did visit her at the Ventura Campus in January of 2003 when I flew to CA to look for an apartment, a month prior to my start date. I recall that she had blond hair... She seemed uncomfortable that I made the visit. It seemed odd, since I had a good relationship with my admissions rep at a previous college, all the way through graduation, at SUNY Plattsburgh in NY. It was as if she had made the "sale" and she had no interest in further communication.

\* Did you choose to enroll in your school based in part on the issues you describe above?

☑ Yes   ☐ No

## PROGRAM COST AND NATURE OF LOANS

Did the school mislead you (or fail to tell you important information) about promises of future employment, likelihood of finding a job, eligibility for certification or licensure in your field of study, how many students graduate, and/or earnings after graduation?

☑ Yes  ☐ No

If yes, you must provide <u>detailed</u> information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

1 I don't recall being given a specific total dollar amount that the program would cost me, but I did express that I was worried about how I would pay back the loans. My admissions counselor assured me that after my first year of living in California, if I had a good GPA, I would qualify for the Cal Grant. She also assured me that there were many scholarships for older students.

2 I was very enthusiastic and determined to do well in the program because I was pursuing my passion. After a year at Brooks, I applied for the Cal Grant. I had a 4.0 GPA. I was denied because I already had a BS degree from another college in NY. This was very upsetting to me since I had been told without a doubt, that I would get the Cal Grant if I had a good GPA. My admissions counselor had all my education history in front of her when she told me this. I feel that she should have known that I wouldn't be eligible due to my previous degree. Also, her assurance that there were so many scholarships for older students was also false. It's simply not true. I spent hours researching scholarships throughout my time at Brooks, and there were only a handful that I was actually qualified to apply for. The vast majority of scholarships are for graduating High School seniors. I was only able to get one scholarship, which I believe may have been as much as $500. To add insult to injury, the cost of tuition increased substantially during the time I was there, from $2975 to $3960 per session (roughly a 33% increase). That amounted to roughly $6000 more for my 3rd year of studies than it cost me in my first year. In addition there was also a $600 fee added to the tuition each session, that wasn't there during the 1st year. I don't know what that was for. If it was the registration fee and lab fee, then that increased by 200% while I was there. Even though I was maxed out in the amount of loans I could take out, it wasn't enough. I also racked up about $12,000 in credit card debt during my time at school to cover expenses beyond what my loans paid. I did not work while studying at Brooks. My student loans covered everything from tuition, photography expenses, rent, car payments, food, etc.

3 First of all, I was lead to believe that a starting salary of $50,000 at graduation was very reasonable. I was also told that the monthly payments towards my loan debt would be income based. Based on the tuition rate at the time and the assurances about the Cal Grant and scholarships, I had estimated that my school loan debt could get to the $75,000 range, rather than $160,000. Still a huge amount of money, but it seemed like it would be manageable with my expected starting income. Based on everything I had been told and assurances given to me, I felt this would be a good investment. After I graduated, I had my loans in forbearance and deferment for as long as I was allowed. I was making payments when I could. The rest of my income went to rent, my car, and food. This was mainly when my loans were with Citibank and AES. My federal loans were then sold to Sallie Mae and my private loans to Discover. It was around this time when I was told that I would need to start making payments in full. These payments were not income based, but I had moved back in with my parents and I've been sacrificing every other aspect of my life to make these payments. Regarding my private loans with Discover, I called them in 2016 to see if I could get the monthly payments lowered, but they would not lower them to something income based. They offered me a deferment or forbearance, I don't remember which, for 6 months only, while interest keeps accruing and that's all they were able to offer me. When I asked what would happen if I couldn't pay that much, since I don't have a high income, they said that my cosigner (my father) would have to pay. Up until now my cosigner has not had to pay a dime. I've been keeping up, but that means most of my income has been going to these loans. My parents are both retired and on a fixed income. I can't rely on them to pay for my loans, and I don't want them to get into financial problems because of my debt. In June, 2016, I received an email from Discover starting out with "Congratulations! Since you have made the required number of consecutive, on-time monthly payments, you may be eligible for a cosigner release. I filled out the application, and they responded with a denial letter. The main reason for being denied was "Borrower income insufficient in relation to debt". That same letter shows my FICO score as ███. They wouldn't lower my payments to an amount affordable for my income, yet they knew my income was not enough to make the payments. As I am making major sacrifices in my life by living with my parents, and keeping my other expenses to food and medical, I have been paying my loans all along with my own income. It's unfortunate that I needed a cosigner at the time of enrollment, but without him, I would have been in the same situation as many other students are, with crazy interest rates in the double digits. 18%?!! I've heard horror stories now of some of these students whose loan debt has skyrocketed to $300,000 and $400,000! That's insane! Due to my cosigner, all my loans started out at interest rates under 3%. I consolidated my federal loans at 4.5% soon after I graduated, as I feared the interest would continue getting higher. My private loan interest rate rose as high as 8.5% at one point. Luckily, they have been below 4% for quite some time now, but that could change at any moment. Moving back in with my parents has not been ideal for me, but it's also not ideal for them. They had their own plans that have been put on hold due to my living with them again. I have been back living here for 8 years! It's not a good situation for any of us, but

