ETHAN P. DAVIS
Acting Assistant Attorney General

DAVID L. ANDERSON
United States Attorney

MARCIA BERMAN
Assistant Branch Director

R. CHARLIE MERRITT
KATHRYN C. DAVIS
KEVIN P. HANCOCK
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
919 East Main Street, Suite 1900
Richmond, VA 23219
Telephone: (202) 616-8098
Fax: (804) 819-7417
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION<br><br>Defendants. | No. 3:19-cv-03674-WHA<br><br>**DEFENDANTS' RESPONSE TO AUGUST 31, 2020 ORDER** |

On August 20, 2020, Plaintiffs moved the Court for a case management conference to address their concerns with the substantive borrower defense decisions that some members of the Plaintiff class have received. ECF No. 108. The Court granted the motion and held a case management conference on August 31, 2020, after which it entered an Order requiring that Defendants file "information regarding statistics of the at-issue denials," as discussed during the conference. ECF No. 115.

<u>Statistics on Claims Adjudication Since December 2019</u>

Since the Department resumed issuing final borrower defense decisions in December 2019, it has issued final decisions on approximately 131,800 applications The Department has approved (*i.e.*, determined that they are eligible for relief) approximately 13,500 of these applications and denied (*i.e.*, determined that they are ineligible for relief) approximately 118,300 applications.

The individuals covered by the substantive provisions of the parties' settlement agreement are those who had pending borrower defense claims as of the April 7, 2020 date on which the parties executed their agreement. *See* Proposed Settlement Agreement § IV, ECF No. 97-2 (Agreement). Approximately 162,000 individuals met the class definition on that date, comprising approximately 168,000 borrower defense applications. As of August 24, 2020, the Department had adjudicated approximately 90,000 of these applications and issued approximately 78,400 final decisions (the rest are in various stages of quality control and processing). Of those final decisions, approximately 4,400 were approvals and 74,000 were denials.

The Court requested statistics from the period before the parties executed their settlement agreement on April 7. During that period, while the parties were negotiating the settlement agreement, Plaintiffs were on notice, via a declaration filed with Defendants' merits briefing on January 9, 2020, that the Department had issued 16,045 final decisions since the announcement of its new relief methodology, approving 789 claims and denying 15,256 claims. *See* Defs.' Opp'n to Pls.' Mot. for Summ. J. & Reply in Supp. of Defs.' Mot. for Summ. J. at 3-4, ECF No. 72. As of April 7, 2020, the Department had issued decisions on approximately 8,800 eligible applications and approximately 36,200 applications that it determined were ineligible.

These statistics show that the Department is approving some borrower defense claims and denying others – and that it is plainly not operating under a blanket policy of summarily denying all borrower defense claims. The fact that the number of denials has been relatively high in comparison to the number of approvals should be no cause for concern. As Defendants have previously explained, the Department has, in an effort to maximize its efficiency in reducing the massive claims backlog, prioritized deciding borrower defense applications that, based on facial deficiencies, can be most quickly denied. *See* Admin. R. 351, ECF No. 56 (Decl. of Collen Nevin ¶ 66, Nov. 14, 2019). These include "applications from borrowers who did not provide any evidence and who attended schools for which [the Borrower Defense Unit] is not aware of any evidence that would support approval," *id*., and claims involving no allegations that a misrepresentation (or other conduct made actionable by the governing regulations) was directed to the borrower or that otherwise fail to allege a claim for borrower defense relief, *see* Exhibit B to Decl. of Eileen Connor, ECF No. 108-2 (Letter From Kathryn C. Davis to Eileen Connor at 3, Aug. 10, 2020). At the same time, the Department continues its review of evidence related to additional schools beyond those for which it has so far approved claims. As it develops review protocols and eligibility criteria based on this common evidence, the Department anticipates that the ratio of approvals to denials could increase with respect to the more than 75,000 applications that are covered by the settlement agreement and that have not yet been adjudicated. *See id.*

