JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
DAVID L. ANDERSON
United States Attorney
MARCIA BERMAN
Assistant Branch Director
KATHRYN C. DAVIS
Senior Trial Counsel
R. CHARLIE MERRITT
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ELISABETH DEVOS, in her official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION <br><br> Defendants. | No. 3:19-cv-03674-WHA <br><br><br> **DEFENDANTS' REPLY TO CLASS MEMBERS' OBJECTIONS** |

Pursuant to the Court's Orders of May 29, 2020 and August 31, 2020, Defendants submit the following reply to the objections of class members to the proposed settlement agreement in the above-referenced case.

**Background**

Plaintiffs assert a single claim under Section 706(1) of the Administrative Procedure Act, alleging that the U.S. Department of Education (Department) unlawfully withheld or unreasonably delayed issuing final decisions on borrower defense claims during a period of time that ultimately lasted approximately 18 months between June 2018 and December 2019. They seek a "simple" order compelling the Department to "start granting or denying their borrower defenses." Compl. ¶ 10, ECF No. 1; *see also* Compl., Prayer for Relief (requesting that Court compel Department to "grant class members' individual borrower defense assertions if they are eligible for a borrower defense," "deny class members' individual borrower defense assertions if they are not eligible for a borrower defense," and to "notify class members of their borrower defense decisions"). Plaintiffs have made clear from the start that they do "not ask the [C]ourt to opine on the substance or process for adjudicating their individual borrower defenses." Pls.' Reply in Supp. of Mot. for Class Certification at 5, ECF No. 42. Rather, they have invoked the metaphor of a "halt[ed]" "conveyor belt," and sought relief that would simply "re-start the machinery and push each Student's application forward," regardless of the ultimate outcome of any individual application. *Id*.

Whatever the merits of Plaintiffs' claim at the time their complaint was filed—and Defendants contend that their delay in issuing final decisions was reasonable and lawful, *see, e.g.*, Defs.' Mot. for Summ. J., ECF No. 63—the inaction that Plaintiffs challenge has now ceased. The Department has "re-start[ed] the machinery" and, as it represented it would do throughout this litigation, resumed issuing final borrower defense decisions as of December 2019. *See* Defs.' Opp'n to Pls.' Mot. for Summ. J. & Reply in Supp. of Defs.' Mot. for Summ. J. at 1-5, ECF No. 72. The Department has now issued final decisions on more than 131,000 applications since it announced a new methodology for determining relief for successful applicants in December 2019. *See* Defs.' Resp. to Aug. 31, 2020 Order at 1, ECF No. 116. The Department is thus already doing the very thing Plaintiffs sought to compel: clearing the backlog of borrower defense claims and

1  "provid[ing] Class Members with timely decisions on their borrower defenses."  Joint Mot. for
2  Prelim. Approval of Settlement (Prelim. Approval Mot.) at 9, ECF No. 97.

3  Nonetheless, the Department, after an extended period of arms-length negotiations with Plaintiffs, determined to enter into a settlement agreement to resolve the case without the expense and uncertainty of further litigation.  The details of that agreement are discussed extensively in the parties' joint motion for preliminary approval, *see* ECF No. 97, so Defendants will not rehash them all here.  But the core of the settlement, reflecting the fundamental nature of the case, is the Department's commitment to issue final borrower defense decisions on the applications of class members according to a specified timeline (18 months from the agreement's effective date, following this Court's final approval, with an additional three-month period at the end for the Department to effectuate all appropriate relief).  The Agreement defines a "final decision" simply as a "decision by Defendants resolving a borrower defense application, including a determination of how much relief the claimant is entitled to, if any."  Proposed Settlement Agreement (Agreement) § IV.A.1.i, ECF No. 97-2; *see also id*. §§ IV.A.1.1; II.V (setting forth alternative scenario in which a "Step 1" determination would constitute a final decision and defining that term as "the Department's decision whether a Class Member's borrower defense application is eligible for relief, *i.e.*, granted or denied, without regard to the amount or type of relief that will be issued").  The Agreement does not dictate the substantive outcome of any borrower defense decision or the process the Department must utilize to make its decisions, and leaves each class member free to challenge the substance of the borrower defense decisions that they ultimately receive.  *See id*. § VII.  As the parties explained in moving for preliminary approval, the "expeditious relief" provided for in the Agreement is a "superior outcome" in a "case that is fundamentally about avoiding delay."  Prelim. Approval Mot. at 10.

