JOSEPH JARAMILLO (SBN 178566)
jjarmillo@heraca.org
CLAIRE TORCHIANA (SBN 293026)
ctorchiana@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, CA 94611
Tel.: (510) 271-8443
Fax: (510) 868-4521

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL (*pro hac vice*)
tomerrill@law.harvard.edu
MARGARET E. O'GRADY (*pro hac vice
application pending*)
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, TRESA APODACA, ALICIA DAVIS, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>     *Plaintiffs*,<br>  v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>     *Defendants*. | Case No. 19-cv-03674-WHA<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AGREEMENT**<br><br>**HEARING DATE: OCT. 22, 2020**<br><br>(Class Action)<br>(Administrative Procedure Act Case) |

To Defendants and their attorneys of record:

PLEASE TAKE NOTICE that on October 22, 2020, at 8:00 a.m., Plaintiffs will and do hereby move the Court for an Order Entering Final Approval of the Settlement Agreement and an Order Enforcing the Settlement Agreement executed by the parties on April 7, 2020. *See* ECF No. 123.

These motions are based on the accompanying memorandum of law, documents attached hereto, the record in this case, and any such additional evidence that the Court may consider.

# TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................................... 1

II.  FACTS ................................................................................................................. 1

III.  LEGAL STANDARD ........................................................................................ 3

   A.  Motion for Final Approval ............................................................................ 3

   B.  Motion to Enforce......................................................................................... 4

IV.  Argument............................................................................................................ 5

   A.  The Court Should Order Final Approval of the Settlement Agreement............ 5

   B.  The Court Must Order the Defendants to Comply with the Terms of the

Settlement Agreement........................................................................................ 8

V.  CONCLUSION ................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

## <u>Statutes</u>

Cal. Civ. Code § 1550 ................................................................................................ 4

Borrower Defense Regulations, 34 C.F.R. § 685.222 ............................................ *ibid.*

Administrative Procedure Act, 5 U.S.C. § 555(e) .................................................. *ibid.*

Fed. R. Civ. Proc. Rule 23. ..................................................................................... *ibid.*


## <u>Cases</u>

*Adams v. Johns–Manville Corp.*, 876 F.2d 702 (9th Cir. 1989) ................................... 4

*Ambat v. San Francisco,* WL 2118576 (N.D. Cal. May 27, 2011)............................... 4

*Amerijet Intern., Inc. v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014) ............................... 10

*Bd. of Trustees of Laborers Vacation-Holiday Tr. Fund for N. California v. Lopez*, 2018 WL 2117336 (N.D. Cal. May 8, 2018) ................................................................................ 5

*Botefur v. City of Eagle Point, Or.*, 7 F.3d 152 (9th Cir. 1993) ................................... 4

*Butte Cty., Cal. v. Hogen*, 613 F.3d 190 (D.C. Cir. 2010) ........................................... 9

*Callie v. Near*, 829 F.2d 888, (9th Cir. 1987) ............................................................. 4

*Castle Rock v. Gonzalez*, 545 U.S. 748 (2005). .......................................................... 13

*Dickson v. Secretary of Defense*, 68 F.3d 1396 (D.C. Cir. 1995)................................. 11

*Fair Hous. Council of Cent. Cal., Inc. v. Tylar Prop. Mgmt. Co.*, 975 F. Supp. 2d 1115 (E.D. Cal. 2012) ............................................................................................................................ 5

*Fisher v. Biozone Pharm., Inc.*, 2017 WL 1097198 (N.D. Cal. Mar. 23, 2017)............................ 5

*Free Range Content, Inc. v. Google, LLC*, 2019 U.S. Dist. LEXIS 47380 (N.D. Cal 2019) ..... 4, 8

*Hanlon v. Chrysler Corp*, 150 F.3d 1011 (9th Cir. 1997). ........................................... 4

*Higgins v. Spellings*, 663 F. Supp. 2d 788 (W.D. Mo. 2009) ...................................... 12

*Homeland Sec. v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891 (2020) ................... 22

iii

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)..........................................7

*Kapps v. Wing*, 404 F.3d 105 (2d. Cir. 2005). ................................................................. 13

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012).................................................... 3

*Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932 (9th Cir. 1999)..................................... 21

*Meadville Master Antenna, Inc. v. F.C.C.*, 443 F.2d 282, 290 (3d Cir. 1971) ............................ 11

*Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 314 (1950)). .......................................... 14

*Munoz v. Giumarra Vineyards Corp.*, 2017 WL 26605075, *9 (E.D. Cal. June 21, 2017) .......... 6

*Nozzi v. Housing Auth. of Los Angeles*, 806 F.3d 1178, 1191 (9th Cir. 2015) ("Nozzi II")......... 13

*Ressler v. Pierce*, 692 F.2d 1212, 1215–16 (9th Cir.1982) ........................................... 13

*Rosales v. El Rancho Farms*, 2015 WL 4460635, at *16 (E.D. Cal. July 21, 2015),.................... 6

*San Francisco NAACP v. San Francisco Unified School District*, 59 F. Supp. 2d 1021 (N.D. Cal 1999) ............................................................................................. 7

*Schaffer v. Litton Loan Servicing LP*, 2012 WL 10274678 (C.D. Cal. Nov. 13, 2012 ................. 4

*State of California v. U.S Dep't of the Interior*, 381 F. Supp. 3d 1153 (N.D. Cal. 2019)).......... 10

*Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731 (D.C. Cir. 2001); .................. 9

*West v. State Farm Fire & Cas. Co.,* 868 F.2d 348 (1998) ........................................... 4

*Williams v. DeVos*, 2018 WL 5281741 (D. Mass. Oct. 24, 2018) ................................. 13

## I.   INTRODUCTION

On May 22, 2020, this Court preliminarily approved a class-wide settlement of this action pursuant to Fed. R. Civ. Proc. Rule 23. ECF No. 103.  The Settlement Agreement, which the parties signed on April 7, 2020 (ECF No. 97-2, the "Agreement"), commits Defendants to a timeline for issuing a "final decision" on the merits of each class member's borrower defense claim or else be required to cancel a portion of the borrower's student loans. ECF No. 97-2 at 5-7; 11-13. In the Agreement, the Department of Education ("ED") represents and confirms that it will "issue[ ] written decisions as required by the Department's 2016 Borrower Defense Regulation." *Id*. at 10. The Court ordered the parties to move for final approval of the Agreement by September 17, 2020. ECF No. 105.

