1 | JOSEPH JARAMILLO (SBN 178566)
jjarmillo@heraca.org
2 | CLAIRE TORCHIANA (SBN 293026)
ctorchiana@heraca.org
3 | HOUSING & ECONOMIC RIGHTS ADVOCATES
4 | 3950 Broadway, Suite 200
5 | Oakland, CA 94611
Tel.: (510) 271-8443
6 | Fax: (510) 868-4521

7 | EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
8 | TOBY R. MERRILL (*pro hac vice*)
tomerrill@law.harvard.edu
9 | MARGARET E. O'GRADY (*pro hac vice*)
mogrady@law.harvard.edu
10 | LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL
11 | 122 Boylston Street
Jamaica Plain, MA 02130
12 | Tel.: (617) 390-3003
13 | Fax: (617) 522-0715

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, TRESA APODACA, ALICIA DAVIS, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,     v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | Case No. 19-cv-03674-WHA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO APPROVE AND ENFORCE THE SETTLEMENT AGREEMENT**<br><br>Hearing Date: October 22, 2020, 8 a.m.<br>Honorable William Alsup |

## INTRODUCTION

Defendants' Opposition to Plaintiffs' Motion to Approve and Enforce the Settlement Agreement ("Opp.", ECF No. 140) is rife with mischaracterizations of Plaintiffs' arguments and irrelevant diversions. The Court should look to the Settlement Agreement, Defendants' performance thus far, and the law, which establish that Plaintiffs' Motion should be granted.

Plaintiffs are *not* asking that this Court, now or in the future, to individually decide the merits of any class member's borrower defense claim. Rather, Plaintiffs ask the Court to hold Defendants to their promise to issue "written notice" of "final decisions on any and all Class Members' borrower defense applications" within a certain timeframe. ECF No. 97-2 at § IV(A)(1) (the "Agreement."). "Written notice" is not a negotiated or defined term in the Agreement, because what constitutes written notice is not a matter of contract interpretation, but a matter of law. Agreement, ECF No. 97-2 § IV(C)(i) ("Defendants issue written decisions resolving borrower defense applications and communicate those decisions to borrower defense applicants, as required by the Department's 2016 Borrower Defense Regulations."). Defendants must provide notices that are in keeping with the requirements of the Borrower Defense Regulations, the Administrative Procedure Act, and the Constitution, within a certain timeframe, or else discharge class members' loans. *Id.* § IV(A)(i). Plaintiffs did not, and could not, bargain away the agency's obligation to provide, and their right to receive, legally sufficient decisions.

It is within this Court's power to determine both that there is an Agreement, and that Defendants are presently in breach. Plaintiffs are *not* asking this Court to determine whether the Defendants reached the correct substantive decision on *any* borrower defense claim. Plaintiffs are simply requesting that they get the benefit of their bargain. Defendants cannot be allowed to weasel out of the Agreement by claiming they had no intention of ever following the law. They admit that "[t]he Department would not have agreed to clear the backlog of 168,000 cases in 18 months if that meant issuing the type of personalized, detailed decisions Plaintiffs now suggest are required." Defs.' Response to Plaintiffs' Motion for Case Management Conference at 3, (ECF No. 116); *see also* ECF No. 140 at 24. The Court must say "enough is enough" and hold Defendants to their Agreement.

A. **The Settlement Agreement Is an Enforcable Contract.**

The Parties have a complete an enforceable settlement agreement. Defendants' argument that final approval is a condition precedent to the contract (Opp. at 7) is incorrect. As the Ninth Circuit has recognized, "[j]udicial approval of a [class action settlement] is clearly a condition subsequent, and should not affect the legality of the formation of the proposed [settlement] as between the negotiating parties." *Pilkington v. Cardinal Health, Inc.* (*In re Syncor ERISA Litig.*), 516 F.3d 1095,1100 (9th Cir. 2008) (citing *Collins v. Thompson,* 679 F.2d 168, 172 (9th Cir. 1982)); *see also Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS, 2015 WL 12979110, at *1 (D. Ariz. Aug. 27, 2015) ("[T]he requirement that the district court approve a class action settlement does not affect the binding nature of the parties' agreement.").

