JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
DAVID L. ANDERSON
United States Attorney
MARCIA BERMAN
Assistant Branch Director
KATHRYN C. DAVIS
Senior Trial Counsel
R. CHARLIE MERRITT
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Telephone: (202) 514-3183
E-mail: kevin.p.hancock@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION<br><br>    Defendants. | No. 3:19-cv-03674-WHA<br><br>**DEFENDANTS' RESPONSE REGARDING THE COURT'S REQUEST AT THE OCTOBER 1, 2020 CLASS HEARING** |

Pursuant to the Court's request made during the Fairness Hearing on October 1, 2020, Defendants are providing an attached list of educational institutions for which either:

(1)    the Department is in possession of relevant underlying evidence of misconduct (i.e., "common evidence") that may provide a basis for granting borrower defense relief; or

(2)    the Department or other authorities have made relevant final determinations that the educational institution made misrepresentations or engaged in other misconduct that may provide a basis for granting borrower defense relief.

1    *See* Ex. A (Attach. 1 to Decl. of Mark A. Brown ("Oct. 14 Brown Decl.")).

2         To give necessary context to this information, the Department is also providing an attached

3    declaration and the information below, which summarizes how the Department has been

4    evaluating borrower defense claims asserted by borrowers who attended the schools appearing on

5    the attached list.

6         Under the Department's regulations, the borrower of any Direct Loan may assert as a

7    defense against repayment of his or her loan certain "act[s] or omissions of the school attended by

8    the student." 34 C.F.R. § 685.206(c)(1); 34 C.F.R. § 685.222(a)(5); *see also* 34 C.F.R.

9    § 685.206(e)(3). To apply for borrower defense relief, an individual borrower must submit an

10   application providing evidence supporting their claim and "any other information or supporting

11   documentation reasonably requested by the Secretary." 34 C.F.R. § 685.222(e)(1)-(4).

12        The Department's consideration of borrower defense claims "includes two steps: (1) a

13   determination of whether the borrower has submitted a borrower defense claim supported by

14   evidence submitted by the borrower or otherwise available to the Department in accordance with

15   the applicable standard; and . . . (2) a determination of the amount of relief that the borrower should

16   receive." Admin. R. ("AR") 009-010 (Jones Decl. ¶ 24), ECF No. 56.

17        The first step of the Department's consideration of a borrower defense claim necessarily

18   involves a legal analysis of the applicable law and whether evidence provided by the borrower

19   establishes a basis for borrower defense under the applicable standard. To ease the administrative

20   burden of conducting a potentially time-consuming analysis on a claim-by-claim basis, and given

21   the great number of claims alleging patterns of misconduct by particular schools, the Department

22   has focused on "identif[ying] certain categories of claims, based on systemic institutional conduct,

23   with established criteria for approval." AR 345 (Decl. of Colleen M. Nevin ¶ 39, Nov. 14, 2019

24   ("Nevin Decl.")). To date, the Department has established categories of eligible borrower defense

25   claims for two school groups, Corinthian and ITT. *See* Decl. of Eileen Connor, ECF No. 108-2

26   (Letter From Kathryn C. Davis to Eileen Connor ("Davis Ltr.") at 3, Aug. 10, 2020). For each of

27   these school groups, the Department's Borrower Defense Unit ("BDU") has "analyzed and

28   summarized the relevant evidence [in the Department's possession], determined and applied

applicable law, established criteria for approval of that type of claim, and drafted claim-specific review protocols."  Nevin Decl. ¶ 39.

The relevant evidence the Department considers when establishing approval criteria can be generally categorized into two groups.  First, the Department considers "common evidence" in its possession, i.e., relevant underlying evidence of misconduct compiled from various sources, including federal agencies, state attorneys general, and the Department's regular oversight activities.  Oct. 14 Brown Decl. ¶¶ 4, 6; *see also* Attach. 1 (Column 3), Oct. 14 Brown Decl. Second, the Department also considers relevant final determinations (sometimes colloquially referred to as "findings") made by the Department, an accreditor, or another entity that the school in question engaged in misconduct for which borrower defense relief may be granted.  *See* Oct. 14 Brown Decl. ¶ 6; *see also* Attach. 1 (Column 4), Oct. 14 Brown Decl.  This category is limited to final adverse determinations on the merits and does not include mere allegations, complaints, or investigations of misconduct, such as an investigation by a federal agency, state attorney general, or other enforcement entity, or settlements in which the school does not admit guilt, which do not themselves constitute final judgments or final determinations on the merits.  Oct. 14 Brown Decl. ¶ 6.  Where the Department is aware of such final adverse determinations, it will consider them, as it does with common evidence in its possession, in its consideration of whether to grant borrower defense relief to a given application or category of applications.  *Id.*  When adjudicating borrower defense applications, however, the Department conducts its own independent review of any common evidence and any relevant final adverse determinations to determine whether relief is appropriate under the standards set forth in its regulations.  *Id.*  The Department engages in such independent review, consistent with its regulations, regardless of the determinations of outside entities.  *Id.*

The Department continues to analyze common evidence and relevant final adverse determinations and develop claims criteria for additional schools and programs as resources permit.  *See* Oct. 14 Brown Decl. ¶¶ 5-6; *see also* Nevin Decl. ¶ 39.  That work, when completed, will allow the Department to make streamlined determinations about whether borrowers who attended those programs can meet the regulatory standards for asserting a defense and, ultimately,

whether they are entitled to loan relief as a result.  Nevin Decl. ¶ 68; *see also* Davis Ltr. at 1; Decl. of Mark A. Brown ("Oct. 1 Brown Decl.") ¶¶ 16-17 (Oct. 1, 2020), ECF No. 140-1 (explaining that the BDU continues to review the common evidence in its possession related to "several additional schools").  In the meantime, for all other claims, the BDU must individually "review the application and any accompanying evidence from the borrower and determine whether [he or she] has established by a preponderance of the evidence that the claim should be approved" under the applicable regulatory standard.  Nevin Decl. ¶ 41.

In December 2019, the Department resumed issuing final borrower defense decisions. Defs.' Resp. to Aug. 31, 2020 Order at 1 (Sept. 4, 2020), ECF No. 116.  At that time, more than 225,000 borrower defense applications were pending.  *See* Nevin Decl. ¶ 16.  As of April 7, 2020, the date the parties executed their proposed settlement agreement in this case, 162,000 borrowers (who have filed 168,000 distinct borrower defense applications) qualified as settlement class members in this case.  Defs.' Resp. to Aug. 31, 2020 Order at 1.

To work efficiently through this backlog while it also develops additional review protocols, the Department has prioritized the adjudication of applications that are likely to be denied.  *See* Nevin Decl. ¶ 66.  Such applications include:

(1)     applications that have failed to state a claim upon which relief could be granted, such as "a claim that alleges that the borrower did not find a job following graduation but does not allege that the school he or she attended made any misrepresentation to the borrower," Oct. 1 Brown Decl. ¶ 10; and

(2)     applications whose claims are not supported by sufficient evidence to establish the claim by a preponderance of the evidence; that is, "applications from borrowers who did not provide any evidence and who attended schools for which BDU is not aware of any evidence that would support approval," Nevin Decl. ¶ 66; *accord* Oct. 1 Brown Decl. ¶ 11.

This latter category of applications, in which the borrowers themselves did not provide any evidence, can be further divided into two subcategories.  First, for some applications, the borrower did not attend a school for which the Department is in possession of any relevant underlying evidence of misconduct (i.e., "common evidence"). Second, for other applications, although the borrower attended a school for which the Department is in possession of common evidence suggesting wrongdoing, the borrower's claim does not fall within the scope of that common

evidence.  *See* Oct. 14 Brown Decl. ¶ 5; *see also* Oct. 1 Brown Decl. ¶ 14 ("For a variety of reasons, not every borrower who attended [schools for which the Department possesses common evidence] will be eligible for relief.").  For example, the Department's common evidence may demonstrate that a school might have engaged only in a particular type of misconduct (*e.g.*, misrepresenting job placement rate claims) during a particular time period (*e.g.*, from 2013 through 2014).  *See* Oct. 1 Brown Decl. ¶ 15.  That common evidence would therefore not support the claim of a borrower who claimed that institution misrepresented whether its credits would transfer to other schools, or who attended that institution in 2010.  *See id.*  In either case, there would be insufficient evidence to support the borrower's claim under the relevant standard.

In order to expedite the adjudication of claims that are likely not supported by sufficient evidence, the Department has taken the following steps.  First, it has identified institutions for which it is in possession of common evidence of wrongdoing.  *See* Oct. 14 Brown Decl. ¶ 4; *see also* Attach. 1 (Column 1), Oct. 14 Brown Decl.; Oct. 1 Brown Decl. ¶ 13.  Second, the Department has continued its review of that common evidence.  Oct. 14 Brown Decl. ¶ 5.  While the Department's analysis is ongoing, it has "completed a sufficient preliminary review of the common evidence to determine its scope, including the time-periods and particular acts of misconduct it covers."  Oct. 1 Brown Decl. ¶ 16; *see also* Oct. 14 Brown Decl. ¶ 5; Attach. 1 (Column 2), Oct. 14 Brown Decl.  Third, the Department has identified applications whose claims fall outside the scope of this common evidence and has proceeded to adjudicate these applications "based on the evidence that the borrower submitted with his or her application."  Oct. 14 Brown Decl. ¶ 5; *see also* Attach. 1 (Column 2), Oct. 14 Brown Decl.

For all other applications from borrowers who attended schools listed on Attachment 1, the Department has yet to conclusively determine whether these applications are within the scope of the common evidence in its possession.  *See* Oct. 14 Brown Decl. ¶ 5.  As a result, the Department has yet to adjudicate these applications and will not do so until it completes its continuing analysis of the common evidence in its possession to determine whether and under what circumstances that evidence provides a basis for granting the remaining borrower defense applications.  *See id.*

1    Lastly, the Department reiterates its concern that the foregoing information lies outside of

2    the issues relevant to Plaintiffs' single claim under Section 706(1) of the Administrative Procedure

3    Act, which seeks only a "simple" order compelling the Department to "start granting or denying

4    their borrower defenses." Compl. ¶ 10, ECF No. 1.  As Plaintiffs have previously conceded, due

5    to the narrow scope of their claim, they do "not ask the [C]ourt to opine on the substance or process

6    for adjudicating their individual borrower defenses."  Pls.' Reply in Supp. of Mot. for Class

7    Certification at 5, ECF No. 42.

8

9    Dated:  October 14, 2020                    Respectfully submitted,

10                                               JEFFREY BOSSERT CLARK
                                                 Acting Assistant Attorney General
11
                                                 MARCIA BERMAN
12                                               Assistant Branch Director

13                                               */s/ Kevin P. Hancock*
                                                 KATHRYN C. DAVIS
14                                               Senior Trial Counsel
                                                 R. CHARLIE MERRITT (VA Bar # 89400)
15                                               KEVIN P. HANCOCK
                                                 Trial Attorneys
16                                               U.S. Department of Justice
                                                 Civil Division, Federal Programs Branch
17                                               1100 L Street, N.W.
                                                 Washington, DC 20530
18                                               Telephone: (202) 514-3183
                                                 E-mail: kevin.p.hancock@usdoj.gov
19
                                                 *Attorneys for Defendants*
20

21

22

23

24

25

26

27

28