**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>v.<br>ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education,<br>And<br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br>Defendants. | Case No.: 19-cv-03674-WHA<br><br><br>**AFFIDAVIT OF TARAH GRAMZA** |

I, Tarah Gramza, state as follows:

1. I am submitting this affidavit in relation to the above-captioned case.

2. I spoke about my experiences with my borrower defense application at the class hearing in this case on October 1, 2020.

3. I borrowed federal student loans in order to attend American Intercontinental University ("AIU") (owned by Career Education Corporation).

4. On September 7, 2016, I submitted a borrower defense application to the United States Department of Education, asking for these loans to be cancelled. A copy of that application is attached as Exhibit A. My application listed five bases for my claim that AIU had engaged in fraudulent behavior.

5. On July 7, 2020, I received correspondence from the Department of Education, stating that my application had been denied. A copy of that correspondence is attached as Exhibit B.

1

Affidavit of Tarah Gramza

6. According to this correspondence, I was denied for "lack of evidence" on one of my five claims, with the other four ignored completely.

7. In between the time that I first submitted an application for loan cancellation and when I received the notification of denial, my loans were in forbearance. I understand that because I've now received a denial notice, my administrative forbearance is ending.

8. My loans are still in forbearance due to the CARES Act, which extended forbearance for all government-owned federal student loans through January 2021. However, if the CARES Act forbearance is not extended, I will face serious financial hardship. I am terrified about what will happen to me when I have $100,000 in student loans back in repayment.

9. My monthly student loan payment will be $1,000 a month or more, which is about half the amount of the monthly mortgage payment on my home. In order to pay my loan along with my necessary expenses, I would have to reapply for an income-based repayment ("IBR") program, but I do not know whether I would qualify. I have qualified for IBR in the past, but the application process is intimidating, and my experiences with the Department of Education have made me skeptical about whether they would treat my IBR request fairly.

10. Of my total federal student loan balance, about $70,000 is from my fraudulent degree from AIU. I later went back to school for my nursing degree and owe about $30,000 in loans from that program. If I only owed my nursing school loans, I believe my monthly student loan payment would only be around $200 per month, a much more manageable amount.

Affidavit of Tarah Gramza

11. I have two children in college, with one living out of state, who I'm helping to support. I also have a child at home who is in school remotely. My family will have to reevaluate its entire financial situation if my student loan forbearance ends.

12. I work for hospital in a clinical quality/regulatory role. Because of COVID-19, many employees are being put on rotating furlough. I've been lucky so far that I haven't been furloughed, but it could happen at any time, and I need to save to prepare.

13. This situation is causing me extreme mental and emotional strain.

14. My emotional strain includes a feeling of having my faith in our government ruined. When I first learned of the opportunity to apply for borrower defense, I had been so hopeful. But once I got more involved in the process and learned what the Department of Education had done with the applications, I realized that I was out of luck. This situation makes me feel like a victim. I feel like the Department is telling me that people can engage in fraud and get away with it, and they don't care.

15. I was only 20 years old when I started trying to get an education at a for-profit college. AIU actually contacted me to poach me from University of Phoenix, saying how much better AIU was. The school lied to me about how much it would cost, my job prospects, and the quality of the education, among other things. They kept pressuring me to take more and more classes.

16. In my borrower defense application, I wrote in detail about these issues and other fraudulent conduct that I knew could be proved, including conduct that was public knowledge from government investigations. There was even a settlement against Career Education Corporation by the Arizona Attorney General's Office that required private

3

Affidavit of Tarah Gramza

loans to be forgiven, but the settlement said that anyone with federal loans still had to go through the borrower defense process.

17. I do not understand whether the Department looked at the evidence that I submitted, and I do not understand why the evidence I did submit was not enough. My application included evidence of AIU having multiple lawsuits and settlements against it for the exact same things I complained about in my own application, such as the use of high-pressure and deceptive practices.

18. I am frustrated that the denial I received seems to have been a "rubber stamp" denial, as a representative could not possibly have thoroughly reviewed the information I provided.

19. The denial notice stated that I could ask for reconsideration, which I have done. But I am not sure what reconsideration means, nor what information I would need to provide to be reconsidered.

20. Additionally, I called the Department of Education's borrower defense hotline after receiving my denial notice, and the person I spoke to told me that "another company" was handling the applications and had actually "lost" or "couldn't view" a lot of applications, especially ones that were filed a long time ago. The person told me that I should re-file my borrower defense application again, separate from the reconsideration, because maybe the reason that the Department had completely ignored 4 out of the 5 claims in my original application was that they "couldn't see" my entire application.

21. I did re-file my application after that conversation. I subsequently received another email from the Department asking me to re-file my original application for a third time because they were still "unable to open" it. A copy of that email is attached as Exhibit C.

4

Affidavit of Tarah Gramza

22. I have been trying for months to find a lawyer to represent me individually against the Department, and have spoken with about 15 different law offices all over the United States, only to be told to contact the class counsel in this case. No one will challenge the Department because it's too expensive and time consuming. They all told me it's pointless.

23. I even called the Arizona Attorney General's office to file a formal complaint about the Department of Education's conduct, which conflicts with the findings that the Arizona Attorney General made against Career Education Corporation/AIU. Their response was that they don't handle complaints directly.

24. At this point, I don't know where to turn. If people in my position don't get some sort of resolution that forces the Department to handle our claims fairly and honestly, then there seems to be literally nothing left that we can do.

I swear under penalty of perjury that the foregoing is true.

Executed on:   October 28, 2020
　　　　　　　　　Gilbert, Arizona


Tarah Gramza (Oct 28, 2020 11:23 PDT)

Tarah Gramza

Affidavit of Tarah Gramza

# Exhibit A

**From:** Tarah Gramza < ████████████ >

**Date:** September 7, 2016 at 9:48:08 AM MST

**To:** FSAOperations@ed.gov

**Subject: Application for Defense to Repayment Discharge Tarah Gramza**

To Whom it may Concern,

I am submitting an application for Defense to Repayment Discharge and attached is the application and a copy of the transcripts. I have been struggling to pay my loans and after much research and years of pain as a result of the schools behavior I believe it is time to share my story.

Here is the attachment of application in the body of the email as well.

**Borrower Name:** Tarah A. Gramza **Borrower SSN (Last 4 Digits)** - ████

**Borrower Name:** Tarah A. Gramza **Borrower SSN (Last 4 Digits) -** ███

## Application for Defense to Repayment (DTR)

### Section 1: Borrower Information

**Borrower First Name Middle Name Last Name –** Tarah Anne Gramza

**DOB-** ██████████

**Social Security Number (last four digits)-** ████

**Borrower Mailing Address –** ██████████████
█████████████

**Borrower Telephone (Primary) Borrower Telephone (Alternative/Optional) -** ████████████

**Borrower Email (Optional)-** █████████████ ;
████████████████

### Summary-

This application is for submission of Release of loans obtained by Tarah A. Gramza during her time

**Summary-**


This application is for submission of Release of loans obtained by Tarah A. Gramza during her time attending American InterContinental University between the years of 2002- 2008 where she was led by the school to believe that she would received education and knowledge that would allow her to become gainfully employed in the business management marketing industry. During the enrollment process Tarah was promised she would receive the education and degrees needed and would receive support after she graduated to obtain employment, of which she did not. When Tarah graduated in 2007 with a bachelors degree she was contacted by the school and was convinced to further pursue a higher degree in order increase her career and she was again was promised by the school that it would give her a higher chance of being promoted or hired by a company. After she graduated she not only did not receive a promotion she was laid off and was unable to find employment for over 6 months in her field of study. She contacted the school several times for support and none was provided. As a direct result her house was foreclosed and she was forced to pursue a nursing degree and now has a debt of $98,000 of which more then 75% if which is from AIU. She has been working as nurse for over 5 years and her degree in business marketing does not help her in her career in any capacity.  Over the course of the last several years I have been told by many employers that my degree is irrelevant due to the fact that the school AIU was a "degree mill, teachers are not high quality, education was not relevant to degree

Since 2008 American InterContinental University has been the subject the Department of Education's sanctions many times for unethical business behavior related to;

1.) Telling students to enroll right away time is limited.

2.) Promising over inflated graduation job prospects.

3.) Pressured reenrollment to pursue higher degrees.

4.) The schools teachers are high quality and hard to find at other schools.

5.) Job placement would be available and was not.

All of which are public knowledge and a lawsuit was settled in 2013 stating "In August 2013, Career Education Corp. reached a $10.25 million settlement with the New York Attorney General. The Attorney General's investigation revealed misleading advertisements, including inflated job placement statistics."

Also, to note was the sanctions by the Department of education against AIU caused the school to stop its unethical enrollment process causing the school to sell off much of its education program in 2015.

Below are a just a few of the websites to review in which I received much of the information. There are many more if you would like to further

**Application for Defen**

All of which are public knowledge and a lawsuit was settled in 2013 stating "In August 2013, Career Education Corp. reached a $10.25 million settlement with the New York Attorney General. The Attorney General's investigation revealed misleading advertisements, including inflated job placement statistics."

Also, to note was the sanctions by the Department of education against AIU caused the school to stop its unethical enrollment process causing the school to sell off much of its education program in 2015.

Below are a just a few of the websites to review in which I received much of the information. There are many more if you would like to further investigate.

https://www2.ed.gov/policy/highered/reg/hearulemaking/2016/bd2-ann-fraudmemo.pdf

https://www.sec.gov/Archives/edgar/data/1046568/000095013010000100/dex991.htm

http://www.help.senate.gov/imo/media/for_profit_report/PartII/CEC.pdf

Tarah's application is below and she is asking for review of her data and that her loans be released so






Tarah's application is below and she is asking for review of her data and that her loans be released so she can focus on paying off her Nursing Degree loan and fulfill her obligation as it relates to her current career.

Attached are copies of her transcript with AIU.

## Section 3: School Information

**School Name Dates of Attendance (Month/Year)** – American InterContinental University (2002-2008)

**School Address and City Zip Code-** 5550 Prairie Stone Parkway, Hoffman Estates, 60192

**Name of Program: Bachelor of Business Management Marketing and Master of Business Marketing Which is true about how you found your lender?**

☐☐The school found my federal student loan lender for me. I did not find the bank or other lender on my own, but my school referred me to that lender.

## What type of Program did you get the loan for?

☐☐Bachelors

☐☐Masters

## How did you end your program?

## Section 4: Illegal Conduct of School

☐☐The American InterContinental University lead me to believe that by earning a degree in Business Management would almost guarantee that I would land a high paying job in Business and would allow myself the experience and education to move into a new higher paying position with in my company or other companies. When I finished the Bachelors program I was convinced by the enrollment team to continue my education with AIU in order get a MBA which would further allow me to gain higher paying jobs. This turned out to be not true, and I was laid off in 2009 and I was unable to obtain employment with my degrees after 6 months of looking. As a result my house was foreclosed upon and I was forced to move. I then was forced to abandon my career in Business and pursue a new degree in Nursing in which I completed in 2011. I currently work as a nurse and my business degree serves me no help in my current career.

**How did your school mislead you about how this program would improve your job prospects in order to convince you to enroll in the school?**

*Through its words, acts or omissions, the school led me to believe*

☐☐that most or all of its graduates obtain full-time jobs in their field of study, when this is not true.

☐☐that I would find a high-paying full-time job in my field of study, when in fact I was not able to

☐☐that externships in in my field of study required for completion of my program would be easily available.

☐☐that I could advance my career in my field of study and get a promotion or higher pay after I graduated, which was not true.

## How did your school mislead you about the quality and exclusivity of your school?

*Through its words, acts or omissions, the school led me to believe*

☐☐that I had to enroll immediately in the school because there were few student openings available in the program, when this was not true.

☐☐that I would learn the skills necessary to find and perform a job in my field, when in fact I was not taught the skills I needed to find or keep a job.

☐☐that the school's instructors were highly qualified experts in their fields, when this was not true.

☐☐that my classes would be relevant to my field of study, when this was not true.

☐☐that completion of my program would qualify me to be employed in my field of study, when this was not true.

## Section 5: Additional Information, Relief, and Attestation

## Additional Information

☐☐I have not received any relief from the school or other sources to pay for these debts. I am struggling to meet my loan obligations as a direct result of the false information led to believe by the school and I have been on a decreased payment plan by direct loans since I graduated in 2011 to pay the amounts for this business degree. I have over $98,0000 of which most of it is from American InterContinental University. My nursing Degree cost was only $25,000.

## *Do you want your loans placed in forbearance*?

☐☐Yes, I want my federal loans to be placed in forbearance while my loan discharge claim is reviewed.

## I request that the Department of Education or other loan holder do all of the following:

1) Completely discharge my federal student loans obtained to attend this school, including any interest, collection fees, or other fees charged on my loans.

**I request that the Department of Education or other loan holder do all of the following:**

1) Completely discharge my federal student loans obtained to attend this school, including any interest, collection fees, or other fees charged on my loans.

2) Refund me any money I paid on these loans.

**All of the information I am submitting is true and accurate to the best of my knowledge and belief.**

Tarah A. Gramza 9/7/16

<AIU.docx>
<Aiu transcripts .pdf>



8:16

< Back                                          ∧  ∨

 **Tarah Gramza**                            1/23/20
To: FSAOperations@ed.gov >

# Pending Defense Claim- ████
# Updated information to be added
# on record for review

Hi There-
Application # ████
Tarah Gramza
Since my application has been pending for so
long, recent updates have been revealed about
my old school American Intercontinental
University(AIU) and it's owner Career education
corporation. After a 5 year multi-state
investigation, the complaints and eventual
settlement and plead of guilt by CEC, support
all my claims below in the claim I submitted
back in 2016. $490 million dollars were to be
forgiven to students who held private loans
under this settlement. Unfortunately for me,
students who had federal loans were told to file
the borrower defense claims. Luckily, I had
already done that several years previous. I am
asking that this information be entered into my
file as further support of my claim.

https://www.azag.gov/press-release/ag-
brnovich-announces-22-million-debt-relief-

      

Key facts-
- Deceived students about the total costs of enrollment by instructing its admissions representatives to inform prospective students only about the cost per credit hour without disclosing the total number of required credit hours;
- Misled students about the transferability of credits into CEC from other institutions and out of CEC to other institutions by promising on some occasions that credits would transfer;
- Misrepresented the potential for students to obtain employment in their field by failing to adequately disclose the fact that certain programs lacked the necessary programmatic accreditation; and,
- Deceived prospective students about the rate that graduates of CEC programs got a job in their field of study, thereby giving prospective students a distorted and inaccurate impression of CEC graduates' employment outcomes. For instance, CEC inaccurately claimed that its graduates were "placed" who actually worked only temporarily or who were working in unrelated jobs.

Sincerely,

Tarah Gramza

> On Sep 7, 2016, at 9:48 AM, Tarah Gramza
> < ████████████ > wrote:







# Exhibit B

7/7/2020

Borrower Defense Application #: ████████

Dear Tarah Gramza:

The U.S. Department of Education (ED) has completed its review of your application under the applicable Borrower Defense to Repayment regulations for discharge of your William D. Ford Federal Direct Loans (Direct Loans) made in connection with your or your child's enrollment at American InterContinental University. "You" as used here should be read to include your child if you are a Direct PLUS Loan borrower who requested a discharge for loans taken out to pay for a child's enrollment at American InterContinental University. ED has determined that your application is ineligible for relief based on review of the facts of your claim and the regulatory criteria for relief; this decision means that your Direct Loans will not be discharged. ED explains the reasons below.

### Applicable Law

For Direct Loans first disbursed prior to July 1, 2017, a borrower may be eligible for a discharge (forgiveness) of part or all of one or more Direct Loans if the borrower's school engaged in acts or omissions that would give rise to a cause of action against the school under applicable state law. See § 455(h) of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1087e(h), and 34 C.F.R. § 685.206(c) and 685.222 (the Borrower Defense regulations). ED recognizes a borrower's defense to repayment of a Direct Loan only if the cause of action directly relates to the Direct Loan or to the school's provision of educational services for which the Direct Loan was provided. 34 C.F.R. §§685.206(c)(1), 685.222(a)(5); U.S. Department of Education, Notice of Interpretation, 60 Fed. Reg. 37,769 (Jul. 21, 1995).

### Why was my application determined to be ineligible?

ED reviewed your borrower defense claims based on any evidence submitted by you in support of your application, your loan data from National Student Loan Data System (NSLDS®), and evidence provided by other borrowers.

Allegation 1: Employment Prospects

You allege that American InterContinental University engaged in misconduct related to Employment Prospects. This allegation fails for the following reason(s): Insufficient Evidence.

Your claim for relief on this basis therefore is denied.

**What evidence was considered in determining my application's ineligibility?**

We reviewed evidence provided by you and other borrowers who attended your school. Additionally, we considered evidence gathered from the following sources:

IA Attorney General's Office

IL Attorney General's Office

CO Attorney General's Office

Evidence obtained by the Department in conjunction with its regular oversight activities

Senate Hearing Testimony of EDMC career services adviser before the Committee on Health, Education, Labor, and Pensions (September 30, 2010)

Materials, including publicly available securities filings, prepared by Education Management Corporation

**What if I do not agree with this decision?**

If you disagree with this decision, you may ask ED to reconsider your application. To submit a request for reconsideration, please send an email with the subject line "Request for Reconsideration [

]" to BorrowerDefense@ed.gov or mail your request to U.S. Department of Education, P.O. Box 1854, Monticello, KY 42633. In your Request for Reconsideration, please provide the following information:

1. Which allegation(s) you believe that ED incorrectly decided;

2. Why you believe that ED incorrectly decided your borrower defense to repayment application; and

3. Identify and provide any evidence that demonstrates why ED should approve your borrower defense to repayment claim under the applicable law set forth above.

ED will not accept any Request for Reconsideration that includes new allegations. If you wish to assert allegations that were not included in your application, please see the following section. Additionally, your loans will not be placed into forbearance unless your request for reconsideration is accepted and your case is reopened. Failure to begin or resume repayment will result in collection activity, including administrative wage garnishment, offset of state and federal payments you may be owed, and litigation. For more information about the reconsideration process, please contact our borrower defense hotline at 1-855-279-6207 from 8 a.m. to 8 p.m. Eastern time (ET) on Monday through Friday.

**Can I apply for borrower defense if I have additional claims?**

If you wish to file a new application regarding acts or omissions by the school other than those described in borrower defense application [Case

**What if I do not agree with this decision?**

If you disagree with this decision, you may ask ED to reconsider your application. To submit a request for reconsideration, please send an email with the subject line "Request for Reconsideration [

███████████████████████ ]" to BorrowerDefense@ed.gov or mail your request to U.S. Department of Education, P.O. Box 1854, Monticello, KY 42633. In your Request for Reconsideration, please provide the following information:

1. Which allegation(s) you believe that ED incorrectly decided;

2. Why you believe that ED incorrectly decided your borrower defense to repayment application; and

3. Identify and provide any evidence that demonstrates why ED should approve your borrower defense to repayment claim under the applicable law set forth above.

ED will not accept any Request for Reconsideration that includes new allegations. If you wish to assert allegations that were not included in your application, please see the following section. Additionally, your loans will not be placed into forbearance unless your request for reconsideration is accepted and your case is reopened. Failure to begin or resume repayment will result in collection activity, including administrative wage garnishment, offset of state and federal payments you may be owed, and litigation. For more information about the reconsideration process, please contact our borrower defense hotline at 1-855-279-6207 from 8 a.m. to 8 p.m. Eastern time (ET) on Monday through Friday.

**Can I apply for borrower defense if I have additional claims?**

If you wish to file a new application regarding acts or omissions by the school other than those described in borrower defense application [Case Number], please submit an application at StudentAid.gov/borrower-defense. In the new application, you should explain in the relevant section(s) the basis for any new borrower defense claim(s) and submit all supporting evidence.

**What should I do now?**

Because your borrower defense to repayment application was found to be ineligible, you are responsible for repayment of your loans. ED will notify your servicer(s) of the decision on your borrower defense to repayment application within the next 15 calendar days, and your servicer will contact you within the next 30 to 60 calendar days to inform you of your loan balance. Further, if any loan balance remains, the loans will return to their status prior to the submission of your application. If your loans were in forbearance as a result of your borrower defense to repayment application, the servicer will remove those loans from forbearance. **\*See COVID-19 Note below.**

If your loans are in default and are currently in stopped collections, your loans will be removed from stopped collections. Failure to begin or resume repayment could result in collection activity such as administrative wage garnishment, offset of state and federal payments that you may be owed,

Because your borrower defense to repayment application was found to be ineligible, you are responsible for repayment of your loans. ED will notify your servicer(s) of the decision on your borrower defense to repayment application within the next 15 calendar days, and your servicer will contact you within the next 30 to 60 calendar days to inform you of your loan balance. Further, if any loan balance remains, the loans will return to their status prior to the submission of your application. If your loans were in forbearance as a result of your borrower defense to repayment application, the servicer will remove those loans from forbearance. **\*See COVID-19 Note below**.

If your loans are in default and are currently in stopped collections, your loans will be removed from stopped collections. Failure to begin or resume repayment could result in collection activity such as administrative wage garnishment, offset of state and federal payments that you may be owed, and litigation. **\*See COVID-19 Note below.**

While normally interest would not be waived for unsuccessful borrower defense applications, given the extended period of time it took ED to complete the review of this application, the Secretary is waiving any interest that accrued on your Direct Loans from the date of the filing of your borrower defense application to the date of this notification. Your servicer will provide additional information in the coming months regarding the specific amount of interest adjusted. **\*See COVID-19 Note below.**

**\*COVID-19 Note:** On March 27, 2020, the president signed the *CARES Act*, which, among other things, provides broad relief in response to the coronavirus disease 2019 (COVID-19) for federal student loan borrowers whose loans are owned by ED. For the period March 13, 2020, through September 30, 2020, the interest rate on the loans will be 0% and no payments will be required. During this same period for defaulted borrowers, all proactive collection activities, wage garnishments, and Treasury offsets will be stopped. Your federal loan servicer will answer any questions you have about your specific situation. In addition, Federal Student Aid's COVID-19 information page for students, borrowers, and parents is located at StudentAid.gov/coronavirus. Please visit the page regularly for updates.

## What if I have another pending borrower defense application?

If you have additional pending borrower defense to repayment applications, this information applies to you:

- If your loans associated with an additional borrower defense to repayment application that is still pending are in forbearance or another status that does not require you to make payments, your loans will remain in forbearance or that other status. Similarly, if your loans associated with that borrower defense application are in default and you are currently in stopped collections, those loans will remain in stopped collections.

- If you are unsure if you have additional pending applications, or if you would like to check on the status of your loans associated with an additional application, contact our borrower defense hotline at 1-855-279-6207 from 8 a.m. to 8 p.m. ET on Monday through Friday.

**COVID-19 Note:** On March 27, 2020, the president signed the *CARES Act,* which, among other things, provides broad relief in response to the coronavirus disease 2019 (COVID-19) for federal student loan borrowers whose loans are owned by ED. For the period March 13, 2020, through September 30, 2020, the interest rate on the loans will be 0% and no payments will be required. During this same period for defaulted borrowers, all proactive collection activities, wage garnishments, and Treasury offsets will be stopped. Your federal loan servicer will answer any questions you have about your specific situation. In addition, Federal Student Aid's COVID-19 information page for students, borrowers, and parents is located at StudentAid.gov/coronavirus. Please visit the page regularly for updates.

**What if I have another pending borrower defense application?**

If you have additional pending borrower defense to repayment applications, this information applies to you:

- If your loans associated with an additional borrower defense to repayment application that is still pending are in forbearance or another status that does not require you to make payments, your loans will remain in forbearance or that other status. Similarly, if your loans associated with that borrower defense application are in default and you are currently in stopped collections, those loans will remain in stopped collections.

- If you are unsure if you have additional pending applications, or if you would like to check on the status of your loans associated with an additional application, contact our borrower defense hotline at 1-855-279-6207 from 8 a.m. to 8 p.m. ET on Monday through Friday.

ED offers a variety of loan repayment options, including the standard 10-year repayment plan, as well as extended repayment, graduated repayment, and income-driven repayment plans. For more information about student loan repayment options, visit StudentAid.gov/plans. If you have questions about the status of your loans or questions about repayment options, please contact your servicer(s). If you do not know the name of your federal loan servicer, you may go to StudentAid.gov to find your servicer and view your federal loan information.

Sincerely,

U.S. Department of Education
Federal Student Aid



830 First Street, NE, Washington, D.C. 20202
StudentAid.gov/borrower-defense

# Exhibit C



**From:** Tarah Gramza █████████████████
**Date:** September 21, 2020 at 8:29:19 AM MST
**To:** Borrower Defense <borrowerdefense@ed.gov>
**Subject: Re:  FSA Borrower Defense Application:** ███████
████████████████████████

Please use this one. I apologize it was missing the second half the application.

Sincerely,

Tarah Gramza

> On Sep 21, 2020, at 8:19 AM, Tarah Gramza ████████████████ wrote:
>
> Here is the original complaint along with the additional email I sent in Jan which was in response to support my claims-
> <2016 borrower Defense Claim.pdf>
>
> Sincerely,
>
> Tarah Gramza
>
>> On Sep 21, 2020, at 7:37 AM, Borrower Defense <borrowerdefense@ed.gov> wrote:



Dear Tarah Gramza:

We have carefully reviewed your application for borrower defense but need additional information to process your submission.

Please provide the following details by replying directly to this email:

- Please resubmit 2016 borrower Defense Claim because we are unable to open it.

If you have questions, you may respond to this email or call our borrower defense hotline: **(855) 279-6207**. Representatives are available Monday through Friday from 8 a.m. to 8 p.m. Eastern time.

Sincerely,
U.S. Department of Education (ED)
Federal Student Aid
Borrower Defense Unit


*To respond to this email, please reply to this email thread without modifying the Subject line. That way, your response will automatically attach to your application. *





CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.