**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

THERESA SWEET, ALICIA DAVIS, TRESA
APODACA, CHENELLE ARCHIBALD,
DANIEL DEEGAN, SAMUEL HOOD, and
JESSICA JACOBSON on behalf of themselves
and all others similarly situated,
          Plaintiffs,
          v.
ELISABETH DEVOS, in her official capacity
as Secretary of the United States Department of
Education,
          And
THE UNITED STATES DEPARTMENT OF
EDUCATION,
          Defendants.

Case No.: 19-cv-03674-WHA

**AFFIDAVIT OF MAUREEN SIMMONS**

I, Maureen Simmons, state as follows:

1. I am submitting this affidavit in relation to the above-captioned case.

2. I spoke about my experience with my borrower defense claim at the class hearing in this case on October 1, 2020.

3. Federal student loans were taken out in my name in connection with my attendance at Med Help Training School, which has since closed. As I explain further below, I did not agree to take out these loans.

4. On August 27, 2018, I submitted a borrower defense application to the United States Department of Education, asking for these loans to be cancelled. A copy of that application is attached as Exhibit A.

5. At the time I applied for borrower defense, my loans were in default. The borrower defense application caused them to be put into stopped collections.

1

Affidavit of Maureen Simmons

6. On April 16, 2020, within days after learning of the preliminary settlement in this case, I received correspondence from the Department of Education, stating that my claim had been denied.  A copy of that correspondence is attached as Exhibit B.

7. Just a few weeks after I received the denial notice, I received another email from the Department of Education that said that, because of the CARES Act, I had a "limited-time opportunity" to rehabilitate my loan. The email suggested that this would allow me to get out of default, remove the default from my credit history, and become eligible for deferment or forbearance. It also said that because of the CARES Act, I would not have to make payments until October 2020. A copy of this email is attached as Exhibit C. I contacted the Department to take this option and they sent a one-page document for me to sign. But once I submitted that document, I was told that I actually had to start paying back my loans immediately.

8. I contacted the Department, and when I said that the email and document had been misleading, they first claimed that "we didn't send the email." When I pointed out that it came from an official U.S. Department of Education email address, they said that "someone else writes the language" and I couldn't get into forbearance, I would have to make payments. They said that their claim systems are "not set up to do anything except take payments."

9. I spent two days calling the Department all day, and nobody would answer my questions. One woman I spoke to said they had gotten other calls about this email. She transferred me to her supervisor, who told me that they send these emails in order to get people to call in and make payment arrangements.

Affidavit of Maureen Simmons

10. The Department kept sending letters saying that I had to go into repayment, and each time I would call them and say they had misled me.

11. Finally, I received an email recently that stated that I would have no payments due until January 2021 because of the executive order extending pandemic-related federal student loan payment suspension.

12. However, if the pandemic-related suspension is not extended or is not applied to me, I will suffer serious economic hardship.

13. I recently graduated from the University of California at Berkeley. Because the Department had not resolved my borrower defense application, I wasn't able to get financial aid to attend Berkeley. Luckily, I got a scholarship. However, I was also offered Pell Grants and Cal Grants of over $15,000 that I wasn't able to access because of my defaulted federal student loans. That money would have covered my housing and other expenses.

14. I have applied to law school, but as I go down that path I'm still not sure what resources I'll able to access to pay for that tuition. The loans that are the subject of my borrower defense application are still affecting my ability to get financial aid.

15. Dealing with the Department of Education has taken up so much of my time and caused me tremendous stress. At some points, I almost wasn't able to continue my education at Berkeley, and I almost didn't graduate. I've been very lucky that Berkeley has been understanding when I've showed them how hard I've been trying to work out my past student loan debt problems.

16. I've experienced so much trauma from having people at the Department keep hanging up on me over and over again. I even contacted the Department's ombudsman, and he would

3

Affidavit of Maureen Simmons

not talk to me. It felt like living in different country – like this can't be the government that's supposed to represent me, where nobody will help or even listen. I've been in tears on the phone many times.

17. Med Help Training School was a smaller for-profit school in California, but my experience rings true with other stories from the larger for-profit education chains: I was misled by the admissions department. They told me that I would get financial aid that didn't need to be repaid, but then they took out loans in my name instead. I didn't even know that I owed money on federal student loans until I was contacted by the Department of Education about repayment obligations.

18. Before receiving the denial of my borrower defense application, I did everything I could to get the Department to at least consider my application. I even organized a student group to flood the Department with calls to try to get them to respond. At one point someone from the Department emailed me back, but nothing ever happened.

19. I do not understand whether the Department actually looked at the evidence that I submitted, and I do not understand how the evidence I did submit was not enough. Med Help Training School has closed since I attended, so my ability to get more information is limited.

20. I am frustrated that the denial I received seems to have been a "rubber stamp" denial, as a representative could not possibly have thoroughly reviewed the information I provided.

21. The denial notice states that I may ask for reconsideration, but I am not sure what information I would need to provide to be reconsidered.

22. Originally, the loan taken out in my name was only $5,000. Now, with accrued interest, it's around $10,000 – but from my experience, it might as well be $100,000, because of

Affidavit of Maureen Simmons

my inability to pay and because of the ways this loan and the borrower defense process are holding me back.

23. I received a tremendous opportunity from Berkeley as a first-generation African-American college student. I've been able to work on drafting and passing major California legislation, and I am planning to go to law school. My experience shows the value of a quality college education. At the same time, I live in fear that my past experience of being defrauded, and the Department of Education's refusal to treat my claim seriously and fairly, will stop me from pursuing my goals.

I swear under penalty of perjury that the foregoing is true.

Executed on:   October 28, 2020

Fairfield, California

*Maureen Simmons (Oct 28, 2020 23:08 PDT)*

Maureen Simmons

Affidavit of Maureen Simmons

# Exhibit A



OMB Number: 1845-0146
Expiration Date: 12/31/2019

# U.S. DEPARTMENT OF EDUCATION
## APPLICATION FOR BORROWER DEFENSE
## TO LOAN REPAYMENT

If your school misled you or engaged in other misconduct, you may be eligible for "borrower defense to repayment," which is the forgiveness of some or all of your federal student loan debt.

**FORM INSTRUCTIONS**:  To apply, you must complete, sign, and submit this form to the U.S. Department of Education for review.

You may attach additional documents, such as transcripts, enrollment agreements, and promotional materials from your school.  Once completed, please submit this form and any additional documents you believe will help us review your application by email to BorrowerDefense@ed.gov or mail to US Department of Education - Borrower Defense to Repayment, PO Box 1854, Monticello, KY 42633.

<u>Fields marked with an asterisk (*) are required for your application to be considered complete.</u>

## SECTION I: BORROWER INFORMATION

Please provide contact information for the borrower:

| *Name *(First, Middle, Last)*<br>Maureen Simmons | *Date of Birth *(mm/dd/yyyy)*<br>████ | *Social Security Number *(Last 4 Digits)*<br>███ |
|---|---|---|
| *Telephone Number<br>████ | *Email Address<br>████ | |

| *Street Address<br>████ | *City<br>███ | *State<br>██ | *Zipcode<br>███ |
|---|---|---|---|

*Are you a PARENT who took out a federal loan on behalf of the student?

☐ Yes   ☒ No

*If yes, please enter the full name of the student *(Last, First, Middle)*:

*If yes, please enter the student's Social Security Number *(XXX-XX-XXXX)*:

## SECTION II: SCHOOL INFORMATION

*School
 Med-Help Training School

Campus *(including on-line campuses for distance education borrowers)*
 2702 Clayton Road Ste. 201

*Location *(City, State)*
 Concord, CA  94519

* Enrollment Dates at this school:
*From *(month/year)*:  07/1991      *To *(month/year)*:  09/1991

☐ If you are still attending this school/campus, please indicate by checking the box.

☒ Check if the enrollment dates above are approximate, or if you are unsure of them.

If your attendance at the school listed above was not or has not been continuous (for example, from October 2015 to March 2016, then again from August 2016 to November 2016), please describe all dates that you attended.

---

*Program Name or Major *(e.g. Nursing, Medical Assistant, Paralegal).*

Medical Assistant

---

Credential/Degree Sought *(e.g. Certificate, Diploma, Associates, Bachelors, Masters).*

Certificate

---

If you enrolled in multiple programs at the school listed above, please describe all programs that you were enrolled in.

N/A

---

*Current Status at school listed above

☐ Graduated   ☐ Transferred Out   ☒ Withdrew   ☐ Attending

---

## SECTION III: OTHER LOAN REDUCTION OR TUITION RECOVERY REQUESTS

*Have you made any other requests to have your Federal loans forgiven *(for example, under a closed school discharge or false certification discharge from the U.S. Department of Education)*?

☐ Yes   ☒ No

*If yes, please describe these other request(s), including the amount of any loan forgiveness that you received, and attach any documentation about the requests, if available.

N/A

---

*Have you made any requests to anyone else to recover tuition amounts that you paid to your school *(for example, a lawsuit against the school or a claim made to a tuition recovery program)*?

☐ Yes   ☒ No

*If yes, please describe these other request(s), including the amount of the payment that you received (if any), and attach any documentation about the requests, if available.

N/A

---

## SECTION IV.  BASIS FOR BORROWER DEFENSE

Answer the questions for each section below that applies to you.

For each section below that applies to you, please provide a **detailed** description of why you believe you are entitled to borrower defense, including the following information:

1. How the school communicated with you, whether in a brochure, online, over the phone, by email, or in person

2. The name/title of people who you believe misled you *(if known)*

3. What the school told you or failed to tell you.

4. Why you believe you were misled.

Attach any related documents, such as transcripts, enrollment agreements, promotional materials from the school, emails with school officials or your school's manual, or course catalog.

**Note: You only need to provide information for the sections below that apply to you, but you must complete at least one section. If you are a Parent PLUS borrower, the word "you" in the following sections also refers to the student.**

If you need more space to complete any section, please attach additional pages to your application.

EMPLOYMENT PROSPECTS

Did the school mislead you *(or fail to tell you important information)* about promises of future employment, likelihood of finding a job, eligibility for certification or licensure in your field of study, how many students graduate, and/or earnings after graduation?

☐ Yes   ☒ No

If yes, you must provide <u>detailed</u> information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

N/A

*Did you choose to enroll in your school based in part on the issues you describe above?

☐ Yes   ☒ No

PROGRAM COST AND NATURE OF LOAN

Did the school mislead you *(or fail to tell you important information)* about how much your classes would cost, how you would pay for your education, the terms of loan repayment, and/or other issues about the cost of your education?

☒ Yes   ☐ No

If yes, you must provide <u>detailed</u> information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

I learned of Med-Help Training School via a television commercial. Upon visiting the school, I was informed that since I was low-income I was eligible for a grant that would cover the full cost of tuition.

During the enrollment process, all communication took place in-person at the school. The intake counselor indicated my financial status made me eligible for a grant that would not have to be repaid. Additionally, she informed me that if I didn't enroll immediately I may not be eligible for any aid since it was only available during certain times during the year.

Sadly the repercussions of their misleading information caused me financial harm, because it wasn't until my wages were garnished many years later that I learned I never received a grant rather loans that needed to be repaid. The school closed effective 3/4/94, so they are no longer available to provide records and admissions documents. Additionally, I was forced to make a payment to the Department of Education, which I could not afford, though I reported the school's fraudulent action(s) about the nature and repayment of tuition. Additionally, I have repeatedly stated my understanding was that I received a grant.

***Documentation such as transcripts, enrollment agreements, and registration documents are not available. I contacted the Bureau of Private Post Secondary Education in California but they have no records for the school.

*Did you choose to enroll in your school based in part on the issues you describe above?

☒ Yes   ☐ No

## TRANSFERRING CREDITS

Did the school mislead you *(or fail to tell you important information)* about transferring your credits from this school to other schools?

☐ Yes   ☒ No

If yes, you must provide <u>detailed</u> information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

N/A

*Did you choose to enroll in your school based in part on the issues you describe above?

☐ Yes   ☒ No

## CAREER SERVICES

Did the school mislead you *(or fail to tell you important information)* about the availability or quality of job placement, career services assistance, or the school's connections to employers within your field of study?

☐ Yes   ☒ No

If yes, you must provide <u>detailed</u> information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

*Did you choose to enroll in your school based in part on the issues you describe above?

☐ Yes   ☐ No

EDUCATIONAL SERVICES

Did the school mislead you *(or fail to tell you important information)* about educational services, such as the availability of externships, qualifications of teachers, instructional methods, or other types of educational services?

☐ Yes  ☒ No

If yes, you must provide underlined information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

 N/A

*Did you choose to enroll in your school based in part on the issues you describe above?

☐ Yes  ☒ No

ADMISSIONS AND URGENCY TO ENROLL

Did the school mislead you *(or fail to tell you important information)* about the importance of enrolling immediately, the consequences of failure to enroll, how difficult it was to be admitted, or anything else about the admission process?

☒ Yes  ☐ No

If yes, you must provide underlined information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

During the enrollment process, all communication took place in person on the school's campus. The intake counselor stated if I didn't enroll when I did I would not be eligible for aid since it was only available during certain times of the year.

I've suffered financial harm, because the information I received was not truthful. I was misled to believe that I received aid that did not have to be repaid. I have always maintained the school was fraudulent when they indicated my tuition was covered by a grant that did not need to be repaid.

Additionally, I was forced to make a payment to the Department of Education although I informed them of the school's misleading information about the nature and repayment of tuition.

*Did you choose to enroll in your school based in part on the issues you describe above?

☒ Yes  ☐ No

OTHER

Do you have any other reasons relating to your school that you believe qualify you for borrower defense, such as your school failing to perform its obligations under its contract with you, or that there is a judgment against your school in a Federal court, a State court, or in front of an administrative board or that you believe that you have a state law cause of action against the school?

☒ Yes    ☐ No

Is there some other reason you feel your school misled you?

☒ Yes    ☐ No

If yes, you must provide <u>detailed</u> information about how the school misled you. Please also describe any financial harm to you as a result of the school's conduct.

> Med-Help Training School, like many of California's private postsecondary schools in 1991, operated with virtually no oversight until the Bureau of Private and Post-Secondary Education ("BPPE") was set up in January 2010. Med-Help Training School closed effective 03/04/1994, but students were not notified of the closure and there is no custodian of records. According to the BPPE, all school records; including transcripts, attendance records, and financials were destroyed. Until 2010 California only required post-secondary schools to maintain student records for five (5) years. Moreover, the state's regulatory agency did not alert students they might be attending unapproved institutions.

> Incidentally, the BPPE took the place of the state regulatory agency that was disbanded in 2007 after California state lawmakers deemed it "ineffective". This regulatory agency that was ineffective would have been negligent in their oversight of Med-Help Training School.

> In 1994 US Dept. of Ed auditors uncovered a massive computer system foulup in the California Student Aid Commission's guarantor operations. Among other things, the California agency's computer was failing to send the required pre-claims assistance notices to colleges. These notices are requests for help in preventing a possible loan default by a student borrower whose loan has become delinquent. The California computer snafu meant that colleges were completely unaware that a loan was about to go into default and powerless to do anything to help. Yet, under the complex FFEL rules, the innocent colleges had to pay the price of having these defaults count against their so-called cohort rate, and I suffered the harm as well.

*Did you choose to enroll in your school based in part on the issues you describe above?

☒ Yes    ☐ No

## SECTION V: FORBEARANCE/STOPPED COLLECTIONS

If you are not currently in default on your federal student loans, you may request to have them placed into **forbearance** status while your application is under review. **Forbearance means that you do not have to make loan payments and your loans will not go into default**. Forbearance will continue until the borrower defense review process of your application is completed. Your servicer will notify you when your loans have been placed into forbearance status.

If your federal student loans are in **default**, you may request to have debt collection on your loan stopped ("**stopped collections status**"). **This means that the federal government or debt collection companies will stop attempting to collect on the loans, including by not withholding money from your wages or income tax refunds.** Stopped collections status will continue until the borrower defense review process of your application is completed.

Please see the "Common Questions and Answers Regarding Forbearance/Stopped Collections" section on the Borrower Defense website (https://studentaid.ed.gov/borrower-defense) if you have any questions regarding choosing to enter forbearance or stopped collections.

**Note that interest will continue to accumulate on federal loans regardless of what status they are in, including subsidized loans. If your application for borrower defense is denied, or partially approved, the total amount you owe on those loans may be higher.**

**PLEASE NOTE:** You do not have to place your loans in forbearance or stopped collections to apply for borrower defense relief.

For the most current information with regard to your rights and obligations regarding forbearance and stopped collections, please visit the Borrower Defense website at https://studentaid.gov/borrower-defense.

*Are you requesting forbearance/stopped collections?

☒ Yes, I want all of my federal loans currently in repayment to be placed in forbearance and for collections to stop on any loans in default while my borrower defense application is reviewed. During this time period, I understand that interest will continue to accrue.

☐ No, I do not want all of my federal loans currently in repayment to be placed in forbearance and for collections to stop on any loans in default while my borrower defense application is reviewed.  During this time period, I understand that interest will continue to accrue and that I must continue to make loan payments.

If you do not select one of the options immediately above, your federal loans currently in repayment will automatically be placed into forbearance and collections will stop for any defaulted loans, and the Department will request forbearance for any commercially held Federal Family Education Loan (FFEL) program loans currently in repayment and for debt collection to stop for any defaulted, commercially held FFEL program loans that you have currently *(as applicable)*.

## SECTION VI.  CERTIFICATION

By signing this attestation I certify that:

All of the information I provided is true and complete to the best of my knowledge. Upon request, I agree to provide to the U.S. Department of Education information that is reasonably available to me that will verify the accuracy of my completed attestation.

I agree to provide, upon request, testimony, a sworn statement, or other documentation reasonably available to me that demonstrates to the satisfaction of the U.S. Department of Education or its designee that I meet the qualifications for borrower defense.

I certify that I received proceeds of a federal loan, in whole or in part, to attend the school/campus identified in Section II (above).

I understand that if my application is approved and some or all of my loans are forgiven, I am assigning to the U.S. Department of Education any legal claim I have against the school for those forgiven loans. By assigning my claims, I am effectively transferring my interests in any claim that I could make against the school relating to the forgiven loans (including the ability to file a lawsuit over those forgiven loans and any money ultimately recovered in compensation for those forgiven loans in court or other legal proceedings) to the U.S. Department of Education. I am not assigning any claims I may have against the school for any other form of relief --including injunctive relief or damages related to private loans, tuition paid out-of-pocket, unforgiven loans, or other losses.

I understand that the U.S. Department of Education has the authority to verify information reported on this application with other federal or state agencies or other entities. I authorize the U.S. Department of Education, along with its agents and contractors, to contact me regarding this request at the phone number above using automated dialing equipment or artificial or prerecorded voice or text messages.

I understand that any rights and obligations with regard to borrower defense to repayment are subject to the provisions currently in effect under Title 34 of the Code of Federal Regulations.

I understand that if I purposely provided false or misleading information on this application, I may be subject to the penalties specified in 18 U.S.C. § 1001, including fines.  I understand that I may be asked to confirm the truthfulness of the statements in this application to the best of my knowledge under penalty of perjury.

| *Signature *Marver Jinn* | Date |
|---|---|
| | August 27, 2018 |

Submit this form and any additional documents you believe will help us review your application by email to BorrowerDefense@ed.gov  or by mail to: U.S. Department of Education - Borrower Defense to Repayment, PO Box 42633, Monticello, KY 42633.

## PRIVACY NOTICE

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you: The authorities for collecting the requested information from and about you are §421 *et seq.*, §451 *et seq.* and §461 *et seq.* of the Higher Education Act of 1965, as amended (20 U.S.C. 1071 *et seq.*, 20 U.S.C. 1087a *et seq.*, and 20 U.S.C. 1087aa *et seq.*) and the authorities for collecting and using your Social Security Number (SSN) are §§428B(f) and 484(a)(4) of the HEA (20 U.S.C. 1078-2(f) and 20 U.S.C. 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the William D. Ford Federal Direct Loan (Direct Loan) Program, the Federal Family Education Loan (FFEL) Program, or the Federal Perkins Loan (Perkins Loan) Program, and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate. The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the Direct Loan Program, FFEL, or Perkins Loan Programs, to permit the servicing of your loans, and, if it becomes necessary, to locate you and to collect and report on your loans if your loans becomes delinquent or defaults. We also use your SSN as an account identifier and to permit you to access your account information electronically. The information in your file may be disclosed, on a case- by-case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loans, to enforce the terms of the loans, to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions. To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to efficiently submit student enrollment statuses, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies. In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

## PAPERWORK REDUCTION ACT NOTICE

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0146. Public reporting burden for this collection of information is estimated to average 1 hour per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to obtain or retain a benefit (20 U.S.C. 1087e(h)). If you have comments or concerns regarding the status of your individual submission of this application, please contact BorrowerDefense@ed.gov directly.

# Exhibit B

███

██████ ████████████████████████

███████████████████████████ ████████████████████

████

**From:** Borrower Defense <borrowerdefense@ed.gov>
**To:** █████████████████████
**Sent:** Thursday, April 16, 2020, 09:38:17 AM PDT
**Subject:** Borrower defense discharge ineligibility information for you [ ████████████████ ]



4/16/2020

Borrower Defense Application #: ███████

Dear Maureen Simmons:

The U.S. Department of Education (ED) has completed its review of your application under the applicable Borrower Defense to Repayment regulations for discharge of your William D. Ford Federal Direct Loans (Direct Loans) made in connection with your or your child's enrollment at Med Help Training School. ED has determined that your application is ineligible for relief based on review of the facts of your claim and the regulatory criteria for relief; this decision means that your Direct Loans will not be discharged. ED explains the reasons below.

**Applicable Law**

For Direct Loans first disbursed prior to July 1, 2017, a borrower may be eligible for a discharge (forgiveness) of part or all of one or more Direct Loans if the borrower's school engaged in acts or omissions that would give rise to a cause of action against the school under applicable state law. *See* § 455(h) of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1087e(h), and 34 C.F.R. § 685.206(c) and 685.222 (the Borrower Defense regulations). ED recognizes a borrower's defense to repayment of a Direct Loan only if the cause of action directly relates to the Direct Loan or to the school's provision of educational services for which the Direct Loan was provided. 34 C.F.R. §§685.206(c)(1), 685.222(a)(5); U.S. Department of Education, Notice of Interpretation, 60 Fed. Reg. 37,769 (Jul. 21, 1995).

**Why was my application determined to be ineligible?**

ED reviewed your borrower defense claim based on any evidence submitted by you in support of your application, your loan data from the National Student Loan Data System (NSLDS®), and evidence provided by other borrowers.

<u>Allegation 1: Program Cost and Nature of Loans</u>

You allege that Med Help Training School engaged in misconduct related to Program Cost and Nature of Loans. This claim fails for the following reason(s): Failure to State a Claim Actionable Under the Borrower Defense Regulation.

Your claim for relief on this basis therefore is denied.

<u>Allegation 2: Admissions and Urgency to Enroll</u>

You allege that Med Help Training School engaged in misconduct related to Admissions and Urgency to Enroll. This claim fails for the following reason(s): Insufficient Evidence.

Your claim for relief on this basis therefore is denied.

<u>Allegation 3: Other</u>

You allege that Med Help Training School engaged in misconduct related to Other. This claim fails for the following reason(s): Failure to State a Legal Claim.

Your claim for relief on this basis therefore is denied.

**What if I do not agree with this decision?**

If you disagree with this decision, you may ask ED to reconsider your application. To submit a request for reconsideration, please send an email with the subject line "Request for Reconsideration [███████████████████] " to BorrowerDefense@ed.gov or mail your request to U.S. Department of Education, P.O. Box 1854, Monticello, KY 42633. In your Request for Reconsideration, please provide the following information:

    1.  Why you believe that ED decided incorrectly your borrower defense to repayment claim; and

    2.  Identify and provide any evidence that demonstrates why ED should approve your borrower defense to repayment claim under the applicable law set forth above.

ED will not accept any Request for Reconsideration that includes new allegations. If you wish to assert allegations that were not included in your application, please see the following section. Additionally, your loans will not be placed into forbearance during the reconsideration process. Failure to begin or resume repayment will result in collection activity, including administrative wage garnishment, offset of state and federal payments you may be owed, and litigation. For more information about the reconsideration process, please contact our borrower defense hotline at 1-855-279-6207 from 8 a.m. to 8 p.m. Eastern time (ET) on Monday through Friday.

**Can I apply for borrower defense if I have additional claims?**

If you wish to file a new application regarding acts or omissions by the school other than those described in borrower defense application

████████, please submit an application at StudentAid.gov/borrower-defense. In the new application, you should explain in the relevant section(s) the basis for any new borrower defense claim(s) and submit all supporting evidence.

**What should I do now?**

Because your borrower defense to repayment application was found to be ineligible, you are responsible for repayment of your loans. ED will notify your servicer(s) of the decision on your borrower defense to repayment application within the next 15 calendar days, and your servicer will contact you within the next 30 to 60 calendar days to inform you of your loan balance. Further, if any loan balance remains, the loans will return to their status prior to the submission of your application. If your loans were in forbearance as a result of your borrower defense to repayment application, the servicer will remove those loans from forbearance. **\*See COVID-19 Note below.**

If your loans are in default and are currently in stopped collections, your loans will be removed from stopped collections. Failure to begin or resume repayment could result in collection activity such as administrative wage garnishment, offset of state and federal payments that you may be owed, and litigation. **\*See COVID-19 Note below.**

While normally interest would not be waived for unsuccessful borrower defense applications, given the extended period of time it took ED to complete the review of this application, the Secretary is waiving any interest that accrued on your Direct Loans from the date of the filing of your borrower defense application to the date of this notification. Your servicer will provide additional information in the coming months regarding the specific amount of interest adjusted. **\*See COVID-19 Note below.**

**\*COVID-19 Note:** In March 2020, President Trump announced an interest rate waiver, and Secretary DeVos authorized additional payment and collection relief to provide student loan relief to borrowers during the coronavirus (COVID-19) national emergency. Effective March 13, 2020, all borrowers with federally held student loans will: (1)  automatically have their interest rates set to 0% for a period of at least 60 days; and, (2) have the option to suspend their payments for at least 60 days to allow greater flexibility during the national emergency. In addition, also effective March 13, 2020, for defaulted borrowers, all proactive collection activities, wage garnishments, and Treasury offsets have been stopped. Your federal loan servicer will answer any questions you have about your specific situation. In addition, Federal Student Aid's COVID-19 information page for students, borrowers, and parents is located at StudentAid.gov/coronavirus. Please visit the page regularly for updates.

**What if I have another pending borrower defense application?**

If you have additional pending borrower defense to repayment applications, this information applies to you:

- If your loans associated with an additional borrower defense to repayment application that is still pending are in forbearance or another status that does not require you to make payments, your loans will remain in forbearance or that other status. Similarly, if your loans associated with that borrower defense application are in default and you are currently in stopped collections, those loans will remain in stopped collections.

- If you are unsure if you have additional pending applications, or if you would like to check on the status of your loans associated with an additional application, contact our borrower defense hotline at 1-855-279-6207 from 8 a.m. to 8 p.m. ET on Monday through Friday.

ED offers a variety of loan repayment options, including the standard 10-year repayment plan, as well as extended repayment, graduated repayment, and income-driven repayment plans. For more information about student loan repayment options, visit StudentAid.gov/plans. If you have questions about the status of your loans or questions about repayment options, please contact your servicer(s). If you do not know the name of your federal loan servicer, you may go to StudentAid.gov to find your servicer and view your federal loan information.

Sincerely,

U.S. Department of Education

Federal Student Aid



CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

# Exhibit C



**From:** U.S. Department of Education <noreply@studentaid.gov>
**To:** ████████████████████████████
**Sent:** Friday, June 19, 2020, 01:51:34 PM PDT
**Subject:** Get Out of Default with Limited-time CARES Act Benefits

Click here to view this email as a web page.

## Maureen, take advantage of this limited-time opportunity to get your student loans out of default

The *CARES Act* provides unique opportunities to support your currently defaulted student loans. One option for getting your loan out of default is loan rehabilitation. Through loan rehabilitation, your loan servicers will work with you to review your discretionary income and set a loan payment that could fit with your budget.

Loan rehabilitation typically requires nine monthly payments. However, under the *CARES Act*, if you enter the program you will receive automatic credit for suspended monthly payments that would have been made between your rehabilitation agreement date and

September 30, 2020.

**Other benefits of entering a loan rehabilitation program now may include**
- removing the record of default from your credit history;
- avoiding additional collection costs;
- preventing enforced collections, like wage garnishment or offset of tax refunds, and
- regaining eligibility for deferment, forbearance, federal loan forgiveness programs, and additional federal student aid.

## Steps to Complete Your Loan Rehabilitation Application

1 **Mail or Fax a Copy of Your Latest Official Tax Transcript**
To start your rehabilitation application, mail or fax a copy of your official tax transcript for the most recent tax year (signature not required). You can request your tax transcript online. A copy of your federal Form 1040 tax return for the most recent tax year (both pages) can also be sent. Please note, digital signatures are not accepted, and this form must be physically signed. If you do not have your tax transcript or your federal Form 1040 tax return, you can complete the Loan Rehabilitation Income and Expense Information form.

**To expedite your application, fax or mail your tax transcript or a copy of your tax return to one of our designated outlets to access these limited-time benefits**

**Fax:**
903-454-2243

**Address:**
U.S. Department of Education
Default Resolution Group
P.O. Box 5609
Greenville, TX 75403-5609

**Phone:**
1-800-621-3115

**2  Sign and Return Rehabilitation Agreement**

Within 10 business days of receiving your income and expense
information, we will calculate your monthly payment and send you a
rehabilitation agreement letter that lists your payment options and the
terms of the program. Send this signed agreement back as soon as
possible (using the fax and address info listed in step one) to increase
the likelihood of receiving the *CARES Act* benefits.

---

**3  Begin Rehabilitation Payments in October 2020**

You will automatically receive credit for payments between your
rehabilitation agreement date and October 2020. For example, a
borrower who enrolls in rehabilitation in July would get credit for
payments due in July, August, and September (three payments). They
would then have to make six more monthly payments (from October
2020 to March 2021) to complete the rehabilitation program.

Sincerely,

Federal Student Aid
U.S. Department of Education



