JOSEPH JARAMILLO (SBN 178566)
jjarmillo@heraca.org
CLAIRE L. TORCHIANA (SBN 293026)
ctorchiana@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, CA 94611
Tel.: (510) 271-8443
Fax: (510) 868-4521

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL (*pro hac vice*)
tomerrill@law.harvard.edu
MARGARET E. O'GRADY (*pro hac vice*)
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, TRESA APODACA, ALICIA DAVIS, and JESSICA JACOBSON on behalf of themselves and all others similarly situated, | Case No. 19-cv-03674-WHA **PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE** |
| *Plaintiffs*,      v. | |
| ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education, and | |
| THE UNITED STATES DEPARTMENT OF EDUCATION, | |
| *Defendants*. | |

1    In response to this Court's Order for Responsive Briefing (ECF No. 160), Plaintiffs submit

2    this reply to Defendants' Response to the Court's Order to Show Cause (ECF No. 150).

## I.    INTRODUCTION

An order enjoining the Department of Education (ED) from issuing further denial notices and vacating previously issued notices is necessary to protect the class and is well within the scope of this Court's authority. While Defendants apparently would like to avoid the accountability that comes with injunctive relief, their conduct during this litigation and the significant harms class members have already experienced demonstrate why injunctive relief is necessary.

Plaintiffs have made the requisite showing for immediate equitable relief: "(1) likely success on the merits; (2) likely irreparable harm absent preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public's interest." *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (citations omitted). Plaintiffs have shown that ED's continuous abdication of its mandatory duty to decide borrower defense applications on the merits, and, in the alternative, their unreasonable delay in issuing decisions, is unlawful under the APA. *See* ECF No. 149 at 11-9. Secondly, Defendants' conduct has imposed—and, absent injunctive relief, will continue to impose—irreparable harm on class members in the form of disastrous financial harm,[1] emotional and psychological harm, and deprivation of constitutionally protected rights. See ECF No. 149 at 9-17. Lastly, it is plain that the injunction is in the public interest, given that without it the entire class of borrowers will be thrown into financial distress and administrative limbo, while ED continues to act in contravention of its governing regulations and the APA.

---

[1] While Defendants emphasize that "monetary harm does not constitute irreparable harm" (ECF No. 150 at 4 n. 3), this is not true where a plaintiff lives on a fixed income and minimal increases in their cost of living create "potential financial disaster," the possible "deprivation of life's necessities," and concomitant "emotional distress." *United Steelworkers of Am., AFL-CIO. v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987) (Breyer, J.); *see also Calvillo Manriquez v. DeVos,* Case No. 3:17-cv-07210-SK, ECF No. 60 (N.D. Cal May 25, 2018) (enjoining Secretary DeVos and ED from using average earnings rule and finding that plaintiffs had shown "irreparable harm because the economic harm they are suffering affects their ability to pay for life's basic necessities"). Additionally, in the APA context, "economic harms may be irreparable because plaintiffs are otherwise unable to recover monetary damages." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 854 (9th Cir. 2020) (citing *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)).

Defendants' Response to this Court's Order to Show Cause tries to artificially narrow how this Court may respond to ED's malfeasance. Defendants simultaneously claim that the sufficiency of the denial notices is not within the scope of the litigation, and that they do not need to be enjoined because they will refrain from breaking the law moving forward. The Court should not take the Defendants at their word. First, the pro forma denial notices are directly relevant to Plaintiffs' claim that ED has employed a policy of not granting or denying borrower defense applications on the merits, because the denial notices do not genuinely resolve borrowers' applications. Second, the Defendants have consistently acted in bad faith and provided pretextual reasons for their illegal actions. This Court can and should enjoin Defendants from inflicting further harm on class members while it reaches a decision on the merits of this litigation.

## II.   ARGUMENT

### A.   A Preliminary Injunction is Warranted, Even Though Defendants Claim They Will Not Issue Any More Denial Notices.

A preliminary injunction is necessary to (i) hold Defendants accountable to their representation that they will stop issuing unlawful denial notices to class members, and (ii) restore the *status quo ante* for class members who have already received a denial notice. Unfortunately, a court order is necessary because Defendants have repeatedly shown that they cannot be taken at their word. Moreover, an injunction is necessary because Defendants' representations, even if implemented, would only prevent irreparable harm for those class members who have not yet been issued a decision.  This is not enough—this Court should order that all the denial notices are vacated. ECF No. 149 at 23-24. As this Court recognized, "[w]e don't have the luxury of simply seeking to forestall harm, it descended upon the class long ago." *Id.* at 15.

#### i.   Accountability is Needed.

Defendants' conduct up to and during the pendency of this litigation belies their claim that a court order is unnecessary to protect class members from irreparable harm. Defendants claim an injunction is unnecessary because, effective October 21, 2020, they stopped issuing further decisions denying the borrower defense applications of class members, and they will "continue to refrain from doing so until a ruling on that form of denial can be had." ECF No. 150 at 2-3.

However, as this Court has recognized, "[j]udicial review of agencies is deferential, not naïve." ECF No. 149 at 15.

An Order enjoining Defendants from issuing denial notices to the class is necessary to ensure that class members have an enforcement mechanism to keep ED accountable to its promise to cease issuing unlawful denials. ED has repeatedly violated the Administrative Procedure Act (APA); the Higher Education Act (HEA); its own governing regulations (*see, e.g.*, 34 C.F.R. § 685.222(e)(2)-(4)); and class members' constitutional due process rights. If Defendants acted in good faith, this litigation would be settled and resolved. The parties spent the months of January 2020 to August 2020 negotiating and seeking court approval for a settlement agreement, only for Defendants to undermine the agreement by issuing "perfunctory" denial notices that are plagued by "questions of legality." ECF 149 at 11. This was after Defendants spent eighteen months *not* granting or denying a single borrower defense on the merits, in violation of section 706(1) of the APA. ECF No. 149 at 13. To make matters worse, the scant denials contradict the Secretary's purported justifications for the delay, giving rise to an inference that the reasons for the delay were pretextual. ECF 149 at 12-13. While the Secretary claimed that the eighteen-month delay was due to the difficulty in issuing "time-consuming and complex" final decisions that reflect "considered results," the denials issued in fact "bear no indication" of such legal analysis. *Id.* at 13. After years of experiencing ED's deliberate infliction of confusion and uncertainty, class members deserve at least to know that they will be protected from further harm while the Court reaches a decision on the merits of this litigation.

Defendants are incorrect that Plaintiffs cannot show irreparable harm in light of ED's representations. ECF No. 150 at 3. To the contrary, a motion for preliminary injunction "does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to [their] old ways." *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1153 (9th Cir. 2006); *see also Public Utilities Comm'n of Ca. v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1460 (9th Cir. 1996); *Dariano v. Morgan Hill Unified Sch. Dist.*, No. C 10-02745 JW, 2011 WL 13254303, at *4 (N.D. Cal. Feb. 17, 2011) ("The Ninth Circuit has found that mootness based on a defendant's claim of voluntary termination of the wrongful activity is 'exceedingly rare.'") (citation omitted). In order

to defeat Plaintiffs' showing that a preliminary injunction is warranted, Defendants must show that (1) "subsequent events [have] made it absolutely clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur," . . . and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1274 (9th Cir. 1998) (citations omitted).

When a government agency suspends challenged conduct through a voluntary change in official stance or conduct, "it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again." *A.O. v. Cuccinelli*, Case No. 19-cv-06151-SVK, 2020 U.S. Dist. LEXIS 77367, at *15 (N.D. Cal. May 1, 2020) (plaintiffs were entitled to an injunction where the informal rescission of the challenged agency action was not necessarily permanent and did not correct the objectionable conduct that had already occurred as a result of the policy). In particular, courts are "less inclined to find mootness where the new policy could be easily abandoned or altered in the future." *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014) (citation omitted). Courts have properly issued preliminary injunctions when defendants voluntarily ceased the challenged conduct where it could recur or cessation did not eradicate the effects of the alleged violation. *See Fed. Trade Comm'n v. Affordable Media*, LLC, 179 F.3d 1228, 1237-38 (9th Cir. 1999) (defendants' cessation of Ponzi scheme did not moot the need for a preliminary injunction); *cf. Norman- Bloodsaw*, 135 F.3d at 1274-75 (defendant failed to demonstrate it would never resume the challenged medical testing and still maintained records of the testing).

Here, there is a high risk of recurrence. Absent a preliminary injunction, there is no way to ensure class members that Defendants will not "return to their old ways." *LGS Architects,* 434 F.3d at 1153. Defendants have not shown that any "subsequent events [have] made it absolutely clear" that their issuing of perfunctory, unlawful denials cannot "reasonably be expected to recur." *Norman-Bloodsaw*, 135 F.3d at 1274. Assurances made in litigation lack the force of any enforceable, final agency policy.

Moreover, there has been no subsequent relief that has "completely and irrevocably eradicated the effects" of the illegitimate and unlawful denials. *Norman-Bloodsaw*, 135 F.3d at 1274 (citation omitted). While Defendants maintain that the CARES Act has completely eradicated

the effects of their unlawful conduct (ECF No. 150 at 3), this relief is temporary and entirely outside of ED's control. *See* ECF No. 149 at 12-13.   Furthermore, a voluntary assurance of forbearance would not truly provide relief for the administrative limbo, due process violations, and emotional harm stemming from uncertainty that class members have suffered and will continue to suffer.

   **ii.**  **This Court Should Vacate the Insufficient Notices that Have Already Been Issued.**

  A preliminary injunction is also necessary because the denial notices that have already been issued should be vacated in order to restore the *status quo ante*. All members of the class should be treated the same, regardless of whether they have already received a denial notice. "Normally, when a court issues an injunction, the injunction orders a return to the status quo," *Calvillo Manriquez v. DeVos*, Case No. 3:17-cv-07210-SK, ECF No. 60 at 36 (N.D. Cal. May 25, 2018), where the status quo constitutes the "last, uncontested status" between the parties "preced[ing] the pending controversy." *N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009); *see also Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014).

   Here, the *status quo ante* for all class members is federal student loan forbearance pending a final, valid decision on the merits of their borrower defense applications. As this Court has recognized, borrowers who have received a denial are in a worse position than they started, as they "may have a 'decision' (though that is hotly contested), but they have neither a meaningful explanation nor . . . any meaningful opportunity to appeal or request the Secretary's reconsideration. The form denial, frankly, hangs borrowers out to dry." ECF No. 146 at 15.

  This Court has full authority to issue an order enjoining the Defendants from issuing further denials and vacating previously issued denials. *See, e.g.*, *Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058, 1108 (C.D. Cal. 2015) (enjoining defendant employer from engaging in certain business practices *and* reinstating previously terminated employees). Vacating previously issued decisions is appropriate in an APA action: "In general, when a court finds that the action of an agency violated the APA, it remands the matter to the agency for further consideration and vacates the challenged action in whole or in part." *Today's IV, Inc. v. Fed. Trans.*

*Admin.*, No. LA CV13–00378 JAK (PLAx), 2014 WL 5313943, at *17 (C.D. Cal Sept. 12, 2014); *cf. Klamath–Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1245-48 (N.D. Cal. 2015) (though denying injunctive relief, vacating previous permits issued by U.S. environmental agencies that violated Endangered Species Act). Vacatur of an agency decision is subject to a balancing test weighing "the seriousness of an agency's errors" against "the disruptive consequences that would result from vacatur." *Klamath–Siskiyou*, 109 F. Supp. 3d at 1242; *see id.* at 1246 (finding that the seriousness of agency's errors outweighed the disruption that would result from vacating the permits). Here, the "seriousness of the agency's errors" is clear, and there would be *no* "disruptive consequences" from vacatur. Rather, vacatur would ensure that the class is treated uniformly.

At the very least, if the Court decides not to vacate previously issued denials at this stage of the litigation, all class members—whether or not they have received a denial notice—should be placed in administrative forbearance to protect all class members equally from the irreparable financial harm that would ensue from resumed collections. *See Calvillo Manriquez v. DeVos,* Case No. 3:17-cv-07210-SK, ECF No. 60 at 37 (N.D. Cal June 19, 2018) (enjoining the Secretary from using the average earnings rule, and ordering ED to suspend collections and provide forbearance to all past claimants who received a decision under the average earnings rule). An injunction is necessary here because, as detailed above, ED requires an accountability mechanism.  While Defendants state that they will voluntarily provide forbearance to class members, this stretches the imagination. Class members have reported that they have already been improperly taken out of forbearance while their applications were pending. *See, e.g.*, ECF No. 159 ¶ 5 (Affidavit of Rebekah Norton); ECF No. 155 ¶ 7 (Affidavit of Jennifer Lezan). And in recent months, ED has already improperly collected on student loan borrowers in violation of the CARES Act during a pandemic. *See* ECF No. 149 at 12.

**B.**     **This Court May Consider the Sufficiency of the Denial Notices.**

While Defendants would like to narrow the scope of this lawsuit so that it addresses only a portion of their misconduct, the sufficiency of denial notices is well within the scope of this

litigation—including discovery, class certification, and relief.[2] The insufficient denial notices go to the heart of Plaintiffs' claim: that ED has willfully withheld or delayed its mandatory duty to issue class members a final borrower defense decision on the merits of their claims.  The class of plaintiffs includes all people, with certain exceptions, "who have asserted a borrower defense to the Department, whose borrower defense has not been granted or denied *on the merits* . . . ." ECF No. 1 ¶ 371 (emphasis added); ECF No. 46 at 14. The Complaint alleged that "Defendants have violated the APA, 5 U.S.C. § 706(1) because they have refused to grant applications from members of the proposed class," and "they have refused to deny applications from members of the proposed class," and that "[t]he Department has not brought to conclusion the applications presented to it within a reasonable time, as required by the APA." ECF No. 1 ¶¶ 378, 379, 384. The prayer for relief correspondingly encompasses the form of denials, as it asks the Court to "[d]eclare that named Plaintiffs and members of the class are entitled to a decision on their pending individual borrower defense assertions," vacate ED's "policy of refusing to grant borrower defenses," compel ED to grant eligible class members' applications, "[c]ompel [ED] to notify class members" of these decisions, and "[g]rant such further relief as may be just and proper." ECF No. 1 at 61.  As such, the perfunctory denial notices are squarely within the scope of the Complaint, because they show that ED has in fact not restarted the process of adjudicating borrower defense applications on the merits to bring them to a valid conclusion. Issuing insufficient denial notices only further emphasizes that ED is engaged in a policy of delay or withholding of mandatory agency action, and, as this Court has recognized, raises crucial questions of agency pretext. *See* ECF No. 146 at 12, 15. As has been evoked before, to the extent that ED has restarted the "conveyor belt" of agency decision-making on borrower defense applications, they have done so only in appearance

---

[2] Defendants' Response to the Court's Order to Show Cause appears to make a "shot across the bow" to significantly narrow the issues that are before this Court, noting that "[Plaintiffs'] claim in their complaint thus remains the basis for determining the proper scope of the present litigation—including scope of discovery, class certification, and relief." ECF No. 150 at 2 n.1. This Court has already recognized the centrality of the denial notices to the case, ordering discovery on three points that all touch on the sufficiency of the denial notices. *See* ECF No. 146 at 16.

1  – and are instead "indiscriminately and hastily feeding applications through a buzz-saw." ECF No.

2  149 at 6.

3      In any case, the Court may issue an Order enjoining ED from issuing denials and vacating

4  those that it has already sent, because the relief it orders may go beyond the scope of the

5  Complaint.[3] "[E]ffective relief is not dependent upon what Plaintiffs expressly sought in the

6  pleadings." *Californians for Renewable Energy v. U.S. Environmental Protection Agency*, No. C

7  15-3292 SBA, 2018 WL 1586211, at *16 (N.D. Cal. Mar. 30, 2018); *seed id.* at *14-17 (finding

8  that plaintiffs' claim of unlawful agency delay was not mooted by the agency's subsequent actions,

9  because effective declaratory relief and prospective injunctive relief were still available).

**III.     CONCLUSION**

10      As this Court has recognized, this class of Plaintiffs has already undergone a substantial

11  amount of "shared trauma," from being deceived by their educational institutions and then being

12  "h[u]ng[] out to dry" by their federal government. ECF No. 146 at 17, 15. Defendants have

13  provided every possible indication that they will engage in harmful, bad faith conduct when left

14  with the choice to do so. Plaintiffs ask this Court to issue an Order that vacates already-issued

15  denials and enjoins Defendants from issuing any more, in order to protect Plaintiffs from further

16  compounding harms and hold Defendants accountable for their actions.

17

18

19

20  Dated: November 5, 2020

21

22                      Respectfully submitted,

23

24

---

25  [3] Furthermore, though not necessary, Plaintiffs can amend the Complaint to conform to the

26  evidence if requested before, during, or even after trial. Fed. R. Civ. P. 15(a), (b); *see id.* R.
15(a)(2) ("The court should freely give leave [to amend a complaint] when justice so requires.").

27  In deciding motions to amend, Rule 15 should "be applied with extreme liberality." *Eminence
Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser*

28  *Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

1

2                                             /s/ *Claire Torchiana*

3

4                              JOSEPH JARAMILLO (SBN 178566)
                               jjarmillo@heraca.org
5                              CLAIRE TORCHIANA (SBN 293026)
                               ctorchiana@heraca.org
6                              HOUSING & ECONOMIC RIGHTS
                               ADVOCATES
7                              3950 Broadway, Suite 200
                               Oakland, CA 94611
8                              Tel.: (510) 271-8443
                               Fax: (510) 868-4521
9

10                             EILEEN M. CONNOR (SBN 248856)
                               econnor@law.harvard.edu
11                             TOBY R. MERRILL (*pro hac vice*)
                               tomerrill@law.harvard.edu
12                             MARGARET E. O'GRADY (*pro hac vice*)
                               mogrady@law.harvard.edu
13                             LEGAL SERVICES CENTER OF
                               HARVARD LAW SCHOOL
14                             122 Boylston Street
                               Jamaica Plain, MA 02130
15                             Tel.: (617) 390-3003
                               Fax: (617) 522-0715
16

17

18                             *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

27

28