1  JEFFREY BOSSERT CLARK
   Acting Assistant Attorney General
2  DAVID L. ANDERSON
   United States Attorney
3  MARCIA BERMAN
   Assistant Branch Director
4  KATHRYN C. DAVIS
   Senior Trial Counsel
5  R. CHARLIE MERRITT
   KEVIN P. HANCOCK
6  Trial Attorneys
7  U.S. Department of Justice
   Civil Division, Federal Programs Branch
8  1100 L Street, N.W.
   Washington, DC 20530
9  Telephone: (202) 616-8098
   E-mail: robert.c.merritt@usdoj.gov
10
   *Attorneys for Defendants*
11

12              **UNITED STATES DISTRICT COURT**
13         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14
15  THERESA SWEET, *et al.*,
                                            No. 3:19-cv-03674-WHA
16                  Plaintiffs,

17        v.                                **DEFENDANTS' REPLY TO**
                                            **PLAINTIFFS' RESPONSE TO ORDER**
18  ELISABETH DEVOS, in her official capacity **TO SHOW CAUSE**
    as Secretary of Education, and the UNITED
19  STATES DEPARTMENT OF EDUCATION

20                  Defendants.
21

22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Introduction ......................................................................................................... 1

Background .......................................................................................................... 2

Argument ............................................................................................................ 4

I.    Plaintiffs Have Not Established That They Are Likely to Succeed on the Merits of Any Claim Pled in the Complaint. .............................................................. 4

II.   Plaintiffs Have Not Established That They Will Suffer Irreparable Harm in the Absence of Their Requested Preliminary Injunction. ......................................... 7

   A.   Defendants' Voluntary Forbearance Prevents a Finding of Irreparable Harm. .............. 7

   B.   Plaintiffs' Asserted Harms Are Not Irreparable in Any Event. ....................................... 9

     1.   Alleged Financial Harm ............................................................................. 9

     2.   Alleged Psychological and Dignitary Harm .............................................. 10

     3.   Alleged Due Process Harm ........................................................................ 11

III.   The Balance of Equities and Public Interest Do Not Support Injunctive Relief. .............. 12

IV.   In All Events, the Vacatur Order Plaintiffs Seek is Inappropriate. .................................... 12

Conclusion ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Freedom Forge Corp.*,
  204 F.3d 475 (3d Cir. 2000)..............................................................................9

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993).........................................................................15

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009).........................................................................12

*Ass'n of Am., Inc. v. Export-Import Bank of the U.S.*,
  840 F.Supp.2d 327 (D.D.C. 2012)....................................................................10

*Calvillo Manriquez v. DeVos*,
  345 F.Supp.3d 1077 (N.D. Cal. 2018).............................................................11

*Chamber of Commerce of U.S. v. SEC*,
  443 F.3d 890 (D.C. Cir. 2006).........................................................................15

*Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.*,
  774 F.2d 1371 (9th Cir. 1985)...........................................................................7

*Elias v. Connett*,
  908 F.2d 521 (9th Cir. 1990).............................................................................9

*Forest Guardians v. Babbit*,
  174 F.3d 1178 (10th Cir. 1999)..........................................................................5

*Glynn v. Cigar Store, Inc.*,
  No. 18-cv-00031-MMC, 2018 WL 3145683 (N.D. Cal. June 27, 2018)..................7

*Hartikka v. United States*,
  754 F.2d 1516 (9th Cir. 1985).........................................................................10

*Higgins v. Spellings*,
  663 F.Supp.2d 788 (W.D. Mo. 2009)................................................................11

*Hohe v. Casey*,
  868 F.2d 69 (3d Cir. 1989)...............................................................................12

*In re Cal. Power Exch. Corp.*,
  245 F.3d 1110 (9th Cir. 2001)...........................................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Kennedy v. Sec'y of Army*,
    191 F.3d 460 (9th Cir. 1999) ........................................................................... 10

*Klamath–Siskiyou Wildlands Ctr. v. NOAA Nat'l Marine Fisheries Serv.*,
    109 F.Supp.3d 1238 (N.D. Cal. 2015) .............................................................. 14

*Koff v. Ahern*,
    No. 14-cv-04680-JD, 2015 WL 1050167 (N.D. Cal. Mar. 9, 2015)........................ 12

*Lofton v. Verizon Wireless (VAW) LLC*,
    586 F. App'x 420 (9th Cir. 2014) ....................................................................... 7

*McCrary v. Gutierrez*,
    495 F.Supp.2d 1038 (N.D. Cal. 2007) ................................................................ 8

*Mitchell v. Cate*,
    No. 2:08-cv-01196, 2014 WL 2895232 (E.D. Cal. June 25, 2014)....................... 12

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
    810 F.3d 631 (9th Cir. 2015) ........................................................................ 6, 7

*Regents of the Univ. of Cal. v. Trump*,
    908 F.3d 476 (9th Cir. 2018) ........................................................................... 13

*Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) .................................................................................... 14

*Rubin ex rel. National Labor Relations Board v. Vista Del Sol Health Services, Inc.*,
    80 F. Supp. 3d 1058 (C.D. Cal. 2015) .............................................................. 14

*S.A. v. Trump*,
    No. 18-cv-03539-LB, 2019 WL 990680 (N.D. Cal. 2019)................................... 13

*Sampson v. Murray*,
    415 U.S. 61 (1974) ......................................................................................... 10

*Save Jobs USA v. DHS*,
    105 F.Supp.3d 108 (D.D.C. 2015) .................................................................... 10

*Senate of Cal. v. Mosbacher*,
    968 F.2d 974 (9th Cir. 1992) ........................................................................... 13

*Skalka v. Kelly*,
    246 F.Supp.3d 147 (D.D.C. 2017) ...................................................................... 5

*Taiebat v. Scialabba*,
   No. 17-cv-0805-PJH, 2017 WL 747460 (N.D. Cal. Feb. 27, 2017) .......................................... 13

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
   316 F.2d 804 (9th Cir. 1963) ........................................................................................... 13

*Today's IV Inc. v. Fed. Transp. Admin.*,
   2014 WL 5313943 (C.D. Cal. Sept. 12, 2014) ........................................................................ 14

*Tully v. Mott Supermarkets, Inc.*,
   337 F. Supp. 834 (D.N.J. 1972) .......................................................................................... 13

*U.S. Ass'n of Reptile Keepers, Inc. v. Jewell*,
   106 F.Supp.3d 125 (D.D.C. 2015) ....................................................................................... 13

*Univ. of Texas v. Camenisch*,
   451 U.S. 390 (1981) ......................................................................................................... 13

*Vara v. DeVos*,
   Civil No. 19-12175-LTS, 2020 WL 3489679 (D. Mass. June 25, 2020) ................................... 11

*Vietnam Veterans of America v. Central Intelligence Agency*,
   811 F.3d 1068 (9th Cir. 2016) ............................................................................................. 5

*Volis v. City of Los Angeles Hous. Auth.*,
   No. CV 13-01397 MMM (SPx), 2013 WL 12214417 (C.D. Cal. May 6, 2013) ........................ 9

**Statutes**

5 U.S.C. § 706(1) ................................................................................................................ 2, 4, 5

29 U.S.C. § 160(j) ................................................................................................................... 14

**Introduction**

Plaintiffs request a preliminary injunction that would (1) prevent the United States Department of Education (Department) from denying the borrower defense applications of class members and (2) hold all members of the class in forbearance, so that no payments would be due on their federal student loans. But as Defendants explained in their response to the Court's October 19, 2020 Order, ECF No. 146 (Show Cause Order), the Department has already committed to doing exactly that for the pendency of this litigation. A preliminary injunction is thus unnecessary. It is also inappropriate because, in light of the Department's voluntary forbearance, Plaintiffs cannot demonstrate an imminent likelihood of irreparable harm. Indeed, the harms they describe in their response to the Court's Show Cause Order are almost entirely based on the assumption that they will start having to make federal student loan payments. And, as Defendants have argued at length, Plaintiffs cannot show a likelihood of success on the merits of the lone claim asserted in their complaint, which challenges the Department's (since ended) inaction with respect to final borrower defense decisions between June 2018 and December 2019. The relief Plaintiffs seek there (an order compelling the Department to issue borrower defense decisions) is diametrically opposed to the preliminary relief they seek here (an order preventing the Department from issuing such decisions). For that reason alone, Plaintiffs' requested preliminary injunction is improper, and they have not established that they are likely to succeed on the merits.

Plaintiffs' requested injunction is especially inappropriate to the extent it seeks to vacate every denial decision the Department has issued since this case was filed. That would improperly provide Plaintiffs the ultimate relief they seek on their (still unpled) challenge to the Department's denial decisions. It would also sow confusion among borrowers regarding the status of their claims, especially if any action necessary to implement an injunction must be unwound in the event the Department prevails on the merits. Such a backward-looking preliminary injunction is particularly disfavored, as Plaintiffs concede, and is unnecessary to maintain the status quo in light of the Department's agreement to exercise its power to keep class members in forbearance.

## Background

The lone surviving claim in Plaintiffs' complaint challenges the Department's inaction with respect to issuing final borrower defense decisions pursuant to Section 706(1) of the Administrative Procedure Act (APA), which authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  On November 14, 2019, Defendants filed an administrative record explaining the basis for the Department's delay in issuing final borrower defense decisions, which they supplemented on January 9, 2020 after the Department resumed issuing such final decisions. ECF Nos. 56, 71.  On this basis, the Department moved for summary judgment (and opposed Plaintiffs' cross motion for summary judgment), explaining through sworn declarations submitted by agency officials the Department's reasons for delay, and arguing that such delay was reasonable.  ECF Nos. 63, 72.

In a declaration filed November 14, 2019 and included in the administrative record, Colleen Nevin, the Director of the Department's Borrower Defense Unit (BDU) provided an in-depth description of the Department's adjudication of borrower defense claims.  *See* Admin R. (AR) 336-352, ECF No. 56 (Decl. of Colleen M. Nevin, Nov. 14, 2019 (Nevin Decl.)).   As that declaration explains, in 2015 and 2016 the Department was inundated with claims from borrowers who attended Corinthian Colleges, Inc. (Corinthian), and in particular those who asserted claims on the basis of the Department's findings that certain Corinthian-operated schools had misrepresented their job placement rates during specified time periods (Corinthian JPR claims). *See* AR 339-340 (Nevin Decl. ¶¶ 9-16) (explaining that as of October 2016, approximately 60% of pending borrower defense applications appeared to be Corinthian JPR claims and that 78,000 of 82,000 pending applications were submitted by Corinthian borrowers).  During this time period, the Department created a "streamlined process" for Corinthian borrowers who submitted JPR claims and focused its resources on adjudicating—and approving—these claims.  *See* AR 342-43, 347 (Nevin Decl. ¶¶ 26-29, 45-47).  Prior to the creation of the BDU in 2016, "[n]o decisions were issued on any claims other than JPR claims."  AR 347 (Nevin Decl. ¶ 46).  At that time, the Department "did not have a process for closing out and issuing decisions on borrower defense claims it flagged for denial."  AR 515.  As a result, although the BDU adjudicated a small number

1    of claims as ineligible as of October 2016, *see* AR 394, the Department did not issue final decisions

2    denying borrower defense applications between 2015 and January 2017, so its rate of approving

3    claims was high during that time period.  *See* AR 502 (showing that as of December 2017, the

4    Department had approved 31,773 claims and denied two).

5         By the time that the administrative record was filed in this case, however, the Department's

6    work on applications submitted by Corinthian students, combined with the ever-increasing flow

7    of applications from borrowers who attended other schools, had significantly reduced the share of

8    Corinthian applications in the total queue.  *See* AR 340-41 (Nevin Decl. ¶ 16) (74,000 out of

9    225,000 pending applications from Corinthian borrowers).  Defendants described a three-step

10   process for working through the backlog of claims: (1) review of claims that fit within existing

11   criteria for approval, *see* AR 345-48 (Nevin Decl. ¶¶ 39-40, 48-54); (2) review of relevant evidence

12   in the Department's possession—gathered either by the Department or "other sources such as law

13   enforcement partners" and common to categories of borrowers who attended the relevant

14   schools—to develop review protocols and approval criteria for additional schools, *see* AR 345-46,

15   351 (Nevin Decl. ¶¶ 39-41, 68-69); and (3) review of claims not fitting within either categories (1)

16   or (2), with a focus on claims that could be more quickly adjudicated because they were submitted

17   by borrowers "who did not provide any evidence and who attended schools for which BDU is not

18   aware of evidence that would support approval of the applications, AR 346, 351 (Nevin Decl.

19   ¶¶ 41, 66); *see also* AR 10 (Decl. of Diane Auer Jones ¶ 26, Nov. 14, 2019 (Jones Decl.)) (noting

20   that, even before the Department resumed issuing final decisions, it had determined that a number

21   of claims were "not supported by the evidence submitted by the borrower or information otherwise

22   available to the Department," and thus were ineligible for discharge).

23        The Department has not yet cleared the backlog of pending borrower defense applications,

24   but its adjudication of claims since December 2019 has followed the process described in the

25   administrative record.  Specifically, the Department has focused on approving the claims of

26   Corinthian and ITT borrowers who fit within its established approval criteria, on continuing its

27   review of the common evidence in its possession to develop approval criteria for other schools,

28   and on adjudicating ineligible applications where the borrower is not covered by either existing

criteria or the common evidence and does not otherwise submit sufficient evidence to support the claim. *See* Decl. of Mark A. Brown, ECF No. 140-1 (Oct. 1, 2020); Decl. of Mark A. Brown, ECF No. 145-1 (Oct. 14, 2020). So far, denials have outpaced approvals, which is not surprising given that (1) the Department previously devoted significant resources to approving as many Corinthian (and especially Corinthian JPR) claims as possible while delaying final decisions denying borrower defense claims; (2) the Department has more recently focused on maximizing the number of decisions it issues by prioritizing the applications it can most easily approve or deny based on its existing criteria and the state of its review of "common evidence"; and (3) that the most time consuming claims, *i.e.*, those potentially fitting within the Department's common evidence or that themselves provide significant relevant evidence of wrongdoing, have yet to be adjudicated.

In April 2020, the parties executed a settlement agreement. The Court ultimately denied final approval because there was no "meeting of the minds." Show Cause Order at 10. The Court ordered the parties to show cause "why the Secretary should not be enjoined from further denial of class members' borrower-defense applications until a ruling on that form of denial can be had." *Id.* at 17. The parties filed their responses on October 30, 2020. *See* Pls.' Resp. to Order to Show Cause, ECF No. 149 (Pls.' Resp.). Defendants submit this reply to Plaintiffs' response pursuant to the Court's Order of October 31, 2020. *See* ECF No. 160.

**<u>Argument</u>**

## I.   Plaintiffs Have Not Established That They Are Likely to Succeed on the Merits of Any Claim Pled in the Complaint.

There is no dispute that the only remaining claim in Plaintiffs' complaint seeks relief pursuant to 5 U.S.C. § 706(1). As Plaintiffs put it, "[t]his case was brought under Section 706(1) of the [APA], which provides that 'the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.'" Pls.' Resp. at 7. In their summary judgment briefing, Defendants explained at length why that claim is unlikely to succeed. *See* Defs. Mot. for Summ. J., ECF No. 63 (Defs.' MSJ); Defs.' Opp'n to Pls.' Mot. for Summ. J., ECF No. 72 (Defs.' MSJ Opp'n). In short, the Department's temporary, roughly 18-month delay in issuing final decisions on borrower defense claims was not "so 'egregious' as to warrant mandamus." *In re Cal. Power*

*Exch. Corp.*, 245 F.3d 1110, 1124-25 (9th Cir. 2001).  Moreover, the Department ended that delay in December 2019 and has, for the last eleven months, been "granting or denying" Plaintiffs' borrower defense applications.  *See* Compl. ¶ 10, ECF No. 1.  Defendants argued in January 2020 that Plaintiffs' claim had become moot, *see* Defs.' MSJ Opp'n at 2-5, and that argument has only strengthened over time.  Plaintiffs' continued insistence that this is an "unlawful withholding" rather than an "unreasonable delay" case, *see* Pls.' Resp. at 7-8, adds nothing to the equation.  *See* Defs.' MSJ Opp'n at 7-9.  In the absence of a concrete deadline establishing a date by which an agency must take a discrete action (as is the case here), "a court must compel only action that is delayed unreasonably."  *Forest Guardians v. Babbit*, 174 F.3d 1178, 1190 (10th Cir. 1999); *see also Skalka v. Kelly*, 246 F.Supp.3d 147, 152 (D.D.C. 2017).[1]

It is true, as Plaintiffs emphasize, that, in denying final approval of the parties' settlement agreement, the Court determined that the Department's denial notices do not on their face indicate that the Department has been engaged in the type of "time-consuming" analysis that "largely" "justif[ied]" the Department's delay.  Show Cause Order at 13, 15.  But the Department did not justify its delay solely on the need to "review individual applications, distill common evidence, and reach considered results."  *Id*. at 15 (quotation omitted).  Many factors were at play, including the Department's policy decision to have in place a comprehensive methodology for awarding relief before proceeding to issue final decisions, as well as the Department's reasonable desire to be able to approve claims before moving forward with decisions denying claims.  *See, e.g.*, Defs.' MSJ at 5-12, 16-25.  And as discussed above, the Department has recently prioritized deciding claims that can be more quickly reviewed because they either (1) fit pre-existing approval criteria

---

[1] Plaintiffs rely on *Vietnam Veterans of America v. Central Intelligence Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016), for the proposition that "the existence of a statutory timeline . . . is not required for the Court to find a section 706(1) 'unlawful withholding' violation," Pls.' Resp. at 7-8, but that case is inapposite because there was a dispute about whether the government was required to take, at all, the action that the plaintiff sought to compel.  *See Vietnam Veterans of Am.*, 811 F.3d at 1083 (Wallace, J., concurring in part and dissenting in part) (joining majority's affirmance of injunction because agency had "'unlawfully withheld' agency action *by denying that it owes* [the duty that the plaintiff sought to compel]"(emphasis added)).  Here, the Department does not dispute that it is required to issue final decisions resolving borrower defense applications, and the only question is whether its (prior) delay in doing so was reasonable.

or (2) are unsupported by any evidence provided by the borrower or that is otherwise in the Department's possession. Much of the "backbreaking effort," Show Cause Order at 15, that the Department explained would be required to adjudicate the borrower defense applications of the entire class is yet to occur—the Department continues the work of reviewing common evidence and the evaluation of applications that are supported by significant evidence is ongoing, with decisions on such applications still to come.

In any event, the Court's determination regarding pretext does not establish that Plaintiffs are, on the current record, likely to succeed on the unreasonable delay claim pled in their complaint. As the Court recognized, "[w]e need an updated record and updated discovery to determine what is going on before we again attempt to resolve the merits of this case." Show Cause Order at 11. Defendants contend that the updated record will reinforce the reasonableness of its prior delay in issuing final decisions and show that any lack of explanation in the denial notices does not mean that the Department failed to do the work necessary to process applications. Plaintiffs may disagree, but there is nothing in the current record that establishes that they will "prevail in showing that Defendants' withholding of decisions on borrower defense applications is . . . a violation of section 706(1)." Pls.' Resp. at 8.

At bottom, the problem with Plaintiffs' theory regarding likelihood of success is that the "inaction" they now purport to challenge—the manner in which the Department has been "issuing decisions" since December 2019, Pls.' Resp. at 9—is not inaction at all. Whatever concerns Plaintiffs have with the Department's denial notices, there can be no dispute that they are final agency actions, subject to judicial review under Section 706(2) of the APA. Plaintiffs' Section 706(1) claim, then, is an inappropriate vehicle to challenge the content of these final decisions. As Defendants have explained, the legal sufficiency of the Department's reasoning in its decisions denying class member claims to date is not challenged in Plaintiffs' complaint, not properly before the Court, and not properly decided on a class basis. *See generally* Defs.' Opp'n to Pls.' Mot. to Enforce Settlement, ECF No. 140 (Defs.' Opp'n to Settlement Mot.). The Ninth Circuit has made clear that there must be "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology, LLC*

*v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). In now seeking to stop the Department from issuing final decisions denying class member claims, based on the sufficiency of the explanation provided in those decisions, Plaintiffs seek preliminary relief that is not "of the same character as that which may be granted finally," *id.*, on their Section 706(1) claim. And even if it were proper for Plaintiffs to seek preliminary relief on such an unpled claim, they have not established a likelihood of success. *See* Pls.' Resp. at 9 (conclusory argument that the Department denial notices do not "even attempt to explain the agency's reasoning"); Defs.' Opp'n to Settlement Mot. at 12, 15-17 (explaining why Department's notices are not facially deficient and that their ultimate sufficiency requires a case-specific inquiry).

## II.     Plaintiffs Have Not Established That They Will Suffer Irreparable Harm in the Absence of Their Requested Preliminary Injunction.

"An essential prerequisite" before granting a preliminary injunction is a showing that irreparable injury is likely in the absence of an injunction. *See Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir. 1985). The Ninth Circuit "consider[s] cessation of the alleged misconduct in determining whether the plaintiff has carried his burden of demonstrating a likelihood of irreparable harm." *Lofton v. Verizon Wireless (VAW) LLC*, 586 F. App'x 420, 421 (9th Cir. 2014) (denying preliminary injunction because defendant had voluntarily revised the policy at issue); *see also, e.g., Glynn v. Cigar Store, Inc.*, 2018 WL 3145683, at *5 (N.D. Cal. June 27, 2018) (finding no irreparable harm where the defendant had voluntarily ceased infringing activity after receiving a demand letter).

### A.     Defendants' Voluntary Forbearance Prevents a Finding of Irreparable Harm.

Here, Plaintiffs cannot demonstrate that they will suffer irreparable harm absent a preliminary injunction because the Department has already ceased the actions that Plaintiffs allege will cause them irreparable harm. First, the Department has voluntarily taken the action that is the subject of the Court's Show Cause Order: effective October 21, 2020, the Department stopped "issuing further decisions denying the borrower defense applications of class members," and the Department has pledged to refrain from doing so until the Court issues a ruling on the form of the Department's denial letters. Oct. 30, 2020 Brown Decl. ¶ 5, ECF No. 150-1. Second, the

Department has also represented that it will exercise its legal authority to place the federal student loans of all class members—who are already not required to make payments on their federal Department-held loans through the end of 2020 under the CARES Act— in forbearance (or other appropriate repayment status) pending a final judgment on the merits.  *Id.* ¶ 7.[2]  As a result of the Department's actions, Plaintiffs cannot show that they are likely to suffer the financial, emotional, or procedural harms they claim would have arisen had the Department continued issuing denial notices.  *See* Pls.' Resp. at 9-18.[3]

Plaintiffs implicitly concede that Defendants' voluntary actions are sufficient to prevent their alleged irreparable harm when they argue that a preliminary injunction is nevertheless necessary—not to prevent any unaddressed irreparable harm—but to "ensure that the Defendants have, in fact, stopped issuing legally insufficient denial notices."  Pls.' Resp. at 2 n.1.  Plaintiffs ignore that the Department is "entitled to a presumption of administrative regularity" that can only be overcome by "clear evidence to the contrary," *McCrary v. Gutierrez*, 495 F.Supp.2d 1038, 1041 (N.D. Cal. 2007), as well as the relatively short time span of the Department's voluntary forbearance.  The Department ceased issuing the relevant denial notices more than two weeks ago, and Plaintiffs have put forth no evidence that Defendants have not in fact stopped issuing the

---

[2] Plaintiffs cite a declaration from another case to imply that the Department has been garnishing the wages of student loan borrowers despite the CARES Act.  Pls.' Resp. at 12.  Plaintiffs omit the portions of that declaration explaining that the implementation of the Department's March 2020 order to stop all wage garnishments "is wholly dependent on the [borrower's] employer implementing the notice of cancellation" it receives from the Department.  Decl. of Mark A. Brown ¶ 16 (Ex. 2 to Decl. of Margaret O'Grady), ECF No. 149-1 at 10-20.  Plaintiffs also omit the significant efforts of the Department and its loan servicer to achieve full employer compliance with its stop garnishment orders, *id.* ¶¶ 16, 23-40, and notably, Plaintiffs do not claim that the injunction they seek would apply to such employers.

[3] The forbearance provided by the CARES Act applies only to "borrowers of federal Department-held loans" (*i.e.*, Direct Loans).  Oct. 30 Brown Decl. ¶ 7, ECF No. 150-1.  The Department is also requesting that private lenders and guaranty agencies who hold Federal Family Education Loans (FFEL loans) of borrowers whose borrower defense claims have been denied place the loans into forbearance, as provided in 34 C.F.R. § 682.211(h)(7) or 34 C.F.R. § 682.410(b)(6), pending final judgment in this case.  While borrowers with privately-held FFEL Loans (the FFEL program was discontinued in 2010), may file borrower defense claims, to receive borrower defense relief they must first consolidate their FFEL Loan into a Direct Loan.  34 C.F.R. § 685.212(k)(2); 81 Fed. Reg. 75,926, 75,960-961 (Nov. 1, 2016).

notices.  Nor could they.  Absent such evidence, Plaintiffs' apparent fears that the Department will restart issuing denial notices despite declaring that it would not do so amounts to nothing more than speculation.  *See, e.g.*, *Volis v. City of Los Angeles Hous. Auth.*, 2013 WL 12214417, at *2 (C.D. Cal. May 6, 2013) ("Speculative injury does not constitute irreparable injury[.]").  Similarly speculative (and in addition circular) is Plaintiffs' argument that an injunction is necessary to "ensure there is a remedy if Defendants violate the injunction."  Pls.' Resp. at 2 n.1.  Assuming *arguendo* that the Department restarted issuing denial notices in the future despite its representations to the contrary, Plaintiffs could seek a preliminary injunction at that time if necessary to prevent any irreparable harm.  But absent a showing of irreparable harm that is *imminent*, Plaintiffs' current desire for a remedy due to the mere possibility of future harm does not justify the imposition of emergency relief.

Finally, Plaintiffs' desire to see the previously issued denial notices vacated also does not excuse Plaintiffs from demonstrating imminent irreparable harm.  *See* Pls.' Resp. at 2 n.1.  If anything, Plaintiffs' request for an injunction imposing vacatur—a remedy that goes well beyond merely preserving the status quo and anything in the Court's Show Cause Order—only highlights the need for a showing of imminent irreparable harm prior to the issuance of injunctive relief.

### B.    Plaintiffs' Asserted Harms Are Not Irreparable in Any Event.

#### 1.    Alleged Financial Harm

As discussed above, Plaintiffs will suffer no irreparable harm from being placed "back into repayment," Pls.' Resp. at 12, because the Department has agreed to keep them in forbearance until a final judgment.  And in any event, it is well established that "monetary harm" and "financial hardship" are not irreparable injuries.  *Elias v. Connett*, 908 F.2d 521, 526-27 (9th Cir. 1990).  Furthermore, even if financial hardship could constitute irreparable harm, Plaintiffs' attempt to show that several class members have incurred financial harm, *see* ECF Nos. 151-59, could not support an injunction that would apply to a class of nearly 160,000 borrowers.  *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000) ("[I]n the absence of a foundation from which one could infer that all (or virtually all) members of a group are irreparably harmed, we do not believe that a court can enter a mass preliminary injunction.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.    Alleged Psychological and Dignitary Harm

Second, Plaintiffs' claimed emotional, psychological, and dignitary harms, *see* Pls.' Resp. at 13-14, are not irreparable.  A showing of reputational harm, even coupled with lost earnings, "falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction."  *Sampson v. Murray,* 415 U.S. 61, 91-92 (1974).  Applying *Sampson*, the Ninth Circuit has rejected assertions of irreparable harm stemming from reputational damage (*i.e.*, dignitary harms) and psychological injury.  *See, e.g.*, *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985) (lost income, lost retirement and relocation pay, and damage to a military service member's reputation resulting from the stigma of a less-than-honorable discharge did not constitute irreparable harm); *Kennedy v. Sec'y of Army*, 191 F.3d 460 (9th Cir. 1999) (unpublished table decision) (applying *Hartikka* and finding that plaintiff's claim that his military "discharge will cause him loss of his military benefits as well as damage his reputation" failed to constitute irreparable harm).[4]

Even if Plaintiffs' alleged psychic and dignitary harms could constitute irreparable injury, Plaintiffs have made little effort to tie those alleged injuries specifically to the *alleged lack of sufficient information* in the Department's denial notices (which is what is at issue in the Court's Show Cause Order).  Instead, the vast majority of Plaintiffs' alleged psychic and dignitary harms appear to stem from the fact or possibility of receiving any denial at all (harms that would not be remedied by receiving the more fulsome explanation Plaintiffs now seek).  *See, e.g.*, Pls.' Resp. at 14 (describing one borrower's fears that "her student loan situation will prevent her from attending law school" and another's fear that the Department's decision "will be a denial").  Yet the very relief Plaintiffs seek in this case acknowledges that some borrower defense applications will

---

[4] Plaintiffs' alleged emotional harms are not irreparable simply because sovereign immunity would prevent Plaintiffs from recovering damages for such injuries, as Plaintiffs claim, *see* Pls.' Resp. at 13.  "[T]he mere fact that economic losses may be unrecoverable does not, in and of itself, compel a finding of irreparable harm."  *Save Jobs USA v. DHS*, 105 F.Supp.3d 108, 114 (D.D.C. 2015) (citation omitted).  Indeed, a rule to the contrary would "effectively eliminate the irreparable harm requirement" in a suit against a defendant with sovereign immunity.  *Air Trans. Ass'n of Am., Inc. v. Export-Import Bank of the U.S.*, 840 F.Supp.2d 327, 335 (D.D.C. 2012).

legitimately be denied.  *See* Compl., Prayer for Relief (requesting, *inter alia*, that the Court compel the Department to "deny class members' individual borrower defense assertions if they are not eligible for a borrower defense").  Such harms—to the extent they are not already addressed by the Department's voluntary cessation of issuing denial notices and provision of forbearance to the class—cannot provide a basis for the Court's proposed preliminary injunction.

### 3.   Alleged Due Process Harm

Third and finally, the Department's voluntary cessation also undermines Plaintiffs' claim that, absent an injunction, they would "suffer[] irreparable injury to their due process rights" due to the now-ceased notices. Pls.' Resp. at 16.  Even putting that aside, Plaintiffs could not establish an irreparable due process injury.  First, Plaintiffs have not even asserted a due process claim in this case.  Even if they had, as Plaintiffs acknowledge, Pls.' Resp. at 15 n.10, a court in this District has held that borrowers do not have a protected property interest in the outcome of their borrower defense applications, as is required to establish a procedural due process claim, *see Calvillo Manriquez v. DeVos*, 345 F.Supp.3d 1077, 1100 (N.D. Cal. 2018) (explaining that the borrower defense regulations create no property interest because an applicant is entitled to relief only "once they establish their borrower defense").[5]  Indeed, Plaintiffs acknowledge that class members only "have a mandatory right to some relief . . . *if they are eligible*." Pls.' Resp. at 15 n.10 (emphasis added and citation omitted).  By definition, the Plaintiffs who are at issue here (those who have received a denial or who have not yet received a decision) have yet to establish eligibility for relief.

In any event, the due process injury Plaintiffs allege is not irreparable. Plaintiffs argue that the now-ceased denial notices "push borrowers out of forbearance," Pls.' Resp. at 17, but the Department has agreed to exercise its authority to leave these borrowers in forbearance.  *See* Oct. 30 Brown Decl. ¶ 7, ECF No. 150-1.  And it is untrue that the denial notices "foreclose the

---

[5] On this basis, the *Calvillo Manriquez* court distinguished *Higgins v. Spellings*, 663 F.Supp.2d 788 (W.D. Mo. 2009), which Plaintiffs cite here, *see* Pls.' Resp. at 15, because that case addressed a different statutory provision that, in contrast to the borrower defense regulations, "provided no discretion to the Secretary in discharging a student loan in full."  *Calvillo Manriquez*, 345 F.Supp.3d at 1101.  Plaintiffs' reliance on *Vara v. DeVos*, 2020 WL 3489679 (D. Mass. June 25, 2020), Pls.' Resp. at 16, is also misplaced, because that case did not involve any due process claim.

possibility that [Plaintiffs] will receive a fair decision on the merits of their claim," Pls.' Resp. at 17, since the notices been halted, and the Court has indicated that its summary judgment ruling will address "the lawfulness of the perfunctory denial notice," Show Cause Order at 16.[6]

## III.     The Balance of Equities and Public Interest Do Not Support Injunctive Relief.

For similar reasons, Plaintiffs have not met their burden of showing that "the balance of equities tips in [Plaintiffs'] favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  Plaintiffs rely on two principle arguments: (1) that the balance of equities favors Plaintiffs given the alleged "significant and continued harm as a result of [the Department's] behavior," and (2) that "there is no public interest" in the continued "issuing [of allegedly] illegal form denials." Pls.' Resp. at 18.  As discussed, the Department has already stopped issuing further denial notices to class members and, through a combination of statutory relief from repayment and a commitment by the Department in this litigation, Plaintiffs will not be required to make any payments on their relevant federal loans, regardless of whether they have already received such a denial notice, until the Court enters a judgment on the merits.  *See* Oct. 30 Brown Decl. ¶¶ 5-7, ECF No. 150-1.  The balance of equities and public interest, therefore, do not tip in Plaintiffs' favor.

## IV.     In All Events, the Vacatur Order Plaintiffs Seek is Inappropriate.

Plaintiffs do not seek merely to preserve the status quo by enjoining the enforcement or implementation of the Department's denial notices pending the Court's resolution of this case. Instead, they reach beyond typical preliminary injunctive relief and the Court's Show Cause Order, and ask that this Court *vacate* "*all* the denial letters" received by class members "since th[e] case

---

[6] Moreover, to the extent Plaintiffs also suggest that the mere assertion of a due process violation is sufficient to establish irreparable harm, Pls.' Resp. at 15 n.9, 17, they are incorrect. *See, e.g., Mitchell v. Cate*, 2014 WL 2895232 (E.D. Cal. June 25, 2014) (rejecting plaintiffs' contention of irreparable harm based on allegation "that Defendants will violate their equal protection rights absent an injunction"); *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) ("Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction."). Instead, the relevant inquiry is whether Plaintiffs have alleged harm resulting from the constitutional violation that is in fact irreparable. *See Koff v. Ahern*, 2015 WL 1050167, at *3 (N.D. Cal. Mar. 9, 2015).

began." Pls.' Resp. at 20 (emphasis in original).  Plaintiffs' thinly veiled request for a type of relief normally accorded only after final judgment is inappropriate at this preliminary stage.

It is well established that courts may not grant a "preliminary" injunction that effectively gives the Plaintiffs a final judgment on the merits.  *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."); *see also Senate of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992) (a "judgment on the merits in the guise of preliminary relief is a highly inappropriate result").  Indeed, preliminary injunctive relief is fundamentally prospective in nature, with the sole purpose of maintaining the status quo by enjoining the non-movant's conduct pending the court's eventual resolution of the litigation.  *See Tully v. Mott Supermarkets, Inc.*, 337 F. Supp. 834, 851 (D.N.J. 1972) (preliminary injunction "should not be used to undo completed transactions nor to give a type of relief which, by its nature, is more suitable after there has been a plenary hearing on the merits").  Accordingly, courts generally disfavor issuing injunctions that "will provide the movant with substantially all of the relief that would be available after a trial on the merits."  *Taiebat v. Scialabba*, 2017 WL 747460, at *2 (N.D. Cal. Feb. 27, 2017) (denying preliminary injunction in an APA 706(1) case) (citing *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963)); *U.S. Ass'n of Reptile Keepers, Inc. v. Jewell*, 106 F.Supp.3d 125, 126 (D.D.C. 2015) ("[W]hen a court issues a preliminary injunction, . . . it does not typically declare the challenged rule unlawful or vacate the rule."); *but see S.A. v. Trump*, 2019 WL 990680, at *16-17 (N.D. Cal. 2019) (Beeler, Mag. J.) (holding that immigration policy should be preliminarily enjoined by way of vacatur on a nationwide basis) (citing *Regents of the Univ. of Cal. v. Trump*, 908 F.3d 476, 511-12 (9th Cir. 2018)).[7]

---

[7] Although the court in *S.A.* relied on *Regents* to preliminarily vacate the Department of Homeland Security's (DHS) decision to terminate an immigration policy, *see S.A.*, 2019 WL 990680, at *16, the injunction at issue in *Regents* did not afford such relief.  In *Regents*, this Court preliminarily enjoined DHS from implementing its memorandum rescinding the Deferred Action for Childhood Arrivals (DACA) policy, but it did not vacate the rescission.  *Regents*, 908 F.3d at 511.  The Supreme Court upheld the final judgment of another district court setting aside DHS's DACA-

Plaintiffs acknowledge that their vacatur request—which "is inherently backward-looking"—goes beyond the "forward-looking" relief ordinarily provided by a preliminary injunction. Pls.' Resp. at 19. Yet none of the cases Plaintiffs cite support their request that the Court "issue an order doing both." *Id.* Plaintiffs' reliance on *Rubin ex rel. National Labor Relations Board v. Vista Del Sol Health Services, Inc.*, 80 F. Supp. 3d 1058 (C.D. Cal. 2015), is inapposite. Unlike the APA claim here, *Rubin* involved a petition for a temporary injunction filed by the National Labor Relations Board (NLRB) based on a nursing facility's alleged violations of the National Labor Relations Act (NLRA). *Id.* at 1073 (citing NLRA § 10(j), codified at 29 U.S.C. § 160(j), which vests district courts with jurisdiction "to grant to the [NLRB] such temporary relief or restraining order as it deems just and proper"). The propriety of ordering vacatur as preliminary relief was not at issue in *Rubin*. And although part of the interim relief ordered in that case included reinstatement of employees who were wrongfully terminated for supporting unionization at the nursing facility, such order was premised on peculiarities of NLRA and related case law that are entirely irrelevant to Plaintiffs' claim here. *See id.* at 1103, 1105-06 (holding that fear of retaliation after the firing of union-supporting employees constituted irreparable harm and that reinstatement was necessary to ensure the effectiveness of the court's interim order compelling the facility to bargain with the union). The other two cases on which Plaintiffs rely likewise did not involve vacatur orders as preliminary relief. Instead, they involved orders to vacate agency actions that the courts had *finally* determined on summary judgment were unlawful. *See Klamath–Siskiyou Wildlands Ctr. v. NOAA Nat'l Marine Fisheries Serv.*, 109 F.Supp.3d 1238, 1247 (N.D. Cal. 2015); *Today's IV Inc. v. Fed. Transp. Admin.*, 2014 WL 5313943, at \*19 (C.D. Cal. Sept. 12, 2014).

Even assuming vacatur were an appropriate form of preliminary relief, Plaintiffs have not demonstrated that such relief is necessary. Plaintiffs argue that vacating the previously issued denials would prevent "the harm of putting class members who have received unlawful denial notices back into repayment." Pls.' Resp. at 19. But the Department has already agreed that such

rescission memorandum and vacated the *Regents* injunction as moot. *See DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (2020).

class members will not be required to make payments on their relevant federal loans until the Court enters a final judgment. This will result in the members of the class being treated uniformly. *Id.*

Further, contrary to Plaintiffs' claim, vacating more than 100,000 denial notices sent to class members over the last eleven months would be significantly disruptive. Because Plaintiffs challenge only the form of the Department's denial notices, and not the Department's substantive decisions or authority to make ineligibility decisions, vacatur at this preliminary stage would necessarily be an "interim change" that will "itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). Vacatur would not merely mean that the denial notices become invalid; the Department and their loan servicers would have to take steps to effectuate vacatur for the over 118,000 borrowers who received a denial. This process would not only be administratively burdensome, but also could lead to confusion among the numerous class members who have already received a denial and who will, at best, potentially receive a revised denial notice at the conclusion of this case. *See Chamber of Commerce of U.S. v. SEC*, 443 F.3d 890, 909 (D.C. Cir. 2006) (holding that vacating a rule with which a substantial portion of the mutual fund industry had already come in compliance risked substantial disruption and "also might sow confusion in the investing public").

## Conclusion

For the foregoing reasons, the Court should decline to enter Plaintiffs' requested preliminary injunctive relief.[8]

Dated: November 5, 2020                          Respectfully submitted,

                                                 JEFFREY BOSSERT CLARK
                                                 Acting Assistant Attorney General

                                                 MARCIA BERMAN
                                                 Assistant Branch Director

---

[8] As Defendants have argued, the anti-injunction provision of the Higher Education Act deprives the Court of authority to issue an injunction against the Secretary for the conduct at issue in this lawsuit, which is within the scope of her lawful authority. *See* Defs.' MSJ at 15-16; Defs.' MSJ Opp'n at 6-7.

*/s/ R. Charlie Merritt*
KATHRYN C. DAVIS
Senior Trial Counsel
R. CHARLIE MERRITT (VA Bar # 89400)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*