**LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL**
**CENTRO DE SERVICIOS LEGALES**
122 Boylston Street
Jamaica Plain, Massachusetts 02130-2246
TEL: (617) 522-3003 • FAX: (617) 522-0715

February 4, 2021

Re: *Sweet v. U.S. Department of Education*, No. 19-cv-3674-WH (N.D. Cal.)

To the Honorable Judge Alsup:

    Pursuant to Paragraph 34 of Your Honor's Supplemental Standing Order (Feb. 2018), and the Orders in the above-captioned case dated Oct. 19, 2020 (ECF No. 146) and Dec. 22, 2020 (ECF No. 170), Plaintiffs respectfully request that the Court compel Defendants to produce two categories of documents in response to certain of Plaintiffs' Requests for Production of Documents ("RFPs").[1] In addition, Plaintiffs seek the production of one document withheld under a spurious claim of privilege. The Parties have met and conferred by telephone regarding all of the issues in this letter.

    Defendants' impermissible, self-imposed limitations on the type, date range, and subject matter of documents they would agree to produce are based on an unreasonable reading of this Court's orders, and their actions are not justified under the Federal Rules. Defendants have produced approximately 2,500 documents, leaving Plaintiffs without many categories of relevant information. Nonetheless, in the interest of efficiency, Plaintiffs seek to compel the production of just two categories of documents that are especially relevant to summary judgment in this case.

**Orders to Stop or Resume Adjudicating Borrower Defense Applications (RFPs 1, 2, 3, 4)**

    Plaintiffs seek documents sufficient to show any direction given to the Borrower Defense Unit ("BDU") to stop and/or resume "adjudicating, . . . submitting for approval, and/or . . . developing memoranda on" borrower defense ("BD") claims that qualify for either discharges or denials. Ex. A at 7-8. Defendants object to these requests on a number of grounds.

    First, Defendants assert that these requests (among others) are "beyond the scope of the limited discovery the Court has authorized." Ex. B at 6, 8-9, 11. But the Department's decisions and directives to stop (or resume) deciding BD applications are at the very heart of this case, and these RFPs plainly fit within the Court's instruction "to inquire into, broadly . . . the extent to which the difficulty of reviewing borrower defense applications actually caused or justified the Secretary's eighteen-month delay." ECF No. 146 at 16. Defendants appear to have taken the position that the Court's Order specifically limited discovery to *only* documents discussing the "difficulty of reviewing borrower defense applications," and excluded documents that might suggest any other explanation for the delay. But as the Court explained, the Department's "perfunctory" form denial notices "tell[] a story that does not match the [difficulty] explanation," and the purpose of this discovery period was to find out "what is really going on." *Id.* at 15. Documents responsive to these four RFPs are likely to reveal whether "the difficulty of reviewing borrower defense applications" was, in fact, the "actual[]" reason for the delay. *Id.* at 16. Defendants' relevance objections are without merit.

    Second, Defendants object that these requests (among others) were overly broad and unduly

---

[1] Pursuant to Paragraph 34 of the Court's Standing Order, the relevant RFPs, in the narrowed form Plaintiffs proposed on December 10, 2020, are attached as Exhibit A, and Defendants' relevant responses and objections to the original RFPs are attached as Exhibit B.

burdensome, particularly as they concern communications.[2] Ex. B at 4-5, 7, 9-11. Yet Plaintiffs' attempts to meet and confer regarding Defendants' RFP responses were met with stonewalling. While Defendants repeatedly objected that the burden was too great, they also repeatedly refused to identify which specific document requests imposed, in their view, an undue burden; refused to take a position on whether Defendants would be willing to respond to narrowed versions of any requests; and refused to negotiate with Plaintiffs regarding any specifics about the document collection and review process, including search terms or custodians. Defendants complained that searching and reviewing emails was excessively burdensome, yet after multiple representations that they were dedicating enormous time and effort to this task, Defendants eventually informed Plaintiffs that they would refuse to produce any emails at all, on any topic. Plaintiffs unilaterally narrowed these and several other of their requests in an effort to move negotiations forward, but Defendants never responded; they first objected that the revisions had taken too long and then ignored the offer, stating only that the initial requests had been too broad.

As a result, Plaintiffs now find themselves without *any* internal Department communications about the very question that supplemental discovery was meant to answer—why the Department delayed deciding any BD applications. Plaintiffs seek to compel Defendants to produce communications and other documents relating to these four RFPs, which are key to understanding the Department's actions. Searching for this limited set of communications will not impose an undue burden, particularly where Defendants have represented that they have already spent significant time collecting and importing potentially relevant email.

Finally, Defendants unilaterally determined that "the time period relevant to the Court's Discovery Order" is between May 25, 2018 and October 19, 2020. Ex. B at 7-8, 10-11. Not only did the Court impose no date limitation (*see* ECF No. 146 at 16), Defendants' proposed date range is nonsensical on its face. If the BDU stopped issuing decisions on May 25, 2018, communications and other documents relating to the decision to stop would necessarily have predated May 25, 2018.[3] Plaintiffs therefore seek to compel documents responsive to RFPs No. 1, 2, 3, and 4 for the time period set forth in Plaintiffs' narrowed Requests dated December 10, 2020, *i.e.*, from January 20, 2017 through the date of production.

**Borrower Defense Review Panel and Inspector General Report (RFPs 5, 12)**

Plaintiffs seek documents sufficient to show the recommendations of the Borrower Defense Review Panel, the reasons for convening the Panel, and the identities of the individuals involved. Ex. A at 8. All of these issues were discussed, though the details were withheld, in the Nevin Declaration submitted by Defendants. *See* Nevin Decl. ¶ 55, ECF No. 56-4. Plaintiffs also seek documents

---

[2] Plaintiffs' initial RFP Nos. 1-4 sought "all documents"; Plaintiffs voluntarily narrowed these RFPs to seek "documents sufficient to show." *See* Ex. A at 7-8. The definition of "documents" includes "communications." *Id.* at 3. Since the production does not include more than a handful of documents responsive to RFP Nos. 1-4, let alone sufficient documentation, a search for communications is necessary. This is especially true since the "directives" were likely to have been communicated via email. If, on the other hand, Defendants have not produced sufficient documentation because it does not exist, they should so state.

The search for communications is especially crucial given the mystery surrounding the sources of the documents Defendants *did* search and produce. Plaintiffs asked Defendants for information about the document sources pursuant to the Standing Order, but the majority of listed folder names include "Sweet v Devos"—apparently identifying the folder that documents were placed into prior to production, but revealing *nothing* meaningful about where the documents had initially been located. In short: not only have Defendants not produced any communications, they have also refused to provide information about the source of the documents they did produce.

[3] Indeed, the certified Administrative Record, as well as other produced documents, demonstrate that the Department issued orders to stop issuing merits decisions on BD claims within the first three months of its tenure.

sufficient to show whether certain corrective actions were taken in response to a report issued by the Department's Inspector General ("IG"). Ex. A at 9-10.

Defendants object that the Review Panel was convened and the IG Report issued before the administrative delay alleged in this case began. Ex. B at 12, 20. But again, the Court's Order did not impose any time period limitation on discovery, and these topics are certainly relevant to the question of what "actually caused or justified the Secretary's eighteen-month delay." ECF No. 146 at 16. For example, the Review Panel reportedly "reviewed a large volume of information related to the [BD] program" and claimed to have "uncovered several flaws," including that "claims [were] analyzed under applicable state law . . . in the light most favorable to the Borrower." DOE00002144. The Review Panel recommended, and the Secretary subsequently requested, the IG investigation. *See* DOE00002146. BD adjudications were halted while the Review Panel and IG Report were in process. *See* DOE00002146; Nevin Dep. 118:2-14, 138:7-11. The IG report then made recommendations regarding BD processes and protocols, including that BDU resume adjudicating applications—which created an obligation to submit a corrective action plan to do so. *See* AR 498, 517. Any findings or recommendations by the Panel, and any corrective actions in response to the IG Report, are likely to be relevant to the approach the Department took toward borrower defense in 2018 and beyond.[4]

**Document DOE00009435**

Defendants have withheld document DOE00009435 under claims of attorney-client, work product, and deliberative process privilege. Defendants have confirmed that this document is a memorandum dated Dec. 14, 2017, from Steven Menashi, Acting General Counsel, to James Manning, Acting Under Secretary, titled "Legal bases for approval and discharge of pending borrower defense claims for former Corinthian students qualifying for approval on the grounds of Job Placement Rate, Guaranteed Jobs, and Transfer of Credit findings" (the "Menashi Memo").

The Menashi Memo was admitted into the Congressional Record with no redactions on December 12, 2019, and plainly sets forth relevant Department policy regarding BD applications. Plaintiffs are aware that the Menashi Memo not only contains the Department's analysis of prior BD policies and related recommendations, but was also the operative document that adopted as final certain portions of prior agency memoranda. In another lawsuit against the Department, the district court noted in dicta that "the Menashi [Memo] should also be included in the administrative record [because] [t]he Department obviously considered the Menashi [Memo] in the Department's decision-making process, and given that the document is already in the public domain." Order Re: Documents Prod. for In Camera Review, *Calif. v. U.S. Dep't of Educ.*, No. 17-cv-07106-SK (N.D. Cal. Dec. 27, 2019), ECF No. 105. Defendants do not, and cannot, explain how they could maintain attorney-client or work product privilege over a document that has been publicly disclosed in full, nor how deliberative process privilege could apply to a document that sets forth final agency policy. The claim of privilege should be rejected, and the document should be produced.

For the forgoing reasons, Plaintiffs respectfully request that the Court order Defendants to produce all documents, including communications, that are responsive to RFP Nos. 1, 2, 3, 4, 5, and 12, for the period from January 20, 2017 to the present, and to produce the Menashi Memo.

---

[4] Defendants also object that the Court did not name the IG as a "relevant decisionmaker[]" for discovery purposes. Ex. B at 20. But the Court's reference to "relevant decisionmakers" described potential deponents, not potential sources of documents. *See* ECF No. 146 at 16.

Respectfully submitted,

/s/ *Rebecca C. Ellis*

JOSEPH JARAMILLO (SBN 178566)
jjarmillo@heraca.org
CLAIRE TORCHIANA (SBN 330232)
ctorchiana@heraca.org
HOUSING & ECONOMIC RIGHTS ADVOCATES
3950 Broadway, Suite 200
Oakland, CA 94612
Tel: (510) 271-8443
Fax: (510) 280-2448

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL (*pro hac vice*)
tomerrill@law.harvard.edu
MARGARET E. O'GRADY (*pro hac vice*)
mogrady@law.harvard.edu
REBECCA C. ELLIS (*pro hac vice*)
rellis@law.harvard.edu
LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

*Attorneys for Plaintiffs*