# Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, *et al.*,<br><br>                Plaintiffs,<br><br>    v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION<br><br>                Defendants. | No. 3:19-cv-03674-WHA |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants hereby respond to Plaintiffs' First Set of Requests for Production of Documents ("RFPs"), served on November 6, 2020. Defendants reserve the right to supplement or amend their responses should additional or different information become available.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1. Defendants object to the definition of "Department" in Plaintiffs' Definition 4 as overly broad and, thus, not proportional to the needs of the case, insofar as it purports to include offices beyond those specified in the Court's order authorizing discovery, *i.e.*, "the offices of Federal Student Aid, Postsecondary Education, and Career, Technical, and Adult Education within the Office of the Under Secretary." Order Denying Class Settlement, to Resume Discovery, and to Show Cause at 16, ECF No. 146 ("Discovery Order"). Unless otherwise specified in response to specific requests, Defendants' search will be limited to the two specific offices identified in the Discovery Order.

1

## GENERAL OBJECTION

In light of the limited discovery the Court authorized, *see* Discovery Order at 15-16 (requiring that discovery be "limited" and authorizing such discovery into only three specific topics), and the only two-month period in which the Court ordered that discovery to occur, Defendants object to Plaintiffs' request for "communications" as overly broad, unduly burdensome, and disproportionate to the needs of this case. Plaintiffs' requests are broad, seeking all "communications" dating back to January 20, 2017 (and, in some instances, even further to May 1, 2016), *see* Instruction 10, for wide-ranging topics that go to all aspects of the Department's review and adjudication of borrower defense applications over the past nearly four years. And they are voluminous: there are 49 in all (and two of the requests contain a total of 55 discrete subparts), including Plaintiffs' Second Request for Production of Documents served on November 10, 2020. Moreover, the Court set a discovery cutoff date of December 24, 2020, and Plaintiffs waited nearly three weeks after the order authorizing discovery (until November 6, 2020) to serve their RFPs, allowing Defendants a period of just over six weeks to complete their document production. It is simply not possible for Defendants to comply with the terms of Plaintiffs' requests as written, and conduct a "resource-consuming" search for all emails (and other communications, such as "text messages") relating to Plaintiffs' overbroad requests, *see Miller v. York Risk Servs. Grp.*, 2015 WL 3490031, at *5 (D. Ariz. June 3, 2015), in that timeframe. Defendants estimate that complying with the requests as written would require them to collect, review, and log for privilege more than 150,000 emails and attachments.[1] Such a collection and review process typically involves a matter of several months (not weeks) in cases involving large federal

---

[1] Such a number may ultimately be reduced upon completion of de-duplication, but the actual scope of review would be much greater once accounting for attachments to these emails.

government agencies. Because Plaintiffs' requests for "communications" are overbroad and otherwise improper, Defendants will "not produce anything in response . . . until the objections are overruled or a lesser scope is agreed-on (in writing)." Suppl. Order to Order Setting Initial Case Management Conference In Civil Cases Before Judge William Alsup ¶ 17 (Feb. 12, 2018).

As described further below, Defendants have identified relevant custodians likely to have knowledge of the location of documents responsive to the three topics identified in the Court's Discovery Order and conducted a search for responsive documents, including searches of these custodians' files for electronic records other than emails. In light of the extreme breadth of Plaintiffs' discovery requests, Defendants believe that these searches provide the best opportunity for Defendants to identify and produce the information that the Court has deemed relevant in this Administrative Procedure Act ("APA") case within the time period that Court has authorized for discovery, but even these searches have identified thousands of potentially responsive records and imposed a significant review burden. Defendants will make their best efforts to review and produce as many of these (non-privileged, responsive) non-email documents as possible by December 24, 2020. In all events, Defendants will complete their production of whatever responsive, non-privileged documents it is feasible to produce by no later than the December 24, 2020 discovery cutoff date.

Finally, Defendants emphasize that the Court's Discovery Order was issued against the background principle that judicial review is typically "confined to the [agency's] administrative record" in an APA case, *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991), and thus, as the Court recognized, "discovery against agencies is disfavored," Discovery Order at 16; *see also Liangcai v. USCIS*, 2017 WL 10574062, at *2 (C.D. Cal. Apr. 7, 2017) (noting that even where discovery is authorized in an APA case, it must be "limited" and

subject to "reasonable specificity").  The relevant standard of review is another reason Plaintiffs request for communications are overly broad and burdensome and disproportionate to the needs of the case.  To the extent Plaintiffs seek "predecisional and deliberative documents" not included in the administrative record, such documents are "immaterial" as a matter of law under the APA standard of review and thus not "discoverable" in any event.  *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)).

## **RESPONSES AND SPECIFIC OBJECTIONS**[2]

**Request No. 1**

All communications and documents, including emails and text messages, directing the BDU to stop adjudicating, stop submitting for approval, and/or stop developing memoranda on claims that qualify for discharge for all or some classes, categories, or types of borrower defense applications.

**Objections:**  Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking documents beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those

---

[2] Plaintiffs served the RFPs on November 6, 2020.  By letter dated November 24, 2020, Plaintiffs "propose[d] some changes to narrow the requests we have already propounded."  Defendants include the requests as modified in these objections and responses.  Plaintiffs' unilateral and modest changes to certain of their requests does reflect an agreement on the scope of what Defendants will produce.  Suppl. Order to Order Setting Initial Case Management Conference In Civil Cases Before Judge William Alsup ¶ 17 (Feb. 12, 2018).  Defendants set forth below their objections below to Plaintiffs' overbroad or otherwise improper requests.

denials." *See* Discovery Order at 16.  Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71, and to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege.  Defendants will not produce documents that do not pertain to the limited subject matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents.

For purposes of responding to this request, Defendants shall construe it as seeking documents in the possession, custody, or control of Colleen Nevin, Mark Brown, Diane Jones, or James Manning, the individuals with the most direct responsibility for overseeing the Department's borrower defense operation during the relevant time period; from the time period relevant to the Court's Discovery Order (May 25, 2018 through October 19, 2020); and that are responsive to the topics identified in the Court's Discovery Order.  Defendants will conduct a search for relevant documents, including non-email ESI contained in each custodian's electronic files, limited to these custodians during this period of time.  Any further search for "communications," including "emails and text messages," is unduly burdensome for the reasons stated in Defendants' General Objection, which is incorporated here by reference.

**Response:**  Subject to and without waiving the above-stated objections, and subject to what is feasible to do by December 24, 2020, Defendants will produce non-privileged documents responsive to this request that pertain to the limited subject matter identified in the Court's Discovery Order, and that are in Defendants' possession, custody, or control, no later than December 24, 2020.

**Request No. 2**

All communications and documents, including emails and text messages, directing the BDU to resume adjudicating, resume submitting for approval, and/or resume developing memoranda on claims that qualify for discharge for all or some classes, categories, or types of borrower defense applications.

**Objections:** Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking documents beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71, and to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege. Defendants will not produce documents that do not pertain to the limited subject matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents.

For purposes of responding to this request, Defendants shall construe it as seeking documents in the possession, custody, or control of Colleen Nevin, Mark Brown, Diane Jones, or James Manning, the individuals with the most direct responsibility for overseeing the Department's borrower defense operation during the relevant time period; from the time period relevant to the Court's Discovery Order (May 25, 2018 through October 19, 2020); and that are

responsive to the topics identified in the Court's Discovery Order.  Defendants will conduct a search for relevant documents, including non-email ESI contained in each custodian's electronic files, limited to these custodians during this period of time.  Any further search for "communications," including "emails and text messages," is unduly burdensome for the reasons stated in Defendants' General Objection, which is incorporated here by reference.

**Response:**  Subject to and without waiving the above-stated objections, and subject to what is feasible to do by December 24, 2020, Defendants will produce non-privileged documents responsive to this request that pertain to the limited subject matter identified in the Court's Discovery Order, and that are in Defendants' possession, custody, or control, no later than December 24, 2020.

**Request No. 3**

All communications and documents, including emails and text messages, directing the BDU to stop processing denials and/or stop sending out denial notices for all or some classes, categories, or types of borrower defense applications.

**Objections:**  Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking documents beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."  *See* Discovery Order at 16.  Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56,

71, and to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege.  Defendants will not produce documents that do not pertain to the limited subject matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents.

For purposes of responding to this request, Defendants shall construe it as seeking documents in the possession, custody, or control of Collen Nevin, Mark Brown, Diane Jones, or James Manning, the individuals with the most direct responsibility for overseeing the Department's borrower defense operation during the relevant time period; from the time period relevant to the Court's Discovery Order (May 25, 2018 through October 19, 2020); and that are responsive to the topics identified in the Court's Discovery Order.  Defendants will conduct a search for relevant documents, including non-email ESI contained in each custodian's electronic files, limited to these custodians during this period of time.  Any further search for "communications," including "emails and text messages," is unduly burdensome for the reasons stated in Defendants' General Objection, which is incorporated here by reference.

**Response:** Subject to and without waiving the above-stated objections, and subject to what is feasible to do by December 24, 2020,  Defendants will produce non-privileged documents responsive to this request that pertain to the limited subject matter identified in the Court's Discovery Order, and that are in Defendants' possession, custody, or control, no later than December 24, 2020.

**Request No. 4**

All communications and documents, including emails and text messages, directing the BDU to resume processing denials and or resume sending out denial notices for all or some classes, categories, or types of borrower defense applications.

**Objections:** Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking documents beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71, and to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege. Defendants will not produce documents that do not pertain to the limited subject matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents.

For purposes of responding to this request, Defendants shall construe it as seeking documents in the possession, custody, or control of Colleen Nevin, Mark Brown, Diane Jones, or James Manning, the individuals with the most direct responsibility for overseeing the Department's borrower defense operation during the relevant time period; from the time period relevant to the Court's Discovery Order (May 25, 2018 through October 19, 2020); and that are responsive to the topics identified in the Court's Discovery Order. Defendants will conduct a search for relevant documents, including non-email ESI contained in each custodian's electronic files, limited to these custodians during this period of time. Any further search for "communications," including "emails and text messages," is unduly burdensome for the reasons stated in Defendants' General Objection, which is incorporated here by reference.

11

**Response:** Subject to and without waiving the above-stated objections, and subject to what is feasible to do by December 24, 2020, Defendants will produce non-privileged documents responsive to this request that pertain to the limited subject matter identified in the Court's Discovery Order, and that are in Defendants' possession, custody, or control, no later than December 24, 2020.

**Request No. 5**

Documents sufficient to show: the reasoning for the creation; membership; scope of duties; mission; and output of the Borrower Defense Review Panel (*see* Nevin Dec.[*sic*] ¶ 55 (ECF No. 56-4), including but not limited to all documents reflecting recommendations made by the Panel to the Department.

**Objections:** Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking documents beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. As stated in the declaration to which Plaintiffs cite, the referenced "Borrower Defense Review Panel" was convened in "March 2017," more than two years before Plaintiffs filed their complaint and more than a year before the eighteen-month delay challenged in this lawsuit began. This request plainly does not seek information that is relevant to any topic set forth in the Court's Discovery Order and is, thus, disproportionate to the needs of the case.

Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71, and to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege. Defendants will not produce documents that do not pertain to the limited subject matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents.

**Response:** Consistent with the above-stated objections, Defendants will neither search for nor produce documents in response to this request.

**Request No. 6**

All minutes or other written records or summaries of the proceedings of any meeting of the Borrower Defense Review Panel.

**Objections:** Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking documents beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. As stated in the declaration to which Plaintiffs cite, the referenced "Borrower Defense Review Panel" was convened in "March 2017," more than two years before Plaintiffs filed their complaint and more than a year before the eighteen-month delay challenged in this lawsuit began. This request plainly does not seek information that is relevant to

denials." *See* Discovery Order at 16. The report of the Department's Office of Inspector General to which Plaintiffs refer was issued on December 8, 2017, more than eighteen-months before Plaintiffs filed their complaint and more than six months before the eighteen-month delay challenged in this lawsuit began. The mere fact that the report was included in the administrative record does not make it relevant to the Court's Discovery Order, which, as relevant here, addresses only the extent to which the eighteen-month delay was "actually caused or justified" by "the difficulty of reviewing borrower-defense applications"—not any topic that in any way relates to the case. Furthermore, the Department's Inspector General is not one of the "relevant decisionmakers" to which the Court's Discovery Order refers, and the Office of the Inspector General is not one of the two offices into which the Court authorized discovery. *See* Discovery Order at 16. This request plainly does not seek information that is relevant to any topic set forth in the Court's Discovery Order and is, thus, disproportionate to the needs of the case.

Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71, and to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege. Defendants will not produce documents that do not pertain to the limited subject matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents.

**Response:** Consistent with the above-stated objections, Defendants will neither search for nor produce documents in response to this request.

**Request No. 12**

All documents and communications relaying or discussing any corrective action plan(s) relating to the recommendations of the Inspector General to (i) resume processing borrower defense claims,

19

(ii) determine whether additional claims categories were warranted, (iii) establish timeframes for resolving claims, and/or (iv) establish controls to ensure timeframes were met.

**Objections:** Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking documents beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. The report of the Department's Office of Inspector General to which Plaintiffs refer was issued on December 8, 2017, more than eighteen-months before Plaintiffs filed their complaint and more than six months before the eighteen-month delay challenged in this lawsuit began. The mere fact that the report was included in the administrative record does not make it relevant to the Court's Discovery Order, which, as relevant here, addresses only the extent to which the eighteen-month delay was "actually caused or justified" by "the difficulty of reviewing borrower-defense applications"—not any topic that in any way relates to the case. Furthermore, the Department's Inspector General is not one of the "relevant decisionmakers" to which the Court's Discovery Order refers, and the Office of the Inspector General is not one of the two offices into which the Court authorized discovery. *See* Discovery Order at 16.

Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71, and to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege

20

and the deliberative process privilege. Defendants will not produce documents that do not pertain to the limited subject matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents.

**Response:** Consistent with the above-stated objections, Defendants will neither search for nor produce documents or communications in response to this request. Subject to what is feasible to do by December 24, 2020, however, Defendants will produce any non-privileged documents that they come across in their review of documents located in response to other requests, to the extent such documents are not already part of the administrative record; relate to the Department's response to the referenced report of the Department's Inspector General; and are otherwise responsive to any of the three topics identified by the Court.

**Request No. 13**

Document sufficient to show the policies and practices regarding the development of an online borrower defense platform/application from May 1, 2016 to the present, including but not limited to any documents relating to the Office of the Under Secretary ordering such platform/application to be cancelled or redesigned.

**Objections:** Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking documents beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. The overbroad request seeks documents from a more than