

**U.S. Department of Justice**
Civil Division, Federal Programs Branch

1100 L Street N.W.
Washington, DC 20530

---

**By ECF**                                              February 19, 2021

The Honorable William Alsup
United States District Judge

Re: *Sweet v. U.S. Department of Education, et al.*, Case No. 3:19-cv-3674-WHA (N.D. Cal.)

Dear Judge Alsup:

    Pursuant to the Court's orders of February 5 and February 10, ECF Nos. 177 & 181, Defendants submit this letter brief in opposition to Plaintiffs' motion to compel, ECF No. 176 (Mot.). In response to the Court's order authorizing limited discovery over a period of two months, Defendants produced (in full or with redactions) more than 2,300 documents (consisting of more than 13,000 pages), responded to 20 interrogatories, and provided four deponents and nearly 28 hours of deposition testimony. The additional discovery Plaintiffs seek is not proportional to the needs of this Administrative Procedure Act (APA) case. The Court should deny Plaintiffs' motion.

**Plaintiffs' Discovery Requests and Defendants' Responses**

    The Court entered its order authorizing "limited" discovery on Monday, October 19, 2020, providing for an expedited two-month discovery period to close on December 24. *See* Order, ECF No. 146 (Discovery Order). Yet, Plaintiffs waited three business weeks, until the late afternoon of November 6, to propound their first set of discovery requests. Far from limited, they included 19 interrogatories and 45 requests for production of, essentially, any document discussing borrower defense.[1] Many requests sought all communications, including emails and text messages, dating back to May 1, 2016 (more than three years before the complaint was filed).[2]

    In response, Defendants worked diligently to identify relevant custodians and document locations, and conducted a search for responsive documents that appropriately balanced Plaintiffs' need for documents with the expedited discovery timeline (which included just 48 days by the time Plaintiffs submitted their initial requests). Defendants repeatedly explained that Plaintiffs' requests imposed a substantial burden both because of their volume and their overbreadth.[3]

    These efforts are described in the declaration of Brian Siegel, Assistant General Counsel for the Division of Postsecondary Education in the Department's Office of the General Counsel (attached as Ex. A). Defendants conducted a search to collect potentially responsive emails and quickly determined that it would not be feasible to review and produce them all on anything close

---

[1] *See, e.g.*, RFPs 1-4 (seeking "[a]ll documents" pertaining to either stopping or resuming taking any action with respect to borrower defense applications); RFPs 5 & 6 (all documents pertaining to a "Borrower Defense Review Panel," including all "written records" of Borrower Defense Review Panel meetings); RFP 7 (all "written records" of any meeting of the Borrower Defense Unit); RFP 22 (all documents relating to the Department's development of any "criteria to grant or deny claims"). Plaintiffs' November 6 document requests are attached as Ex. B.
[2] Plaintiffs submitted additional requests on November 10, for a total of 49 document requests and 20 interrogatories.
[3] Defendants met and conferred with Plaintiffs on several occasions, engaging in good faith discussions about the challenges presented by Plaintiffs' discovery requests, as explained in the letters attached as Ex. C.

1

to the timeline provided for in the Court's Discovery Order. Siegel Decl. ¶¶ 6-10. Accordingly, they focused on electronic searches for non-email documents, and devoted significant time and resources to collecting and reviewing, for both privilege and responsiveness, thousands of such documents. *Id*. ¶¶ 8-14. As noted above, Defendants ultimately produced more than 2,300 documents, consisting of over 13,000 pages; Defendants also reviewed and logged additional documents withheld on the basis of privilege and responded to each of Plaintiffs' interrogatories.

Despite multiple conferences where Defendants raised these issues, Plaintiffs did not propose narrowed document requests until December 10, 2020. In general, these modifications did not respond to the concerns Defendants had raised throughout the discovery process: even as narrowed, there were 33 requests, several of which still sought communications, and the relevant time period was narrowed only to January 1, 2017. More importantly, the narrowed proposals were submitted too late in the process—just two weeks before the expiration of the discovery period—to allow Defendants the time needed to conduct more tailored searches and initiate review of a new set of potentially responsive documents. Nor could the narrowed proposals lessen the significant burden Plaintiffs had imposed with their overbroad requests over the preceding weeks.

**Plaintiffs' Request to Compel Documents Responsive to RFPs 1-5, 12**[4]

As this Court has recognized, discovery must be limited because "discovery against agencies is disfavored." Disc. Order at 16. Moreover, discovery is limited to that which is "proportional to the needs of the case," considering factors such as "the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "[D]iscovery is not allowed if the [party] seeking discovery fails to show their need for the information, or compliance with the request is unduly burdensome or oppressive, or where the harm of disclosure outweighs the need of the [party] seeking discovery of the information." *Charter Sch. Cap., Inc. v. Charter Asset Mgmt. Fund, LP*, 2015 WL 12655547, at *1 (C.D. Cal. Sept. 1, 2015). Plaintiffs seek to compel documents in response to six requests, but they clearly "ask[ed] for more than [they] deserve," rather than making "reasonably narrow requests from the start." Suppl. Standing Order ¶ 17 (Feb. 2018). For that reason alone, the Court should deny Plaintiffs' motion and "cut [their] unreasonably burdensome requests back to zero." *Id*.

As described in the attached declaration, the six document requests on which Plaintiffs move to compel impose an excessive burden. RFPs 1-5 were responsible for the search that yielded approximately 100,000 potentially responsive emails. Siegel Decl. ¶ 20. If compelled to produce emails responsive to these requests, the Department would likely need multiple months to review all of these emails (as well as to conduct additional searches to locate emails and documents potentially responsive to RFP 12). *Id*. ¶¶ 8, 20.

Discovery that broad is not appropriate in this APA case. The Discovery Order must be read against the background principle that judicial review is typically "confined to the [agency's] administrative record" in an APA case. *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991); *see also New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502,

---

[4] Plaintiffs also challenge Defendants' privilege assertions over one document. In light of the unique circumstances surrounding that document, including its public disclosure and the decision in the *California* litigation, *see* Mot. at 3, the Department has made a discretionary decision to withdraw its privilege assertions.

548 & n.19 (S.D.N.Y. 2019) (even where extra-record discovery is allowed, its scope must be "limited" and "strictly policed"). The Court authorized limited discovery because the Department's recent denial notices did not appear to reflect, on their face, the complexity of review described in the administrative record, *see* Disc. Order at 12-13, but did not authorize an open-ended inquiry into "why the Department delayed deciding any BD applications," Mot. at 2. *See* Disc. Order at 16 (allowing limited discovery into "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay").

Plaintiffs are thus wrong to contend that additional documents "are especially relevant"—or relevant at all—"to summary judgment in this case," Mot. at 1, which challenges only the Department's eighteen-month delay in issuing final borrower defense decisions between June 2018 and December 2019.[5] They seek "internal Department communications," Mot. at 2, which are inherently predecisional and deliberative, likely to be subject to valid claims of privilege, and immaterial as a matter of law in this APA case. *E.g.*, *Oceana Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019).

For RFPs 1-4, Defendants have conducted a reasonable search for responsive non-email documents, and the marginal utility of additional information on these topics (which are not directly addressed by the Discovery Order), on top of the administrative record and extensive discovery Defendants have already provided, does not justify the review of approximately 100,000 potentially responsive emails. Indeed, that discovery addresses in detail the "question[s] that supplemental discovery was meant to answer," Mot. at 2, including the Department's adjudication of borrower defense claims since June 2018 and its denial of claims since December 2019. *See, e.g.*, Defs.' Resp. to Pls.' Interrogs. (excerpts attached as Ex. D) (describing, *inter alia*, criteria for approving and denying borrower defense claims during the relevant period and referencing "school-specific memos regarding the scope of evidence considered," "related adjudication protocols," and case-level data about decisions). Plaintiffs have already obtained plenty of internal documents shedding light on "the Department's actions," Mot. at 2, and they have not shown why additional voluminous "communications" are proportionate to the needs of their APA claim.

RFPs 5 and 12 address events that long predate the eighteen-month delay at issue here. Plaintiffs suggest that these requests are "relevant to the question of what 'actually caused or justified the Secretary's eighteen-month delay.'" Mot. at 3. But the "Review Panel" operated exclusively in 2017, the "IG report" was issued in December 2017, and it is undisputed that the Department resumed issuing borrower defense decisions between December 2017 and May 2018. *E.g.*, Disc. Order at 4. Documents relating to these events cannot conceivably shed light on the relevant period of delay from "June 2018 until December 2019," *id.*; the form denial notices, which were not used by the Department until after that delay ended; or whether the Department's efforts reviewing borrower defense claims were more extensive than revealed in those notices.[6]

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion.

---

[5] *I.e.*, the delay that began after the late May 2018 injunction of the Department's partial relief methodology, which followed a period of time in which the Department was undisputedly issuing borrower defense decisions. *See, e.g.*, Defs.' Mot. for Summ. J. at 8-9, ECF No. 63; Compl. ¶ 1 (alleging that the Department had not decided a borrower defense claim since June 2018); Disc. Order at 4 (after June 2018, "the decisions stopped").

[6] Protecting student borrowers is a critical part of the Department's mission and one the Department takes seriously, and the Department has begun a review to determine how best to meet that mandate.

Respectfully submitted,

SARAH E. HARRINGTON
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar No. 89400)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
(202) 616-8098
robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

4