**Exhibit C**

U.S. Department of Justice
Civil Division, Federal Programs Branch

1100 L Street N.W.
Washington, DC 20005

R. Charlie Merritt  Tel.: (202) 616-8098
Trial Attorney  robert.c.merritt@usdoj.gov

January 14, 2021

**VIA EMAIL**

Margaret O'Grady
Rebecca Ellis
Eileen Conner
Toby Merrill
Legal Services Center of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130

Re: *Sweet v. Zais*, No. 19-cv-3674-WH (N.D. Cal.)

Dear Counsel:

In accordance with the schedule entered by the Court on December 23, 2020, *see* ECF No. 170, we write regarding a number of outstanding discovery issues. With this letter and the materials we have provided you today, it is our position that we have fulfilled our discovery obligations pursuant to the Court's October 19, 2020 order, *see* ECF No. 146, in this Administrative Procedure Act ("APA") case.

**Document Production**

On December 23, 2020, we made a substantial production of documents responsive to the requests for production of documents that you served on November 6 and November 10, 2020 (collectively, the "RFPs"). As we have discussed, this represented, by and large, a complete production of the documents that we were able to collect and review in accordance with the expedited discovery schedule the Court authorized and the needs of this case.

With the additional three weeks beyond the original December 24 discovery cutoff that the parties negotiated—much of which was over the holidays—we have been able to tie up some loose ends and finalize the limited aspects of our document production that remained outstanding as of the original discovery cutoff date.[1] Today, we made a final production of documents (broken up into multiple small productions) available for you to download through our file sharing system JEFS/BOX. There remain a small number of documents that have not been produced due to technical issues (e.g., broken hyperlinks) that we have not yet been able to fix. We have already resolved many technical issues with respect to other documents that have been produced or logged as privileged, and will continue these efforts with respect to the remaining documents. If we are

---

[1] The parties have previously agreed that this brief extension of time for us to finalize and complete our document production does not alter the claims of burden associated with responding to your RFPs and does not expand what was feasible for us to search for and produce before the document production period closed.

able to resolve any of the outstanding technical issues through these efforts, we will make a further production of relevant documents, or otherwise update our privilege log. At this point, however, we believe we have made reasonable efforts to resolve the various technical issues and view our document production as proportionate to the needs of the case and complete.

**Privilege Log**

We have completed our privilege log for our entire production and sent you the log by email today, January 14.

**Interrogatories**

Defendants timely served objections and responses to your two sets of interrogatories on December 7 and December 10, 2020. In responding to several of those interrogatories (specifically numbers 3, 9, 10, 11, 12, 17, 18, and 19), Defendants stated their intention to supplement their responses with specific documents. Many of these documents have already been produced via email, and Defendants completed production/identification of the referenced documents today.

In response to the objections you made through the meet-and-confer process, we also sent you today, via email, supplemental responses to interrogatories 4, 5, 14, and 16. Defendants have now fully responded to each of the interrogatories that you have propounded.

**Depositions**

Although the Court authorized five depositions of relevant decisionmakers in this case, Plaintiffs have only taken four: (1) Diane Jones, Principal Deputy Under Secretary; (2) Colleen Nevin, Director of the Borrower Defense Group within Federal Student Aid ("FSA"); (3) Mark Brown, FSA's Chief Operating Officer; and (4) James Manning, a former employee who previously served as FSA's Chief Operating Officer and the Department's Under Secretary before leaving the Department prior to the commencement of this litigation.

Plaintiffs recently sought leave to depose former Secretary DeVos, and were directed by the Court to "subpoena Ms. DeVos" if they "pursue[] such deposition." ECF No. 172. As we explained in letters dated January 7 and 11, 2021, we believe this request is premature at best. Further, given that high-ranking government officials (current or former) are not normally subject to deposition and Plaintiffs' request to depose former Secretary DeVos is likely inappropriate, we expect this issue to be litigated if Plaintiffs persist in seeking a subpoena to depose the former Secretary.

**Proposed Narrowed Document Requests**

Recognizing that "discovery against agencies is disfavored," Oct. 19 Order at 15; *see also, e.g.*, *Ramos v. Wolf*, 975 F.3d 872, 900-01 (9th Cir. 2020) (Nelson, J., concurring) (noting that the APA record-review limitation is a "fundamental constitutional protection to government agency action" that "reflects a desire to avoid interfering with the decisionmaking process of a co-equal

branch of government"), the Court's October 19, 2020 order authorized "limited" discovery in this case. The Court ordered that the discovery be expedited and afforded the parties two months—until December 24—to complete it. Despite the Court's directives that discovery be both "limited" and "expedited," you waited nearly three full weeks, until November 6, to serve your first set of document requests, which included 45 separate requests, some of them containing multiple discrete subparts. You served an additional set of document requests on November 10, for a total of 49 requests. As we have explained, these voluminous requests are both overbroad—generally dating back more than four years to May 1, 2016—and excessively burdensome, especially to the extent they seek "communications," which would require the collection and review of more than 150,000 potentially responsive emails and attachments. It was simply not feasible for us to identify custodians, devise and conduct searches that would collect documents responsive to your voluminous requests for a nearly four-year period, review such a large quantity of emails and attachments for privilege, and actually process the production (Bates-labeling and transmission) in the 48 days between when you served your first set of RFPs and the original December 24 discovery cutoff date.

For all of these reasons, as we explained in our written discovery responses and multiple meet and confers, we believe many of your RFPs are "overbroad or otherwise improper." Suppl. Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup ¶ 17 (Feb. 12, 2018) ("Standing Order"). We first expressed this concern in a meet-and-confer call on November 23 and again on a follow-up call on December 1. As we explained in an email dated November 30, your document requests impose a "substantial burden," and our focus from the beginning has been on determining what kind of document collection and production is "doable during the short time period available." Accordingly, we stated our intention to concentrate on manual searches for relevant documents by the custodians most likely to have such documents, as well as electronic searches of the non-email files of such custodians.

While we appreciate your willingness to consider our concerns and engage in an open dialogue about this process, you did not offer any substantive counterproposal until December 10, two weeks prior to the discovery cutoff and after we had submitted our responses and objections to the majority of your RFPs. On that day, you proposed a set of narrowed document requests ("narrowed RFPs") that made slight concessions regarding the relevant time period (changing the start date from May 1, 2016 to January 1, 2017), dropped several requests, and limited certain of the others. Nonetheless, you still seek "communications" in response to a number of your requests, including—to take one particularly inappropriate example and irrelevant topic—all such communications between all "individuals in the Department of Education and individuals who are employees, contractors, Board Members, executives, owners, counsel (internal or external), or otherwise employed by or connected to" certain institutions of higher education.

We regard these proposed narrowed RFPs as too little, too late. As we explained, it is a time-consuming process to conduct electronic searches of the files of agency custodians; transfer those files from the agency onto an appropriate review platform accessible to attorneys from both the agency and the Department of Justice; process the relevant data and prepare the documents for review (e.g., de-duplicate the documents and batch them for review); and review each document collected in this manner for responsiveness and privilege. We spent significant time and effort

Page 4

throughout November and early December to engage this process in a way that would provide as many documents relevant to the Court's discovery order and your requests as possible. But once we had completed the collection process and our review was well underway, it was not feasible for us to change gears midstream and start the process over again to conduct tailored searches and initiate review of a new set of potentially responsive documents. This is particularly true given that you proposed your narrowed RFPs only two weeks prior to the original discovery cutoff date.

At bottom, we believe that your approach to submitting document requests in this case is inconsistent with Judge Alsup's Standing Order, which "encourage[s] reasonably narrow requests from the start," and warns parties against "ask[ing] for more than you deserve with the expectation that the judge will cut it back to what you deserve." Standing Order ¶ 17. As explained above, and as evidenced by your proposal to narrow the RFPs after we submitted our objections, your original RFPs are vastly overbroad—not "reasonably narrow." *Id*. We are thus entitled to object to them to the extent they are "overbroad or otherwise improper," *id*., and we maintain those objections notwithstanding your attempt, after several weeks of discussion and only two weeks prior to the discovery cutoff, to "salvage some narrower element lurking within," *id*. For these reasons, we do not agree to your proposed narrowed RFPs. We believe we conducted a reasonable search and made a production of documents that was proportionate to the needs of the case, given the time available and the limited nature of the discovery authorized in this APA case.

Please let us know if you have any questions regarding our document production, our privilege log, or our supplemental interrogatory responses. We are happy to engage in further discussions to narrow the areas in dispute prior to any motion to compel that you intend to file in accordance with the operative schedule.

Sincerely,

/s/ *R. Charlie Merritt*

R. Charlie Merritt

**U.S. Department of Justice**

Civil Division, Federal Programs Branch

1100 L Street N.W.
Washington, DC 20530

R. Charlie Merritt  Tel.: (202) 616-8098
Trial Attorney  robert.c.merritt@usdoj.gov

January 29, 2021

**VIA EMAIL**

Rebecca Ellis
Margaret O'Grady
Eileen Conner
Toby Merrill
Legal Services Center of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130

Re:  *Sweet v. U.S. Department of Education*, No. 19-cv-3674-WH (N.D. Cal.)

Dear Counsel:

Thank you for your letter of January 26, 2021. We have some responses to your specific questions, and we plan to provide an amended privilege log, as described below.

**Document Production**

Defendants have produced or logged as privileged the documents responsive to Requests for Production Nos. 14, 46, 47, and 48. They can be located as follows:
- RFP 14: DOE00009399-DOE00009518
- RFP 46: DOE00013690-DOE00013691
- RFP 47: DOE00013264-DOE00013630
- RFP 48: DOE00013631-DOE00013656

More generally, Defendants conducted electronic searches of the electronic files of the following custodians: Colleen Nevin, Diane Jones, Mark Brown, and Jim Manning. Through these searches and manual file searches, Defendants collected files from various hardware and storage media (including local storage and cloud-based storage devices) that include official files maintained by the Borrower Defense Group in the Department's Federal Student Aid office and in the Department's Office of the General Counsel). Defendants plan to provide a list identifying the source/location of each document that was included in Defendants' productions.

We disagree that our description of the meet and confer process has been "disingenuous" in any way. Our position was always that your original requests were burdensome because they were so voluminous and broad, which required us to craft multiple and overlapping searches for potentially responsive documents. Given the expedited schedule and the time involved in the document collection, transfer, and review process (and the timing of your requests), it was simply not feasible for us to employ a gradual process of refining and narrowing searches and custodians

based on the results of the ongoing review. Rather, the best way to alleviate the burden, as we explained, was to narrow the time frame or remove requests for particular types of documents. With respect to emails, we were always committed to doing what was feasible in light of the circumstances, and we needed to actually assess the burden involved with reviewing and producing emails before we could make a determination as to whether doing so was proportionate to the needs of the limited discovery in this case. Of course we agree that the question of what we have to produce will be up to the Court to decide. But Judge Alsup's standing order does clearly permit a producing party to "not produce anything in response to" an "overbroad or otherwise improper" request until any objection is overruled. Suppl. Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup ¶ 17 (Feb. 12, 2018) ("Standing Order").

We understand that you are going to move to compel with respect to six of your document requests. Just to confirm, are you planning to move to compel responses to the narrowed requests that you proposed on December 10? If that is the case, can you explain what you are seeking to compel with respect to RFPs 1-4? As you know, we did produce documents in response to those requests. Is it just documents from a broader time frame than specified in our objections? With respect to RFPs 5 and 12, we reiterate our position that the requests, which relate to events that occurred long before the eighteen-month delay challenged in this lawsuit began, seek information that is not relevant to any topic set forth in the Court's limited discovery order and impose burdens that are disproportionate to the needs of this case.

**Privilege Log**

You also raise several concerns with the privilege log that we provided on January 14. As noted above, we plan to provide you with an amended version that includes, for each entry: (1) a "Custodian" field, and (2) the location where each document was found. Additionally, we are sending a list identifying which individuals referenced in the amended privilege log are attorneys. Regarding your other reference to Judge Alsup's standing order, we note that as a general matter, the documents listed in the privilege log are not "communications" for which the asserting party is required to provide the information specified in Paragraph 24 of that order. Nonetheless, Defendants attest that steps have been taken to ensure the confidentiality of all documents listed in the amended privilege log, and further affirm that they have no knowledge of distribution of the listed documents outside of the federal government.

We believe that this amended privilege log, like the original that we provided on January 14, provides sufficient detail to "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5); *see also* Standing Order ¶ 24 (privilege logs "must be sufficiently detailed and informative to justify the privilege"). Even if it were true, as you assert, that "[m]any of the descriptions in the privilege log do not set out a basis for the privilege claimed," that would not obligate us to review each of the privilege log's 1553 entries and provide updated justifications without knowing which entries you actually intend to challenge. Rather, the appropriate course forward is for you to identify particular entries that you believe do not contain an adequate justification so that we can provide a targeted response. *See, e.g.,*, *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 245 & n.79 (N.D. Cal. 2015) (noting that "[p]rivileges must be addressed on a document-by-document

Page 3

and question-by-question basis" and that if a challenging party does not identify particular entries in a privilege log, "it is impossible for the court to address whether any assertion of privilege was justified or not" (citation omitted)).

Moreover, the "few examples" that you identify—a "recommendation memo," a "pre-decisional memo," and a document containing "redline and comments . . . including edits and comments by OGC attorneys" clearly describe deliberative documents that are part of the agency's decisionmaking process.  And of course, we are under no obligation to explain why any document over which we claim privilege is "distinguishable" from any document that we produced.  If you put together a complete list of entries for which you believe the information that has been provided is insufficient to allow you to assess the privilege assertion, we are happy to consider providing further information.  But, as noted above, our log contains 1553 entries, and we do not think "an amended privilege log that fully sets out the basis for each claim of privilege" is warranted based on the issues identified in your letter.

\* \* \*

To conclude, can you confirm whether there are other, to quote your letter, "areas of disagreement between the parties," other than those described in your letter, that you think "will have to be resolved in a motion to compel?"  We will consider your request for additional pages for summary judgment briefing and get back to you on that in due course.

Let us know if it would be helpful to schedule a call to discuss any of these issues.


Sincerely,

/s/ *R. Charlie Merritt*

R. Charlie Merritt