**Exhibit D**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION<br><br>                    Defendants. | No. 3:19-cv-03674-WHA |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants hereby respond to Plaintiffs' First Set of Interrogatories (the "Interrogatories"), served on November 6, 2020. Defendants reserve the right to supplement or amend their responses should additional or different information become available.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.      Defendants object to the definition of "Department" in Plaintiffs' Definition 4 as overly broad and, thus, not proportional to the needs of the case, insofar as it purports to include offices beyond those specified in the Court's order authorizing discovery, *i.e.*, "the offices of Federal Student Aid, Postsecondary Education, and Career, Technical, and Adult Education within the Office of the Under Secretary."  Order Denying Class Settlement, to Resume Discovery, and to Show Cause at 16, ECF No. 146 ("Discovery Order").  Unless otherwise specified in response to specific requests, Defendants will respond on behalf of the two specific offices identified in the Discovery Order.

1

Colleen Nevin – borrower defense processes and decisions

Jim Manning – borrower defense policy and processes

Wayne Johnson – borrower defense policy and processes

Diane Jones – borrower defense policy

Robert Eitel - borrower defense policy

Nathan Bailey - borrower defense policy

Justin Riemer – borrower defense policies and processes

Robin Minor – borrower defense policies and processes

Frank Curran – borrower defense policies and processes

Julian Schmoke – borrower defense policies and processes

Sarah Hayhurst – borrower defense policies and processes

Kathleen Smith – borrower defense policies and processes

Caroline Hong – borrower defense policies and processes

Brian Siegel – borrower defense policies and processes

Ian Foss – borrower defense policies and processes

Jeff Appel (deceased) – borrower defense policies

Chad Schrecengost– borrower defense processes and decisions

Charlotta Hornig – borrower defense processes and decisions

Borrower Defense Unit Career Staff – borrower defense processes and decisions

**Interrogatory No. 3**

Provide a list of the schools for which borrower defense applications have been decided favorably from June 2018 through the present and the number of applications for each school, including the "step one" and "step two" determinations (*see* Jones Dec., ECF No. 56-3 ¶ 24), and whether the claims have been noticed, or have been granted internally but have not yet been noticed to borrowers.

**Objections**: Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. Defendants further object to the request as ambiguous and unduly burdensome to the extent the first clause seeks information about certain "schools," while the second clause seeks additional types of information about particular claims and individual borrower defense applicants.

**Response:** During the relevant period, Defendants approved borrower defense applications from students who attended Corinthian Colleges, Inc. and ITT Educational Services, Inc. Defendants intend to supplement this response with a chart that includes case-level data from the borrower defense system that demonstrates other relevant case characteristics, including the system dates, if available, of when the application was decided, when cases were populated with a relief percentage, and when the borrower notification occurred.

**Interrogatory No. 4**

Identify the person or persons who "tabled" Enforcement's request for approval to hire "several additional attorneys" for BDU. Nevin Dec. ¶ 21 (ECF No. 56-4).

**Objections**: Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form

5

findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16.

Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71; to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege; and to the extent it seeks "communications," production of which is unduly burdensome and disproportionate to the needs of this case for the reasons stated in Defendants' RFPD Responses, which were served contemporaneously with these responses and objections and are incorporated here by reference. As stated in those responses and objections, Defendants will not produce any communications, nor any documents that do not pertain to the limited subject matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents. To the extent Plaintiffs request that Defendants identify particular documents, Defendants refer Plaintiffs to their RFPD Responses and forthcoming production of documents.

**Response:** Julian Schmoke, then Chief Enforcement Officer, communicated to the Director of the Borrower Defense Unit, Colleen Nevin, that the Borrower Defense Unit could increase the number of contractor attorneys. On information and belief, Mr. Schmoke received permission to hire the additional contractors from James Manning, then Acting Chief Operating Officer for Federal Student Aid. The Defendants have not, at this time, identified any documents responsive to this Request.

**Interrogatory No. 8**

Explain any calculations made by or on behalf of the BDU pertaining to the number of reviewing attorneys (including law clerks, full-time attorneys, part-time attorneys, and/or contractors) needed

to review pending borrower applications, including any metrics pertaining to the aggregate or average amount of time review attorneys are expected to take per application, including by identifying how many individuals working how many hours are necessary to "adjudicate[] on the merits an average of close to 1000 applications a week." Nevin Dec. ¶ 67 (ECF No. 56-4).

**Objections**: Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. Defendants further object to the request to "identify[] how many individuals working how many hours are necessary to 'adjudicate[ ] on the merits an average of close to 1000 applications a week,'" as vague and ambiguous to the extent it is premised on the improper assumption that reviewing attorneys in the Borrower Defense Unit would work exclusively on adjudications over the week and that the amount of time needed to adjudicate a particular number of applications per week would not change over time.

**Response:** Borrower defense applications vary in complexity and the amount of evidence included and, therefore, vary in the amount of time needed to review and adjudicate the application. In general, adjudications have increased in complexity over time, due in part to changing borrower defense regulations and the increased prevalence of applications with claims that are subject to more than one regulation.

Additionally, the Borrower Defense Unit does not adjudicate any particular claim until it creates a review protocol for that type of claim or determines that an already-established protocol is appropriate. The metrics described below regarding the time it takes to adjudicate an application do not include the time required to develop such review protocols, which involves a review of common evidence relating to a specific school or school group. Defendants do not have metrics for the amount of time that it takes to develop a review protocol because the time involved varies depending on the volume of evidence.

Prior to around the late spring or early summer of 2019, the Borrower Defense Unit did not have any metrics regarding the amount of time needed to adjudicate a borrower defense application. The Nevin Declaration stated that the Department was adjudicating an average of 1,000 applications per week in November 2019. That was based on the fact that at the time the Borrower Defense Unit was focusing its review on (1) borrower defense applications by former Corinthian Colleges, Inc. ("Corinthian") students with previously established protocols (*i.e.*, protocols regarding misrepresentations regarding job placement rates, employment prospects, and transferability of credits); and (2) borrower defense applications that did not relate to any common evidence in the Borrower Defense Unit's possession that would support the borrower's claims. Based on pilot testing in the late spring or early summer of 2019, Federal Student Aid estimated that those cases could be adjudicated by a fully trained and proficient Borrower Defense Unit attorney (including law clerks and contract attorneys) at an average rate of about 5 applications per hour. This rate assumes that complex cases or those where the borrower provided a substantial amount of evidence will be set aside for further review, and so such cases are not included in that metric. Additionally, this estimated pace of adjudication does not include any time relating to the

11

drafting of a decision notice—that work is performed by others in Federal Student Aid using data entered by the Borrower Defense Unit staff member at the adjudication stage.

The applications currently pending adjudication, to a significant degree, have been initially determined to potentially be supported to some degree by common evidence or to have substantial evidence attached by the individual borrower (*i.e.*, cases where the borrower's evidence would potentially establish a borrower defense by a preponderance of the evidence) or both. The Borrower Defense Unit has not yet determined an average time for adjudication of such cases.

**Interrogatory No. 9**

State how many individuals, including contractors, were retained by or for the BDU to review borrower defense claims, for each month between and including January 2017 through the present.

**Objections:** Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. Defendants further object to this request as overly broad and unduly burdensome to the extent it requests data for each and every month over a period of nearly four years. Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order: May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).

**Response:** During the relevant time period, the BDU has employed staff numbering between, at various points, 5 and 60 employees and varying levels of contractor support. Defendants intend to supplement this response with a chart that shows the number of career staff and contractors working for FSA in the Borrower Defense Unit during each month of the relevant time period.

**Interrogatory No. 10**

Identify which schools have been "give[n] notice when their students file borrower defense claims," the policies and procedures governing such notices, and the timing, content and form of such notices. *See* Nevin Dec. ¶ 37 (ECF No. 56-4); Foss Dec. ¶ 37 (ECF No. 56-4).

**Response:** The following schools have received notices that their students have filed borrower defense claims: University of Phoenix; DeVry; Charlotte School of Law; and Ashford University. Regarding the "policies and procedures governing such notices, and the timing, content and form of such notices," Defendants intend to supplement this response with a forthcoming production of the following categories of documents: (1) the initial letters sent to schools thus far requesting information and advising schools that they would be receiving notice of individual borrower applications against them, (2) the template for the form letters sent to the school with the individual borrower application, and (3) documents describing the protocol and procedures for sending initial and form letters to schools that were in effect at the time that the notices were sent.

**Interrogatory No. 11**

Identify and explain the "criteria for approval" identified in Nevin Dec. ¶ 39 (ECF No. 56-4), and explain how it was developed, when, by whom, and what records exist of the policies and procedures regarding approvals.

13

**Objections:**  Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."  *See* Discovery Order at 16.  Defendants further object to this request to the extent it seeks information protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege.  To the extent Plaintiffs request that Defendants identify particular documents, Defendants refer Plaintiffs to their RFPD Responses and forthcoming production of documents.

**Response:**  The criteria for approval depend on the nature of the claim, the applicable regulation (and, where the applicable regulation is the 1995 regulation, applicable state law), and whether any elements of the claim are established by common evidence.  Defendants intend to supplement this response with a forthcoming production of the following documents, reflecting the "criteria for approval" and containing information responsive to Plaintiffs' Interrogatory No. 11 regarding "policies and procedures regarding approvals" for approvals issued to date:  (1) school-specific memos regarding the scope of evidence considered (specifically, for Corinthians cases alleging misrepresentations regarding employment prospects and transferability of credits and for ITT Educational Services, Inc. cases alleging misrepresentations regarding employment prospects in California) and (2) related adjudication protocols.

- information and materials available on school websites;

- publicly available information and materials associated with litigation, settlements, or consent judgments;

- relevant publicly available information and materials on the internet; and

- information and materials from public Congressional testimony or investigations.

**Interrogatory No. 16**

Identify the individuals who drafted and approved form Denials A, B, C, and D, and explain the process for review and approval of the letters.  *See* ECF No. 116.

**Objections**:  Defendants object to this request to the extent it seeks information protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege.

**Response:**  Individuals in the Department's Federal Student Aid office consulted with staff in the Office of the General Counsel and other offices in the Department on the contents and form of various drafts of the letters referenced in this request, as well as on the availability of data in the Borrower Defense Unit's platform to populate certain aspects of standard, automated templates.  FSA then provided draft letters to Department leadership and the Office of the General Counsel for review.  Based on Defendants' current inquiry, Defendants lack knowledge or information to provide a further response to this interrogatory.  Defendants will continue to conduct a reasonable inquiry and will supplement this response to the extent there is further information to provide.

**Interrogatory No. 17**

Explain the reasoning behind the determination that an application is "from borrowers who did not provide any evidence and who attended schools for which BDU is not aware of evidence that

would support an approval of applications," and identify by borrower and school the denials that fall into this category.  Nevin Dec. ¶ 66 (ECF No. 56-4).

**Objections:** Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."  *See* Discovery Order at 16.  In particular, Plaintiffs' request is overly broad and unduly burdensome to the extent it requests that Defendants provide identifying information for each and every borrower who "did not provide any evidence and who attended schools for which BDU is not aware of evidence that would support an approval of applications." That population includes thousands of borrowers, and it would be unduly burdensome, beyond the scope of the limited discovery the Court has authorized, and disproportionate to the needs of the case for Defendants to provide such information.

Defendants describe the general reasoning supporting its determinations below, and otherwise object to this request.  Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order:  May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).

**Response:** In general, the "reasoning behind" a determination that an application is from a borrower who "did not provide any evidence" or who attended a school "for which BDU is not

23

aware of evidence that would support an approval of applications" speaks for itself. Each application for a borrower defense discharge is reviewed individually, along with any documents provided by the borrower and in the context of any common evidence in the Department's possession. Applications that are supported by common evidence, as well as those that are not supported by common evidence but which include evidence that might reasonably support approval, are set aside for further consideration by a career attorney in the Borrower Defense Unit. Claims that are not supported by evidence are ineligible for approval.

Defendants intend to supplement this response with a forthcoming production of documents, including: (1) school-specific memos regarding the scope of evidence considered and (2) related adjudication protocols.

**Interrogatory No. 18**

Identify all documents drafted, consulted, or otherwise involved in recommending and approving the denial of borrower defense applications.

**Objections:** Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. In particular, the request's use of the phrases "requests" and "otherwise involved" is overly broad and, combined with the request for "[a]ll documents," potentially encompasses every writing in the possession, custody, or control of

24

the Borrower Defense Unit. Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order: May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).

Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71, and to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege. As stated in Defendants' RFPD Responses, which were served contemporaneously with these responses and objections and are incorporated here by reference, Defendants will not produce any documents that do not pertain to the limited subject matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents. To the extent Plaintiffs request that Defendants identify particular documents, Defendants refer Plaintiffs to their RFPD Responses and forthcoming production of documents.

**Response:** Notwithstanding Defendants' objections, Defendants intend to produce the following documents responsive to Plaintiffs' Interrogatory No. 18: (1) school-specific memos regarding the scope of evidence considered and (2) related adjudication protocols.

**Interrogatory No. 19**

State how many and which class members have received a Form A, B, C, or D denial notice relating to loans associated with attendance at Schools subject to findings of misconduct by the Department or any other state or federal body, agency, or court, including but not limited to the Schools listed below, and Schools owned or operated by any entity listed below:

   a. Any School operated by Alta Colleges, Inc., including but not limited to Westwood College;

which plaintiffs request information. For example, it is not clear whether "findings" refers to evidence of misconduct that a particular entity (such as a state or federal enforcement authority) has gathered or instead to a definitive legal conclusion by such an entity (or by a court or other tribunal) that such misconduct was actually engaged in. Putting aside the vagueness of the phrase "findings of misconduct," the request is also overly broad in seeking information about such "findings" by "any" state body, federal body, agency, or court, regardless of whether any evidence obtained by such entities was shared with the Borrower Defense Unit or even relevant to the Department's adjudication of borrower defense applications.

Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order: May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).

**Response:** Between December 2019 and September 1, 2020, Defendants denied the borrower defense applications of approximately 118,300 class members; most, if not all, received the referenced form denial letters. A large number of these denials were issued to applicants who attended the schools listed in this request. Defendants intend to supplement this response with a chart that includes case-level data from the borrower defense system that demonstrates which class members received each form denial letter and relevant case characteristics, including the date of the letter and school name(s) associated with the borrower's claim.

**SIGNATURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 33(b)(5)**

For interrogatory responses: See the attached certification pages.

Dated: December 7, 2020                              As to objections,

                                                     JEFFREY BOSSERT CLARK

which plaintiffs request information. For example, it is not clear whether "findings" refers to evidence of misconduct that a particular entity (such as a state or federal enforcement authority) has gathered or instead to a definitive legal conclusion by such an entity (or by a court or other tribunal) that such misconduct was actually engaged in. Putting aside the vagueness of the phrase "findings of misconduct," the request is also overly broad in seeking information about such "findings" by "any" state body, federal body, agency, or court, regardless of whether any evidence obtained by such entities was shared with the Borrower Defense Unit or even relevant to the Department's adjudication of borrower defense applications.

Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order: May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).

**Response:** Between December 2019 and September 1, 2020, Defendants denied the borrower defense applications of approximately 118,300 class members; most, if not all, received the referenced form denial letters. A large number of these denials were issued to applicants who attended the schools listed in this request. Defendants intend to supplement this response with a chart that includes case-level data from the borrower defense system that demonstrates which class members received each form denial letter and relevant case characteristics, including the date of the letter and school name(s) associated with the borrower's claim.

**SIGNATURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 33(b)(5)**

For interrogatory responses: See the attached certification pages.

Dated: December 7, 2020                              As to objections,

                                                     JEFFREY BOSSERT CLARK