**Supplemental Complaint**

**Exhibit Index**

**Bates Stamped Documents**

Documents appear in this order, with Bates-Numbered Slip-Sheets Between them. The documents are cited **by Bates Number** in the Supplemental Complaint.

| Document Order | Bates Range | Document Title / Identifier |
|---|---|---|
| 61. | DOE00011396-DOE00011403 | Lacy Cosmetology School Memo |
| 62. | DOE00011421 | Lawton School Memo |
| 63. | DOE00011426-DOE00011429 | Lawton School Memo |
| 64. | DOE00011569-DOE00011570 | Masters of Cosmetology Memo |
| 65. | DOE00011572-DOE00011574 | Mattia College Memo |
| 66. | DOE00011608-DOE00011609 | Meridian University Memo |
| 67. | DOE00011644-DOE00011647 | Micropower Career Institute Memo |
| 68. | DOE00011707-DOE00011711 | Missouri Technical School Memo |
| 69. | DOE00011746-DOE00011752 | Morris Brown College Memo |
| 70. | DOE00011761-DOE00011765 | Mountain State Univ. Memo |
| 71. | DOE00011953-DOE00011956 | Ohio Media School Memo |
| 72. | DOE00012087-DOE00012088 | Pinnacle Career Institute Memo |
| 73. | DOE00012245-DOE00012248 | Remington College Memo |
| 74. | DOE00012388-DOE00012389 | San Diego College Memo |
| 75. | DOE00012560-DOE00012561 | Southwest Memo |
| 76. | DOE00012629-DOE00012633 | Stenotype Institute of Jacksonville Memo |

| 77. | DOE00012658 | Strayer Memo |
|-----|-------------|--------------|
| 78. | DOE00012664-DOE00012668 | Strayer Memo |
| 79. | DOE00012673-DOE000012675 | Suburban Technical School Memo |
| 80. | DOE00012822-DOE00012824 | Touro College memo |

**DOE00011331-DOE00011340**



PROUD SPONSOR *of*
*the* AMERICAN MIND ™

<u>Initial Review of Medium Batch Applications</u>

**BACKGROUND**

| Name of Institution and OPEID | Keller Graduate School of Management – 02075400; 12075400 |
| --- | --- |
| **Open or Closed** | Open |
| **Additional Locations**<br>• Add closure date if applicable | See Attachment A – Keller Graduate School of Management Locations[1] |
| **Corporate Owner(s)** | DeVry Education Group Inc.<br>DeVry/New York Inc.<br>After December 5, 2017: Adtalem Global Education, Inc. |
| **Total Number of Applications** | 810 applications as of April 2, 2020 |
| **Patterns of Alleged Misconduct** | Patterns of alleged misconduct include misrepresentations of employment prospects and transferring of credits/school accreditation. |
| **Class Issue or Singular** | Class issue |
| **Internal ED Investigation(s)**<br>• PC, AAASG, OIG | N/A |
| **Internal Contact(s) for Further Investigation** | N/A |
| **External Investigations (AG), Evidence or Litigation Related to BD** | • Lindberg et al v. Adtalem Global Education Inc. f/k/a DeVry Education Group, Inc. and DeVry University, Inc.[2] – The plaintiffs of the suit were enrolled in Keller Graduate School of Management. The plaintiffs contend that DeVry University and Keller Graduate School of Management "made deceptive representations about the benefits of obtaining a degree from DeVry University and Keller Graduate School of Management" in violation of Texas state law. The Lindberg case was consolidated with the Rangel v. Adtalem and DeVry University, Inc. case because the allegations against DeVry and Keller were |

---

[1] See Attachment A: Keller Graduate School of Management Locations.
[2] *Lindberg et al v. Adtalem Global Education Inc. f/k/a DeVry Education Group, Inc. and DeVry University, Inc.*, Case No. 18-cv-649, W. D. TX; https://www.truthinadvertising.org/wp-content/uploads/2018/08/Lindberg-v-Adtalem-Global-Education-complaint.pdf; https://vetsedsuccess.org/wp-content/uploads/2018/10/texas-students-lawsuit-devry.pdf; https://www.courtlistener.com/docket/7302337/lindberg-v-adtalem-global-education-inc/

DOE00011331

| | |
|---|---|
| | identical. Plaintiffs refiled and consolidated, and the Rangel v. Adtalem and DeVry University, Inc.[3] case is currently pending.[4]<br><br>• Pierce v. DeVry Education Group[5] - On March 30, 2016, the plaintiff filed a case against DeVry University, Keller Graduate School of Management. The plaintiff alleged that DeVry made deceptive representations about the school accreditation, transferability of the credits, and job placement rates in violation of New Jersey state laws. The case was settled by the parties on December 21, 2016. This case has a pending borrower defense application. |
| **External Contact(s) for Further Investigation** | N/A |
| **External Investigations, Evidence or Litigation NOT related to BD** | N/A |
| **News Articles/Media** | N/A |
| **Name of Reviewer** | Nastashia Matos |
| **Date Review Completed** | 04/03/2020 |

## SUMMARY OF ALLEGATIONS AND RECOMMENDATION

| Summary of Allegations Reviewed | **Application Summary:**[6] |
|---|---|
| | Borrower defense reviewed a sample of 50 allegations for each allegation category to identify potential trends in the applicant pool. As of April 2, 2020, there are 810 borrower applications for the Keller Graduate School of Management. The most common allegations are employment prospects and transferring of credits/school accreditation. Many of the allegations regard misrepresentations or omissions made by the school, but borrowers have not provided relevant supporting evidence to support their allegations.<br><br>**Allegation Break Down:**<br><br>Employment Prospects: 649 allegations<br>Out of 50 sampled allegations, 34 of the 50 made employment prospect allegations that might warrant BD relief, if supported by evidence. The borrowers allege that Keller guaranteed jobs, that they were told career services would place them in a |

---

[3] https://usdedeop.sharepoint.com/teams/FSA/zdo%20not%20use/Forms/AllItems.aspx?id=%2Fteams%2FFSA%2F zdo%20not%20use%2FBorrower%20Defense%20Team%2FInvestigations%2FMid%2DSize%2FIn%20Progress%2FN astashia%2FKeller%20Graduate%20School%20of%20Managment%2FConsolidated%2DAmended%20Rangel%20v% 2E%20Adtalem%20Complaint%2Epdf&parent=%2Fteams%2FFSA%2Fzdo%20not%20use%2FBorrower%20Defense %20Team%2FInvestigations%2FMid%2DSize%2FIn%20Progress%2FNastashia%2FKeller%20Graduate%20School%2 0of%20Managment; *Luis Rangel, et al. v. Adtalem Global Education, Inc. and DeVry University, Inc.*, Civil Action No. 5:18-cv-0082-DAE.

[4] Attachment B: Plaintiffs of the Rangel Case with a Pending Borrower Defense Application.

[5] https://www.courtlistener.com/docket/13352609/peirce-v-devry-education-group/; Borrower Defense case no. 01252100.

[6] See Attachment C: Keller Graduate School of Management Summary of Application Overview

DOE00011332

job after graduation, that they were offered job placement, and that 90% of DeVry graduates obtain a job within 6 months from the date of graduation. There was insufficient commonality of campus and/or time period to suggest a pattern that warrants further investigation, and the borrowers failed to provide relevant supporting evidence to establish these allegations of misrepresentation.

Program Cost and Nature of Loans: 426 allegations
Out of 50 sampled allegations, only 12 made allegations that might warrant BD relief, if supported by evidence. Those borrowers stated that Keller misrepresented the total cost of the program when the borrower was told a certain amount but was charged another. There was insufficient commonality of campus and/or time period to suggest a pattern that warrants further investigation, and the borrowers failed to provide relevant supporting evidence to establish these allegations of misrepresentation.

Transferring Credits: 226 allegations
Out of 50 sampled allegations, 31 made allegations that might warrant BD relief, if supported by evidence. The borrowers allege that Keller misrepresented the nature of their accreditation and the transferability of credits. There was insufficient commonality of campus and/or time period to suggest a pattern that warrants further investigation, and the borrowers failed to provide relevant supporting evidence to establish these allegations of misrepresentation.

Career Services: 574 allegations
Out of 50 sampled allegations, 30 made career services allegations that might warrant BD relief, if supported by evidence. The borrowers allege that Keller misrepresented the nature and availability career services, job placement ability and offered job placement, and that 90% of Keller graduates obtain a job within 6 months from the date of graduation. There was insufficient commonality of campus and/or time period to suggest a pattern that warrants further investigation, and the borrowers failed to provide relevant supporting evidence to establish these allegations of misrepresentation.

Educational Services: 327 allegations
Out of 50 sampled allegations, only 2 made educational services allegations that might warrant BD relief. The educational service allegations were that borrowers were promised tutoring services, and that the school represented that professors who taught the classes were IT experts. The borrowers failed to provide relevant supporting evidence to establish these allegations of misrepresentation.

Admissions and Urgency to Enroll: 343 allegations
After sampling 50 allegations, none of the allegations were the type to warrant borrower defense relief. Additionally, borrowers failed to provide relevant supporting evidence for these allegations.

DOE00011333

| | |
|---|---|
| | Other: 421 allegations<br>After sampling 50 allegations, only 2 out of the 50 made allegations that might warrant BD relief, alleging promises of a job and misrepresenting accreditation by DeVry University/Keller Graduate School of Management. The other allegations reference the FTC settlement with DeVry; none of the applicants' state that they were involved in the suit or benefited from the suit. |
| **Recommended Next Steps** | Based on our search for public information (including public records, news articles, court documents and filings), Department of Education internal resources (FRPDs, AASG, and OIG investigations), and the sampling of claims, there is insufficient evidence of widespread misconduct by  Keller Graduate School of Management to warrant further investigation, with the possible exception of the borrowers listed on Attachment B (discussed below). Additionally, as there is no evidence of widespread misconduct, notice to the school on these claims is not required.<br><br>BD recommends that the cases be adjudicated using the standard protocol, with the exception of the Rangel plaintiffs identified in Attachment B. The cases identified in Attachment B should be set aside, and the applicants contacted by Investigations. |
| **Recommended Focus Area(s)** | N/A |
| **APPROVED BY:** | Michael Page |
| **DATE:** | 4/24/2020 |

| | |
|---|---|
| **Evidence Considered** | ☐   Attorney Submission<br>☐   **Borrower Submission**<br>☐   **Evidence Obtained by the Department in conjunction with its regular oversight activities**<br>☐   Federal Trade Commission<br>☐   Department of Justice<br>☐   Securities and Exchange Commission<br>☐   Attorney General _____ (state)<br>☐   Consumer Financial Protection Bureau<br>☐   ED - FSA/OIG<br>☐   Other |

DOE00011334

Attachment A:

Keller Graduate School of Management Locations

DOE00011335

| OPE ID | Location | Status |
|---|---|---|
| 02075400 | Downers Grove, IL | Open |
| 02075401 | Phoenix, AZ | Open |
| 02075402 | Kansas City, MO | Open |
| 02075403 | Milwaukee, WI | Open |
| 02075404 | Schaumburg, IL | Open |
| 02075405 | Naperville, IL | Open |
| 02075406 | Lincolnshire, IL | Open |
| 02075407 | Tinley Park, IL | Open |
| 02075408 | Kansas City, MO | Open |
| 02075409 | Mesa, AZ | Open |
| 02075410 | Elgin, IL | Open |
| 02075411 | Waukesha, WI | Open |
| 02075412 | Saint Louis, MO | Open |
| 02075413 | Decatur, GA | Open |
| 02075414 | Atlanta, GA | Closed: 2/7/2013 |
| 02075415 | Long Beach, CA | Open |
| 02075416 | Pomona, CA | Open |
| 02075417 | Manassas, VA | Open |
| 02075418 | Chicago, IL | Open |
| 02075419 | Merrillville, IN | Open |
| 02075420 | St, Louis, MO | Closed: 5/29/2007 |
| 02075421 | San Diego, CA | Open |
| 02075422 | San Jose, CA | Closed: 02/27/2007 |
| 02075423 | Atlanta, GA | Closed: 11/22/1999 |
| 02075424 | Atlanta, GA | Open |
| 02075425 | Fremont, CA | Open |
| 02075426 | Alpharetta, GA | Open |
| 02075427 | Irvine, CA | Open |
| 02075428 | Fremont, CA | Closed: 08/10/2000 |
| 02075429 | Tampa, FL | Open |
| 02075430 | Orlando, FL | Open |
| 02075431 | Phoenix, AZ | Open |
| 02075432 | Arlington, VA | Open |
| 02075433 | Chicago, IL | Open |
| 02075434 | Sherman Oaks, CA | Open |
| 02075435 | Broomfield, CO | Closed: 07/01/2004 |
| 02075436 | Miami, FL | Open |
| 02075437 | Bethesda, MD | Open |
| 02075438 | Columbus, OH | Open |
| 02075439 | Orlando, FL | Open |
| 02075440 | Bellevue, WA | Open |
| 02075441 | Irving, TX | Open |
| 02075442 | Duluth, GA | Open |
| 02075443 | Cleveland, OH | Closed: 8/6/2008 |
| 02075444 | Federal Way, WA | Open |

DOE00011336

| | | |
|---|---|---|
| 02075445 | Oakland, CA | Open |
| 02075446 | Columbus, OH | Open |
| 02075447 | Houston, TX | Open |
| 02075448 | Charlotte, NC | Open |
| 02075449 | Fort Washington, PA | Open |
| 02075450 | King of Prussia, PA | Open |
| 02075451 | Colorado Springs, CO | Open |
| 02075452 | Richardson, TX | Open |
| 02075453 | Miramar, FL | Open |
| 02075454 | Atlanta, GA | Open |
| 02075455 | Long Island City, NY | Closed: 1/25/2012 |
| 02075456 | New York, NY | Open |
| 02075457 | Beachwood, OH | Closed: 8/13/2003 |
| 02075458 | Indianapolis, IN | Open |
| 02075459 | Pittsburgh, PA | Open |
| 02075460 | Portland, OR | Open |
| 02075461 | Henderson, NV | Open |
| 02075462 | Independence, OH | Open |
| 02075463 | Gurnee, IL | Open |
| 02075464 | Philadelphia, PA | Open |
| 02075465 | Atlanta, GA | Open |
| 02075466 | Atlanta, GA | Closed: 2/7/2013 |
| 02075467 | Westminster, CO | Open |
| 02075468 | Fort Lauderdale, FL | Open |
| 02075469 | Fort Worth, TX | Open |
| 02075470 | Greenwood Village, CO | Open |
| 02075471 | Elk Grove, CA | Open |
| 02075472 | Austin, TX | Open |
| 02075473 | Edina, MN | Open |
| 02075474 | Stockbridge, GA | Open |
| 02075475 | St. Louis Park, MN | Closed: 6/29/2012 |
| 02075476 | San Antonio, TX | Open |
| 02075477 | Morrisville, NC | Open |
| 02075478 | Fresno, CA | Open |
| 02075479 | Cincinnati, OH | Open |
| 02075480 | Oklahoma City, OK | Open |
| 02075481 | Houston, TX | Open |
| 02075482 | Colton, CA | Open |
| 02075483 | Sandy, UT | Open |
| 02075484 | Dayton, OH | Open |
| 02075485 | Memphis, TN | Open |
| 02075486 | Tampa, FL | Open |
| 02075487 | Jacksonville, FL | Open |
| 02075488 | San Jose, CA | Open |
| 02075489 | Nashville, TN | Open |
| 02075490 | Chesapeake, VA | Open |

DOE00011337

| | | |
|---|---|---|
| 02075491 | Southfield, MI | Open |
| 02075492 | Bakersfield, CA | Open |
| 02075493 | Palmdale, CA | Open |
| 02075494 | Louisville, KY | Open |
| 02075495 | Paramus, NJ | Open |
| 02075496 | Daly City, CA | Open |
| 02075497 | Alhambra, CA | Open |
| 02075498 | Anaheim, CA | Open |
| 02075499 | Chicago, IL | Open |
| 12075400 | Glendale, AZ | Open |
| 12075401 | North Brunswick, NJ | Open |
| 12075402 | Cedar Hill, TX | Closed: 2/7/2013 |
| 12075403 | Sugar Land, TX | Open |
| 12075404 | Rego Park, NY | Open |
| 12075405 | Oxnard, CA | Open |
| 12075406 | Lynnwood, WA | Open |
| 12075407 | Cranberry, PA | Closed: 2/8/2012 |
| 12075408 | Cherry Hill, NJ | Open |

Attachment B:
Plaintiffs of the Rangel Case with a Pending Borrower Defense Application

*Luis Rangel, et al. v. Adtalem Global Education, Inc. and DeVry University, Inc.,*
Civil Action No. 5:18-cv-0082-DAE.

| Case No. | Name | Status |
|---|---|---|
| 01498515 | Christina Cabello | Open |
| 01258902 | Elisabeth Nguyen | Open |
| 01378809 | Christal Turner | Open |
| 01497289 | Martin Oloyede | Open |
| 01536610 | Nathalie A. Yeka | Open |
| 01357947 | Tristen Keith Wilson | Open |
| 01395834 | Emmanuel T. Makari | Open |
| 01373933 | Victor P. Sekgantso | Open |
| 01325018 | Candance D. Smith | Open |
| 02028380 | Alan Ta | Open |
| 01483392 | Sharonda Monique' Ford | Open |
| 01464123 | Jayson R. Fox | Open |
| 01376523 | Courtney Frazier | Open |
| 02105111 | Nathaniel Jones | Open |
| 01467302 | Derrick Milan Keith | Open |
| 01404956 | Andres Orlando Salazar | Open |
| 01372594 | Scott Anthony Sullivan | Open |
| 01379962 | Sean Monyese Williams | Open |
| 01478559 | Richard A Shaw | Open |
| 01411595 | Heather M. Emmons | Open |
| 01240869 | Ruben A. Espinoza | Open |
| 01376578 | Barrie Bergans | Open |
| 01375978 | David Michael Corvin | Open |
| 01607080 | Bobby Garza | Closed |
| 01383764 | Kevin Michael Guest | Open |
| 01367463 | Teneika L. Tillis | Open |
| 01376566 | Billy Jerome Morris | Open |
| 01306556 | Eddie Silas | Open |
| 01403434 | Tuwandra L. Harris | Open |
| 01904328 | Joshua A Palczynsky | Open |
| 01527803 | Ebony R. Ijeh | Open |

DOE00011339

Attachment C:

Keller Graduate School of Management Application Sample Overview

DOE00011340

**DOE00011396-DOE00011403**



PROUD SPONSOR of
the AMERICAN MIND™

**Initial Review of Mid-Size Batch Applications**

## BACKGROUND

| Name of Institution and OPEID | Lacy Cosmetology School<br>03513300 |
|---|---|
| **Open or Closed** | Closed – 3/11/2014 |
| **Date Advanced Letter Sent** | N/A |
| **Additional Locations**<br>• **Add closure date if applicable** | 03513301 – Lacy Cosmetology School – Lexington, SC (closed 3/11/2014)<br><br>03513302 – Lacy Cosmetology School – Goose Creek, SC (closed 3/11/2014)<br><br>03513303 – Lacy Cosmetology School – Charleston, SC (closed 3/11/2014) |
| **Corporate Owner(s)** | Lacy School of Cosmetology LLC (100%)<br>• Ernest J Lacy (100% owner of Lacy School of Cosmetology LLC) |
| **Total Number of Applications** | As of October 20, 2020, there is one application already adjudicated and 48 applications awaiting adjudication. |
| **Patterns of Alleged Misconduct** | Lacy Cosmetology School does not have any current litigation pending. Based on a sample of ten allegations of each category, the borrowers do not present evidence that indicates Lacy Cosmetology School committed overt or repetitive misconduct, fraud, or misrepresentations. The application narratives provide individual experiences, frustrations, or issues encountered as a customer of Lacy Cosmetology School.<br><br>Although some of the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct. Additionally, while the potential for fraud need not be ruled out, some allegations pertain to a false certification of loans and therefore, are outside a Borrower Defense determination. |
| **Internal ED Investigation(s)**<br>• **PC, AAASG, OIG** | **Program Compliance**<br>In 2011, the Department conducted a Program Review at Lacy Cosmetology School, the Final Program Review Determination ("FPRD") was issued January 6, 2015. The FPRD consisted of 18 findings, one of which is relevant to Borrower Defense - finding 8: Ineligible Program. The FPRD identified that LCS |

disbursed Pell grant funds to a student in an Advanced Cosmetology Program, which was an ineligible program.[1]

Lacy Cosmetology School disputed the finding arguing the Advanced Cosmetology program was within the scope of its training and that it has both state and accrediting agency approval. Additionally, LCS stated that it did not have to update the Eligibility Certification Approval Report ("ECAR")[2] until its next normal recertification process.

Lacy Cosmetology School's provisional program participation agreement ("PPA")[3] at the time of program review was provisionally certified and because of the provisional status the school is required to obtain approval from the Department before disbursing Title IV funds to students enrolled in a new education program. Lacy Cosmetology School failed to submit a report of all students that were disbursed Title IV funds while enrolled in the Advanced Cosmetology program beginning with the 2009-2010 award year through the current award year. The Department determined that all funds disbursed to the students in question for the 2009-2010 and 2010-2011 award years are a liability. The Department determined that all funds distributed to students during the award years 2009-2010 and 2010-2011 were unlawfully distributed for students enrolled in the advanced cosmetology program and the funds should be returned to the Department.

### AAASG and OIG Investigations
As a result of the 2011 program review determinations, a letter was sent from the Department to Lacy Cosmetology School revoking Lacy Cosmetology School's provisional program participation agreement (PPA effective March 7, 2014). The revocation occurred due to the discovery of Lacy Cosmetology School's non-compliance with Department regulations. Specifically, the letter identified that the revocation of Lacy Cosmetology School. PPA was due to the findings of the

---

[1] A file review of all students enrolled in the advanced cosmetology program was requested by the department and was never completed by LCS.

[2] An Eligibility Certification Approval Report or ECAR is a Department report that indicates what programs are authorized to receive Title IV funds. The ECAR contains the most critical of the data elements that form the basis of the school's approval and also a list of the highest level of offering, any nondegree program or short-term programs, and any additional location that have been approved for SFA programs.

[3] Institutions must enter into a program participation agreement with the department to obtain Title IV funds. Each PPA executed by an institution includes an agreement by the Institution to comply with the terms and conditions that the institution must meet to participate in the Title IV program. Compliance with a PPA and the incorporated regulations and statutes is a condition of participation and payment for Title IV funds. An Institution that makes a request to draw Title IV funds certifies that it will disburse the funds in compliance with the PPA.

2

| | |
|---|---|
| | program review conducted in 2011 that included Finding 8 of the PRR. Finding 8 stated that Lacy Cosmetology School was offering and disbursing Title IV funds to students enrolled in an unapproved program, Advanced Cosmetology.<br><br>**OGC/DOJ**<br>Borrower Defense found no past or pending OGC/DOJ investigations. |
| **Internal Contact(s) for Further Investigation** | Lauren Pope |
| **External Investigations (AG), Evidence or Litigation Related to BORROWER DEFENSE** | United States ex rel. Mayers v. Lacy Sch. of Cosmetology, LLC, No. 1:13-CV-00218-JMC, 2015 WL 8665345 (D.S.C. Dec. 14, 2015)<br><br>United States District Court, D. South Carolina, Aiken Division granted Plaintiff's Motion for Default Judgment against Lacy School of Cosmetology and Earnest Lacy for violation of the False Claims Act. Plaintiffs' claims included defendant's misappropriation of FSA funds, making unauthorized disbursements of FSA funds, failing to refund student credit balances, and concealing the fraud by falsifying records and submitting false statements of compliance to the Department. The lawsuit and included claims are not relevant to Borrower Defense or are claims or allegations of false certification of loans and are outside the scope of a Borrower Defense determination.<br><br>Complaint & Demand for Jury Trial, United States ex rel. Mayers v. Lacy Sch. of Cosmetology, (2013) (CA No. 1:13-cv-00218-JMC).<br><br>The complaint, filed by the plaintiff Shawn Mayers on behalf of himself and the United States of America, includes counts for discrimination based on race, creating false documents and records, stealing unearned Title IV funds, receiving payment of federal funds in exchange for pirated textbooks, and retaliation. The lawsuit and included claims are not relevant to Borrower Defense or are claims or allegations of false certification of loans and are outside the scope of a Borrower Defense determination.<br><br>Intervenor Complaint, United States ex rel. Mayers v. Lacy Sch. Of Cosmetology, (2015) (CA NO: 1:13-cv-00218-JMC). |

3

DOE00011398

| | The intervenor complaint, filed by the United States of America, includes counts for presenting false claims, making false statements and records, reverse false claims, payment by mistake of fact, unjust enrichment, and conversion. The intervenor complaint included examples of the defendants' false statements and claims including the following: (1)Defendants engaged in a scheme to defraud the government by receiving federal program funding they would not otherwise have been entitled to; (2) Each time the Defendants obtained federal funds from the G5 system[4], they certified compliance with program requirements.; (3) Defendants' Falsely represented that they were complying with the program participation agreements[5] when in fact they were not; (4) Defendants' false statements in signing the program participation agreements induced the government to allow LSC to participate and be eligible to apply for Title IV funds. Additionally, the complaint alleged that LSC failed to properly disburse Student Credit Balances and converted funds, made false documents, records, and statements in connection with the Departments' program review, LSC wrongly spent Title IV funds on ineligible programs[6], LSC used Title IV funds to purchase pirated digital textbooks, LSC disbursed unearned Title IV funds, LSC failed to verify students' eligibility for Title IV funds, LSC failed to preform return of Title IV calculations, LSC made Pell overpayments, and LSC failed to follow its attendance policy.<br><br>An Order and Opinion was entered on December 14, 2015. The order and opinion found that Lacy violated the False Claims Act and that default judgment was granted. |
|---|---|
| **External Contact(s) for Further Investigation** | Rob Sneed, Assistant United States Attorney, Civil Division |
| **External Investigations, Evidence or Litigation** | N/A |

---

[4] The G5 system is the Department of Education's financial management system. The G5 system is used for Grant Administration and Payments. G5 authorized money is accounted for in a school's G5 account in the aggregate by award year and specific program. The G5 system gives a school a list of its awards and a snapshot of the award number, available balance, last date to draw, and award status.

[5] Institutions must enter into a program participation agreement with the department to obtain Title IV funds. Each PPA executed by an institution includes an agreement by the Institution to comply with the terms and conditions that the institution must meet to participate in the Title IV program. Compliance with a PPA and the incorporated regulations and statutes is a condition of participation and payment for Title IV funds. An Institution that makes a request to draw Title IV funds certifies that it will disburse the funds in compliance with the PPA.

[6] The complaint includes an accusation that LSC wrongly spent Title IV funds on ineligible programs. It includes the example of the Advanced Cosmetology program that was not approved until September 5, 2012. The default judgment includes all funds disbursed to borrowers in the 2009-2010 and 2010-2011 award period, including those enrolled in Advanced Cosmetology.

DOE00011399

| NOT related to BORROWER DEFENSE | |
|---|---|
| **News Articles/Media** | Press release by the Department of Justice explaining the entry of default judgment against Lacy School of Cosmetology and Earnest Lacy for false claims. |
| | Article identifying that Lacy School and its president were "hit" with a $9.3 million court judgment. |
| | News article stating that Lacy Schools of Cosmetology closed three schools across South Carolina. |
| | News article identifying that the U.S. Attorney's office wants to advise students of options that may be available to them. The article states that borrowers may wish to file a borrower defense to repayment claim and can find the information on the Department of Education website. |
| **Name of Reviewer** | Larry Michael Walker |
| **Date Review Completed** | 10/26/2020 |

## SUMMARY OF ALLEGATIONS AND RECOMMENDATION

| Summary of Allegations Reviewed | **Summary of Allegations**<br>Borrower Defense reviewed a sample of 10 allegations of each category outlined below to identify potential trends and/or salient information provided by the applicant pool. The enrollment dates for the applicant pool range from December 1, 2007 through March 1, 2014. The narrative allegations include complaints relating to: (i) misrepresentations regarding salary; (ii) misrepresentations about the qualifications of instructors; and (iii) falsifying loan information.<br><br>**Employment Prospects**<br>Based on the 10 allegations reviewed, borrowers most commonly allege that they were unable to sit for licensing exams, that the school promised job placement, and that the school promised certain salary/wages after graduation. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.<br><br>**Admissions and Urgency to Enroll**<br>Based on the 10 allegations reviewed, borrowers commonly allege that they were told there was an urgency to sign up immediately and, if they did not sign up immediately, they would lose a seat in the class. These claims are |
|---|---|

DOE00011400

not of the type that would warrant Borrower Defense relief absent a misrepresentation.

### Program Cost and Nature of Loans

Based on the 10 allegations reviewed, borrowers most commonly allege that they were charged for room and board when room and board was not provided by the school, that the owner was charged with fraud regarding student loans, and that the school promised certain salary/wages after graduation. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct. Additionally, while the potential for fraud need not be ruled out, these allegations pertain to a false certification of loans and therefore, are outside a Borrower Defense determination.

### Transferring Credits

Based on the eight allegations reviewed, borrowers most commonly allege that they were told credits would transfer and the school did not explain if credits would transfer. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

### Career Services

Based on the 10 allegations reviewed, borrowers most commonly allege that the school promised internships and that the school promised employment after graduation. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

### Educational Services

Based on the 10 allegations reviewed, borrowers most commonly allege that the school misled borrowers about the qualifications of instructors, that no instructor was available for certain classes, and that the school had unlicensed instructors. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

### Other

Based on the 10 allegations reviewed, borrowers most commonly allege that the owner of the school misappropriated some or all of the student loan funds, that there is a judgment against the owner of the school, and that the school owner was under investigation. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a

6

DOE00011401

| | |
|---|---|
| | pattern or practice of this type of misconduct. Additionally, while the potential for fraud need not be ruled out, these allegations pertain to a false certification of loans and therefore, are outside a Borrower Defense determination. |
| **Recommended Next Steps** | Based on our search for public information (including public records, news articles, court documents and filings), Department of Education internal resources (FRPDs, AASG, and OIG investigations), and the sampling of claims, there is possible sufficient evidence of misconduct regarding programmatic accreditation at LCS to warrant further investigation. However, none of the current cases in Borrower Defense identify borrowers enrolled in the specific program, Advanced Cosmetology, during the specific timeframe that is related to the misrepresentation.<br><br>**The timeframe for possible approvals is approximately between July 1, 2009 and June 30, 2011.** Currently, the Department does not have any applications from this timeframe. If the Department receives applications that reflect a borrower's enrollment in the specific program during the estimated timeframe, the Department will investigate and determine if the claims will be approved.<br><br>Additionally, allegations and claims of false certification of loans are outside a Borrower Defense determination. If additional evidence is discovered or received in the future, these claims may be revisited as warranted. As such, it is recommended the cases be adjudicated. |
| **Recommended Focus Area(s)** | N/A |
| **APPROVED BY:** | Kathryn Johnson |
| **DATE:** | October 28, 2020 (Updated 11/20/2020) |

| | |
|---|---|
| **Evidence Considered** | ☐ Attorney Submission<br>☐ Borrower Submission<br>☐ Consumer Protection Financial Bureau (CPFB)<br>☐ Department of Education-Office of Investigator General (OIG)<br>☐ Documents Submitted by the school in response to your application<br>☐ Evidence Obtained by the Department in conjunction with its regular oversight activities<br>☐ Federal Trade Commission (FTC)<br>☐ Department of Justice (DOJ)<br>☐ U.S. Securities and Exchange (SEC)<br>☐ Attorney General _____ (state)<br>☐ Other<br>☒ No Other Evidence Considered |

7

| **Advanced Letter Requests** | ☐Standard Letter |
|---|---|
| | ☐Standard Letter Plus: |

**Links:**
- Salesforce Allegation Report
- PEPS Report
- FPRD
- United States ex rel. Mayers v. Lacy Sch. of Cosmetology, LLC
- Complaint & Demand for Jury Trial, United States ex rel. Mayers v. Lacy Sch. of Cosmetology, (2013) (CA No. 1:13-cv-00218-JMC).
- Intervenor Complaint, United States ex rel. Mayers v. Lacy Sch. Of Cosmetology, (2015) (CA NO: 1:13-cv-00218-JMC).
- Order and Opinion
- Default judgment

8

**DOE00011421-DOE00011421**

Lawton School – Evidence Considered Protocol

<u>Applicable to</u>:

Lawton School (OPEID 03028300)

<u>Entering Evidence Considered Manually</u>:

1. Open a case with a suggested closing correspondence value of Standard Denial with Evidence Considered in status 3.10
2. In the "Evidence Considered" field on the case select the following:
   a. Department of Education-Office of Investigator General (OIG)
   b. Evidence obtained by the Department in conjunction with its regular oversight activities
3. The case is now ready to process following the normal borrower notification letter creation process.

<u>Bulk Update Options</u>:

1. Bulk update (by work ticket to Accenture) all Lawton School cases in 3.10 with the following:

   a. In the "Evidence Considered" dropdown, select "Evidence obtained by the Department in conjunction with its regular oversight activities."

2. Process following the normal borrower notification letter creation process.

DOE00011421

**DOE00011426-DOE00011429**



PROUD SPONSOR *of*
the AMERICAN MIND™

## Initial Review of Mid-Size Batch Applications

## BACKGROUND

| Name of Institution and OPEID | Lawton School 03028300 |
|---|---|
| Open or Closed | Closed (03/29/91) |
| Date Advanced Letter Sent | N/A |
| Additional Locations <br> • **Add closure date if applicable** | 03028400- New Orleans, LA <br> Oakland, California |
| Corporate Owner(s) | Allied Education Corporation; Glenn Rodano |
| Total Number of Applications | As of September 3, 2020 there are four applications already adjudicated and 15 applications awaiting adjudication. These applications are mixed with The Lawton School for Medical and Dental Assistants. |
| Internal ED Investigation(s) <br> • **PC, AAASG, OIG** | **Program Compliance** <br><br> Borrower Defense found no past or pending Final Program Review Determinations (FRPD) related to Borrower Defense. <br><br> **AAASG and OIG Investigations** <br><br> Borrower Defense found no past or pending AAASG or OIG investigations. <br><br> **OGC/DOJ** <br><br> Borrower Defense found no past or pending OGC/DOJ investigations. |
| Internal Contact(s) for Further Investigation | N/A |
| External Investigations (AG), Evidence or Litigation Related to **BORROWER DEFENSE** | Borrower Defense found a settlement from 1995 in which Glenn and Nancy Rodano, owners of Allied Education Corporation and Lawton School, denied all wrongdoing regarding allegations of fraud, deceit, and negligence in the handling of Allied Education Corporation schools including |

1

| | |
|---|---|
| | the Lawton School in Oakland California. Rodano agreed to pay 75 students a sum of $130,000.<br><br>Borrower Defense also found an article related to the suit and settlement which detailed allegations of The Lawton School offering students misleading representations of job placement and educational services.<br><br>Although the allegations in the litigation and news article may be relevant to Borrower Defense, the borrowers do not attach any evidence to support these allegations and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct. Additionally, Rodano did not admit any fault in the Settlement Agreement. As such, there is insufficient evidence to warrant further investigation by Borrower Defense. |
| **External Contact(s) for Further Investigation** | N/A |
| **Name of Reviewer** | Shimeng Zhang |
| **Date Review Completed** | September 3, 2020 |

## SUMMARY OF ALLEGATIONS AND RECOMMENDATION

| Summary of Allegations Reviewed | <div align="center">**Summary of Allegations**</div>Borrower Defense (BD) reviewed all 19 of the applications against The Lawton School to identify potential trends and/or salient information provided by the applicant pool.[1] The narrative allegations include complaints relating to: (i) the lack of job placement and career opportunities; (ii) the poor quality of the instruction and education received; and (iii)issues regarding the schools' closure.<br><br><div align="center">Employment Prospects</div>BD sampled all employment prospect claims. Borrowers generally allege that Lawton failed to provide borrowers with jobs upon graduation, and they were subsequently unable to find employment in their respected fields of study. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide relevant supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct. |
|---|---|

---

[1] Allegations Sampled

2

DOE00011427

<u>Program Cost and Nature of Loans</u>

BD sampled all program cost allegations. These statements mostly raise issue with the school's failure to explain the total cost in addition to the high cost of attending the school. These claims are not of the type that would warrant Borrower Defense relief absent a misrepresentation.

<u>Career Services</u>

BD sampled all career services allegations. Many of the borrowers allege they were promised job placement and job placement assistance but failed to receive those services. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

<u>Educational Services</u>

BD read all the educational services allegations against The Lawton School. Borrowers mention overall dissatisfaction with the quality of education received, the school's lack of proper accreditation, and the low quality of the schools' instructors. These claims are not of the type that would warrant Borrower Defense relief absent a misrepresentation.

<u>Transferring Credits</u>

BD sampled all transferring credits allegations. These allegations generally communicate a lack of understanding about the inability to transfer credits from the Lawton School. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

<u>Admissions and Urgency to Enroll</u>

BD read all admissions and urgency to enroll allegations. Out of the sampled allegations, borrowers felt that they were rushed during the enrollment process and were generally made to feel that spots were limited. These claims are not of the type that would warrant Borrower Defense relief absent a misrepresentation.

<u>Other</u>

BD sampled all other allegations related to the Lawton School. Borrowers under this section tend to elaborate on the personal individual harms suffered as result of attending Lawton. Several of the borrowers mention the scandal surrounding the school's closure and the litigation against Rodano. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

DOE00011428

| Recommended Next Steps | Based on our search for public information (including public records, news articles, court documents and filings) and Department of Education internal resources (FRPDs, AASG, and OIG investigations), there is insufficient evidence of widespread misconduct by the Lawton School to warrant further investigation. If additional evidence is discovered or received in the future, these claims may be revisited as warranted. As such, it is recommended the cases be adjudicated. |
|---|---|
| Recommended Focus Area(s) | N/A |
| APPROVED BY: | Kathryn Johnson |
| DATE: | September 30, 2020 (Updated 11/22/2020) |

| Evidence Considered | ☐ Attorney Submission |
|---|---|
| | ☒ Borrower Submission |
| | ☐ Consumer Protection Financial Bureau (CPFB) |
| | ☐ Department of Education-Office of Investigator General (OIG) |
| | ☐ Documents Submitted by the school in response to your application |
| | ☒ Evidence Obtained by the Department in conjunction with its regular oversight activities |
| | ☐ Federal Trade Commission (FTC) |
| | ☐ Department of Justice (DOJ) |
| | ☐ U.S. Securities and Exchange (SEC) |
| | ☐ Attorney General _____ (state) |
| | ☐ Other |
| | ☐ No Other Evidence Considered |

**Links:** In this section please provide the Sharepoint links to working documents and evidence reviewed. Example of items to provide links for below.

- Salesforce Allegation Report
- List of Lawton School Cases

DOE00011429

**DOE00011569-DOE00011570**



**PROUD SPONSOR** *of*
*the* AMERICAN MIND™

## Initial Review of Mid-Size Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution and OPEID** | Masters of Cosmetology College 02308900 |
| **Open or Closed** | Closed (4/14/2016) |
| **Date Advanced Letter Sent** | N/A |
| **Additional Locations** <br> • **Add closure date if applicable** | N/A |
| **Corporate Owner(s)** | Masters of Cosmetology College, Inc. <br> • Kaydean Geist |
| **Total Number of Applications** | As of September 2, 2020, there are 32 applications already adjudicated and four applications awaiting adjudication. |
| **Internal ED Investigation(s)** <br> • **PC, AAASG, OIG** | **Program Compliance** <br> Borrower Defense found no past or pending Final Program Review Determinations (FRPD) related to Borrower Defense. <br><br> **AAASG and OIG Investigations** <br> Borrower Defense found no past or pending AAASG or OIG investigations. <br><br> **OGC/DOJ** <br> Borrower Defense found no past or pending OGC/DOJ investigations. |
| **Internal Contact(s) for Further Investigation** | N/A |
| **External Investigations (AG), Evidence or Litigation Related to BORROWER DEFENSE** | A review of publicly available information found no evidence related to Borrower Defense. |
| **External Contact(s) for Further Investigation** | N/A |
| **Name of Reviewer** | Wendy Bonilla |
| **Date Review Completed** | 9/2/2020 |

| | |
|---|---|
| **Recommended Next Steps** | Based on our search for public information (including public records, news articles, court documents and filings) and Department of Education internal resources (FRPDs, AASG, and OIG investigations), there is insufficient evidence of widespread misconduct by Masters of Cosmetology College to |

| | |
|---|---|
| | warrant further investigation. If additional evidence is discovered or received in the future, these claims may be revisited as warranted. As such, it is recommended the cases be adjudicated. |
| **Recommended Focus Area(s)** | N/A |
| **APPROVED BY:** | Shana Metzger |
| **DATE:** | 09/02/2020 (Updated 11/24/2020) |

| | |
|---|---|
| **Evidence Considered** | ☐ Attorney Submission |
| | ☐ Borrower Submission |
| | ☐ Consumer Protection Financial Bureau (CPFB) |
| | ☐ Department of Education-Office of Investigator General (OIG) |
| | ☐ Documents Submitted by the school in response to your application |
| | ☒ Evidence Obtained by the Department in conjunction with its regular oversight activities |
| | ☐ Federal Trade Commission (FTC) |
| | ☐ Department of Justice (DOJ) |
| | ☐ U.S. Securities and Exchange (SEC) |
| | ☐ Attorney General _____ (state) |
| | ☐ Other |
| | ☐ No Other Evidence Considered |

| | |
|---|---|
| **Advanced Letter Requests** | ☐ Standard Letter |
| | ☐ Standard Letter Plus: |
| | • |

**Links:** In this section please provide the Sharepoint links to working documents and evidence reviewed. Example of items to provide links for below.
- Advanced Letter (if applicable)
- Salesforce Allegation Report – Masters of Cosmetology College
- Program Review Report

DOE0001570

**DOE00011572-DOE00011574**

# Initial Review of Medium Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution** | Mattia College |
| **Corporate Owner(s)** | Professional Training Centers |
| **Open or Closed** | Closed on 2.22.2016 |
| **Total Number of Applications** | 41 |
| **Patterns of Alleged Misconduct** | The majority of allegations are specific to the applicant but there are several allegations that career services would assist the applicant in finding a job after graduation, which did not occur, that the school was accredited and credits would transfer, and that the school closed either during the applicant's time there or after they graduated. |
| **Evidence/Litigation** | <ul><li>Mattia College was cited as one of the programs which failed a debt to earnings for gainful employment rate by the Department of Education: https://www.ed.gov/news/press-releases/education-department-releases-final-debt-earnings-rates-gainful-employment-programs</li><li>Mattia College closed for financial reasons: https://www.miamiherald.com/news/local/education/article63240997.html</li></ul> |
| **Name of Reviewer** | Alana Smith |
| **Date Review Completed** | 7/8/19 |

## SUMMARY APPLICATION OVERVIEW

| BD Case Number | School/Campus listed on App | Program(s) | Year of Enrollment | Nature of Allegation(s) | Evidence |
|---|---|---|---|---|---|
| 01242702 | Mattia Miami | Radiologic Technologies | 2010 | Educational services | Emailed statement |
| 01262491 | Mattia Miami | Nursing, Bachelor | 2014 | Transferability, Other | Emailed Statement |
| 01315976 | Professional Training Center | Diagnostic Medical Sonography | 2011 | Career Services, Other | Emailed Statement |
| 01350803 | Mattia Miami | Nursing Bachelor | 2013 | Program Costs, Transferability, Pressure to Enroll, Other | Signed Statement |
| 01367859 | Mattia Miami | Diagnostic Medical Sonography | 2010 | Other, Transferability, | Signed Statement |
| 01396580 | Professional Training Center | Diagnostic Medical Sonography | 2011 | Eligibility for Professional Exam/Licensure, Transferability, Other | Signed Statement |
| 01411172 | Professional Training Center | Ultrasounds | 2008 | Guaranteed Job, Program Cost, Transferability | Signed Statement |
| 01448582 | Professional Training Center | Medical Coding, Certificate | 2009 | Career Services, Program Costs, Teaching/Educational Services, Other | Signed Statement |
| 01469920 | Professional Training Center | Pharmacy Technician | 2010 | Career Services, Program Cost, Transferability, Other | Signed Statement |
| 01588036 | Mattia Miami | Nursing, Associate | 2013 | Transferability, Educational Service, Other | Signed Statement |

## RECOMMENDATION

Mattia College, previously called Professional Training Center, closed in 2016 due to financial difficulties. The school closing is one of the most prevalent allegations against it in the above cases. Other allegations include: the school promised career service assistance to find a job, but the applicant was unable to locate a job; the school was unclear or mistaken about the cost of the program, and the school misrepresented the transferability of credits.

Even though there are several of the same claims (especially in regards to transferability) there is no evidence to support this allegation. While there are a few allegations from applicants in the same program, they started in different years. In addition, the other most prevalent claim is that the school

closed either while the applicant was in attendance or after they graduate which is not an allegation that states a valid claim.

Given the lack of evidence to support the allegations and the lack of corroboration amount the cases, I recommend adjudicating the cases.

DOE0001574

**DOE00011608-DOE00011609**

# Initial Review of Medium Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution** | Meridian University |
| **Corporate Owner(s)** | Jean Houston, Chancellor |
| **Open or Closed** | Open |
| **Total Number of Applications** | 5 |
| **Patterns of Alleged Misconduct** | Numerous complaints regarding employment prospects, transferring credits, career services, and educational services |
| **Evidence/Litigation** | no evidence or litigation present |
| **Name of Reviewer** | Tyquila Atuyotan |
| **Date Review Completed** | 10/15/2019 |

## SUMMARY APPLICATION OVERVIEW

| BD Case Number | School/Campus listed on App | Program(s) | Year of Enrollment | Nature of Allegation(s) | Evidence |
|---|---|---|---|---|---|
| 01548967 | Meridian University/Hybrid online, Petaluma, CA | Ed. D in transformative Leadership | 2018 | 1. Employment prospects 2. Transferring credits 3. Career services 4. Educational services 5. Admissions and urgency to enroll 6. Other | Web Form; Attachment, see letter of withdrawal, submitted 2/13/2019 with enclosures |
| 01550740 | Meridian University/ Petaluma, CA | Clinical psychology and yoga PsyD | 2018 | 1. Employment prospects 2. Career services 3. Educational services | Web Form; see attachment regarding fieldwork and internships |
| 01552387 | Meridian University/ Petaluma, CA | Psychology in transformative Leadership | 2018 | 1. Employment prospects 2. Program cost and nature of | Web Form |

| | | | | | |
|---|---|---|---|---|---|
| | | | | loans<br>3. Transferring credits<br>4. Career services<br>5. Educational services<br>6. Other | |
| 01566846 | Meridian University/ online, Petaluma, CA | PsyD in Clinical Psychology | 2018 | 1. Transferring credits<br>2. Educational services<br>3. Other | Web Form; See attachment emails regarding coursework |
| 01596292 | Meridian University/ Petaluma, CA | Masters in Counseling | 2017 | 1. Employment prospects<br>2. Program cost and nature of loans<br>3. Transferring credits<br>4. Educational services<br>5. Other | Web Form |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## RECOMMENDATION:

A review of the borrowers' complaints indicate that there is a lack of support for their allegations. Based on a review of the claims, the borrowers allege the inability to transfer credits, instability in quality of educational services, and failure to provide job placement, among others. However, despite submissions from two of the borrowers concerning internships and school withdrawal reasons, there does not exist evidence to substantiate the borrowers' claims.

Further, there is an absence of commonality in nature of program and time period. Additionally, there are no class action lawsuits or other investigations. For these reasons, I recommend adjudicating the borrowers' cases.

**APPROVED BY: John Stephenson**
**DATE: 10/16/2019**

**DOE00011644-DOE00011647**

# Initial Review of Medium Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution** | Micropower Career Institute |
| **Locations** | Manhattan, Long Island, Hauppauge, Queens, New Jersey |
| **Corporate Owner(s)** | Micropower USA Corporation |
| **Open or Closed** | Closed |
| **Total Number of Applications** | 44 |
| **Patterns of Alleged Misconduct** | Many of the claims relate to employment prospects, program cost and nature of loans, and educational services. |
| **Evidence/Litigation** | SENIOR EXECUTIVES OF MCI FOUND GUILTY OF FINANCIAL AID FRAUD SCHEME<br>*USA v. Hiranandaney et al* 1:14-cr-00409<br>Three senior executives of Micropower Career Institute were investigated in 2014 by US Immigration and Custom's Enforcement, the US Department of State's Diplomatic Security Service and the US Department of Education's Office of the Inspector General.<br><br>The U.S. attorney's office said in a news release, "they falsified and manipulated documents to hide MCI's failure to timely return financial aid money received by MCI for domestic students who had dropped out of MCI.[1]" The executives were found guilty in 2016 in the United States District Court Southern District of New York, of a student financial aid fraud scheme in which they defrauded the US of $1,000,000 in education grant funds and in a student visa fraud scheme that generated $7,440,000 in illegal revenues.[2]<br><br>MICROPOWER CAREER INSTITUTE CLOSED[3].<br>DHS shut the school down as part of the federal investigation[4]. |
| **Name of Reviewer** | Nichelle Stephens |

---

[1] https://www.searchindia.net/images/sib/Hiranandaney-Suresh-et-al-complaint.pdf
[2] https://www2.ed.gov/about/offices/list/oig/invtreports/ny012016.html
[3] http://www.raminenilaw.com/dhs-orders-shut-down-of-micropower-career-institute-for-f-1-regulation-violations/

[4] https://newyork.cbslocal.com/2014/05/29/cbs-2-federal-agents-raid-chelsea-school-looking-for-evidence-of-visa-fraud/

| Date Review Completed | 11/01/2019 |
|---|---|

## SUMMARY APPLICATION OVERVIEW

| BD Case Number | School/Campus listed on App | Program(s) | Year of Enrollment | Nature of Allegation(s) | Evidence |
|---|---|---|---|---|---|
| 01148051 | Micropower Career Institute (Manhattan, NY) | Medical Assistant | 2013 | Educational Services, Other | None |
| 01240243 | Micropower Career Institute (New York, NY) | Certified Dental Assistant | 2012 | Educational Services, Employment Prospects, Career Services, Other | None |
| 01245630 | Micropower Career Institute (Manhattan, NY) | Dental Assistant | 2014 | Employment Prospects, Program Cost and Nature of Loans, Transferring Credits, Career Services, Educational Services, Other | None |
| 01249773 | Micropower Career Institute (Mineola, NY) | Medical Assistance Program | 2012 | Program Cost and Nature of Loans, Admissions and Urgency to Enroll | IPE Services letter with contribution towards educational expenses |
| 01250812 | Micropower Career Institute (New York, NY) | CCMA | 2010 | Employment Prospects, Program Cost and Nature of Student Loans, Career Services, Other | None |
| 01261996 | Micropower Career Institute (Manhattan, NY) | Dental Assistant | 2013 | Employment Prospects, Transferring Credits, Other | None |

| 01271804 | Micropower Career Institute (Mineola, NY) | Dental Assistant | 2013 | Employment Prospects, Program Cost and Nature of Loans, Career Services, Educational Services | None |
| 01371742 | Micropower Career Institute (Mineola, NY) | Medical Assistant | 2013 | Employment Prospects, Program Cost and Nature of Loans, Transferring Credits, Career Services, Educational Services, Other. | None |
| 01290789 | Micropower Career Institute (Hauppauge, NY) | Medical Assistant | 2012 | Employment Prospects, Transferring Credits, Career Services, Educational Services, Other | None |
| 01381056 | Micropower Career Institute (New York, NY) | Dental Assistant | 2012 | Employment Prospects, Program Cost and Nature of Loans, Transferring Credits, Career Services, Educational Services, Admissions and Urgency to Enroll, Other. | None |

## RECOMMENDATION:

My recommendation is that all cases are ready to be adjudicated. Most of the borrowers noted employment prospects, program cost and nature of loans, and educational services as issues. While all the borrowers allege common allegations, these allegations are

unsupported by evidence attached to the borrower's applications. A few borrowers noted that the school closed and there was a lawsuit regarding financial fraud.

Research revealed an investigation took place by US Immigration and Custom's Enforcement, the US Department of State's Diplomatic Security Service and the US Department of Education's Office of the Inspector General between June 2011 and May 2014 regarding the President and two Vice Presidents of MCI defrauding the United States of $1,000,000 in education grant funds. As a result, the school was closed in 2014. The executives pled guilty to continuing to collect Pell Grants after students had withdrawn from the school. Additionally, the executives pled guilty to student visa fraud. The executives directed employees to transfer F-1 student visa holders to different schools instead of reporting them for not making the 80% attendance mark required to maintain their visas. The school kept the F-1 student status active at LTI if the students paid tuition to the school resulting in $7,440,000 in illegal revenues. More information about the case can be found in PACER and the United States Department of Education's Office of the Inspector General was involved in the investigation and created a report which could provide further insight if needed. While financial fraud is egregious, Pell Grants do no fall under the purview of Borrower Defense. Additionally, the closure of the school could hinder a further investigation due to lack of access to financial and other documents. There do not appear to be any other relevant lawsuits.

**APPROVED BY: Brian Bayne**
**DATE: 11/4/2019**

**DOE00011707-DOE00011711**

**Initial Review of Medium Batch Applications**

BACKGROUND

| | |
|---|---|
| **Name of Institution** | Missouri Technical School |
| **Corporate Owner(s)** | Missouri Technical School |
| **Open or Closed** | Closed |
| **Total Number of Applications** | 11 |
| **Patterns of Alleged Misconduct** | *similar allegations related to Employment Prospects, Program Cost and Nature of Loans, Transferring Credits, and the school's closure that are vague and unsupported by either specifics or evidence |
| **Evidence/Litigation** | * no outside lawsuits or investigations based on borrowers' allegations/insufficient evidence in borrowers' applications<br><br>https://www.stltoday.com/news/local/education/missouri-tech-closes-suddenly-students-left-in-limbo/article_d0b72e31-cb00-56d5-8a14-b8ad447c5cca.html<br><br>This article, which was released on August 5, 2015, announces the abrupt closure of Missouri Tech (St. Charles). The article notes that the school closed down for financial reasons. The article indicates that the school offered programs in networking, software engineering, and electronic engineering before it closed.<br><br>https://dhewd.mo.gov/psc/documents/WebPage-MissouriTechInformation.pdf<br>The PDF at the link above provides information for former Missouri Tech students. The information regarding transfer of credits, transcripts, federal loans was provided by the Missouri Department of Higher Education (MDHE) on August 13, 2015. On July 31, 2015 Missouri Tech notified (MDHE) that it was closing the St. Charles campus effective immediately and stated that the reason for the closure was financial. The PDF indicates that Missouri Tech did not make prior arrangements for a teach out, and that MDHE would work with students, area schools, and accrediting agencies to assist students in transferring their credits and completing their programs. The PDF also includes a list of potential teach out/transfer partners provided by the MDHE staff. The PDF indicates that MDHE was able to retrieve some Missouri Tech student records/transcripts from the school and advises students to contact MDHE and to submit a student record verification form. The information in the PDF also advises students who had federal loans to contact their loan servicer and to review the FSA website for options for students whose schools have closed without a teach-out agreement. |

| Name of Reviewer | Vesselina Kotzeva |
|---|---|
| Date Review Completed | 09/25/19 |

## SUMMARY APPLICATION OVERVIEW

| BD Case Number | School/Campus listed on App | Program(s) | Year of Enrollment | Nature of Allegation(s) | Evidence |
|---|---|---|---|---|---|
| 01562369 | Missouri Tech - (St. Charles, MO) | Network Administration | 2010 | Employment Prospects; Program Cost and Nature of Loans; Transferring Credits; Career Services; Educational Services | None |
| 01417931 | Missouri Tech - (St. Charles, MO) | Electronics Engineering | 2009 | Program Cost and Nature of Loans; Transferring Credits; Other | None |
| 01488958 | Missouri Tech - (St. Charles, MO) | Network Administration | 2009 | Program Cost and Nature of Loans; Other | Notice of Eligibility for Loan Discharge; Student Transcript; Letter from borrower expressing concerns |
| 01558179 | Missouri Tech - (St. Charles, MO) | Network Security Administration | 2009 | Employment Prospects; Career Services; Educational Services; Other | None |
| 01289358 | Missouri Technical School - (St. Charles, MO) | Engineering Management | 2008 | Transferring Credits; Admissions and Urgency to Enroll; Other | Letter confirming approval for administrative forbearance |

| 01517418 | Missouri Tech - (St. Charles, MO) | Electronics Engineering Management | 2005 | Employment Prospects; Program Cost and Nature of Loans; Transferring Credits; Career Services; Educational Services; Admissions and Urgency to Enroll; Other | |
| --- | --- | --- | --- | --- | --- |
| 01306269 | Missouri Technical College - (St. Charles, MO) | Associate Network Administration | 2004 | Employment Prospects; Program Cost and Nature of Loans; Transferring Credits | Borrower's complaint to Missouri AG/Consumer Complaint; Master Promissory Note; E-Mail correspondences regarding borrower's registration |
| 01393761 | Missouri Technical - (St. Charles, MO) | Engineering | 1994 | Program Cost and Nature of Loans | None |
| 01488961 | Missouri Technical School (St. Louis) | Bachelor of Science Electronic Engineering | 1993 | Employment Prospects; Career Services; Educational Services | None |
| 01352236 | Al Med Academy (St. Charles Rock Road, St. Ann, Missouri)<br><br>Missouri Tech (St. Louis, MO) | Application 1: Medical Assistant<br><br>Application 2: Software Engineering | 1992<br><br>2001 | Application 1: Employment Prospects; Program Costs and Nature of Loans; Transferring Credits; Career Services;<br><br>Application 2: Program Costs and Nature of | Borrower has 2 applications for 2 different schools*<br><br>Medical Assistant Certificate;<br><br>Paid in Full Receipt from Student Accounts |

| | | | | Loans; Admissions and Urgency to Enroll | |
|---|---|---|---|---|---|
| 01597381 | Missouri Technical Institute - (St. Louis, MO) | Electronic Tech | 1989 | Employment Prospects; Program Costs and Nature of Loans; Career Services; | None |

## RECOMMENDATION:

The Missouri Technical School cases are ready to adjudicate. The borrowers' allegations are vague and unsupported by either specifics or evidence and should therefore be adjudicated individually. The general allegations made by the borrowers are related to Employment Prospects, Program Cost and Nature of Loans, Transferring Credits, and the school's closure. The borrowers allege misrepresentations regarding internships that would result in job placements, misrepresentations related to job placement rates, misrepresentations regarding connections with employers, misrepresentations related to program costs, and misrepresentations regarding whether earned credits would be accepted at other schools. Borrowers also referenced the school's abrupt closure, and the school's failure to provide a warning to students regarding this closure. While several of the borrowers in this sample make similar allegations across each of the categories, borrowers have not provided enough evidence in their applications to prove these allegations. The borrower in Case # 01306269 filed a financial complaint requesting a refund with the Missouri AG. The borrower attached a letter from the AG, which confirmed the receipt of the complaint along with a document titled 'Consumer Complaint Details'. I searched for the complaint number using the database on the Attorney General's website, but could not locate the complaint. The date listed on the letter from the AG to the borrower is September 4, 2015, but the database only dates back to September 25, 2016.

Additionally, there do not appear to be any outside lawsuits or investigations related to the borrowers' allegations. The only evidence related to the borrowers' claims that I found through the internet research was an article announcing the abrupt closure of Missouri Tech from August 5, 2015 and a PDF with information for former Missouri Tech students provided by MHED (Missouri Department of Higher Education). The article indicates that Missouri Tech is the first for-profit school in Missouri that shut down without warning and without offering a teach-out or a chance for current students to complete their training. The PDF also indicates that Missouri Tech did not make prior arrangements for a teach-out. The PDF then advises students that the MDHE will work with students, area schools, and accrediting agencies to assist students in transferring their credits and completing the programs. The PDF also includes a list of potential teach-out/transfer partners provided by the MDHE staff. The limited external evidence from the article and the PDF is primarily related to the school's closure as opposed to the borrowers' remaining allegations, and is not enough to warrant further investigation. Therefore, the cases are ready to be adjudicated individually.

APPROVED BY:  Brian Bayne
DATE:  9/30/2019

DOE00011711

**DOE00011746-DOE00011752**



PROUD SPONSOR *of* the AMERICAN MIND™

### Initial Review of Mid-Size Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution and OPEID** | Morris Brown College (OPEID 00158300) |
| **Open or Closed** | Open |
| **Date Advanced Letter Sent** | N/A – No approvals |
| **Additional Locations Add closure date if applicable** | N/A |
| **Corporate Owner(s)** | Private, Nonprofit (It is affiliated with the African Methodist Episcopal Church)[1] |
| **Total Number of Applications** | As of July 30, 2020, there are 119 applications. |
| **Patterns of Alleged Misconduct** | As detailed below, former students of Morris Brown College have made very consistent allegations against the school. The types of allegations made by borrowers are of pressuring sales techniques to get them to enroll, job placement promises (placement assistance, externships), misrepresentations about the cost of attendance or the nature of the loans they were taking out, misrepresentations about the transferability of credits, misrepresentations about the quality of the instructors or classes provided, and issues surrounding the loss of the school's accreditation. Although many of the allegation asserted may be relevant to Borrower Defense, the borrowers failed to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct. In addition, there are also allegations pertaining to false certifications of loans. These types of allegations are consistent with fraud but are outside a Borrower Defense determination. |
| **Internal ED Investigation(s)**<br>• **PC, AAASG, OIG** | **AAASG Investigations**<br>After review, Borrower Defense found no past or pending AAASG investigations.<br><br>**OIG Investigations**<br>(The case below was investigated by Special Agents of the Department of Education, Office of Inspector General, the U.S. Attorney's Office of the Northern District of Georgia, and the FBI)<br><br>*Former Morris Brown President, Financial Aid Director Indicted by Federal Grand Jury in $5 Million Fraud Scheme*  (December 9, 2004) Parvesh Singh, former Financial Aid Director and Director of Enrollment Services, and Dolores Evelyn Cross, former President of the College, have been charged in a 34-count federal indictment related to a $5 million fraud scheme at Morris Brown College. Cross and Singh are charged with 22 counts of wire fraud, five counts of stealing Title IV Financial Aid Funds, and six counts of stealing Title III Financial Aid |

---

[1] https://en.wikipedia.org/wiki/Morris_Brown_College

1

DOE00011746

# Federal **Student Aid**
An OFFICE of the U.S. DEPARTMENT of EDUCATION

PROUD SPONSOR of
the AMERICAN MIND™

|  | Funds. In addition, Cross is charged with one count of honest services mail fraud. |
|---|---|
|  | *Former Morris Brown President, Financial Aid Director Plead Guilty to Fraud Charges Just Before Trial* (May 1, 2006) Dolores Evelyn Cross and Parvesh Singh plead guilty to charges relating to a financial aid fraud scheme at Morris Brown College. According to information presented in court: With respect to financial aid, in 1999 Dr. Cross decided to have Morris Brown College participate in the Federal Family Education Loan Program, known as the FFEL program. These funds were essential revenue for the college's budget. In 1999, the enrollment goals of Dr. Cross were not met, and she directed Mr. Singh to enroll enough students to ensure she would achieve this goal and have revenue for the budget. That fall, Singh began a practice of enrolling a large number of students who had registered for classes (or merely pre-registered the preceding semester) but had not completed the enrollment process by physically going to the Student Accounts and satisfying their bill. Singh engaged in this practice of causing lists of "registered not enrolled" students to be officially enrolled at Morris Brown, so that the College could take and use their student loan funds, every semester he was there. |
|  | *Former Morris Brown College President, Financial Aid Director Sentenced in Federal Court on Fraud Charges* (January 3, 2007) Dolores Evelyn Cross and Parvesh Singh were sentenced on charges relating to a financial aid fraud scheme at Morris Brown College after pleading guilty before United States District Judge Julie Carnes on May 1, 2006. Cross received a sentence of 5 years probation with a special condition of 12 months home confinement with six months of electronic monitoring, and 500 hours of community services. In addition, Cross was ordered to pay restitution in the amount of $13,942 and a fine of $3,000. Singh received a sentence of 5 years probation with a special condition of 18 months home confinement with six months of electronic monitoring. In addition, Singh was ordered to pay restitution in the amount of $5,939 and a fine of $3,000. |
|  | **Investigations** Two Final Program Review Determination (FPRD) were completed for Morris Brown College, however, none were related to Borrower Defense. One was completed in 2001 (PRCN: 200130418416) and the other was completed in 2002 (PRCN: 200220420177).[2] |
| **Internal Contact(s) for Further Investigation** | N/A |
| **External Investigations (AG), Evidence or Litigation Related to BD** | See above |

---

[2] Information attained via a PEPS search

2

DOE00011747

**Federal Student Aid**
An OFFICE of the U.S. DEPARTMENT of EDUCATION

PROUD SPONSOR of
the AMERICAN MIND™

| External Contact(s) for Further Investigation | N/A |
|---|---|
| External Investigations, Evidence or Litigation NOT related to BD | **External Investigations not related to BD**<br><br>**Litigation**<br>*Thompkins v. Morris Brown College*, **752 F.2d 558 (1985)**<br>The Plaintiff brought an employment discrimination suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff claims that Morris Brown College discriminated against her by refusing to grant her part-time employment on the same basis as male employees and by discharging her for maintaining full-time employment outside of the College while allowing males to maintain such outside employment. The nature of this suit is not related to borrower defense.<br><br>*Eberhart v. Morris Brown College*, **181 Ga.App. 516 (1987)**<br>Former student who was injured while playing football for Morris Brown College filed suit against the college to recover certain medical expenses, he alleged were incurred in connection with treatment for his football injury. The nature of this suit is not related to borrower defense.<br><br>*Cornelius v. Morris Brown College*, **299 Ga.App. 83 (2009)**<br>Parents of a college student killed in a physical altercation at Morris Brown College brought an action against the college and others for wrongful death based on the college's alleged failure to implement adequate security measures despite high potential for danger in the area of the attack. The nature of this suit is not related to borrower defense.<br><br>*Blair v. Morris Brown College*, **2004 WL 2563280 (N.D.Ga.)**<br>The Plaintiff sued Morris Brown College on the following grounds: Race Discrimination (Title VII and 42 U.S.C. § 1981); Retaliation (Title VII and § 1981); and Defamation. The details of his termination, retaliation and defamation do not indicate that this case involved whistleblowing or that it is otherwise related to borrower defense.<br><br>*In Re: College Morris Brown*, **U.S. Bankruptcy Court, Northern District of Georgia (Atlanta)**<br>Morris Brown College filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court, Northern District of Georgia (Atlanta) on August 25, 2012. |
| News Articles/Media | Statement regarding Morris Brown's current accreditation status.<br><br>*Morris Brown's Financial Aid Practices*<br>This October 2002, article discusses the investigation by federal authorities into the possible misuse of millions of dollars in student financial aid at Morris Brown College. The article goes on to discuss the fact that Morris Brown must repay $5.4 million to the federal govern because it failed to prove that the aid went to the correct students between 1995 and 2002. The article discusses reactions from the board, |

DOE00011748



Federal **Student Aid**
An OFFICE of the U.S. DEPARTMENT of EDUCATION | PROUD SPONSOR of the AMERICAN MIND™

| | |
|---|---|
| | the school's history with the Georgia Student Finance Commission, and accreditation issues surrounding the institution. |
| | *After Years of Financial Crises, an Atlanta College Is on a Death Watch* <br> An April 19, 2003 article in the New York Times states that, "Morris Brown may soon be history." The article lays out the troubles that Morris Brown College has been having of late, including the loss of their accreditation and crippling debt. |
| | *Former president's guilty plea closes Morris Brown case* <br> A May 2, 2006 article in the Atlanta Journal-Constitution discusses the guilty plea of Dolores Cross and the details of the crimes as well as potential sentence she could receive. |
| | *Former Morris Brown College President, Financial Aid Director Indicted for Fraud* <br> This December 2004, article discusses the indictments against Cross and Singh and the specific allegations against them. The article goes on to discuss the issues that the school has experienced since losing its accreditation by the Southern Association of Colleges and Schools (SACS) in 2003 as well as state why the school ultimately lost their accreditation. In addition, a former direct employee under Dr. Cross compared the indictment of his former boss to a "modern-day lynching." |
| | *Morris Brown: Can This College Be Saved?  Leader Says It Can.* <br> A June 2019 article discussing the current challenges facing Morris Brown college and how they believe the federal Opportunity Zone can help save the institution. |
| **Name of Reviewer** | Shana Metzger |
| **Date Review Completed** | 7/30/2020 |

## SUMMARY OF ALLEGATIONS AND RECOMMENDATION

| | |
|---|---|
| **Summary of Allegations Reviewed** | Borrower Defense reviewed a sample of 20 allegations of each type to identity potential trends in the applicant pool. Borrowers have submitted applications that allege enrollment start days from 1983 to 2002. The school became Title IV ineligible, after losing its accreditation, in April 2003. <br><br> Admissions and Urgency to Enroll: <br> Based on the 20 allegations reviewed, borrowers allege that Morris Brown College used sales tactics that included pressuring potential students into enrolling quickly and paying for the potential student and their family to come visit the school while forbidding them to visit any other surrounding school. One borrower alleges that they were encouraged to enroll on a deferred status and another borrower alleges that he was informed that if he signed up and enrolled immediately it would make it easier for him to join the basketball team and receive a full scholarship. Although some of the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct. |

DOE00011749



Federal **Student Aid**

An OFFICE of the U.S. DEPARTMENT of EDUCATION

PROUD SPONSOR of
the AMERICAN MIND™

Career Services:
Based on the 20 allegations reviewed, borrowers allege that Morris Brown College did not aid in the securing of employment after graduation as initially promised and did not secure certain externships promised to the borrowers. Most of the borrowers allege that the loss of accreditation either caused the career services office at the school to close or lead to potential employers not accepting the borrowers' degree or credits as valid and therefore most likely costing them their chance at employment. Although some of the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

Educational Services:
The borrowers' allegations discuss the quality of equipment provided to them for instruction, the quality of the education received, and the lack of qualifications of several instructors. In addition, borrowers allege that the education and credits that they earned at Morris Brown College were not accepted by Teach for America due to the accreditation and fraud investigations against Morris Brown College. Although some of the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

Employment Prospects:
Based on the 20 allegations reviewed, borrowers allege that Morris Brown College had promised them job placement and assistance with securing such placement. However, once the school lost its accreditation, the jobs were no longer available, and neither was the assistance from the school. Although some of the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

Job Placement Rate:
Only one borrower clicked the box to raise an allegation under Job Placement Rate. However, there was no allegation made by the borrower. The application only said, "No." Therefore, the allegation alone does not provide any support for misconduct relevant to Borrower Defense.

Program Cost and Nature of Loans:
Based on the 20 allegations reviewed, borrowers allege that they were told by Morris Brown College that the tuition was one amount and later found out it was considerably more, and that they were not informed about the nature of the loans that they were taking out or how much the program would cost. A number of the borrowers allege that Morris Brown College made them believe, or specifically told them, that they were going to be receiving scholarships which would cover their tuition and expenses but were later forced to take out more loans to cover the costs. Borrowers have failed to provide any supporting evidence that exhibits a pattern of practice consistent with misconduct.

DOE00011750

Federal **Student Aid**

An OFFICE of the U.S. DEPARTMENT of EDUCATION

PROUD SPONSOR of
the AMERICAN MIND™

| | |
|---|---|
| | Finally, several borrowers have alleged that Morris Brown signed for, and took out, loans in their name without the borrowers' knowledge or understanding and/or lied to them about the nature and amount of the loans. These types of allegations are consistent with the fraud detailed in the OIG Investigations above. However, these allegations pertain to a false certification of loans review and therefore, are outside a Borrower Defense determination.<br><br>Transferring Credits:<br>Based on the 20 allegations reviewed, borrowers allege that they were told that their credits were transferable, either to all or specific schools, and the borrowers found out that they were not. However, they do not provide any evidence of the credits' purported transferability. Although some of the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.<br><br>Other:<br>Of the 20 allegations reviewed, most of the borrowers provided explanatory narratives relevant to their personal experiences, addressing the implications that the school's loss of accreditation and financial fraud perpetrated by the school's President and Financial Aid Director had on them directly. Most spoke to potential job opportunities lost due to the lack of accreditation of their credits earned at the school or the personal financial toll that the falsification of loan documents took on them. These claims are not the type that would warrant Borrower Defense relief absent a misrepresentation. |
| **Recommended Next Steps** | Based on public information (including public records, news articles, court documents, and filings) and Department of Education internal resources (FPRDs, AAASG and OIG investigations), there is insufficient evidence to suggest that Morris Brown College engaged in wide spread conduct that would warrant borrower defense relief.<br><br>In addition to the research conducted, the 20-allegation samples contained insufficient evidence to identify a pattern of practice consistent with general misconduct. Without further evidence, it is recommended that the cases be adjudicated individually. Additionally, as there is no evidence of widespread misconduct, notice to the school on these claims is not required. |
| **Recommended Focus Area(s)** | N/A |
| **APPROVED BY:** | Sarah Angilello |
| **DATE:** | 08/06/20 (Updated 11/22/2020) |

| | |
|---|---|
| **Evidence Considered** | ☐ Attorney Submission<br>☐ Borrower Submission<br>☐ Consumer Protection Financial Bureau (CPFB)<br>☐ Department of Education-Office of Investigator General (OIG)<br>☐ Documents Submitted by the school in response to your application<br>☒ Evidence Obtained by the Department in conjunction with its regular oversight activities |

6

DOE00011751



|  | ☐ Federal Trade Commission (FTC) |
|  | ☐ Department of Justice (DOJ) |
|  | ☐ U.S. Securities and Exchange (SEC) |
|  | ☐ Attorney General _____ (state) |
|  | ☐ Other |
|  | ☐ No Other Evidence Considered |

| **Advanced Letter Requests** | ☐Standard Letter |
|  | ☐Standard Letter Plus: |
|  | • |

**Links:** In this section please provide the Sharepoint links to working documents and evidence reviewed. Example of items to provide links for below.

- Advanced Letter (if applicable)

- Salesforce Allegation Report
  Cases with Allegations_7.31.20
  Cases with Allegations Sample

- Program Review Report

DOE00011752

**DOE00011761-DOE00011765**



**Federal Student Aid** | PROUD SPONSOR of
*An OFFICE of the U.S. DEPARTMENT of EDUCATION* | *the AMERICAN MIND* ™

## Initial Review of Mid-Size Batch Applications

### BACKGROUND

| | |
|---|---|
| **Name of Institution and OPEID** | Mountain State University 00380700 |
| **Open or Closed** | Closed |
| **Date Advanced Letter Sent** | N/A |
| **Additional Locations**<br>• **Add closure date if applicable** | See Attachment A-Mountain State University Locations |
| **Corporate Owner(s)** | Not for Profit |
| **Total Number of Applications** | 225 as of May 12, 2020 |
| **Patterns of Alleged Misconduct** | As detailed below, there are allegations against the school regarding clinical externship placements and job placements, as well as misrepresentations regarding the transferability of credits, but these allegations do not include independent evidence to corroborate their allegations. |
| **Internal ED Investigation(s)**<br>• **PC, AAASG, OIG** | **Program Compliance**<br>The US Department of Education Philadelphia School Participation Division issued a Final Program Review Determination on April 9, 2015. The FPRD focused on Clery Act violations, and was not related to Borrower Defense issues.<br><br>**AAASG and OIG Investigations**<br>After review, Borrower Defense found no past or pending AAASG or OIG investigations. |
| **Internal Contact(s) for Further Investigation** | N/A |
| **External Investigations (AG), Evidence or Litigation Related to BD** | In Mullis v. Mountain State University, Plaintiff alleged that the University "assured her that it had a clinical externship location in her area," but that this was false. Plaintiff alleges that the University never placed her in a clinical externship. There was no disposition for this case as a limited fund settlement agreement was approved by the Court. |
| **External Contact(s) for Further Investigation** | N/A |
| **External Investigations, Evidence or Litigation NOT related to BD** | The Higher Learning Commission withdrew the accreditation for Mountain State University on December 31, 2012, stating that the school "has not conducted itself with the integrity expected of an accredited institution with regard to ensuring that its students have accurate and timely information about the status of their academic programs and consistent quality across all Higher Learning Commission Public Disclosure |

| | |
|---|---|
| | Notice Mountain State University Page 2 of 10 academic programs (Criterion One); does not have the human and financial resources expected of an accredited institution (Criterion Two); has not demonstrated that it can plan realistically for the future to anticipate and overcome institutional challenges (Criterion Two); lacks effective governance and administration to provide appropriate oversight over all levels of the institution and to take appropriate action to ensure quality in all its academic programs (Criterion One); and lacks adequate learning support and faculty oversight to assure an effective teaching and learning environment (Criterion Three)."<br><br>Mountain State University nursing program also lost NLNAC accreditation for 2011 and WVBRN accreditation in 2012.<br><br>According to the West Virginia MetroNews, the loss of accreditation led to "more than 400 individual suits...along with at least two class action suits in state court and two in federal court." These lawsuits alleged the loss of accreditation cause financial and career-related harms as well as claims of breach of contract and breach of the covenant of good faith and fair dealing. A settlement of $11.3 million was approved by the Circuit Court of Kanawha County, West Virginia. |
| News Articles/Media | An article in the West Virginia MetroNews announced that a settlement had been reached in the litigation against Mountain Statue University.<br><br>CBSNews published a story about the ten highest paid presidents of private universities, including Mountain State University President Charles H. Polk. Polk's salary accounted for 3.5% of the University's budge, a higher percentage than any other school in the nation.<br><br>The Chronicle of Higher Education published an article discussing the firing of the University's president, Charles H. Polk. This article notes that the graduation rate of students seeking a bachelor's degree was 2.5 percent.<br><br>The Charleston Gazette-Mail reported that officials in Houston, Texas believed that the University "inappropriately awarded police officers college credit the officers needed to apply for career advancement." |
| Name of Reviewer | Lauren Hutchinson |
| Date Review Completed | |

DOE00011762

## SUMMARY OF ALLEGATIONS AND RECOMMENDATION

| | |
|---|---|
| **Summary of Allegations Reviewed** | Borrower Defense reviewed a sample of 20 of each type of allegation to identify potential trends in the applicant pool. These samplings provide commentary on the quality of education, the availability of employment prospects, and other perceived failures of this school. All allegation numbers are as of May 12, 2020. <br><br> <u>**Allegation Break Down:**</u> <br> <u>Employment Prospects</u> <br> 110 of the total applications raise an employment prospects allegation. Of the 20 allegations sampled in applications, three were of the type that might warrant BD relief, if supported by evidence. The borrowers allege that Mountain State University lied about job placement assistance and clinical placement assistance. However, the borrowers failed to provide relevant supporting evidence to establish these allegations. <br><br> <u>Program Cost and Nature of Loans</u> <br> 85 of the total applications raise a program cost allegation. Of the 20 allegations in sampled cases, three were of the type that might warrant BD relief, if supported by evidence. In two of these allegations they were told they would receive grants and/or scholarships to pay for the tuition, but they did not receive the grants and/or scholarships. The third was told their monthly loan payment would be $50 but "it was a lot more than $50 a month." Borrowers failed to provide relevant supporting evidence. <br><br> <u>Transferring Credits</u> <br> 107 of the total applications raise a transfer of credits allegation. Of the 20 allegations sampled, eleven might warrant BD relief, if supported by evidence. The borrowers allege that they were told the credits would transfer to other schools, but that the credits would not transfer. However, the borrowers failed to provide relevant supporting evidence to establish these allegations. <br><br> <u>Career Services</u> <br> 62 of the total applications raise a career service allegation. Of the 20 allegations sampled, three might support BD relief. These allegations mainly regard job placement promises, assistance with job placement, and externship placement. The borrowers failed to provide relevant supporting to establish these allegations. <br><br> <u>Educational Services</u> <br> 93 of the total applications raise an educational services allegation. Of the 20 allegations sampled, two might warrant BD relief, if supported by evidence. These allegations mainly regard internship and clinical placement promises. |

DOE00011763

| | While these allegations are relevant to Borrower Defense, the borrowers failed to provide relevant supporting evidence to establish these allegations.<br><br>Admissions and Urgency to Enroll<br>65 of the total applications raise an admissions and urgency to enroll allegation. Of the 20 allegations sampled, none contained an allegation that might warrant BD relief.<br><br>Other<br>153 of the total applications raise an "other" allegation. Of the 20 allegations sampled, none contained an allegation that might warrant BD relief. |
|---|---|
| **Recommended Next Steps** | Based on our search for public information (including public records, news articles, court documents and filings), Department of Education internal resources (FRPDs, AASG, and OIG investigations), and the sampling of claims, there is insufficient evidence of widespread misconduct by  Mountain State University to warrant further investigation. Additionally, as there is no evidence of widespread misconduct, notice to the school on these claims is not required.<br><br>We recommend that these cases be adjudicated using the standard protocol. |
| **Recommended Focus Area(s)** | |
| **APPROVED BY:** | Michael Page |
| **DATE:** | 5/14/2020 |

| **Evidence Considered** | ☐ Attorney Submission<br>☒ Borrower Submission<br>☐ Consumer Protection Financial Bureau (CPFB)<br>☐ Department of Education-Office of Investigator General (OIG)<br>☐ Documents Submitted by the school in response to your application<br>☒ Evidence Obtained by the Department in conjunction with its regular oversight activities<br>☐ Federal Trade Commission (FTC)<br>☐ Department of Justice (DOJ)<br>☐ U.S. Securities and Exchange Commission (SEC)<br>☐ Attorney General _____ (state)<br>☐ Other<br>☐ No Other Evidence Considered |
|---|---|

| **Advanced Letter Requests** | ☐Standard Letter<br>☐Standard Letter Plus:<br>• |
|---|---|

4

DOE00011764

|  |  |
|---|---|
|  |  |

**Links:** In this section please provide the Sharepoint links to working documents and evidence reviewed. Example of items to provide links for below.

- Advanced Letter (if applicable)

- Salesforce Allegation Report

- Program Review Report

DOE00011765

**DOE00011953-DOE00011955**

# Initial Review of Medium Batch Applications

## BACKGROUND

| Name of Institution | Ohio Media School |
|---|---|
| Corporate Owner(s) | Ohio Center for Broadcasting |
| Open or Closed | Open |
| Total Number of Applications | 14 |
| Patterns of Alleged Misconduct | The majority of the borrower defense claims against Ohio Media School are regarding their inability to find a job after graduation, program cost and their overall dissatisfaction with the academic experience they received while enrolled. |
| Evidence/Litigation | No Litigation on record.<br>The Ohio Media School is based in Columbus, Ohio. However, the school has 6 other campuses across the country.<br><br>The school was once called the "The Ohio School for Broadcasting" but was later renamed "Ohio Media School". However, no credible evidence of misconduct was found. |
| Name of Reviewer | Joshua DuBoise |
| Date Review Completed | 9/24/19 |

## SUMMARY APPLICATION OVERVIEW

| BD Case Number | School/Campus listed on App | Program(s) | Year of Enrollment | Nature of Allegation(s) | Evidence |
|---|---|---|---|---|---|
| 01256100 | Ohio Center For Broadcasting - Whitehall (Whitehall, OH) | Broadcasting | 2012 | Employment Prospects, Transferring Credits, Career Services | None |
| 01284715 | OHIO MEDIA SCHOOL - (Cleveland, OH) | N/A | 2013 | Employment Prospects, Program Cost and Nature of Loans, Transferring Credits, Career Services, Educational Services, Other | None |
| 01364565 | Ohio Media School | Radio Broadcasting | 2007 | Employment Prospects, Admissions and Urgency to Enroll, | None |

| | | | | Program Cost and Nature of Loans | |
|---|---|---|---|---|---|
| 01430509 | Ohio Center of Broadcasting | Broadcasting | 2013 | Educational Services, Employment Prospects, Program Cost and Nature of Loans | None |
| 01438038 | Ohio Center of Broadcasting | Television broadcasting | 2011 | Employment Prospects, Career Services | None |
| 01478994 | Colorado Media School | Media Specialist | 2014 | Career Services, Program Cost and Nature of Loans | None |
| 01520094 | The ohio center for broadcasting - independence (valley view, OH) | Broadcasting | 2012 | Employment Prospects, Program Cost and Nature of Loans, Transferring Credits, Career Services, Educational Services, Admissions and Urgency to Enroll, Other | None |
| 01564292 | Columbus Ohio center for broadcasting - Columbus (Columbus, OH) | Radio broadcasting | 2009 | Employment Prospects, Program Cost and Nature of Loans, Career Services, Educational Services, Admissions and Urgency to Enroll | None |
| 01566414 | Ohio Media School (Valley View, OH) | Media Studies | 2012 | Employment Prospects, Career Services, Educational Services, Other | None |
| 01569709 | Ohio Center Of Broadcasting - (Valley View, OH) | Multimedia School | 2010 | Employment Prospects, Career Services, Other | None |
| 01588203 | Colorado Media School (affiliate of the Ohio Center for Broadcasting) - Lakewood Colorado (Lakewood, CO) | Broadcasting and Media | 2017 | Employment Prospects, Program Cost and Nature of Loans, Career Services, Admissions and Urgency to Enroll | None |

DOE0001954

**RECOMMENDATION:** My recommendation is that the cases against Ohio Media School be adjudicated. Most of the borrower defense claims against Ohio Media School address the student's dissatisfaction with job prospects, excessive program cost and do not state an actual claim.

The few borrowers that do state a adequate claim for misrepresentation, allege that the misrepresentations took place in the form of verbal communication with school administrators and were not supported by any additional evidence. Therefore, I do not believe that any further investigation is needed.

**APPROVED BY: John Stephenson**
**DATE: 9/24/2019**

**DOE00012087-DOE00012088**



PROUD SPONSOR *of* the AMERICAN MIND™

## Initial Review of Mid-Size Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution and OPEID** | Pinnacle Career Institute 01040500 |
| **Open or Closed** | Closed (05/12/95) |
| **Date Advanced Letter Sent** | |
| **Additional Locations** • **Add closure date if applicable** | 02613000 (Closed 08/15/2017) |
| **Corporate Owner(s)** | Manufacturer's Technical Institute, Inc. |
| **Total Number of Applications** | As of August 25, 2020, there are 9 applications already adjudicated and 25 applications awaiting adjudication. |
| **Internal ED Investigation(s)** • **PC, AAASG, OIG** | **Program Compliance** A Program review was conducted, and a Final Program Review Determination was issued in September 2019, however, none of the findings were relevant to borrower defense. **AAASG and OIG Investigations** Borrower Defense found no past or pending AAASG or OIG investigations. **OGC/DOJ** Borrower Defense found no past or pending OGC/DOJ investigations. |
| **Internal Contact(s) for Further Investigation** | N/A |
| **External Investigations (AG), Evidence or Litigation Related to BORROWER DEFENSE** | A review of publicly available information found no evidence related to Borrower Defense. If additional evidence is discovered or received in the future, these claims may be revisited as warranted. As such, it is recommended the cases be adjudicated |
| **External Contact(s) for Further Investigation** | N/A |
| **Name of Reviewer** | Kristen Yarows |
| **Date Review Completed** | August 25, 2020 |

| | |
|---|---|
| **Recommended Next Steps** | Based on our search for public information (including public records, news articles, court documents and filings) and Department of Education internal resources (FRPDs, AASG, and OIG investigations), there is insufficient evidence of widespread misconduct by Pinnacle Career Institute to warrant |

| | |
|---|---|
| | further investigation. If additional evidence is discovered or received in the future, these claims may be revisited as warranted. As such, it is recommended the cases be adjudicated. Additionally, as there is no evidence of widespread misconduct, notice to the school on these claims is not required. |
| **Recommended Focus Area(s)** | N/A |
| **APPROVED BY:** | Shana Metzger |
| **DATE:** | 8/25/2020 |

| | |
|---|---|
| **Evidence Considered** | ☐ Attorney Submission<br>☐ Borrower Submission<br>☐ Consumer Protection Financial Bureau (CPFB)<br>☐ Department of Education-Office of Investigator General (OIG)<br>☐ Documents Submitted by the school in response to your application<br>☒ Evidence Obtained by the Department in conjunction with its regular oversight activities<br>☐ Federal Trade Commission (FTC)<br>☐ Department of Justice (DOJ)<br>☐ U.S. Securities and Exchange (SEC)<br>☐ Attorney General _____ (state)<br>☐ Other<br>☐ No Other Evidence Considered |

| | |
|---|---|
| **Advanced Letter Requests** | ☐Standard Letter<br>☐Standard Letter Plus:<br>● |

**Links:** In this section please provide the Sharepoint links to working documents and evidence reviewed. Example of items to provide links for below.
- Salesforce Allegation Report
- Program Review Report

2

**DOE00012245-DOE00012258**



**Federal Student Aid**
An OFFICE of the U.S. DEPARTMENT of EDUCATION

PROUD SPONSOR of
the AMERICAN MIND™

<u>Initial Review of Medium Batch Applications</u>

**BACKGROUND**

| | |
|---|---|
| **Name of Institution and OPEID** | Remington College – 02599100; 03012107; 03026500; 00777700; 00520300; 02605500; 03394300; 00758600<br>Education America – 01046100 |
| **Open or Closed** | Open |
| **Additional Locations**<br>• Add closure date if applicable | See Attachment A – Remington College Additional Locations |
| **Corporate Owner(s)** | <u>Prior to 2011:</u><br>• Education America<br>• Jerald M. Barnett<br>• Jack W. Forrest<br><u>After 2011:</u><br>• Jerald M. Barnett<br>• Remington College - BCL, Inc. |
| **Total Number of Applications** | Remington College – 492, as of April 3, 2020<br>Education America – 1, as of April 3, 2020 |
| **Patterns of Alleged Misconduct** | Patterns of allegations include misrepresentations of employment prospects, career services, and transferability of credits. |
| **Class Issue or Singular** | Class issue |
| **Internal ED Investigation(s)**<br>• PC, AAASG, OIG | **Program Compliance:**<br>There are four Final Program Review Determination (FPRD) reports. The first two FPRDs were completed in 2012 (PRCN: 2012-3-04-27949[1] and 2012-4-06-27975[2]), the third was completed in 2013 (PRCN: 2013-1-04-28131[3]) and the fourth was completed in 2017 (PRCN: 2012-2-05-27971[4]).<br><br>FRPD PRCN 2012-3-04-27949: The program review report was completed for a Remington College Campus located in Tampa, Florida. The review listed four findings. The findings reported issues with Remington's financial aid administration.  It was determined that Remington College's resolved all findings and no further action was required. None of the findings concerned borrower defense issues.<br><br>FRPD PRCN 2012-4-06-27975: The program review reported was completed for a Remington College Campus located in Houston, Texas. The findings reported issues with Remington's financial aid |

---

[1] See Attachment B – Remington College FRPD No. 2012-3-04-27949, 10/15/2012.
[2] See Attachment C – Remington College FRPD No. 2012-4-06-27975, 11/21/2012.
[3] See Attachment D – Remington College FRPD No. 2013-1-04-28131, 08/13/2013.
[4] See Attachment E – Remington College FRPD No. 2013-1-04-28131, 04/11/2017.

DOE00012245

| | |
|---|---|
| | administration. The Dallas School Participation Division determined that the finding should not have been included in the review. The program reviewed noted this and closed the report. None of the findings concerned borrower defense issues.<br><br>FRPD PRCN 201310428131: The program review report was completed for a Remington College Campus located in Mobile, Alabama. It had seven findings. The findings reported issues with Remington's financial aid administration and failure to meet the minimum academic year definition for the Medical Assisting program.  It was determined that Remington College resolved all findings and no further action was required. None of the findings concerned borrower defense issues.<br><br>FRPD PRCN 2012-2-05-27971: The program review report was completed for a Remington College Campus located in Cleveland, Ohio. The report had ten findings. The findings noted issues with Remington's financial administration, failure to meet campus safety regulations, and failure to meet the Drug-Free Schools and Communities Act reporting requirements   It was determined that Remington College failed to correct the first, second, and eighth findings; as a result Remington College was fined $1,560.00. None of the findings concerned borrower defense issues.<br><br>**AAASG and OIG Investigations**<br>After review, Borrower Defense found no past or pending internal AAASG or OIG investigations. |
| **Internal Contact(s) for Further Investigation** | N/A |
| **External Investigations (AG), Evidence or Litigation Related to BD** | In 2012, the Harkin Report[5] recognized a pattern of complaints for transferring of credits, program cost and nature of loans, and admissions and urgency to enroll against Remington College. However, the Report cited only student complaints, and did not identify any extrinsic evidence which BD could use to establish similar allegations. |
| **External Contact(s) for Further Investigation** | The Department of Veterans Affairs, Office of Inspector General |
| **External Investigations, Evidence or Litigation NOT related to BD** | Outside Agency Investigations<br>• In 2016, a settlement agreement was reached between Remington College and the United States Attorney's Office, |

[5] For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success. Volume 4 of 4. One Hundred and Twelfth Congress, Second Session (July, 30, 2012). S. PRT. 112-37; https://www.help.senate.gov/imo/media/for_profit_report/PartI-PartIII-SelectedAppendixes.pdf, https://www.help.senate.gov/imo/media/for_profit_report/PartII/EducationAmerica.pdf

DOE00012246

| | |
|---|---|
| | District of Hawaii, after the college agreed to pay $295,000 to resolve alleged False Claims Act violations.[6] The agreement was the result of the Department of Veterans Affairs, Office of Inspector General's investigation alleging that Remington College submitted false statements and false claims to the Department of Veterans Affairs to receive educational benefit payments for beneficiaries who were not enrolled in a VA approved program.<br><br>Lawsuits Under Education America's Ownership:<br>• In *Bates v. United States,*[7] the U.S. Attorney for the Northern District of Indiana charged Mr. Bates with "knowingly and willfully" misapplying funds from the federal guaranteed-student-loan program. Mr. Bates was an employee of Education America. In 1989, court documents show, that Education America instructed Mr. Bates to misapply funds. Mr. Bates was indicted.<br>• The *Bowan v. Education America, Inc.*[8] suit was brough forth alleging false certifications of compliance with regulations and statutes governing the participation in federal student aid programs. The Court of Appeals dismissed the case. |
| **News Articles/Media** | Challenge Student Debt published an article titled Remington College Fraud Complaints.[9] According to the Challenge Student Debt website, students and former students of the school have complained about their inability to get jobs after taking programs at Remington College and the inability to transfer Remington College credits to other schools, even though Remington College claimed they are accredited, and credits would transfer.<br><br>On November 11, 2010, ABC News published an article titled ABC News Investigates For-Profit Education Again: Recruiters Caught Offering Bad Advice.[10] According to ABC News, prospective and enrolled students of Remington College with criminal records were told by Remington College recruiters that they would be able to work in law enforcement as Sheriffs' deputies, corrections officers, jailers and border patrol. Many found their criminal record to be a barrier when applying for jobs with law enforcement. An ABC reporter conducted an undercover investigation that caught a |

---

[6] https://www.justice.gov/usao-hi/pr/college-agrees-pay-295442-resolve-allegations-improper-claims-educational-benefit; https://www.va.gov/oig/pubs/highlights/VAOIG-highlights-201608.pdf; https://www.va.gov/oig/pubs/sars/vaoig-sar-2016-2.pdf.

[7] Bates v. United States, 96 F.3d 964 (7th Cir. 1996), aff'd, 522 U.S. 23, 118 S. Ct. 285, 139 L. Ed. 2d 215 (1997).

[8] *U.S. ex rel. Bowan v. Education America, Inc.,* 116 F. App'x 531 (5th Cir. 2004).

[9] https://www.challengestudentdebt.com/remington-college-fraud-complaints/

[10] https://abcnews.go.com/TheLaw/abc-news-investigates-profit-education-recruiters-caught-offering/story?id=12122004

DOE00012247

| | Remington College recruiter providing false information about a convicted felon's ability to work for Texas Department of Public Safety. The reporter found that in Texas a convicted felon does not have the ability to work in law enforcement. |
|---|---|
| Name of Reviewer | Nastashia Matos |
| Date Review Completed | 4/28/2020 |

**SUMMARY OF ALLEGATIONS AND RECOMMENDATION**

| Summary of Allegations Reviewed | **Application Summary:[11]**<br>Borrower defense reviewed a sample of 30 allegations for each allegation category to identify potential trends in the applicant pool. As of April 3, 2020, there are 465 borrower applications under Remington College and one claim under Education America. The borrower application enrollment dates range from 1977 to 2020. The most common allegations are employment prospects, career services and transferring credits. Many of the allegations regard misrepresentations or omissions made by the school, but borrowers have not provided relevant supporting evidence to support their allegations.<br><br>**Allegation Break Down**<br><br>Employment Prospects: 363 allegations<br>After sampling 30 allegations from various Remington campuses, programs and enrollment periods, 22 of the 30 made an employment prospects allegation that might warrant BD relief. The borrowers allege that: Remington guaranteed them jobs; they were told that career services would place them in a job after graduation; and the school misrepresented job placement rates. There was insufficient commonality of campus and/or time period to suggest a pattern that warrants further investigation, and the borrowers failed to provide relevant supporting evidence.<br><br>Program Cost and Nature of Loans: 285 allegations<br>After sampling 30 allegations from various Remington campuses, programs and enrollment periods, the borrowers alleged that Remington College failed to educate them about the detail of the loans (for example, the interest rate on the loan, the type of loan that was taken out, or how the loan would affect them in the future). There was insufficient commonality of campus and/or time period to suggest a pattern that warrants further investigation, and the borrowers failed to provide relevant supporting evidence.<br><br>Career Services: 333 allegations<br>After sampling 30 allegations from various Remington campuses and enrollment periods, 21 of the 30 made a career services allegation that might warrant BD relief. The borrowers allege that Remington stated that they would place students into a job, that they had connections with employers for their field of |

---

[11] See Attachment F: Remington College Summary of Application Overview

4

DOE00012248

study, and that Remington College would provide resume writing services, help students find a job and assist with other career service needs. There was insufficient commonality of campus and/or time period to suggest a pattern that warrants further investigation, and the borrowers failed to provide relevant supporting evidence.

Transferring Credits: 271 allegations
After sampling 30 allegations from various Remington campuses, programs and enrollment periods, 21 of the 30 made a transfer of credit allegation that might warrant BD relief. The borrowers allege that Remington misrepresented the accreditation of the school,[12] and the ability to transfer credits both into the school and to other educational institutions. There was insufficient commonality of campus and/or time period to suggest a pattern that warrants further investigation, and the borrowers failed to provide relevant supporting evidence.

Educational Services: 217 allegations
After sampling 30 allegations from various Remington campuses, programs and enrollment periods, 11 of the 30 made an educational services allegation. The borrowers' allegations discuss the quality of the education received, including personal opinions on the instructors, curriculum, and program resources.

Admissions and Urgency to Enroll: 238 allegations
After sampling 30 allegations from various Remington campuses, programs and enrollment periods, 20 of 30 made an admissions and urgency to enroll allegation. The borrowers' allegations state the Remington's sales tactics were inappropriate because they pressured potential students into enrolling quickly, routinely called, sent many emails, and in some cases promised incentive programs that never occurred.

Job Placement Rate: 2 allegations
There are only 2 job placement rate allegations in total; one of which alleges that Remington College stated they had a 99% job placement rate. The borrowers failed to provide relevant supporting evidence.

Other: 261 allegations
After sampling 30 allegations from various Remington campuses, programs and enrollment periods, none of the 30 made an allegation that might warrant borrower defense relief.

| | |
|---|---|
| **Recommended Next Steps** | Based on our search for public information (including public records, news articles, court documents and filings), Department of Education internal resources (FRPDs, AASG, and OIG investigations), and the sampling of claims, there is insufficient evidence of widespread misconduct by   Remington College to warrant further |

---

[12] Remington College is regionally accredited by the Middle States Commission on Higher Education.

DOE00012249

| | |
|---|---|
| | investigation. Additionally, as there is no evidence of widespread misconduct, notice to the school on these claims is not required.<br><br>BD recommends that the cases be adjudicated using the standard protocol. |
| **Recommended Focus Area(s)** | N/A |
| **APPROVED BY:** | Michael Page |
| **DATE:** | 5/1/2020 |

| | |
|---|---|
| **Evidence Considered** | ☐   Attorney Submission<br>☐   Borrower Submission<br>☐   Federal Trade Commission<br>☐   Department of Justice<br>☐   Securities and Exchange Commission<br>☐   Attorney General _____ (state)<br>☐   Consumer Financial Protection Bureau<br>☐   ED - FSA/OIG<br>☐   Other |

6

DOE00012250

Attachment A

Remington College Locations

DOE0001-2251
DOE0001-2254

| OPE ID | Location | Status |
|--------|----------|--------|
| 02599100 | Little Rock AR | Closed: 3/31/1998 |
| 02599101 | Oklahoma City,  OK | Open |
| 02599102 | Fayetteville,  AR | Closed: 3/31/1998 |
| 02612900 | Wichita,  KS | Closed: 03/25/1998 |
| 03012100 | Colorado Springs,  CO | Open |
| 03012101 | Colorado Springs,  CO | Open |
| 03012102 | Garland, TX | Open |
| 03012103 | Aurora,  CO | Open |
| 03012104 | Honolulu,  HI | Open |
| 03012105 | Billings,  MT | Closed: 12/22/2000 |
| 03012106 | Tempe,  AZ | Closed: 09/22/2008 |
| 03012107 | Lakewood,  CO | Closed: 12/31/2006 |
| 03026500 | Garland,  TX | Open |
| 03026501 | Houston,  TX | Open |
| 03026502 | Houston,  TX | Open |
| 03026503 | Houston,  TX | Open |
| 03026504 | Webster,  TX | Open |
| 03026505 | Garland,  TX | Open |
| 03026506 | Ft. Worth,  TX | Open |
| 03026507 | Houston,  TX | Closed: 01/14/2016 |
| 03026508 | Tampa,  FL | Closed: 04/07/2016 |
| 03026509 | Lake Mary,  FL | Closed: 01/21/2016 |
| 03026510 | Lake Mary,  FL | Open |
| 03026511 | Cleveland,  OH | Open |
| 03026512 | North Olmsted,  OH | Closed: 01/17/2014 |
| 03026513 | Shreveport,  LA | Open |
| 03026514 | Lafayette,  LA | Open |
| 03026515 | Baton Rouge,  LA | Open |
| 03026516 | Mobile,  AL | Open |
| 03026517 | Memphis,  TN | Open |
| 03026518 | Little Rock,  AR | Open |
| 03026519 | Nashville,  TN | Open |
| 03026520 | Columbia,  SC | Open |
| 03026521 | Honolulu,  HI | Closed: 01/08/2020 |
| 03026522 | Cleveland,  OH | Closed: 10/10/2018 |
| 03026523 | Knoxville,  TN | Closed: 07/01/2004 |
| 00777700 | Cleveland,  OH | Open |
| 00777701 | Cleveland,  OH | Open |
| 00777702 | Blairsville,  PA | Open |
| 00777703 | Blairsville,  PA | Closed: 01/18/2000 |
| 00777704 | N. Olmsted,  OH | Open |
| 00777705 | Cleveland,  OH | Open |
| 00777706 | Shreveport,  LA | Open |
| 00777707 | Lafayette,  LA | Open |
| 00777708 | Baton Rouge,  LA | Open |

| 00520300 | Lafayette, LA | Open |
| 00520301 | Montgomery, AL | Open |
| 00520302 | Hot Springs, AR | Open |
| 00520303 | Shreveport, LA | Open |
| 00520304 | Little Rock, AR | Closed: 03/31/1998 |
| 00520305 | Monroe, LA | Open |
| 00520306 | Baton Rouge, LA | Open |
| 00520307 | Garland, TX | Open |
| 00520308 | Garland, TX | Open |
| 00520309 | Garland, TX | Open |
| 02605500 | Mobile, AL | Open |
| 02605501 | Memphis, TN | Open |
| 02605502 | Memphis, TN | Open |
| 02605503 | Little Rock, AR | Open |
| 02605504 | Nashville, TN | Open |
| 02605505 | Columbia, SC | Open |
| 02605506 | Memphis, TN | Open |
| 02605507 | Honolulu, HI | Open |
| 02065100 | Metairie, LA | Closed: 08/25/2005 |
| 02065101 | Metairie, LA | Closed: 08/25/2005 |
| 03394300 | San Diego, CA | Closed: 04/15/2010 |
| 03394301 | Honolulu, HI | Open |
| 03394302 | Tempe, AZ | Open |
| 03394303 | San Diego, CA | Open |
| 00758600 | Tampa, FL | Open |
| 00758601 | Tampa, FL | Open |
| 00758602 | Fort Worth, TX | Open |
| 00758603 | Fort Worth, TX | Open |
| 00758604 | Largo, FL | Closed: 09/30/2009 |
| 00758605 | Jacksonville, FL | Closed: 07/10/2008 |
| 00758606 | Tampa, FL | Closed: 07/21/2008 |
| 00758607 | Jacksonville, FL | Closed: 07/12/2007 |
| 00758608 | Lake Mary, FL | Open |
| 00758609 | Heathrow, FL | Open |
| 01046100 | Topeka, KS | Closed: 10/11/2002 |
| 01046101 | Mobile, AL | Closed: 10/11/2002 |
| 01046102 | Memphis, TN | Closed: 10/11/2002 |
| 01046103 | North Little Rock, AR | Closed: 10/11/2002 |

Attachment B

Remington College Final Program Determination No. 2012-3-04-27949 10/15/2012

DOE00012254

Attachment C

Remington College Final Program Determination No. 2012-3-04-27949 10/15/2012

DOE00012255

Attachment D

Remington College Final Program Determination No. 2013-1-04-28131 08/13/2013

DOE00012256

Attachment E

Remington College Final Program Determination No. 2013-1-04-28131 04/11/2017

DOE00012257

Attachment F

Remington College Summary Application Overview

DOE00012258

**DOE00012388-DOE00012389**

# Initial Review of Medium Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution** | San Diego College/ Career College of San Diego |
| **Corporate Owner(s)** | San Diego College |
| **Open or Closed** | Closed |
| **Total Number of Applications** | 9 |
| **Patterns of Alleged Misconduct** | N/A |
| **Evidence/Litigation** | N/A |
| **Name of Reviewer** | Maureen Taylor |
| **Date Review Completed** | 10/10/2019 |

## SUMMARY APPLICATION OVERVIEW

| BD Case Number | School/Campus listed on App | Program(s) | Year of Enrollment | Nature of Allegation(s) | Evidence |
|---|---|---|---|---|---|
| 01284129 | Career College of San Diego | Medical Billing and Coding | 8/1/2011 | Career Services, Guaranteed Job, Other | Emailed Statement |
| 01452281 | Career College of San Diego | Not Listed | 5/1/2011 | Financial Aid, Transferability, Career Services, Pressure to Enroll, Other | Emailed Statement |
| 01471742 | Career College of San Diego | Business | 1/1/2011 | Career Services, Financial Aid, Educational Services, Pressure to Enroll, Other | Emailed Statement |
| 01533060 | San Diego College | Medical Billing and Coding | 10/1/2014 | Transferability, Program Cost, Career Services, Educational Services, Other | Emailed Statement |
| 01538795 | San Diego | Medical | 10/30/2013 | Career | Emailed |

| | College | Billing and Coding | | Services, Educational Services, Other | Statement |
|---|---|---|---|---|---|
| 01579343 | San Diego College | Medical Assistant | 4/16/2013 | Career Services, Pressure to Enroll | Emailed Statement |
| 01603605 | San Diego College | Medical Billing and Coding | 10/13/2013 | Educational Services, Pressure to Enroll | Emailed Statement |
| 01607534 | San Diego College | Medical Assistant | 11/17/2014 | Guaranteed Jo, Career Services, Pressure to Enroll, Other | Emailed Statement |
| 01897267 | San Diego College | Medical Assistant | 9/6/2014 | Other, Educational Services, | Emailed Statement |

## RECOMMENDATION:

The allegations made by the applicants vary and do not violate state law. No lawsuits against the school were discovered. Further investigation is not recommended.

**APPROVED BY: John Stephenson**
**DATE: 10/11/2019**

**DOE00012560-DOE00012561**

# Initial Review of Medium Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution** | Southwest University |
| **Corporate Owner(s)** | Southwest University |
| **Open or Closed** | Open |
| **Total Number of Applications** | 5 |
| **Patterns of Alleged Misconduct** | N/A |
| **Evidence/Litigation** | N/A |
| **Name of Reviewer** | Maureen Taylor |
| **Date Review Completed** | 10/11/2019 |

## SUMMARY APPLICATION OVERVIEW

| BD Case Number | School/Campus listed on App | Program(s) | Year of Enrollment | Nature of Allegation(s) | Evidence |
|---|---|---|---|---|---|
| 01249555 | Southwest University | Medical Assistant | 2/17/2015 | Other, Career Services, Program Cost, Pressure to Enroll | Emailed Statement |
| 01276186 | Southwest University | Medical Assistant | 2/16/2015 | Guaranteed Job, Financial Aid, Transferability, Career Services, Educational Services, Pressure to Enroll, Other | Emailed Statement |
| 01282353 | Southwest University | Medical Assistant | 9/22/2009 | Career Services, Financial Aid, Pressure to Enroll, Other | Emailed Statement |
| 01531031 | Southwest University | Medical Assistant | 9/8/2014 | Guaranteed Job, Pressure to Enroll, Other, Transferability | Emailed Statement |

| 01595932 | Southwest University | Health Administration | 2/18/2019 | Transferability, Educational Services | Emailed Statement |
|---|---|---|---|---|---|

## RECOMMENDATION:

The Allegations made by the applicants vary but do not violate state law. No lawsuits against the school were discovered. Further investigation is not recommended.

### APPROVED BY: John Stephenson
### DATE: 10/11/2019

**DOE00012629-DOE00012633**



## Federal **Student Aid**
An OFFICE of the U.S. DEPARTMENT of EDUCATION

PROUD SPONSOR *of* the AMERICAN MIND™

### Initial Review of Mid-Size Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution and OPEID** | Stenotype Institute of Jacksonville 00841700 |
| **Open or Closed** | Closed 03/15/2016 |
| **Date Advanced Letter Sent** | N/A |
| **Additional Locations**<br>• **Add closure date if applicable** | N/A |
| **Corporate Owner(s)** | Gloria Wiley - Stenotype Institute of Jacksonville of Jacksonville, Inc. |
| **Total Number of Applications** | As of August 31, 2020, there are 66 applications awaiting adjudication. |
| **Patterns of Alleged Misconduct** | Stenotype Institute of Jacksonville does not have any current litigation pending. Based on a sample of 10 allegations of each category, the borrowers do not present evidence that indicates Stenotype Institute of Jacksonville committed overt or repetitive misconduct, fraud, or misrepresentations. The application narratives provide individual experiences, frustrations, or issues encountered as a customer of Stenotype Institute of Jacksonville. Additionally, although some of the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct. |
| **Internal ED Investigation(s)**<br>• **PC, AAASG, OIG** | **Program Compliance**<br>Program reviews conducted in 2017 and 2004, however, none of the findings were relevant to borrower defense. (PRCN: 2016-2-04-29225; PRCN: 2003-2-04-20987).<br><br>**AAASG and OIG Investigations**<br>Borrower Defense found no past or pending AAASG or OIG investigations.<br><br>**OIG/DOJ**<br>In 2019, Gloria Wiley, former owner of Stenotype Institute of Jacksonville, was sentenced to prison and ordered to pay over $288,000 in restitution to former students, the Department of Education, and the U.S. Department of Veterans Affairs. Wiley improperly kept $290,000 in financial aid refunds due to the Department of Education and to former students, and $9,000 to the Department of Veteran Affairs. (DOJ Press Release) |

| Internal Contact(s) for Further Investigation | N/A |
|---|---|
| External Investigations (AG), Evidence or Litigation Related to BORROWER DEFENSE | *Handforth v. Stenotype Institute of Jacksonville, Inc.*, No. 309-CV-361-J-32MCR, 2010 WL 55578, (M.D. Fla. Jan. 4, 2010) Plaintiff bought a class action against Stenotype Institute of Jacksonville, alleging the promise of a two year program was virtually impossible to complete and was therefore a bait and switch. The Court found it lacked subject matter jurisdiction and the case was dismissed without prejudice. |
| External Contact(s) for Further Investigation | N/A |
| External Investigations, Evidence or Litigation NOT related to BORROWER DEFENSE | N/A |
| News Articles/Media | N/A |
| Name of Reviewer | Phuong Tran Giang |
| Date Review Completed | 9/1/2020 |

## SUMMARY OF ALLEGATIONS AND RECOMMENDATION

| Summary of Allegations Reviewed | **Summary of Allegations** Borrower Defense reviewed a sample of 10 allegations of each category outlined below to identify potential trends and/or salient information provided by the applicant pool.  The enrollment dates for the applicant pool range from 2003 through 2016 with the majority of applicants having enrollment dates between 2007-2013  The narrative allegations include complaints relating to: (i) the length of time to finish the program; (ii) the transferability of their credits; and (iii) the ability to get a job after graduation. **Employment Prospects:** Based on the 10 allegations reviewed, borrowers most commonly allege that they were unable to sit for licensing exams and that the school promised to place borrowers in externships that would lead to job placements.  One borrower attached a program curriculum description that read "Normal Program Length is 24 months" but no other borrowers provided any additional supporting evidence.[1]  Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide sufficient supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct. **Program Cost and Nature of Loans:** |
|---|---|

---

[1] Program Curriculum Attachment - 24 months

2

Based on the 10 allegations reviewed, many borrowers made allegations regarding the high cost of their program or claimed they were not given enough explanation regarding their loans. A few borrowers alleged the institute misrepresented the nature of their financial aid or the cost of the program. Several borrowers alleged they were told the program would take on average 2 years to complete but it took them longer to complete the program. One borrower attached a program curriculum description that read "Normal Program Length is 24 months" but no other borrowers provided any additional supporting evidence. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide sufficient supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

### Transferring Credit:
Based on the 10 allegations reviewed, most borrowers alleged that the institute promised them their credits would transfer to other schools, but the credits did not transfer. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

### Career Services:
Based on the 10 allegations reviewed, many borrowers alleged they were unable to find a job upon graduation or the institute told them it would be easy to find a job. One borrower alleged they were promised career services assistance but was not provided any assistance. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

### Educational Services:
Based on the 10 allegations reviewed, a few borrowers alleged the Institute misrepresented the length of time to complete the program. Other borrowers alleged they were promised an associate's degree but received a certification instead. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct.

### Admissions and Urgency to Enroll:
Based on the 10 allegations reviewed, borrowers commonly allege that they were told there was an urgency to sign up immediately and, if they did not sign up immediately, they would lose a seat in the class. These claims are not of the type that would warrant Borrower Defense relief absent a misrepresentation

### Other:

3

DOE00012631

|  | Based on the 10 allegations reviewed, a few borrowers alleged the program's instructors were not as experienced as advertised or they did not have a teacher in the class at all. Other borrowers described how the school was in the news for financial aid fraud. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence and FSA is not otherwise in possession of evidence to establish a pattern or practice of this type of misconduct. |
|---|---|
| Recommended Next Steps | Based on our search for public information (including public records, court documents and filings), Department of Education internal resources (FRPDs, AASG, and OIG investigations), and the sampling of claims, there is insufficient evidence of widespread misconduct Stenotype Institute of Jacksonville to warrant further investigation.   If additional evidence is discovered or received in the future, these claims may be revisited as warranted.  As such, it is recommended the cases be adjudicated. |
| Recommended Focus Area(s) | N/A |
| APPROVED BY: | Shana Metzger |
| DATE: | 9/3/2020 |

| Evidence Considered | ☐ Attorney Submission<br>☒ Borrower Submission<br>☐ Consumer Protection Financial Bureau (CPFB)<br>☐ Department of Education-Office of Investigator General (OIG)<br>☐ Documents Submitted by the school in response to your application<br>☒ Evidence Obtained by the Department in conjunction with its regular oversight activities<br>☐ Federal Trade Commission (FTC)<br>☐ Department of Justice (DOJ)<br>☐ U.S. Securities and Exchange (SEC)<br>☐ Attorney General _____ (state)<br>☐ Other<br>☐ No Other Evidence Considered |
|---|---|

| Advanced Letter Requests | ☐Standard Letter<br>☐Standard Letter Plus: |
|---|---|

Links: In this section please provide the Sharepoint links to working documents and evidence reviewed. Example of items to provide links for below.
- Salesforce Allegation Report
- PRCN: 2016-2-04-29225

4

- DOJ Press Release
- *Handforth v. Stenotype Institute of Jacksonville, Inc.*, No. 309-CV-361-J-32MCR, 2010 WL 55578, (M.D. Fla. Jan. 4, 2010)
- Program Curriculum Attachment -  24 months

DOE00012633

**DOE00012658-DOE00012658**

**Strayer University** – Evidence Considered Protocol

<u>Applicable to</u>:

Strayer University

Strayer Business College

<u>Entering Evidence Considered Manually</u>:

1. Open a case with a suggested closing correspondence value of Standard Denial with Evidence Considered in status 3.10
2. In the "Evidence Considered" field on the case select the following:
   a. Evidence obtained by the Department in conjunction with its regular oversight activities
3. In the "Other Evidence" field on the case input the following:
   a. [nothing is needed to be entered into this field for Strayer]
4. The case is now ready to process following the normal borrower notification letter creation process.

<u>Bulk Update Options</u>:

1. Bulk update (by work ticket to Accenture) all Strayer cases in 3.10 with the following:

   a. In the "Evidence Considered" dropdown, select "Evidence obtained by the Department in conjunction with its regular oversight activities."

2. Process following the normal borrower notification letter creation process.

DOE00012658

**DOE00012664-DOE00012668**



PROUD SPONSOR *of*
the AMERICAN MIND ™

## Initial Review of Medium Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution and OPEID** | Strayer University - 00145900<br>Strayer Business College - 00465400 (closed 12/20/1991) |
| **Open or Closed** | Open |
| **Date Advanced Letter Sent** | N/A |
| **Additional Locations**<br>• **Add closure date if applicable** | See Attachment A -Strayer University Additional Locations |
| **Corporate Owner(s)** | Strategic Education, Inc. |
| **Total Number of Applications** | As of February 21, 2020, there were 549 applications for Strayer University and one application for Strayer Business College awaiting adjudication. |
| **Patterns of Alleged Misconduct** | Strayer University currently does not have any pending litigation and no evidence suggests that the University is participating in fraudulent activity. Based on a sample of 50 applications below, the borrowers do not present evidence that indicate Strayer committed overt or repetitive misconduct, fraud, or misrepresentations. The application narratives provide individual experiences, frustrations, or misunderstandings encountered as a customer of Strayer University. |
| **Internal ED Investigation(s)**<br>• **PC, AAASG, OIG** | **Program Compliance**<br>Two Final Program Review Determination (FPRD) were completed in 2014 (PRCN: 201340328425[1] and 2014406288027[2]).<br><br>The first 2014 program review focuses on Strayer's self-reported noncompliance with a Title IV program at its Palm Beach Gardens campus. The program review finds that Strayer University improperly disbursed funds to one of seven students enrolled in its Master of Business Administration program. Strayer did not receive punishment from the Department for this error.<br><br>The second 2014 program review relates to Strayer University's failure to resolve conflicting information provided by a student. The review determination closed the findings with no further action because Strayer took adequate corrective actions.<br><br>Two additional FPRDs were completed in 2015. (PRCN: 201440428745[3] and 201440328800[4]). |

---

[1] See Attachment B – Strayer University FRPD 2/24/2014
[2] See Attachment C – Strayer University FPRD 10/21/2014
[3] See Attachment D – Strayer University FRPD 1/7/2015
[4] See Attachment E – Strayer University FRPD 4/29/2015

|  | A complete copy of the first 2015 program review could not be located by the Compliance Manager, however, a copy of the letter issued to Strayer University is attached. The letter specifically focuses on the Douglasville, GA location and shows that Strayer has resolved all findings related to a Title IV violation and no further action is required.<br><br>The second 2015 program review relates to Title IV funds, and the miscalculation of a student refund. The program review instructs the University to return a specified amount to the student's outstanding Federal Direct Loans.<br><br>**AAASG and OIG Investigations**<br>After review, Borrower Defense found no past or pending AAASG or OIG investigations.<br><br>**OGC/DOJ**<br>DOJ declined to intervene in a qui tam action against Strayer University and the case was ultimately dismissed.[5] |
|---|---|
| **Internal Contact(s) for Further Investigation** | N/A |
| **External Investigations (AG), Evidence or Litigation Related to BD** | N/A |
| **External Contact(s) for Further Investigation** | N/A |
| **External Investigations, Evidence or Litigation NOT related to BD** | In 2014, an admissions official was found to have fraudulently created 58 official Strayer University transcripts to commit immigration fraud by falsifying student visas.[6] |
| **News Articles/Media** | For-Profit Schools Target The Black Community. Here's How You Can Avoid The Scam.<br>This article uses Strayer University as an example on how for-profit universities cater advertising to certain markets, enlisting well known celebrities and pointed advertising narratives. The article highlights the motives of universities like Strayer but does not direct the reader to any specific misrepresentations, misconduct, or malfeasance. Vice published a similar article titled: How For-Profit Colleges Have Targeted and Taken Advantage of Black Students. |

---

[5] *See U.S. ex rel Hardy v. Strayer University*, 1:14-cv-00154 (U.S. District Court for the Eastern District of Virginia, Alexandria Division) (Feb. 12, 2014) (on file with BDG).

[6] *See McLean business managers, Strayer University officials convicted of immigration fraud*, INSIDE NOVA (Aug. 30, 2014), https://www.insidenova.com/headlines/mclean-business-managers-strayer-university-officials-convicted-of-immigration-fraud/article_4d1ab724-2edf-11e4-8c22-001a4bcf887a.html (on file with BDG).

2

DOE00012665

|  | University Admits Mistake: Student Won't Graduate On-Time. A 2019 article found that a Stayer University counselor failed to enroll the student in a required course, delaying graduation. The University has since provided the student with resources and benefits as an apology. |
|  | For-profit Strayer University opens its ninth campus in Florida Thursday in College Town. This 2020 article discusses how Strayer University continues to expand and has opened several new locations including its most recent location in Tallahassee, Florida location. |
| **Name of Reviewer** | Robert Martin |
| **Date Review Completed** | 2/21/2010 |

## SUMMARY OF ALLEGATIONS AND RECOMMENDATION

| Summary of Allegations Reviewed | **Summary of Allegations** |
|---|---|
|  | Borrower Defense reviewed a sample[7] of 50 applications to identify potential trends in the applicant pool. Approximately half the sampled applications participated in a Business or Business Administration program at varying credential levels. The remainder of the application programs include Criminal Justice, Information Technology, Computer Science, Accounting, and Human Resource Management, among others. The enrollment dates for Strayer University range from 1997 to 2019. One application is against Strayer Business College with a 1988 enrollment date. The narratives in the reviewed applications provide commentary on the quality of education, the cost of attendance, and frustrations arising from unemployment. Only two borrowers attached additional information. One borrower attached correspondence related to a dispute regarding academic probation and the second related to a dispute regarding the program printed on their certificate. Both disputes are unrelated to a Borrower Defense claim. |
|  | **Employment Prospects** |
|  | Of the sampled applications, 37 raise an employment prospects allegation, with only 18 allegations asserting a relevant claim. The borrowers allege that Strayer University lied about job placement assistance, employment outcomes, and Strayer's relationship with employers. Although the allegations asserted may be relevant to Borrower Defense, the borrowers fail to provide any supporting evidence that exhibits a pattern of practice consistent with misconduct. |
|  | **Program Cost and Nature of Loans** |
|  | Of the sampled applications, 43 raise a program cost allegation. Of these 43 allegations, 25 borrowers allege that Strayer University lied about the cost of |

[7] *See* Attachment F: Strayer University Summary Application Overview

3

attendance, how the tuition would be paid, and the nature of their loans. A few borrowers allege that the cost of attendance increased routinely without prior notice throughout the program. Generally, the borrower's complaints focus on a lack of clarity in the cost of attendance. Without evidence of material falsities or proof of misleading information, there is no reason for further investigation.

### Career Services

Of the sampled applications, 31 raise a career services allegation. Of those 31 allegations, 17 allegations relate to assistance with securing employment following graduation. The applications express frustrations with services that Strayer University both provided and failed to provide to its students. The allegations alone do not provide any support for misconduct relevant to Borrower Defense.

### Transferring Credits

Of the sampled applications, 26 raise a transfer of credits allegation. Most transfer allegations express credit related issues encountered throughout the borrower's individual experience. Several borrowers state an inability to transfer credits in and out of Strayer University, however, do not provide any evidence of the credits' purported transferability. Additionally, Stayer is regionally accredited by the Middle States Commission on Higher Education. Based on these allegations, there is no evidence to support misconduct regarding transfer of credits.

### Educational Services

Of the sampled applications, 10 raise an allegation relevant to Educational Services. The borrowers' allegations discuss the quality of the education received, including personal opinions on the instructors, curriculum, and program resources. Based on these allegations, there is no evidence to support misconduct regarding educational services.

### Admissions and Urgency to Enroll

Based on 41 allegations, only 26 of those allegations are relevant to Admissions and Urgency to Enroll. The borrowers' allegations illustrate sales tactics that include pressuring potential students into enrolling quickly, routinely calling and sending emails, and in some cases incentive programs, such as Strayer providing the borrower with a laptop. The borrower statements do not show a pattern of practice consistent with general misconduct.

### Other

Of the 50 applications reviewed, 31 borrowers provided an "other" allegation. These borrowers provided explanatory narratives relevant to their personal experiences, addressing the implications of acquiring educational debt without secure employment, or commenting on the quality of their educational experience. The borrowers do not appear to reveal a pattern of misconduct.

4

| | |
|---|---|
| **Recommended Next Steps** | Based on public information (including public records, news articles, court documents and filings) and Department of Education internal resources (FRPDs, AASG, and OIG investigations), there is no evidence to suggest that Strayer University engaged in fraudulent activity. In addition to research conducted, the 50-case sample did not identify a pattern of practice consistent with general misconduct. The allegations sampled focus on individual experiences and do not suggest widespread misrepresentations or violations. Without further evidence, it is recommended that the cases be denied. If additional evidence is discovered or received in the future, these claims may be revisited as warranted. |
| **Recommended Focus Area(s)** | N/A |
| **APPROVED BY:** | John Stephenson (updated by Mike Garry on 4/22/20) |
| **DATE:** | 2/24/2020 (updated 11/20/2020) |

| | |
|---|---|
| **Evidence Considered** | ☐Attorney Submission<br>☐Borrower Submission<br>☐Federal Trade Commission<br>☐Department of Justice<br>☐Securities and Exchange Commission<br>☐Attorney General __________ (state)<br>☐Consumer Financial Protection Bureau<br>☒ED - FSA/OIG (Final Program Reviews)<br>☐Other |

| | |
|---|---|
| **Advanced Letter Requests** | ☒Standard Letter<br>☐Standard Letter Plus: |

**Links:**

- Salesforce Allegation Report
  - Attachment A -Strayer University Additional Locations
- Program Review Report:
  - Attachment B – Strayer University FRPD 2/24/2014
  - Attachment C – Strayer University FPRD 10/21/2014
  - Attachment D – Strayer University FRPD 1/7/2015
  - Attachment E – Strayer University FRPD 4/29/2015





DOE00012668

**DOE00012673-DOE00012675**



## Federal Student Aid
An OFFICE of the U.S. DEPARTMENT of EDUCATION

PROUD SPONSOR of the AMERICAN MIND™

### Initial Review of Mid-Size Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution and OPEID** | Suburban Technical School (01093000) |
| **Open or Closed** | Closed (11/21/2011) |
| **Date Advanced Letter Sent** | N/A |
| **Additional Locations**<br>• **Add closure date if applicable** | There are no additional locations for this school, however Suburban Technical School (01093000) merged/consolidated with the Harris School of Business (02104003). |
| **Corporate Owner(s)** | Premier Education Group, L.P.<br>• Robert B. Bast<br>• Elizabeth Brennan Trust<br>Private |
| **Total Number of Applications** | As of August 26, 2020, there are 23 applications already adjudicated and one application awaiting adjudication. |
| **Internal ED Investigation(s)**<br>• **PC, AAASG, OIG** | **Program Compliance**<br>Program reviews were conducted on 12/16/2004 and 3/26/2008, however, none of the findings were relevant to borrower defense.<br><br>**AAASG and OIG Investigations**<br>Borrower Defense found no past or pending AAASG or OIG investigations.<br><br>**OGC/DOJ**<br>Borrower Defense found no past or pending OGC/DOJ investigations. |
| **Internal Contact(s) for Further Investigation** | N/A |
| **External Investigations (AG), Evidence or Litigation Related to BORROWER DEFENSE** | *United States, ex rel. LaPorte v. Premier Educ. Grp., L.P.*, Civ. No. 11-3523, 2014 WL 5449745 (D.N.J. Oct.27, 2014)<br><br>Plaintiffs allege that Premier Education Group ("PEG") made or caused to be made false claims and statements in order to participate in the Federal student financial aid programs. Specifically, PEG violated provisions of the contractual agreements between PEG and the Department of Education ("DOE"), called Program Participation Agreements ("PPAs"), in which |

|  | PEG agreed to abide by Federal regulations and not engage in material misrepresentations as a condition of PEG's eligibility to receive said funding.<br><br>*United States v. Premier Educ. Grp., L.P.*, Civ. No. 113523, 2016 WL 274 7195 (D.N.J. May 11, 2016)<br><br>Plaintiff's alleged that PEG violated provisions of the contractual agreements between PEG and the DOE, PPA's, in which PEG agreed to abide by federal regulations and not engage in material misrepresentations as a condition of PEG's eligibility to receive said funding. |
| **External Contact(s) for Further Investigation** | N/A |
| **Name of Reviewer** | Carrington Jackson |
| **Date Review Completed** | 8/27/2020 |

| **Recommended Next Steps** | Based on our search for public information (including public records, news articles, court documents and filings) and Department of Education internal resources (FRPDs, AASG, and OIG investigations), there is insufficient evidence of widespread misconduct by Suburban Technical School to warrant further investigation. If additional evidence is discovered or received in the future, these claims may be revisited as warranted. As such, it is recommended the cases be adjudicated. |
| **Recommended Focus Area(s)** | N/A |
| **APPROVED BY:** | Shana Metzger |
| **DATE:** | 08/27/2020 |

| **Evidence Considered** | ☐ Attorney Submission<br>☐ Borrower Submission<br>☐ Consumer Protection Financial Bureau (CPFB)<br>☒ Department of Education-Office of Investigator General (OIG)<br>☐ Documents Submitted by the school in response to your application |

2

|  | ☐ Evidence Obtained by the Department in conjunction with its regular oversight activities<br>☐ Federal Trade Commission (FTC)<br>☒ Department of Justice (DOJ)<br>☒ U.S. Securities and Exchange (SEC)<br>☐ Attorney General_____(state)<br>☐ Other<br>☐ No Other Evidence Considered |
|---|---|

| **Advanced Letter Requests** | ☐Standard Letter<br>☐Standard Letter Plus:<br>   • |
|---|---|

**Links:** In this section please provide the Sharepoint links to working documents and evidence reviewed. Example of items to provide links for below.

- Working Documents
  - https://usdedeop.sharepoint.com/:f:/r/teams/FSA/zdo%20not%20use/Borrower%20Defense%20Team/Investigations/MidSize/In%20Progress/Carrington/Suburban%20Technical%20School?csf=1&web=1&e=fmMZdu
- Program Review Report
  - https://usdedeop.sharepoint.com/teams/FSA/zdo%20not%20use/Borrower%20Defense%20Team/Investigations/Mid-Size/PEPS%20School%20Reports/Suburban%20Technical%20School%20OPEID%2001093000.PDF

3

**DOE00012822-DOE00012824**



**Federal Student Aid**
An OFFICE of the U.S. DEPARTMENT of EDUCATION

PROUD SPONSOR *of*
*the* AMERICAN MIND ™

## Initial Review of Mid-Size Batch Applications

## BACKGROUND

| | |
|---|---|
| **Name of Institution and OPEID** | Touro College<br>01014200 |
| **Open or Closed** | Open |
| **Date Advanced Letter Sent** | N/A |
| **Additional Locations**<br>• **Add closure date if applicable** | See Exhibit A – Additional Locations |
| **Corporate Owner(s)** | N/A - Private, Not for Profit |
| **Total Number of Applications** | As of August 13, 2020, there are 34 cases already adjudicated and one application awaiting adjudication. |
| **Internal ED Investigation(s)**<br>• **PC, AAASG, OIG** | **Program Compliance**<br>Borrower Defense found no past or pending Final Program Review Determinations related to Borrower Defense.<br><br>**AAASG and OIG Investigations**<br>Touro College underwent an OIG audit in 2008, however, none of the findings were relevant to borrower defense.<br><br>**OGC/DOJ**<br>Borrower Defense found no past or pending OGC/DOJ investigations. |
| **Internal Contact(s) for Further Investigation** | N/A |
| **External Investigations (AG), Evidence or Litigation Related to BORROWER DEFENSE** | A review of publicly available information found no evidence related to Borrower Defense. |
| **External Contact(s) for Further Investigation** | N/A |
| **Name of Reviewer** | Wendy Bonilla |
| **Date Review Completed** | 8/13/2020 |

| | |
|---|---|
| **Recommended Next Steps** | Based on our search for public information (including public records, news articles, court documents and filings) and Department of Education internal resources (FRPDs, AASG, and OIG investigations), there is insufficient evidence of widespread misconduct by Touro College to warrant further investigation. If additional evidence is discovered or received in the future, these claims may be revisited as warranted. As such, it is recommended the cases be adjudicated. |

| | |
|---|---|
| | Additionally, as there is no evidence of widespread misconduct, notice to the school on these claims is not required. |
| **Recommended Focus Area(s)** | |
| **APPROVED BY:** | Shana Metzger |
| **DATE:** | 08/13/2020 |

| | |
|---|---|
| **Evidence Considered** | ☐ Attorney Submission<br>☐ Borrower Submission<br>☐ Consumer Protection Financial Bureau (CPFB)<br>☐ Department of Education-Office of Investigator General (OIG)<br>☐ Documents Submitted by the school in response to your application<br>☒ Evidence Obtained by the Department in conjunction with its regular oversight activities<br>☐ Federal Trade Commission (FTC)<br>☐ Department of Justice (DOJ)<br>☐ U.S. Securities and Exchange (SEC)<br>☐ Attorney General _____ (state)<br>☐ Other<br>☐ No Other Evidence Considered |

| | |
|---|---|
| **Advanced Letter Requests** | ☐Standard Letter<br>☐Standard Letter Plus:<br>   • |

**Links:** In this section please provide the Sharepoint links to working documents and evidence reviewed. Example of items to provide links for below.
- Advanced Letter (if applicable)
- Salesforce Allegation Report – Touro College Allegation Report
- Program Review Report

Exhibit A – Additional Locations

01014204 – Forest Hills, NY

2

DOE0012823

01014205 – Central Islip, NY
01014206 – Brooklyn, NY
01014207 – Brooklyn, NY
01014208 – Brooklyn, NY
01014217 – New York, NY
01014219 – Kew Garden Hills, NY
01014220 – Bay Shore, NY
01014221 – Brooklyn, NY
01014222 – Brooklyn, NY
01014223 – Brooklyn, NY
01014227 – Givat Shaul, Jerusalem, Israel
01014230 – Brooklyn, NY
01014231 – Kew Garden Hills, NY
01014233 – Brooklyn, NY
01014236 – Brooklyn, NY
01014237 – Brooklyn, NY
01014238 – Brooklyn, NY
01014240 – Berlin, Germany
01014245 – New York, NY
01014246 – New York, NY
01014247 – Middletown, NY
01014248 – New York, NY
01014249 – Hawthorne, NY
01014250 – Brooklyn, NY
01014251 – East Meadow, NY
01014252 – New York, NY
01014253 – Skokie, IL
04142600 – Vallejo, CA
04127900 – Cypress, CA
04142500 – West Hollywood, CA
04142601 – Henderson, NV

DOE00012824