**Supplemental Complaint**

**Exhibit Index**

**Interrogatory Responses & Related Documents**

| Document Order | Document |
|---|---|
| 1 | Supplemental Interrogatory Responses |
| 2 | Interrogatory 17-18: How to Review a Borrower Allegation in a One-off or Small Batch Application |
| 3 | Interrogatory 17-18: ITT Memo, April 2020 |
| 4 | Interrogatory 17-18: ITT Program Cost Memo, May 2020 |
| 5 | Interrogatory 17-18: ITT Educational Services Memo, May 2020 |
| 6 | Interrogatory 17-18 Evidence Considered Memo |

**Interrogatory Responses and Related Documents Cited in Supplemental Complaint, March 19, 2021**

**Document 1**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DR. MITCHELL ZAIS, in his official capacity as Acting Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION<br><br>　　　　　Defendants. | No. 3:19-cv-03674-WHA |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants hereby supplement their responses to Plaintiffs' First Set of Interrogatories (the "Interrogatories"), served on November 6, 2020.

**BACKGROUND**

On December 7, 2020, undersigned counsel for the Defendants timely submitted, via email, Defendants' written responses and objections to Plaintiffs' first set of interrogatories ("December 7 Responses"). In response to several of Plaintiffs' interrogatories, Defendants noted that they intended to supplement their narrative responses by producing particular documents. Defendants have now produced and/or identified each of the referenced documents, as set forth below:

- **Interrogatory No. 3**: In their December 7 Responses, Defendants stated that they would supplement their response with a "chart that includes case-level data from the borrower defense system" demonstrating various "relevant case characteristics." Defendants produced this supplemental document by email dated December 14, 2020.

1

- **<u>Interrogatory No. 9</u>**: In their December 7 Responses, Defendants stated that they would supplement their response with a "chart that shows the number of career staff and contractors working for FSA in the Borrower Defense Unit during each month of the relevant time period." Defendants produced this supplemental document by email dated December 11, 2020.

- **<u>Interrogatory No. 10</u>**: In their December 7 Responses, Defendants stated that they would supplement their response with three categories of documents: "(1) the initial letters sent to schools thus far requesting information and advising schools that they would be receiving notice of individual borrower applications against them, (2) the template for the form letters sent to the school with the individual borrower application, and (3) documents describing the protocol and procedures for sending initial and form letters to schools that were in effect at the time that the notices were sent." Defendants produced these supplemental documents by email dated December 11, 2020.

- **<u>Interrogatory No. 11</u>**: In their December 7 Responses, Defendants stated that they would supplement their response with documents reflecting the "criteria for approval" for claims submitted by borrowers who attended certain schools and the "policies and procedures regarding approvals." Defendants produced these supplemental documents by email dated December 11, 2020.

- **<u>Interrogatory No. 12</u>**: In their December 7 Responses, Defendants stated that they would supplement their response with certain "written training materials." Defendants produced these supplemental documents by email dated December 11, 2020.

- **<u>Interrogatory Nos. 17 and 18</u>**: In their December 7 Responses, Defendants stated that they would supplement their responses to these two interrogatories with "(1) school-specific memos regarding the scope of evidence considered and (2) related adjudication protocols." By email dated January 14, 2021, Defendants produced and/or identified these supplemental documents (many of which were included in Defendants' document productions) to Plaintiffs.

- **<u>Interrogatory No. 19</u>**: In their December 7 Responses, Defendants stated that they would supplement their response with a chart demonstrating "which class members received each form denial letter and relevant case characteristics, including the date of the letter and school name(s) associated with the borrower's claim." Defendants produced this supplemental document by email dated January 14, 2021.

In addition, Defendants hereby submit these supplemental responses to certain of Plaintiffs' interrogatories. For any interrogatory not specifically addressed herein, Defendants refer Plaintiffs to Defendants' December 7 Responses. Unless otherwise noted, these responses are subject to the objections set forth in the December 7 Responses.

2

## SUPPLEMENTAL RESPONSES AND OBJECTIONS

**Interrogatory No. 4**

Identify the person or persons who "tabled" Enforcement's request for approval to hire "several additional attorneys" for BDU.  Nevin Dec. ¶ 21 (ECF No. 56-4).

**Objections**:  Defendants incorporate by reference the objections set forth in the December 7 Responses, which made clear that this request seeks information that is plainly not relevant based on the limited discovery that has been authorized and is, thus, disproportionate to the needs of the case.  Nevertheless, in furtherance of their meet-and-confer responsibilities, Defendants provide the following additional information in response.

**Response:**  As discussed in the referenced Declaration of Colleen Nevin, in the Fall of 2016, the Enforcement Unit in FSA requested approval to hire additional attorneys for the Borrower Defense Unit.  After the election in November 2016, the Borrower Defense Unit was informed orally by leaders in the Enforcement Unit that this request was tabled until the new Administration was in place.  The individuals likely to have more specific knowledge left the Department prior to 2020.

**Interrogatory No. 5**

Identify how and by whom both the "request" for approval to hire "several additional attorneys" for BDU and its "tabl[ing]" were communicated, including by identifying documents reflecting both the "request" and its "tabl[ing]."  Nevin Dec. ¶ 21 (ECF No. 56-4).

**Objections:**  Defendants incorporate by reference the objections set forth in the December 7 Responses, which made clear that this request seeks information that is plainly not relevant based on the limited discovery that has been authorized and is, thus, disproportionate to the needs of the

case.  Nevertheless, in furtherance of their meet-and-confer responsibilities, Defendants provide the following additional information in response.

**Response:**  The leadership of the Enforcement Unit met with Department leadership in the Fall of 2016 to review a staffing proposal and discussed options for BDU staffing increases.  After the election in November 2016, the Borrower Defense Unit was informed orally by leaders in the Enforcement Unit that the request for additional staffing was tabled until the new Administration was in place.  The individuals likely to have more specific knowledge left the Department prior to 2020.

**Interrogatory No. 14**

Identify who in "Department leadership convened a Borrower Defense Review Panel," and explain the reasoning behind the formation of the panel.  Nevin Dec. ¶ 55 (ECF No. 56-4).

**Objections:**  Defendants incorporate by reference the objections set forth in the December 7 Responses, which made clear that this request seeks information that is plainly not relevant based on the limited discovery that has been authorized and, thus, disproportionate to the needs of the case.  Nevertheless, in furtherance of their meet-and-confer responsibilities, Defendants provide the following additional information in response.

**Response:**  As reflected in the deposition testimony of Jim Manning, the Department leadership as a group decided that it would be helpful to review the Department's process for handling and considering claims for borrower defense discharges.  The group was convened by Joe Conaty.

**Interrogatory No. 16**

Identify the individuals who drafted and approved form Denials A, B, C, and D, and explain the process for review and approval of the letters.  *See* ECF No. 116.

**Objections**:  Defendants incorporate by reference the objections set forth in the December 7 Responses.

**Response:**  Staff members within FSA prepared a set of draft decision letters; each letter was specific to a certain group of claims and circumstances.  That set of draft letters was sent to other officials in the Department, including Jed Brinton (then Deputy General Counsel for Postsecondary Education with the Department's Office of General Counsel) and other attorneys in the Office of the General Counsel, as well as Diane Jones (the Principal Deputy Under Secretary) and Robert Eitel (then Counselor to the Secretary).  Those attorneys and officials provided comments back to FSA.  Based on those original drafts and the comments from those officials, FSA prepared what became form letters A and C.  FSA staff then used form letters A and C to draft form letters B and D.  Form letter B built on form letter A to address circumstances requiring a combination of the other letters, and form letter D built on form letter C to incorporate school-dependent evidence considered.  The Department did not have an established process that mandated any further review or approval before the form letters could be used.  Based on the Department's original and supplemental inquiries, there is no indication that former Secretary DeVos was involved in the review or approval of the template letters A, B, C or D.

**SIGNATURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 33(b)(5)**

For interrogatory responses:  See the attached certification pages.

Dated:  January 14, 2021                         As to objections,

                                                 JENNIFER B. DICKEY
                                                 Acting Assistant Attorney General

                                                 MARCIA BERMAN
                                                 Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar # 89400)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| THERESA SWEET, *et al.*,<br><br>        Plaintiffs,<br><br>   v.<br><br>DR. MITCHELL ZAIS, in his official capacity<br>as Secretary of Education, and the UNITED<br>STATES DEPARTMENT OF EDUCATION<br><br>        Defendants. | No. 3:19-cv-03674-WHA |

INTERROGATORY CERTIFICATION

I, Colleen M. Nevin, Director of the Borrower Defense Group, Federal Student Aid, United States Department of Education, certify under penalty of perjury, that the foregoing supplemental responses to Plaintiff's Interrogatory No. 4 and No. 5 are true and correct to the best of my belief, knowledge, information, understanding and recollection.

Dated: January 14, 2021

Respectfully submitted,

*Colleen M. Nevin*

Director
Borrower Defense Group
Federal Student Aid
United States Department of Education

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

THERESA SWEET, *et al.*,

        Plaintiffs,

    v.

DR. MITCHELL ZAIS, in his official capacity
as Acting Secretary of Education, and the
UNITED STATES DEPARTMENT OF
EDUCATION

        Defendants.

No. 3:19-cv-03674-WHA

## INTERROGATORY CERTIFICATION

I, Brian P. Siegel, Assistant General Counsel, Division of Postsecondary Education, Office of the General Counsel, United States Department of Education, certify under penalty of perjury, that the foregoing supplemental responses to Plaintiff's Interrogatories No. 14 and No. 16 are true and correct to the best of my belief, knowledge, information, understanding and recollection.

Dated:  January 14, 2021

Respectfully submitted,

*Brian P. Siegel*
_____

Assistant General Counsel

Division of Postsecondary Education

Office of the General Counsel

United States Department of Education

**Interrogatory Responses and Related Documents Cited**

**in Supplemental Complaint, March 19, 2021**

**Document 2**

### How to Review a Borrower Allegation in a One-off or Small Batch Application

**Step One:  Did the borrower allege an act or omission by their school**
- In order to make a borrower defense claim the borrower must allege an act or omission by the school listed on their application.
  - If a borrower alleges an act or omission by someone or something other than the school on their application (for example another school, their loan servicer, or another student) then use the "borrower makes no allegations regarding the school" stock language from the protocol.  Otherwise move to step two.

**Step Two:  Does the act or omission by their school violate state law**
- The most common type of allegation we see allegations of misrepresentations.  In order to allege a misrepresentation that states a claim under state law the borrower must allege both a representation and the falsity of that representation in their application.  Further, the falsity alleged must match the representation.[1]
  - If the borrower has not alleged an act or omission by their school that violates state law use the "Allegation does not state a claim" stock language.  Otherwise move to step three.
    - **NOTE:**  The representation and the falsity may appear in different parts of the application
    - **NOTE:**  Checking the box on the universal form does not meet either the representation or falsity requirements, with the exception of Transfer claims.  If a the borrower checks the transfer claim box this checked box can be used to either meet the representation element or the falsity element for a transfer claim, but not both.

**Step Three:  Is the act or omission by the school covered by the borrower defense regulation**
- A borrower is not eligible for borrower defense relief based on claims that are not directly related to their loans or the educational services provided by the school.  For example personal injury claims or claims based on allegations of harassment are not bases for a borrower defense claim.
  - If the borrower alleges one of these violations of state law then we use the "not a BD type claim" stock language or, if there is the potential that the borrower can receive a different type of discharge, the appropriate stock language for that type of discharge. Otherwise move to Step four.

**Step Four:  Does the borrower provide evidence to support his/her claim**
- In order to be approved for a borrower defense claim the department must have evidence that proves all elements of the borrower's allegation.
  - If you think the borrower's allegation is proved by attached evidence or that the attached evidence would allow the department to discover additional material evidence through a limited targeted investigation then this allegation cannot be denied and you must contact your QCer for further direction.
  - If the borrower's allegation is not supported by sufficient evidence then the claim should be denied using the "insufficient evidence" stock language.

---

[1] Example:  "I was told that 85% of students have a job upon graduation, but in reality the percentage is much lower" states a claim.  However, "I was told that 85% of students have a job upon graduation, but I don't have a job" does not state a claim because the fact that the borrower doesn't have a job does not mean that the statement that 85% of students have a job upon graduation is false.

Produced in Response to Interrogatory 17-18, No Bates Number Provided

<u>**Treatment of Common Allegations - DRAFT**</u>

<u>**Employment Prospects**</u>

Regardless of which narrative box someone uses, Employment Prospects claims are about representations regarding someone's employment outcomes as a result of going to that school/program – a guarantee of employment, the % of graduates working/working in the field, the salary they can expect to earn, the kinds of jobs for which they would be eligible with that degree, eligibility to sit for licensing examinations, etc.

**Employment Prospects allegations that potentially state a claim and therefore should be denied only if there is insufficient evidence to support the allegation:**

- Misrepresentations of guaranteed jobs
  - Ex. "My school  promised me a job after I graduated, but I never got a job"
- Misrepresentations regarding salary/wages
  - Ex. "My school  told me I would make $60K a year upon graduation, but I only made minimum wage"
  - Ex. "My school told me dental assistants earn $30 per hour; but actually they only earn $12 per hour."
- Misrepresentations of Job Placement Rates
  - Ex. "My school told me 85% of graduates have jobs within 6 months of graduation, but that isn't true."
- Misrepresentations regarding a graduate's ability to work in field or sit for licensing exam
  - Ex. "My school said they were fully accredited, but when I graduated I was not eligible to get a job in my field of study."
  - "Ex. "My school told me that once I got this degree I could immediately get hired as a nurse; that's not true.  I need to have one year of clinical work before I can be hired."
  - Ex. "My school told me that after I graduated I could sit for the licensing exam, however when I went to take the exam I was told that my school was not properly accredited so I can't sit for the exam."
- Misrepresentations regarding an externship resulting in job placement
  - Ex. "My school promised me they would place me in an externship that would hire me after it ended.  My externship did not hire me."

**Employment Prospects Allegations that Do Not State a Claim and therefore should be denied for failure to state a claim:**

- Allegations that include only one element of a misrepresentation
  - Ex. "The school promised me a job"
  - Ex. "I never got a job"
  - Ex. "There were no jobs available in my program when I graduated"
  - Ex. "I thought that I would get a job, but I'm working fast food instead"
- Allegations of misrepresentations where the falsity doesn't match the representation
  - Ex. "My school told me 85% of graduates have a job upon graduation, but I didn't have a job upon graduation."
- Pure omissions without the student alleging that the school had a duty to inform the student of the pertinent information
  - Ex. "My school never told me it would be hard to get a job as an underwater basket weaver"
  - Ex. "My school never told me that underwater basket weavers don't get paid well"
- General Claims regarding the value of education in getting a job, even if framed as misrepresentations

Produced in Response to Interrogatory 17-18, No Bates Number Provided

- o Ex. "My school told me that it is easier to get hired with a bachelors degree than with just a high school diploma"
- o Ex. "My school told me that people with masters degrees often have higher salaries than people with bachelors degrees"

Produced in Response to Interrogatory 17-18, No Bates Number Provided

### Program Cost and Nature of Loan

Regardless of which narrative box someone uses, Program Cost and Nature of Loan claims are about how much the program cost, how it was to be paid for, loans, repayment terms, etc.

**Program Cost and Nature of Loan allegations that potentially state a claim and therefore should be denied only if there is insufficient evidence to support the allegation:**

- Misrepresentations of program cost
  - Ex. "My school told me one price but then I was charged a higher price"
- Misrepresentation of the nature of the financial aid (grants vs. loans)
  - Ex. "My school made me think I was getting all grants, but instead it turned out to be loans"
- Misrepresentation of loan repayment terms
  - Ex. "My school told me that I wouldn't have to start paying back my loans until six months after graduation, but after I graduated my loans became due immediately."
- Misrepresentations regarding what equipment was provided with tuition/fees
  - Ex. "My school promised that haircutting supplies were part of the tuition, but I never got the supplies and instead had to pay for them separately."

**Program Cost and Nature of Loan Allegations that Do Not State a Claim and therefore should be denied for failure to state a claim:**

- Omissions
  - Ex. "My school didn't let me know that there were additional fees in addition to tuition"
- Misrep claims that leave out an element
  - Ex. "My school promised me that tuition would only be $10K a year"
- Misrep claims where falsity doesn't match the rep
  - "My school promised me that tuition would only be $10K a year, but when I got to school my dorm room was in bad condition"
- Complaints about school cost
  - Ex "the school cost too much"
- Complaints regarding value of school, even if framed as misrepresentations
  - Ex. "the school shouldn't have cost so much, I could have gotten the same education at as state school for half the tuition.
- Failure to inform borrower of other available forms of financial aid
  - Ex. "Nobody told me I could have gotten a grant from a private charity or from the state."
- Complaints about having to take out loans
  - "I couldn't afford this school so I had to take out massive loans"
- Failure to inform borrower of basic loan information
  - Ex. "The school never told me that my loans would accrue interest"
- Misrep re: loan counseling or failure to provide loan counseling
  - Ex. "The school did not provide me loan counseling."
  - Ex. "The school promised me loan counseling, but is wasn't useful"
  - Ex. "The school promised me loan counseling, but I never got it"

Produced in Response to Interrogatory 17-18, No Bates Number Provided

## **Transferring Credits**

Regardless of which narrative box someone uses, Transferring Credits claims are typically about whether a borrower is able to transfer credits from, or into, that school.

**Transfer of Credits allegations that potentially state a claim and therefore should be denied only if there is insufficient evidence to support the allegation:**

- Misrepresentations of whether credits earned would be accepted by other schools
  - Ex. "[checked box] my credits didn't transfer"
  - Ex. "[checked box] my school told me my credits would transfer"
  - Ex "[NO checked box] my school told me my credits would transfer to any other school, but when I tried to transfer nobody would accept my credits"
- Misrepresentations of whether degrees earned at that school would allow continuation into grad school
  - Ex. "My school told me that this degree would let me go on to any law school in the country"
- Misrepresentations that previously earned credits would transfer into this school
  - Ex. "My school told me that that they would accept all my community college credits, but when I enrolled only some credits were accepted."
  - Ex. "My school told me that they would accept all my community college credits, but when I enrolled I had to retake classes."
- Misrepresentations regarding institutional accreditation
  - Ex. "My school said they were fully accredited, but when I tried to transfer my credits not school would accept them."

**Transfer of Credits Allegations that Do Not State a Claim and therefore should be denied for failure to state a claim:**

- Pure omission regarding transfer of credits
  - Ex. "My school never told me my credits wouldn't be accepted by other schools"
- Withholding transcripts
  - Ex. "I couldn't transfer because my school won't release my transcript until I pay them the balance of the tuition cost.
- Misrepresentation missing an element about transferring into a school
  - Ex. "[checked box] my former credits did not transfer into this school"
- School failed to assisted with the transfer process
  - Ex. "I was confused about how to transfer credits, when I asked the school to help me with the process nobody would help me."
- Transferability of some credits
  - Ex. "I tried to transfer my credits to [community college/state college], but they would only take 6 out of my 72 credits."

Produced in Response to Interrogatory 17-18, No Bates Number Provided

### Career Services

Regardless of which narrative box someone uses, Career Services claims are about what the school promised to do to *help* the borrower find a job – not through the education itself, but through Career Services representatives, job fair, resume workshops, industry connections, etc.

**Career Services allegations that potentially state a claim and therefore should be denied only if there is insufficient evidence to support the allegation:**

- Misrepresentations of the nature/type or availability of career services
  - Ex. "My school told me they would help me find a job, but when I went to the career services office nobody was ever there.  When I called nobody ever picked up the phone."
  - Ex. "My school told me they would provide resume help and have job fairs, but they never did either of those things.  All they did was send me links to job postings"
- Misrepresentations of the relationships the school has with employers
  - Ex. "My school promised me that they had strong relationships with local business, but when I contacted them they said they never heard of my school."

**Career Services Allegations that Do Not State a Claim and therefore should be denied for failure to state a claim:**

- Omission
  - Ex. "My school never told me that they did not have a career services office"
- Misrepresentation allegation with missing element
  - Ex. "My school promised me that career services would help me find a job"
- Misrepresentation allegation where falsity doesn't match the representation
  - Ex. "My school promised to help me find a job, but I don't have a job"
- Complaints about quality of career services, even if framed as misrepresentations
  - Ex. "My school promised me that they had great career services, but it wasn't useful"

Produced in Response to Interrogatory 17-18, No Bates Number Provided

**Educational Services**

Regardless of which narrative box someone uses, Educational Services claims are about curriculum, methods, instruction and instructors, etc.

**Educational Services allegations that potentially state a claim and therefore should be denied only if there is insufficient evidence to support the allegation:**

- Specific misrepresentations regarding what will be taught/how classes will be taught
  - Ex. "the school promised to teach me programming language X, but instead they taught me programing language Y"
  - Ex. "the school promised hands on training, but we were never allowed to use any of the equipment.  We only learned by reading a book."
- Misrepresentations regarding to qualifications/certifications of the instructors
  - Ex. "My school told me that all of the instructors in the paralegal program were attorneys; that wasn't true"
- Misrepresentations of the availability of services such as tutoring
  - Ex. "I was told there would be tutoring opportunities if I needed extra help with classes, but when I tried to get a tutor there weren't any."
- Allegations that teachers were not licensed to teach in state or otherwise does not meet state's statutory or regulatory standards
  - "I found out that my teachers were not licensed to teach in the state of Massachusetts."
- Allegations that a given class did not have a teacher
  - Ex. "Our class had no teacher, meaning there was no instruction.  We would just show up to a class room and nobody was there.  We just read our textbooks to ourselves.  "
  - Ex. "Our teacher was absent the second half of the semester and there was no substitute"
- Misrepresentations about program length/time to complete, number of credits necessary to complete, or number of hours of instruction that would be provided
  - Ex. "I told the school that I was being deployed in 9 months, and was told that the program only lasted 6 months.  I enrolled, but a few months in learned that the program was actually 12 months long, which meant I couldn't complete the course.
- Misrepresentations regarding internship/externship availability or nature
  - Ex. "My school promised to place me in an externship, but they never did
  - Ex. "My school promised to place me in a nursing externship, but they placed in a record keeping position"
- Misrepresentation regarding which program a student is enrolling in
  - Ex. "I signed up for a medical billing and coding program, but I later found out that they enrolled me in a Pharmacy tech program"
- Misrepresentations regarding medical or other accommodations
  - Ex. "My school told me that because of my medical condition I would get extra time on tests.  However, once I enrolled nobody gave me extra time on tests."
  - Ex. "My school told me I would be able to take a leave of absence for my pregnancy but instead they failed me and made me pay for the classes again"
  - Ex. "I was told that the school had flexible schedules and that it was not a problem that I worked during the day.  After I enrolled I learned that most of their classes are only taught during the day making it impossible to take the classes I need to take."

**Educational Services Allegations that Do Not State a Claim and therefore should be denied for failure to state a claim:**

- Omission
  - Ex. "The school didn't tell me how redundant the classes would be"
  - Ex. "The school didn't tell me that the teachers had little experience in the field"
- Misrep that is missing an element
  - Ex. "The school promised that the my teachers would be ivy league educated"

Produced in Response to Interrogatory 17-18, No Bates Number Provided

- Misrep where falsity doesn't match the representation
    - Ex. "My school promised that my teachers would be ivy league educated, but they didn't seem to know anything"
- Complaints about how a class is taught
    - Ex. "The school taught me programing language X, but after graduation I realized it would have been more helpful if they taught me programing language Y"
    - Ex. "I would have learned more if I got more hands on experience"
    - Ex. "They promised me that this was the best program. That was a lie"
- Complaints about quality of instructors, even if framed as misrepresentations
    - Ex. "My teachers didn't seem to know very much and couldn't answer my questions"
    - Ex. "My school said they had the best teachers, but that is a lie"
- Complaints about instructors not being helpful or playing favorites, even if framed as misrepresentations
    - Ex. "The professor in my econ 101 course did not seem interested in teaching the class. All he did was read off a power point"
    - Ex. "My teacher didn't answer my questions and just told me to look up the answer in the book"
    - Ex. "My teacher liked certain students more than others and always gave them more attention"
- Complaints about normal instructor absences
    - Ex. "Our teacher was sick and had to cancel a day of class"
    - Ex. "Our teacher went on maternity leave and the sub wasn't as good"
    - Ex. "The school had high teacher turnover"
- Complaints that a specific instructor wasn't available, even if framed as misrepresentations
    - Ex. "I enrolled at the school to take classes with a certain professor but she retired before I could take a class with her"
- Deviations from the syllabus or student handbook, even if framed as misrepresentations
    - Ex. "we were supposed to learn about X in the third week, but we fell behind and didn't get to it until week 4. That meant the last week of class was rushed"
    - Ex. "According to the student handbook you are allowed three make up tests, but I never got one"
- Complaints about internship quality
    - Ex. "I didn't learn anything in my internship"
- Grading unfairness
    - Ex. "I think my work was great and I should have gotten an A. the only reason I didn't was because the teacher didn't like me."
- Difficulty or ease of the program
    - Ex. "The class was too easy, I already knew everything"
    - Ex. "The class was too hard for an intro class"

Produced in Response to Interrogatory 17-18, No Bates Number Provided

## **Other**

**Other Allegations that Do Not State a Claim and therefore should be denied for failure to state a claim**

- Loss of accreditation
  - Ex. "My school lost its accreditation while I was there"
- Mere existence of lawsuits against the school
  - Ex. "My school is being sued by its former dining services provider"
- Borrower was expelled
  - Ex. "My school wrongfully expelled me for not following safety procedures in the lab"
- School didn't mail diploma
  - Ex. "I never received my paper diploma"
- School or program closure
  - Ex. "My school had to cancel the program I was in due to lack of interest"
  - Ex. "My school closed"
- Urgency to enroll
  - Ex. "I was told that I should enroll in class today so that I could begin schooling as soon as possible."

**Other Allegations that are not covered by the Borrower Defense Regulation:**

- Discrimination claims
  - Ex. "My teacher failed me because of my [race, gender, sexual orientation, etc]"
- False Certification claims
  - Ex. "I never signed up for loans, but later found out that my school took loans out in my name"
- Teacher harassment
  - Ex. "My teacher was verbally abusive to me"
  - Ex. "My teacher sexually harassed me"
- Violence by teachers or Students
  - Ex. "I got into a fist fight with my teacher"
- Drug use
  - Ex. "My teacher was high during class"
- School sanctioned cheating on tests
  - Ex. "The school had a policy of letting students cheat on tests so that we could graduate with good grades"

Produced in Response to Interrogatory 17-18, No Bates Number Provided

Interrogatory  Responses  and  Related  Documents

Cited in Supplemental Complaint, March 19, 2021


**Document 3**

Memorandum
To: Colleen Nevin
From: Andrew Bronstein, John Spurlock, John Stephenson, and Brian Gibbons
Date: April 2, 2020

Re: The Borrower Defense Unit's Ongoing Investigation of ITT Tech Before and After 2005

ITT Educational Services, Inc. was a proprietary higher education institution incorporated in Delaware with its principal executive offices located in Carmel, Indiana.[1] ITT Educational Services, Inc. operated ITT Technical Institute ("ITT Tech") from 1969,[2] until the commencement of bankruptcy proceedings on September 16, 2016.[3] At its peak – between 2012 and 2013 – ITT Educational Services, Inc. operated 148 ITT Tech campuses (and one training facility) in 38 states and operated online programs in all 50 states (excluding Daniel Webster College).[4] At the time of its closure in September 2016, there were 136 ITT Tech campuses located in 38 states.[5]

Since ITT Tech's closure, the Borrower Defense Unit ("BDU") has received tens of thousands of applications from borrowers that attended ITT Tech. These applications contain allegations of misconduct occurring at ITT Tech campuses nationwide. Of all ITT Tech applications received, the earliest enrollment periods date back to as early as 1981, and the latest enrollment periods date back to the beginning of ITT Tech's closure in 2016.[6]

As of the date of this memorandum, the BDU has discovered a substantial volume of evidence relevant to the borrower defense allegations at ITT Tech campuses nationwide and continues to review this evidence. In particular, the BDU has reviewed evidence in connection with the following sources, among others: (1) Department of Education records and letters submitted to ITT Tech;[7] (2) materials shared by other governmental agencies;[8] (3) information and evidence filed in connection with various other court actions, including federal actions, actions initiated by state attorneys general, as well as private litigation;[9] (4) ITT Tech policies,

---

[1]     ITT Educ. Servs., Inc., Annual Report (Form 10-K), at 2 (Feb. 24, 2006); ITT Educ. Servs., Inc., Annual Report (Form 10-K), at 2 (Mar. 15, 2016).

[2]     ITT Educ. Servs., Inc., Annual Report (Form 10-K), at 2 (Feb. 24, 2006); ITT Educ. Servs., Inc., Annual Report (Form 10-K), at 2 (Mar. 15, 2016).

[3]     *See In re ITT Educational Services, Inc.*, No. 16-07207-JMC-7A (Bankr. S.D. Ind. Sep. 16, 2016). ITT Educational Services, Inc. also operated Daniel Webster College from 2009 until the commencement of bankruptcy proceedings on September 16, 2016. However, for the purposes of this memorandum, students that attended Daniel Webster College during ITT Tech's ownership are excluded. *See* ITT Educ. Servs., Inc., Annual Report (Form 10-K), at 2 (Mar. 15, 2016).

[4]     ITT Educational Services, Inc., Annual Report, (Form 10-K), at 2 (Oct. 16, 2014).

[5]     Press Release, Department of Education, Important Information Regarding ITT Educational Services, Inc., https://studentaid.gov/announcements-events/itt (last visited Mar. 18, 2020).

[6]     *See* CEMS Reports generated by BDU personnel (on file with department).

[7]     *See, e.g.*, Letter from Department of Education Letter to Kevin M. Modany, Chief Executive Officer, ITT Tech, at 1 (Oct. 19, 2015) (on file with department) (Department letter finding ITT Tech noncompliant with Title IV requirements).

[8]     For example, records gathered by the CFPB in connection with its action *Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*, No. 1:14CV00292, 2014 WL 717457 (S.D. Ind. Feb. 26, 2014) (CFPB action alleging that ITT Tech made misrepresentations relating to employment prospects, transferring credits, and program costs, dating back to as early as 2006).

[9]     *See, e.g.*, *Massachusetts v. ITT Educ. Servs., Inc.*, Civ. No. 16-0411 (Mass. Super. Ct. Mar. 31, 2016) (attorney general action alleging that ITT Tech made misrepresentations relating to employment prospects and transferring credits claims, dating back to 2010); *New Mexico v. ITT Educ. Servs., Inc.*, No. D-202-CV-2014-01604 (N.M. Dist. Ct. Feb. 27, 2014) (attorney general action alleging that ITT Tech made misrepresentations relating to

Produced in Response to Interrogatory 17-18, No Bates Number Provided

practices, and controls; (5) ITT Tech marketing materials, contractual agreements, and similar documents that were distributed to all students; (6) internal ITT Tech reviews and audits, including its 'mystery shopper' program; (7) materials provided by legislative committees and other third-party organizations;[10] (8) a statement made by a former employee of ITT Tech to the Department;[11] and (9) ITT Tech government financial filings.[12]

However, none of these investigations and sources extended to a period before January 1, 2005, and, on review, the documentary evidence that BDU has collected does not date prior to 2005. First, the BDU has not uncovered any material former employee testimony by employees hired prior to 2005. Second, the BDU has not found any material internal ITT documents created prior to 2006. Third, the Consumer Financial Protection Bureau's own investigations trace alleged misconduct back to only 2009. Fourth, Department of Education investigations into ITT Tech did not occur until 2014. Fifth, litigation brought by the Massachusetts Attorney General dates alleged misconduct to 2010, while the New Mexico Attorney General alleges that misconduct occurred beginning in June 2009. Sixth, the BDU has been unable to uncover any private litigation alleging misconduct by ITT Tech actionable under the Borrower Defense regulation prior to 2005. Lastly, investigations of ITT Tech tend to trace alleged misconduct to Kevin M. Modany's tenure, which began in April 2005 (Mr. Modany served as President from April 2005 through March 2009 and as Chief Executive Officer from April 2007 through ITT Tech's closure in September 2016).

Accordingly, BDU has been unable to find evidence within the Department, or through other sources, to establish the allegations made by borrowers with enrollment dates beginning prior to January 1, 2005 ("pre-2005 claims"). The BDU's investigation of ITT Tech is ongoing, and the BDU is currently drafting a memorandum that takes a more comprehensive view of ITT Tech's conduct. However, because the BDU is not currently in possession of evidence that would substantiate allegations of misconduct occurring prior to 2005, we recommend that all ITT Tech applications reflecting a pre-2005 enrollment date be adjudicated in accordance with the following standard review protocol: BDU attorneys will individually adjudicate each application by opening each claim and reviewing all allegations made by the borrower and any supporting evidence provided by the borrower. If the borrower has provided evidence sufficient to support their allegations, then the application will be set aside for further review. However, where the borrower provides no evidence, or the evidence provided is insufficient to prove any allegations, denial of

employment prospects transferring credits, and program costs claims, dating back to 2009); *Villalba v. ITT Educ. Servs.*, No. 17-50003 (Bankr. S.D. Ind. Jan. 3, 2017) (private class action alleging that ITT Tech made misrepresentations relating to employment prospects, transferring credits, career services, program costs, and educational services claims, dating back to 2006); *United States ex rel. Lipscomb v. ITT Educ. Servs., Inc.*, No. 3:15-cv-00446-HES-JRK (M.D. Fla. Jan. 15, 2016) (private action by former employee alleging that ITT Tech made misrepresentations, relating to employment prospects, and transferability of credits, dating back to 2011). The BDU has also received evidence from the Iowa Attorney General relating to a multi-state investigation of ITT (on file with department), which includes dozens of interviews of former ITT employees, including Deans, Directors, financial aid staff, recruitment representatives, and registrar personnel.

[10]      For example, the BDU has received evidence from Veterans Education Success ("VES") President Carrie Wofford, including trends of allegations in student complaints submitted to VES (on file with department); *see also* S. Health, Educ., Labor & Pensions Comm., For-Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success 13 (2012) (Senate Committee report finding misconduct by ITT Tech relating to employment prospects, transferring credits, and program costs, dating back to 2006).

[11]      *See, e.g.*, *Statement of Jason Halasa to Department of Education* (2015) (on file with department) (a former campus director provided the Department with a written statement, alleging that ITT Tech made misrepresentations relating to employment prospects, career services, educational services, and other fraudulent activities).

[12]      *See, e.g.*, ITT Educ. Servs., Inc., Annual Report (Form 10-K), at 73 (Mar. 15, 2016).

Produced in Response to Interrogatory 17-18, No Bates Number Provided

the application is appropriate.  If additional evidence is discovered in the future, these pre-2005 claims can be revisited as may be warranted.

Produced in Response to Interrogatory 17-18, No Bates Number Provided

Interrogatory Responses and Related Documents Cited in
Supplemental Complaint, March 19, 2021

**Document 4**

To:   Colleen Nevin
From: John Stephenson and Kaleigh Ward
Date: May 20, 2020
Re:   ITT Technical Institute – Adjudication of Program Cost and Nature of Loan Allegations

### I.      Introduction

Former students of ITT Technical Institute (ITT) have submitted applications to the
Borrower Defense Unit (BDU) alleging a variety of misrepresentations regarding ITT's program
cost and the nature of student loans. BDU finds the evidence in the Department of Education's
(Department) possession is not broadly applicable to ITT borrowers.[1]  Borrowers who allege ITT
misrepresented the cost of their program or the nature of their loans will be individually
adjudicated and reviewed to determine whether the borrower provides sufficient evidence to
warrant an approval.

### II.      Summary of Allegations

BDU sampled 150 applications raising a program cost allegation to identify trends in the
applicant pool. The sampled applications allege that ITT misrepresented (1) how much the
program would cost; (2) the availability of grants; and (3) that a loan was taken out without
permission. Other sampled applications failed to allege a misrepresentation and, instead either
alleged ITT failed to disclose information, or made general complaints about the high cost of
attendance, high interest rates, the number of loans taken out, or provided statements related to
their harm.

### III.      Evidence in the Department's Possession

The Department has reviewed statements from former ITT employees regarding ITT's
program cost and the aid that borrowers received.  These statements discuss that ITT recruiters
created a general urgency to enroll,[2] failed to provide printouts of student ledgers,[3] avoided

---

[1] Allegations regarding ITT's promise of a free laptop upon enrollment will be addressed in a separate memo, which
is currently underway.

[2] Declaration of Jennifer Cody at 1, 3-4, Consumer Financial Protection Bureau v. ITT Education, Inc., No. 1:14-cv-
00292-SEB-TAB (S D. In. Jun. 6, 2016); Declaration of Pearl B. Gardner at 1, 5-6, *Consumer Financial Protection
Bureau v. ITT Education, Inc.*, No. 1:14-cv-00292-SEB-TAB (S D. In. Sept. 22, 2016); *See* Declaration of Rodney
Lipscomb at 3, *Consumer Financial Protection Bureau v. ITT Education, Inc.*, No. 1:14-cv-00292-SEB-TAB (S D.
In. Aug. 17, 2016).

[3] *See* Declaration of Rodney Lipscomb at 2, *Consumer Financial Protection Bureau v. ITT Education, Inc.*, No.
1:14-cv-00292-SEB-TAB (S D. In. Aug. 17, 2016).

Produced in Response to Interrogatory 17-18, No Bates Number Provided

borrowers' questions regarding financial aid,[4] avoided discussions about total program cost,[5] and that ITT allegedly changed its policy regarding ITT's Opportunity Scholarship.[6]

In addition to statements by former employees, the Department has also reviewed internal documents and ITT audit reports.[7]  These reports noted that out of 142 audits conducted, only three statements by recruiters were categorized into the most problematic category.[8]

The Department is not currently aware of any evidence relating to widespread misrepresentation of ITT's program cost or the nature of loans borrowers received.  However, borrower defense applicants may provide evidence to support their individual allegations.

### IV.     Claims Involving False Certification

Borrowers also submitted program cost and nature of loans allegations that ITT representatives signed loan documents in borrowers' names without their knowledge or consent. However, claims involving false certification are not actionable under BD regulations.[9] Therefore, relief should be sought through the appropriate channels and BD approvals are not warranted.[10]

### V.     Conclusion

Borrowers submitted a variety of program cost and nature of loan allegations against ITT. After reviewing the available evidence, BDU finds the evidence is not generally applicable to ITT borrowers.  Therefore, borrowers who allege that ITT misrepresented the cost of their program or the nature of their loans will be individually adjudicated and reviewed to determine

---

[4] Interview with Chris Schuetz, former ITT employee, Lexington, KY (Aug. 26, 2014).

[5] Interview with Amy Destefanis, former Financial Aid Coordinator (August 21, 2014); *see also* Interview with Linda Spohn, former Director of Finance (August 20, 2014); Affidavit of Dawn Lueck at 4, *In re: ITT Educational Services, Inc., et al.*, No. 17-50003, (Bankr. S.D. In. Jan. 3, 2017).

[6] Disclosure Statement, *United States of America ex rel. Rodney Lipscomb v. ITT Educational Service, Inc.*, provided to the United States Department of Justice and the United States Attorney's Office for the Middle District of Florida, (May 4, 2015) (specifically noting that the change in policy was conveyed to him by a student and not through ITT Headquarters).

[7] ITT's Mystery Shopper program, which was run by ITT's Internal Audit Department (though conducted by an independent third-party company), was designed to analyze prospective students' initial experiences with ITT. These mystery shops resulted in written summaries, called "Job Detail Reports".

[8] ITT Educational Services, Inc., *Operations Review Compliance and Internal Audit*, slide 23 (on file with author) (noting, in this ITT compliance presentation, that out of 142 mystery shops conducted, three shops involved Tier I issues guaranteeing shoppers financial aid. This amounted to 2.1 percent of all shops evaluated.).

[9] 34 C.F.R. §685.215

[10] FEDERAL STUDENT AID, https://studentaid.gov/manage-loans/forgiveness-cancellation/false-certification#apply (last visited Apr. 9, 2020). BD will gather evidence related to false certification allegations and will forward it to the appropriate contacts within the Department.

Produced in Response to Interrogatory 17-18, No Bates Number Provided

whether the borrower provides sufficient evidence to warrant an approval.[11]  If additional evidence is discovered in the future, these claims will be revisited as warranted.

---

[11] This analysis may be re-examined upon receipt of additional information or evidence.

Produced in Response to Interrogatory 17-18, No Bates Number Provided

**Interrogatory Responses and Related Documents Cited**

**in Supplemental Complaint, March 19, 2021**

**Document 5**

<u>Memorandum</u>

To:     Colleen Nevin
From:  Serena Anand, Ashley Bykerk, and Daniel Spurlock
Date:   May 20, 2020
Re:     ITT Technical Institute – Adjudication of Educational Services Allegations

## I.      Introduction

This memorandum addresses applications submitted to the Borrower Defense Unit (BDU) that are premised on alleged misrepresentations by ITT Technical Institute (ITT) regarding its provision of educational services. For the reasons stated below, BDU finds that the evidence in the Department of Education's (Department) possession relating to this issue is not broadly applicable to ITT borrowers. Borrowers who allege that ITT misrepresented its educational services will be individually adjudicated and reviewed to determine whether the borrower has provided sufficient evidence to warrant an approval.[1]

## II.     Summary of Allegations

BDU sampled 150 applications raising an educational services allegation to identify trends in the applicant pool. The sampled applications allege that ITT misrepresented (1) that its instructors would be experts in their fields; (2) that ITT courses would be taught using modern technology; (3) that a program would include hands-on training or internships; and (4) that particular certifications would be provided upon completion of a course or program. Other sampled applications failed to allege a misrepresentation and, instead, made general complaints about the availability of classes or programs or about the quality of ITT's instructors, its equipment, or its curricula.

## III.    Evidence in the Department's Possession

BDU reviewed statements of former ITT employees to look for evidence related to possible misrepresentations about ITT's provision of educational services. Although many of the statements are highly critical of ITT, few of the statements relate to ITT's educational services. Those that do fail to identify any actual misrepresentations by ITT; do not relate to the kinds of alleged misrepresentations asserted by applicants; and/or are limited in scope to the few individual campuses where the employees worked.[2]

---

[1] This analysis may be re-examined upon receipt of additional information or evidence.

[2] The employee statements that discuss educational services include (i) the statement of an adjunct professor at the ITT-Everett campus alleging that the campus course catalogue reflected three Bachelor's Degree programs that the campus was not offering and (ii) the statement of a dean at ITT-Tallahassee alleging that recruiters at his campus

1

Produced in Response to Interrogatory 17-18, No Bates Number Provided

Internal ITT records relating to its "mystery shopper" program, which tracked and assessed ITT's recruiters clandestinely as they interacted with actors who they believed to be prospective students, also relate to ITT's educational services.[3] A review of mystery shopper summaries shows that recruiters sometimes made claims amounting to puffery that ITT had the newest technology or offered expert instruction.[4] However, representations like these are inherently vague and subjective, and, regardless, the Department lacks evidence that such representations were false.

BDU also reviewed internal ITT reporting on its students' satisfaction with their classroom experience through surveys that were completed for each course. The results of these surveys were reported to ITT's Board of Directors, and a meeting report from October 2011 indicates "consistent and high student satisfaction over the past five quarters."[5] The report reflects that students gave ratings of 4 out of 5 on average in the categories of course content expectations, textbook and course material satisfaction, lab and other equipment condition, instructor preparedness, and instructor value to my education, in the years 2010-2011.[6]

BDU is not currently aware of any evidence relating to any common or widespread misrepresentation of ITT's educational services.[7] However, borrower defense applicants may provide evidence to support their individual allegations.

## IV.    Conclusion

---

sometimes misrepresented course offerings and trainings. *See* ITT Tech Instructor (Everett Campus) Complaint to Washington State Attorney General and ACICS, May 2016; Attestation of Rodney Lipscomb, filed in *Villalba v. ITT Educational Services, Inc.*, Case No. 17-50003 (U.S. Bankr. S.D. Ind. 2017) (filed as Exhibit 2 to the Declaration of Toby Merrill). [All documents cited in this memorandum are being maintained on file with the author.]

[3] *See generally* ITT Internal Audit Files, Overview of 2011 Mystery Shopper Program. Mystery shoppers working for an independent third-party company would pose as prospective students and would set up interviews with unwitting ITT recruiters, both in person and on the phone. The shopper prepared a written summary of the interaction at the conclusion of each mystery shop, noting if the recruiter made problematic representations about ITT. *Id.*

[4] *See, e.g.*, ITT Compliance and Internal Audit Operations Review, October 6, 2011.

[5] ITT Educational Services, Inc., October 2011 Board Meeting Book, p. 20.

[6] *Id.*

[7] In addition to the evidence summarized herein, BDU also has reviewed evidence in connection with the following sources, among others: (1) Department records and letters submitted to, and received from, ITT; (2) materials shared by other governmental agencies; (3) information and evidence filed in connection with various court actions and investigations, including federal actions, actions initiated by state attorneys general, as well as private litigation; (4) ITT policies, practices, and controls; (5) ITT marketing materials, contractual agreements, and similar documents that were distributed to all students; (6) internal ITT reviews and audits; (7) materials provided by legislative committees and other third-party organizations; (8) a statement made by a former ITT employee to the Department; and (9) ITT government financial filings.

Produced in Response to Interrogatory 17-18, No Bates Number Provided

Borrowers submitted a variety of educational services allegations against ITT. After reviewing the available evidence, BDU finds the evidence is not generally applicable to ITT borrowers.  Therefore, borrowers who allege that ITT misrepresented its educational services will be individually adjudicated and reviewed to determine whether the borrower provides sufficient evidence to warrant an approval.[8] If additional evidence is discovered in the future, these claims will be revisited as warranted.

---

[8] This analysis may be re-examined upon receipt of additional information or evidence.

Produced in Response to Interrogatory 17-18, No Bates Number Provided

**Interrogatory Responses and Related Documents Cited**

**in Supplemental Complaint, March 19, 2021**

**Document 6**

**ITT Technical Institute** – Evidence Considered Protocol

Applicable to:

ITT Technical Institute

Entering Evidence Considered Manually:

1. Open a case with a suggested closing correspondence value of Standard Denial with Evidence Considered in status 3.10.
2. In the "Evidence Considered" field on the case select the following:
   Consumer Financial Protection Bureau (CFPB)
   Evidence obtained by the Department in conjunction with its regular oversight activities
   IA Attorney General's Office
   MA Attorney General's Office
   NM Attorney General's Office
3. In the "Other Evidence" field on the case input the following as separate lines:
   Transcript of Testimony of ITT Tech Recruiter before the National Advisory Council on Institutional Quality and Integrity (NACIQI) (June 23, 2016).
   Materials compiled by ITT Tech's accreditor, the Accrediting Council for Independent Colleges and Schools (ACICS).
   Materials compiled by non-profit group, Veterans Education Success (VES).
   Materials prepared by ITT Educational Services, Inc.
4. The case is now ready to process following the normal borrower notification letter creation process.

Bulk Update Options:

1. Bulk update (by work ticket to Accenture) all ITT Technical Institute cases in 3.10 with the following:

   a. In the "Evidence Considered" dropdown, select:
      Consumer Financial Protection Bureau (CFPB)
      Evidence obtained by the Department in conjunction with its regular oversight activities
      IA Attorney General's Office
      MA Attorney General's Office
      NM Attorney General's Office
   b. In the "Other Evidence" field input as separate lines:
      Materials compiled by non-profit advocacy group, Veterans Education Success (VES)
      Financial documents and other corporate materials prepared by ITT Educational Services, Inc.

2. Process following the normal borrower notification letter creation process.

Produced in Response to Interrogatory 17-18, No Bates Number Provided