JOSEPH JARAMILLO (SBN 178566)
jjarmillo@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, CA 94611
Tel.: (510) 271-8443
Fax: (510) 868-4521

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
MARGARET E. O'GRADY (*pro hac vice*)
mogrady@law.harvard.edu
REBECCA C. ELLIS (*pro hac vice*)
rellis@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, TRESA APODACA, ALICIA DAVIS, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | Case No. 19-cv-03674-WHA<br><br>**PLAINTIFFS' RESPONSE TO COURT'S ORDER DATED JANUARY 27, 2022**<br><br>(Class Action)<br>(Administrative Procedure Act Case) |

1

On January 27, 2022, this Court notified the parties to this action that it had received a letter from a class member. ECF No. 214. The Court instructed "[l]ead counsel from both sides" to "investigate the merits and status of the [borrower] defense claimed by the letter and report in writing thereon to the Court." *Id*. The Court further instructed the parties to "[e]xplain specifically why it is taking so long to act on and resolve these applications." *Id*.

The letter that the Court appended to its January 27 Order was the fourth such letter sent by class members to the Court since November 2021. In each of these four letters, class members explained how their borrower defense applications had languished at the Department of Education ("Department") for years without a response. They questioned why the Department had not taken any action on their applications, even under the scrutiny of this lawsuit.

Counsel for Plaintiffs, quite simply, have the same questions. The Department has not provided a straight answer as to why it continues to delay decisions on tens of thousands of borrower defense applications[1]—many of them from schools for which there is ample public evidence of wrongdoing. *See, e.g.*, Plaintiffs' Response to the Court's Request Regarding Schools with Prior Findings of Fraud, ECF No. 142; Defendants' Response Regarding the Court's Request at the October 1, 2020 Class Hearing, Attachment 1, ECF No. 145-2. The narrow classes of approvals that the Department has announced since June 2021—accounting for less than 14% of unresolved applications[2]—are a drop in the bucket.

---

[1] For publicly available borrower defense data, *see* Borrower Defense to Repayment Loan Forgiveness Data, U.S. Dep't of Educ., https://studentaid.gov/data-center/student/loan-forgiveness/borrower-defense-data (last visited Feb. 23, 2022). The most recent set of this data is appended hereto as <u>Exhibit A</u> (hereinafter "Sept. 2021 BD Data").

[2] This calculation includes as "unresolved" all applications the Department reported as "pending" and "pending notification" as of September 30, 2021, plus 128,361 unlawful form denials. Plaintiffs calculate the number of unlawful form denials by subtracting the number of denials the Department had issued as of September 30, 2019 (the last report before the Department began sending form denial notices) from the total number of denials currently reported. *Compare* Ex. A, Sept. 2021 BD Data (listing 137,438 denied applications), *with* Borrower Defense to Repayment Loan Forgiveness Data – September 2019, https://studentaid.gov/data-center/student/loan-forgiveness/borrower-defense-data (listing 9,077 denied applications).

Also concerning is that the Department's publicly available data indicate that it *has adjudicated*—in other words, has already decided—over 45,000 applications, but has not yet informed applicants of those decisions. *See* Ex. A (Sept. 2021 BD Data). This statistic raises important questions about how these decisions were reached and why the Department is withholding notice of them. The Department has not provided any information about when these decisions were made, what criteria or processes were used to make them, what evidence was consulted, or what schools the borrowers attended.

Plaintiffs endeavor below to respond to the Court's Order to the best of their ability.

## I. THE FOUR CLASS MEMBER CORRESPONDENTS

Although the Court's January 27 Order addressed one specific letter the Court received, Plaintiffs address here all four of the class member letters sent to the Court in recent months. Plaintiffs' counsel have spoken with each class member about their situation. Plaintiffs' counsel also sought information from the Department regarding the status of their applications, including by sending the Department written permission from the class members for the Department to share their borrower defense files with Plaintiffs' counsel. The Department, however, provided just a single document from one applicant's file, which did not reveal the current status of the application.

### A. Tudor Neagu

The letter at issue in the January 27 Order was from Tudor Neagu, who filed an application with the Department asserting school misconduct as a basis for loan cancellation first in February 2016, and then again in 2017, with respect to his student loans from Villanova Law School.[3] Mr. Neagu has received no response to his application.

Mr. Neagu submitted written evidence in support of his application, including findings against Villanova Law School by the American Bar Association. He made that evidence available

---

[3] Mr. Neagu initially characterized his claim as one for false certification/ability to benefit, but it is Mr. Neagu's and counsel's understanding that his application ultimately was accepted and processed by the Department as one for borrower defense.

to the Court and counsel in this case via a link included in his letter to the Court. He also reported in that letter that he, along with others from his law school class, was approached about filing a lawsuit against the school, but they were "afraid to participate on account of the potential repercussions" to their legal careers, so the lawsuit was never filed.

It is counsel's understanding that the Department has reviewed Mr. Neagu's application, sought information from Villanova Law School, and received a response from the school. But, so far as counsel or Mr. Neagu knows, the Department has not taken the final step of determining whether borrower defense is warranted in his case based on the operative regulation. The Department has had more than four years to complete this process, yet neither Mr. Neagu nor Plaintiffs' counsel have any insight into why this application remains pending (or whether it is one of the over 45,000 applications that have been adjudicated with no notice to the applicant).

**B.  Yolande Walker**

Ms. Walker wrote to the Court on January 5, 2022, and the Court subsequently sent copies of her letter to counsel. *See* ECF No. 211. Ms. Walker attended DeVry University. She applied for borrower defense in 2017 and has received no response to her application.

Regarding the merits of Ms. Walker's claim, we know at least that she is far from alone. As of April 2020—the most recent count that Plaintiffs have available based on discovery produced in this case—the Department had received *over 16,000* applications from DeVry University borrowers. *See* CMN Cases By School Owner – Open – 2020 (DOE00003066), appended hereto as Exhibit B. That number is undoubtedly higher now. Some percentage of those borrowers received form denial notices between December 2019 and October 2020. *See, e.g.*, Supplemental Class Action Complaint for Declaratory and Injunctive Relief ¶¶ 379-388, ECF No. 198 (hereinafter "Supp. Compl."). There is no way for Plaintiffs to know whether Ms. Walker's borrower defense application was held for further evaluation at that time, or whether hers is among the over 45,000 applications that the Department has adjudicated without notice to the applicant.

In any case, there is ample evidence of DeVry's wrongdoing in the public record. For example, in 2015, the Department demanded that DeVry substantiate its widely advertised job

placement rate claims, and DeVry admitted it could not.[4] In 2016, the Federal Trade Commission brought a complaint against DeVry for these false advertisements. DeVry settled that complaint for $100 million, and the FTC sent restitution checks to over 173,000 students,[5] including Ms. Walker. *See* Affidavit of Yolande Walker (hereinafter "Walker Aff.") ¶¶ 11-12, appended hereto as Exhibit C. DeVry also settled separate complaints brought by the attorneys general of Massachusetts and New York,[6] and a 2018 report by the Department of Veterans Affairs likewise supported findings of false advertising.[7] In 2020, DeVry settled a private class action suit for nearly $45 million; the class in that case included approximately 323,000 members.[8]

Despite this voluminous record, the Department had not, until February 16, 2022, issued a *single borrower defense grant t*o a DeVry borrower since the inception of the borrower defense

---

[4] *See* Merrit Kennedy, "DeVry University Agrees to Stop Ads Touting Grads' Job Success Without Proof," *NPR* (Oct. 14, 2016), https://www.npr.org/sections/thetwo-way/2016/10/14/497917516/devry-university-agrees-to-stop-ads-touting-grads-job-success-without-evidence.

[5] *See* Press Release, Fed. Trade Comm'n, DeVry University Agrees to $100 Million Settlement with FTC (Dec. 15, 2016), https://www.ftc.gov/news-events/press-releases/2016/12/devry-university-agrees-100-million-settlement-ftc; Bridget Small, "FTC Sends DeVry Refund Checks," *Fed. Trade Comm'n Consumer Information Blog* (July 5, 2017), https://www.consumer.ftc.gov/blog/2017/07/ftc-sends-devry-refund-checks.

[6] *See* Press Release, Office of Mass. Att'y Gen., AG Healey Secures $455,000 in Refunds for Students Deceived by Online For-profit School (July 5, 2017), https://www.mass.gov/news/ag-healey-secures-455000-in-refunds-for-students-deceived-by-online-for-profit-school; Press Release, Office of N.Y. Att'y Gen., A.G. Schneiderman Obtains Settlement With Devry University Providing $2.25 Million in Restitution for New York Graduates Who Were Misled About Employment and Salary Prospects After Graduation (Jan. 31, 2017), https://ag.ny.gov/press-release/2017/ag-schneiderman-obtains-settlement-devry-university-providing-225-million.

[7] *See* Dep't of Veterans' Affairs Office of Inspector Gen., "VA's Oversight of State Approving Agency Program Monitoring for Post-9/11 GI Bill Students" at 12-13 (Dec. 3, 2018), *available at* https://www.va.gov/oig/pubs/VAOIG-16-00862-179.pdf.

[8] *See* Settlement Agreement, *McCormick v. Adtalem Global Educ. Inc.*, No. 2018-CH-04872 (Ill. Cir. Ct. May 10, 2020), *available at* https://www.devryuniversitysettlement.com/home/400/DocumentHandler?docPath=/Documents/2020_05_11_McCormick_DeVry_Settlement_AgreementB.pdf.

5

program in 2015. Just eight days ago, the Department announced its first set of DeVry approvals—to 1,800 borrowers, or approximately 1% of the number of people who received refund checks under the FTC's settlement.[9] Ms. Walker has not received notice that her application is among this small number of approvals. *See* Ex. C, Walker Aff. ¶ 21.

Based on the available evidence, Plaintiffs believe Ms. Walker is eligible for borrower defense relief. Plaintiffs can offer no explanation for why her application has not been granted yet. Plaintiffs cannot discern any reason why the Department would have marked her application for denial, but if it has, the Department has not disclosed any reasoned basis for denying Ms. Walker's (or any other DeVry borrower's) application.

### C. Joseph Mallon

Mr. Mallon wrote to the Court on December 10, 2021; copies of his letter were sent to counsel along with Ms. Walker's. *See* ECF No. 211. Mr. Mallon attended the University of Phoenix. He applied for borrower defense in 2017 but has yet to receive any response to his application.

As of April 2020, the Department had received *over 21,000* applications from University of Phoenix borrowers. *See* Ex. B. Again, that number has undoubtedly increased in the nearly two years since. As with DeVry, some percentage of those borrowers received form denial notices between December 2019 and October 2020. And, just as with Ms. Walker, there is no way for Plaintiffs to know whether Mr. Mallon's borrower defense application was held for further evaluation or has been denied without notice to Mr. Mallon.

University of Phoenix has engaged in widespread and widely reported misconduct. For example, the Federal Trade Commission brought a complaint against the school in 2019 alleging

---

[9] *See* Press Release, U.S. Dep't of Educ., Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-former-devry-university-students.

that it falsely advertised, among other things, employment partnerships with major companies. The university settled that complaint for $191 million—a record at the time—which included $50 million in direct payments to former students and $141 million in private loan cancellation.[10] The FTC distributed the payments to 147,000 students.[11] The University of Phoenix has also been investigated by the attorneys general of California, Delaware, Florida, and Massachusetts, and by the Department of Education's own Office of the Inspector General.[12] In 2009, the university settled a False Claims Act case related to its recruiting practices for $67.5 million.[13] In 2020, the Department of Veterans Affairs announced its intention to suspend GI Bill enrollments at University of Phoenix (among other for-profit schools) because of its deceptive advertising, sales, and enrollment practices.[14]

Despite these and other facts, the Department has not, to Plaintiffs' knowledge, issued a *single borrower defense grant* to a University of Phoenix borrower from 2015 through the present.

Based on the available evidence, Plaintiffs believe Mr. Mallon is eligible for borrower defense relief. Just as with Ms. Walker, if the Department has classified Mr. Mallon's application

---

[10] *See* Press Release, Fed. Trade Comm'n, FTC Obtains Record $191 Million Settlement from University of Phoenix to Resolve FTC Charges It Used Deceptive Advertising to Attract Prospective Students (Dec. 10, 2019), https://www.ftc.gov/news-events/press-releases/2019/12/ftc-obtains-record-191-million-settlement-university-phoenix.

[11] *See* Leslie Fair, "$50 Million in Refund Checks for University of Phoenix Students," *Fed. Trade Comm'n Business Blog* (Mar. 24, 2021), https://www.ftc.gov/news-events/blogs/business-blog/2021/03/50-million-refund-checks-university-phoenix-students.

[12] *See* David Halperin, "Law Enforcement Investigations and Actions Regarding For-Profit Colleges," *Republic Report*, https://www.republicreport.org/2014/law-enforcement-for-profit-colleges/ (last updated Jan. 20, 2022).

[13] *See* Press Release, U.S. Dep't of Justice, University of Phoenix Settles False Claims Act Lawsuit for $67.5 Million (Dec. 15, 2009), https://www.justice.gov/opa/pr/university-phoenix-settles-false-claims-act-lawsuit-675-million.

[14] *See* Press Release, U.S. Dep't of Veterans Affairs, VA Intends to Suspend Enrollment of New GI Bill Students at University of Phoenix, Career Education Corporation, Bellevue University and Temple University (Mar. 9, 2020), https://www.va.gov/opa/pressrel/pressrelease.cfm?id=5399. The VA later reversed this decision, however, concluding that the schools had taken sufficient corrective action. *See* "VA's Resolution of [§]3696 Violations by 5 Schools," *Veterans Education Success* (July 2, 2020), https://vetsedsuccess.org/vas-resolution-of-3696-violations-by-5-schools/.

as potentially eligible for relief, Plaintiffs cannot explain why it has not been granted yet; and if the Department has marked Mr. Mallon's or any other University of Phoenix borrower's application for denial, it has not provided a reasoned basis for doing so.

### D. Steven Sullwold

Mr. Sullwold wrote to the Court in November 2021. *See* ECF No. 210. Per the Court's instructions, Plaintiffs reviewed Mr. Sullwold's letter *in camera* on December 2, 2021. Mr. Sullwold later sent the text of the letter via email to Plaintiffs' counsel. Mr. Sullwold borrowed federal student loans on behalf of his son, who attended Collins College (a Career Education Corp. school) in 2003-2004. Mr. Sullwold applied for borrower defense in 2016 and received a form denial notice in 2020. Mr. Sullwold has filed for reconsideration of that denial.

The Department's failure to either withdraw the form denial notice and adjudicate Mr. Sullwold's initial application or act on Mr. Sullwold's reconsideration application is, once again, wholly inexplicable. As of April 2020, the Department had received *over 12,000* applications from Career Education Corp. ("CEC") borrowers, including over 250 applications from Collins College. *See* Ex. B. Yet between December 2019 and October 2020, the Department denied a wide swath of these applications using its unlawful form denial notices, pursuant to a policy that excluded from relief any applicant whose loans dated from before January 1, 2008 or after January 1, 2013. *See* Supp. Compl. Exs. 29-30, ECF No. 198-7 (DOE00009550; DOE00009552). Plaintiffs believe that Mr. Sullwold's application was denied under this policy.

As Plaintiffs have detailed in their Supplemental Complaint, this policy was arbitrary and capricious, and resulted from an unlawful process that denied applicants their rights under the Administrative Procedure Act and the Due Process Clause. *See* Supp. Compl. ¶¶ 359-366; *see generally id.* ¶¶ 196-236, 258-288. At the time the Department instituted its policy of denying these CEC applications, there was evidence readily and publicly available demonstrating that its conclusion was inaccurate. For example, in 2019, CEC entered into an Assurance of Voluntary Compliance with 48 states and the District of Columbia—led by Mr. Sullwold's home state of Texas—that addressed CEC's alleged violations of state laws regarding its recruitment and

enrollment practices, including misrepresentations regarding the costs of enrollment, transferability of credits, program offerings, employment prospects, and job placement rates.[15] Among other provisions, the Assurance of Voluntary Compliance required CEC to forego collection on nearly $500 million in student debts, including for students who enrolled both before January 1, 2008 and after January 1, 2013.[16] In short, the Department's policy of rejecting CEC applications, including Mr. Sullwold's, rested on the flimsiest of pretenses.

The Department has come under new leadership since these CEC denials were issued, and in some cases it has disclaimed the unlawful policies of its predecessor.[17] Yet it has not announced any policy changes with respect to borrower defense applications from CEC borrowers, nor with respect to any borrower defense applications (from any school) that were subjected to the unlawful policies that resulted in mass denials.

The Department has likewise given no indication of the processes or timeline it will follow to adjudicate the reconsideration applications of borrowers like Mr. Sullwold. Plaintiffs have requested, but Defendants have thus far refused to provide, any information about how the reconsideration process is organized, what standards the Department is applying on reconsideration, and whether the Department has granted (or denied) any reconsideration application since the change in administration.

Based on the available evidence, Plaintiffs believe Mr. Sullwold is eligible for borrower defense relief. His denial should be vacated, and his application should be granted. Plaintiffs

---

[15] *See* Assurance of Voluntary Compliance, *In re State of Texas & Career Educ. Corp.*, No. D-1-GN-19-000017 (Tex. Dist. Ct. Travis Cty., 353d Jud. Dist., Jan. 2, 2019), *available at* https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2019/Press/FINAL%20CEC%20AVC%20attached%20to%20Petition%20wCauseNo.pdf.

[16] For further evidence regarding CEC's wrongdoing, *see* sources cited in Supp. Compl. ¶¶ 362-364.

[17] *See, e.g.*, Press Release, U.S. Dep't of Educ., Department of Education Announces Action to Streamline Borrower Defense Relief Process (Mar. 18, 2021), https://www.ed.gov/news/press-releases/department-education-announces-action-streamline-borrower-defense-relief-process (rescinding partial relief methodology for approved borrower defense claims).

cannot offer any explanation for why the Department has not yet taken action to correct unlawful denials like Mr. Sullwold's that were issued by the previous administration.

## II.   THE ENTIRE CLASS

The four class members who wrote to the Court provide a clear and poignant window into the situations of more than 260,000 borrowers who currently have unresolved borrower defense applications before the Department.

### A.   The Current Extent of the Backlog

The Department's publicly available data report that, as of September 30, 2021, there were 87,747 pending borrower defense applications. *See* Ex. A (Sept. 2021 BD Data). Notably, this is *more* pending applications than there were as of the last month of the prior administration. *See* Borrower Defense to Repayment Loan Forgiveness Data – January 2021, https://studentaid.gov/data-center/student/loan-forgiveness/borrower-defense-data.

The Department's count of "pending" applications does not, however, include the approximately 128,000 borrowers who received form denial notices between December 2019 and October 2020. As Plaintiffs have alleged in this case, the manner of adjudication and the form of notification for these applications did not meet the minimum standards of due process and the Administrative Procedure Act. *See* Supp. Compl. ¶¶ 436-439. These applications cannot, therefore, be considered lawfully resolved.

Finally, as of September 2021, the Department reported that 45,782 borrower defense applications were "adjudicated" but "pending notification." *See* Ex. A. Plaintiffs have sought information from the Department to explain whether these decisions are approvals or denials, the bases on which they were decided (*i.e.*, under old protocols or not), and the reasons for withholding notice of these decisions from the applicants. The Department has, as of this writing, refused to provide that information. Regardless, from the perspective of borrowers, their applications are not resolved if they have not received notice of a decision from the Department.

In total, these three categories add up to more than 260,000 borrowers who are still waiting for a lawful decision on their borrower defense applications. That number grows every day.

This number might be larger still if the Department had not erected additional barriers to the submission of a borrower defense application. Specifically, the Department's online portal to apply for borrower defense has, since at least September 2021, been displaying confusing pop-up messages that discourage applicants from completing their borrower defense applications. Plaintiffs' counsel became aware of this problem when class member Dominic Bendijo contacted counsel. Mr. Bendijo, a borrower from Brooks Institute (a CEC school), explained that when he tried to apply for borrower defense in September 2021, a message appeared on the screen that read: "Because you graduated or withdrew from your school more than three years ago, you are unable to apply for reconsideration." *See* Affidavit of Dominic Bendijo ¶ 8, appended hereto as Exhibit D. But Mr. Bendijo had not applied for reconsideration—this was his first attempt to file for borrower defense. *Id.* ¶¶ 7, 9. The message left him confused about the status of his application. *Id.* ¶ 10.

A similar situation arose when class member Andra Hatchell, a University of Phoenix borrower, attempted to submit a borrower defense application in February 2022. Ms. Hatchell received a pop-up message that read: "It looks like you may not meet the statute of limitations for this case." *See* Affidavit of Andra Hatchell ¶ 17, appended hereto as Exhibit E. Ms. Hatchell did not understand this message and thought that it meant she could not continue her application for borrower defense. *Id.* ¶ 18. Several days later, after speaking with Plaintiffs' counsel about the problem, Ms. Hatchell tried again to apply for borrower defense; this time she was able to complete her application, although the confusing pop-up message remained on the screen the entire time. *Id.* ¶ 19. Because of this pop-up and other difficulties with the borrower defense website, Ms. Hatchell is confused and frustrated by the borrower defense process, and fears that she will have her Social Security garnished before the Department resolves her application. *Id.* ¶¶ 20-23.

Plaintiffs requested information from the Department about these messages, including why the messages were being displayed, when the messages are typically displayed, and whether an application for borrower defense will be accepted/processed after the applicant sees this message. These messages are particularly concerning because it had been Plaintiffs' understanding that the

11

Department had not been applying any statute of limitations to deny borrower defense claims on the basis of timing. The Department, however, has not yet answered any of counsel's questions about these messages.

### B. The Reasons for the Delay

This litigation is ***not*** the cause for the Department's failure to resolve borrower defense applications lawfully and within a reasonable period of time. The Department is free at any time to approve borrower defense applications on an individual or group basis. Indeed, as discussed below, the Department has done just that three times over the past year. The Department is also free to, and indeed has an obligation to, give updates on the status of applications to the borrowers who submitted them. The only thing that the Department cannot do during the pendency of this litigation—by the Department's own voluntary agreement—is issue any more form denial letters to class members or enforce previously issued form denials against borrowers. *See* Defendants' Response to October 19, 2020 Order to Show Cause at 2-3, ECF No. 150.

The Department, however, has been giving class members false or misleading information about this simple fact. For example, Ms. Walker reported in her letter to the Court that when she called the Department's borrower defense hotline in December 2021, she was told that "as long as [the *Sweet* litigation] remains open and unresolved, Borrower Defense cannot review, work or give any type of updates until it's settled." This message was especially confusing to Ms. Walker given that during two previous phone calls with the borrower defense hotline, in January 2020 and July 2020, Ms. Walker had been told that her application was under review. *See* Ex. C, Walker Aff. ¶¶ 15-17. When she was told that this litigation was the cause of the delay, she was understandably enraged. *Id.* ¶ 19. But of course, the Department's statement was categorically false.

As another example, class member Sydney Andrade, an Art Institute borrower, applied for borrower defense in 2016 and received a form denial notice in August 2020. *See* Affidavit of Sydney Andrade ¶¶ 5-6, appended hereto as <u>Exhibit F</u>. Mr. Andrade contacted the Department on February 21, 2022, requesting that the Department re-open his case. *Id.* ¶ 7 & Exhibit A. He received a form response on February 23, 2022, which included, in bold type: "Your claim will

not be re-evaluated unless the court orders re-evaluations when Sweet v Cardona is decided. While the court case is pending a decision, your case will remain closed, unless you submit a request for reconsideration. While the case is pending, your loans do remain in the court ordered forbearance." *Id.* ¶¶ 8-9 & Exhibit B. Again, this statement provides borrowers with false information by telling them that the *Sweet* lawsuit prevents the Department from re-examining previously issued form denials. It does not.

Rather, the backlog is growing because the Department apparently lacks a lawful process to evaluate and resolve borrower defense applications within a reasonable timeframe. In the context of a persistent and growing backlog, the Department's limited borrower defense approvals since June 2021—including its surprise announcement of new grants just over a week ago, under the shadow of this status update—are mere drops in the bucket.

Since the parties last briefed the Court, the Department has approved the following tranches of borrower defense applications:

- June 2021: 18,000 applications from ITT Technical Institute.[18]
- July 2021: 1,800 applications from a combination of Westwood College, Marinello Schools of Beauty, and the Court Reporting Institute.[19]
- February 2022[20]:
    - 1,800 applications from DeVry University;

---

[18] *See* Press Release, U.S. Dep't of Educ., Department of Education Announces Approval of New Categories of Borrower Defense Claims Totaling $500 Million in Loan Relief to 18,000 Borrowers (June 16, 2021), https://www.ed.gov/news/press-releases/department-education-announces-approval-new-categories-borrower-defense-claims-totaling-500-million-loan-relief-18000-borrowers.

[19] *See* Press Release, U.S. Dep't of Educ., Department of Education Approves Borrower Defense Claims Related to Three Additional Institutions (July 9, 2021), https://www.ed.gov/news/press-releases/department-education-approves-borrower-defense-claims-related-three-additional-institutions.

[20] *See* Press Release (Feb. 16, 2022), *supra* n.9.

13

- o 1,600 applications from Westwood College;
- o 130 applications from ITT's Breckenridge School of Nursing;
- o 270 applications from Minnesota School of Business/Globe University[21]; and
- o 11,900 applications from a combination of schools based on earlier findings against them, including Corinthian Colleges, ITT Technical Institute, Marinello Schools of Beauty, Westwood College, and Court Reporting Institute.

These resolutions represent less than 14% of unresolved applications.[22] While Plaintiffs certainly welcome any action by the Department that provides full borrower defense relief to class members, the above cannot be considered anything approaching a fulsome, transparent borrower defense process. For one thing, each of the Department's decisions has limited borrower defense approvals to applicants who made allegations of specific misstatements during specific periods of time—even if the evidence indicates that the institution's misconduct was wide-ranging and widespread. For another, none of the Department's approval decisions have arrived with an explanation of why the Department chose to take action on that class of applicants at that time. Although the Department characterizes these as "new" findings against the schools,[23] its decisions

---

[21] Another 921 students from this school group received borrower defense discharges separately as part of the school's bankruptcy settlement. *See id.*

[22] The Department has not publicly stated whether borrower defense applicants who previously received unlawful form denial notices will receive relief under the approval "findings" it announced in 2021 and 2022. In other words, if a borrower—for example—attended Westwood College, and made borrower defense allegations of the sort described in the Department's July 2021 press release, but had her application denied in the 2020 form denial wave, will that borrower now have her denial rescinded and her application granted pursuant to the July 2021 findings? Plaintiffs have posed this precise question to the Department, but have not received an answer. The notice that Mr. Andrade received implies, however, that the answer is no. *See* Ex. F, Andrade Aff. ¶¶ 8-9 & Exhibit B.

[23] *See, e.g.*, Press Release (Feb. 16, 2022), *supra* n.9 (describing discharges as "following the approval of four new findings").

have uniformly been based on conduct that has been in the public record for years. At least some of the criteria for the June 2021 ITT approvals had been drafted by the Department in *January 2017*, only to be put into effect more than four years later.[24] As detailed above, DeVry settled its FTC suit in 2016 and has been paying settlements on that conduct ever since.

Nor has the Department set a timeline for when it expects to issue decisions relating to any other schools or school groups, or to other applicants within the school groups that have seen some discharges. This lack of a roadmap for borrowers or the public includes, but is certainly not limited to, the school groups that represent the majority of pending and unlawfully denied borrower defense claims (among them DeVry, CEC, and the University of Phoenix).[25]

The Department likewise has not set out any policies governing how long an individual borrower defense applicant can expect to wait until they get a decision on their application. To the contrary, as demonstrated by the class members who wrote to the Court, applications that have languished for *four years* or more do not appear to be getting priority in the decision-making queue. The Department also has not issued any new guidelines that could help borrowers discern what kinds of allegations or evidence will be considered by the Department to support an approval decision.

In short, Plaintiffs cannot offer any coherent explanation for "why it is taking so long to act on and resolve these applications." ECF No. 214.

---

[24] *See* Supp. Compl. Ex. 26, ECF No. 198-7 (DOE00009399) (memorandum dated January 10, 2017, recommending the Department grant borrower defense relief to ITT borrowers alleging misrepresentations about employment prospects).

[25] Other school groups with significant representation among unresolved claims include such infamous for-profit players as Corinthian Colleges, Kaplan, EDMC, Dream Center Education Holdings, Bridgepoint Education, Infilaw Holdings, and Vatterot Education. *See* Ex. B (DOE00003066). Further, even after two sets of approvals for ITT borrowers, Plaintiffs estimate that there are over 7,000 ITT applications still pending or unlawfully denied. *See id.* (as of April 2020, Department had received 30,874 applications from ITT borrowers).

Dated: February 24, 2022

Respectfully submitted,

/s/    Rebecca C. Ellis

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
MARGARET E. O'GRADY (*pro hac vice*)
mogrady@law.harvard.edu
REBECCA C. ELLIS (*pro hac vice*)
rellis@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

JOSEPH JARAMILLO (SBN 178566)
jjarmillo@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, CA 94611
Tel.: (510) 271-8443
Fax: (510) 868-4521

*Attorneys for Plaintiffs*