BRIAN D. NETTER
Deputy Assistant Attorney General
STEPHANIE HINDS
United States Attorney
MARCIA BERMAN
Assistant Branch Director
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION<br><br>Defendants. | No. 3:19-cv-03674-WHA<br><br>**DEFENDANTS' RESPONSE TO JANUARY 27, 2022 ORDER** |

Defendants respectfully submit the following response to the Court's January 27, 2022 Order (ECF No. 214).

Merits and Status of Tudor Neagu's Borrower Defense Application

In its January 27 Order, the Court appended a letter that class member Tudor Neagu sent directly to the Court, "urg[ing]" it to "continue its good work and to see this case through to the end." ECF No. 214-1 at 1. The Court ordered "[l]ead counsel from both sides" to "investigate the merits and status" of Mr. Neagu's borrower defense application and "report in writing thereon to the Court." ECF No. 214.

1    Mr. Neagu submitted his borrower defense application on July 6, 2017.[1]  That application

2    contains allegations against Villanova University Law School ("Villanova"), which Mr. Neagu

3    attended between 2007 and 2010.   Mr. Neagu's application is currently pending, and the

4    Department of Education ("Department") has not yet made a determination regarding whether it

5    will be approved or denied.   In response to the Court's Order, however, the Department has

6    conducted a preliminary assessment of the merits of Mr. Neagu's application and provides the

7    following information for the specific purpose of responding to the Court's Order.

8    Because Mr. Neagu's relevant federal loans were disbursed prior to July 1, 2017, his

9    application is subject to the borrower defense standard set forth at 34 C.F.R. § 685.206(c)(1),

10   which requires an applicant to establish an "act or omission of the school attended by the student"

11   that (1) "relates to the making of the loan for enrollment at the school or the provision of

12   educational services for which the loan was provided"; and (2) "would give rise to a cause of action

13   against the school under applicable State law."   Based on Mr. Neagu's attendance at Villanova,

14   the state law applicable to his case is Pennsylvania.   Pennsylvania consumer protection law

15   provides a cause of action for an individual who can establish that: "(1) they purchased or leased

16   goods or services primarily for a personal, family, or household purpose; (2) they suffered an

17   ascertainable loss of money or property; (3) the loss occurred as a result of the use or employment

18   by a vendor of a method, act, or practice declared unlawful by the [Pennsylvania consumer

19   protection statute]; and (4) the consumer justifiably relied upon the unfair or deceptive business

20   practice when making the purchasing decision."  *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637,

21   646 (Pa. 2021) (citing 73 P.S. § 201-9.2(a)) (internal quotation marks omitted); *see also Hunt v.*

---

[1] In his letter to the Court, Mr. Neagu states that he submitted his "first borrower defense application" to the borrower defense program on February 10, 2016.  ECF No. 214-1 at 2.   Mr. Neagu's February 10, 2016 application was not a borrower defense application.  It was, according to Mr. Neagu's description, an application requesting a discharge based on false certification/ability to benefit.  Such discharges are requested pursuant to, and are based on, criteria in 34 C.F.R. § 685.215, which are different from the criteria in the borrower defense regulations contained in 34 C.F.R. §§ 685.206 and 685.222.  According to Mr. Neagu's letter to the Court, he submitted his February 10, 2016 application to his loan servicer, FedLoan Servicing.  The Department notes, however, that the factual predicate of a false certification/ability to benefit claim is that a borrower does not have a high school diploma.  *See* 34 C.F.R. § 685.215.  Mr. Neagu acknowledges in his July 6, 2017 borrower defense application that he has a high school diploma.

*U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008) (noting that the Pennsylvania Supreme Court has consistently interpreted the state consumer protection law to "demand a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm").

The Department has not reached any findings of widespread or systemic misconduct at Villanova.  As discussed below, the Department is aware of the American Bar Association's ("ABA") conclusion that Villanova reported inaccurate information regarding the grade point averages and LSAT scores of incoming students.  But the Department has not reached any findings regarding whether those misstatements are sufficient, as a matter of Pennsylvania law, to support the approval of Mr. Neagu's (or anyone else's) borrower defense claim.  The Department also notes that it has received only seventeen total borrower defense applications alleging misconduct at Villanova.  This is in contrast to the situation at several other schools—such as Corinthian, ITT Tech, or DeVry University—regarding each of which the Department has received thousands or tens of thousands of borrower defense applications and voluminous evidence of misconduct, often from state enforcement officials or other federal agencies.  The Department's consideration of Mr. Neagu's application is thus based primarily on the materials that Mr. Neagu himself submitted, which he explained in his letter to the Court he made available in a Dropbox link "for whomever wants to review them."  ECF No. 214-1 at 2 n.1.

Mr. Neagu alleges that Villanova reported inaccurate job placement rates, falsified its graduate salary data, and falsified admissions data.  In support of these claims, Mr. Neagu submitted certain documentary evidence.  This included a draft class action complaint from 2011, which alleged that Villanova disseminated inaccurate information about the salary of its graduates and the rates at which its graduates obtained employment.  The complaint was never filed and there has not been any judicial determination that Villanova engaged in any misconduct.  Mr. Neagu also submitted a letter and findings (dated August 12, 2011) from the ABA, which censured Villanova (but did not revoke or suspend its accreditation) based on its reporting of inaccurate admissions data between 2002 and 2010, specifically data relating to undergraduate GPA and LSAT scores.  The ABA letter notes that as part of its remediation efforts, Villanova investigated

1  whether any other data (aside from its admissions data) had been inaccurately reported, and found

2  no misreporting of financial or placement data.

3        On August 6, 2021, Villanova submitted a response to Mr. Neagu's allegations, including

4  various arguments and evidence in support of Villanova's position that Mr. Neagu has not

5  established his entitlement to borrower defense relief.  The response includes information about

6  Mr. Neagu's academic performance at Villanova, his employment in the legal profession, and the

7  causal connection between Villanova's actions and his ability to secure employment.

8        As noted above, Mr. Neagu's application is currently pending and the Department has not

9  completed its assessment of the various materials in support of and opposition to that application.

10  The resolution of Mr. Neagu's application as a borrower defense claim is not a straightforward

11  task and will involve a complex weighing of multiple competing factors, including the extent to

12  which (if at all) the available evidence establishes that Villanova engaged in actionable

13  misconduct, and the extent to which (if at all) Mr. Neagu relied upon and was harmed by the

14  alleged misrepresentations.

15              Statement Regarding Adjudication of Borrower Defense Applications More Generally

16        The Court also ordered the Department to "[e]xplain specifically why it is taking so long

17  to act on and resolve these applications."  ECF No. 214.  As the Court is aware, the volume of

18  applications at issue in this case is very large, and the resolution of such applications is a time-

19  consuming process.  Last year, the Department received approximately 100,000 new borrower

20  defense claims, approved approximately 20,000 claims, and provided full relief for another 72,000

21  claims.  The class and proposed sub-class in this case currently consist of more than 250,000

22  borrowers, a number that fluctuates every day—decreasing as the Department continues to approve

23  claims, but increasing due to new applications, especially in response to each announcement of

24  new approved findings.  A large number of these applications come from a relatively small number

25  of schools, and the Borrower Defense Group ("BDG")—the Department component responsible

26  for reviewing and adjudicating borrower defense applications—has prioritized applications

27  relating to these "high-volume" schools for which BDG has already obtained outside evidence.

28  As the Department has previously reported, this approach has led to the approval of more than

1  20,000 claims for class members over the first year of the current presidential administration.  *See*

2  ECF No. 213.  And just last week, the Department announced new findings that will result in the

3  approval of nearly 16,000 additional claims, including at least 1,800 claims submitted by former

4  DeVry University students[2] (one of the "high-volume" schools on which BDG has focused).

5         BDG's adjudication of applications relating to these "high-volume" schools is based on the

6  review of thousands of pages of documentary evidence and extensive work developing

7  adjudication criteria and standards to determine which applications should be approved based on

8  that evidence.   The Department, like any government agency, does not possess unlimited

9  resources, and the same individuals performing this work must also necessarily perform the work

10  of reviewing and adjudicating all pending borrower defense applications, including applications

11  from schools—such as Villanova—for which there are a comparatively small number of

12  applications.  Applications like Mr. Neagu's cannot be streamlined in the same way as applications

13  submitted by students who attended the "high-volume" schools, and will require a complex

14  individualized analysis, as described above.  As BDG continues to resolve the large number of

15  claims that have been submitted based on the misconduct of the "high volume" schools, it will

16  move as quickly as possible to resolve applications submitted by students from additional schools

17  and to give applications submitted by borrowers like Tudor Neagu the consideration they deserve.

18         At this time, there is no need for the Court to take any further action on the basis of this

19  class member's letter.  The parties are currently exploring a comprehensive settlement that would

20  (if finalized) provide for the resolution of all class member claims, including Mr. Neagu's claim,

21  and intend to submit any such final agreement that they are able to reach for the Court's

22  preliminary approval by April 8, 2022.  *See* ECF Nos. 213, 216.  And the Court has now set a

23  schedule for timely resolution of this case, pursuant to which summary judgment motions will be

24  fully briefed by May 19, 2022 and a bench trial is set for July 18, 2022.  *See* ECF Nos. 216, 219.

25  While that process plays out, and regardless of the ultimate outcome of this litigation, the

26

27

_____

28  [2] *See* https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-former-devry-university-students.

1   Department will continue to work diligently to collect evidence, review pending applications, and

2   issue decisions.[3]

3   Dated:  February 24, 2022                    Respectfully submitted,

4                                                BRIAN D. NETTER
                                                 Deputy Assistant Attorney General
5
                                                 MARCIA BERMAN
6                                                Assistant Branch Director

7                                                */s/ R. Charlie Merritt*
                                                 R. CHARLIE MERRITT (VA Bar # 89400)
8                                                Trial Attorney
                                                 U.S. Department of Justice
9                                                Civil Division, Federal Programs Branch
                                                 1100 L Street NW
10                                               Washington, DC 20005
                                                 Telephone: (202) 616-8098
11                                               E-mail: robert.c.merritt@usdoj.gov

12                                               *Attorneys for Defendants*

13

14

15

16

17

18

19

20

21   _____

22   [3] Plaintiffs filed a 15-page response to the Court's Order earlier this afternoon, setting forth several
     concerns about the Department's general administration of the borrower defense process. *See* ECF
23   No. 220.  The Department does not endeavor to respond here to that filing, which significantly
     exceeds the scope of the Court's request, and of the case more generally. *See Lujan v. Nat'l*
24   *Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (a plaintiff "cannot seek *wholesale* improvement of [a
     federal government] program by court decree, rather than in the offices of the Department or the
25   halls of Congress").  Defendants note, however, that Plaintiffs have raised several of these issues
     with the Department in various communications over the past few months (notwithstanding the
26   fact that, as the Court recently recognized, discovery has long since concluded in this case).  Where
     possible—and to the extent Plaintiffs' inquiries have had a nexus to the pending litigation—
27   undersigned counsel and Department personnel have endeavored, among their many obligations,
     to respond, including in writing.  The Department is already researching certain of these questions
28   and intends to provide an appropriate response to Plaintiffs in due course.