BRIAN D. NETTER
Deputy Assistant Attorney General
STEPHANIE HINDS
United States Attorney
MARCIA BERMAN
Assistant Branch Director
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
REBECCA C. ELLIS (*pro hac vice*)
rellis@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, California 94611
Tel.: (510) 271-8443
Fax: (510) 868-4521

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and <br><br> THE UNITED STATES DEPARTMENT OF EDUCATION, <br><br> *Defendants*. | Case No. 19-cv-03674-WHA <br><br> **NOTICE OF MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND DIRECT NOTICE TO CLASS** <br><br> **HEARING DATE: July 28, 2022** <br><br> (Class Action) <br> (Administrative Procedure Act Case) |

# TABLE OF CONTENTS

NOTICE OF MOTION................................................................................................. 1

RELIEF REQUESTED.............................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.     Introduction .................................................................................................. 1

II.    Background And Procedural History ............................................................ 4

III.   Summary of Settlement Agreement Terms ................................................... 8

    A.    Settlement Class.................................................................................... 8

    B.    Relief.................................................................................................... 8

    C.    Dismissal; Waiver; Continued Jurisdiction of the Court ..................... 11

    D.    Breach ................................................................................................. 11

IV.    The Settlement Agreement Merits Preliminary Approval ............................. 12

    A.    Named Plaintiffs and Their Counsel Adequately Represented the Class ................... 13

    B.    Parties Negotiated at Arm's Length...................................................... 14

    C.    The Quality of the Relief to the Class Weighs in Favor of Approval....................... 15

    D.    Continued Litigation Would Entail Additional Delay, Risk, and Cost....................... 16

    E.    The Parties Reserve Attorneys' Fees for the Court .................................................. 17

    F.    This Agreement Is the Only Agreement the Parties Have with Each Other.............. 17

    G.    The Agreement Treats All Class Members Fairly .................................................... 17

V.     The Court Should Approve the Class Notice and Notice Plan Under Rule 23(e)(1)..... 18

CONCLUSION................................................................................................... 19

1

## TABLE OF AUTHORITIES

2

3 *Cases*

4 *Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981)........................................................................ 15

5 *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010)............................... 16

6 *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992)............................................... 12

7 *Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881 (N.D.

8 Cal. 2020).................................................................................................................................... 14

9 *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).................................. 14

10 *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019)........................................ 15

11 *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)………………………… 16

12 *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)................................... 17

13 *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2019 WL

14 343472 (N.D. Cal. Jan. 28, 2019) .......................................................................................... 14, 15

15

16 *Rules*

17 Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment)................................. 17

18 Fed. R. Civ. P. 23(e)(2)........................................................................................................ *passim*

19

20 *Treatises*

21 4 Newberg on Class Actions § 13:45 (5th ed.)............................................................................ 14

22

23

24

25

26

27

28

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on July 28, 2022, at 8:00 a.m., or on a date selected by the Court, in the courtroom of the Honorable William Alsup, Courtroom 12, 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Parties will and hereby do respectfully move the Court for an order preliminarily approving the proposed class action settlement and directing notice of settlement to be given to Class Members. This Motion is supported by the accompanying memorandum of points and authorities, the attached declarations and exhibits, the pleadings and other papers filed in this case, oral argument, and any other matters in the record or of which this Court takes notice.

## RELIEF REQUESTED

Through this motion, the Parties request an order:

1) Granting preliminary approval of the proposed class action Settlement Agreement, attached hereto as Exhibit 1;

2) Granting approval of the proposed Class Notice, attached to the Settlement Agreement as Exhibit A, and directing provision of notice to Class Members; and

3) Scheduling a fairness hearing to consider final approval of the Settlement Agreement.

\* \* \*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

After protracted litigation and settlement negotiations, the Parties have reached an agreement that would fully resolve the claims asserted in this class action through settlement. The Parties present the negotiated proposed Settlement Agreement ("Agreement"), attached as Exhibit 1 to the Court for preliminary approval. Additionally, the Parties propose a plan to provide notice to Class Members and afford them the opportunity to object to the Agreement. The proposed Agreement is fair, reasonable, and adequate, as required by Rule 23(e)(2), and guarantees that all

Class Members will receive the relief sought in this case: a guarantee of a timely, lawful resolution of their borrower defense ("BD") claims.

The Named Plaintiffs are seven federal student loan borrowers who filed BD applications with the Department of Education ("Department") requesting that the Department discharge their federal student loans because of misconduct committed by their schools. They brought this case to challenge the Department's delay in making decisions on BD applications. Plaintiffs alleged that the Department's inaction was due to a deliberate and uniform policy abandoning BD decisionmaking, a choice that caused a mounting backlog. In a supplemental complaint filed after discovery in this matter, Plaintiffs further alleged that the Department adopted an unlawful policy that presumptively denied BD applications regardless of their merit, and then, pursuant to this policy, sent tens of thousands of legally insufficient denial notices (the "Form Denial Notices") to borrowers, including some of the Named Plaintiffs. Defendants have denied these allegations.

Plaintiffs claim that the Department's alleged policies of delay, presumptive denial, and insufficient Form Denial Notices left them in a state of indefinite limbo, unsure of whether or when they would need to repay their federal student loans or how they could prove their entitlement to BD relief. Plaintiffs brought this case to relieve student loan borrowers from this harmful uncertainty. They assert claims that the Department (i) unlawfully withheld and unreasonably delayed final decisions for BD applicants, in violation of Section 706(1) of the Administrative Procedure Act ("APA"); (ii) adopted a 'presumption of denial' policy that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of Section 706(2) of the APA and in derogation of Plaintiffs' procedural due process rights; and (iii) issued Form Denial Notices that failed to give Plaintiffs adequate notice of the grounds for denial, in violation of Section 555(e) of the APA and in derogation of Plaintiffs' procedural due process rights.

The Agreement will provide relief in the form of a discharge or a streamlined review process to approximately 264,000 Class Members who received more than an estimated $7.5 billion in disbursements to attend the schools listed on their BD applications. It will deliver the relief Plaintiffs seek in this case without the delay, risk, or expense that would be incurred through

continued litigation. The Agreement defines the settlement class as any individual who has submitted a BD application and has not received a decision as of the date the Agreement is executed. Individuals who received a Form Denial Notice are included in the settlement class as if their applications had been continuously pending since submission.

The Agreement provides for automatic relief—federal loan discharges, refunds of amounts paid to the Department, and credit repair ("Full Settlement Relief")—for approximately 75% of the class. This up-front relief will go to the approximately 200,000 Class Members who borrowed to attend one (or more) of a specified list of schools.  The Department has determined that attendance at one of these schools justifies presumptive relief, for purposes of this settlement, based on strong indicia regarding substantial misconduct by listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools. The list of schools is appended hereto as Exhibit C to the Agreement.

The remaining 25% of the class, consisting of approximately 68,000 borrowers who took out loans for schools that are not on the attached list, will receive final written decisions on their BD applications within specified periods of time, correlating to how long they have already been waiting. The longest-pending applications will receive a decision within six months of the Effective Date of the Agreement[1]; the most recent applications will receive a decision within 30 months after the Effective Date. If the Department fails to provide a written decision within the specified time period, the Class Member will automatically receive Full Settlement Relief.

These decisions will be made using a streamlined process that provides certain presumptions in favor of the borrower. Class Members whose applications are granted pursuant to this review process will receive Full Settlement Relief. Those whose applications are not granted will receive a written explanation and an opportunity to revise and resubmit their applications. If a Class Member does not submit a revised application within a specified time period, the

---

[1] The "Effective Date" is defined in the Agreement as the date upon which the Final Judgment approving the Agreement becomes non-appealable, or, in the event of an appeal by a Class Member, upon the date of final resolution of that appeal. Ex. 1 § 2.K.

application will be deemed denied; if the Class Member does resubmit, the Department will provide a final decision within six months of the Department's receipt of the resubmission.

The above described settlement relief will be provided to borrowers who submitted a borrower defense application (thereby becoming class members) on or before June 22, 2022, the date on which the Settlement Agreement was fully executed and on which the class closed. However, the Department has agreed to extend some relief to borrowers who apply for BD relief during the period after the date of execution but before final approval of the Agreement—that is, after the settlement class is closed ("Post-Class Applicants"). The Post-Class Applicants will receive a written decision on their applications no more than 36 months after the Effective Date of the Agreement. If the Department fails to provide a written decision within this time period, the Post-Class Applicant will automatically receive Full Settlement Relief.

This Agreement was reached only after the Parties engaged in extensive adversarial proceedings and formal settlement negotiations. Over the course of this litigation, the Parties have engaged in, among other things, summary judgment briefing, motion practice on a previous settlement that failed to gain final approval, and a discovery process that included document productions, written discovery, and depositions of senior Department officials. The Parties have negotiated the current Agreement over the course of more than a year. The Agreement addresses the terms that resolve the claims of the class, and provides that Plaintiffs will move for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), after final approval of the Agreement is entered.

Because the relief provided by this Agreement matches or exceeds what Class Members might receive through litigation and eliminates the uncertainty of appeal, the Court should grant preliminary approval of this Agreement.

## II.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed their class action complaint ("Complaint") on June 25, 2019, after the Department had failed to issue a final decision on any BD application for over a year. *See* Compl. ¶¶ 5, 135, 181-82, ECF No. 1. At the time, more than 158,110 BD applications were pending. *Id.*

¶ 186. The Complaint sought declaratory and injunctive relief and alleged, *inter alia*, that the Department's complete failure to issue any BD decisions since June 2018 constituted agency action unlawfully withheld or unreasonably delayed. *Id.* ¶¶ 377-89.[2] Plaintiffs argued that the Department's choice to stop deciding BD claims was unlawful because the Department has a mandatory duty under the Higher Education Act, 20 U.S.C. § 1087e(h), and its own regulations, 34 CFR §§ 685.206, 685.222, to timely decide and resolve borrowers' claims. Compl. ¶¶ 58-65.

On July 23, 2019, Plaintiffs moved for class certification. ECF No. 20. On October 30, 2019, the Court certified a class of "[a]ll people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*." Order, ECF No. 46 at 14.

On November 14, 2019, Defendants filed their Answer, ECF No. 55, and certified an Administrative Record, ECF No. 56. On December 5, 2019, Defendants moved for summary judgment, contending, among other things, that the Department's temporary delay in issuing decisions was reasonable and that relief pursuant to section 706(1) was inappropriate. ECF No. 63. On December 23, 2019, Plaintiffs filed their own Motion for Summary Judgment and opposed Defendants' Motion for Summary Judgment, ECF No. 67, and filed a Motion to Supplement and Complete the Administrative Record, ECF No. 66, and a Motion to Deny or Defer Decision on Defendants' Motion for Summary Judgment Under Rule 56(d), ECF No. 68. As of the time Plaintiffs moved for summary judgment, more than 225,000 borrowers were awaiting a BD decision. ECF No. 67 at 16.

Defendants supplemented the Administrative Record on January 9, 2020, with evidence that they had adopted a "partial relief methodology" to determine how much federal student loan debt should be discharged for approved BD claims. ECF No. 71. They also asserted that on

---

[2] Plaintiffs also asserted a second claim under Section 706(2) of the APA, which Defendants moved to dismiss on September 12, 2019. *See* ECF No. 35. Plaintiffs did not oppose that motion, and the claim was subsequently dismissed. *See* Order, ECF No. 41.

December 10, 2019, they had resumed issuing final BD decisions. *Id*. Unbeknownst to Plaintiffs' counsel at the time, the Department used the Form Denial Notices that would later become a source of dispute in this case.

On April 7, 2020, after the Parties' summary judgment motions had been fully briefed, argued, and submitted—but not decided—the Parties executed a settlement agreement. They submitted that agreement for preliminary approval on April 10, 2020. *See* ECF No. 97. The Court granted preliminary approval on May 22, 2020. ECF No. 103. A final approval hearing was set for October 1, 2020. ECF No. 105. Before that hearing occurred, however, Plaintiffs' counsel became aware that increasing numbers of Class Members were receiving the Form Denial Notices. Plaintiffs considered the Form Denial Notices to be inadequate and, on August 20, 2020, Plaintiffs' counsel moved for a case management conference to address Plaintiffs' concerns regarding the Form Denial Notices. *See* ECF No. 108. The Court held a conference and ordered further briefing, but ultimately proceeded to conduct the final approval hearing on October 1, 2020. *See* Minute Entry, ECF No. 115; Defs.' Resp. to Aug. 31, 2020 Order, ECF No. 116; Pls.' Motion to Enforce and for Final Approval, ECF No. 129; Transcript of Oct. 1, 2020 Hearing, ECF No. 147.

The Court denied final approval of the settlement on October 19, 2020, finding there was "no meeting of the minds." ECF No. 146 at 10. The Court ordered the Parties to conduct expedited discovery, because the case required "an updated record . . . to determine what is going on before we again attempt to resolve the merits." *Id.* at 11. It also ordered the Defendants to show cause why the Department should not be enjoined from issuing any further denials of Class Members' BD applications until a ruling could be had on the legality of the Form Denial Notices. *Id.* at 17. In response, Defendants agreed to cease issuing any denials until such a ruling. *See* Defs.' Response to Order to Show Cause, ECF No. 150 at 2-3.

The Parties conducted discovery between November 2020 and spring 2021. Based in significant part on materials adduced in discovery, Plaintiffs sought leave to file a supplemental complaint. ECF No. 192. Defendants did not oppose, ECF No. 196, and the Court granted leave to file on April 13, 2021, ECF No. 197. Plaintiffs' Supplemental Complaint alleged that

Defendants had adopted an unlawful 'presumption of denial' policy for BD applications, in violation of Section 706(2) of the APA, and had issued thousands of unlawful Form Denial Notices pursuant to this policy, in violation of Section 555(e) of the APA. Supplemental Complaint ("Supp. Compl.") ¶¶ 436-447, ECF No. 198. Plaintiffs further alleged that both the policy and the Form Denial Notices violated the Due Process Clause. *Id.* ¶¶ 448-455. In their consolidated prayer for relief, Plaintiffs requested, *inter alia*, that the Court (i) vacate the Department's policy of refusing to adjudicate BD applications and its 'presumption of denial' policy; (ii) declare that the Form Denial Notices were invalid and vacate all such denials; (iii) compel the Department to lawfully adjudicate all pending BD applications, including by providing an adequate statement of grounds for any denials; and (iv) require the Department to hold all Class Members in forbearance or stopped collection status until their applications were granted or denied on the merits. *Id.* at 76-77. Defendants answered the supplemental complaint on June 23, 2021. ECF No. 206.

New leadership took over the Department of Education beginning in January 2021, and the Parties began new settlement negotiations in May 2021. Those negotiations proceeded over a number of months. This litigation was stayed during much of that time while Defendants pursued a writ of mandamus before the Court of Appeals for the Ninth Circuit, challenging this Court's order allowing Plaintiffs to take a three-hour deposition of former Secretary of Education Elisabeth DeVos. *See generally In re DeVos*, No. 3:21-mc-80075-WHA (N.D. Cal.); *In re U.S. Dep't of Educ.*, No. 21-71108 (9th Cir.).

The Ninth Circuit issued an order granting the writ of mandamus on February 4, 2022. *See In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022). This Court subsequently set a schedule for renewed summary judgment briefing in this matter. *See* ECF Nos. 216, 219, 240. Plaintiffs filed their Motion for Summary Judgment on June 9, 2022. ECF No. 245. As of that filing, the Department's most recent publicly available data showed more than 290,000 unresolved BD applications, *id.* at 8, even after the Department had approved certain tranches of borrower defense applications in 2021 and 2022. Defendants' opposition to Plaintiffs' motion is due on June 23, 2022 at 12 pm PT.

### III.    SUMMARY OF SETTLEMENT AGREEMENT TERMS

#### A.  Settlement Class

The settlement class ("Class") includes the Named Plaintiffs and all individuals who met the class definition[3] as of the date the Agreement was executed (June 22, 2022). Ex. 1 §§ II.E, III.A, III.D. The Class is finite and determined as of the date of execution of the Agreement, so that the size of the Class and the length of performance of the Agreement do not expand indefinitely. The Class does not include people who have already received a BD decision (excepting a Form Denial Notice), who are class members in the *Calvillo Manriquez* litigation, or who submit a BD application after execution of the Agreement.[4]

#### B.  Relief

Under the Agreement, the Class will be divided into two groups: the Section IV.A automatic relief group, comprising Class Members whose BD applications relate to loans that were taken out to attend schools owned or operated by any of 50 specified organizations, Ex. 1 § IV.A & Ex. C, and the Section IV.C decision group, comprising all remaining Class Members, *id.* § IV.C.

For both groups, the Department will rescind all Form Denial Notices and treat all Class Members' applications as having been continuously pending since the original submission date. For members of the automatic relief group, rescission will occur simultaneously with the grant of

---

[3] As noted above, "All people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*." Order Granting Motion for Class Certification, ECF No. 46 at 14.

[4] As noted above, the Agreement does make certain provisions for the Post-Class Applicants - individuals who submit a BD application between the execution date of the Agreement and the date this Court grants final approval. The Post-Class Applicants will receive decisions on their applications within 36 months of the final approval date, and the Department will provide Full Settlement Relief to those who do not receive a decision within that time frame. Post-Class Applicants are not members of the Class, and are not releasing any claims under the Agreement. *See* Ex. 1 §§ III.A, III.D (defining the settlement class), IV.D.1 (defining Post-Class Applicants), VII (waiver only by Class Members).

Full Settlement Relief. *Id.* § IV.A.1. For members of the decision group, Defendants will provide written notice of rescission no later than 120 calendar days after the Effective Date of the Agreement. *Id.* § IV.B.1.

Members of the automatic relief group will receive Full Settlement Relief, consisting of (i) discharge of their Relevant Loan Debt (defined as all Direct Loans or FFEL loans associated with the school that is the subject of their BD application), including the original principal of the affected federal student loan(s) plus any and all interest and fees that accrued or were incurred on that loan; (ii) a refund of all amounts previously paid to the Department toward their Relevant Loan Debt, including Relevant Loan Debt that was fully paid off at the time relief is granted; and (iii) deletion of the credit tradeline associated with the Relevant Loan Debt. *Id.* § IV.A.1.

Members of the decision group will receive final written decisions on their BD applications within specified periods of time correlating to how long their applications have been pending. *Id.* § IV.C.3. The Department will render decisions according to the following timeline:

- For applications submitted by approximately 8,800 Class Members on or before December 31, 2017, within six months of the Effective Date of the Agreement;

- For applications submitted by approximately 8,600 Class Members from January 1, 2018 to December 31, 2018, within 12 months of the Effective Date;

- For applications submitted by approximately 11,000 Class Members from January 1, 2019 to December 31, 2019, within 18 months of the Effective Date;

- For applications submitted by approximately 8,600 Class Members from January 1, 2020 to December 31, 2020, within 24 months of the Effective Date; and

- For applications submitted by approximately 32,800 Class Members from January 1, 2021, through the execution date, within 30 months of the Effective Date.

*Id.* § IV.C.3.

The Department will conduct a streamlined review of each application submitted by Class Members in the decision group. The Relevant Loan Debt for Class Members in the decision group will remain in forbearance or stopped collection status, without any accrual of interest, while this review is underway, either until the Class Member receives Full Settlement Relief or until the

Department's decision denying the application becomes final. *Id.* § IV.C.7. The streamlined review process will determine whether the application states a claim that, if presumed to be true, would assert a valid basis for borrower defense; will not require further supporting evidence; will not require proof of reliance; and will not apply the statute of limitations of any underlying state law claims. *Id.* § IV.C.1.

If an application is insufficient to garner approval under this streamlined review, the Department will send the applicant a notice of their right to revise and resubmit their application, accompanied by instructions for how to do so. *Id.* § IV.C.2.ii. Applicants will have six months to revise and resubmit, *id.* § IV.C.2.ii, after which the Department will have six months to issue a final decision, *id.* § IV.C.4. If an applicant declines to resubmit, the revise and resubmit notice will convert to a final and appealable denial. *Id.* § IV.C.2.ii. The Agreement preserves Class Members' right to bring future claims based on the substance or content of their BD decisions. *Id.* § VII.

The Department will effectuate Full Settlement Relief for members of the automatic relief group within one year of the Effective Date of the Agreement. *Id.* § IV.A.1. Members of the decision group whose applications are approved will receive Full Settlement Relief within one year of receiving written notice of the approval. *Id.* § IV.C.9. No Class Member will be required to take any additional steps, *e.g.*, consolidation of relevant loan(s) into a Direct Loan, in order to receive settlement relief. *Id.* § IV.F.2.

The Agreement provides consequences in the event that the Department fails to meet a decision deadline for Class Members in the decision group. If the Department fails to issue a decision within the appropriate deadline, the applicant will automatically receive Full Settlement Relief. *Id.* § IV.C.8.

The Agreement also includes reporting requirements, under which the Department agrees to provide Plaintiffs with certain information about its progress toward completing review of BD applications and effectuating settlement relief. Defendants will initially provide the total number, as of the final approval date of the Agreement, of (i) Class Members, (ii) Class Members in the automatic relief group, (iii) Class Members in the decision group, and (iv) Class Members in the

decision group and Post-Class Applicants who must receive decisions by each deadline, together with a schedule of the dates certain by which such decisions must be received. *Id.* § IV.G.1. Defendants will provide this information within 30 calendar days after the Effective Date of the Agreement. *Id.* Defendants will then submit quarterly reports documenting their progress toward discharging their obligations under the Agreement. *Id.* §§ IV.G.1-4.

Finally, Defendants confirm in the Agreement that, throughout the time covered by the Agreement, Defendants will not take action to collect on Class Members' outstanding federal student loan debts through involuntary collection activity and will provide an interest credit for any interest that accrues on Class Members' relevant federal student loan accounts between the time that the Class Member submits his or her BD application and the time the Department issues a final decision on the application and notifies the borrower of that decision. *Id.* § IV.H.

### C.  Dismissal; Waiver; Continued Jurisdiction of the Court

In exchange for this relief, Named Plaintiffs and the Class agree to waive all claims alleged in this action and dismiss the case. *Id.* §§ VII, XI. Any future claim challenging the Department's final decision on an individual Class Member's BD application, including the form and content of that final decision, is unaffected by the waiver, though Defendants reserve their rights to assert any applicable res judicata defense in any future class member lawsuit. *Id.* § VII.

The Parties agree that the Court will retain jurisdiction only to adjudicate allegations of material breach as defined in the Agreement, and to provide the prescribed remedies. *Id.* §§ V, XI. The Agreement provides that the Parties will follow specific steps in the event of an asserted breach before seeking the Court's involvement. *Id.* § V.D.

### D. Breach

Plaintiffs may bring a claim that Defendants have materially breached the Agreement if (i) Defendants fail to issue a timely decision to a member of the decision group and subsequently fail, within 30 calendar days following the expiration of the applicable deadline, to provide that individual with notice that they will receive Full Settlement Relief, or (ii) if Defendants fail to effectuate relief within the prescribed time periods. *Id.* §§ V.B.1, V.B.2. Should Plaintiffs prevail

on either such claim, the only relief available from the Court shall be an order requiring Defendants to promptly provide Full Settlement Relief to each affected individual on a timetable set by the Court, and an award of Plaintiffs' reasonable attorneys' fees and costs incurred in bringing the claim. *Id.* §§ V.B.1.i, V.B.2.i. In the event of such a Court order, Defendants will report to Plaintiffs' counsel and the Court on its progress of issuing relief. *Id.* §§ V.B.1.ii, V.B.2.ii.

Plaintiffs may also bring a claim that Defendants have materially breached the Agreement if Defendants fail to submit a timely and complete quarterly report to Plaintiffs' counsel via electronic mail within 90 calendar days after the deadline for the report, according to the timelines specified in the Agreement. *Id.* § V.B.3. Should Plaintiffs prevail on this claim, the only relief available from the Court will be an order requiring Defendants to submit their reports on a monthly basis from the point of the order forward, and an award of Plaintiffs' reasonable attorneys' fees and costs incurred in bringing the claim. *Id.*

Finally, Plaintiffs may bring a claim that Defendants have materially breached the Agreement if, after the Effective Date, Defendants collect on a relevant loan through involuntary collection activity against a Class Member while his or her BD application was or is pending or while the Class Member was or is awaiting the effectuation of relief. *Id.* § V.B.4. Should Plaintiffs prevail on this claim, the only relief available from the Court will be an order requiring the Department to refund the payment(s) collected. *Id.* However, Defendants shall not be liable based on events outside of Defendants' control, including but not limited to a situation where a third party, such as an employer, undertakes debt collection activities, such as wage garnishment, inconsistent with Defendants' instructions that collection activity cease. *Id.*

## IV.   THE SETTLEMENT AGREEMENT MERITS PRELIMINARY APPROVAL

"Strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned[.]" *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). Courts assess class action settlements by considering the factors in Federal Rule of Civil Procedure 23(e)(2). The relevant factors to assess the settlement of this injunctive relief class action are: (1) whether the class representatives and class counsel adequately represented the class; (2) whether

the proposal was negotiated at arm's length; (3) whether the relief provided by the agreement is adequate for the class; (4) whether the benefits of the agreement outweigh the cost, risk, and delay of trial and appeal; (5) the terms of any proposed award of attorney's fees, including timing of payment; (6) whether the parties have other agreements relating to the settlement; and (7) whether the settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2).[5] Here, all factors weigh in favor of settlement. Named Plaintiffs and Class Counsel have adequately represented the class, negotiations were conducted at arm's length, and the Agreement offers relief to all Class Members that is comparable to or better than what Plaintiffs might have expected through continued litigation. The Agreement is fair, adequate, and reasonable, and the Court should grant preliminary approval.

## A. Named Plaintiffs and Their Counsel Adequately Represented the Class

Named Plaintiffs and Class Counsel have zealously prosecuted this case and adequately represented the Class. The Named Plaintiffs kept themselves apprised of each stage in the litigation. They submitted affidavits in favor of class certification, *see* ECF Nos. 20-2, 20-3, 20-4, 20-5, 20-6, 20-7, 20-8, as well as affidavits in support of other key filings, *see, e.g.*, ECF No. 129-1 (Affidavit of Theresa Sweet in support of Motion to Enforce and for Final Approval); ECF No. 108-11 (Affidavit of Jessica Jacobson in support of Motion for Case Management Conference); ECF No. 108-8 (Affidavit of Daniel Deegan in support of Motion for Case Management Conference). The Named Plaintiffs were involved in the settlement process via phone and email. All of the Named Plaintiffs understand the terms of the Agreement and favor it.

Class Counsel have vigorously litigated this case and adequately represented the class. They utilized all litigation tools available under the Administrative Procedure Act to advance the interests of the class. They won class certification on a motion that included almost 900 affidavits from class members. When, in Plaintiffs' view, the Form Denial Notices undermined the previous

---

[5] Rule 23(e)(2)(C)(ii) also requires that courts assess "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." That factor does not apply here, where there are no money damages.

settlement in this case, Class Counsel brought the issue to the Court's attention and pressed for accountability, leading to the Department agreeing to abandon the Form Denial Notices during the pendency of the litigation. Class Counsel conducted thorough discovery on an expedited basis and engaged in discovery motion practice. Using the information produced in discovery, Class Counsel supplemented the class's allegations with exhaustive new details and additional legal claims. Class Counsel have briefed two separate Motions for Summary Judgment.

Additionally, Class Counsel developed a website responsive to the most common of hundreds of questions raised by Class Members. *See Information for Sweet v. DeVos Class Members*, Harvard Law Legal Services Center's Project on Predatory Student Lending, https://predatorystudentlending.org/sweet-v-devos-class-members/.

### B.  Parties Negotiated at Arm's Length

Courts assess whether settlement negotiations were conducted at arm's length to guard against the possibility that class counsel would "collude with defendants . . . in return for a higher attorney's fee" or use the settlement to "pursu[e] their own self-interests." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Collusion typically arises where attorneys' fees will be paid out of the settlement funds that would otherwise be distributed to class members—unlike here, where Plaintiffs seek only injunctive relief, and any fee award is governed by the Equal Access to Justice Act. *See Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2019 WL 343472, at *3 n.2 (N.D. Cal. Jan. 28, 2019) (citing cases).

The Parties here conducted extensive settlement negotiations over many months, with counsel for each party zealously representing their client's interests. Where "an agreement is the product of serious, informed, non-collusive negotiations conducted by experienced counsel . . . those facts will weigh in favor of approval." *Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) (internal quotations omitted) (granting final approval); *see also* 4 Newberg on Class Actions § 13:45 (5th ed.) ("[C]ourts overseeing class action lawsuits historically granted a presumption of fairness to settlements that were shown to be the product of arms-length negotiation, untainted by collusion."). Additionally, the Parties reached

this Agreement while in the midst of summary judgment briefing, after having conducted discovery, at which point they had an intimate understanding of the relative strengths and weaknesses of their respective cases. All of these circumstances indicate that the settlement was properly negotiated at arm's length. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 569; *Moreno*, No. 17-CV-02911-JSC, 2019 WL 343472, at *5.

### C.  The Quality of the Relief to the Class Weighs in Favor of Approval

Courts must assess whether "the relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(C), by comparing plaintiffs' likelihood of succeeding and obtaining relief from the court against the relief provided by the proposed settlement. *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88, n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."). The relief in this Agreement is comparable to—or exceeds—what Plaintiffs and the Class might have obtained in litigation.

First, the Agreement provides immediate relief to Class Members who borrowed to attend an extensive list of schools that engaged in misconduct. Ex. 1 § IV.A.1 & Ex. C. Data provided by the Department indicates that this automatic relief group comprises approximately 75% of the class, or approximately 200,000 individuals. Upon the Effective Date of the Agreement, these borrowers will know that their Relevant Loan Debt—which, at the time these class members attended school, totaled an approximate $6 billion in the aggregate—will be discharged, that they will receive a refund of all amounts previously paid to the Department toward their Relevant Loan Debt, and that the credit tradeline associated with their Relevant Loan Debt will be deleted; within one year later, this relief will be effectuated. *Id.*

Second, although members of the decision group will not receive immediate relief, their BD claims will be resolved efficiently according to strict and fair deadlines and according to a streamlined process that the Defendants have agreed to for settlement purposes. Had Plaintiffs prevailed on their Section 706(1) claim, the Court likely would have ordered Defendants to resolve the backlog of BD claims in a set period of time, the length of which would be at the Court's

discretion. By this Agreement, the approximately 68,000 Class Members in the decision group will receive a decision no later than 30 months after the Effective Date of this Agreement (and Post-Class Applicants will receive a decision no later than 36 months after the Effective Date), with the oldest claims receiving decisions more promptly. *Id.* §§ IV.C.3, IV.D.1. Ongoing litigation on the complicated matters presently before the Court, as well as the possibility of appeal, could extend the timeline for decisions on Class Members' applications well beyond these terms. To avoid the uncertainty of a judicial outcome and the delay of appeal—in a case that is fundamentally about avoiding delay—expeditious relief is the superior outcome for the Class.

In addition, the Agreement provides strong procedural protections. If the Department fails to meet the deadlines set forth in the Agreement, Class Members and Post-Class Applicants receive Full Settlement Relief. *Id.* §§ IV.C.8, IV.D.2. If the Department issues denial notices that do not conform to the requirements set forth in the Agreement or are otherwise deficient under the APA or other applicable law, Class Members retain their right to sue. *See id.* §§ IV.C.2(ii)-(iii), VII. And this Court will retain jurisdiction to hear claims that Defendants have breached their obligation to provide notice by the deadlines, effectuate relief by the deadlines, submit timely quarterly reports, or refrain from involuntary collections. *Id.* § V.

### D.  Continued Litigation Would Entail Additional Delay, Risk, and Cost

Courts also assess whether the relief in the settlement is adequate when measured against "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Where Plaintiffs would face an uncertain outcome through continued litigation, courts favor settlement. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (favoring "[s]ettlement, which offers an immediate and certain award" in light of the litigation barriers the plaintiffs anticipated). In this case, settlement will bring borrowers' state of limbo to an end and guarantee that a resolution to their BD claims is in sight. That favorable resolution is not certain should the Parties continue litigating. Although Plaintiffs believe they have advanced strong legal and factual arguments, they acknowledge that their case is not without legal risk. Plaintiffs likewise recognize the possibility

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that Defendants would appeal if Plaintiffs prevail, potentially further delaying decisions for Class Members. This Agreement provides an outcome comparable to or better than Plaintiffs' potential litigation outcomes and removes the uncertainty and delay of further litigation. As a result, this factor weighs in favor of the Agreement.

### E. The Parties Reserve Attorneys' Fees for the Court

Courts review "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Under this Agreement, Plaintiffs will petition the Court for fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Ex. 1 § VI.A. The Parties have not negotiated attorneys' fees as part of this Agreement and have only agreed that the Plaintiffs are the prevailing party in this action for purposes of a fee petition. *Id*. § VI.B. This factor weighs in favor of settlement.

### F. This Agreement Is the Only Agreement the Parties Have with Each Other

The Settlement Agreement that the Parties negotiated is the only agreement the Parties have made in connection with the proposed settlement. It is attached as Exhibit 1. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).

### G. The Agreement Treats All Class Members Fairly

Finally, the Court must inquire whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class," *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007), and whether "the apportionment of relief among class members takes appropriate account of differences among their claims," Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment).

Under this Agreement, all members of the automatic relief group are treated the same: because the Department has identified common evidence of institutional misconduct by the schools, programs, and school groups identified in Exhibit C to the Agreement, it has determined that every Class Member whose Relevant Loan Debt is associated with those schools should be

provided presumptive relief under the settlement due to strong indicia regarding substantial misconduct by the listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools. *See* Ex. 1 § IV.A.1. Clearing these claims through provision of expeditious upfront relief will significantly reduce the backlog of pending claims.  This will benefit the class as a whole because it will allow the Department to more quickly provide decisions to remaining class members than would otherwise be possible.

The decision group is treated differently from the automatic relief group, as members of the former will have their BD applications individually reviewed over a period of time. This difference in treatment is justified because the Department has determined, based on the evidence in its possession, that it still needs to make individualized determinations of entitlement to relief for all members of the decision group. Furthermore, within the decision group, Class Members are treated equitably: their applications will all be subject to the same streamlined review, and that review will be conducted on a timeline that corresponds to the delay each applicant has already experienced. *See id.* § IV.C. That streamlined review process provides significant benefits, even beyond an expedited path to decisions, that decision group Class Members would not receive if their claims were adjudicated outside of this settlement.  For example, as noted above, they will be afforded a presumption of reliance, their claims will not be denied for a lack of corroborating evidence, and their recovery will not be subject to any statute of limitations.  This is significant relief, calibrated to the circumstances of these Class Members and the disputed issues in this case. The Agreement thus treats all Class Members fairly and equitably, taking account of the differences in claims and circumstances that are inevitable in a class of this size.

## V.    THE COURT SHOULD APPROVE THE CLASS NOTICE AND NOTICE PLAN UNDER RULE 23(E)(1)

Courts order direct notice of a proposed settlement to class members if the Court approves the settlement as fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(1). If the Court grants preliminary approval for this Agreement, the Parties propose the following schedule to notify Class

Members, provide Class Members with time to object, hold a fairness hearing, and hold a final approval hearing. The Parties propose that Defendants will send the proposed Class Notice, attached as Exhibit A to the Agreement, to all Class Members via email, and via postal mail where the Defendants have no email for the Class Member or where the Department receives notice that its email notice was undeliverable.

| | |
|---|---|
| Defendants will provide notice by emailing all Class Members and mailing hard copies of notices to those unavailable by email. Plaintiffs will also update their website. | Within 15 days of preliminary approval order |
| Deadline for Class Members to Object to Agreement | 60 days after preliminary approval order |
| Deadline to Submit Replies in Favor of Final Approval | 75 days after preliminary approval order |
| Deadline to File Motion for Final Approval | 85 days after preliminary approval order |
| Deadline for Defendants to File Affidavit Attesting that Notice Was Delivered As Ordered | 3 Days prior to Fairness Hearing for final approval |
| Fairness Hearing for Final Approval | At the Court's discretion, but not before 100 days after preliminary approval order |

If the Court orders final approval of the Agreement, Plaintiffs will submit a timely fee petition pursuant the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant preliminary approval of the Agreement and schedule a Fairness Hearing for Final Approval.

Dated: June 22, 2022

Respectfully submitted,

_/s/ Eileen M. Connor_____

BRIAN D. NETTER
Deputy Assistant Attorney General
STEPHANIE HINDS
United States Attorney
MARCIA BERMAN
Assistant Branch Director

Eileen M. Connor (SBN 248856)
econnor@law.harvard.edu
Rebecca C. Ellis (*pro hac vice*)
rellis@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

_/s/ R. Charlie Merritt_____
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

Joseph Jaramillo (SBN 178566)
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, California 94611
Tel: (510) 271-8443
Fax: (510) 280-2448

*Attorneys for Defendants*

*Attorneys for Plaintiffs*