BRIAN D. NETTER
Deputy Assistant Attorney General
STEPHANIE HINDS
United States Attorney
MARCIA BERMAN
Assistant Branch Director
R. CHARLIE MERRITT
STUART J. ROBINSON
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,<br><br>          Defendants. | No. 3:19-cv-03674-WHA<br><br><br>**DEFENDANTS' NOTICE OF MOTION, CROSS MOTION FOR SUMMARY JUDGMENT, OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND MOTION TO DECERTIFY CLASS**<br><br>Date:  July 28, 2022<br>Time:  8:00 a.m.<br>Place:  Courtroom 12, 19th Floor<br>Honorable William Alsup |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 3

I.      Statutory and Regulatory Background.................................................... 3

II.     Factual Background and Procedural History ......................................... 5

LEGAL STANDARDS ........................................................................................... 7

ARGUMENT .......................................................................................................... 9

I.      Defendants Are Entitled To Summary Judgment On Each Of Plaintiffs' Claims.............. 9

        A.      Defendants Are Entitled to Summary Judgment on Plaintiffs' § 706(1) Claim..... 9

                1.      Plaintiffs' Claim is Moot. ....................................................... 9

                2.      Even if Subsequent Events Have Not Mooted the Case, They Require
                        Class Decertification.................................................................... 12

                3.      Plaintiffs Are Not Entitled To Relief On Their § 706 Claim.................... 13

        B.      Plaintiffs' "Presumption of Denial Policy" Claim Fails as a Matter of Law........ 15

                1.      Plaintiffs Do Not Challenge Final Agency Action. ................................ 15

                2.      Plaintiffs' Claim Is Inappropriate for Class Resolution............................ 18

                3.      The Purported "Presumption of Denial Policy" is Not Unlawful............. 19

                        i.      Plaintiffs' Arbitrary-and-Capricious Claim Fails. ........................ 19

                        ii.     Plaintiffs' Due Process Claims Fail. ............................................ 22

        C.      Plaintiffs' Challenge to the Department's Denial Notices is Moot. ..................... 24

II.     Plaintiffs Are Not Entitled to the Relief They Seek. ......................................... 25

        A.      The HEA's Anti-Injunction Provision Forecloses Coercive Relief Against the
                Secretary. ...................................................................................................... 25

        B.      There Is No Basis for the Court to Enter Plaintiffs' Requested Show Cause Order.
                ........................................................................................................................ 27

CONCLUSION ...................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado, Inc. v. Mayorkas,*
  No. 17-cv-02366, 2021 WL 3931890 (S.D. Cal. Sept. 2, 2021) ............................................ 11

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ............................................................................................................ 8

*Am. Ass'n of Cosmetology Sch. v. Riley,*
  170 F.3d 1250 (9th Cir. 1999) ........................................................................................ 26

*Am. Diabetes Ass'n v. U.S. Dep't of the Army,*
  938 F.3d 1147 (9th Cir. 2019) ........................................................................................ 25

*Am. Fed'n of Gov't Emps., AFL-CIO, Loc. 446 v. Nicholson,*
  475 F.3d 341 (D.C. Cir. 2007) ........................................................................................ 24

*Am. Hosp. Assoc. v. Price,*
  867 F.3d 160 (D.C. Cir. 2017) ........................................................................................ 27

*Anderson v. Evans,*
  371 F.3d 475 (9th Cir. 2002) .......................................................................................... 25

*Anunciato v. Trump,*
  No. 20-cv-07869-RS, 2021 WL 3112320 (N.D. Cal. July 22, 2021) ....................................... 9

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997) ............................................................................................................ 8

*Arrington v. Daniels,*
  516 F.3d 1106 (9th Cir. 2008) ........................................................................................ 19

*Australians for Animals v. Evans,*
  301 F. Supp. 2d 1114 (N.D. Cal. 2004) .......................................................................... 22

*Bark v. U.S. Forest Serv.,*
  37 F. Supp. 3d 41 (D.D.C. 2014) .................................................................................... 16

*Bergmann v. U.S. Dep't of Transp.,*
  710 F. Supp. 2d 65 (D.D.C. 2010) .................................................................................... 8

*Boliero v. Holder,*
  731 F.3d 32 (1st Cir. 2013) ............................................................................................ 27

*Burton v. City of Bell Glade,*
  178 F.3d 1175 (11th Cir. 1999) ...................................................................................... 29

*Cal. Assoc. of Private Postsecondary Sch. v. DeVos,*

344 F. Supp. 3d 158 (D.D.C. 2018) ................................................................. 26

*Cal. Ass'n of Private Postsecondary Schools v. DeVos*,
436 F. Supp. 3d 333 (D.D.C. 2020) ........................................................... 3, 4

*California ex rel. Becerra v. Azar*,
950 F.3d 1067 (9th Cir. 2020) ...................................................................... 19

*Calise Beauty Sch., Inc. v. Riley*,
941 F. Supp. 425 (S.D.N.Y. 1996) ............................................................... 26

*Carr v. DeVos*,
369 F. Supp. 3d 554 (S.D.N.Y. 2019) .......................................................... 25

*Carr v. INS*,
89 F.3d 844 (9th Cir. 1996) .......................................................................... 21

*Cent. Sierra Envtl. Res. Ctr. v. Stanislaus Nat'l Forest*,
304 F. Supp. 3d 916 (E.D. Cal. 2018) .......................................................... 15

*Ciechon v. City of Chicago*,
686 F.2d 511 (7th Cir. 1982) ................................................................... 22, 23

*Cities of Anaheim, Riverside, Banning, Colton & Azusa, Cal. v. FERC*,
723 F.2d 656 (9th Cir. 1984) ........................................................................ 21

*City of New York v. U.S. DoD*,
913 F.3d 423 (4th Cir. 2019) ........................................................................ 17

*City of Santa Clarita v. U.S. Dep't of Interior*,
No. 02-cv-0697, 2005 WL 2972987 (C.D. Cal. Oct. 31, 2005) ..................... 8

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001) .................................................................... 17

*Coe v. Thurman*,
922 F.2d 528 (9th Cir. 1990) ........................................................................ 24

*Ctr. for Food Safety v. Hamburg*,
954 F. Supp. 2d 965 (N.D. Cal. 2013) .......................................................... 28

*Ctr. for Food Safety v. Perdue*,
320 F. Supp. 3d 1101 (N.D. Cal. 2018) ........................................................ 18

*Demery v. Arpaio*,
378 F.3d 1020 (9th Cir. 2004) ...................................................................... 25

*Dep't of Com. v. New York*
139 S. Ct. 2551 (2019) .................................................................................. 23

*Donovan ex rel. Anderson v. Stafford Const. Co.*,

732 F.2d 954 (D.C. Cir. 1984) ................................................................................ 28, 29

*Eagle Tr. Fund v. USPS*,
365 F. Supp. 3d. 57 (D.D.C. 2019) ................................................................................. 26

*Ecology Ctr., Inc. v. U.S. Forest Serv.*,
192 F.3d 922 (9th Cir. 1999) ............................................................................................ 18

*Eldredge v. Carpenters 46*,
94 F.3d 1366 (9th Cir. 1996) ............................................................................................ 29

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
543 F.3d 586 (9th Cir. 2008) ............................................................................................ 15

*FCC v. Prometheus Radio Project*,
141 S. Ct. 1150 (2021) ...................................................................................................... 19

*Fei Wang v. Bd. of Trustees of Univ. of Illinois*,
No. 18-cv-07522, 2020 WL 1503651 (N.D. Ill. Mar. 30, 2020) ...................................... 23

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ............................................................................................................ 8

*Florida v. HHS*,
19 F.4th 1271 (11th Cir. 2021) .......................................................................................... 22

*Forest Guardians v. Babbitt*,
174 F.3d 1178 (10th Cir. 1999) ......................................................................................... 14

*Friends of the Clearwater v. Dombeck*,
222 F.3d 552 (9th Cir. 2000) .............................................................................................. 8

*Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of Interior*,
478 F. Supp. 2d 11 (D.D.C. 2007) ................................................................................ 15, 16

*Gator.com Corp. v. L.L. Bean, Inc.*,
398 F.3d 1125 (9th Cir. 2005) ............................................................................................ 8

*George Hyman Const. Co. v. Brooks*,
963 F.2d 1532 (D.C. Cir. 1992) ......................................................................................... 29

*Grand Canyon Trust v. U.S. Bureau of Reclamation*,
691 F.3d 1008 (9th Cir. 2012) ............................................................................................ 1

*Guidiville Rancheria of Calif. v. United States*,
2013 WL 6571945 (N.D. Cal. Dec. 13, 2013) ................................................................. 22

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
593 F.3d 923 (9th Cir. 2010) ............................................................................................ 28

*Herguan Univ. v. ICE*,

258 F. Supp. 3d 1050 (N.D. Cal. 2017) .................................................. 8

*Hoffenberg v. United States,*
    No. 08-cv-08164, 2010 WL 3083533 (D. Ariz. Aug. 6, 2010) ................ 10

*Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n,*
    426 U.S. 482 (1976) ................................................................... 23

*Human Res. Mgmt., Inc v. Weaver,*
    442 F. Supp. 241 (D.D.C. 1977) ................................................... 21

*Hyatt v. U.S. Patent & Trademark Office,*
    146 F. Supp. 3d 771 (E.D. Va. 2015) ............................................ 14

*In re Core Commc'ns, Inc.,*
    531 F.3d 849 (D.C. Cir. 2008) ..................................................... 13

*In re Pesticide Action Network N. Am.,*
    532 F. App'x 649 (9th Cir. 2013) ................................................. 13

*Indep. Petroleum Assoc. of Am. v. Babbitt,*
    235 F.3d 588 (D.C. Cir. 2001) ..................................................... 16

*Indep. Min. Co. v. Babbitt,*
    105 F.3d 502 (9th Cir. 1997) ....................................................... 8

*Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.,*
    861 F.3d 944 (9th Cir. 2017) ....................................................... 18

*Interstate Nat. Gas Ass'n of Am. v. FERC,*
    285 F.3d 18 (D.C. Cir. 2002) ....................................................... 21

*Kavoosian v. Blinken,*
    No. 20-55325, 2021 WL 1226734 (9th Cir. Feb. 9, 2021) ................... 9

*Knox v. Service Emps. Int'l Union, Local 1000,*
    567 U.S. 298 (2012) ................................................................... 11

*Kouropova v. Gonzales,*
    200 F. App'x 692 (9th Cir. 2006) ................................................ 24

*Larson v. Domestic & Foreign Com. Corp.,*
    337 U.S. 682 (1949) ................................................................... 26

*Las Americas Immigrant Advoc. Ctr. v. Biden,*
    ---F. Supp. 3d---, 2021 ............................................................... 27

*Levenstein v. Salafsky,*
    164 F.3d 345 (7th Cir. 1998) ....................................................... 22

*Lujan v. Nat'l Wildlife Fed'n,*

497 U.S. 871 (1990) ........................................................................... 15, 16, 17

*Makaeff v. Trump Univ., LLC,*
309 F.R.D. 631 .................................................................................... 9, 13

*Manriquez v. DeVos,*
345 F. Supp. 3d 1077 (N.D. Cal. 2018) .................................................. 26

*Marlo v. United Parcel Serv., Inc.,*
639 F.3d 942 (9th Cir. 2011) ................................................................. 12

*Martinez v. United States,*
670 F. App'x 933 (9th Cir. 2016) .......................................................... 10

*Mathews v. Eldridge,*
424 U.S. 319 (1976) .............................................................................. 23

*NLRB v. USPS,*
486 F.3d 683 (10th Cir. 2007) ............................................................... 29

*Norton v. S. Utah Wilderness All.*
(SUWA), 542 U.S. 55 (2004) .......................................................... 10, 13

*Nyunt v. Chairman, Broad. Bd. of Governors,*
589 F.3d 445 (D.C. Cir. 2009) ............................................................... 26

*Officers for Justice v. Civil Serv. Commn,*
688 F.2d 615 (9th Cir. 1982) ................................................................... 9

*Olivares v. Transportation Sec. Admin.,*
819 F.3d 454 (D.C. Cir. 2016) ............................................................... 24

*Ore. Nat. Desert Ass'n v U.S. Forest Serv.,*
465 F.3d 977 (9th Cir. 2006) ................................................................. 15

*Osage Prods. Ass'n v. Jewell,*
191 F. Supp. 3d 1243 (N.D. Okla. 2016) ............................................... 17

*Ozinga v. Price,*
855 F.3d 730 (7th Cir. 2017) ................................................................... 8

*Pac. Bell. Tel. Co. v. Pub. Utils. Comm'n of Cal.,*
No. C 03-01850, 2005 WL 818375 (N.D. Cal. Apr. 5, 2005) ................ 17

*Pacharne v. Dep't of Homeland Sec.,*
565 F. Supp. 3d 785 (N.D. Miss. 2021) ................................................. 11

*Padilla v. U.S. ICE,*
354 F. Supp. 3d 1218 (W.D. Wash. 2018) ............................................. 11

*Pennhurst State Sch. & Hosp. v. Halderman,*

465 U.S. 89 (1984) .................................................................................................. 26

*Pinnacle Armor, Inc. v. United States*,
648 F.3d 708 (9th Cir. 2011) ................................................................................. 24

*Princeton Univ. v. Schmid*,
455 U.S. 100 (1982) ............................................................................................ 8, 9

*Racies v. Quincy Bioscience, LLC*,
No. 15-cv-00292-HSG, 2020 WL 2113852 (N.D. Cal. May 4, 2020) ..................... 9

*Rai v. Biden*,
No. 21-cv-863, 2021 WL 4439074 (D.D.C. Sept. 27, 2021) ................................. 11

*Remmie v. Mabus*,
898 F. Supp. 2d 108 (D.D.C. 2012) ...................................................................... 24

*Rivera v. Patel*,
No. 16-cv-00304-PJH, 2016 WL 6427893 (N.D. Cal. Oct. 31, 2016) ................... 10

*Rosebrock v. Mathis*,
745 F.3d 963 (9th Cir. 2014) .......................................................................... 11, 25

*S.F. Baykeeper, Inc. v. Browner*,
147 F. Supp. 2d 991 (N.D. Cal. 2001) .................................................................. 13

*Saleh v. Titan Corp.*,
353 F. Supp. 2d 1087 (S.D. Cal. 2004) ................................................................. 19

*San Luis & Delta Mendota Water Auth. v. U.S. Dep't of the Interior*,
984 F. Supp. 2d 1048 (E.D. Cal. 2013) ................................................................... 8

*Skalka v. Kelly*,
246 F. Supp. 3d 147 (D.D.C. 2017) ...................................................................... 14

*Stevens v. Harper*,
213 F.R.D. 358 (E.D. Cal. 2002) .......................................................................... 18

*Stivers v. Pierce*,
71 F.3d 732 (9th Cir. 1995) .................................................................................. 23

*Ticor Title Ins. Co. v. FTC*,
814 F.2d 731 (D.C. Cir. 1987) ......................................................................... 28, 29

*Tolowa Nation v. United States*,
380 F. Supp. 3d 959 (N.D. Cal. 2019) ................................................................ 7, 8

*Towns of Wellesley, Concord & Norwood v. FERC*,
829 F.2d 275 (1st Cir. 1987) (per curiam) ........................................................... 15

*Trout Unlimited v Lohn*,

559 F.3d 946 (9th Cir. 2009) ........................................................... 21

*United Steelworkers of Am. v. Rubber Mfrs. Ass'n,*
   783 F.2d 1117 (D.C. Cir. 1986) ..................................................... 14

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
   136 S. Ct. 1807 (2016) ................................................................... 16

*Vermont Yankee Nuclear Power Corp. v. NRDC, Inc.,*
   435 U.S. 519 (1978) ....................................................................... 21

*Viet. Veterans of Am. v. CIA,*
   811 F.3d 1068 (9th Cir. 2016) ................................................. 13, 14

*W. Radio Servs. Co. v. Glickman,*
   123 F.3d 1189 (9th Cir. 1997) ....................................................... 18

*White v. Lee,*
   227 F.3d 1214 (9th Cir. 2000) ....................................................... 25

*Whiteway v. Fedex Kinkos Off. & Print Serv., Inc.,*
   No. C 05-2320, 2009 WL 9523749 (N.D. Cal. Oct. 2, 2009) ......... 12

*WildEarth Guardians v. U.S. Dep't of Justice,*
   181 F. Supp. 3d 651 (D. Ariz. 2015) ............................................. 15

*Wozniak v. Adesida,*
   368 F. Supp. 3d 1217 (C.D. Ill. 2018) ........................................... 22

*Zepeda v. INS,*
   753 F.2d 719 (9th Cir. 1983) ......................................................... 19

**Statutes**

5 U.S.C. § 704 ..................................................................................... 15

5 U.S.C. § 706 ..................................................................................... 13

20 U.S.C. § 1070 ................................................................................... 3

20 U.S.C. § 1078 ................................................................................... 3

20 U.S.C. § 1082 ................................................................................. 25

20 U.S.C. § 1087 ................................................................................... 3

20 U.S.C. § 1087e ............................................................................. 3, 4

20 U.S.C. §§ 1071-1087-4 ................................................................... 3

**Rules**

Federal Rule of Civil Procedure 12 ..................................................... 21

Federal Rule of Civil Procedure 23 .................................................. 1, 9

Federal Rule of Civil Procedure 56 ................................................................ 1

**Regulations**

34 C.F.R. § 685.206 ................................................................................ 3, 4

34 C.F.R. § 685.222 ......................................................................... 4, 20, 21

59 Fed. Reg. 61,664 (Dec. 1, 1994) ........................................................ 3

60 Fed. Reg. 37,768 (July 21, 1995) ....................................................... 3

81 Fed. Reg. 39,330 (June 16, 2016) ...................................................... 3

81 Fed. Reg. 75,926 (Nov. 1, 2016) ....................................................... 4

84 Fed. Reg. 49,788 (Sept. 23, 2019) ..................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DECERTIFY CLASS AND FOR SUMMARY JUDGMENT

Notice is hereby given that on July 28, 2022, at 8:00 a.m., before the Honorable William Alsup, in Courtroom 12 of the 19th Floor of the San Francisco Courthouse, Defendants will move the Court to enter summary judgment for Defendants in this action and, in the alternative, to decertify the class.

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56, to decertify the class pursuant to Federal Rule of Civil Procedure 23, and seek an Order entering final judgment for Defendants on all claims asserted in this action. In the alternative, Defendants request that the Court enter an order decertifying the class. The basis for this motion is set forth more fully in the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs filed this lawsuit in June 2019, challenging the U.S. Department of Education's ("Department") year-long delay in issuing any borrower defense decisions. Plaintiffs did "not ask this Court to adjudicate their borrower defenses," and instead sought a "simple" order, "compelling the Department to start granting or denying their borrower defenses." Compl. ¶ 10, ECF No. 1. Shortly thereafter, the Court granted class certification because "*the Department ha[d] decided zero applications since June 2018*," and Plaintiffs alleged that "all [pending borrower defense] claims were subject to the same alleged policy of inaction." Order at 8, 12, ECF No. 46 (emphasis in original) ("Class Cert. Order"). Three years later, the Department has approved tens of thousands of borrower defense applications, and incontrovertibly "restart[ed] the decisionmaking process." *Id*. at 13. Because the Department has already provided the very relief that Plaintiffs sued to obtain—that is, an end to the alleged "systemic abdication of its obligation to process borrower defense claims," *id*., Plaintiffs' original claim pursuant to § 706(1) of the Administrative Procedure Act ("APA") is moot and "must be dismissed." *Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1016-17 (9th Cir. 2012).

Even if the Department's actions have not mooted the case, the Court should decertify the class because the sole basis on which it granted certification—the existence of a common delay in

issuing decisions equally applicable to all borrower defense applicants—no longer exists.  As the Department continues to issue borrower defense decisions in varied circumstances, it has made clear that there is no "policy of inaction" applicable to the class as a whole.  In light of these changed circumstances, class action status is no longer appropriate.

Plaintiffs filed a supplemental complaint asserting new claims in 2021, but those claims are similarly based on a state of affairs that no longer exists.  The Department is no longer using the "form denial notices" Plaintiffs challenge, so the dispute over the legal sufficiency of those notices is academic.  Even if the Court were to determine the Department's prior denial notices were insufficiently reasoned, the only remedy would be to remand particular denial decisions to the Department for a better explanation.  That process is already happening, and the Department has made clear that it will issue new decisions to every former class member who received a denial since class certification.  Plaintiffs further attack the Department's process for adjudicating claims in 2019 and 2020 on the basis that it constituted an unlawful "presumption of denial," but they do not challenge any final agency action subject to APA review.  And class resolution of this claim is also inappropriate because, as alleged by Plaintiffs, this "policy" does not apply equally to all class members, and instead varies depending on the school a borrower attended and the evidence available to the Department.  In all events, Plaintiffs' claims fail on the merits.

As for remedies, Plaintiffs have come full circle and seek to force the Department to approve *en masse* all pending borrower defense applications through an impossible-to-comply-with show cause order.  Such relief is not available under the APA and would mark an extraordinary intrusion, at an extraordinary cost to the public fisc, into the administration of a program that Congress has assigned to the Department, not Plaintiffs or this Court.  The Supreme Court has made clear that lawsuits are not the proper means of bringing about such programmatic change, which necessarily entails the weighing of costs, benefits, and policy considerations that courts are ill-equipped to conduct.

Ultimately, Plaintiffs challenge a delay that has long since ended, denial notices that the Department is not relying on, and an adjudicatory process that is not subject to APA review.  The Court should grant Defendants' summary judgment motion and deny Plaintiffs' motion.

**BACKGROUND**

**I.    Statutory and Regulatory Background**

The Secretary of Education ("Secretary") is charged with carrying out certain student loan programs under Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 *et seq.*, including the William D. Ford Direct Loan Program ("Direct Loan Program"), *id.* § 1087 *et seq.*, and the Federal Family Education Loan ("FFEL") Program, *id.* §§ 1071-1087-4.  Effective July 1, 2010, no new loans are authorized under the FFEL Program.  *Id.* § 1078(a)(1).   The HEA provides that, unless otherwise specified, Direct Loans "shall have the same terms, conditions, and benefits, and be available in the same amounts, as loans made" under the FFEL Program.  *Id.* § 1087e(a)(1).

Although borrowers in these loan programs generally are obligated to repay any federal loans received, Congress has authorized the Secretary, in certain circumstances, to relieve the borrower of this obligation based on the misconduct of his or her school.  For Direct Loans, the HEA authorizes the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment."  20 U.S.C. § 1087e(h).  The statute is otherwise silent with respect to borrower defense.

Pursuant to this authority, the Department promulgated regulations in 1994 (effective in 1995) which permitted a borrower to "assert as a defense against repayment of his or her loan 'any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law.'"  60 Fed. Reg. 37,768, 37,769 (July 21, 1995).  This standard remains applicable to all loans "first disbursed prior to July 1, 2017."   34 C.F.R. § 685.206(c)(1).  If a borrower asserted a "successful" defense against repayment, the 1994 regulation provided for the Secretary to "notif[y] the borrower that the borrower is relieved of the obligation to repay all or part of" his or her relevant loan debt, and then "afford[] the borrower such further relief as the Secretary determines is appropriate under the circumstances."  59 Fed. Reg. 61,664, 61,696 (Dec. 1, 1994).  The 1994 regulation set forth no process for the submission and consideration of borrower defense assertions and, prior to 2015, was "rarely used."  *See* 81 Fed. Reg. 39,330, 39,330, 39,335 (June 16, 2016); *see also Cal. Ass'n of Private Postsecondary*

*Schools v. DeVos*, 436 F. Supp. 3d 333, 336 (D.D.C. 2020).

The Department promulgated new borrower defense regulations in 2016 that ultimately took effect in October 2018. *See* 81 Fed. Reg. 75,926 (Nov. 1, 2016). These regulations announced a new substantive standard for evaluating borrower defense claims first disbursed on or after July 1, 2017, premised on a uniform federal definition of what institutional acts or omissions constitute a borrower defense. *See* 34 C.F.R. § 685.222(a)(2). The regulations clarified that under both this standard and the standard set forth in the 1994 rule, a "borrower defense" is "an act or omission of the school attended by the student that relates to the making of a Direct Loan for enrollment at the school or the provision of educational services for which the loan was provided." 34 C.F.R. § 685.222(a)(5). The regulations also announced new procedures for the assertion and adjudication of borrower defense claims, regardless of when a loan was first disbursed. *Id*. §§ 685.206(c)(2); 685.222(a)(2). These procedures require that a borrower defense applicant "[s]ubmit an application to the Secretary . . . [p]roviding evidence that supports the borrower defense" and "any other information or supporting documentation reasonably requested by the Secretary." *Id*. § 685.222(e)(1). They further provide for the Secretary to designate an official to "determine whether the application states a basis for a borrower defense" and then resolve the claim through a fact-finding process; to issue a written decision; and, if the claim is approved, "determine[] the appropriate amount of relief to award the borrower." *Id*. §§ 685.222(e)(3)-(4), (i)(1).

Both the 1994 and 2016 regulations provide for separate consideration of, in the first instance, whether a given borrower defense claimant asserts sufficient "acts or omissions," 20 U.S.C. § 1087e(h), on the part of his or her school to establish a defense to repayment and second, if so, the appropriate relief. Neither provides any timetable for the Secretary's resolution of borrower defense applications. Once a borrower submits a borrower defense application, the Department places that borrower's relevant loans in forbearance or, if the borrower is already in default, it stops collections pending the Department's resolution of the borrower defense application. *See* 34 C.F.R. § 685.222(e)(2); *see also* Decl. of Richard Cordray, Chief Operating

Officer of Federal Student Aid ¶ 6 ("Cordray Decl.") (attached as Exhibit 1).  The Department also provides an interest credit to effectively cancel any interest that accrues on a loan for which a borrower seeks cancellation while the borrower's application is pending.  *Id.*

The Department published a new final rule in September 2019, rescinding in large part the 2016 regulations and establishing new standards governing the assertion and consideration of borrower defenses for loans first disbursed on or after July 1, 2020.  84 Fed. Reg. 49,788 (Sept. 23, 2019).  The Department is currently engaged in a new rulemaking process that would provide comprehensive regulation of the borrower defense claims adjudication process.  *See* https://www2.ed.gov/policy/highered/reg/hearulemaking/2021/index.html?src=rn.

## II.     Factual Background and Procedural History

Plaintiffs filed a class action complaint on June 25, 2019, challenging the Department's alleged delay in adjudicating borrower defense claims.  *See* Compl. ¶¶ 181-82 (asserting that the Department "last approved a borrower defense application on June 12, 2018" and "last denied" one on May 24, 2018).  Pursuant to § 706(1) of the APA, they sought injunctive relief compelling the Department to "start granting or denying borrower defenses."  *Id.* ¶ 10.  On October 30, 2019, the Court certified a class consisting of, with certain exceptions, "[a]ll people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, [and] whose borrower defense has not been granted or denied on the merits."  Class Cert. Order at 14.  The Court granted class certification based on Plaintiffs' allegations that the case involved an alleged "policy of inaction . . . to which each class member was subjected."  *Id.* at 12.

Defendants respectfully refer the Court to their previously filed summary judgment brief for a complete statement of the facts predating the filing of Plaintiffs' complaint and class certification.  *See* Defs.' Mot. for Summ. J. at 5-12, ECF No. 63 ("Defs.' MSJ").  Defendants further refer the Court to the certified administrative record for the Department's explanation of why it did not issue any final borrower defense decisions between June 2018 and December 2019. ECF Nos. 56, 71.  In short, the Department asserted that the "primary driver of the delay" was the

Department's goal of "develop[ing] a comprehensive methodology for awarding borrower defense relief to successful claimants before it resume[d] issuing final decisions."  Defs.' MSJ at 21.  Once the Department developed a new methodology, it resumed issuing decisions in December 2019. *See* ECF No. 71 (supplement to administrative record); Defs.' Opp'n to Pls.' Mot. for Summ. J. at 1, 5, ECF No. 72 ("Defs.' MSJ Opp'n") (explaining this process).

As the Department worked its way through a massive (and ever growing) backlog of pending applications, denials significantly outstripped approvals in the first few months following announcement of the new relief methodology.  *See, e.g.*, Defs.' Reply re Show Cause Order at 2-4, ECF No. 162; Defs.' Opp'n to Pls.' Mot. to Enforce Settlement Agreement at 5-6, ECF No. 140; Defs.' Resp. to Court's Request, ECF No. 145.  Given the large backlog of pending claims, the Department originally focused its review on "applications with little or no relevant evidence," and expected that, as it continued to review applications supported by significant evidence and "common evidence for additional schools," "there may be an increased number of approvals over time."  *See* Decl. of Mark A. Brown ¶¶ 9-17, ECF No. 140-1 (Oct. 1, 2020); *accord, e.g.*, Decl. of Collen M. Nevin (AR 336-354), ECF No. 56 (Nov. 14, 2019).

On April 6, 2020, the parties executed a settlement agreement to resolve Plaintiffs' lawsuit. The Court preliminarily approved the agreement on May 22, 2020.  ECF No. 103.  The Court ultimately denied final approval of the settlement because the parties had not reached a "meeting of the minds," and ordered a period of discovery.  ECF No. 146.  While that process played out, the Department agreed not to issue any further decisions denying the borrower defense applications of class members.  *See* Decl. of Mark A. Brown, ECF No. 150-1 (Oct. 30, 2020).  Discovery has now concluded, and, based on the materials obtained through discovery, Plaintiffs filed a supplemental complaint to challenge various additional aspects of the Department's process of reviewing borrower defense applications and issuing decisions to borrowers.  *See* ECF No. 198.

Shortly after the Court declined to approve the parties' 2020 settlement agreement, there was a presidential election, resulting in a change in administration.  Under new leadership as of January 2021, the Department began making changes to its process for reviewing borrower defense

applications and providing relief to successful claimants.  *See* Cordray Decl. ¶¶ 7-21; Decl. of James Kvaal, Under Secretary of Education ("Kvaal Decl.") ¶¶ 5-15 (attached as Exhibit 2).  For example, in March 2021, the Department rescinded its partial relief methodology and announced that any borrower who had been approved for partial relief under that methodology would be approved for full loan relief.  Cordray Decl. ¶ 18.  The Department also announced that, moving forward, it would apply a rebuttable presumption that successful applicants should receive full relief.  *Id*.  The Department further announced its intent to issue new borrower defense regulations, and has proposed through those regulations a significant overhaul of its claims review process.  *Id*. ¶ 21; Kvaal Decl. ¶¶ 9-10.[1]

The Department has also prioritized the ongoing work of reviewing applications, collecting and analyzing relevant evidence, and issuing final decisions.  Between June 25, 2019, and June 14, 2022, as a result of BDG's efforts described above, the Department approved approximately 90,000 individual applications, and will be awarding relief to over half a million borrowers based upon group discharge approvals.  Cordray Decl. at ¶14.  Since June 2021 alone, thousands of decisions have been announced, approving claims submitted by borrowers who attended a wide variety of schools. Cordray Decl. ¶¶ 15-16.  Every decision during this time period has been an approval, resulting in full relief for the successful borrower defense applicant.  *Id*.

On May 27, 2022, the Court entered the operative schedule for summary judgment briefing. ECF No. 240.  Plaintiffs filed their summary judgment motion on June 9, 2022.  ECF No. 245 ("Pls.' MSJ").  On June 22, 2022, the parties jointly moved for preliminary approval of the parties' executed class action settlement agreement, ECF No. 246, and requested that the Court vacate the summary judgment briefing schedule, ECF No. 247.  Because the Court has not yet ruled on that request, Defendants submit this summary judgment brief.

## LEGAL STANDARDS

In an APA case, "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise

---

[1] *See also* https://www2.ed.gov/policy/highered/reg/hearulemaking/2021/index.html?src=rn.

consistent with the APA standard of review." *Tolowa Nation v. United States*, 380 F. Supp. 3d 959, 963 (N.D. Cal. 2019) (citation omitted)).  The "entire case on review is a question of law," and the "district judge sits as an appellate tribunal." *Herguan Univ. v. ICE*, 258 F. Supp. 3d 1050, 1063 (N.D. Cal. 2017) (citation omitted).  As a result, "trial is unnecessary." *Bergmann v. U.S. Dep't of Transp.*, 710 F. Supp. 2d 65, 74 (D.D.C. 2010).

Generally, judicial review in an APA case is "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).  This is as true of claims challenging agency inaction as it is of claims challenging agency action.  *San Luis & Delta Mendota Water Auth. v. U.S. Dep't of the Interior*, 984 F. Supp. 2d 1048, 1056 (E.D. Cal. 2013); *City of Santa Clarita v. U.S. Dep't of Interior*, No. 02-cv-0697, 2005 WL 2972987, at *2 (C.D. Cal. Oct. 31, 2005).  In the former case, however, "there is no final agency action to demarcate the limits of the record." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000).  Courts may thus consider agency declarations explaining the agency's actions or otherwise justifying the inaction challenged under § 706(1).  *See, e.g.*, *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 511-12 (9th Cir. 1997).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks omitted); *see also Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (explaining that the central question when analyzing mootness is "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief") (citation omitted).  Thus, even if there is a live controversy when the case is originally filed, courts should refrain from deciding claims if "the requisite personal interest that must exist at the commencement of the litigation" is no longer present.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 & n.22 (1997) (citation omitted).

Courts have held that a challenge to a government policy "becomes moot when the government repeals, revises, or replaces" the challenged policy, because "the source of the plaintiff's prospective injury has been removed, and there is no 'effectual relief whatever' that the

court can order." *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) (citation omitted); *see also Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam) ("the regulation at issue is no longer in force" and "the issue of the validity of the old regulation is moot"); *Kavoosian v. Blinken*, No. 20-55325, 2021 WL 1226734, at *1 (9th Cir. Feb. 9, 2021) (dismissing appeal as moot where challenged presidential proclamation was revoked); *Anunciato v. Trump*, No. 20-cv-07869-RS, 2021 WL 3112320, at *4 (N.D. Cal. July 22, 2021) ("[A]ny declaration evaluating the constitutionality of a proclamation no longer in effect would be only advisory and therefore constitutionality impermissible.").

"An order certifying a class 'may be altered or amended before final judgment.'" *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, 2020 WL 2113852, at *2 (N.D. Cal. May 4, 2020) (quoting Fed. R. Civ. P. 23(c)(1)); *see also Officers for Justice v. Civil Serv. Commn*, 688 F.2d 615, 633 (9th Cir. 1982). "The standard is the same for class decertification as it is with class certification"—*i.e.*, that "the requirements of Rules 23(a) and (b) are met." *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 635. Plaintiffs bear the burden of demonstrating that the requirements of Rule 23 are satisfied. *See, e.g.*, *Racies*, 2020 WL 2113852, at *2. In deciding whether to decertify as class, a court may consider "subsequent developments in the litigation." *Makaeff*, 309 F.R.D. at 635.

## ARGUMENT

I.   **Defendants Are Entitled To Summary Judgment On Each Of Plaintiffs' Claims.**

   A.   **Defendants Are Entitled to Summary Judgment on Plaintiffs' § 706(1) Claim.**

      1.   **Plaintiffs' Claim is Moot.**

Plaintiffs' § 706(1) claim is based on allegations that, dating to back to 2018, "the Department has not granted any borrower defense applications from any class member," and "the Department has not denied any borrower defense application." Compl. ¶¶ 381-82. The Court relied on these assertions in granting Plaintiffs' motion for class certification. *See* Class Cert. Order at 8 (emphasizing that "the Department has decided zero applications since June 2018"); *id.* at 8-9 ("Nor do defendants offer any timeline for final agency action or explain any *recent* concrete steps taken by the Department (other than mere statements by Department officials) toward

resolving the backlog."). As the Court explained with respect to Plaintiffs' claim under § 706(1), "[a]t bottom, plaintiffs challenge the policy of inaction — to which each class member was subjected — not the outcome of each application." *Id.* at 12; *see id.* at 9 (noting that Plaintiffs "have identified a single uniform policy — namely, the Department's alleged 'blanket refusal' to adjudicate borrower defenses — which 'bridges all their claims'") (citation omitted).

This state of affairs no longer exists, and the Court accordingly lacks subject-matter jurisdiction over Plaintiffs' class claim. Plaintiffs and the Court have defined this case as a challenge to a *complete* lack of decisions on borrower defense applications. But once an agency acts on an application, any claim for relief under § 706(1) is moot. *E.g.*, *Martinez v. United States*, 670 F. App'x 933, 934 (9th Cir. 2016) ("During the pendency of this case, the BLM acted on plaintiffs' application by sending plaintiffs a letter . . . acknowledging receipt of their application and pointing out several deficiencies in the application. Accordingly, Plaintiffs' request to compel agency action on their application is moot, and we dismiss the appeal."); *Rivera v. Patel*, No. 16-cv-00304-PJH, 2016 WL 6427893, at *5 (N.D. Cal. Oct. 31, 2016) ("[T]he DOE has now taken action on Rivera's petition for Secretarial review, dismissing it in light of the promised new investigation. As a result, there is nothing left for the court to 'compel.'"); *Hoffenberg v. United States*, No. 08-cv-08164, 2010 WL 3083533, at *2 (D. Ariz. Aug. 6, 2010) ("Because plaintiff received a final decision on his proposal, there is nothing left to compel. This claim is moot."); *cf. Norton v. S. Utah Wilderness All.* (*SUWA*), 542 U.S. 55, 65 (2004) (explaining that "a court can compel the agency to act, but has no power to specify what the action must be").

Here, the Department has issued many decisions since this lawsuit was filed, and it plans to issue many more. Corday Decl. ¶¶ 9-16. Accordingly, it is no longer the case that "the Department has decided zero applications since June 2018," Class Cert. Order at 8, that every class member remains subject to any "policy of inaction," or that the Department even has a policy of inaction, *id.* at 12; *see also* Kvaal Decl. ¶¶ 5,12. The Department has unequivocally taken the action that Plaintiffs filed this action to compel, *i.e.*, it has "restart[ed] the processing of borrower defense claims," Class Cert. Order at 13; *see also* Pls.' Mot. for Class Cert. at 23, ECF No. 20

(stating that Plaintiffs' requested injunction would "re-start the machinery and push each Student's application forward"). As this class claim is not subject to relief under § 706(1), it should be dismissed as moot.

Perhaps anticipating this argument, Plaintiffs suggest that the § 706(1) claim is not moot because the majority of borrower defense applicants have not received a decision on their applications. Pls.' MSJ at 9, 20-21. But Plaintiffs are not proceeding individually, but on the basis of a class-wide claim, the basis of which no longer exists. *See* Class Cert. Order at 12 (noting that if Plaintiffs were seeking a ruling on the Department's delay with respect to "each application," that "would indeed require an individualized inquiry"). The cases on which Plaintiffs rely, *see* Pls.' MSJ at 20-21, confirm as much, as none considered whether an agency's actions rendered moot a class-wide claim. *See Al Otro Lado, Inc. v. Mayorkas*, No. 17-cv-02366, 2021 WL 3931890, at *5 (S.D. Cal. Sept. 2, 2021) (no consideration of mootness); *Pacharne v. Dep't of Homeland Sec.*, 565 F. Supp. 3d 785 (N.D. Miss. 2021) (case brought by five plaintiffs, not a class); *Rai v. Biden*, No. 21-cv-863, 2021 WL 4439074, at *7 (D.D.C. Sept. 27, 2021) (concluding, in case brought by 60 selectees of the 2021 diversity visa program and their 107 derivative beneficiaries, that "the twenty-two remaining Plaintiffs whose applications have already been adjudicated will be dismissed from the case"). Plaintiffs here chose to pursue their § 706(1) claim on a class-wide basis, even though "the reasonableness or unreasonableness of delay is not suitable to resolution by means of class action." *Padilla v. U.S. ICE*, 354 F. Supp. 3d 1218, 1227 (W.D. Wash. 2018). They must now accept the consequences of that litigation decision, including the effect of Defendants' actions on the Court's subject-matter jurisdiction over that claim.

In cases involving private defendants, courts sometimes hold that "[t]he voluntary cessation of challenged conduct" will not result in mootness, "because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Service Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). But when the government suggests mootness based on a change in policy, a court's mootness analysis "presume[s] that a government entity is acting in good faith," and the government need only "show[] that the

challenged conduct cannot reasonably be expected to start up again." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).  Of course, borrowers whose applications have now been approved are not subject to any potential future delay.  And as to those whose applications remain pending, there is no basis to conclude that the challenged delay is likely to recur, given the Department's efforts to adjudicate applications and reduce the backlog.  *See* Cordray Decl. ¶¶ 9-18.

> **2.      Even if Subsequent Events Have Not Mooted the Case, They Require Class Decertification.**

Even if the Court disagrees that Defendants' actions have mooted Plaintiffs' claims based on a "common policy" of delay, those actions have at a minimum eliminated the sole basis on which the Court granted class certification in the first place.

Plaintiffs can no longer carry their burden of establishing that "the requirements of Rules 23(a) and (b) are met." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (citation omitted).  As discussed above, the Court certified the class based on its conclusion that "plaintiffs challenge the policy of inaction — to which each class member was subjected."  Class Cert. Order at 12; *see id.* at 11 ("But these factual differences [cited by Defendants] are irrelevant where plaintiffs define their harm by a single policy."); *id.* at 12 ("Plaintiffs' point is that, whether a borrower defense claim has been pending for three years or three months, all claims were subject to the same alleged policy of inaction.").  Even assuming *arguendo* that such a policy ever existed, there is no longer a delay common to all class members that the Court could review.  *See Whiteway v. Fedex Kinkos Off. & Print Serv., Inc.*, No. C 05-2320, 2009 WL 9523749, at *3 (N.D. Cal. Oct. 2, 2009) (decertifying class where certification was based on allegation of "common policy," but actual record evidence revealed no "policy or common practice" justifying class treatment).

Unlike at the time of class certification, when it was undisputed that the Department had not issued *any* final borrower defense decisions for well over a year, the Department has now been issuing decisions to class members for 18 months.  *See* Corday Decl. ¶¶ 9-16; *see also* Kvaal Decl. ¶¶ 7-8.  While the remaining class members all have pending applications, the reasons their applications remain pending will vary, depending on the school they attended, the nature of their claim, and when they submitted their application.  *See* ECF No. 221 at 4-5 (Feb. 24, 2022)

(explaining Department's current general approach to reviewing borrower defense applications, including applications from "high-volume schools" involving "the review of thousands of pages of documentary evidence" and "complex individualized analysis" for claims submitted by applicants who did not attend such high-volume schools"); *see also* Cordray Decl. ¶¶ 9-10 (similar).  Indeed, based on the current class definition, a borrower could submit an application today and join the class.  But such an individual would not be similarly situated, or present common questions of law or fact, as someone who submitted an application a year ago, or before the case was filed, or, according to Plaintiffs' preferred example, "seven years" ago.  *See* Pls.' MSJ at 19.

Absent any common delay, this case turns solely on the kind of individualized determinations that the Court previously recognized would defeat class certification.  *See* Class Cert. Order at 12 (certifying class because plaintiffs were at that time "seek[ing] to restart the decision-making process," and assessing their § 706(1) claims in the absence of such a "systemic" delay "would indeed require an individualized inquiry").  Based on these "subsequent developments in the litigation," *Makaeff*, 309 F.R.D. at 635, Plaintiffs cannot establish that the commonality requirement of Rule 23 is satisfied, and their class should be decertified.

### 3. Plaintiffs Are Not Entitled To Relief On Their § 706 Claim.

The APA authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  Such a claim can proceed, however, "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *SUWA*, 542 U.S. at 64 (emphasis in original).  A court can only compel such "agency action" where it is "pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'" *Viet. Veterans of Am. v. CIA*, 811 F.3d 1068, 1075-76 (9th Cir. 2016) (citation omitted)).  "An agency action may be deemed 'unreasonably delayed' where the governing statute does not require action by a date certain, whereas an action is 'unlawfully withheld' if an agency fails to meet a clear deadline prescribed by Congress." *S.F. Baykeeper, Inc. v. Browner*, 147 F. Supp. 2d 991, 1005 (N.D. Cal. 2001) (citation omitted).  Where, as here, no such deadline is prescribed, "[t]here is no per se rule as to how long is too long to wait for

agency action." *In re Pesticide Action Network N. Am.*, 532 F. App'x 649, 651 (9th Cir. 2013) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

Based on these principles, Plaintiffs are wrong to argue that they are entitled to summary judgment solely because the Department assertedly "refused" to issue borrower defense decisions for a period of time in 2018 and 2019. Pls.' MSJ at 20. For one thing, the Department is now issuing decisions, so that contention is irrelevant. For another, to the extent Plaintiffs have any live § 706(1) claim at this point (and they do not), such a claim is not about whether the Department has unlawfully withheld any action it is required to perform (*i.e.*, issuing borrower defense decisions generally), but about whether that action has been unreasonably delayed with respect to any particular applicant. Where, as here, the "agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions—such as the APA's general admonition that agencies conclude matters presented to them 'within a reasonable time,' *see* 5 U.S.C. 555(b)—a court must compel only action that is delayed unreasonably." *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017); *cf. Viet. Veterans of Am.*, 811 F.3d at 1083 (Wallace, J., concurring in part and dissenting in part) (§ 706(1) injunction appropriate where agency had "unlawfully withheld agency action *by denying that it owes* [the duty that the plaintiff sought to compel]") (emphasis added and quotation omitted). In other words, in the absence of a congressional timeline for the completion of agency action, a court cannot find that an agency has acted unlawfully, or "breached" its duty to act, unless it finds that the agency's delay in taking the required action is unreasonable.

Here, as discussed above, there is no present policy of delay for the Court to review, and relief pursuant to § 706(1) at this point would merely "'punish' [the Department] for its past delay." *United Steelworkers of Am. v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986) (determining that "judicial imposition of an overly hasty timetable" to remedy a delay that had become moot would "ill serve the public interest"). In light of the "current state of affairs—in which agency action is ongoing," there is nothing "a court should lawfully and discretionarily

compel." *Hyatt v. U.S. Patent & Trademark Office*, 146 F. Supp. 3d 771, 781-84 (E.D. Va. 2015). Because the Department is actively reviewing and adjudicating borrower defense applications, has made tangible progress on reducing the backlog, and has concrete plans for issuing decisions to class members going forward, *see, e.g.*, Cordray Decl. ¶¶ 9-18; Kvaal Decl. ¶¶ 5-8, Plaintiffs are not entitled to relief on their § 706(1) claim. *See, e.g.*, *See Towns of Wellesley, Concord & Norwood v. FERC*, 829 F.2d 275, 277 (1st Cir. 1987) (per curiam) (declining to "interfere in ongoing agency proceedings" where a final decision had been delayed fourteen months, given agency assurances that "it is moving in a diligent manner to conclude" the matter before it); *Cent. Sierra Envtl. Res. Ctr. v. Stanislaus Nat'l Forest*, 304 F. Supp. 3d 916, 951 (E.D. Cal. 2018) (collecting cases for proposition that where agency provided a "concrete timeline," paired with "relatively short delay" of less than two years, courts declined to find the delay unreasonable under the APA).

Because the Department is not unreasonably delaying anything to which the current class as a whole is legally entitled, the Court should award summary judgment to Defendants.

**B.      Plaintiffs' "Presumption of Denial Policy" Claim Fails as a Matter of Law.**

Plaintiffs next challenge as arbitrary and capricious what they refer to as a "presumption of denial" policy.  Because Plaintiffs have identified no "final agency action," 5 U.S.C. 704, the Court lacks jurisdiction to hear this APA claim.  *See Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008).  In any event, the claim is inappropriate for resolution on a class basis and fails on the merits.

**1.      Plaintiffs Do Not Challenge Final Agency Action.**

"[T]he APA limits judicial review to lawsuits challenging discrete 'final agency action . . . .'" *WildEarth Guardians v. U.S. Dep't of Justice*, 181 F. Supp. 3d 651, 669 (D. Ariz. 2015).  "A plaintiff 'must direct its attack against some particular agency action that causes it harm,' because if a court does not limit its review to 'discrete' agency actions, it risks embarking on the kind of wholesale, programmatic review of general agency conduct for which courts are ill-suited, and for which they lack authority." *Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of Interior*,

478 F. Supp. 2d 11, 25 (D.D.C. 2007) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)).  Judicial review is available only over discrete, circumscribed agency action that is "final." *Ore. Nat. Desert Ass'n v U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).  Two conditions comprise a final agency action: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016).  Here, Plaintiffs' "presumption of denial" claim fails to challenge any agency action that is either "discrete" or "final."

To start, it is unclear what Plaintiffs are even challenging.  *See Friends of the Earth*, 478 F. Supp. 2d at 25 ("A sure sign that a complaint fails the 'final agency action' requirement is when 'it is not at all clear what agency action plaintiff purports to challenge.") (quoting *Indep. Petroleum Assoc. of Am. v. Babbitt*, 235 F.3d 588, 595 (D.C. Cir. 2001)).  At various times, Plaintiffs describe the supposed policy as one that "assumed that all borrower defense applications should and will be denied," Suppl. Compl. ¶ 98, or a policy that "established . . . a tiny and artificial cap on the number of BD applications ED would approve, and then reverse-engineered a process to deny nearly all other applications," Pls.' MSJ at 10.  But Plaintiffs point to no rule, regulation, or other policy document stating an official agency policy in the manner Plaintiffs have described it.  Rather than "identify some 'agency action' that affects [them] in the specified fashion," *Nat'l Wildlife Fed'n*, 497 U.S. at 882, Plaintiffs have "attached a 'policy' label to their own amorphous description of the [Department's] practices," *Bark  v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014).  And that label is in any case belied by facts.  As the Cordray Declaration makes clear, the Department is *not* denying all applications—and indeed, has issued only approvals (thousands of them) and no denials over the past roughly 18 months.  Cordray Decl. ¶¶ 14-17. Further, the Department does not have a policy of denying all applications.  Kvaal Decl. ¶¶ 13-15. Moreover, the Department is no longer relying on training, instructional and analysis documents related to borrower defense that were adopted under prior leadership.  Cordray Decl. ¶¶ 19-21.

At the end of the day, Plaintiffs essentially assert that "violation of the law is rampant within [the borrower defense] program." *Nat'l Wildlife Fed'n*, 497 U.S. at 891; *see* Pls.' MSJ at 34 (asserting that the Department "has no lawful process in place to timely decide the backlog of BD applications" and "is wholly unable to produce lawful denial notices"). Even if that were true (and it is not), Plaintiffs "cannot seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Id.*; *see also, e.g.*, *City of New York v. U.S. DoD*, 913 F.3d 423, 431 (4th Cir. 2019) ("We are woefully ill-suited . . . to adjudicate generalized grievances asking us to improve an agency's performance or operations."). "While a single step or measure is reviewable, an on-going program or policy is not," *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001), and Plaintiffs challenge nothing less than the Department's entire multi-level system of reviewing and adjudicating borrower defense applications.[2]

Nor do Plaintiffs challenge any *final* agency action. As they characterize it, the alleged policy is, at most, a set of instructions setting forth criteria and parameters to be used in the borrower defense adjudication process. *E.g.*, Pls.' MSJ at 10 (asserting that "policy" was "reflected in a series of sub-regulatory memoranda, procedures, and guidance documents"); *id.* at 12 (describing "at least 760 memoranda" analyzing "allegations against specific schools or school groups").[3] But Plaintiffs do not challenge any actual final decision issued to any class member,

---

[2] In the (one-paragraph) section of their brief contending that the "presumption of denial policy" is final agency action, Pls.' MSJ at 24, Plaintiffs notably neither define the policy nor explain what specific agency action is allegedly final. Even if Plaintiffs do not explicitly "style [their] attacks as one against an agency 'program,' [their] identification of the agency actions at issue is no less vague." *Osage Prods. Ass'n v. Jewell*, 191 F. Supp. 3d 1243, 1249 (N.D. Okla. 2016) (dismissing complaint that merely "describes certain arbitrary or unlawful agency practices . . . and requests review of *all* agency actions falling within those descriptions").

[3] Plaintiffs also assert that the Department had a "goal" of denying "90% or more" of borrower defense applications. *E.g.*, Pls.' MSJ at 11. In support of this proposition, they cite excerpts from two internal memoranda that reflect, at most, guarded guesses about the potential outcomes of future applications. *E.g.*, Pls.' Ex. 22, ECF No. 245-2 at 6 (untitled, undated document stating expectation that "based on the limited data available," the approval rate for certain schools with "a large volume of applications" is "likely to be approximately under 10%"). This fails to establish that the Department itself had an official policy of requiring that applications be denied at any particular rate, or that it took any final agency action to enforce such a policy. *E.g.*, *Pac. Bell. Tel. Co. v. Pub. Utils. Comm'n of Cal.*, No. C 03-01850 2005 WL 818375, at *1 (N.D. Cal. Apr. 5,

and prior to any such decision being issued, the Department has necessarily not consummated its decision-making process or taken any action conclusively determining the rights of a borrower defense applicant.  *See, e.g.*, *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 925 (9th Cir. 1999) ("steps leading to an agency decision," that are not the "final action itself," do not "mark[] the culmination of a decision making process"); *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997) ("The APA thus insulates from immediate judicial review the agency's preliminary or procedural steps.").  Plaintiffs' rights can be determined only through a final decision on their application—not internal guidance for considering those applications that Plaintiffs contend was "hidden . . . from the general public," Pls.' MSJ at 10.  Internal protocols and criteria for reviewing applications that "merely 'clear[] the way' for the agency's subsequent substantive decision," and that work no "binding outcome or definitive result," are not final agency action.  *Ctr. for Food Safety v. Perdue*, 320 F. Supp. 3d 1101, 1107-08 (N.D. Cal. 2018) (citing *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944 (9th Cir. 2017)).

## 2. Plaintiffs' Claim Is Inappropriate for Class Resolution.

Even if Plaintiffs were challenging some discrete, final agency action, this claim—which was asserted long after the Court certified a class to pursue Plaintiffs' § 706(1) claim—is inappropriate for class resolution.  The only class that has been certified in this case consists of all borrowers with pending applications.  Yet Plaintiffs do not dispute that the procedures described in their papers allow for the approval of *some* class members' claims.  *See* Pls.' MSJ at 10-12.  Such individuals have no standing to pursue the asserted "presumption of denial policy."  Plaintiffs also recognize that the Department "created at least 760 memoranda concerning allegations against specific schools or school groups."  *Id*. at 12.  Even if such memoranda constituted reviewable final agency action, consideration of Plaintiffs' challenge would require individualized analysis based on the school a particular class member attended and the criteria the Department adopted to review claims submitted by students who attended that school.

---

2005) ("general prediction" that does not represent final view of the agency itself is not final agency action).

"Like questions of standing, 'class certification must be addressed on a claim-by-claim basis,'" and the party seeking class certification "bears the burden of demonstrating that all of Rule 23's requirements for class certification have been satisfied" with respect to each claim. *Stevens v. Harper*, 213 F.R.D. 358, 377 (E.D. Cal. 2002). Because Plaintiffs have not even attempted to make that showing for their "presumption of denial policy" claim—and could not make that showing even if they had—any relief the Court awards pursuant to that claim is necessarily limited to the named class representative plaintiffs. *See, e.g.*, *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091-92 (S.D. Cal. 2004) ("putative class members are not parties to an action prior to class certification" (citing *Zepeda v. INS*, 753 F.2d 719 (9th Cir. 1983)).

### 3. The Purported "Presumption of Denial Policy" is Not Unlawful.

Even assuming there was a "presumption of denial policy" that was properly (and currently) subject to APA review, Plaintiffs have not established that it was unlawful.

### i. Plaintiffs' Arbitrary-and-Capricious Claim Fails.

When conducting review pursuant to § 706(2) of the APA, the "scope of review is narrow and deferential." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008). A court "may not substitute its own policy judgment for that of the agency" and instead "simply ensures that the agency has acted within a zone of reasonableness." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). The Ninth Circuit has emphasized that deference must be given "to the agency's expertise in identifying the appropriate course of action," and that a court "cannot 'ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives.'" *California ex rel. Becerra v. Azar*, 950 F.3d 1067, 1096 (9th Cir. 2020) (citation omitted). Plaintiffs hold many theories about how borrower defense applications should be reviewed and adjudicated and might take a different approach if they were in charge of the Department of Education. But Congress has delegated authority over this federal program to the Department—not Plaintiffs or the Court—and Plaintiffs' policy disagreement is no basis to set aside agency action under the APA. *See, e.g.*, *id.* (courts are "prohibited" from "second-guessing the agency's weighing of risks and benefits and penalizing it for departing from the inferences and assumptions' of others") (citation omitted).

Plaintiffs first argue that the alleged policy "contravenes" the Department's 1994 and 2016 regulations. *See* Pls.' MSJ at 24-26. As discussed above, it is difficult to assess that claim, given the amorphous nature of the policy Plaintiffs attempt to challenge. But those regulations do not require, as Plaintiffs seem to suggest, that the Department give dispositive weight to applicants' sworn statements, and they do not prohibit the Department from requiring that applicants allege a valid basis for borrower defense or submit "supporting evidence" to corroborate their application. *See* Pls.' MSJ at 11. As noted above, the regulations make clear that a borrower defense claim may only be asserted on the basis of misconduct that "relates to the making of the loan for enrollment at the school or the provision of educational services for which the loan was provided." 34 C.F.R. § 685.222(a)(5). And they require that a borrower "provide[] evidence that supports the borrower defense," *id*. § 685.222(e)(1), and that a reviewing official "determine whether the application states a basis for borrower defense," *id*. § 685.222(e)(3). Nothing about those regulations is unlawful, and Plaintiffs do not contend otherwise.

Plaintiffs also rely on isolated statements from a deposition given by Collen Nevin, former Director of the Department's Borrower Defense Group, to conjure a purported conflict between the Department's practice and its regulations. *See* Pls.' MSJ at 24-25. But Ms. Nevin's statements do not establish that the Department "mandated denial regardless of whether the borrower's school engaged in acts or omissions that give rise to a cause of action under applicable state law." *Id*. at 25. In fact, in a portion of the deposition transcript immediately preceding Plaintiffs' selective quotation, Ms. Nevin stated that the Department had only denied claims on threshold grounds that would be applicable "regardless of what law you would apply." Pls.' Ex. 4 at 78:24-79:5, ECF No. 245-1 at 62; *see also id*. at 82:21-83:9, ECF No. 245-1 at 63 (describing the kinds of allegations that, even if presumed true, would not provide a basis for borrower defense under any standard).

The Department's governing borrower defense regulations do not prevent it from establishing such threshold standards to facilitate the orderly review of claims in a complex adjudicatory system. Indeed, as discussed above, those regulations contemplate that the Department decision-maker would review each borrower defense application to determine whether it "states a basis for borrower defense," and then "resolve[] the claim through a fact-finding

process."  34 C.F.R. § 685.222(e)(3).  Moreover, it is well established that "[a]dministrative agencies are free to announce new principles during adjudication," *Cities of Anaheim, Riverside, Banning, Colton & Azusa, Cal. v. FERC*, 723 F.2d 656, 659 (9th Cir. 1984), and have "broad discretion to use rule-making or to proceed by case-by-case adjudication," *Carr v. INS*, 89 F.3d 844, at *1 (9th Cir. 1996) (table); *see also, e.g.*, *Interstate Nat. Gas Ass'n of Am. v. FERC*, 285 F.3d 18, 58-59 (D.C. Cir. 2002) (an agency "undoubtedly enjoys broad discretion to determine its own procedures"); *Human Res. Mgmt., Inc v. Weaver*, 442 F. Supp. 241, 251 (D.D.C. 1977) (recognizing that "agencies may articulate policies, interpret rules, and develop guidelines in the course of adjudicative proceedings").  The Department's procedure—in a manner modeled on Federal Rule of Civil Procedure 12(b)(6), *see* Pls.' Ex. 4 at 82:9-17, ECF No. 245-1 at 63 (Nevin Dep. Tr.)—of screening out applications that do not even allege the type of misconduct that would give rise to borrower defense under any standard was a reasonable exercise of its discretion to administer the HEA and its governing regulations through an adjudicatory process.  *See, e.g.*, *Trout Unlimited v Lohn*, 559 F.3d 946, 955 (9th Cir. 2009) (courts should defer to "informed exercise of agency discretion" in area of "special technical expertise"); *cf. Vermont Yankee Nuclear Power Corp. v. NRDC, Inc.*, 435 U.S. 519, 546 (1978) ("Congress intended that the discretion of the agencies and not that of the courts be exercised in determining when extra procedural devices should be employed").

Plaintiffs ultimately resort to unsubstantiated allegations of bad faith, contending that the alleged "policy" reflects a "bias against BD applicants."  Pls.' MSJ at 27.  But as discussed above, the Department did not establish any policy *requiring* "the majority" of borrower defense applications to be denied.  Pls.' MSJ at 27.  In any event, there is nothing inherently illegal about denying borrower defense applications.  Nor is there any legal requirement that the Department grant all or most borrower defense claims.  Indeed, the HEA delegates—in broad language— authority over borrower defense to the Secretary, and it contains no limitations on the Secretary's discretion to determine the conditions under which he will relieve borrowers from their obligation to repay the Department based on institutional misconduct.  *See, e.g.*, *Florida v. HHS*, 19 F.4th

1271 (11th Cir. 2021) ("[B]y its very nature, a broad grant of authority . . . does not require an indication that specific activities are permitted.").  The fact that the Department denied borrower defense applications in situations where Plaintiffs think the applications should have been approved comes nowhere close to the "strong showing" needed to demonstrate "that the agency acted in bad faith or abused its discretion." *Guidiville Rancheria of Calif. v. United States*, 2013 WL 6571945, at *8 (N.D. Cal. Dec. 13, 2013); *see also Australians for Animals v. Evans*, 301 F. Supp. 2d 1114, 1127 (N.D. Cal. 2004) (finding allegation of bad faith based on disagreement with challenged policy "untenable").

ii.   Plaintiffs' Due Process Claims Fail.

Plaintiffs next argue that the alleged "presumption of denial policy" deprives them of due process.  Even assuming Plaintiffs have certain property interests in "raising a defense to repayment," Pls.' MSJ at 28, Plaintiffs fail to establish that any deprivation occurred here.

Plaintiffs first contend that the Department utilized an administrative procedure that was a "sham through and through." *Id*. at 29 (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir. 1998), and citing *Ciechon v. City of Chicago*, 686 F.2d 511, 517 (7th Cir. 1982)).  This argument is both factually and legally deficient.  First, Plaintiffs' theory assumes that the Department improperly adjudicated applications based on a presumption of denial, which is incorrect for the reasons stated above.  Second, the out-of-Circuit cases cited by Plaintiffs are inapposite.  As an initial matter, "[i]n *Levenstein*, the Seventh Circuit was considering a district court's denial of a motion to dismiss"—and so assumed the plaintiff's allegations of a sham process were true— whereas "[h]ere, the court is ruling on a summary judgment motion, and Plaintiff[s] must put forth facts rather than mere allegations," which they have failed to do. *Wozniak v. Adesida*, 368 F. Supp. 3d 1217, 1253 (C.D. Ill. 2018).  Moreover, both *Levenstein* and *Ciechon* concerned individualized employment-related decisions, not programmatic challenges to agency decisions. *Levenstein*, 164 F.3d at 346 (considering allegations that university violated the plaintiff's "constitutional rights by improperly suspending him, denying him a fair hearing, and forcing him to resign from the University because of allegations that he had committed acts of sexual harassment"); *Ciechon*, 686

F.2d at 513 (Fourteenth Amendment challenge to discharge of career paramedic).  And as those cases establish, "where courts have found that the decisionmaker has prejudged the outcome, the plaintiff was able to show that the decisionmaker had some ulterior motive." *Fei Wang v. Bd. of Trustees of Univ. of Illinois*, No. 18-cv-07522, 2020 WL 1503651, at *6 (N.D. Ill. Mar. 30, 2020) (distinguishing *Levenstein* and *Ciechon*).  Thus, even if the principles of these Seventh Circuit cases applied here, *but see Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019) ("[A] court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons."), Plaintiffs cannot prove for purposes of summary judgment such an ulterior motive with respect to the Department's actions.

Nor can Plaintiffs advance their due process argument by claiming that the Department's process lacked a neutral decision-maker. Pls.' MSJ at 30.  The crux of Plaintiffs' argument is difficult to discern, as Plaintiffs appear to conflate the neutral decision-maker requirement of due process with the opportunity to be heard, which is a separate requirement of the Fifth Amendment's Due Process Clause.  *Id.*; *see, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976).  In any event, Plaintiffs' claim fails because they have not even attempted to "demonstrate actual bias on the part of the adjudicator" or that "the adjudicator's pecuniary or personal interest in the outcome of the proceedings . . . create[s] an appearance of partiality that violates due process, even without any showing of actual bias." *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) (citations omitted); *see also Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 497 (1976) (noting presumption that administrative adjudicators are presumed to act with honesty and integrity).  It also fails because, by Plaintiffs' reasoning, any agency that utilizes guidelines or procedures in adjudicating applications or petitions that result in any application or petition being denied is "biased" for purposes of the Fifth Amendment.  Defendants are aware of no case law supporting such a theory, and Plaintiffs offer none.  *See* Pls.' MSJ at 30.

Insofar as Plaintiffs contend that they have been denied a meaningful opportunity to be heard, that claim is similarly unavailing, particularly as it merely repackages their APA claims without additional explanation or argument.  *See* Pls.' MSJ at 30; *Kouropova v. Gonzales*, 200 F.

App'x 692, 694 (9th Cir. 2006) ("In considering whether unusual administrative delay violated due process, 'there is no talismanic number of years or months, after which due process is automatically violated.' . . .   Moreover, we typically require additional irregularities in the administrative process beyond the delay alone.") (quoting *Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir. 1990); *cf. Am. Fed'n of Gov't Emps., AFL-CIO, Loc. 446 v. Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007) (noting that "a mere violation of law does not give rise to a due process claim"). And to the extent Plaintiffs may be suggesting that more formal procedures are required for a meaningful opportunity to be heard, they are incorrect.  *See, e.g.*, *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 717 (9th Cir. 2011).

### C.   Plaintiffs' Challenge to the Department's Denial Notices is Moot.

Plaintiffs continue to challenge, under both the APA and the Due Process Clause, the denial notices that the Department sent to certain class members in 2019 and 2020.  Again, however, Plaintiffs assert a moot claim and seek relief that has already been provided.

As an initial matter, relief under § 555(e) is generally limited to remand for further explanation of the agency's denial decision.  *See Olivares v. Transportation Sec. Admin.*, 819 F.3d 454, 458 (D.C. Cir. 2016) (recognizing exception where agency submitted a written explanation of its decision to the court); *Remmie v. Mabus*, 898 F. Supp. 2d 108, 119 (D.D.C. 2012).  Plaintiffs ask this Court to "compel the Department to cease issuing Form Denial Notices, and, for each Class Member who is in fact not eligible for borrower defense to repayment, issue a denial that provides an adequate statement of the grounds for denial."  Suppl. Compl. ¶ 439.  But the Department has already ceased using the challenged notices.  In particular, it has determined to reconsider the application of any class member who received a "form denial notice" and will issue new decisions to each such class member that—to the extent any such decision is a denial—"will not be based on the same or similar form denial notices."  Corday Decl. ¶¶ 7-8.  There are thus no decisions for which to provide additional explanation, and the Department's actions have forestalled any meaningful relief for Plaintiffs with respect to this claim.  And because the Department has already committed to issuing new decisions to each borrower who received a

notice, *id.*, there is nothing for the Court to order the Department to do.

Here too, the voluntary cessation exception to mootness does not apply.  The Department's renouncement of its past denial notices is "broad in scope and unequivocal in tone," *Rosebrock*, 745 F.3d at 972 (quoting *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000)); *see Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1153 (9th Cir. 2019) ("The New Policy unequivocally renounces the previously challenged prohibition . . . ."); *see also* Cordray Decl. ¶¶ 7-8, and "addresses all of the objectionable measures" under the former guidelines, *Rosebrock*, 745 F.3d at 972 (quoting *White*, 227 F.3d at 1243).  Additionally, Plaintiffs cannot show that the Department has any demonstrated intent to resume the challenged conduct, *cf. Anderson v. Evans*, 371 F.3d 475, 479 (9th Cir. 2002), or that the record otherwise contains evidence that the challenged conduct will likely recur, *cf. Demery v. Arpaio*, 378 F.3d 1020, 1027 (9th Cir. 2004); *see also Am. Diabetes Ass'n*, 983 F.3d at 1153.

This claim is also not appropriate for class resolution.  In their supplemental complaint, Plaintiffs recognized that the class the Court previously certified is inappropriate to pursue this particular claim, and defined a sub-class of borrowers (*i.e.*, those who received a notice of denial) for that purpose.  *See* Suppl. Compl. ¶¶ 430-34  But they never moved for, nor were granted, class certification.  As discussed above, in the absence of a certified class, this Court lacks the authority to award any relief beyond the named class representatives.

## II.   Plaintiffs Are Not Entitled to the Relief They Seek.

### A.   The HEA's Anti-Injunction Provision Forecloses Coercive Relief Against the Secretary.

To the extent Plaintiffs seek relief that would "have the practical effect of forcing the Secretary to take certain actions," *Carr v. DeVos*, 369 F. Supp. 3d 554, 561 (S.D.N.Y. 2019), the HEA's anti-injunction provision prohibits it.  The HEA provides that no "injunction . . . or other similar process . . . shall be issued against the Secretary" in the "performance of, and with respect to, the functions, powers, and duties vested in him" by the statutory provisions governing the Title IV student loan program.  20 U.S.C. 1082(a)(2).  This statute prohibits the Court from issuing an

injunction or entering any declaratory relief which would "produce the same effect as an injunction." *Am. Ass'n of Cosmetology Sch. v. Riley*, 170 F.3d 1250, 1254 (9th Cir. 1999); *see also* Defs.' MSJ at 15-16; Defs.' MSJ Opp'n at 6-7.

Plaintiffs contend that applying the literal terms of the HEA would "cut citizens off from any ability to hold ED accountable for *ultra vires* actions." Pls.' MSJ at 34. But as Defendants' have previously acknowledged, the HEA does not necessarily preclude coercive relief where the Secretary "exercises powers that are clearly outside of his statutory authority." *Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425, 428 (S.D.N.Y. 1996). That does not mean that the anti-injunction provision can be overcome anytime a plaintiff alleges that the Secretary has violated any provision of law: "A government official's illegal action is not *ipso facto* beyond his delegated authority." *Id.* at 430. Here, Plaintiffs have alleged, at most, a "wrongful exercise of . . . proper administrative functions." *Id.* Because Congress has delegated to the Secretary significant authority over the administration of the borrower defense program, *see, e.g.*, *Manriquez v. DeVos*, 345 F. Supp. 3d 1077, 1103 (N.D. Cal. 2018); *Cal. Assoc. of Private Postsecondary Sch. v. DeVos*, 344 F. Supp. 3d 158, 165-66 (D.D.C. 2018), and because Plaintiffs' quibbles with the Secretary's procedures and timeline for adjudicating the claims he has been entrusted to adjudicate do not show any action or inaction that is "clearly outside" the Secretary's authority, *Calise*, 941 F. Supp. at 428, the HEA's anti-injunction provision forecloses coercive relief.

Similar principles foreclose Plaintiffs' resort to the "Hail Mary" of an "*ultra vires*" cause of action. *See Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.) (noting that such a claim, "in court as in football, . . . rarely succeeds"). Although Plaintiffs suggest otherwise, it is not the case that simply alleging a constitutional claim establishes an entitlement to pursue an *ultra vires* action. *E.g.*, *Eagle Tr. Fund v. USPS*, 365 F. Supp. 3d. 57, 68 n.6 (D.D.C. 2019) (Jackson, J.) (noting distinction between ultra vires claims and constitutional claims). Instead, an officer may be said to act *ultra vires* "only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) (*ultra vires* action must

allege that official is "not doing the business which the sovereign has empowered him to do"). As discussed above, the Secretary's procedures for and pace of adjudicating borrower defense applications are precisely the kinds of "business" that Congress has "empowered him to do." For the same reasons that Plaintiffs cannot demonstrate their entitlement to injunctive relief in light of the HEA's anti-injunction provision, they cannot assert an *ultra vires* claim here. *See also, e.g.*, *Las Americas Immigrant Advoc. Ctr. v. Biden*, ---F. Supp. 3d---, 2021 WL 5530948, at *7 (D. Or. Nov. 24, 2021) (nonstatutory review was "inappropriate" because "Plaintiffs are able to, and in fact do, bring their case based on the specific review provisions of the APA").

**B.     There Is No Basis for the Court to Enter Plaintiffs' Requested Show Cause Order.**

As Plaintiffs acknowledge, "the proper way to handle an agency error in the ordinary circumstance is to remand to the agency for additional investigation or explanation." Pls.' MSJ at 34 (quoting *Boliero v. Holder*, 731 F.3d 32, 38 (1st Cir. 2013)). Nonetheless, they assert that "remand would be futile," and that the Court should instead pave the way for "immediate approval[]" of every single pending borrower defense application—without proper regard for the merits of any application or when any such application was filed, and at enormous cost to the public fisc. Pls.' MSJ at 34-35. There is no basis for the Court to order such relief.

As an initial matter, Plaintiffs request that the Department show cause within just 30 days why each of the more than 260,000 currently pending borrower defense claims, *see* Cordray Decl. ¶ 9, should not be granted. In that short amount of time, Plaintiffs would require the Department to "place its best evidence on the record" with respect to each claim, Pls.' MSJ at 35. But "just as a court may not require an agency to break the law, a court may not require an agency to render performance that is impossible." *Am. Hosp. Assoc. v. Price*, 867 F.3d 160, 167 (D.C. Cir. 2017). As the D.C. Circuit found in similar circumstances, a court cannot order relief that places an agency "between a rock and a hard place," *i.e.*, it cannot require an agency to "either violate [a statutory directive] by settling . . . claims *en masse* without regard for their merit, or violate the Court's . . . order by missing the court-ordered deadlines." *Id*. Plaintiffs' requested show cause order similarly

would require the Department to do the impossible—either meet an unmeetable timeline or grant

borrower defense claims *en masse* without proper regard for their merits.

Moreover, § 706(1) provides no basis for such a far-reaching remedy. *Contra* Pls.' MSJ at

35. "The sole remedy available under § 706(1) is for the court to 'compel agency action,' such as

by issuing an order requiring the agency to act, without directing the substantive content of the

decision." *Ctr. for Food Safety v. Hamburg*, 954 F. Supp. 2d 965, 968 (N.D. Cal. 2013).  The

statute can be used only to enforce a legal obligation "so clearly set forth that it could traditionally

have been enforced through a writ of mandamus." *Hells Canyon Pres. Council v. U.S. Forest

Serv.*, 593 F.3d 923, 932 (9th Cir. 2010).  There is no legal duty requiring the Department to

approve borrower defense claims, regardless of their merits, if it cannot first provide an explanation

for denial to a court's satisfaction.  Thus, the alleged "delay in this case" provides no basis for the

show cause order Plaintiffs seek.  *See* Pls.' MSJ at 34-35.

Nor is Plaintiffs' requested relief appropriate under § 706(2) of the APA, which permits a

court only to "set aside" agency action and, as Plaintiffs note, remand to the agency for further

proceedings consistent with the court's order.  This is not the unusual case where "only one

conclusion would be supportable" on remand.  Pls.' MSJ at 35 (quoting *Donovan ex rel. Anderson

v. Stafford Const. Co.*, 732 F.2d 954, 961 (D.C. Cir. 1984)).  Even if the Court were to rule for

Plaintiffs on each of their claims, that would only establish that the Department had unreasonably

delayed in issuing decisions, issued insufficiently explained decisions, and utilized deficient

adjudication procedures.  *See* Pls.' MSJ, Relief Requested.  It would say nothing about whether

the remaining class members assert meritorious borrower defense claims; indeed, as the Court has

previously recognized, the merits of class members' applications should be adjudicated not in this

action, but in the "district court with statutory venue."  ECF No. 134.  There is nothing in the

record bearing on the relative merits of thousands of pending class member applications, and the

Department's adjudication of those applications is not pre-determined.  To the contrary, the

Department's review process is ongoing, *see* Cordray Decl. ¶¶ 9-18 rendering the injunctive relief

Plaintiffs seek especially intrusive and inappropriate.  *See, e.g.*, *Ticor Title Ins. Co. v. FTC*, 814

F.2d 731, 742 (D.C. Cir. 1987) (courts should avoid ordering relief that would "bypass the orderly processes of administrative agencies and would intolerably interfere with the ability of those agencies to perform the tasks assigned to them by Congress").

All of this distinguishes the present action from a case like *Donovan*, upon which Plaintiffs rely, where all evidence "bearing on the issue" of whether a single affirmative defense had been established was "already in the record" and thus a remand to the agency would truly "serve no purpose." *Donovan*, 732 F.2d at 961.  Other cases Plaintiffs cite are similarly inapposite.  *E.g.*, *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532 (D.C. Cir. 1992) (remand futile to determine a legal question that had been conclusively determined by the Supreme Court); *Eldredge v. Carpenters 46*, 94 F.3d 1366 (9th Cir. 1996) (in a Title VII case, ordering "affirmative action" to remedy "more than two decades" of systemic gender discrimination, "[t]wenty-one years and three appeals" after the case was originally filed).  And Plaintiffs cite no case, much less an APA case, in which a court ordered anything remotely similar to what Plaintiffs request here—that is, a show cause order that would flip the burden of a typical adjudication process and likely result, without any possibility of reasoned consideration, in a massive burden to taxpayers and windfall to applicants for federal benefits.  The Court should decline to award such extraordinary relief.[4]

## CONCLUSION

For the foregoing reasons, the Court should grant this motion, deny Plaintiffs' summary judgment motion, and enter final judgment for Defendants on all claims.  In the alternative, the Court should decertify the class.  A proposed order is attached.

Dated: June 23, 2022                                   Respectfully submitted,

                                                      BRIAN D. NETTER
                                                      Deputy Assistant Attorney General

---

[4] Plaintiffs also request, in the alternative, that the Court order Defendants to provide any class member for whom they can make Plaintiffs' requested showing "with an adequate statement of the grounds for denial," Pls.' MSJ, Relief Request.  But as numerous courts have recognized, "[i]njunctions that broadly order the enjoined party simply to obey the law and not violate the statute are generally impermissible." *NLRB v. USPS*, 486 F.3d 683, 691 (10th Cir. 2007); *see also, e.g.*, *Burton v. City of Bell Glade*, 178 F.3d 1175, 1200-01 (11th Cir. 1999).

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar # 89400)
STUART J. ROBINSON
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*