UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION and MIGUEL CARDONA, in his official capacity as Secretary of Education,<br><br>　　　　Defendants. | No. 19-cv-03674-WHA<br><br>**DECLARATION OF RICHARD CORDRAY** |

I, Richard Cordray, hereby declare under the penalty of perjury as follows:

1. I am over the age of 18 and competent to testify to the matters herein.

2. I was appointed the Chief Operating Officer ("COO") of Federal Student Aid ("FSA") by U.S. Secretary of Education Miguel Cardona effective May 4, 2021.

3. As FSA's COO, I oversee the management of FSA, including the work of the Enforcement Team, which includes the Borrower Defense Group ("BDG") for Borrower Defense claim adjudication, and the Office of Student Experience and Aid Delivery ("SEAD") for Borrower Defense claim processing. Through my duties and responsibilities as the COO and based on my discussions with Department staff in both BDG and SEAD working on borrower defense issues, I certify that I am duly authorized, am qualified, and have been given authority by the Department to make the statements contained in this Declaration. The statements contained herein are based on either my personal knowledge as an employee of the Department or on information reported to me by FSA officials who created and/or are familiar with the pertinent records.

4. I am aware that on October 30, 2020, Mark A. Brown, FSA's former Chief Operating Officer, signed a Declaration (ECF 150-1) supporting the Defendants' response to the Show Cause Order in which he announced the Department's decision, effective on October 21, 2020, to stop issuing further decisions denying the borrower defense applications of class members. *See* ECF 150-1 at ¶ 5. Pursuant to that representation, the Department has not issued any denials since October 21, 2020. The Department's representation to the Court was made with respect to *any* denial and was not limited to only denials issued using the form denial notices at issue in the litigation.  ECF No. 116 at Exhibits A-D ("form denial notices").

5.      In the same October 30, 2020 Declaration, General Brown also explained that as a result of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136 and the August 8, 2020 Presidential Memorandum directing the Secretary to extend the CARES Act protections provided to Federal student loan borrowers under the CARES Act until the end of 2020, payments due on Federal student loans held by the Department had been suspended and interest was not accruing on the loans, and, further, that the Department had suspended all of its efforts to collect on the loans through involuntary collections such as Federal offset and administrative wage garnishment, through December 31, 2020. ECF 150-1 at ¶ 6. Those CARES Act protections were subsequently extended and are currently set to last through August 31, 2022.

6.      Notwithstanding any future termination of the CARES Act relief described, the Department has been, and remains, committed that loans for which class members have applied, or will apply, for borrower defense will continue to be held in forbearance (or other appropriate repayment status), with no payments due, until the earlier of the date the Court enters a final judgment on the merits or a borrower defense application on such loan is approved for full relief and is fully discharged. The Department also provides an interest credit to effectively cancel any interest that accrues on a loan for which a borrower seeks cancellation while the borrower's application is pending.

7.      Once the Department is able to start issuing denial decisions again, it will not resume use of any of the four form denial notices challenged by the Plaintiffs in this litigation.

8.      All applications that were previously denied with a form denial notice will be reconsidered and the Department is committed to issuing new decisions to each borrower who received such a denial notice. The Department is in the process of updating its website to reflect

these determinations. To reiterate, future adjudication of these applications will not be resolved with the same or similar form denial notices.

9.      The volume of applications at issue in this case is very large, and the resolution of such applications is a time-consuming process. Over the last approximately 18 months, however, the Department has prioritized the review and adjudication of borrower defense applications with an eye toward facilitating fair, efficient, and legally sound adjudication of the backlog of applications inherited by current Department leadership, including the consideration of potential school-based group discharges where appropriate. In 2021, the Department received approximately 100,000 new borrower defense claims, approved approximately 20,000 claims, and provided full relief for another 72,000 claims that had been previously approved but processed for partial relief. The class and proposed sub-class in this case currently consist of more than 264,000 borrowers who have submitted 291,000 borrower defense applications, a number that fluctuates every day—decreasing as the Department continues to approve claims, but increasing due to new applications, especially in response to each announcement of new approved findings. A large number of these applications come from a relatively small number of schools, and to reduce the current backlog, the BDG has prioritized applications relating to these "high-volume" schools for which BDG has already obtained outside evidence. As the Department has previously reported, this approach led to the approval of more than 20,000 claims for class members during the first year of the current presidential administration. *See* ECF No. 213. BDG's adjudication of applications relating to these "high-volume" schools is based on the review of thousands of pages of documentary evidence to determine which applications should be approved based on that evidence. The Department, like any government agency, does not possess unlimited resources, and the same individuals performing this work must also

Declaration of Richard Cordray
19-cv-3674-WHA

3

necessarily perform the work of reviewing and adjudicating all pending borrower defense applications, including applications from schools for which there are a comparatively small number of applications. As BDG continues to resolve the large number of claims that have been submitted based on attendance at "high volume" schools, it will move as quickly as possible to resolve applications submitted by students from additional schools and to give applications submitted by borrowers from those schools the consideration they deserve.

10.  BDG's efforts have resulted (as described above and later in this Declaration) in both group discharges and the discharge of significant numbers of individual applications. The recently announced group discharge for students who attended institutions owned by Corinthian Colleges, Inc. resulted in the discharges of a number of *Sweet* class members. Those efforts are ongoing.

11.  Over the last five years, from February 2017 to June 14, 2022, the Department has approved approximately 106,000 individual borrower defense applications.

12.  As Plaintiffs noted in their Brief, as of December 31, 2021, there were 109,953 pending BD applications. This count does not include the approximately 128,000 borrowers who received Form Denial Notices. Approximately 264,000 borrowers are waiting for a decision on their BD applications. This is 16,000 fewer than the number given by Plaintiffs in their Brief. Approximately 77,000 *individual* applications have been approved since December 9, 2020.

13.  Currently, approximately 13,000 BD applications are categorized by the Department as "adjudicated, pending notification," and all of those are approvals. The Department's website has not yet been updated to reflect this new number. This represents a significant decrease in the number (47,000) of applications referenced as "adjudicated, pending notification" that Plaintiffs referenced in their Motion for Summary Judgment. *See* MSJ fn. 11).

14. The Plaintiffs allege in Paragraph 181 of their original Complaint (incorporated by reference in Paragraph 16 of Plaintiffs' Supplemental Complaint) that the Department last *approved* a borrower defense application on June 12, 2018. That statement was true as of the date the Plaintiffs filed their original Complaint on June 25, 2019 (*see* Defendants' Answer to Complaint at ¶ 181), but it is no longer true today. Between June 25, 2019, and June 14, 2022, as a result of BDG's efforts described above, the Department approved approximately 90,000 individual applications, and will be awarding relief to over half a million borrowers based upon group discharge approvals. Below are the new approvals that have been announced since June 16, 2021:

    a. On June 16, 2021, the Department announced that 18,000 borrowers who attended ITT Technical Institute would receive 100% loan discharges, totaling approximately $500 million. A majority of these borrowers have now received their discharges.

    b. On July 9, 2021, the Department announced that approximately 1,800 borrower defense claims for students who attended Court Reporting Institute, Marinello Schools of Beauty and Westwood College would receive 100% discharges, resulting in approximately $55.6 million in loan relief. A majority of these borrowers have now received their discharges.

    c. On February 16, 2022, the Department announced that approximately 1,800 borrowers who attended DeVry University would be receiving approximately $71.7 million in 100% loan discharges. The same day, the Department also announced that approximately 2,000 borrowers who attended Westwood Colleges, the nursing program at ITT Technical Institute, and the criminal justice programs at Minnesota School of Business would be receiving approximately $59.2 million in 100% loan discharges based on new Department findings. Finally, on that same day, the Department announced that an additional approximately 11,900 students would be receiving approximately $284.5 million in 100% loan discharges based on previously established findings. In total, these discharges announced February 16, 2022 covered nearly 16,000 borrowers and approximately $415 million of relief. Approximately half of the borrowers have now received their discharges.

    d. On April 28, 2022, the Department announced that approximately 28,000 borrowers who enrolled in a Marinello School of Beauty Program between January 2009 and Marinello's closure in February 2016 would receive 100%

discharges, resulting in approximately $238 million in discharges. All relief has not yet effectuated for these recently announced discharges, the Department has taken preparatory steps needed before the letters to individual borrowers are sent.

e. On June 2, 2022, the Department announced that approximately 560,000 borrowers who attended any campus of any school owned by Corinthian Colleges Inc. (Heald College, Everest College/Institution/University and WyoTech) would receive 100% discharges, resulting in approximately $5.8 billion in discharges. All relief has not yet effectuated for these recently announced discharges, the Department has taking preparatory steps needed before the letters to individual borrowers are sent.

15. The Plaintiffs allege in Paragraph 182 of their original Complaint (incorporated by reference in Paragraph 16 of Plaintiffs' Supplemental Complaint) that the Department last *denied* a borrower defense application on May 24, 2018. That statement was true as of the date the Plaintiffs filed their original Complaint on June 25, 2019. *See* Defendants' Answer to Complaint at ¶182. However, the Department then began issuing denials in December 2019 through October 2020. During that period, approximately 128,000 denials were issued. As noted, *supra*, the Department stopped issuing denials effective October 21, 2020, in response to Plaintiffs' objections in this litigation to the form of the denials being issued and in light of the Court's show cause order dated October 19, 2020. ECF 146. The Department has not issued any denials since October 21, 2020.

16. The Plaintiffs' Supplemental Complaint describes, at Section D, the Department's partial relief methodology announced December 10, 2019. *See* Supplemental Complaint at §I.D (¶¶ 318-321). Although that 2019 partial relief methodology was used to adjudicate borrower defense adjudications in 2019 and 2020, the Department announced on March 18, 2021, that it would be rescinding the formula for calculating partial loan relief; that *full loan relief* available under the regulations would be retroactively applied to borrower defense claims that had been approved for partial relief under the December 2019 methodology prior to March 18, 2021; and

Declaration of Richard Cordray
19-cv-3674-WHA

6

that full loan relief would be applied to applications that had been approved but for which a relief determination had not yet been issued. As announced in the March 18, 2021 press release, 72,000 borrowers had their relief updated to 100%. On August 24, 2021, the Department announced that, going forward, it would assess all approved claims applying a rebuttable presumption of full relief as a starting point. At the time of its announcement, ED anticipated this change would ultimately help approximately 72,000 borrowers receive $1 billion in loan cancellation. All borrower defense applications that have been approved since March 18, 2021 have been approved for 100% discharges. The Department has devoted significant time and resources to adjudicating applications, and has communicated a clear goal of providing borrowers with a simplified and fair path to relief when misconduct by their institution warrants relief under the borrower defense to repayment regulations, as explained in Under Secretary' Kvaal's Declaration. *See* Kvaal Decl. at ¶6. .

17.     Under prior leadership, the Department adopted several training and instructional documents relating to borrower defense. Some of those were general training and instructional documents for Borrower Defense staff, including: "Borrower Defense-Summary of Notice to Schools Process (Bates Nos. DOE00004321-4322); Borrower Defense Unit Claims Review Protocol (Bates Nos. DOE00006016-6022);  Training Binder Borrower Defense to Repayment July 2019 (DOE00006206-6508);  Borrower Defense to Repayment Adjudication Process (Excel spreadsheet at DOE00006974); Borrower Defense Claim Review Productivity Requirements, Incentives and Support Plan – 2020 (Bates Nos. DOE00008693-8694); August 18, 2019 Memorandum from Colleen M. Nevin to Mark Brown and Robin Minor regarding Borrower Defense Quality Control Procedures (DOE00008841-8843); and Approval Rates (DOE00009291).  Each of the foregoing documents was produced to Plaintiffs during discovery

in this case. Although these documents must be retained due to document retention policies, the foregoing documents are no longer being used or relied upon by Borrower Defense staff.

18.     There were also a number of memoranda (copies of which must be retained due to record retention policies) drafted by Borrower Defense staff prior to 2021 that contained factual findings related to certain schools, and protocols for reviewing Borrower Defense applications from those schools. Those protocols are no longer in use; however, the Department may continue to rely upon the factual findings and evidentiary analysis set forth in certain of those memos. For example, in reaching the determination to grant a group discharge to borrowers who attended Corinthian Colleges, the Department relied in part upon the evidence and analysis set forth in a memorandum dated January 9, 2017 (and signed January 12, 2017) from the Borrower Defense Unit to then Under Secretary Ted Mitchell regarding the Borrower Defense Unit's Recommendation for Corinthian Borrowers Alleging that They Were Guaranteed Employment (produced to Plaintiffs during discover in this case at Bates Nos. DOE00007866-7879).

19.     The process followed by BDG staff to resolve pending and future applications will be informed by existing regulations, by this Administration's policies regarding borrower defense (*see e.g.*, Declaration of James Kvaal, being filed contemporaneously herewith), and ultimately by the new regulations the Department is currently drafting. The Department has already completed its negotiated rulemaking sessions and is nearing completion of the draft of the proposed regulations. According to the Department's Master Calendar, final regulations will be published on or before November 1, 2022 with an effective date of July 1, 2023.

I declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. § 1746, that the foregoing is true and correct.

Declaration of Richard Cordray
19-cv-3674-WHA

8

Executed on this 23rd day of June, 2022.

                                          Richard Cordray *Richard Cordray*
                                          Richard Cordray
                                          Chief Operating Officer
                                          Office of Federal Student Aid
                                          United States Department of Education