**MCGUIREWOODS LLP**
JOHN S. MORAN (*pro hac* application forthcoming)
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
Telephone: 202.828.2817
Facsimile: 202.857.1737

**MCGUIREWOODS LLP**
PIPER A. WALDRON (SBN 291482)
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Telephone: 310.315.8250
Facsimile: 310.956.3150

Attorneys for Proposed Intervenor
American National University

**GIBSON, DUNN & CRUTCHER LLP**
LUCAS TOWNSEND (*pro hac* application forthcoming)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone:  202.887.3731
Facsimile:  202.530.4254

**GIBSON, DUNN & CRUTCHER LLP**
JAMES L. ZELENAY, JR. (SBN 237339)
333 South Grand Avenue,
Los Angeles, CA 90071
Telephone: 213.229.7449
Facsimile:  213.229.6449

Attorneys for Proposed Intervenor
Lincoln Educational Services Corporation

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of | CASE NO. 19-cv-03674-WHA<br><br>Judge: Hon. William H. Alsup<br>Ctrm: 12<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE OF PROPOSED INTERVENORS AMERICAN NATIONAL UNIVERSITY AND LINCOLN EDUCATIONAL SERVICES CORPORATION**<br><br>**Hearing Date:  August 18, 2022**<br>**Hearing Time:  8:00 a.m.**<br><br>(Class Action) |

1

| | |
|---|---|
| the United States Department of Education, and | (Administrative Procedure Act Case) |
| THE UNITED STATES DEPARTMENT OF EDUCATION, | |
| Defendants. | |

**TO THE HONORABLE COURT, PARTIES, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 18, 2022, at 8:00 a.m., or on a date selected by the Court, in the courtroom of the Honorable William Alsup, Courtroom 12, 19th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Proposed Intervenors American National University and Lincoln Educational Services Corporation will and do hereby seek an order granting them intervention in the above captioned matter as a matter of right, or alternatively, with permission of the Court, pursuant to Federal Rule of Civil Procedure 24(a)(2) or 24(b)(1) ("Motion").

This Motion is based upon this Notice of Motion and Motion to Intervene, the Memorandum of Points and Authorities, the Declarations of Steven S. Cotton and Francis Giglio, the pleadings and documents on file in this matter, any oral argument of counsel, and upon such other information as the Court may allow.

## <u>STATEMENT OF RELIEF SOUGHT</u>

Proposed Intervenors seek an order granting them leave to intervene of right, or in the alternative, permissive intervention because they have a significant interest in the outcome of this litigation, in light of the proposed settlement.

DATED: July 13, 2022                 Respectfully submitted,

                                     **MCGUIREWOODS LLP**


                                     By:  /s/ Piper A. Waldron
                                          John S. Moran, Esq.
                                          Piper A. Waldron, Esq.

                                     *Counsel for Proposed Intervenor*
                                     *American National University*

                                     **GIBSON, DUNN & CRUTCHER LLP**

                                     James L. Zelenay, Jr., Esq.
                                     Lucas Townsend, Esq.

                                     *Counsel for Proposed Intervenor*
                                     *Lincoln Educational Services Corporation*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .....................................2

    A.   Proposed Intervenors.................................................................2

    B.   Litigation Background ...............................................................3

    C.   Proposed Settlement..................................................................6

III.  ARGUMENT .......................................................................................10

    A.   Proposed Intervenors Are Entitled to Intervene as of Right.................10

         1.   Proposed Intervenors' Motion Is Timely ...........................11

              i.    Intervention at this Stage in the Litigation Is Appropriate.................................................................11

              ii.   Proposed Intervenors' Intervention Will Not Unduly Delay or Prejudice the Parties ............................13

              iii.  Proposed Intervenors Have Not Delayed in Seeking Intervention...................................................14

         2.   Proposed Intervenors Have Significant Protectable Interests...........................................................................15

         3.   Disposition of This Case Will Impair Proposed Intervenors' Ability to Protect Their Interests............................18

         4.   No Other Party Can Adequately Protect Proposed Intervenors' Interests ..................................................18

    B.   Proposed Intervenors Also Satisfy All of the Requirements for Permissive Intervention.........................................................19

CONCLUSION...............................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978) ..............................20

*Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) ......................20

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.,* 309 F.3d 1113, 1119 (9th Cir. 2002) .......................................................................11, 14

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).................................................................................................1, 2, 10, 15

*Ctr. for Biological Diversity v. Bartel*, No. 09CV1864 JAH (POR), 2010 WL 11508776, at *4 (S.D. Cal. Sept. 22, 2010) ..............................................12, 15

*Day v. Apoliona*, 505 F.3d 963, 966 (9th Cir. 2007)...........................................14

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) ..................................................................................................................21

*Greene v. U.S.,* 996 F.2d 973, 976 (9th Cir. 1993)....................................................15

*In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022)............................................7

*In re U.S. Dep't of Educ.*, No. 21-71108 ..................................................................7

*Kirkland v. New York State Dept. of Correctional Servs.*, 711 F.2d 1117, 1125–28 (2d Cir. 1983) ........................................................................................12, 15

*Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996) ..................................................................................................................21

*Officers for Justice v. Civil Serv. Comm'n*, 934 F.2d 1092, 1095 (9th Cir. 1991)...12, 15

*Petrol Stops Nw. v. Continental Oil Co.,* 647 F.2d 1005, 1010 (9th Cir. 1981) .......10

*Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)...........11

*Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977)...........19

*Sweet v. Devos*, 2019 WL 8754826 (N.D. Cal.)........................................................13

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ....10, 18

*U.S. v. Alisal Water Corp.,* 370 F.3d 915, 921 (9th Cir. 2004)...........................11, 12

*U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002)...............................18

*U.S. v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) .................................................12

*U.S. v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002)....................................12, 15

*Venegas v. Skaggs,* 867 F.2d 527, 530 (9th Cir. 1989) ..............................................20

*Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009).............10

*Wilderness Soc'y v. U.S. Forest Serv.,* 630 F.3d 1173, 1179 (9th Cir. 2011)...........10

#### Statutes

5 U.S.C. § 706(1) ......................................................................................................4


#### Regulations

34 C.F.R. §§ 685.206(c) .........................................................................................1, 16

34 C.F.R. § 685.222.......................................................................................1, 16, 20, 21

34 C.F.R. § 685.222(e)(3)(i) ..............................................................................8, 16, 20

685.222(e)(7) ..........................................................................................................16, 20

685.222(g)................................................................................................................16, 20

685.222(h)................................................................................................................16, 20

#### Rules

Fed. R. Civ. P. 24(a)(2).................................................................................................18

Fed. R. Civ. P. 24(b)(1) .........................................................................................11, 19

Fed. R. Civ. P. 24(b)(1)(B) ..........................................................................................20

Fed. R. Civ. P. 24(b)(3) ...............................................................................................14

#### Other Authorities

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
    Procedure § 1914 (3d ed. 2009) ...................................................................11

Adam S. Minsky, *264,000 Borrowers Will Get $6 Billion In Student Loan
    Forgiveness In 'Landmark' Settlement Agreement With Biden Administration,*
    FORBES, June 23, 2022 ................................................................................17

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION**

3        Proposed Intervenors American National University and Lincoln Educational

4   Services Corporation ("Lincoln") (collectively, "Proposed Intervenors") are

5   educational institutions who seek intervention to ensure that their interests are

6   protected in any finalization and implementation of the proposed settlement of this

7   litigation, which the parties submitted to the Court and first made public on June 22,

8   2022. *See* Dkt. 246.

9        The proposed settlement has introduced, for the first time, the prospect that

10  the U.S. Department of Education will "automatically" and fully discharge loans

11  and refund payments to student borrowers, *see* Dkt. 246-1 (defining "Full

12  Settlement Relief"), without adjudication of the merits of the students' borrower-

13  defense applications in accordance with the Department's borrower-defense

14  regulations, *see* 34 C.F.R. §§ 685.206(c), 685.222, and without ensuring that

15  Proposed Intervenors and other similarly situated institutions can defend against

16  allegations asserted in individual borrower-defense applications.  The Department

17  proposes to treat attendance at certain schools—schools on a list explained with

18  nothing more than a few words of *ipse dixit*—as grounds for "presumptive relief."

19  In addition, the proposed settlement commits the Department to adjudicating other

20  borrower-defense claims under otherwise inapplicable regulations.  While the Court

21  has considered a proposed settlement once before in 2020, that proposed settlement

22  would have established a timeline for clearing the Department's backlog of

23  applications; it would not have altered the standards or procedures for granting

24  relief.  *See* Dkt. 97-2, at 5–7.

25       Proposed Intervenors have a clear entitlement under Rule 24 to intervene in

26  the litigation and to have a seat at the table in the finalization and implementation of

27  a settlement that affects their interests.  This motion is "timely," *Citizens for*

28  *Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011),

because Proposed Intervenors come to the Court promptly following the release of the proposed settlement, which put their interests at stake for the first time well into the course of this litigation.  Proposed Intervenors have "significant protectable interest[s]" which the proposed settlement "may, as a practical matter, impair or impede [their] ability to protect," *id.*, including their interests in the procedural rights afforded to educational institutions under the Department's regulations when it adjudicates borrower-defense applications, and their interests in the potential adverse consequences of the proposed settlement, as written.  And "the existing parties may not adequately represent [their] interest[s]," *id.*, because, as the proposed settlement reflects on its face, both Plaintiffs and the Department are willing to forgo the regulatory (and constitutional) protections afforded to educational institutions in order to resolve Plaintiffs' long-pending claims about undue delay.

If the Court does not grant intervention as of right (as it should), the Court should nevertheless exercise its discretion to permit permissive intervention, pursuant to Rule 24(b).  Proposed Intervenors' motion is timely; their participation in this litigation (and specifically, the proposed settlement) is inherently tied to this case; and they reasonably seek a seat at the table for ongoing proceedings.  For these reasons, and those described below, this Court should grant Proposed Intervenors' motion to intervene.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Proposed Intervenors

American National University is a private university with campuses in several U.S. States.  The school was founded as the National Business College in 1886 in Roanoke, Virginia.  Today, American National University focuses on providing students from around the world with career education at the Associate Degree, Baccalaureate, and Master's level.  It is accredited by the Distance Education Accrediting Commission.

1    Lincoln Educational Services Corporation and its subsidiaries provide
2  diversified career-oriented post-secondary education to recent high school graduates
3  and working adults.  Lincoln, which currently operates 22 campuses in 14 states,
4  offers programs in skilled trades, automotive technology, healthcare services,
5  hospitality services, and information technology.  Established in 1946, all of the
6  campuses are nationally accredited and are eligible to participate in federal financial
7  aid programs administered by the U.S. Department of Education and applicable state
8  education agencies and accrediting commissions which allow students to apply for
9  and access federal student loans as well as other forms of financial aid.

10    **B.    Litigation Background**

11    Plaintiffs filed their class action complaint ("Complaint") on June 25, 2019,
12  after the Department did not issue a final decision on any borrower-defense
13  application for over a year.  *See* Dkt. 1 ("Compl.") ¶¶ 5, 135, 181–82.  The
14  Complaint sought declaratory and injunctive relief and alleged that the delay in
15  issuing decisions on borrower-defense claims since June 2018 constituted agency
16  action unlawfully withheld or unreasonably delayed.  *Id.* ¶¶ 377–89.

17    As relevant here, the crux of Plaintiffs' claim was that the Department has a
18  mandatory duty under the Higher Education Act, 20 U.S.C. § 1087e(h), and its own
19  regulations, 34 CFR §§ 685.206, 685.222, to timely decide and resolve borrowers'
20  claims.  *See* Compl. ¶¶ 58–65.  They argued that the Department had "stop[ped]
21  deciding borrower defenses and adopt[ed] a policy of refusing to grant any borrower
22  defenses."  *Id.* at 22.  And they asked the Court to "compel the Department to start
23  granting Class Members' individual borrower defense assertions if they are eligible
24  for a borrower defense" and "to start denying Class Members' individual borrower
25  defense assertions if they are not eligible for a borrower defense."  Compl. ¶ 388–
26  89; *accord id.* ¶ 404 ("The Court should . . . vacate [the Department's] refusal to
27  grant borrower defenses.").

28    Plaintiffs moved for class certification on July 23, 2019, *see* Dkt. 20, which

3

the Court granted on October 30, 2019, Dkt. 46.  The Court certified a class of "[a]ll people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been ***granted or denied on the merits***, and who is not a class member in *Calvillo Manriquez v. DeVos*." *Id.* at 14 (emphasis added).  The Department filed an Answer on November 14, 2019, Dkt. 55, and certified an Administrative Record, Dkt. 56.

The Department originally moved for summary judgment on December 5, 2019.  *See* Dkt. 63.  The Department argued, among other things, that its temporary delay in issuing decisions on pending borrower-defense applications was reasonable and that relief under Section 706(1) of the Administrative Procedure Act ("APA") would be inappropriate.  *See id.*  Plaintiffs filed a cross motion for summary judgment on December 23, 2019, *see* Dkt. 67, and sought to supplement the Administrative Record, *see* Dkt. 66.

The Department supplemented the Administrative Record on January 9, 2020.  *See* Dkt. 71.  At that time, the Department represented that it had resumed the issuance of final decisions on borrower-defense applications as of December 10, 2019, and that it had adopted a new methodology for determining the amount of relief that should be afforded when it granted a borrower-defense application.  *See id.*

On April 7, 2020, while the cross-motions for summary judgment remained pending, the parties executed a settlement agreement, which they submitted for preliminary approval on April 10, 2020.  *See* Dkt. 97.  Consistent with the nature of Plaintiffs' claims, that tentative settlement was focused on creating a timeline and associated enforcement mechanisms to ensure that the Department would continue processing borrower-defense applications and would clear its backlog.  Under its key terms, the Department would have been bound to:  (A) a "[t]imeline for clearing [the] backlog of Class applications pending as of the Execution Date," Dkt. 97-2, at

4

5; (B) a series of "[r]eporting [r]equirement[s]," *id.* at 7; (C) and three "[o]ther [a]ssurances," *id.* at 10—namely, that the Department would (1) "issue written decisions resolving borrower defense applications and communicate those decisions to borrower defense applicants, as required by the Department's 2016 Borrower Defense Regulations"; (2) "not take action to collect outstanding student loan debts through involuntary collection activity against individuals with pending borrower defense applications, as required by the Department's 2016 Borrower Defense Regulations"; and (3) "provide an interest credit for any interest that accrues on the relevant federal student loan accounts [while an application is pending]," *id*. Nothing in the 2020 proposed settlement would have altered the standards or procedures for educational institutions to participate in the adjudication processes under the Department's regulations; to the contrary, the proposed settlement made clear that applications would be adjudicated in accordance with the applicable regulations.

The Court granted preliminary approval of that proposed settlement on May 22, 2020. *See* Dkt. 103. A final approval hearing was set for October 1, 2020. *See* Dkt. 105. A dispute arose, however, over the Department's use of form denial notices, which Plaintiffs believed to be inadequate. At Plaintiffs' request, the Court held a conference on the issue and ordered further briefing, but still held the final approval hearing on October 1, 2020. *See* Dkt. 115; Defs.' Resp. to Aug. 31, 2020 Order, Dkt. 116; Pls.' Motion to Enforce and for Final Approval, Dkt. 129; Transcript of Oct. 1, 2020 Hearing, Dkt. 147.

The Court denied final approval of the settlement on October 19, 2020, finding there was "no meeting of the minds." Dkt. 146 at 10. The Court ordered the parties to conduct expedited discovery because the case required "an updated record . . . to determine what is going on before we again attempt to resolve the merits." *Id.* at 11. The Court also ordered the Department to show cause why it should not be enjoined from issuing any further denials of Class Members' borrower-defense

1   applications until a ruling could be had on the legality of the form denial notices.

2   *See id.* at 17.  In response, the Department agreed to stop issuing denials until such a

3   ruling.  *See* Defs.' Response to Order to Show Cause, Dkt. 150, at 2–3.

4       The parties conducted discovery through the spring of 2021, and Plaintiffs

5   thereafter sought leave to file a Supplemental Complaint, *see* Dkt. 192, which the

6   Court granted on April 13, 2021, *see* Dkt. 197.  The Supplemental Complaint

7   alleges that the Department had adopted an unlawful "presumption of denial" policy

8   for borrower-defense applications, in violation of Section 706(2) of the APA, and

9   had issued thousands of unlawful Form Denial Notices pursuant to this policy, in

10  violation of Section 555(e) of the APA.  Dkt. 198, Supplemental Complaint ("Supp.

11  Compl.") ¶¶ 436–47.  Plaintiffs further alleged that both the policy and the Form

12  Denial Notices violated the Due Process Clause.  *Id.* ¶¶ 448–55.  In their

13  consolidated prayer for relief, Plaintiffs requested, *inter alia*, that the Court (i)

14  vacate the Department's policy of refusing to adjudicate borrower-defense

15  applications and its 'presumption of denial' policy; (ii) declare that the Form Denial

16  Notices were invalid and vacate all such denials; (iii) compel the Department to

17  lawfully adjudicate all pending borrower-defense applications, including by

18  providing an adequate statement of grounds for any denials; and (iv) require the

19  Department to hold all Class Members in forbearance or stopped collection status

20  until their applications were granted or denied on the merits.  *Id.* at 76–77.

21  Defendants answered the supplemental complaint on June 23, 2021.  Dkt. 206.

22      **C.    Proposed Settlement**

23      While it was not clear to the public at the time, it is now clear that, as of May

24  2021, a few months after the start of the Biden Administration, the parties had begun

25  a new round of settlement discussions.  *See* Dkt. 246, at 7.  For much of the ensuing

26  time, this litigation was stayed while the Department sought a writ of mandamus

27  from the Ninth Circuit over the deposition of former Education Secretary Betsy

28  DeVos, which the Ninth Circuit ultimately granted.  *See In re U.S. Dep't of Educ.*,

6

25 F.4th 692 (9th Cir. 2022).  Notably, however, when the Court of Appeals asked the parties at oral argument whether there were any pending settlement discussions that might moot the discovery dispute, *see* Oral Argument in *In re U.S. Dep't of Educ.*, No. 21-71108, at 39:20–40:15; 45:25–46:15, *available at* https://www.ca9.uscourts.gov/media/video/?20211006/21-71108/, the parties did not disclose what they now have disclosed:  that settlement discussions were actively underway.

Following the Ninth Circuit's ruling, this Court restarted the summary-judgment process.  *See* Dkt. 216, 219, 240.  Plaintiffs filed their motion on June 9, 2022, *see* Dkt. 245, and the Department filed its cross-motion and opposition on June 23, 2022, *see* Dkt. 249.  In the interim, however, the parties filed their joint motion for preliminary approval of a new settlement agreement.  *See* Dkt. 246. They also stipulated to vacatur of the summary-judgment briefing schedule, *see* Dkt. 247, which the Court granted, *see* Dkt. 250.  The Court then ordered on July 12, 2022, that the summary-judgment hearing previously set for July 28, 2022, would be used instead for a hearing on the motion for preliminary approval of the settlement. *See* Dkt. 251.

The relief to class members set forth in the new proposed settlement differs substantially from the relief contemplated by the earlier proposed settlement and from what the Plaintiffs sought in both their original and supplemental complaints. In particular, the Department agrees that, "[n]o later than one year after the Effective Date, [it] will effectuate Full Settlement Relief for each and every Class Member whose Relevant Loan Debt is associated with the schools, programs, and School Groups listed in Exhibit C hereto"—including for borrowers whose applications the Department had previously denied.  Dkt. 246-1, at 6.  The proposed settlement defines "Full Settlement Relief" as:  "(i) discharge of all of a Class Member's Relevant Loan Debt, (ii) a refund of all amounts the Class Member previously paid to the Department toward any Relevant Loan Debt (including, but not limited to,

7

Relevant Loan Debt that was fully paid off at the time that borrower defense relief is granted), and (iii) deletion of the credit tradeline associated with the Relevant Loan Debt." *Id.* at 4.  Exhibit C then includes a list of over 150 schools, including Proposed Intervenors and other similarly situated schools.  *See id.*, Ex. C.[1]

As explained in the parties' motion, these provisions are intended to "provide[] for automatic relief . . . for approximately 75% of the class," which includes "approximately 200,000 Class Members."  Dkt. 246, at 3.  Without further elaboration of how this list was assembled or settled on, the parties assert that "[t]he Department has determined that attendance at one of these schools justifies presumptive relief, for purposes of this settlement, based on strong indicia regarding substantial misconduct by listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools."  *Id.*[2]  This is apparently so whether or not the Department has ever provided notice, consistent with Department regulations, to the school that the Department has received the borrower's application.  While some institutions have received notice of and responded to individual borrower defense claims, the Department proposes to grant "automatic" relief even where the institution has not received notice from the Department, much less an opportunity to respond—such that the Department could not have "consider[ed]" their responses in adjudicating the applications.  *See* 34 C.F.R. § 685.222(e)(3)(i).

---

[1] The proposed settlement further provides that, "[i]f the Department's borrower defense or loan data includes conflicting evidence which raises a substantial question as to whether a Class Member's Relevant Loan Debt is associated with a program, school, or School Group listed in Exhibit C, the question will be resolved in favor of the Class Member (i.e., in favor of granting relief)."  *Id.* at 7.

[2] Of course, to say that allegations have been "in some instances proven" is to say that, in other instances, they *have not* been proven.  Likewise, allegations "credibly alleged" are not proven.

1    The proposed settlement would also have the Department overlook any causal

2    connection between allegations of noncompliance and the individual borrower's

3    application.  The Department proposes to grant loan forgiveness regardless of

4    whether the student attended the school during the period of any alleged

5    noncompliance and without adjudicating whether the student in question was

6    actually harmed by any alleged noncompliance.

7    The parties' motion in support of the proposed settlement demonstrates that

8    they are capable of negotiating a settlement that facilitates speedy and fair

9    adjudication of borrower defense applications, as they specify that "[t]he remaining

10   25% of the class . . . will receive final written decisions on their BD applications

11   within the specific periods of time, correlating to how long they have been waiting."

12   *Id.*  The proposed settlement includes "a streamlined process that provides certain

13   presumptions in favor of the borrower."  *Id.*  That streamlined process may short-

14   circuit some of the Department's regulations, but it also does not wholesale jettison

15   the procedural protections that they afforded to schools.

16   The process contemplated by the proposed settlement represents a clear

17   departure from the Department's borrower-defense regulations and the procedural

18   rights afforded to educational institutions under those regulations.  Indeed, the

19   Department expressly disclaims in the proposed settlement that the relief it provides

20   "could be recovered by Plaintiffs in this Action" (or that the Department has

21   violated the APA in the first place).  Dkt. 246-1, at 22.  The procedures

22   contemplated by the proposed settlement also represent a departure from the

23   Department's role as a factfinder under those regulations, since the proposed

24   settlement contemplates the use of strong presumptions and "automatic" relief.  The

25   proposed settlement does not make clear, as it should, that the rights of educational

26   institutions like Proposed Intervenors and other similarly situated schools cannot be

27   eliminated or reduced by the Department's unilateral settlement with student

28   borrowers.

1   ## III.   __ARGUMENT__

2       Proposed Intervenors have a significant interest in the proposed settlement

3   and should be allowed to intervene to ensure that their rights are adequately

4   protected.  Under Rule 24(a), Proposed Intervenors are entitled to intervention of

5   right, but in any event, the Court would also be justified in exercising its discretion

6   under Rule 24(b) to allow permissive intervention.  Allowing Proposed Intervenors

7   to intervene now is the best way to ensure a fair and equitable settlement and to

8   achieve finality in an expeditious manner.

9       **A. Proposed Intervenors Are Entitled to Intervene as of Right**

10      Proposed Intervenors readily meet their burden, *see Petrol Stops Nw. v.*

11  *Continental Oil Co.,* 647 F.2d 1005, 1010 (9th Cir. 1981), for intervention of right

12  under Rule 24(a) because (1) their application is timely; (2) they have a "significant

13  protectable interest" in the action; (3) "the disposition of the action may, as a

14  practical matter, impair or impede [their] ability to protect [their] interest[s];" and

15  (4) "the existing parties may not adequately represent [their] interest[s]," *Citizens*

16  *for Balanced Use*, 647 F.3d at 897.  The Ninth Circuit construes "Rule 24(a)

17  liberally in favor of potential intervenors" and assesses motions for intervention

18  "primarily by practical considerations, not technical distinctions."  *Sw. Ctr. for*

19  *Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (quotation and

20  citation omitted).  Such a "liberal policy in favor of intervention serves both

21  efficient resolution of issues and broadened access to the courts."  *Wilderness Soc'y*

22  *v. U.S. Forest Serv.,* 630 F.3d 1173, 1179 (9th Cir. 2011).[3]

    _____

24  [3] As explained herein, Proposed Intervenors seek intervention to be heard on the

25  proposed settlement, not with an aim to litigating the case on the merits.  But to the
    extent that a merits pleading is required under Rule 24(c), Proposed Intervenors are

26  "'content to stand on the pleading[s] that Defendants have already filed'" in this

27  case.  *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009)

28  (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

### 1.  Proposed Intervenors' Motion Is Timely

Of course, a motion to intervene as of right must be timely pursued.  Fed. R. Civ. P. 24(b)(1); *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.,* 309 F.3d 1113, 1119 (9th Cir. 2002).  "Timeliness is a flexible concept." *U.S. v. Alisal Water Corp.,* 370 F.3d 915, 921 (9th Cir. 2004); *see also Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (holding motion to intervene timely even though 20 years passed since plaintiff commenced the action after a change in circumstances occurred).  When assessing timeliness, courts should weigh: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for, and length of, the delay.  *Smith v. Los Angeles Unified Sch. Dist*., 830 F.3d at 854.  Each of these factors weighs strongly in favor of Proposed Intervenors and support a finding that this motion is timely.

Here, Proposed Intervenors have moved promptly to intervene upon learning of the terms of the current proposed settlement, to which they had no prior notice (and, indeed, the Department refused to acknowledge that settlement negotiations were occurring); which, for the first time, made broad allegations of noncompliance against Proposed Intervenors and similarly situated schools that have the potential to result in liabilities for institutions; and which propose new standards and procedures for resolving borrower-defense applications and thus put Proposed Intervenors' interests at stake in a materially different way.

### i.  *Intervention at this Stage in the Litigation Is Appropriate*

Proposed Intervenors' motion is precisely the sort of motion that the Ninth Circuit addressed in *Alisal Water* when it explained that "a party's interest in a specific phase of a proceeding may support intervention." *Alisal Water*, 370 F.3d at

---

Practice and Procedure § 1914 (3d ed. 2009)).

921.  "Where a change of circumstances occurs, and that change is the 'major reason' for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation."  *Id.* at 854.  The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenor should have been aware that its interests would not be adequately protected by the existing parties.  *Officers for Justice v. Civil Serv. Comm'n*, 934 F.2d 1092, 1095 (9th Cir. 1991); *U.S. v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

It is also the type of motion that the Ninth Circuit addressed when holding in *Carpenter* that intervention is timely when moved for upon learning of a proposed settlement that did not protect the proposed intervenors' interests.  *U.S. v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002); *Kirkland v. New York State Dept. of Correctional Servs.*, 711 F.2d 1117, 1125–28 (2d Cir. 1983) (approving intervention of non-class members after notice of proposed settlement solely for the limited purpose of objecting to the settlement); *Ctr. for Biological Diversity v. Bartel*, No. 09CV1864 JAH (POR), 2010 WL 11508776, at *4 (S.D. Cal. Sept. 22, 2010) (applying *Carpenter*, and holding that applicants were not required to intervene when they became aware of settlement discussions, but instead "when they knew, or should have known, the government was not adequately representing their interests").

Under *Alisal Water*, Proposed Intervenors are justified in seeking intervention now in light of the proposed settlement.  Although the Complaint was filed in 2019, Proposed Intervenors had no reason to believe that their interests were in jeopardy.  Plaintiffs sought the timely adjudication of their borrower-defense applications ***in accordance with Department regulations***.  Proposed Intervenors had no reason to believe their rights and obligations would be adversely changed by a settlement agreement that granted "automatic" *substantive* relief based on unproven procedural allegations.  Neither Plaintiffs nor the Department ever sought to include Proposed

12

Intervenors or similarly situated schools as either named defendants or as relief defendants and did not involve Proposed Intervenors in settlement negotiations.

On the contrary, Plaintiffs sought to enforce their stated procedural rights to the Department's adjudication on the merits of their borrower-defense applications. *See Sweet v. Devos*, 2019 WL 8754826 (N.D. Cal.) (Named Plaintiffs' Class Action Complaint stating that "[a] class action is superior to other available means for the fair and efficient adjudication of the claims of Named Plaintiffs and the class.").

While the adjudication of those applications under the Department's regulations could ultimately implicate the rights and obligations of Proposed Intervenors, that would come only *after* the schools were afforded the notice and opportunity to be heard to which they are legally entitled by existing regulations— and after the Department decided those applications in the agency process called for under the Department's regulations.  Proposed Intervenors had no reason to believe that they needed to intervene in Plaintiffs' effort to enforce *their own* procedural rights related to the Department's consideration of their applications.  There was thus no reason for Proposed Intervenors to seek intervention before the proposed settlement; indeed, Proposed Intervenors likely would not have been permitted to do so.

Before learning of the proposed settlement, Proposed Intervenors had no notice that this litigation could have a direct impact on their rights and obligations. It is only now, and only in light of the proposed terms of the settlement, that Proposed Intervenors have a concrete stake in this matter, making it necessary for them to intervene and to ensure that they have a seat at the table during the finalization and enforcement of the proposed settlement.

### ii.    *Proposed Intervenors' Intervention Will Not Unduly Delay or Prejudice the Parties*

Intervention by Proposed Intervenors in this action at this time also will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R.

13

Civ. P. 24(b)(3).  The Court has not ruled on the parties' proposed settlement, which was filed three weeks ago on June 22, 2022.  Dkt. 246.  The Court previously considered the parties' original settlement agreement, Dkt. 97, for roughly six weeks before approving it, and set a final approval hearing for over four months following preliminary approval and denied final approval, finding there was "no meeting of the minds."  Dkt. 146, at 10. This demonstrates that (1) a filing of preliminary approval in this matter is no guarantee that the settlement will be approved, and (2) involving all relevant minds in settlement discussions as early as possible respects judicial resources.

Allowing Proposed Intervenors to share their interests in the outcome of the negotiation presents no conflict with the speedy and fair adjudication of Plaintiffs' borrower-defense applications or the Department's compliance with their procedural obligations.  Proposed Intervenors seek a seat at the table to participate in the crafting a fair settlement that does not infringe on their rights and obligations.  *Cal. Dep't of Toxic Substances Control*, 309 F.3d at 1120; *see also Day v. Apoliona*, 505 F.3d 963, 966 (9th Cir. 2007) (granting motion to intervene two years after action was filed, where intervention would not prejudice existing parties or delay litigation).

### iii.   *Proposed Intervenors Have Not Delayed in Seeking Intervention*

Proposed Intervenors also have not delayed in seeking to intervene.  As third non-parties following this litigation from the outside, they had no notice that the parties were privately negotiating a settlement agreement that would award greater relief than could be obtained through litigation on the merits and that would implicate their rights and obligations.  As discussed above, grounds supporting intervention as of right only recently arose, with the filing of the proposed settlement, which unexpectedly implicated the rights and obligations of Proposed

Intervenors and other similarly situated schools.  *See* Dkt. 246.  Once Proposed Intervenors had the opportunity to review the proposed settlement and to seek the advice of counsel, it became apparent that none of the parties to the instant action can, or will, adequately represent them in ensuring that the proposed settlement does not infringe their rights.  *Cf. Officers for Justice*, 934 F.2d at 1095 (the focus of the length of delay prong is on when "the person attempting to intervene should have been aware his interests would no longer be protected adequately by the parties, rather than the date the person learned of the litigation."); *Carpenter*, 298 F.3d at 1125 (motion to intervene timely when filed promptly after learning that proposed settlement failed to protect group's interests); *Kirkland*, 711 F.2d at 1125–28 (approving intervention of non-class members after notice of proposed settlement solely for the limited purpose of objecting to the settlement); *Ctr. for Biological Diversity*, 2010 WL 11508776, at *4 (applying *Carpenter*, and holding that applicants were not required to intervene when they became aware of settlement discussions, but instead "when they knew, or should have known, the government was not adequately representing their interests").

Proposed Intervenors acted deliberately and expeditiously to protect their interests once it became apparent that the proposed settlement threatened their rights and obligations.  Accordingly, this final factor, like the two before it, supports a finding in favor of the timeliness of this motion.

## 2.  Proposed Intervenors Have Significant Protectable Interests

It is indisputable that Proposed Intervenors have significant protectable interests in this action based on the proposed resolution of borrower-defense claims *without* the notice, opportunity to be heard, and other procedural protections afforded to educational institutions under the Department's regulations and fundamental principles of Due Process.  *See Citizens for Balanced Use*, 647 F.3d at 897 (quoting *Greene v. U.S.,* 996 F.2d 973, 976 (9th Cir. 1993)) (a significantly

protectable interest exists when the proposed intervenor can establish an interest that is protectable under some law and that is related to the claims at issue).  Under the Department's regulations, *see* 34 C.F.R. §§ 685.206(c), 685.222, the Department would not grant a borrower-defense application in favor of an institution's former student without first giving that institution notice and an opportunity to address the borrower's claims.  *See* 34 C.F.R. § 685.222(e)(3)(i) (The Department "considers" evidence and argument including "[a]ny response or submissions from the school."). The proposed settlement sidesteps that process to which Proposed Intervenors and other similarly situated schools are legally and constitutionally entitled.  That alone establishes a concrete interest supporting intervention.

In addition, the Department's resolution of a borrower-defense application in favor of an applicant could ordinarily serve as a precursor to further adverse action against the institution—at least if the application had been adjudicated under the applicable regulations.  Most notably, the Department has the right to seek recoupment against the institution for the amount of the forgiven loan (again, subject to procedural safeguards).  *See* 34 C.F.R. §§ 685.222(e)(3)(i), 685.222(e)(7), 685.222(g), 685.222(h).  While it would be wholly unlawful and inappropriate for the Department to seek recoupment against any institution based on a loan that was forgiven under the proposed settlement (and thus outside the existing regulatory framework), the proposed settlement does not clearly foreclose that possibility.  And Proposed Intervenors have a concrete interest in ensuring that it does.

The same goes for other potential consequences that could flow from the Department's forgiveness of loans under the terms of the proposed settlement— including efforts by other private parties to invoke that determination against the institution, or as we have already seen in the days since the proposed settlement was

announced, substantial reputational harm to institutions that have been named in the proposed settlement and its Exhibit C without a whiff of due process.[4]

The supporting declarations detail the concrete harms that could flow from the proposed settlement if affected schools are not permitted to have a voice in the settlement. *See* Decl. of Steven S. Cotton in Supp. Of Proposed Intervenors; Decl. of Francis Giglio in Supp. of Mot. to Intervene. As explained in the declaration of Lincoln's Vice President of Compliance and Regulatory Services, Francis Giglio, these harms include regulatory risk from other state and federal regulators that are not parties to this litigation, *see* Decl. of Francis Giglio in Supp. of Mot. to Intervene ¶ 17, potential liability from private plaintiffs, *see id.* ¶ 18, and increased numbers of unmeritorious borrower-defense applications, *see id.* ¶ 19. In addition, schools listed in Exhibit C suffer immediate reputational risks even though in many instances there has never been a finding of wrongdoing against the school. *See id.* ¶ 13. These harms fall not only on the schools themselves, but on students as well— past, present, and future. *Id.* ¶ 16. Schools such as Lincoln therefore have a vital interest in ensuring that the proposed settlement appropriately and adequately addresses these harms.

---

[4] For one example, recent coverage of the proposed settlement connects educational institutions on Exhibit C to other now-closed, "notorious" educational institutions: "The settlement agreement follows a separate Borrower Defense initiative earlier this month by the Biden administration, whereby the Education Department agreed to automatically cancel the federal student loan debt of over half a million borrowers, who previously attended Corinthian Colleges, a notorious national chain of for-profit schools that closed in 2015 following widespread allegations of misconduct." Adam S. Minsky, *264,000 Borrowers Will Get $6 Billion In Student Loan Forgiveness In 'Landmark' Settlement Agreement With Biden Administration*, FORBES, June 23, 2022, https://www.forbes.com/sites/adamminsky/2022/06/23/student-loan-forgiveness-another-264000-borrowers-will-get-debt-cancelled-in-landmark-settlement-agreement-with-biden-administration/.

Proposed Intervenors and other similarly situated schools have significant protectable interests in shielding themselves from the adverse consequences that may flow—and in some instances, have already started to flow—from a settlement in which they had no voice.  The Court should permit Proposed Intervenors to intervene in this action so that they can have that voice and ensure that their rights are adequately protected.

### 3. Disposition of This Case Will Impair Proposed Intervenors' Ability to Protect Their Interests

It is equally indisputable that Proposed Intervenors' ability to protect their interests will be impaired if intervention is not granted.  Fed. R. Civ. P. 24(a)(2); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822.  ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.").  As outlined above, Proposed Intervenors and other similarly situated schools face both the potential and the reality of negative consequences following the resolution of borrower-defense claims under the current iteration of the proposed settlement.  Proposed Intervenors therefore seek to ensure that they do not lose their procedural rights under the Department's regulations and do not suffer material adverse consequences as a result.  The best way to ensure that is for them to be given the opportunity to intervene now.

### 4. No Other Party Can Adequately Protect Proposed Intervenors' Interests

Simply stated, no party to this action can or will defend, much less adequately defend, Proposed Intervenors' interests or those of similarly situated schools.  This lack of adequate protection is demonstrated by the terms of the proposed settlement itself, which seeks to resolve *Plaintiffs' procedural* claims against the Department by granting *substantive* relief and by bargaining away the procedural rights afforded to *educational institutions* under the Department's regulations.  *See U.S. v. City of*

18

*Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (Whether the movant's interests are adequately represented by the current parties depends on three factors: (1) "whether the interest of a present party is such that it will undoubtedly make all the [movant's] arguments"; (2) "whether the present party is capable and willing to make such arguments"; and (3) "whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.").

The proposed settlement demonstrates that the present parties' unwillingness to consider and incorporate the rights and obligations of Proposed Intervenors and other similarly situated schools.  It includes no conditions, caveats, or clarifications that would satisfy Proposed Intervenors, or other similarly situated institutions, that their rights are not being impaired.  No party currently in this matter has the particularized interest in ensuring Proposed Intervenors' rights and obligations are respected.  Likewise, no one is better positioned than the Proposed Intervenors to make the necessary arguments concerning how the proposed settlement could (and should) be modified to respect their rights and obligations.

This Court should grant the motion to intervene.

## B. Proposed Intervenors Also Satisfy All of the Requirements for Permissive Intervention

In the alternative, the Court may exercise its discretion to allow permissive intervention. In instances when intervention as of right is unavailable, an intervenor can obtain permissive intervention where the following three threshold requirements are met: (1) the motion is timely filed; (2) a common question of law or fact shared with the main action exists; and (3) an independent basis for the court to exercise jurisdiction over its claims is present.  Fed. R. Civ. P. 24(b).  District courts have broad discretion to grant permissive intervention under Rule 24(b).  *See Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).  Proposed Intervenors also meet the standards for permissive intervention, and if the Court

does not grant them intervention as a matter of right, it should exercise its discretion to do so permissively.

First, the motion is timely.  Motions for permissive intervention must be timely made. Fed. R. Civ. P. 24(b)(1).  As addressed above, the motion is timely as Proposed Intervenors acted expeditiously to pursue intervention after the parties filed the proposed settlement.  *See* Dkt. 246.  That leaves ample basis for this Court to exercise its broad discretion to allow for intervention.  *See Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978) (holding timeliness to be at the sound discretion of the trial court and suggesting proposed intervenors should have moved to intervene before negotiations were complete and a consent decree was filed).

Second, Proposed Intervenors share a common question of law or fact with this action.  A potential intervenor need only show that it has a "claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B); *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *see Venegas v. Skaggs,* 867 F.2d 527, 530 (9th Cir. 1989) (district court may exercise its discretion in permitting intervention where common questions of law or fact exists).  Proposed Intervenors' request to participate in settlement negotiations that unquestionably impact their rights and obligations clearly shares a connection with this matter, in which the parties and the Court are actively considering the proposed settlement.  The proposed settlement involves the resolution of agency adjudication in which Proposed Intervenors and other similarly situated schools play a role, and it could lead to new obligations on Proposed Intervenors.  *See* 34 C.F.R. §§ 685.222(e)(3)(i), 685.222(e)(7), 685.222(g), 685.222(h).  The procedural fairness in agency adjudication that Plaintiffs seek in this litigation also requires, according to Department regulations, procedural fairness toward Proposed Intervenors and other similarly situated schools.  The proposed settlement's lack of protection for Proposed Intervenors' rights and obligations under 34 C.F.R. § 685.222 has deepened the factual and legal connection between Proposed Intervenors and this

20

1  litigation.  Thus, this factor weighs heavily in favor of a grant of permissive

2  intervention.

3        Third, there is an independent basis for jurisdiction.  An applicant that seeks

4  permissive intervention must establish an independent basis for jurisdiction.

5  *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996).

6  This requirement is primarily concerned with avoiding the inappropriate expansion

7  of the district court's jurisdiction.  *Freedom from Religion Found., Inc. v. Geithner*,

8  644 F.3d 836, 844 (9th Cir. 2011).  Permitting Proposed Intervenors to intervene

9  and to participate in discussion about the finalization and enforcement of the

10  proposed settlement will not expand the Court's jurisdiction.

11        Proposed Intervenors' interests and those of other similarly situated schools

12  arise directly out of existing terms of the proposed settlement, and the settlement

13  implicates Proposed Intervenors' rights and obligations under 34 C.F.R. § 685.222.

14  This Court maintains jurisdiction over preliminary and final approval of the

15  settlement agreement.  By seeking to intervene in this matter to have a seat at the

16  table for settlement negotiations, Proposed Intervenors are recognizing the

17  independent basis for jurisdiction that exists within this case and is complying with,

18  rather than expanding, that jurisdiction.

19        Proposed Intervenors also satisfy Article III standing.  As set forth above and

20  in the supporting declarations, schools face concrete and particularized injuries that

21  are directly traceable to the proposed settlement.  Proposed Intervenors'

22  participation in the process to finalize any settlement will redress those injuries.

23  Therefore, Proposed Intervenors have an independent basis for jurisdiction.

24        As Proposed Intervenors satisfy all three requirements for permissive

25  intervention, this Court should exercise its discretion and grant intervention under

26  Rule 24(b) if it does not grant intervention as a matter of right under Rule 24(a).

27

28

1

## <u>CONCLUSION</u>

2

For the foregoing reasons, this Court should grant Proposed Intervenors'

3

motion for intervention.

4

5

DATED: July 13, 2022                    Respectfully submitted,

6

**MCGUIREWOODS LLP**

7

8

By:  */s/ Piper A. Waldron*

9

John S. Moran, Esq.

10

Piper A. Waldron, Esq.

11

*Counsel for Proposed Intervenor*

12

*American National University*

13

**GIBSON, DUNN & CRUTCHER LLP**

14

James L. Zelenay, Jr., Esq.

15

Lucas Townsend, Esq.

16

*Counsel for Proposed Intervenor*

*Lincoln Educational Services Corporation*

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED INTERVENORS' NOTICE OF MOTION AND MOTION TO INTERVENE
3:19-cv-03674-WHA

1

2

### <u>CERTIFICATE OF SERVICE</u>

3      I hereby certify that on July 13, 2022, the foregoing document entitled

4  **NOTICE OF MOTION AND MOTION TO INTERVENE OF PROPOSED**

5  **INTERVENORS AMERICAN NATIONAL UNIVERSITY AND LINCOLN**

6  **EDUCATIONAL SERVICES CORPORATION** was filed electronically with the

7  Clerk of the Court for the United States District Court, Northern District of

8  California using the ECF system.  Upon completion the ECF system will

9  automatically generate a "Notice of Electronic Filing" as service through ECF to

10  registered e-mail addresses of parties of record in the case.

11

12                                    */s/ Piper A. Waldron*

13                                    Piper A. Waldron

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28