**GIBSON, DUNN & CRUTCHER LLP**
LUCAS TOWNSEND (*pro hac* application forthcoming)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
ltownsend@gibsondunn.com
Telephone: 202.887.3731
Facsimile: 202.530.4254

**GIBSON, DUNN & CRUTCHER LLP**
JAMES L. ZELENAY, JR., SBN 237339
333 South Grand Avenue
Los Angeles, CA 90071
jzelenay@gibsondunn.com
Telephone: 213.229.7449
Facsimile: 213.229.6449

Attorneys for Proposed Intervenor
Lincoln Educational Services Corporation

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants.* | Case No. 19-cv-03674-WHA<br><br>Judge:        Hon. William H. Alsup<br>Courtroom: 12<br><br>**DECLARATION OF FRANCIS GIGLIO IN SUPPORT OF MOTION TO INTERVENE**<br><br>**HEARING DATE:** August 18, 2022, 8:00 AM<br><br>(Class Action)<br>(Administrative Procedure Act Case) |

I, Francis Giglio, have personal knowledge of the facts stated herein and hereby declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Senior Vice President of Compliance and Regulatory Services at Lincoln Educational Services Corporation ("Lincoln"). I am over the age of 18 and suffer from no impairments that would prevent me from giving a declaration.

2. Lincoln provides diversified career-oriented post-secondary education to recent high school graduates and working adults. Lincoln currently operates schools on 22 campuses in 14 states, offering programs in skilled trades, automotive technology, healthcare services, hospitality services, and information technology. Those schools include the Lincoln Technical Institute, Lincoln College of Technology, and Euphoria Institute of Beauty Arts and Sciences. Lincoln's schools are nationally accredited and participate in federal financial aid programs administered by the U.S. Department of Education (the "Department") and applicable state education agencies and accrediting commissions.

3. Incorporated in New Jersey in 2003, Lincoln is the successor-in-interest to schools including Lincoln Technical Institute, Inc., which opened its first campus in the aftermath of World War II in Newark, New Jersey. Lincoln Technical Institute was founded in 1946 "on the principle of keeping our nation positioned as the world's leading economy by providing invaluable training programs to help returning veterans rejoin the workforce." A Message From Scott M. Shaw, Chief Executive Officer and President, https://www.lincolntech.edu/about/letter-from-ceo. Since its founding, Lincoln Technical Institute alone has seen more than a quarter of a million graduates pass through its programs. *Id.*

4. Lincoln's mission is to provide its students with high-quality career-oriented training in its vocational programs, thereby serving students, local employers and their communities. By combining substantial distance training with traditional classroom-based training led by experienced instructors, Lincoln believes it offers its students a strong opportunity to develop practical job skills. Those job skills enable Lincoln's students to compete for employment opportunities and to pursue salary and career advancement.

5. In my role as Senior Vice President of Compliance and Regulatory Services, I am responsible for ensuring Lincoln's compliance with all accreditation standards and state regulations. I approve all responses to accreditation findings and review all applications to state, accrediting, or federal agencies. Since April 2021, I have served as Lincoln's liaison with the Department in responding to the Department's correspondence concerning borrower defense claims against Lincoln.

6. Before April 2021, Lincoln was not aware that any borrower defense applications had been made against it. On April 29, 2021, however, the Department notified Lincoln of "borrower

defense applications that make allegations regarding your school and that will require a fact-finding process pursuant to" departmental regulations. The Department's letter also made a number of general requests for information to facilitate the Department's fact-finding.

7. In all, the Department transmitted approximately 307 borrower defense applications to Lincoln in two tranches in May and July 2021. Many of the applications presented stale claims from students who attended Lincoln's schools well over a decade ago, including as early as 1992.

8. The number of students submitting borrower defense applications represents a miniscule fraction of Lincoln's student body over that time. Compared to the approximately 307 borrower defense applications that the Department transmitted to Lincoln, over 340,000 students enrolled at Lincoln's schools between 2005 and 2021.

9. When the Department transmitted these borrower defense applications to Lincoln, Lincoln had only 30 days to respond to the claims. However, Lincoln timely and comprehensively responded to each of the 307 applications. Lincoln also fully and timely complied with the Department's general requests for information by September 2021.

10. As Lincoln explained in its responses to the borrower defense claims, Lincoln's policies and practices refute any allegations of wrongdoing.

11. Lincoln understands the importance of employment rates for students selecting institutions and takes extensive measures to ensure that all published rates are accurate. Lincoln calculates its employment rates according to state and accreditor standards. To help ensure the accuracy of its reporting, Lincoln also employs a qualified third party to verify its placements.

12. Since at least June 2011, Lincoln has had in place a Code of Compliance, Ethics and Admission Policy—which Lincoln disclosed to the Department—that imposes high ethical standards on Lincoln's admissions officers. Specifically, the Policy states that admissions officers should never "imply or guarantee that the school will find employment for the student" or "make explicit or implicit promises of employment or exaggerated statements regarding employment or salary prospects to prospective students." The Policy also warns that admissions officers should "never imply that our credits may transfer to another college or institution and, in fact . . . affirm it is the receiving institution's determination on whether or not to accept our credits." Lincoln's admissions

team reviews the Policy during training, and admissions officers found to be in violation of the Policy risk discipline and termination.  In reviewing its own personnel, Lincoln has found that its admissions officers observe the Policy.

13.     To the best of my knowledge, the Department has never adjudicated the borrower defense applications against Lincoln or made any findings of wrongdoing in accordance with the Department's regulations.  Lincoln is aware of no findings or even credible allegations of wrongdoing against it.

14.     Lincoln first learned of a proposed settlement between the plaintiff class and the Department in this case when the parties filed their Notice of Motion and Joint Motion for Preliminary Approval of Settlement and Direct Notice to Class in this Court on June 22, 2022.  For the first time, Lincoln became aware that the Department had agreed to include Lincoln on a list of schools that had purportedly engaged in "substantial misconduct," Dkt. 246, at 3; Ex. C, and that the Department had promised full student loan forgiveness for each proposed class member associated with a listed school.  Dkt. 246-1, at 6.

15.     As currently drafted, the proposed settlement will severely harm Lincoln's interests.  Lincoln's unfounded inclusion on a list of purported wrongdoers is inflicting, and will continue to inflict, substantial reputational harms on Lincoln and its schools.  As recent media coverage shows, including Lincoln in such a list will erroneously associate Lincoln with allegedly *proven* wrongdoers.[*]

---

[*] *See, e.g.*, Adam S. Minsky, *264,000 Borrowers Will Get $6 Billion In Student Loan Forgiveness In 'Landmark' Settlement Agreement With Biden Administration*, Forbes (June 23, 2022), https://www.forbes.com/sites/adamminsky/2022/06/23/student-loan-forgiveness-another-264000-borrowers-will-get-debt-cancelled-in-landmark-settlement-agreement-with-biden-administration/?sh=fb62b4c5dfc8 (associating the listed schools in the proposed settlement with a prior scandal involving a "notorious" institution facing "widespread allegations of misconduct"); Addy Bink, *Attended One of These Schools? You May be Eligible for Student Loan Forgiveness*, Nexstar Media Wire (July 10, 2022), https://fox8.com/news/nexstar-media-wire/attended-one-of-these-schools-you-may-be-eligible-for-student-loan-forgiveness (recounting history of programs that "lacked certifications and accreditation" and engaged in "pervasive and widespread misconduct").

16. The consequences of these reputational harms also ultimately fall on Lincoln's students. In securing employment, Lincoln's students and alumni depend not only on the training they receive at Lincoln, but on Lincoln's leading reputation as a provider of technical skills.

17. As currently drafted, the proposed settlement also exposes Lincoln to additional regulatory risk from state regulators and accreditation boards. State governments could improperly attempt to leverage the settlement to bring de-licensing proceedings or consumer protection actions against Lincoln's schools. The proposed settlement also could spur state governments and accreditation boards to open new investigations into Lincoln's recruiting and educational practices, without any finding of wrongdoing under the Department's regulations.

18. Private plaintiffs also could use the proposed settlement as a springboard for actions seeking damages under state law causes of action, including actions for education malpractice or fraud and misrepresentation. While any such actions would be unfounded, the litigation risk is a substantial burden for Lincoln.

19. At minimum, the proposed settlement likely will lead to increased numbers of unmeritorious borrower-defense applications, to which Lincoln will be forced to respond. In just the week after the proposed settlement was filed, the Department reportedly "received more than 60,000 new borrower defense applications," while the Department received only about 100,000 such claims in all of 2021. Michael Stratford, *Inside the Deal That Could Revamp Loan Forgiveness For Defrauded Borrowers*, Politico (July 5, 2022), https://www.politico.com/newsletters/weekly-education/2022/07/05/inside-the-deal-that-could-revamp-loan-forgiveness-for-defrauded-borrowers-00043893.

20. By being subjected to the various harms identified above, Lincoln would be significantly injured if the proposed settlement is approved without a prior opportunity for Lincoln to provide substantive input.

I declare, under the penalty of perjury under the laws of the United States that these facts are true and correct and that this Declaration is executed this 13th day of July, 2022 at Westfield, New Jersey.

EXECUTED: July 13, 2022

Westfield, New Jersey

*Francis S. Giglio*
_____
Francis Giglio

# CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2022, the foregoing document entitled **DECLARATION OF FRANCIS GIGLIO IN SUPPORT OF MOTION TO INTERVENE** was filed electronically with the Clerk of the Court for the United States District Court, Northern District of California using the ECF system. Upon completion the ECF system will automatically generate a "Notice of Electronic Filing" as service through ECF to registered e-mail addresses of parties of record in the case.

*/s/ Piper A. Waldron*
Piper A. Waldron