Jesse Panuccio (*pro hac vice pending*)
jpanuccio@bsfllp.com
Jason Hilborn (*pro hac vice pending*)
jhilborn@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011

John J. Kucera (SBN 274184)
jkucera@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
725 S. Figueroa St., 31st Fl.
Los Angeles, CA 90017
Telephone: (213) 629-9040

*Counsel for Proposed Intervenor*
*Everglades College, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, et al., | Case No. 3:19-cv-03674-WHA |
| Plaintiffs, | **EVERGLADES COLLEGE, INC.'S NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| MIGUEL CARDONA, in his official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION, | Date:  August 25, 2022<br>Time:  8:00 a.m.<br>Room:  12, 19th Floor<br>Judge:  Honorable William Alsup |
| Defendants. | (Class Action)<br><br>(Administrative Procedure Act Case) |

## NOTICE OF MOTION

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on August 25, 2022, at 8:00 a.m., or as soon thereafter as counsel may be heard before the Honorable William Alsup, United States District Judge for the Northern District of California, in Courtroom 8 on the 19th Floor of the Philip E. Burton Courthouse and Federal Building, 450 Golden Gate Avenue, San Francisco, California, under Federal Rule of Civil Procedure 24, Proposed Intervenor Everglades College, Inc., ("ECI") will move and hereby moves to intervene in this action.

The parties have proposed a settlement that substantially and unlawfully impairs ECI's interests. ECI therefore seeks to intervene to object to the settlement as not fair, reasonable, or adequate. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying declaration, the pleadings and records on file herein, and such other evidence and arguments as may be presented to the Court prior to or at the hearing of this motion.

Dated: July 13, 2022

Respectfully submitted,

/s/ *John J. Kucera*

Jesse Panuccio
(*pro hace vice pending*)
jpanuccio@bsfllp.com
Jason Hilborn
(*pro hac vice pending*)
jhilborn@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL  33301
T: (954) 356-0011

John J. Kucera
jkucera@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
725 S. Figueroa St., 31st Fl.
Los Angeles, CA 90017
T: (213) 692-9040

EVERGLADES COLLEGE, INC.'S NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................ 3

    A.    The Borrower-Defense Process .......................................................... 3

    B.    This Lawsuit........................................................................................ 4

    C.    The Proposed Settlement .................................................................... 7

        1.    Path 1: Immediate and Automatic Debt Cancellation and Refunds for 75% of Class Members ............................................................. 7

        2.    Path 2: Delayed but Automatic Debt Cancellation and Refunds for Remaining Class Members ........................................................ 8

        3.    Path 3: Potential Automatic Debt Cancellation and Refunds for Every Person Who Holds a Federal Student Loan. ............................... 9

    D.    Keiser University and Everglades University......................................... 9

III.    ARGUMENT ............................................................................................. 11

    A.    Intervention by Right is Warranted under Rule 24(a). .......................... 12

        1.    ECI's Motion Is Timely. ................................................................ 12

        2.    ECI's Significant Interests Will Be Impaired If the Proposed Settlement is Approved........................................................................... 14

        3.    The Existing Parties Will Not Protect, and Instead Have Colluded to Impair, ECI's Significant Interests. .......................................... 18

    B.    Alternatively, The Court Should Grant ECI Permissive Intervention Pursuant to Rule 24(b). ................................................................................ 18

IV.    CONCLUSION.......................................................................................... 19

EVERGLADES COLLEGE, INC.'S NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arena v. Intuit Inc.*,
   2020 WL 7342716 (N.D. Cal. Dec. 14, 2020) ........................................................ 19

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ............................................................ 12, 14, 18

*Conservation Nw. v. Sherman*,
   715 F.3d 1181 (9th Cir. 2013) .................................................................. 16

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
   140 S. Ct. 1891 (2020) ................................................................... 2, 17

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011) .................................................................. 18

*Genuine Parts Co. v. Env't Prot. Agency*,
   890 F.3d 304 (D.C. Cir. 2018) ................................................................ 16

*Gomes v. Eventbrite, Inc.*,
   No. 5:19-CV-02019-EJD, 2020 WL 6381343 (N.D. Cal. Oct. 30, 2020) ............................. 18

*Greene v. United States*,
   996 F.2d 973 (9th Cir. 1993) .................................................................. 19

*Kalbers v. United States Dep't of Just.*,
   22 F.4th 816 (9th Cir. 2021) ............................................................ 12, 13, 18

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ................................................................. 19

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)......................................................................... 17

*Mexichem Specialty Resins, Inc. v. E.P.A.*,
   787 F.3d 544 (D.C. Cir. 2015) ................................................................ 16

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983) .............................................................. 14, 18

*Smith v. Los Angeles Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016) .................................................................. 13

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) .................................................................. 12

*United States v. Aerojet Gen. Corp.*,
   606 F.3d 1142 (9th Cir. 2010) ................................................................ 14

*United States v. Carpenter*,
   298 F.3d 1122 (9th Cir. 2002) ................................................................ 14

*United States v. City of Los Angeles, Cal.*,
   288 F.3d 391 (9th Cir. 2002) ............................................................. 12, 18

*W. Virginia v. Env't Prot. Agency*,
   142 S. Ct. 2587 (2022) ...................................................................... 1, 17

**Statutes**

5 U.S.C. § 551(4)-(5), 553, 706(2)(C) ...................................................... 21

5 U.S.C. § 706(1) ........................................................................ 9, 10

5 U.S.C. § 706(2) ........................................................................ 9, 10

5 U.S.C. § 706(2)(A) ....................................................................... 21

20 U.S.C. § 1070 ............................................................................ 8

20 U.S.C. § 1087e(h) ........................................................................ 8

**Rules**

Fed. R. Civ. P. 23(e)(2) .................................................................... 24

Fed. R. Civ. P. 24(a) ....................................................................... 17

Fed. R. Civ. P. 24(b) .................................................................... 23, 24

Fed. R. Civ. P. 24(c) ....................................................................... 17

**Regulations**

34 C.F.R. § 222(e)(3) ....................................................................... 20

34 C.F.R. § 685.206 (c)(3), 685.206(e)(16), 685.222(e)(7) ................................ 9, 14

34 C.F.R. § 685.206(c) ................................................................... 9, 14

34 C.F.R. § 685.206(c)(2) ................................................................... 20

34 C.F.R. § 685.206(e) ................................................................... 9, 14

34 C.F.R. § 685.206(e)(8) ................................................................... 20

34 C.F.R. § 685.206(e)(8)-(12), 685.222(e)(3)(i) ............................................ 9

34 C.F.R. § 685.206(e)(8)(vi) ............................................................... 20

34 C.F.R. § 685.206(e)(10) .................................................................. 20

34 C.F.R. § 685.206(e)(11)-(12) ............................................................. 21

34 C.F.R. § 685.222 ......................................................................... 9

34 C.F.R. § 685.222(e) ...................................................................... 20

34 C.F.R. § 685.222(e)(3)(i) ................................................................ 20

34 C.F.R. § 685.222(i) ...................................................................... 20

81 Fed. Reg. 75,926 (Nov. 1, 2016).......................................................... 8

84 Fed. Reg. 49,788 (Sept. 23, 2019) ....................................................... 8

87 Fed. Reg. 41,878 (July 13, 2022)......................................................... 9

Case No. 3:19-cv-03674-WHA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this class-action lawsuit, student-loan borrowers allege that the Department of Education ("ED" or "Department") unlawfully delayed adjudication of their applications for loan forgiveness.  A sub-class also alleges that, after the Department resumed adjudications, it issued unlawful "form denial letters" that must be reversed to permit further adjudication.  Specifically, the operative Complaint asks the Court to declare the borrowers are "entitled to a *decision on the merits*[] of their pending claims" and to "[c]ompel the Department to *lawfully adjudicate each and every borrower defense application* submitted by a Class member."  Doc. 198 at 76-77 (emphasis added).  On June 23, 2022, ED, represented by the Department of Justice ("DOJ"), filed a motion for summary judgment contending that "[b]ecause the Department has already provided the very relief that Plaintiffs sued to obtain—that is, an end to the alleged 'systemic abdication of its obligation to process borrower defense claims,'[—]Plaintiffs' original claim … is moot and 'must be dismissed.'"  Doc. 249 at 1.  Further, ED and DOJ contend that the class must be decertified because "the sole basis on which [the Court] granted certification—the existence of a common delay in issuing decisions equally applicable to all borrower defense applicants—no longer exists."  *Id.* at 1-2.

Despite their view that this Court no longer has subject matter jurisdiction or a basis on which to grant class-wide relief, ED and DOJ simultaneously seek this Court's approval of a sweeping "settlement" that is far afield of the relief requested in the Complaint.  Instead of ensuring lawful *adjudication* of claims, the proposed settlement would dispense with adjudication altogether and, in lawless fashion, *automatically grant* billions of dollars of blanket debt cancellation and refunds to an *unlimited* class of borrowers, regardless of the merits of their claims.  Congress has not approved such a policy (a "major question," to be sure[1]) and Speaker of the House Pelosi has made clear that the administration "does not have the power" to cancel debt

---

[1] *See W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587 (2022), No. 20-1530, slip op. at 19 (June 30, 2022) ("We presume that Congress intends to make major policy decisions itself, not leave those decisions to agencies.").

through executive action.[2]  Indeed, ED itself concluded just last year that "the Secretary does not have statutory authority to provide blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances, and/or to materially modify the repayment amounts or terms thereof,"[3] and ED has not provided any reasoning for its apparent change of position.  *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020) (failure of agency to explain adequately a major shift of legal and policy position is arbitrary and capricious under APA).

As might be expected, this *ultra vires* settlement proposal is plagued with problems.  One of those problems is that it deems the allegations borrowers make against their schools to be true without adjudication and without due process rights for the subject institutions.  Specifically, the settlement includes a list of 153 schools for which any borrower-defense claims will be automatically granted.  ED has provided only a single sentence of explanation as to how these schools ended up on the list:

> [B]ecause the Department has identified common evidence of institutional misconduct by the schools, programs, and school groups identified in Exhibit C to the Agreement, it has determined that every Class Member whose Relevant Loan Debt is associated with those schools should be provided presumptive relief under the settlement due to strong indicia regarding substantial misconduct by the listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools.

When this word salad is stripped of its many commas and clauses, what it really says is this: in most instances, all the Department has before it are unproven and yet-to-be-adjudicated allegations, but the agency is nonetheless deeming schools guilty without further process or

---

[2] Hon. Nancy Pelosi, *House Speaker Weekly Briefing*, C-SPAN, at 14:24-16:22 (July 28, 2021),     https://www.c-span.org/video/?513769-1/house-speaker-pelosi-holds-news-conference ("People think that the President of the United States has the power for debt forgiveness.  He does not.  He can postpone.  He can delay.  But he does not have that power.  That has to be an Act of Congress….  The president can't do it, so that's not even a discussion. Not everybody realizes that, but the president can only postpone, delay—but not forgive.").

[3] Mem. from Principal Deputy General Counsel, U.S. Dept. of Educ. to Secretary of Educ. (Jan. 12, 2021), *available at* https://static.politico.com/d6/ce/3edf6a3946afa98eb13c210afd7d /ogcmemohealoans.pdf.

1   explanation. This is a farce—the stuff of the Star Chamber. Neither the Administrative Procedure

2   Act nor the Constitution permit the Department of Education and Department of Justice to impair

3   the substantial rights of nonparties through a sweeping settlement, negotiated in secret, that strays

4   far beyond the claims in the case.

5        Everglades College, Inc. ("ECI")—doing business as Keiser University and Everglades

6   University—is one of the school systems arbitrarily included on this list. ECI is a nonprofit

7   institution serving the educational needs of tens of thousands of students each year. U.S News and

8   World Report and other reputable sources have repeatedly recognized ECI schools for their quality

9   and value. Yet ECI now stands accused and convicted by a proposed settlement that its adjudicator

10  secretly inked with its accusers. ECI received no notice of this agency action prior to the lodging

11  of the proposed settlement on June 22, 2022, and since that time the Department has provided no

12  explanation as to why ECI is included or what comes next if the proposed settlement is approved.

13  Inclusion on the list, and many other aspects of the proposed settlement, substantially impair ECI's

14  rights and reputation. Accordingly, ECI seeks to intervene in this case for the limited purpose of

15  protecting its rights and objecting to a "settlement" that is neither lawful nor fair.

16  **II.    BACKGROUND**

17      **A.    The Borrower-Defense Process**

18       Under Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1070 *et seq.*, the Secretary

19  of Education is charged with administering certain student loan programs, including the Direct

20  Loan Program, which allows students to receive loans from the federal government to pay for

21  educational expenses, and the Federal Family Education Loan Program, which, until 2010, allowed

22  students to obtain private loans subsidized and guaranteed by the federal government. Congress

23  also instructed the Secretary to "specify in regulations which acts or omissions of an institution of

24  higher education a borrower may assert as a defense to repayment of a loan." 20 U.S.C.

25  § 1087e(h). The Department has exercised this regulatory power several times—in 1995 (60 Fed.

26  Reg. 37,768 (July 21, 1995)), in 2016 (81 Fed. Reg. 75,926 (Nov. 1, 2016)), in 2019 (84 Fed. Reg.

27

28

49,788 (Sept. 23, 2019)).[4]  These regulations established a "borrower-defense" program that allows student-loan borrowers to seek debt cancellation if they allege and can prove that their school misled them or engaged in certain misconduct related to their education.

For loans issued before July 1, 2016, the regulations require the Department to evaluate any alleged misconduct under state law.  34 C.F.R. § 685.206(c).  For loans issued after that date, the 2016 rule created a federal standard under which allegations are to be adjudicated.  34 C.F.R. § 685.222.  The 2019 rule, among other things, further refined this federal standard for loans issued after July 1, 2020. 34 C.F.R. § 685.206(e).  The Department's regulations afford accused schools rights of notice and participation, as well as other protections meant to ensure a fairer adjudicatory process.  *See* 34 C.F.R. § 685.206(e)(8)-(12), 685.222(e)(3)(i).

If, after an adjudication, the Department grants a borrower-defense application and discharges the borrower's debt, the regulations state that the Department can initiate proceedings to recover the discharged amount from the school with which that debt was associated. *See* 34 C.F.R. § 685.206 (c)(3), 685.206(e)(16), 685.222(e)(7).

## B.    This Lawsuit

In 2019, a group of student-loan borrowers filed a complaint in this Court against the Department of Education, challenging an alleged "policy of inaction" on their borrower-defense applications.  Doc. 46 at 14.  Plaintiffs brought two counts, alleging "unlawfully withheld and unreasonably delayed agency action" under the Administrative Procedure Act, 5 U.S.C. § 706(1), and "arbitrary and capricious final agency action" under 5 U.S.C. § 706(2).  *See* Doc. 1 ¶¶ 377-404.  Plaintiffs sought to "compel[] the Department to start granting or denying their borrower defenses."  Doc. 1 at ¶ 10.  They specifically did "***not ask this Court to adjudicate their borrower defenses***."  Doc. 1 at ¶ 10 (emphasis added).

This Court later dismissed the second count, Doc. 41, such that the only count remaining concerned alleged "agency action unlawfully withheld or unreasonably delayed" in processing

---

[4] In a notice of proposed rulemaking published this month, 87 Fed. Reg. 41,878 (July 13, 2022), the Department again seeks to exercise this authority.

1    applications for loan forgiveness.  5 U.S.C. § 706(1); Doc. 1 ¶¶ 378-79.  This Court then certified

2    a class of "[a]ll people who borrowed a Direct Loan or FFEL loan to pay for a program of higher

3    education, who have asserted a borrower defense to repayment to the U.S. Department of

4    Education, whose borrower defense has not been granted or denied on the merits, and who is not

5    a class member in *Calvillo Manriquez v. DeVos*." Doc. 46 at 14.[5]

6         After summary-judgment briefing, the parties executed a settlement agreement, in which

7    the Department agreed to adjudicate pending borrower-defense applications and issue final

8    decisions on a timeline.  Doc. 97-2.  The proposed settlement did not resolve the merits of any

9    applications.  *Id.*  The Court preliminarily approved the settlement, Doc. 103, and the Department

10   continued to issue borrower-defense decisions.  Plaintiffs then moved for final approval of the

11   settlement and also to enforce it, claiming that certain denial notices provided insufficient

12   reasoning.  Doc. 129.

13        After a fairness hearing, at which the Court heard complaints regarding the alleged "form

14   denial notices," the Court withheld approval of the settlement agreement because there was "no

15   meeting of the minds" as to what was required under the proposed settlement.  Doc. 146 at 10.

16   The Court noted that it was "disappointed" because the Court had hoped to ***get reasoned***

17   ***decisions***, even if reasoned denials, to hundreds of thousands of student-loan borrowers."  *Id.* at

18   11 (emphasis added).  The Court directed that "[w]e will return to litigating the merits," ordered

19   additional discovery, and directed that Plaintiffs "shall move for summary judgment as to the

20   lawfulness of the Secretary's delay and the lawfulness of the perfunctory denial notice."  Doc. 146

21   at 7–11, 16.  The merits, as the Court outlined them (consistent with the Complaint), did not include

22   deciding the merits of any borrower-defense application.

23        On March 28, 2021, Plaintiffs sought leave to supplement their complaint.  Doc. 192.  The

24   Court granted the motion and the Supplemental Complaint added claims that ED had adopted an

25   unlawful "presumption of denial" policy for borrower-defense applications in violation of 5 U.S.C.

26

27        [5] *Manriquez* concerns borrowers who attended Corinthian Colleges. *See Calvillo Manriquez v. DeVos*, No. 3:17-cv-7210 (N.D. Cal.).

28

§ 706(2), that under this policy the Department had denied thousands of applications through "form denials," and that these acts violated the APA and Due Process Clause. Doc. 198 ¶¶ 436–455. Plaintiffs sought an order declaring that class members "are entitled to a decision on the merits"; declaring that the form denials are invalid; and compelling the Department "to lawfully adjudicate each and every borrower defense application." *Id.* at 76–77.

On January 25, 2022, the parties reported to the Court that "[f]or the past several months, the parties have been engaged in productive settlement negotiations that seek to, among other things, provide for 'an expedited, class-wide procedure for processing the borrower defense claims' at issue in this litigation." Doc. 213 at 1-2 (quoting Doc. 211). The status report did not mention anything about (i) granting, en masse, all borrower-defense applications without adjudication, or (ii) any process the Department was engaged in to analyze and render findings regarding alleged misconduct by schools. From January 25, 2022, through June 21, 2022, the parties filed additional papers setting out their positions. Again, none of these filings even hinted at blanket debt cancellation without adjudication or broad findings against any particular school. *See* Docs. 220, 221.

On June 22, 2022, the parties filed a Joint Motion for Preliminary Approval of Settlement. Doc. 246. Attached thereto was a fully executed settlement agreement ("Proposed Settlement"). Doc. 246-1. The remarkable and unprecedented terms of the Proposed Settlement are discussed below, but it first is necessary to detail the document the government filed with this Court the very next day. On June 23, the Department of Justice, representing the Department of Education, filed a motion for summary judgment. Doc. 249. Therein, the federal government represented that "the Department has already provided the very relief that Plaintiffs sued to obtain" and thus the case "***is moot and must be dismissed***." *Id.* at 1–2 (emphasis added). The government also represented there is no longer a basis for the Court to grant class-wide relief. *Id.* at 2. In other words, the federal government's position is that this Court no longer has subject matter jurisdiction to take *any* action in this case. Nonetheless, ED and DOJ simultaneously ask this Court to enter a settlement agreement that is so sweeping it has little analogue in American jurisprudence.

### C.     The Proposed Settlement

The Proposed Settlement, if approved, will displace entirely the borrower-defense adjudication process authorized by statute and established by duly promulgated rules.  It would provide blanket debt cancellation that Congress has refused to enact; it sweeps far beyond the certified class to include ***every student loan borrower in the country***; and it dispenses entirely with any procedural or substantive rights for institutions that stand accused of wrongdoing.

The Proposed Settlement establishes two categories of borrowers.  The first category, "the Class," consists of anyone who, by the execution date of the settlement, "borrowed a Direct Loan or FFEL loan to pay for a program of higher education" and "asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*, No. 3:17-cv-7210 (N.D. Cal.)."  Doc. 246-1 at 5 (citing Doc. 46 at 14).  The parties agree that the Class includes, and class "relief" shall flow to, any person whose borrower-defense application was denied after class certification in this case but before execution of the settlement.  Doc. 246-1 at 5-6.  The parties state that the Class includes about "246,000 members who received more than an estimated $7.5 billion" in loans.  Doc. 246 at 2.

The second category, "Post-Class Applicants," includes any person who "submits a borrower defense application after the Execution Date … but before the Final Approval Date."  Doc. 246-1 at 11.  In other words, the Post-Class Applicants can include ***any person who currently holds a federal student loan***.

The Proposed Settlement establishes three paths to debt cancellation and refunds of prior payments, potentially encompassing every student loan in the country.  These three paths are detailed below.

### 1.     Path 1: Immediate and Automatic Debt Cancellation and Refunds for 75% of Class Members

For Class Members who have debt "associated with the schools, programs, and School Groups listed" in Exhibit C to the Proposed Settlement, the Department will, within twelve months of final judgment, automatically: (i) "discharge" the debt, (ii) refund "all amounts … previously

paid to the Department," and (iii) delete "the credit tradeline associated" with the debt. Doc. 246-1 at 4 (Definition "S"), 6–7.  The Proposed Settlement states that if there is a "substantial question" as to whether debt "is associated with" a listed school, that "question will be resolved in favor of the Class Member (*i.e.*, in favor of granting relief)" without further inquiry, adjudication, or process provided to the school.  Doc. 246-1 at 7.

There are 153 schools listed in Exhibit C, and ECI's Keiser University and Everglades University are on that list.  The Proposed Settlement itself offers no explanation as to how or why any school is on the list, but the motion lodging the settlement offers a single sentence of explanation as to how the Department of Education has "determined" to cancel the debt associated with these schools' students:

> [B]ecause the Department has identified common evidence of institutional misconduct by the schools, programs, and school groups identified in Exhibit C to the Agreement, it has determined that every Class Member whose Relevant Loan Debt is associated with those schools should be provided presumptive relief under the settlement due to strong indicia regarding substantial misconduct by the listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools.

Doc. 246 at 17-18.

The parties estimate that 75% of the Class (200,000 borrowers) will receive this automatic debt cancellation without individualized adjudication of their claims.  Doc. 246 at 3.

### 2. Path 2: Delayed but Automatic Debt Cancellation and Refunds for Remaining Class Members

For Class members whose debt is not associated with an Exhibit C school—about 68,000 borrowers, Doc. 246 at 3—the Proposed Settlement establishes a new "review" process that is not found in any previously-promulgated borrower-defense rule.  The process includes a series of presumptions that essentially guarantee debt cancelation.  First, the Department must "presume[] to be true" all allegations in the borrower's application and, if that irrebuttable presumption establishes a valid claim, the Department must provide debt cancellation and refunds of all prior payments.  Doc. 246-1 at 7-8.   Second, the Department must presume that any borrower

reasonably relied on any alleged misrepresentation or omission by a school, even if the borrower does not or cannot allege reliance.  *Id.* at 8. Third, "[n]o borrower defense application … will be denied on the basis of insufficient evidence." *Id.*  Fourth, the Department may not apply any statute of limitations.  *Id.*  In short, because a borrower's claim cannot be denied for (1) false allegations, (2) insufficient evidence, (3) lack of reliance, or (4) lack of timeliness, *every* applicant will receive debt cancellation and refunds of prior payments. The "review" process is merely window dressing.

### 3. Path 3: Potential Automatic Debt Cancellation and Refunds for *Every* Person Who Holds a Federal Student Loan

For "Post-Class Applicants" (again, this can include every person who holds a federal student loan), the Proposed Settlement requires ED to "review" their applications pursuant to the standards established in the 2016 Rule, even though the Department's regulations normally require different standards for many of these applications.  Doc. 246-1 at 11.[6]  If ED does not complete the "review" within thirty-six months, regardless of reason, ED must cancel the applicant's debt and refund prior loan payments, regardless of the merits of the application.  *Id.*

In other words, if the Department of Education encourages every loan holder in America to submit a borrower-defense application prior to this Court's final approval of the Proposed Settlement, ***within three years the Department of Education can unilaterally cancel ALL federal student loan debt—and refund prior payments on student debt***—by simply not acting.

### D. Keiser University and Everglades University

Everglades College, Inc. ("ECI") is a Florida nonprofit corporation that runs an independent university system serving 20,000 students across twenty-seven campuses and online. Biederman Decl. ¶ 5.  ECI achieves its educational mission through two institutions: Everglades University and Keiser University.  *Id.*  These schools focus on providing education to those who want to return to school to enhance or change their careers.  *Id.*  U.S. News and World Report ranks Everglades University among the top 104 southern universities and Keiser University among

---

[6] Current regulations require the Department to apply state law standards to applications associated with loans issued before July 1, 2016, *see* 34 C.F.R. § 685.206(c), and to apply the 2019 Rule's standards to loans issued after July 1, 2020, *see* 34 C.F.R. § 685.206(e).

EVERGLADES COLLEGE, INC.'S NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES

the top 300 nationally.  *Id.* ¶ 6.

For the year 2022, Everglades University ranked tenth in Top Performers on Social Mobility by U.S. News and World Report, tied #104–137 for Best Regional Universities South by U.S. News and World Report, ranked thirtieth among Best Online Colleges in America by Niche, and first for both Best Online Bachelor's in Aeronautics and Aviation Programs and Best Online Bachelor's in Environmental Science Programs by Intelligent.com. *Id.* ¶ 7.

Keiser University, in turn, has been ranked seventh by Chronicle of Higher Education for four-year graduation rates for private, nonprofit, nonresidential campuses (2021–2022), the seventeenth Best College in Florida by Niche.com (2022), and fifth in the United States for Social Mobility according to U.S. News and World Report (2022).  *Id.* ¶ 8.

As explained above, the Department of Education's regulations require it to notify Keiser and Everglades if a borrower-defense application implicates the school.  In the Proposed Settlement, the Department appears to indicate that there are such applications.  Yet the Department of Education has ***not*** previously notified ECI, Everglades University, or Keiser University that any of its students or former students have filed borrower-defense applications. *Id.* ¶ 10.  Nor have ECI, Everglades, or Keiser been informed that specific members of the *Sweet* class are current or former students.  *Id.*  ECI, Keiser, and Everglades first became aware of their inclusion on the list included as Exhibit C to the Proposed Settlement ("Exhibit C List") on June 22, 2022, after media outlets reported the filing of the Proposed Settlement on the docket. *Id.* ¶ 11. ED has not provided ECI, Keiser, or Everglades with any explanation as to why they are included on the Exhibit C list. *Id.*

The Department's inclusion of ECI, Keiser, and Everglades on the Exhibit C List is already causing reputational harm, as third parties are treating it like a neutral finding of wrongdoing by the schools, *id.* ¶ 12, rather than a litigation concession cooked up in a secret deal with the schools' accusers.  Moreover, the Department has failed to provide any assurances that inclusion on the Exhibit C list does not create negative financial or other consequences for the schools at issue.  *Id.* ¶ 13.

## III.    ARGUMENT

On June 22, 2022, the parties to this case lodged a settlement agreement that bears almost no relationship to the claims in the Complaint, and that transformed this case into one that directly implicates the interests of ECI and its schools.  For Class Members, the Department purports to have "determined" that debt affiliated with ECI schools should be cancelled—and all prior debt payments refunded—even though the Department has not informed ECI of any misconduct allegations, much less found through neutral adjudication that such allegations are true and satisfy the legal requirements of the borrower-defense program.  Moreover, through the Proposed Settlement, the Department of Education invites *every former or current ECI student who holds a federal loan* to become a "Post-Class Applicant," at which point the Department will jettison the adjudicatory standards in the applicable borrower-defense rules and apply alternate standards chosen solely (and secretly) by the settling parties.  And even that degraded process will occur only if the Department chooses to adjudicate at all.  It can instead choose to do nothing for three years, at which point the Post-Class Applicants (again, potentially every former or current ECI student who holds a federal loan) will be entitled to automatic debt cancellation and refunds.  After all this debt is cancelled and refunded—potentially hundreds of millions of dollars—the Department, without having adjudicated a single claim or provided ECI with any due process rights, may attempt to hold ECI liable, with devastating potential consequences.  And even if there were not potentially ruinous programmatic and financial consequences, ECI faces the significant reputational harm of being deemed guilty without having had even a fig leaf of due process or a single opportunity to rebut its accusers.

ECI should be granted intervention—prior to this Court's consideration of the Proposed Settlement (either preliminary or final)—for the limited purpose of allowing ECI to protect its interests by lodging objections that explain myriad ways in which the Proposed Settlement is unlawful and unjust.  The motion is timely, as ECI learned just weeks ago that its interests were now set to be compromised.  And no party will protect ECI's interests.  To the contrary, it is now clear that Plaintiffs' counsel (the Harvard "Project on Predatory Student Lending"), the Department, and the Department of Justice colluded in secret, for months, to impair the interests

1    of ECI and scores of other schools.[7]

2    **A.    Intervention by Right is Warranted under Fed. R. Civ. P. 24(a).**

3    To intervene by right under Fed. R. Civ. P. 24(a), a proposed intervenor must make a (1)

4 "timely" motion showing (2) "that the would-be intervenor has a significantly protectable interest

5 relating to ... the subject of the action," (3) "that the intervenor is so situated that the disposition

6 of the action may as a practical matter impair or impede [the intervenor's] ability to protect that

7 interest," and (4) "that such interest is inadequately represented by the parties to the action."

8 *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021).  The proposed intervenor

9 has the burden to show these four requirements are met, but they are "broadly interpretated in favor

10 of intervention." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th

11 Cir. 2011). Thus, intervention "is guided primarily by practical … considerations," *United States

12 v. City of Los Angeles, Cal.*, 288 F.3d 391, 397–98 (9th Cir. 2002), not technical distinctions. *Sw.

13 Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).

14    **1.    ECI's Motion Is Timely.**

15    Timeliness turns on "three primary factors": (1) the length of and reason for any delay in

16 intervention, (2) the prejudice to other parties, and (3) the stage of the proceeding at which an

17 applicant seeks to intervene. *Kalbers*, 22 F.4th at 822.  All of these factors show that ECI's motion

18 is timely.

19    First, "[d]elay is measured from the date the proposed intervenor should have been aware

20 that its interests would no longer be protected adequately by the parties, not the date it learned of

21 the litigation." *Id.* at 823.  Here, ECI's interests were not implicated until the parties publicly filed

22 the Proposed Settlement.  Prior to that date, the litigation concerned Plaintiffs' request that ED

23 *adjudicate* their claims pursuant to the quasi-judicial process established by duly promulgated

24 rules.  Indeed, Plaintiffs emphasized that they were *not* asking the Court to adjudicate the merits

---

26    [7] Pursuant to Fed. R. Civ. P. 24(c), ECI has attached as an exhibit to this motion an Answer
27 to the Complaint and to the Supplemental Complaint. But ECI is without knowledge of the veracity
of virtually every allegation in both complaints, which only underscores that the proposed settlement
is far afield of the claims in this case and is what has triggered ECI's intervention interest.

28

EVERGLADES COLLEGE, INC.'S NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF
POINTS AND AUTHORITIES

of their claims, thus leaving intact ECI's rights under the borrower-defense regulations, the APA, and Constitution.  Doc. 1 at ¶ 10.  On June 22, 2022, however, the parties lodged the Proposed Settlement, in which they publicly revealed for the first time that they had jointly and secretly fashioned a completely new borrower-defense regime—outside of the legislative, rulemaking, or adjudicatory process—that automatically deems ECI guilty of any allegation contained in borrower-defense applications.  It was not until this date that ECI's interests were implicated and that it became apparent that the parties to the litigation were not only failing to protect ECI's interests, but secretly conspiring to impair them.

Second, any "prejudice must be connected in some way to the timing of the intervention motion." *Kalbers*, 22 F.4th at 825.  Here, again, the parties cannot be prejudiced by the timing of intervention because ECI has just learned of the parties' plan to impair ECI's interests—and the parties themselves controlled the timing of that disclosure.  Critically, the "fact that including another party in the case might make resolution more difficult does not constitute prejudice." *Id.*  Accordingly, any argument by the parties that their settlement might be disrupted is not a reason to deny intervention.  To the contrary, it is their proposed settlement that makes intervention necessary.

Third, in evaluating the stage of litigation, "substance prevails over form." *Kalbers*, 22 F.4th at 826.  While this case had long concerned ED's alleged delay in adjudication, the Proposed Settlement has essentially transformed it into a new case about whether blanket debt cancellation and refunds can be automatically granted.  With respect to the substantial issues now in play, "the parties and [this Court] ha[ve] covered scarcely any legal ground together." *Id.*  Moreover, the Ninth Circuit has "allowed intervention … all the way into the remedial phase of litigation … where, as here, 'a change of circumstances occurs, and that change is the major reason for the motion to intervene.'" *Id.* (quoting *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)).

\*\*\*

In sum, all factors point to the timeliness of ECI's motion to intervene.  The Proposed

Settlement implicated, for the first time, ECI's interests and ECI has now expeditiously lodged this motion. Under like circumstances, the Ninth Circuit has repeatedly held that intervention is timely and proper. *See United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (motion to intervene held timely where "intervenors acted as soon as they had notice that [a] proposed settlement was contrary to their interests" and "learned that the settlement constituted a substantial departure from the position that the government had maintained throughout the litigation"); *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (holding that intervenors "acted promptly" after they learned of a proposed consent decree and moved to intervene "within a span of four months").

### 2. ECI's Significant Interests Will Be Impaired If the Proposed Settlement is Approved.

The second and third prongs—that ECI has a significantly protectable interest relating to the subject of the action and disposition may impair the ability to protect that interest—are easily satisfied here. A proposed intervenor's interest is "significant[ly] protectable" if it is protected under "some law" and "there is a relationship between" that interest and "the claims at issue." *Citizens for Balanced Use*, 647 F.3d at 897. This is a "practical … inquiry." *Id.* To determine whether this interest will be impaired, the Ninth Circuit asks whether an intervenor "would be substantially affected in a practical sense by the determination made in an action," and "absolute certainty" is not required. *Id.* at 898, 900. If so, the intervenor "should, as a general rule, be entitled to intervene." *Id. See also Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (intervention warranted if interests "may, as a practical matter, be impaired"). ECI has legally protectable interests relating to the subject matter of this action as it has now been refashioned by the Proposed Settlement.

First, as participants in Federal Student Financial Aid Programs, Keiser University and Everglades University entered into lengthy Program Participation Agreements and are subject to the statutes and regulations that govern these programs. That Agreement, and those laws and regulations, place substantial obligations on the universities but also confer substantial rights, including procedural and substantive rights that apply before any finding of wrongdoing can be

made against the schools.  Borrowers seeking to assert a borrower-defense claim must first submit to the Department an application with evidence supporting their claim.  *See* 34 C.F.R. § 685.206(e)(8); 34 C.F.R. § 685.206(c)(2); 34 C.F.R. § 685.222(e).  The process then differs depending on when the relevant loans were originated:

- For loans originated before July 1, 2020, a designated ED official adjudicates the claim "through a fact-finding process." 34 C.F.R. § 222(e)(3).  As part of this adjudication, the Department official must "notif[y] the school of the borrower defense application and consider[] … [a]ny response or submissions from the school." 34 C.F.R. § 685.222(e)(3)(i).  The official concludes with a written decision disposing of the application.  If the claim is granted in whole or in part, the official must determine the "appropriate amount of relief" by considering, inter alia, the "value of the education the borrower received." 34 C.F.R. § 685.222(i).

- For loans issued after July 1, 2020, borrowers must submit their applications "under penalty of perjury" and "sign a waiver" allowing schools to provide ED "items from the borrower's education record relevant to" the borrower-defense application.  34 C.F.R. § 685.206(e)(8).  Borrowers must also acknowledge that, if they receive full relief, their school "may … refuse to verify" their "credential associated with the discharged loan." 34 C.F.R. § 685.206(e)(8)(vi).  When ED receives a borrower-defense application, it must "notify the school," "provide a copy" of the application, and "invite the school to respond and to submit evidence" in its defense.  34 C.F.R. § 685.206(e)(10).  "After considering the borrower's application and all applicable evidence," including "the school's response," ED must "issue[] a written decision" that "notif[ies] the borrower and the school of the decision," "[p]rovide[s] the reasons for" it, and "[i]nform[s] the borrower and the school" of the amount of relief.  34 C.F.R. § 685.206(e)(11)-(12).

The Proposed Settlement would unlawfully sweep away all the procedural and substantive rights that ECI has under the applicable laws and regulations, including the right to present

evidence to rebut the accusations against it.  *See Genuine Parts Co. v. Env't Prot. Agency*, 890 F.3d 304, 346 (D.C. Cir. 2018) (a federal agency "may not minimize … without adequate explanation" "evidence that undercuts [the agency's] judgment").   The Proposed Settlement apparently includes a *sub silentio* determination by ED that *every* school on the Exhibit C list has committed wrongdoing as to *every* single borrower-defense applicant in the Class.  But even that is a ruse because, in the motion seeking approval of the settlement, ED admits that its decision to grant automatic debt cancellation is, at most, based on allegations that only "in some instances [have been] proven."  Doc. 246 at 17-18.  Moreover, for the Post-Applicant Class, which can include every federal loan borrower who ever attended an ECI school, the Department has— without going through notice-and-comment rulemaking—sidestepped the protections of the 2019 Rule and reverted to the 2016 Rule.  And it need not even apply the 2016 Rule if it prefers to simply wait three years so that automatic debt cancellation and refunds will kick in.  In short, the lawless process outlined the Proposed Settlement will strip from ECI all rights it has under duly promulgated rules.

<u>Second</u>, the Administrative Procedure Act grants ECI protectable interests that will be unlawfully impaired if the Proposed Settlement is approved. For example, to the extent that the Department has "determined" that ECI engaged in "institutional misconduct," Doc. 246 at 17, that unsupported determination is arbitrary and capricious.  *See* 5 U.S.C. § 706(2)(A).

Further, to the extent ED will apply to ECI schools a process outside of that enshrined in duly promulgated rules, that process is unlawful for failure to go through notice-and-comment rulemaking.  *See* 5 U.S.C. § 551(4)-(5), 553, 706(2)(C); *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1187 (9th Cir. 2013) (a settlement cannot "permanently and substantially amend[] an agency rule that would have otherwise been subject to statutory rulemaking procedures"); *Mexichem Specialty Resins, Inc. v. E.P.A.*, 787 F.3d 544, 557 (D.C. Cir. 2015) (courts "generally should not uncritically accept[] an agency's concession of a significant merits issue" because doing so would allow an agency to "circumvent the rulemaking process through litigation concessions," "deny[] interested parties … the opportunity to oppose or otherwise comment on significant changes in

1   regulatory policy," and render a "dead letter" the "doctrine requiring agencies to give reasons

2   before they rescind rules").

3          Further still, the Proposed Settlement violates the APA because the Department's provision

4   of blanket, automatic debt cancellation and refunds reverses—without explanation—the

5   extensively reasoned conclusion it came to just last year. *See* Mem. from Principal Deputy General

6   Counsel, U.S. Department of Education to Secretary of Education (Jan. 12, 2021) ("the Secretary

7   does not have the statutory authority to cancel, compromise, discharge, or forgive, on a blanket or

8   mass basis, principal balances of student loans, and/or to materially modify the repayment amounts

9   or terms thereof").  As the Supreme Court reaffirmed just two years ago, inadequately explained

10  reversals of agency policy and legal conclusions are arbitrary and capricious and cannot stand. *See*

11  *Department of Homeland Security*, 140 S. Ct. 1891 (invalidating DHS reversal of DACA policy

12  for lack of sufficient explanation).

13         <u>Third</u>, the Constitution grants ECI and its schools legally protected interests that will be

14  unlawfully impaired if the Proposed Settlement is approved.  The Due Process Clause prohibits

15  the government from impairing ECI's property without providing due process of law, *Mathews v.*

16  *Eldridge*, 424 U.S. 319, 332 (1976), which is utterly lacking under the terms of the Proposed

17  Settlement.  Plaintiffs themselves should recognize this point, because it is the very same due

18  process interest they assert in attacking ED's alleged "form denial[s]." *See* Doc. 198 at 75.

19         Moreover, the Constitution's separation-of-powers provisions prohibit the Department of

20  Education from deciding "major questions"—i.e., "asserting highly consequential power beyond

21  what Congress could reasonably be understood to have granted." *West Virginia*, 142 S. Ct. 2587,

22  No. 20-1530, slip op. at 19 (June 30, 2022).  That is exactly what the Proposed Settlement does,

23  enshrining the very blanket debt cancellation that Congress had long debated but refused to enact.

24                                              ***

25         In sum, the Proposed Settlement implicates several of ECI's significant legally protectable

26  interests, and its entry at a minimum "may" permanently impair those interests. *Sagebrush*

27  *Rebellion, Inc.*, 713 F.2d at 528. Accordingly, ECI "should … be entitled to intervene." *Citizens*

28

1   *for Balanced Use*, 647 F.3d at 897.

2       **3.    The Existing Parties Will Not Protect, and Instead Have Colluded to
            Impair, ECI's Significant Interests.**

3

4       A proposed intervenor need only show "that representation of [its] interest *may* be

5   inadequate—a 'minimal' burden." *Kalbers*, 22 F.4th at 828.  That neither Plaintiffs nor the federal

6   government will adequately represent ECI's interests is indisputable.  The parties met for months,

7   in secret, to concoct a sweeping settlement that ventures far beyond the relief requested in the

8   Complaint and is directly aimed impairing, without process, the schools that appear on the Exhibit

9   C list.  Even in a normal case, the "government's representation of the public interest may not be

10  identical to the individual parochial interest of a particular group," *Citizens for Balanced Use v.*

11  *Montana Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011), but here the government has made

12  clear that it is now adverse to the schools at issue.  ECI's intervention would therefore "offer[] a

13  necessary element to the proceedings that would be neglected" absent intervention." *Sagebrush*

14  *Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

15      **B.    Alternatively, The Court Should Grant ECI Permissive Intervention
            Pursuant to Fed. R. Civ. P. 24(b).**

16      If the Court finds that the requirements for mandatory intervention have somehow not been

17  met, then it should grant ECI permissive intervention under Fed. R. Civ. P. 24(b).  Permissive

18  intervention "requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a

19  common question of law and fact between the movant's claim or defense and the main action."

20  *Gomes v. Eventbrite, Inc.*, No. 5:19-CV-02019-EJD, 2020 WL 6381343, at *2 (N.D. Cal. Oct. 30,

21  2020); *see also United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 403 (9th Cir. 2002).

22      The "independent jurisdictional grounds requirement does not apply" because this is a

23  "federal-question case[]" and ECI "is not raising new claims." *Freedom from Religion Found.,*

24  *Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). This motion is timely for the reasons explained

25  above.  *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997)

26  (considering "the same three" timeliness factors).  And because the Proposed Settlement has

27  transformed this case from concerning an alleged "policy of inaction," Doc. 46 at 13, to one

28

**EVERGLADES COLLEGE, INC.'S NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF
POINTS AND AUTHORITIES**

1    automatically deeming schools to have engaged in wrongdoing justifying the wholesale

2    cancellation of debt, ECI's interests "relate to the subject matter of the action remaining before the

3    district court." *Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993).  ECI will therefore raise

4    legal issues in common with the main action in its current iteration.  *Id.*

5           Ultimately, this Court must determine whether the proposed settlement is fair.  Fed. R. Civ.

6    P. 23(e)(2).  "Hearing [ECI's] perspective … can only help the Court make an informed decision"

7    on that question.  *Arena v. Intuit Inc.*, 2020 WL 7342716, at *1 (N.D. Cal. Dec. 14, 2020).  The

8    Court should thus, at a minimum, "grant[] [ECI's] motion under Rule 24(b)."  *Id.*

9    **IV.    CONCLUSION**

10          For the foregoing reasons, ECI respectfully asks this Court to grant its motion to intervene.

11

12   Dated: July 13, 2022                          Respectfully submitted,

13

14   Jesse Panuccio                                /s/ *John J. Kucera*
                                                   John J. Kucera
15   (*pro hace vice pending*)                     jkucera@bsfllp.com
     jpanuccio@bsfllp.com                          **BOIES SCHILLER FLEXNER LLP**
16   Jason Hilborn                                 725 S. Figueroa St., 31st Fl.
     (*pro hac vice pending*)                      Los Angeles, CA 90017
17   jhilborn@bsfllp.com                           T: (213) 692-9040
     **BOIES SCHILLER FLEXNER LLP**
18   401 E. Las Olas Blvd., Ste. 1200
     Fort Lauderdale, FL  33301
19   T: (954) 356-0011

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2022, I caused to be electronically filed the foregoing EVERGLADES COLLEGE, INC.'S notice of motion and MOTION TO INTERVENE; Memorandum of points and authorities with the Clerk of the Court via CM/ECF.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing systems.

Dated:  July 13, 2022                          **BOIES SCHILLER FLEXNER LLP**

                                               By: */s/ John J. Kucera*
                                               John J. Kucera

                                               *Attorney for Proposed Intervenor*
                                               *Everglades College, Inc.*

EVERGLADES COLLEGE, INC.'S NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES