TERANCE A. GONSALVES (Pro Hac Vice pending)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile:     (404) 881-7777
Email: terance.gonsalves@alston.com

ALEXANDER AKERMAN (State Bar No. 280308)
Alston & Bird LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone:    213-576-1000
Facsimile:    213-576-1100
E-mail:        alex.akerman@alston.com

Attorneys for Proposed Intervenor-Defendant
THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br>*Defendants* | Case No. 19-cv-03674-WHA<br><br>**THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY'S NOTICE OF MOTION AND MOTION TO INTERVENE; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Proposed] Orders filed concurrently herewith]*<br><br>Date:          August 18, 2022<br>Time:          8:00 a.m.<br>Courtroom:      12<br>Judge:         Hon. William A. Alsup<br><br>(Class Action)<br>(Administrative Procedure Act Case)<br><br>Filing Date:    July 14, 2022<br>Trial Date:     None Set |

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on August 18, 2022 at 8:00 a.m., or as ***soon as practical before*** in the Court's discretion, this matter may be heard before the Honorable William H. Alsup, The Chicago School of Professional Psychology (hereinafter "TCSPP") will and hereby does move to intervene in this matter, pursuant to Rule 24 of the Federal Rules of Civil Procedure.  TCSPP moves to intervene to file a ***Proposed Motion to Continue the July 28, 2022 Preliminary Approval Hearing and Request for Leave to File Opposition to the Joint Motion for Preliminary Approval of Settlement.***  As TCSPP only received notice of its inclusion in proposed settlement after the Joint Motion to was made public on June 22, 2022 it did not have appropriate time to draft a Motion to Intervene to allow it to notice a hearing on the Motion prior to the preliminary approval hearing currently set for July 28, 2022.

As demonstrated in the accompanying memorandum, TCSPP is entitled to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) because: (1) the motion to intervene is timely; (2) TCSPP has a significant protectable interest relating to the subject of the suit; (3) that interest may be impaired or impeded by the disposition of this case; and (4) none of the other parties adequately represent TCSPP's interests. If TCSPP is not granted intervention as a matter of right, it requests that it be granted permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). The defenses that TCSPP would assert present questions of law and fact in common with the underlying suit, would respond directly to the Plaintiffs' claims, and would assist the Court is assessing the proposed class action settlement.

This Motion is made based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Ted Scholz (hereinafter cited as "Scholz Decl."); the Declaration of Terance A. Gonsalves (hereinafter cited as "Gonsalves Decl."); the pleadings and papers on file; and upon such oral argument as may be made at the hearing. **This Motion is also supported by the separate pleading required by Rule 24(c) titled the Proposed Motion to Continue the July 28, 2022 Preliminary Approval Hearing and Request for Leave to File Opposition to the Joint Motion for Preliminary Approval of Settlement, which is filed**

**herein, and which seeks to continue the July 28, 2022 Hearing and requests leave to file an opposition to the Joint Motion for Preliminary Approval.**

TCSPP respectfully requests that the Court grant this Motion along with attached Motion to Continue. A proposed order is filed herewith.

Dated: July 14, 2022

TERANCE A. GONSALVES (Pro Hac Vice pending)
ALEXANDER AKERMAN
ALSTON & BIRD LLP

By:    */s/ Alexander Akerman*
           Alexander Akerman
Attorneys for Proposed Intervenor-Defendant
THE   CHICAGO   SCHOOL   OF   PROFESSIONAL
PSYCHOLOGY

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF INTEREST .............................................................................. 4

III.   ARGUMENT ....................................................................................................... 9

    A.    TCSPP Is Entitled to Intervene as of Right. .................................... 9

         1.    The Motion to Intervene is Timely. ................................. 10

         2.    TCSPP Has a Direct and Recognized Interest in the Settlement. ................... 12

         3.    TCSPP's Interests Will Be Impaired or Impeded by the Disposition of this Litigation Through the Proposed Settlement. ........................... 17

         4.    The Current Parties Do Not Adequately Represent  TCSPP's Interests......... 19

    B.    Alternatively, TCSPP Should Be Granted Permissive Intervention. ......................... 23

IV.   CONCLUSION................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Rivers v. Wheeler*,
No. C 20-04636 WHA, 2020 U.S. Dist. LEXIS 188160 (N.D. Cal. Oct. 9, 2020) (Alsup,
J.)..................................................................................................................................19, 20

*Chi v. Univ. of S. Cal.*,
No. 2:18-cv-04258-SVW-GJS, 2019 U.S. Dist. LEXIS 125355 (C.D. Cal. May 21, 2019)...22

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .................................................................................9, 12, 18, 19

*Comm. of Unsecured Creditors of the Bankr. Estate of Rajysan, Inc. v. L.A. Cty. Treasurer & Tax Collector (In re Rajysan, Inc.)*,
No. CV 18-10667-JFW, 2019 U.S. Dist. LEXIS 57626 (C.D. Cal. Apr. 3, 2019).................14

*Conservation Law Found. of New England, Inc. v. Mosbacher*,
966 F.2d 39 (1st Cir. 1992)........................................................................................21

*Env't Def. Ctr. v. Bureau of Safety & Env't Enf't*,
No. CV 14-9281 PSG, 2015 U.S. Dist. LEXIS 187137 (C.D. Cal. Apr. 2, 2015) .................21

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc)...........................................20

*Glass v. UBS Fin. Servs.*,
No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8509 (N.D. Cal. Jan. 17, 2007) ....................10

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*,
418 F.3d 277 (3d Cir. 2005)........................................................................2, 5, 10, 12, 16, 21

*In re Novatel Wireless Sec. Litig.*,
No. 08cv1689 AJB (RBB), 2014 U.S. Dist. LEXIS 85994 (S.D. Cal. June 23, 2014) .......8, 10

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1094 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc)...........................................23

*Lighthouse Res. Inc. v. Inslee*,
No. 3:18-cv-050040-RJB, 2018 U.S. Dist. LEXIS 49595 (W.D. Wash. Mar. 26, 2018)........17

*Local No. 93, Int'l Ass'n of Firefighters v. Cleveland*,
478 U.S. 501 (1986)....................................................................................................15

THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY'S NOTICE OF MOTION AND MOTION TO INTERVENE
Case No. 19-cv-03674-WHA

*Nat. Res. Def. Council v. Costle*,
    183 U.S. App. D.C. 11, 561 F.2d 904 (1977) .......................................................... 14

*Nat'l Farm Lines v. Interstate Commerce Comm'n*,
    564 F.2d 381 (10th Cir. 1977) ........................................................................... 17

*Perry v. Schwarzenegger*,
    630 F.3d 898 (9th Cir. 2011) ............................................................................ 23

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) ............................................................................ 20

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983) ............................................................................ 22

*Smith v. L.A. Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ............................................................................ 10

*Snowlands Network v. United States*,
    No. 2:11-cv-02921-MCE-DAD, 2012 U.S. Dist. LEXIS 144073 (E.D. Cal. Oct. 4, 2012) .... 22

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ................................................................. 9, 10, 13, 18, 20

*The Official Comm. of Unsecured Creditors of the Bankr. Estate of Rajysan, Inc. v. State of N.J., Dep't of Treasury (In re Rajysan, Inc.)*,
    No. CV 18-10666-JFW, 2019 U.S. Dist. LEXIS 57649 (C.D. Cal. Apr. 3, 2019) ................ 19

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) ........................................................................................ 20

*United States v. Aerojet Gen. Corp.*,
    606 F.3d 1142 (9th Cir. 2010) ............................................................................. 9

*United States v. Albert Inv. Co.*,
    585 F.3d 1386 (10th Cir. 2009) ........................................................................... 18

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ........................................................................ 10, 17

*United States v. Carpenter*,
    298 F.3d 1122 (9th Cir. 2002) ....................................................................... 10, 12

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) .................................................................. 10, 12, 13

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
    295 F.3d 1111 (10th Cir. 2002) ......................................................................... 17

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
    986 F.3d 1106 (9th Cir. 2021) .................................................................................13

*Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ...........................................................................10, 14

*Winston v. United States*,
    No. 14-cv-05417-MEJ, 2015 U.S. Dist. LEXIS 172721 (N.D. Cal. Dec. 29, 2015)..............19

RULES

Federal Rule of Civil Procedure 24(a)(2) .................................................2, 4, 9, 10, 12, 14, 23, 24

Federal Rule of Civil Procedure 24(b)(1)(B)..................................................................2, 4, 23, 24

REGULATIONS

34 C.F.R. pt. 685 App'x A...........................................................................................................15

(34 C.F.R. § 668.84(a)(1)).....................................................................................................15, 17

(34 C.F.R. § 668.85(a)(1)).............................................................................................................15

34 C.F.R. § 668.86(a)(1)................................................................................................................15

34 C.F.R. § 685.206(c)....................................................................................................................2

34 C.F.R. § 685.206(c)(3) and (4) .................................................................................................3

34 C.F.R § 685.206(c)(3) and (c)(4) ...........................................................................................17

34 C.F.R. § 685.206(c)(3), (c)(4) and (e)(16)........................................................................3, 9, 14

34 C.F.R. § 685.206(e)(10)....................................................................................................2, 3, 7

34 C.F.R. § 685.206(e)(10)(i) .................................................................................................14, 18

34 C.F.R. § 685.206(e)(10)(iii)-(iv)...............................................................................................14

34 C.F.R. § 685.206(e)(11)(i)(A)-(C)............................................................................................14

34 C.F.R. § 685.206(e)(13)............................................................................................................16

34 C.F.R. § 685.206(e)(16).......................................................................................................3, 16

34 C.F.R. § 685.222 ........................................................................................................................2

34 C.F.R. § 685.222(e)(3).......................................................................................................2, 3, 7

34 C.F.R. § 685.222(e)(3)(i) ...................................................................................................14, 18

34 C.F.R. § 685.222(e)(7) and (h)(1) .................................................................3, 9, 15

34 C.F.R. § 685.222(e)(7) and (h)(1)(i) .....................................................................16

34 C.F.R. § 685.222(h)(1)(iii) ....................................................................................14

34 C.F.R. § 685.308 (a)(3) ..........................................................................................15

34 CFR 668.71 ............................................................................................................15

**OTHER AUTHORITIES**

*Education Department Releases Proposed Regulations to Expand and Improve Targeted Relief Programs* (July 6, 2022), https://www.ed.gov/news/press-releases/education-department-releases-proposed-regulations-expand-and-improve-targeted-relief-programs .....2

## MEMORANDUM OF POINTS AND AUTHORITIES

## IN SUPPORT OF MOTION TO INTERVENE

## I.   INTRODUCTION

The Chicago School of Professional Psychology ("TCSPP") is an accredited, nonprofit California public benefit corporation and institution of higher learning with a sterling reputation. On June 23, 2022, TCSPP learned that the Parties to this litigation had reached a settlement and filed a Joint Motion for Preliminary Approval of Settlement ("Joint Motion") seeking preliminary approval of this class action settlement. TCSPP also learned that one aspect of the proposed settlement would provide for Full Settlement Relief, as defined in the Settlement Agreement, to students who had pending borrower defense claims and attended an institution listed on Exhibit C of the proposed Settlement Agreement.

TCSPP was taken aback to learn it was included on that list.  Prior to the filing, TCSPP had no notice that it was the subject to any negotiations between the Parties or that it would be referenced in the proposed settlement. It not a party to this litigation and has had no contact with the lawyers representing the Plaintiffs or the Department of Education ("Department") (collectively "Parties") until after it learned about the Joint Motion. True, in January 2021 TCSPP was first made aware of 39 borrower defense to repayment applications related to 38 students who claimed they attended TCSPP. TCSPP swiftly reached out to the Department regarding these 39 applications but after initial contact, communications from the Department quickly fell quiet.  To the knowledge of TCSPP, the Department has not adjudicated any of those applications and if they have, it was without TCSPP having provided a response to the claims alleged, despite the Department's assurances that they would work with TCSPP to set a timeline to respond. The stated basis for granting Full Settlement Relief with respect to these claims is that "[t]he Department has determined that attendance at one of these schools justifies presumptive relief, for purposes of this settlement, based on strong indicia regarding substantial misconduct by listed schools, whether credibly alleged or in some instances proven" and the "high rate of class members with applications" related to the listed schools. (Dkt. 246 at 6:10-12).  This vague and sweeping statement of a purported "determination" is not cabined or qualified by time or

1   scope, and the Joint Motion provides no factual bases to support these claims as to TCSPP.

2   Pursuant to Federal Rule of Civil Procedure 24(a)(2) TCSPP respectfully requests that this

3   Court allow TCSPP to intervene as a matter of right, or alternatively allow TCSPP to intervene

4   pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), and grant TCSPP leave to object to the

5   settlement and file an opposition to the proposed settlement.

6   TCSPP respectfully submits that this Court should allow TCSPP to intervene as a matter of

7   right because TCSPP meets all the requirements of intervention under Rule 24(a)(2). **First**, this Motion

8   is timely. TCSPP first learned that it was named in the proposed settlement on June 23, 2022, one day

9   after the Joint Motion was filed. Prior to that date, because TCSPP was not a party to this litigation, it

10  was unaware of either the terms of the negotiations, the proposed settlement, or of the Parties'

11  contention that TCSPP engaged in wrongdoing as alleged in the Joint Motion. As such, TCSPP moves

12  to intervene just 22 days after learning that the settlement was contrary to its interests.

13  **Second**, TCSPP has significant interests directly impacted by the proposed settlement. The

14  borrower defense regulations afford TCSPP a due process right to refute allegations of the specific

15  kind of substantial misconduct that TCSPP is accused of in the Joint Motion. 34 C.F.R. §

16  685.206(e)(10); and 34 C.F.R. § 685.222(e)(3).[1] If the settlement is approved without giving TCSPP

17  a chance to defend itself and have its concerns heard, TCSPP's statutory right to defend itself provided

18  by the borrower defense regulations will be ignored.

19  TCSPP also has a concrete economic interest in defending itself against a determination by the

20  Department that it engaged in "substantial misconduct." Such a determination, particularly without

21

22  [1] There are three sets of borrower defense regulations, each tied to a different timeframe. The first set
23  was enacted in 1994, the second set went into effect on July 1, 2017,third and current version of the
    borrower defense regulations went into effect on July 1, 2020. 34 C.F.R. § 685.206(c) (2017 version);
24  34 C.F.R. § 685.222 (2017 version), (34 C.F.R. § 685.206(c)) (Current version);34 C.F.R. § 685.222
    (Current version). Currently, the Department is seeking to again revise the borrower defense
25  regulations. *See* Press Release, Dept. of Educ., *Education Department Releases Proposed Regulations*
    *to Expand and Improve Targeted Relief Programs* (July 6, 2022), https://www.ed.gov/news/press-
26  releases/education-department-releases-proposed-regulations-expand-and-improve-targeted-relief-
    programs. The TCSPP federal loans subject to this settlement were issued at time frames that cover
27  all three sets of regulations, but the settlement does not specify which version of the regulations, if
28  any, were used by the Department to determine TCSPP engaged in "substantial misconduct."

any evidentiary support, directly impacts TCSPP's core education mission and has already harmed its reputation. Further, there is concern that the Department may inappropriately seek repayment from or take adverse administrative action against TCSPP based on the loan amounts that the Department has agreed to discharge. *See, e.g.*, 34 C.F.R. § 685.206(e)(16) (applicable to loans first disbursed on or after July 1, 2020); 34 C.F.R. § 685.222(e)(7) and (h)(1) (applicable to loans first disbursed on or after July 1, 2017 and before July 1, 2020); and 34 C.F.R. § 685.206(c)(3) and (4) (applicable to loans first disbursed prior to July 1, 2017).[2]

*Third*, TCSPP's significant interests will be impaired or impeded if the settlement is approved without modification and without TCSPP having its concerns heard by the Court. The proposed settlement deprives TCSPP of its due process rights to respond to borrower defense claims explicitly provided for by 34 C.F.R. § 685.206(e)(10) and 34 C.F.R. § 685.222(e)(3). Further, an approval of settlement that relies upon an inaccurate determination that TCSPP engaged in substantial misconduct and has received a "high rate" of borrower defense applications will cause direct injury to TCSPP's core educational mission, cause further harm to its reputation, and will impair and impede TCSPP's ability to defend itself against any improper attempt by the Department to recoup the loans the Department seeks to discharge in the settlement or other adverse administrative actions against TCSPP by the Department based on the settlement. 34 C.F.R. § 685.206(c)(3), (c)(4) and (e)(16) and 34 C.F.R. § 685.222(e)(7) and (h)(1).

*Fourth*, the Parties to this litigation do not and cannot adequately represent TCSPP's interests. Indeed, both the Department and Plaintiffs have accused TCSPP of substantial misconduct and have agreed to let the Department unilaterally discharge all debt relating to pending borrower defense claims. Dkt. 246 at 3:8-12. TCSPP vigorously denies these accusations and is eager to submit contrary

---

[2] TCSPP asserts that the proposed settlement fails to adhere to the Department borrower defense regulations, which are themselves subject to Administrative Procedures Act challenges, and thereby precludes the Department from recovering any federal loans discharged in the settlement from TCSPP via the borrower defense regulations. The settlement reached between the Parties, and without any consultation of TCSPP, should also not be a basis for any adverse administrative action against TCSPP by the Department. The Department has not had any communications with TCSPP regarding the settlement, and therefore has provided TCSPP no assurances that such collection efforts or adverse actions would not occur.

THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY'S NOTICE OF MOTION AND MOTION TO INTERVENE
Case No. 19-cv-03674-WHA

1    evidence and argument to this Court that the Parties plainly will not.

2        It is in the Plaintiffs' interest to agree with the Department's conclusory allegation that TCSPP

3    purportedly engaged in substantial misconduct as a basis to forgive loans of the class members who

4    attended TCSPP. Indeed, the relief proposed in the settlement goes far beyond the primary relief the

5    complaints in this matter sought; i.e., to compel the Department to fairly adjudicate on the merits the

6    thousands of borrower defense applications pending. (Dkt. 1 at 60-61 and Dkt. 198 at 76-77).

7    Likewise, the Department benefits from a settlement that allows it to summarily dispose of hundreds

8    of thousands of borrower defense applications that the Department has thus far failed to adjudicate as

9    required by regulations.  In doing so, the proposed settlement ignores TCSPP's statutory due process

10   rights of defense and puts TCSPP in an untenable position if the Department improperly attempt to

11   recover the amount of the discharged loans from TCSPP without following the statutorily required

12   borrower defense adjudication process or take other adverse administrative actions against TCSPP

13   based on the settlement. All of this is starkly in conflict with TCSPP's interests.

14       Further, as one of the few ***nonprofit*** higher education institutions included on Exhibit C

15   directly implicated in the settlement, TCSPP brings a unique perspective that focuses on narrower and

16   more specific issues than the perspective of either the Department or Plaintiff borrowers. Thus, the

17   Parties to this litigation do not, and will not, adequately represent TCSPP's interests. As such, TCSPP

18   is entitled to intervene in this matter as a matter of right pursuant to Rule 24(a)(2).

19       Alternatively, TCSPP respectfully requests that it be granted permissive intervention pursuant

20   to Federal Rule of Civil Procedure 24(b)(1)(B). Intervention under Rule 24(b)(1)(B) is appropriate

21   because TCSPP has a defense to the claim of ***its*** alleged substantial misconduct that no other Party can

22   or will assert. Additionally, TCSPP is distinctively positioned to assist the Court in determining the

23   proper the scope of the settlement and its impact on TCSPP.

24       For all these reasons, TCSPP respectfully requests that this Court grants its Motion to Intervene

25   and grant its concurrently filed Motion to Continue the July 28, 2022 Preliminary Approval Hearing.

26   **II.    STATEMENT OF INTEREST**

27       On June 22, 2022, the Parties to this litigation filed their Notice of Motion and Joint Motion.

28

(Dkt. 246). The proposed Settlement Agreement seeks to grant Full Settlement Relief, as defined in the Settlement Agreement, to students who have filed borrower defense claims and attended an institution from a list of schools (Exhibit C) attached to the proposed Settlement Agreement.  The Parties aver that as to these schools, there is a "strong indicia regarding substantial misconduct by listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools." (*Id*. at 6:10-12; and Settlement Agreement, Dkt. 246-1 at Exhibit C). Despite this assertion and another that the Department has identified "***common evidence of institutional misconduct*** by the schools, programs, and school groups identified in Exhibit C" there is no evidence or information in the filing to support these statements as to TCSPP. Dkt. 246 at 17-18:27-3 (emphasis added).

TCSPP is listed in Exhibit C, and TCS Education System ("TCS") is listed as its "owner." *Id*. If the settlement is approved, any student who attended TCSPP and submitted a borrower defense application will be entitled to presumptive Full Settlement Relief of federal loan discharges, refunds of amounts paid, and credit repair under the proposed Settlement Agreement based in part on the Department's averment that TCSPP has engaged in "substantial misconduct" and has a "high rate of class member with applications." *Id*.

There are several glaring factual inaccuracies in the Joint Motion and Exhibit C.

*First*, contrary to Exhibit C, TCS does not own TCSPP. Scholz Decl. at ¶ 2.  Instead, the relationship between TCS and TCSPP is affiliated educational partners. *Id*. TCS is a California nonprofit corporation and recognized by the Internal Revenue Service as a 501(c)(3) charitable organization. In addition, TCS is also a recognized 509(a)(3) Type II supporting organization whose charitable mission includes supporting other nonprofit higher education institutions such as TCSPP. *Id*. at ¶ 3. TCSPP is a nonprofit public benefit corporation. As nonprofit organizations, neither TCS nor TCSPP have "owners."

*Second*, TCSPP has earned and holds a sterling reputation which has already been harmed by the disparaging and unsupported allegations of "substantial misconduct" and "high rate of applications." Dkt. 246 at 3:8-12. Founded in 1979 by practicing psychologists and educators

1   committed to advancing the field of psychology by providing high-quality professional training. *Id*. at

2   ¶ 4. TCSPP is the largest nonprofit professional psychology school in the nation.[3] *Id*. at ¶ 6. TCSPP

3   currently serves more than 6,000 students and offers more than twenty distinct degree programs,

4   ranging from bachelor's degrees in nursing and school psychology to master's degrees in a variety of

5   counseling disciplines and specialist certificate programs in areas like Suicide & Cyberbullying

6   Prevention, Applied Behavior Analysis (including a Post-Master's certificate), and Child &

7   Adolescent Psychology. *Id*. at ¶¶ 7, 8. TCSPP also offers doctoral degrees in the areas like Clinical

8   Psychology, School Psychology, and Marriage & Family Therapy (Psy.D), as well as Business

9   Psychology and Organizational Leadership (Ph.D.). *Id*. at ¶ 8. TCSPP graduates work around the world

10   in hospitals, schools, community centers, agencies, nonprofit organizations, and private practice. *Id*.

11   at ¶ 9.

12      TCSPP is accredited by the prestigious Western Association of Schools & Colleges Senior

13   College and University Commission ("WSCUC"). *Id*. at ¶ 10. Further, many of TCSPP's graduate

14   programs are also programmatically accredited by various accreditors including the American

15   Psychological Association, the Council for Accreditation of Counseling and Related Educational

16   Programs, and the Masters in Psychology and Counseling Accreditation Council. *Id*. at ¶ 11. TCSPP

17   is also an active member of the National Council of Schools and Programs of Professional Psychology,

18   which has recognized TCSPP for its distinguished service and outstanding contributions to cultural

19   diversity and advocacy. *Id*. at ¶ 12. TCSPP's president serves on the Executive Committee of the

20   Association of Independent California Colleges and Universities, which is comprised of over 85

21   independent and nonprofit colleges in California.

22      Indeed, throughout its history, TCSPP has earned recognition for its work in education and in

23   the broader community. TCSPP was the first institution of its kind to be named to the President's

24   Higher Education Community Service Honor Roll for its leadership in service and civic engagement.

25

26   [3] Despite its "Chicago" moniker, TCSPP operates seven physical locations across the country

27   (Anaheim, Los Angeles, and San Diego, CA; Chicago, IL; Dallas, TX; New Orleans, LA; and
Washington D.C.) Scholz Decl. at ¶ 6. TCSPP also offers students the chance to earn their degrees and

28   take courses online. *Id*.

THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY'S NOTICE OF MOTION AND MOTION TO INTERVENE
Case No. 19-cv-03674-WHA

*Id*. at ¶ 13. The Los Angeles campus received the President's Honor Roll recognition in 2013 and 2014, the D.C. campus received the recognition in 2014, and the Chicago campus received recognition for seven consecutive years (2007-2014). *Id*.

In sum, TCSPP has a strong interest to defend its exemplary reputation against the allegations asserted by the Parties in the Joint Motion.

***Third***, and importantly, the claim that there is "***common evidence of institutional misconduct***" at TCSPP is unsupported and without merit. (Dkt. 246 at 17:27). Gonsalves Decl. at ¶ 3. TCSPP has not been charged in any administrative or legal proceeding with any such misconduct, has not yet responded to any allegations that were supposedly "credibly alleged" against it, and is not aware of any instances of purportedly "proven" misconduct that might justify the kind of relief the settlement proposes. Dkt. 246 at 3:9-11. Gonsalves Decl. at ¶ 3.  Further, the Joint Motion provides no factual support for the contention that there is "common evidence of institutional misconduct" that applies to TCSPP, and the Motion fails to proffer any such purportedly "common evidence" to the Court.

Furthermore, the Department has notified TCSPP of only 39 borrower defense applications related to 38 students asserted against it. *Id*. at ¶ 6. None allege facts in the applications would support any notion of "common evidence of institutional misconduct." Specifically, one of those applications was denied by the Department but then resubmitted and is now purportedly part of the subclass entitled to Full Settlement Relief. Dkt. 246-1 at Sec. IV(A)(1). Gonsalves Decl. at ¶ 8. Some of the applications reference exhibits that were not provided to TCSPP by the Department, and which the Department refused to provide to TCSPP when asked. *Id*. at ¶¶ 6, 9. Other borrower defense applications fail to provide the information required by the regulations and/or assert allegations that would not establish entitlement to relief pursuant to the borrower defense regulations. 34 C.F.R. § 685.206(e)(10) and 34 C.F.R. § 685.222(e)(3). Gonsalves Decl. at ¶ 10 For example, some of the borrower defense applications asserted against TCSPP consist of the following:

- ***Application No. 1756630***: The student only alleged that "[t]he Dean negotiated the transfer of credits to assist in the application status, along with promised future employment eligibility for." *Id*. at ¶ 11.

- ***Application No. 2113108:*** The Student only alleged that "[t]he school unfairly dismissed me even after I earned good grades in my last semester, soring [sic] semester of 2019. I was not informed of what I classed [sic] I needed to attend to keep my attendance and avoid dismissal, and the classes I attended were confirmed with my counselor." *Id.*

- ***Application Nos. 03967654/04062040:*** The student selected "No" to each question that asked if TCSPP misled the borrower, and only alleged that she was billed for her semester of coursework, even though she did not complete the semester. *Id.*

- ***Application No. 4339683:*** The student first noted that "***most of this does not apply*** [to TCSPP]. Further, the borrower did not select any "conduct that results in eligibility for borrower defense to repayment relief," and answered "No" to the question "Did your school make a misrepresentation to you, or fail to tell you, important information other than what you have alleged in this application?" The student only alleged that TCSPP accepted her into a program but would not have had it known that Kaplan University had "falsified accreditation. *Id.*

For each of these, and the other applications filed with the Department related to TCSPP, the institution should be allowed to refute the claim that it engaged in "substantial misconduct"[4] and that there is "common evidence of institutional misconduct." The Department should be compelled through discovery in this litigation to produce evidence to support its incendiary allegations.

 TCSPP seeks to intervene in this case because, absent intervention, TCSPP will have no chance to be heard in opposition to the proposed settlement or to defend itself from these false claims of substantial misconduct.[5] If TCSPP is not allowed to intervene, TCSPP will continue to suffer irreparable harm to its core mission and reputation and will be deprived of the minimal due process rights provided by the borrower defense regulations and could consequently be forced to respond to

---

[4] "Substantial misconduct" is the standard for the July 1, 2017 version of the borrower defense regulations, but not the 1994 version or the July 1, 2020 version of the regulations.

[5] *See, e.g.*, *In re Novatel Wireless Sec. Litig.*, No. 08cv1689 AJB (RBB), 2014 U.S. Dist. LEXIS 85994, at *6 (S.D. Cal. June 23, 2014) (granting motion to intervene as of right in order to object to the proposed final settlement and receiving movant's objections into the record).

improper attempts by the Department to collect loan amounts discharged as to TCSPP students in this proposed settlement pursuant to the borrower defense regulations or other adverse administrative actions against TCSPP by the Department based on the settlement. *See* 34 C.F.R. § 685.206(c)(3), (c)(4) and (e)(16) and 34 C.F.R. § 685.222(e)(7) and (h)(1).

As such, TCSPP respectfully submits that the proposed Settlement Agreement must be modified to address TCSPP's interests and TCSPP should be granted leave to intervene to be heard by the Court and participate in any such settlement discussions.

## III.   ARGUMENT

### A.   TCSPP Is Entitled to Intervene as of Right.

Federal Rule of Civil Procedure 24(a)(2) provides that, "[o]n timely motion, the court must permit anyone to intervene" who:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added); *see also United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010).

Under Rule 24(a)(2), a movant seeking to intervene as of right "must demonstrate that four requirements are met: (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted).

While TCSPP bears the burden of showing these four elements are met, "the requirements are broadly interpreted *in* favor *of intervention*." *Montana Wilderness Ass'n*, 647 F.3d at 897 (emphasis added); *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("In general, *we construe Rule 24(a) liberally in favor of potential intervenors*.") (emphasis added). This Court's review is "guided primarily by practical considerations, not technical distinctions." *Sw. Ctr.*

*for Biological Diversity*, 268 F.3d at 818 (citation and internal quotation marks omitted). "[A] ***liberal policy*** in favor of intervention serves both efficient resolution of issues and ***broadened access to the courts.***" *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (emphasis added) (citing *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002)).

TCSPP satisfies each of the requirements for intervention under Rule 24(a)(2).

### 1.    The Motion to Intervene is Timely.

Timeliness with respect to motions to intervene "is a flexible concept," *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004), which is "determined by the totality of the circumstances facing would-be intervenors[.]" *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). Generally, in determining whether a motion to intervene is timely, courts weigh the following factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay." *Id.*

However, "[w]here a proposed intervenor seeks to intervene for purposes of objecting to a proposed settlement, timeliness generally is measured from the date the proposed intervenor received notice that the proposed settlement was contrary to its interest." *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8509, at *9 (N.D. Cal. Jan. 17, 2007) (citing *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (per curium) (finding intervention was timely where "intervenors acted as soon as they had notice that the proposed settlement was contrary to their interests."); *In re Novatel Wireless Sec. Litig.*, 2014 U.S. Dist. LEXIS 85994, at *6 ("[T]he Court assesses timeliness by the date when Movant received notice that the proposed settlement was contrary to his interest.").

Further, in the class action settlement context, interventions are "presumptively timely" when filed before the deadline for class members to opt out of the class settlement. *Glass.*, 2007 U.S. Dist. LEXIS 8509, at *9 (quoting *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 314 (3d Cir. 2005)).

Here, TCSPP's motion is timely for the following reasons.

***First***, TCSPP filed this motion soon after learning that the proposed settlement was contrary

to its interests. TCSPP first learned of the proposed class action settlement in this matter on June 23, 2022, one day after the Joint Motion was filed. Gonsalves Decl. at ¶ 4. Specifically, TCSPP first learned that i) the settlement agreement included an "automatic relief group, comprised of Class Members whose borrower defense applications relate to loans that were taken out to attend schools owned or operated by any of 50 specified organizations [listed on Exhibit C]" (Joint Motion, Dkt. 246, at 8:12-15); and ii) that TCSPP is one of the 50 specified organizations listed in Exhibit C. (Settlement Agreement, Dkt. 246-1, at Exhibit C). Neither the Plaintiffs nor the Department provided any notice to TCSPP that it was part of the settlement negotiations or that it would be named in the proposed settlement. The Parties also did not serve a copy of the Joint Motion on TCSPP.

As such, TCPSP had no opportunity to learn of the details of the proposed class action settlement prior to June 22, 2022:

- TCSPP is not a party to this litigation.

- None of the named Plaintiffs attended TCSPP. *See generally* Complaint, Dkt. 1, at ¶¶ 15-21; and Dkt. 198 (Supplemental Complaint).

- TCSPP did not participate in the settlement negotiations between Plaintiffs and the Department. Gonsalves Decl. at ¶ 5.

- TCSPP was not updated as to the substantive terms of the settlement negotiations between Plaintiffs and the Department. *Id*. at ¶ 5.

- TCSPP was not referenced in the previous proposed settlement between Plaintiffs and the Department that was ultimately rejected by this Court. *See* Dkts, 97 and 97-2.

More importantly, the Complaint for Declaratory and Injunctive Relief (Dkt. 1) and the Supplemental Complaint (Dkt. 198) only sought declaratory and injunctive relief to compel the Department to properly adjudicate the thousands of pending borrower defense applications on the merits and pursuant to the borrower defense regulations. The complaints did not seek to discharge broad swaths of federal loans on a class-wide basis for students who attended particular schools based on some alleged and conclusory "common evidence of institutional misconduct." Indeed, TCSPP contacted the Department soon after TCSPP learned of the settlement to get more clarity on the scope

1  and evidentiary basis for the settlement but received no response.  Gonsalves Decl. at ¶ 5.

2      **Second**, there has been no delay. TCSPP filed its motion as early as practicable, and before

3  any meaningful settlement proceedings have occurred. As the Preliminary Approval Hearing is

4  scheduled for July 28, 2022, TCSPP moves to intervene before any class member has had an

5  opportunity to take any action related to the class settlement. Moreover, the Court has not granted

6  preliminary approval of the settlement, and no class notice has been issued.

7      **Third**, as TCSPP is moving to intervene as soon as practicable, granting intervention will not

8  cause any prejudice, let alone undue prejudice to the other parties. For example*, in United States v.*

9  *Carpenter*, plaintiffs and the government publicly notified the court that they had reached a settlement

10  on March 2, 2001. 298 F.3d at 1124. Intervenors filed their motion to intervene 28 days later on March

11  30, 2001. *Id*. The Ninth Circuit held that the intervention was timely because "the intervenors acted as

12  soon as they had notice that the proposed settlement was contrary to their interests." *Id*. at 1125. The

13  Ninth Circuit further held that any prejudice caused by potential delay to the settlement was

14  "override[n]" by intervenors' right to protect their interests in court." *Id*. Here, TCSPP moves to

15  intervene 22 days after first learning of the proposed settlement. *See also City of Los Angeles*, 288

16  F.3d at 398 (finding timely a motion to intervene filed "approximately one and [a] half months" after

17  intervenor received notice).

18      For all the reasons above, TCSPP's motion is timely.

19      ## 2.     TCSPP Has a Direct and Recognized Interest in the Settlement.

20      To intervene as of right, a movant must have "an interest relating to the property or transaction

21  that is the subject of the action." Fed. R. Civ. P. 24(a)(2). Whether a movant has "a significant

22  protectable interest in the action, . . . is a 'practical, threshold inquiry,' and '[n]o specific legal or

23  equitable interest need be established.'" *Citizens for Balanced Use v*, 647 F.3d at 897 (citation

24  omitted). The movant need only "establish that the interest is protectable under some law and that

25  there is a relationship between the legally protected interest and the claims at issue." *Id*. "The

26  relationship requirement is met 'if the resolution of the plaintiff's claims actually will affect the

27  [movant].'" *City of Los Angeles*, 288 F.3d at 398 (citation omitted); *Sw. Ctr. for Biological Diversity*,

28

1  268 F.3d at 818 ("An applicant demonstrates a 'significantly protectable interest' when 'the … relief

2  sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally

3  protectable interests.") (citation omitted).

4          Here, TCSPP has significant interests directly impacted by the proposed settlement. Plaintiffs

5  and the Department state without evidentiary support that the Department has determined that TCSPP

6  engaged in "substantial misconduct" that warrants Full Settlement Relief under the borrower defense

7  regulations. Dkt. 246 at 3:8-12. This purported determination affects TCSPP's due process right to

8  prevent an unadjudicated determination by the Department that TCSPP has committed substantial

9  misconduct which justifies, in the Department's mind, Full Settlement Relief to class member

10  borrowers who attended TCSPP and filed borrower defense applications. This is because such a

11  "determination" poses the significant risk that the Department will improperly attempt to seek

12  reimbursement of these discharged loans from TCSPP and take other adverse administrative actions

13  against TCSPP based on the proposed settlement. Further, TCSPP must protect and defend itself from

14  the harm of being labeled by the Department as an institution deemed to have engaged in substantial

15  misconduct and the detrimental impact that label has already had and will have on TCSPP's reputation

16  and core educational functions.  Indeed, TCSPP has already received questions from current and

17  prospective students related to the Department's unsubstantiated claims of substantial misconduct.

18  Scholz Decl. at ¶ 15.

19          Consequently, it is evident that the "resolution of the plaintiff's claims [via approval of the

20  settlement] actually will affect" TCSPP. *City of Los Angeles*, 288 F.3d at 398 (citation omitted).

21          ***First***, as a general matter, TCSPP has a significant protected interest in defending itself from

22  spurious claims of purported "substantial misconduct." "Foundational to due process is the principle

23  that each individual should have his day in court before being subject to its judgment." *Vazquez v.*

24  *Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1116 (9th Cir. 2021) (holding that it is wrong to bind

25  a party to a judgement where that party did not have an "adequate opportunity to litigate."). TCSPP

26  has a fundamental interest in asserting a defense to the borrower defense claims of any former students.

27  *Comm. of Unsecured Creditors of the Bankr. Estate of Rajysan, Inc. v. L.A. Cty. Treasurer & Tax*

28

*Collector (In re Rajysan, Inc.)*, No. CV 18-10667-JFW, 2019 U.S. Dist. LEXIS 57626, at *7-8 (C.D. Cal. Apr. 3, 2019) (granting motion to intervene because "if the Committee prevails in its actions against the Tax Agencies… [Intervenors] will not be able to assert its reasonably equivalent value defense against the Tax Agencies. As such, they will have lost their ability to protect their interest.")*; Nat. Res. Def. Council v. Costle*, 183 U.S. App. D.C. 11, 561 F.2d 904, 910-11 (1977) (Firestone had a protected interest in intervening to defend its conduct where Plaintiff challenged EPA's regulation of Firestone's conduct). In accord, TCSPP's interest in defending itself from this claim fits hand in glove with the policy favoring broad access to the court that Rule 24 was enacted to effectuate. *Wilderness Soc'y*, 630 F.3d at 1179.

Indeed, the borrower defense regulations afford TCSPP an opportunity to refute the exact kind of claims of misconduct referenced in the Joint Motion. After the Department has received a borrower defense application it should notify the school, at which point TCSPP is given an opportunity "to respond and to submit evidence" to the claims made in the borrower defense application. 34 C.F.R. § 685.206(e)(10)(i). *See also* 34 C.F.R. § 685.222(e)(3)(i) ("As part of the fact-finding process, the Department official . . . considers …. (B) Any response or submissions from the school"). The Department then provides the borrower with a copy of TCSPP's response and obtains a reply from the borrower (which the Department also provides to the school). 34 C.F.R. § 685.206(e)(10)(iii)-(iv). "After considering the borrower's application and all applicable evidence, the Secretary then issues a written decision [n]otifying the borrower ***and the school*** of the decision . . . [p]roviding the reasons for the decision; and [i]nforming the borrower and the school of the relief, if any, that the borrower will receive . . . and specifying the relief determination." 34 C.F.R. § 685.206(e)(11)(i)(A)-(C) (emphasis added); 34 C.F.R. § 685.222(h)(1)(iii) ("The Secretary provides copies of the written decision to the members of the group, the Department official, and the school.").

These due process rights to defend against a claim are critical in this context because the borrower defense regulations also provide an avenue for the Department to recoup the loans that it decides to discharge pursuant to the borrower defense regulations. 34 C.F.R. § 685.206(c)(3), (c)(4) and (e)(16) and § 685.222(e)(7) and (h)(1). *See also* 34 C.F.R. § 685.308 (a)(3) ("The

1    Secretary may require the repayment of funds and the purchase of loans by the school if the Secretary

2    determines that .... The school's actions that gave rise to a successful claim for which the Secretary

3    discharged a loan[.].").  Thus, TCSPP has a direct interest in presenting evidence to the Department

4    in response to claims that should be denied. Furthermore, the purported "substantial misconduct" may

5    also provide the Department with an avenue to seek adverse administrative actions against TCSPP.

6    For example, the Department may seek to leverage the purported "misconduct" to seek to impose a

7    fine on TCSPP (34 C.F.R. § 668.84(a)(1)), suspend TCSPP's participation in Title IV or a Higher

8    Education Act program (34 C.F.R. § 668.85(a)(1)), or even go so far as to terminate TCSPP's

9    participation in Title IV or a Higher Education Act program. 34 C.F.R. § 668.86(a)(1). *See also* 34

10   C.F.R. pt. 685 App'x A to Subpart B (noting that where "[t]he Department … determines that the

11   school violated the title IV requirement that it not make substantial misrepresentations pursuant to 34

12   CFR 668.71, [such a determination] constitutes an enforceable violation separate and apart from any

13   borrower defense relief.").

14        Here, after TCSPP received the 39 borrower defense applications from the Department, TCSPP

15   and the Department agreed to discuss a reasonable timeframe upon which it could provide its responses

16   to the applications. But TCSPP did not hear back from the Department when it requested a meeting to

17   discuss the time for it to provide its responses. Further, after learning of the proposed settlement,

18   TCSPP reached out the Department's Borrower Defense Unit to discuss the proposed settlement, and

19   likewise received no response. Gonsalves Decl. at ¶ 5.

20        Rather, the Department apparently has decided to bypass the entire borrower defense

21   regulations adjudication process via the Settlement Agreement and, instead, provide for "automatic

22   relief" to the "Class Members who borrowed to attend" the schools listed in Exhibit C. *See* Dkt. 246

23   at 3. This is wrong because it violates the Department's own borrower defense regulations and short-

24   cuts the only relief sought in the complaints; i.e., that the Department comply with its borrower defense

25   regulations and fairly adjudicate the thousands of pending borrower defense applications on the merits.

26   *Local No. 93, Int'l Ass'n of Firefighters v. Cleveland*, 478 U.S. 501, 529 (1986) ("[P]arties who choose

27   to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori*

28

1    may not impose duties or obligations on a third party, without that party's agreement.").

2        **Second**, TCSPP has a concrete economic interest in defending itself against a determination

3    by the Department that TCSPP's "substantial misconduct" justifies full relief.

4        As an initial matter, the Department's determination that TCSPP engaged in substantial

5    misconduct is a direct attack on TCSPP's reputation and core mission—"Integrating theory,

6    professional practice, and innovation" to provide "an excellent education for careers in psychology

7    and related behavioral and health sciences"—and values (education, innovation, service, and

8    community). Scholz Decl. ¶ 5. Such a determination will plainly affect TCSPP's ability to recruit and

9    retain students and faculty and injure TCSPP's ability to effectuate its educational mission and to

10   maintain its standing with its alumni and in the communities where it has built roots and relationships.

11       Next, through the proposed Settlement Agreement, the Department is ostensibly making a

12   "final determination" on the Class Members' borrower defense applications that it may then

13   improperly use to attempt to seek repayment of the discharged loans from TCSPP. Dkt. 246 at 3:8-12

14   (the proposed settlement expressly states that "*[t]he Department has determined* that attendance at

15   one of these schools justifies presumptive relief, …based on strong indicia regarding substantial

16   misconduct by listed schools[.]") (emphasis added).  Per the borrower defense regulations, the written

17   "determination of a borrower's defense to repayment by the Department included in the written

18   decision referenced in paragraph (e)(11) of this section is the final decision of the Department and is

19   not subject to appeal within the Department." 34 C.F.R. § 685.206(e)(13).

20       As discussed previously, after the Department determines that TCSPP Class Members are

21   entitled to Full Settlement Relief, Department may then improperly attempt to recoup from TCSPP

22   the amount of the discharged loan amounts. 34 C.F.R. § 685.206(e)(16) ("[t]he Secretary may initiate

23   an appropriate proceeding to require the school whose misrepresentation resulted in the borrower's

24   successful borrower defense to repayment under this paragraph (e) to pay to the Secretary the amount

25   of the loan to which the defense applies."); 34 C.F.R. § 685.222(e)(7) and (h)(1)(i) ("If the hearing

26   official approves the borrower defense in full or in part, the written decision establishes the basis for

27   the determination, … and notifies the school of any liability to the Secretary for the amounts

28

THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY'S NOTICE OF MOTION AND MOTION TO INTERVENE
Case No. 19-cv-03674-WHA

discharged and reimbursed."); and 34 C.F.R § 685.206(c)(3) and (c)(4) ("the Secretary may initiate an appropriate proceeding to collect from the school whose act or omission resulted in the borrower defense the amount of relief arising from the borrower defense"). While TCSPP asserts the settlement does not comport with the borrower defense regulations and does not provide the Department a basis to seek to recoup the proposed discharged loans from TCSPP, the Department has provided no concrete assurances to TCSPP that these "bet-the-company" actions are not in TCSPP's future following final approval of the proposed settlement. The Department may also seek adverse administrative actions against TCSPP (an action TCSPP contends would be unlawful), which also could impose severe consequences. *See, e.g.*, 34 C.F.R. §§ 668.84(a)(1); 668.85(a)(1), 668.86(a)(1).

Thus, TCSPP's concrete economic interests in i) protecting its reputation and the value of the education it provides to students; and ii) protecting itself from the Department seeking recovery of the discharged loans from TCSPP and potential adverse administrative actions justifies intervention. *See, e.g.*, *Alisal Water Corp.*, 370 F.3d at 919 ("An economic interest must be concrete and related to the underlying subject matter of the action" to justify intervention.); *Lighthouse Res. Inc. v. Inslee*, No. 3:18-cv-050040-RJB, 2018 U.S. Dist. LEXIS 49595, at *6-7 (W.D. Wash. Mar. 26, 2018) (intervenor had significant protectable interest where Defendant Government challenged "actions and inactions rest on purported impacts associated with [intervenor]" and resolution of the case could "adversely affect" intervenor's "core operations" and "economic interest."); *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 382 (10th Cir. 1977) (intervenor had a significant protectable interest where the litigation involves a regulatory scheme which impacted their "economic interests."); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (explaining that "[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest.").

In sum, TCSPP has a significantly direct and recognized protectable interest in the settlement.

### 3. TCSPP's Interests Will Be Impaired or Impeded by the Disposition of this Litigation Through the Proposed Settlement.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity*,

17

1  268 F.3d at 822 (citation omitted). Impairment is routinely found when the movant has "a significant

2  protectable interest." In those circumstances, courts have "little difficulty concluding that the

3  disposition of th[e] case may, as a practical matter[] affect" the movant. *Citizens for Balanced Use*,

4  647 F.3d at 898 (citation and internal quotation marks omitted). *See also United States v. Albert Inv.*

5  *Co.*, 585 F.3d 1386, 1393 (10th Cir. 2009) ("threat of economic injury from the outcome of litigation

6  undoubtedly gives a petitioner the requisite interest" to warrant intervention) (citation and internal

7  quotation marks omitted).

8      Here, it is readily apparent that, if the settlement is approved, TCSPP's interests will be

9  substantially impaired or impeded. Because the settlement completely bypasses the Department's own

10  regulatory process for adjudicating borrower defense applications on the merits and summarily grants

11  the class members presumptive relief, TCSPP will not be able to realize the minimal due process rights

12  provided by the borrower defense regulations, which allows for institutions to respond directly to a

13  borrower's claims, 34 C.F.R. § 685.206(e)(10)(i); and 34 C.F.R. § 685.222(e)(3)(i).[6] TCSPP will also

14  have little recourse should the Department attempt to initiate an adverse administrative action based

15  on its own settlement.

16      Furthermore, if Plaintiffs obtain an order granting them full relief on the basis of the

17  Department's determination that attendance at TCSPP justifies relief "based on strong indicia

18  regarding substantial misconduct" i) TCSPP's reputation and core educational functions and mission

19  will be further harmed; and ii) the Department may improperly attempt to use that determination to

20  pursue repayment from TCSPP or take other adverse administrative actions against TCSPP. Dkt. 246:

---

22  [6] "Upon receipt of a borrower defense to repayment application . . . the Department will notify the
23  school of the pending application and provide a copy of the borrower's request and any supporting
documents, a copy of any evidence otherwise in the possession of the Secretary, and a waiver signed
by the student permitting the institution to provide the Department with items from the student's
24  education record relevant to the defense to repayment claim to the school, and invite the school to
respond and to submit evidence, within the specified timeframe included in the notice, which shall be
25  no less than 60 days." 34 C.F.R. § 685.206(e)(10)(i). "As part of the fact-finding process, the
Department official notifies the school of the borrower defense application and considers any evidence
26  or argument presented by the borrower and also any additional information, including—(A)
Department records; (B) Any response or submissions from the school; and (C) Any additional
27  information or argument that may be obtained by the Department official." 34 C.F.R. §
28  685.222(e)(3)(i).

8-10. This is the very type of circumstance that justifies TCSPP's intervention. *The Official Comm. of Unsecured Creditors of the Bankr. Estate of Rajysan, Inc. v. State of N.J., Dep't of Treasury (In re Rajysan, Inc.)*, No. CV 18-10666-JFW, 2019 U.S. Dist. LEXIS 57649, at *7-8 (C.D. Cal. Apr. 3, 2019) ("Indeed, if Appellee recovers the payments from the Debtor to the Tax Agencies, the Tax Agencies can then seek recovery from [Intervenors] …. This economic interest is sufficiently concrete and non-speculative to justify intervention.").

In sum, TCSPP's interests will be substantially impaired or impeded by approval of the settlement agreement because TCSPP will be stripped of the minimal due process provided in the current borrower defense regulations, subjected to reputational harm that will negatively impact the value of the education it offers, and TCSPP may face significant economic harm from the potential efforts by the Department to collect the federal loans it seeks to discharge and potential adverse actions from the Department.

### 4.      The Current Parties Do Not Adequately Represent TCSPP's Interests.

TCSPP's burden of showing inadequacy of representation is a "'minimal'" one. *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted).

> A putative intervenor bears a 'minimal' burden to show the inadequacy of representation and need only show the representation of its interests 'may be' inadequate. We consider: (1) whether a present party will undoubtedly make all of the intervenor's arguments; (2) whether a present party is capable and willing to make such arguments; and (3) whether the intervenor will bring a necessary element the proceeding will otherwise lack.

*Am. Rivers v. Wheeler*, No. C 20-04636 WHA, 2020 U.S. Dist. LEXIS 188160, at *6-7 (N.D. Cal. Oct. 9, 2020) (Alsup, J.). The ***most important of these elements*** is "whether (and the extent to which) the intervenor's and the parties' interests align." *Id*. at 7. If there are "any doubts about adequacy of representation," those "should be resolved in favor of the intervenor." *Winston v. United States,* No. 14-cv-05417-MEJ, 2015 U.S. Dist. LEXIS 172721, at *11 (N.D. Cal. Dec. 29, 2015).

Further, "intervention of right does ***not*** require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests." *Am. Rivers*, 2020 U.S. Dist. LEXIS 188160 at *10 (emphasis added) (citation omitted). As the Supreme Court has explained,

"the applicant [need only] show[] that representation of [its] interest[s] [by existing parties] '*may be*' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (in accord). Stated another way, an applicant's burden "in showing inadequate representation is minimal: it is sufficient to show that representation may be inadequate." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc). Indeed, "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Id.* (citations omitted).

TCSPP satisfies this "minimal" requirement for multiple reasons.

**First**, the Department undoubtedly will **not** make any, much less all of TCSPP's arguments.

As this Court and courts in this Circuit recognize, private parties like TCSPP and federal agencies like the Department do not share the same interests: "***our court of appeals has long recognized that '[t]he interests of government and the private sector may diverge' as the 'range of considerations in [governance are] broader than the profit-motives animating [private entities.]'***" *Am. Rivers*, 2020 U.S. Dist. LEXIS 188160, at *7 (quoting *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823) (emphasis added)

Indeed, as this Court has previously found, a federal agency's and a private entity's interests fundamentally do not align even in cases where they share short term goals. *Am. Rivers*, 2020 U.S. Dist. LEXIS 188160, at *8-9 (finding intervenor and agency "may pursue the same short term goal in this suit, but they do so for very different reasons.").

Here, TCSPP and the Department do not share any short-term goals. Instead, TCSPP and the Department's interests actually conflict. The Department benefits from a settlement that summarily disposes of hundreds of thousands of borrower defense applications that the Department has failed to timely adjudicate, and which it may improperly use to recoup discharged loans from TCSPP and take adverse administrative actions against TCSPP. On the other hand, TCSPP's reputation and core mission is directly harmed by such a settlement and subsequently faces significant risk of adverse actions by the Department.

1    Indeed, in service of its own interests, the Department filed the Joint Motion which cavalierly

2    states that TCSPP engaged in substantial misconduct and is subject to a high rate of borrower defense

3    applications. Dkt. 246 at 3:8-12. TCSPP strongly denies this assertion and is ready to submit evidence

4    and argument contesting allegations of its purported substantial misconduct; the Department plainly

5    will not offer such argument or evidence in contravention of its own claims. *Env't Def. Ctr. v. Bureau*

6    *of Safety & Env't Enf't*, No. CV 14-9281 PSG (SHx), 2015 U.S. Dist. LEXIS 187137, at *12 (C.D.

7    Cal. Apr. 2, 2015) ("As a result of these divergent interests, the Defendants may not make the same

8    arguments as the Proposed Intervenors and it is clear that the Proposed Intervenors would offer

9    necessary elements to the litigation that the Defendants, which much broader interests, may neglect.");

10   *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44-45 (1st Cir. 1992)

11   ("[A] governmental entity charged by law with representing the public interest of its citizens might

12   shirk its duty were it to advance the narrower interest of a private entity . . . ."). The Department's

13   conclusory determination about TCSPP's alleged "substantial misconduct" makes it ill-suited to

14   adequately represent TCSPP's interests. And while asserting damaging allegations against TCSPP, the

15   Department took steps in the Settlement Agreement to protect its reputation and specifically denied

16   any wrongdoing in this matter and denied that Plaintiffs are entitled to the relief sought in this case.

17   (Settlement Agreement, Dkt. 246-1 at 2:9-10).

18         As such, TCSPP's and the Department interests clearly do not align.

19         **Second,** Plaintiffs likewise undoubtedly will **not** make any, much less all, of TCSPP's

20   arguments. Plaintiffs and TCSPP stand in fundamental conflict (aside from a shared desire to have the

21   borrower defense applications to be properly adjudicated). Plaintiffs will happily accept class-wide

22   relief for class members with pending borrower defense applications who attended the institutions

23   listed on Exhibit C, such as TCSPP, even though their complaints sought far less – the fair and

24   equitable adjudication of their clients' borrower defense applications pursuant to the borrower defense

25   regulations. Plaintiffs are not in a position, and would not in any event, advance the interests of TCSPP

26   who they accuse of engaging in misconduct that would warrant relief under the borrower defense

27   regulations. TCSPP denies it has engaged in any such misconduct and opposes the relief sought by the

28

1    class members who submitted borrower defense applications against TCSPP.

2            ***Third***, TCSPP can offer unique facts relevant to the Court's consideration that the Parties

3    cannot. TCSPP is not a government agency, or a student borrower. TCSPP is an acclaimed, regionally

4    accredited, nonprofit institution. As such, it is situated to bring a materially different perspective to

5    this settlement. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (granting motion

6    to intervene where "the intervenor offers a perspective which differs materially from that of the present

7    parties to this litigation.")

8            In short, TCSPP and the other Parties have fundamentally different perspectives. The

9    Department is a federal agency charged with making decisions for the benefit of its regulatory charge,

10    while TCSPP has a more specific interest which considers matters which the Department will

11    undoubtedly neglect. *Snowlands Network v. United States*, No. 2:11-cv-02921-MCE-DAD, 2012 U.S.

12    Dist. LEXIS 144073, at *9 (E.D. Cal. Oct. 4, 2012)  ("Defendant is a regulatory agency charged with

13    making decisions for the benefit of the entire population. As a result, Applicants necessarily set forth

14    more specific goals and objectives than the much broader interests that Defendant must take into

15    account."). Likewise, Plaintiffs are student borrowers who inherently have a different perspective from

16    TCSPP, including asserting allegations of wrongdoing by TCSPP.

17            Lastly, TCSPP has unique expertise and experience in its own business. TCSPP is the largest

18    nonprofit professional psychology school in the nation and has received numerous honors and

19    recognition for distinguished service in its communities and for the outstanding contributions it has

20    made to cultural diversity and advocacy in the field of psychology. TCSPP possesses unique

21    information and knowledge regarding its own practices, relationships with its students, the value of its

22    education, and other related issues which neither the Department nor the Plaintiffs have or will advance

23    in this settlement.

24            Based on the foregoing, TCSPP easily meets the "may be" inadequate standard and

25    intervention is proper. *See Chi v. Univ. of S. Cal.*, No. 2:18-cv-04258-SVW-GJS, 2019 U.S. Dist.

26    LEXIS 125355, at *12 (C.D. Cal. May 21, 2019) (granting motion to intervene and granting in part

27    motion to unseal briefs and supporting documents filed in connection with a motion to intervene for

28

the purpose of objecting to a motion for preliminary approval of a class-action settlement).

## B.     Alternatively, TCSPP Should Be Granted Permissive Intervention.

While TCSPP is entitled to intervene as a matter of right under Rule 24(a)(2), the Court may also alternatively permit TCSPP to intervene under Federal Rule of Civil Procedure 24(b)(1)(B). Under Rule 24(b)(1)(B), the Court may permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011). The Court has broad discretion to grant permissive intervention. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc).

Permissive intervention should generally be permitted when the intervenor (1) asserts an interest related to the issue in dispute, and (2) raises defenses that respond directly to the plaintiff's claim for relief. *See, e.g., Kootenai Tribe*, 313 F.3d at 1110.

The Court should grant permissive intervention here because as part of the proposed settlement, both Parties allege that certain relief should be available to certain class members because TCSPP engaged in substantial misconduct. Accordingly, neither Plaintiffs nor the Department can or will defend TCSPP against this unsupported and baseless allegation. The defense TCSPP will assert to the invalidity of this allegation, and to the borrower defense applications that are subject to the proposed settlement, will be based on its own records and witnesses, will respond to questions of law and fact in common with the underlying suit, and will respond directly to Plaintiffs' the Department's claims. TCSPP's participation will therefore aid the Court in establishing the proper scope and potential unfairness of the proposed settlement.

Further, TCSPP is uniquely positioned to assist the Court in understanding the merits and implications of the proposed settlement as applied to institutions of higher education generally. Due process—the ability of an institution to refute the claims made in a borrower defense application with evidence and to have that evidence considered prior to a grant of relief—is a fundamental right and critically important to the adjudication of borrower defense applications to protect against potential

subsequent adverse actions by the Department. To allow a settlement like the one proposed here to proceed without any input whatsoever from the institutions who arbitrarily appear on Exhibit C does an injustice to institutions generally and to TCSPP specifically, who may, absent assurances from the Department, find themselves the target of a variety of adverse actions imposed by the Department, that  is willing to summarily discharge nearly $6 billion in student loans based on an evidence-less allegation that a school has engaged in substantial misconduct. A longstanding, acclaimed, accredited, nonprofit institution like TCSPP is therefore uniquely positioned to assist the Court in the equitable resolution of this case and is entitled to permissive intervention to protect its interests that are currently unrepresented in the litigation.

## IV.    CONCLUSION

In conclusion, in violation of TCSPP's due process rights, TCSPP's significant and core interests are being adjudicated and settled in an action to which it is not a party, had no notice, and where no party represents its interests.  As such, TCSPP meets the requirements of intervention as matter of right, and of permissive intervention, especially as intervention should be liberally granted.

Consequently, TCSPP respectfully requests that this Court grant its Motion to Intervene as of Right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, TCSPSS respectfully requests that this Court grant permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B).

Dated: July 14, 2022                    TERANCE A. GONSALVES (Pro Hac Vice pending)
                                        ALEXANDER AKERMAN
                                        ALSTON & BIRD LLP

                                        By:    _/s/ Alexander Akerman_
                                               Alexander Akerman
                                        Attorneys for Proposed Intervenor-Defendant
                                        THE CHICAGO SCHOOL OF PROFESSIONAL
                                        PSYCHOLOGY

## CERTIFICATE OF SERVICE

I, Attorney, certify and declare as follow:

1. I am over the age of 18 and not a party to this action.

2. My business address is 333 South Hope Street, 16th Floor, Los Angeles, CA 90071-1410.

3. On July 14, 2022, I caused a copy of THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY'S NOTICE OF MOTION AND MOTION TO INTERVENE; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF to be served upon counsel via the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct. Executed on July 14, 2022, at Los Angeles, California.


By:   _/s/ Alexander Akerman_
       Alexander Akerman
Attorneys for Proposed Intervenor-Defendant
THE   CHICAGO   SCHOOL   OF   PROFESSIONAL
PSYCHOLOGY