**MCGUIREWOODS LLP**
JOHN S. MORAN (*pro hac vice*)
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
Telephone: 202.828.2817
Facsimile: 202.857.1737

**MCGUIREWOODS LLP**
PIPER A. WALDRON (SBN 291482)
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Telephone: 310.315.8250
Facsimile: 310.956.3150

Attorneys for Proposed Intervenor
American National University

**GIBSON, DUNN & CRUTCHER LLP**
LUCAS TOWNSEND (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone:  202.887.3731
Facsimile:  202.530.4254

**GIBSON, DUNN & CRUTCHER LLP**
JAMES L. ZELENAY, JR. (SBN 237339)
333 South Grand Avenue,
Los Angeles, CA 90071
Telephone: 213.229.7449
Facsimile:  213.229.6449

Attorneys for Proposed Intervenor
Lincoln Educational Services Corporation

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of | CASE NO. 19-cv-03674-WHA<br><br>Judge:Hon. William H. Alsup<br>Ctrm: 12<br><br>**PROPOSED INTERVENORS AMERICAN NATIONAL UNIVERSITY AND LINCOLN EDUCATIONAL SERVICES CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION TO INTERVENE**<br><br>**Hearing Date:  August 4, 2022**<br>**Hearing Time:  8:00 a.m.** |

the United States Department of
Education, and

THE UNITED STATES
DEPARTMENT OF
EDUCATION,

        Defendants.

(Class Action)
(Administrative Procedure Act Case)

PROPOSED INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION TO INTERVENE
3:19-cv-03674-WHA

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................7

II.   ARGUMENT ..............................................................................................9

    A.    Proposed Intervenors May Intervene as of Right ................................9

        1.    Proposed Intervenors' Motion Is Timely ...................................9

            i.    Intervention at this Stage in the Litigation Is Appropriate....................................................................10

            ii.   Intervention Will Not Cause Undue Prejudice or Delay.............................................................................13

            iii.  Proposed Intervenors Have Not Delayed Intervention...................................................................13

        2.    Intervention Is Based on Significant Protectable Interests........14

        3.    Disposition of This Case Will Impair Significant Interests ......19

        4.    No Party Adequately Represents Proposed Intervenors............20

    B.    Proposed Intervenors Are Entitled to Permissive Intervention ..........20

    C.    Proposed Intervenors Satisfy Article III Standing.............................20

PROPOSED INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION TO INTERVENE
3:19-cv-03674-WHA

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

5
*Am. Med. Ass'n v. Stenehjem*,
2019 WL 10920631 (D.N.D. Nov. 26, 2019)........................................................17

6

7
*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) ........................................................................................18

8

9
*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ......................................................................9, 15

10

11
*Foretich v. United States*,
351 F.3d 1198 (D.C. Cir. 2003).................................................................17, 18

12

13
*Glass v. UBS Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 474936 (N.D. Cal. Jan. 17, 2007),
*aff'd*, 331 F. App'x 452 (9th Cir. 2009) ...............................................................11

14

15
*Indus. Tech. Rsch. Inst. v. LG Elecs., Inc.*,
No. 3:13-CV-2016-GPC-WVG, 2015 WL 474227 (S.D. Cal. Feb. 5,
2015) .....................................................................................................................21

16

17
*Lockyer v. United States*,
450 F.3d 436 (2006) ...............................................................................................16

18

19
*Low v. Altus Fin. S.A.*,
44 F. App'x 282 (9th Cir. 2002).............................................................................11

20

21
*Meese v. Keene*,
481 U.S. 465 (1987) ...............................................................................................17

22

23
*Ness Inv. Corp. v. U.S. Dep't of Agric.*,
512 F.2d 706 (9th Cir.1975) ..................................................................................15

24

25
*Officers for Justice v. Civil Serv. Comm'n*,
934 F.2d 1092 (9th Cir. 1991) ...............................................................................10

26

27
*Okemo Mountain, Inc. v. Sikorski*,
2006 WL 1745039 (D. Vt. June 21, 2006)............................................................17

28

4

*Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*,
    663 F.2d 371 (2d Cir. 1981) ................................................................ 17

*Perry v. Schwarzenegger*,
    630 F.3d 898 (9th Cir. 2011) ............................................................... 21

*Robins v. Spokeo, Inc.*,
    867 F.3d 1108 (9th Cir. 2017) .............................................................. 17

*Sackett v. E.P.A.*,
    566 U.S. 120 (2012) ...................................................................... 19, 20

*Sackman v. Liggett Grp., Inc.*,
    167 F.R.D. 6 (E.D.N.Y. 1996) .............................................................. 17

*Sherman Coll. of Straight Chiropractic v. U.S. Comm'r of Ed.*,
    493 F. Supp. 976 (D.D.C. 1980) ....................................................... 17, 18

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) .......................................................... 10, 11

*Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 ................................ 19

*Team Worldwide Corp. v. Wal-Mart Stores, Inc.*,
    2017 WL 6059303 (E.D. Tex. Dec. 7, 2017) .......................................... 17

*U.S. v. Oregon*,
    745 F.2d 550 (9th Cir. 1984) ............................................................... 10

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ............................................................... 10

*United States v. Carpenter*,
    298 F.3d 1122 (9th Cir. 2002) (*Carpenter I*) .................................... 11, 15

*United States v. Carpenter*,
    526 F.3d 1237 (9th Cir. 2008) (*Carpenter II*) ............................... 11, 15, 16

*United States v. Cnty. of Los Angeles*,
    No. 17, 2015 WL 8783449 (C.D. Cal. Dec. 15, 2015) ............................... 21

**Other Authorities**

34 C.F.R. § 685.222(e)(3)(i) .................................................................. 16

Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 369–73 (2020) ......................... 16

Fed. R. Civ. P. 24 .......................................................................................... 7, 20, 21

Fed. R. Civ. P. 24(a) ...................................................................................... 9, 20, 21

Fed. R. Civ. P. 24(a)(2) .............................................................................................. 16

Fed. R. Civ. P. 24(b) .................................................................................................. 20

Fed. R. Civ. P. 24(b)(1)(B) ....................................................................................... 20

*Why Article III Should Not Limit Intervention of Right*, 67 Duke L.J.
189, 201 (2017) ................................................................................................. 21

PROPOSED INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION TO INTERVENE
3:19-cv-03674-WHA

# I.     **INTRODUCTION**

Proposed Intervenors American National University and Lincoln Educational Services Corporation ("Lincoln") (collectively, "Proposed Intervenors") have sought to intervene because the parties' proposed settlement, which became public on June 22, 2022, *see* Dkt. 246, labels them presumptive wrongdoers and grants loan forgiveness to their former students based on admittedly unproven allegations. Proposed Intervenors are entitled to intervene under Rule 24.  The parties complain about the timing.  Plaintiffs claim that Proposed Intervenors are too late, while the United States suggests that they are too early.  But these conflicting accounts show that Proposed Intervenors came at just the right time:  after it was clear that their interests were at stake, but before it was too late to do anything about it.

The parties also suggest that Proposed Intervenors do not have a cognizable interest at stake because schools are not party to the settlement and, they say, schools will not face any adverse consequences from the Department of Education based on their inclusion on "Exhibit C."  That clarification is welcome but is not definitive or presented to be binding or enforceable.  The joint motion for preliminary approval says that "[t]he Department has determined that attendance at [Exhibit C] schools justified presumptive relief, for purposes of this settlement, based on strong indicia regarding substantial misconduct by listed schools, whether credibly alleged or in some instances proven."  Dkt. 246, at 3.  But the United States had nowhere expanded on the basis for that determination or how it arrived at "Exhibit C."  And the proposed settlement has been touted publicly as evidence—or even a judicial finding—of wrongdoing.  *See, e.g.*, Mot., Dkt. 254, at 17 & n.4.

The Department of Education now makes clear, by sworn declaration, that "[t]he Department does not consider the fact of an institution's inclusion on Exhibit C to constitute a finding of fact of misconduct" and that "[t]he discharges of Relevant Loan Debt . . . will be effectuated pursuant to the terms of the Settlement Agreement, not pursuant to the Department's borrower defense regulations."  Decl.

of Dep. Under Sec'y Benjamin Miller, Dkt. 288–1, ¶ 7.  The Department says that schools on Exhibit C retain "all the due process rights . . . under the Subpart G regulations," *id.* ¶ 11; that "[t]he fact of an institution's inclusion on Exhibit C . . . does not constitute evidence that can or will be considered by the Department in making Program Findings or establishing Program Liabilities against an institution," *id.* ¶ 13; and that Exhibit C will be "used by the Department solely for purposes of effectuating its obligations under the Settlement Agreement to award Full Settlement Relief to certain class members," *id.* ¶ 114.

But contrary to the Federal Government's response, *see* U.S. Resp., Dkt. 288, at 16–17, these new clarifications do not undermine Proposed Intervenors' motion; they show how important it is for these schools to be here.  And under the applicable legal standard, they do not eliminate Proposed Intervenors' cognizable stake in the litigation.  For one, the representations are limited in scope.[1]  Second, the careful language used by the Department in the declaration suggests that these are the statements of the declarant "based on my personal knowledge as an employee of the Department."  Query whether the Department is willing to be bound by these statements by one of its employees.  To be binding and enforceable, these representations from the Department about the limited purpose of Exhibit C should be further clarified and incorporated into the proposed settlement itself.  In addition, the mere filing of this declaration in opposition to Proposed Intervenor's motion falls well short of addressing the reputational harm that the proposed settlement and

---

[1] As an example, declaration paragraph 5 states that an institution's inclusion on Exhibit C will not be considered by the Department in bringing any Subpart G proceeding.  Yet that is, at best, a qualified constraint.  The Department does not commit to not taking any adverse action against an institution.  As just one example, outside of Subpart G, the Department has the authority to take other actions that could punish or even threaten the existence of an institution, such as requiring the institution to post large letters of credit which cannot be obtained.

1   Exhibit C in particular have inflicted and continue to inflict in the public sphere.

2       The Court should thus recognize that Proposed Intervenors remain entitled to

3   intervene.  Given how quickly the parties have already moved to respond to schools'

4   proposed intervention and to clarify the reputedly narrow purpose of Exhibit C, it is

5   clear that Proposed Intervenors' participation will have a salutary effect on

6   consideration of the proposed settlement and will not lead to undue delay.

7   **II.    ARGUMENT**

8       Proposed Intervenors timely sought intervention to protect interests not

9   adequately protected by the parties and are thus entitled to intervention of right

10  under Rule 24(a).  None of the parties' responses proves that Proposed Intervenors

11  are not so entitled or that the Court should not alternatively permit intervention.

12  **A. Proposed Intervenors May Intervene as of Right**

13      Proposed Intervenors have the right to intervene under Rule 24(a) because

14  (1) their application is timely; (2) they have a "significant protectable interest" in the

15  action; (3) "the disposition of the action may, as a practical matter, impair or impede

16  [their] ability to protect [their] interest[s];" and (4) "the existing parties may not

17  adequately represent [their] interest[s]." *Citizens for Balanced Use v. Montana*

18  *Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  The parties particularly take

19  issue with the first two prongs.  But their conflicting arguments on timeliness only

20  bolster Proposed Intervenors' position.  And their limited and qualified assurances

21  that the proposed settlement will not adversely affect the schools on Exhibit C—

22  while appreciated—do not suffice to extinguish the schools' interest in intervention.

23  **1. Proposed Intervenors' Motion Is Timely**

24      While Plaintiffs argue that Proposed Intervenors are too late in seeking to join

25  proceedings, Pls.' Opp. at 5–9, the Department instead argues intervention came too

26  early and should only receive attention after the Court grants preliminary approval

27  of a settlement agreement, Defs.' Opp. at 11–13.  Of course, they both can't be

28

right. And weighing each of the relevant factors—(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for, and length of, the delay, *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)—shows that Proposed Intervenors' motion is timely.

### i. Intervention at this Stage in the Litigation Is Appropriate

Plaintiffs argue that Proposed Intervenors have long had notice that their interests are implicated because their names have appeared on the public docket in this case and because Proposed Intervenors are generally aware of this and other proceedings. Pls.' Opp. at 5–7. The crucial date for assessing the timeliness of a motion to intervene, however, is not when a proposed intervenor's name is mentioned in proceedings but when a proposed intervenor should have been aware that its interests would not be adequately protected by the existing parties. *Officers for Justice v. Civil Serv. Comm'n*, 934 F.2d 1092, 1095–96 (9th Cir. 1991); *U.S. v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

Proposed Intervenors moved promptly to intervene following the filing of the proposed settlement agreement, which: (1) Proposed Intervenors had no prior notice of (indeed, the Department refused to acknowledge that settlement negotiations were occurring); (2) for the first time, jointly made broad allegations of misconduct by Proposed Intervenors and other schools that have the potential to result in liabilities for institutions; and (3) went so far beyond the claims for relief in the complaint as filed that it created, in effect, a new action and proposed new and novel standards and procedures for resolving borrower-defense applications, thus putting Proposed Intervenors' interests at stake in a materially different way. *Smith*, 830 F.3d at 854.

Proposed Intervenors are justified in seeking intervention now in light of the proposed settlement, since "a party's interest in a specific phase of a proceeding may support intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). "Where a change of circumstances occurs, and that change is the

10

'major reason' for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation." *Smith*, 830 F.3d at 854. Although the Complaint was filed in 2019, Proposed Intervenors had no reason to believe that their interests were in jeopardy, since Plaintiffs sought the timely adjudication of their borrower-defense applications in accordance with Department regulations. Proposed Intervenors had no reason to believe that the Department would be making *any* determinations about misconduct, whether under those regulations or otherwise. Tellingly, the Department itself does not contend otherwise.

Plaintiffs also seek to distinguish *United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002) (*Carpenter I*) and its progeny, Pls.' Opp. at 7–9, which recognize that intervention may be timely even at a seemingly late stage, but the motion to intervene falls squarely under *Carpenter I* both generally and specifically. First, in *Carpenter I*, "[t]he Ninth Circuit has held that a proposed intervenor is not necessarily untimely merely because the motion to intervene is filed after a significant amount of time and effort has been expended in accomplishing a settlement," meaning that a motion to intervene is "timely where proposed intervenors filed 'as soon as they had notice' of [the] settlement's terms." *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 474936, at *4 (N.D. Cal. Jan. 17, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (quoting *Carpenter I*, 298 F.3d at 1125). Second, *Carpenter I* specifically established that "there is a presumption that the government will adequately represent a party's interests," and accordingly, "a party's motion to intervene is timely even when intervention is sought at a late stage in the proceeding, as long as the party seeking intervention files an intervention motion in a timely manner once on notice that the government representation is inadequate." *Low v. Altus Fin. S.A.*, 44 F. App'x 282, 284–85 (9th Cir. 2002) (quoting *Carpenter I*, 298 F.3d at 1125–26). The parties' litigating positions and the previous settlement agreement provided no notice that the Department was not

11

adequately representing Proposed Intervenors' interests—to the extent those interests were even implicated in an APA suit to compel agency action that allegedly was unlawfully delayed or unreasonably withheld.[2]  Unique notice issues logically arise from a settlement agreement that represents not a negotiated compromise but instead is a much more generous substantive award to plaintiffs beyond the mere procedural rights they sought to enforce through the underlying litigation.

The Department's position—that Proposed Intervenors seek to intervene too early in proceedings—further undermines Plaintiffs' timeliness argument.  The Department cites several cases in which proposed intervenors were found to have moved to intervene too early, despite waiting until the parties filed a proposed settlement for preliminary approval.  Defs.' Opp. at 12 (citing *Chi v. Univ. of S. Cal.*, No. 2:18-cv-4258, 2019 WL 3064457, at *6 (C.D. Cal. Apr. 18, 2019); *Lane v. Facebook, Inc.*, No. C 08-3845, 2009 WL 3458198, at *5 (N.D. Cal. Oct. 23, 2009); *Casey v. Citibank, N.A.*, No. 5:12-cv-820, 2014 WL 3468188, at *1 (N.D.N.Y. Mar. 21, 2014)).  Under Plaintiffs' understanding of the law, all three of these interventions should have been denied for tardiness.

But the Department is not right either.  Those cases are distinguishable in that they all explicate the process for class members to file objections to proposed settlement agreements.  *Id.* at 11–12 (quoting *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liability Litig.*, 229 F. Supp. 3d 1052, 1062 (N.D. Cal. 2017)).  This is inapposite to the dispute at hand.  While the Department asserts that Proposed Intervenors "seek to circumvent the ordinary class action settlement approval process and elevate their objections to the proposed settlement over the class members whose interests the approval process is designed to protect," *id.* at 12,

---

[2] Proposed Intervenors take no position on the merits of the claim that the Department's adjudication of borrower-defense claims was unreasonably delayed.

Proposed Intervenors allege harm from the proposal itself and, unlike class members whose interests are represented by Plaintiffs, lack an adequate representative among the existing parties.  Accordingly, involving Proposed Intervenors as early in the process as possible ensures that, by the time class members are invited to offer objections, the settlement already reflects consideration of Proposed Intervenors' perspective and avoids wasteful and duplicative notice procedures.  Thus, Proposed Intervenors' timing is neither too early nor too late; it is just right.

### ii. Intervention Will Not Cause Undue Prejudice or Delay

Plaintiffs assert that class members' state of ongoing financial need means that any delay in relief is extremely prejudicial and that Proposed Intervenors should not be allowed to participate.  Pls.' Opp. at 10.  They cite no case law to support this proposition, however, and fail to substantively engage Proposed Intervenors' arguments—namely, that at this point the most efficient path to finality is to let Proposed Intervenors in.  And again, the Federal Government tellingly does not join Plaintiffs in arguing that intervention would cause undue delay or prejudice.

Proposed Intervenors do not introduce undue delay or prejudice.  The Court has not yet ruled on the parties' proposed settlement.  Dkt. 246.  The Court previously considered the parties' original settlement agreement, Dkt. 97, for roughly six weeks before preliminarily approving it, and then held a final approval hearing over four months later, ultimately denying final approval, finding there was "no meeting of the minds."  Dkt. 146, at 10.  Preliminary approval is no guarantee of final approval, and it is more efficient to address concerns early, rather than after reliance interests engender additional claims of hardship.  Proposed Intervenors understand that the Department has taken additional measures to ensure Plaintiffs are not burdened by their loans while their claims are being resolved.

### iii. Proposed Intervenors Have Not Delayed Intervention

1    The parties do not to dispute that, assuming Proposed Intervenors were not on

2    notice before the filing of the settlement agreement, they did not delay in seeking

3    intervention.  Proposed Intervenors acted deliberately and expeditiously to protect

4    their interests once it became apparent that the proposed settlement threatened their

5    rights and obligations.  Accordingly, this final factor, like the two before it, supports

6    a finding in favor of the timeliness of this motion.

### 2.  Intervention Is Based on Significant Protectable Interests

8    Plaintiffs assert that Proposed Intervenors lack a significant protectable

9    interest because: (1) Proposed Intervenors lack a property interest in notice of and

10   an opportunity to respond to borrower defense claims involving them; (2) Proposed

11   Intervenors' interest in procedural fairness in future Department recoupment

12   proceedings, while secure, is collateral to these proceedings; and (3) Proposed

13   Intervenors' reputational concerns are ill founded.  Pls.' Opp. at 10–16.  Both parties

14   argue that concerns about future Department actions are speculative, *see* Pls.' Opp at

15   13–15; Defs.' Opp. at 17, but the Department appears to take seriously Proposed

16   Intervenors' interests and seeks to assure Proposed Intervenors and the Court that

17   the settlement agreement will not negatively impact their rights in relation to any

18   future Department action against Proposed Intervenors.  *See* Defs.' Opp. at 15–19.

19   While the parties' responses—and the Declaration from Deputy Under

20   Secretary Benjamin Miller in particular—address some of Proposed Intervenors'

21   concerns, they do not eliminate their cognizable stake in the litigation.  To the

22   contrary, they show why it is important for Proposed Intervenors to be here.

23   First, notwithstanding the clarifications made in response to Proposed

24   Intervenors' motion, they still have significant protectable interests in ensuring

25   procedural fairness in their dealings with the Department.  The Department argues

26   that "intervention is inappropriate because the putative intervenors lack any concrete

27   interest in the exercise of the Attorney General's and the Education Secretary's

28   considerable discretion to settle claims."  Defs.' Opp. at 13.  Were it that simple,

14

1   nearly any motion to intervene in litigation related to a settlement involving the

2   federal government would fail; instead, a significantly protectable interest exists

3   where, as here, the proposed intervenor can "establish that the interest is protectable

4   under some law and there is a relationship between the legally protected interest and

5   the claims at issue." *Citizens for Balanced Use*, 647 F.3d at 897 (citing *Greene v.*

6   *U.S.,* 996 F.2d 973, 976 (9th Cir. 1993)).  The parties recognize, as they must, that

7   Proposed Intervenors have procedural rights under the borrower-defense

8   regulations.  *See* Pls.' Opp. at 12 (citing 34 C.F.R. § 685.206(e)(10)).  That remains

9   grounds to allow Proposed Intervenors into the case.  While the motion to intervene

10  prompted the Government to file the Miller Declaration, its clarifications and

11  assurances are not (yet) part of the settlement agreement; the declaration is also not

12  entirely clear, causing remaining uncertainty, and it does not address every scenario.

13  The declaration also does not address all of Proposed Intervenors' procedural

14  concerns, including for example, the application of 2016 regulations to borrower

15  defense applications that should be adjudicated under different standards.  Dkt. 246.

16       The Government is wrong to suggest that its settlement authority sidesteps

17  these procedural issues and forecloses intervention.  It relies on *United States v.*

18  *Carpenter*, 526 F.3d 1237, 1241–42 (9th Cir. 2008) (*Carpenter II*), for the

19  proposition that the federal government's authority to settle cases is "only

20  reviewable in exceptional circumstances," Defs.' Opp. at 13–14, but both *Carpenter*

21  cases support Proposed Intervenors.  In *Carpenter I*, the Ninth Circuit held that the

22  district court should have allowed intervention "after the settlement had been

23  proposed and the intervenor environmentalists became aware of the terms of the

24  settlement." 298 F.3d at 1125.  In *Carpenter II*, the Court reaffirmed that, despite

25  the Attorney General's plenary discretion to settle litigation, "courts have assumed

26  the power to review allegations that an agency exceeded its legal authority, acted

27  unconstitutionally, or failed to follow its own regulations."  526 F.3d at 1241–42

28  (quoting *Guadamuz v. Bowen*, 859 F.2d 762, 767 (9th Cir. 1988)); *see Ness Inv.*

1   *Corp. v. U.S. Dep't of Agric.*, 512 F.2d 706, 714 (9th Cir.1975) (holding that

2   discretionary agency actions are reviewable where the claim alleges "that an

3   agency . . . abused its discretion by exceeding its legal authority or by failing to

4   comply with its own regulations").

5       Proposed Intervenors have similarly raised "allegations that [the

6   Department] . . . failed to follow its own regulations." *Carpenter II*, 526 F.3d at

7   1241.  Under the Department's regulations, as the parties admit, schools are

8   provided certain procedural rights, such as the right to submit evidence and

9   arguments that the Department must "consider."  34 C.F.R. § 685.222(e)(3)(i).  As

10  the intended beneficiary of these provisions, schools have a cognizable interest that

11  supports intervention under Rule 24(a)(2).  *See* Caleb Nelson, *Intervention*, 106 VA.

12  L. REV. 271, 369–73 (2020) (discussing the Ninth Circuit's decision in *Lockyer v.*

13  *United States*, 450 F.3d 436 (2006)).

14      Second, separate and apart from due process concerns, Proposed Intervenors

15  continue to have a significant protectable interest in ensuring that their appearance

16  on Exhibit C does not have adverse consequences vis-à-vis collateral action by the

17  Department of Education or other would-be litigants.  As noted above, the Miller

18  Declaration provides welcome clarification of the Department's position that

19  inclusion in Exhibit C will not be used against schools.  But that declaration, which

20  was filed four days ago as an exhibit in response to Proposed Intervenors' motion, is

21  neither specific enough nor presently enforceable enough to extinguish Proposed

22  Intervenors' interests.  Quite the opposite, it shows why it is important for Proposed

23  Intervenors to be here to protect their rights—for example, by seeking incorporation

24  of those clarifications and assurances into the proposed settlement itself.

25      Finally, Proposed Intervenors have substantial reputational interests at stake.

26  The recent publication and dissemination of Exhibit C has inflicted (and continues

27  to inflict) severe reputational harms on schools, jeopardizing their relations with

28  students (past, present, and future), faculty, donors, accreditors, regulators, and

16

investors.  That harm is especially unwarranted here, where the Department disavows making any finding of wrongdoing.  Such reputational harms that damage an organization's mission or professional standing are well-recognized grounds for intervention.  *See, e.g., Am. Med. Ass'n v. Stenehjem*, 2019 WL 10920631, at *3, *5 (D.N.D. Nov. 26, 2019); *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 2017 WL 6059303, at *4 (E.D. Tex. Dec. 7, 2017); *Okemo Mountain, Inc. v. Sikorski*, 2006 WL 1745039, at *1 (D. Vt. June 21, 2006); *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y. 1996); *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 373 (2d Cir. 1981).

Plaintiffs acknowledge that courts will credit "allegations of detriment arising from the subject matter of the lawsuit."  Pls.' Opp. at 15 (quoting *Floyd v. New York City*, 302 F.R.D. 69, 104 (S.D.N.Y. 2014)).  Plaintiffs initiated the litigation over the Department's response to Plaintiffs' borrower defense claims, but Proposed Intervenors are concerned specifically with reputational harms that arise from the parties' settlement agreement, which focuses on unproven allegations of misconduct that have caused and will continue to cause concrete harms to Proposed Intervenors.

Both the Department, Defs.' Opp. at 18, and Plaintiffs, Pls.' Opp. at 15, suggest that the schools in Exhibit C suffer no new injury when the Department of Education publicizes them in a list of presumptive wrongdoers, but that is clearly wrong.  Reputational harms that result directly from being publicly deemed a wrongdoer by a regulator are distinct and cognizable injuries.  *See Foretich v. United States*, 351 F.3d 1198, 1211 (D.C. Cir. 2003); *see also Meese v. Keene*, 481 U.S. 465, 473–77 (1987); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017).  For schools, the "stigma" of inclusion on this list "bearing the imprimatur of the [Department of Education]" immediately affects their relationship with current and prospective students and can cause schools to "los[e] additional students to competitors," "los[e] donations," and suffer other consequences.  *Sherman Coll. of Straight Chiropractic v. U.S. Comm'r of Ed.*, 493 F. Supp. 976, 979 (D.D.C. 1980)

17

(upholding Article III standing on theory of reputational injury); *see also Foretich*, 351 F.3d at 1211, 1215 (reputational injuries stamped by "the imprimatur of government authority" can cause spiraling injuries, including "loss of business and professional opportunities").  Each of these consequences is a "distinct, palpable, and concrete injury." *Sherman Coll.*, 493 F. Supp. at 979; *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972).[3]

The Government implicitly acknowledges the force of Proposed Intervenors' concerns. After Proposed Intervenors complained that "[t]he proposed settlement does not make clear, as it should, that the rights of educational institutions like Proposed Intervenors and other similarly situated schools cannot be eliminated or reduced by the Department's unilateral settlement with student borrowers," Dkt. 254 at 9, the Government sought to provide clarification, *see* Defs.' Opp. at 16 (citing Miller Decl.).  The Miller Declaration is an important baseline in consideration of the settlement, but it is hardly sufficient to render Proposed Intervenors' interests moot or no longer protectable.  And there are still substantial questions about why the proposed settlement singles out this set of schools.  The over 150 schools listed

---

[3] In Lincoln's case, the basis for its inclusion in the list appears to be a 2015 settlement with the Massachusetts Attorney General concerning a single program at Lincoln Technical Institute schools in the commonwealth.  The final consent judgment made no findings of fact and included no admission of wrongdoing. *See* Final Judgment by Consent 2, https://bit.ly/3OJGGmR.  That is not a reasonable or sufficient basis to presume "substantial misconduct" by all Lincoln schools nationwide for all time—much less for the federal government to publicize that unfounded presumption and inflict substantial harm to Lincoln's 76-year reputation as a leading provider of technical skills.  Dkt. 254-2 ¶¶ 3, 16.

ANU appears to be included in the list because of an action under the Kentucky Consumer Protection Act finding it "willfully" failed to ensure a statistic on its website was not "false, misleading, or deceptive."  The Commonwealth of Kentucky Court of Appeals upheld an interpretation of the Act's willfulness requirement that included even mere "inexcusable carelessness."  This is similarly an insufficient basis to presume permanent widespread "substantial misconduct."

in Exhibit C of the settlement agreement, *see* Dkt. 246-1, Ex. C, appear to be almost entirely proprietary institutions, rather than strictly a list of schools with the most pending claims.  The existing parties seem aligned in viewing proprietary schools as unworthy of fair treatment.  There have been numerous well-publicized settlements between regulators and non-profit schools involving similar allegations of wrongdoing, yet those schools inexplicably appear nowhere in the proposed settlement.[4]  The parties seem to have given most non-profit schools a free pass and spared them the harm of being published in a list of presumptive wrongdoers.  The parties' treatment of proprietary schools as a scapegoat for issues that reach non-profit schools further shows why the Court should provide Proposed Intervenors a seat at the table for consideration of the settlement.

### 3.  Disposition of This Case Will Impair Significant Interests

Plaintiffs state in a conclusory fashion that Proposed Intervenors' interests are not impeded by disposition of this action because Proposed Intervenors will have the right to contest their liability in future proceedings.  Pls.' Opp. at 16.  But that is really just a recapitulation of their arguments on the underlying stake, addressed above.  "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."  *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822.  Proposed Intervenors have readily made that showing.  The Department insists that the fact that "additional proceedings are required before the Department could take any action" against Proposed Intervenors is itself evidence that Proposed Intervenors' interests are not at stake.  Defs.' Opp. at 19.  But the fact that an agency retains enforcement discretion does not prevent a litigant from protecting its interests in litigation.  *Cf. Sackett v. E.P.A.*, 566 U.S. 120, 129 (2012) (holding that a regulated

---

[4] *See, e.g.*, Settlement Agreement, https://www2.ed.gov/documents/press-releases/20201204-temple.pdf, ¶ 4.

party could challenge the EPA's compliance order even though "compliance orders are not self-executing, but must be enforced by the Agency in a plenary judicial action"). Proposed Intervenors are not required to sit around and "wait for the Agency to drop the hammer." *Id.* at 127.

### 4. No Party Adequately Represents Proposed Intervenors

Neither party claims any representation of Proposed Intervenors' interests. In fact, what the recent developments show is that the parties are willing to address some of Proposed Intervenors' concerns, but only when forced. That is precisely why Rule 24 provides a mechanism for Proposed Intervenors to enter the case.

### B. Proposed Intervenors Are Entitled to Permissive Intervention

Proposed intervenors also satisfy the three elements of permissive intervention. First, the motion is timely for the same reasons set forth above. *See* Part II.A.i *supra*. Second, Proposed Intervenors assert claims "that share[] with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Among other things, Proposed Intervenors assert claims about the fairness and propriety of the proposed settlement—which are issues of law and fact that are already before the Court on the parties' motion for preliminary approval. Finally, there is an independent basis for jurisdiction because Proposed Intervenors assert claims related to the proposed settlement, over which the Court is already exercising jurisdiction and do not seek to add any new or distinct causes of action. Thus, even if the Court were to conclude that Proposed Intervenors are not entitled intervention of right under Rule 24(a), it should exercise its discretion and grant permissive intervention under Rule 24(b).

### C. Proposed Intervenors Satisfy Article III Standing

Plaintiffs and the Department assert that, because Proposed Intervenors fail to assert concrete interests, they fall short of establishing Article III standing. Pls.' Opp. at 20–21; Defs.' Opp. at 15–16. Plaintiffs argue it is an open question in the

Ninth Circuit as to whether Proposed Intervenors must fulfill Article III standing to intervene as of right.  In a footnote in their brief, Plaintiffs cite a footnote in a case which in turn cites a footnote in another case which has a citation signaling that a Ninth Circuit decision holding that Article III standing is not necessary to intervene as of right was later overturned ***on other grounds***.  Pls.' Opp. at 20, n.18.  But the Ninth Circuit has more recently clarified (not in a footnote), "[i]n general, an applicant for intervention need not establish Article III standing to intervene." *Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011).  Sister California district courts have applied that rule.  *United States v. Cnty. of Los Angeles*, No. 17, 2015 WL 8783449, at *3 (C.D. Cal. Dec. 15, 2015) (quoting *Perry*, 630 F.3d at 906) ("In the Ninth Circuit, however, '[i]n general, an applicant for intervention need not establish Article III standing to intervene.'"); *Indus. Tech. Rsch. Inst. v. LG Elecs., Inc.*, No. 3:13-CV-2016-GPC-WVG, 2015 WL 474227, at *3 (S.D. Cal. Feb. 5, 2015) (citing *Yniguez v. State of Ariz.*, 939 F.2d 727, 731 (9th Cir. 1991) (intervenor "need not have established Article III standing to intervene").[5]

Regardless of whether Rule 24(a) requires it, Proposed Intervenors satisfy Article III standing because, as set forth in the motion to intervene and in the supporting declarations, the schools face concrete and particularized injuries that are directly traceable to the proposed settlement.  Proposed Intervenors' participation in the process to finalize any settlement will redress those injuries.  Therefore, Proposed Intervenors have an independent basis for jurisdiction.

## **CONCLUSION**

For the above reasons and those in the motion to intervene and supporting papers, this Court should grant Proposed Intervenors' motion to intervene.

---

[5] "The majority of circuits allow Rule 24 intervention without a showing of Article III standing."  Zachary N. Ferguson, *Rule 24 Notwithstanding: Why Article III Should Not Limit Intervention of Right*, 67 DUKE L.J. 189, 201 (2017).

1

2   DATED: July 29, 2022                Respectfully submitted,

3                                       **MCGUIREWOODS LLP**

4

5                                       By:  _/s/ Piper A. Waldron_

6                                            John S. Moran, Esq.
                                             Piper A. Waldron, Esq.
7

8                                       *Counsel for Proposed Intervenor*
                                        *American National University*
9

10                                      **GIBSON, DUNN & CRUTCHER LLP**

11                                      James L. Zelenay, Jr., Esq.
                                        Lucas Townsend, Esq.
12

13                                      *Counsel for Proposed Intervenor*
                                        *Lincoln Educational Services Corporation*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION TO INTERVENE
3:19-cv-03674-WHA

1

2

## **CERTIFICATE OF SERVICE**

3       I hereby certify that on July 29, 2022, the foregoing document entitled

4  **PROPOSED INTERVENORS AMERICAN NATIONAL UNIVERSITY AND**

5  **LINCOLN EDUCATIONAL SERVICES CORPORATION'S REPLY IN**

6  **SUPPORT OF THEIR MOTION TO INTERVENE** was filed electronically with

7  the Clerk of the Court for the United States District Court, Northern District of

8  California using the ECF system.  Upon completion the ECF system will

9  automatically generate a "Notice of Electronic Filing" as service through ECF to

10  registered e-mail addresses of parties of record in the case.

11

12                             */s/ Piper A. Waldron*
                              Piper A. Waldron
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28