TERANCE A. GONSALVES (admitted pro hac vice)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:      (404) 881-7000
Facsimile:      (404) 881-7777
Email:          terance.gonsalves@alston.com

ALEXANDER AKERMAN (State Bar No. 280308)
Alston & Bird LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone:      (213) 576-1000
Facsimile:      (213) 576-1100
E-mail:         alex.akerman@alston.com

Attorneys for Proposed Intervenor-Defendant
THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants* | Case No. 19-cv-03674-WHA<br><br>**REPLY IN SUPPORT OF THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY'S MOTION TO INTERVENE**<br><br>Date:          August 4, 2022<br>Time:          1:30 pm<br>Courtroom:   12<br>Judge:        Hon. William A. Alsup<br><br>(Class Action)<br>(Administrative Procedure Act Case)<br><br>Filing Date:   July 29, 2022<br>Trial Date:    None Set |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT .................................................................................................... 2

        A.      TCSPP Is Entitled to Intervene as of Right. ........................................... 2

                1.      The Current Parties Do Not Adequately Represent TCSPP's
                        Interests. ...................................................................................... 2

                2.      TCSPP's Motion to Intervene is Timely. ..................................... 2

                3.      TCSPP Has a Significant Protectable Interest Impacted By the
                        Proposed Settlement. ................................................................... 6

        B.      Alternatively, TCSPP Should Be Granted Permissive Intervention. ...................... 13

        C.      The Court Should Grant TCSPP's Motion And Give TCSPP Leave to
                Oppose Preliminary Approval. ............................................................... 14

III.    CONCLUSION ................................................................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*,
    952 F.2d 1173 (9th Cir. 1992) ........................................................13

5

6

*Chambers v. Whirlpool Corp.*,
    980 F.3d 645 (9th Cir. 2020) ..........................................................12

7

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) ..........................................................10

8

9

*Clark v. Watchie*,
    513 F.2d 994 (9th Cir. 1975) ..........................................................15

10

*Comm. of Unsecured Creditors of the Bankr. Estate of Rajysan, Inc. v. L.A. Cty.*
    *Treasurer & Tax Collector (In re Rajysan, Inc.)*,
    No. CV 18-10667-JFW, 2019 U.S. Dist. LEXIS 57626 (C.D. Cal. Apr. 3, 2019)...................6

11

12

*Cty. of Orange v. Air Cal.*,
    799 F.2d 535 (9th Cir. 1986) ............................................................3

13

14

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998) ............................................................5

15

16

*Glass v. UBS Fin. Servs.*,
    No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8509 (N.D. Cal. Jan. 17, 2007) .......................2

17

18

*Green v. Baca*,
    226 F.R.D. 624 (C.D. Cal. 2005) ......................................................4

19

20

*Hazlin v. Botanical Labs., Inc.*,
    2015 U.S. Dist. LEXIS 189687 (S.D. Cal. 2015) ................................14

21

*Hudspeth v. Commissioner*,
    914 F.2d 1207 (9th Cir. 1990) ..........................................................4

22

23

*In re Novatel Wireless Sec. Litig.*,
    No. 08cv1689 AJB (RBB), 2014 U.S. Dist. LEXIS 85994 (S.D. Cal. June 23, 2014) .............5

24

*In re Snyder*,
    472 U.S. 634, 105 S. Ct. 2874 (1985).................................................12

25

26

*In re STEC Sec. Litig.*,
    No. SACV 09-01304-JVS, 2013 U.S. Dist. LEXIS 200219 (C.D. Cal. May 23, 2013) .........14

27

28

*Jackson v. Culinary Sch.*,
    27 F.3d 573 (D.C. Cir. 1994), *vacated on other grounds*, 515 U.S. 1139 (1995) ..............9, 10

ii

*JLS, Inc. v. PSC of W. Va.*,
   321 F. App'x 286 (4th Cir. 2009) .........................................................................11

*Kootenai Tribe of Idaho v. Veneman*,
   313 F.3d 1094 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v.*
   *U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc)....................................13

*Lighthouse Res. Inc. v. Inslee*,
   No. 3:18-cv-050040-RJB, 2018 U.S. Dist. LEXIS 49595 (W.D. Wash. Mar. 26, 2018).......11

*Medeiros v. HSBC Card Servs.*,
   No. CV 15-09093 JVS, 2017 U.S. Dist. LEXIS 178484 (C.D. Cal. Oct. 23, 2017) ...............14

*Moore v. Verizon Communications Inc.*,
   No. C 09-1823 ..............................................................................13

*Perry v. Schwarzenegger*,
   630 F.3d 898 (9th Cir. 2011) .........................................................................14

*Rollins v. Dignity Health*,
   336 F.R.D. 456 (N.D. Cal. 2020) .........................................................................15

*S.C. Coastal Conservation League v. Ross*,
   No. 2: 18-cv-03326-RMG, 2019 U.S. Dist. LEXIS 202667 (D.S.C. Feb. 8, 2019)...............12

*United States ex rel. McGough v. Covington Techs. Co.*,
   967 F.2d 1391 (9th Cir. 1992) .........................................................................5

*United States v. Carpenter*,
   298 F.3d 1122 (9th Cir. 2002) .........................................................................2, 6

*United States v. City of L.A.*,
   288 F.3d 391 (9th Cir. 2002) .........................................................................10, 11

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
   295 F.3d 1111 (10th Cir. 2002) .........................................................................12

**RULES**

Rule 23(b)(2)..............................................................................15

Rule 23(e)(2)..............................................................................6

Rule 24(a)(2)..............................................................................1, 10

**OTHER AUTHORITIES**

34 C.F.R. § 685.206(c)(2)..............................................................................9

34 C.F.R. § 685.206(c)(3)..............................................................................7

34 C.F.R. § 685.206(e)(10)(i) ........................................................................................7

34 C.F.R. § 685.206(e)(10)(ii) .......................................................................................7

34 C.F.R. § 685.206(e)(10)(iii) ......................................................................................7

34 C.F.R. § 685.206(e)(11)(i)(A)-(C) ...........................................................................7

34 C.F.R .§ 685.206(e)(16)(i) ........................................................................................8

34 C.F.R. § 685.222(e)(3)(i) .......................................................................................7, 9

34 C.F.R. § 685.222(e)(7) ..............................................................................................8

34 C.F.R. § 685.222(h)-(i) .............................................................................................8

34 C.F.R. § 685.222(h)(1)(i) ..........................................................................................8

34 C.F.R. § 685.222(h)(1)(iii) ........................................................................................7

34 C.F.R. § 685.308(a)(3) ..............................................................................................8

## I.   INTRODUCTION

Plaintiffs argue that the Motions to Intervene are too late, while the Department of Education ("Department") argues that the Motions are premature. Both Parties wrongly assert that the Movants do not have a protectable interest in receiving notice and responding to the borrower defense applications, even though the borrower defense regulations say otherwise. Both parties argue that the reputational harm suffered by The Chicago School of Professional Psychology ("TCSPP") fails to suffice as a concrete interest necessary for intervention, and according to Plaintiffs, the schools listed on Exhibit C can simply retain public relations firms to defend themselves in the media from their defamatory statements in the Joint Motion for Preliminary Approval of Settlement ("Joint Motion") and on Plaintiffs' counsel's predatorystudentlending.org website. Most interestingly, the Department now says "[t]he fact that a school is included on the attachment to the settlement agreement *is not a formal finding of misconduct, establishes no institutional liability, and does not provide an evidentiary basis on which the Department can take any action against the school.*" Dkt. 288 at 16:12-15 (emphasis added). But that is directly contrary to the Department's representations made in support of the Settlement Agreement in the Joint Motion, wherein the Department stated that it had determined that all 153 schools listed on Exhibit C engaged in "substantial misconduct" and that it had identified "common evidence of institutional misconduct." Dkt. 246 at 3:8-10 and 17:26-27. Unfortunately, the Department's attempts to now walk back these incendiary (and baseless) statements are too little, too late, and of no avail as their Opposition does not retract the statements in the Joint Motion or in the Settlement Agreement. The result is the news media, students, alumni, faculty and accrediting bodies believe that the Department, TCSPP's primary regulator, has labeled it a "bad actor."

TCSPP's Motion should be granted as a right because it meets all of the requirements of Rule 24(a)(2). The Motion was timely filed as soon as TCSPP learned that the proposed settlement was contrary to its interests. TCSPP has significant due process protectable interests in defending the borrower defense applications pursuant to the federal regulations, which is not cured by a subsequent right to defend itself in a recoupment action. Moreover, TCSPP has already suffered reputational damage that is likely to continue which is caused by the Parties' false statements of

"substantial misconduct" and Plaintiffs' counsel's accusations that TCSPP is a "predatory school . . . all too happy to deceive borrowers and collect federal student loan dollars. . . ." Protection from such reputational damage warrants intervention and accountability.

TCSPP should alternatively be granted permissive intervention because its interests in the action have common questions of law and/or fact.

## II.   ARGUMENT

### A.   TCSPP Is Entitled to Intervene as of Right.

#### 1.   The Current Parties Do Not Adequately Represent TCSPP's Interests.

Neither Plaintiffs nor the Department dispute that no Party to this litigation has or will adequately represent TCSPP's interests. As such, this requirement is met.

#### 2.   TCSPP's Motion to Intervene is Timely.

##### a.   TCSPP Moved to Intervene Promptly After It Learned the Settlement was Contrary to Its Interests.

The Department rightfully does not dispute the timeliness of TCSPP's Motion. Dkt. 288. In fact, the Department argues that TCSPP's intervention is "*premature*." *Id*. at 11:4-13:10 (emphasis added)). In contrast, Plaintiffs argue TCSPP's Motion is not timely but they misunderstand the relevant standard for timeliness here. Contrary to Plaintiffs' assertion, timeliness is not measured from when a party could have learned about the subject matter of a case; rather, "[w]here a proposed intervenor seeks to intervene for purposes of objecting to a proposed settlement, timeliness generally is measured from the date the proposed intervenor received notice that the ***proposed settlement was contrary to its interest***." *Glass v. UBS Fin. Servs*., No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8509, at *9 (N.D. Cal. Jan. 17, 2007) (citing *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (per curium) (emphasis added). Such interventions are "presumptively timely" when filed before the deadline for class members to opt out of the class settlement. *Glass*, 2007 U.S. Dist. LEXIS 8509, at *9 (quotation omitted).

Here, there is no plausible argument that TCSPP received notice that the proposed settlement was contrary to its interest prior to June 23, 2022, the day after the proposed settlement was made public. Dkt. 265-3 (Gonsalves Decl.) at ¶ 4. Prior to the Parties' Joint Motion, TCSPP

had no notice of any settlement negotiations or that that a proposed settlement would be based on an unsubstantiated "determination" that TCSPP engaged in substantial misconduct and, on that basis, would mandate the Full Settlement Relief for loans held by TCSPP's former students who had submitted borrower defense applications.

Particularly, the only relief sought in the Complaint (Dkt. 1) and the Supplemental Complaint (Dkt. 198) is to compel the Department to properly adjudicate thousands of pending borrower defense applications. To the extent TCSPP had notice that such "BD claims" were "at issue" in this litigation, nothing about the Department adjudicating these applications consistent with its own regulations is contrary to TCSPP's interests. In accord, the Complaints do not seek to discharge federal loans of students who attended TCSPP and do not allege that TCSPP engaged in any misconduct. In fact, TCSPP is not mentioned anywhere in either Complaint. Likewise, TCSPP was not referenced in the previous proposed settlement between Plaintiffs and the Department (that was rejected by this Court), which only provided for the adjudication of the pending borrower defense applications, did not discharge any federal student loans, and did not presume any misconduct by TCSPP. Dkts. 97 and 97-2.

In contrast, the current proposed settlement includes entirely different relief that is contrary to TCSPP's interests, the terms of which did not become public until June 22, 2022. This was the first time that TCSPP could have received notice that the Department planned to forgive the loans of certain former TCSPP students, "based on [purported] strong indicia regarding substantial misconduct[.]" Dkt. 246 at 6:10-12.[1] Twenty-two days after TCSPP learned that the settlement was now contrary to its interests TCSPP moved to intervene.[2]

Given these facts, Plaintiffs' argument that TCSPP learned—or could have learned—of the

---

[1] This situation is procedurally distinguishable from the authority that Plaintiffs rely upon, where an intervenor waited until after the settlement to move to intervene, even though the settlement negotiations were public: "The consent decree had been preceded by extensive and well-publicized negotiations." *Cty. of Orange v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986).

[2] *Asghari v. Volkswagen* Grp. *of Am., Inc.*, No. CV 13-02529 MMM (VBKx), 2015 U.S. Dist. LEXIS 188824, at *102 (C.D. Cal. May 29, 2015) ("motions to intervene filed after the parties have reached a settlement can still be timely if . . . the proposed intervenor first learned that the terms of a settlement were contrary to his or her interests after the settlement was consummated.")

offending settlement terms earlier is without merit. Instead, Plaintiffs offer a series of red herrings.

**First**, Plaintiffs argue that TCSPP was referenced in the docket (Dkt. 287 at 6:10) but do not explain how the February 24, 2022 exhibit to which they refer has anything to do with the settlement terms or how it would have provided TCSPP any notice that a proposed settlement four months later would go beyond the relief demanded in the Complaints; *i.e.*, properly adjudicate the borrower defense applications. The February 24, 2022 exhibit is just a 14-page list of institutions noting the number of borrower defense applications related to those institutions.  Dkt. 220-2 at 11.

**Second**, Plaintiffs' argument that a settlement entered into by TCSPP nearly six years ago somehow gave TCSPP notice that its interests were implicated in this case is preposterous. Dkt. 287 at 7:3-6. Plaintiffs' attempt to leverage the *Truitt* settlement as evidence that TCSPP engaged in wrongdoing perfectly illustrates why TCSPP should be granted the right to intervene here.[3] Intervention is necessary to allow TCSPP to rebut the spurious claims of misconduct that are embedded in the proposed settlement in order to prevent this settlement from being used by the Parties as a basis to revive the false narrative that TCSPP has engaged in any type of misconduct. Dkt. 287 at 6:7:10-5 (TCSPP's "public records of wrongdoing" include the fact that it "settled a class action in 2016 . . . ."). To the extent the *Truitt* settlement is the basis for the Department's determination that TCSPP engaged in substantial misconduct (despite no finding of liability) and the reason TCSPP is included in the Department's list of schools subject to Full Settlement Relief, it should be noted that only 3 of the 39 borrower defense applications of which TCSPP is aware relate to the *Truitt* litigation. Thus, TCSPP must be permitted to intervene to prevent another misuse of a class action settlement as the basis of alleged wrongdoing.

**Third**, Plaintiffs' assertion that TCSPP only intervened once the Department first disclosed "that it . . . had enough evidence to support the approval of many Class Members' applications" (Dkt. 287 at 9:4-6) ignores a key detail: the Department did not put forth any evidence in the Joint

---

[3] A settlement is not evidence of wrongdoing and irrelevant as an inference of liability. *Hudspeth v. Commissioner*, 914 F.2d 1207, 1213 (9th Cir. 1990) ("the evidence [of compromise] is irrelevant, since the offer may be motivated by desire for peace rather than from any concession of weakness of position") (parenthetical in original); *Green v. Baca*, 226 F.R.D. 624, 641 (C.D. Cal. 2005) ("An offer of settlement can be of no legal relevance to the offeror's liability . . . .").

Motion. In any event, Plaintiffs' argument further proves TCSPP's point. TCSPP moved to intervene immediately after it learned the proposed settlement was contrary to its interests.

**b.     The Parties Would Not Be Severely Prejudiced by Intervention.**

Both Parties' assertions of prejudice if TCSPP intervenes in this case fail for the following reasons. ***First***, Plaintiffs and the Department argue that they would be prejudiced because this case is at a late stage. Dkt. 287 at 9:8-12, 19:1-8; Dkt. 288 at 2:22-24. But they fail to articulate any specifics as to how TCSPP's intervention will delay the proceedings in any significant manner. As such, TCSPP's intervention does not cause the Parties any cognizable prejudice. *In re Novatel Wireless Sec. Litig.*, No. 08cv1689 AJB (RBB), 2014 U.S. Dist. LEXIS 85994, at *10 (S.D. Cal. June 23, 2014) ("Without a doubt, this has been a protracted litigation that has spanned more than five years. The Parties have gone through extensive discovery, motion practice, two mediation attempts, and extensive negotiations. Though we are at a very late stage of the proceedings in this litigation, it is understandable that Movant has not sought intervention until this time."). TCSPP merely seeks an opportunity to protect its rights and interests under the proposed settlement, not delay the litigation indefinitely.

***Second***, Plaintiffs fail to address or acknowledge the fact that their Complaint and Supplemental Complaint did not seek debt forgiveness. Rather, Plaintiffs sought a more timely adjudication of pending borrower defense applications. If the Parties had given TCSPP notice that they were negotiating a settlement offering full loan discharges on the basis of TCSPP's purported wrongdoing, TCSPP may have moved to intervene earlier. Put differently, Plaintiffs and the Department cannot, on the one hand, wait until a late stage of this proceeding to spring a proposed settlement that surprisingly grants relief the class had not previously requested and then, on the other hand, complain that TCSPP seeks to intervene at a late stage. It is well settled that judicial evaluations of motions to intervene "are guided primarily by practical and equitable considerations" and those considerations generally weigh in favor of intervention. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992) (courts generally construe conflicts in favor of intervention). It is inequitable for the Parties to argue that this litigation is insulated from potential

intervenors by virtue of waiting until the eleventh hour to submit (for the first time) a species of relief not previously within the scope of this case and expect TCSPP to have intervened earlier.

*Third*, TCSPP could reasonably rely on the Department's position as set forth in the first settlement (later rejected by the Court) that, in accord with the borrower defense regulations, it would adjudicate claims individually after considering the submission of evidence from both the borrower and school. Only once TCSPP learned that the Department had substantially departed from this position in the new proposed settlement did TCSPP move to intervene. *Carpenter*, 298 F.3d at 1125 ("prior to the announcement of the proposed agreement," which constituted a "substantial departure" from prior litigation positions, "the appellants were entitled to rely on the government to adequately protect their interests"). Simply put, the Department substantially changed what was at issue in the litigation when it agreed to provide Full Settlement Relief based on TCSPP's purported misconduct. The Department cannot choose to settle a case premised on its own wrongdoing (its failure to timely adjudicate the borrower defense applications) by pointing its finger at TCSPP, and then complain of prejudice when TCSPP seeks to intervene.

*Fourth*, Plaintiffs' claim that TCSPP seeks to intervene with the "intention of blowing up a hard-fought and long-awaited settlement" is hyperbole. Even though the Department now acknowledges that the Parties' statements that the schools on Exhibit C are guilty of "substantial misconduct" and "common evidence of institutional misconduct" are untrue, (Dkt. 288 at 13:16), TCSPP seeks to intervene so it may protect its interests. Whether the settlement was "hard-fought" or "long awaited" is not relevant. The inquiry is whether the settlement is fair, reasonable, and adequate (Rule 23(e)(2)) and does not infringe on the rights of third-parties such as TCSPP.

### 3.   TCSPP Has a Significant Protectable Interest Impacted By the Proposed Settlement.

The Parties' attempt to rebut the existence of TCSPP's significant protectable interests fails for the following reasons. *First*, TCSPP has a fundamental due process interest in asserting a defense to the borrower defense claims of any former students. *Comm. of Unsecured Creditors of the Bankr. Estate of Rajysan, Inc. v. L.A. Cty. Treasurer & Tax Collector (In re Rajysan, Inc.)*, No. CV 18-10667-JFW, 2019 U.S. Dist. LEXIS 57626, at *7-8 (C.D. Cal. Apr. 3, 2019) (granting

motion to intervene because "[Intervenors] will not be able to assert its reasonably equivalent value defense against the Tax Agencies . . . [and] will have lost their ability to protect their interest.").

The Parties dismiss TCSPP's interest by focusing exclusively on the opportunity that TCSPP will have to defend itself during a future "recoupment process."[4] Dkt. 287 at 13:13-14:2; Dkt. 288 at 16:4-7 ("Any such interest is only implicated later, if and when the Department decides to take further action against the school—either to recoup funds or to impose other sanctions or penalties through regulatory processes for establishing institutional misconduct."). This argument is a red herring because, if the Court were to accept it, TCSPP would lose its opportunity to potentially avoid a recoupment proceeding. This is because a borrower must first successfully have their loan forgiven before the Department may seek recoupment.

Recoupment is a *two-phase process*. The first phase is the adjudication of an individual's borrower defense application which arguably provides TCSPP the opportunity to submit evidence that may demonstrate the borrower is not entitled to relief and requires the Department to issue a reasoned decision. The Department receives an application and notifies the school, 34 C.F.R. § 685.222(e)(3)(i); the school is given an opportunity "to respond and to submit evidence," 34 C.F.R. § 685.206(e)(10)(i);[5] the Department provides the borrower with a copy of TCSPP's response, 34 C.F.R. § 685.206(e)(10)(ii); and obtains a reply from the borrower (which the Department also provides to the school), 34 C.F.R. § 685.206(e)(10)(iii). Finally, "[a]fter considering all applicable evidence" the Department issues a written decision. 34 C.F.R. § 685.206(e)(11)(i)(A)-(C) (emphasis added); 34 C.F.R. § 685.222(h)(1)(iii).

If—and only if—a borrower's loan is successfully discharged through the adjudication process described above—then the Department may engage in a phase two-the recoupment process.[6]

---

[4] Plaintiffs argue that "[t]he fate of borrowers in the BD process is completely separate from the Department's regulation of, and potential recoupment from, schools such as Movants." Dkt. 287 at 8. The Department states the recoupment "procedures apply only when the Department is reviewing and adjudicating borrower defense applications in the ordinary course." Dkt. 288 at 15.

[5] *See also* 34 C.F.R. § 685.222(e)(3)(i) ("As part of the fact-finding process, the Department official . . . considers …. (B) Any response or submissions from the school").

[6] 34 C.F.R. § 685.206(c)(3) ("the Secretary may initiate an appropriate proceeding to collect from

Far from being "completely separate," the "fate of borrowers in the BD process" is determinative. Dkt. 287 at 8. Adjudication of the borrower's application is a necessary pre-requisite to reaching the recoupment phase.[7] As such, TCSPP has a concrete and significant interest in the due process rights the borrower defense regulations give it during the first phase—the Department must give TCSPP an opportunity to submit evidence and then issue a reasoned decision as to a specific borrower, based on distinct and individualized evidence. Nowhere do the borrower defense regulations allow the Department to presume the wrongdoing of TCSPP based on conclusory statements about collective evidence, such as stale newspaper articles about the settlement of a decade old class action. The proposed settlement here completely eviscerates the first phase of the borrower defense regulatory process by providing Full Settlement Relief based on an unsupported presumption that TCSPP engaged in "substantial wrongdoing" (Dkt. 246 at 3:8-12), but offers no assurances that the Department won't seek to recoup the amounts in a future proceeding.

Furthermore, losing the opportunity to oppose relief at the adjudication phase of the borrower defense process imposes significant economic costs on TCSPP. Submitting a defense at the recoupment phase will be costly, time consuming, and burdensome because it requires a formal administrative hearing, *i.e.*, a mini trial. 34 C.F.R. § 685.222(h)-(i). TCSPP should not have to bear the burden of defending against a recoupment action at a mini trial without the Department first following the required procedures during the adjudication phase, which might eliminate the need for a recoupment proceeding if the claim is denied. This is exactly what the Complaints in this action demand—the adjudication of these applications in accordance with regulations.

***Second***, Plaintiffs are simply wrong when they argue that a "significant portion of the

---

the school"); 34 C.F.R .§ 685.206(e)(16)(i) (same); 34 C.F.R. § 685.222(e)(7) (same); 34 C.F.R. § 685.222(h)(1)(i) ("the written decision . . . notifies the school of any liability to the Secretary for the amounts discharged and reimbursed."); 34 C.F.R. § 685.308(a)(3) ("The Secretary may require the repayment . . . if . . . [t]he school's actions . . . gave rise to a successful claim . . . .").

[7] Ironically, the Department argues that TCSPP "will have ample opportunity to defend" itself against future borrower defense applications while simultaneously arguing that the proposed settlement's determination of substantial misconduct and wholesale borrower relief is "outside the regulatory process for reviewing and adjudicating borrower defense applications." Dkt. 288 at 19, 15. Those assurances are not found in the Joint Motion or Settlement Agreement.

Class" submitted borrower defense applications that do not require notice to the school because their "federal loans [] were disbursed before July 1, 2017." Dkt. 287 at 11. Under 34 C.F.R. § 685.206(c)(2), a borrower defense to repayment for Direct Loans "first disbursed prior to July 1, 2017 . . . must be asserted, and will be resolved, under the procedures in § 685.222(e) to (k)."[8] 34 C.F.R. § 685.222(e)(3)(i) expressly states that "[a]s part of the fact-finding process, the Department official *notifies the school of the borrower defense application* and considers any evidence or argument presented by the borrower and also any additional information, *including . . . Any response or submissions from the school*." (emphasis added). Thus, the borrower defense regulations, if enforced, confer on schools a due process right to be notified of borrower defense applications. Further, TCSPP has received applications from borrowers spanning each time period of loan disbursement,[9] and it is undisputed that TCSPP is entitled to notification as to all applications from borrowers whose loans were disbursed after July 1, 2017.

*Third*, while TCSPP appreciates the Department's assurances that it will not seek recoupment *solely* based on this settlement (Dkt. 288-1 (Miller Decl.) at ¶ 9), these assurances are cold comfort. There is no assurance that the Deputy Under Secretary's commitments will be enforceable because a statement in a legal brief and declaration may not concretely bind the Department moving forward. *See, e.g.*, *Jackson v. Culinary Sch.*, 27 F.3d 573, 582-85 (D.C. Cir. 1994), *vacated on other grounds*, 515 U.S. 1139 (1995) ("two letters by the Secretary, a snippet of the Department's [Procedures], *and the Secretary's litigation posture in this and other cases*" did not confer a substantive, "legally enforceable right"). Indeed, this very lawsuit was brought because the Department allegedly failed to abide by its own regulations and adjudicate the borrower defense applications. Further, the Department's position has already undergone one sea change in this case, and the Department could later argue that its "litigation posture" and "snippets of legal briefs" in this litigation "do not constitute binding rules" enforceable against the

---

[8] The proposed settlement covers "all people who borrowed a Direct Loan or FFEL loan." Dkt. 246 at 9. Plaintiffs omit any reference to the "significant portion of the class" who took out the Direct Loans prior to July 1, 2017.

[9] Plaintiffs ignore the Department's practice of providing notice to the school for all borrower defense applications, regardless of the loan disbursement period and type of loan was borrowed.

Department.[10] *Id.* at 582-84. However, a term in a settlement agreement, approved by the Court, would be enforceable. It is notable that the assurances contained in Benjamin Miller's Declaration are not present in either the Settlement Agreement or the Joint Motion and were not made until *after* TCSPP and several other schools moved to intervene to assert their rights. As such, the assurances that the Department offers in its brief and in Mr. Miller's Declaration are even more reason for this Court to let TCSPP intervene, so that the Department and TCSPP can negotiate terms that protect TCSPP's interests and are reduced to an enforceable settlement agreement.

**Fourth**, Plaintiffs argue, without citing any supporting authority, that TCSPP does not have a protectable interest in this litigation absent a "protectable *property* interest." Dkt. 287 at 12:6. The Department does not make the same assertion, likely because it is wrong. A proposed intervenor's protectable interest is not so narrowly defined. Instead, any legally protectable interest in the transaction is sufficient to warrant intervention. Fed. R. Civ. P. 24(a)(2) (the applicable element requires only "an interest relating to the property or transaction"); *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) ("[n]o specific legal or equitable interest need be established"; the conservation group had a "significant protectable interest in conserving and enjoying the wilderness" in an area). "[T]he 'interest' test directs courts to make a 'practical, threshold inquiry,' and 'is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *United States v. City of L.A.*, 288 F.3d 391, 398 (9th Cir. 2002) (citations omitted). Where, as here, factual determinations will affect a prospective intervenor's adjudicative position—and diminish the intervenor's due process rights to adjudicate those issues—there is an

---

[10] The Department is currently revising the borrower defense regulations and is in the process of seeking public comment on its proposed regulations. The proposed regulations change substantive due process elements of the borrower defense regulations by, among other things, adding "***[a] clear expectation that the Department will hold colleges accountable for the cost of discharges***." Fact Sheet, Dept. of Educ., *Proposed Regulations to Improve Student Loan Relief Programs* (July 6, 2022), https://www2.ed.gov/policy/highered/reg/hearulemaking/2021/nprmfactsheet07042022.pdf. The Department's public intention to make it easier to "hold colleges accountable for the cost of discharges" is at odds with the statements in this case that the Department will not attempt to recoup discharged loans from TCSPP on the basis of the settlement.

interest that warrants intervention. *Id.* at 399 (intervenor had interest in litigation concerning whether its members committed unconstitutional acts).

**Fifth**, TCSPP has a significant business interest implicated by this settlement. Plaintiffs and the Department both mischaracterize and minimize the harm caused by the proposed settlement to TCSPP's core business as solely "reputational" harm. Dkt. 287 at 15:6; Dkt. 288 at 17:23-24. But the harm TCSPP has suffered and will continue to suffer if the current settlement is approved is not only reputational, which is sufficient in and of itself; it is also economic.

The Parties do not dispute the legal authority TCSPP cites stating that a direct threat to economic interests is a significant, protected interest. *Lighthouse Res. Inc. v. Inslee*, No. 3:18-cv-050040-RJB, 2018 U.S. Dist. LEXIS 49595, at *6-7 (W.D. Wash. Mar. 26, 2018) (intervenor had significant protectable interest where resolution of the case could "adversely affect" intervenor's "core operations" and "economic interest."); *JLS, Inc. v. PSC of W. Va.*, 321 F. App'x 286, 290 (4th Cir. 2009) (even though "[m]ovants have no property rights at stake, the result of this suit will determine … the amount of income they can expect to earn."). As Dr. Ted Scholz testified, the core of TCSPP's business is providing "an excellent education for careers in psychology and related behavioral and health sciences." Dkt. 265-4 (Scholz Decl.) at ¶ 5. This makes sense, given that the quality of education offered is central to the business of an institution of higher education, such as a non-profit school like TCSPP. Accordingly, (baseless) claims that TCSPP is "predatory," engaged in "substantial misconduct" or provides a "fraudulent education" will naturally impact TCSPP's ability to recruit and retain students and faculty, and to maintain other academic relationships. *Id*. at ¶ 16. Consistent with this, in the short time since the settlement became public, current and prospective students have asked TCSPP about the alleged misconduct asserted against it. *Id*. at ¶ 15. Further, TCSPP was contacted by its institutional accreditor, WASC Senior College and University Commission, and asked why the Department included TCSPP on Exhibit C of the Joint Motion. Declaration of Dr. Michele Nealon at ¶¶ 3,4.

Instead of responding to Dr. Scholz's common-sense description of the potential economic harm that flows from the Department's (baseless) determination that TCSPP engaged in misconduct, Plaintiffs resort to *ad hominem* attacks. Dkt. 287 at 15:12 ("[N]one of the Movants

11

has a 'sterling reputation' to protect."); *see also*, Plaintiffs' counsel's July 25, 2022 comments on their predatorystudentlending.org website stating, "These predatory schools were all too happy to deceive borrowers and collect federal student loan dollars . . . ."[11] Plaintiffs also try to evade the issue by retreating from their previous assertion that the settlement is centered on school misconduct (*see, e.g.*, Dkt. 246 at 3:8-12) by now arguing that "the litigation is centered around the Department's response to those claims, not the misconduct itself." Dkt. 287 at 15:26-27. Again, this is not true. The Parties did not limit their settlement to an agreement focused on how the Department will process borrower defense claims, rather they agreed to something that, without any evidentiary support, singles out TCSPP and 152 other schools the Department accuses of substantial misconduct. The Parties did that even though the Department argues it could have granted Full Settlement Relief without determining the schools on Exhibit C engaged in substantial misconduct. Dkt. 288 at 13-15. Lastly, Plaintiffs concede that this settlement does real damage to TCSPP's interests when they argue that TCSPP should undertake a (costly) public relations campaign in response to the proposed settlement. *Id* at 22:7-12. Under Rule 24, TCSPP has a right to intervene and defend itself in Court—not just in the media.

The Department also offers an argument that is slightly different. It argues that TCSPP's harm is too speculative. Dkt. 288 at 18:10-19:8. This argument puts the cart before the horse. At this stage, TCSPP only needs to submit a concrete threat of economic injury to support its intervention as of right. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (explaining that "[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest"); *see also S.C. Coastal Conservation League v. Ross*, No. 2: 18-cv-03326-RMG, 2019 U.S. Dist. LEXIS 202667, at *12 (D.S.C. Feb. 8, 2019)

---

[11]   *See* https://predatorystudentlending.org/news/press-releases/student-borrowers-respond-to-institutions-attempts-to-intervene-in-borrower-defense-settlement-press-release/, last visited July 26, 2022.  Plaintiffs' counsel's rhetoric is inconsistent with the basic principle that "persons involved in the judicial process . . . owe a duty of courtesy to all other participants." *In re Snyder*, 472 U.S. 634, 647, 105 S. Ct. 2874 (1985); *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 671 (9th Cir. 2020) ("[P]arties to litigation should refrain from employing *ad hominem* rhetoric."). The Northern District Guidelines for Professional Conduct hold that "Lawyers owe a duty of professionalism to … opposing parties …[t]hose duties include, among others: civility… respect, [and] courtesy[.]" https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/

1
2
3
4
5
6
7

("[T]he Municipality Plaintiffs argue this interest is too speculative, as it is contingent on whether the seismic airgun surveys actually discover oil and gas resources . . . . However, the API's members have a major economic stake in the outcome of this litigation[.]"). Here intervention is appropriate as the injury TCSPP has already suffered, and will continue to suffer, flows from an outcome that TCSPP's intervention seeks to prevent. In any event, Dr. Scholz has already provided ample evidence to demonstrate how an acclaimed non-profit school like TCSPP suffers injury to its core educational business when its primary regulator (the Department) labels it a wrongdoer.[12]

8

**B.      Alternatively, TCSPP Should Be Granted Permissive Intervention.**

9
10
11

To rebut TCSPP's permissive intervention argument, both Parties generally restate their prejudice arguments about timeliness and about some unspecified delay. Dkt. 287 at 16-17; Dkt. 288 at 20-21. For the reasons stated above in Section III.A.2.b., these arguments are unavailing.

12
13
14
15
16
17
18
19
20
21
22

Plaintiffs also argue that there is no common question of law or fact because TCSPP's ability to defend itself does not "resemble the legal issues" presented in this case. Dkt. 287 at 17:10-11. But permissive intervention does not require TCSPP to parrot the Plaintiffs' version of the case. It "requires only that [the proposed intervenor's] claim or defense and the main action have a question of law or fact in common." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc). And, despite Plaintiffs' narrow characterization of the legal issues before the court, it is clear that the common question of law or fact in this action is the duty of the Department to adjudicate individual borrower defense claims as required by the borrower defense regulations. This is the core of Plaintiffs' Complaints and, as explained in detail, the Department's adjudication of those applications significantly impacts TCSPP.

23

Absent intervention, allowing this settlement to proceed without any input whatsoever

24
25
26
27
28

[12] The cases cited by Plaintiffs and Defendants are inapposite. In *Moore v. Verizon Communications Inc.*, No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609, at *42 (N.D. Cal. Feb. 5, 2013), the putative intervenor did "not claim an interest in the issues being litigated" but rather had a solely collateral interest based on its obligation to indemnify Verizon. In *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 952 F.2d 1173, 1176 (9th Cir. 1992), the plaintiff lacked standing to challenge an agency's discretion *not to* take enforcement action, which by statute was presumed "immune from judicial review."

from the institutions who arbitrarily appear on Exhibit C does an injustice to institutions generally—and to TCSPP specifically. TCSPP is therefore entitled to permissive intervention.

###    C.    The Court Should Grant TCSPP's Motion And Give TCSPP Leave to Oppose Preliminary Approval.

The Department's contention that TCSPP's Motion should be held in abeyance until after preliminary approval is decided because class members typically do not have a right to "object" to a preliminary approval of class settlement misses the point. Dkt. 288 at 11-12. Since the inception of the litigation, and certainly since class certification was granted in 2019, the class members have been represented by class counsel who is bound to advocate for and protect their interests. The same cannot be said about TCSPP. It has had no representation in the negotiation of the settlement.

TCSPP is not a class member seeking to object to preliminary approval. TCSPP is a third party with a significant protectable interest impacted by this settlement. Manual for Complex Litigation (Fourth) § 13.14, at 173 ("Judges should be open to the views of those who may be affected by the settlement, whether or not they have legal standing to be heard.").[13] TCSPP has demonstrated its right to intervene and to be heard by the Court as to why the settlement should not be preliminary approved. *Hazlin v. Botanical Labs., Inc*., 2015 U.S. Dist. LEXIS 189687, at *12 (S.D. Cal. 2015) (the trial court may still "consider or even solicit the views of non-parties to proposed class settlements."). Further, there is nothing unique about an opposition to a motion for preliminary approval. *In re STEC Sec. Litig*., No. SACV 09-01304-JVS (MLGx), 2013 U.S. Dist. LEXIS 200219, at *5-6 (C.D. Cal. May 23, 2013) ("BLBG opposed preliminary approval. . . . The Court denied preliminary approval because it could not certify a class for the Securities Act claims due to a lack of showing of typicality and adequacy of representation."). It is also not uncommon for a Court to allow a party to intervene for the purposes of opposing a motion for preliminary approval and for negotiating a new class settlement. *Medeiros v. HSBC Card Servs*., No. CV 15-

---

[13] Plaintiffs argue the Movants lack Article III standing, and claim "there is 'a circuit split . . . whether an intervenor-applicant must also independently satisfy Article III standing to intervene as of right,' …." Dkt. At 20-21:14-2. However, in the Ninth Circuit, "an applicant for intervention need not establish Article III standing to intervene." *Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011).

09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *3 (C.D. Cal. Oct. 23, 2017) ("Plaintiffs moved to intervene . . . to oppose preliminary approval. . . . [T]he Court granted the motion to intervene. . . . [C]ounsel for each suit [then] worked together to enter into a settlement.").

Furthermore, Plaintiffs' lofty assertion that "the proposed settlement will be approved as written or not at all" (Dkt. 287 at 19:21) ignores fundamental flaws in the Parties' settlement that the Court should examine now. This proposed class settlement applies to approximately 264,00 students who attended more than 150 different schools in unspecified educational programs over an undefined period of time alleging innumerable types of misconduct. The purported class has nothing in common other than they all filed a borrower defense claim. *Clark v. Watchie*, 513 F.2d 994, 999 (9th Cir. 1975) ("Appellants must show, as a condition to class status, that any misrepresentations or non-disclosures were common to the class. They have not done so[.]"). Moreover, the class is currently certified under Rule 23(b)(2) where injunctive relief must predominate. That is not the case here because the settlement offers the class $6 billion in monetary relief which flows from, and predominates over, the injunctive relief offered. The proposed class notice does not even provide class members an opportunity to opt out of the settlement. Dkt. 246, Ex. A. Because the Court may not preliminarily approve a settlement unless it is likely to also grant final approval, it is imperative that the court consider these issues now. *Rollins v. Dignity Health*, 336 F.R.D. 456, 461 (N.D. Cal. 2020).

## III.    CONCLUSION

For the reasons articulated TCSPP's Motion to Intervene and this Reply, this Court should grant TCSPP's Motion to Intervene.

Dated:  July 29, 2022

Terance A. Gonsalves
Alexander Akerman
ALSTON & BIRD LLP

By: /s/  *Alexander Akerman*
     Alexander Akerman
Attorneys for Proposed Intervenor-Defendant
THE CHICAGO SCHOOL OF PROFESSIONAL
PSYCHOLOGY

## CERTIFICATE OF SERVICE

I, Attorney, certify and declare as follow:

1.      I am over the age of 18 and not a party to this action.

2.      My business address is 333 South Hope Street, 16th Floor, Los Angeles, CA 90071-1410.

3.      On July 29, 2022, I caused a copy of the ***Reply In Support Of The Chicago School Of Professional Psychology's Motion To Intervene*** to be served upon counsel via the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.  Executed on July 29, 2022, at Los Angeles, California.


By:    */s/ Alexander Akerman*
          Alexander Akerman
Attorneys for Proposed Intervenor-Defendant
THE   CHICAGO   SCHOOL   OF   PROFESSIONAL
PSYCHOLOGY