Jesse Panuccio (*pro hac vice*)
jpanuccio@bsfllp.com
Jason Hilborn (*pro hac vice*)
jhilborn@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL  33301
Telephone: (954) 356-0011

John J. Kucera (SBN 274184)
jkucera@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
725 S. Figueroa St., 31st Fl.
Los Angeles, CA 90017
Telephone: (213) 629-9040

*Counsel for Proposed Intervenor*
*Everglades College, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THERESA SWEET, et al., | Case No. 3:19-cv-03674-WHA |
| Plaintiffs, | **PROPOSED INTERVENOR EVERGLADES COLLEGE, INC.'S REPLY IN SUPPORT OF MOTION TO INTERVENE** |
| v. | |
| MIGUEL CARDONA, in his official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION, | Date:    August 4, 2022<br>Time:    1:30 p.m.<br>Room:   12, 19th Floor<br>Judge:   Honorable William Alsup |
| Defendants. | (Class Action) |
|  | (Administrative Procedure Act Case) |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT .......................................................................................................... 2

     A.      Intervention by Right Is Warranted under Fed. R. Civ. P. 24(a). .......................... 2

          1.      ECI's Motion Is Timely. ............................................................... 2

               a.      ECI's Motion Is Not Late. ................................................ 2

               b.      ECI's Motion Is Not Premature. ...................................... 6

          2.      ECI Has Legally Protectable Interests that May Be Impaired by Disposition of this Action. ............................................................ 6

               a.      The Parties Are Wrong that Elimination of Step 1 Protections Does Not Matter Because Step 2 Protections Remain. .................. 9

               b.      The Parties Are Wrong that There is No Reputational Injury from the U.S. Department of Education Announcing a Blanket Finding of "Substantial Misconduct." .......................................... 10

               c.      The Department's Belated Promises Do Not Eliminate Risk of Impairment of ECI's Interests. ..................................... 11

               d.      The Parties are Wrong to Suggest that ECI Lacks (or Needs) Article III Standing to Intervene to Defend Against the Requested Relief. .......................................................... 13

     B.      ECI Satisfies the Requirements for Permissive Intervention. ............................... 15

III.    CONCLUSION..................................................................................................... 15

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Arena v. Intuit,*
  2020 WL 7342716 (N.D. Cal. Dec. 14, 2020) .......................................................... 15

*California Department of Toxic Substances Control v. Commercial Realty Projects, Inc.,*
  309 F.3d 1113 (9th Cir. 2002) ........................................................................... 4, 5

*Casey v. Citibank, N.A.,*
  2014 WL 3468188 (N.D.N.Y. Mar. 21, 2014) ........................................................ 6

*Chi v. Univ. of S. California,*
  2019 WL 3064457 (C.D. Cal. Apr. 18, 2019) ........................................................ 6

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) .................................................................... 2, 5, 6, 14

*Idaho v. Freeman,*
  625 F.2d 886 (9th Cir.1980) .............................................................................. 14

*Kalbers v. DOJ,*
  22 F.4th 816 (9th Cir. 2021) ........................................................................... 3, 4, 5

*Lane v. Facebook, Inc.,*
  2009 WL 3458198 (N.D. Cal. Oct. 23, 2009) ........................................................ 6

*League of United Latin Am. Citizens v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997) ........................................................................... 5

*Legal Aid Society of Alameda County v. Dunlop,*
  618 F.2d 48 (9th Cir. 1980) ............................................................................... 4

*Mistretta v. United States,*
  488 U.S. 361 (1989) ....................................................................................... 12

*No Casino In Plymouth v. Nat'l Indian Gaming Commission,*
  2022 WL 1489498 ......................................................................................... 14

*Officers for Justice v. Civil Serv. Comm'n,*
  934 F.2d 1092 (9th Cir. 1991) ........................................................................... 3

*Orange County. v. Air California,*
  799 F.2d 535 (9th Cir. 1986) ............................................................................. 4

*Sagebrush Rebellion, Inc. v. Watt,*
  713 F.2d 525 (9th Cir. 1983) ........................................................................ 6, 14

*San Juan Cnty., Utah v. United States*,
    503 F.3d 1163 (10th Cir.) ................................................................ 14

*Smith v. Los Angeles Unified School District*,
    830 F.3d 843 (9th Cir. 2016) ....................................................... 4, 5

*Su v. Siemens Indus., Inc.*,
    2013 WL 3477202 (N.D. Cal. July 10, 2013)...................................... 4

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009).......................................................................... 9

*Talavera v. Glob. Payments, Inc.*,
    2021 WL 5331000 (S.D. Cal. Nov. 16, 2021) .................................. 10

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ........................................................... 14

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
    137 S. Ct. 1645 (2017) ..................................................................... 14

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..................................................................... 14

*United States v. Carpenter*,
    298 F.3d 1122 (9th Cir. 2002) ........................................................... 4

*United States v. Carpenter*,
    526 F.3d 1237 (9th Cir. 2008) ......................................................... 14

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ...................................................... 4, 15

*United States v. N.Y. City Housing Authority*,
    326 F.R.D. 411 (S.D.N.Y. 2018) ..................................................... 15

*Vivid Entertainment, LLC v. Fielding*,
    2013 WL 3989558 (C.D. Cal. Aug. 2, 2013)................................... 14

*Washington State Building & Construction Trades v. Spellman*,
    684 F.2d 627 (9th Cir.1982) ............................................................ 14

*Wilderness Soc. v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) (en banc) ........................................ 14

## Statutes

20 U.S.C. § 1099c(c)............................................................................ 7

**Rules**

Fed. R. Civ. P. 24(a) ................................................................................................ 2

**Regulations**

34 C.F.R. § 685.206(c) ........................................................................................ 7, 8

34 C.F.R. § 685.206(e) ........................................................................................ 7, 8

34 C.F.R. § 668.15 .................................................................................................. 7

34 C.F.R. § 668.171 ............................................................................................... 7

34 C.F.R. § 685.222(e) ......................................................................................... 7, 8

84 Fed. Reg. 49,788 (Sept. 23, 2019) ................................................................... 10

## I.    INTRODUCTION

Everglades University and Keiser University ("ECI") are nonprofit educational institutions that are routinely recognized for their achievements, such as top rankings for enhancing the social mobility of students.  Doc. 261-3 ¶¶ 7-8.  The Department of Education has *never* found, through a lawful adjudication, that a borrower-defense claim associated with the schools is meritorious.  To the contrary, the Department has never even notified the schools of a claim, *id.* ¶ 10, and the record in this very case shows the Department "has not identified evidence that suggests that Everglades is participating in fraudulent or illegal activity that would support borrower defense discharges."  *See* Doc. 193-3 at 41.

Yet, on June 22, 2022, ECI (and the rest of the world) found out that the Department and Plaintiffs ("Parties") spent months secretly colluding to fashion a "settlement" that strips ECI (and 151 other schools) of its rights under lawfully promulgated rules, convicts ECI of "substantial misconduct" without a hearing, and exposes ECI to programmatic, reputational, and financial risk and harm.  The Proposed Settlement sweeps far beyond the claims in this case, which, according to the Parties themselves, the Plaintiffs "brought … to challenge the Department's delay in making decisions on BD applications."  Doc. 246 at 2.  Rather than simply end the alleged delay, the Proposed Settlement discards the Department's lawfully promulgated borrower-defense regulations and establishes a vehicle to potentially cancel every federal student loan in the country, along with refunds for past payments.  That ECI's substantial interests are implicated and impaired by the Department's regulatory gamesmanship is patent just from this basic description.  Accordingly, as soon as the Parties filed the Proposed Settlement, ECI moved to intervene to protect its interests.

The Parties oppose, but in a seeming act of legal slapstick, they trip all over each other in trying to fashion a coherent reason as to why ECI's intervention is prohibited.  The Government says intervention is too soon.  Plaintiffs say it is too late.  The Government says its determination of misconduct is meaningless.  Plaintiffs say it is justified and conclusive.  The Government says

a settlement cannot impose reputational harm. Plaintiffs point to past settlements to defame schools. It would be comical if it were not so serious and wrong.

That the motions to intervene have already smoked out substantial disagreement among the Parties about the meaning of the Settlement underscores the need for, and utility of, intervention. After all, this Court has already rejected a proposed settlement in this case because there was "no meeting of the minds" as to what the proposed settlement terms meant. Doc. 146 at 10. Last time, that lack of agreement affected the interests of the class. Now, that lack of agreement affects the interests of nonparties who should be permitted to intervene to protect those interests. The Court should grant ECI's motion so that ECI may protect itself from the harms the Parties seek to impose upon it.

## II.   ARGUMENT

### A.   Intervention by Right Is Warranted under Fed. R. Civ. P. 24(a).

To intervene by right, ECI must show that (1) its motion is timely; (2) it "has a significant protectable interest relating to … the subject of the action"; (3) "the disposition of the action may, as a practical matter, impair or impede [its] ability to protect [that] interest"; and (4) the parties may not adequately represent that interest.[1] *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). These four requirements are broadly construed in favor of intervention, *id.*—a point of law that the Parties ignore. ECI's motion satisfies each requirement, and the Parties' contradictory positions on these requirements only serve to underscore the need for intervention.

#### 1.   ECI's Motion Is Timely.

Plaintiffs and Defendants simultaneously contend that ECI's intervention is both too late (Plaintiffs) and too early (Defendants). ECI's motion is right on time.

##### a.   ECI's Motion Is Not Late.

Plaintiffs do not say exactly when ECI should have sought to intervene, but suggest it was as early as day one of this case because a single paragraph of the Complaint alleges that ECI, years

---

[1] The Parties do not dispute that they do not, and will not, represent ECI's interests.

ago, began operating as a nonprofit institution.  Pls' Opp. 6.  But Plaintiffs ignore that timeliness of intervention is "assess[ed]" by "reference to the 'crucial date' when 'proposed intervenors should have been aware that their interests would not be adequately protected by the parties.'" *Kalbers v. DOJ*, 22 F.4th 816, 822 (9th Cir. 2021); *see also Officers for Justice* v. *Civil Serv. Comm'n*, 934 F.2d 1092, 1095 (9th Cir. 1991) (same).  The crucial date here is when the Parties filed the Proposed Settlement: June 22, 2022.  That is when the case transmogrified from (i) a lawsuit about the *pace* of an adjudicatory process that has protections for ECI's rights and interests, to (ii) a lawsuit that will *eliminate* that adjudicatory process altogether.  Plaintiffs' counsel's own statements highlight how the settlement transformed the case.  *Compare* Pls' Opp. 17 (stating that the "legal issues in this case" are "whether the Department unlawfully withheld or **unreasonably delayed** BD decisions, whether it unlawfully adopted a 'presumption of denial' policy, and whether its form denial notices violated the APA and/or due process"), *with* The Project on Predatory Student Lending, A Guide to the Proposed Sweet Settlement, https://predatorystudentlending.org/wp-content/uploads/2022/06/PPSL-Sweet-Flowchart-7.pdf (stating that if a "school is on the list" and a borrower already "applied for borrower defense" then the "**loan is cancelled**" without further process, and that if a borrower applies now, he or she will receive a new "**process favorable to borrower**") (attached as **Exhibit A**).  Thus, Plaintiffs are incorrect in arguing that passing mentions of ECI on the docket somehow required intervention earlier in the case.  The relief sought by the complaints, if granted, would preserve the adjudicatory process enshrined in duly promulgated regulations; the Proposed Settlement will eviscerate that process and its attendant protections.[2]

Moreover, even if Plaintiffs were correct that ECI's interests were in play earlier in this case, with the lodging of the (heretofore secret) Proposed Settlement, ECI first became aware that the Government would no longer "adequately protect[]" ECI's interests.  *Kalbers*, 22 F.4th at 822.  The Government "changed its fundamental stance in the controversy" from vigorously defending

---

[2] Plaintiffs state that "both Lincoln and CSPP … received actual notice from the Department about BD applications by their former students."  Pls' Opp. 7.  For the reasons just explained, this is immaterial, but to the extent it matters, ECI has received no such notice.  *See* Doc. 261-3 ¶ 10.

1    against Plaintiffs' claims to conceding them (and much more).  *Legal Aid Society of Alameda*

2    *County v. Dunlop, the Chamber of Commerce*, 618 F.2d 48, 50 (9th Cir. 1980).  At that point,

3    ECI's interests were no longer protected by an existing party and the entitlement to, and timeliness

4    of, intervention arose.  This "change of circumstances," *Kalbers*, 22 F.4th at 827, represents a

5    "substantially different position" than had previously "been assumed by" either party, particularly

6    "the Government."  *Legal Aid Society*, 618 F.2d at 50.

7        Plaintiffs next argue that ECI cannot intervene at the settlement stage.  Pls' Opp. 5.  The

8    Ninth Circuit disagrees.  In a recent decision ignored by the Parties, the Ninth Circuit emphasized

9    that "the formal 'stage' of the litigation"—such as settlement—is not "dispositive."  *Kalbers*, 22

10   F.4th at 826.  Instead, the Ninth Circuit "has recognized that an intervenor can seek to intervene

11   for the purposes of objecting to a settlement it deems contrary to its interests."  *Su v. Siemens*

12   *Indus., Inc.*, 2013 WL 3477202, at *3 (N.D. Cal. July 10, 2013).  The Ninth Circuit has held that

13   intervention should be granted to challenge settlements if, as here, "intervenors acted as soon as

14   they had notice that … the government may not be representing their interests" in negotiating "the

15   proposed settlement."  *United States v. Carpenter*, 298 F.3d 1122, 1124 (9th Cir. 2002); *see also*

16   *United States v. City of Los Angeles*, 288 F.3d 391, 400 (9th Cir. 2002) (holding intervenor had

17   "the right to present its views … and have them fully considered … with the district court's

18   decision to approve the consent decree").  In *Smith v. Los Angeles Unified School District*, for

19   example, the Ninth Circuit reversed a district court's order denying a motion to intervene made

20   *seventeen years* after a consent decree because the parties were renegotiating that consent decree,

21   which, the Court explained, was "a change of circumstances" justifying intervention. 830 F.3d

22   843, 854, 864 (9th Cir. 2016).

23       Plaintiffs cite *Orange County. v. Air California*, 799 F.2d 535 (9th Cir. 1986), and

24   *California Department of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d

25   1113, 1120 (9th Cir. 2002), but those cases underscore why intervention is proper here.  In *Orange*

26   *County*, the settlement arose after "extensive and well-publicized negotiations" that should have

27   alerted the proposed intervenors to "the risks of waiting."  799 F.2d at 538.  In *Commercial Realty*,

28

PROPOSED INTERVENOR EVERGLADES COLLEGE, INC.'S REPLY IN SUPPORT OF MOTION TO
INTERVENE

1    a CERCLA case, the proposed intervenors had been "invited … to participate in settlement

2    negotiations" but refused.  309 F.3d at 1117.  Further, prior to settlement, the proposed intervenors

3    were "informed" that the parties believed they "were responsible for recovery costs" and thus

4    "should have realized that the negotiations could result in a consent decree allowing [the parties]

5    to look to [the proposed intervenors] for contribution."  *Id.* at 1120.

6           Here, ECI faces the opposite situation.  Nothing about this case ever suggested a school's

7    alleged "misconduct" would be "determined" by the Department, Doc. 246 at 17, or that the

8    adjudicatory process enshrined in duly promulgated rules would be scrapped.  And the Parties

9    negotiated in secret, never informing any of the hundreds of schools on their Exhibit C list that

10   their interests might be compromised.  *See* Pls' Opp. 9 n.12 ("[t]he parties … discussed settlement

11   confidentially"); Gov. Opp. 12 n.2 ("the parties negotiated their settlement 'in secret'").  No one—

12   not ECI, not this Court, not the public at large—was on notice that the Parties were negotiating an

13   unprecedented settlement that would implicate the interests of hundreds of educational institutions.

14   The Parties could have inked a secret deal that did not do this—that simply granted the relief

15   requested in the complaints—but they chose otherwise.  They should not now be heard to complain

16   that the very entities they name in their Proposed Settlement might want to have their day in court,

17   too.

18          Finally, it is insufficient to say, as Plaintiffs do, that intervention must be denied because

19   it might cause some delay in adoption of the Proposed Settlement.  Pls' Opp. 9.  The Ninth Circuit

20   has squarely and repeatedly rejected that argument because "every motion to intervene will

21   complicate or delay a case to some degree."  *Kalbers*, 22 F.4th at 825 (citing *Smith*, 830 F.3d at

22   857; *League of United Latin Am. Citizens* v. *Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997)).  If

23   Plaintiffs were correct, "*every* intervention motion would be denied out of hand because it carried

24   with it, almost by definition, the prospect of prolonging the litigation." *League*, 131 F.3d at 1304.

25   Moreover, the only way ECI can materially delay resolution is if it is right—i.e., if the Proposed

26   Settlement is unlawful, unfair, and unreasonable—and the Parties have no legitimate interest in

27   having this Court approve an unjust or improper settlement.

28

b.      **ECI's Motion Is Not Premature.**

The Government agrees that Plaintiffs are wrong in contending ECI's motion is too late. Instead, the Government contends the motion is slightly "premature" because class members' time for objecting to the Proposed Settlement occurs after preliminary approval. Gov. Opp. 11–12. The Government confuses Rule 23 and Rule 24.   Rule 23 governs when class members—already parties to this case and represented by class counsel and class representatives—can lodge individual objections.   Thus, the cases on which the Government relies for the proposition that ECI's motion is "premature" involve intervention motions by class members (or putative class members) who were already represented in the case and already held the right to object and to opt out in order to protect their interests. *See Chi v. Univ. of S. California*, 2019 WL 3064457, at *6 (C.D. Cal. Apr. 18, 2019); *Casey v. Citibank, N.A.*, 2014 WL 3468188, at *1 (N.D.N.Y. Mar. 21, 2014); *Lane v. Facebook, Inc.*, 2009 WL 3458198, at *5 (N.D. Cal. Oct. 23, 2009).

Rule 24 asks whether non-parties' interests have been implicated by developments in a case such that party status is warranted.  If Rule 24 is satisfied, that is the end of the inquiry.  Rule 23 has nothing to do with it.  Tellingly, the Government fails to explain how, absent intervention, ECI can protect its interests or ever object to the Proposed Settlement under Rule 23.[3]

2.      **ECI Has Legally Protectable Interests that May Be Impaired by Disposition of this Action.**

Courts must conduct a "practical" inquiry into whether a putative intervenor has a legally protectable interest relating to the subject of an action.   *Citizens*, 647 F.3d at 897.   ECI's intervention is warranted if "some law" protects its interests and "there is a relationship between" those interests and "the claims at issue." *Id.*  Whether "disposition of this action ___**may**___ … impair or impede [ECI's] ability to protect that interest" is also a "practical" inquiry, and "absolute certainty" is not required. *Id.* at 898, 900 (emphasis added); *see also Sagebrush Rebellion, Inc. v. Watt*, 713

---

[3] Incredibly, Plaintiffs cannot figure out whether their own Proposed Settlement—which they claim was the product of "extensive settlement negotiations," Pls' Opp. 18, and is perfect "as it is written," *id.* at 20—permits "any person" to object to the settlement or only "Class Members," *id.* at 21 n.19.  Given the uncertainty, intervention is necessary to ensure ECI's objections will be heard.

1    F.2d 525, 528 (9th Cir. 1983).

2           In its motion, ECI explained, with particularity, how the Proposed Settlement threatens to

3    impair its interests.  As a participant in Federal Student Financial Aid Programs, ECI's schools are

4    subject to the requirements of Program Participation Agreements and to substantial regulation and

5    oversight.  As the Government recognizes, a finding of wrongdoing by the Department (including

6    in the borrower-defense context, but also more generally) can subject the schools to serious

7    programmatic, financial, and reputational consequences. Doc. 288-1 ¶¶ 10, 12; *see also* 20 U.S.C.

8    § 1099c(c), 34 C.F.R. §§ 668.15, 668.171 (detailing factors that affect a school's "Financial

9    Responsibility Composite Score," which in turn can affect terms of participation in federal aid

10   programs).  In short, misconduct allegations and findings are serious business for schools,

11   implicating a range of potential consequences.

12          The Department's duly promulgated borrower-defense regulations protect ECI from these

13   harms through *two* different steps: the lawful adjudication of allegations contained in a borrower-

14   defense application (step one), and any recoupment or other related disciplinary proceeding (step

15   two).  In step one, regardless of when a loan was issued, the Department must provide notice to

16   the school of a borrower-defense application.   34 C.F.R. § 685.206(c)(2); 34 C.F.R.

17   § 685.222(e)(3)(i); 34 C.F.R. § 685.206(e)(10).   For loans issued before July 1, 2020, the

18   Department must "consider[] … [a]ny response or submissions from the school" about the

19   application. 34 C.F.R. § 685.222(e)(3)(i). A designated Department official then adjudicates the

20   applications "through a fact-finding process" and concludes with a written decision.  34 C.F.R.

21   §§ 685.222(e)(3)–(4).  For loans issued after July 1, 2020, the regulations require the Department

22   to "provide a copy" of the application to the school, affirmatively "invite the school to respond

23   and to submit evidence" in its defense, 34 C.F.R. § 685.206(e)(10), and "consider … the school's

24   response." 34 C.F.R. § 685.206(e)(11)–(12).  The Department then must issue a written decision

25   on the application that provides its reasoning.  *Id.*  Notably, even putting aside a school's direct

26   participation rights, the neutral and individualized adjudication is itself an important protection of

27

28

PROPOSED INTERVENOR EVERGLADES COLLEGE, INC.'S REPLY IN SUPPORT OF MOTION TO
INTERVENE

1   a school's interests.[4]

2       The settlement deep-sixes rule-based adjudicatory process for borrower-defense claims

3   and replaces it with a new, three-pronged approach: (1) immediate and automatic debt cancellation

4   for class members who attended Exhibit C schools, (2) delayed but automatic debt cancellation for

5   all other class members, and (3) potential automatic debt cancellation for *every* federal borrower

6   in the country, and at the very least elimination of the more protective post-2020 procedures for

7   every Post-Class Applicant.[5]   To repeat: the Proposed Settlement establishes a new debt-

8   cancellation process for *every* borrower, regardless of whether they attended a for-profit or not-

9   for-profit institution in the country, throwing out the rule-based adjudicatory process, which

10   includes legal protections for schools at every step.

11       ECI's interests are implicated by both Path 1 and Path 3.  Path 1 debt cancellation is based

12   on the Department having "determined … substantial misconduct by the listed schools" in Exhibit

13   C. Doc. 246 at 17-18.  This supposed determination—which offers no particulars about any of the

14   153 schools on the list—eliminates ECI's rights to have notice, to submit evidence, and to have an

15   individualized and fair adjudication of the accusations against it.  Path 3 debt cancellation (for

16   potentially every borrower in the country) will either: (1) proceed under the 2016 Rule, eliminating

---

17       [4] Plaintiffs are wrong that schools receive no process protections for borrower-defense
18   applications related to loans issued before July 1, 2017.  Pls' Opp. 11.  34 C.F.R. § 685.206(c)
     governs "[b]orrower defense to repayment for loans first disbursed prior to July 1, 2017."
19   Subsection 685.206(c)(2) provides that a "borrower defense claim under this section must be
     asserted, and will be resolved, under the procedures in § 685.222(e) to (k)."  Subsection
20   685.222(e)(3)(i), in turn, states that, "[a]s part of the fact-finding process, the Department official
     notifies the school of the borrower defense application and considers … [a]ny response or
21   submissions from the school." In all events, it is undisputed that the Class members and the "Post-
22   Class Applicants" include borrowers whose loans were issued after July 1, 2017.
         [5] Thus, for example, students of Columbia University or Villanova University could apply
23   and claim that they were defrauded by the schools' allegedly false reporting of data to U.S. News
     & World Report. *See* Scott Jaschik, *The Unranking of 10 Colleges*, INSIDE HIGHER ED (July 18,
24   2022), https://www.insidehighered.com/admissions/article/2022/07/18/us-news-unranks-colleges.
         Moreover, because the Proposed Settlement provides an avenue for debt cancellation
25   without ever having to prove a single allegation, borrowers may apply without having *any* credible
26   claims against their school.  Every student of, say, Harvard University—the very school that, until
     days ago, employed Class counsel—could apply.  It remains for clarification at the fairness hearing
27   how Class counsel could negotiate a settlement that simultaneously implicated and compromised
     the interests of its employer and clients.
28

the additional legal protections provided schools under the 2019 Rule (i.e., be more "favorable to the borrower," as Plaintiffs' counsel explains it, Ex. A), or (2) be *automatic* after three years, eliminating *all* protections provided to schools through the adjudication process.[6]

Contrary to the Government's suggestion, ECI is not concerned with "'deprivation of a procedural right without some concrete interest that is affected by the deprivation.'"  Gov. Opp. 15 (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009)).  Instead, the procedural rights at Step 1 are part of the overall set of procedures that ECI can access to safeguard its concrete reputational, financial, and programmatic interests.  The Parties' further arguments as to why these substantial interests either do not qualify or will not be impaired are meritless.[7]

> **a.    The Parties Are Wrong that Elimination of Step 1 Protections Does Not Matter Because Step 2 Protections Remain.**

Both Plaintiffs and the Government argue that ECI's interests are fully protected because

---

[6] The Government disingenuously describes Path 3 as "certain limited relief."  Gov. Opp. 9.  And Plaintiffs profess to be shocked—shocked!—about concerns that Path 3 reaches every borrower in the country.  Pls' Opp. 25 n.22.  Yet on their publicity website for this case, Plaintiffs' counsel provides a "Guide to the Proposed Sweet Settlement," which instructs as follows: "Have you applied for borrower defense?  → No  → Apply today."  **Exhibit A**.  *See also* Project on Predatory Student Lending (@EdDebtJustice), Twitter, https://twitter.com/EdDebtJustice/status/1551582544277020672?s=20&t=L1JiHDx-sfm9gJ-NVONz5Q (July 25, 2022) ("It's not too late to submit your #borrowerdefense.").  The publicity seems to be working, because, since the Proposed Settlement was announced, at least **60,000** new borrower-defense applications have been lodged.  Cory Turner, *200,000 student borrowers who say they were ripped off may get their loans erased*, NPR (July 21, 2022), https://www.npr.org/2022/07/21/1112554478/student-loan-forgiveness-borrower-defense.

[7] As an initial matter, it is notable that the Parties, in their Oppositions, cannot bring themselves to fully explain to the Court just how broadly the Proposed Settlement sweeps.  They cannot do so because to describe the Proposed Settlement accurately is to explain why intervention is necessary.  Tellingly, the Parties were not so reticent in their press releases about the Proposed Settlement.  *See, e.g.*, Statement from U.S. Secretary of Education Miguel Cardona (June 22, 2022) ("We are pleased to have worked with plaintiffs to reach an agreement that will deliver billions of dollars of automatic relief…."), https://www.ed.gov/news/press-releases/statement-us-secretary-education-miguel-cardona-sweet-settlement; Project on Predatory Student Lending, Press Release (June 23, 2022) ("the Department will immediately approve the borrower defense applications of approximately 200,000 individuals, canceling student loans that …, totaled approximately $6 billion"; "People who apply for borrower defense after the execution date of the settlement … will receive full settlement relief if the Department fails to issue a decision" within three years), https://predatorystudentlending.org/news/press-releases/landmark-borrower-defense-settlement-to-cancel-over-6-billion-in-student-loans-for-200000-borrowers-release/.

step 2 proceedings "afford institutions significant procedural safeguards." Pls' Opp. 14; *see also* Gov. Opp. 15-16. First, this contention ignores that step 1 proceedings are part of the overall set of safeguards that protect ECI's interests in avoiding programmatic, financial, and reputational harm. The Parties' argument is a bit like saying that dispensing with a merits trial is harmless because a damages or sentencing hearing also has procedural safeguards. Contrary to its current position, as recently as 2019, the Department concluded that step one proceedings provide important protections for schools' concrete interests, stating that "afford[ing] institutions the opportunity to respond to allegations against the institution during the adjudication process for the borrower's claim" would "reduce the likelihood that … schools will be burdened by unjustified claims." 84 Fed. Reg. 49,788, 49,825 (Sept. 23, 2019).

Second, this argument completely ignores that the Department's making a blanket "determin[ation]" of "substantial misconduct," without any adjudication, causes significant reputational injury, regardless of subsequent programmatic or financial actions the Department might initiate. Indeed, if—as Plaintiffs claim—such proceedings never materialize, Pls' Opp. 14, then the Department's lawless and damaging determination will stand forever, like a scarlet letter.

> **b.     The Parties Are Wrong that There is No Reputational Injury from the U.S. Department of Education Announcing a Blanket Finding of "Substantial Misconduct."**

The Parties posit that it is merely speculative that ECI will suffer reputational harm from the Department's having determined ECI has engaged in "substantial misconduct" that justifies blanket debt cancellation. Gov. Opp. 17-19; Pls' Opp. 15-16.[8] To put it mildly, it is ridiculous for the Parties to contend that ECI suffers no reputational harm when its federal regulator says—in a publicly filed document that it trumpeted to the world through press releases—that it "determined" the school has engaged in "substantial misconduct" with respect to its students. Indeed, that the Parties flippantly suggest ECI can simply provide counter messaging "to any current or prospective

---

[8] The Government's citations for the "evidence" required for reputational harm bears no relationship to the context of this intervention. *See Talavera v. Glob. Payments, Inc.*, 2021 WL 5331000, at *4 (S.D. Cal. Nov. 16, 2021) (addressing requirement for a preliminary injunction based on reputational harm).

students" is a recognition that the determination has harmful reputation effects.  Gov. Opp. 18; *see also* Pls' Opp. 22 ("As to alleged reputational harm, Movants have both the resources and the wherewithal to publicize their opposition to the proposed settlement….").  Moreover, Plaintiffs' counsel can hardly feign ignorance about reputational harm while simultaneously issuing statements that every class member who will receive debt cancellation was "cheated by their schools."  Cory Turner, *200,000 student borrowers who say they were ripped off may get their loans erased*, NPR (July 21, 2022), https://www.npr.org/2022/07/21/1112554478/student-loan-forgiveness-borrower-defense (quoting Eileen O'Connor).  Tellingly, the Parties dedicate entire sections of their Oppositions to attacking the reputations of schools based on negative news coverage of past *settlements*, Pls' Opp. 6–9, Gov. Opp. 18 n.4, while arguing that *this* settlement will somehow *not* cause reputational harm, Pls' Opp. 15.

On this front, the Court should put a simple question to the Parties at the hearing:  If inclusion on the Exhibit C list is virtually meaningless, why did the Parties include Exhibit C at all?  The answer is obvious: inclusion on the Exhibit C list is a very big deal and the Departments of Education and Justice did not believe they could stand before this Court in good faith and justify the Proposed Settlement without it.  If the lawyers for the United States feel that strongly about it, imagine the effect on students, prospective students, and faculty at ECI schools.  *See* Doc. 261-3 ¶ 12 ("third parties are treating it like a finding of wrongdoing by the schools").

### c.   The Department's Belated Promises Do Not Eliminate Risk of Impairment of ECI's Interests.

In its Opposition, the Government now goes to great lengths to assure Exhibit C schools that its "determin[ation]" of "substantial misconduct by the listed schools," Doc. 246 at 17-18, is a ticket good for this ride only, and that the determination cannot and will not be used for any other purpose.  *See* Gov. Opp. 16; Doc. 288-1.  To be sure, the Government's statements in its Opposition and attached declaration will now estop it from using this "determination" for the purposes detailed therein.  But that does not eliminate the need for ECI to intervene to fully protect its interests.

First, regardless of how the Department uses the determination in the future, the reputational effect is immediate and lasting.  After all, the Department maintains that this determination was *the* necessary predicate for automatic, blanket debt cancellation on the order of $6 billion.

Second, the very fact that it took the filing of intervention motions to spur the Department to offer these critical clarifications and concessions underscores why ECI's participation in the case is necessary to protect its interests.  A deputy under secretary's declaration is nice, but ECI seeks to ensure that any final settlement has clear provisions protecting the school's rights and interests.  After all, if the limits of the Department's determination were so clear at the outset, why did the Parties not include those disclaimers in the Proposed Settlement?  They certainly included disclaimers about, and protections for, their own rights and interests.  *See, e.g.*, Doc. 246-1 § VI (attorneys' fees for Plaintiffs' counsel), § VII (waiver and release for Defendants), § VIII (no admission of liability for Defendants), § XIII (right to void settlement).  Somehow, the Parties forgot about similar protections for the 153 schools on their enemies list.  ECI seeks to ensure they do not forget again should the settlement go final.

Second, ECI should be excused for viewing with a jaundiced eye the promises of a newly minted deputy under secretary (we are not told of what), given that, from day to day, the Government cannot even decide whether this case is (1) moot, or (2) a proper vehicle for what would be one of the most sweeping settlements ever approved by a federal court.  Nor can the Government maintain a consistent position on whether (1) it is prohibited from granting blanket debt cancellation (as the Department's general counsel concluded just two years ago), or (2) it has authority to cancel all student debt through the Secretary's or Attorney General's settlement authority.[9]

---

[9] The Government, Gov. Opp. 13-15, waves around the Secretary's and Attorney General's settlement authority as if these executive officers constitute "a sort of junior-varsity Congress," *Mistretta v. United States*, 488 U.S. 361, 427 (1989) (Scalia, J., dissenting), able to vaporize statutes and regulations and usher in a new borrower-defense regime through a litigation settlement.  Suffice it to say, this view of the unchecked and all-powerful Executive Branch is not correct.  But there

1        *Third*, while the Department downplays the significance of its determination and

2   characterizes the Proposed Settlement as providing sui generis relief, Plaintiffs offer different

3   characterizations.  A comparison:

| Government's Characterization | Plaintiffs' Characterization |
|---|---|
| "[T]he procedures specified in the settlement are distinct from what class members would 'receive if their claims were adjudicated outside of [the] settlement…. The settlement agreement does not provide for Defendants to exercise their authority under the Department's borrower defense regulations"  Gov. Opp. 14-15. | "The Department … has simply agreed to a process and timeline to resolve the Class's claims within the existing BD framework."  Pls' Opp. 24. |
| "[N]or does it mandate or even suggest that the relief class members will receive is in the form of borrower defense decisions issued through the regulatory process that would be applicable outside of this settlement."  Gov. Opp. 15. | The Proposed Settlement constitutes "approval of many Class Members' applications."  Pls' Opp. 9. |
| "The fact that a school is included on the attachment to the settlement agreement is not a formal finding of misconduct."  Gov. Opp. 16. | "[P]resence on Exhibit C is … proof of the Department weighing available evidence and finding that ECI's conduct supports BD relief."  Pls' Opp. 9 n.12. |

20   If the Parties cannot even agree as to the meaning and implications of the determination

21   undergirding the settlement, what are the Exhibit C schools supposed to do?  Sit idly by while their

22   futures are negotiated away by legislation disguised as a settlement?

        **d.**     **The Parties are Wrong to Suggest that ECI Lacks (or Needs) Article III Standing to Intervene to Defend Against the Requested Relief.**

27   will be time enough to argue legality once ECI intervenes.  The point is not relevant to whether ECI has an interest implicated by the exercise of this claimed power.

PROPOSED INTERVENOR EVERGLADES COLLEGE, INC.'S REPLY IN SUPPORT OF MOTION TO INTERVENE

The Parties grumble about Article III standing.  *See* Pls' Opp. 20; Gov. Opp. 10, 15.  The Supreme Court has held that a *plaintiff*-intervenor must establish Article III standing if seeking "additional relief beyond that which the plaintiff[s] request[]."  *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017).  But ECI would be a defendant-intervenor—i.e., it would enter the case to defend against the form of relief Plaintiffs' claims have now seemingly produced (even though Plaintiffs themselves do not have standing for all of the relief now requested).  *See Vivid Entertainment, LLC v. Fielding*, 2013 WL 3989558 (C.D. Cal. Aug. 2, 2013) ("intervenors are not required to demonstrate Article III standing independent of the defendants"); *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (party seeking to intervene as defendant "need not establish Article III standing").

Regardless, "monetary" and "reputational harms" like those inflicted on ECI by the Proposed Settlement "readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). The same "interest[s]" that are "sufficient to allow" intervention here thus also "satisfy any requirements of Article III standing." *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008). *See also No Casino In Plymouth v. Nat'l Indian Gaming Commission*, 2022 WL 1489498, at *10 n. 12 (E.D. Cal. May 11, 2022) ("in the Ninth Circuit the requirement of Article III standing is incorporated into the four-part intervention test as part of the requirement that the applicant for intervention must 'assert an interest relating to the property or transaction which is the subject of the action'").  To repeat the well-settled test established by the en banc Ninth Circuit, "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'"  *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc).  ECI readily meets that test here.[10]

---

[10] Moreover, contrary to Plaintiffs' passing suggestion to the contrary, Pls' Opp. 12, "[n]on-property interests are sufficient to support intervention." *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015).  Indeed, the Ninth Circuit has allowed intervention to protect interests as ephemeral as "the preservation of birds," *Sagebrush*, 713 F.2d at 528 (9th Cir. 1983), "preserving wilderness character," *Citizens*, 647 F.3d at 898, and protecting causes or measures championed and supported by the proposed intervenors, *see Washington State Building & Construction Trades v. Spellman*, 684

**B.     ECI Satisfies the Requirements for Permissive Intervention.**

None of the Parties' arguments against permissive intervention have merit.

<u>First</u>, the Parties repeat their claim that intervention would cause delay, but as explained above, the Ninth Circuit rejects that argument, and it is especially hollow here where delay would occur only if ECI's objections to the settlement have merit and undermine any legitimate interest in proceeding to final approval.

<u>Second,</u> Plaintiffs argue that ECI's "claim or defense" does not share a "common question of law and fact" with "the main action" because the "legal issues in this case" do not "resemble" ECI's objections to the Proposed Settlement.  Pls' Opp. 17.  But that argument only highlights why ECI must be granted intervention: the Parties have abandoned the legal issues in the case and proposed a settlement that impairs the substantial interests of nonparties.  In any event, "[t]he words 'claim or defense'" in Rule 24(b) "are not 'read in a technical sense, but only require some interest on the part of the applicant.'" *United States v. N.Y. City Housing Authority*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018) (granting permissive intervention "for the limited purpose of opposing" consent decree).  ECI has a sufficient interest here and will "help the Court make an informed decision." *Arena v. Intuit*, 2020 WL 7342716, at *1 (N.D. Cal. Dec. 14, 2020) (granting permissive intervention to challenge settlement).

<u>Third</u>, in a last-ditch effort, Plaintiffs ask this Court to relegate ECI "to fil[ing] amicus briefs." Pls' Opp. 21.  But "amicus status is insufficient to protect [an intervenor's] rights because such status does not allow [the intervenor] to raise issues or arguments formally and gives it no right of appeal. *City of Los Angeles*, 288 F.3d at 400.

**III.     CONCLUSION**

For the foregoing reasons, ECI respectfully asks this Court to grant its motion to intervene.

F.2d 627, 629–30 (9th Cir.1982); *Idaho v. Freeman,* 625 F.2d 886 (9th Cir.1980).  ECI's interests are far more tangible than the interests in these cases—and, indeed, the potential financial harms qualify as property in all events.

1    Dated: July 29, 2022                          Respectfully submitted,

2

3                                                  /s/ *Jesse Panuccio*
                                                   Jesse Panuccio (*pro hace vice*)
4                                                  jpanuccio@bsfllp.com
                                                   Jason Hilborn (*pro hac vice*)
5                                                  jhilborn@bsfllp.com
                                                   **BOIES SCHILLER FLEXNER LLP**
6                                                  401 E. Las Olas Blvd., Ste. 1200
                                                   Fort Lauderdale, FL  33301
7                                                  T: (954) 356-0011

8
                                                   John J. Kucera
9                                                  jkucera@bsfllp.com
                                                   **BOIES SCHILLER FLEXNER LLP**
10                                                 725 S. Figueroa St., 31st Fl.
                                                   Los Angeles, CA 90017
11                                                 T: (213) 692-9040

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED INTERVENOR EVERGLADES COLLEGE, INC.'S REPLY IN SUPPORT OF MOTION TO
INTERVENE

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that on July 29, 2022, I caused to be electronically filed the foregoing

3 PROPOSED INTERVENOR EVERGLADES COLLEGE, INC.'S REPLY IN SUPPORT OF

4 MOTION TO INTERVENE with the Clerk of the Court via CM/ECF.  Notice of this filing will

5 be sent by email to all parties by operation of the Court's electronic filing systems.

6

7 Dated:  July 29, 2022

8

9                                                     By: */s/ Jesse Panuccio*
                                                          Jesse Panuccio (*pro hac vice*)
10                                                        *Attorney for Proposed Intervenor*
                                                          *Everglades College, Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28