BRIAN D. NETTER
Deputy Assistant Attorney General
STEPHANIE HINDS
United States Attorney
MARCIA BERMAN
Assistant Branch Director
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS (*pro hac vice*)
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
PROJECT ON PREDATORY
STUDENT LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
Tel.: (617) 390-2669

JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, California 94611
Tel.: (510) 271-8443
Fax: (510) 868-4521

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated, | Case No. 19-cv-03674-WHA **NOTICE OF MOTION AND JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT** **HEARING DATE: November 3, 2022** (Class Action) (Administrative Procedure Act Case) |
| *Plaintiffs*, | |
| v. | |
| MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and | |
| THE UNITED STATES DEPARTMENT OF EDUCATION, | |
| *Defendants*. | |

## <u>TABLE OF CONTENTS</u>

**NOTICE OF MOTION** ...................................................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................. 1

I.    **INTRODUCTION** ................................................................................................ 1

II.    **BACKGROUND AND PROCEDURAL HISTORY** .................................. 3

III.    **THE SETTLEMENT AGREEMENT MERITS FINAL APPROVAL** ................... 6

    A.    **Named Plaintiffs and Their Counsel Adequately Represented the Class** ............ 7

    B.    **The Parties Negotiated at Arm's Length** ................................................. 8

    C.    **The Quality of the Relief to the Class Weighs in Favor of Approval** .................... 8

    D.    **Continued Litigation Would Entail Additional Delay, Risk, and Cost** ............... 10

    E.    **The Agreement Treats All Class Members Fairly** ................................... 11

    F.    **The *Hanlon* Factors Also Weigh in Favor of Approval** ......................... 12

    G.    **Objections by Intervenors Will Not Justify Denying Approval** ......................... 21

**CONCLUSION** ............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*BB&T Co. v. Pahrump 194, LLC*, No. 2:12-cv-1462, 2015 WL 1877422 (D. Nev.
    Apr. 23, 2015) ............................................................................................. 8

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) ......................... 6

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) ....................................... 8

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................. 10

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .............................. 14

*Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881 (N.D.
    Cal. 2020) .......................................................................................... 8

*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014) ............................ 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................. 7, 12

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..................... 8

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................... 10, 14

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597 (9th
    Cir. 2018) ........................................................................................ 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, MDL No. 2672,
    2017 WL 2212783 (N.D. Cal. May 17, 2017) ............................................... 16

*Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816 (9th Cir. 2021) ........................... 24

*Lane v. Brown*, 166 F. Supp. 3d 1180 (D. Or. 2016) ..................................... 15

*Lane v. Facebook*, 696 F.3d 811 (9th Cir. 2012) ...................................... 6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............. 14

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th
    Cir. 1982) ...................................................................................... 16, 21

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021
    (N.D. Cal 1999) ................................................................................ 14

*Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476 (D.C. Cir. 1995) ........................... 22

*Sugarman v. Ducati N. Am., Inc.*, No. 5:10-cv-05246, 2012 WL 113361 (N.D. Cal. Jan. 12, 2012) .................................................................................................................... 15

*United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008) ...................................... 22

*United States v. Hercules, Inc.*, 961 F.2d 796 (8th Cir. 1992) .............................. 21, 22

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) ............................................ 21

*Weingarten v. Cardona*, 19-cv-02056DLF (D.D.C.) .................................................. 23

*Weingarten v. DeVos*, 468 F. Supp. 3d 322 (D.D.C. 2020) ...................................... 22

*Wilder v. Bernstein*, 645 F. Supp. 1292 (S.D.N.Y. 1986) ....................................... 24

**Statutes**

20 U.S.C. § 1082 ...................................................................................................... 22

20 U.S.C. § 3441 ...................................................................................................... 22

20 U.S.C. § 3471 ...................................................................................................... 22

28 U.S.C. §§ 516-519 ............................................................................................... 21

**Other Authorities**

Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment) ................ 11

*Information for Sweet v. Cardona Class Members*, Project on Predatory Student Lending, https://www.ppsl.org/sweet-v-cardona-class-members ........................................... 7

Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 87 Fed. Reg. 41,878 (July 13, 2022) ................................................................................................ 12

*Sweet v. Cardona Case Page*, Project on Predatory Student Lending, https://www.ppsl.org/cases/sweet-v-cardona ........................................................... 7

U.S. Dep't of Educ., Office of the General Counsel, Memorandum re: *Student Loan Principal Balance Cancellation Compromise, Discharge, and Forgiveness Authority* (Jan. 12, 2021) .. 24

U.S. Dep't of Educ., Office of the General Counsel, Memorandum re: *The Secretary's Legal Authority for Debt Cancellation* (Aug. 23, 2022) .................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................... 6, 8, 10, 11

Fed. R. Civ. P. 23(g) ................................................................................... 18

**Treatises**

Manual of Complex Litigation § 21.16 (4th ed.) ........................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on November 3, 2022, at 11:00 a.m., in the courtroom of the Honorable William Alsup, Courtroom 12, 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Parties will and hereby do respectfully move the Court for an order of final approval of the proposed class action settlement that received preliminary approval from the Court on August 4, 2022. This Motion is supported by the accompanying memorandum of points and authorities, the attached declarations and exhibits, the pleadings and other papers filed in this case, oral argument, and any other matters in the record or of which this Court takes notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On August 4, 2022, this Court preliminarily approved a class-wide settlement of this action pursuant to Federal Rule of Civil Procedure 23. *See* ECF No. 307. The Settlement Agreement, which the Plaintiffs and the Department of Education ("Department," and together, the "Parties") signed on June 22, 2022 (ECF No. 246-1, the "Agreement"), will provide relief to approximately 264,000 Class Members, and will deliver this relief without the delay or risk of continued litigation.

The Agreement provides for automatic relief—federal loan discharges, refunds of amounts paid to the Department, and credit repair ("Full Settlement Relief")—for approximately 75% of the Class: individuals whose borrower defense ("BD") applications relate to one (or more) of a specified list of schools for which the Department has determined there exists a sufficient threshold indication of wrongdoing to justify summary settlement relief. The remainder of the Class will have their BD applications evaluated under a streamlined review process that will deliver timely and lawful written decisions. If the Department fails to provide a written decision within the specified time period, the Class Member will automatically receive Full Settlement Relief. The Agreement further provides for the rescission of all form denial notices issued by the Department on BD applications between December 2019 and October 2020 (the "Form Denial Notices").

1    Individuals who received a Form Denial Notice are included in the Class and will be treated as if
2    their applications had been continuously pending since submission.

3           Finally, the Agreement closes the Class for purposes of settlement as of the date the
4    Agreement was executed. "Post-Class Applicants"—individuals who have applied or will apply
5    for borrower defense between June 23, 2022, and the date of final approval of the Agreement (if
6    granted)—are, however, guaranteed a decision on their BD applications within 36 months of the
7    Effective Date of the Agreement. If the Department fails to provide a decision in that time, they
8    too will receive Full Settlement Relief.

9           The Court should grant final approval of the Agreement because it is fair and reasonable,
10   and it is in the best interests of the Class, as the Court recognized at the preliminary approval
11   hearing. *See* Transcript of Aug. 4, 2022 Hearing ("Aug. 4 Tr.") at 40.[1] The relief provided in the
12   Agreement is consistent with what Class Members might reasonably expect to receive through
13   litigation, while eliminating the delay and uncertainty of further proceedings. The Parties reached
14   this Agreement following extensive adversarial proceedings: in the course of this litigation, the
15   Parties have engaged in, among other things, extensive discovery, two rounds of summary
16   judgment briefing, and motion practice on a previous settlement that failed to gain final approval.
17   The Parties negotiated the current Agreement over the course of more than a year. The Agreement
18   will resolve the claims of the Class and provides that Plaintiffs may move for attorneys' fees under
19   the Equal Access to Justice Act, 28 U.S.C. § 2412(d), after final approval of the Agreement. In
20   short, the Agreement meets all the criteria of Federal Rule of Civil Procedure 23(e).

21          As of the September 15, 2022 deadline for comments on the Agreement, the Court received
22   submissions from 1,583 borrowers.[2] The majority of submissions either supported or raised

---

[1] A copy of this transcript is appended hereto as Exhibit A.

[2] On September 22, 2022, the Court transmitted 25 additional comments to the Parties. Most of these were submitted after the deadline. These comments do not meaningfully change the calculations or analysis in this motion; to the extent any later-arriving comments require specific responses, the Parties will do so in reply.

questions about, but did not object to, the Agreement. The objections—approximately 167—raised by Class Members and Post-Class Applicants do not change the conclusion that the Agreement should be approved. Indeed, the objections generally reflect a consistent theme: the relief provided to Class Members under the Agreement should be extended to even more people. Because there are good reasons for each challenged aspect of the Agreement, the objections do not undermine the fairness of the Agreement as a whole.

Finally, the Parties address certain anticipated objections from the four schools that have intervened in this case. *See* ECF No. 322 (granting permissive intervention). The arguments that the intervenors have raised thus far do not relate to any factor relevant to the Court's consideration of this motion and do not present any barrier to final approval.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed their class action complaint ("Complaint") on June 25, 2019. *See* Compl. ¶¶ 5, 135, 181-82, ECF No. 1. The Complaint sought declaratory and injunctive relief and alleged, *inter alia*, that the Department's failure to issue any BD decisions for over a year constituted agency action unlawfully withheld or unreasonably delayed. *Id.* ¶¶ 377-89. On October 30, 2019, the Court certified a class of "[a]ll people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*." Order, ECF No. 46 at 14.

On April 7, 2020, after the Parties had briefed and argued motions for summary judgment (and after the Department asserted that it had resumed issuing final BD decisions as of December 10, 2019, *see* ECF No. 71), the Parties executed a settlement agreement. They filed that agreement on April 10, 2020, and the Court granted preliminary approval on May 22, 2020. ECF Nos. 97, 103. Soon afterward, however, Plaintiffs' counsel became aware that increasing numbers of Class Members were receiving Form Denial Notices. The Parties disputed whether these Form Denial Notices were legally adequate and whether they violated the settlement agreement. The Court denied final approval of the settlement on October 19, 2020, finding there was "no meeting of the

minds." ECF No. 146 at 10. The Court ordered the Parties to conduct expedited discovery, and ordered Defendants to show cause why the Department should not be enjoined from issuing any further denials of Class Members' BD applications until a ruling could be had on the legality of the Form Denial Notices. *Id.* at 17. In response, Defendants agreed to cease issuing any denials until such a ruling. *See* Defs.' Response to Order to Show Cause, ECF No. 150 at 2-3.

The Parties conducted discovery between November 2020 and spring 2021. Based in significant part on materials adduced in discovery, Plaintiffs filed a Supplemental Complaint that significantly expanded the scope of the case, alleging that Defendants had adopted an unlawful "presumption of denial" policy for BD applications, in violation of Section 706(2) of the APA, and had issued thousands of unlawful Form Denial Notices pursuant to this policy, in violation of Section 555(e) of the APA. Supplemental Complaint ¶¶ 436-447, ECF No. 198. Plaintiffs further alleged that both the policy and the Form Denial Notices violated the Due Process Clause of the U.S. Constitution. *Id.* ¶¶ 448-455. In their consolidated prayer for relief, Plaintiffs requested, *inter alia*, that the Court (i) vacate the Department's alleged policy of refusing to adjudicate BD applications and its alleged "presumption of denial" policy; (ii) declare that the Form Denial Notices were invalid and vacate all such denials; (iii) compel the Department to lawfully adjudicate all pending BD applications, including by providing an adequate statement of grounds for any denials; and (iv) require the Department to hold all Class Members in forbearance or stopped collection status until their applications were granted or denied on the merits. *Id.* at 76-77. The Department filed an Answer to the Supplemental Complaint on June 23, 2021, in which it denied that the Plaintiffs were entitled to any of the foregoing (or any other) relief. *See* ECF No. 206.

New leadership took over the Department of Education beginning in January 2021, and the Parties began new settlement negotiations in May 2021. Those negotiations proceeded over a number of months. This litigation was stayed during much of that time while Defendants pursued a writ of mandamus before the Ninth Circuit Court of Appeals, challenging this Court's order allowing Plaintiffs to take a three-hour deposition of former Secretary of Education Elisabeth

DeVos. *See generally In re DeVos*, No. 3:21-mc-80075-WHA (N.D. Cal.); *In re U.S. Dep't of Educ.*, No. 21-71108 (9th Cir.).

The Ninth Circuit issued an order granting the writ of mandamus on February 4, 2022. *See In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022). This Court subsequently set a schedule for renewed summary judgment briefing. *See* ECF Nos. 216, 219, 240. Plaintiffs filed their motion for summary judgment on June 9, 2022, ECF No. 245, and Defendants filed their opposition and cross-motion on June 23, 2022, ECF No. 249.

Meanwhile, the Parties signed the Agreement on June 22, 2022, and filed their motion for preliminary approval the same day. *See* ECF No. 246, 246-1. The Court vacated the remainder of the summary judgment briefing schedule and set a preliminary approval hearing for July 28, 2022. ECF No. 250.

Three weeks after the Parties moved for preliminary approval, four educational institutions moved to intervene in the litigation. *See* ECF No. 254 (motion of American National University ("ANU") and Lincoln Educational Services Corporation ("Lincoln")); ECF No. 261 (motion of Everglades College, Inc. ("ECI")); ECF No. 265 (motion of Chicago School of Professional Psychology ("CSPP")). Each argued, in effect, that it had an interest in the case because it was named in Exhibit C to the Agreement as a school whose former students would receive automatic settlement relief, and this fact could potentially give rise to various legal, economic, and/or reputational harms. On July 15, 2022, the Court set a briefing schedule on the motions to intervene and scheduled a consolidated hearing on those motions and the motion for preliminary approval. ECF No. 269.

At the August 4, 2022 consolidated hearing, after arguments from the Parties and the putative intervenors, the Court granted preliminary approval from the bench. Aug. 4 Tr. at 40, 48. The Court did not rule on the motions to intervene, but noted that it was "tentatively" inclined to grant permissive intervention. *Id.* at 47:9-11. The Court further explained that it might allow the intervenors to "oppose the settlement," *id.* at 49:12, but the Court was "not saying that any . . . intervenors have a property interest that's at stake," *id.* at 52:3-4, and the Court would not entertain

any "demands for discovery" in connection with opposing final approval, *id.* at 49:8-13. Rather, the Court was "inclined to let [intervenors] in . . . to keep the system honest" by "help[ing] [the Court] see the opposing arguments." *Id.* at 52:5-8.

The Court issued a preliminary approval order following the hearing and set the following deadlines: the Department would provide notice to the Class by August 19, 2022; any further motions to intervene would be filed by August 25, 2022; all comments from Class Members would be submitted to the Court by September 15, 2022; the Parties would move for final approval by September 22, 2022; and a final approval hearing would be held on November 3, 2022. *See* ECF Nos. 307, 308, 315.

No further motions to intervene were filed by the deadline. On August 31, 2022, the Court denied the motions of ANU, Lincoln, ECI, and CSPP to intervene as of right, but allowed them permissive intervention "for the sole and express purpose of objecting to and opposing the class action settlement." ECF No. 322. Intervenors must oppose the motion for final approval by October 6, 2022, and any replies are due by October 13, 2022.  ECF No. 315.

## III.    THE SETTLEMENT AGREEMENT MERITS FINAL APPROVAL

 "A district court may approve a class-action settlement only after finding that the settlement is 'fair, reasonable, and adequate.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120–21 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)). The district court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook*, 696 F.3d 811, 818–19 (9th Cir. 2012). Rule 23(e) requires that the Court consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(B)(2). The Ninth Circuit has identified additional relevant factors to consider in determining fairness, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and

views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

Final approval of a class action settlement is ultimately within the Court's discretion: "Whether or not there are objectors or opponents to the proposed settlement, the court must make an independent analysis of the settlement terms." Manual of Complex Litigation at 310, § 21.16 (4th ed.); *see also Hanlon*, 150 F.3d at 1026 ("We have repeatedly stated that the decision to approve or reject a settlement is committed to the sound discretion of the trial judge."); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 617 (9th Cir. 2018) (affirming district court's decision overruling class member objections and granting final settlement approval).

When this Court preliminarily approved the Agreement, it analyzed the factors under Rule 23(e)(2) and concluded that the settlement was fair, reasonable, and adequate. *See* ECF No. 307; *see also* Aug. 4 Tr. at 8:16–11:3 (discussion of Rule 23 factors); *id.* at 48:3–6 ("The proposed settlement on a preliminary basis is fair, reasonable, and adequate, in my view for the class members."). All of those factors continue to weigh in favor of approval.

### A. Named Plaintiffs and Their Counsel Adequately Represented the Class

As the Parties showed in their motion for preliminary approval, *see* ECF No. 246 at 13-14, the named Plaintiffs and Class Counsel have zealously prosecuted this case and adequately represented the Class. The named Plaintiffs were involved in the litigation and the settlement process, and all are in favor of the Agreement. Class Counsel have vigorously litigated this case through extensive motion practice and discovery over the course of more than three years. Additionally, Class Counsel has continuously updated its website to respond to the most common questions raised by Class Members and keep them informed about the latest developments in the case. *See Information for Sweet v. Cardona Class Members*, Project on Predatory Student Lending, https://www.ppsl.org/sweet-v-cardona-class-members; *Sweet v. Cardona Case Page*, Project on Predatory Student Lending, https://www.ppsl.org/cases/sweet-v-cardona. Class Counsel have

fielded hundreds of inquiries about the Agreement since June 22, 2022, and have taken steps to ensure that all eligible Class Members will receive the relief to which they are entitled. In particular, Class Counsel have responded directly to each individual who communicated to the Court regarding the settlement, in order to address their factual questions.

### B.  The Parties Negotiated at Arm's Length

As explained in the motion for preliminary approval, *see* ECF No. 246 at 14-15, the Parties conducted extensive settlement negotiations, with counsel for each party zealously representing their clients' interests. Where "an agreement is the product of serious, informed, non-collusive negotiations conducted by experienced counsel . . . those facts will weigh in favor of approval." *Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) (internal quotations omitted).

Moreover, Class Counsel's fees in this case will be governed by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and will be determined after the Court's decision on final approval, *see* Agreement § VI.A-B. Thus, there is no risk of the most common form of collusion in class action cases, whereby plaintiffs' counsel may "collude with defendants . . . in return for a higher attorney's fee" or use the settlement to "pursu[e] their own self-interests." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Nor is there anything collusive about the confidential nature of the parties' settlement negotiations, which is standard practice when negotiating litigation settlements. *See, e.g.*, *BB&T Co. v. Pahrump 194, LLC*, No. 2:12-cv-1462, 2015 WL 1877422, at *2 (D. Nev. Apr. 23, 2015) ("Federal courts have long held that settlement negotiations should be kept secret.").

### C.  The Quality of the Relief to the Class Weighs in Favor of Approval

Courts must assess whether "the relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(C), by comparing plaintiffs' likelihood of succeeding and obtaining relief from the court against the relief provided by the proposed settlement, *see Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88, n.14 (1981). The relief in this Agreement is clearly adequate, as the Court has already noted.  *See* Aug. 4 Tr. at 40.

First, the Agreement provides immediate relief to Class Members who borrowed to attend any of an extensive list of schools for which there is sufficient indicia of misconduct to justify summary settlement relief. *See* Agreement § IV.A.1 & Ex. C. This group comprises approximately 75% of the Class, or approximately 200,000 individuals. These Class Members' relevant loans will be discharged, they will receive a refund of all amounts previously paid to the Department toward those loans, and the credit tradeline associated with those loans will be deleted. Affording Full Settlement Relief on an automatic basis to this group of Class Members will afford the Department the time and resources it needs to expeditiously consider and issue decisions on the applications of the Class Members in the "decision group," as discussed *infra*.

Although, as the Court noted during the August 4 hearing, "this lawsuit originally[] was to get an injunction to require the agency to adjudicate many thousands of . . . applications that had gone unadjudicated," Aug. 4 Tr. at 40:3-6, more than three years has passed since that initial Complaint. The case now involves challenges to the Department's process of reviewing and adjudicating applications and the substance and content of its decision letters denying such applications. In their recent Motion for Summary Judgment, Plaintiffs argued that the Department lacks the ability to render valid decisions on the merits of Class Members' BD applications within any reasonable time, *see* ECF No. 245 at 8-9, and that the Court should "issue an order for Defendants to show cause why each and every class member's BD application should not be granted immediately," *id.* at 33. The Department disagreed about the propriety of such a remedy. *See, e.g.*, ECF No. 249 at 25-29 (Defendants' arguments that (i) the Higher Education Act's anti-injunction provision forecloses coercive relief against the Secretary, and (ii) the Court should remand decisions on all BD applications to the Department). The Agreement represents a reasonable compromise given the facts adduced and the arguments put forward since the original Complaint.

Second, Class Members in the "decision group" will have their BD claims resolved efficiently according to strict and fair deadlines under a streamlined process, with the oldest claims receiving decisions more promptly. *See id.* § IV.C.3. Having a set timeline for decisions would

have been a likely result if Plaintiffs had prevailed on their claim under Section 706(1) of the APA. By reaching this same result without further litigation of the complicated matters raised by this case, the Agreement will result in the delivery of these decisions to Class Members faster, without the uncertainty of litigation and the potential delay of an appeal. It also ensures that the decisions will be issued according to a negotiated timeline that the Department has determined it can meet, providing certainty that is beneficial to both the Class and the Department. In a case that has been fundamentally about avoiding delay, providing this type of expeditious relief is the superior outcome for the Class.

In addition, the Agreement provides strong procedural protections. If the Department fails to meet the deadlines set forth in the Agreement, Class Members and Post-Class Applicants receive Full Settlement Relief. *Id.* §§ IV.C.8, IV.D.2. Class members retain their right to challenge any final decision denying their application in federal district court. *See id.* §§ IV.C.2(ii)-(iii), VII. And this Court will retain jurisdiction to hear claims that Defendants have breached their obligation to provide notice by the deadlines, effectuate relief by the deadlines, submit timely quarterly reports, or refrain from involuntary collections. *Id.* § V.

### D.  Continued Litigation Would Entail Additional Delay, Risk, and Cost

The adequacy of settlement relief is also measured against "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Where Plaintiffs would face an uncertain outcome through continued litigation, courts favor settlement. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (favoring "[s]ettlement, which offers an immediate and certain award" in light of the litigation barriers the plaintiffs anticipated). In this case, settlement will bring borrowers' state of limbo to an end; continued litigation likely would not. Although the Parties each believe they have advanced strong legal and factual arguments, they acknowledge that their positions are not without legal risk. Even if Plaintiffs succeeded on the merits at the trial court, there is considerable uncertainty about the appropriate remedy; moreover, the possibility of appeal would have the potential to further delay relief for Class Members. This Agreement removes the uncertainty and

delay of further litigation, which weighs in favor of final approval.

### E.  The Agreement Treats All Class Members Fairly

In assessing whether the settlement "treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2), the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class," *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007), and whether "the apportionment of relief among class members takes appropriate account of differences among their claims," Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment).

The structure of the Agreement is designed to work as a whole, taking into account differences among Class Members' circumstances, to address the significant number of pending BD applications according to a fair process and a reasonable schedule. First, all Class Members whose relevant loan debt is associated with the schools listed on Exhibit C to the Agreement will receive the same, automatic settlement relief on the same timeline (within one year after the Effective Date). Agreement § IV.A.1. Such automatic relief is warranted in the context of the overarching settlement structure, as certain indicia of misconduct by the listed schools, including the high volume of Class Members with applications related to the listed schools, led the Department to conclude that these Class Members were entitled to summary settlement relief without any further time-consuming individualized review process.

By granting automatic relief to Class Members who attended a listed school, the Department frees up its resources to provide the remaining Class Members with decisions more quickly than it would otherwise be able to do. The difference in treatment between the automatic relief group and the decision group is justified because the Department has determined that it needs to undertake additional review of the decision group claims, which lack sufficient existing indicia of school misconduct to warrant automatic settlement relief. Within the decision group, Class Members are treated equitably: their applications will all be subject to the same streamlined review, and that review will be conducted on a timeline that corresponds to the delay each applicant has already experienced.

Moreover, as discussed above, the streamlined review process itself provides significant benefits that decision group members would not receive if their claims were adjudicated outside this settlement under the current applicable regulation. They will be afforded a presumption of reliance, their claims will not be denied for a lack of corroborating evidence, and their recovery will not be subject to any statute of limitations.  This is significant relief, calibrated to the circumstances of these Class Members and the disputed issues in this case.[3]

### F.  The *Hanlon* Factors Also Weigh in Favor of Approval

The Ninth Circuit instructs that, in addition to the Rule 23 factors, a court considering final approval of a class action settlement may examine additional factors including "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026.

As discussed above, factors 1, 2, 3, and 4 work together to weigh strongly in favor of final approval. The risk, complexity, and likely duration of further litigation is significant here.[4] The

---

[3] Post-Class Applicants, although not within the class definition and thus not formally part of the Rule 23 analysis, also receive fair treatment under the Agreement. Post-Class Applicants did not experience the allegedly unlawful policies and procedures that Plaintiffs describe in their original and supplemental Complaints, so it makes sense that they would not receive the same settlement benefits that Class Members do. Instead, Post-Class Applicants receive the benefit of a set timeline for decision on their BD applications—consistent with the treatment that BD applicants would receive under the Department's recent proposed rule, *see* Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 87 Fed. Reg. 41,878, 41,904, 42,007-008 (July 13, 2022)—and the guarantee of settlement relief if the Department fails to adhere to that timeline. Meanwhile, Post-Class Applicants do not release any claims under the Agreement, so they have legal recourse if the Department engages in any unlawful procedures in the course of adjudicating their applications.

[4] Expense is a less significant factor for Plaintiffs because Class Counsel represents the Class *pro bono*. However, if the Parties engaged in further litigation and Plaintiffs prevailed, Class Counsel would seek reimbursement from the government for additional fees under the Equal Access to

Parties have already litigated this case for over three years, including collateral litigation to the Ninth Circuit. While Plaintiffs believe that their case is strong, each party raised numerous legal issues in their motions for summary judgment—including the Department's argument that the case is moot and that the Class should be decertified. *See* ECF No. 249 at 12. Those motions would have to be fully briefed and argued if the Agreement were not approved, and if one party did not fully prevail, the case would proceed to trial. If Plaintiffs prevailed on summary judgment or at trial, there is still uncertainty about the remedy they would ultimately be entitled to. The Department would also have the option of appealing. In a case fundamentally about delay, pursuing lengthy further litigation would not be in the best interests of the Class. This is especially so when weighed against the relief offered in settlement, which this Court has already noted is substantial. *See* Aug. 4 Tr. at 40:11-15, 48:9-11.

Factors 5, 6, and 7 likewise support final approval. Plaintiffs received discovery from the Department—an unusual step in an APA case—and, largely on the basis of that discovery, brought new claims in their Supplemental Complaint. The Parties thus entered into the Agreement with extensive knowledge about the facts underpinning the case. With that knowledge, experienced counsel for both Parties made the judgment that the Agreement was a satisfactory resolution of Plaintiffs' claims. On the Plaintiffs' side, Class Counsel has litigated multiple federal class actions against the Department relating to borrower defense,[5] and brought that experience to bear in negotiating and signing the Agreement. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 332 (N.D. Cal. 2014) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043). On the other side, because the Department is a governmental participant, its decision to enter into the

---

Justice Act. The government would also have to expend additional resources in the form of time and attention from both the Departments of Education and Justice.

[5] *See Pratt v. Cardona*, No. 1:20-cv-01501 (D.D.C.); *Calvillo Manriquez v. Cardona*, No. 3:17-cv-7210 (N.D. Cal.); *Vara v. Cardona*, No. 1:19-cv-12175 (D. Mass.).

Agreement further supports final approval. *See San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1031-32 (N.D. Cal 1999).

Finally, the reaction of Class Members (and Post-Class Applicants) also weighs in favor of approval. One thousand five hundred eighty-three (1,583) borrowers submitted comments to the Court on or before the deadline of September 15, 2022. Of those, 1,019 borrowers (about 64%) expressed support for the Agreement, and 167 (about 10%) objected or requested changes to the Agreement.[6] In addition, Class Counsel and/or the Department of Justice received communications from four borrowers that can be fairly categorized as objections to the Agreement. Copies of these communications are appended hereto as Exhibit B.

To begin, the number of objectors accounts for *less than one-tenth of 1%* of the Class (approximately 264,000 individuals). Significantly, many of these objectors are Post-Class Applicants or individuals who have not yet applied for borrower defense, rather than Class Members; if the size of the Post-Class Applicant group is taken into account—as of September 20, 2022, approximately 179,000 borrowers—then objectors account for *less than 0.04%* of the combined Class and Post-Class Applicant total. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004)) (approving settlement that received three objections out of 57,630 class members); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement that received 45 objections out of 90,000 class members, or about 0.05%); *Lane v. Brown*, 166 F. Supp. 3d 1180, 1191-93 (D. Or. 2016) (finding that the "vast majority of the class supports and will benefit from" settlement

---

[6] Of the remaining 397 borrowers, 228 asked questions about the settlement, such as whether a particular commenter was included in the class, how settlement relief might interact with other forms of loan cancellation currently available from the Department, and others. Class Counsel is developing plans to communicate with these commenters to address their questions. Another 164 borrowers did not express a view regarding the settlement, but instead shared their stories about being deceived by their institutions and/or suffering under the burden of their student loans.

where 32 out of about 2,000 class members, or around 1.6%, objected); *Sugarman v. Ducati N. Am., Inc.*, No. 5:10-cv-05246, 2012 WL 113361, at *3 (N.D. Cal. Jan. 12, 2012) (objections from 42 of 38,774 class members—more than 0.1%—is a "positive response").. One letter submitted to the Court in support of the settlement was signed by 796 Post-Class Applicants, who urged the Court to approve the Agreement because it "offers post class members an opportunity to have our cases reviewed in a manner that is complete, fair, timely, and without bias," and "ensures that the Department of Education meets strict measures, which have been proven necessary by the discovery in this case." Letter from Post-Class Applicants, ECF No. 292. These nearly 800 Post-Class Applicants alone far outnumber the borrowers who objected.

The majority of the objections to the settlement can be grouped into the following general categories:

1) Additional schools should be added to the Exhibit C list;

2) The class closure date of June 22, 2022 should be extended, so that some or all Post-Class Applicants would be included in the Class;

3) Automatic settlement relief should be extended to Post-Class Applicants who borrowed to attend schools on the Exhibit C list;

4) Class Members should receive their relief faster than the timelines set out in the Agreement; and

5) Settlement relief should be extended to borrowers who refinanced their federal student loans into private loans.

Significantly, not one of these objections actually takes issue with the substantive relief being provided to Class Members under the Agreement. To the contrary, four of the five categories of objection seek to broaden that relief to apply to additional people, and the remaining category simply asks for the relief to be delivered faster. This fact alone demonstrates the high quality of relief that the Agreement provides to Class Members, and thus points in favor of final approval. None of these objections provides a basis for finding that the Agreement is not fair, reasonable, and adequate for the Class as a whole, as discussed further below.

*Category 1: Contents of Exhibit C.* Eighty-seven borrowers asked to have the schools they attended added to Exhibit C. This was by far the most common objection, and was the category most likely to include Class Members (as opposed to Post-Class Applicants). Notably, however, the majority of the comments in this category were not explicitly framed as objections to the Agreement at all—that is, Class Members did not argue that approval should be denied because their schools were not on the list. Rather, they typically asked whether it was possible to expand the list, without expressing disagreement with the existing contents of the list or with any other aspect of the settlement. The Parties have categorized these comments as objections in the interests of thoroughness.

As an initial matter, "[b]ecause 'the very essence of a settlement is compromise,' the Settlement may leave some Class Members without the exact remedies they would prefer." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, MDL No. 2672, 2017 WL 2212783, at *23 (N.D. Cal. May 17, 2017) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982)). As the Parties have explained, the list is a tool that will enable the Department to provide relief to the Class. It was created based on information available to the Department at the time the agreement was executed regarding demonstrated or credibly alleged misconduct, as well as a review of the comparative rate of Class Members with applications concerning the listed schools.[7] *See* ECF No. 246 at 3, 17-18.

---

[7] One commenter argued that the program he attended, the American Repertory Theatre/Moscow Art Theatre Institute for Advanced Theatre Training at Harvard University, should have been included on the Exhibit C list because it "appeared on the predatory lending list compiled by the Obama administration in 2017," and suggested that Class Counsel may have had a conflict of interest with respect to this program because of one Counsel's previous association with the Legal Services Center of Harvard Law School. To begin, the list to which this commenter refers was composed of programs that failed a debt-to-earnings ratio standard under the Department's then-operative "gainful employment" regulation. The gainful employment regulation did not address school misconduct, which is the relevant inquiry for borrower defense. Further, Class Counsel did not have any conflict of interest. Class Counsel never consulted with representatives of Harvard University about any aspect of settlement negotiations in this case, nor about any other aspect of the conduct of the litigation. While Class Counsel operated as a unit within Harvard Law School, its attorneys always exercised their independent legal judgment in accordance with their ethical

Additionally, just as an institution's inclusion on Exhibit C is not based on a formal finding of misconduct or wrongdoing by the Department, *see* ECF No. 288 at 7, the absence of a school from Exhibit C does not necessarily mean that that school has been "cleared" of any allegations of misconduct, or that misconduct will not be discovered or substantiated in the future. For Class Members who attended non–Exhibit C schools, the Department will assess each person's claim that their school committed misconduct under the "streamlined review" process for the decision group. This process will provide a fair opportunity for applicants to receive a reasonable decision—that is to say, applicants from non–Exhibit C schools do not need to worry that their applications will be treated as presumptively invalid. Indeed, one of the purposes of the "streamlined review" process is to address Plaintiffs' claims that the Department previously utilized an allegedly unlawful "presumption of denial" policy that imposed allegedly unlawful procedural barriers to the approval of BD applications.

**Category 2: The class cut-off date.** Seven Post-Class Applicants objected that the class closure date of June 22, 2022, is "unfair" or "arbitrary."[8] Some of these commenters objected that they should have received individual notice of this litigation before the public filing of the Agreement, while others proposed that the class closure date should have been set to a date after the filing.

As to the former, under Fed. R. Civ. P. 23(c)(2) and 23(e)(1), notice of a class action— whether with respect to class certification or settlement—must be provided "to the class." At all times since this Court granted class certification in October 2019, the Class has been defined as,

---

obligations to their clients. Exhibit C principally lists institutions, not programs, and a program or institution's lack of inclusion on Exhibit C does not dictate the outcome of Class Member applications concerning those institutions or programs. Nor does the Agreement prevent Class Counsel from representing any Class Member in a challenge to the denial of that Class Member's application.

[8] Again, we are categorizing these comments as "objections" even if they evince overall support for the Agreement. For example, one of these Post-Class Applicants also wrote, "I applaud the efforts of Plaintiffs' counsel in this case and the proposed settlement agreement that all parties have crafted." Email from Taylor Wayne Casey, Ex. B.

*inter alia*, "all people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, **who have asserted a borrower defense to repayment to the Department**." ECF No. 46 (class certification order) (emphasis added); *see also* Agreement § III.A (settlement class definition). In other words, the Class has only ever included people who had already applied for borrower defense, and thus notice regarding this case was only ever due to those people. The Parties did not have an obligation under Rule 23 to provide individualized notice to *potential future* class members (*i.e.*, people who had not yet applied for borrower defense).[9] On a more general scale, during the pendency of this litigation, Class Counsel did routinely undertake significant independent efforts to further awareness of the borrower defense process and reach borrowers whose circumstances warranted asserting a defense to repayment of their loans. For example, Class Counsel maintains a "Borrower Defense FAQ" webpage that has received over 35,000 views, and recorded videos about the borrower defense process and the *Sweet* litigation that have received thousands of views on social media.

With respect to the date of June 22, 2022, the Agreement closes the Class as of its execution date, *see* Agreement § III.D, and the Parties publicly filed the Agreement that same day, *see* ECF No. 246. Again, as of the execution date, the Class consisted of people who had already filed for borrower defense; it was those people whose claims the Parties intended to settle.[10] People who did not submit a BD application until after the execution date could not have been affected by any of the practices that Plaintiffs alleged were unlawful. Closing the Class on the date of execution of the Agreement is a reasonable approach given the nature of the claims in this case and the Department's well-founded desire to know with certainty the size of the Class before committing to specific timelines for resolving Class Member claims. Once the proposed settlement was made

---

[9] In any event, it would have been impossible to identify who among the nation's approximately 43 million federal student loan borrowers might have wanted to apply for borrower defense at some point in the future.

[10] Indeed, it is unclear whether Class Counsel would have had authority to settle the claims of any individuals who were not yet members of the Class. *See, e.g.*, Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interests **of the class**." (emphasis added)).

public, there was a significant increase in the number of BD applications. If the Department were required to treat those additional applicants as Class Members, it would not be able to meet the deadlines carefully negotiated and included in the Agreement.

*Category 3: Date limitation on Exhibit C.* Fifteen Post-Class Applicants objected that the automatic relief due to Class Members whose BD applications relate to a school on Exhibit C to the Agreement should be equally due to Post-Class Applicants who borrowed to attend one of those schools.

As the Parties explained in their motion for preliminary approval, part of the reason for providing automatic relief to this group of Class Members is to enable the Department to provide the other relief specified in the Agreement: "Clearing these claims through provision of expeditious upfront relief will significantly reduce the backlog of pending claims. This will benefit the Class as a whole because it will allow the Department to more quickly provide decisions to remaining class members than would otherwise be possible." ECF No. 246 at 18. In other words, the automatic relief provision is one aspect of the Agreement's goal of fairly and equitably clearing the large number of pending BD applications at issue in this litigation. That reasoning does not apply to Post-Class Applicants: they were not subject to the alleged policy of delay, and their applications were not among the group of already-pending applications that needs to be addressed.

The Agreement's provisions for these Post-Class Applicants are designed to ensure that they receive timely decisions on their BD applications, in line with the timelines announced in the Department's recent rulemaking proposal. They are guaranteed a decision on their applications within a set timeline, or else they will receive Full Settlement Relief. *See* Agreement § IV.D.1-2. The Agreement's reporting requirements will inform Plaintiffs about the Department's progress on these applications. *Id.* § IV.G.1-4. Finally, Post-Class Applicants do not release any rights under the Agreement, so they are free to bring a new action against the Department (including a class action) if evidence arises that their applications are not being lawfully adjudicated.

*Category 4: Speed of relief.* Two Class Members in the automatic relief group objected that twelve months was too long a period for the delivery of relief, while seven Class Members in

the decision group objected that the timelines for decision on their applications were likewise too long. While some Class Members may be frustrated at the timelines in the Agreement, the Department has represented that resource constraints prevent it from committing to any faster resolution. Given these practical considerations, combined with the fact that that Class Members will ultimately receive substantive relief that is highly favorable, the Parties respectfully submit that timing concerns do not undermine the overall fairness and reasonableness of the Agreement. Moreover, the Relevant Loan Debt of each Class Member will remain in forbearance or stopped collection status pending effectuation of relief or a final decision denying relief, and the Department will remove any interest that accrues on the Relevant Loan Debt during this period. Agreement §§ IV.A.3; IV.C.7.

*Category 5: Private consolidation loans.* Eight people wrote to the Court with concerns about the settlement failing to provide relief to individuals with private student loans, including those who originally borrowed federal student loans but then consolidated those loans with a private lender to lower their interest rates.[11] The reason that the Agreement does not contain direct relief for borrowers who currently have privately held loans is straightforward: the Department has no legal authority to discharge non-Federal loans that are held by a private entity outside of the FFEL program. (Privately held FFEL loans are different because they are still federal loans made under the provisions of the Higher Education Act ("HEA").)

*Miscellaneous objections.* The remaining 40 comments that the Parties have classified as objections concern a variety of issues that are not directly relevant to the Agreement or exceed the scope of what the Agreement could accomplish. Most asked the Parties to provide additional, specific relief, and none asserted that the Agreement was unfair or inadequate as presently written. A few examples include: requests for borrowers to receive damages for lost wages, additional tuition payments, and/or emotional distress (6); requests for the Department of Education to admit wrongdoing (2); requests for the Department to take further investigative or enforcement steps

---

[11] One of these correspondents wrote: "Overall, I am in full support of this case but would like added protections for a certain group of class members." Letter from Rae Mazzei, ECF No. 321.

against specific schools (2); and concerns about GI Bill benefits (3), the Fair Credit Reporting Act (1), and transcript withholding (1). While these comments undoubtedly describe issues of real consequence to borrowers, they are not issues that can be or need be addressed in this Agreement, when taking into consideration the claims at issue in this case.

### G. Objections by Intervenors Will Not Justify Denying Approval

The Court has afforded CSPP, ECI, ANU, and Lincoln (collectively, "Intervenors") the opportunity to object to and oppose the class action settlement. *See* ECF No. 322. The Ninth Circuit "usually impose[s] the burden on the party objecting to a class action settlement." *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990). Thus, "once the court is satisfied that the decree was the product of good faith, arms-length negotiations, a negotiated decree is presumptively valid and the objecting party has a heavy burden of demonstrating that the decree is unreasonable." *Id.* (internal citations and quotation marks omitted). When reviewing a proposed settlement, the court's primary concern "is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice*, 688 F.2d at 624.

It is not entirely clear on what grounds the Intervenors will object to the settlement, and the Parties do not intend to make their arguments for them. However, their motions for intervention previewed some potential arguments, which the Parties will briefly address.

### 1. The Settlement Is Legally Authorized and Procedurally Appropriate

Certain of the Intervenors raised objections to the legality of the settlement, and the Court has previously inquired about the "statutory authority that allows the Department to use federal funds to forgive $6 billion in student loans without going through the borrower defense process." ECF No. 303.

It is well established that the Department has broad authority to administer the federal student loan programs and manage its portfolio of more than 43 million student loans, *see* 20 U.S.C. §§ 1082, 3441, 3471, including the explicit authority to "compromise, waive, or release" any "right, title, claim, lien, or demand" acquired in the Secretary's performance of his vested

"functions, powers, and duties" to administer federal student loans, 20 U.S.C. § 1082(a)(6). Simply put, this express grant of statutory authority enables the Secretary to compromise claims of and against the Department arising out of the federal student loan programs. As part of compromising such claims, the HEA's grant of authority also enables the Secretary to release the student loan debts owed to the Department by federal student loan borrowers on terms determined by the Secretary. Given the broad discretion conferred by the HEA, "matters concerning the Secretary's Compromise and Settlement authority are presumptively unreviewable," *Weingarten v. DeVos*, 468 F. Supp. 3d 322, 338 (D.D.C. 2020), and Defendants are not aware of any court that has invalidated or even questioned any action taken pursuant to this statutory authority.

The Secretary's reasoned judgment to resolve pending litigation and disputed claims on the terms set forth in the Parties' Settlement Agreement is a core exercise of his settlement and compromise authority. The Department has traditionally and consistently used this authority to provide full loan discharges to resolve claims asserted against the Department in litigation as well as administrative proceedings, *e.g.*, *Weingarten v. Cardona*, 19-cv-02056DLF (D.D.C.),[12] and this case illustrates why Congress afforded the Secretary broad discretion and flexibility in resolving disputes related to federal student loan repayment. As discussed elsewhere in this motion, the Class is voluminous, and the case challenges all aspects of the Department's process of adjudicating a significant number of pending BD applications. Plaintiffs have challenged the Department's timeliness in issuing decisions; alleged multiple deficiencies with the Department's adjudication process; and contested the substance of certain of the decisions that the Department has rendered. In light of these allegations, the Agreement provides a reasonable compromise of disputed claims and sets forth a structured framework for the Department to use its settlement authority to timely and comprehensively resolve all Class Members' BD applications.

---

[12]   *Available at* https://www.aft.org/sites/default/files/media/2021/pslf_weingarten-v-cardona_executed_settlement_agreement_101221.pdf

Without the settlement's streamlined review procedures, clearing the large number of pending applications for the entire Class would require an inordinate amount of time—at a minimum, many years more than the timelines set forth in the Agreement—and Department resources, to the significant detriment of the agency's ability to carry out other priorities and statutory directives. The Agreement, on the other hand, provides for certain and efficient resolution of pending BD applications and this litigation. It also allows the Department to provide reasonably targeted relief to Class Members, in fair resolution of their myriad claims against the Department, more expeditiously than would be possible absent the Agreement. This exercise of informed agency discretion to resolve disputed claims and allocate scarce agency resources is fully consistent with the settlement and compromise authority conferred by the HEA.[13]

As a resolution of litigation against the United States, the settlement agreement must also be assessed with reference to the Attorney General's "exclusive authority and plenary power" to settle such litigation on terms that he determines further the interests of the United States. *See, e.g.*, *United States v. Hercules, Inc.*, 961 F.2d 796, 798 (8th Cir. 1992); 28 U.S.C. §§ 516-519. The Attorney General's "plenary discretion," *United States v. Carpenter*, 526 F.3d 1237, 1241-42 (9th Cir. 2008), cannot be "diminished without a clear and unambiguous directive from Congress," *Hercules*, 961 F.2d at 798. No such statutory directive is at issue here (and Intervenors have not

---

[13] For these reasons, the January 18, 2021 memorandum from the Department's then-Principal Deputy General Counsel that Intervenors have referenced, *see* Everglades College, Inc.'s Mot. to Intervene at 2 n.3, ECF No. 261, has no application here. That memorandum addressed only the Secretary's authority to cancel Title IV loan debt "on a blanket or mass basis." It did not address the situation presented here—a litigation settlement providing targeted relief to a specific group of plaintiffs with legal claims against the Department arising out of an asserted statutory entitlement to such relief (*i.e.*, borrower defense). *See* U.S. Dep't of Educ., Office of the General Counsel, Memorandum re: *Student Loan Principal Balance Cancellation Compromise, Discharge, and Forgiveness Authority* (Jan. 12, 2021), https://perma.cc/GNE9-ZDBK (assessing the Secretary's authority to cancel loans for all student loan borrowers based on "administrative decree"). In any event, the Department has determined that memorandum "was issued in contravention of then-effective Department processes for issuing significant guidance" and was "not properly promulgated." U.S. Dep't of Educ., Office of the General Counsel, Memorandum re: *The Secretary's Legal Authority for Debt Cancellation* at 3 n. 5 (Aug. 23, 2022), https://perma.cc/LP87-NMCS. Accordingly, it has no binding effect on the Department.

argued otherwise); rather, as discussed above, the settlement agreement authorizes the Department to use its express statutory authority to compromise and settle claims arising out of the federal student loan programs in a reasoned, orderly manner. "[T]he Attorney General's authority to control the course of the federal government's litigation is presumptively immune from judicial review." *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C. Cir. 1995). Because that authority was exercised here to facilitate settlement obligations that fit comfortably within the Department's statutory authority, there is no basis for the Court to withhold final approval of the settlement agreement based on any objection to its legality.

### 2. The Agreement Will Not Cause Intervenors Reputational Harm or Financial Consequences That Could Justify Denying Final Approval

Intervenors will be unable to demonstrate that their interests justify denying final approval. First, they do not have "a significantly protectable interest" at stake that could be affected by the settlement. *See Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 827 (9th Cir. 2021); Pltfs.' Consol. Opp. to Mots. to Intervene, ECF No. 287 at 10-16; Defs.' Consol. Opp. to Mots. to Intervene, ECF No. 288 at 15-19; Aug. 4 Tr. at 52:3-4 ("I want to be clear that I'm not saying that any of you intervenors have a property interest that's at stake.").

Second, the settlement will not "detrimentally affect" any interest they may have. *See Wilder v. Bernstein*, 645 F. Supp. 1292, 1350 (S.D.N.Y. 1986), *aff'd*, 848 F.2d 1338 (2d Cir. 1988). As Defendants explained in their opposition to the motions to intervene and at the August 4 hearing, the inclusion of a school in Exhibit C is "is the result of the parties' negotiated assessment that, for each school, there exists a sufficient threshold indication of wrongdoing to justify summary settlement relief for associated class members." ECF No. 288 at 7. While Intervenors may object to their inclusion, any reputational injury they perceive from it—which has not been established beyond speculation or bare assertion—is not a basis to block this settlement. *See id.* at 17-19; ECF No. 287 at 15-16, 22. The Parties are not aware of any instance where a class settlement has been denied approval because it allegedly caused reputational harm to a third party.

As for the risk of economic harm, the Court summed up the problem with Intervenors' argument perfectly: schools on the Exhibit C list have "already gotten the money and there's no way [the Department] can take that money back from [them] except through a recoupment action," during which "due process is totally preserved." Aug. 4 Tr. at 24:8-10. Moreover, one of the Department's Deputy Under Secretaries has given a sworn Declaration stating that the fact of an institution's inclusion on Exhibit C does not constitute evidence that can or will be considered by the Department in any proceedings against such institution. *See* Decl. of Ben Miller at ¶¶ 11, 13-14, ECF No. 288-1; *see also* ECF No. 288 at 2 (Department averring that the Exhibit C list "will not be introduced as evidence in the event any [enforcement] proceeding is initiated in the future" against a listed school, and the list "creates no independent basis for action against the schools"). The Intervenors have not shown and cannot show that the Agreement will have *any* effect on their bottom lines, let alone an effect sufficient to justify denying relief to the Class.

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant final approval of the Agreement.


Dated: September 22, 2022                    Respectfully submitted,


BRIAN D. NETTER                              _/s/ Rebecca C. Ellis_
Deputy Assistant Attorney General           Eileen M. Connor (SBN 248856)
STEPHANIE HINDS                              econnor@ppsl.org
United States Attorney                       Rebecca C. Ellis (*pro hac vice*)
MARCIA BERMAN                                rellis@ppsl.org
Assistant Branch Director                    Rebecca C. Eisenbrey (*pro hac vice*)
                                             reisenbrey@ppsl.org
_/s/ R. Charlie Merritt_                     PROJECT ON PREDATORY STUDENT
R. CHARLIE MERRITT                           LENDING
Trial Attorney                               769 Centre Street, Suite 166
U.S. Department of Justice                   Jamaica Plain, MA 02130
Civil Division, Federal Programs Branch      Tel.: (617) 390-2669
1100 L Street, N.W.
Washington, DC 20005                         Joseph Jaramillo (SBN 178566)
                                             HOUSING & ECONOMIC RIGHTS

Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

ADVOCATES
3950 Broadway, Suite 200
Oakland, California 94611
Tel: (510) 271-8443
Fax: (510) 280-2448

*Attorneys for Plaintiffs*