TERANCE A. GONSALVES (admitted pro hac vice)
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:      (404) 881-7000
Facsimile:      (404) 881-7777
Email:          terance.gonsalves@alston.com

ALEXANDER AKERMAN (State Bar No. 280308)
Alston & Bird LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone:      (213) 576-1000
Facsimile:      (213) 576-1100
E-mail:         alex.akerman@alston.com

Attorneys for Intervenor
THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>       v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>    *Defendants* | Case No. 19-cv-03674-WHA<br><br>**INTERVENOR THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY'S OPPOSITION TO THE MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Date:       November 3, 2022<br>Time:      11:00 a.m.<br>Courtroom:  12<br>Judge:     Hon. William A. Alsup<br><br>(Class Action)<br>(Administrative Procedure Act Case) |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND......................................... 3

III.   LEGAL STANDARD .................................................................................... 5

IV.   ARGUMENT ................................................................................................ 7

    A.     Plaintiffs' Claims are Moot and the Court Lacks Subject Matter Jurisdiction.................................................................................................. 7

    B.     The Settlement Class Does Not Satisfy the Requirements of Rule 23 (b)............. 8

        1.     The Full Settlement Relief Class Cannot be Maintained Under Rule 23(b)(2) Because the Settlement Grants the Class Monetary Relief. ......... 8

        2.     The Class Cannot Be Certified Under Rule 23(b)(3)................................. 10

        3.     The Full Settlement Relief Class is Overbroad Because it Includes Members Who Lack Standing. ................................................................. 11

    C.     The Proposed Settlement is Unconstitutional and Unlawful. ............................... 14

        1.     The Department Does Not Have the Authority to Cancel and/or Refund $6 Billion of Money Owed to the Taxpayer. ............................... 14

        2.     The Settlement Violates the Borrower Defense Regulations. .................. 17

    D.     The Proposed Settlement Does Not Satisfy Rule 23(e). ........................................ 19

        1.     The Settlement Was Not Negotiated at Arm's Length. ............................ 19

        2.     Plaintiffs' Counsel Has Not Adequately Represented the Class. ............. 20

        3.     This Settlement is Unfair and Improperly Grants Certain Class Members Preferential Treatment. ............................................................. 21

        4.     This Settlement is Not in the Public Interest. ........................................... 24

V.     CONCLUSION.............................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Aghdasi v. Mercury Ins. Grp., Inc.*,
No. CV 15-4030-R, 2016 U.S. Dist. LEXIS 143009 (C.D. Cal. Jan. 12, 2016).......................9

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)..........................................................................................6, 22

*Arredondo v. Sw. & Pac. Specialty Fin., Inc.*,
No. 1:18-cv-01737-DAD-SKO, 2022 U.S. Dist. LEXIS 23758 (E.D. Cal. Feb. 9,
2022) ...................................................................................................................5

*Bailey v. Great Lakes Canning, Inc.*,
908 F.2d 38 (6th Cir. 1990) ...............................................................................7

*Breitman v. Xerox Educ. Servs.*,
LLC, 2014 U.S. Dist. LEXIS 150369 (S.D.N.Y. Oct. 22, 2014) ...............................9

*City & Cty. of S.F. v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ...........................................................................16

*City of Arlington v. FCC*,
569 U.S. 290 (2013)...........................................................................................17

*Clark v. Watchie*,
513 F.2d994 (9th Cir. 1975) ..............................................................................10

*Crane v. JELD-WEN, Inc.*,
No. 3:17-cv-00455-L-WVG, 2018 U.S. Dist. LEXIS 158300 (S.D. Cal. Sep. 17,
2018) ...................................................................................................................5

*Criswell v. Boudreaux*,
No. 1:20-cv-01048-DAD-SAB, 2021 U.S. Dist. LEXIS 187438 (E.D. Cal. Sep. 29,
2021) .................................................................................................................19

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010).........................................................................7, 24

*Exec. Bus. Media v. United States Dep't of Def.*,
3 F.3d 759 (4th Cir. 1993) ...........................................................................15, 19

*Grand Canyon Trust v. U.S. Bureau of Reclamation*,
691 F.3d 1008 (9th Cir. 2012) .............................................................................7

*Hanaway v. JPMorgan Chase Bank*, No. SACV 10-1809 DOC(PLAx), 2011 U.S. Dist.
LEXIS 21374, at *11 (C.D. Cal. Feb. 15, 2011)..................................................9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................5, 22

*Heckler v. Chaney*,
    470 U.S. 821 (1985)........................................................................................15, 18

*Hernandez v. City of San Jose*,
    No. 16-CV-03957-LHK, 2019 U.S. Dist. LEXIS 159293 (N.D. Cal. Sep. 17, 2019)............11

*Herskowitz v. Apple, Inc.*,
    301 F.R.D. 460 (N.D. Cal. 2014) ..........................................................................9

*I.B. v. Facebook, Inc.*,
    *82 F. Supp.* 3d 1115, 1132 (N.D. Cal. 2015) ........................................................9

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..............................................................................6

*In re Lithium Ion Batteries Antitrust Litig.*,
    777 F. App'x 221 (9th Cir. 2019) .........................................................................6

*In re Patriot Am. Hosp. Inc. Sec. Litig.*,
    No. C-00-1300 VRW, 2005 U.S. Dist. LEXIS 40993 (N.D. Cal. Nov. 30, 2005) .................21

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................................21

*IntegrityMessageBoards.com v. Facebook, Inc.*,
    No. 18-cv-05286-PJH, 2021 U.S. Dist. LEXIS 160047 (N.D. Cal. Aug. 24, 2021) ..............11

*Krueger v. Wyeth, Inc.*,
    396 F. Supp. 3d 931 (S.D. Cal. 2019) ..................................................................12

*Local No. 93, Int'l Ass'n of Firefighters v. Cleveland*,
    478 U.S. 501 (1986) ........................................................................................18

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ..............................................................................11

*Morrison v. Am. Nat'l Red Cross*,
    No. 19-cv-02855-HSG, 2021 U.S. Dist. LEXIS 4043 (N.D. Cal. Jan. 8, 2021) ....................5

*Natomas Gardens Inv. Grp. Ltd. Liab. Co. v. Sinadinos*,
    2009 U.S. Dist. LEXIS 83391 (E.D. Cal. Sep. 14, 2009)........................................21

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)........................................................................................12

*Philliben v. Uber Techs., Inc.*,
No. 14-CV-05615-JST, 2016 U.S. Dist. LEXIS 117629, 2016 WL 4537912 (N.D.
Cal. Aug. 30, 2016)....................................................................................................22, 24

*Rashea C. P. v. Kijakazi*,
No. SA CV 20-2280-E, 2022 U.S. Dist. LEXIS 18372 (C.D. Cal. Jan. 31, 2022).................15

*Russell v. United States*,
No. C 09-03239 WHA, 2012 U.S. Dist. LEXIS 85614 (N.D. Cal. June 20, 2012)...................9

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)..................................................................................................12

*Tones v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ......................................................................................12

*True v. Am. Honda Motor Co.*,
749 F. Supp. 2d 1052 (C.D. Cal. 2010) ....................................................................23, 24

*Vara v. Devos*,
No. 19-12175-LTS, 2020 U.S. Dist. LEXIS 112296 (D. Mass. June 25, 2020) ..............15, 18

*Vasquez v. Leprino Foods Co.*,
No. 1:17-cv-00796-AWI-BAM, 2020 U.S. Dist. LEXIS 56425 (E.D. Cal. Mar. 30,
2020) ............................................................................................................................10

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
986 F.3d 1106 (9th Cir. 2021) ......................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).......................................................................................................8

*Wang v. Chinese Daily News, Inc.*,
737 F.3d 538 (9th Cir. 2013) ..........................................................................................8

*Weingarten v. Devos*,
468 F. Supp. 3d 322 (D.D.C. 2020) ..............................................................................15

*West Virginia v. EPA*,
142 S. Ct. 2587 (2022)..................................................................................................16

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001)......................................................................................................16

**RULES**

Federal Rule of Civil Procedure 23 ....................................................................................21

STATUTES

20 U.S.C. §§ 1082, 3441, 3471 ......................................................................................16

OTHER AUTHORITIES

U.S. Const. art. I, § 8, cl. 1 ...........................................................................................16

U.S. Const. art. I, § 9, cl. 7 ...........................................................................................16

34 C.F.R. § 668.84(a)(1) ...............................................................................................18

34 C.F.R. § 668.85(a)(1) ...............................................................................................18

34 C.F.R. § 668.86(a)(1) ...............................................................................................18

34 C.F.R. § 685.206(c)(3), (c)(4), (e)(16) .....................................................................18

34 C.F.R. § 685.206(e)(8)-(11) ......................................................................................18

34 C.F.R. § 685.206(e)(10) ............................................................................................18

34 C.F.R. § 685.222(e) ..................................................................................................18

34 C.F.R. § 685.222(e)(7), (h)(1) ...................................................................................18

23 Op. O.L.C. 126 ..........................................................................................................15

## I.   INTRODUCTION

The Chicago School of Professional Psychology ("TCSPP") intervened in this litigation for the limited purpose of ensuring that the Court consider both how the proposed settlement impacts its due process rights and whether the proposed settlement complies with the rules governing class action settlements generally. These concerns are well placed because Plaintiffs and the Department of Education ("Department") (collectively, the "Parties") seek final approval of an overly broad class action settlement that provides extraordinary relief that could not be recovered if the case was litigated on the merits. And in doing so, unfairly and without evidentiary support, cast aspersions and defame TCSPP.

Both Parties acknowledge that the Department's failure to adjudicate the class members' borrower defense applications, the sole claim in this litigation, has created a crushing backlog from which the Department seeks to escape. The Parties' proposed settlement provides the Department a path out of that backlog that will "afford the Department the time and resources it needs to expeditiously consider and issue decisions on the applications" of the remaining class members and anyone else who has or will file a borrower defense application. Dkt. 323, Mot. for Final Approval, at 9:6-10; Dkt. 323 at 11:21-22 ("By granting automatic relief to Class Members who attended a listed school, the Department frees up its resources to provide the remaining Class Members with decisions more quickly than it would otherwise be able to do."); Dkt. 323 at 16:15-17 (Exhibit C is a "tool that will enable the Department to provide relief to the Class.").

The Department simply could have taken ownership of its own failures. It did not. Instead, the Department created a list of over 150 schools for which it claims "there is sufficient indicia of misconduct to justify summary settlement relief." Dkt. 323, Mot. for Final Approval, at 9:1-3. In other words, the Department seeks to deflect attention from its own failures to adjudicate the thousands of borrower defense applications it encouraged class members to submit by pointing to unsubstantiated allegations of misconduct by the schools on Exhibit C, including TCSPP. The Parties' unsupported allegations regarding TCSPP in their Joint Motion for Preliminary Approval and Joint Motion for Final Approval are likely defamatory and have and will continue to cause reputational harm to TCSPP, which is the largest nonprofit professional psychology school in the

THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY'S OPPOSITION TO MOTION FOR FINAL APPROVAL
Case No. 19-cv-03674-WHA

nation. TCSPP's Mot. to Intervene, Dkt. 265 at 6:2. While the Department has provided no facts to support any wrongdoing by TCSPP, the facts are that TCSPP is a longstanding, acclaimed, accredited, nonprofit institution accredited by the prestigious Western Association of Schools & Colleges Senior College and University Commission. *Id*., at 6:12-13. Many of TCSPP's academic programs are programmatically accredited. *Id*., at 6:13-16. Throughout its history, TCSPP has earned recognition for its work in education and in the broader community. *Id*., at 6:22-23; *see* additional accolades in TCSPP's Motion to Intervene, Dkt. 265 at 5:25-7:5. Not only does the Parties' Motion for Final Approval disparage TCSPP's exemplary reputation without evidence, but the proposed settlement also violates the borrower defense regulations put in place by the Department and strips TCSPP of its limited due process rights in defending any such borrower defense applications or any recoupment actions that may be brought by the Department.

Upon reading the allegations asserted by the Department in the Motion for Preliminary Approval, TCSPP immediately contacted the Department to inquire about its allegations of "substantial misconduct." But the Department did not respond to TCSPP's inquiries. Receiving no response from the Department, TCSPP filed its Motion to Intervene asserting its property interest in these proceedings as its reputation had been harmed and its due process rights were to be vitiated by the proposed settlement. In response to TCSPP's Motion to Intervene, the Department provided no explanation as to why TCSPP was on Exhibit C and Plaintiffs could only point to a dated newspaper article about a settlement of a decade old class action settlement. As of this date, TCSPP still does not know why the Department placed it on Exhibit C.[1]

To be clear, TCSPP sought intervention and now files this opposition to the Parties' Motion for Final Approval not to prevent the class members' borrower defense applications from being adjudicated by the Department or to prevent the class members with meritorious applications from receiving relief pursuant to the borrower defense regulations. Rather, TCSPP files this opposition to protect its reputation, guard its due process rights, ensure that the settlement complies with federal law, and preserve its opportunity to defend against the limited number of borrower defense

---

[1] TCSPP could be on Exhibit C as a result of a "clerical error" along with the four schools the Parties removed from the original version of Exhibit C. Dkt. 317 at 2:9-15.

applications asserted against it which lack merit.

The Court expressly granted TCSPP's Motion to Intervene, along with the motions of the other Intervenors, to allow the Intervenors to help "keep the system honest" and to "object[] and oppose[] the class action settlement." Dkt. 311, Transcript of 8/4/22 Proceedings, at 52:4-8; Dkt. 322, Order re Motions to Intervene, at 2:22-23. Accordingly, TCSPP opposes final approval of the Parties' settlement because (i) the Court no longer has subject matter jurisdiction over the action; (ii) the settlement class does not satisfy Rule 23(b); (iii) the settlement is unlawful because the Department lacks authority to discharge $6 billion of student loans and the settlement violates the borrower defense regulations; and (iv) the settlement does not satisfy Rule 23(e).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The proposed Settlement Agreement is inconsistent with multiple representations the Parties made to this Court and the basis pursuant to which this Court originally certified a Rule 23(b)(2) class. The Parties' Motion for Final Approval falsely represents that "[t]he relief provided in the Agreement is consistent with what Class Members might reasonably expect to receive through litigation, while eliminating the delay and uncertainty of further proceedings." Dkt. 323 at 2:12-14. The Parties do not address the disconnect that TCSPP identifies below between the Settlement Agreement and the rest of this case.

Plaintiffs' Complaint and Supplemental Complaint alleged that the Department engaged in inaction in failing to adjudicate the merits of borrower defense applications under applicable regulations, leaving borrowers "in limbo." Dkt. 1, Compl., at ¶¶ 1-10; Dkt. 198, Supp. Compl., at ¶¶ 1-3. Accordingly, Plaintiffs filed this suit to have the Court compel the Department to start adjudicating the applications on their merits:

> [Plaintiffs] do not ask this Court to adjudicate their borrower defenses. Nor do they ask this Court to dictate how the Department should prioritize their pending borrower defenses. Their request is simple: they seek an order compelling the Department to start granting or denying their borrower defenses and vacating the Department's policy of withholding resolution.

Dkt. 1, ¶ 10. In sum, Plaintiffs sought relief compelling the Department to grant or deny the class members' borrower defense applications, in accordance with the Department's *proper merits*

*determination* on each class member's application. Dkt. 1, at 60-61; Dkt. 198, at. 76-77. Plaintiffs *did not* seek relief in the form of granting borrower defense applications or discharging and refunding billions of dollars of loans at once. In fact, Plaintiffs sought to enjoin the Department's summarily deciding claims without properly "adjudicating claims on the merits." Dkt. 198, at ¶ 5 & p. 77. Accordingly, the focus of Plaintiffs' action was in compelling the Department to adjudicate borrower defense applications as required by controlling borrower defense regulations.

On this basis, pursuant to Rule 23(b)(2) the Court certified a class of persons who had submitted borrower a defense application that had not been granted or denied on the merits. Dkt. 46, Order Granting Mot. for Class Cert., at 14. In doing so, the Court properly noted that the Plaintiffs are not "seeking a specific ruling for each application, which would indeed require an individualized inquiry. Rather, they simply seek to restart the decision-making process to ultimately obtain a decision." *Id.* at 12:11-14.

The proposed settlement is a jarring departure from this status quo. Far from granting a non-monetary injunction that simply requires the Department to adjudicate borrower claims, the settlement requires the Department to provide blanket "Full Settlement Relief"—an automatic federal loan discharge and refund of amounts paid to the Department, and credit repair—for approximately 75% of the class members who attended one of the 151 institutions listed on Exhibit C. Dkt. 246-1, Settle. Agmt., §§ II.S., IV.A; Dkt. 317-1; Dkt. 323, Mot. for Final Approval, at 1:18-22.[2] To justify this "presumptive relief," the Department stated—without having completed any proper merits determination or citing any evidence in its submission to this Court—that there was "strong indicia regarding substantial misconduct by listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools."[3] Dkt. 246, Mot. for Prelim. Approval, 3:8-13. However, at the same time, the

---

[2] The settlement also provides for a "streamlined process" for reviewing the borrower defense applications of remaining class members, which includes Full Settlement Relief if the Department fails to meet certain deadlines. Dkt. 323 at 1:22-2:8; Dkt. 246-1, § IV.C. "Post-Class Applicants" are guaranteed a decision within 36 months, and Full Settlement Relief if the Department fails to meet that deadline. Dkt. 323 at 2:3-8; Dkt. 246-1, § IV.D.

[3] The Parties claim the "indicia of misconduct" is buttressed by the "high volume of Class

Department also paradoxically stated that "an institution's inclusion on Exhibit C is not based on a formal finding of misconduct or wrongdoing by the Department." Dkt 323 at 17:1-2. The Motion for Final Approval is a circle that cannot be squared with the rest of this case.

## III.   LEGAL STANDARD

The decision as to whether a class action settlement should receive final approval involves a two-step inquiry. Before determining whether a class settlement is fair, reasonable, and adequate, as a *first step*, the Court must determine whether certification of the class remains appropriate. *Arredondo v. Sw. & Pac. Specialty Fin., Inc*., No. 1:18-cv-01737-DAD-SKO, 2022 U.S. Dist. LEXIS 23758, at *15 (E.D. Cal. Feb. 9, 2022) ("the district court must examine the propriety of certification under Rule 23 both at this preliminary stage [of reviewing the proposed settlement] and at a later fairness hearing."). The Court must examine the class settlement, objections, and other relevant materials to determine whether the proposed settlement class still "satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)." *Morrison v. Am. Nat'l Red Cross*, No. 19-cv-02855-HSG, 2021 U.S. Dist. LEXIS 4043, at *9 (N.D. Cal. Jan. 8, 2021) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-22 (9th Cir. 1998)). Put differently, "[a]lthough the fact of settlement is relevant to the class certification analysis, certification must nonetheless meet Rule 23[] requirements." *Crane v. JELD-WEN, Inc*., No. 3:17-cv-00455-L-WVG, 2018 U.S. Dist. LEXIS 158300, at *1-2 (S.D. Cal. Sep. 17, 2018) (Preliminary approval of class action settlement denied because "Plaintiff provided insufficient information to support findings of commonality under Rule 23(a)(2) and that questions of law or fact common to the class members predominate over any questions affecting only individual class members, as required by Rule 23(b)(3).").

Before granting final approval, the court must therefore again determine whether the proposed settlement class still meets the (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation requirements of Rule 23. *Hanlon*, 150 F.3d at 1019. As the Supreme Court has held, "[t]hose subdivisions' safeguards provide practical checks in the settlement

---

Members with applications related to the listed schools" (Dkt. 323 at 16:14-19) but fail to acknowledge there is no "high volume" of borrower defense applications asserted against TCSPP and that TCSPP is only aware of 39 applications related to 38 students.

1   context." *Amchem Prods. v. Windsor*, 521 U.S. 591, 597 (1997). This Rule 23 analysis is important

2   because the final approval hearing is the last chance for the Court to make certain that certification

3   is still proper; after final approval the Court "will lack the opportunity . . . to adjust the class,

4   informed by the proceedings as they unfold." *In re Lithium Ion Batteries Antitrust Litig.*, 777 F.

5   App'x 221, 223 (9th Cir. 2019) (quoting *Amchem Prods., Inc.*, 521 U.S. at 620).

6         In sum, the question of what benefit the class gains from a proposed settlement is irrelevant

7   if the Parties fail to prove the class settlement meets the requirements of Rule 23.

> Rule 23(b)(3)'s predominance requirement is not met by the factors relied on by
> the District Court and the settling parties: class members' shared experience ...;
> their common interest in receiving prompt and fair compensation, while
> minimizing the risks and transaction costs inherent in the tort system's … litigation
> process; and the settlement's fairness. The benefits … persons might gain from a
> grand-scale compensation scheme is a matter fit for legislative consideration, but it
> is not pertinent to the predominance inquiry. That inquiry trains on the legal or
> factual questions that qualify each class member's case as a genuine controversy,
> questions that preexist any settlement, and tests whether proposed classes are
> sufficiently cohesive to warrant adjudication by representation.

14   *Amchem Prods., Inc.*, 521 U.S. at 597. In the context of a class action settlement, it is error for the

15   Court to fail to "rigorously enforce Rule 23's" requirements or fail to "explore[] comprehensively

16   all [Rule 23] factors." *In re Lithium Ion Batteries Antitrust Litig.*, 777 F. App'x at 223.

17         Only if certification of the settlement class remains proper, may the Court then go to ***step***

18   ***two*** of the analysis and ascertain whether the settlement is "fair, reasonable, and adequate" upon

19   review of the factors articulated by Rule 23(e)(2): whether "A) the class representatives and class

20   counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;

21   (C) the relief provided for the class is adequate; and (D) the proposal treats class members

22   equitably relative to each other." Fed. R. Civ. P. 23(e). While the Court may consider various

23   factors in doing this analysis,[4] the Court should also consider whether the settlement is in the public

---

[4] The factors include (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and
likely duration of further litigation; (3) the risk of maintaining class action status throughout the
trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of
the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental
participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth
Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

1    interest before granting approval. *Booth v. Strategic Realty Tr.*, Inc., No. 13-cv-04921-JST, 2015

2    U.S. Dist. LEXIS 140723, at *11-12 n.3 (N.D. Cal. Oct. 15, 2015) (quoting the American Law

3    Institute for the proposition that courts look at whether "the public interest served by the

4    settlement."); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) ("The reason for

5    judicial approval is to ensure that other unrepresented parties (absent class members) and the

6    public interest are fairly treated by the settlement…."); *Bailey v. Great Lakes Canning, Inc.*, 908

7    F.2d 38, 42 (6th Cir. 1990) ("The district court may not approve a settlement unless it determines

8    after hearings that the settlement consistent with the public interest.").

9    **IV.    ARGUMENT**

10           **A.    Plaintiffs' Claims are Moot and the Court Lacks Subject Matter Jurisdiction.**

11           It is ironic that the Department seeks final approval of the settlement when one day after it

12   filed its Joint Motion for Preliminary Approval, it filed its Cross Motion for Summary Judgment,

13   the cornerstone of which was that Plaintiffs' claims are moot and therefore the Court lacks subject

14   matter jurisdiction over this case. Dkt. 249 at 9-12 and 15, Argument, § I(A) and (B). In particular,

15   the Department argued that "[b]ecause the Department has already provided the very relief that

16   Plaintiffs sued to obtain—that is, an end to the alleged 'systemic abdication of its obligation to

17   process borrower defense claims,' *id.*, Plaintiffs' original claim pursuant to § 706(1) of the

18   Administrative Procedure Act ('APA') is moot and 'must be dismissed.' *Grand Canyon Trust v.*

19   *U.S. Bureau of Reclamation,* 691 F.3d 1008, 1016-17 (9th Cir. 2012)." Dkt. 249 at 1:22-26.

20   Further, because Plaintiffs do not dispute that the Department has begun to adjudicate borrower

21   defense applications, and the only relief sought in the Complaint was the fair adjudication of those

22   claims, "the Court [also] lacks subject-matter jurisdiction over Plaintiffs' class claim." Dkt. 249 at

23   10:6-7. The Department also argued Plaintiffs' "presumption of denial" claim did not identify a

24   "final agency action" and therefore "the Court lacks jurisdiction to hear this APA claim." Dkt. 249

25   at 15:17-20. Because the Parties agree that the Department is adjudicating borrower defense

26   claims, Plaintiffs' claims are moot and therefore, this Court lacks subject matter jurisdiction and

27   the case must be dismissed. *See* Dkt. 249. There simply is no longer any case or controversy.

28

**B.    The Settlement Class Does Not Satisfy the Requirements of Rule 23(b).**

    **1.    The Full Settlement Relief Class Cannot be Maintained Under Rule 23(b)(2) Because the Settlement Grants the Class Monetary Relief.**

This Court originally certified a class exclusively under Rule 23(b)(2). Dkt. 46 at 12:15-13:26. The Supreme Court has made clear that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011). In accord, "individualized monetary claims belong in Rule 23(b)(3)." *Id*. The Supreme Court further held that "the procedural protections attending the (b)(3) class—predominance, superiority, mandatory notice, and the right to opt out—are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary to a (b)(2) class. When a class seeks an indivisible injunction benefiting all its members . . . predominance and superiority are self-evident. But with respect to each class member's individualized claim for money, that is not so." *Id*. at 362-63; *see also Wang v. Chinese Daily News, Inc*., 737 F.3d 538, 544 (9th Cir. 2013) ("Plaintiffs concede that class certification for their monetary claims under Rule 23(b)(2) cannot stand in light of Wal-Mart.")

As this Court properly recognized, when the Court certified the Rule 23(b)(2) class it did so because Plaintiffs assured the Court that the only relief Plaintiffs sought was an injunction to require the Department to adjudicate the borrower defense applications. This Court stated:

> The class originally, in this lawsuit originally, was to get an injunction to require the agency to adjudicate many thousands of -- many thousands of applications that had gone unadjudicated. And I specifically asked the lawyers if it was anything more than that, and I was assured that it was only to get an order to adjudicate the cases, because the agency wasn't doing that.

Dkt. 311, at 40:2-12.

There is no dispute that the assurances and representations that this Court relied upon are no longer true. The proposed settlement awards approximately 75% of the class members monetary compensation. The Court recognized that the $6 billion that the class will receive goes beyond what the Plaintiffs' claimed they were seeking at class certification: "**Now, this settlement**

8

**goes way beyond that, this settlement … just cancels the loan …. You're getting a bonanza**." Dkt. 311 at 40:12-15 (emphasis added).

Therefore, there is no viable argument that injunctive relief predominates, or that the Full Settlement Relief Class can remain certified under the Court's original Rule 23(b)(2) ruling. Indeed, Plaintiffs' counsel's concession that about "***75 percent of the class***" would receive "full discharge of your relevant federal student loans" and a "***refund of amounts you previously paid to the Department***" (Dkt. 311 at 5:23, 6:6-7 (emphasis added)), is by itself dispositive. Rule 23(b)(2) is not a proper vehicle to maintain a class in a settlement where 75% percent of the class is receiving monetary compensation worth approximately $6 billion. Dkt. 323 at 21:23; *Aghdasi v. Mercury Ins. Grp., Inc*., No. CV 15-4030-R, 2016 U.S. Dist. LEXIS 143009, at *5 (C.D. Cal. Jan. 12, 2016) ("injunctive relief … tangential to the individualized claims of monetary relief" cannot sustain class certification under Rule 23(b)(2)).

Cash refunds like the kind that the settlement calls for are a form of monetary relief that cannot be awarded to a Rule 23(b)(2) class. *I.B. v. Facebook, Inc., 82 F. Supp*. 3d 1115, 1132 (N.D. Cal. 2015) ("claims [for refunds] cannot be certified pursuant to Rule 23(b)(2)."); *Russell v. United States*, No. C 09-03239 WHA, 2012 U.S. Dist. LEXIS 85614, at *25-26 (N.D. Cal. June 20, 2012) ("Certification under Rule 23(b)(2) is … inappropriate" where the primary relief sought is for refunds); *Herskowitz v. Apple, Inc*., 301 F.R.D. 460, 482 (N.D. Cal. 2014) (Plaintiffs seeking refunds "are not seeking 'final' injunctive relief, as required by Rule 23(b)(2) …."). Likewise, debt cancellation is also a form of monetary relief. *Hanaway v. JPMorgan Chase Bank*, No. SACV 10-1809 DOC(PLAx), 2011 U.S. Dist. LEXIS 21374, at *11 (C.D. Cal. Feb. 15, 2011) ("debt is a monetary obligation."). Such relief is especially improper under Rule 23(b)(2) because each class member will have an individualized refund or debt cancellation under the settlement. *Breitman v. Xerox Educ. Servs*., LLC, 2014 U.S. Dist. LEXIS 150369, at *14 (S.D.N.Y. Oct. 22, 2014) (Certification under Rule 23(b)(2) is improper "when … each class member would [also] be entitled to an individualized award of monetary damages.") (citations omitted).

Here, once the Parties negotiated a settlement that awarded 75% of the class $6 billion in

monetary relief, the class fundamentally could not remain certified under Rule 23(b)(2).[5] For the settlement to proceed under the terms submitted to this Court, the Parties must meet their burden of showing that the Full Settlement Relief Class may be certified under Rule 23(b)(3). The Parties have not even attempted to do so. *See* Dkt. 323 (not discussing whether certification under Rule 23(b)(3) is possible). Consequently, the Court should not grant final approval of the settlement.

### 2.    The Class Cannot Be Certified Under Rule 23(b)(3).

It is well established that "a fact-intensive, individualized inquiry [is] anathema to Rule 23(b)(3)." *Morse v. Marie Callender Pie Shop*, Inc., No. 09CV1305 JLS (POR), 2011 U.S. Dist. LEXIS 50920, at *9 (S.D. Cal. May 12, 2011); *Vasquez v. Leprino Foods Co.*, No. 1:17-cv-00796-AWI-BAM, 2020 U.S. Dist. LEXIS 56425, at *52 (E.D. Cal. Mar. 30, 2020) ("evidence would need to be offered on a [person-by-person] basis … is the type of extensive individualized inquiry that Rule 23(b)(3) does not welcome."). Certification of classes comprised of members who have claims that require individualized inquiry is improper. That is especially true where, as here, the Parties fail to point to any common evidence by which the Full Settlement Relief may establish a class-wide representation. *Clark v. Watchie*, 513 F.2d994, 999 (9th Cir. 1975) ("Appellants must show, as a condition to class status, that any misrepresentations or non-disclosures were common to the class. They have not done so.")

The Parties are silent for good reason. The Full Settlement Relief Class is comprised of approximately 200,000 individuals who attended 151 different schools and different programs within those schools. They attended at different time periods and their borrower defense applications are most certainly based on varying assertions and evidence of the different schools' alleged misconduct or misrepresentations. The Parties do not even try to address this issue and instead resort to unsupported and conclusory statements about "indicia of misconduct," and "a sufficient threshold indication of wrongdoing." It is these very comments that caused TCSPP to

---

[5] Notably, because the Court originally certified a Rule 23(b)(2) injunction class, class members had no opportunity to opt-out of the settlement like they do from a Rule 23(b)(3) class. This is wrong and is compounded by the tax implications of this settlement. Full Settlement Relief Class members who reside in at least seven different states will be required to pay taxes on the monetary benefit they receive in this settlement but have had no ability to opt-out of the settlement.

THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY'S OPPOSITION TO MOTION FOR FINAL APPROVAL
Case No. 19-cv-03674-WHA

seek intervention. The Parties have not submitted any common evidence that could establish all of the class members' entitlement to a borrower defense adjudication based on common misconduct of the 151 schools, nor is it possible for the Parties do so. Any alleged "misconduct" by a school listed in Exhibit C is by its definition related to a particular student. Any individual defense a school may offer, is likewise related to that individual student and their individual claim. For the sake of argument, an alleged misrepresentation to one student at one school in 2017 is not evidence of a potential misrepresentation made to a different student at a different school in 2019. The borrower defense inquiry is inherently individualized. This Court recognized this fact when it granted certification on the grounds that Plaintiffs **were not seeking** ruling on any applications in this litigation: "Nor are plaintiffs seeking a specific ruling for each application, **which would indeed require an individualized inquiry**. Rather, they simply seek to restart the decision-making process to ultimately obtain a decision." Dkt. 46 at 12:11-15 (emphasis added).

As such, on the record before the Court, there is no way to convert the proposed Full Settlement Relief Class from a Rule 23(b)(2) class to a Rule 23(b)(3) class—certification is unavailable under both Rules. *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2021 U.S. Dist. LEXIS 160047, at *42 (N.D. Cal. Aug. 24, 2021) (class certification denied where there was no "standardized sales pitch"); *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2019 U.S. Dist. LEXIS 159293, at *46-47 (N.D. Cal. Sep. 17, 2019) ("With such vast variations amongst the incidents in which Plaintiffs were involved, class-wide proof of proximate cause is impossible."). Therefore, the Court should not grant final approval of the class settlement.

### 3. The Full Settlement Relief Class is Overbroad Because it Includes Members Who Lack Standing.

Not only is the Full Settlement Relief Class uncertifiable under either Rule 23(b)(2) or 23(b)(3), but the class as defined is overbroad because it includes persons who lack standing. It is blackletter law that "no class may be certified that contains members lacking Article III standing . . . [which] requires that (1) the plaintiff suffered an injury in fact . . . (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (citation omitted) "[P]ursuant

to Rule 23, the court's task . . . is to ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Tones v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016). In accord, post-certification the Court must ensure that the class ultimately is only comprised of members who have standing. *Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 944 (S.D. Cal. 2019) (articulating "the Court's obligation to confirm standing as to the Class.") (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (finding that Article III standing of class members may be resolved after class certification issues, which themselves pertain to statutory standing)).

The issue of "ensuring the standing of the class is necessary to avoid inconsistencies and inequities that would inevitably occur if plaintiffs were allowed to sue as class members, but not as individuals." *Krueger*, 396 F. Supp. 3d at 944. "The traditional doctrine of standing ensures that federal courts do not exceed their authority and imposes limitations on the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (*citing Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "Such litigants ***include passive class members***." *Id.* (standing should be "supported by competent evidence") (emphasis added).

The Parties have failed to prove that the Full Settlement Relief Class members have standing for the following reasons. ***First***, the Parties have not submitted any competent evidence that all of the class members included in the Full Settlement Relief Class have sustained a concrete injury that entitles them to monetary relief. Nor can they. The Parties concede that "Settlement relief does not constitute an approved or successful borrower defense claim for purposes of 34 C.F.R. Sections 685.206, 685.222, and 685.308." Dkt. 300 at 2:5-6. In accord, the Parties concede that "an institution's inclusion on Exhibit C is not based on a formal finding of misconduct or wrongdoing by the Department." Dkt 323 at 17:1-2; *see also* Dkt. 288 at 16:12-15. Instead, ***on efficiency grounds***, the Department has simply agreed to sweep in all students who attended an institution identified on Exhibit C and submitted a borrower defense application into the Full Settlement Relief Class, without conducting any inquiry into whether the students have actually suffered any harm. Dkt 323 at 19:8-17. The Parties continue to paper over this problem by making generalized references to vague and unproven "indicia of misconduct." *Id.* at 9:1-2. But the Parties

fail to submit a single piece of competent evidence identifying the basis for such indicia and connecting the indicia to TCSPP or any other Exhibit C school, much less to each Full Settlement Relief Class member. The Parties fail to submit competent evidence for good reason, as discussed in TCSPP's Motion to Intervene, many of the applications are facially unactionable—including one application that concedes that TCSPP did not mislead the applicant. Dkt 265 at 7:14-8:19. Even as to the Decision Class, there is no evidence that these class members are currently suffering any injury as there is no dispute the Department is currently adjudicating claims. *Supra*, IV.A.

**Second**, the arbitrary and indiscriminate inclusion of all persons who simply submitted borrower defense applications into the Full Settlement Relief Class has wrongly swept in persons whose claims have been released and/or whose claims are moot. For instance, class representatives Tresa Apodaca (Heald College) and Alicia Davis (Florida Metropolitan University) both attended institutions that are not on Exhibit C and are owned by Corinthian Colleges which is part of the *Calvillo Manriquez v. DeVos* matter and is specifically excluded from the class definition in this case. Dkt. 1 at ¶¶ 16, 20; Dkt. 46 at 8. Moreover, Ms. Davis has acknowledged in the media that her borrower defense application has been granted and her loans refunded to her. *NPR, 200k student borrowers are closer to getting their loans erased after judge's ruling (Aug. 5, 2022), available* at https://www.npr.org/2022/07/21/1112554478/student-loan-forgiveness-borrower-defense. As such, neither class representatives Ms. Apodaca nor Ms. Davis have standing in this case. And the Department has not submitted evidence showing any other class representative currently has standing. Furthermore, the Department has implemented group discharges of student loans for certain schools listed on Exhibit C, including Marinello Schools of Beauty, Westwood College, ITT Technical Institute, Minnesota School of Business, DeVry University, Kaplan Career Institute's Kenmore Square, and the Court Reporting Institute, making the claims of related class members who attended those schools moot. Other class members, like certain class members who attended DeVry University and three former TCSPP students who were part of the *Truitt* settlement, received cash payments to settle claims that are identical or similar to those asserted in their respective borrower defense applications. Still others received cash payments from settlements with the Federal Trade Commission ("FTC"), such as certain class members who

attended DeVry University and the University of Phoenix. The Parties have not excluded such persons from the Full Settlement Relief Class or identified any other class members who already received full or partial relief through civil settlements, FTC enforcement actions, or other adjudications. This gambit violates well-established standing and class certification law, and, if allowed to stand, will result in the unjust enrichment of persons who already received full or partial relief. These persons will receive more money from the combination of those settlements outside of this matter and the Full Settlement Relief sought here than the debt they have incurred.[6]

**C.    The Proposed Settlement is Unconstitutional and Unlawful.**

**1.    The Department Does Not Have the Authority to Cancel and/or Refund $6 Billion of Money Owed to the Taxpayer.**

At the hearing for preliminary approval of the settlement, this Court inquired whether there is a "a legal question whether the agency has the authority" to discharge $6 billion worth of debt *en masse*, without undertaking the specific procedure, inquiry, and adjudication codified in the borrower defense regulations. Dkt. 311 at 40:17-18. Very simply, the Department does not have any such legal authority.

The Department's claim of unlimited authority in the Motion for Final Approval warrants pause. Without regard to the borrower defense regulations, or constitutional separation of powers, the Department claims it can cancel $6 billion in debt owed to taxpayers at its discretion. Dkt. 323 at 21:25-22-10. The Department asserts that it can unilaterally cancel such borrower debt and issue refunds: (i) without any limit as to the amount of debt forgiven; (ii) without any determination that the applicant has a viable claim, and (iii) without any finding of institutional wrongdoing. Instead, the Department claims it can cancel billions of dollars' worth of debt and issue refunds because it considers it *too burdensome* to adjudicate the borrower defense applications. Dkt. 300 at 2:5-6; Dkt 323 at 17:1-2 and 22:10-24. In addition, the Department asserts that this decision is insulated from judicial review because it is done via a settlement. Dkt 323 at 23:12-24:8.

The Department's position is inconsistent with basic tenets of United States law: "We think

---

[6] One class member even requested that any refund of federal loans be disbursed directly to the students and not the private lenders thereby leaving the private lenders to hope the students use the refunded monies to repay their private loans. Aug. 19, 2022 Email to Court from Rae Mazzie.

it alien to our concept of law to allow the chief legal officer of the country to violate its laws under the cover of settling litigation. The Attorney General's authority to settle litigation for its government clients stops at the walls of illegality." *Exec. Bus. Media v. United States Dep't of Def.*, 3 F.3d 759, 762 (4th Cir. 1993). As the Office of Legal Counsel ("OLC") has acknowledged, "[m]ost obviously, basic constitutional restrictions on governmental action, whether or not such action is taken in the context of a litigation settlement, constrain the Attorney General's exercise of her settlement discretion." 23 Op. O.L.C. 126, 140, 1999 OLC LEXIS 45, *40 (Off. of the Att'y Gen. June 15, 1999).[7] The Department's own caselaw acknowledges that the Supreme Court holds that executive agencies do not have the authority to adopt a "policy that is so extreme as to amount to an abdication of its statutory responsibilities." *Weingarten v. Devos*, 468 F. Supp. 3d 322, 338 (D.D.C. 2020) (quoting *Heckler v. Chaney*, 470 U.S. 821, 833 (1985)). The settlement authority also "does not include license to agree to settlement terms that would violate the civil laws governing the agency." *Exec. Bus. Media*, 3 F.3d at 762.

Here, the Department's "practice—memorialized in multiple memoranda authored by the agency's Office of the General Counsel—demonstrates that the agency ***was bound to adjudicate*** affirmative borrower defense applications by analyzing relevant state law to determine whether applicants had established a right to relief, as well as to determine the appropriate remedy." *Vara v. Devos*, No. 19-12175-LTS, 2020 U.S. Dist. LEXIS 112296, at *72 (D. Mass. June 25, 2020). As discussed below, the Department is seeking Court approval of its decision to abdicate this requirement to adjudicate the applications. Yet, the Department points to no authority that allows it to completely abdicate all aspects of its own borrower defense regulations at its convenience, just because it has decided to settle a lawsuit. There also is no authority for the Department to cloak that abdication in an arbitrary list of over 150 schools for whom it claims has an "indicia of misconduct" as a "tool" to justify the settlement and free up its resources to follow its regulations.

Further, the Supreme Court just recently held that "the major questions doctrine . . . refers

---

[7] OLC opinions "reflect[ ] the legal position of the executive branch" and "are generally viewed as providing binding interpretive guidance for executive agencies." *Rashea C. P. v. Kijakazi*, No. SA CV 20-2280-E, 2022 U.S. Dist. LEXIS 18372, at *4 (C.D. Cal. Jan. 31, 2022) (internal quotation marks omitted).

to . . . agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022). Executive agency authority in this sphere requires "'clear congressional authorization' to regulate in that manner." *Id*. at 2614 (citation omitted). Relevant here:

> The United States Constitution exclusively grants the power of the purse to Congress, not the President. U.S. Const. art. I, § 9, cl. 7 (Appropriations Clause); U.S. Const. art. I, § 8, cl. 1 (Spending Clause). As Alexander Hamilton succinctly put it, Congress "commands the purse." The Federalist, No. 78. James Madison underscored the significance of that exclusive congressional power, stating, "[t]he power over the purse may [be] the most complete and effectual weapon with which any constitution can arm the immediate representatives of the people." The Federalist, No. 58.

*City & Cty. of S.F. v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018).

This Court recognized that it is the people (the taxpayers) who will bear the brunt of this settlement: ***It's the federal taxpayers, who will bear the brunt of the $6 billion*.**" Dkt. 311 at 14:2-4 (emphasis added). Yet the Department points to no "clear congressional authorization" that allows the executive branch to cancel and refund $6 billion owed to taxpayers. Pointing to the fact that the Secretary has the general power to administer federal student loans under 20 U.S.C. §§ 1082, 3441, 3471 (Dkt. 323 at 21:25-22:10) is insufficient. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes."). The Department's implicit assertion that Congress gave it a blank check to compromise all 43 million student loans under its administration fails to cite to "clear congressional authorization." No such authorization exists here.[8]

Indeed, up until just prior to this Final Approval Hearing, the Department recognized that

---

[8] The Department does not argue that the Department's, Office of the General Counsel, Memorandum re: The Secretary's Legal Authority for Debt Cancellation (Aug. 23, 2022) (available at https://perma.cc/LP87-NMCS) (the "August 2022 Memo") identifies any such clear authorization applicable here. Dkt. 323 at 23 n.9. The Biden administration has used the August 2022 Memo as the basis to unilaterally cancel more than $500 billion of student debt (the "Mass Student Debt Cancellation"). The Mass Student Debt Cancellation has already sparked several lawsuits. *See, Garrison v. U.S. Dept. of Ed., et al.*, 1:22cv1895, U.S. Dist. Ct., Indiana Southern; *State of Nebraska, et al v. Biden, et al.*, 4:22cv1040, U.S. Dist. Ct., Missouri Eastern; *Brown County Taxpayers Assoc. v. Biden, et al.*, 1:22-cv-01171, U.S. Dist. Ct., Wisconsin Eastern.

"Congress does not impliedly delegate a policy decision of massive economic and political magnitude as blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances, or the material modification of the repayment terms or amounts thereof, surely would be – to an administrative agency." U.S. Dep't of Educ., Office of the General Counsel, Memorandum re: Student Loan Principal Balance Cancellation Compromise, Discharge, and Forgiveness Authority (Jan. 12, 2021) at 8 (available at https://perma.cc/GNE9-ZDBK) (the "January 2021 Memo"). The Department's withdrawal of that memorandum after its authority to enter into this settlement was challenged on the grounds that the Memo was not "properly promulgated" (Dkt. 323 at 23 n.9) is of no moment. The Department does not argue here that the January 2021 Memo was substantively wrong. *Id*. In any event, the Department cannot avoid the Department's own recognition of the limits of its authority by simply withdrawing the previously binding legal opinion setting establishing those limits. *City of Arlington v. FCC*, 569 U.S. 290, 307 (2013) ("The fox-in-the-henhouse syndrome is to be avoided . . . by taking seriously, and applying rigorously, in all cases, statutory limits on agencies' authority."). Lastly, any argument that the Department cancelling and refunding $6 billion of debt, without first finding that any borrower established their claim (Dkt. 300 at 2:5-6; Dkt 323 at 17:1-2), is not a "blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances" is illogical. Per the settlement, the Department agreed to cancel and refund the debt of any person who previously filed an application who attended any of the more than 150 institutions listed on Exhibit C—no questions asked. This is unquestionably a blanket or mass cancellation.

## 2.     The Settlement Violates the Borrower Defense Regulations.

The fact that the proposed settlement expressly abdicates the Department's obligation to adjudicate borrower defense applications is worth emphasis. By providing automatic discharge of debt and refunds for Full Settlement Relief class members who have pending applications, the Settlement Agreement directly violates binding regulations created by the Department.

Those regulations authorize the Department to grant or deny borrower defense applications *only* after a process by which the Department: (1) receives a borrower's application that submits evidence supporting the borrower defense; (2) notifies the school of the pending application

(including providing a copy of the application and supporting evidence); (3) invites the school to respond and submit evidence; (4) considers the application and all applicable evidence; and (5) issues a written decision. 34 C.F.R. § 685.206(e)(8)-(11); 34 C.F.R. § 685.222(e). The Department fails to point to any regulation that allows it to grant relief outside of this process. *Vara*, No. 19-12175-LTS, 2020 U.S. Dist. LEXIS 112296, at \*72 ("the agency was bound to adjudicate affirmative borrower defense applications . . . to determine whether applicants had established a right to relief . . . ."). Yet, the Settlement Agreement eliminates this entire process and the borrowers' statutory burden to submit evidence establishing a basis for the borrower defense and relieves the Department of its duty to adjudicate these claims. *Heckler*, 470 U.S. at 833.

The Department's abdication of its obligations is especially prejudicial here because TCSPP and the other schools have a statutory due process right to respond to an application and submit their own evidence. 34 C.F.R. § 685.206(e)(10); 34 C.F.R. § 685.222(e). These due process rights are critical because the borrower defense regulations also provide an avenue for the Department to recoup the discharged loans from the school. 34 C.F.R. § 685.206(c)(3), (c)(4), (e)(16); 34 C.F.R. § 685.222(e)(7), (h)(1). At the preliminary approval hearing, the Department of Justice indicated that the Department might "seek to hold [the] schools liable" for the loans discharged by the settlement. Dkt. 311 at 14:2-6.[9] The Department has no authority to eliminate TCSPP's, and the other schools', due process rights as a matter of convenience, particularly after stated, without evidence, that these schools engaged in any wrongdoing, substantial or otherwise.

In short, the Department's agreement to forgo its own regulations and bypass the schools' rights to submit evidence in their defense is a violation of the law. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1116 (9th Cir. 2021) (holding that it is wrong to bind a party to a judgement where that party did not have an "adequate opportunity to litigate."); *Local No. 93, Int'l Ass'n of Firefighters v. Cleveland*, 478 U.S. 501, 529 (1986) ("[P]arties who choose to resolve

---

[9] The Department may also seek to leverage the purported "misconduct" to seek to impose a fine on TCSPP (34 C.F.R. § 668.84(a)(1)), suspend TCSPP's participation in Title IV or a Higher Education Act program (34 C.F.R. § 668.85(a)(1)), or even go so far as to terminate TCSPP's participation in Title IV or a Higher Education Act program (34 C.F.R. § 668.86(a)(1)).

litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement."). The Department has no authority to enter into such a settlement. *Exec. Bus. Media*., 3 F.3d at 762.

**D.     The Proposed Settlement Does Not Satisfy Rule 23(e).**

**1.     The Settlement Was Not Negotiated at Arm's Length.**

Rule 23(e)(2)(B) requires that the settlement be "negotiated at arm's length." *Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2021 U.S. Dist. LEXIS 187438, at *8 (E.D. Cal. Sep. 29, 2021) (courts must "consider whether the process by which the parties arrived at the settlement is the product of arm's length bargaining, rather than collusion or fraud.").

Any claim that this settlement was negotiated at arms-length by two adversarial parties should be met with some modicum of skepticism. The Department is the representative of the interests of United States —not of the class. Yet, this is an unprecedented case where a defendant negotiated an agreement which provides the class a benefit that is much more generous than what the class either sought or could receive if the case was litigated through trial. The claim that "the relief provided in the Agreement is consistent with what Class Members might reasonably expect to receive through litigation" (Dkt. 323 at 2:11-14) is hollow. The only relief Plaintiffs sought in this case was an injunction to compel the Department to adjudicate class members borrower defense applications, which the Department has already started processing again. Dkt. 1 and Dkt. 198. And that is the only relief they could have received had they prevailed at trial. But as noted in earlier, that claim became moot when the Department started processing applications again. In contrast, "this settlement not only skips over the adjudication [but] just cancels the loan . . . if you're a class member . . . you're getting a bonanza." Dkt. 311 at 40:11-15. And the class receives this "bonanza" at "taxpayer expense" (*id*. at 14:2-4) and at the expense of the due process rights of the Intervenors. The settlement even goes so far as to provide relief to Post-Class Applicants who are not class members, are not represented by the Plaintiffs' counsel and did not receive notice of the settlement. It is baffling that the Department would agree to provide relief to these third

parties who are not members of the class.[10]

The Parties have not articulated a non-collusive explanation of how such a "bonanza" was *adversarially* negotiated. Indeed, the Department's silence on its 180-degree turnaround on this issue is inexplicable. Notably, on the issue of whether *en masse* approval of all pending borrower applications like this one was available, on *June 23, 2022* the Department was unequivocal that:

> Such relief is not available under the APA and would mark an extraordinary intrusion, at an extraordinary cost to the public fisc, into the administration of a program that Congress has assigned to the Department, not Plaintiffs or this Court. The Supreme Court has made clear that lawsuits are not the proper means of bringing about such programmatic change, which necessarily entails the weighing of costs, benefits, and policy considerations that courts are ill-equipped to conduct.

Dkt, 249 at 2:20-25. In requesting final approval, outside of gesturing towards expediency and using the Full Settlement Relief class to clear the proverbial decks so it can start following its regulations, the Department has not articulated any good faith basis why it suddenly believes that the cancellation and refund of $6 billion is now legally permissible, why this relief is not an extraordinary cost to the public, and why it believes this kind of massive monetary relief is no longer only within the specific authority of Congress to grant. Dkt. 323 at 11:20-22 ("By granting automatic relief to Class Members who attended a listed school, the Department frees up its resources to provide the remaining Class Members with decisions more quickly."). Likewise, the Department does not point to any new Supreme Court authority issued since June 23, 2022, that holds that expediency is reason enough to allow the Department to agree to offer such relief.

In light of this unexplained sea change, and the relief provided to the Post-Class Applicants, it is difficult to discern how the proposed settlement was negotiated at arm's length.

### 2. Plaintiffs' Counsel Has Not Adequately Represented the Class.

The arbitrary nature of this settlement also specifically raises the specter of how it disadvantages certain students and puts into question Plaintiffs' counsel's adequacy under Rule 23(e)(2)(A). One of the objectors is a former student of the American Repertory Theatre at Harvard

---

[10] The Parties fail to explain how any settlement with the Post-Class Applicants can be binding as there is no "meeting of the minds" between the Post-Class Applicants and the Department. Dkt. 146 at 10:4 ("The … problem is that we have no meeting of the minds.")

("American Repertory"). The student objected to the fact that American Repertory was not listed on Exhibit C despite the Obama administration previously dubbing the American Repertory a predatory lender. Dkt. 323 at 16 n.7. The student accurately pointed out that this omission is a glaring example of an ethical conflict, as Plaintiffs' counsel was associated with Harvard for the majority of this litigation. *Id*. (Plaintiffs' counsel negotiated this settlement when they were employed by Harvard, only separating sometime after August 2022.) Dkt. 283 at ¶ 5. Plaintiffs' counsel offers no substantive response, outside of asserting their independence (without citation to any evidence, or authority in support of their claim). Dkt. 323 at 16 n.7.

Plaintiffs' counsel has offered no authority as to how they could negotiate a settlement that directly impacted both the interests of American Repertory students and Harvard. No such authority exists. *Natomas Gardens Inv. Grp. Ltd. Liab. Co. v. Sinadinos*, 2009 U.S. Dist. LEXIS 83391, at *25 (E.D. Cal. Sep. 14, 2009) (it is inappropriate to for class counsel to be affiliated with parties who are "diametrically opposed"). Certain American Repertory students may assert they had an interest in being included in the Full Settlement Relief Class. Harvard, on the other hand, had an interest in not being included in Exhibit C. The settlement arbitrarily excludes American Repertory students from the Full Settlement Relief Class, giving preferential treatment to class members who did not attend schools previously employing Plaintiffs' counsel. This too is wrong and taints the legitimacy of the settlement. And statements by Plaintiffs' counsel should not be given any assumption of reasonableness. Dkt. 323 at 12:20-23; *In re Patriot Am. Hosp. Inc. Sec. Litig.*, No. C-00-1300 VRW, 2005 U.S. Dist. LEXIS 40993, at *8 (N.D. Cal. Nov. 30, 2005) ("the court is reluctant to put much stock in lead counsel's pronouncements, given their obvious pecuniary interest in seeing the settlement approved").

### 3.    This Settlement is Unfair and Improperly Grants Certain Class Members Preferential Treatment.

The settlement also violates the remaining Rule 23(e) factors because the relief is not adequate and the settlement does not treat the class equitably. Fed. R. Civ. P. 23(e)(2) (C) and (D). Relief for the class is inadequate and inequitable where a settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust*

*Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). This settlement does exactly this.

An institution's inclusion into Exhibit C is arbitrary because it has been done without any evidentiary support. The arbitrariness is compounded by a lack of transparency. Despite TCSPP's inquiries, the Department has not disclosed the exact criteria used to determine which institutions were included in Exhibit C, or a way for an institution to be removed from Exhibit C. Instead, the Department simply claims automatic relief is warranted, without "further time-consuming individualized review," because there is "certain indicia of misconduct by the listed schools, including the high volume of Class Members with applications related to the listed schools . . . ." Dkt. 323 at 11:15-19. Yet, the Department simply has not reviewed the applications for the Decision Class members. In other words, there is no evidence before the Court that the claims of the Full Settlement Relief Class differ on the merits from those of the Decision Class, other than the Department has yet to review the Decision Class's claims. Such arbitrary and opaque lines cannot stand class settlement scrutiny. *Hanlon*, 150 F.3d 1011, 1020 ("*Amchem* instructs us to give heightened scrutiny to cases in which class members may have claims of different strength"). Under this settlement, a class member who does not have a viable borrower defense claim but who attended an institution listed on Exhibit C gets their debt (no matter what amount) cancelled and money refunded, while, even if in possession of a winning claim, a class member who attended an institution not listed on Exhibit C gets a Department promise to adjudicate their application in the future, which the regulations already require the Department to do. *Philliben v. Uber Techs., Inc.*, No. 14-CV-05615-JST, 2016 U.S. Dist. LEXIS 117629, 2016 WL 4537912, at *5 (N.D. Cal. Aug. 30, 2016) (undue preferential treatment where "the settlement proposes to compensate persons who haven't been injured, and it does so at the expense of persons who have been").[11]

Class Members who attended an Exhibit C school are therefore receiving preferential treatment for an unclear and arbitrary reason. As such, it is not surprising that "the most common objection, and . . . the category most likely to include Class Members" was that "borrowers asked

---

[11] The Parties made "corrections" to Exhibit C which they claimed to be "technical" but in fact were substantive: "Department proposes to remove four institutions that were erroneously included on the list[.]" Dkt. 317 at ¶ 17. This carelessness evidences just how arbitrary Exhibit C is.

to have the schools they attended added to Exhibit C." Dkt. 323 at 16:1-2. These objectors demonstrate the arbitrary nature of this settlement. *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) ("The settlement here draws an arbitrary distinction among class members with identical legal claims and injuries and allows [only] some to receive a cash award . . . . This is patently unfair, and counsels against approval of the proposed settlement.")

In general, all the objections submitted by persons related to scope of the settlement (Dkt. 323 at 16:1-20:24) are worthy of consideration. Notably, certain persons will not get any relief just because they consolidated or paid off their federal debts with private loans servicers and did not submit borrower defense applications (*id.* at 20:11-19). This too is arbitrary given that the Department has not done any inquiry into the merits of many of the applications, and instead granted cancellation and refund *en masse*. The rush of similarly situated persons without adjudicated claims (no matter how unmeritorious) to include themselves in this settlement is also understandable. For example, a TCSPP student who submitted a letter to the Court filed an application after hearing about the settlement but is still enrolled at TCSPP and is currently seeking her *second* degree from TCSPP. The Parties have made no representation that they have conducted a search and excluded all similarly situated students from the Full Settlement Relief Class. Similarly, some of the objections noted the unfairness of not rescinding the denials of the borrower defense applications which occurred prior to the Form Denials. As the decision to include persons into the Full Settlement Relief Class is arbitrary, so is the decisions to exclude any persons from that class.

The Department has conceded that it was guided by expedience and convenience. The Department stressed that "an institution's inclusion on Exhibit C is not based on a formal finding of misconduct or wrongdoing by the Department" (*id.* at 17:1-2) and "settlement relief does not constitute an approved or successful borrower defense claim" (Dkt. 300 at 2:5-6). The Parties rely on a refence to "extensive discovery" (Dkt. 323 at 2:15) that is a red herring. The Parties have not submitted any evidence to show that discovery included the viability of any class member's application, or evaluated any wrongdoing committed by any institution listed on Exhibit C, as opposed to the Department's processes related to the adjudication of the borrower defense

applications. Dkt. 323. Likewise the Parties have not submitted any evidence that TCSPP (or any other institution) engaged in any wrongdoing that harmed any class member. *Id*.

The Department admits that its substantive inquiry into deciding which schools to include in Exhibit C and which class members deserve monetary relief was guided by the "volume of Class Members with applications related to the listed schools" and decided it would "free[] up its resources" by including those schools in Exhibit C and granting these applicants $6 billion of relief. *Id*. at 11:15-23. TCSPP and Decision Class members should not suffer, and uninjured Full Settlement Relief Class members should not be rewarded, just because the Department considers it too burdensome to adjudicate the bulk of the applications before it. The distinction between the Full Settlement Relief Class and the Decision Class is simply arbitrary and cannot stand. *Philliben*, No. 14-CV-05615-JST, 2016 U.S. Dist. LEXIS 117629, at *5; *True.*, 749 F. Supp. 2d at 1069.

### 4.     This Settlement is Not in the Public Interest.

Before approving a settlement, courts should consider whether the settlement is consistent with the public interest. *Booth*, 13-cv-04921-JST, 2015 U.S. Dist. LEXIS 140723, at *11-12 n.3; *Ehrheart*, 609 F.3d at 59. Here, while a bonanza for certain class members (especially those without a viable claim), the Settlement Agreement is squarely against the public's interest.

*First*, "[i]t's the federal taxpayers, who will bear the brunt of the $6 billion" settlement. Dkt. 311 at 14:2-3. It is not in the public's interest for $6 billion of its money to be gifted to the class without any determination that the class members actually suffered harm.

*Second*, the public has an interest in the Department following its own regulations. It is not in the public's interest for the Department to abdicate its statutory obligations by agreeing to cancel and refund the $6 billion of debt on a *en masse* basis with no regard to the borrower defense regulations. *Supra* at § C.1. Such abdication by a federal regulator cannot stand.

*Third*, the public also has an interest in Congress deciding how to spend public funds, as the Constitution instructs. *Id*. An *en masse* discharge and refund of $6 billion of debt owed to the public is an action squarely within Congress' spending power, as the Department argued to this Court: "The Supreme Court has made clear that lawsuits are not the proper means of bringing about such programmatic change, which necessarily entails the weighing of costs, benefits, and

24

policy considerations that courts are ill-equipped to conduct." Dkt. 249 at 2:20-25.

**Lastly**, TCSPP, and the public, have an interest in the Parties' conclusory, evidence free claims of "substantial misconduct" not being validated as a basis for this this unlawful settlement. The Parties have not submitted a single piece of evidence to establish that any former TCSPP student suffered any cognizable injury as a result of TCSPP's conduct. Nor has it submitted any evidence that TCSPP engaged in any of the conduct that could give rise to a valid claim under the borrower defense regulations. And contrary to the Parties' unsubstantiated claim that "the settlement will not 'detrimentally affect' any interest [the Intervenors] may have," (Dkt. 323 at 24:17-25), it is obvious that reputational injury has and will continue to occur by continued accusations of misconduct from the Department, the Intervenors' primary federal regulator.

The borrower defense regulations are in place to ensure that *where* a claim meets the legal standard, a borrower receives the relief to which they are entitled. It is not in the public's interest to unfairly label over 150 schools as wrongdoers without evidence. Over half the schools listed on Exhibit C are still in operation and as for TCSPP, it continues to fulfill its mission to "provide[] an excellent education for careers in psychology and related behavioral and health sciences." The Department's smear of TCSPP's reputation must not be allowed to stand. Very simply, the public interest is not served by awarding billions of dollars' worth of relief based on spurious claims.

## V.   CONCLUSION

For all the reasons articulated in this Opposition, TCSPP respectfully requests that this Court deny the Motion for Final Approval and allow the Department to return to processing borrower defense claims in accordance with its regulations which provide the appropriate due process to the claimants and the institutions and ensures the protection of the public's interests.

Dated: October 6, 2022

Terance A. Gonsalves
Alexander Akerman
ALSTON & BIRD LLP

By: /s/  *Alexander Akerman*
      Alexander Akerman
Attorneys for Intervenor
THE CHICAGO SCHOOL OF PROFESSIONAL
PSYCHOLOGY

**CERTIFICATE OF SERVICE**

I, Attorney, certify and declare as follow:

1.      I am over the age of 18 and not a party to this action.

2.      My business address is 333 South Hope Street, 16th Floor, Los Angeles, CA 90071-1410.

3.      On October 6, 2022, I caused a copy of the ***Intervenor The Chicago School Of Professional Psychology's Opposition to the Motion for Final Approval of Settlement*** to be served upon counsel via the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct. Executed on October 6, 2022, at Los Angeles, California.


By:    */s/ Alexander Akerman*
           Alexander Akerman
Attorneys for Intervenor
THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY