1  Jesse Panuccio (*pro hac vice*)
   jpanuccio@bsfllp.com
2  Jason Hilborn (*pro hac vice*)
   jhilborn@bsfllp.com
3  **BOIES SCHILLER FLEXNER LLP**
   401 E. Las Olas Blvd., Ste. 1200
4  Fort Lauderdale, FL  33301
   Telephone: (954) 356-0011
5

6  John J. Kucera (SBN 274184)
   jkucera@bsfllp.com
7  **BOIES SCHILLER FLEXNER LLP**
   725 S. Figueroa St., 31st Fl.
8  Los Angeles, CA 90017
   Telephone: (213) 629-9040
9

10 *Counsel for Everglades College, Inc.*

11               **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13  THERESA SWEET, et al., | Case No. 3:19-cv-03674-WHA |
| 14         Plaintiffs, | **INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT** |
| 15    v. | |
| 16  MIGUEL CARDONA, in his official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION, | |
| 17 | |
| 18         Defendants. | Date:    November 3, 2022 |
| 19 | Time:    11:00 a.m. |
| 20 | Room:    12, 19th Floor |
| 21 | Judge:   Honorable William Alsup |
| 22 | (Class Action) |
| | (Administrative Procedure Act Case) |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

I.    BACKGROUND ...................................................................................................... 1

    A.    The Borrower-Defense Process ................................................................... 1

    B.    This Lawsuit................................................................................................. 2

    C.    The Proposed Settlement ............................................................................. 3

        1.    Path 1: Immediate, Automatic Debt Cancellation and Refunds to Class ... 4

        2.    Path 2: Delayed, Automatic Debt Cancellation and Refunds to Class ....... 5

        3.    Path 3: Potential Automatic Debt Cancellation and Refunds for Every
            Non-Class Individual Who Holds a Federal Student Loan........................ 5

    D.    Keiser University and Everglades University.......................................... 6

II.   ARGUMENT ........................................................................................................... 6

    A.    The Court Lacks Subject Matter Jurisdiction over this Case................................. 6

        1.    This Case Is Moot. ..................................................................................... 6

        2.    Plaintiffs Lack Standing............................................................................. 8

    B.    There Is No Viable Rule 23(b)(2) Class for the Proposed Settlement.................. 10

    C.    If Entered, the Proposed Settlement Would Violate the APA. ........................... 14

        1.    The Proposed Settlement Is Arbitrary and Capricious. ............................ 14

        2.    The Proposed Settlement Unlawfully Amends the Borrower-Defense
            Regulations without Notice and Comment. ............................................... 17

        3.    The Proposed Settlement is Contrary to Law. .......................................... 18

    D.    The Proposed Settlement Violates Due Process. .............................................. 18

    E.    The Proposed Settlement Violates the Accardi Doctrine. ................................... 20

    F.    The Government Lacks Authority to Enter the Proposed Settlement.................. 21

        1.    The Department Lacks Statutory Authority for the Proposed
            Settlement. ............................................................................................... 21

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

        2.     The Court can review the Proposed Settlement........................................ 24

   G.    Collusion Is the only Explanation for this "Bonanza" Settlement........................ 24

III.    CONCLUSION........................................................................................................... 25

CERTIFICATE OF SERVICE

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

*Alcaraz v. INS,*
    384 F.3d 1150 (9th Cir. 2004) ............................................................. 20

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ............................................................. 24

*Already, LLC v. Nike, Inc.,*
    568 U.S. 85 (2013) ................................................................................ 6

*Alvarez v. Smith,*
    558 U.S. 87 (2009) ................................................................................ 8

*Am. Fed'n of Labor & Cong. of Indus. Orgs. v. OSHA,*
    965 F.2d 962 (11th Cir. 1992) ...................................................... 14, 15

*Amchem Prod., Inc. v. Windsor,*
    521 U.S. 591 (1997) ...................................................................... 10, 12

*Arizonans for Official English v. Arizona,*
    520 U.S. 43 (1997) .............................................................................. 10

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) .............................................................................. 9

*Campbell v. Facebook, Inc.,*
    951 F.3d 1106 (9th Cir. 2020) ............................................................... 8

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers,*
    941 F.3d 1195 (9th Cir. 2019) ............................................................... 7

*Campbell-Ewald Co. v. Gomez,*
    577 U.S. 153 (2016) .............................................................................. 8

*Caperton v. A.T. Massey,*
    556 U.S. 868 (2009) ............................................................................ 20

*Cholakyan v. Mercedes-Benz USA, LLC,*
    281 F.R.D. 534 (C.D. Cal. 2012) .................................................... 13, 14

*Chrysafis v. Marks,*
    141 S. Ct. 2482 (2021) ........................................................................ 19

*Conservation Nw. v. Sherman,*
    715 F.3d 1181 (9th Cir. 2013) ............................................................. 17

*Davidson v. O'Reilly Auto Enterprises*,
 968 F.3d 955 (9th Cir. 2020) ........................................................................ 12

*Dep't of Commerce v. New York*,
 139 S. Ct. 2551 (2019) ............................................................................. 14, 16

*DHS v. Regents*,
 140 S. Ct. 1891 (2020) ................................................................................. 17

*E. Bay Sanctuary Covenant v. Garland*,
 994 F.3d 962 (9th Cir. 2020) ........................................................................ 16

*Ellis v. Costco Wholesale Corp.*,
 657 F.3d 970 (9th Cir. 2011) .................................................................... 12, 13

*Emami v. Nielsen*,
 465 F. Supp. 3d 991 (N.D. Cal. 2020) ........................................................... 21

*Frank v. Gaos*,
 139 S. Ct. 1041 (2019) ............................................................................... 6, 8

*Genesis Healthcare Corp. v. Symzyk*,
 569 U.S. 66 (2013) ........................................................................................ 10

*Genuine Parts Co. v. EPA*,
 890 F.3d 304 (D.C. Cir. 2018) .................................................................. 15, 16

*Jin v. Shanghai Original, Inc.*,
 990 F.3d 251 (2d Cir. 2021) .......................................................................... 10

*Jones v. Micron Tech. Inc.*,
 400 F. Supp. 3d 897 (N.D. Cal. 2019) ............................................................. 8

*Jones v. United States*,
 529 U.S. 848 (2000) ...................................................................................... 23

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ........................................................................................ 9

*Marathon Oil Co. v. E.P.A.*,
 564 F.2d 1253 (9th Cir. 1977) ...................................................................... 18

*Martinez v. United States*,
 670 F. App'x 933 (9th Cir. 2016) .................................................................... 7

*Mathews v. Eldridge*,
 424 U.S. 319 (1976) ...................................................................................... 19

*Mazzei v. Money Store*,
 829 F.3d 260 (2d Cir. 2016) .......................................................................... 13

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

*Mendez v. Immigration & Naturalization Serv.*,
563 F.2d 956 (9th Cir. 1977) ........................................................................ 21

*Montilla v. I.N.S.*,
926 F.2d 162 (2d Cir. 1991) .......................................................................... 21

*Morton v. Ruiz*,
415 U.S. 199 (1974) ....................................................................................... 20

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ................................................................................... 14, 15

*Nat'l Treasury Emps. Union v. Horner*,
854 F.2d 490 (D.C. Cir. 1988) ................................................................ 14, 15

*Pennsylvania Higher Educ. Assistance Agency v. Perez*,
416 F. Supp. 3d 75 (D. Conn. 2019) ............................................................. 22

*Portland Audubon Soc. v. Endangered Species Comm.*,
984 F.2d 1534 (9th Cir. 1993) ...................................................................... 16

*Pub. Serv. Comm'n of Ky. v. FERC*,
397 F.3d 1004 (D.C. Cir. 2005) .................................................................... 20

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ................................................................................. 22, 23

*Ralpho v. Bell*,
569 F.2d 607 (D.C. Cir. 1977) ...................................................................... 19

*Rivera v. Patel*,
2016 WL 6427893 (N.D. Cal. Oct. 31, 2016) ................................................. 7

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ................................................................. 24, 25

*Shoshone Bannock Tribes v. Reno*,
56 F.3d 1476 (D.C. Cir. 1995) ...................................................................... 24

*Smith v. Univ. of Washington, L. Sch.*,
233 F.3d 1188 (9th Cir. 2000) ........................................................................ 7

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................................ 25

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .................................................................................... 8

*United States v. Carpenter*,
526 F.3d 1237 (9th Cir. 2008) ...................................................................... 24

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

*United States v. Hercules, Inc.*,
   961 F.2d 796 (8th Cir. 1992) ............................................................. 24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................... 11, 13

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ........................................................... 10

*Weingarten v. DeVos*,
   468 F. Supp. 3d 322 (D.D.C. 2020) ................................................. 24

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022) ..................................................................... 23

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ......................................................... 12

*Zerezghi v. U.S. Citizenship & Immigration Servs.*,
   955 F.3d 802 (9th Cir. 2020) ........................................................... 19

**Statutes**

5 U.S.C. § 706 ................................................................. 2, 3, 14, 18

5 U.S.C. § 551 ............................................................................... 17

5 U.S.C. § 553 ............................................................................... 17

20 U.S.C. §§ 1071–1087-4 ............................................................ 22

20 U.S.C. § 1077 ........................................................................... 23

20 U.S.C. § 1078 ........................................................................... 23

20 U.S.C. § 1082 ..................................................... 17, 21, 22, 23, 24

20 U.S.C. § 1087 ............................................................... 1, 22, 23

20 U.S.C. § 1099 ............................................................................. 2

20 U.S.C. § 1098 ........................................................................... 23

**Regulations**

34 C.F.R. § 685.206 .................................................................. 1, 19

34 C.F.R. § 685.222 .................................................................. 1, 19

34 CFR § 668.15 ............................................................................. 2

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

34 CFR § 668.171 ............................................................................................... 2

34 C.F.R. §§ 668.81–99 ...................................................................................... 2

60 Fed. Reg. 37,768 (July 21, 1995) .................................................................. 1

81 Fed. Reg. 75,926 (Nov. 1, 2016) ................................................................... 1

84 Fed. Reg. 49,788 (Sept. 23, 2019) ................................................... 1, 19, 22

**Other Authorities**

*Auth. of the United States to Enter Settlements Limiting the Future Exercise of*
   *Exec. Branch Discretion*,
   23 U.S. Op. Off. Legal Counsel 126 (1999) ....................................... 17, 21

Everglades College, Inc. ("ECI") respectfully submits that the Court cannot and should not grant final approval to the Proposed Settlement because doing so would be unlawful, unreasonable, and unjust. As outlined below and in previous briefing, the Proposed Settlement unlawfully causes significant programmatic, financial, and reputational harm to ECI. *See* Docs. 261, 298. ECI accordingly lodges the following objections and opposition to the Motion for Final Approval of Settlement, Doc. 323 ("Motion"). ECI also joins the objections lodged by the other Intervenors.

## I.    BACKGROUND

### A.    The Borrower-Defense Process

For Direct Loans, the Secretary of Education must "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment." 20 U.S.C. § 1087e(h). The Department of Education ("Department" or "ED") has done so in 1995 (60 Fed. Reg. 37,768 (July 21, 1995)), in 2016 (81 Fed. Reg. 75,926 (Nov. 1, 2016)), and in 2019 (84 Fed. Reg. 49,788 (Sept. 23, 2019)). These regulations established a "borrower-defense" ("BD") program allowing borrowers of Direct Loans to seek debt cancellation if they allege and can prove that their school misled them or engaged in certain misconduct related to their education.

The BD process proceeds in two steps. In Step One, the Department must provide notice to the school of a BD claim. 34 C.F.R. §§ 685.206(c)(2) & (e)(10), 685.222(e)(3)(i). For loans issued before July 1, 2020, the Department must "consider[] … [a]ny response or submissions from the school." *Id.* § 685.222(e)(3)(i). A Department official then adjudicates the applications "through a fact-finding process" and concludes with a written decision. *Id.* §§ 685.222(e)(3)–(4). For loans issued after July 1, 2020, the Department must "provide a copy" of the application to the school, affirmatively "invite the school to respond and to submit evidence" in its defense, *id.* § 685.206(e)(10), and "consider … the school's response." *Id.* § 685.206(e)(11)–(12). The Department then must issue a written decision with reasoning. *Id.* Step Two occurs only if—after a Step-One adjudication—the Department finds a school engaged in misconduct, grants a BD application, and discharges debt. In that case, the Department may initiate proceedings to recover the discharged amount from the school. *See id.* §§ 685.206(c)(3) & (e)(16), 685.222(e)(7).

Regardless of whether the Department engages in a Step-Two recoupment proceeding, the misconduct findings against a school in a Step-One proceeding stand.  These Step-One findings can form the predicate for significant programmatic, financial, and reputational consequences aside from recoupment, such as fines and limitations, suspensions, or terminations of a school's right to participate in federal aid programs.  *See* Doc. 288-1 at ¶¶ 10, 12 (citing 34 C.F.R. §§ 668.81–99); *see also* 20 U.S.C. § 1099c(c); 34 CFR §§ 668.15, 668.171 (factors affecting school's "Financial Responsibility Composite Score," which can affect participation in federal aid).

### B.    This Lawsuit

In 2019, borrowers sued the Department, alleging a "policy of inaction" on their BD applications.  Doc. 46 at 12.  Plaintiffs brought two counts, alleging "unlawfully withheld and unreasonably delayed agency action," 5 U.S.C. § 706(1), and "arbitrary and capricious final agency action," *id.* § 706(2). *See* Doc. 1 ¶¶ 377-404.  Plaintiffs sought to "compel[] the Department to start granting or denying their borrower defenses, " but  did "not ask this Court to adjudicate their borrower defenses." Doc. 1 at ¶ 10.  This Court later dismissed the second count.  Doc. 41.

Plaintiffs moved to certify a class under Rule 23(b)(2), stating they were "not seek[ing] this Court's review of the Department's adjudication of individual borrower defenses" and instead sought "a single injunction requiring the Department to start and to continue adjudicating borrower defenses."  Doc. 42 at 6.   Because "*the Department ha[d]*"—at the time—"*decided zero applications since June 2018*," Doc. 46 at 8, this Court certified a Rule 23(b)(2) class:

> All people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*.

Doc. 46 at 14.  "This class definition," the Court held, "shall apply for all purposes, ***including settlement***." *Id.* (emphasis added).

After summary judgment briefing, the Parties executed a settlement agreement, Doc. 97-2, but this Court denied final approval because there was "no meeting of the minds." Doc. 146 at 10.

1    The Court noted it was "disappointed" because it had hoped to "get reasoned decisions, even if

2    reasoned denials, to hundreds of thousands of student-loan borrowers." *Id.* at 11.

3         On March 28, 2021, Plaintiffs supplemented their complaint with claims that ED had

4    adopted an unlawful "presumption of denial" policy in violation of 5 U.S.C. § 706(2) and due

5    process. Doc. 198 ¶¶ 436–455. Plaintiffs sought an order declaring class members "are entitled

6    to a decision, on the merits" and that form denials are invalid and compelling the Department "to

7    lawfully adjudicate each and every borrower defense application." *Id.* at 76–77.

8         On January 25, 2022, the Parties reported to the Court they were again engaged in

9    settlement negotiations but provided no details. Doc. 213 at 1-2. On June 22, 2022, the Parties

10   filed a Joint Motion for Preliminary Approval of Settlement. Doc. 246. Attached thereto was a

11   fully executed settlement agreement. Doc. 246-1 (the "Proposed Settlement"). On September 22,

12   2022, the Parties moved for final approval of the Proposed Settlement. Doc. 323 ("Motion").

13        On June 23, the government filed a summary judgment motion. Doc. 249. The government

14   represented that "the Department has already provided the very relief that Plaintiffs sued to obtain"

15   and thus the case "***is moot and must be dismissed***." *Id.* at 1–2 (emphasis added). The government

16   also represented there is no longer a basis for the Court to grant class-wide relief. *Id.* at 2.

17   **C.    The Proposed Settlement**

18        The Proposed Settlement, if approved, will displace the BD adjudication process required

19   by statute and rules. It would provide blanket debt cancellation that Congress has refused to enact;

20   it would sweep far beyond the certified class to include every student loan borrower in the country;

21   and it would dispense with procedural or substantive rights for institutions accused of wrongdoing.

22        The Proposed Settlement establishes two categories of borrowers. The first category "the

23   Class," is the certified class. Doc. 246-1 at 5. The "Class" also includes persons whose BD

24   applications were denied after class certification but before execution of the Proposed Settlement.

25   *Id.* at 5-6. The Class includes about "264,000 members who received more than an estimated $7.5

26   billion" in loans. Doc. 246 at 2. The second category, "Post-Class Applicants," includes any

27   person who "submits a borrower defense application after the Execution Date … but before the

28

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

Final Approval Date." Doc. 246-1 at 11.  In other words, Post-Class Applicants can include ***any person who currently holds a federal student loan***.[1]

The Proposed Settlement establishes three paths to debt cancellation and refunds of prior payments, potentially encompassing every student loan in the country, as follows:

### 1.    *Path 1: Immediate, Automatic Debt Cancellation and Refunds to Class*

For Class members who have debt "associated with the schools, programs, and School Groups listed" in Exhibit C to the Proposed Settlement, the Department will, within twelve months of final judgment, automatically: (i) "discharge" the debt, (ii) refund "all amounts … previously paid to the Department," and (iii) delete the credit tradeline associated with the debt.  Doc. 246-1 at 4 (Definition "S"), 6–7.  If there is a "substantial question" as to whether debt "is associated with" a listed school, that "question will be resolved in favor of the Class Member (*i.e.*, in favor of granting relief)" without further inquiry, adjudication, or process provided to the school.  *Id.* at 7.  The Parties estimate that 75% of the Class (200,000 borrowers) will receive this automatic debt cancellation and refunds without individualized adjudication of their claims.  Doc. 246 at 3.

Exhibit C lists 153 institutions, including ECI's Keiser University and Everglades University.  The Proposed Settlement offers no explanation as to why any school is on the Exhibit C list, but the motion lodging the Proposed Settlement offered a single sentence of explanation:

> [B]ecause the Department has identified common evidence of institutional misconduct by the schools, programs, and school groups identified in Exhibit C to the Agreement, it has determined that every Class Member whose Relevant Loan Debt is associated with those schools should be provided presumptive relief under the settlement due to strong indicia regarding substantial misconduct by the listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools.

Doc. 246 at 17-18.  The present Motion adds that the Exhibit C list "was created based on information available to the Department at the time the agreement was executed regarding demonstrated or credibly alleged misconduct, as well as a review of the comparative rate of Class

---

[1] The Parties seek to ensure this group is as large as possible.  *See* Doc. 323 at 18 (detailing efforts to recruit and encourage BD claims).

Members with applications concerning the listed schools." Doc. 323 at 16. After preliminarily approval, the Parties removed some schools from the Exhibit C list that "were erroneously included" due to unexplained "clerical errors" and added a new school. Doc. 317 at 2.

### 2. *Path 2: Delayed, Automatic Debt Cancellation and Refunds to Class*

For Class members whose debt is not associated with an Exhibit C school—about 68,000 borrowers, Doc. 246 at 3—the Proposed Settlement establishes a new "review" process that is not found in any BD rule. The "review" requires a series of presumptions that essentially guarantee a finding of wrongdoing by any accused school and, thereafter, debt cancellation and refunds. First, the Department must "presume[] to be true" all allegations in the borrower's application. Doc. 246-1 at 7–8. Second, the Department must presume that any applicant reasonably relied on any alleged misrepresentation or omission by a school, even if the borrower does not or cannot allege reliance. *Id.* at 8. Third, "[n]o borrower defense application … will be denied on the basis of insufficient evidence." *Id.* Fourth, the Department may not apply any statute of limitations. *Id.* In short, because a borrower's claim cannot be denied for (1) false allegations, (2) insufficient evidence, (3) lack of reliance, or (4) lack of timeliness, *every* applicant will receive debt cancellation and refunds of prior payments.

### 3. *Path 3: Potential Automatic Debt Cancellation and Refunds for Every Non-Class Individual Who Holds a Federal Student Loan*

For "Post-Class Applicants" (again, this can include every person who holds a federal student loan), the Proposed Settlement requires ED to "review" their applications pursuant to the standards established in the 2016 Rule, even though the BD regulations normally require different standards for many of these applications. Doc. 246-1 at 11. If ED does not complete the "review" within thirty-six months, regardless of reason, ED must cancel the applicant's debt and refund prior loan payments, regardless of the merits of the application. *Id.* In other words, if the Department of Education encourages every loan holder in America to submit a borrower-defense application prior to this Court's final approval of the Proposed Settlement, within three years the

***Department of Education can unilaterally cancel ALL federal student loan debt—and refund prior payments on student debt***—by simply not acting.

### D.     Keiser University and Everglades University

ECI is a Florida nonprofit corporation that runs an independent, nonprofit university system serving 20,000 students across twenty-seven campuses and online.  Doc. 261-3 ¶ 5.  ECI achieves its educational mission through two institutions: Everglades University and Keiser University.  *Id.*  Both schools have been nationally recognized, with Keiser University ranking as ***the best*** school in the nation for upward social mobility[2] and seventh place for graduation rates for private, nonprofit, nonresidential campuses, *id.* ¶¶ 5, 8.  Everglades University has "Top Performer" status for upward social mobility and first place rankings for online aeronautics and environmental programs.  *Id.* ¶¶ 6-7.  Despite this record, the Department's unexplained inclusion of ECI, Keiser, and Everglades on the Exhibit C List is already causing reputational harm.  *Id.* ¶ 12.

Prior to lodging the Proposed Settlement, ED had not informed ECI that *any* BD claims had been filed by its current or former students.  Doc. 261-3 ¶ 10.  ED has not informed ECI as to why it is on the Exhibit C List or what "demonstrated or credibly alleged misconduct" ED relied upon to place ECI on the Exhibit C List.  The Court granted intervention to ECI and other schools ("Intervenors") "for the … purpose of objecting to and opposing" the settlement.  Doc. 322 at 2.

## II.    ARGUMENT

### A.     The Court Lacks Subject Matter Jurisdiction over this Case.

"A court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute."  *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019).   A court lacks subject matter jurisdiction if a case is moot or if the plaintiffs lack standing.

#### 1.     *This Case Is Moot.*

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).  This suit was filed

---

[2] https://www.usnews.com/best-colleges/keiser-university-21519/overall-rankings.

during the last presidential administration to challenge the Department's "alleged 'blanket refusal' to adjudicate borrower defenses," which "'bridges all [of Plaintiffs'] claims.'"  Doc. 249 at 10. Years have passed, the presidential administration (and, with it, policy) has long since changed, and the Department has taken many actions on BD applications and student loans that render the claims in this case entirely moot.[3]  The "[s]tate of affairs" that led to the filing of this lawsuit "no longer exists" because the Department long ago began acting on BD claims and has agreed to reconsider the alleged form-denial notices.  Doc. 249 at 10, 24.  Indeed, at the time the Proposed Settlement was lodged, ED had already "approved tens of thousands of borrower defense applications."  *Id.* at 1; *see also* Doc. 249-1 at ¶¶ 9–16.  It is thus no longer true that each class member is subject to a "policy of inaction."  Doc. 46 at 12.  Instead, "[d]uring the pendency of this case," the Department eliminated any policy, pattern, or practice of unlawful delay, so "[P]laintiffs' request to compel agency action on their application[s] is moot" and should be "dismiss[ed]."  *Martinez v. United States*, 670 F. App'x 933, 934 (9th Cir. 2016).[4]  That is why the federal government informed the Court *five months* ago that the case is moot, Doc. 249 at 1, 10, 24, and why even Plaintiffs concede mootness is now a "risk" to their case, Doc. 323 at 12-13.

In short, the federal government's position is that this Court no longer has subject matter jurisdiction to take any action in this case.  Yet, incredibly, ED and DOJ simultaneously ask this Court to exercise that nonexistent jurisdiction to approve a settlement agreement so sweeping that it has little analogue in American jurisprudence.  This, the Court cannot do.  Subject matter jurisdiction is an absolute and nonwaivable prerequisite for the exercise of federal judicial power.

---

[3] The Parties incorrectly state the "litigation was stayed during much of th[e] time" they were secretly negotiating the Proposed Settlement and the Department was providing relief to the Class.  The litigation was not stayed.  An order permitting a single deposition was stayed.  Order Denying Motion to Quash, *In re Subpoena Served on Former Secretary of Educ.*, No. 3:21-mc-80075 (N.D. Cal. May 19, 2021), Doc. 54.  Plaintiffs chose, of their own accord, not to advance the litigation during that time.

[4] *See also Smith v. Univ. of Washington, L. Sch.*, 233 F.3d 1188, 1193–95 (9th Cir. 2000), *overruled on other grounds by Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019); *Rivera v. Patel*, 2016 WL 6427893, at *5 (N.D. Cal. Oct. 31, 2016).'").

Anticipating this obvious objection, the Motion suggests the Supplemental Complaint transformed this case into one about *granting* each BD claim "immediately." Doc. 323 at 9. But the Supplemental Complaint asserts no such claim. For the Department's alleged policy of issuing form denials, the Supplemental Complaint seeks declaratory and injunctive relief, nothing more. *See* Doc. 198 ¶¶ 439, 447, 455. Plaintiffs have never claimed that denying BD applications on the merits after adjudication would be unlawful—nor could they do so on a class-wide basis because such claims would require individualized adjudication based on the facts of each BD application.[5]

Additionally, even if the above did not render this case moot, the Department's separate action to cancel most student loans does. Far from a policy of inaction, the Department has announced it is now cancelling federal loans entirely, without regard to whether borrowers have submitted BD applications. *See* Ex. A. The Department states it is cancelling debt for ***40 million*** borrowers and ***20 million*** will have their debt completely erased. *See* Ex. B. According to the Parties, there are a total 43 million federal-loan borrowers, Doc. 323 at 18 n.9, so it is statistically likely that most, if not all, Class Members no longer have any claim for relief. The Parties have not shown that any named Plaintiff will still carry student-loan debt following this executive action, and "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

### 2.    *Plaintiffs Lack Standing.*

The obligation of a federal court to "assure" itself that plaintiffs have Article III standing "extends to court approval of proposed class action settlements," *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1116 (9th Cir. 2020), and "federal courts lack jurisdiction if no named plaintiff has standing," *Gaos*, 139 S. Ct. at 1046. "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 141 S. Ct. at 2208. As noted,

---

[5] Moreover, a case is moot when the plaintiffs have "received full redress for the injuries *asserted in their complaint*," so the possibility that the Proposed Settlement would grant relief beyond that is irrelevant. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 164 n.5 (2016); *see also Alvarez v. Smith*, 558 U.S. 87, 92 (2009). And Plaintiffs cannot amend their complaint in a motion for settlement approval. *See, e.g.*, *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 927 (N.D. Cal. 2019) ("[P]arties may not amend their pleadings by brief.").

1  the Motion attempts to circumvent mootness by wrongly asserting that the Complaint seeks

2  substantive relief beyond a restart of adjudications and the withdrawal of alleged form denials.  If,

3  however, the Complaint is construed to include such claims, Plaintiffs lack standing.

4      First, with respect to Paths 1 and 2—which automatically grant BD applications—

5  Plaintiffs need to show that they (and other Path 1 or Path 2 Class members) *actually would*

6  *succeed on the merits of their BD applications*.  Otherwise, it could not be said that there is "a

7  causal connection between the injury and the conduct complained of" because the Class members'

8  applications may not be meritorious—and, if they are not, then denials of their applications are not

9  attributable to ED's policies.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiffs

10  have never alleged facts sufficient to establish that conclusion for themselves, let alone for every

11  member of the subgroup that has debt associated with programs listed on Exhibit C.

12      Moreover, the relief that flows from Exhibit C List on ED's apparent individualized

13  determinations about each school, yet no named Plaintiff claims to have debt associated with ECI

14  and thus no named Plaintiff has standing for relief from debt associated with ECI.

15      Second, with respect to Path 3, the Parties have failed to explain how any named Plaintiff

16  has standing to assert the claims of, or obtain relief for, persons who—by the Parties' own

17  admission—"could not have been affected by any of the practices that Plaintiffs alleged were

18  unlawful." Doc. 323 at 18.  *See Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff

19  who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary

20  stake in litigating conduct of another kind, although similar, to which he has not been subject.").

21      Third, Congress authorized ED to establish BD regulations only for Direct Loans, not

22  FFEL Loans.  *See infra* 22.  Only **one** named Plaintiff claims to have originally borrowed a Direct

23  Loan. Compl. ¶ 284 (Archibald).  The rest allege they borrowed FFEL Loans, *see id.* ¶¶ 244, 264,

24  305, 324, 340, 361, and of those, only three claim to have consolidated into Direct Loans, *see id.*

25  ¶¶ 264 (Apodaco); 305 (Deegan); 324 (Hood).  That leaves at most four named Plaintiffs who

26  *might* have standing, assuming they could demonstrate meritorious claims for BD relief.

27

28

* * *

For these reasons, the Court has no option but to reject the Proposed Settlement and dismiss this case for lack of ongoing subject matter jurisdiction.  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).  "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013).  Plaintiffs here have received all they ever sought by filing this action, and it is not possible to convert this case into some new lawsuit through a Proposed Settlement.

**B.     There Is No Viable Rule 23(b)(2) Class for the Proposed Settlement.**

Alternatively, if the Court accepts the Parties' claims about how this lawsuit has transmogrified at the settlement stage, then Plaintiffs cannot possibly maintain class certification.  "[D]istrict courts must ensure that a certified class satisfies Rule 23 throughout the litigation" and must "alter or decertify the class if that is no longer the case." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262 (2d Cir. 2021); *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013).  Here, the Parties' redefinition of this lawsuit has undermined most prerequisites for maintaining a class action under Rule 23(a) and (b)(2).

First, it is facially apparent that "Post-Class Applicants" cannot be a part of the settlement and that the Parties cannot settle on their behalf or provide relief to them through a settlement of this case.  No named Plaintiff is a member of the "Post-Class Applicants" group and the Parties concede these individuals are "not within the class definition," Doc. 323 at 12 n.3, which this Court ruled "shall apply for all purposes, ***including settlement***," Doc 46 at 14 (emphasis added).  Accordingly, Plaintiffs have not shown that *any* of the Rule 23 requirements have been met for the Post-Class Applicants.  The Parties oddly state that this sub-class is "not formally part of the Rule 23 analysis." Doc. 323 at 12 n.3.  But that is not how class actions work.  A class—or a subclass— must meet the requirements of Rule 23 and be certified by a court to receive class relief, whether through litigation to judgment or through settlement. *See Amchem Prod., Inc. v. Windsor*, 521

U.S. 591, 620 (1997).  Accordingly, Path 3 relief in the Proposed Settlement cannot be approved by this Court.  And because Plaintiffs have made clear that their agreement to the settlement is an all-or-nothing proposition, Doc. 287 at 19–20, the entire Proposed Settlement must be rejected.[6]

Second, as to Paths 1 and 2, the Class Representatives' claims are no longer common or typical, as required by Rule 23(a)(2) and (3).  At the class-certification stage, Plaintiffs originally claimed they are "not seek[ing] … review … of individual borrower defenses."  Doc. 42 at 6.  This Court thus concluded that the claims asserted by Plaintiffs were common to and typical of the Class because they challenged "a single uniform policy—namely, the Department's alleged 'blanket refusal' to adjudicate borrower defenses."  Doc. 46 at 9.  But if the Parties' assertions in the Motion are accepted, this is no longer true.  The Parties claim that this lawsuit "*was*" about "get[ting] an injunction to require" adjudication of BD applications.  Doc. 323 at 9 (emphasis added).[7]  But "*now*," the Proposed Settlement "involves … the substance and content of [the Department's] decision letters denying such applications," *id.* (emphasis added)—and deeming those applicants proven and granted.  The Parties emphasize that the case has a "voluminous" Class, *id.* at 22, and "challenges all aspects of the Department's process of adjudicating a significant number of pending BD applications," including "the substance of certain of the decisions that the Department has rendered." *Id.* at 22.  These "complicated matters" leave "considerable uncertainty about the appropriate remedy," particularly given the "*differences among Class Members' circumstances*." *Id.* 10–12.  Moreover, the relief that flows from Exhibit C relies on ED's individualized determinations about each school, yet no named Plaintiff has debt associated with ECI, and thus no named Plaintiff can be a representative for Class members' ECI-associated debt.

Accordingly, based on the Parties' own description of the supposed case they now seek to settle, there is no "single common question" that could unite the Class's claims. *Wal-Mart Stores,*

---

[6] There is also no certified sub-class of individuals who had a BD application denied through an alleged form denial letter.  A full Rule 23 analysis is required for this sub-group, too.

[7] At the certification stage, this Court asked Class Counsel if this case was about "anything more than" an injunction requiring ED to adjudicate BD applications.  Counsel "assured" the Court that "it was only to get an order to adjudicate the cases."  Doc. 311 (Tr. 40:1–9).

1    *Inc. v. Dukes*, 564 U.S. 338, 359 (2011).[8]

2          <u>Third</u>, in light of the Proposed Settlement's division of the Class into discrete relief Paths,

3    the named Plaintiffs are inadequate representatives.  "To determine whether named plaintiffs will

4    adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and

5    their counsel have any conflicts of interest with other class members and (2) will the named

6    plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Ellis v. Costco

7    Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011).  As to named Plaintiffs, it is clear from the

8    Motion, and the divergent relief in the Proposed Settlement, that there exist conflicts of interest.

9    Path-1 named Plaintiffs (of which there are five) and Class members receive immediate and

10   automatic debt cancellation while Path-2 named Plaintiffs (of which there are two) and Class

11   members are delayed by a "review" process (albeit a chimerical one).  *See* Doc. 323 at 9 (noting

12   that the settlement encompasses a tradeoff between Path 1 and Path 2 in terms of allocating

13   Department resources).   And individuals who fall within Path 3 receive different and less

14   preferential treatment still—and they are not represented by *any* named Plaintiff.  The sub-groups'

15   interest in, or receipt of, divergent relief means the named Plaintiffs cannot possibly be conflict

16   free or adequately represent all parties.  *See Ellis*, 657 F.3d at 986 (plaintiffs eligible for

17   compensatory relief are not adequate representatives of "class members whose primary goal is …

18   injunctive relief"); *see also Amchem*, 521 U.S. at 627 ("[A]dversity among subgroups requires that

19   the members of each subgroup cannot be bound to a settlement except by consents given by those

20   who understand that their role is to represent solely the members of their respective subgroups.").

21         As for Class Counsel, it is equally clear a conflict of interest existed throughout the

22   negotiation of the Proposed Settlement.  During the entire year-long negotiation, Class Counsel

23   was employed by the Legal Services Center of Harvard Law School, which is part of Harvard

24

25   ───────────────
     [8] *See also Davidson v. O'Reilly Auto Enterprises*, 968 F.3d 955, 967 (9th Cir. 2020) ("If
26   there is no evidence that the entire class was subject to the same [unlawful] practice, there is no
     question common to the class."); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175
27   (9th Cir. 2010) ("The test of typicality is whether other members have the same or similar injury,
     whether the action is based on conduct which is not unique to the named plaintiffs, and whether
28   other class members have been injured by the same course of conduct.").

University.  *See* Doc. 246-1 at 27 (signature block for Plaintiffs' counsel); Doc. 323 at 16 n.7 (admitting "Class Counsel operated as a unit within Harvard Law School").  Yet the interests of Harvard University are squarely implicated by Path 3, which changes the lawful adjudicatory process that will apply to BD applications submitted by Harvard students.  Harvard's interests are also likely implicated by Path 2, though Class Counsel has not been transparent with this Court as to whether any Harvard students are members of the Path-2 subgroup.  *See* Doc. 323 at 16 n.7 (hinting that at least one Harvard student may be a member of the class).  The Parties claim that this conflict can be ignored because these Harvard attorneys "exercised their independent legal judgment," but that is not how lawyer conflicts work.  Only a *client* can resolve a conflict, not a lawyer through unilateral assurances that he or she will ignore the conflict.

Fourth, Rule 23(b)(2) "allows class treatment only when a single injunction or declaratory judgment would provide relief to each member of the class," Doc. 46 at 12 (citing *Wal-Mart*, 564 U.S. at 360), but the relief in the Proposed Settlement cannot satisfy this requirement.  Critically, even though Plaintiffs never sought compensatory relief, the Proposed Settlement provides (and Plaintiffs now claim they are entitled to) such relief—including, among other things, refunds of past payments.  But "Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.'"  *Ellis*, 657 F.3d at 987 (quoting *Wal-Mart*, 564 U.S. at 360-61); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 559-61 (C.D. Cal. 2012) ("injunction" requiring reimbursement program constituted impermissible individualized monetary relief).[9]

Moreover, as to injunctive and declaratory relief, this Court previously held class certification was permissible under Rule 23(b)(2) because "the Department's alleged policy of inaction applies to the proposed class as a whole" and "[t]his common harm inflicted by an alleged

---

[9] Rule 23's rigorous class certification requirements help protect "absent class members … by ensuring that any class claim that proceeds to final judgment—and thus binds them—is fairly and appropriately the subject of class treatment."  *Mazzei v. Money Store*, 829 F.3d 260, 268 (2d Cir. 2016).  Harm to absent class members here is not hypothetical.  For example, the Proposed Settlement is silent on the tax implications to borrowers yet requires them to "forever waive … all claims … presently known or unknown" over "tax payments."  Doc 246-1 at 21.

1    common policy is curable by a single injunction." Doc. 46 at 13. But if the Motion is accepted at

2    face value, the harms now alleged by Plaintiffs do not flow from a single, common policy and are

3    not curable by a single injunction or declaratory judgment reaching such a single, common policy.

4    If the Court sought—outside of a settlement—to award the non-compensatory relief provided in

5    the Proposed Settlement, it would have to (1) order the non-compensatory relief provided to Path-

6    1 Class Members; (2) order Defendants to adjudicate applications of Path-2 Class Members under

7    the new "review" process envisioned in the Settlement Proposal; and (3) order Defendants to apply

8    the 2016 Rule in adjudicating all applications of Path-3 Post-Class Applicants, as well as order the

9    Department to deem granted all applications not fully adjudicated within three years. Providing

10   this multivariate and individualized relief would require far more than a single injunction or

11   declaratory judgment reaching a single policy.[10]

12        **C.      If Entered, the Proposed Settlement Would Violate the APA.**

13            **1.      *The Proposed Settlement Is Arbitrary and Capricious.***

14        Agency action is arbitrary and capricious and must be set aside under 5 U.S.C. § 706(2)(A)

15   if the agency fails to "articulate a satisfactory explanation for its action including a 'rational

16   connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S.,*

17   *Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Mere conclusory statements … are

18   simply inadequate." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. OSHA*, 965 F.2d 962, 976

19   (11th Cir. 1992) ("*AFL-CIO*"). Instead, an agency must "present … data to support its rationale,"

20   *Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 492 (D.C. Cir. 1988), that "explain[s] why"

21   the agency made the determination at issue, *State Farm*, 463 U.S. at 48. In short, as this Court has

22   explained in this very case: "'[A]gencies [must] offer genuine justifications for important

23   decisions, reasons that can be scrutinized by courts and the interested public.'" Doc. 146 at 12

24   (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573–76 (2019)). To justify Exhibit

25   C and Path-1 relief, the Department claims to have "determined" that ***every*** BD application

26
27       [10] *See Cholakyan*, 281 F.R.D. at 559 ("Plaintiff cannot seek certification under Rule
     23(b)(2) by combining an array of remedies, some of which will benefit only certain subsets of the
28   class, and contending that each member … can avail himself … of one or more ….").

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

1  associated with *153 schools* should be automatically granted and "immediate relief" provided.

2  Doc. 246 at 3; Doc. 323 at 9.  This sweeping determination is arbitrary and capricious.

3  First, the Department alternatively (and in decreasing order of certitude) says that its

4  determination was based on "strong indicia regarding substantial misconduct," Doc. 246 at 3,

5  "sufficient indicia of misconduct," Doc. 323 at 9, or "certain indicia of misconduct," *id.* at 11, by

6  listed schools—and that it was "based on information available to the Department" "regarding

7  demonstrated or credibly alleged misconduct" and "a review of the comparative rate of Class

8  Members with applications concerning the listed schools."  *Id.* at 16.  The Department fails to

9  specify any of the "indicia of misconduct," much less which indicia were "strong," which were

10  "sufficient," and which were "certain."  It never specifies which "information available to the

11  Department" it relied upon.  It fails to even explain which schools made the list because of

12  "demonstrated … misconduct," versus "credibly alleged misconduct," versus merely the "rate of

13  … applications concerning the listed school[]"—much less to explain what constitutes

14  "demonstrated," "credibly alleged," or a sufficiently high "comparative rate."  These vague,

15  "[m]ere conclusory" statements, *AFL-CIO*, 965 F.2d at 976, are the opposite of a "satisfactory

16  explanation," *State Farm*, 463 U.S. at 43, that "present[s] … data," *Horner*, 854 F.2d at 492, to

17  justify an agency determination.   As this Court has held, the "lack of explanation" around BD

18  decisionmaking is "galling," and "perfunctory" explanations cannot be credited.  Doc. 146 at 14.[11]

19  Second, an agency "cannot ignore evidence that undercuts its judgment; and it may not

20  minimize such evidence without adequate explanation." *Genuine Parts Co. v. EPA*, 890 F.3d 304,

21  312 (D.C. Cir. 2018).  That is exactly what ED did here.  Prior to lodging the Proposed Settlement,

22  the Parties had filed only one other document relating to ECI.  *See* Doc. 193-3 at 40–50.  In that

23  document, ED revealed it had "reviewed a sample of 50 allegations" for various subsets of

24  borrower-defense allegations against ECI "to identify potential trends."  *Id.* at 43.  ED found that

---

26  [11] As the price for intervention, the Court ruled that Intervenors cannot engage in discovery
27  to learn whether the Department's determination was backed by data or simply the product of
collusive backroom dealing with Class Counsel. *See* Doc. 311 (Tr. 49:1–24); Doc. 322 at 2.  But
28  that also means ED is stuck with the record it has presented, which is no record at all.

1   the "borrowers failed to provide relevant supporting evidence," that the applications were not

2   "supported by evidence," and that the allegations even on their face "are not the type that would

3   warrant relief." *Id.* at 43–45.   ED concluded it "has not identified evidence that suggests

4   Everglades is participating in fraudulent or illegal activity that would support borrower defense

5   discharges." *Id.* at 41.   Despite this exculpatory evidence—the *only* specific evidence about ECI

6   identified by ED to date—ED still "determined" that "substantial misconduct" occurred at ECI.

7   Doc. 246 at 17–18.   The failure to grapple with evidence contrary to this determination is

8   quintessential arbitrary action that must be set aside under the APA.  *See Genuine Parts*, 890 F.3d

9   at 312; *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 980 (9th Cir. 2020) (agency action

10  arbitrary and capricious because "evidence in the record contradict[ed] the agencies' conclusion").

11  As this Court has put it in this very case, "'[w]e are presented ... with an explanation for agency

12  action that is incongruent with what the record reveals about the agency's … decisionmaking

13  process." Doc. 146 at 12 (quoting *Commerce*, 139 S. Ct. at 2575).

14      <u>Third</u>, while neither the public nor affected parties had any input into the determination

15  process (or even know what the determination is based upon), Class Counsel—that is, counsel for

16  ECI's accusers—played an integral but still undisclosed role in the formulation of the

17  determination that ECI committed misconduct.  As the Parties explain, they secretly negotiated the

18  Proposed Settlement, including Exhibit C and the determination it relies upon, for more than a

19  year, Doc. 323 at 2, and Plaintiffs assert that not a word can be changed, Doc. 287 at 19-20.  This

20  kind of undisclosed insider influence of agency adjudication is a paradigmatic APA violation.  *See*

21  *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1539–41 (9th Cir. 1993).

22      <u>Fourth</u>, the Department's conduct since executing the Proposed Settlement demonstrates

23  the arbitrariness of, and lack of explanation for, its Exhibit C determination process. The Parties

24  announced the Exhibit C determination with great fanfare, including Class Counsel publicly stating

25  that inclusion on the Exhibit C list proved that a school "cheated" its students.  *See* Ex. C (quoting

26  Eileen O'Connor).  Yet, *after* this Court granted preliminary approval, the Parties backtracked and

27  said they had "erroneously" included some schools on the Exhibit C List and erroneously excluded

28

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

another school.  Doc. 317 at 2.  The Parties provided no explanation for any of these "errors," further shrouding in mystery the process and substance that led to the consequential determination.

Fifth, the Supreme Court recently reaffirmed that inadequately explained reversals of agency policy and legal conclusions are arbitrary and capricious and cannot stand.  *See DHS v. Regents*, 140 S. Ct. 1891 (2020) (invalidating DHS reversal of DACA policy for lack of sufficient explanation).  The Department's provision of blanket, automatic debt cancellation and refunds reverses, without explanation, the extensively reasoned conclusion it came to just last year that 20 U.S.C. § 1082(a)(6)—the statute on which it relies here, Doc. 323 at 22—does not provide a basis for "student loan principal balance cancellation, compromise, discharge, or forgiveness by administrative decree."  *See* Mem. from Principal Deputy General Counsel, U.S. Department of Education to Secretary of Education at 4 (Jan. 12, 2021).  The Parties try to distinguish the prior memo as applying only to debt cancellation "on a blanket or mass basis," Doc. 323 at 23 n.13, but the Proposed Settlement *does* apply on a mass basis—namely, to hundreds of thousands of borrowers through Paths 1 and 2, and to *all* borrowers through Path 3.

### 2.   *The Proposed Settlement Unlawfully Amends the Borrower-Defense Regulations without Notice and Comment.*

The APA requires agencies to engage in notice-and-comment rulemaking for any "statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency."  5 U.S.C. §§ 551(4), 553.  Accordingly, a settlement cannot "permanently and substantially amend[] an agency rule that would have otherwise been subject to statutory rulemaking procedures."  *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1187 (9th Cir. 2013).  Indeed, if the APA "require[s] the agency to proceed only pursuant to notice and comment rulemaking," that "preclude[es] the agency from making an enforceable promise" in a settlement agreement "to undertake regulatory action through means other than the notice and comment procedure."  *Auth. of the United States to Enter Settlements Limiting the Future Exercise of Exec. Branch Discretion*, 23 U.S. Op. Off. Legal Counsel 126, 163-64 (1999).

1       The Proposed Settlement violates this APA requirement by creating three new agency

2  processes for resolving BD claims, all of which rewrite the adjudicatory processes required by

3  lawfully promulgated regulations. Path 1, as this Court has already stated, simply "skips over" the

4  required "adjudication and just cancels the loan." Doc. 311 (Tr. 40:11–15). Path 2, according to

5  the Parties themselves, creates an entirely new "streamlined review process" that is

6  "significant[ly]" different from "the current applicable regulation." Doc. 323 at 12. Indeed, Path

7  2 creates so many presumptions in favor of the BD applicant, that it, too, essentially skips over

8  adjudication in any meaningful sense of the term. Path 3, available to ***all*** borrowers of federal

9  student loans, amends the BD regulations by applying the 2016 regulatory standards to all loans,

10  even those for which the 2019 regulations should apply. And Path 3 also skips over the required

11  adjudication if it is not complete in three years—a procedure not found in any BD regulation.

12  Accordingly, by adopting each Path in the Proposed Settlement, the Department would amend its

13  entire BD process without engaging in the required notice-and-comment rulemaking.

14            **3.**     ***The Proposed Settlement is Contrary to Law.***

15       The APA forbids "agency action … not in accordance with law." 5 U.S.C. § 706(2)(A).

16  For the same reasons the Proposed Settlement unlawfully amends the borrower-defense

17  regulations without notice and comment, each Path also is unlawful because execution of the new

18  processes would violate duly promulgated BD regulations and the statute that requires them.

19      **D.**    **The Proposed Settlement Violates Due Process.**

20       For many of the same reasons that the Proposed Settlement is arbitrary and capricious, the

21  Proposed Settlement—if applied to BD applications implicating ECI—would violate ECI's due

22  process rights. Path 1 relies on ED's having already "determined" that every school on the Exhibit

23  C list, including ECI, engaged in "substantial misconduct." Doc. 246 at 3; *see also* Doc. 323 at 9.

24  ECI was provided no notice that this determination process was occurring, and it was provided no

25  opportunity to be heard regarding that determination. Yet "administrative decisions" that "closely

26  resemble judicial determinations … require similar procedural protections," *Marathon Oil Co. v.*

27  *E.P.A.*, 564 F.2d 1253, 1261 (9th Cir. 1977), and "[a]n opportunity to meet and rebut evidence

28

utilized by an administrative agency has long been regarded as a primary requisite of due process."
*Ralpho v. Bell*, 569 F.2d 607, 628 (D.C. Cir. 1977); *see also Zerezghi v. U.S. Citizenship & Immigration Servs.*, 955 F.3d 802, 813 (9th Cir. 2020) (evidence supporting the government's case "must be disclosed" beyond "vague reference[s] to unspecified records").  Far from providing due process, ED provided no process; it simply acted as a Star Chamber and announced its findings against ***153 schools***.  Indeed, ED departed so significantly from any semblance of due process that it allowed ECI's accusers, in an ex parte and secret fashion, to fashion the determination.  "This scheme violates the … longstanding teaching that ordinarily 'no man can be a judge in his own case' consistent with the Due Process Clause."  *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021).

Moreover, Path 1 "skips over" the adjudicatory processes required by regulations before ED makes such a determination.  Doc. 311 (Tr. 40:12).  The Department's BD regulations give ECI notice[12] and a right to "meet and rebut evidence" through *two* different steps: Step One—the lawful adjudication of allegations contained in a BD application; and Step Two—recoupment or other related disciplinary proceeding.  *See supra* 1–2. The Department therefore already decided that these procedures add "value" and that requiring them is worth any "fiscal and administrative burdens."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Indeed, as recently as 2019, ED concluded that Step One proceedings provide important protections for schools' concrete interests, stating that "afford[ing] institutions the opportunity to respond to allegations against the institution during the adjudication process for the borrower's claim" would "reduce the likelihood that … schools will be burdened by unjustified claims."  84 Fed. Reg. 49,788, 49,825 (Sept. 23, 2019). The Proposed Settlement unlawfully sweeps away these process protections.[13]

---

[12]  The Department *still* has not provided notice to ECI of any individual BD application related to the school, even though such notice is required by the regulations, *see* 34 C.F.R. § 685.206(c)(2); *id.* § 685.222(e)(3)(i); *id.* § 685.206(e)(10), and even though ECI's presence on Exhibit C is predicated on the existence of such applications.

[13]  The Proposed Settlement even strips ECI's right to dispute if a borrower's debt is associated with ECI, as any "substantial question" in that regard "will be resolved in favor of the Class Member (i.e., in favor of granting relief)."  Doc. 246-1 at 7.

1    The Department's justification for Path 1 adds insult to the due process injury.  It states

2    that dispensing with the schools' process rights is a method of freeing up the "time and resources"

3    "to provide the other relief" in the Settlement Agreement.  Doc. 323 at 9, 19.  In other words, the

4    Department is trading off ECI's due process protections to preserve the rights of others.

5    The existence of Step Two recoupment proceedings does not cure the due process

6    violations inherent in eliminating Step One protections.  *See Pub. Serv. Comm'n of Ky. v. FERC*,

7    397 F.3d 1004, 1012 (D.C. Cir. 2005) (rejecting agency argument that rehearing procedure cured

8    due-process violation of "announc[ing] its decision sua sponte without prior notice to the parties"

9    because "[c]onsidering petitioners' arguments" after the fact "is not the same thing as allowing

10   them to present evidence on the issue").  Moreover, even if no recoupment proceeding ever occurs,

11   the existence of a Step One determination (or any other derogatory BD-related determination) can

12   have significant programmatic, financial, and reputational consequences for a school.  *See supra*

13   2.  Although ED tries to minimize its "determination" of "demonstrated or credibly alleged

14   misconduct," Doc. 323 at 16—by asserting that it is not "formal finding of misconduct," Doc. 323

15   at 17—ED notably still never denies that it will seek recoupment from ECI, or take any other

16   negative action, upon final approval of the Proposed Settlement.  *See* Doc. 298 at 11–15.

17   Finally, even if ECI were removed from Exhibit C, application of Paths 2 and 3 still would

18   violate ECI's due process rights.  Path 2 eliminates ECI's rights under the 2019 Rule and adopts

19   so many presumptions in favor of the borrower that a determination in the borrower's favor is

20   essentially guaranteed, again depriving ECI of a "fair trial."   *Caperton v. A.T. Massey*, 556 U.S.

21   868, 876 (2009).  And Path 3 at a minimum also strips ECI's rights under the 2019 Rule, and strips

22   *all* of ECI's rights if ED takes more than three years to process the Path 3 applications.

23   **E.      The Proposed Settlement Violates the *Accardi* Doctrine.**

24   Under the *Accardi* doctrine, "it is incumbent upon agencies to follow their own

25   procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974).  They must abide by their own regulations

26   and sub-regulatory guidance, especially where the guidance confers benefits on individuals or is

27   intended to protect their interests. *See Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004)

28

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

1  (collecting cases); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991).  Although the "doctrine is

2  premised on fundamental notions of fair play underlying the concept of due process," it "stand[s]

3  on its own," *Emami v. Nielsen*, 465 F. Supp. 3d 991, 996–97 (N.D. Cal. 2020), separate from the

4  Due Process Clause, *Mendez v. Immigration & Naturalization Serv.*, 563 F.2d 956, 959 (9th Cir.

5  1977).  So even if the Proposed Settlement does not violate due process, all three Paths violate the

6  *Accardi* doctrine by flouting the BD regulations.  *See supra* 18–21.

7      **F.    The Government Lacks Authority to Enter the Proposed Settlement.**

8      "[T]he considerations and terms that inform and structure a settlement must be

9  traceable … to a discernable source of statutory authority."  23 U.S. Op. Off. Legal Counsel at

10  137.  The Department cannot identify such a source for what Plaintiffs concede is "a discharge of

11  quite a significant number and amount of loans," Doc. 311 (Tr. 35:14–17)—or, in other words, en

12  masse debt cancellation.  And the Attorney General's discretion to settle litigation cannot save it.

13      **1.    *The Department Lacks Statutory Authority for the Proposed Settlement.***

14      The Department relies exclusively on 20 U.S.C. § 1082(a)(6) as its statutory authority for

15  the Proposed Settlement, claiming that this lone subsection grants "explicit authority" to

16  "compromise claims of and against the Department arising out of the federal student loan

17  programs," Doc. 323 at 21–22, apparently including the power to "forgive $6 billion in student

18  loans without going through the borrower-defense process," Doc. 303 at 2.  There are at least three

19  problems with this argument.

20      First, the plain text of Subsection 1082(a)(6) is to the contrary.  The statute provides: "In

21  the performance of, and with respect to, the functions, powers, and duties, vested in him by ***this***

22  ***part***, the Secretary may … enforce, pay, compromise, waive, or release any right, title, claim, lien,

23  or demand, ***however acquired***, including any equity or any right of redemption."  20 U.S.C.

24  § 1082(a)(6) (emphases added).  Subsection 1082(a)(6) says nothing about "claims … *against* the

25  Department," Doc. 323 at 21–22 (emphasis added), and instead applies only to "claim[s] …

26  *acquired*" by the Department.  The claims here are *against* the Department, so Subsection

27  1082(a)(6) provides no authority to settle.

28

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

1  And why does Subsection 1082(a)(6) employ the "acquired" language?  Because it applies

2  only to FFEL loans (i.e., loans made by non-federal lenders that the Department might later

3  acquire), which is the other plain-text reason the subsection offers no authority for the settlement

4  here.  Section 1082 is in Part B of the Higher Education Act, 20 U.S.C. §§ 1071–1087-4, which

5  addresses the FFEL Loan program.  So, when Subsection 1082(a)(6) refers to "compromis[ing] …

6  claims … acquired" by the Secretary in "the performance of … the functions, powers, and duties,

7  vested in [the Secretary] by *this part*," that means the Secretary's subsection 1082(a)(6) authority

8  applies to FFEL loans.  *See Pennsylvania Higher Educ. Assistance Agency v. Perez*, 416 F. Supp.

9  3d 75, 96 (D. Conn. 2019).  The subsection does not grant authority for all "federal student loan

10  programs," Doc. 323 at 22, and does not grant authority related to Direct Loans and borrower-

11  defense, which is found in Part D, 20 U.S.C. § 1087e(h).  Indeed, ED has previously recognized it

12  "*does not have the authority to discharge … FFEL loans* for borrowers who assert borrower

13  defense to repayment claims with respect to their Direct Loans" because Congress provided only

14  that "a borrower may assert a borrower defense to repayment to 'a loan made under this part,'

15  referring to the Direct Loan Program" and "FFEL loans are made under the FFEL Program, and

16  not the Direct Loan Program."  84 Fed. Reg. 49,788, 48,800 (Sept. 23, 2019) (emphasis added).[14]

17  Because ED concedes that "the vast majority" of loans "at issue here" are "direct loans," Doc. 311

18  (Tr. 14:10–12), it does not have authority for most relief specified in the Proposed Settlement.

19  Second, even for FFEL Loans, Subsection 1082(a)(6) does not provide authority for en

20  masse loan forgiveness.  Subsection 1082(a)(6) instead is a summary grant of "[g]eneral powers"

21  tied to the Secretary's "perform[ing] … the functions, powers, and duties" more specifically

22  granted to and required of him in Part B.  "[I]t is a commonplace of statutory construction that the

23  specific governs the general."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639,

24  645 (2012).  "This canon has full application … to statutes such as the one here, in which a general

25  authorization and a more limited, specific authorization exist side-by-side."  *Id.*  In such a situation,

---

[14] The Department reiterated this view at the preliminary-approval hearing, explaining that "borrower defense regulations are a right that students who have certain types of loans, *specifically Title IV direct loans*, have."  Doc. 311 (Tr. 12:13–21 (emphasis added)).

the canon "avoids … 'violat[ing] the cardinal rule that … effect shall be given to every clause and part of a statute.'" *Id*.  Part B attaches many specific terms, conditions, and benefits to FFEL loans.[15]  These include authorization to discharge FFEL Loans under specific conditions, on specific terms, and up to specific amounts.[16]  It is these specific "powers" and "duties" for which Subsection 1082(a)(6), at most, gives the Secretary "[g]eneral power[]" to "perform."

Third, the canon of constitutional avoidance and the major-questions doctrine precludes reading Subsection 1082(a)(6) to give ED authority for blanket debt cancellation.  The Department's reading of Subsection 1082(a)(6) leaves the Secretary with exclusive authority to eliminate a *$1.6 trillion* industry at his sole discretion.[17]  Such a reading would raise significant constitutional questions over the delegation of legislative power and should thus be avoided. *Jones v. United States*, 529 U.S. 848, 857 (2000).  Moreover, under the major-questions doctrine, the Supreme Court "presume[s] that 'Congress intends to make major policy decisions itself, not leave those decisions to agencies.'" *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022).  Congress also has "conspicuously and repeatedly declined," *id.* at 2610, to discharge student debt en masse, while making clear that the Executive Branch has no power to do so.[18]  And it is "telling" that the Department has "never relied" on this authority for blanket debt cancellation. *Id.* at 2608.  Indeed, for its recent decree that it is cancelling student debt for many borrowers, ED relies entirely on *different* statutory authority:  the HEROES Act, 20 U.S.C. §§ 1098aa-1098ee.  Thus, not only has ED never relied on 20 U.S.C. § 1082(a)(6) for blanket debt cancellation, it also does not appear eager to do so again.  That is likely because the "vague statutory grant" in Subsection 1082(a)(6) to which ED clings here "is not close to the sort of clear authorization required" for such sweeping authority. *West Virginia*, 142 S. Ct. at 2614.

---

[15] *E.g.*, 20 U.S.C. §§ 1077, 1077a, 1078, 1078-2(a)(2), 1078-3, 1078-7, 1080a.

[16] 20 U.S.C. §§ 1078-10, 1078-11, 1078-12, 1087.

[17] *See* U.S. Dep't of Education, Federal Student Loan Portfolio, Summary, https://studentaid.gov/data-center/student/portfolio.

[18] *See* Hon. Nancy Pelosi, *House Speaker Weekly Briefing*, C-SPAN, at 14:24-16:22 (July 28, 2021), https://www.c-span.org/video/?513769-1/house-speaker-pelosi-holds-news-conference.

1

### 2.       *The Court can review the Proposed Settlement.*

2       The Parties argue that the Secretary's decision to settle this lawsuit is "presumptively

3  unreviewable," Doc. 323 at 22, and that the Attorney General's same decision is "presumptively

4  immune from judicial review," *id.* at 24.  They are wrong twice over.

5       The Parties' reliance on *Weingarten v. DeVos*, 468 F. Supp. 3d 322 (D.D.C. 2020), for the

6  notion that the Secretary's "compromise authority" is presumptively unreviewable, is misplaced.

7  *See* Doc. 323 at 22.  That case turned on the term "may" in Subsection 1082(a)(6), which

8  *Weingarten* held gave the Secretary discretion over *whether* to use that authority, 468 F. Supp. at

9  338.  But *Weingarten* did not address *the scope* of authority Subsection 1082(a)(6) provides.

10 Questions over whether "an agency exceeded its legal authority" are the bread and butter of Article

11 III review.  *See United States v. Carpenter*, 526 F.3d 1237, 1241–42 (9th Cir. 2008).

12      As for the Attorney General's discretion, binding precedent "makes clear" that claims that

13 "allege that the Attorney General circumvented federal law by entering into [a] settlement … are

14 reviewable" because his authority to settle "stops at the walls of illegality." *Id.* at 1242. *Shoshone*

15 *Bannock Tribes v. Reno*, 56 F.3d 1476 (D.C. Cir. 1995), on which the Parties rely, Doc. 323 at 24,

16 confirms this same principle, explaining that "statutes may limit the Attorney General's

17 discretion"[19] and that "laws governing agency conduct may limit the Attorney General in

18 conducting litigation on an agency's behalf." *Id.* at 1481.  As explained above, ED has no authority

19 for the Proposed Settlement.

20      This Court already once rejected the Secretary and Attorney General's purportedly

21 unreviewable decisions to settle this case.  Doc. 146.  Nothing stops it from doing so again.

22      ### G.      **Collusion Is the only Explanation for this "Bonanza" Settlement.**

23      Class settlements involve an "inherent risk of collusion." *Roes, 1-2 v. SFBSC Mgmt., LLC*,

24 944 F.3d 1035, 1048 (9th Cir. 2019).  Accordingly, "the district court has a fiduciary responsibility

25 to ensure" that a settlement is "not a product of collusion." *Allen v. Bedolla*, 787 F.3d 1218, 1223

26

27  ---

   [19] These statutory restrictions are the "clear and unambiguous directive[s] from Congress"
28 referred to in *United States v. Hercules, Inc.*, 961 F.2d 796, 798 (8th Cir. 1992).

(9th Cir. 2015).  Even mere "signs of implicit collusion," if not properly investigated, preclude settlement approval.  *Roes*, 944 F.3d at 1049.  The Ninth Circuit is not "concern[ed] only with overt misconduct" or "explicit expression or secret cabals," but also with collusion that is "implicit in the circumstances" and whether the settlement is fair "to all concerned."  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

Here, Class Counsel is employed by an advocacy center whose self-stated mission is to attack an entire sector of the education industry, *see* Ex. D, and who represents individuals accusing schools of misconduct.  The Department negotiated with Class Counsel, in secret, for a year, with both Parties even refusing to respond to the Ninth Circuit's questions about their clandestine process.  *See* Brief for Petitioner at 4, *In re: Dep't of Education*, No. 21-71108 (9th Cir. Apr. 18, 2022), ECF 28.  When they finally announced the Proposed Settlement, it was unlike anything heretofore approved by a federal court: a complete "skip[ping] over" of the regulatory regime to provide a "bonanza" of uncapped *billions* in debt cancellation and refunds; injunctive relief that could never be achieved through litigation to judgment; the announcement of an agency determination of "substantial misconduct" by *153* different institutions that were not provided even a shred of due process; and the inclusion of perhaps hundreds of thousands of individuals who are not in the certified class.  And all this while the government maintains the case is moot and this Court has no jurisdiction.  This breathtaking deal also just happens to line up *perfectly* with the policy and political goals of Class Counsel's advocacy organization—a "grand slam."  Doc. 311 (Tr. 40:14).

This Court's analysis must extend beyond "conclusory statement[s] … that 'the settlement is the product of serious, non-collusive, arm's length negotiations," which are "insufficient."  *Roes*, 944 F.3d at 1050 n.13.  If ever collusion were "implicit in the circumstances," *Staton*, 327 F.3d at 960, these are the circumstances.

### III.   CONCLUSION

For the foregoing reasons, ECI respectfully asks this Court to deny the Joint Motion for Final Approval of Settlement.

1

Dated: October 6, 2022                    Respectfully submitted,

2

3

                                  *s/ Jesse Panuccio*

Jesse Panuccio (*pro hace vice*)

4

jpanuccio@bsfllp.com

Jason Hilborn (*pro hac vice*)

5

jhilborn@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**

6

401 E. Las Olas Blvd., Ste. 1200

7

Fort Lauderdale, FL  33301

T: (954) 356-0011

8

9

John J. Kucera

jkucera@bsfllp.com

10

**BOIES SCHILLER FLEXNER LLP**

725 S. Figueroa St., 31st Fl.

11

Los Angeles, CA 90017

T: (213) 692-9040

12

13

*Counsel for Everglades College, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO JOINT MOTION FOR
FINAL APPROVAL OF SETTLEMENT

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on October 6, 2022, I caused to be electronically filed the foregoing

3   INTERVENOR EVERGLADES COLLEGE, INC.'S OPPOSITION AND OBJECTIONS TO

4   JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT with the Clerk of the Court via

5   CM/ECF.  Notice of this filing will be sent by email to all parties by operation of the Court's

6   electronic filing systems.

7

8   Dated:  October 6, 2022

9

10                                     By: *s/ Jesse Panuccio*
                                           Jesse Panuccio (*pro hac vice*)
11                                         *Attorney for Everglades College, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28