JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, California 94611
Tel.: (510) 271-8443
Fax: (510) 868-4521

*Attorneys for Plaintiffs*

EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS *(pro hac vice)*
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
PROJECT ON PREDATORY STUDENT
LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
Tel.: (617) 390-2669

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,

   *Plaintiffs*,

  v.

MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and

THE UNITED STATES DEPARTMENT OF EDUCATION,

   *Defendants*.

Case No.: 19-cv-03674-WHA

**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL**

**HEARING DATE: November 3, 2022**

(Class Action)
(Administrative Procedure Act Case)

## **TABLE OF CONTENTS**

I.   Introduction ....................................................................................................................1

II.  Argument .......................................................................................................................1

    A.   Final Approval Is Warranted Under Rule 23

        1.   The Class Claims Are Not Moot.................................................... 1

        2.   The Class As Certified Remains Viable for Settlement Purposes ............. 3

        3.   The Settlement Is An Appropriate and Lawful Resolution of the Class's Claims ................................................................................ 10

    B.   The Government Is Well Within Its Authority to Enter Into the Settlement

        1.   The HEA Provides Statutory Authority for the Settlement Relief .......... 12

        2.   The Settlement Does Not Violate the APA ..................................... 14

        3.   The Settlement Does Not Implicate the Major Questions Doctrine ........ 16

    C.   The Settlement Is Fair

        1.   The Settlement Fairly Assigns Relief Based on Characteristics of Borrower Defense Applications................................................... 17

        2.   The Absence of an Opt-Out Provision Does Not Create Unfairness........ 17

        3.   The Settlement Is Not A Consent Decree Governing Third Parties ........ 17

        4.   The Settlement Does Not Impair Any Rights of School Objectors .......... 19

    D.   There Are No Defects in the Conduct of the Litigation that Preclude Final Approval

        1.   The Named Plaintiffs Are Adequate Class Representatives.................... 22

        2.   Class Counsel Adequately Represented the Class ............................. 24

        3.   The Settlement Was Negotiated at Arm's Length .............................. 25

III. Conclusion.....................................................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado, Inc. v. Mayorkas*, No. 3:17-cv-02366, 2022 WL 3135914 (S.D. Cal. Aug. 5, 2022) ...................................................................................................................................... 11

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) .......................................................................... 25

*Am. Med. Ass'n v. Stenehjem*, 1:19-cv-125, 2019 WL 10920631 (D.N.D. Nov. 26, 2019) ......... 20

*Bostick v. Herbalife International of America, Inc.*, No. 13-cv-2488, 2015 WL 12731932 (C.D. Cal. May 14, 2015) ...................................................................................................................... 19

*Breitman v. Xerox Educ. Servs., LLC*, No. 12-cv-6583, 2014 WL 5364103 (S.D.N.Y. Oct. 22, 2014) .......................................................................................................................................... 5

*Calvillo Manriquez v. DeVos*, 345 F. Supp. 3d 1077 (N.D. Cal. 2018) ....................................... 23

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) ...................................................... 6, 7

*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012) .................................. 5

*Columbus Bd. of Educ. v. Penick*, 443 U.S. 449 (1979) .............................................................. 11

*Conservation Nw. v. Sherman*, 715 F.3d 1181 (9th Cir. 2013) .................................................... 15

*Criswell v. Boudreaux*, No. 1:20-cv-01048, 2021 WL 4461640 (E.D. Cal. Sept. 29, 2021). ...... 25

*Davis v. FEC*, 554 U.S. 724 (2008) ............................................................................................... 7

*DeVry Univ., Inc. v. U.S. Dep't of Educ.*, No. 1:22-cv-05549 (N.D. Ill. Oct. 11, 2022).............. 16

*Endy v. Cnty. of Los Angeles*, 975 F.3d 757 (9th Cir. 2020) ........................................................ 20

*Executive Business Media, Inc. v. U.S. Dep't of Defense*, 3 F.3d 759 (4th Cir. 1993)................. 15

*Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203 (D.D.C. 2021) ............................................. 2

*Florida Coastal School of Law, Inc. v. Cardona*, No. 3:21-cv-721, 2021 WL 3493311 (M.D. Fla. Aug. 9, 2021) .............................................................................................................................. 13

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003) ......................................................... 20

*Fowler v. Guerin*, 899 F.3d 1112 (9th Cir. 2018) ......................................................................... 4

*Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022) ................................................................. 11

*Herskowitz v. Apple, Inc.*, 301 F.R.D. 460 (N.D. Cal. 2014)........................................................ 5

*I.B. by & through Bohannon v. Facebook, Inc.*, 82 F. Supp. 3d 1115 (N.D. Cal. 2015)................ 4

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Prac. Litig.*, No. 10-cv-02124, 2011 WL 6372412 (N.D. Cal. Dec. 20, 2011) ................................................................ 5

*Johnson v. City of Grants Pass*, No. 20-cv-35752, 2022 WL 4492090 (9th Cir. Sept. 28, 2022) 23

*Local 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986) .................................................................................................................... 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................ 6

*Meese v. Keene*, 481 U.S. 465 (1987) ...................................................................... 20

*Melendres v. Maricopa Cnty.*, 897 F.3d 1217 (9th Cir. 2018) .................................... 11

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982) .................................................................................................................... 18

*Okemo Mountain, Inc. v. Sikorski*, No. 1:93-cv-22, 2006 WL 1745039 (D. Vt. June 21, 2006) . 20

*Pacharne v. DHS*, No. 1:21-cv-115, 2021 WL 4497481 (N.D. Miss. Sept. 30, 2021) ................. 2

*Pennsylvania Higher Educ. Assistance Agency v. Perez*, 416 F. Supp. 3d 75 (D. Conn. 2019) .. 13

*Rai v. Biden*, No. 21-cv-863, 2021 WL 4439074 (D.D.C. Sept. 27, 2021) ................................... 3

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................ 24

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) ................................ 25

*Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014) ................................................................ 3

*Russell v. United States*, No. 09-cv-03239, 2012 WL 2343369 (N.D. Cal. June 20, 2012) .......... 4

*Sherman College of Straight Chiropractic v. Comm'r of Edu.*, 493 F. Supp. 976 (D.D.C. 1980) 20

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................ 23, 25

*Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-cv-235, 2017 WL 6059303 (E.D. Tex. Dec. 7, 2017) ................................................................................................................ 20

*Tennessee Ass'n of Health Maintenance Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) ...... 18

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ............................................ 15

*United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008) ................................................ 15

*United States v. City of Miami*, 614 F.2d 1322 (5th Cir. 1980), *on reh'g*, 664 F.2d 435 (5th Cir. 1981) .................................................................................................................... 18

*Vara v. DeVos*, No. 19-cv-12175, 2020 WL 3489679 (D. Mass. June 25, 2020), *appeal dismissed sub nom. Vara v. Cardona*, No. 20-cv-1832, 2021 WL 4057798 (1st Cir. July 21, 2021) ...... 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 3, 4

*Weingarten v. DeVos*, 468 F. Supp. 3d 322 (D.D.C. 2020) .......................................................... 13

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022) ............................................................................. 16

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) .................................................................... 18

**Statutes**

5 U.S.C. § 706(2)(A) ..................................................................................................................... 14

20 U.S.C. § 1082(a)(6) ....................................................................................................... 12, 14, 15

20 U.S.C. § 1087a(b)(2) ................................................................................................................ 13

20 U.S.C. § 1087e(a)(1) ................................................................................................................ 13

**Other Authorities**

Douglas Laycock, *Consent Decrees Without Consent: The Rights of Nonconsenting Third Parties*, 1987 U. Chi. Legal F. 103 (1987) .................................................................................. 18

Press Release: Education Department Approves $5.8 Billion Group Discharge to Cancel All Remaining Loans for 560,000 Borrowers Who Attended Corinthian (June 1, 2022), https://www.ed.gov/news/press-releases/education-department-approves-58-billion-group-discharge-cancel-all-remaining-loans-560000-borrowers-who-attended-corinthian-colleges ..................................................................................................................................... 23

Press Release: FTC Returns More Than $49 Million in Refunds to DeVry Students, Fed. Trade Comm'n (July 5, 2017), https://www.ftc.gov/news-events/news/press-releases/2017/07/ftc-returns-more-49-million-refunds-devry-students ................................................................................ 7

Press Release: University of Phoenix Settlement Payments, Fed. Trade Comm'n (Mar. 2021), https://www.ftc.gov/enforcement/refunds/university-phoenix-settlement-payments ................. 7

U.S. Dep't of Educ., Office of the General Counsel, Memorandum re: Student Loan Principal Balance Cancellation, Compromise, Discharge, and Forgiveness Authority at 3 (Jan. 12, 2021), *available at* https://perma.cc/GNE9-ZDBK, *retracted by* Notice of Debt Cancellation Legal Memorandum, 87 Fed. Reg. 52,943 (Aug. 30, 2022) ..................................................... 13

U.S. Dep't of Eduction, William D. Ford Federal Direct Loan Program, 59 Fed. Reg. 61,664-01 (Aug. 18, 1994) ................................................................................................................. 21

U.S. Dep't of Education, Notice of the Results of the First Meeting of the Borrower Defenses Regulations Negotiated Rulemaking Advisory Committee, 60 Fed. Reg. 37,768, *37,769-70 (July 21, 1995) ................................................................................................................. 9

U.S. Dep't of Education, Student Assistance General Provisions *et alia*, 81 Fed. Reg. 75,926-01 (Nov. 1, 2016) ................................................................................................ 7, 15, 21

U.S. Dep't of Education, Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 84 Fed. Reg. 49,788 (Sept. 23, 2019) ................................................................................................................. 9, 10

**Rules**

Fed. R. Civ. P. 23(b)(2) ................................................................................................................. 3
Fed. R. Civ. P. 23(e) ................................................................................................................. 14
Fed. R. Civ. P. 23(g) ................................................................................................................. 24

**Regulations**

31 C.F.R. § 902.2(a) ................................................................................................................. 14
34 C.F.R. § 30.70(e) ................................................................................................... 13, 14
34 C.F.R. § 685.206(c) ................................................................................................... 4, 8
34 C.F.R. § 685.206(e) ............................................................................................... 4, 8, 16
34 C.F.R. § 685.222(a) ................................................................................................................. 8
34 C.F.R. § 685.222(i) ................................................................................................... 4, 8

## I.    INTRODUCTION

On August 31, 2022, the Court permitted four institutions—Lincoln Educational Services Corporation ("Lincoln"), American National University ("ANU"), Everglades College, Inc. ("ECI"), and the Chicago School of Professional Psychology ("TCSPP") (together, the "School Objectors")—to intervene in this matter under Federal Rule of Civil Procedure 24(b) for the "sole and express purpose of objecting to and opposing the class action settlement." ECF No. 322 at 2. On October 6, 2022, each School Objector filed a brief in opposition to the parties' Joint Motion for Final Approval (ECF No. 323) ("Joint Mot."). *See generally* ECF No. 324 ("TCSPP Br."); ECF No. 325 ("ECI Br."); ECF No. 326 ("Lincoln Br."); ECF No. 327 ("ANU Br.").

Mindful of the Court's stated desire to "keep the system honest," Transcript of Aug. 4, 2022 Hearing ("Aug. 4 Tr.") at 52:5-6, Plaintiffs respond herein to the various assertions in the School Objectors' four separate briefs as if responding to objections asserted by borrower defense ("BD") applicants or questions posed by the Court. In so doing, Plaintiffs do not concede that any of the School Objectors have standing to assert these objections or that they have established any entitlement to participate in this litigation.

## II.    ARGUMENT

The Schools' objections fall into four general categories: (1) the settlement's compliance with Federal Rule of Civil Procedure 23; (2) the lawfulness of the Department's decision to enter into the settlement; (3) the fairness of the settlement to class members and third parties; and (4) the conduct of the litigation. Plaintiffs address each in turn.

### A.    Final Approval Is Warranted Under Rule 23

#### 1.    The Class Claims Are Not Moot

Three of the School Objectors argue that Court cannot grant final approval because the claims of the class are moot. This is so, they argue, because the Department has disposed of a (relatively small) percentage of pending BD applications in the past year, and thus Plaintiffs no longer have a claim based on delay. *See* TCSPP Br. at 7; ECI Br. at 6-7; Lincoln Br. at 13. The Department's grant of certain limited tranches of BD applications did not change its overall posture

toward pending BD claims, and there is no authority to support the position that "because an agency acts on some similarly situated applications, it cannot be sued for unreasonably delaying or unlawfully withholding other applications." *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 235 (D.D.C. 2021).

As recently as February 2022, Plaintiffs submitted borrower testimony and other facts showing that the Department—even at that late date in the litigation, and after the change in administrations—"apparently lack[ed] a lawful process to evaluate and resolve borrower defense applications within a reasonable timeframe." Pls.' Resp. to Court's Order Dated Jan. 27, 2022, ECF No. 220 at 13 ("Pls.' Feb. 2022 Filing"). The Department had not, at that time, "set out any policies governing how long an individual [BD] applicant can expect to wait until they get a decision on their application," nor had it "set a timeline for when it expects to issue decisions relating to any other schools or school groups, or to other applicants within the school groups that have seen some discharges." *Id.* at 15. It had not retracted the presumption of denial policies, nor any Form Denials. In fact, it had told borrowers that no further action would be taken on their BD applications *during the pendency of this case. See id.* at 12-13. For their part, Defendants explained that they had "not yet made a determination" on a Class Member's BD application submitted in 2017, which reportedly "cannot be streamlined," but asserted that "a comprehensive settlement . . . would (if finalized) provide for the resolution of all class member claims." Defs.' Resp. to Jan. 27, 2022 Order, ECF No. 221 at 2, 5.

Plaintiffs do not contend that the "no decisions" policy remains in effect (although its effect on Class Members has not been remedied). Rather, it has been replaced by a "presumption of denial" policy, of which the unlawful form denial notices were a product, and which has resulted in indefinite delays. This policy continues to affect all Class Members, because they are denied their right to a fair and timely decision on their BD applications. Even when a government policy has changed over time, class-based relief is still appropriate when the overall effect of the policy—however constituted at a particular moment—is to deny a right. *See Pacharne v. DHS*, No. 1:21-cv-115, 2021 WL 4497481, at *12 (N.D. Miss. Sept. 30, 2021) (when administrative delay is

"created and perpetuated by [an agency's] inefficiencies," and "has not been significantly reduced" under current policy, agency retains a duty to rectify that delay); *cf. Rai v. Biden*, No. 21-cv-863, 2021 WL 4439074, at *7 (D.D.C. Sept. 27, 2021) (although unlawful policy had been revoked, plaintiffs' claims were not moot because delay from policy had not been "completely or irrevocably eradicated" (citation omitted)); *see generally* Plaintiffs' Motion for Summary Judgment, ECF No. 245 at 20-21 ("Pls.' MSJ"); Pls.' Consol. Opp. to Mots. to Intervene, ECF No. 287 at 22-23 ("Pls.' Intervention Opp.").

Further, "a policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014). Here, the School Objectors rely solely on the Department's summary judgment briefing in this case—hardly an unbiased source. *See* TCSPP Br. at 7; ECI Br. at 7. While the declaration in support of that briefing suggested that at least some of the BD policies challenged by Plaintiffs are not currently being followed, it does not assert or establish that they will not recur. *See* Decl. of Richard Cordray, ECF No. 249-1 ¶¶ 9-18.

"Ultimately, the question [is] whether the party asserting mootness has met its heavy burden of proving that the challenged conduct cannot reasonably be expected to recur." *Rosebrock*, 745 F.3d at 972 (citations and quotations omitted). The School Objectors fail that test.

### 2.     The Class As Certified Remains Viable for Settlement Purposes

#### a)     The Case Remains Properly Certified Under Rule 23(b)(2)

Federal Rule of Civil Procedure 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). This Court certified the class because "the Department's alleged policy of inaction applies to the proposed class as a whole" and "[the] common harm inflicted by an alleged common policy is curable by a single injunction." Order Granting Motion for Class Certification, ECF No. 46 at 13

("Class Cert. Order"). In seeking an order for the Department to "restart" the BD process, Plaintiffs plainly sought fair adjudication, not boilerplate denials. Indeed, Plaintiffs have consistently and exclusively sought injunctive and declaratory relief. *See* Complaint, ECF No. 1 at 60-61; Motion for Class Certification, ECF No. 20 at 2; Supplemental Complaint, ECF No. 198 at 76-77 (Supp. Compl."); Pls.' MSJ at 33.

The School Objectors argue that Rule 23(b)(2) certification is no longer proper because, they say, the Agreement provides "monetary relief." *E.g.*, TCSPP Br. at 9; ECI Br. at 13-14; Lincoln Br. at 15. But the relief provided by the Agreement is the ***resolution of pending or improperly denied BD applications***. A BD claim is *not* a damages claim. It is a statutory, regulatory, and contractually protected right of a borrower to nullify a federal student loan debt based on misconduct of a third party. The Agreement does not provide for "monetary damages" of the sort described in *Dukes*, *i.e.*, individual damages that compensate for the harm caused by the Department's unlawful policies. *See* 546 U.S. at 360. Rather, the monetary aspect is the result of unwinding the federal student loans over which Class Members asserted the defense to repayment—including a return of money already collected from the borrower, as would occur if their BD applications were granted outside of the Agreement. *See* 34 C.F.R. §§ 685.206(c)(1), 685.206(e)(12), 685.222(i). This does not transform this case into one for damages. *See Fowler v. Guerin*, 899 F.3d 1112, 1120 (9th Cir. 2018) (reversing denial of class certification under Rule 23(b)(2) because "the relief of correcting the entire records system for" the class's pension accounts "is in the nature of injunctive relief," even where doing so would necessarily have a monetary effect, *i.e.*, restoration of funds to class members' accounts); *cf. I.B. by & through Bohannon v. Facebook, Inc.*, 82 F. Supp. 3d 1115, 1132 (N.D. Cal. 2015) (declining certification of restitution claims where plaintiffs "have not shown how the monetary relief sought would be incidental to the injunctive or declaratory relief").

By contrast, in the cases cited by School Objectors, courts denied certification under Rule 23(b)(2) because plaintiffs sought injunctive relief as a stepping-stone to damages claims. *See, e.g.*, *Russell v. United States*, No. 09-cv-03239, 2012 WL 2343369, at *9 (N.D. Cal. June 20, 2012)

(denying Rule 23(b)(2) certification because "the primary relief sought in this action is monetary"); *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 482 (N.D. Cal. 2014) ("[W]hat Plaintiffs are truly seeking is a judicial declaration that could be individually enforced against Apple to obtain refunds ."); *Breitman v. Xerox Educ. Servs., LLC*, No. 12-cv-6583, 2014 WL 5364103, at *6 (S.D.N.Y. Oct. 22, 2014) (denying Rule 23(b)(2) certification where "the crux of the complaint . . . concerns financial losses which Plaintiff seeks to have repaid"); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 560 (C.D. Cal. 2012) (plaintiff sought "the establishment of an adjustment program," which "would have the same effect" as compensation). These were "[m]onetary claims for past behavior . . . wrapped in a demand for a declaration that the opposing party committed a wrong," or for an injunction requiring compensation for that wrong. *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Prac. Litig.*, No. 10-cv-02124, 2011 WL 6372412, at *6 (N.D. Cal. Dec. 20, 2011).[1]

ECI's objection that the Class is no longer viable because Plaintiffs' allegations would require "multivariate and individualized relief [that] would require far more than a single injunction or declaratory judgment reaching a single policy," ECI Br. at 14, is similarly unavailing. In *Cholakyan*, relied upon by ECI, the court denied certification under Rule 23(b)(2) because the plaintiff sought "various forms of injunctive relief" that would require the defendant automobile manufacturer to create at least five different programs or policies, each of which would benefit a different, often overlapping, subset of the class. *See* 281 F.R.D. at 541. The court thus observed that "*none* of the remedies [plaintiff] seeks will result in classwide relief." *Id*. at 559. Here, by contrast, every member of the class has a pending BD application, and a single order requiring the Department to lawfully resolve those applications would apply to, and result in relief to, the entire class (regardless of individual outcome). Indeed, in its Order granting class certification, this Court

---

[1] Two cases cited by TCSPP—*Arredondo v. Sw. & Pac. Specialty Fin., Inc.*, No. 1:18-cv-01737, 2022 U.S. Dist. LEXIS 23758 (E.D. Cal. Feb. 9, 2022), and *Morrison v. Am. Nat'l Red Cross*, No. 19-cv-02855, 2021 U.S. Dist. LEXIS 4043 (N.D. Cal. Jan. 8, 2021)—both concern settlements that were filed before a class had been certified, which raise different concerns.

noted that while "the requested relief of a single order compelling defendants to restart the processing of borrower defense claims" was sufficiently specific at the class certification stage, "[a] more specific remedy, such as a plan setting forth a timeline for resolving the backlog of applications, can be fashioned later in this litigation." Class Cert. Order at 13. The Agreement provides a uniform remedy: a date certain for every member of the class by which their BD claim will be resolved. The specifics of the Agreement walk through the steps the Department will take to achieve that goal. It is a coherent resolution to the claims of the Class that this Court certified "for all purposes, including settlement." *Id.* at 14.

### b)  The Class Has Standing

The School Objectors lodge a series of objections that the class is overbroad or otherwise improperly constituted, which together amount to arguments that the Class lacks standing. Primarily, the Schools' arguments show a misunderstanding of the harm that Plaintiffs allege in this case. *See* TCSPP Br. at 12-13; ECI Br. at 9; Lincoln Br. at 16. Plaintiffs have never sought to prove the merits of their underlying BD applications. There is thus no need for record evidence that Class Members "actually would succeed on the merits of their BD applications." ECI Br. at 9; *see also* TCSPP Br. at 11-13. Rather, the injury that Plaintiffs have alleged is the harm they have suffered from being subjected to the Department's allegedly unlawful treatment of BD applications. The record is replete with evidence of these injuries, including evidence that they continued through the time when the Agreement was signed. *See supra* at Part II.A.1. Harms from delay and arbitrary treatment are the direct result of the Department's conduct and will be redressed by the relief provided in the Agreement, which will restart the BD process and provide timely resolutions to the Class. No more is required for standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1116 (9th Cir. 2020) (applying standard *Lujan* analysis to final approval of class action settlement).[2]

---

[2] ECI confuses the issue when it objects that Plaintiffs must demonstrate "standing" as to the precise quantum of relief they will receive under the Agreement. *See* ECI Br. at 9. The standing

TCSPP objects that some class members have received some amount of compensation from other sources in relation to the conduct underlying their BD applications. *See* TCSPP Br. at 13-14. But TCSPP does not, and cannot, show that these other sources have provided or could provide the same relief available to borrowers through the BD process. Indeed, in the DeVry University FTC settlement that TCSPP cites, the average refund check was about $283—and only those who paid or borrowed $5,000 or more were eligible to receive this small fraction of the money they spent.[3] By the same token, the BD program "may not provide a borrower with the complete amount or types of compensation that might traditionally be considered to be damages at law." U.S. Dep't of Education, Student Assistance General Provisions et alia, 81 Fed. Reg. 75,926-01, *75,951 (preamble to 2016 BD regulations). Any compensation from other sources is thus beside the point for Class membership or standing. With respect to borrowers whose BD applications were actually approved before the Agreement was signed, those individuals are no longer part of the Class and thus do not figure into the settlement. *See* Agreement § III.A (settlement class definition includes those "whose borrower defense has not been granted").

ANU objects that the Class inappropriately includes "those whose applications have been denied," because those borrowers "will receive a second bite at the apple." ANU Br. at 24. This ignores that Plaintiffs specifically challenged those denials as unlawful. *See* Supp. Compl. ¶¶ 436-439. Those borrowers, Plaintiffs allege, never got a "first bite at the apple" because of the

---

inquiry asks whether a party can bring a claim, not what remedy the party may receive on a validly asserted claim. *See Campbell*, 951 F.3d at 1119-20 (question of plaintiffs' standing to seek class-wide injunctive relief must "focus[] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed," *Davis v. FEC*, 554 U.S. 724, 734 (2008), and whether there is continuing harm and/or a likelihood of future harm). ECI's argument on this point is perhaps better understood as an objection to whether the relief under the Agreement is something Plaintiffs could have achieved through litigation; as explained *infra* at Part II.A.3, it is.

[3] *See* Press Release: FTC Returns More Than $49 Million in Refunds to DeVry Students, Fed. Trade Comm'n (July 5, 2017), https://www.ftc.gov/news-events/press-releases/2017/07/ftc-returns-more-49-million-refunds-devry-students. The same is true of the FTC's settlement with the University of Phoenix, which had an average refund of about $340. *See* Press Release: University of Phoenix Settlement Payments, Fed. Trade Comm'n (Mar. 2021), https://www.ftc.gov/enforcement/refunds/university-phoenix-settlement-payments.

Department's arbitrary, capricious, and unconstitutional treatment of their applications. *See id.* ¶¶ 440-455. The rescission of the Form Denial Notices under the Agreement, and inclusion of these Class Members in the class relief, is a reasonable and appropriate remedy given these claims.

ECI, Lincoln, and ANU all object that the Class has a standing defect because of the Biden administration's recent announcement that it will cancel up to $10,000 or $20,000 of federal student loans for certain qualifying borrowers. *See* ECI Br. at 8; Lincoln Br. at 8, 15-16; ANU Br. at 23-24.[4] Simply as a matter of order of operations, it is not clear when that cancellation will be available—as TCSPP correctly points out, it is the subject of a number of pending lawsuits, some of which are seeking preliminary injunctive relief. *See* TCSPP Br. at 16 n.8. But regardless, the harm borrowers suffered from the alleged unlawful treatment of their BD applications, and the need for the Department to lawfully address these borrowers' claims, does not disappear because of this unrelated federal policy.[5] Borrower defense to repayment is an independent statutory right, *see supra* at Part II.A.1, which offers crucial opportunities that the Biden plan does not, including the chance to receive full discharge of applicable loans (not just a flat dollar amount), refunds of amounts previously paid (not available under Biden policy), and credit repair. *See* 34 C.F.R. §§ 685.206(c)(1), (e)(1)(iii), (e)(12)(i); 34 C.F.R. §§ 685.222(a)(5), (i)(1), (i)(6)-(7). Every single Class Member filed their BD application before the Biden policy was announced and has a current and pressing interest in the vindication of the rights they asserted in that application.

ECI objects that no Plaintiff has standing to assert claims that would result in relief for Post-Class Applicants. *See* ECI Br. at 9. The Parties have explained why it is reasonable to close

---

[4] ECI also argues that this policy announcement moots this case. *See* ECI Br. at 8. This argument fails for the same reasons that the standing argument fails.

[5] The School Objectors offer only speculation about how much of the Class would qualify for the Biden cancellation, how much they would qualify for, and whether the Biden cancellation would cover the balance of their outstanding debt. Lincoln's Supplemental Declaration of Francis Giglio attempts to establish that some Lincoln borrowers would have their debts covered by the Biden cancellation—but even Mr. Giglio must admit that the median and average amounts of student loans disbursed to various cohorts of Lincoln borrowers are close to or greater than $10,000, and that these calculations critically "do not reflect any accrued interest or current loan balances." Supp. Decl. of Francis Giglio, ECF No. 326-1 ¶¶ 7-10.

the class as of a date certain for purposes of settlement. *See* Joint Mot. at 18-19. Of course, if the School Objectors have their way, and final approval of the Agreement is denied, all people currently denominated as Post-Class Applicants *will* become Class Members (represented by Plaintiffs) as the case proceeds to judgment. But this is all beside the point, which is that Plaintiffs are not asserting—or waiving—any claims for relief by Post-Class Applicants in this Settlement.

Finally, ECI objects that FFEL borrowers have no standing to assert claims relating to their BD applications. *See* ECI Br. at 9. The Department has conceded throughout this litigation—and this Court has accepted and relied on the concession—that the Department applies Direct Loan regulations to FFEL loans for purposes of borrower defense, and FFEL borrowers are properly included in the class. *See, e.g.*, Defs.' Opp. to Class Certification, ECF No. 38 at 2 ("[T]he Department promulgated regulations in 1994 . . . which were 'intended to ensure that institutions participating in the FFEL and Direct Loan Programs have a similar potential liability' and permitted a borrower to 'assert as a defense against repayment of his or her loan any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law.'" (quoting 60 Fed. Reg. 37,768, *37,769-70 (July 21, 1995))); *see generally id.* (nowhere asserting that FFEL borrowers were ineligible for BD or class membership); Class Cert. Order at 2 ("The FFEL Program . . . had already provided for borrower defense claims."); *id.* at 14 (certifying class to include FFEL borrowers).

Even if the applicability of the BD regulations to FFEL borrowers were not already the law of the case, ECI misleadingly quotes from the Federal Register to support its incorrect argument. *See* ECI Br. at 22 (quoting 84 Fed. Reg. 49,788, *49,800 (Sept. 23, 2019) (preamble to 2019 BD regulations)). What the document actually says is the following:

> [A] FFEL loan also cannot be ***discharged*** through the Direct Loan borrower defense process, ***unless*** the FFEL loan has consolidated into a Direct Consolidation Loan under 34 CFR 685.220. In that situation, the FFEL loan would be paid off with the proceeds of the Direct Consolidation Loan, and the borrower's Direct Consolidation Loan—as a loan made under the Direct Loan Program—would allow the borrower to apply for relief through the borrower defense process. Unless consolidated into a Direct Consolidation Loan, as described in 34 CFR 685.200, Private and FFEL loan funds are provided by lenders other than the Department

and cannot be ***discharged*** through the Direct Loan Program's regulatory or statutory provisions that apply to the Direct Loan Program.

84 Fed. Reg. at *49,800 (emphasis added). In other words, the limitation with respect to FFEL borrowers is that the Department ordinarily can only provide full BD relief to them once they have consolidated their FFEL loans into Direct Loans for purposes of loan ***discharge***. This process for issuing relief says nothing about FFEL borrowers' ability to seek borrower defense to repayment in the first place, which is well established.

### 3. The Settlement Is An Appropriate and Lawful Resolution of the Class's Claims

It is true that Plaintiffs have always sought, and continue to seek, an end to the Department's policy of indefinite delay in issuing lawful BD decisions. *See* Complaint ¶ 10. But the case has evolved. After discovery (ordered upon a showing of the Department's bad faith), Plaintiffs' Supplemental Complaint added claims that the Department adopted other unlawful BD policies that violated both the APA and the Constitution, and Plaintiffs sought declaratory judgments against those policies, rescission of all Form Denial Notices, and an order compelling the Department to lawfully adjudicate all pending and wrongfully denied applications. *See* Supp. Compl. at 76-77. In their recent Motion for Summary Judgment, Plaintiffs cited record evidence showing the ongoing harms of the Department's unlawful halt to the BD process, its presumption of denial policy, and its boilerplate denials, and sought an order for Defendants to show cause why each class member's BD application should not be granted immediately. Pls.' MSJ at 33.

As Plaintiffs explained in their Motion for Summary Judgment, remand to the Department following a ruling for Plaintiffs on the merits of their APA and constitutional claims would have been futile: the Department had (and has) no lawful process in place to timely decide BD applications, and, even if it did, it had shown itself unable to produce lawful denial notices. *See id.* at 34-37. Under an order to show cause, if the Department could not provide any supportable reason for continuing to withhold decisions, and could not provide lawful decisions within a reasonable time, the Court would be justified in ordering the Department to grant class members' applications as a form of relief. *See id.* at 35-36 (citing cases). In other words, Plaintiffs were

seeking an order that, depending on the Department's ability to show cause, could have resulted in the immediate discharge of loans for the *entire* class.[6]

Such relief would have been wholly within this Court's discretion to award. A recently issued remedies opinion in *Al Otro Lado, Inc. v. Mayorkas*, No. 3:17-cv-02366, 2022 WL 3135914 (S.D. Cal. Aug. 5, 2022), is instructive. *Al Otro Lado* is a class action asserting APA claims regarding turnback policies at U.S. borders for asylum seekers, which resulted in asylees being turned away without receiving the inspection of documents mandated by law. *See id.* at *1. Even though the government had rescinded the underlying policies, the court entertained remedies arguments regarding future noncompliance and the need to remediate past harm. *See id.* at *2-3. In fashioning a remedy, the *Al Otro Lado* court found that it should be "guided by the fundamental principle that an equitable remedy should be commensurate with the violations it is designed to vindicate." *Id.* at *1 (citing *Columbus Bd. of Educ. v. Penick*, 443 U.S. 449, 465 (1979)). "Equitable relief should leave no stone unturned: it should correct entirely the violations it is aimed at vindicating." *Id.* "Further, where the enjoined party has a history of noncompliance with prior orders, and particularly where the trial judge has years of experience with the case at hand, [district courts are given] a great deal of flexibility and discretion in choosing the remedy best suited to curing the violation." *Id.* at *5 (alteration in original) (quoting *Melendres v. Maricopa Cnty.*, 897 F.3d 1217, 1221 (9th Cir. 2018) (internal quotation marks omitted)).[7]

So too here: if Plaintiffs were to prevail on their claims, this Court would have broad discretion to fashion a remedy to redress the harm done by the Department's BD policies. Plaintiffs made a showing that relief of the sort provided by the Agreement—immediate resolution of some

---

[6] Thus, rather than suggesting "collusion" (ECI Br. at 24) or an unexpected "bonanza" (Aug. 4 Tr. at 40:15), the Agreement reflects this reality of the Parties' litigation positions.

[7] The court in *Al Otro Lado* was prepared to grant classwide injunctive relief mandating performance of the unlawfully withheld duty to inspect documents, but the U.S. Supreme Court issued an intervening decision that interpreted a provision of IIRIRA to bar injunctive remedies against immigration officials even when they are enforcing unlawful policies. *See id.* at *1-2 (citing *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022)). Ultimately, the court issued a declaratory judgment that the turnback policy was unlawful. *Id.* at *15.

Class Members' applications and a firm, reasonable timeline for others—is appropriate to provide this redress. While the Court never ruled on this contested issue, that does not mean that, "[w]ere Plaintiffs to litigate this case to final judgment, the substantive relief provided by the proposed settlement would be unavailable." Lincoln Br. at 17.

By the same token, the Agreement does accomplish another aspect of the relief Plaintiffs sought: a restart to the BD process. The School Objectors' suggestion that the relief provided in the Agreement is some kind of bait-and-switch effort (*see, e.g.*, TCSPP Br. at 8; ECI Br. at 25; Lincoln Br. at 1) is unfounded. Plaintiffs have been clear: whether a BD claim has been pending for five years or five months, all pending (and wrongfully denied) claims were subject to the alleged policies of inaction and arbitrary treatment. It is the Department's alleged systemic abdication of its obligation to lawfully process BD claims that Plaintiffs have challenged. They seek now, as they always have, to restart the decision-making process and ultimately obtain timely, fair decisions. That is exactly what the Agreement will do. For Class Members, this will be pursuant to the procedures in the Agreement; for Post-Class Applicants, it will be pursuant to a timeframe with consequences.

**B.      The Government Is Well Within Its Authority to Enter Into the Settlement**

**1.      The HEA Provides Statutory Authority for the Settlement Relief**

The Department's broad authority to administer the federal student loan programs includes the explicit authority to "compromise, waive, or release any right, title, claim, lien, or demand" acquired in the Secretary's performance of his vested "functions, powers, and duties" to administer federal student loans. 20 U.S.C. § 1082(a)(6). This statutory authority enables the Secretary to compromise claims of and against the Department arising out of the federal student loan programs, including by releasing student loan debts owed to the Department by federal student loan borrowers, on terms determined by the Secretary. Notably, the Secretary's decision to exercise this authority in a particular way is committed to his discretion. *See Weingarten v. DeVos*, 468 F. Supp. 3d 322, 338 (D.D.C. 2020).

ECI objects that Section 1082(a)(6), which is found in Part B of the Higher Education Act

(HEA), only applies to FFEL loans, and the Secretary lacks the authority to compromise Direct Loans. *See* ECI Br. at 21-22. In fact, Direct Loans have "the same terms, conditions, and benefits as [FFEL loans]." 20 U.S.C. § 1087a(b)(2). This extends to the Secretary's "general powers" under Section 1082(a)(6). Even the since-rescinded January 2021 memorandum that School Objectors cite repeatedly concedes this point: "The Secretary's general powers in 20 U.S.C. § 1082(a)(6) also apply to the William D. Ford Federal Direct Loan Program under Part D of Title IV. 20 U.S.C. § 1087a(b)(2)." U.S. Dep't of Educ., Office of the General Counsel, Memorandum re: Student Loan Principal Balance Cancellation, Compromise, Discharge, and Forgiveness Authority at 3 (Jan. 12, 2021) ("Jan. 2021 Memo"), *available at* https://perma.cc/GNE9-ZDBK, *retracted by* Notice of Debt Cancellation Legal Memorandum, 87 Fed. Reg. 52,943 (Aug. 30, 2022). Indeed, the regulations implementing in part this statutory authority to compromise expressly encompass "debt aris[ing] under the [FFEL] Program authorized under title IV, part B, of the HEA [or] the William D. Ford Federal Direct Loan Program authorized under title IV, part D of the HEA." 34 C.F.R. § 30.70(e)(1). ECI cites *Pennsylvania Higher Educ. Assistance Agency v. Perez*, 416 F. Supp. 3d 75 (D. Conn. 2019), for the contrary proposition, *see* ECI Br. at 22—but the dicta from that case is simply wrong; indeed, if it were correct, the Department would have argued that there was no waiver of sovereign immunity in this case.[8]

Even if reviewable, *see Weingarten*, 468 F. Supp. 3d at 338, the actions contemplated in the Agreement regarding the loans of Class Members are a straightforward exercise of the Secretary's authority under Section 1082(a)(6) and corresponding regulations. Department

---

[8] Another recent case, *Florida Coastal School of Law, Inc. v. Cardona*, No. 3:21-cv-721, 2021 WL 3493311 (M.D. Fla. Aug. 9, 2021), noted in dicta that there is no other congressional authorization than Section 1082(a) in the HEA for the Secretary to sue and be sued. *See id.* at *20 n.21. Yet the Secretary regularly initiates and defends lawsuits related to Direct Loan activities. Thus, insofar as the general power conferred in Section 1082(a) relates to the ability to set terms and conditions of federal student loans, and to cancel or compromise those loans, congressional intent to apply such powers to Direct Loans is evident in the "parity provision," 20 U.S.C. § 1087e(a)(1) ("Unless otherwise specified in this part, loans made to borrowers under this part [Direct Loan program] shall have the same terms, conditions, and benefits, and be available in the same amounts, as loans made to borrowers, and first disbursed on June 30, 2010, under" the FFEL program).

regulations specify that the Secretary can compromise a federal student loan debt pursuant to the provisions of 31 C.F.R. part 902 or 903. *See* 34 C.F.R. § 30.70(e)(1). Without purporting to speak for the Department, Plaintiffs note that one basis for compromise enumerated in 31 C.F.R. part 902 is "significant doubt concerning the Government's ability to prove its case in court." 31 C.F.R. § 902.2(a)(4). Plaintiffs submit that each time a Class Member receives Full Settlement Relief, it can be said that their assertion of a borrower defense has raised a significant doubt as to whether the Department could overcome that defense against validity of the loan in a future collection action, and therefore compromise (discharge) is warranted.

### 2.    The Settlement Does Not Violate the APA

The School Objectors argue that the Agreement violates the APA because it is arbitrary and capricious, unlawfully amends the BD regulations, or both. *See, e.g.*, TCSPP Br. at 17-19; ECI Br. at 14-17; Lincoln Br. at 17-21. This Court's review of the Agreement proceeds under Rule 23(e), not 5 U.S.C. § 706(2)(A). Additionally, these objections ignore the fact that the Secretary's settlement and compromise authority is an independent avenue for federal loan discharge— separate and apart from the BD process. 20 U.S.C. § 1082(a)(6); *accord Vara v. DeVos*, No. 19-cv-12175, 2020 WL 3489679, at *14 & n.11 (D. Mass. June 25, 2020), *appeal dismissed sub nom. Vara v. Cardona*, No. 20-1832, 2021 WL 4057798 (1st Cir. July 21, 2021) (noting that after the plaintiff filed her lawsuit, the Department "refunded" her loan payments and "wrote off the balance" of her loans "pursuant to a grant of authority unrelated to the [BD] process," and citing 20 U.S.C. § 1082(a)(6)). ECI's objections that the terms of the Agreement are not each specifically justified, *see* ECI Br. at 15-16, miss the fact that the Agreement disposes of Class Members' litigation claims concerning Defendants' treatment of their BD applications by a statutorily authorized means of compromising their federal student loans.

Even absent this distinct statutory authority, it is simply incorrect that the Agreement strays from the BD regulations, allegedly in violation of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). On this point, the School Objectors cite *United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008), in which the government argued that the Attorney General's decision to settle

a quiet title action, an exercise of his plenary discretion under 28 U.S.C. §§ 516 and 519, was unreviewable. *Id.* at 1241. The Ninth Circuit disagreed, holding that the Attorney General's settlement power was limited by environmental regulations and thus reviewable under the APA. *Id.* at 1242. The central tenet of *Carpenter* and the related cases cited by the School Objectors is that the government's settlement authority does not grant it more power than it has under existing law. *See, e.g.*, *Executive Business Media, Inc. v. U.S. Dep't of Defense*, 3 F.3d 759, 762 (4th Cir. 1993) (government cannot "violate its laws under the cover of settling litigation"). Here, the Department is not relying solely on the Attorney General's general settlement authority—it is relying on its specific authority under Section 1082(a)(6) to "compromise, waive, or release" federal student loans.[9] The BD regulations are not a limitation on this authority.

Rather, the BD regulations exist to implement borrowers' right under the HEA to assert a defense to repayment of their federal student loans. If the Class Members in this case want to settle their defense to repayment claims pursuant to a separate statutory authority than the BD regulations, and the Secretary agrees, there is no reason the parties cannot do so. Whatever regulatory notice provisions may be bypassed in this resolution (*see, e.g.*, ECI Br. at 18-19; Lincoln Br. at 3), those provisions exist to aid the Department in its decisionmaking, not to protect the rights of institutions. Those rights are protected in other regulations and through other processes. *See, e.g.*, 34 C.F.R. § 668.87 (regulations governing recoupment process); 81 Fed. Reg. at *75,963 (BD regulations "do not include an appeals procedure [for institutions] in the individual borrower claim process" because they instead "afford an opportunity to present a defense when the Department seeks to hold a school liable and recover funds"); *id.* at 75,959 ("Schools will not be held liable for borrower defense claims until after an administrative proceeding that provides them due process."); *id.* at 76,084 (statute of limitations on recovery actions); 34 C.F.R.

---

[9] For the same reason, the objection that the Agreement amends the BD regulations without notice and comment rulemaking, *see* ECI Br. at 17-18; Lincoln Br. at 20, is without merit. The Agreement does not propose any amendment to the regulations, let alone a "permanent[] and substantial[]" one. *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1187 (9th Cir. 2013). BD applications submitted after final approval will be processed under the rules governing the affected loans.

§ 685.206(e)(16)(ii) (same); *see also* Complaint, *DeVry Univ., Inc. v. U.S. Dep't of Educ.*, No. 1:22-cv-05549 (N.D. Ill. Oct. 11, 2022), ECF No. 1 (DeVry University contesting recoupment action under 34 C.F.R. § 668.87).

### 3.    The Settlement Does Not Implicate the Major Questions Doctrine

TCSPP and ECI object that the settlement implicates the "major questions" doctrine as recently articulated in *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022). *See* TCSPP Br. at 15-16; ECI Br. at 23. ECI reads the Post-Class provisions of the settlement as providing a backdoor to cancellation of all student debt for every borrower in the country. *See* ECI Br. at 5-6, 23. Plaintiffs have explained why this contention is not serious. *See* Pls.' Intervention Opp. at 25 n.22. It is even less so now, as the size of the Post-Class Applicants group currently stands at about 179,000. Joint Mot. at 14.

TCSPP suggests that the fact that the settlement will provide relief on $6 billion worth of disbursed loans qualifies it as a "major question." *See* TCSPP Br. at 16. Notwithstanding that this amount represents less than three percent of the entire outstanding federal student loan portfolio (over $1.6 trillion),[10] and is dwarfed by the "at least a trillion 2009 dollars" at stake in *West Virginia v. EPA*, 142 S. Ct. at 2604, the so-called "major questions" doctrine is not strictly a tallying exercise. Rather, the doctrine imposes a clear statement requirement on agency action that both relies on a "novel reading" of longstanding statutory authority, *id.* at 2605, and exerts "extravagant statutory power over the national economy," *id.* at 2609 (quotation omitted). Without minimizing the importance of this case to Plaintiffs and Class Members, it simply does not present a major question. To the extent that TCSPP and ECI claim concern about what might happen if the Secretary of Education invoked his Section 1082(a)(6) authority to cancel *all* federal student debt, *see* ECI Br. at 23; TCSPP Br. at 16, that is not at issue in this case.

---

[10] *See* Decl. of Jason Hilborn Ex. A, ECF No. 325-2 at 2.

### C.      THE SETTLEMENT IS FAIR

#### 1.      The Settlement Fairly Assigns Relief Based on Characteristics of Borrower Defense Applications

TCSPP objects that the Agreement is unfair to the Class, notwithstanding the Class's overwhelming support for the Agreement. *See* Joint Mot. at 14-15. First, TCSPP objects that the Agreement is unfair to the decision group because the composition of the Exhibit C list is arbitrary. *See* TCSPP Br. at 22-23. But nobody in the decision group is harmed because of the existence of the automatic relief group. The Parties have already explained the basis for Exhibit C. *See* Joint Mot. at 9, 11, 16-17.

Second, TCSPP objects that class members who "consolidated or paid off their federal debts with private loans servicers and did not submit borrower defense applications" will not receive relief. *See* TCSPP Br. at 23. It is not clear to whom TCSPP is referring here. The certified class has always, appropriately, included only those who "have asserted a borrower defense to repayment to the U.S. Department of Education." Class Cert. Order at 14. If someone consolidated their federal loans into private loans and has not submitted a BD application, they are not a member of the Class. *See* Agreement III.A.

#### 2.      The Absence of an Opt-Out Provision Does Not Create Unfairness

TCSPP is correct that Class Members do not have the ability to opt out of the settlement. *See* TCSPP Br. at 10. This is unsurprising for a Rule 23(b)(2) class, and creates no unfairness. Membership in the class has always required a predicate, affirmative step: an individual must file a BD application contesting his or her federal student loan debt and requesting cancellation of (and return of money already paid on) the same. For this reason, TCSPP's theorized tax consequences, *see id.*, do not create unfairness. Each class member has opted to receive the exact relief available under the Agreement.

#### 3.      The Settlement Is Not A Consent Decree Governing Third Parties

Lincoln objects that, before approving a class action settlement, the Court must determine that it "is fair, reasonable and adequate *to all concerned*." Lincoln Br. at 9 (quoting *Officers for*

*Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982));

*see also* ANU Br. at 1-2. As the Parties have explained, *see* Pls.' Intervention Opp. at 10-16; Defs.'

Consol. Opp. to Mots. For Intervention, ECF No. 288 at 15-20("Defs.' Intervention Opp."), the

Agreement does not impair or adjudicate any rights of the School Objectors. For that reason, it is

neither unfair nor of "concern" to them, in the sense that concept is used in the cases cited by

Lincoln and ANU. In *Tennessee Association of Health Maintenance Organizations, Inc. v. Grier*,

262 F.3d 559 (6th Cir. 2001), a consent decree governed aspects of Tennessee's Medicaid

program. *Id.* at 561. The Sixth Circuit held that the district court had abused its discretion by failing

to consider "the fairness of the consent decree to those affected"—including the intervenors, who

"are agents of the State ***and are bound by the consent decree*** to which the state was a party." *Id.*

at 565-66 (emphasis added). *United States v. City of Miami*, 614 F.2d 1322 (5th Cir. 1980), *on

reh'g*, 664 F.2d 435 (5th Cir. 1981), also involved a consent decree, designed to remediate

discriminatory employment policies in the Miami police department. *See id.* at 1326. The

"individuals and organizations other than those approving the settlement" whose interests needed

to be considered were the non-Black, non-Hispanic, and non-female employees who would be

affected by the decree's hiring and promotion goals. *See id.* at 1331, 1342; *see also Williams v.

Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) (in race discrimination case, consent decree must be

fair to all employees).[11]

ANU's citation to Professor Laycock's writing on the law of remedies does not help its

argument. As ANU quotes: "If a court does enter [a consent] decree [between A and B] without

the consent of C, C should be wholly and genuinely unbound by the decree, able to force de novo

litigation of his rights." ANU Br. at 12 n.3 (quoting Douglas Laycock, *Consent Decrees Without

Consent: The Rights of Nonconsenting Third Parties*, 1987 U. Chi. Legal F. 103, 104 (1987)). That

is precisely the case here. The School Objectors do not waive any rights under the Agreement, and

---

[11] In *Officers for Justice*, cited by Lincoln, a named plaintiff and class representative raised
objections; the Ninth Circuit did not identify, let alone consider, any third parties whom the
settlement "concerned." *See* 688 F.2d at 623.

the Agreement does not resolve any questions regarding their future obligations or liabilities—to the Department, to individuals, or to other regulators. The School Objectors do not have to do or refrain from doing anything as a result of this settlement. Indeed, as this Court observed, the School Objectors are "the luckiest guy[s] in the room"—they have "already gotten the money and [] don't have to pay it back," and "all that due process is totally preserved." Aug. 4 Tr. at 24:3-10. The Objectors can assert any and all arguments regarding notice, process, and/or the factual predicates for any allegations of misconduct in any future proceeding by or against them. *See Local 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529-30 (1986) (intervenor could not block consent decree where the decree did not "bind [intervenor] to do or not to do anything," did not "impose[] [any] legal duties or obligations on [intervenor] at all," and did not "purport to resolve any claims [intervenor] might have" under applicable law).

If any case is analogous to this one, it is *Bostick v. Herbalife International of America, Inc.*, No. 13-cv-2488, 2015 WL 12731932 (C.D. Cal. May 14, 2015). There, the district court granted two non-parties leave to file briefs opposing a class action settlement—not because the non-parties asserted that the settlement was unfair to them, but rather "[t]o ensure a full, fair, and objective review of the Settlement Agreement." *Id*. at *11 n.13. The court considered that perspective and, finding the settlement to be "fair, adequate, and reasonable *to the class*," granted final approval over amici's objections. *Id.* at *9 (emphasis added); *see id.* at *34.

### 4.     The Settlement Does Not Impair Any Rights of School Objectors

The School Objectors assert that they will suffer reputational harm because the Agreement "sends a clear message that schools on Exhibit C are wrongdoers." ANU Br. at 16, *see* also Lincoln Br. at 10. But the Schools do not provide any substantiation that they have suffered reputational harm in the nearly four months since the Parties moved for preliminary approval and the Exhibit C list became public. The School Objectors do not introduce any authority that a statement about the existence of *evidence* of wrongdoing is actionable, let alone sufficiently harmful to deny final approval. *See* Defs.' Intervention Opp. at 7 (inclusion on Exhibit C is warranted because, "for each school, there exists a sufficient threshold indication of wrongdoing to justify summary settlement

relief for associated class members"); *cf. Endy v. Cnty. of Los Angeles*, 975 F.3d 757, 764-65 (9th Cir. 2020) (distinguishing harm caused by publication of allegation deemed "substantiated" from harm caused by publication of allegation deemed "unfounded"). Neither the Agreement nor the underlying litigation rests on establishing specific unlawful conduct of any School, unlike in the cases cited by ANU (which deal with intervention, not settlement objections). *See* ANU Br. at 16; *Am. Med. Ass'n v. Stenehjem*, No. 1:19-cv-125, 2019 WL 10920631, at *3, *5 (D.N.D. Nov. 26, 2019) (litigation necessarily concerned whether intervenors' own practices were "false, misleading, or irrelevant"); *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-cv-235, 2017 WL 6059303, at *4 (E.D. Tex. Dec. 7, 2017) (merits of dispute turned on whether intervenors' products did in fact violate patent laws); *Okemo Mountain, Inc. v. Sikorski*, No. 1:93-cv-22, 2006 WL 1745039, at *1 (D. Vt. June 21, 2006) (counsel could intervene to challenge ruling that turned on whether they violated rules of professional conduct).

Inclusion on Exhibit C is not equivalent to a determination that the School Objectors "do[] not satisfy federally approved [educational] standards," as in *Sherman College of Straight Chiropractic v. Commissioner of Education*, 493 F. Supp. 976, 978 (D.D.C. 1980). Also unlike in that case, here there is no concrete evidence of "distinct and significant injury," such as evidence that the institution lost students or donations. *Id.*; *cf. Meese v. Keene*, 481 U.S. 465, 473-74 (1987) ("detailed affidavits" showed that government's classification of plaintiff's speech "would substantially harm his chances for reelection and would adversely affect his reputation in the community"); *Foretich v. United States*, 351 F.3d 1198, 1211 (D.C. Cir. 2003) (affidavit showed that government's classification of plaintiff as an abuser "led to his harassment by the media, estrangement from his neighbors, and loss of business and professional opportunities"). Moreover, in *Sherman College*, the court upheld the Commissioner of Education's decision even despite record evidence of concrete injury to the intervening school. *See* 351 F.3d at 981.

Nor has inclusion on Exhibit C "altered or extinguished" any of the School Objectors' "known rights." *Endy*, 975 F.3d at 766. Lincoln argues that the Agreement interferes with its rights under the BD regulations to challenge BD applications filed by its former students. *See* Lincoln

Br. at 23.[12] As an initial matter, the Agreement disposes of Class Members' BD applications under the Secretary's settlement and compromise authority, outside of the BD process. *See supra* at Part B.1. But regardless, that is not how the BD regulations work. As the Department has explained, the BD regulations specifically "do not include an appeals procedure [for institutions] in the individual borrower claim process" because they instead "afford an opportunity to present a defense when the Department seeks to hold a school liable and recover funds." 81 Fed. Reg. at *75,963. To the extent that the 2020 BD regulations provide institutions with a ***procedural*** right to respond to BD applications,[13] the approval of a BD claim does not trigger any financial liability for the school. Schools do not waive any rights to later contest recoupment if they do not offer any evidence in the initial BD proceedings.

It is not correct, as the School Objectors contend, that the Agreement infringes on their rights to challenge any future recoupment proceeding. *See, e.g.*, TCSPP Br. at 1; ECI Br. at 20; Lincoln Br. at 23; ANU Br. at 14-15. The regulation governing recoupment sets out a fulsome process, including a requirement that the Department provide a statement of facts and law sufficient to show its entitlement to "grant any borrower defense relief asserted within the statement, and recover for the amount of losses to the Secretary caused by the granting of such relief," and an opportunity for the institution to both file a written response and request a hearing. See 34 C.F.R. §§ 668.87(a)-(b). If, as Lincoln claims, most of the BD claims filed against it are "time-barred . . . and legally deficient on their face," the Department plainly could not carry this

---

[12] Lincoln has already received notice from the Department about BD applications by its former students and has filed responses. *See* Decl. of Francis Giglio, ECF No. 254-2 ¶¶ 7, 9; Supp. Decl. of Francis Giglio, ECF No. 326-1 ¶ 2.

[13] A significant portion of the Class has federal loans that were disbursed before July 1, 2017, and are thus governed by the 1994 BD regulations, which do not even require that institutions receive any notice of BD claims. *See* 59 Fed. Reg. 61,664-01, *61,696 (1995 Final Rule, 34 C.F.R. § 685.206(c)). The 2016 BD regulations, which govern loans issued between July 1, 2017, and July 1, 2020, direct the Department to notify schools of BD applications and to consider "[a]ny response or submission from the school," but they do not expressly give institutions the right to respond, nor do they instruct the Department to give particular weight to institutions' responses. *See* 81 Fed. Reg. 75,926-01, *76,084 (2016 Final Rule, 34 C.F.R. § 685.222(e)(3)).

burden, and Lincoln's "potential recoupment liability" would therefore not be "vastly" expanded. Lincoln Br. at 25. The School Objectors do not allege that these recoupment regulations are insufficient to protect their interests; instead, they allege that they should not have to face those proceedings *at all*. *See* Lincoln Br. at 24. But—even putting aside the fact that the Department has repeatedly affirmed that inclusion on the Exhibit C list is not a basis for a recoupment action, *see* Miller Dec., ECF No. 288-1 at 3—the School Objectors have no protectable right in the outcome of the BD applications of their former students.

Finally, Lincoln argues that its inclusion on the Exhibit C list is unfair because, as evidence of the school's misconduct, "the parties point only to a 2015 settlement agreement with the Massachusetts Attorney General that Lincoln entered to avoid the costs of litigation." Lincoln Br. at 10. It also argues that its inclusion on Exhibit C is unfair when one compares the allegations that underlay that settlement with allegations that have been made against schools that were not included on the list. *Id.* at 11. Plaintiffs did cite the 2015 settlement as part of the School Objectors' "public records of wrongdoing." Pls.' Intervention Opp. at 6. But at no point did the Parties suggest that the Massachusetts settlement was the basis for Lincoln's inclusion on the Exhibit C list.[14]

### D.   There Are No Defects in the Conduct of the Litigation that Preclude Final Approval

#### 1.   The Named Plaintiffs Are Adequate Class Representatives

TCSPP objects that Tresa Apodaca and Alicia Davis are not appropriate class representatives because they applied for BD in connection with their loans to attend Corinthian Colleges schools. *See* TCSPP Br. at 13. First, TCSPP is wrong that Ms. Apodaca and Ms. Davis are part of the class in *Calvillo Manriquez v. DeVos*. *See id.* As Plaintiffs have explained, the *Calvillo Manriquez* class covers only a limited subset of Corinthian borrowers who qualified for

---

[14] Plaintiffs previously identified at least 13 places that Lincoln is mentioned in the record of this case. *See* ECF No. 287-1 at 2-3. The record demonstrates that, as of July 15, 2020, over 1,100 of Lincoln's former students had submitted BD applications. ECF No. 245-4 at Ex. 61 p.230. In addition, the Attorney General of Massachusetts submitted a BD application on behalf of a group of Lincoln students in 2016, *see* Supp. Compl. Exhibits, ECF No. 198-5 at 59, which perhaps is the subject of Lincoln's recent communication from the Department. *See* Lincoln Br. at 4 n.1.

BD based on specific job placement rate misrepresentations. *See Calvillo Manriquez v. DeVos*, 345 F. Supp. 3d 1077, 1090 (N.D. Cal. 2018); Pls.' MSJ at 4 n.2. Ms. Apodaca and Ms. Davis were not included in that subset of borrowers. *See* Compl. ¶¶ 259, 337. Second, while it is true that the Department has announced that all federal loans associated with Corinthian will be cancelled,[15] under the relation back doctrine, "a class representative may pursue the live claims of a properly certified class—without the need to remand for substitution of a new representative." *Johnson v. City of Grants Pass*, No. 20-cv-35752, 2022 WL 4492090, at *11 (9th Cir. Sept. 28, 2022) (collecting cases). Regardless, there are five other Named Plaintiffs who undisputedly have not yet received relief on the loans that are the subject of their BD applications.

ECI objects that the Named Plaintiffs are inadequate representatives because there is a conflict within the Class between Members who fall into the automatic relief group versus the decision group.[16] *See* ECI Br. at 12. As noted, the existence of the automatic relief group does not result in any disadvantage to the decision group, the latter of whom remain eligible for Full Settlement Relief. *Compare, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) (rejecting settlement where named class members would receive 16 times greater damages than unnamed members). Removing the automatic relief group would only jeopardize the Department's ability to provide timely, lawful resolutions to all Class Members, without providing a benefit to anyone. The Agreement is structured to provide all Class Members, as well as Post-Class Applicants (who do not release any claims under the Agreement), with a definite and reasonable timeline for resolution of their BD claims. *See* Joint Mot. at 11.

ECI objects that certain Named Plaintiffs borrowed FFEL loans that they have not

---

[15] *See* Press Release: Education Department Approves $5.8 Billion Group Discharge to Cancel All Remaining Loans for 560,000 Borrowers Who Attended Corinthian (June 1, 2022), https://www.ed.gov/news/press-releases/education-department-approves-58-billion-group-discharge-cancel-all-remaining-loans-560000-borrowers-who-attended-corinthian-colleges.

[16] This argument conflicts with ECI's separate objection that the decision group is "chimerical"— that is, a ruse to grant additional automatic relief. *See* ECI Br. at 5, 12. As the Parties have explained, applications in the decision group will receive streamlined review, but the Department will still be determining whether these applications state a BD claim. *See* Joint Mot. at 11; Agreement § IV.C.1.i.

consolidated into Direct Loans. *See* ECI Br. at 9. As explained above, ECI is incorrect that the Department lacks authority to accept BD applications from FFEL borrowers; the only limitation is on the ability to disburse relief for unconsolidated FFEL loans. *See supra* at Part II.A.2.b.

### 2. Class Counsel Adequately Represented the Class

ECI and TCSPP object that Class Counsel from the Project on Predatory Student Lending ("PPSL Counsel") inadequately represented the class because their organization was, until recently, affiliated with Harvard Law School, and one Class Member objected that his program, the American Repertory Theatre/Moscow Art Theatre Institute for Advanced Theatre Training at Harvard ("ART"), was not included on Exhibit C. *See* ECI Br. at 12-13; TCSPP Br. at 20-21. These objections do not actually address the question of whether PPSL Counsel fairly and adequately represented the Class under Rule 23(g)(4)—*i.e.*, whether they "vigorously prosecuted the case through to a fair settlement," "aggressively advocated [the Class's] positions," "ha[d] as their primary goal achieving the maximum substantive relief that they could," and "were skilled and knowledgeable about the facts and law of this case." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 961 (9th Cir. 2009) (affirming approval of settlement over objections). Rather, these are restatements of Schools' objection to the Exhibit C list. *See* TCSPP Br. at 21 (arguing that Exhibit C "arbitrarily excludes" ART). For reasons already explained, the list is not arbitrary or collusive.[17] If the Court wishes to pose any specific questions regarding PPSL Counsel's representation of the Class pursuant to Federal Rule of Civil Procedure 23(g)(1)(C), Counsel would be happy to respond.

---

[17] TCSPP does not address the specific information about ART that the Parties submitted in their Joint Motion for Final Approval: *viz.*, that ART's appearance on the Department's "gainful employment" list in 2017 is unrelated to questions of school misconduct relevant to borrower defense. *See* Joint Mot. at 16 n.7. TCSPP is also mistaken when it argues that ART students and Harvard University were "diametrically opposed" in the BD process. TCSPP Br. at 21. That process is specifically designed to bifurcate the decision on an application from the decision to pursue recoupment against a school. *See* Pls.' Intervention Opp. at 11-13. ECI appears to argue in the opposite direction: that PPSL Counsel inadequately represented *Harvard*—not the class— because, ECI claims, Harvard's interests may be implicated by the Agreement. ECI Br. at 13. The relevance of this assertion to final approval of the Agreement is not clear.

### 3.     The Settlement Was Negotiated at Arm's Length

TCSPP and ECI object that the settlement is collusive. *See* ECI Br. at 15 n.11, 24-25; TCSPP Br. at 19-20; *see also* ANU Br. at 18.[18] As the Parties have explained, *see* Joint Mot. at 8; Joint Mot. for Prelim. Approval, ECF No. 246 at 14-15, this is not true. Indeed, all of the cases cited by ECI point to attorneys' fees as indicia of collusion—a concern that is not at issue here.[19] *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (indicia of collusion where half of settlement went to fees); *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (indicia of collusion where attorneys' fee award exceeded the maximum possible amount of class monetary relief by a factor of three); *Staton*, 327 F.3d at 961, 966-67, 975 (rejecting settlement agreement that was vastly more favorable to named versus unnamed class members and that included insufficient evidence to support attorneys' fee award).

As the Ninth Circuit in the *Staton* case observed, examining class action settlements for evidence of collusion is necessary because there can be "real dangers"—none of which are present here—"of compromising the interests of class members for reasons other than a realistic assessment of usual settlement considerations." 327 F.3d at 959. This careful analysis is designed to protect class members *from being deprived of their rightful relief* by unscrupulous actors—not to guard against a settlement that *allegedly treats class members too well*.

## III.    CONCLUSION

For the foregoing reasons, the Joint Motion for Final Approval should be GRANTED.

---

[18] ANU objects that the Parties were unfairly "aligned" because Exhibit C "appear[s] to be almost entirely proprietary institutions, rather than strictly a list of schools with the largest number of pending [BD] claims." ANU Br. at 18.  Proprietary schools do in fact have the largest number of pending BD claims.  *See* Pls.' Feb. 22 Filing Ex. B.

[19] TCSPP cites only one case, in which the court approved a settlement where "negotiations were extensive, involved, and non-collusive." *Criswell v. Boudreaux*, No. 1:20-cv-01048, 2021 WL 4461640 at *4 (E.D. Cal. Sept. 29, 2021).

Dated: October 17, 2022

/s/ *Rebecca C. Ellis*

EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS (*pro hac vice*)
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
PROJECT ON PREDATORY STUDENT
LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
Tel.: (617) 390-2669

JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, California 94611
Tel.: (510) 271-8443
Fax: (510) 868-4521