BRIAN D. NETTER
Deputy Assistant Attorney General
STEPHANIE HINDS
United States Attorney
MARCIA BERMAN
Assistant Branch Director
R. CHARLIE MERRITT
STUART J. ROBINSON
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (415) 436-6635
E-mail: stuart.j.robinson@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>     *Defendants*. | Case No. 19-cv-03674-WHA<br><br>**DEFENDANTS' CONSODLIDATED REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>**HEARING DATE: November 3, 2022**<br><br>(Class Action)<br>(Administrative Procedure Act Case) |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

DISCUSSION .................................................................................................................. 2

I.    INTERVENORS' ARGUMENTS ABOUT REPUTATIONAL HARM
      PROVIDE NO BASIS TO WITHHOLD FINAL APPROVAL ....................................... 2

II.   THE SETTLEMENT AGREEMENT DOES NOT INFRINGE ON
      INTERVENORS' DUE PROCESS RIGHTS .............................................................. 4

III.  THE SETTLEMENT AGREEMENT DOES NOT EXCEED THE
      DEPARTMENT'S AUTHORITY ............................................................................ 5

IV.   THE SETTLEMENT AGREEMENT DOES NOT VIOLATE THE MAJOR
      QUESTIONS DOCTRINE .................................................................................... 8

V.    INCLUSION OF INTERVENORS IN EXHIBIT C ACCORDS WITH THE
      ADMINISTRATIVE PROCEDURE ACT, AND THE SETTLEMENT IS NOT
      OTHERWISE ARBITRARY ................................................................................ 10

CONCLUSION............................................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Advanced Mgm't Tech., Inc. v. FAA*,
4    211 F.3d 633 (D.C. Cir. 2000) ................................................................. 2

5

*Ala. Ass'n of Realtors v. HHS*,
6    141 S. Ct. 2485 (2021) ............................................................... 8, 9, 10

7

*Allen v. Bedolla*,
8    787 F.3d 1218 (9th Cir. 2015) ................................................................. 4

9

*Allen v. United States*,
10    797 F. App'x 302 (9th Cir. 2019) ......................................................... 14

11

*Batterton v. Marshall*,
12    648 F.2d 694 (D.C. Cir. 1980) ............................................................. 15

13

*Bostick v. Herbalife Int'l of Am., Inc.*,
14    No. CV 13–2488, 2015 WL 12731932 (C.D. Cal. May 14, 2015) ........................................... 3

15

*Conservation Northwest v. Sherman*,
16    715 F.3d 1181 (9th Cir. 2013) ............................................................. 15

17

*Endy v. Cnty. of Los Angeles*,
18    975 F.3d 757 (9th Cir. 2020) ................................................................. 5

19

*Ezzell Trucking, Inc v. Fed. Motor Carrier Safety Admin.*,
20    309 F.3d 24 (D.C. Cir. 2002) ................................................................. 2

21

*FDA v. Brown & Williamson Tobacco Corp.*,
22    529 U.S. 120 (2000) ................................................................... 9, 10

23

*Fla. Power & Light Co. v. Lorion*,
24    470 U.S. 729 (1985) ......................................................................... 11

25

*Foretich v. United States*,
26    351 F.3d 1198 (D.C. Cir. 2003) ............................................................. 3

27

*Hart v. Parks*,
28    450 F.3d 1059 (9th Cir. 2006) ............................................................... 5

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ......................................................................... 12

*Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*,
    426 U.S. 482 (1976) ......................................................................... 5

*In re Novatel Wireless Secs. Litig.*,
   No. 08-CV-1689, 2014 WL 2858518 (S.D. Cal. June 23, 2014)................................ 3

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................................... 12

*Jackson v. City & Cnty. of San Francisco*,
   829 F. Supp. 2d 867 (N.D. Cal. 2011) ..................................................................... 2

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................................... 12, 14

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) ............................................................................... 14

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
   138 S. Ct. 617 (2018) .............................................................................................. 8

*Portland Audubon Soc'y v. Endangered Species Comm.*,
   984 F.2d 1534 (9th Cir. 1993) ......................................................................... 13, 14

*Reno-Sparks Indian Colony v. EPA*,
   336 F.3d 899 (9th Cir. 2003) ................................................................................. 15

*San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*,
   819 F. Supp. 2d 1077 (E.D. Cal. 2011) .................................................................. 11

*Seattle Audubon Soc'y v. Lyons*,
   871 F. Supp. 1291 (W.D. Wash. 1994),
   *aff'd sub nom. Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401 (9th Cir. 1996) ...... 13

*Stivers v. Pierce*,
   71 F.3d 732 (9th Cir. 1995) ..................................................................................... 5

*Stone v. Advance Am.*,
   278 F.R.D. 562 (S.D. Cal. 2011) ............................................................................. 2

*United States v. Hercules, Inc.*,
   961 F.2d 796 (8th Cir. 1992) ................................................................................... 6

*United States v. Nat'l Treasury Emps. Union*,
   513 U.S. 454 (1995).............................................................................................. 11

*Utility Air Regul. Grp. v. EPA*,
   573 U.S. 302 (2014)............................................................................................. 8-9

*Weingarten v. DeVos*,
   468 F. Supp. 3d 322 (D.D.C. 2020) ......................................................................... 7

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022) .......................................................................... 8, 9, 10

*WildEarth Guardians v. Haaland*,
   No. CV 20-56 (RC), 2022 WL 1773476 (D.D.C. June 1, 2022) ............................... 13

*Withrow v. Larkin*,
   421 U.S. 35 (1975) .......................................................................................... 5

*Yesler Terrace Cmty. Council v. Cisneros*,
   37 F.3d 442 (9th Cir. 1994) ............................................................................ 14

**STATUTES**

5 U.S.C. § 551 ................................................................................................ 14

5 U.S.C. § 553 ................................................................................................ 14

20 U.S.C. § 1082 .......................................................................................... 6, 9

20 U.S.C. § 1087e ....................................................................................... 7, 13

20 U.S.C. § 3441 ............................................................................................. 9

20 U.S.C. § 3471 ............................................................................................. 9

28 U.S.C. §§ 516-519 ................................................................................. 10, 11

**FEDERAL RULES**

Fed. R. Civ. P. 23 ...................................................................................... 11, 15

**REGULATIONS**

34 C.F.R. § 668.87 ........................................................................................... 4

Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family
   Education Loan Program, and William D. Ford Federal Direct Loan Program,
   87 Fed. Reg. 41,878 (July 13, 2022) ............................................................... 15

Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family
   Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher
   Education Assistance for College and Higher Education Grant Program,
   81 Fed. Reg. 39,330 (June 16, 2016) ................................................................ 7

**OTHER AUTHORITIES**

*Auth. of the United States to Enter Settlements Limiting the Future Exercise of Exec. Branch Discretion,*
   23 Op. O.L.C. 126 (1999) ........................................................................................................ 15

*Education Department Approves $5.8 Billion Group Discharge to Cancel all Remaining Loans for 560,000 Borrowers Who Attended Corinthian* (June 1, 2022),
   https://perma.cc/MTW6-XABV ................................................................................................ 7

*Secretary DeVos Cancels Student Loans, Resets Pell Eligibility, and Extends Closed School Discharge Period for Students Impacted by Dream Center School Closures* (Nov. 8, 2019),
   https://perma.cc/FRT6-WAWS ...............................................................................  7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

In their motion for final approval, the parties explained that the proposed settlement agreement will provide relief to approximately 264,000 class members and will do so without the delay or risk of continued litigation.  ECF No. 323 ("Joint Mot. for Final Approval").  For approximately 75% of the class, that settlement relief will consist of automatic federal student loan discharges, refunds of amounts paid to the Department of Education ("Department"), and credit repair.  *Id.* at 9.  As to the remaining class members, the Department will appropriately adjudicate their borrower defense applications under a settlement-specific, streamlined review process.  *Id.* at 9-10.  This proposed agreement—reached after extensive and arms-length negotiation between the parties—is consistent with what class members might reasonably expect to receive through litigation and fairly accommodates the interests of the Department and those of borrowers.

Four intervenors are now asking this Court to disapprove the settlement: The Chicago School of Professional Psychology ("TCSPP"), Everglades College, Inc. ("ECI"), Lincoln Educational Services Corporation, and American National University ("ANU") (collectively, "Intervenors").  *See* ECF No. 324 ("TCSPP Opp."); ECF No. 325 ("ECI Opp."); ECF No. 326 ("Lincoln Opp."); ECF No. 327 ("ANU Opp.").  These institutions of higher education (along with dozens of others) are included in Exhibit C to the settlement agreement.  ECF No. 246-1 at 36-40. The settlement agreement provides that borrower defense applicants who attended these schools are entitled to "Full Settlement Relief."  *See* Defs.' Opp. to Intervention Mots. at 7, ECF No. 288 ("Defs.' Opp.").  As explained, an institution's inclusion in Exhibit C is not based on an official finding of misconduct or wrongdoing by the Department, and does not purport to be, but rather is the result of the parties' negotiated assessment that, for each school, there exists sufficient threshold indicia of wrongdoing to justify summary settlement relief for associated class members. *Id.* (citing Decl. of Benjamin Miller ¶ 7, ECF NO. 288-1).

As the Court already recognized, the schools on Exhibit C "already got the money" from students' federal student loans, and "there's no way [the Department] can take that money back from [the schools] except through a recoupment action" during which "due process is totally

preserved." Aug. 4 Tr. at 24:7-10. Nevertheless, Intervenors oppose the settlement agreement, based on asserted reputational harm. But even if the Court were to credit their claim, Intervenors have failed to demonstrate that their interests justify denying final approval. Intervenors similarly miss the mark in arguing that the settlement agreement infringes on their due process rights. And Intervenors' arguments grounded in statutory interpretation, the major questions doctrine, and the Administrative Procedure Act ("APA") misconstrue the settlement agreement, the applicable law, or both. The Court should reject these efforts and grant the joint motion for final approval.[1]

## DISCUSSION

## I.     INTERVENORS' ARGUMENTS ABOUT REPUTATIONAL HARM PROVIDE NO BASIS TO WITHHOLD FINAL APPROVAL

Intervenors contend generally that the settlement agreement would cause them reputational harm. *See, e.g.*, Lincoln Opp. at 9-13; ANU Opp. at 15-21; TCSPP Opp. at 1-2. This is not the case for reasons the parties have explained at length. *See* Joint Mot. at 24-25; Defs.' Opp. at 17-19; Pls.' Opp. to Intervention Mots. at 15-16, ECF No. 287. Intervenors' briefs do little more than rehash arguments previously addressed, so Defendants will not belabor this point. In short, the proposed settlement agreement is for the limited purpose of resolving the claims at issue in this litigation. It imposes no concrete consequences on the schools, and the schools have no cognizable interest in not being included on a list created solely to aid the Secretary's discretion in settling class members' federal student loan debt in the context of this litigation settlement. *See, e.g.*, *Advanced Mgm't Tech., Inc. v. FAA*, 211 F.3d 633, 636-37 (D.C. Cir. 2000) (rejecting claimed "reputational injury" based on alleged injured party's "vast exaggeration of [federal agency's] findings" and "no evidence that the [agency's] findings cast any shadow over its business activities"); *Ezzell Trucking, Inc v. Fed. Motor Carrier Safety Admin.*, 309 F.3d 24, 26 (D.C. Cir.

---

[1] Given the overlap of arguments advanced by Intervenors, Defendants file this consolidated response to each brief in opposition. Additionally, Defendants do not herein address those issues on which Plaintiffs bear the burden, including issues pertaining to the Court's subject-matter jurisdiction, *see Jackson v. City & Cnty. of San Francisco*, 829 F. Supp. 2d 867, 870 (N.D. Cal. 2011), and class certification, *see Stone v. Advance Am.*, 278 F.R.D. 562, 568 (S.D. Cal. 2011).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2002). Intervenors are able to communicate the limited purpose of Exhibit C with "students . . . , faculty, donors, accreditors, regulators, and investors," ANU Opp. at 15, as well as the fact that inclusion on the Exhibit C list "does not itself provide any evidentiary support or basis" for the Department's initiation of any enforcement proceeding against any Intervenor school. Defs.' Opp. at 17 (quoting Miller Decl.). Intervenors do not substantiate their assertions that the settlement agreement is actually causing "serious damage" to their reputations, Lincoln Opp. at 8, nor do they explain how the Court's disapproval of this duly negotiated settlement would redress their asserted interests in avoiding negative publicity. *See* Defs.' Opp. at 17-19 & n.4. Accordingly, the schools on Exhibit C are not "stigma[tized]," ANU Opp. at 17, merely by their inclusion on the list. *Cf. Foretich v. United States*, 351 F.3d 1198, 1211-12 (D.C. Cir. 2003) (finding that a party had demonstrated a sufficient reputational injury to confer standing to challenge a law that allegedly "abrogated [his] parental rights on the basis of a judgment that the person is unfit as a parent").

More fundamentally, Intervenors are wrong to suggest that their asserted interests should be permitted to outweigh the interests of the class in obtaining a fair, reasonable, and adequate settlement. *See, e.g.*, ANU Opp. at 12. Under Rule 23, the Court's "duty is ultimately to ensure a fair, reasonable, and adequate settlement for the class." *In re Novatel Wireless Secs. Litig.*, No. 08-CV-1689, 2014 WL 2858518, at *7 (S.D. Cal. June 23, 2014); *see also* Joint Mot. at 6-7. While the Court can certainly consider the concerns expressed by outsiders like Intervenors to "keep the system honest" and help it "see the opposing arguments," Aug. 4 Hr'g Tr. at 52, those concerns are not given the same weight in the Rule 23 analysis as the concerns of class members. Indeed, in the case that Lincoln cites for the proposition that courts "must weigh concerns 'expressed by non-parties,'" Lincoln Opp. at 9, the court ultimately approved the class action settlement because "the majority of the relevant factors favor a finding that that the Settlement Agreement is fair, adequate, and reasonable" and "the arguments advanced by a small number of objectors [were] unpersuasive." *Bostick v. Herbalife Int'l of Am., Inc.*, 2015 WL 12731932, at *29 (C.D. Cal. May 14, 2015); *see also In re Novatel Wireless Secs. Litig.*, 2014 2858518, at *7 ("appreciat[ing] the intervenors' position" but granting final approval over their objection). Ultimately, Rule 23

determines the process for ensuring that the concerns of the relevant constituency—that is, the class as a whole and especially its absent class members—are adequately represented and protected.  *See, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (when reviewing class action settlement, court has a "fiduciary duty to look after the interests of . . . absent class members").  Here, all of the Rule 23 factors favor approval.  *See* Joint Mot. at 6-20.  The marginal reputational harm Intervenors assert the settlement will cause them cannot tip the scales against final approval, particularly given the overall favorable response of the class, *see id.* at 14-15.

## II.     THE SETTLEMENT AGREEMENT DOES NOT INFRINGE ON INTERVENORS' DUE PROCESS RIGHTS

Intervenors also raise various "due process" objections to the settlement.  Primarily, those objections restate their concerns about being "deprived" of certain procedural rights (*e.g.*, to receive notice of a pending claim and the opportunity to respond) afforded by the borrower defense regulations when the Department adjudicates borrower defense applications in the ordinary course. *See, e.g.*, TCSPP Opp. at 18; ECI Opp. at 19.  But those procedures are inapplicable here, where the Department is committing to exercise its statutory authority to settle (where appropriate) student loan debts of class members rather than exercising its separate authority under the borrower defense regulations.  *See* Defs.' Opp. at 15-18.  And schools would be afforded significant due process protections before any actual consequences—*e.g.*, recoupment of discharged funds— could attach as a result of institutional misconduct.  *Id*. at 3-4, 7-8, 16.  Indeed, mere inclusion on Exhibit C is not a basis for any future recoupment or enforcement proceeding or a substitution for any such proceedings, *see, e.g.*, Defs.' Opp. at 7-8, 16, and before the Department could recoup any loan amounts discharged pursuant to this settlement agreement, it would have to prove that the subject "institution's act or omission gave rise to valid borrower defense," 34 C.F.R. § 668.87(a)(1)(iv), after providing notice and an opportunity to be heard, *see generally id*. § 668.87.

Intervenors' further argument that the settlement agreement violates their "constitutional due process rights," Lincoln Opp. at 22; *see also* ECI Opp. at 18-20, is even more far-fetched.  As the Court made clear, Intervenors have no "property interest" at stake—nor any other concrete

interest sufficient to warrant intervention of right—in the parties' proposed settlement. *See* Order re Mots. to Intervene at 1, ECF No. 322 (granting only permissive intervention); Aug. 4 Hr'g Tr. at 52.[2] Moreover, "due process is totally preserved" because the Department cannot "take [any] money back from [Intervenors] except through a recoupment action." Aug. 4 Hr'g Tr. at 52.

Given the procedures described in this section and in prior briefing, Lincoln's contention that it has been denied constitutionally adequate process rings hollow. Schools have no cognizable interest in avoiding mere "exposure to recoupment liability." Lincoln Opp. at 24. To the extent they have an interest at all, it is in the actual funds themselves, and schools will "get [their] day in court before [they] ever have to give the money back." Aug. 4 Hr'g Tr. at 24:16-18.[3]

### III.   THE SETTLEMENT AGREEMENT DOES NOT EXCEED THE DEPARTMENT'S AUTHORITY

As explained in the joint motion, the settlement agreement is legally authorized and provides for the Department to take actions that fit comfortably within its settlement and

---

[2] There is no support for Lincoln's contention that this case implicates any "constitutionally protected liberty interest." Lincoln Opp. at 22. As Lincoln recognizes, a party's "reputation" can only supply such an interest if the party can show that it was "stigmatized in connection with the denial of a more tangible interest." *Id.* (quoting *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006)). The mere fact that a school is included on Exhibit C—a list compiled for settlement purposes only and that imposes no financial consequences or other obligations on that school—neither stigmatizes nor interferes with any interest "more tangible" than reputation. *See Endy v. Cnty. of Los Angeles*, 975 F.3d 757, 764 (9th Cir. 2020) ("[P]rocedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of a right or status previously recognized by state law.").

[3] The fact that a Department official would adjudicate a recoupment proceeding does not deprive Lincoln or any other school of a "neutral decisionmaker." Lincoln Opp. at 25. As a general matter, the fact that an agency combines investigatory and adjudicative functions raises no due process concerns. *See Withrow v. Larkin*, 421 U.S. 35 (1975). And as Intervenors elsewhere recognize, an agency is required to follow its own regulations, and the relevant regulations provide significant procedural protections before the Department can recoup discharged funds or take any other action against schools based on institutional misconduct. Lincoln has not even attempted to demonstrate "*actual bias* on the part of the adjudicator" or that "the adjudicator's pecuniary or personal interest in the outcome of the proceedings . . . create[s] an *appearance of partiality* that violates due process, even without any showing of actual bias." *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995); *see also Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 497 (1976) (noting that administrative adjudicators are presumed to act with honesty and integrity).

compromise authority under the HEA.  *See* Joint Mot. at 21-24.  For the most part, Intervenors ignore this argument.  They instead continue to argue that the agreement would impermissibly abrogate the Department's borrower defense regulations.  *See* TCSPP Opp. at 17-19; ECI Opp. at 17-18, 20-21; Lincoln Opp. at 17-19.  But the borrower defense regulations do not apply to the actions contemplated under the settlement, which are effectuated under a separate source of statutory authority—the HEA's settlement and compromise authority, 20 U.S.C. § 1082(a)(6).  *See* Defs.' Opp. at 13-16; Joint Mot. at 21-24; Joint Status Report, ECF No. 300 at 2 ("Settlement relief does not constitute an approved or successful borrower defense claim . . .").

Similarly, Intervenors do not advance their case by contending that the Attorney General cannot settle litigation on terms that would circumvent statutory or regulatory requirements.  *See, e.g.*, TCSPP Opp. at 14-15; ECI Opp. at 24.  That has no bearing here.  This is not a situation in which the Department has agreed to "abdicate all aspects of its borrower defense regulations," TCSPP Opp. at 15, because, as most Intervenors choose to ignore, the HEA authorizes the actions specified in the settlement.  The Attorney General's "plenary discretion" to direct and settle litigation involving the United States cannot be "diminished without a clear and unambiguous directive from Congress."  *United States v. Hercules, Inc.*, 961 F.2d 796, 798 (8th Cir. 1992).  No such directive exists here; to the contrary, in the HEA, Congress expressly authorized the actions contemplated in the settlement.  *See* Joint Mot. at 21-24.

Only ECI actually disputes that this provision of the HEA provides a statutory basis for the actions the Department has committed to take under the proposed settlement agreement.[4]  *See* ECI Opp. at 21-22.  But its arguments are inconsistent with the plain text of the HEA.  For example,

_____

[4] Lincoln suggests that the Secretary of Education's and the Attorney General's "general [settlement] authority does not include the power to violate specific legal requirements," namely the Department's borrower defense regulations.  Lincoln Opp. at 19.  They make no reference to Section 1082(a)(6) and its specific application here.  But more fundamentally, if the Department's actions here are authorized by the Secretary's settlement and compromise authority, then they are authorized, and that is the end of the inquiry.  Such actions that are expressly authorized by statute cannot "violate" different regulatory requirements that only apply when the Secretary acts pursuant to a different source of statutory authorization.

ECI first contends that Section 1082(a)(6) provides "no authority to settle" claims "against the Department." *Id.* at 21 (emphasis omitted).  That argument cannot be squared with the statutory text, which unambiguously grants the Secretary authority to "waive" or "release" his "right" to collect the federal student loan debts of certain class members in order to resolve class members' claims against the Department. *See, e.g.*, *Weingarten v. DeVos*, 468 F. Supp. 3d 322, 328 (D.D.C. 2020) ("The Department has what is known as Compromise and Settlement authority, which allows [it] to compromise or waive any title or claim," and to "settle with student loan borrowers" who would not otherwise be entitled to any loan relief.).  The settlement agreement's provision for the release of federal student loan debts owed to the Department by federal student loan borrowers, on terms determined by the Secretary as part of a negotiated resolution of litigation against the Department, falls comfortably within that clear statutory authorization. *See* Joint Mot. at 21-24.

Second, ECI notes that Section 1082(a)(6) is located in Part B of the HEA, which "addresses the FFEL Loan program." ECI Opp. at 22.  ECI ignores, however, that Direct Loans "shall have the same terms, conditions, and benefits, and be available in the same amounts, as loans made" under the FFEL program.  20 U.S.C. § 1087e(a)(1).  The Department has long interpreted this provision to extend its foundational settlement and compromise authority to the Direct Loan Program, *see* 81 Fed. Reg. 39,330, 39,368 (June 16, 2016) ("The HEA has, since 1965, authorized the Secretary to compromise—without dollar limitation—debts arising from title IV, HEA student loans."); *Weingarten*, 468 F. Supp. 3d at 328 (noting that Section 1082(a)(6) authority "covers [FFEL] and Direct Loans alike"), and has regularly invoked it to release Direct Loan debts owed to the Department on terms determined by the Secretary.  *See* Joint Mot. at 22; *see also Education Department Approves $5.8 Billion Group Discharge to Cancel all Remaining Loans for 560,000 Borrowers Who Attended Corinthian* (June 1, 2022), https://perma.cc/MTW6-XABV; *Secretary DeVos Cancels Student Loans, Resets Pell Eligibility, and Extends Closed School Discharge Period for Students Impacted by Dream Center School Closures* (Nov. 8, 2019), https://perma.cc/FRT6-WAWS.  ECI neither addresses the "parallel terms and conditions" statute nor provides any reason to upset the Department's longstanding interpretation.

Finally, ECI invokes "the canon of constitutional avoidance" and the "major-questions doctrine" to contend that the text of Section 1082(a)(6) cannot possibly mean what it says.  ECI Opp. at 23.  But any analysis of an agency's statutory authority "begins with the statutory text"— and, when the text is clear, it "ends there as well."  *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018).  Here, as discussed elsewhere in this brief, the major questions doctrine has no application.  *See infra* Part IV.  But even if it did, because the Secretary *can* point to "clear congressional authorization for the power he claims" in the HEA, his exercise of that authority survives whatever degree of "skepticism" may be counseled by the major questions doctrine.  *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) (citations omitted).  The settlement is authorized by statute, and Intervenors' objections provide no basis to withhold final approval.

## IV.   THE SETTLEMENT AGREEMENT DOES NOT VIOLATE THE MAJOR QUESTIONS DOCTRINE

Nor can Intervenors advance their argument by claiming that the settlement more generally violates the major questions doctrine.  *See* TCSPP Opp. at 15-17; ECI Opp. at 23; Lincoln Opp. at 19.  In a few extraordinary cases, the Supreme Court has required "clear congressional authorization" for sweeping agency action where, "under more 'ordinary' circumstances," a "merely plausible textual basis" for that action might suffice under standard principles of statutory interpretation.  *West Virginia*, 142 S. Ct. at 2609; *see also Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) ("We expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'").  The mere fact that a case is significant does not mean that it triggers the major questions doctrine.  Rather, the hallmark of a "major questions case" is a marked incongruence between the agency action at issue and the history, purpose, or context of the statute that purportedly authorizes it.  Thus, the Supreme Court has invalidated agency action that advanced "novel reading[s]" of longstanding statutes, *West Virginia*, 142 S. Ct. at 2605, in order to claim "extravagant statutory power over the national economy," *id.* at 2609, and made "decisions of vast economic and political significance," *id.* at 2605, without firm indication that Congress intended it to exercise that authority.  *See also Utility*

*Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (requiring clear congressional authorization "[w]hen an agency claims to discover in a long-extant statute an unheralded power to regulate 'a significant portion of the American economy,'" and where the challenged action would "bring about an enormous and transformative expansion in . . . regulatory authority").

This case bears none of these features. As previously explained, the proposed settlement is wholly consistent with the HEA's broad grant of authority to compromise claims of and against the Department arising out of the federal student loan programs. *See* 20 U.S.C. §§ 1082, 3441, 3471. Nothing about these provisions (which date back to 1965) is "cryptic," *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000), or "ancillary," *West Virginia*, 142 S. Ct. at 2602. Moreover, this case does not involve the kind of regulation of private parties that have previously implicated the major questions doctrine. *See, e.g.*, *West Virginia*, 142 S. Ct. at 2599 (regulation of power plants); *Ala. Ass'n of Realtors*, 141 S. Ct. at 2489 (private landlords). And as also noted above, the Department has historically used this authority to provide full loan discharges to resolve claims asserted against the Department in litigation as well as administrative proceedings. *See, e.g.*, *Weingarten*, 19-cv-02056-DLF (D.D.C.).

All of that distinguishes this case from *West Virginia*, on which Intervenors rely. TCSPP Opp. at 15-16; ECI Opp. at 23; Lincoln Opp. at 19. There, the Court found that the agency action at issue involved the use of what the Court described as a "little-used backwater" provision of the Clean Air Act to impose a 10% energy rate hike, permanently shut down many power plants, inflict a $1 trillion loss to GDP, and require a complete reorganization of American energy infrastructure. *West Virginia*, 142 S. Ct. at 2604. In that context, the Court concluded that some "skepticism" of the agency's position might have been warranted. *Id.* at 2614. But Defendants are aware of no case applying the major questions doctrine in the settlement context, and nothing of the sort is justified here, where the Secretary—relying on well-established authority to compromise claims— seeks to settle the case on terms comparable to what class members might reasonably expect to receive through litigation, clear the large backlog of pending borrower defense applications, and efficiently resolve this litigation with targeted relief to class members. Congress's broad grant of

authority to the Attorney General to settle litigation, 28 U.S.C. §§ 516-519, only confirms that the proposed settlement is not so far afield as to trigger the major questions doctrine.

The Supreme Court also looks to whether the challenged action is within the agency's traditional field of expertise in determining whether the major questions doctrine applies. *See West Virginia*, 142 S. Ct. at 2612–13 ("'When [an] agency has no comparative expertise' in making certain policy judgments, we have said, 'Congress presumably would not' task it with doing so."). The challenged action here falls squarely within the Department's area of expertise. The Department is in the business of administering the federal student financial aid programs and, in appropriate circumstances, settling claims arising from those programs. And the Department's action here is limited to providing relief within the confines of the programs it administers—it has not purported to use HEA authority in a manner that would expand the jurisdiction of the Department. This too distinguishes this case from major questions cases where agencies exercised authority in unaccustomed areas. *See, e.g.*, *Ala. Ass'n of Realtors*, 141 S. Ct. at 2489 ("The moratorium intrudes into an area that is the particular domain of state law: the landlord- tenant relationship."); *Brown & Williamson*, 529 U.S. at 159-60 ("Congress has . . . squarely rejected proposals to give the FDA jurisdiction over tobacco.").

## V.    INCLUSION OF INTERVENORS IN EXHIBIT C ACCORDS WITH THE ADMINISTRATIVE PROCEDURE ACT, AND THE SETTLEMENT IS NOT OTHERWISE ARBITRARY

Equally unpersuasive are Intervenors' arguments that their inclusion in Exhibit C is "arbitrary" or otherwise inconsistent with the APA. *See* TCSPP Opp. at 21-24; ECI Opp. at 14-17; Lincoln Opp. at 19-21.[5] As an initial matter, Intervenors do not appear to argue that the settlement agreement in its entirety lacks a rational basis. Nor could they. As Defendants have previously explained, the proposed settlement fairly and efficiently resolves pending borrower defense applications as well as this litigation. It does so, moreover, more expeditiously than would

---

[5] To the extent these arguments reiterate those pertaining to the Department's adherence to statutory and regulatory requirements, *e.g.*, ECI Opp. at 18, 20-21; Lincoln Opp. at 20-22, they are addressed in Part III, *supra*.

be possible absent the agreement, and in a manner entirely consistent with the authority conferred by the HEA.  Without the settlement's streamlined review procedures, resolving the large number of pending applications for the entire class would require years—at a minimum, many years more than the timelines set forth in the agreement—to the significant detriment of the agency's ability to carry out other priorities and statutory directives, and would also leave class members without decisions on their applications for years as well.  Joint Mot. for Final Approval at 23.  *Cf. United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 473 (1995) (noting that "operational efficiency is undoubtedly a vital governmental interest").    In these circumstances, the Department's judgment to settle the pending litigation—which among other things seeks to impose court-ordered timelines on the Department's resolution of hundreds of thousands of pending applications—on these terms is a rational exercise of its statutory authority.

Instead, Intervenors argue that the Department has failed to adequately explain its rationale for Exhibit C or failed to put forward adequate evidence of misconduct by the schools listed in Exhibit C.  TCSPP Opp. at 22-24; ECI Opp. at 15; Lincoln Opp. at 12.  But Intervenors offer no basis to shoehorn a traditional APA analysis into the Court's consideration of whether final settlement approval is warranted.  In the context of an APA challenge, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see also, e.g.*, *San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*, 819 F. Supp. 2d 1077, 1084 (E.D. Cal. 2011) ("[I]n a case involving review of a final agency action under the [APA] . . . summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.") (citation omitted).  By contrast, Rule 23(e)(2) does not make final approval of a class action settlement contingent upon record review.  *See* Fed. R. Civ. P. 23.  The numerous cases cited by Intervenors confirm as much: while those cases articulate general APA principles, *e.g.*, ECI Opp. at 14-16, none arose in the context of a motion for final approval under Rule 23.  And the HEA and 28 U.S.C. §§ 516-519 do not require any in-depth

analysis or statement of reasons for compromising claims.

Indeed, the dearth of authority supporting Intervenors' argument is unsurprising given that "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Further, when applying Rule 23(e), a court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). Rule 23(e) is not meant to allow any potentially interested third party to transform class action proceedings into full-blown record review of agency decision-making. The Court should reject Intervenors' efforts to establish such an unprecedented standard of review.[6]

Insofar as Intervenors contend that Exhibit C is arbitrary because it does not include certain additional schools that may have engaged in misconduct, *see* TCSPP Opp. at 21; Lincoln Opp. at 11-12, that argument fails as well. It has long been established that an agency's decision not to exercise its discretionary authority with respect to a regulated entity is unreviewable under the APA. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Accordingly, the absence of other schools in Exhibit C—which, to reiterate, does not reflect any formal finding of misconduct, let alone an enforcement decision, *see* Defs.' Opp. to Intervention Mots. at 7—does not support an argument that Exhibit C is arbitrary or otherwise inconsistent with the APA. Additionally, the absence of a school from Exhibit C does not indicate that a given school has been "cleared" of any allegations of misconduct, or that misconduct will not be discovered or substantiated in the future. Rather, for borrowers who attended schools not on Exhibit C, the Department merely determined that

---

[6] For the same reason, the Court should reject ECI's claims that the Department ignored "exculpatory evidence" about the school. ECI Opp. at 15-16. ECI mischaracterizes the document it cites, ECI Opp. at 15-16, which represents only a preliminary conclusion based on partial evidence. *See* ECF No. 193-3 at 40-50. The "initial review" summarized the sample of the claims filed by borrowers for purposes of determining if a class approach for review of claims was appropriate and did not include any final adjudications. *See id.* Additionally, the document specifically notes that the Department did not have evidence collected by the Florida Attorney General in connection with an investigation that resulted in an Agreement of Voluntary Compliance by the school. *Id.* at 42.

1

summary settlement relief was not appropriate.

2

TCSPP also argues that Exhibit C is arbitrary because "certain persons will not get any

3

relief just because they consolidated or paid off their federal debts with private loans servicers and

4

did not submit borrower defense applications."  TCSPP Opp. at 23.  Putting aside the fact that

5

TSCPP is apparently advocating here that *more* of its students should receive full settlement relief,

6

and notwithstanding that such borrowers are not members of the class, the parties have already

7

explained why the proposed settlement agreement does not contain direct relief for borrowers who

8

currently have privately held loans: the Department has no statutory authority to discharge non-

9

Federal loans.  Joint Mot. for Final Approval at 20.  Further, students with no outstanding loan at

10

the time of application cannot avail themselves of a borrower defense claim, as they have nothing

11

left to repay.  *See* 20 U.S.C. § 1087e(h) (providing that the Secretary "shall specify in regulations

12

which acts or omissions of an institution of higher education a borrower may assert as a defense

13

to *repayment* of a loan made under this part") (emphasis added).

14

The additional arguments raised by ECI are also without merit.  For example, according to

15

ECI, Exhibit C is arbitrary due to "undisclosed insider influence of agency adjudication."  ECI

16

Opp. at 16 (citing *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1539-

17

41 (9th Cir. 1993)).  That assertion is notably devoid of any evidence of improper conduct.  And

18

by ECI's reasoning, any settlement between a plaintiff and an agency would violate the APA,

19

because  settlements typically are based on non-public discussions between the negotiating parties.

20

ECI's theory also overlooks a basic principle of civil litigation: "'Ordinarily a settlement between

21

the parties in such cases is motivated by a mutual desire to avoid the expense and risks of

22

litigation.'  That the parties perceived a mutual benefit in obtaining some of what they each might

23

have achieved by litigating is not indicative of bad faith."  *WildEarth Guardians v. Haaland*, No.

24

CV 20-56 (RC), 2022 WL 1773476, at *4 (D.D.C. June 1, 2022) (citations omitted); *see also*

25

*Seattle Audubon Soc'y v. Lyons*, 871 F. Supp. 1291, 1318 (W.D. Wash. 1994) ("Government

26

officials . . . are presumed to have acted in good faith[.]"), *aff'd sub nom. Seattle Audubon Soc. v.*

27

*Moseley*, 80 F.3d 1401 (9th Cir. 1996).  Moreover, *Portland Audobon Society* is inapposite, as that

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

case concerned alleged *ex parte* communications between the White House and the Endangered Species Committee—not a negotiated settlement agreement submitted for approval pursuant to Rule 23. *See* 984 F.2d at 1536.

Intervenors next argue that the parties' correction of the list of schools in Exhibit C violates the APA. ECI Opp. at 16-17; *see also* TCSPP Opp. at 22 n.11 (making similar argument). As none of these corrections pertain to Intervenors, however, the basis of their complaints is difficult to discern. In any event, the parties' correction does not provide a reason to disapprove the settlement agreement under Rule 23, both because it does not undermine "the fairness of [the] settlement as a whole," *Lane*, 696 F.3d at 818-19, and because the Court should not punish the Department for taking steps to more accurately reflect the parties' meeting of the minds, *cf. Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (explaining that "what is expected of a law-abiding agency is that it admit and correct error when error is revealed").

ECI and Lincoln fare no better asserting that the settlement improperly amends the current borrower defense regulations in contravention of the APA's notice-and-comment requirements. ECI Opp. at 17-18; Lincoln Opp. at 20-21. The APA makes clear that notice and comment is required only for rules, which are defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency[.]" 5 U.S.C. § 551(4); *see id.* § 553. As the Ninth Circuit has explained, rules uniquely "affect[] the rights of broad classes of unspecified individuals[,]" are "prospective, and ha[ve] a definitive effect on individuals only after the rule subsequently is applied." *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994) (discussing differences between APA rulemaking and adjudication). The settlement agreement itself plainly does not meet that criteria—it is effective once final judgment becomes non-appealable (or after final resolution of a class member's appeal), Defs.' Opp. at 3, provides relief to specific class members, and has no applicability to the adjudication of applications outside of the settlement and pursuant to the borrower defense regulations. *Cf. Allen v. United States*, 797 F. App'x 302, 307 (9th Cir. 2019) ("Interior did not

need to follow the APA's rulemaking procedures because it merely adjudicated Appellants' application and did not announce any new standard of general applicability and future effect.").

Indeed, requiring notice and comment here makes little sense given the context of this case. "The essential purpose of according [§] 553 notice and comment opportunities is to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies." *Batterton v. Marshall*, 648 F.2d 694, 703 (D.C. Cir. 1980). Rule 23, however, provides its own mechanism for notifying and soliciting comment from class members, as well as for evaluating the overall fairness of a proposed settlement agreement. *See* Fed. R. Civ. P. 23(e). Moreover, the Department *is* undertaking notice and comment rulemaking with respect to the existing borrower defense regulations, separate and apart from the settlement agreement here. 87 Fed. Reg. 41,878 (July 13, 2022).

The authorities cited by Intervenors do not bolster their argument. For example, in *Conservation Northwest v. Sherman*, 715 F.3d 1181, 1187 (9th Cir. 2013), cited in ECI Opp. at 17; Lincoln Opp. at 20-21, the Ninth Circuit "h[e]ld that a district court abuses its discretion when it enters a consent decree that permanently and substantially amends an agency rule that would have otherwise been subject to statutory rulemaking procedures." *Accord Auth. of the United States to Enter Settlements Limiting the Future Exercise of Exec. Branch Discretion*, 23 Op. O.L.C. 126, 163-64 (1999), cited in ECI Opp. at 17. For the reasons discussed above, however, the settlement does not amend the borrower defense regulations, let alone "permanently and substantially," and is otherwise not subject to rulemaking procedures. And in *Reno-Sparks Indian Colony v. EPA*, 336 F.3d 899, 909 (9th Cir. 2003), cited in Lincoln Opp. at 21, the Ninth Circuit concluded that because a rule was interpretive rather than legislative, notice and comment was not required. The case says nothing about whether a settlement agreement like the one before the Court must be submitted for notice and comment beyond the requirements of Rule 23(e).

## CONCLUSION

Defendants respectfully request that the Court grant final approval of the agreement.

Dated: October 17, 2022

Respectfully submitted,

BRIAN D. NETTER
Deputy Assistant Attorney General

STEPHANIE HINDS
United States Attorney

MARCIA BERMAN
Assistant Branch Director

*/s/Stuart J. Robinson*
R. CHARLIE MERRITT
STUART J. ROBINSON
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs
Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (415) 436-6635
E-mail: stuart.j.robinson@usdoj.gov

*Attorneys for Defendants*