Jesse Panuccio (*pro hac vice*)
Jason Hilborn (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Ste. 1200
Fort Lauderdale, FL  33301
Telephone: (954) 356-0011
jpanuccio@bsfllp.com
jhilborn@bsfllp.com

John J. Kucera (SBN 274184)
**BOIES SCHILLER FLEXNER LLP**
725 S. Figueroa St., 31st Fl.
Los Angeles, CA 90017
Telephone: (213) 629-9040
jkucera@bsfllp.com

*Counsel for Intervenor Everglades
College, Inc.*

[Additional Counsel listed on next page]

Lucas Townsend (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: (202) 887-3731
ltownsend@gibsondunn.com

James L. Zelenay, Jr. (SBN 237339)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7449
jzelenay@gibsondunn.com

*Counsel for Intervenor Lincoln Educational
Services Corporation*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendants. | Case No. 3:19-cv-03674-WHA<br><br>**INTERVENORS' NOTICE OF MOTION AND JOINT MOTION FOR STAY PENDING APPEAL**<br><br>Date:     February 23, 2023<br>Time:     8:00 a.m.<br>Room:   12, 19th Floor<br>Judge:    Honorable William Alsup<br><br>(Class Action)<br><br>(Administrative Procedure Act Case) |

John S. Moran (*pro hac vice*)
**McGuireWoods LLP**
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
Telephone: (202) 828-2817
jmoran@mcguirewoods.com

Piper A. Waldron (SBN 291482)
**McGuireWoods LLP**
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 315-8250
pwaldron@mcguirewoods.com

*Counsel for Intervenor American National University*

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on February 23, 2023, at 8:00 a.m., or on a date selected by the Court,[1] in the courtroom of the Honorable William Alsup, Courtroom 12, 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Intervenors Lincoln Educational Services Corporation ("Lincoln"), Everglades College, Inc. ("ECI"), and American National University ("ANU") (together, "Intervenors") will and hereby do respectfully move the Court for an order staying the final judgment pending appeal.  This Motion is supported by the accompanying memorandum of points and authorities, the attached declarations and exhibits, the pleadings and other papers filed in this case, oral argument, and any other matters in the record or of which this Court takes notice.

Dated: January 13, 2023                    Respectfully submitted,

s/ *James L. Zelenay, Jr.*                 s/ *Jesse Panuccio*
James L. Zelenay, Jr.                      Jesse Panuccio (*pro hac vice*)
jzelenay@gibsondunn.com                    jpanuccio@bsfllp.com
**GIBSON, DUNN & CRUTCHER LLP**            Jason Hilborn (*pro hac vice*)
333 South Grand Avenue                     jhilborn@bsfllp.com
Los Angeles, CA 90071                      **BOIES SCHILLER FLEXNER LLP**
T: (213) 229-7449                          401 E. Las Olas Blvd., Ste. 1200
                                           Fort Lauderdale, FL  33301
                                           T: (954) 356-0011
Lucas Townsend (*pro hac vice*)
ltownsend@gibsondunn.com                   John J. Kucera
**GIBSON, DUNN & CRUTCHER LLP**            jkucera@bsfllp.com
1050 Connecticut Ave., NW                  **BOIES SCHILLER FLEXNER LLP**
Washington, DC  20530                      725 S. Figueroa St., 31st Fl.
T: (202) 887-3731                          Los Angeles, CA 90017
                                           T: (213) 692-9040


[Additional Counsel listed on next page]

---

[1] Intervenors respectfully request that the Court hear this Motion as soon as practicable.

s/ *John S. Moran*

John S. Moran (*pro hac vice*)
jmoran@mcguirewoods.com
**MᴄGᴜɪʀᴇWᴏᴏᴅs LLP**
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
T: (202) 828-2817

Piper A. Waldron (SBN 291482)
pwaldron@mcguirewoods.com
**MᴄGᴜɪʀᴇWᴏᴏᴅs LLP**
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
T: (310) 315-8250

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ....................................................................................................... 2

A.    Intervenors Are Likely to Succeed on the Merits. ............................................ 2

     1.    This Court Lacked Jurisdiction to Approve the Settlement. ................................... 2

     2.    The Classes Bound by the Settlement Were Never Certified or Should Have Been Decertified ................................................................................. 3

     3.    The Department Lacks Authority to Provide the Settlement Relief. ..................... 8

         a.    The Secretary Lacks Authority Under the HEA. ........................................ 8

         b.    The Settlement Violates the APA. ............................................................ 13

     4.    The Settlement Violates Due Process. .................................................... 16

B.    Intervenors Will Suffer Irreparable Harm Absent a Stay. .................................. 18

C.    A Stay Will Not Impose Irreparable Harm. ....................................................... 22

D.    The Public Interest Favors a Stay Pending Appeal ............................................ 23

III.    CONCLUSION ................................................................................................ 25

INTERVENORS' BRIEF IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**CASES**

*United States ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954).................................................................................14

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
    141 S. Ct. 2485 (2021)..............................................................................13

*Alvarez v. Smith*,
    558 U.S. 87 (2009)....................................................................................3

*Am. Fed'n of Labor & Cong. of Indus. Orgs. v. OSHA*,
    965 F.2d 962 (11th Cir. 1992)..................................................................14

*Am. Hosp. Ass'n v. Becerra*,
    142 S. Ct. 1896 (2022)..............................................................................11

*Am. Hosp. Ass'n v. Price*,
    867 F.3d 160 (D.C. Cir. 2017)..................................................................14

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................7, 8

*ARC of Wa. State, Inc. v. Quasim*,
    2001 WL 1448523 (W.D. Wa. Oct. 26, 2001)...........................................4

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997)....................................................................................2

*Biden v. Nebraska*,
    143 S. Ct. 477 (2022)..............................................................................23

*Biden, et al. v. Nebraska, et al.*,
    No. 22-506 (U.S. Dec. 1, 2022)......................................................9, 23, 24

*Breitman v. Xerox Educ. Servs., LLC*,
    2014 WL 5364103 (S.D.N.Y. Oct. 22, 2014).............................................7

*Brown v. U.S. Dep't of Educ.*,
    2022 WL 16858525 (N.D. Tex. Nov. 10, 2022).................................8, 9, 13

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016)..................................................................................3

*Cent. Laborers' Pension Fund v. Heinz*,
  541 U.S. 739 (2004)...................................................................................14

*Chauffeur's Training Sch., Inc. v. Riley*,
  967 F. Supp. 719 (N.D.N.Y. 1997)............................................................16

*Cholakyan v. Mercedes-Benz USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012)..............................................................6, 7

*City & Cnty. Of San Francisco v. U.S. Citizenship & Immigr. Servs.*,
  944 F.3d 773 (9th Cir. 2019) ....................................................................11

*Colo. Wild Inc. v. U.S. Forest Serv.*,
  523 F. Supp. 2d 1213 (D. Colo. 2007).......................................................20

*Conservation Nw. v. Sherman*,
  715 F.3d 1181 (9th Cir. 2013) ..................................................................14

*Davidson v. O'Reilly Auto Enters., LLC*,
  968 F.3d 955 (9th Cir. 2020) ......................................................................6

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006).......................................................................4

*Dep't of Army v. Fed. Lab. Rels. Auth.*,
  56 F.3d 273 (D.C. Cir. 1995).....................................................................12

*Dep't of Educ. v. Brown*,
  No. 22-535 (U.S. Dec. 12, 2022) ...........................................................9, 24

*Dep't of Educ. v. Brown*,
  Nos. 22-535, 22A489, 2022 WL 17574107 (U.S. Dec. 12, 2022) .........................23

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170 (3d Cir. 2012).......................................................................8

*DHS v. Regents*,
  140 S. Ct. 1891 (2020)..............................................................................15

*Doe #1 v. Trump*,
  957 F.3d 1050 (9th Cir. 2020) ..............................................................23, 25

*E. Bay Sanctuary Covenant v. Garland*,
  994 F.3d 962 (9th Cir. 2020) ....................................................................15

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..................................................................7, 8

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)..............................................................................11

INTERVENORS' BRIEF IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

*Frank v. Gaos*,
139 S. Ct. 1041 (2019) ...................................................................................2

*FTC v. Qualcomm Inc.*,
935 F.3d 752 (9th Cir. 2019) .......................................................................18

*Genesis Healthcare Corp. v. Symzyk*,
569 U.S. 66 (2013) .........................................................................................2

*Genuine Parts Co. v. EPA*,
890 F.3d 304 (D.C. Cir. 2018) ....................................................................15

*Grae v. Corr. Corp. of Am.*,
2019 WL 1746492 (M.D. Tenn. Apr. 18, 2019) ..........................................21

*In re Grand Theft Auto Video Game Consumer Litig.*,
251 F.R.D. 139 (S.D.N.Y. 2008) ...................................................................4

*Herskowitz v. Apple, Inc.*,
301 F.R.D. 460 (N.D. Cal. 2014) ..................................................................7

*Hewitt v. Grabicki*,
794 F.2d 1373 (9th Cir. 1986) .....................................................................16

*Indigenous Env't Network v. U.S. Dep't of State*,
2019 WL 652416 (D. Mont. Feb. 15, 2019) ................................................19

*Jamie S. v. Milwaukee Pub. Schs.*,
668 F.3d 481 (7th Cir. 2012) .........................................................................7

*Jin v. Shanghai Original, Inc.*,
990 F.3d 251 (2d Cir. 2021) ...........................................................................3

*John Doe Co. v. CFPB*,
235 F. Supp. 3d 194 (D.D.C. 2017) .............................................................18

*Jones v. United States*,
529 U.S. 848 (2000) .....................................................................................13

*Kerley Indus., Inc. v. Pima Cnty.*,
785 F.2d 1444 (9th Cir. 1986) .....................................................................17

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) ...............................................................2, 18

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) .................................................................2, 18

*Marathon Oil Co. v. E.P.A.*,
564 F.2d 1253 (9th Cir. 1977) .....................................................................17

INTERVENORS' BRIEF IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

*Martinez v. United States*,
    670 F. App'x 933 (9th Cir. 2016) ........................................................................................3

*Morton v. Ruiz*,
    415 U.S. 199 (1974) ...........................................................................................................14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .............................................................................................................14

*Nat'l Treasury Emps. Union v. Horner*,
    854 F.2d 490 (D.C. Cir. 1988) ..........................................................................................15

*Nebraska v. Biden*,
    52 F.4th 1044 (8th Cir. 2022) ........................................................................................9, 23

*Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*,
    631 F.2d 953 (D.C. Cir. 1980) ..........................................................................................16

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) .............................................................................................................7

*Patriot, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*,
    963 F. Supp. 1 (D.D.C. 1997) ...........................................................................................21

*Pennsylvania Higher Educ. Assistance Agency v. Perez*,
    416 F. Supp. 3d 75 (D. Conn. 2019) ..................................................................................10

*In re Pike*,
    2008 WL 11336952 (C.D. Cal. Mar. 6, 2008) ...................................................................22

*Pub. Serv. Comm'n of Ky. v. FERC*,
    397 F.3d 1004 (D.C. Cir. 2005) .........................................................................................17

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012) .....................................................................................................11, 12

*Ralpho v. Bell*,
    569 F.2d 607 (D.C. Cir. 1977) ..........................................................................................17

*Regents of Univ. of Cal. v. Am. Broad. Cos.*,
    747 F.2d 511 (9th Cir. 1984) .............................................................................................20

*Remijas v. Neiman Marcus Grp., LLC*,
    341 F. Supp. 3d 823 (N.D. Ill. 2018) ..................................................................................4

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) .............................................................................................20

*Richards v. Delta Air Lines, Inc.*,
    453 F.3d 525 (D.C. Cir. 2006) ............................................................................................7

*Russell v. United States*,
   2012 WL 2343369 (N.D. Cal. June 20, 2012) ......................................................................7

*Senne v. Kansas City Royals Baseball Corp.*,
   2017 WL 5973487 (N.D. Cal. May 5, 2017) ......................................................................22

*Settles v. U.S. Parole Comm'n*,
   429 F.3d 1098 (D.C. Cir. 2005) ........................................................................................12

*Sherman Coll. of Straight Chiropractic v. U.S. Comm'r of Educ.*,
   493 F. Supp. 976 (D.D.C. 1980) ......................................................................................16

*United States v. Carpenter*,
   526 F.3d 1237 (9th Cir. 2008) ..........................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................................5, 6

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ..............................................................................................3

*Weingarten v. DeVos*,
   468 F. Supp. 3d 322 (D.D.C. 2020) ..................................................................................10

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022) ............................................................................................9, 13, 24

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................................................5

*Zerezghi v. U.S. Citizenship & Immigration Servs.*,
   955 F.3d 802 (9th Cir. 2020) ............................................................................................17

**STATUTES**

5 U.S.C § 551 ............................................................................................................................14

5 U.S.C § 553 ............................................................................................................................14

5 U.S.C. § 706 ...........................................................................................................................14

20 U.S.C. § 1071 .......................................................................................................................10

20 U.S.C. § 1078-10 ..................................................................................................................12

20 U.S.C. § 1078-11 ..................................................................................................................12

20 U.S.C. § 1078-12 ..................................................................................................................12

20 U.S.C. § 1082 ...............................................................................................10, 11, 12, 13, 15, 24

INTERVENORS' BRIEF IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

20 U.S.C. § 1087 .................................................................................................12

20 U.S.C. § 1087-4 ..............................................................................................10

20 U.S.C. § 1087e ................................................................................10, 11, 14, 24

20 U.S.C. § 1098bb ..........................................................................................9, 24

**REGULATIONS**

34 C.F.R. § 668.81 ..............................................................................................18

34 C.F.R. § 668.99 ..............................................................................................18

34 C.F.R. § 685.206 .......................................................................................14, 16

34 C.F.R. § 685.222 .......................................................................................14, 16

84 Fed. Reg. 49,788 (Sept. 23, 2019) ...............................................................19

87 Fed. Reg. 52,943 (Aug. 30, 2022)................................................................11

**RULES**

Fed. R. App. P. 4.................................................................................................1

Fed. R. Civ. P. 23 ..........................................................................1, 3, 4, 5, 6, 7, 8

Fed. R. Civ. P. 62 ...............................................................................................2

**OTHER AUTHORITIES**

*Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion*,
   23 Op. O.L.C. 126 (1999) ...........................................................................13

U.S. Dep't of Education, Federal Student Loan Portfolio, Summary, https://studentaid.gov/data-center/student/portfolio .............................................................................................13

INTERVENORS' BRIEF IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The abrupt and sweeping settlement of this long-running class action—concerning alleged delay in adjudication of borrower defense ("BD") applications—presents important issues relating to federal jurisdiction, the separation of powers, and the due process rights of hundreds of educational institutions.  The terms of settlement and relief bear little resemblance to the claims alleged and litigated, the injunctive class certified, the positions of the Department of Education throughout the case, or the record evidence.  The limited relief sought in the Complaints—an end to the Department of Education's alleged policy of inaction on BD claims—was provided long ago when the Department began processing those claims.  Yet the Department is settling a case it rightly maintains is moot by enshrining a new regulatory process and awarding billions in monetary relief.  That relief far exceeds anything obtainable under the Administrative Procedure Act or Rule 23(b)(2).  The plenary authority claimed by the Secretary in this case is even greater than the distinct authority claimed for President Biden's $430 billion debt-cancellation plan, which the Supreme Court will soon consider after twice granting certiorari before judgment.  And the settlement violates the due process rights of Intervenors and other non-party schools by deeming them presumptive wrongdoers contrary to the known administrative record, and by simultaneously depriving schools of an administrative process for creating a decisional record to refute unfounded allegations.

Intervenors do not wish to delay a legitimate settlement of this case or the granting of meritorious BD claims, but they cannot accept an illegal settlement that unfairly harms their reputations and prejudices their rights, as this settlement does.  Accordingly, Intervenors have filed notices of appeal.

The settlement agreement ("Settlement") itself is best read to delay the Effective Date during an appeal, *see* Doc. 246-1, § II.K, or until the final judgment is "not subject to any further review," *id.* § XIII.A.  Intervenors are appealing as of right.  *See* Fed. R. App. P. 4(a)(1)(B).  Therefore the Effective Date should be delayed until Intervenors' appeal is finally resolved.  In an

1    abundance of caution, however, Intervenors respectfully request that the Court formally stay the

2    judgment pending appeal or, at a minimum, stay the judgment as to the appealing Intervenors.

3    Intervenors are likely to succeed on appeal and will suffer irreparable harm absent a stay, and the

4    balance of equities strongly favors a stay.

5    **II.    ARGUMENT**

6           "While an appeal is pending from an interlocutory order or final judgment that grants . . .

7    an injunction, the court may suspend . . . [the] injunction on terms that . . . secure the opposing

8    party's rights."  Fed. R. Civ. P. 62(d).  A stay is warranted where the applicant has shown (1) a

9    likelihood of success on the merits or serious merits questions; (2) irreparable harm absent a stay;

10   (3) the other party will not be injured by a stay; and (4) the public interest favors a stay.  *Lair v.*

11   *Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012).  Under the Ninth Circuit's "sliding scale" approach,

12   "the elements of [this] test are balanced, so that a stronger showing of one element may offset a

13   weaker showing of another."  *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (citation

14   omitted).  "[T]o justify a stay, petitioners need not demonstrate that it is more likely than not that

15   they will win on the merits."  *Id.* at 966.  Each of these criteria is met here.

16          **A.    Intervenors Are Likely to Succeed on the Merits.**

17                 **1.    *This Court Lacked Jurisdiction to Approve the Settlement.***

18          "A court is powerless to approve a proposed class settlement if it lacks jurisdiction over

19   the dispute."  *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019).  For jurisdiction to exist, "an actual

20   controversy must be extant at all stages of review, not merely at the time the complaint is filed."

21   *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).  "If an intervening circumstance

22   deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during

23   litigation, the action can no longer proceed and must be dismissed as moot."  *Genesis Healthcare*

24   *Corp. v. Symzyk*, 569 U.S. 66, 72 (2013).

25          Plaintiffs filed this lawsuit to challenge "a policy of inaction" on their BD claims.  Doc. 1

26   ¶ 7.  Later, Plaintiffs supplemented the Complaint to also challenge the use of "form denials" for

27   a subset of claims.  Doc. 198 ¶ 6.  By the time the proposed settlement was lodged, however, these

28

claims were moot because the Department had long abandoned any alleged policy of inaction—indeed, it has granted tens of thousands of BD applications in the last two years—and agreed to reconsider all alleged form denials.  *See* Doc. 249 at 1, 10–11, 24; Doc. 249-1 at ¶¶ 9–16.  Once Plaintiffs received the relief they requested in the Complaints, this case was moot.  *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 164 n.5 (2016); *Alvarez v. Smith*, 558 U.S. 87, 92 (2009); *Martinez v. United States*, 670 F. App'x 933, 934 (9th Cir. 2016) (unlawful delay claim under the APA is moot if agency has taken action to end the delay).

This Court found the case not to be moot because the Department has not yet finally adjudicated every single Class member's BD application.  Doc. 345 at 19.  But, according to their Complaint, "Plaintiffs . . . d[id] *not* ask this Court to adjudicate their borrower defenses.  Nor d[id] they ask this Court to dictate how the Department should prioritize their pending borrower defenses.  Their request [wa]s simple: they s[ought] an order compelling the Department *to start* granting or denying their borrower defenses and *vacating the Department's policy* of withholding resolution."  Doc. 1 at 3–4 (emphases added).[2]  There is no dispute that the Department has "start[ed] granting or denying" BD applications and thus has provided the very relief sought in the Complaints.  Thus, the case was and is moot and this Court had no jurisdiction to approve the class settlement.[3]  For this reason, Intervenors are likely to succeed on the merits in the Ninth Circuit.

### 2. *The Classes Bound by the Settlement Were Never Certified or Should Have Been Decertified.*

"[D]istrict courts must ensure that a certified class satisfies Rule 23 throughout the litigation" and must "alter or decertify the class if that is no longer the case."  *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262 (2d Cir. 2021); *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013) ("district court should consult the entire record of [a] case" in determining whether to decertify a class); Fed. R. Civ. P. 23, advisory committee's note to 2003 amendment ("The terms of the settlement themselves, or objections, may reveal divergent interests

---

[2] *See also* Doc. 331 at 6 (Plaintiffs stating that they "have never sought to prove the merits of their underlying BD applications" in this litigation).

[3] The position of the Department of Justice—to this day—is that this case is moot.  *See* Doc. 249 at 9-12.  Plaintiffs also recognize that mootness is a "risk."  Doc. 323 at 12-13.

of class members and demonstrate the need to redefine the class or to designate subclasses.").[4]
Here, final approval of the Settlement was improper because the classes of persons affected and
bound by the Settlement were either (1) never properly certified as a class, or (2) no longer satisfied
the requirements of Rule 23(a) and (b) and should have been decertified.

First, according to the approved Settlement, the Class "consist[s] of all people who
borrowed a Direct Loan or FFEL loan . . . who have asserted a borrower defense to repayment to
the Department, whose borrower defense has not been granted or denied on the merits." Doc. 246-
1 § III.A. This class "closed as of the Execution Date," *id.* § III.D, which was on or before June
22, 2022, *id.* § II.L. Yet the Settlement affects, provides relief to, and binds as "Plaintiffs" any
individual who "submit[ted] a borrower defense application after the Execution Date (*i.e.*, the date
the class closes), but before the Final Approval Date" of November 16, 2022. *Id.* §§ II.U, IV.D.1.

According to the most recent update from the parties, by September 22, 2022, this "Post-
Class" class included 179,000 individuals. Doc. 323 at 14. Based on the aggressive marketing
efforts by the parties, many thousands more were likely added to this "Post-Class Applicants"
group between September 22 and November 16, meaning that it likely equals or exceeds the size
of the actual class, which is approximately 264,000 individuals. *Id.* Yet Plaintiffs never filed a
motion to certify such a class, and this Court accordingly never conducted a proper class-
certification analysis or granted certification to such a class. The Court could not, therefore,
appropriately approve a settlement that binds this uncertified class. And because the Settlement—
by its own terms—is an all-or-nothing proposition, Doc. 246-1 § XIII.A, approval of the entire

---

[4] *See also Remijas v. Neiman Marcus Grp., LLC*, 341 F. Supp. 3d 823, 825–29 (N.D. Ill. 2018) (decertifying class at settlement due to inadequate representation of subclass); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 145–147 (S.D.N.Y. 2008) (decertifying settlement class for failure to satisfy predominance requirement and holding "the 'requirements [of Rule 23(a) and (b)] should not be watered down by virtue of the fact that the settlement is fair or equitable.'" (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006)); *ARC of Wa. State, Inc. v. Quasim*, 2001 WL 1448523, at *5 (W.D. Wa. Oct. 26, 2001) (rejecting settlement because "the settlement class proposed by the parties fails to satisfy the commonality and adequacy of representation requirements" and "the parties have failed to show that the class qualifies for certification under any provision of Rule 23(b)," and observing that individuals at issue would not "be well served by certification of a class sure to be overturned on appeal").

1    Settlement was improper and will likely be reversed by the Ninth Circuit.[5]

2          <u>Second</u>, as to actual certified Class members, they no longer satisfied Rule 23(a)'s

3    commonality and typicality requirements by the time the Settlement was approved.  Commonality

4    requires a "single common question" that unites a class's claims.  *Wal-Mart Stores, Inc. v. Dukes*,

5    564 U.S. 338, 359 (2011).  And the test for typicality is whether Class members "have the same

6    or similar injury, whether the action is based on conduct which is not unique to the named

7    plaintiffs, and whether other class members have been injured by the same course of conduct."

8    *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  In approving the

9    Settlement, this Court held that the issue uniting all Class members' claims was that they "remain

10   subject to the same delay and allegedly unlawful policies."  Doc. 345 at 20.  But, as explained

11   above, that is simply untrue at this point.  Plaintiffs "d[id] ***not*** ask this Court to adjudicate their

12   borrower defenses" or "to dictate how the Department should prioritize their pending borrower

13   defenses."  Doc. 1 at 3–4 (emphasis added).  Plaintiffs only "s[ought] an order compelling the

14   Department ***to start*** granting or denying their borrower defenses and ***vacating the Department's***

15   ***policy*** of withholding resolution."  *Id.*  That relief having already occurred, it cannot possibly be

16   the strand that unites the Class in an *ongoing* class action.  That is why the Parties themselves did

17   not rely on such a theory in seeking final approval of the Settlement (which strays far beyond

18   restarting adjudication).  Instead, at the settlement stage, the Parties reframed this suit as

19   "challeng[ing] all aspects of the Department's process of adjudicating a significant number of

20   pending BD applications," including "the substance of certain of the decisions that the Department

21   has rendered."  Doc. 323 at 22.  The substance of individualized decisions is not common to, or

22   typical of, every Class member.  As the Parties admit, these "complicated matters" leave

23   "considerable uncertainty about the appropriate remedy," particularly given the "***differences among***

24   ***Class Members' circumstances***."  *Id.* at 10–12 (emphases added).  Moreover, the relief that flows from

25

26          [5] This Court reasoned that "the class certification order set no cut-off date for membership,
     so the class definition as recited in that order clearly encompasses all of these borrowers."  Doc.
27   345 at 22.  But that definition is *not* the one used in the all-or-nothing Settlement document, and it
     is *that* document that the Court approved in the Order Granting Final Settlement Approval.
28

Exhibit C relies on the Department's individualized determinations about each school—issues that cannot possibly be common to the entire Class. "If there is no evidence that the entire class was subject to the same [unlawful] practice, there is no question common to that class." *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 967 (9th Cir. 2020).

<u>Third</u>, this Court certified a class under Rule 23(b)(2). Doc. 46 at 13. Rule 23(b)(2) "applies only when a *single* injunction or declaratory judgment would provide relief to *each* member of the class." *Wal-Mart*, 564 U.S. at 360 (emphasis added). The equitable remedy for such a class must be "indivisible" and reach "all of the class members." *Id.* Because the remedy must "result in classwide relief," Plaintiffs "cannot seek certification under Rule 23(b)(2) by combining an array of remedies, some of which will benefit only certain subsets of the class, and contending that each member of the class can avail himself or herself of one or more of the proposed remedies." *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 559 (C.D. Cal. 2012). Here, the Settlement violates these requirements because it provides multivariate relief that could be realized only through multiple injunctions that apply to distinct subsets of the Class. *See* Doc. 325 at 13–14. If the Court sought—outside of a settlement—to award the non-compensatory relief provided in the Settlement, it would have to (1) order the non-compensatory relief provided to Path 1 Class Members; (2) order Defendants to adjudicate applications of Path 2 Class Members in accordance with the new "review" process envisioned in the Settlement; and (3) order the Department to apply the 2016 Rule in adjudicating all applications of Path 3 Class Members, as well as grant all applications not fully adjudicated within three years.

Moreover, the reimbursement relief provided to "Exhibit C" Class members cannot be obtained in a Rule 23(b)(2) settlement because that Rule "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360–61. Courts have repeatedly held that Plaintiffs cannot satisfy Rule 23(b)(2) by "'superficially structur[ing] their case around a claim for class-wide injunctive and declaratory relief'" if "as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made.'"

1    *Cholakyan*, 281 F.R.D. at 560 (quoting *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 499 (7th

2    Cir. 2012)).  "[T]he rule has long been that [a] plaintiff cannot transform a claim for damages into

3    an equitable action by asking for an injunction that orders the payment of money," *Richards v.*

4    *Delta Air Lines, Inc.*, 453 F.3d 525, 531 (D.C. Cir. 2006), and a "request for an injunction creating

5    a reimbursement program would merely 'initiate a process' through which individual class

6    members could receive a monetary award," and thus is not an available form of relief for a Rule

7    23(b)(2) class, *Cholakyan*, 281 F.R.D. at 561.[6]

8         This Court reasoned that the requirements of Rule 23(b)(2) are irrelevant because "a

9    settlement can provide broader relief than a court could have awarded after a trial."  Doc. 345 at

10   21.  Whatever merits this principle may have in other contexts, it does not excuse noncompliance

11   with the provisions of Rule 23 designed to protect absentees, which the Supreme Court has

12   repeatedly held "demand undiluted, even heightened, attention ***in the settlement context***."

13   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (emphasis added).  *See also Ortiz v.*

14   *Fibreboard Corp.*, 527 U.S. 815, 849 (1999) ("When a district court, as here, certifies for class

15   action settlement only, the moment of certification requires 'heightene[d] attention' to the

16   justifications for binding the class members.") (citation omitted).

17        Fourth, class certification cannot be maintained in light of the Settlement because the

18   named Plaintiffs are no longer adequate class representatives.  Doc. 345 at 21.  Assessing adequacy

19   of representation requires courts to "resolve two questions: '(1) do the named plaintiffs and their

20   counsel have any conflicts of interest with other class members and (2) will the named plaintiffs

21   and their counsel prosecute the action vigorously on behalf of the class?'"  *Ellis v. Costco*

22   *Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011).  The named Plaintiffs cannot satisfy this test

23   with respect to the Settlement because an intra-Class conflict is baked into the Settlement's

24   structure, which divides the Class into three subgroups eligible for differing relief.  *See, e.g.*, Doc.

25   323 at 9 (noting that the Settlement encompasses a tradeoff between Path 1 and Path 2 in terms of

26

27        [6] *See also Russell v. United States*, 2012 WL 2343369, at *9 (N.D. Cal. June 20, 2012);
     *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 482 (N.D. Cal. 2014); *Breitman v. Xerox Educ. Servs.,*
28   *LLC*, 2014 WL 5364103, at *6 (S.D.N.Y. Oct. 22, 2014).

allocating Department resources).  When a settlement, such as this one, "divides a single class into two groups of plaintiffs that receive different benefits," "[t]he structure of the settlement agreement itself . . . supports the inference that the representative plaintiffs are inadequate."  *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 187 (3d Cir. 2012); *see also Ellis*, 657 F.3d at 986 (plaintiffs eligible for compensatory relief were not adequate representatives because they "would not share an interest with class members whose primary goal is to obtain injunctive relief").

The Final Order holds that the "differentiation" in relief is "equitable" because "[t]he class and Secretary . . . provided a logical and reasoned explanation" of "how the volume of applications and certain indicia of misconduct . . . warrant[ed] tailoring settlement relief to certain subgroups." Doc. 345 at 21.  But "[f]ederal courts . . . lack authority to substitute for Rule 23's certification criteria a standard never adopted by the rulemakers—that if a settlement is 'fair,' then certification is proper."  *Amchem*, 521 U.S. at 622.  When parties arrive at a facially unequal allocation of relief that favors the named Plaintiffs over absent Class Members, Rule 23(a)(4) mandates "structural assurance[s]" that would enable discrete subgroups to represent their own interests, *e.g.*, "divid[ing] the groups into subclasses that would be certified separately."  *Dewey*, 681 F.3d at 189; *see also Amchem*, 521 U.S. at 627 ("[A]dversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups.").

### 3. *The Department Lacks Authority to Provide the Settlement Relief.*

As this Court recognized, the Department of Justice "cannot agree to something that the Secretary of Education cannot do in the first place."  Doc. 345 at 7.  The Secretary lacked authority to enter the Settlement, which violates the Higher Education Act (HEA) and the Administrative Procedure Act (APA).

### a. *The Secretary Lacks Authority Under the HEA.*

The President has directed the Department of Education to find a way to implement a national program of blanket cancellation of student loan debt.  *See Brown v. U.S. Dep't of Educ.*, 2022 WL 16858525, at \*8 (N.D. Tex. Nov. 10, 2022).  The Department has complied by

1   announcing two sweeping debt-cancellation programs and claiming it has statutory authority for

2   both. The first program, however, has already been vacated as beyond the Secretary's authority.

3   The second program—the one embedded in the Settlement—is equally devoid of authority.

4       First, the Department announced a plan to cancel $10,000 of debt for students with annual

5   income up to $125,000. The Department claims the Higher Education Relief Opportunities for

6   Students Act of 2003 (HEROES Act) provides authority for this debt cancellation because, in light

7   of the three-year-old COVID-19 pandemic, it permits the Secretary to "waive or modify any

8   statutory or regulatory provision applicable to the student financial assistance programs under title

9   IV of the [Higher Education] Act . . . as the Secretary deems necessary in connection with a . . .

10  national emergency." 20 U.S.C. § 1098bb(a)(1). In a challenge to this claim of authority, the U.S.

11  District Court for the Northern District of Texas concluded that blanket cancellation of billions of

12  dollars of debt is a policy of "vast 'economic and political significance'" to which the "major-

13  questions doctrine applies" and requires the government to show "'clear congressional

14  authorization.'" *Brown*, 2022 WL 16858525, at *11–12 (quoting *West Virginia v. EPA*, 142 S. Ct.

15  2587, 2607–14 (2022)). The *Brown* court found no such clear authorization because the (1) statute

16  "does not mention loan forgiveness," (2) "'broad or general language' will not supply a clear

17  statement, and (3) "according to the Department, [it] ha[s] not relied on the HEROES Act or any

18  other statutory, regulatory, or interpretative authority for the blanket or mass cancellation" in the

19  past, which is "another clue that the Secretary lacks clear congressional authorization." *Id.* at *13–

20  14 (quoting *West Virginia*, 142 S. Ct. at 2623). The court vacated the program, cautioning that the

21  Department was laying claim to being an "all-powerful executive" and ignoring "the separation of

22  powers as outlined in our Constitution." *Id.* at *15. In a separate case, the Eighth Circuit also

23  issued a nationwide injunction pending appeal. *Nebraska v. Biden*, 52 F.4th 1044 (8th Cir. 2022).

24  The Supreme Court has granted certiorari before judgment in both cases and will hear them this

25  Term. *See Biden, et al. v. Nebraska, et al.*, No. 22-506 (U.S. Dec. 1, 2022); *Dep't of Educ. v.*

26  *Brown*, No. 22-535 (U.S. Dec. 12, 2022)).

27

28

1    <u>Second</u>, the Department is also using this case to implement an even more sweeping

2    program of blanket debt cancellation—*and refunds of prior payments*—to hundreds of thousands

3    of borrowers at a cost of many billions of dollars.  Even though this case is ostensibly about

4    borrower defense, the Department is providing these benefits to its debtors regardless of whether

5    they have even a facially plausible defense to repayment.  Curiously, and perhaps to hedge its bets

6    in light of *Brown* and *Nebraska*, in this case the Department abandons its claim to HEROES Act

7    authority and instead claims authority under 20 U.S.C. § 1082(a)(6), which is a subsection of

8    Part B of the HEA.  But the Department's claim of sweeping authority under the HEA fares no

9    better than its claim to sweeping authority under the HEROES Act.

10   Subsection 1082(a)(6) states: "In the performance of, and with respect to, the functions,

11   powers, and duties, vested in him ***by this part***, the Secretary may . . . enforce, pay, compromise, waive,

12   or release any right, title, claim, lien, or demand, however acquired, including any equity or any right

13   of redemption." 20 U.S.C. § 1082(a)(6) (emphasis added).  "This part" is Part B of the HEA, 20 U.S.C.

14   §§ 1071–1087-4, which addresses only the FFEL Loan Program, not the Direct Loan Program.

15   Because "the vast majority" of loans "at issue here" are "direct loans," Doc. 311 (Tr. 14:10–12),

16   subsection 1082(a)(6) does not provide authority to grant most of the relief specified in the Settlement.

17   To circumvent this obvious statutory problem, the Secretary cited to Part D, which deals with

18   Direct Loans and states that "loans made to borrowers under this part shall have the same terms,

19   conditions, and benefits, and be available in the same amounts, as loans made to borrowers" under

20   Part B.  20 U.S.C. § 1087e(a)(1).  But the Department failed to explain how the Secretary's general

21   "functions, powers, and duties" in section 1082 are "terms, conditions, and benefits" of Part B

22   loans, Doc. 332 at 7, nor are those terms equivalent under any common or reasonable definitions.

23   As another district court has explained, the HEA has no "language incorporating into Part D the

24   Secretary's 'general powers' . . . of Section 1082, from Part B."  *Pennsylvania Higher Educ.*

25   *Assistance Agency v. Perez*, 416 F. Supp. 3d 75, 96 (D. Conn. 2019).[7]

26

27   [7] The Department cited *Weingarten v. DeVos*, 468 F. Supp. 3d 322, 328 (D.D.C. 2020), in
     support of its argument, Doc. 332 at 7, and this Court characterized that case as having "found that

28   Section 1082(a)(6) covers both FFEL loans and Direct Loans," Doc. 345 at 8.  But the cited page

1    Accordingly, this Court was wrong to "defer" to the Department's interpretation.  Doc. 345

2  at 8.  Before deferring to an agency's construction of a statute, a court must exhaust the "traditional

3  tools of statutory construction," *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018), starting

4  with the plain text, *City & Cnty. Of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d

5  773, 791 (9th Cir. 2019).  *See also Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896, 1906 (2022)

6  (rejecting agency interpretation based on the "traditional tools of statutory interpretation" without

7  resort to *Chevron* or any other form of agency deference).  Here, there is no ambiguity: subsection

8  1082(a)(6) applies only to FFEL loans, and the incorporation clause of 1087e(a)(1) applies to terms,

9  conditions, and benefits of loans, not the Secretary's "functions, powers, and duties."[8]

10    Even if subsection 1082(a)(6) is interpreted (wrongly) to apply to Direct Loans, it does not

11  provide authority for blanket, *en masse* debt cancellation.  Subsection 1082(a)(6) is a summary

12  grant of "General powers" tied to the Secretary's "performance of . . . the functions, powers, and

13  duties vested in him by this Part."  "[I]t is a commonplace of statutory construction that the specific

14  governs the general."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645

15  (2012).  "This canon has full application . . . to statutes such as the one here, in which a general

16  authorization and a more limited, specific authorization exist side-by-side."  *Id.*  In such a situation,

17  the canon "avoids . . . 'violat[ing] the cardinal rule that . . . effect shall be given to every clause

18  and part of a statute.'"  *Id.*  Part B more specifically details many "functions, powers, and duties"

19  of the Secretary, including authorization to discharge FFEL Loans pursuant to carefully delineated

20  _____

21  of *Weingarten*—part of the "Background" section of a decision on a motion to dismiss—did not
   provide any statutory analysis.  It simply provided one sentence citing an allegation in the

22  complaint.  *See* 468 F. Supp. 3d at 328 ("This authority covers Federal Family Education Loans
   and Direct Loans alike.  *Id.* ¶ 92.").

23    [8] Until recently, the Department agreed.  It explained in a 2021 memorandum both that

24  "the Secretary's general power to compromise or waive claims under the FFEL program is neither
   a term nor a condition nor a benefit of FFEL program loans" and that subsection 1082(a)(6) is

25  "best construed as a limited authorization for the Secretary to provide . . . compromise . . . only on
   a case-by-case basis and then only under those circumstances specified by Congress."  Mem. from

26  Principal Deputy Gen. Counsel, U.S. Dep't of Educ. to Sec'y of Educ. at 4 & n.3 (Jan. 12, 2021).
   Although the Department conveniently rescinded this memorandum after Intervenors relied on it

27  in this case, the Department did so based on disagreement with the 2021 memorandum's treatment
   of the HEROES Act, not subsection 1082(a)(6).  *See* 87 Fed. Reg. 52,943 (Aug. 30, 2022).

28

conditions, terms, and amounts.  *See* 20 U.S.C. §§ 1078-10, 1078-11, 1078-12, 1087.  To read subsection 1082(a)(6) as providing the power to grant blanket debt cancellation would improperly render these provisions superfluous.  *RadLAX*, 566 U.S. at 646.

Additionally, this reading of subsection 1082(a)(6) cannot be squared with the Department's reading of the HEROES Act, which the Department says provides the power for *en masse* debt cancellation in cases of national emergency.  If the Secretary can cancel loans *en masse* at *any time*, there was no need for Congress to also authorize such power during specific national emergencies.  Thus, the Department's argument here does not square with the argument it is advancing in the Supreme Court.

Moreover, if everything in subsection 1082(a) is interpreted (wrongly) as "terms, conditions, and benefits" of Direct Loans, then subsection 1082(a)(2) is equally applicable and "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control."  Doc. 341 at Tr. 72:4–5 (Plaintiffs' counsel explaining "the relief that the settlement agreement provides . . . is, in its essence, injunctive relief").  This Court held it can ignore this jurisdictional bar because the Department "is requesting and consenting" to the injunctive relief, Doc. 345 at 12, but the Final Order provides no citation to any authority permitting an executive department to provide the Judicial Branch with more expansive jurisdiction than Congress provided.  *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005) ("Sovereign immunity may not be waived by federal agencies . . . 'because officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision of Congress.'" (quoting *Dep't of Army v. Fed. Lab. Rels. Auth.*, 56 F.3d 273, 275 (D.C. Cir. 1995)).

Finally, although the above analysis shows that the plain language of the statutory scheme does not grant the Secretary the authority to enter this Settlement, this conclusion is reinforced by the major-questions doctrine.  As the Final Order recognizes, the Settlement encompasses a "staggering number" of borrowers, Doc. 345 at 11, and at least $7.5 billion of debt owed to

American taxpayers (an amount that has probably doubled by the influx of applications from "Post-Class Applicants"), Doc. 246 at 2.  Moreover, the power the Department claims to justify the Settlement is the power to cancel *all* student loans *en masse*—***a $1.6 trillion issue***.[9]  After all, subsection 1082(a)(6) applies to "*any* right, title, claim, lien, or demand," so it is of no moment that this particular application of the claimed authority is "rooted in, and limited to, this litigation." Doc. 345 at 10 n.2.  The Secretary "has identified no limit" to his authority.  *See Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021).  The economic significance of this claimed power is profound, as is its political significance.  Indeed, student loan cancellation was an issue in the most recent presidential campaign, and the former Speaker of the House made clear that it could be resolved *only* by Congress.  *See Brown*, 2022 WL 16858525, at *2 & nn.5, 6.  As the *Brown* court held, an agency's claim of power over an issue of such "vast 'economic and political significance'" falls under the "major-questions doctrine" and requires the government to show "'***clear*** congressional authorization.'"  *Id.* at *11–12 (quoting *West Virginia*, 142 S. Ct. at 2607–14) (emphasis added).  Neither the Department nor the Final Order points to any "clear" language regarding the asserted authority.  Moreover, the Secretary's reading of the statutory text to grant *unlimited* authority over a trillion-dollar-plus industry raises significant constitutional questions over the delegation of legislative power that should be avoided.  *See Jones v. United States*, 529 U.S. 848, 857 (2000).

### b.     The Settlement Violates the APA.

The decision to execute a settlement agreement is agency action that must comply with, and is subject to judicial review under, the APA.  *See United States v. Carpenter*, 526 F.3d 1237, 1241 (9th Cir. 2008); *Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion*, 23 Op. O.L.C. 126, 129 (1999).  The agency action encompassed in the Settlement violates the APA in several ways.

---

[9]  *See* U.S. Dep't of Education, Federal Student Loan Portfolio, Summary, https://studentaid.gov/data-center/student/portfolio.

First, the Settlement violates the bedrock principles that an agency must abide by its own regulations and must adopt new rules through notice-and-comment procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 748 (2004); 5 U.S.C §§ 551(4), 553; *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1187 (9th Cir. 2013). That the Department has "crafted" an entirely new "process for resolving the enormous backlog of claims," Doc. 345 at 12, is precisely the problem. Doc. 325 at 18. The "specific congressional authorization," Doc. 345 at 12, for resolving those claims is 20 U.S.C. § 1087e(h), which gives the Secretary authority to "specify ***in regulations***" the process for resolving BD claims. The Secretary did so, 34 C.F.R. §§ 685.206, .222, and is not free to circumvent those regulations here. It is meaningless to say "[t]hose regulations remain in place," Doc. 345 at 13, if, as a practical matter, they will be ignored and replaced by a new process for regulated parties. This "type of mass settlement" of BD claims is "illegal" because governing regulations do not permit the Department to cancel loans "regardless of the merit of those claims." *Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 167 (D.C. Cir. 2017).

Second, the Settlement violates the APA's prohibition on arbitrary and capricious agency action. 5 U.S.C. § 706(2)(A). The Department alternatively claims that its determination to automatically grant every BD application associated with 153 schools was based on "strong indicia," Doc. 246 at 3, "sufficient indicia," Doc. 323 at 9, or "certain indicia," *id.* at 11, of misconduct by listed schools—and "on information" it had "regarding demonstrated or credibly alleged misconduct" and "the comparative rate of Class Members with applications concerning the listed schools." *Id.* at 16. The Department failed to specify any of the "indicia of misconduct"; what "information" it relied upon; and which schools made the list because of "demonstrated" misconduct, versus "credibly alleged misconduct," versus merely the "rate of . . . applications concerning the listed school[]"—much less to explain what constitutes "demonstrated," "credibly alleged," or a sufficiently high "comparative rate." These vague, "conclusory" statements, *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. OSHA*, 965 F.2d 962, 976 (11th Cir. 1992), are the opposite of a "satisfactory explanation," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*

*Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), that "present[s] . . . data," *Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 492 (D.C. Cir. 1988), to justify an agency determination.[10]

Moreover, an agency "cannot ignore evidence that undercuts its judgment; and it may not minimize such evidence without adequate explanation." *Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018). Yet in the only record document related to ECI, the Department revealed that it had "reviewed a sample of 50 allegations" for various subsets of BD allegations and concluded it "has not identified evidence that suggests Everglades is participating in fraudulent or illegal activity that would support borrower defense discharges." Doc. 193-3 at 41. The Department also submitted an exhibit to identify any "final determinations made by the Department, an accreditor, or other entity" that certain schools had "made misrepresentations or engaged in fraudulent conduct for which borrower defense relief may be granted." Doc. 145-2 at 10. The Department identified "None" for Lincoln. *Id.* Still, despite this *exculpatory* evidence, the Department "determined" that "substantial misconduct" occurred at ECI and Lincoln. Doc. 246 at 17–18. The failure to grapple with evidence contrary to this determination is arbitrary. *See Genuine Parts*, 890 F.3d at 312; *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 980 (9th Cir. 2020).

Finally, inadequately explained reversals of agency policy and legal conclusions are arbitrary and capricious and cannot stand. *See DHS v. Regents*, 140 S. Ct. 1891, 1907–08 (2020). The Department's provision of blanket, automatic debt cancellation reverses, without adequate explanation, the reasoned conclusion it came to in 2021 that 20 U.S.C. § 1082(a)(6) does *not* provide the authority it now claims. *See* Mem. from Principal Deputy Gen. Counsel, U.S. Dep't of Educ. to Sec'y of Educ. at 4 (Jan. 12, 2021).

For all these reasons, the agency action embodied in the settlement is arbitrary and capricious, and Intervenors are likely to prevail on the merits of their appeal.

---

[10] After this Court granted preliminary approval to the Settlement, the Parties admitted they had "erroneously" included some schools on the Exhibit C List and excluded another school. Doc. 317 at 2. The Parties provided no explanation for these "errors," further demonstrating the arbitrariness of the Department's highly consequential determination.

#### 4.      *The Settlement Violates Due Process.*

Intervenors are also likely to prevail on the merits because the Settlement strips the schools of liberty and property interests without constitutionally adequate process.  *See Hewitt v. Grabicki*, 794 F.2d 1373, 1380 (9th Cir. 1986).

Intervenors have a constitutionally protected liberty interest in their reputation.  Regardless of Exhibit C's "legal significance," Doc. 345 at 14, or "legally binding effect," Doc. 345 at 16, the Department's publication of Exhibit C has inflicted—and will continue to inflict—severe reputational harms on Intervenors that have "an immediate and tangible effect on [their] ability to do business."  *Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 961 (D.C. Cir. 1980).   The "stigma" of inclusion on a list of wrongdoers "bearing the imprimatur of the [Department of Education]" immediately affects their relationship with current and prospective students and can cause schools to "los[e] additional students to competitors," "los[e] donations," and suffer other consequences.  *Sherman Coll. of Straight Chiropractic v. U.S. Comm'r of Educ.*, 493 F. Supp. 976, 978–79 (D.D.C. 1980).  In addition, there is a "tangible" plus factor, *Fikre*, 35 F.4th at 776:  By labeling Intervenors as presumptive wrongdoers, Exhibit C extinguishes the procedural rights provided to the schools by the BD regulations and impairs their ability to defend themselves in any future agency proceedings or other punitive action by the Department.

The Settlement also diminishes Intervenors' property rights.   Schools have "a property interest in retaining the funds in [their] accounts" and thus possess a vested property interest in Title IV loan proceeds already received.  *Chauffeur's Training Sch., Inc. v. Riley*, 967 F. Supp. 719, 729 (N.D.N.Y. 1997).   Even if Title IV funds are dispersed subject to the government's limited right of recoupment, that right is prescribed in regulations that set strict procedures and time limits.  *See* 34 C.F.R. §§ 685.206, .222.  Outside those strictures, schools' rights in Title IV funds become vested and are not subject to recoupment.   Moreover, BD claims are now time-barred for many loans at issue, precluding even any possibility of recoupment.   Yet the Settlement revives these time-barred claims, as well as the threat of recoupment.   Worse still, the Settlement will grant claims that are wrong on the merits—i.e., that are false.  Property rights that had been

1   vested are now, it would appear, contingent.  This squarely implicates due process.  *See Kerley*

2   *Indus., Inc. v. Pima Cnty.*, 785 F.2d 1444, 1446 (9th Cir. 1986).

3   Despite these liberty and property interests, Intervenors have been offered *no* process to

4   defend against their inclusion in Exhibit C (or in the new process for Post-Class Applicants).  The

5   Department has publicly branded every school on the Exhibit C list as engaging in "institutional"

6   and "substantial" "misconduct," Doc. 246 at 3, 17, without providing any notice to the schools that

7   this determination process was occurring, without any official finding of wrongdoing, and without

8   affording the schools *any* opportunity to rebut the claims against them—much less the procedure

9   guaranteed by the regulations.[11]  These deprivations are constitutionally inadequate.  *See Marathon*

10  *Oil Co. v. E.P.A.*, 564 F.2d 1253, 1261 (9th Cir. 1977) ("[A]dministrative decisions" that "closely

11  resemble judicial determinations . . . require similar procedural protections"); *Ralpho v. Bell*, 569

12  F.2d 607, 628 (D.C. Cir. 1977) ("An opportunity to meet and rebut evidence utilized by an

13  administrative agency has long been regarded as a primary requisite of due process."); *Zerezghi v.*

14  *U.S. Citizenship & Immigration Servs.*, 955 F.3d 802, 813 (9th Cir. 2020) (evidence supporting

15  the government's case "must be disclosed" beyond "vague reference[s] to unspecified records").

16  It is no answer that "the schools cannot be held liable for any remedial measures absent

17  proceedings initiated specifically against them."  Doc. 345 at 14.  The BD regulations provide

18  schools notice and a right to "meet and rebut evidence" through *two* different steps: Step One—

19  the lawful adjudication of allegations contained in a BD application; and Step Two—recoupment

20  or other related disciplinary proceeding.  That the Settlement is silent as to Step Two proceedings

21  does not cure the due-process violations inherent in eliminating Step One protections.  *See Pub.*

22  *Serv. Comm'n of Ky. v. FERC*, 397 F.3d 1004, 1012 (D.C. Cir. 2005) (rejecting agency argument

23  that rehearing procedure cured due-process violation of "announc[ing] its decision sua sponte

24  without prior notice to the parties" because "[c]onsidering petitioners' arguments" after the fact

25  "is not the same thing as allowing them to present evidence on the issue").

26

27   _____
     [11] The Department *still* has not provided notice to ECI of any individual BD application
28  related to the school.

Moreover, even if no recoupment proceeding ever occurs, the existence of a Step One determination (or any other derogatory BD-related determination) can have significant programmatic, financial, and reputational consequences for a school. *See* Doc. 288-1 at ¶¶ 10, 12 (citing 34 C.F.R. §§ 668.81–99). That "no recoupment action" "could be initiated . . . as a result of the settlement" itself, Doc. 345 at 15, is thus cold comfort. The Department notably has never denied that it will seek recoupment from the schools—or take other punitive measures—at the conclusion of the appellate process (or sooner). *See* Doc. 298 at 11–15.

**B.      Intervenors Will Suffer Irreparable Harm Absent a Stay.**

Where a moving party has shown a probability of success on appeal, it must also show that irreparable injury is likely to occur before the appeal is decided. *Leiva-Perez*, 640 F.3d at 968. An irreparable injury is one that "cannot be easily undone should [the movant] prevail on appeal." *FTC v. Qualcomm Inc.*, 935 F.3d 752, 756 (9th Cir. 2019). The irreparable harm inquiry asks the Court to "anticipate what would happen as a practical matter following the denial of a stay." *Lair*, 697 F.3d at 1214 (quotation marks omitted). "[T]he Court must consider the significance of the change from the status quo which would arise in the absence of a stay." *John Doe Co. v. CFPB*, 235 F. Supp. 3d 194, 206 (D.D.C. 2017) (quotation marks omitted).

Intervenors are experiencing irreparable harm by being branded with the Exhibit C scarlet letter, and that harm will intensify after the Settlement's Effective Date. The Effective Date triggers a sequence of events that includes providing notice to class members, granting BD claims *en masse* regardless of merit, discharging debts, and paying refunds. *See* Doc. 246-1 at 6, 12–14. These events will have immediate regulatory and reputational consequences for schools and establish reliance interests for class members who submitted BD claims against the schools. To ensure that Intervenors can achieve effective redress and class members are not harmed if the Ninth Circuit reverses or vacates the final judgment, this Court should stay the judgment pending appeal.

**1.** For schools on Exhibit C, effecting the Settlement will eliminate an essential step of the administrative process. There will no longer be BD proceedings at the Department in which the schools can participate to defend their reputations and create a decisional record for any subsequent

agency proceedings.  Instead, schools will immediately be denied *their* right to an agency process defined by duly promulgated regulations.  Such an outcome violates the Department's binding regulations and the APA and aggrieves the schools.  *See supra* at 13–18.  Schools will also be denied a reasoned decision on each BD claim.  For Post-Class Applicants, Path 3 also harms schools by stripping away the procedural rights provided by the 2019 BD regulations and providing automatic relief after three years to such applicants, regardless of the merits of their claims.  *Compare* Doc. 246-1 at 11, *with* 84 Fed. Reg. 49,788, 49,825 (Sept. 23, 2019) (noting importance of "afford[ing] institutions the opportunity to respond to allegations against the institution during the adjudication process for the borrower's claim," which would "reduce the likelihood that . . . schools will be burdened by unjustified claims").  As this Court has already recognized, permitting unreasoned outcomes in the BD context is unfair and prejudicial because "[i]t is, after all, impossible to argue with an unreasoned decision."  Doc. 146 at 9.  This harm is acute for schools (such as Lincoln) that have already participated in good faith in the initial stages of the BD process for certain claims, and submitted evidence showing that the claims lack merit, only to have the Department grant the claims anyway with no reasoned explanation.  *See* Doc. 254-2 at 2–3, ¶¶ 6–10; Doc. 326-1 at 2, ¶¶ 4–5.  Schools will immediately suffer these harms if the Settlement takes effect.

These harms to schools will be irreparable.  If the judgment goes into effect, all schools on Exhibit C will immediately suffer the stigma of having all BD claims against them summarily granted—without any administrative process, judicial factfinding, or reasoned decision on the merits.  Worse, this unproven stigma will carry the imprimatur of both the Department and the final judgment of a federal court that deemed the Department's finding fair and reasonable.  It will be impossible to fully reverse that stigma after class members receive their promised relief.  Any promises and payments made to class members under the Settlement are likely irreversible, even if the Ninth Circuit eventually reverses or vacates the final judgment.  Plaintiffs certainly will claim that promises and money given to class members under the Settlement cannot be fairly rescinded.

Courts routinely stay judgments pending appeal to prevent "bureaucratic momentum" that will "ske[w]" future agency proceedings if the judgments are reversed. *See, e.g.*, *Indigenous Env't Network v. U.S. Dep't of State*, 2019 WL 652416, at *10 (D. Mont. Feb. 15, 2019); *Colo. Wild Inc. v. U.S. Forest Serv.*, 523 F. Supp. 2d 1213, 1221 (D. Colo. 2007). Once the steps contemplated by the Settlement are carried out—including notice that borrower defense claims have been granted, clearing of loan balances, payment of refunds, and implementation of new decisional processes—class members will have new claims of reliance and assertions of hardship if the Ninth Circuit reverses.

Importantly, the Settlement Agreement itself recognizes this: It defines the "Effective Date," "in the event of an appeal by a Class Member based upon a timely filed objection to this Agreement," as "the date of final resolution of said appeal." Doc. 246-1, § II.K; *see also id.* § XIII.A. In their motion for preliminary approval, Plaintiffs and the Department described this trigger as occurring on "the date upon which the Final Judgment approving the Agreement becomes non-appealable, or, in the event of an appeal by a Class Member, upon the date of final resolution of that appeal." Doc. 246 at 6 n.1. This provision—written prior to intervention—is best read to delay the Effective Date until the completion of Intervenors' appeals as well, especially in light of the provision that states the Settlement "shall be void if it is not approved as written by a final Court order not subject to *any further review*." Doc. 246-1, § XIII.A (emphasis added). But Intervenors acknowledge the potential ambiguity in the provision's failure to account expressly for the possibility of an Intervenor appeal. Even if the provision does not delay the Effective Date during an Intervenor appeal, however, it shows that Plaintiffs and the Department themselves agreed that delaying the Effective Date during appeal would be necessary to prevent greater harm if the final judgment and Settlement were reversed. This strongly supports a finding of irreparable harm absent a stay.

    **2.** In addition to these regulatory and legal harms, schools on Exhibit C will suffer irreparable harm to their reputations, goodwill, and standing with regulators if the Settlement takes effect. *See, e.g.*, *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597,

603 (9th Cir. 1991) ("intangible injuries, such as damage to . . . goodwill, qualify as irreparable harm"); *Regents of Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 520 (9th Cir. 1984) ("palpable diminution in national reputation" is irreparable harm).  Being publicly branded a presumptive wrongdoer by one's primary federal regulator, based on undisclosed evidence (or no evidence at all), is a denial of due process and a present and significant injury.  That is especially so where, as here, the known administrative record *refutes* the Department's determination of "substantial misconduct" for ECI and Lincoln.  *See supra* at 15.

Schools on Exhibit C have a due process right to contest these and similar badges of wrongdoing, especially when they are refuted by the administrative record.  The stigma from such unproven allegations is present and real and will become more entrenched if the Settlement goes into effect.  In Lincoln's case, for example, partisan activist groups have leveraged Lincoln's mere inclusion on Exhibit C to pressure and criticize the Department for recently renewing its Program Participation Agreement with Lincoln College of Technology.  *See* Townsend Decl. Ex. 1.  A Program Participation Agreement is necessary for a school's receipt of Title IV funding, and its non-renewal is an existential threat for any school.  Knowing this, activists have asked, "**if the Department believes that there is a** [sic] 'strong indicia' of these schools having engaged in 'substantial misconduct,' **why renew their Program Participation Agreements, which allow these schools to siphon taxpayer dollars and reap profits, without accountability for prior actions?**"  *Id.* at 2 (bold in original).  Class counsel has also publicly stated that inclusion on Exhibit C is proof that a school "cheated" its students.  Doc. 325-4 at 5 (quoting Eileen O'Connor).  These attacks by committed activists are a direct consequence of Exhibit C.  The attacks capitalize on the absence of an administrative record showing that the BD claims are meritless—a key means for schools to defend themselves in the public arena—and will intensify if the judgment takes effect.  Staying the judgment is therefore necessary to prevent irreparable reputational harm to schools during appeal.  *See, e.g.*, *Grae v. Corr. Corp. of Am.*, 2019 WL 1746492, at *1 (M.D. Tenn. Apr. 18, 2019) (granting stay pending appeal where ongoing district court proceedings "could lead to reputational harm," which "could be considered irreparable"); *cf. Patriot, Inc. v.*

*U.S. Dep't of Hous. & Urb. Dev.*, 963 F. Supp. 1, 5 (D.D.C. 1997) (granting preliminary injunction where agency's "characterization" of plaintiffs in agency letter caused "damage to their business reputation").

### C.    A Stay Will Not Impose Irreparable Harm.

"Granting a stay in this case will merely maintain the status quo," a consideration that "weighs heavily in favor of imposing the stay." *In re Pike*, 2008 WL 11336952, at *8 (C.D. Cal. Mar. 6, 2008).  As noted, Plaintiffs and the Department *agreed* to delay the Effective Date—and the many actions it triggers—until the final judgment becomes unappealable or until any class objector appeal is resolved.  Doc. 246-1 at 3.  And Plaintiffs and the Department agreed that the Settlement is *void* altogether unless approved by a final order that is "not subject to any further review."  *Id.* § XIII.A.  That is not surprising because of the risk of irreparable harm from the alternative, *supra* at 18–21, because this litigation has already been pending for well more than three years,[12] and because unwinding any actions to implement the Settlement would be very difficult.  *See* Compl., Doc. 1 (June 25, 2019).  Additionally, the record shows that many of the underlying BD claims were likely time-barred before the Settlement revived them.  *See, e.g.*, Doc. 254-2 at 3, ¶ 7 (claims from attendance as early as 1992); Doc. 326 at 25; Doc. 326-1 at 1, ¶ 4.

Moreover, the Department would *benefit* from a stay because it would not be required to expend resources carrying out an elaborate and expensive process that could be later reversed.  A stay in executing the Settlement would also eliminate the risk to the federal government of an outcome in which it must attempt to rescind promises and payments made prematurely to class members.  *See, e.g.*, *Senne v. Kansas City Royals Baseball Corp.*, 2017 WL 5973487, at *3 (N.D. Cal. May 5, 2017) ("[T]here is a possibility that class members will be confused if class notices are issued before the Ninth Circuit has resolved the pending petitions and then have to be modified or retracted as a result of rulings by the Ninth Circuit, a result that will harm Plaintiffs.").  The

---

[12] Plaintiffs chose not to advance (or settle) this litigation for *seventeen months* while they unsuccessfully litigated in the Ninth Circuit to preserve an order granting a single deposition.  Thus, Plaintiffs can hardly claim prejudice from permitting the Ninth Circuit to hear the issues raised by settlement of the entire case.

federal government, which is duty-bound to protect the public fisc and avoid further injury and confusion to class members in the event of a reversal, is therefore poorly positioned to argue that a stay pending appeal would harm its interests.

The Supreme Court, in a parallel context, has recognized the propriety of maintaining a stay pending appellate review of the Biden administration's other debt-cancellation program.  The Eighth Circuit underscored the importance of "'preserv[ing] the status quo pending the outcome' of . . . appeal," given "the irreversible impact the Secretary's debt forgiveness action would have." *Nebraska*, 52 F.4th at 1047–48 (citation omitted).  The Supreme Court left the Eighth Circuit's preliminary injunction undisturbed, and "deferred" the government's application to vacate the injunction "pending oral argument."  *Biden v. Nebraska*, 143 S. Ct. 477 (2022) (Mem.); *accord Dep't of Educ. v. Brown*, Nos. 22-535, 22A489, 2022 WL 17574107 (U.S. Dec. 12, 2022) (same).  Notably, in that litigation (unlike this case), the government contends that debt cancellation is necessary "[t]o protect student-loan borrowers affected by a national emergency," Petrs. Br. at 2-3, *Biden v. Nebraska*, No. 22-506 (U.S. Jan. 4, 2023), yet the Supreme Court has still maintained the status quo during appellate review.  In this case, where there is no emergency and the parties have already agreed to defer the Effective Date during appeal, there is no plausible claim that awaiting the final resolution of Intervenors' appeals could cause irreparable harm.

### D.   The Public Interest Favors a Stay Pending Appeal.

The public interest strongly favors a stay pending appeal.  Generally, the "public interest lies with maintaining the status quo while the appeal is pending."  *Doe #1 v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020).  A stay would preserve the status quo while the appeal plays out.

First, a stay pending appeal would protect the Ninth Circuit's appellate jurisdiction.  This case presents several important issues, some of first impression.  The final judgment directly affects hundreds of thousands of class members, the 150 schools on Exhibit C, and *every* educational institution in America that will be subjected to the new procedures for the decision subclass and Post-Class claims.  The judgment is estimated to cost taxpayers $7.5 billion just for the Class (and has probably doubled with the addition of Post-Class Applicants) and will bind the

1    Department for years.  This case deserves meaningful appellate review, without worry of upsetting

2    reliance interests and injecting new harms into the case.  The Ninth Circuit's appellate jurisdiction

3    will be disserved by intervening events that could lead to new arguments about reliance and

4    redress.  The public, no less than the Ninth Circuit, has a strong interest in appellate jurisdiction

5    over significant legal questions with broad, class-wide impact.

6         Second, a stay in this case would promote the orderly administration of justice.  As noted,

7    the Supreme Court is currently considering the lawfulness of President Biden's other debt

8    cancellation program, and a decision is expected by the end of this Term.  *See Dep't of Educ. v.*

9    *Brown*, No. 22-535 (U.S.); *Biden v. Nebraska*, No. 22-506 (U.S.).  The outcome of that litigation,

10   while not controlling, is likely to have a significant impact on several issues in this case.

11   Intervenors in this case have challenged the Secretary's claimed authority under 20 U.S.C.

12   § 1082(a)(6) as violative of the major-questions doctrine.  *See West Virginia*, 142 S. Ct. at 2609.

13   That issue is also presented in the *Nebraska/Brown* litigation.  Indeed, the government's opening

14   brief in the Supreme Court cited this Court's final judgment in arguing against application of the

15   major-questions doctrine in that case.  *See* Petrs. Br. at 4 n.1, 55, *Nebraska*, No. 22-506.  It is thus

16   possible the Supreme Court's forthcoming ruling in *Nebraska/Brown* will have a significant

17   impact on the Secretary's asserted power here, further warranting a stay.

18        To be sure, the Supreme Court litigation presents different statutory authority issues

19   implicating the HEROES Act, while this case concerns the Secretary's authority to "compromise,

20   waive, or release" claims against the Department under the HEA.  *Compare* 20 U.S.C. § 1098bb,

21   *with* 20 U.S.C. §§ 1082(a)(6), 1087e(a)(1).  But those authorities are necessarily related, for if the

22   Secretary's comprise authority were "plenary" and unreviewable as claimed in this case, Doc. 345

23   at 11, it is difficult to see why the federal government needed to rely on the HEROES Act—and

24   its national-emergency requirement—to accomplish President Biden's other debt-cancellation

25   plan.  *Compare* Petrs. Br. at 3-4 & n.1, 54-55, *Nebraska*, No. 22-506 (suggesting that broad powers

26   under HEA show that invocation of HEROES Act is unremarkable assertion of agency power),

27   *with* Mem. from Principal Deputy Gen. Counsel, U.S. Dep't of Educ. to Sec'y of Educ. at 6 (Jan.

28

12, 2021) (noting that the "specific [statutory] provisions" for debt cancellation cast doubt on any "general administrative dispensing power").  At bottom, the final judgment here implicates novel issues that are the subject of fast-moving legal developments in the Supreme Court and political debate, and the public interest lies with permitting meaningful appellate review.

Third, the public has no legitimate interest in constricting appellate review based on any alleged wrongdoing by Intervenors.  As noted, the record in this case *refutes* any wrongdoing by Intervenors, *see supra* at 15, and the Department claims that Exhibit C does not reflect an actual finding of wrongdoing.  *See generally* Doc. 288-1 (Miller Decl.).  The public therefore has little interest in the immediate payment of $7.5 billion in public funds premised on unproven allegations of wrongdoing by schools.  The public interest strongly favors a stay.

***

Finally, in the alternative, if the Court does not believe that the factors favor staying the entire judgment pending appeal, the Court at a minimum should stay the judgment as to the appealing Intervenors.  The Intervenors represent only a miniscule fraction of the claims included in the class.  *See* Doc. 341 at Tr. 6–7, 45 (reporting that six out of 1,000 telephonic attendees of final fairness hearing attended an Intervenor school).  Although some of Intervenors' arguments implicate the Settlement as a whole, at bottom Intervenors do not wish to prevent a legitimate settlement of this case or prevent granting of meritorious BD applications.  Intervenors simply want what justice demands—their removal from Exhibit C and the assurance that any BD claims against them will be adjudicated fairly and in accordance with law.  The Court therefore should at least stay implementation of the settlement for any settlement class member who attended one of Intervenors' schools.  For all the reasons set forth above, the stay factors strongly favor staying the judgment as to Intervenors pending the resolution of their appeal.  *See Doe #1*, 957 F.3d at 1069.

## III.   CONCLUSION

Intervenors respectfully request that the Court grant their motion to stay the judgment pending appeal, or, in the alternative, to stay the judgment as to Intervenors.

Dated: January 13, 2023                    Respectfully submitted,


s/ *James L. Zelenay, Jr.*                 s/ *Jesse Panuccio*
James L. Zelenay, Jr.                      Jesse Panuccio (*pro hac vice*)
jzelenay@gibsondunn.com                    jpanuccio@bsfllp.com
**GIBSON, DUNN & CRUTCHER LLP**            Jason Hilborn (*pro hac vice*)
333 South Grand Avenue                     jhilborn@bsfllp.com
Los Angeles, CA 90071                      **BOIES SCHILLER FLEXNER LLP**
T: (213) 229-7449                          401 E. Las Olas Blvd., Ste. 1200
                                           Fort Lauderdale, FL 33301
Lucas Townsend (*pro hac vice*)            T: (954) 356-0011
ltownsend@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**            John J. Kucera
1050 Connecticut Ave., NW                  jkucera@bsfllp.com
Washington, DC 20530                       **BOIES SCHILLER FLEXNER LLP**
T: (202) 887-3731                          725 S. Figueroa St., 31st Fl.
                                           Los Angeles, CA 90017
                                           T: (213) 692-9040


s/ *John S. Moran*
John S. Moran (*pro hac vice*)
jmoran@mcguirewoods.com
**MCGUIREWOODS LLP**
888 16th St. N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006
T: (202) 828-2817

Piper A. Waldron (SBN 291482)
pwaldron@mcguirewoods.com
**MCGUIREWOODS LLP**
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
T: (310) 315-8250

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2023, I caused to be electronically filed the foregoing Intervenors' Notice of Motion and Joint Motion for Stay Pending Appeal with the Clerk of the Court via CM/ECF.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing systems.

Dated:  January 13, 2023

By: *s/ James L. Zelenay, Jr.*
  James L. Zelenay, Jr.

*Counsel for Lincoln Educational Services Corporation*