Lucas Townsend (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: (202) 887-3731
ltownsend@gibsondunn.com

James L. Zelenay, Jr. (SBN 237339)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7449
jzelenay@gibsondunn.com

*Attorneys for Intervenor Lincoln Educational Services Corporation*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, et al., | Case No. 3:19-cv-03674-WHA |
| Plaintiffs, | **DECLARATION OF LUCAS C. TOWNSEND IN SUPPORT OF INTERVENORS' JOINT MOTION FOR STAY PENDING APPEAL** |
| v. | |
| MIGUEL CARDONA, in his official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION, | Date: February 23, 2023<br>Time: 8:00 a.m.<br>Room: 12, 19th Floor<br>Judge: Honorable William Alsup |
| Defendants. | (Class Action) |
| | (Administrative Procedure Act Case) |

Case No. 3:19-cv-03674-WHA
DECLARATION OF LUCAS C. TOWNSEND

I, Lucas C. Townsend, declare as follows:

1. I am an attorney duly licensed by the Bar of the District of Columbia and admitted pro hac vice to practice before this Court. I am a partner of the law firm Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), and I am one of the attorneys representing Lincoln Educational Services Corporation ("Lincoln"), an intervenor in the above-captioned action. I am competent to testify to the matters set forth in this declaration.

2. Attached hereto as **Exhibit 1** is a true and correct copy of *A Blank Check: U.S. Department of Education Renews Contracts with Troubled For-Profit Colleges*, NATIONAL STUDENT LEGAL DEFENSE NETWORK (Nov. 2022), https://www.defendstudents.org/news/body/NSLDN_BRIEF_Failing-to-Hold-Wrongdoers-Accountable_FINAL.pdf.

3. Attached hereto as **Exhibit 2** is a true and correct copy of Natalie Schwartz, *Education Department Shouldn't Have OK'd Federal Aid for 5 For-Profits on Sweet v. Cardona List, Advocacy Group Says*, HIGHER ED DIVE (Nov. 2, 2022), https://www.highereddive.com/news/education-department-financial-aid-for-profits-sweet-cardona-lincoln-tech-lajames-international/637247.

I declare under the penalty of perjury under the laws of the United States that these facts are true and correct. This Declaration is executed this 13th day of January, 2023 in Washington, D.C.

_____
Lucas C. Townsend

# EXHIBIT 1



1701 Rhode Island Ave NW, Suite 600
Washington, D.C., 20036
www.defendstudents.org

November 2022

# A Blank Check

## U.S. Department of Education Renews Contracts with Troubled For-Profit Colleges

A new Student Defense analysis reveals that the U.S. Department of Education—through both decisions and inaction—continues to allow predatory institutions to scam students and taxpayers with impunity and without rebuke. This analysis comes nearly two years after Student Defense called on the Biden Administration to use civil law enforcement authorities to better protect student loan borrowers.

Although the Department has made substantial strides in providing debt relief to defrauded borrowers, it has largely failed to ensure that students are protected—**before enrolling**—from fraud and abuse. Not only does the Department continue to fight efforts to immediately restore the Obama Administration's "Gainful Employment" rule, designed to ensure that students can only use taxpayer funded loans and grants to finance higher education that provides economic value, but they have delayed publishing their own proposals, such that no new rule can take effect until July 2024.

And while the Department repeatedly touts how it has reconstituted the Office of Federal Student Aid (FSA) Enforcement Unit, established in 2016 and gutted during the Trump Administration, that Office has failed to show tangible results. FSA has not announced a single termination, suspension or limitation enforcement action against an institution participating in Title IV Federal Student Aid Programs since the Biden Administration took office. Nor has the Department announced any fines against schools for any wrongs against students.

Worse yet, FSA has repeatedly awarded new contracts to troubled for-profit colleges or otherwise allowed schools to continue to receive Title IV student aid funds even when:

▶ The Department has acknowledged it has evidence of "substantial misconduct" and agreed to discharge debt for former students;

▶ State Attorneys General have publicly investigated or sued schools for harming federal student loan borrowers;

▶ Class action lawsuits detailing misconduct by schools have advanced; and

▶ Accreditors have placed schools on probation or brought actions.

## I. The Department Renewed Contracts with Schools Despite Possessing Evidence of "Substantial Misconduct" and After Agreeing to Discharge Loans to Defrauded Students

When the Department enters or renews a "Program Participation Agreement" with a college or university, it reflects a determination that the school is "qualified" to participate in the student aid programs. By law, this means that the Department has determined that the school can "provide the services" advertised.[1] When the Department allows students to access taxpayer funded Pell Grants and Direct Loans to attend a school, it therefore places a seal of approval on that school.

The decision to enter a PPA with a school, or renew an expiring PPA, is therefore the single most important decision that the Department can make to protect students from unscrupulous programs and bad actors.

In recent months, the Department has affirmatively granted new PPAs to numerous for-profit colleges with a history of law enforcement activity and consumer fraud abuses. This includes schools that the Department itself has determined to have "strong indicia" of having engaged in "substantial misconduct" that had either been "credibly alleged" or "proven." The Department has also determined that a student who attended each of these schools is entitled to debt relief because of the school's prior conduct.[2]

| School | PPA Approval Date | PPA Expiration Date |
|---|---|---|
| Gwinnett College | 8/26/2022 | 2/19/2024 |
| La' James International College | 9/6/2022 | 6/30/2024 |
| Lincoln College of Technology | 8/23/2022 | 12/31/2024 |
| Pittsburgh Career Institute | 9/6/2022 | 2/19/2024 |
| Southern Technical College | 8/26/2022 | 2/19/2024 |

But the Department has seemingly not taken any steps to hold the institutions accountable. At a high level, **if the Department believes that there is a** "strong indicia" of these schools having engaged in "substantial misconduct," **why renew their Program Participation Agreements, which allow these schools to siphon taxpayer dollars and reap profits, without accountability for prior actions?**

That's just the tip of the iceberg. With respect to two of these schools (discussed below), the facts are far worse. And with other schools, the Department appears to ignore or disregard evidence gathered by accreditors.

## II. The Department Awarded a New Contract to Lincoln Tech After Massachusetts Attorney General Maura Healey Issued a Civil Investigatory Demand and while the MA AG Borrower Defense Claim on Behalf of Lincoln Tech Students Remains Pending at FSA

Lincoln Tech is a group of for-profit colleges owned by the publicly traded Lincoln Educational Services Corporation. In July 2015, the Massachusetts Attorney General ("MA AG") entered a consent judgment with Lincoln Tech and Lincoln Educational Services (collectively "Lincoln") to resolve allegations that the school violated state consumer protection law regarding its

---

1  HEA § 498(a), 20 U.S.C. § 1099c(a); HEA § 498(c)(1)(A), 20 U.S.C. § 1099c(c)(1)(A).

2  The determination regarding relief provided is part of an approved class action settlement in *Sweet v. Cardona ("Sweet")*. In that case, the Department agreed to issue more than $6 billion in relief to more than 200,000 borrowers based on indicia of misconduct.

enrollment, disclosure, admissions, and educational practices. Lincoln agreed to pay $850,000 and forgive $165,000 in student debt to resolve an investigation into the disclosure and reporting of job placement data for a single program of study at two Lincoln Tech campuses in Massachusetts. In January 2016, the MA AG sent a letter to the Department of Education seeking a discharge of debt for affected students.

In the meantime, Lincoln has been the subject of numerous law enforcement inquiries. In September 2021, the Department's Inspector General determined that Lincoln failed to follow federal requirements associated with COVID-19 emergency relief programs.[3] In December 2021, the school received a letter from the Consumer Financial Protection Bureau ("CFPB") stating that the CFPB was requesting information and assessing conduct regarding the school's "extensions of credit" to its students. That same month, the Department cited Lincoln for "untimely refunds," demanding that Lincoln provide a financial surety to the Department. On June 7, 2022, the MA AG issued a new civil investigative demand to investigate consumer misconduct "in connection with their policies regarding fee refunds and associated disclosures to students and prospective students." Lincoln reports to be "cooperating" with the MA AG investigation.

Meanwhile, as noted above, in 2022, the Department included Lincoln on its list of schools with a "strong indicia" of having engaged in "substantial misconduct" that had either been "credibly alleged" or "proven." And on August 8, 2022, the Department sent Lincoln a letter providing a "generalized description of grounds for borrower defense," which was "premised on many of the same allegations made by the Massachusetts Attorney General."

**While this was going on—and before Lincoln had even responded to the Department's inquiry—the Department issued Lincoln a new PPA, which does not expire until December 31, 2024.** There is no public indication (from the Education Department or in Lincoln's own SEC filings) that the Department has required Lincoln to post a financial surety. Nor did the new PPA include any conditions that Lincoln viewed to be sufficiently material as to trigger an obligation to inform its shareholders.

**For the twelve months ending June 30, 2022, Lincoln drew more than $100 million in taxpayer funded loans and grants.[4]** With the execution of the new PPA, the Department seems inclined to let that happen again without additional oversight.

### III. FSA Renewed La'James International College's Contract Despite an Ongoing Iowa Attorney General Investigation and a Student Class Action Lawsuit Heading Towards Trial

For more than 10 years, La'James International College ("La'James") has faced a combination of law enforcement inquiries, litigation from students, and media stories highlighting problems with the school.[5] In 2014, Iowa Attorney General Tom Miller sued the school, claiming that La'James systematically defrauded students. The lawsuit ultimately settled, with the school agreeing to pay nearly $550,000, forgiving $2.1 million in institutional debt, and submitting to an independent monitor. In May 2020, Student Defense sued La'James for these misrepresentations on behalf of four former and current La'James students, as well as a class of similarly situated students.

The problems didn't stop there. In May 2020, La'James agreed to pay the Department more than $503,000 to settle numerous potentially adverse findings in three campus program reviews, and attested that it had "established policies and procedures

---

3   U.S. Dep't of Educ. Off. of Inspector Gen., *Lincoln College of Technology's Use of Higher Education Emergency Relief Fund Student Aid and Institutional Grants* (Sept. 24, 2021), https://www2.ed.gov/about/offices/list/oig/auditreports/fy2021/a20ca0016.pdf.

4   According to ED Data for OPIED 007938, in the Award Year ending 6/30/22, the Department disbursed $62,364,952 in Direct Loans plus an additional $29,593,504 in Pell Grants.

5   *See* William Morris, *Class-action lawsuit is the latest of many allegations against La'James International College,* Des Moines Register (Jan. 4, 2022, 5:45 AM), https://www.desmoinesregister.com/story/news/crime-and-courts/2022/01/04/lajames-international-college-class-action-lawsuit-complaints-timeline/9038711002/.

in place to ensure that repeat violations will not occur in the future."[6] Then in October 2021, the Iowa Attorney General informed La'James of its determination that the school had repeatedly violated the consent judgment insofar as it was continuing to "deceive[ ] students as to the timing, process, and availability of financial aid."[7] This, according to the Attorney General, created an "ongoing financial hardship for current and former students." As recently as July 2022, the Attorney General concluded that La'James failed to "adequately protect students from the possibility of future harm" and insufficiently "address[ed] the harm already caused to former and current students."

The Department is well-aware of the misconduct at La James and included the school on the list of institutions in the *Sweet* settlement where the Department noted it had evidence of "substantial misconduct."

And as of February 2022, the Department did not hold a financial surety to protect taxpayers in the event of losses caused by La'James' misconduct. **Moreover, in August 2022 the U.S. Department of Education recertified La' James for participation in the Title IV programs until July 2024.**

### IV. Even After Accreditors Place Schools on Probation or Show Cause, FSA Fails to Take Meaningful Action

In addition to recertifying institutions in recent months, the Department is also failing to take actions against institutions. The recent case of North Coast College ("NCC") is a prime example.

NCC is a private, for-profit college located in Lakewood, Ohio. In 2022, the school received approximately $2.1 million in taxpayer funded loans and grants.[8]

Since at least June 2017, NCC has been under increased scrutiny from its accreditor, the Accrediting Commission of Career Schools and Colleges ("ACCSC"). In September 2017, ACCSC put the school on probation, reaching a determination that the school has "not fulfilled its obligations to its students or to ACCSC" and that there were "serious questions about the management and administrative capacity of the school." ACCSC also determined that NCC "failed to demonstrate successful student achievement in *any* of the school's programs" that have been operating long enough to be reportable to ACCSC, which "has persisted over a period [of] five years despite ongoing monitoring and directed action by [ACCSC]." Institutional efforts at improvement "have not been successful."

Historically, the Department has acted to protect students in analogous circumstances, *i.e.*, where an accreditor has imposed increasingly stringent measures on a school that was failing students. For example, in April and August 2016, the Department placed conditions on continued Title IV funding to ITT Technical Institute, after its accreditor placed the school on "show cause" status and then continued that status after additional review.[9] Ultimately, those conditions proved impossible for ITT to withstand, and the school shuttered in September 2016. That same year, the Department also took steps against the Charlotte School of Law, after it was found by its accreditor to be "substantial[ly]" and "persistent[ly]" out of compliance with critical accreditation standards.[10] As of February 2022, the Department did not hold any financial surety to guard against taxpayer losses from NCC misconduct.

**The Department has not publicly announced any steps to curb abuses by NCC. At the same time, NCC publicly touts on its website that its accreditation by ACCSC "ensures the integrity of its educational programs," without reference to the fact that the school has been on probation for over five years.**

---

6   Settlement Agreement, U.S. Dep't of Educ. and La'James In'l Coll., *et. al.* (May 2020).

7    Letter from Max M. Miller, Assistant Att'y Gen., IA Off. of the Att'y Gen., to Douglas E. Gross, Att'y for La' James (Oct. 22, 2021).

8    According to ED Data for OPIED 00236900, in the Award Year ending 6/30/22, the Department disbursed $308,976 in Direct Loans plus an additional $1,839,593 in Pell Grants.

9    Letter from Ron Bennett, Dir., Sch. Eligibility Serv. Grp., to Kevin M. Modany, CEO, ITT Educ. Serv., Inc. (Aug. 25, 2016), https://www2.ed.gov/documents/press-releases/itt-letter-08252016.pdf.

10   Letter from Susan D. Crim, Dir., Admin. Actions and App. Serv. Grp., to Mr. Chidi Ogene, President, Charlotte Sch. of Law (Dec. 19, 2016), https://studentaid.gov/sites/default/files/csl-recert-denial.pdf.

# EXHIBIT 2

# Education Department shouldn't have OK'd federal aid for 5 for-profits on Sweet v. Cardona list, advocacy group says

highereddive.com/news/education-department-financial-aid-for-profits-sweet-cardona-lincoln-tech-lajames-international/637247

Natalie Schwartz

Dive Brief



Miguel Cardona speaks in Dec. 23, 2020 in Wilmington, Delaware, after his nomination for education secretary was announced. Joshua Roberts / Stringer via Getty Images

## Dive Brief:

- The U.S. Department of Education is allowing several for-profit colleges to continue accessing federal financial aid even though they're facing scrutiny from state attorneys general and their accreditors, according to a new report from the National Student Legal Defense Network.
- The advocacy group says the Education Department has recently allowed five for-profit colleges to sign program participation agreements, which are contracts giving institutions access to federal student loans and Pell Grants under the condition they follow federal higher education laws and regulations. The PPAs allow the colleges to keep tapping federal financial aid until 2024.

- Each of the colleges in question are <u>on a list of institutions</u> whose former students will automatically receive debt relief under a recent $6 billion settlement with the Education Department. And one, the Pittsburgh Career Institute, is closing this week after its accreditor lost federal recognition.

## Dive Insight:

Student Defense argues that the Education Department's decision to enter into or renew a PPA with a college is the most important one it can make "to protect students from unscrupulous programs and bad actors." However, the organization accuses the agency of striking PPAs with colleges that have a history of consumer fraud.

The report singles out the department's decision to approve PPAs for five for-profit colleges: Gwinnett College, La' James International College, Lincoln College of Technology, Pittsburgh Career Institute and Southern Technical College. All the PPAs were signed in August and September of this year, according to the report.

Earlier this month, the Education Department <u>settled a lawsuit</u> that affects borrowers who attended the five colleges in Student Defense's report. The agreement will automatically discharge student loan debts for certain borrowers who attended any of the colleges on a list of 150-plus institutions.

The Education Department said it placed colleges on the list because of strong signs of "substantial misconduct," which in some instances has been proven. The settlement agreement covers those who filed borrower defense to repayment claims, which can clear debts for students who were misled by their colleges.

However, some institutions on the list have objected to the idea that the settlement proves wrongdoing on their behalf. A federal judge who approved the settlement wrote that the list of 151 colleges does not brand them with "an impermissible scarlet letter."

The Student Defense report calls attention to other legal matters involving the colleges. In 2015, Lincoln Tech agreed to pay $850,000 to resolve an investigation into allegations that the college violated Massachusetts consumer protection law.

Since then, the institution has faced other federal and state inquiries, according to the report. For instance, the Consumer Financial Protection Bureau <u>requested information last year</u> about the school's "extensions of credit" to its students. Around the same time, the Education Department's internal watchdog determined the college didn't follow federal requirements for coronavirus emergency relief programs.

In a statement, Lincoln Tech said it has provided detailed explanations to the regulators mentioned in the Student Defense report.

"We believe the report strongly mischaracterizes the issues and does not properly reflect the respective outcomes," it said.

The report also focused on La'James International College. In 2020, Iowa's attorney general determined that the college hadn't been complying with a 2016 settlement that resolved fraud allegations, the Des Moines Register reported. Under the agreement, the college had agreed to pay $500,000 to the state and forgive $2.1 million in student debt.

Representatives from the Education Department and the other four colleges did not immediately respond to requests for comment.