1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3       Before The Honorable William Alsup, District Judge

4

5  SWEET, et al.,                    )  No. C 19-03674-WHA
                                     )
6           Plaintiffs,              )
                                     )
7  vs.                               )
                                     )
8  CARDONA, et al.,                  )
                                     )
9           Defendants.              )
   _____   )

10
                                  San Francisco, California
11                                Thursday, January 26, 2023

12

     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13              RECORDING 6:55 - 7:20 = 25 MINUTES

14  APPEARANCES:

15  For Plaintiff:

                              Project on Predatory Student
16                               Lending
                              769 Centre Street
17                            Jamaica Plain, Massachusetts
                                 02130
18                      BY:   REBECCA C. ELLIS, ESQ.
                              REBECCA C. EISEBREY, ESQ.
19
   For Defendant:
20                            United States Department of
                                 Justice
21                            450 Golden Gate Avenue
                              Suite 7-5395
22                            San Francisco, California
                                 94102
23                      BY:   STUART J. ROBINSON, ESQ.

24

25           (APPEARANCES CONTINUED ON THE NEXT PAGE.)

2

```
 1  APPEARANCES:  (Cont'd.)

 2  For American National
       University:                    McGuire Woods, LLP
 3                                     888 16th Street NW, Suite 500
                                       Washington, DC 20006
 4                                BY:  JOHN S. MORAN, ESQ.

 5  For Intervenor, Lincoln
       Educational Services,          Gibson, Dunn & Crutcher, LLP
 6     Corp:                          1050 Connecticut Avenue NW
                                       Washington, DC 20036
 7                                BY:  LUCAS TOWNSEND, ESQ.

 8  For Everglades College,
       Inc.:                          Boies Schiller Flexner, LLP
 9                                     1401 New York Avenue NW
                                       Washington, DC 20005
10                                BY:  JESSE M. PANUCCIO, ESQ.

11                                     Boies Schiller Flexner, LLP
                                       401 East Los Olas Boulevard
12                                     Suite 1200
                                       Fort Lauderdale, Florida
13                                       33308
                                  BY:  JASON H. HILLBORN, ESQ.
14

15  Transcribed by:                   Echo Reporting, Inc.
                                       Contracted Court Reporter/
16                                     Transcriber
                                       echoreporting@yahoo.com
17

18

19

20

21

22

23

24

25
```

3

1  <u>Thursday, January 26, 2023</u>                           <u>6:55 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4       THE CLERK:  Calling civil action 19-3674, Sweet, et

5  al., versus Cardona, et al.

6     Counsel, please state your appearances for the record,

7  beginning with counsel for Plaintiffs.

8       MS. ELLIS (via Zoom):  Good morning, your Honor.

9  Rebecca Ellis from the Project on Predatory Student Lending

10  for the Plaintiffs.

11    (Pause.)

12       THE CLERK:  Next.

13       THE COURT:  Anyone else?

14       MS. ELLIS:  My colleague, Rebecca Eisebrey is also

15  on the line.

16       THE COURT:  Great.  Next?

17       MR. ROBINSON (via Zoom):  Good morning, your Honor.

18  Stuart Robinson from the Department of Justice on behalf of

19  Defendants.

20       THE COURT:  Okay, welcome.

21     Any -- anyone else?

22       MR. TOWNSEND (via Zoom):  Good morning --

23       MR. PANUCCIO (via Zoom):  Good morning -- go ahead,

24  Lucas.

25       MR. TOWNSEND:  Good morning, your Honor.  This is

4

1  Lucas Townsend on behalf of Intervenor, Lincoln Educational

2  Services Corp.

3          THE COURT:  Good morning.

4      Who's next?

5          MR. PANUCCIO:  Good morning, your Honor.  This is

6  Jesse Panuccio on behalf of Intervenor, Everglades College,

7  Inc.

8          THE COURT:  Good morning.

9      Who else?

10          MR. MORAN (via Zoom):  John Moran on behalf of

11  American National University.

12          THE COURT:  All right.  Anyone else?

13          MR. PANUCCIO:  And, your Honor, this is Jesse

14  Panuccio again.  I should have mentioned my colleague, Jason

15  Hillborn is also with me for Everglades.

16          THE COURT:  Okay.  Anyone else?

17      (No response.)

18          THE COURT:  All right, good morning.  I wanted to

19  have this brief call just to make sure we're all on the same

20  page, with respect to the pending motion to stay the

21  settlement.  And I call upon the Government, first, to --

22  first we're going to set that hearing; what day did you tell

23  me, February what?

24          THE CLERK:  15th.

25          THE COURT:  15th.  At what time?  When, Angie?

5

1 What time is it going to be on the 15th?

2        THE CLERK:  All right, your Honor.  February 15th

3 at 1:30.

4        THE COURT:  Okay.  Then -- and that will be in

5 person here in San Francisco.

6    So, my question to the Government is this, what does

7 that -- I want to make sure that the Intervenors have a full

8 opportunity to have their motion heard before something

9 irrevocable is done under the settlement.  So, please address

10 that problem.  Go ahead.

11        MR. ROBINSON:  Thank you, your Honor.  This is

12 Stuart Robinson, again, on behalf of the Defendants.

13    Well, the department has been preparing for six or seven

14 months to get to this point of implementation and have been

15 planning on taking immediate actions, that fall into four

16 general categories, early next week.  And I'm happy to go

17 through those.

18    The first is that the department, on Monday, was going

19 to begin sending emails to borrowers, including substantially

20 all Exhibit C borrowers, letting them know about settlement

21 relief.  In addition to that, they were going to email about

22 36,000 borrowers notifying them that the denials had been

23 rescinded and their cases had been reopened.

24    The department was also going to update its own internal

25 tracking system to reflect the fact that for (Zoom glitch) --

6

1 thousand borrowers, their status had been changed to have

2 their cases reopened.  But perhaps most importantly, to your

3 Honor's point, the department, on Monday, was going to start

4 sending lists to servicers so that those servicers could

5 start performing discharges, and that would include about 99-

6 percent of borrowers in Exhibit C.

7      In addition, the department was going to begin the

8 adjudication process for reopening cases, because as

9 reflected in the settlement, for any application submitted

10 between January 1, 2015 and December 31, 2017, the department

11 has to issue a decision no later than six months after the

12 effective date.

13      So, especially for those last two items, the discharge

14 of the Exhibit C borrower loans, and the adjudication for the

15 cohort of about 16,000 applicants in the six-month window,

16 the department really needs all the time that's allowed under

17 the settlement to fully satisfy its obligations.  And for

18 that reason, it needs to start sending out those lists to

19 servicers on Monday and beginning adjudication on Monday.

20 And to hold things up, based on really what's an emergency

21 manufactured by Intervenors, would be significantly

22 detrimental to the department's ability to perform.

23      I mean, if I may, your Honor, I'll just add that these

24 Intervenors waited 58 days to bring this motion, which

25 essentially recycles their -- their previously rejected

7

1 arguments with no new evidence, and has now put the
2 department in a position of beginning to implement the
3 settlement and (Zoom glitch) stay, which would be very
4 confusing to borrowers, to say the least, and it seems just
5 totally avoidable at this point.

6           THE COURT:  Help me understand one point.  Will, in
7 the next few days or weeks -- well, first of all, when does
8 the six months run out?

9           MR. ROBINSON:  Six months from the effective date,
10 and based on the current state of affairs, the effective date
11 would be Saturday, this Saturday.

12          THE COURT:  And what is the deadline for you to do
13 discharges and so forth?

14          MR. ROBINSON:  For the six months, it would six
15 months from -- oh for -- oh, I should ask -- for the -- I
16 should clarify.  For the Exhibit C borrowers, it's one year
17 from the effective date, and then for the cases that have
18 been reopened, it depends on how long the application was
19 pending with the shortest window being six months from the
20 effective date?

21          THE COURT:  The effective date --

22          MR. ROBINSON:  But on the -- I'm sorry, your Honor.

23          THE COURT:  You're throwing these numbers around
24 and confusing me.  When is the effective date in your view?

25          MR. ROBINSON:  The effective date is on Saturday,

8

1 January 28th, but because that's a -- not a business day, the

2 department will begin taking those actions, as outlined, on

3 Monday, January 30th.  And all of the deadlines will be tied

4 to the effective date being Saturday.

5         THE COURT:  Okay.  So, the six month -- what is the

6 -- the six-month deadline to do what?

7         MR. ROBINSON:  Okay.  So, for borrowers who are not

8 -- who did not attend the Exhibit C schools, the department

9 will rescind their denial notices and reopen and re-

10 adjudicate those cases, and there are about 13,000 applicants

11 who submitted an application between January 1, 2015 and

12 December 31, 2017 and, as reflected on page nine of the

13 settlement, the department has to issue a decision for those

14 applicants no later than six months after the effective date.

15         THE COURT:  All right.  The Intervenors are not

16 affected by the six month list; am I right?  They are on the

17 Exhibit C.

18         MR. ROBINSON:  That is true, your Honor, although

19 I'll add that the department also really needs the full one

20 year to perform its obligations under the settlement for the

21 Exhibit C discharges.  And I can explain a little bit about

22 why that is, but essentially, some of these discharges can be

23 done pretty easily.  For example, if there is one servicer

24 and one loan, but others can be more complicated.  And so to

25 satisfy its obligations for all of the borrowers in Exhibit

9

1  C, the department really needs every day of that one year and

2  to delay things a few weeks or more without extending out the

3  deadline, would be very detrimental to the department.

4          THE COURT:  Between now and February 15th, do you

5  anticipate that any discharges will occur?

6          MR. ROBINSON:  Yes, your Honor.  I believe that

7  once the discharge requests are sent to servicers are Monday,

8  they can start performing that, and some may be discharged

9  within -- within that week.

10          THE COURT:  All right.  Let me hear from the

11 Intervenors, please.  Go ahead.

12          MR. TOWNSEND:  Good morning, your Honor.  This is

13 Lucas Townsend and I'd like to address a threshold question,

14 which is doomed by what we just heard from Mr. Robinson, that

15 there has, in fact, or will be very shortly, an effective

16 date.  We actually disagree with that reading of the

17 settlement agreement.  There are appeals.  There are appeals,

18 and the settlement agreement addresses the consequences of

19 appeals from a final judgment and it delays the effective

20 date of the settlement, pending the final resolution of

21 appeals, and there are two provisions, in particular, that

22 provide that -- provide for this, this delay, and so the

23 prejudice, or potential prejudice we just heard Mr. Robinson

24 describe, actually would not come into effect, because there

25 is no -- there is no effective date and will not be until the

10

1   end of the appeals.

2       I'm referring specifically to Section ii, Roman numeral

3   ii(k) of the settlement agreement, and we mention this, we

4   discuss this in our stay motion.  I can amplify it here.  It

5   defines effective date as,

6                   "The date upon which, if this

7               agreement has not been voided under

8               Section 13, the final judgment approving

9               this agreement, entered by the court in

10              the form attached hereto, as Exhibit B,

11              becomes non-appealable, or in the event

12              of an appeal by a class member, based

13              upon a timely-filed objection to this

14              agreement, upon the date of final

15              resolution of said appeal."

16  There's a couple of points -- components to that, and I just

17  want to walk through them very quickly.

18      The threshold question is whether the agreement is void.

19  That's a condition of this agreement.  And we look to Section

20  13 for that, and it says -- Section 13(a) says,

21                  "This agreement shall be void if it

22              is not approved as written by a final

23              court order not subject to any further

24              review."

25  It's not limited to who appeals.  It is any further review.

1       We can't know whether the agreement is void until the

2   judgment is not subject to any further review, and a void

3   contract, it's black-letter law, is without legal affect.

4   And we think that reading those two provisions together --

5   and I acknowledge, the agreement does not expressly address

6   intervenor appeals, but I think the consequence of the appeal

7   provisions in the agreement is quite clear, that there will

8   be a delay in the effective date until such time as the

9   judgment is not subject to any further review.  The parties

10  provided for it in the two sections.

11      If one of the two scenarios provided for in the

12  definition of effective date, has not happened, then there is

13  no effective date.  And the two scenarios, again, are if the

14  judgment -- when the judgment becomes non-appealable.  Well,

15  we know that's not the case here, because there are, in fact,

16  appeals, there are three appeals.  And the other scenario is,

17  in the event of an appeal by a class member, based upon a

18  timely objection to this agreement.

19      Now, I submit, that the appeals by the Intervenors, are

20  most analogous to the second scenario, an appeal by the class

21  member.  We're not members of the class, but it's most

22  analogous to that scenario.  But even if it doesn't qualify

23  for that scenario, neither scenario is satisfied and there's

24  no effective date.

25      So, the effective date, again, as we -- as we read the

12

1 agreement, quite clearly provides for the delay of the

2 effective date until the resolution of any appeal.

3      So, I would just mention that as a threshold question,

4 that really should be decided before any equitable relief --

5 equitable stay relief -- is granted.  And it certainly

6 addresses what we just heard from Mr. Robinson.

7           THE COURT:  All right.  So you lose -- let's say

8 you lose all of that, what other arguments do you wish to

9 make?

10           MR. TOWNSEND:  If the Court disagrees with our

11 reading of the agreement, then we have a pending stay motion

12 and we very much would ask for the Court to provide for an

13 expedited schedule, or expedited decision, on the stay

14 motion.  If, in fact, the parties are going to go forward

15 with implementing the settlement, not withstanding the delay

16 in the effective date, we would ask for emergency relief,

17 because at the point which -- which the Government sends

18 notices or emails to parties, at that point there is too much

19 of a risk of confusion, too much of a risk of additional

20 claims of prejudice, should the appeal result in a vacated or

21 reversal of the judgment.  That's exactly why the parties

22 provided for a delay in the effective date of the agreement

23 until the resolution of any appeals.

24      And again, I mention again, that the agreement is void

25 if the -- if, on appeal, the judgment is set aside.  The

13

1  consequence of that, by definition, is that the agreement is

2  void and the agreement provides that if the agreement is

3  void, the consequence of that is the parties resume

4  litigating before -- as they were before the settlement

5  agreement.  And that would make no sense if the parties are

6  implementing the settlement agreement in the meantime.

7          MS. ELLIS:  Your Honor, may I speak on this for a

8  moment?  This is Rebecca Ellis for the Plaintiffs.

9          THE COURT:  Go ahead, Ms. Ellis.

10          MS. ELLIS:  I just want to address this

11  interpretation of the settlement agreement, which frankly,

12  tortures it into an absurd result.

13      Under the argument that the Intervenors are making here,

14  the agreement is void now.  The agreement, according to them,

15  has been void since the day it was approved, because on their

16  reading, it's void, essentially, unless and until, the Ninth

17  Circuit resolves the appeal against Intervenors.  That's

18  clearly not what the agreement says.

19      The agreement has a variety of conditions that render it

20  void or voidable.  One, obviously, is that the agreement

21  would have been void if this Court had not approved it.

22  That's 13(a).  There's also other situations involving

23  conditions of impossibility that aren't relevant here.

24      The plain reading of the effective date provision says,

25  "The date upon which, if this agreement has not been voided,"

14

1  so if it's not void right now, the agreement,

2          "Is going to go into effect, unless

3          a class member timely files an appeal,

4          based on an objection, in which case the

5          effective date will be the date of final

6          resolution of the appeal."

7  No class member has appealed yet.  Under our understanding of

8  Federal Rule of Appellate Procedure 4(a)3, a class member

9  could appeal at any time until the end of the day tomorrow,

10 January 27th, and that's where we're getting this January

11 28th effective date that the Government referred to.  And I

12 don't think that there's any other way you can read the

13 agreement without reaching an absurd result.

14          THE COURT:  All right.  What more would the

15 Intervenors like to say?

16          MR. TOWNSEND:  Your Honor, I would -- on that

17 point, I would just like to briefly respond and just say that

18 Section 13(a), again says,

19          "This agreement shall be void if it

20          is not approved, as written, by a final

21          court order not subject to any further

22          review."

23 So the parties agreed that, being subject to further review,

24 that was a condition of knowing whether the agreement is

25 void.

15

1      MR. PANUCCIO:  And, your Honor, this is Jesse
2  Panuccio for Everglades.  If I could just add.  Of course we
3  agree with all of those arguments of our colleague, but I
4  just want to -- we've now heard from the Government that they
5  are moving -- or attempting to move -- very quickly on the
6  settlement.  More quickly, in fact, than would have been
7  anticipated, based on the time lines.
8      We very much appreciate the Court saying at the outset
9  that we ought to be given a fair hearing on our stay motion
10 if the Court doesn't read the settlement agreement to self
11 execute a stay, and we would ask at the very least that the
12 Court implement an administrative stay through its decision
13 on the underlying stay motion, since the Government has
14 indicated it plans to move on Monday to start discharging
15 loans.
16      THE COURT:  All right.  I don't hear anyone else.
17      MS. ELLIS:  Your Honor, if I could respond to that
18 point, briefly.  I think, you know, without going into
19 arguing the stay motion before it's time to argue the stay
20 motion, I don't believe the Intervenors have shown, or
21 frankly could show, any harm that would come to them from the
22 settlement agreement going into effect.  And without any such
23 harm, we don't see that there's any justification for a stay,
24 not only in response to the motion, but in the intervening
25 two weeks.

*Echo Reporting, Inc.*

1          THE COURT:  All right.  Here's what we're going to

2   do.  I am going to give limited relief to the Intervenors in

3   this sense.  The Government can go forward with all of the

4   steps that it says it will go forward with, starting on

5   Saturday, or next Monday, with this exception, that no loan

6   associated with any of the three Intervenors can be

7   discharged until further order of the Court.  But all of the

8   other steps that you have in mind can go forward and on the

9   15th we will -- we'll hear the entire motion.  And it's

10  conceivable that I'll be persuaded that some more relief is

11  in order, but right now I believe too much momentum is going

12  forward with implementing the settlement.  And a lot of good

13  progress could be made toward implementing the settlement,

14  without actually discharging loans associated with the three.

15        Now, I also want to say to Ms. Ellis, you may be correct

16  that the Intervenors have shown no harm, as to them, because

17  they get to keep the money no matter what.  That's a good

18  point, but I, nevertheless as to these three, I don't want

19  any loan to be discharged.  As to all of the others on

20  Exhibit C, you can start discharging as soon as you want.

21          MR. ROBINSON:  Your Honor --

22          THE COURT:  Now -- go ahead.

23          MR. ROBINSON:  I'm very sorry for interrupting your

24  Honor, I just wanted to provide some more information for the

25  Court's awareness before it entered an order along those

1  lines.

2          THE COURT:  Go ahead.

3          MR. ROBINSON:  Your Honor, it's -- it's not

4  feasible for the department to hold off on -- on sending the

5  discharge requests to servicers, as to the Exhibit C

6  borrowers only and implement the rest.  And the reason for

7  that is there isn't like one single master list of borrowers

8  and loans that's accessible by each servicer, or guarantee

9  agency, such that the department can simply search for

10 individual borrowers, pull out those borrowers and let the

11 process carry on.  Rather, each servicer gets a zip file

12 containing the loans and that's not easily manipulated.  It

13 actually has to be redone and recreated manually for each

14 servicer, and that's further complicated by the fact that

15 some borrowers have multiple loans from different servicers.

16     So, to hold off on discharging loans for Exhibit C

17 borrowers, would actually require the department to hold off

18 on sending discharge requests for all borrowers and no

19 discharge request would be sent on Monday, so the department

20 would redo its entire process for identifying those Exhibit C

21 borrowers in the meantime.

22          THE COURT:  Well then, hold off on all of them.

23 I'm ordering you to hold off on all of them if it's

24 impossible to segregate out the three.  The -- I want to make

25 sure that the three Intervenors have a fair opportunity to

18

1  have their motion heard before it's too late, and what you're

2  trying to do is jam it down their throat before they get a

3  chance to have their motion heard.  That's true, they were 58

4  days late.  I'm going to take that into account on February

5  15th.

6       Now, you can go forward with everything else that you've

7  identified, but do not go forward with any of the discharge

8  notices, on account of what you just said.  So, I'm sorry

9  that you convinced me that that step is -- we'll get to it in

10 two weeks, maybe, but not now.  You should have thought of

11 this and -- instead of trying to put me in a position where I

12 can't give relief.

13      All right.  I have a criminal trial to deal with.

14 That's the -- I'm not going to do a written order.  This is a

15 verbal order.  So, I have to go to a criminal trial now.

16 I'll see you on February 15th, in person.  Thank you,

17 Counsel.  Bye bye.

18           MS. ELLIS:  Thank you, your Honor.

19      (Proceedings adjourned at 7:20 p.m.)

20

21

22

23

24

25

19

1                    CERTIFICATE OF TRANSCRIBER

2

3       I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by the

6  U.S. District Court, Northern District of California, of the

7  proceedings taken on the date and time previously stated in

8  the above matter.

9       I further certify that I am neither counsel for, related

10 to, nor employed by any of the parties to the action in which

11 this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14 

15

16            Echo Reporting, Inc., Transcriber

17              Friday, January 26, 2023

18

19

20

21

22

23

24

25