1  BRIAN D. NETTER
   Deputy Assistant Attorney General
2  STEPHANIE HINDS
   United States Attorney
3  MARCIA BERMAN
   Assistant Branch Director
4  R. CHARLIE MERRITT
   STUART J. ROBINSON
5  Attorneys
   U.S. Department of Justice
6  Civil Division, Federal Programs Branch
   1100 L Street, N.W.
7  Washington, DC 20005
8  Telephone: (415) 436-6635
   E-mail: stuart.j.robinson@usdoj.gov
9
10 *Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | Case No. 19-cv-03674-WHA<br><br>**DEFENDANTS' OPPOSITION TO INTERVENORS' MOTION FOR STAY PENDING APPEAL**<br><br>**HEARING DATE: February 15, 2023**<br><br>(Class Action)<br>(Administrative Procedure Act Case) |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW ................................................................................................... 1

DISCUSSION ........................................................................................................................ 2

I.  INTERVENORS HAVE FAILED TO DEMONSTRATE A STRONG SHOWING OF LIKELY SUCCESS ON THE MERITS .................................................................. 2

    A. The Settlement Does Not Exceed The Department's Authority .................................. 2

    B. The Settlement Does Not Violate the APA. ................................................................ 5

    C. The Settlement Agreement Accords with Due Process. ............................................. 6

II.  INTERVENORS HAVE FAILED TO DEMONSTRATE IRREPARABLE HARM ABSENT A STAY ........................................................................................................ 7

III. EVEN IF THE COURT CONSIDERS THE REMAINING FACTORS, THOSE FACTORS WEIGH HEAVILY AGAINST A STAY PENDING APPEAL ................... 10

Conclusion ............................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Advanced Mgm't Tech., Inc. v. FAA*,
   211 F.3d 633 (D.C. Cir. 2000) ............................................................................................... 10

*Al Otro Lado v. Wolf*,
   952 F.3d 999 (9th Cir. 2020) ........................................................................................ 2, 7, 11

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ............................................................................................... 11

*Am. Hosp. Ass'n v. Price*,
   867 F.3d 160 (D.C. Cir. 2017) ............................................................................................ 5, 6

*Ezzell Trucking, Inc v. Fed. Motor Carrier Safety Admin.*,
   309 F.3d 24 (D.C. Cir. 2002) .................................................................................................. 9

*Grae v. Corr. Corp. of Am.*,
   No. 3:16-cv-2267, 2019 WL 1746492 (M.D. Tenn. Apr. 18, 2019) ...................................... 10

*Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ................................................................................................. 9

*Hernandez v. Williams, Zinman & Parham PC*,
   829 F.3d 1068 (9th Cir. 2016) ................................................................................................. 4

*Hindley v. Dep't of Health & Hum. Servs.*,
   No. 15-cv-01973-MEJ, 2017 WL 1398257 (N.D. Cal. Apr. 19, 2017) ................................... 9

*In re Pike*,
   2008 WL 11336952 (C.D. Cal. Mar. 6, 2008) ...................................................................... 11

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................................................. 6

*Jackson v. City & Cnty. of San Francisco*,
   829 F. Supp. 2d 867 (N.D. Cal. 2011) .................................................................................... 2

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................................................................... 6

*Manriquez v. DeVos*,
    No. 17-cv-07210-SK, 2018 WL 5316174 (N.D. Cal. Aug. 30, 2018) ........................ 12, 13, 14

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................. 2, 7, 8, 11

*Pa. Higher Educ. Assistance Agency v. Perez*,
    416 F. Supp. 3d 75 (D. Conn. 2019) ................................................................................ 4

*Patriot, Inc. v. HUD*,
    963 F. Supp. 1 (D.D.C. 1997) ........................................................................................ 10

*Or. Rest. & Lodging Ass'n v. Perez*,
    816 F.3d 1080 (9th Cir. 2016) .......................................................................................... 4

*Senne v. Kansas City Royals Baseball Corp.*,
    No. 14-cv-00608-JCS, 2017 WL 5973487 (N.D. Cal. May 5, 2017) ............................. 12

*Sierra Club v. Dombeck*,
    55 F. App'x 411 (9th Cir. 2002) ....................................................................................... 2

*Soda Mountain Wilderness Council v. U.S. Bureau of Land Mgmt.*,
    No. 1:12-cv-01171, 2013 WL 12129602 (D. Or. Jan. 30, 2013) ................................... 11

*Stone v. Advance Am.*,
    278 F.R.D. 562 (S.D. Cal. 2011) ...................................................................................... 2

*Weingarten v. DeVos*,
    468 F. Supp. 3d 322 (D.D.C. 2020) ............................................................................. 3, 4

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022) ..................................................................................................... 5

*Virginian Ry. Co. v. United States*,
    272 U.S. 658 (1926) ......................................................................................................... 2

**Statutes**

20 U.S.C. § 1082 ................................................................................................................ 3, 4, 5
20 U.S.C. § 1087e ..................................................................................................................... 3
28 U.S.C. §§ 516-519 ............................................................................................................... 6

**Rules**

Fed. R. App. P. 4 .................................................................................................................... 12

Federal Rule of Civil Procedure 23 ........................................................................................ 1, 6

**Regulations**

34 C.F.R. § 668.89 ..................................................................................................................... 8, 9

**Other**

87 Fed. Reg. 65,904 (Nov. 1, 2022) ................................................................................................ 5

U.S. Dep't of Educ., Office of the General Counsel, Memorandum re: *The Secretary's Legal Authority for Debt Cancellation*,

    (Aug. 23, 2022), https://perma.cc/LP87-NMCS) ................................................................... 6

Black's Law Dictionary (11th ed. 2019) ..................................................................................... 3, 4

# INTRODUCTION

The Court properly granted the parties' joint motion for final approval of the settlement agreement pursuant to Federal Rule of Civil Procedure 23(e). ECF No. 345 ("Order"). In so doing, it rejected the objections and arguments raised by Intervenors and agreed with Plaintiffs and Defendants that the proposed settlement is fair. *See id.* After taking no action for 58 days, three of the Intervenors now seek a stay of the Court's judgment pending their appeals. ECF No. 350 ("Mot. to Stay"). But Intervenors cannot meet the standard for such a stay. Their recycled arguments about the statutory authority of the Secretary of Education ("Secretary"), the Administrative Procedure Act ("APA"), and due process—each of which has been found unpersuasive by the Court—do not demonstrate a strong likelihood of success on the merits. Similarly, Intervenors' conclusory arguments that they will suffer irreparable reputational harm absent a stay are untethered from the reality of the settlement agreement and the regulatory framework in which the Department makes its borrower defense decisions. Intervenors' contentions of reputational harm also ignore the Department's express disavowal that any part of the settlement's implementation for class members amounts to a misconduct finding or future evidence against a school. *See* Decl. of Benjamin Miller ¶ 11, ECF No. 288-1. In short, Intervenors suffer no harm, let alone irreparable harm, absent a stay. Finally, the public interest weighs heavily against a stay. The Court should not condone Intervenors' last-minute efforts to disrupt the carefully negotiated agreement reached after years of contentious litigation. Rather, the Court should again find that the settlement agreement is lawful and fairly accommodates the interests of both the Department and class members who are deserving of timely relief.

# STANDARD OF REVIEW

In determining whether to grant a motion for stay pending appeal, a court must evaluate "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006-07 (9th Cir. 2020) (quoting *Nken*

*v. Holder*, 556 U.S. 418, 434 (2009)). A court should consider the last two factors only after determining that the first two factors are satisfied. *Id.* at 1007. The sliding scale approach used in evaluating whether to grant a preliminary injunction is similarly applied in the context of a motion for stay pending appeal. *Id.* Nevertheless, "'[a] stay is not a matter of right, even if irreparable injury might otherwise result.'" *Id.* at 1006 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

**DISCUSSION**

### I. INTERVENORS HAVE FAILED TO DEMONSTRATE A STRONG SHOWING OF LIKELY SUCCESS ON THE MERITS[1]

As an initial matter, Intervenors are unlikely to succeed on the merits of their appeal because they have not demonstrated standing to pursue that appeal. *See Sierra Club v. Dombeck*, 55 F. App'x 411, 412 (9th Cir. 2002); *see also infra* Part II (discussing Intervenors' failure to demonstrate cognizable harm). Intervenors attempt to justify a stay by asserting arguments concerning the Department's authority, the APA, and constitutional due process. Mot. to Stay at 2-22. The Court has already considered and rejected these arguments, Order at 6-17, further indicating that Intervenors' success on the merits is highly unlikely.

#### A. The Settlement Does Not Exceed The Department's Authority.

As Defendants have previously explained, and as the Court recognized, the settlement agreement is legally authorized under the Higher Education Act ("HEA") and the Attorney General's discretion to settle litigation against the United States. *See* ECF No. 246 ("Joint Mot.") at 21-24; ECF No. 332 ("Defs.' Reply") at 5-8; Order at 6-14. Intervenors generally do not engage with any of this analysis but continue to press meritless arguments concerning the Secretary's authority to enter into the settlement agreement.

---

[1] In accordance with their prior filings, *see* Defs.' Reply at 2 n.1, Defendants do not herein address those issues on which Plaintiffs bear the burden, including issues pertaining to the Court's subject-matter jurisdiction, *see Jackson v. City & Cnty. of San Francisco*, 829 F. Supp. 2d 867, 870 (N.D. Cal. 2011), and class certification, *see Stone v. Advance Am.*, 278 F.R.D. 562, 568 (S.D. Cal. 2011).

First, Intervenors note that the President has announced an initiative for student loan relief based on the Higher Education Relief Opportunities for Students Act of 2003 ("HEROES Act"). Mot. to Stay at 9. As the Court recognized, however, "[t]he instant settlement . . . is anchored in separate authority and is completely independent from the Biden plan"; accordingly, the President's authority under the HEROES Act has no bearing on whether the Secretary may enter into the "instant settlement, [which] involv[es] a narrower class and narrower relief[.]" Order at 19-20. For the same reason, neither that initiative nor judicial review of that initiative informs the Court's analysis of the so-called "major questions doctrine." *See* Mot. to Stay at 13; *see also infra* at 4.

Second, Intervenors disagree with the Department's and the Court's interpretation of 20 U.S.C. §§ 1082(a)(6) and 1087e(a)(1), which, when read together, permit the Secretary to settle claims against the Department arising from loans made under the Direct Loan Program. Joint Mot. at 21-24; Defs.' Reply at 6-7; Order at 7-8; *see* Mot. to Stay at 10-13. To reiterate, the HEA grants the Secretary the authority to "waive" or "release" his "right" to collect the federal student loan debts of certain class members in order to resolve class members' claims against the Department. *Id.* § 1082(a)(6). That authority is expressly provided in the statutory provision governing the FFEL program, *id.*, and likewise extends to Direct Loans because the HEA provides that Direct Loans "have the same terms, conditions, and benefits . . . as loans made" under the FFEL program, *id.* § 1087e(a)(1). *See Weingarten v. DeVos*, 468 F. Supp. 3d 322, 328 (D.D.C. 2020). That is, the Secretary's authority to collect—and his attendant authority to forgo collection—is plainly a "term" and "condition" of any federal student loan. Black's Law Dictionary (11th ed. 2019) (defining "terms" in part as "[p]rovisions that define an agreement's scope; conditions or stipulations"). Accordingly, in light of the HEA's "text itself, the specific context in which that text is used, and the broader context of the [HEA] as a whole[,]" *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1073 (9th Cir. 2016) (cleaned up and citation omitted), § 1082(a)(6) and § 1087e(a)(1) unambiguously authorize the settlement of claims arising from the Direct Loan program here. And even if there were some ambiguity in the HEA's text, the Court did not err in

deferring to the Department's longstanding and reasonable interpretation, particularly given the legislative history cited by the Court.  Order at 8-9; *see also, e.g.*, *Or. Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1089 (9th Cir. 2016) ("To determine whether the [agency's] interpretation is reasonable, 'we look to the plain and sensible meaning of the statute, the statutory provision in the context of the whole statute and case law, and to the legislative purpose and intent.'" (citation omitted)).  The Court also already rejected Intervenors' reliance on *Pa. Higher Educ. Assistance Agency v. Perez*, 416 F. Supp. 3d 75, 96-97 (D. Conn. 2019), relying instead on *Weingarten*, 468 F. Supp. 3d at 328.  Order at 8-9.  *See* Mot. to Stay at 10 & n.7.[2]

Intervenors next argue that "[e]ven if subsection 1082(a)(6) is interpreted . . . to apply to Direct Loans, it does not provide authority for blanket, *en masse* debt cancellation."  Mot. to Stay at 11.  That assertion, however, confuses the issue before the Court, as Defendants are not seeking to justify "blanket, *en masse* debt cancellation."  Rather, the pertinent issue involves a litigation settlement providing targeted relief to a specific group of plaintiffs, who have asserted legal claims against the Department related to the borrower defense program, unlike the student loan relief initiative under the HEROES Act.  *See id.* at 12.  Intervenors' argument that the settlement constitutes an injunction that is barred by 20 U.S.C. § 1082(a)(2), *id.*, was already rejected by the Court for reasons other than the one Intervenors seek to rebut.  Order at 12.

Finally, Intervenors reiterate their argument that the settlement agreement violates the major questions doctrine, relying primarily on the dollar amount at issue.  Mot. to Stay at 12-13.  Defendants previously explained that the settlement does not implicate that doctrine, including because it is consistent with the HEA's grant of authority to compromise claims against the Department.  Defs.' Reply at 8-10.  The Court agreed, correctly observing that "[y]es, this settlement will discharge over six billion dollars in loans, but *West Virginia* [*v. EPA*, 142 S. Ct. 2587 (2022)] made clear that determining whether a case contains a major question is not merely

---

[2] Intervenors do not assert otherwise; they advance only the narrower argument that the HEA's text is unambiguous.  *See* Mot. to Stay at 11-12.

an exercise in checking the bottom line." Order at 9-11. Plaintiffs offer no reason for the Court to reach a different conclusion.

### B. The Settlement Does Not Violate the APA.

Intervenors contend that the settlement agreement contravenes the APA in four respects. Mot. to Stay at 13-15. Intervenors have fallen well short of demonstrating a likelihood of success as to any of these theories, let alone a strong likelihood.

As an initial matter, Intervenors claim that, in entering into the settlement agreement, the Department has failed to abide by its regulations "for resolving BD claims." *Id.* at 13. But, as the Court found, Order at 12-13, the settlement constitutes an appropriate exercise of the Department's statutory authority to settle student loan debts of class members under 20 U.S.C. § 1082(a)(6), rather than its separate authority under the borrower defense regulations. *See, e.g.*, Defs.' Reply at 6; Joint Mot. at 21-24; ECF No. 300 at 2 ("Settlement relief does not constitute an approved or successful borrower defense claim . . ."). Nor can Intervenors advance their argument by suggesting that the Department will "as a practical matter . . . ignore[]" its regulations. Mot. to Stay at 14. To the contrary, the Department has recently promulgated a final borrower defense rule that will, in significant respects, mirror the provisions of the settlement agreement. *See* 87 Fed. Reg. 65,904, 66,071-72 (Nov. 1, 2022) (outlining timeframes for adjudication of borrower defense claims, and providing that if the Department fails to adjudicate a claim within the applicable timeframe, "loans, or portion of the loans . . . will not be enforceable by the Department against the borrower and the school will not be liable for the loan amount"). Further, *American Hospital Association v. Price*, on which Intervenors rely, Mot. to Stay at 14, is inapposite, because in that case the Secretary of Health and Human Services *disclaimed* the authority to enter into a settlement that would clear a backlog of Medicare reimbursement claims under timeframes mandated by statute. 867 F.3d 160, 167 (D.C. Cir. 2017) ("[T]he Secretary repeatedly insisted that the type of mass settlement necessary to comply with the Court's timetable would be illegal."). Here, of course, the Secretary of Education has explained that he is in fact authorized by statute to settle on the terms approved by the Court.

Second, according to Intervenors, the settlement agreement is arbitrary and capricious because it failed to (1) adequately explain the basis for including schools on the list contained in Exhibit C, (2) account for purportedly exculpatory evidence related to Intervenor Everglades College, Inc. ("ECI"), and (3) describe the reasons for rescinding a memorandum issued by the Department's then-Principal Deputy General Counsel. Mot. to Stay at 14-15. Once again, however, Intervenors offer no basis to shoehorn a traditional APA analysis into the Court's consideration of whether final settlement approval is warranted under Rule 23(e)(2), which aims "to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *see also, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012) (when applying Rule 23(e), a court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components"). Intervenors have also mischaracterized the document concerning ECI, which presents only a preliminary conclusion based on partial evidence. *See* Defs.' Reply at 12. Moreover, Defendants have previously noted that the rescinded Department memo does not apply here, and that it "was issued in contravention of then-effective Department processes for issuing significant guidance" and was "not properly promulgated." Joint Mot. at 23 n.13 (quoting U.S. Dep't of Educ., Office of the General Counsel, Memorandum re: *The Secretary's Legal Authority for Debt Cancellation* at 3 n. 5 (Aug. 23, 2022), https://perma.cc/LP87-NMCS). And Intervenors have no response to Defendants' prior explanation that neither the HEA nor 28 U.S.C. §§ 516-519 require an in-depth analysis or rationale for compromising claims. *See* Defs.' Reply at 11-12.

### C. The Settlement Agreement Accords with Due Process.

Intervenors have likewise failed to establish a strong likelihood of success with respect to their argument that "the Settlement strips the schools of liberty and property interests without constitutionally adequate process." Mot. to Stay at 16. The Court has already considered and rejected each aspect of this theory. Order at 15-16 (explaining that "[n]o liberty or property interest has been disturbed[,]" and "[a]ny hypothetical, future remedial action would proceed according to established regulations, which would provide the schools with full due process rights").

Intervenors do not meaningfully engage with this analysis. Mot. to Stay at 16-17. They similarly disregard the declaration submitted by the Department averring that "it does not consider inclusion on Exhibit C a finding of misconduct and that inclusion does not constitute evidence that could or would be considered in an action by the Department against a school." Miller Decl. ¶ 11. And to the extent Intervenors complain that the Department did not confer with them prior to entering into the settlement agreement, *see* Mot. to Stay at 17, that argument once again conflates the exercise of settlement authority with adjudication of borrower defense applications. Accordingly, Intervenors provide no reason for the Court to reconsider its prior conclusions.

## II. INTERVENORS HAVE FAILED TO DEMONSTRATE IRREPARABLE HARM ABSENT A STAY

"An applicant for a stay pending appeal must show that a stay is necessary to avoid likely irreparable injury to the applicant while the appeal is pending." *Al Otro Lado*, 952 F.3d at 1007 (citing *Nken*, 556 U.S. at 434). "'Simply showing some possibility of irreparable injury' is insufficient." *Id*. For the reasons explained below, Intervenors fail to show they will be injured, let alone irreparably injured, absent a stay.

First, Intervenors argue that "[f]or schools on Exhibit C, effecting the Settlement will eliminate an essential step of the administrative process" because there will no longer be borrower defense proceedings at the Department in which the schools can participate. Mot. to Stay at 18. Here too Intervenors misconstrue the nature of the settlement agreement. The settlement does not call for the Department to adjudicate the borrower defense applications of the group of class members to which Exhibit C applies, nor does the provision of full settlement relief to those class members constitute borrower defense decisions. Intervenors' complaints about lack of "participat[ion], "creat[ing] a decisional record," and receiving "a reasoned decision on each BD claim," *id.* at 18-19, are therefore misplaced. Similarly, in making these arguments, Intervenors ignore both the Miller Declaration and the protections in place for any hypothetical recoupment proceeding, including requiring the Department to carry the burden of persuasion in a borrower defense recovery action. *See* Order at 14-16; Defs.' Reply at 4-5; 34 C.F.R. § 668.89(b)(3)(iii).

Given these protections, Intervenors can only speculate about the potential of "'bureaucratic momentum' that will 'skew' future agency proceedings," Mot. to Stay at 20 (citation omitted), which would be subject to judicial review. Intervenors' argument also overlooks the detrimental effects to borrowers of allowing the continued delay associated with their borrower defense applications. *See* Order at 11, 23 (noting that, under current staffing levels, "it would take the Department *more than twenty-five years* to get through the backlog" of pending borrower defense applications, and "[t]he relief also furthers the Secretary's interest in resolving the backlog of claims"). And they do not explain how any "new claims of reliance and assertions of hardship if the Ninth Circuit reverses" would be directed against Intervenors and therefore constitute a likely source of irreparable harm suffered by them. *See* Mot. to Stay at 20.

Nor can Intervenors bolster their argument by relying on the settlement agreement's provision concerning the effective date. *See id.* Defendants and Plaintiffs disagree with Intervenors that the agreement "is best read to delay the Effective Date until the completion of Intervenors' appeals[.]" *Id.* at 20. The effective date is based on two potential events: when the Court's order "becomes non-appealable or, in the event of an appeal by a *Class Member* based upon a timely filed objection to this Agreement, upon the date of final resolution of said appeal." Joint Mot. Ex. 1 at 3 (emphasis added). Nothing in the settlement agreement contemplates delaying the effective date based on an appeal by a non-class member. *See id.* And for good reason, as this litigation concerns the rights of borrowers and the harm that attends delay in resolving their borrower defense claims; it does not, by contrast, concern the rights of schools or their reaction to a settlement to which they are not parties and that does not affect them. *See* Joint Mot. at 16 ("Ongoing litigation on the complicated matters presently before the Court, as well as the possibility of appeal, could extend the timeline for decisions on Class Members' applications well beyond these terms. To avoid the uncertainty of a judicial outcome and the delay of appeal—in a case that is fundamentally about avoiding delay—expeditious relief is the superior outcome for the Class."). Additionally, in filing their motion for a stay, Intervenors undermine their own

argument, since if their appeals were sufficient to delay the effective date, their motion would be unnecessary.

Intervenors next contend that "schools on Exhibit C will suffer irreparable harm to their reputations, goodwill, and standing with regulators if the Settlement takes effect." Mot. to Stay at 20. Insofar as this argument coincides with Intervenors' APA and due process theories, *see id.* at 21, it fails for the reasons previously set forth by the parties and the Court. Further, notwithstanding that the settlement was made public more than seven months ago, Intervenors have failed to provide sufficient evidence to establish "severe reputational harm[,]" Mot. to Stay at 16, 21. *See Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("It may be that HRE could establish the likelihood of irreparable harm. But missing from this record is any such evidence."); *accord Ezzell Trucking, Inc v. Fed. Motor Carrier Safety Admin.*, 309 F.3d 24, 26 (D.C. Cir. 2002) ("Ezzell claims injury to its reputation. To establish such a claim for purposes of Article III standing, Ezzell must produce evidence that such injury is concrete, not speculative."). *Cf. Hindley v. Dep't of Health & Hum. Servs.*, No. 15-cv-01973-MEJ, 2017 WL 1398257, at *10 (N.D. Cal. Apr. 19, 2017) ("But without evidence of reputational harm, a reasonable finder of fact cannot find Plaintiff suffered a deprivation of this liberty interest."). Rather, Intervenors cite only a statement from a non-profit organization regarding the Department's efforts "to hold the institutions [listed in Exhibit C] accountable[,]"[3] as well as a statement from Plaintiffs' counsel about the settlement generally—not Exhibit C or any specific school listed therein. *See* Mot. to Stay at 21; *see also, e.g.*, *Advanced Mgm't Tech., Inc. v. FAA*, 211 F.3d 633, 636-37 (D.C. Cir. 2000) (rejecting claimed "reputational injury" based on alleged injured party's "vast exaggeration of [federal agency's] findings" and "no evidence that the [agency's] findings cast any shadow over its business activities").

---

[3] That document noted that "Lincoln [College of Technology] has been the subject of numerous law enforcement inquiries." ECF No. 350-1 at 6. Intervenors make no effort to explain why, in light of these inquiries, any reputational harm is attributable to the Department. Similarly, they do not explain why the Department's renewal of Lincoln's program participation agreement damages the institution's reputation. *See* ECF No. 50-1 at 9.

Intervenors neglect to mention that schools are able to, and in fact have been, publicly advancing their own thoughts about the merits of the settlement agreement, including in the same article quoting Plaintiffs' counsel. *See* ECF No. 325-4 at 6-7. For example, the article quotes a memo from ECI's attorneys stating that "[t]his is a farce[.]" *Id.* at 6. The Chicago School of Professional Psychology is also quoted as "vigorously deny[ing] these accusations[.]" *Id.* Intervenors are likewise able to communicate the limited purpose of Exhibit C with students and other stakeholders, as well as the fact that inclusion on the Exhibit C list "does not constitute evidence that can or will be considered by the Department" in any enforcement proceeding against any Intervenor school. Miller Decl. ¶ 11. Further, the cases cited by Intervenors, *id.* at 20-21, are inapposite: *Grae v. Corrections Corporation of America* involved a request to stay discovery based on a concern that discovery "might lead to the revelation of information that could lead to reputational harm," No. 3:16-cv-2267, 2019 WL 1746492, at *1 (M.D. Tenn. Apr. 18, 2019); and in *Patriot, Inc. v. HUD*, the plaintiffs "*demonstrated* irreparable harm in damage to their business reputation[,]" 963 F. Supp. 1, 5 (D.D.C. 1997) (emphasis added). Finally, Intervenors do not explain how a stay pending appeal would prevent any of their asserted harms, which, according to them, occurred when the Department included them in Exhibit C. Under these circumstances, there is no basis to find that denying the stay is likely to cause irreparable harm to Intervenors.

### III. EVEN IF THE COURT CONSIDERS THE REMAINING FACTORS, THOSE FACTORS WEIGH HEAVILY AGAINST A STAY PENDING APPEAL

Because Intervenors have failed to establish a strong likelihood of success on the merits or irreparable harm, the Court's inquiry is at an end. *See Al Otro Lado*, 952 F.3d at 1006-07. Yet even if the Court were to reach the final two factors of the test for a stay pending appeal, it should conclude that Intervenors have failed to carry their burden with respect to those factors as well. *See Soda Mountain Wilderness Council v. U.S. Bureau of Land Mgmt.*, No. 1:12-cv-01171, 2013 WL 12129602, at *1 (D. Or. Jan. 30, 2013) ("When the government opposes a motion for stay pending appeal, the third and fourth factors of the test effectively merge." (citing *Nken*, 556 U.S. at 435)).

First, in claiming that "a stay in this case will merely maintain the status quo," Mot. to Stay at 22 (quoting *In re Pike*, 2008 WL 11336952, at *8 (C.D. Cal. Mar. 6, 2008)), Intervenors disregard the fact that the status quo before settlement—a massive, ever-expanding backlog of unresolved borrower defense claims—was the impetus of this lawsuit. And while the parties agreed to delay the effective date in the event a class member appealed the Court's order, *see id.* at 22, that provision only confirms the importance of taking into account borrowers' views and interests; as no class member has appealed, the public interest lies in granting timely relief to those borrowers in accordance with the settlement, *see, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (when reviewing class action settlement, court has a "fiduciary duty to look after the interests of . . . absent class members"). Even if the Court were to credit the marginal reputational harm Intervenors assert, it would not compel a different conclusion, particularly given the overall favorable response of the class.

Intervenors are also wrong in positing that the Department would benefit from a stay. *See* Mot. to Stay at 22. The Department has a strong interest in resolving this litigation and eliminating the backlog of borrower defense applications according to a schedule that is workable for the Department. The only case cited by Intervenors did not involve a federal agency or a settlement, and there the court's stay analysis reflects a desire to avoid harm caused by "devot[ing] very substantial time and resources on the litigation, particularly with respect to the completion of discovery, dispositive motions and trial preparation on class claims." *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608-JCS, 2017 WL 5973487, at *3 (N.D. Cal. May 5, 2017). By contrast, the parties here have already devoted substantial resources to this matter and have reached a meeting of the minds on how to resolve it in a manner that is fair to the Department and the class.

Importantly, it is *Intervenors'* litigation strategy that has disrupted "the orderly administration of justice." *See* Mot. to Stay at 24. If Intervenors were truly "worr[ied] [about] upsetting reliance interests and injecting new harms into the case[,]" *id.*, they could have noticed their appeals and moved for a stay shortly after the Court entered its order, particularly given their lack of new arguments or evidence. In doing so, the Court could have had the benefit of full

briefing and a hearing before the effective date of the settlement, when class members would expect the Department to begin performing under the terms of the agreement. Instead, Intervenors noticed their appeals and filed their motion at the tail end of the 60-day window to appeal, *see* Fed. R. App. P. 4. Moreover, Intervenors did not move to shorten the briefing schedule or advance the hearing date for their stay motion, *see* L. Civ. R. 6-3, which again would have allowed the motion to have been resolved before the agreement's effective date and obviated the need for any administrative stay. *See* Tr. of Proceedings at 5, 15 (Jan. 26, 2023); Request for Suppl. Decl. and Reservation of Jurisdiction, ECF No. 357.

Equally unavailing are Intervenors' claims that the public interest favors a stay insofar as it "would protect the Ninth Circuit's appellate jurisdiction." *Id.* at 23-24. Intervenors cite no authority for the proposition that protecting appellate jurisdiction supports the public interest where the appellant has suffered no cognizable harm. *See id.* Nor is this a case seeking a stay pending interlocutory appeal, where "[j]udicial economy favors a stay [because] conducting further proceedings would require 'conducting a trial that may ultimately be unnecessary' because such proceedings could result in the unnecessary 'expenditure of judicial resources.'" *Manriquez v. DeVos*, No. 17-cv-07210-SK, 2018 WL 5316174, at *3 (N.D. Cal. Aug. 30, 2018) (citation and emphasis omitted).

Finally, Intervenors assert that "the public has no legitimate interest in constricting appellate review based on any alleged wrongdoing by Intervenors." Mot. to Stay at 25. This argument coincides with Intervenors' APA claims and should be rejected for the same reasons.[4]

---

[4] In accordance with the Court's Order, Defendants will submit a declaration on January 30, 2023, addressing the Department's ability "to hold off on discharging loans for class members who attended the appealing intervenor schools while proceeding in discharging loans for all other class members." ECF No. 357; *see also* Mot. to Stay at 25 (requesting, "in the alternative," that the Court "stay the judgment as to the appealing Intervenors").

## **CONCLUSION**

Defendants respectfully request that the Court deny Intervenors' motion for a stay pending appeal.

Dated: January 27, 2023

Respectfully submitted,

BRIAN D. NETTER
Deputy Assistant Attorney General

STEPHANIE HINDS
United States Attorney

MARCIA BERMAN
Assistant Branch Director

*/s/Stuart J. Robinson*
R. CHARLIE MERRITT
STUART J. ROBINSON
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (415) 436-6635
E-mail: stuart.j.robinson@usdoj.gov

*Attorneys for Defendants*