\* Did you choose to enroll in your school based in part on the issues you describe above?

☑ Yes    ☐ No

## TRANSFERRING CREDITS

Did the school mislead you (or fail to tell you important information) about transferring your credits from this school to other schools?

☑ Yes    ☐ No

If yes, you must provide <u>detailed</u> information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

> 1 I selected "Yes" here as I am unsure what I was told regarding this subject. I had no interest in pursuing a Master's after graduating. Based on what I'd been told, I assumed I would be earning a good income without a Master's and I did not plan on teaching Photography.
> 2 I am not sure what I was told regarding this subject. It wasn't pertinent to me since I did not plan on pursuing more than this BA.
> 3 This may or may not be an issue for me. I have a 2nd Bachelor's degree, which I earned in 1995. I have thought about going back to school to earn a Masters in Accounting, but everything is still uncertain. I don't know if the credit hours earned from my Bachelor's degree in 1995 will still be considered acceptable after so many years to start a Master's. From what I have learned about Brooks' accreditation, starting a Master's degree based on my degree from there, will not be possible.
> 4 All initial communication about this would have been during one or 2 phone calls with my admissions representative.
> 5

\* Did you choose to enroll in your school based in part on the issues you describe above?

☐ Yes    ☑ No

## CAREER SERVICES

Did the school mislead you (or fail to tell you important information) about the availability or quality of job placement, career services assistance, or the school's connections to employers within your field of study?

☑ Yes    ☐ No

If yes, you must provide <u>detailed</u> information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

1 I was told that Brooks Institute had a lot of direct connections in the industry and that after I graduated, Career Services would help get me in touch with these connections for job interviews.

2 I wasn't expecting to be handed a job, but based on what I was lead to believe, I was expecting to be at least directed towards interviews for jobs that I could qualify for, and that paid $50,000+/yr. Career Services directed me mostly to job leads that I had found myself online, on job boards like monster.com or indeed.com. There were some leads from former graduates looking for assistants, or on campus jobs, but these weren't jobs that would enable me to start paying off my enormous school debt. Some jobs that were posted on job boards would have paid better, but they required a lot more experience, and there was no direct connection to Brooks.

3 This was a major reason why I decided to attend Brooks. I have always done well in school and I was very enthusiastic to do my best so that I would be noticed by these "connections in the industry" that Brooks supposedly had. I worked very hard for those 3 years at Brooks, in order to put myself in a position of worth to these employers. Sadly, these connections did not exist, or I wasn't directed to them. I graduated magna cum laude, and yet that did not award me with any substantial job possibilities. I am out $160,000 + and am not able to make a living in the industry that I made that investment for. That is a huge financial loss. I would not have attended Brooks Institute of Photography had I known that I was there under false pretenses. Because the career help that I was promised was not there, I took a job to ensure that I could pay my bills. It was the first offer I got, and I stayed with that job for 3 years, even though I was miserable. It was not in my field of study and it was not a good company to work for, but I had bills to pay, so I stayed. I was always looking for work in photography and applying to the occasional promising job listing, but it was just impossible to even get an interview. After moving back in with my parents, I have been working as a Tour Guide and Tour Director for various tour operators around the US. While working, my mind is taken off my financial problems, but once I get back to NY and sit in my room all day, I have been depressed for weeks at a time. It's when the realization hits, that I'm not really getting anywhere. I have sometimes paid upwards of 75% of my yearly income for my loans! I'll apply to good paying jobs that I feel I qualify for, and I'll get no response. I think about my options for work in NY in minimum wage jobs after getting 2 Bachelor's degrees, one with honors, and that's depressing! I feel like I will never be able to retire... I often wonder when I'll be able to start my life... It is embarrassing to be 44 years old and living with my parents. I can't afford to live on my own and also pay my school loans. We only have one life, and this just isn't the way it's supposed to be.

4 Communicated by phone by my admission representative

5

\* Did you choose to enroll in your school based in part on the issues you describe above?

☑ Yes    ☐ No

## EDUCATIONAL SERVICES

Did the school mislead you (or fail to tell you important information) about educational services, such as the availability of externships, qualifications of teachers, instructional methods, or other types of educational services?

☐ Yes    ☑ No

If yes, you must provide detailed information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

\* Did you choose to enroll in your school based in part on the issues you describe above?

☐ Yes    ☐ No

## ADMISSIONS AND URGENCY TO ENROLL

Did the school mislead you (or fail to tell you important information) about the importance of enrolling immediately, the consequences of failure to enroll, how difficult it was to be admitted, or anything else about the admission process?

☑ Yes    ☐ No

If yes, you must provide <u>detailed</u> information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

> 1 During my interview with my counselor, I mentioned that I was thinking about attending 6 months or so in the future so that I could perhaps save up some money beforehand. My admissions representative said that there was no guarantee that I could be placed later, and that I should start in the next session. She said it was almost full, but that they could probably squeeze me in. I felt compelled to go sooner than I felt comfortable with, in order to avoid missing the opportunity to attend this (formerly) prestigious school.
> 2 In reality, my starting class was the smallest during my entire time at Brooks. It seemed that anyone and everyone was accepted, regardless of qualifications, as long as you were able to pay the tuition.
> 3 I started Brooks when I was 30 years old. I had been working 2 part time jobs prior to my enrollment. I had no savings and never had a job that offered a 401K, so I had nothing in retirement savings either. I was debt free however. Brooks was supposed to be my way to a better future and even though I had no savings to contribute to my education, my admissions representative pushed me to enroll with promises of the Cal Grant and scholarships and a high income at graduation.
> 4 My admissions representative communicated this by phone
> 5

\* Did you choose to enroll in your school based in part on the issues you describe above?

☑ Yes    ☐ No

## OTHER

Do you have any other reasons relating to your school that you believe qualify you for borrower defense, such as your school failing to perform its obligations under its contract with you, or that there is a judgment against your school in a Federal court, a State court, or in front of an administrative board or that you believe that you have a state law cause of action against the school?

☑ Yes    ☐ No

For more information about the bases for borrower defense relief, see <u>StudentAid.ed.gov/borrower-defense</u>.

If yes, you must provide <u>detailed</u> information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

The above conduct gives rise to a cause or causes of action under California law, which relate(s) directly to my loan and/or the provision of educational services for which the loan was given, including: California EDUCATION CODE SECTION 94928-94929.9 94928. As used in this article, the following terms have thefollowing meanings: (a) "Cohort population" means the number of students that began aprogram on a cohort start date. (b) "Cohort start date" means the first class day after thecancellation period during which a cohort of students attends classfor a specific program. (c) "On-time graduates" means the number of students who completea program within 100 percent of the published program length. Aninstitution may separately state completion information for studentscompleting the program within 150 percent of the original contractedtime, but that information may not replace completion information forstudents completing within the original scheduled time. Completioninformation shall be separately stated for each campus or branch ofthe institution. (d) "Graduates available for employment" means the number ofgraduates minus the number of graduates unavailable for employment. (e) (1) "Graduates employed in the field" means graduates who aregainfully employed in a single position for which the institutionrepresents the program prepares its graduates, beginning within sixmonths after a student completes the applicable educational program.For occupations for which the state requires passing an examination,the period of employment shall begin within six months of theannouncement of the examination results for the first examinationavailable after a student completes an applicable educationalprogram. (2) The bureau shall define by July 1, 2014, specific measures andstandards for determining whether a student is gainfully employed ina full-time or part-time position for which the institutionrepresents the program prepares its graduates, includingself-employment or conducting freelance work, and may set thestandards for the hours per week and duration of employment andutilize any job classification methodology the bureau determinesappropriate for this purpose, including, but not limited to, theUnited States Department of Labor's Standard OccupationalClassification codes. (3) This subdivision shall not prohibit the bureau fromauthorizing an institution to aggregate single positions held by agraduate for purposes of meeting the hours per week standardsestablished by the bureau. (f) "Graduates unavailable for employment" means graduates who,after graduation, die, become incarcerated, are called to activemilitary duty, are international students that leave the UnitedStates or do not have a visa allowing employment in the UnitedStates, or are continuing their education at an accredited orbureau-approved postsecondary institution. (g) "Students available for graduation" means the cohortpopulation minus the number of students unavailable for graduation. (h) "Students unavailable for graduation" means students who havedied, been incarcerated, or called to active military duty.94929. (a) An institution shall annually report to the bureau, aspart of the annual report, and publish in its School Performance FactSheet, the completion rate for each program. Except as provided insubdivision (b), the completion rate shall be calculated by dividingthe number of on-time graduates by the number of students availablefor graduation. (b) In lieu of calculating graduation data pursuant to subdivision(a), an institution may report graduation data reported to, andcalculated by, the Integrated Postsecondary Education Data System ofthe United States Department of Education.94929.5. (a) An institution shall annually report to the bureau, aspart of the annual report, and shall publish in its SchoolPerformance Fact Sheet, all of the following: (1) The job placement rate, calculated by dividing the number ofgraduates employed in the field by the number of graduates availablefor employment for each program that is either (1) designed, oradvertised, to lead to a particular career, or (2) advertised orpromoted with any claim regarding job placement. (2) The license examination passage rates for the immediatelypreceding two years for programs leading to employment for whichpassage of a state licensing examination is required, calculated bydividing the number of graduates who pass the examination by thenumber of graduates who take the licensing examination the first timethat the examination is available after completion of theeducational program. The institution shall use state agency licensingdata to calculate license examination passage rates. If those dataare unavailable, the institution shall calculate the licenseexamination passage rate in a manner consistent with regulationsadopted by the bureau. (3) Salary and wage information, consisting of the total number ofgraduates employed in the field and the annual wages or salaries ofthose graduates stated in increments of five thousand dollars($5,000). (4) If applicable, the most recent official three-year cohortdefault rate reported by the United States Department of Educationfor the institution and the percentage of enrolled students receivingfederal student loans. (b) Nothing in this section shall limit the bureau's authority tocollect information from an institution to comply with this sectionand ensure,

\* Did you choose to enroll in your school based in part on the issues you describe above?

☐ Yes    ☑ No

---

## SECTION V. FORBEARANCE/STOPPED COLLECTIONS

If you are not currently in default on your federal student loans, you may request to have them placed into **forbearance** status while your application is under review. **Forbearance means that you do not have to make loan payments and your loans will not go into default**. Forbearance will continue until the borrower defense review process of your application is completed. Your servicer will notify you when your loans have been placed into forbearance status.

If your federal student loans are in **default**, you may request to have debt collection on your loan stopped ("**stopped collections status**"). **This means that the federal government or debt collection companies will stop attempting to collect on the loans, including by not withholding money from your wages or income tax refunds**. Stopped collections status will continue until the borrower defense review process of your application is completed.

Please see the "Common Questions and Answers Regarding Forbearance/Stopped Collections" section on the Borrower Defense website (studentaid.ed.gov/borrower-defense) if you have any questions regarding choosing to enter forbearance or stopped collections.

**Note that interest will continue to accumulate on federal loans regardless of what status they are in, including subsidized loans. If your application for borrower defense is denied, or partially approved, the total amount you owe on those loans may be higher.**

**PLEASE NOTE:** You do not have to place your loans in forbearance or stopped collections to apply for borrower defense relief.

For the most current information with regard to your rights and obligations regarding forbearance and stopped collections, please visit the Borrower Defense website at StudentAid.ed.gov/borrower-defense.

---

\* **Are you requesting forbearance/stopped collections?**

☐ **Yes, I want all of my federal loans currently in repayment to be placed in forbearance and for collections to stop on any loans in default while my borrower defense application is reviewed. During this time period, I understand that interest will continue to accrue.**

☑ **No, I do not want all of my federal loans currently in repayment to be placed in forbearance and for collections to stop on any loans in default while my borrower defense application is reviewed. During this time period, I understand that interest will continue to accrue and that I must continue to make loan payments.**

---

**If you do not select one of the options immediately above, your federal loans currently in repayment will automatically be placed into forbearance and collections will stop for any defaulted loans, and the Department will request forbearance for any commercially held Federal Family Education Loan (FFEL) program loans currently in repayment and for debt collection to stop for any defaulted, commercially held FFEL program loans that you have currently (as applicable).**

## SECTION VI. CERTIFICATION

By signing this attestation I certify that:

All of the information I provided is true and complete to the best of my knowledge. Upon request, I agree to provide to the U.S. Department of Education information that is reasonably available to me that will verify the accuracy of my completed attestation.

I agree to provide, upon request, testimony, a sworn statement, or other documentation reasonably available to me that demonstrates to the satisfaction of the U.S. Department of Education or its designee that I meet the qualifications for borrower defense.

I certify that I received proceeds of a federal loan, in whole or in part, to attend the school/campus identified in Section II.

I understand that if my application is approved and some or all of my loans are forgiven, I am assigning to the U.S. Department of Education any legal claim I have against the school for those forgiven loans. By assigning my claims, I am effectively transferring my interests in any claim that I could make against the school relating to the forgiven loans (including the ability to file a lawsuit over those forgiven loans and any money ultimately recovered in compensation for those forgiven loans in court or other legal proceedings) to the U.S. Department of Education. I am not assigning any claims I may have against the school for any other form of relief—including injunctive relief or damages related to private loans, tuition paid out-of-pocket, unforgiven loans, or other losses.

I understand that the U.S. Department of Education has the authority to verify information reported on this application with other federal or state agencies or other entities. I authorize the U.S. Department of Education, along with its agents and contractors, to contact me regarding this request at the phone number above using automated dialing equipment or artificial or prerecorded voice or text messages.

I understand that any rights and obligations with regard to borrower defense to repayment are subject to the provisions currently in effect under Title 34 of the Code of Federal Regulations.

I understand that if I purposely provided false or misleading information on this application, I may be subject to the penalties specified in 18 U.S.C. § 1001. I understand that I may be asked to confirm the truthfulness of the statements in this application to the best of my knowledge under penalty of perjury.

\* Signature: _____    Date: 3/8/2017

Submit this form and any additional documents you believe will help us review your application by email to FSAOperations@ed.gov or by mail to: U.S. Department of Education, PO Box 429060, San Francisco, CA 94142.

## PRIVACY ACT NOTICE

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you: The authorities for collecting the requested information from and about you are §421 et seq., §451 et seq. and §461 et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1071 et seq., 20 U.S.C. 1087a et seq., and 20 U.S.C. 1087aa et seq.) and the authorities for collecting and using your Social Security Number (SSN) are §§428B(f) and 484(a)(4)

of the HEA (20 U.S.C. 1078-2(f) and 20 U.S.C. 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the William D. Ford Federal Direct Loan (Direct Loan) Program, the Federal Family Education Loan (FFEL) Program, or the Federal Perkins Loan (Perkins Loan) Program, and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate. The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the Direct Loan Program, FFEL, or Perkins Loan Programs, to permit the servicing of your loans, and, if it becomes necessary, to locate you and to collect and report on your loans if your loans becomes delinquent or defaults. We also use your SSN as an account identifier and to permit you to access your account information electronically. The information in your file may be disclosed, on a case- by-case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loans, to enforce the terms of the loans, to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions. To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to efficiently submit student enrollment statuses, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies. In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

---

### PAPERWORK REDUCTION ACT NOTICE

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-NEW. Public reporting burden for this collection of information is estimated to average 1 hour per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to obtain or retain a benefit (20 U.S.C. 1087e(h)). If you have comments or concerns regarding the status of your individual submission of this application, please contact FSAOperations@ed.gov directly.

---

**Exit**

FOIA | Privacy | Paperwork Reduction Act | Notices | usa.gov | ed.gov | whitehouse.gov



# Exhibit C

Borrower Defense <borrowerdefense@ed.gov>
To 
Wed, Jul 8 at 9:24 AM



7/8/2020

Borrower Defense Application #: ▮▮▮▮▮▮

Dear Ernst Mutchnick:

The U.S. Department of Education (ED) has completed its review of your application under the applicable Borrower Defense to Repayment regulations for discharge of your William D. Ford Federal Direct Loans (Direct Loans) made in connection with your or your child's enrollment at Brooks Institute. "You" as used here should be read to include your child if you are a Direct PLUS Loan borrower who requested a discharge for loans taken out to pay for a child's enrollment at Brooks Institute. ED has determined that your application is ineligible for relief based on review of the facts of your claim and the regulatory criteria for relief; this decision means that your Direct Loans will not be discharged. ED explains the reasons below.

**Applicable Law**

For Direct Loans first disbursed prior to July 1, 2017, a borrower may be eligible for a discharge (forgiveness) of part or all of one or more Direct Loans if the borrower's school engaged in acts or omissions that would give rise to a cause of action against the school under applicable state law. See § 455(h) of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1087e(h), and 34 C.F.R. § 685.206(c) and 685.222 (the Borrower Defense regulations). ED recognizes a borrower's defense to repayment of a Direct Loan only if the cause of action directly relates to the Direct Loan or to the school's provision of educational services for which the Direct Loan was provided. 34 C.F.R. §§685.206(c)(1), 685.222(a)(5); U.S. Department of Education, Notice of Interpretation, 60 Fed. Reg. 37,769 (Jul. 21, 1995).

**Why was my application determined to be ineligible?**

ED reviewed your borrower defense claims based on any evidence submitted by you in support of your application, your loan data from National Student Loan Data System (NSLDS®), and evidence provided by other borrowers.

<u>Allegation 1: Other</u>

You allege that Brooks Institute engaged in misconduct related to Other. This allegation fails for the following reason(s): Failure to State a Legal Claim.

Your claim for relief on this basis therefore is denied.

<u>Allegation 2: Transferring Credits</u>

You allege that Brooks Institute engaged in misconduct related to Transferring Credits. This allegation fails for the following reason(s): Failure to State a Legal Claim.

Your claim for relief on this basis therefore is denied.

<u>Allegation 3: Career Services</u>

You allege that Brooks Institute engaged in misconduct related to Career Services. This allegation fails for the following reason(s): Insufficient Evidence.

Your claim for relief on this basis therefore is denied.

<u>Allegation 4: Admissions and Urgency to Enroll</u>

You allege that Brooks Institute engaged in misconduct related to Admissions and Urgency to Enroll. This allegation fails for the following reason(s): Failure to State a Legal Claim.

Your claim for relief on this basis therefore is denied.

## Allegation 5: Employment Prospects

You allege that Brooks Institute engaged in misconduct related to Employment Prospects. This allegation fails for the following reason(s): Insufficient Evidence.

Your claim for relief on this basis therefore is denied.

## Allegation 6: Program Cost and Nature of Loans

You allege that Brooks Institute engaged in misconduct related to Program Cost and Nature of Loans. This allegation fails for the following reason(s): Failure to State a Claim Actionable Under the Borrower Defense Regulation.

Your claim for relief on this basis therefore is denied.

**What evidence was considered in determining my application's ineligibility?**

We reviewed evidence provided by you and other borrowers who attended your school. Additionally, we considered evidence gathered from the following sources:

NY Attorney General's Office
PA Attorney General's Office
Evidence obtained by the Department in conjunction with its regular oversight activities
Publicly available securities filings made by Career Education Corporation (now known as Perdoceo Education Corporation)

Multi-State Attorney General Assurance of Voluntary Compliance (effective January 2, 2019)

**What if I do not agree with this decision?**

If you disagree with this decision, you may ask ED to reconsider your application. To submit a request for reconsideration, please send an email with the subject line "Request for Reconsideration ███████████████████ to BorrowerDefense@ed.gov or mail your request to U.S. Department of Education, P.O. Box 1854, Monticello, KY 42633. In your Request for Reconsideration, please provide the following information:

1. Which allegation(s) you believe that ED incorrectly decided;

2. Why you believe that ED incorrectly decided your borrower defense to repayment application; and

3. Identify and provide any evidence that demonstrates why ED should approve your borrower defense to repayment claim under the applicable law set forth above.

ED will not accept any Request for Reconsideration that includes new allegations. If you wish to assert allegations that were not included in your application, please see the following section. Additionally, your loans will not be placed into forbearance unless your request for reconsideration is accepted and your case is reopened. Failure to begin or resume repayment will result in collection activity, including administrative wage garnishment, offset of state and federal payments you may be owed, and litigation. For more information about the reconsideration process, please contact our borrower defense hotline at 1-855-279-6207 from 8 a.m. to 8 p.m. Eastern time (ET) on Monday through Friday.

**Can I apply for borrower defense if I have additional claims?**

If you wish to file a new application regarding acts or omissions by the school other than those described in borrower defense application [Case Number], please submit an application at StudentAid.gov/borrower-defense. In the new application, you should explain in the relevant section(s) the basis for any new borrower defense claim(s) and submit all supporting evidence.

**What should I do now?**

Because your borrower defense to repayment application was found to be ineligible, you are responsible for repayment of your loans. ED will notify your servicer(s) of the decision on your borrower defense to repayment application within the next 15 calendar days, and your servicer will contact you within the next 30 to 60 calendar days to inform you of your loan balance. Further, if any loan balance remains, the loans will return to their status prior to the submission of your application. If your loans were in forbearance as a result of your borrower defense to repayment application, the servicer will remove those loans from forbearance. **\*See COVID-19 Note below.**

If your loans are in default and are currently in stopped collections, your loans will be removed from stopped collections. Failure to begin or resume repayment could result in collection activity such as administrative wage garnishment, offset of state and federal payments that you may be owed, and litigation. **\*See COVID-19 Note below.**

While normally interest would not be waived for unsuccessful borrower defense applications, given the extended period of time it took ED to complete the review of this application, the Secretary is waiving any interest that accrued on your Direct Loans from the date of the filing of your borrower defense application to the date of this notification. Your servicer will provide additional information in the coming months regarding the specific amount of interest adjusted. **\*See COVID-19 Note below.**

**\*COVID-19 Note:** On March 27, 2020, the president signed the *CARES Act,* which, among other things, provides broad relief in response to the coronavirus disease 2019 (COVID-19) for federal student loan borrowers whose loans are owned by ED. For the period March 13, 2020, through September 30, 2020, the interest rate on the loans will be 0% and no payments will be required. During this same period for defaulted borrowers, all proactive collection activities, wage garnishments, and Treasury offsets will be stopped. Your federal loan servicer will answer any questions you have about your specific situation. In addition, Federal Student Aid's COVID-19 information page for students, borrowers, and parents is located at StudentAid.gov/coronavirus. Please visit the page regularly for updates.

**What if I have another pending borrower defense application?**

If you have additional pending borrower defense to repayment applications, this information applies to you:

- If your loans associated with an additional borrower defense to repayment application that is still pending are in forbearance or another status that does not require you to make payments, your loans will remain in forbearance or that other status. Similarly, if your loans associated with that borrower defense application are in default and you are currently in stopped collections, those loans will remain in stopped collections.

- If you are unsure if you have additional pending applications, or if you would like to check on the status of your loans associated with an additional application, contact our borrower defense hotline at 1-855-279-6207 from 8 a.m. to 8 p.m. ET on Monday through Friday.

ED offers a variety of loan repayment options, including the standard 10-year repayment plan, as well as extended repayment, graduated repayment, and income-driven repayment plans. For more information about student loan repayment options, visit StudentAid.gov/plans. If you have questions about the status of your loans or questions about repayment options, please contact your servicer(s). If you do not know the name of your federal loan servicer, you may go to StudentAid.gov to find your servicer and view your federal loan information.

Sincerely,

U.S. Department of Education
Federal Student Aid



830 First Street, NE, Washington, D.C. 20202
StudentAid.gov/borrower-defense

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.