<u>Form of Denial Letters Utilized by the Department since December 2019</u>

The Court also requested information about the form of the Department's denial letters. Since December 2019, the Department has used four standard letter templates to notify borrowers of its decisions to deny their claims. *See* Exhibits A-D, attached hereto. These vary depending on the type of claim asserted: (1) Corinthian borrowers who assert only job placement rate claims but who do not meet the eligibility criteria for such a claim (sample attached as Exhibit A); (2) Corinthian borrowers who assert other claims in addition to job placement rate claims (sample attached as Exhibit B); (3) non-Corinthian borrowers who attended schools for which the Department does not have any common evidence in its possession (sample attached as Exhibit C); and (4) non-Corinthian borrowers who attended schools for which the Department does have

common evidence in its possession (sample attached as Exhibit D). The letters have varying amounts of detail – for example, the Corinthian letters incorporate the Department's eligibility criteria for claims based on Corinthian's misleading job placement rates and provide an accounting of the borrower's failure to meet those criteria – but Plaintiffs primarily direct their complaints at the fourth category of letter. Although that specific form (Exhibit D) has only been utilized after the date the parties executed their settlement agreement, it is nearly identical to the third form listed above (Exhibit C), which the Department used throughout the period between December 2019 and April 7, 2020, when the parties executed the settlement agreement.

The use of these form denial letters is entirely appropriate and unsurprising here. The letters provide standardized justifications based on common deficiencies that the Department has identified across thousands of applications, such as a failure to plead actionable misconduct or failure to provide evidence to support the claim. As the record in this case makes clear, the Department has faced a very large backlog of borrower defense claims, including more than 168,000 that would be subject to the timelines set forth in the Agreement. In a federal program of that scope, it is not realistic to expect the Department to issue detailed, personalized decisions in every case. Indeed, the Administrative Procedure Act (APA) imposes only a "minimal" burden on agencies to explain their decisions to deny an application. *See Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

Most importantly, the Department would not have agreed to clear the backlog of more than 168,000 cases in 18 months if that meant issuing the type of personalized, detailed decisions Plaintiffs now suggest are required. The Department is committed to complying with its regulations and the APA in adjudicating borrower defense claims and notifying borrowers of final decisions. It will not, however, move for final approval of the settlement agreement if Plaintiffs continue to press their interpretation, since there clearly would not be a meeting of the minds by the parties on whether the agreement governs the content or substance of borrower defense decisions. *Cf., e.g., Tai Ham v. Selectron Int'l Optronics*, LLC, 324 F. App'x 583, 584 (9th Cir. 2009) (affirming denial of motion to enforce settlement agreement where parties had no "meeting of the minds" as to the meaning of a "material term"). The Department's understanding that it

would continue to utilize the types of form denial letters that it had been using for as many as four months prior to executing the Agreement—including during the course of this litigation and the parties' lengthy settlement negotiations—was an important factor in the Department's determination of the amount of time that is necessary to issue decisions on all class members' claims and, ultimately, the timeline it would commit to in any settlement agreement.

Consistent with the Department's understanding, the parties' settlement agreement requires only that borrower defense decisions be issued according to prescribed timelines, not what any particular decision must say about the merits of the claim. *E.g.*, Agreement § IV.A.1.i (defining the "final decision" that must be issued to each class member as a "decision by Defendants resolving a borrower defense application, including a determination of how much relief the claimant is entitled to, if any"). The Agreement also expressly recognizes that, if any plaintiff has a dispute regarding the Department's decision to deny their borrower defense claim, they retain the right to challenge that decision, as the Court pointed out in granting preliminary approval. *See* Order Granting Prelim. Settlement Approval at 3, ECF No. 103. Plaintiffs can also seek reconsideration from the Department. All of this is consistent with the fact that this case is, and has always been, solely about the Department's obligation to restart the conveyor belt of deciding borrower defense claims, not the substance of those decisions or the process for issuing them. *See, e.g.*, Compl., Prayer for Relief, ECF No. 1; Class Notice, ECF No. 97-2 at 27 ("The lawsuit is ONLY about the fact that final decisions were not issued during that period of time, NOT whether those applications should results in loan cancellation or not."); Pls.' Reply in Supp. of Mot. for Class Certification at 5, ECF No. 42 (Plaintiffs do "not ask the [C]ourt to opine on the substance or process for adjudicating their individual borrower defenses"); Order Granting Mot. for Class Certification at 12, ECF No. 46 (granting class certification based on the fact that this lawsuit was filed "to ultimately obtain *a* decision" – not to dictate "the outcome of each application").[1]

[1] Even if the Court were nonetheless inclined to agree with Plaintiffs that the parties' agreement *should* govern the content or substance of borrower defense decisions, it is "not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties." *Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 326 (N.D. Cal. 2018) (noting that a court "may grant or deny approval of [a class action settlement], not revise its terms").

Dated: September 4, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar # 89400)
KATHRYN C. DAVIS
KEVIN P. HANCOCK
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
919 East Main Street, Suite 1900
Richmond, VA 23219
Telephone: (202) 616-8098
Fax: (804) 819-7417
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*