Additionally, the Agreement imposes certain reporting requirements to enable Plaintiffs to monitor the Department's progress in fulfilling its settlement obligations.  Agreement § IV.B.  It also reiterates the Department's commitment to follow certain regulations and policies by issuing written decisions to borrowers resolving their applications, refraining from taking action to collect outstanding student loan debt through involuntary collection activity, and providing an interest

credit for the pendency of a borrower defense application. *Id*. § IV.C. Finally, the Agreement provides for the Court to retain limited jurisdiction to enforce only those material breaches that are specifically defined in the Agreement: failure to issue final decisions or effectuate relief according to the specified 18- and 21-month timelines, failure to abide by the reporting requirements, and the Department or its agents engaging in involuntary collection activity. *Id*. § V.

The Court preliminarily approved the proposed settlement agreement on May 22, 2020, finding it adequate because it "sets a timeline to resolve pending claims," "provides for effective enforcement," and "does not compromise the *substance* of class members' borrower defense claims." Order Granting Prelim. Settlement Approval at 2-3 (Prelim. Approval Order), ECF No. 103 (emphasis in original). On May 29, the Court entered a further order directing class notice and setting final settlement approval deadlines. Order Directing Class Notice & Setting Final Settlement Approval Deadlines (May 29 Order), ECF No. 105. The Court ordered the Department to distribute the approved class notice by both email and 1st class mail, and for both the Department and class counsel to post the notice to their respective websites, by July 6. *Id*.; *see also* Prelim. Approval Order at 3. The class notice explains the lawsuit, the Agreement, and the right of class members to submit written comments and participate at the final fairness hearing. *See* Class Notice, ECF No. 97-2 (Ex. A). The notice also informs class members that the instant lawsuit "is ONLY about the fact that final decisions were not issued [between June 2018 and December 2019], NOT whether those applications should result in loan cancellation or not." *Id*.

The Court ordered class members' objections to the proposed settlement due by August 20 and set a September 3 deadline for the parties to respond to any such objections. May 29 Order at 2. The Court subsequently extended the latter deadline to September 17. *See* Aug. 31, 2020 Minute Order. A final fairness hearing is scheduled for October 1. May 29 Order at 2.

### Class Member Objections

The Department sent notice via 1st class mail and/or email to the almost 162,000 class members covered by the parties' settlement agreement. Consistent with the Court's orders and the terms of the Agreement, the notice was also posted on the Department's website and class counsel's website, and was to be circulated to organizations that provide borrower defense

assistance. *See supra* p. 3; Agreement § X.B. In response, approximately 130 class members—less than 0.1% of the total population covered by the Agreement—submitted responses to the Clerk of the Court, as specified in the notice.

For the most part, these written responses do not react to or even address the specifics of the parties' settlement agreement. Rather, the primary concern addressed in the written "objections" is the asserted institutional misconduct underlying the class members' borrower defense claims and, in many cases, the class members' desire for relief from their outstanding loan obligations (including, in some cases, financial compensation). *See, e.g.*, OC 256[1] (detailing alleged misconduct of the borrower's school and asking "to be free of debt from the student loans" and "to be awarded $50,000"); 291 (alleging that borrower was "manipulated by the recruiter to attend the Art Institute of Atlanta" and stating that "[m]y goal is to be relieved from this debt"); 466 (noting that the Department had denied the borrower's application, disagreeing, and submitting "for review by the court[]" the evidence that the borrower believes supports the claim); 609 (similar); 956 ("I am asking you to forgive all my loans associated with Kaplan and Argosy Universities. [Their] degrees are void and so should my loan balance be."). More than half of the commenters submitted responses of this general type.

The remaining responses that more specifically address the actual provisions of the Agreement can largely be grouped into a few broad categories. Some contend that the specified timelines for resolving borrower defense applications are too long and request that they be shortened. *E.g.*, OC 82; 595; 906. Others raise the issue that Plaintiffs' counsel raised in their motion for a case management conference, ECF No. 108, and at the resulting case management conference on August 31: that the Department is allegedly denying claims without adequate consideration or explanation in order to meet the timelines set forth in the Agreement. *E.g.*, OC 9; 84; 313-14; 376; 546; 779; 967. Another category of responses seek to memorialize in the Agreement aspects of the borrower defense adjudication process that are governed by the Department's regulations (and are generally beyond the scope of the case Plaintiffs brought). For

---

[1] All citations to individual class member objections refer to the bates number of the electronic copies that Defendants provided to Plaintiffs and that were then provided to the Court, consistent with the Court's Order of August 18, 2020 (ECF No. 106).

example, they request that the Department waive interest that accrues while a borrower defense claim is pending, provide a refund of any amounts paid on successful borrower defense claims, and apply the standards set forth in the Department's 2016 borrower defense rule, *see* 81 Fed. Reg. 75,926 (Nov. 1, 2016), rather than the standards set forth in its more recent 2019 rule, *see* 84 Fed. Reg. 49,788 (Sept. 23. 2019).  *E.g.*, OC 75; 79-81; 252; 464; 562; 695-96; 928; 935-38.

### **Defendants' Reply**

In general, courts review class action settlements in "two stages." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016).  First, the court preliminarily approves the parties' proposed settlement if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." Prelim. Approval Order at 2 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).  Then, "the class members are notified and given a chance to object to the settlement." *Cotter*, 193 F. Supp. 3d at 1035.  After the parties respond to any objections and move for final approval, the district court "decides whether to grant final approval." *Id*.

This case presents a unique procedural posture, however.  Following preliminary approval—but before the final approval upon which the Agreement is expressly conditioned, *see* Agreement §§ XIII (agreement void absent final approval as written); II.M (defining final approval as a condition precedent to the Agreement's "effective date")—a dispute has arisen between the parties about what the proposed settlement requires.  As Plaintiffs have already foreshadowed, and intend to argue in two motions that will be filed today, Plaintiffs think the Agreement governs the substance of borrower defense decisions and requires the Department to provide some unspecified level of detail in certain of its written decisions denying borrower defense claims.  Defendants disagree because neither the underlying case nor the parties' Agreement addresses the substantive content of the Department's final borrower defense decisions—only *that* such decisions be timely issued.  *See, e.g.*, *supra* pp. 1-3; Defs.' Resp. to Aug. 31, 2020 Order at 3-4.  Given this dispute, Defendants have serious concerns about whether the proposed agreement reflects a meeting of the minds on certain material terms and, as a result, are not seeking final approval of the Agreement

at this time. Instead, Defendants will respond to Plaintiffs' forthcoming motions, and those motions will be heard, according to the default schedule provided by the Local Rules. *See* Order Re Class Notice & Procedure for Settlement Fairness Hr'g, ECF No. 123. Nonetheless, Defendants respond to certain aspects of the class member objections as follows, consistent with the Court's May 29 and August 31 Orders.

To begin, the commenters represent a very small percentage—less than 0.1%—of the class and any negative reactions should not necessarily be viewed as indicative of the manner in which the class as a whole views the settlement. *See, e.g.*, *Lane v. Brown*, 166 F. Supp. 3d 1180, 1191-93 (D. Ore. 2016) (finding that the "vast majority of the class supports and will benefit from" settlement where only 32 out of about 2,000 (around 1.6%) objected); *Sugarman v. Ducati N. Am., Inc.*, No. 5:10-cv-05246-JF, 2012 WL 113361, at *3 (N.D. Cal. Jan. 12, 2012) (objections from 42 of 38,774 class members—more than 0.1%—is a "positive response"). The serial assertions that commenters were defrauded by the schools they attended and should be awarded student loan relief are of course well beyond the scope of this case—and entail precisely the type of inquiry that Plaintiffs have expressly disclaimed, *see* Compl. ¶ 10 (Plaintiffs "do not ask this Court to adjudicate their borrower defenses"), and that the Court stated is "not what [it] signed up for when [it] certified this class," Tr. of Aug. 31, 2020 Case Management Conference at 16: 21-22.

This is not changed by the fact that some commenters have tied their disappointment with the substantive outcome of their applications to the timelines specified in the Agreement. Putting aside the fact that the Agreement's 18-month timeline for issuing final decisions has not even begun to run yet, the Agreement simply does not govern the substance or content of the Department's borrower defense decisions (and expressly recognizes that class members are free to challenge a borrower defense decision in a different lawsuit). *See also* Order Granting Mot. for Class Certification at 12, ECF No. 46 (finding that Plaintiffs are not "seeking a specific ruling for each application" or to dictate "the outcome of each application," but "to ultimately obtain *a* decision"). "Even assuming that the Court would have the power to" dictate individual borrower defense decisions, "Plaintiffs did not request such relief in the [complaint]." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 326 (N.D. Cal. 2018). Thus, the commenters' challenges to

the Department's denial of their claims "do not present a valid basis on which to object" and "appear to misperceive the Court's role at this stage: the Court may grant or deny approval of the Settlement, not revise its terms." *Id*.

While some borrowers object to the length of the timelines set forth in the Agreement, those timelines reflect a negotiated compromise and the Department's assessment, in the context of committing to enforceable timelines in a settlement agreement, of how quickly it could work through the large backload of borrower defense claims that it faced at the beginning of this litigation. The Department's agreement to the timelines is also based on its understanding that it would continue to utilize the type of form denial letters that it had already been using for months prior to executing the Agreement. *See* Defs. Resp. to Aug. 31, 2020 Order at 3-4. In a case with a class this large, "that is fundamentally about avoiding delay," securing guaranteed, expeditious relief for all class members (*i.e.*, decisions on their claims and an end to the delay) is the "superior outcome" for the class as a whole, Prelim. Approval Mot. at 10, even if some class members have had applications pending for longer periods of time and would prefer to receive decisions more quickly. In any event, a limited number of commenters objected on this basis—especially when compared to the total size of the class—and the "best interests of the class as a whole must remain the court's paramount consideration even though some class members believe that they will not receive all the individual relief to which they believe they are entitled." *Lane*, 166 F. Supp. 3d at 1193; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1068 (N.D. Cal. 2017) ("It is the nature of a settlement, as a highly negotiated compromise, that it may be unavoidable that some class members will always be happier with a given result than others." (citation omitted)).

As noted above, several class members also raise concerns about various procedural aspects of the Department's adjudication of borrower defense claims. In general, these concerns are beyond the scope of the narrow claim that Plaintiffs brought and are not a valid basis for objection. Nonetheless, many of them are already addressed by the Department's regulations and/or the Agreement, as described below.

Some comments address the issue of interest accrual during the pendency of the commenters' borrower defense applications. But as the Agreement already confirms, the Department, consistent with existing policy, will provide an interest credit for any interest that accrues on the relevant federal student loan accounts of class members between the time that they submitted their borrower defense application and the time the Department notifies them of their final decision. *See* Agreement § IV.C.3. The Agreement also addresses issues class members raise about the manner in which the Department effectuates relief for successful borrower defense applicants. In particular, it provides that once the Department determines that a discharge is appropriate, it, *inter alia*, reapplies all prior payments to the reduced loan amount, determines if the applicant is entitled to a refund, and corrects any adverse credit reporting. *Id*. § IV.A.2.i. And while several borrowers are concerned about which borrower defense regulations would apply to their claims, that issue is appropriately addressed by the regulations themselves, not the Agreement.[2] The substantive standard—*i.e.*, what a borrower must show to establish a borrower defense—applicable to any claim is governed by the date on which the loan that is the subject of an application was first disbursed. For loans first disbursed prior to July 1, 2017, the state law standard from the Department's 1994 regulations applies. *See* 34 C.F.R. § 685.206(c). For loans first disbursed between July 1, 2017 and June 30, 2020, the federal standard from the 2016 regulations applies. 34 C.F.R. § 685.206(d); 34 C.F.R. § 685.222. And for loans first disbursed on or after July 1, 2020, the new standards and procedures of the 2019 regulations apply. *See* 34 C.F.R. § 685.206(e). For all loans first disbursed prior to July 1, 2020, the 2016 regulations' procedural provisions for the assertion and consideration of borrower defense applications apply.

---

[2] There are three sets of relevant borrower defense regulations. The first were promulgated in 1994 and allowed a federal Direct Loan borrower to assert as a defense to repayment "any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law." 60 Fed. Reg. 37,768, 37,769-70 (July 21, 1995). The Department promulgated new regulations in 2016—with an original effective date of July 1, 2017 that was delayed to October 16, 2018, *see* 84 Fed. Reg. 9964 (March 19, 2019)—which set forth a new federal standard for evaluating borrower defense claims pertaining to loans first disbursed on or after July 1, 2017. *See* 81 Fed. Reg. 75,926 (Nov. 1, 2016). And in September 2019, the Department again promulgated new regulations, with an effective date of July 1, 2020, which set forth new standards for the assertion and consideration of claims pertaining to loans first disbursed on or after July 1, 2020. *See* 84 Fed. Reg. 49,788 (Sept. 23. 2019).

*See* 34 C.F.R. § 685.206(c)(2); 34 C.F.R. §§ 685.222(a)(2), (e).  These procedures allow applicants to seek reconsideration of any decision denying their claim.  34 C.F.R. § 685.222(e)(5).

### **Conclusion**

The overwhelming majority of the class did not submit any objections to the parties' proposed settlement agreement.  Those that did largely express objections about matters that (1) exceed the scope of this litigation and the proposed agreement (*e.g.*, allegations that borrowers' schools harmed them; requests for loan discharges and favorable borrower defense decisions based on these allegations); (2) are already addressed in the Agreement itself or by the relevant regulations; or (3) provide meaningful relief for the class as a whole based on the parties' reasonable compromise of disputed issues, notwithstanding individualized objections to that relief (*e.g.*, claims that the timeline for adjudicating the backlog of claims is too long).  Thus, Defendants do not believe the objections submitted in this case undermine the adequacy of the Agreement.  Defendants emphasize, however, that they are not moving for final approval at this time given the parties' dispute about the Agreement.

Dated:  September 17, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
KATHRYN C. DAVIS
Senior Trial Counsel
R. CHARLIE MERRITT (VA Bar # 89400)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*