The Defendants have issued over 78,400 Notices to class members since the execution of the Agreement (ECF No. 116 at 1), but notwithstanding the clear mandate of the Agreement and the law, the Denial Notices are plainly deficient. Defendants are thus in breach of the Agreement. Given this breach, in addition to moving for Final Approval of the Settlement Agreement, Plaintiffs simultaneously move to Enforce the Settlement Agreement.

As explained herein, the Court should issue Final Approval of the Settlement because it is fair and reasonable, and it is in the best interests of the class to hold ED to a deadline for fulfilling its obligation to adjudicate borrower defense claims on the merits.  However, because the Defendants are in breach of the Settlement Agreement, the Court must also order the Defendants to comply with the Agreement and issue lawful Notices to the class.

## II.   FACTS

Plaintiffs initiated this lawsuit as a proposed class action on June 25, 2019. ECF No. 1. The operative claim in the Complaint alleges that Defendants violated the Administrative Procedure Act (APA) Section 706(1) "because they have refused to grant" and "because they have refused to deny" borrower defense applications of the proposed class. ECF No. 1 at ¶¶ 378-9. Plaintiffs sought an order declaring unlawful ED's alleged policy of refusing to grant and refusing to deny borrower defense applications. ECF No. 1 at 60-61.

1

The Court granted Plaintiffs' motion for class certification on October 30, 2019 citing "the undisputed fact that the Department has failed to adjudicate a single borrower defense claim in over a year." ECF No. 46 at 9. The class definition, applicable "for all purposes, including settlement," includes people "whose borrower defense has not been granted or denied on the merits," *id.* at 14.

After an arms-length negotiation, the parties executed a Settlement Agreement on April 7, 2020 (ECF No. 97-2), and the Court granted preliminary approval on May 22, 2020. ECF No. 103. In the Agreement, ED represents and confirms that it "issues written decisions as required by the Department's 2016 Borrower Defense Regulation." *Id.* at 10.   The Court ordered the parties to move for final approval of the Settlement Agreement by September 17, 2020. ECF No. 105.

On July 24, 2020, counsel for Plaintiffs notified Defendants about a concern that the Defendants' Denial Notices issued since the execution of the Agreement used impermissible boilerplate and conclusory language that offered no rationale for the decisions. *See* ECF No. 108 ¶ 3-4; ECF No. 108-2 at 6. The Plaintiffs moved on August 20, 2020 for a Case Management Conference to alert the Court that the Denial Notices issued by Defendants appear to be in noncompliance with the Agreement itself, ED's own Regulations, and the Administrative Procedure Act. ECF No. 108 ¶ 5-7. As detailed in their filing on August 20, 2020, counsel for Plaintiffs have reviewed hundreds of the Denial Notices sent by ED and provided affidavits from fifteen of the recipients. *Id.*

Following the case management conference on August 31, 2020, the Court entered an Order requiring Defendants to file "information regarding statistics of the at-issue denials." ECF No. 115.[1] During the conference, the Court also noted that Plaintiffs' potential motion to enforce would be one of the "issues that I think we either have to address on October 1 at the motion to

---

[1] The Court also provided that Plaintiffs' counsel should "submit further briefing on issues raised" during the conference. In this Memorandum, Plaintiffs provide answers to the questions that the Court raised during the case management conference, which related to (a) what the law requires of the Denial Notices (*see infra* § IV.B.1); (b) whether Plaintiffs were "on notice" of Defendants' intention to provide unlawful notices when the Settlement Agreement was executed (*see infra* § IV.B.2); and (c) whether the deficient Denial Notices present a class-wide issue (*see infra* § IV.B.3).

2

confirm the settlement…" Transcript of Aug. 31, 2020 Case Management Conference at 18 ("CMC Trans."), attached hereto as Exhibit 1 of the Dec. of Eileen M. Connor in Support of Plaintiffs' Motion for Final Approval and to Enforce the Settlement Agreement ("Connor Dec."). On September 4, 2020, Defendants filed their response, informing Plaintiffs and the Court that ED has used four templates for Denial Notices. ECF No. 116. Defendants also stated that **"[t]he Department would not have agreed to clear the backlog of more than 168,000 cases in 18 months if that meant issuing the type of personalized, detailed decisions Plaintiffs now suggest are required**." *Id.* at 3. Finally, Defendants provided the requested statistics, revealing that between April 7, 2020—the date the Settlement was executed—and August 24, 2020, ED had adjudicated approximately 90,000 of these applications and issued approximately 78,400 notices (the rest are in various stages of quality control and processing). All but 4,400 notices were denials. *Id.* at 1.

On Monday, September 15, 2020, Defendants filed an unopposed Motion to Modify the Court's Order Setting Final Approval Deadlines. ECF No. 122. On Wednesday, Sep. 16, 2020, the Court denied the Defendants' motion, ordering that the October 1, 2020 Fairness Hearing shall proceed as scheduled, but any "motions other than a joint motion for final approval will be heard on a standard 35-day track." ECF No. 123 at 2.

## III.    LEGAL STANDARD

### A.    Motion for Final Approval

"A district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-9 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). The district court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Id.* Rule 23(e) requires that the Court consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate…; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(B)(2). The Ninth Circuit has identified additional relevant factors to consider in determining fairness, including "the strength of the plaintiffs' case; the risk, expense,

3

complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1026-27 (9th Cir. 1998).

Final Approval of a class action settlement is within the Court's discretion: "Whether or not there are objectors or opponents to the proposed settlement, the court must make an independent analysis of the settlement terms." *See Manual of Complex Litigation* at 309-310, § 1.16; *see also Free Range Content, Inc. v. Google, LLC*, 2019 U.S. Dist. LEXIS 47380, *28-30 (N.D. Cal 2019) (overruling class member objections and granting final approval).

**B.     Motion to Enforce**

The Settlement Agreement is a binding contract. *See* Cal. Civ. Code § 1550.   The interpretation of the Agreement is governed by state contract law, even though the settled litigation is in Federal Court. *See Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993) (internal citation omitted); *see also West v. State Farm Fire & Cas. Co.,* 868 F.2d 348, 350 (1998) (applying California substantive law in breach of contract action); *see also Ambat v. San Francisco*, 2011 WL 2118576, at *2 (N.D. Cal. May 27, 2011) ("Under California law, the goal of contractual interpretation is to give effect to the mutual intention of the parties.") (internal quotations omitted).

This Court has inherent power to enforce the Agreement, notwithstanding that Final Approval has not yet been granted.  *See, e.g.*, *Schaffer v. Litton Loan Servicing LP*, 2012 WL  at *1 (C.D. Cal. Nov. 13, 2012); *see also Callie v. Near*, 829 F.2d 888, 890-1 (9th Cir. 1987) ("A district court has the equitable power to enforce summarily an agreement to settle a case pending before it"; a settlement is enforceable if it is "complete"); *see also Adams v. Johns–Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (A "motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract") (citation and internal quotation marks omitted).

When deciding a motion to enforce, a court may "hear evidence and make factual determinations." *Fair Hous. Council of Cent. Cal., Inc. v. Tylar Prop. Mgmt. Co.*, 975 F. Supp. 2d 1115, 1118 (E.D. Cal. 2012); *see also Ambat*, 2011 WL 2118576, at *2 ("The mutual intention of

4

the parties is determined by examining factors including the words used in the agreement, the surrounding circumstances under which the parties negotiated or entered into the contract, and the subsequent conduct of the parties.") (internal citations omitted).  A court "may order compliance with a settlement agreement in light of evidence of a party's non-compliance." *Bd. of Trustees of Laborers Vacation-Holiday Tr. Fund for N. California v. Lopez*, 2018 WL 2117336, at *2 (N.D. Cal. May 8, 2018) (Ryu, J.); *see also Fisher v. Biozone Pharm., Inc.*, 2017 WL 1097198, at *1 (N.D. Cal. Mar. 23, 2017) (granting a motion to enforce and ordering the plaintiff to fully comply with specific terms of the settlement agreement).

Thus, if this Court determines that the parties entered into a valid Agreement, but that the Defendants are now in breach, it should order specific performance under the contract so that the class-wide impact of the breach is remedied.

## IV.   ARGUMENT

### A.    The Court Should Order Final Approval of the Settlement Agreement.

This Court should grant final approval to the Agreement because it is fair, reasonable, and adequate.  When this Court preliminarily approved the Agreement, it carefully analyzed the factors under Rule 23(e)(2) and concluded that the settlement was adequate. ECF No. 103 at 4.  All applicable factors continue to weigh in favor of approval.

#### 1.    The Binding Agreement Between the Parties is Fair and Reasonable.

First, negotiations were conducted at arm's length. As the Court concluded in its Preliminary Approval Order, the Settlement is the product of serious, non-collusive negotiation. ECF No. 103 at 3.  Further, formal, in-person settlement negotiations were undertaken in the presence of Magistrate Judge Ryu on January 31, 2020 and later by phone, which led to the present Settlement. A settlement process overseen by a court-appointed mediator weighs in favor of approval. *Rosales v. El Rancho Farms*, No. 1:09-CV-00707-AWI, 2015 WL 4460635, at *16 (E.D. Cal. July 21, 2015), report and recommendation adopted, 2015 WL 13659310 (E.D. Cal. Oct. 2, 2015).

Second, the quality of relief to the class weighs in favor of final approval. As confirmed by the Court in its Preliminary Approval Order, the Settlement secures strong relief for class members in the form of the 18-month timeline, effective enforcement in the form of loan discharges, and extensive reporting requirements. ECF No. 103 at 2-3. These are favorable to the class when weighed against the uncertain outcome of continued litigation. Under the Agreement, class members will receive a final decision within 18 months of the Effective Date. Furthermore, the breach and reporting provisions provide relief to the class that they would not have obtained in litigation. *See* Agreement §§ V.B.1-4.

Third, the class representatives and class counsel have continued to adequately represent the class, including by moving to enforce the Agreement in light of Defendants' breach of the Agreement's requirement that ED provide Denial Notices in accordance with the law.  The class representatives have been involved in and appraised of each stage of litigation. All class representatives understand the terms of Agreement, and support the present motion for Final Approval and to enforce the Agreement.

Fourth, continued litigation would entail further delay, risk and cost.  *See Munoz v. Giumarra Vineyards Corp.*, 2017 WL 26605075, at *9 (E.D. Cal. June 21, 2017) ("Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'") (internal citation omitted). Although Plaintiffs have made strong legal and factual arguments over the course of this litigation, this case involves novel legal theories. As with any complex litigation, continued litigation thus carries the inherent risk of an unfavorable outcome for Class Members. Likewise, continued litigation would necessarily cause further delay, with corresponding financial cost, in a case that has been centered on ED's failure to issue timely final decisions. The Agreement as negotiated thus expeditiously resolves the pending backlog of claims in favor of a set timeline, and

assures that a remedy is available in the form of loan discharge for class members in the event of a breach of the timing provisions.

Fifth, the Agreement treats all Class Members fairly. As set forth in the Motion for Preliminary Approval, all class members are treated equally under the Settlement. ECF No. 103. All class members who have not received a decision will receive a final decision within 18 months of the Effective Date. Class members who ED has already determined as eligible will receive a decision within 3 months.

The Settlement is also adequate under the additional factors identified by the Ninth Circuit in *Hanlon*, 150 F.3d 1011 (9th Cir. 1997). First, the recommendations of Plaintiffs' counsel are given a presumption of reasonableness. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008). Class counsel have significant experience in federal student loan law and complex class-action litigation and are confident that the Agreement as negotiated is fair, reasonable, and adequate.  Second, the stage of the proceedings and extent of discovery favor settlement, because both parties have engaged in extensive briefing, including cross class certification motions and cross motions for summary judgment. Moreover, the Administrative Record has been developed to a sufficient degree for parties to make an informed decision about settlement. Third, ED is a government participant, which weighs in favor of final approval. *See San Francisco NAACP v. San Francisco Unified School District*, 59 F. Supp. 2d 1021, 1031-32 (N.D. Cal 1999)).

### 2.      Adequate Notice was Provided.

Adequate notice was provided to Class Members regarding the settlement terms in accordance with the plan set out the Preliminary Approval order and the Court's Order Directing Notice. ECF No. 103 at 3, ECF No. 105 at 1-2. Class notice was distributed by first class mail and email, and information was posted on Studentaid.gov, class counsels' websites, and by legal aid organizations. The amount of correspondence received by the Court and class counsel further

demonstrates that class notice was widely received, and will result in testifying objectors during the October 1, 2020 Fairness Hearing.  *See* Connor Dec. ¶¶ 2-5.

### 3.     Final Approval Should be Issued Notwithstanding Class Members' Objections.

Though the Court received twenty-five objections, these ultimately reflect on the Defendants' unlawful conduct, rather than opposition to the Agreement itself.  *See* Plaintiffs' Resp. to Objections to the Preliminary Settlement Agreement. Sep 17, 2020, ECF No. 128.  The objecting class members expressed concern that the Agreement was not punitive enough of ED, that the Agreement's timeline was too lenient, or that ED was not acting in good faith. *Id.* However, though the objectors bring up important points about ED's conduct, their objections do not call into question the overall fairness of the Agreement, and this Court may enter Final Approval notwithstanding them. *See, e.g.*, *Free Range Content*, 2019 U.S. Dist. LEXIS 47380 (N.D. Cal 2019).

Given the foregoing, this Court has discretion to enter Final Approval of the Agreement notwithstanding that the parties are not moving jointly.  ED's failure to comply with the terms of the Agreement, as detailed in the following section, do not change the underlying fairness of the Agreement. Put another way—just because one party is in breach does not mean that the Agreement was not fair, reasonable, and adequate pursuant to Rule 23.

### B.     The Court Must Order the Defendants to Comply with the Terms of the Settlement Agreement.

The Settlement Agreement is a valid and enforceable contract. Defendants are in breach of that contract because the Denial Notices they have issued since execution of the Agreement— which they represent are consistent with the form they will use going forward—do not comply with the law. The issue at hand is *not* that Defendants and Plaintiffs have failed to have a meeting of the minds about a contractual term, but rather that the Defendants are failing to perform their obligations under the Agreement and the law. As such, Plaintiffs ask the Court to enforce the

8

Agreement. Defendants cannot credibly claim that they did not know that the Agreement meant they would have to follow the law, and they should be ordered to comply.

### 1. The Form Notices Are Not Compliant with the Settlement Agreement.

The parties negotiated the Settlement Agreement at arm's length. The Settlement Agreement requires Defendants, within 18 months of the effective date (which occurs following final approval), to issue "final decisions" and "provide each Class Member written notice of such final decisions." Agreement § IV.A.  A decision, and notice thereof, is "final" under the settlement even if a class member seeks reconsideration or judicial review. *Id.*  Defendants now make the stunning claim that "the Department would not have agreed to clear the backlog of more than 168,000 cases in 18 months if that meant issuing the type of personalized, detailed decisions Plaintiffs now suggest are required." ECF. No. 116 at 4.  It is not Plaintiffs "suggestion," but rather the Defendants' own regulations that dictate the requirements of denial notices.  Indeed, the Agreement contains Defendants' assurance that ED will issue decisions in accordance with its regulations, which themselves are written against a backdrop of the Administrative Procedure Act and Due Process. *See* Agreement, § IV.C ("Defendants Assurances"). But the Defendants are in breach.

### a) Deficiencies under the Administrative Procedure Act

Under the Administrative Procedure Act, 5 U.S.C. § 555(e), Defendants must provide "prompt" notice of a denial "accompanied by a brief statement of the grounds for denial." Section 555(e)'s "brief statement" requirement mandates that the agency explain the reasons for the denial. *See Butte Cty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("The agency's statement must be one of 'reasoning'; it must not be just a 'conclusion'; it must 'articulate a satisfactory explanation' for its action") (quoting *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001); *see also Butte Cty.*, 613 F.3d at 195 ("Reasoned decision[-]making [under § 555(e)] is not a procedural requirement. . . . It stems directly from § 706 of the APA.").

ED's Form Denial Notice (ECF No. 116-4 (Exhibit D, "Form Notice D")), which ED began using after the Settlement Agreement was executed (ECF No. 116 at 3), includes a space where the Defendants are meant to insert "Review Recommendation Reason."  ECF No. 116-4 at 2.

Based on the hundreds of Denial Notices counsel for Plaintiffs have reviewed (*see* ECF No. 108-2 at 2-3), it appears that ED has simply plugged in undefined, vague, conclusory, and boilerplate responses into the Denial Notices based on Form Notice D, including: "failure to state a legal claim," "failure to state a legal claim under borrower defense regulation," "insufficient evidence," "outside coverage date," and "other."  ECF No. 108 at 3. These are mere phrases, not "reasons," and they do not "articulate a satisfactory explanation." *Butte Cty.*, 613 F.3d at 194. The Denial Notices at issue here are resolutely *not* self-explanatory, despite the legal requirement that they must do more than just convey an outcome. *See* 5 U.S.C. § 555(e) ("Except…when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for the denial.").  Further, ED does not even bother to identify the applicable law—much less the legal standard—it employed when making its decision. The Form Denial states that the claim was decided under state law, but the Denial Notices are largely silent as to *which* state law ED used to evaluate the merits of the claim.  This is critical, yet missing, information.  Indeed, Defendants opposed certification of the class because "standards of eligibility applicable among the proposed class will differ" as a result of a necessary, "time-consuming analysis to determine which state's law applies to a particular borrower's claim and whether the applicable law would support the borrower's eligibility." Defs' Opp'n to Class Cert., ECF No. 38 at 22; *See also* Defs' Mem. in support of Summ. J., ECF No. 63 at 23 (adjudicating claims under state law standard "necessarily involves a legal analysis of what state law applies to a given application and whether evidence provided by the borrower establishes a cause of action under the applicable standard.").  *See Amerijet Intern., Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (An agency response that "merely parrot[s] the language of the standard" of review is "not a statement of reasoning, but of conclusion[,]" and thus violates the APA) (cited in *State of California v. U.S. Dep't of the Interior*, 381 F. Supp. 3d 1153, 1169 (N.D. Cal. 2019)).

The Denial Notices that insert the phrase "insufficient evidence" as the "Review Recommendation Reason" in Form Notice D are likewise inadequate, leaving the borrower with no understanding of what evidence was reviewed, let alone deemed insufficient and why. Such

bare-bones notices have repeatedly been rejected by courts. For example, a letter from an agency alerting a claimant that its application was "not adequately supported," is an insufficient legal conclusion, and not the required "statement." *Tourus Records*, 259 F.3d at 737. ("[The denial] does not 'articulate a satisfactory explanation' for the agency's action . . . because it does not explain "why" the [agency] regarded [the petition] as unsupported."); *see also Dickson v. Secretary of Defense*, 68 F.3d 1396, 1404-05 (D.C. Cir. 1995) (agency may not employ "boilerplate language" and its explanation must "minimally contain 'a rational connection between the facts found and the choice made'") (internal citations omitted).

The experience of class member Yvette Colon is instructive. Ms. Colon received a Denial Notice on July 2, 2020. ECF No. 108-16 at 183. This communication is an example of Form Notice D. *See* ECF No. 116-4 (Ex. D).  Ms. Colon attended Sanford Brown in New York. She applied for a borrower defense on March 9, 2015. ECF No. 108-16 at 1, 5. Her application is 175 pages long and was submitted by her attorneys. Sanford Brown misrepresented its accreditation status to Ms. Colon and induced her to enroll under the false pretense that the course of study would enable her to become a licensed sonographer. This was a violation of New York state consumer protection law. Ms. Colon qualified for, and received, restitution pursuant to an Assurance of Discontinuance entered into between the Attorney General of New York and the parent company of Sanford Brown, Career Education Corporation. ECF No. 108-16 at 32.  The Denial Notice states that, for each one of her contentions, she had supplied "insufficient evidence." ECF No. 108-16 at 184-85. Such form responses give a borrower no clue about the supposed deficiencies of the application, or whether any evidence was actually reviewed, *see* ECF No. 108-16 at 2-3 (Aff. of Yvette Colon) ("I am unsure of what additional information I could possibly submit since I submitted so much in my application. I also cannot tell what evidence I submitted was considered and was found to be deficient, or why it was deficient.").  This is legally deficient. *See Meadville Master Antenna, Inc. v. F.C.C.*, 443 F.2d 282, 290 (3d Cir. 1971) ("[I]f there are fatally defective weaknesses in the evidence offered by petitioner, the Commission must disclose the nature of the defects. It must

state with specificity its objections to the showing made by petitioner and not rely on conclusory and undefined terms….").

The "outside coverage date" phrase also fails to convey a reasoned decision. ED has established "windows" of presumptive eligibility based on program, campus, and dates of attendance for certain former Corinthian students. But the fact that some borrowers' applications will be granted is no basis for ED to deny applications for borrowers who fall outside such "windows" without reviewing the evidence presented.[2]  Such borrowers are still entitled to a decision on the merits of their individual application. And, nowhere in the decision are the applicable "coverage dates" explained or disclosed.  *See, e.g.*, ECF No. 108-3 ¶ 14 (Wright Aff.).

Likewise, "other" as the "Review Recommendation Reason" underscores the bald inadequacy of these notices. *See Higgins v. Spellings*, 663 F. Supp. 2d 788, 797-98 (W.D. Mo. 2009) (finding denial notices inadequate because "the plaintiffs did not meet the definition of 'total and permanent disability for the following reason: medical review failure.' The claims were denied for 'medical review failure,' but the term is not defined in the letter."). It is beyond imagining that a borrower could make any reasonable sense out of ED's denial when their only notice about the reason for the decision is "other."

### b)  Deficiencies Under Due Process

Defendants are in breach of the Agreement because the Denial Notices deprive class members of their constitutionally-protected property interest without due process of law. Specifically, members of the class, like all federal student loan borrowers, have a right to seek cancellation of their loans because of school misconduct, and the Defendants have an obligation to consider those borrower defenses.  *See Class Cert. Order* (ECF No. 46 at 12 (referring to

---

[2] ED has noted that a school's misconduct is "not relevant" if a student attended outside such "windows." *See* Davis Letter, ECF No. 108-2 at 9-10. Although ED also claims to leave open the possibility that a student could "on its own provide sufficient evidence," ED's denial notices for students who are outside coverage windows gives *no indication* that any individual evidence was reviewed or considered, and provides them with no basis to determine what additional evidence they could submit. *See* ECF No. 108-3 ¶ 14 (Wright Aff.).

Defendants' "obligation to process borrower defense claims"). While an application is pending, members of the class are protected from collection. 34 C.F.R. § 685.222(e)(2) ("Upon receipt of a borrower's application," the Secretary "grants forbearance" on non-defaulted student loan accounts and, for defaulted loans, "suspends collection activity until the Secretary issues a decision on the borrower's claim"); *see also Williams v. DeVos*, 2018 WL 5281741 (D. Mass. Oct. 24, 2018) (vacating Secretary's certification of defaulted student loan debts for collection through Treasury offset where certification issued prior to resolving borrower defense application). Plaintiffs therefore have a property interest in uninterrupted loan forbearance—the right to be free of collection while they contest their debt. *See Nozzi v. Housing Auth. of Los Angeles*, 806 F.3d 1178, 1191 (9th Cir. 2015) ("Nozzi II") ("[P]laintiffs have a property interest to Section 8 Benefits to which the procedural protections of due process apply.") (citing *Ressler v. Pierce*, 692 F.2d 1212, 1215–16 (9th Cir.1982)); *see also Bd. of Regents of State Colleges et al., v. David F. Roth*, 408 U.S. 564, 576 (1972) ("[A] person receiving ... benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process.").

Once a property interest attaches, the next step in the analysis is to determine what notice due process requires. *See, e.g., Town of Castle Rock v. Gonzales*, 545 U.S. 748, 792 (2005). The clear answer is that due process requires much more than Defendants have provided here. As a guiding principle, "[i]n order to be constitutionally adequate, notice of benefits determinations must provide claimants with enough information to understand the reasons for the agency's action." *See Kapps v. Wing*, 404 F.3d 105, 123–24 (2d. Cir. 2005). Courts are charged with looking at "the nature of the interest that will be affected," the "fairness and reliability" of the existing procedures, and "the public interest," which includes the "administrative burden" of additional safeguards. *Nozzi II*, 806 F.3d at 1193; *see also id.* at 1192 ("[I]n analyzing the plaintiffs' due process claim, we do not address whether the Housing Authority complied with the requirements of [the Code of Federal Regulations], but whether the Housing Authority complied with the requirements of the due process."). Here, the Denial Notices thrust borrowers back into collection,

13

without giving them any reasonable clue about the merits of that determination or what they can do to challenge it.  *See* ECF 116-4 at 3 (Form Notice D) ("Because your borrower defense to repayment application was found to be ineligible, you are responsible for repayment of your loans. ED will notify your servicer(s) of the decision…within the next 15 calendar days").  If ED were actually making these decisions on the merits, logic dictates that the reasoning for the decision would then be available and ED could share that reasoning with borrowers. ED's refusal to share with borrowers the reasoning behind its decisions violates due process.  *See Nozzi II*, 806 F.3d at 1994 ("To be constitutionally adequate, notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties ... with due regard for the practicalities and particularities of the case[.]'") (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Finally, the Denial Notices do not provide any information for class members about their ability to challenge the decision in District Court. This lack of notice is puzzling, to say the least. First, these denials are unquestionably reviewable as final agency actions under the APA. Such review was contemplated by the Agreement itself, as the release provision at § VII carves out "claims based on the substance of…borrower defense decisions." An operating premise of this Court's Preliminary Approval of the Settlement Agreement was that the scope of the release was fair because it "does not compromise the substance of class members' borrower defense claims" because members "retain the right to sue over the Department's final disposition." ECF No. 103 at 3. *See also* CMC Trans. at 16:15-22 (Connor Dec. Ex. 1) (expressing the underlying assumption that "each individual claimant" may "get a ruling in their district").

### c)       Deficiencies Under Department Regulations

Further, Defendants are in breach of the Agreement because the Denial Notices run afoul of Department regulations, which require that the Secretary "designate a Department official" to "resolve the [borrower defense] claim through a fact-finding process." 34 C.F.R. § 685.222(e)(3).  In the event the ED Official denies the claim after a fact-finding process, "the Department Official notifies the borrower of the reasons for the denial, the evidence that was

relied upon," and "also informs the borrower of the opportunity to request reconsideration." 34 C.F.R. § 685.222(e)(4)(ii).  The notices are not from an Official, but from "U.S. Department of Education, Federal Student Aid." *See* Borrower Affs. attached to ECF No. 108.  And the templates suggest that someone, possibly a contractor, (*see* ECF No. 56-4 at 5-8, Nevin Dec.) inserts a "Review Recommendation Reason," which is not the conclusion of a Department Official's factfinding process. *Cf.* 34 C.F.R. § 685.222(e)(5) ("decision of the Department official is final as to the merits of the claim").

With respect to the regulation's requirement that the notices "inform the borrower of the opportunity to request reconsideration," the Denial Notices do mention reconsideration but, as a result of the deficiencies noted above, they are utterly meaningless. *See Higgins*, 663 F. Supp. at 798 (finding a notice inadequate in part because it "fails to apprise the applicant on how to proceed after receiving the denial"). ED's applicable regulations state:

> "(i) If the borrower defense is denied in full or in part, the borrower may request that the Secretary reconsider the borrower defense upon the identification of new evidence in support of the borrower's claim. ''New evidence'' is relevant evidence that the borrower did not previously provide and that was not identified in the final decision as evidence that was relied upon for the final decision…" 34 C.F.R. 685.222 (2016 Borrower Defense Regulations).

However, the form notice does not specify that the evidence presented for reconsideration must be "new" (ECF No. 116-4).  Rather, it directs class members to "identify and provide any evidence" supporting their claim, and to state "Why you believe that ED incorrectly decided" the application. ECF 116-4 at 3 (Form Notice D).  But the Denial Notices do not provide borrowers with any information that would allow them to determine which evidence was reviewed and what additional evidence would aid in the reconsideration process, or what would be considered "new." Incredibly, when a borrower asked ED what evidence was considered, ED instructed the borrower to file a FOIA request because the Borrower Defense Unit ("BDU") does not have the evidence. ECF No. 108-15 (Sean Doe Aff., Ex. D (June 30, 2020 E-mail from BDU to Mr. Doe) ("Our office does not have access to the documentation, we just have access to the letter that was sent to you. If you wanting [sic] that information you would need to fill out a Freedom of Information Act [sic] at FOIA.gov.")). ED's response is puzzling given Defendants' earlier statement that it was BDU

15

1    itself that was making decisions on the merits of borrowers' claims. *See* ECF No. 56-4, Nevin Dec.

2    at ¶ 4.   ED's practice of withholding the evidence considered from applicants further underscores

3    the lack of any connection between the evidence and the decision to deny an application, and

4    suggests that the Defendants' failures not only violate the notice requirements of the APA, but

5    their obligation to decide the applications "on the merits" in the first place.   That lack of

6    information and transparency renders the reconsideration process as functionally meaningless as

7    the initial denial notices themselves.

8                    **2.      Defendants Are Not Dealing in Good Faith.**

9            Plaintiffs did not anticipate that Defendants would perform their obligations under the

10   Agreement in such blatant disregard of the law.[3] Even if it were rational to charge Plaintiffs with

11   such notice, counsel for Plaintiffs were *not* aware of the inadequate form of Form Notice D at the

12   time the settlement was executed.   *See* Connor Dec. ¶¶ 5-10, *see also* CMC Trans. at 13:8-15:9,

13   (Connor Dec. Ex. 1); *see also* Pls' Mot. to Supp. Record, ECF No. 66 at 10 (Dec. 23, 2019) (noting

14   the fact that declaration of Diane Auer Jones discussed denial letters but did not provide a sample

15   to clarify which information would be included in letters).   Defendants' only support for their

16   assertion that Plaintiffs were on notice is a January 9, 2020, Declaration stating that ED had denied

17   15,256 claims. ECF No. 116 at 2.

18           But Defendants repeatedly led Plaintiffs, and the Court, to believe that they had yet to reach

19   borrower defense claims supported by substantial evidence. *See* Defs' Mem. in support of

20

21   _____

22   [3] Under California law, an illegal contract is void and unenforceable. *Liu v. Ka San*, 2014 WL
     12589340, at *8 (C.D. Cal. Dec. 22, 2014) ("A contract is 'not lawful' if it is '[c]ontrary to an
23   express provision of law; [c]ontrary to the policy of express law, though not expressly prohibited;
     or[ ] [o]therwise contrary to morals.'") (quoting Cal Civ. Code §1667).   The heart of the
24   Agreement is a deadline for resolving borrower defense claims of class members on the merits, and
     informing each individual of its decision. Defendant's performance in this regard plainly
25   manifests an interpretation of the law that would render the contract void. Plaintiffs would not
     have entered into an unenforceable contract, and should in no way have expected that Defendants
26   would do so.

27

28
                                                      16

Summary Judgment, ECF No. 63 ("The BDU is currently prioritizing its limited resources on the streamlined JPR claims and applications that are likely to be denied."); Transcript of Feb. 20, 2020 Motion for Summary Judgment Hearing at 16:18-24 ("MSJ Trans.") (Connor Dec. Ex. 2) (ED did not yet have the capacity to complete "the research that is necessary with respect to the large volume of evidence of wrongdoing the Department has before it, related to certain schools, and the analysis of applicable law, whether it's state law...."). This was because, in light of its blanket policy to abdicate decisionmaking on borrower defenses, it lacked the staff, resources, and will to investigate those claims. Indeed, ED confirms that it only began using the kind of notice found in Form Notice D *after* the settlement was executed. ECF No. 116 at 4. Although this notice is similar to Exhibit C, which was used prior to execution (and of which counsel for Plaintiffs saw only a handful prior to execution), the Form Notice D template calls for an insertion of a pre-set list of "Evidence Considered" that pertains to the borrower's primary school. In other words, this form was used to issue denial notices to students who attended schools for which ED was aware of at least *some evidence*, independent of the borrower's application, that could support claims of unlawful conduct. ECF No. 116 at 3-4 (template is for "non-Corinthian borrowers who attended schools for which the Department does have common evidence in its posession").

At the time they entered the Agreement, counsel for Plaintiffs was under the impression that ED had not yet reached the applications of borrowers who attended schools where there was evidence of misconduct. ECF 56-4 at ¶ 68, Nevin Dec. (asserting BDU "has not had available staff to complete that work and proceed to adjudicate the applications of borrowers who attended schools where ED had evidence of misconduct, citing specifically ITT, DeVry, and Brooks Institute (a Career Education Corporation school)); *see also* MSJ Trans. at 15:1-7 (Connor Dec. Ex. 2) (ED was "focused on claims it can...more easily deny because the borrower...does not present any evidence and does not come from a school about which the Department already has a lot of information regarding the wrongdoing[.]"). Indeed, the Administrative Record contains only protocols for the review of applications of "borrowers who attended school for which BDU is not aware of relevant evidence from the Department or other sources such as law enforcement

partners." ECF No. 56-4 ¶ 41 (Nevin Dec.). Thus, counsel for Plaintiffs were under the "impression that the denial notices referenced in the January declaration concerned only bare-bones applications that presented "scant evidence," or applications from borrowers who did not in fact have federal student loans. ECF 56-3 ¶ 26  (Dec. of Diane Auer Jones) ("In some cases, the Department has determined that the borrower's claim for a discharge is not supported by the evidence submitted by the borrower or information otherwise available to the Department. For example, in some instances, the Department has determined that the borrower actually did not have a Federal loan…. In other instances, the borrower provided such scant information that the Department simply lacked a basis for making a determination favorable to the borrower. The Department has been working to develop documents to provide a more robust explanation for borrowers whose claims are denied."); *see also* ECF No. 63 at 16 (citing ECF 56-4, Nevin Dec.) (ED is "currently prioritizing its limited resources on the streamlined [Corinthian Job Placement Rate] claims and applications that are likely to be denied"). And, the denial notices that correspond to these claims, ECF No. 116-3, are explanatory and identify the relevant state law guiding the decision.

Only after the execution of the Agreement did counsel for Plaintiffs become aware that ED was issuing denials, in such cursory form, on applications from borrowers who attended schools with evidence of serious misconduct (and whose applications indicated that they experienced such misconduct). Schools for which ED has used Form Notice D include those owned by Career Education Corporation, *see* ECF No. 108-6 (Aff. of Charlene Espada, denial notice dated July 1, 2020); DeVry, *see* ECF No. 108-5 at 45 (Aff. of Benjamin Thompson, denial notice dated June 25, 2020);[4] Education Management Corporation, *see* ECF No. 108-11 (Aff. of Jessica Jacobson,

---

[4] ED's DeVry template inserts "Evidence obtained by the Department in conjunction with its regular oversight activities" and "Federal Trade Commission (FTC)" as evidence considered. ECF No. 108-5 at 46-47; ECF No. 108-10 at 24.

18

denial notice dated Aug. 11, 2020);[5] University of Phoenix, *see* ECF No. 108-12 at 15 (Aff. of John Long, denial notice dated May 20, 2020);[6] and ITT Technical Institute, *see* ECF No. 108-13 at 20 (Aff. of Roland Cardoza, denial notice dated June 10, 2020).[7] These large school chains represent a large portion of borrower defense applications, *see* Compl., ECF No. 1 ¶ 188 (listing twenty schools with large portions of the pending Borrower Defense Applications).  The three Named Plaintiffs in this action who have received denials received them, in the form of the sample of Form Notice D, after the settlement was executed. *See* ECF No. 108-11 (Jessica Jacobson, Aug. 11, 2020); ECF No. 108-8 at 9 (Daniel Deegan, May 7, 2020); and the July 8, 2020 Affidavit of Theresa Sweet (Connor Dec. Ex. 3).

Yet, Defendants continue to maintain that ED has only adjudicated and denied applications whose patent inadequacies are easy to detect. *See* Davis Letter, ECF No. 108-2 at 9-10; ECF No. 116-2.  This is not plausible. The timing suggests that the Defendants waited until after Plaintiffs

---

[5] ED cites as common evidence supporting its Education Management Corporation denials "IA Attorney General's Office; IL Attorney General's Office; CO Attorney General's Office; Evidence obtained by the Department in conjunction with its regular oversight activities; Senate Hearing Testimony of EDMC career services adviser before the Committee on Health, Education, Labor, and Pensions (September 20, 2010), Materials, including publicly available securities filings, prepared by Education Management Corporation." ECF No. 108-11 at 6 (Jacobson Aff.).

[6] ED cites as common evidence supporting its University of Phoenix denials "1. Federal Trade Commission (FTC); 2. IA Attorney General's Office; 3. Evidence obtained by the Department in conjunction with its regular oversight activities; 4. Publicly available records relating to *US ex rel. Green v. Univ. of Phoenix*, No. 14 001654 (N.D. Oh. April 29, 2019); 5. Materials compiled by non-profit group, Veterans Education Success (VES); 6. Publicly available securities filings made by University of Phoenix's parent company, Apollo Education Group." ECF No. 108-12 at 16 (Long Aff.).

[7] ED cites as common evidence supporting its ITT denials "Consumer Financial Protection Bureau (CFPB); Evidence obtained by the Department in conjunction with its regular oversight activities; IA Attorney General's Office; MA Attorney General's Office; NM Attorney General's Office; Transcript of Testimony of ITT Tech Recruiter before the National Advisory Council on Institutional Quality and Integrity (NACIQI) (June 23, 2016); Materials complied by ITT Tech's accreditor, the Accrediting Council for Independent Colleges and Schools (ACICS); Materials compiled by non-profit group, Veterans Education Success (VES); Materials prepared by ITT Educational Services, Inc." ECF No. 108-13 at 21 (Cardoza Aff.).

entered the Agreement to issue facially deficient notices to a majority of the class, at a rate of speed that defies belief given ED's earlier claims to not even having started its review of these borrowers' evidence. Plaintiffs initiated this lawsuit to force ED to restart its adjudication process. But a good faith process means a fair review of evidence in a process that at least allows for the possibility that an application will be granted. 20 U.S.C. § 1087e(h) (Secretary "shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment…").  Here, the conveyor belt has been restarted, at a fast clip,[8] moving applications along to a certain, adverse, outcome.[9]  Only approximately 5 percent of the 78,400 notices ED has issued since the Agreement were *not* denials. ED speculates that the ratio of approvals to denials "could increase" over the remaining 75,000 applications covered by the agreement. ECF No. 116 at 3. But any such optimism is unfounded, because ED has not "develop[ed]…eligibility criteria," (ECF No. 116 at 3), beyond those categories that existed prior to the blanket policy to cease granting and denying applications challenged in this lawsuit. *Accord* Davis Letter, ECF No. 108-2 at 9-10 (ED has established a category of eligible borrower defense claims, and made "Step 1" determinations of eligibility only for Corinthian and ITT). And, the list of schools for which ED has already denied claims—"schools for which [the Borrower Defense Unit] is not aware of any evidence that would support approval" is lengthy. ECF No. 116 at 3; *see also* Davis Letter, ECF No. 108-2 at 9-10, *see also* ECF No. 108-2 at 13-24.

The deficiencies in the notices themselves suggest a problem in the underlying process. Either Defendants are not making decisions on the merits of borrower defense claims, or they are,

---

[8] *See* ECF No. 108-12 at 1 (John Long Aff.).   Mr. Long submitted his Borrower Defense Application in March 2020 and received a Denial Notice ten weeks later, on May 20, 2020.

[9] ED reports that since December 2019, it has granted 13,500 applications. ECF No. 116 at 2. *In so doing, it has applied relief criteria established prior to the across-the-board halt in borrower defense processing that is the subject of this lawsuit.* It has not granted borrower defense applications to anyone other than those who qualified under existing protocols developed for students of Corinthian Colleges and those who attended ITT in California. Davis Letter, ECF No. 108-2 at 9-10.

20

but are choosing to obscure the exact nature and rationale of those decisions.[10]  Either way, they are not acting in good faith. *See Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999) ("The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith."). Plaintiffs brought this Action so that ED would restart the decisionmaking "conveyor belt." *See* ECF No. 1 (Compl.) at 61, Prayer for Relief E ("Vacate the Department's policy of refusing to grant borrower defenses…").  But now, after the Agreement, ED has restarted the "conveyor belt," such that every application runs into a buzzsaw at the end of the belt. Borrowers are left only with cryptic, bare Denial Notices that give them no clue as to what evidence was reviewed or considered – an unfair bait-and-switch.

### 3.    Enforcement of the Settlement Agreement is the Appropriate Remedy.

This Court should enforce the Settlement Agreement because enforcement as a remedy would affect the whole class, rather than resulting in a situation where individuals must challenge the sufficiency of their Denial Notices on an *ad hoc* basis.  Indeed, ordering specific performance of the Agreement is the only way to ensure that the Agreement is fair and reasonable for the Class. Defendants have eighteen months to issue these decisions. If ED cannot issue lawful denial notices in that time frame, they could comply with the terms of the Settlement Agreement by granting the backlogged Borrower Defense Claims, because the laws and regulations governing what information must be included in a notice apply only to the denial of the application.  *See, e.g.,* APA § 555(e); *see supra* § IV(B)(1)(a).

It is clear that ED's templates are the exclusive means by which members of the class receive explanations of ED's resolutions of their borrower defense claims. *See* ECF No. 116-1-4. There are no other, more reasoned decisions that ED has issued or intends to issue to class members. And, as elucidated above, the Denial Notices as they stand violate the law and

---

[10] It is the investigation and decision-making itself, presumably, that is the difficult and time-consuming part of the adjudication. ED's notices need only convey something of the fruits of that already-completed work.

Defendants are in breach of contract.  Thus, if the Settlement Agreement is not enforced, ED will presumably continue to issue denials without the required notice, and thus continue to be in breach of the Agreement.

The Agreement binds each and every class member to release "any and all claims, causes of action, motions, and requests for any injunctive, declaratory, and/or monetary relief alleged in this Action against Defendants through and including the Effective Date." Agreement § VII. It has a carve out, which applies only to "any claim based on an act or omission or other conduct occurring after the Effective Date." But this relief would not help the approximately 75,000 class members who have already received these denials, or any class member who receives a denial between now and the Effective Date. Thus, without specific performance, class members would be treated differently from one another.

Additionally, and as addressed above, the problem with the Denial Notices is that they do not betray any information about the substantive decision, other than the outcome—denied. A reviewing court could vacate the decision but would have to remand to the agency for it to issue a reasoned decision that could then be reviewed as to its substance. *See, e.g.*, *Homeland Sec. v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891, 1907-1908 (2020) ("[J]udicial review of agency action is limited to the grounds that the agency invoked when it took the action. If those grounds are inadequate, a court may remand for the agency to do one of two things: First, the agency can offer a fuller explanation of the agency's reasoning at the time of the agency action. . . . Alternatively, the agency can deal with the problem afresh by taking new agency action.").  If class members are able to pursue this claim in the face of the release and accompanying covenant not to sue—an uncertainty at best—they will have succeeded in getting themselves back to square one, minus the ability to challenge any ensuing delay on the part of ED, because Defendants would likely assert that those claims are *res judicata* by virtue of the Agreement. They will remain in limbo.

Ordering enforcement of the Settlement Agreement will resolve these issues for this class, which includes those "whose borrower defense has not been granted or denied *on the merits*."

ECF No. 46 at 14 (setting forth class definition that "shall apply for all purposes, including settlement") (emphasis added).

## V.    CONCLUSION

This Class of Plaintiffs have been waiting for decisions on the merits of their Borrower Defense Applications for years. Plaintiffs and Defendants negotiated a Settlement Agreement whereby Defendants agreed to "restart" issuing decisions on the merits within a certain time-frame. But Defendants have breached the Agreement. Instead of issuing lawful Denial Notices that provide Borrowers with even the bare minimum statement of ED's reasoning, the law applied, or what evidence was considered, Defendants have issued *pro forma* Denial Notices that are plainly deficient under the Agreement, the APA, ED's own regulations, and the Constitution. When Plaintiffs raised this concern, Defendants responded essentially that Plaintiffs should not have had any reasonable expectation that Defendants would actually follow the law.

To the extent it is unusual to be moving to Enforce a Settlement Agreement and for Final Approval at the same time, that is entirely Defendants' doing. They negotiated a fair and reasonable Settlement Agreement, only to turn around and issue Notices in blatant noncompliance of that Agreement and the law.  Plaintiffs continue to seek what they have from the beginning of this litigation: the opportunity for thousands of borrowers who have been stuck in limbo to have their claims decided. Defendants agreed to do so, and that Agreement should be Finally Approved and Enforced.

Dated: September 17, 2020

Respectfully submitted,

/s/  *Eileen M. Connor*
Eileen M. Connor

JOSEPH JARAMILLO (SBN 178566)
jjarmillo@heraca.org
CLAIRE TORCHIANA (SBN 293026)
ctorchiana@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES

23

3950 Broadway, Suite 200
Oakland, CA 94611
Tel.: (510) 271-8443
Fax: (510) 868-4521

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL (*pro hac vice*)
tomerrill@law.harvard.edu
MARGARET E. O'GRADY (*pro hac vice application pending*)
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiffs

24