Defendants' assertion that the Court does not have authority to enforce the Settlement Agreement pending final approval is also incorrect. *See Adams v. Johns-Manville Corp.*, 876 F.2d 702, 708 (9th Cir. 1989) (a district court is empowered to enforce a settlement agreement through summary proceedings); *Callie v. Near,* 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it," as long as the settlement agreement is "complete."); *see also Schaffer v. Litton Loan Servicing LP*, No. CV 05–07673 MMM, 2012 WL 10274678 at *1 (C.D. Cal. Nov. 13, 2012) (enforcing a Settlement Agreement prior to Final Approval).[1] True, the Court must decide whether the Agreement is fair and adequate. But this additional check is meant to protect absent class

---

[1] The cases cited by Defendants are not relevant. The settlement agreement at issue in *Reid v. I.C. Sys. Inc.* contained a unilateral termination clause that was triggered when the court declined to issue preliminary approval. *See Reid v. I.C. Sys*, 2015 WL 12979110, at *1 (D. Ariz., Aug. 17, 2015). Similarly, the settlement agreement in *Orlando v. Carolina Cas. Ins. Co* specifically contained two condition precedent clauses which were not triggered. *Orlando v. Carolina Cas. Ins. Co.*, No. Civ. A. 07-0092, 2007 WL 2155708, at *5 (E.D. Cal. July 26, 2007). As explained above, final court approval under Rule 23(e) is not a condition precedent.

1   members, not "defendants who misread the law and agreed to an unfavorable settlement offer[.]"
2   *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1095 (6th Cir. 2016). The Defendants agreed to act
3   on borrower defense applications within a definite timeframe, or else cancel the underlying loans
4   in question. The suggestion that they should be relieved from this promise, because they did not
5   ever intend to issue legally adequate decision notices, is "perverse to the aims of Rule 23(e)." *Id.*

6         The Parties have a complete and enforceable Agreement, negotiated in mediation in
7   January 2020, and containing all material terms for which they jointly sought Preliminary
8   Approval and agreed to seek Final Approval (though only Plaintiffs have done so). *See* Plaintiffs'
9   Enforcement Br. at 4-8 (ECF No. 129). Furthermore, Defendants have "bound themselves to the
10  settlement agreement" through the actions taken until now, including by seeking Preliminary
11  Approval and issuing class notice. *Pilkington*, 516 F.3d at 1100; *see also* ECF Nos. 135 and 136
12  (Attestations re: class notice).

### B. The Notices Violate the Settlement Agreement.

The relief Plaintiffs seek is simply to have the Agreement *as written* enforced. On this point, Defendants agree. Opp. at 22 ("Final Approval of the Agreement As Written is Appropriate…"). But Defendants' argument is essentially that because the Agreement does not specify the requisite contents of a notice of decision, they are under no obligation to anything more than convey a bare outcome to each member of the class. This is incorrect. Defendants are ignoring basic tenets of contractual interpretation, and their obligations under the law.

#### 1. The Law Governs What the Settlement Agreement Requires.

As a matter of contract interpretation, the law dictates what Defendants must include in the "written notices" they have agreed to provide to class members. Defendants accuse Plaintiffs of "wish[ing] that [the Settlement Agreement] contained more" (ECF No. 140 at 2), but the issue is that ***the law*** requires more, and ***the law*** governs the terms of the Agreement. *See Info. Sys. & Networks Corp. v. Port of Oakland*, No. C-93-0227 DLJ, 1994 WL 225056, at *6 (N.D. Cal. May 2, 1994) ("Under the canon of contractual interpretation that a contract be interpreted to be of lawful effect…") (citing *O'Brien v. King*, 174 Cal. 769, 775 (1917) ("written contract is to be

given legal effect, and to give it effect the courts must consider it as embodying all the legal obligations implied from its language.")).

Here, as in other instances, the "lawful means necessary to accomplish" a contractual obligation must be read as *part* of the contract. *Info. Sys.*, 1994 WL 225056, at *6. If the Court finds that the Form Denial Notices do not meet a minimum threshold of sufficiency under the Borrower Defense Regulations, the APA, or due process, it will not be "insert[ing] in the contract language which one of the parties now wishes were there" (*id.,* citing *Levi Strauss & Co. v. Aetna Casualty and Surety Co.*, 184 Cal.App.3d 1479, 1486 (1986)), but simply ensuring that Defendants meet their obligations under the Agreement.

### 2. Defendants Cannot Defend the Sufficiency of the Form Denial Notices Under the Law.

Defendants' Opposition is also remarkable because of what Defendants do *not* say. Defendants do not defend the sufficiency of the Form Denial Notices, except to state that the Department is "generally complying with the letter of the APA" (Opp., ECF No. 140 at 12). They go on to declare due process irrelevant (*id.* at 12 n.2), and retreat into their contention that they do not have to defend their scant notices in this case at this time, noting that they will "address the specifics of any proper legal challenge to its final decisions if those cases arise." *Id.* at 12. There are several problems with this "wait and see" approach. First, as detailed extensively in Plaintiffs' Motion to Enforce, the Administrative Procedure Act, the Borrower Defense Regulations, and the Constitution plainly require more extensive notices than Defendants are currently providing. ECF No. 129 at 9-16. Section 555(e) of the Administrative Procedure Act requires an agency to explain "reasons" for a denial; the "agency's statement must be one of '***reasoning***,*'* it must not be just a 'conclusion'; it must 'articulate a **satisfactory explanation** for its action." *Butte Cty., Cal. v. Hogan,* 613 F.3d 190, 194 (D.C. Cir. 2010) (internal quotations omitted) (emphasis added). The Department's own Regulations require it to "notif[y] the borrower of the ***reasons for the denial*** [and] the ***evidence that was relied upon***." 34 C.F.R. § 685.222(e)(4)(ii) (emphasis added). Regarding due process, Defendants claim that its requirements can only be determined only by a "case-by-case" basis, and never as to an entire class. Opp. at 12 n. 2 (ECF No. 140). This is plainly

wrong. *See, e.g., Kapps v. Wing*, 404 F.3d 105, 123-24 (2d. Cir. 2005) (affirming the District Court's finding that an agency's notices to a class of Plaintiffs was inadequate under due process). In any case, Plaintiffs have not invoked due process to challenge any single borrower defense decision, but to point out that, *on the whole*, the Form Denial Notices do not comport with the law. This places Defendants in breach of the Agreement, because they have not issued (and plainly do not intend to issue) final decisions in accordance with governing law, as they assured they would. Agreement, ECF No. 97-2 at § IV(A)(1). Further, they have violated the implied covenant of good faith and fair dealing by entering into the Agreement with no intention of following the law. (ECF No. 116 at 3; ECF No. 140 at 24).[2]

### C. Enforcement of the Agreement is the Appropriate Class-Wide Remedy for Defendants' Breach.

It is clear, based on Defendants' briefing regarding the Form Denial Notices used (ECF No. 116) and the testimony of class members, that the Denial Notice deficiencies are a class-wide issue.[3] Consider, for example, during the October 1, 2020, class hearing when class member Rebekah Sanchez Norton read her Denial Notice out loud on the record, several class members posted the text of their own nearly-identical letters in the "chat" (*see* ECF No. 141 at 4-6, 17, 18, 20, 22, and 23) and additional class members commented as follows:

- [T]his was the exact same response many of us from Ai received word for word[.] *Id.* at 3.
- [R]eceived the same denial letter. I think many of us have received the same letter word for word[.] *Id.*

---

[2] Although Defendants accuse Plaintiffs of using "accusations of bad faith" as "one of their favorite calling cards throughout this litigation," (Opp. at 18, ECF No. 140), common sense compels the conclusion that Defendants have indeed acted in bad faith. To the extent the Court's decision turns on this question, Plaintiffs would welcome the opportunity to develop the record.

[3] Defendants misstate Plaintiffs' concern as applying only "to some, but not all, class members (specifically, those whose claims the Department has denied but who attended schools 'where there was evidence of misconduct,')." Opp. at 8. The fact that the Department is issuing bare bones denials to some class members who provided substantial evidence of misconduct in their applications, corroborated by the findings of other law enforcement agencies, raises questions about whether Defendants have predetermined to deny each and every application, or whether they have truly restarted the process in a manner that would allow for any claim not already covered by existing approval categories to be granted. In any case, the notices, specifically Form D, are facially deficient in each instance.

- Kim my determination letter says the same thing from Kaplan University which has Purdue University on the denial letter[.] *Id.*
- [S]ame exact letter, blanket denial[.] *Id.*
- Mine looks almost identical[.] *Id.*
- Word for word for art institute of Pittsburgh online[.] *Id.*
- My letter says the same thing[.] *Id.*
- [M]ine says the same thing except with "Art Institutes[.]" *Id.*
- [A]lso uses similar language. This has become a nightmare. *Id.*
- My denial letter states the same information as well. I attended Westwood College. *Id.*
- My letter also says the same thing for UoP. *Id.* at 5.
- Mine states the same, except for Kaplan or Corinthian College[.] *Id.*
- SAME word for word[.] *Id.* at 4.
- I received the same denial letter for ITT "failure to state an [sic] legal claim[.]" *Id.*
- Same word for word but different school[.] *Id.*
- [S]ame here. word for word, just with Katharine Gibbs school. *Id.*
- Wow I located my email from ED and it is just about the same. *Id.*
- I received the exact same letter in July 2020[.] *Id.* at 11.
- Sad things about all this is evidence has been presented to DOE once denial has been presented being an [sic] former ITT student in 2020 there is no more evidence I can present[.] *Id.* at 13.
- I have an email that I was tricked into the school and was still denied[.] *Id.* at 18.
- For the record I received the same denial letter as well. *Id.* at 19.
- [R]eceived the SAME BOGUS LETTER[.] *Id.* at 20.
- For the record, I received the same letter as the caller that read her letter. *Id.*
- I think we have all received the same letters. I received a hard copy and an email... [.] *Id.* at 21.
- I too, received the denial letter from the U.S. Department of Education in July 2020 as well with the exact same wording. *Id.*
- I received the EXACT same denial letter. *Id.*
- I also recvd [sic] same denial after 3 years waiting[.] *Id.*
- Yes I received a blanked denial from all those above. last month[.] *Id.*
- Been waiting over 4 years to get a denial and form letter[.] *Id.* at 23.
- [R]eceived the same letter and appealed but have not heard a thing- all I got was interest from the time I applied in 2015 to now[.] *Id.* at 25.
- ITT was found fraud and I still got a debía [sic] letter. *Id.* at 31.
- No evidence or explanation was provided in the denial! *Id.* at 34.
- If they are case specific, why are all the statements WORD FOR WORD?! *Id.* at 35.

Defendants nonetheless argue that enforcement of the Agreement is unnecessary because "the class is on notice" that they may challenge individual decisions on the merits. Opp. at 13-14. This is particularly galling stance, because the Defendants themselves have created this class-wide problem of insufficient notice, only to turn around and suggest it can only be solved on an individual basis. *Even if* individual borrowers knew of their right to challenge the merits of a decision in District Court (which they may not, since the Denial Notices contain no such

information (see ECF No. 129 at 14)), and *even if* borrowers could locate and afford attorneys to represent them in a District Court, the Denial Notices do not contain enough information for a District Court to review them on the merits, which would lead the District Court to vacate the decisions. *See id*. Under the Defendants' scheme, an individual class member who completes this cycle of appeal and vacatur would succeed only in getting back to square one—an open borrower defense application pending before the agency. *See* ECF No. 129 at 12-15; 22. At that point, Defendants would likely argue that, because they contend the Agreement required nothing more than what they provided in the now-vacated notice, they fulfilled their obligation under the Agreement. In that case, the individual class member would be entitled neither to a timely decision on the merits following remand, nor to any loan cancellation under the Agreement's specified penalties.

Defendants' breach of the Agreement has thus created an untenable situation for class members, which the Court's enforcement of the Agreement can remedy on a class-wide basis. Because the Form Denial Notices violate the Agreement, as explained in Plaintiffs' Opening Brief (ECF No. 129) and *supra* § II(B)(1), the Court should enforce the Agreement by declaring that the Form Denial Notices are legally insufficient and vacating on the whole those the Department has already provided. Defendants emphasize that "the Agreement does not include any requirement that all of the Department's decisions ultimately be upheld in any legal challenge to their sufficiency" (Opp. at 13), but the issue here is that *none* can be upheld, because the Form Denial Notices are legally insufficient *for the entire class*.[4] The Court should thus also make plain that if the Department's Denial Notices are vacated, by this Court or by another District Court, those Denial Notices have not fulfilled the Department's obligation to provide a final decision by

---

[4] The Plaintiffs are also more than willing to challenge the sufficiency of the Denial Notices on a class-wide basis via another lawsuit, especially now that Defendants have asserted that the Agreement's Release, § VII, "does not suggest that borrowers would be barred from asserting such a claim if they got their decision before the effective date, so long as that claim is not based on the delay challenged in this lawsuit," (Opp. at 11 n.1, ECF No. 14). But they do not have to, as the Court may resolve the issue on the basis of the present Motion to Enforce.

Agreement's due date. In that case, class members would be entitled loan cancellation in accordance with the negotiated provisions of the Agreement. ECF No. 97-2, § IV(A)(i).

### D. Defendants' Motion Sows Confusion In The Face Of Plaintiffs' Request That The Agreement Be Enforced.

In an effort to distract from their breach and the Court's power to enforce the Agreement, Defendants make a series of assertions about the adjudication process that are confusing, irrelevant, and/or inadvertently damning. First, Defendants create additional confusion about what information borrowers are given about the reconsideration process. As Plaintiffs pointed out in their Opening Brief (ECF No. 129), 34 C.F.R. § 685.222(e)(2)(ii)(5)(i) requires that a request for reconsideration include "identification of new evidence," but the Form Denial Notices do not explain that the evidence must be "new." ECF No. 129 at 14-16. In their Opposition, Defendants claim that the Form Denial Notices do not explain the evidence must be "new" because the Department will consider "*any* evidence" upon reconsideration. Opp. at 17, ECF No. 140 (emphasis in original). This raises many questions. Has the Department changed its policy regarding reconsideration? Do the published Department regulations no longer govern the borrower defense process? Has the Department decided to discard or expand certain regulations? Further, because the Form Denial Notices still do not provide enough information to enable borrowers to identify what evidence was reviewed by the Department, Defendants' surprise announcement that they will accept "any" evidence is quite convenient, and another attempt to subvert the requirements of the law. Their gambit appears to be that if "any" evidence can be considered on Reconsideration, then the Defendants will not have to identify what evidence they already reviewed.

Second, the Brown Declaration purports to provide an explanation of what "failure to state a legal claim" means in the Department's Form Denial Notices, but this explanation further underscores Defendants' breach of the Agreement. The additional explanation is not provided to borrowers in the Form Denial Notices, and, even if it were, Defendants still offer class members no clear explanation of what evidence the Department reviewed and how the Department decided their claims. *See* Brown Dec. ¶ 11. ECF 140-1 at 3. ("The Department also may find a claim

ineligible when it is not supported by sufficient evidence to support the claim by a preponderance of the evidence.").

Third, Defendants make much of the fact that they have granted some borrower defense applications, and needle Plaintiffs for not taking issue with the form of those decisions. But, of course, the APA's notice requirements attach to denial notices, not approvals (*see* 555(e)); notices that an application has been granted do not necessitate the detail required for potential reconsideration or challenge on the merits. And, to the extent Defendants have granted any borrower defense applications, that does not indicate that they have restarted the decision-making process, because they have not made any new favorable decisions, but rather followed pre-existing policies to grant the claims of certain borrowers who attended ITT and Corinthian Colleges. *See* ECF No. 129 at 20 n. 9 (citing Davis letter, ECF No. 108-2 at 9-10 and ECF No. 116 at 2). Although Defendants claim to have "continued [their] review of common evidence related to several *additional* schools other than those for which it has so far approved claims (*e.g.*, Corinthian and ITT)," Brown Decl. ¶ 16 (emphasis added), they cannot point to *a single borrower defense application* that it has granted as a result of this common evidence. Rather, its "preliminary review of the common evidence to determine its scope, including the time-periods and particular acts of misconduct it covers," *id.*, seems only to have ruled applicants out.

I.   **CONCLUSION**

Defendants have a legal obligation to decide borrower defense claims on the merits, and to notify applicants of those decisions. Under the Agreement, they must complete this process within a specified time period, or else cancel the underlying loans. Nothing about the Agreement alters the legal obligations of the Defendants, except to impose a timeframe and a consequence. That is the bargain. They now admit that they cannot possibly issue lawful decisions within the agreed-upon-time frame, but their professed inability to perform their contractual obligations does not obviate them. Defendants represented to the Plaintiffs and this Court that they would restart the process of deciding claims in earnest, and issue written decisions. But now that the parties have stopped litigating, they are trying to get around the Agreement by providing borrowers with nearly worthless pieces of paper that do not explain their decisions and do not advise borrowers of their

Plaintiffs' Reply in Support of Motion to Approve and Enforce the Settlement Agreement
Case No. 19-cv-03674-WHA

9

rights.  And now that Plaintiffs are trying to hold them to their Agreement, Defendants are trying to rewrite the terms of their bargain. They should not be permitted to do so, and this Court should enter Final Approval and Enforce the Agreement.  If the Court declines to do so, Plaintiffs stand ready, as the Court suggested during the class conference on October 1, 2020, to restart the litigation of this case,[5] depose department officials, and continue to expose Defendant's unrelenting refusal to provide the 170,000 students in this class with decisions on the merits of their borrower defense applications.

Dated: October 8, 2020

    Respectfully submitted,

    /s/  Margaret E O'Grady
    Margaret E. O'Grady

    JOSEPH JARAMILLO (SBN 178566)
    jjarmillo@heraca.org
    CLAIRE TORCHIANA (SBN 293026)
    ctorchiana@heraca.org
    HOUSING & ECONOMIC RIGHTS ADVOCATES
    3950 Broadway, Suite 200
    Oakland, CA 94611
    Tel.: (510) 271-8443
    Fax: (510) 868-4521

    EILEEN M. CONNOR (SBN 248856)
    econnor@law.harvard.edu
    TOBY R. MERRILL (*pro hac vice*)
    tomerrill@law.harvard.edu
    MARGARET E. O'GRADY (*pro hac vice*)
    mogrady@law.harvard.edu
    LEGAL SERVICES CENTER OF
    HARVARD LAW SCHOOL

---

[5] Defendants suggest re-opening negotiations. Given that Defendants have stated firmly that they are unwilling and/or unable to provide lawful notices within the negotiated time-frame, Plaintiffs do not expect that further negotiation would be productive, and note that modification of the Agreement at this stage is governed by § XV(B). ECF No. 97-2 at 23.

Plaintiffs' Reply in Support of Motion to Approve and Enforce the Settlement Agreement
Case No. 19-cv-03674-WHA

122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiffs