EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS (*pro hac vice*)
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
PROJECT ON PREDATORY STUDENT
LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
Tel.: (617) 390-2669

JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
3950 Broadway, Suite 200
Oakland, California 94611
Tel.: (510) 271-8443
Fax: (510) 868-4521

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | Case No. 19-cv-03674-WHA<br><br>**NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>**HEARING DATE: April 25, 2024**<br><br>(Class Action)<br>(Administrative Procedure Act Case) |

## TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND AND PROCEDURAL HISTORY .......................................... 3

    A.    The "Return to Repayment" Reveals Gaps and Inaccuracies in Settlement
          Implementation ............................................................................................ 3

    B.    The Department Violates the Automatic Relief Group Deadline .............................. 6

    C.    The Parties Seek, But Fail to Reach, Consensus on Cure ........................................ 8

    D.    Harm to Class Members from Continued Delay ..................................................... 10

III.    ARGUMENT ................................................................................................... 11

    A.    The Court Has Jurisdiction to Decide This Motion .............................................. 11

    B.    Plaintiffs Are Entitled to Relief Under Section V.B.2 of the Agreement ................. 13

    C.    Plaintiffs' Counsel Are Entitled to Reasonable Fees and Costs ............................. 17

CONCLUSION ........................................................................................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265 (9th Cir. 1996) ............................................................ 11

*E. Bay Sanctuary Covenant v. Barr*, 391 F. Supp. 3d 974 (N.D. Cal. 2019) .............................. 12

*Everglades College, Inc. v. Cardona*, 143 S. Ct. 1443 (2023) (Mem) ........................................... 3

*Everglades College, Inc. v. Cardona*, No. 23-15049, DE 19 (9th Cir. Mar. 29, 2023) ................. 3

*Hoffman by & for N.L.R.B. v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268

(9th Cir. 1976) ........................................................................................................................... 12

*In re Volkwagen "Clean Diesel" Mktg., Sales Practices & Product Liab. Litig.*, 975 F.3d 770

(9th Cir. 2020) ........................................................................................................................... 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ....................................... 11, 12

*Oceana, Inc. v. Ross*, 359 F. Supp. 3d 821 (N.D. Cal. 2019) ...................................................... 12

**Statutes**

12 U.S.C. § 5535 ............................................................................................................................. 16

20 U.S.C. § 1018(f) ........................................................................................................................ 16

**Other Authorities**

Consumer Fin. Protection Bureau, "Issue Spotlight: Federal Student Loan Return to Repayment"

(Jan. 2024), *available at* https://files.consumerfinance.gov/f/documents/cfpb_federal-student-

loan-return-to-repayment-report_2024-01.pdf............................................................................ 6

Danielle Douglas-Gabriel, "Biden administration begins punishing servicers for student loan

errors," *Wash. Post* (Oct. 30, 2023), *available at*

https://www.washingtonpost.com/education/2023/10/30/student-loan-servicing-errors-mohela/

........................................................................................................................................................ 6

Press Release, "Biden-Harris Administration Announces Framework for Student Loan Servicer

Accountability To Protect Borrowers Nationwide" (Nov. 9, 2023),

https://www.ed.gov/news/press-releases/biden-harris-administration-announces-framework-

student-loan-servicer-accountability-protect-borrowers-nationwide......................................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Press Release, "U.S. Department of Education Announces Withholding of Payment to Student Loan Servicer as Part of Accountability Measures for Harmed Borrowers" (Oct. 30, 2023), https://www.ed.gov/news/press-releases/us-department-education-announces-withholding-payment-student-loan-servicer-part-accountability-measures-harmed-borrowers .................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on April 25, 2024, at 8:00 a.m., in the courtroom of the Honorable William Alsup, Courtroom 12, 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will and hereby do respectfully move the Court for an order enforcing certain provisions of the class action settlement agreement in this case. This Motion is supported by the accompanying memorandum of points and authorities, the attached declarations and exhibits, the pleadings and other papers filed in this case, oral argument, and any other matters in the record or of which this Court takes notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

On November 16, 2022, this Court granted final approval of a class-wide settlement of this action pursuant to Federal Rule of Civil Procedure 23. *See* ECF Nos. 345, 346. The Settlement Agreement (ECF No. 246-1, the "Agreement"; appended hereto as Exhibit 1), which Plaintiffs and the Department of Education ("Department," and together, the "Parties") signed on June 22, 2022, provided specific instructions for the Department to deliver relief to over 264,000 Class Members. The Agreement went into effect on January 28, 2023. *See* ECF No. 382 at 8.

The Department has yet to complete a confirmed discharge for nearly a third of the more than 195,000 members of the "automatic relief group," the largest group of Class Members. Members of the automatic relief group were to receive "Full Settlement Relief"—federal loan discharges, refunds of amounts paid to the Department, and deletion of relevant tradelines from their credit reports—within one year of the Effective Date, *i.e.*, by January 28, 2024. *See* Agreement §§ II.S, IV.A.1. As of March 18, 2024, the Department still had not delivered discharges and refunds to *at least* 55,000 members of this group. Moreover, these figures do not account for Class Members who may have received their discharges and/or refunds, but not credit repair—a number that, to date, the Department has claimed it does not know.

The Department admits that it is in breach of Section IV.A.1 of the Agreement. Per the terms of the Agreement, the Parties met and conferred several times in an attempt to reach

consensus on the appropriate actions the Department could take to resolve this breach. Unfortunately, the Parties were unable to reach consensus, due primarily to the Department's refusal to commit to a firm, near-term date by which *all* members of the automatic relief group would receive their Full Settlement Relief.

Class Members are suffering serious, ongoing harm as a result of the Department's failure to meet the required deadline. Some were counting on their refunds to pay for life necessities, such as dental work or home repairs. Some are unable to purchase a home or car because loans that should have been discharged already are still appearing on their credit reports. Some are trying to pay down other, high-interest loans that grow every day. Many have experienced unlawful attempts by their federal student loan servicers to collect on loans that are covered by the Agreement, causing Class Members stress and confusion (made worse by the Department's lack of oversight as its servicers disseminate misinformation about settlement relief). Most are suffering from fear and distress about whether they will receive the relief they are owed. And for each and every member of the automatic relief group who hasn't received their Full Settlement Relief, the Department's failure here represents yet another unlawful delay and breach of trust by the Department, in a case that is about the Department's years upon years of similar failures.

When student loan borrowers miss deadlines, the consequences are immediate and drastic. They are harassed by debt collectors, have their credit damaged, and can have their income seized. The Department of Education, which permits such draconian measures for its constituents, should not be permitted to escape accountability for its own missed deadlines.

Accordingly, pursuant to Section V.A.2 of the Settlement Agreement, Plaintiffs bring this action to enforce the terms of the Agreement. Plaintiffs request that this Court issue an order requiring Defendants to promptly provide Full Settlement Relief to each affected Class Member by May 31, 2024, or such other date as the Court deems appropriate. Plaintiffs further request that such an order require Defendants to provide regular reports to Plaintiffs' Counsel and the Court on their progress of issuing relief to affected Class Members. Finally, Plaintiffs seek reasonable attorneys' fees and costs incurred in bringing this motion.

## II. BACKGROUND AND PROCEDURAL HISTORY

The Court is familiar with the long history of this case. Suffice to say that, after three years of hard-fought litigation, the Parties signed the Settlement Agreement on June 22, 2022, and filed a motion for preliminary approval the same day. *See* ECF No. 246, 246-1. The Court granted preliminary approval on August 4, 2022. ECF No. 307. After briefing and argument from the Parties and four educational institutions that intervened to oppose the settlement, the Court granted final approval on November 16, 2022, and entered judgment. ECF Nos. 345, 346. The intervenors appealed that decision and sought to stay the final approval order pending their appeals. *See* ECF Nos. 347–350. The Court denied the motion to stay, and in doing so, confirmed that the Agreement's Effective Date was January 28, 2023. ECF No. 382 at 8.[1]

Following the Court's denial of the intervenors' motion to stay, the Department reported that it had communicated discharge requests for members of the automatic relief group to the Department's loan servicers. *See* Exhibit 15 at 1 (Letter from Department of Justice ("DOJ") to Plaintiffs' Counsel dated Feb. 16, 2024). In its initial settlement report pursuant to Section IV.G.1 of the Agreement, the Department reported that there were 195,993 Class Members in the automatic relief group. *See* Exhibit 2 at 1 (Initial Report under Settlement Agreement in *Sweet et al. v. Cardona*, dated Feb. 27, 2023).

### A. The "Return to Repayment" Reveals Gaps and Inaccuracies in Settlement Implementation

On September 1, 2023, the nationwide pause on student loan payments due to the COVID-19 pandemic ended. While the COVID payment pause was in effect, all Class Members—along with every other federal student loan borrower in the country—were protected against demands for payments from their loan servicers. When the payment pause ended, the Settlement Agreement provided that Class Members' Relevant Loan Debt (that is, loans associated with their borrower

---

[1] The intervenors also sought, and were denied, a stay from the Ninth Circuit Court of Appeals and the U.S. Supreme Court. *See Everglades College, Inc. v. Cardona*, No. 23-15049, DE 19 (9th Cir. Mar. 29, 2023); *Everglades College, Inc. v. Cardona*, 143 S. Ct. 1443 (2023) (Mem.)

defense applications under the Agreement) would "remain in forbearance or stopped collection status pending the effectuation of relief." Agreement § IV.A.3.

In the months leading up to the national "return to repayment," the Department's post-settlement reporting pursuant to Sections IV.G.2–4 of the Agreement reflected steadily increasing numbers of automatic relief group Class Members for whom relief had been "effectuated."[2] "Effectuated relief" is defined in the Agreement to mean that the Defendants

> and their loan servicers have taken all steps necessary to discharge the Relevant Loan Debt of the Class Member . . . , including but not limited to (1) discharging any interest that accrued while the borrower defense application was pending; (2) determining if the Class Member . . . is entitled to any refund, and if so, issuing refund check(s) for payment of that refund; (3) if the Class Member's . . . Relevant Loan Debt was previously in default, removing such debt from default status; and (4) requesting the deletion of the relevant tradeline.

Agreement § IV.F.1. Yet as soon as the return to repayment began, Plaintiffs' Counsel began hearing from Class Members who were receiving bills demanding payment on their Relevant Loan Debt. *See* Ex. 29 ¶ 4 (Decl. of Reilly Loynd).

Plaintiffs' Counsel promptly contacted the Department to report these problems. *See* Ex. 7 (Email from Plaintiffs' Counsel to DOJ dated Sept. 19, 2023). DOJ stated that it was aware of the problem and assured Plaintiffs' Counsel that it would provide servicers with a "do not bill list" that included all *Sweet* Class Members. *See* Ex. 9 (Email from Plaintiffs' Counsel to DOJ dated Oct. 6, 2023). That list was reportedly distributed to servicers on or about October 27, 2023. *See* Ex. 10 (Email from DOJ to Plaintiffs' Counsel dated Oct. 27, 2023).

Other events in fall 2023 further demonstrated that the Department was well aware of the problem of servicers billing borrowers who should not be billed (among other servicing failures). For example, on October 30, 2023, the *Washington Post* reported that servicers sent bills to

---

[2] Ex. 3 (First Quarterly Report under Settlement Agreement in *Sweet et al. v. Cardona* (May 30, 2023)); Ex. 4 (Second Quarterly Report under Settlement Agreement in *Sweet et al. v. Cardona* (Aug. 28, 2023)).

approximately 16,000 people with pending or approved borrower defense applications.[3] That same day, the Department announced that it was withholding $7.2 million from one of its servicers relating to errors in the return to repayment.[4] Soon thereafter, the Department announced a new "framework" for servicer accountability.[5] The Consumer Financial Protection Bureau (CFPB) also published a report detailing extensive servicing failures since the return to repayment, including incorrectly sending bills to borrowers with approved or pending borrower defense applications.[6] As the CFPB observed, "[t]hese errors not only cause significant borrower confusion, but they may also cause harm where borrowers pay a wrongly inflated amount or are forced to expend considerable time and resources to fix servicer errors."[7]

Despite DOJ's representations about the "do not bill list," Plaintiffs' Counsel continued to receive reports from Class Members that their servicers were sending them bills and/or refusing to maintain their accounts in forbearance status. *See* Ex. 29 ¶ 5 (Loynd Decl.); Ex. 11 at 1–2 (Letter from Plaintiffs' Counsel to DOJ dated Dec. 14, 2023). Plaintiffs asked a number of questions about how the Department would ensure that *Sweet* Class Members were not being wrongfully billed or removed from forbearance; the Department did not respond. *See* Ex. 11 at 2.

---

[3] Danielle Douglas-Gabriel, "Biden administration begins punishing servicers for student loan errors," *Wash. Post* (Oct. 30, 2023), *available at* https://www.washingtonpost.com/education/2023/10/30/student-loan-servicing-errors-mohela/.

[4] Press Release, "U.S. Department of Education Announces Withholding of Payment to Student Loan Servicer as Part of Accountability Measures for Harmed Borrowers" (Oct. 30, 2023), https://www.ed.gov/news/press-releases/us-department-education-announces-withholding-payment-student-loan-servicer-part-accountability-measures-harmed-borrowers.

[5] Press Release, "Biden-Harris Administration Announces Framework for Student Loan Servicer Accountability To Protect Borrowers Nationwide" (Nov. 9, 2023), https://www.ed.gov/news/press-releases/biden-harris-administration-announces-framework-student-loan-servicer-accountability-protect-borrowers-nationwide.

[6] Consumer Fin. Protection Bureau, "Issue Spotlight: Federal Student Loan Return to Repayment" (Jan. 2024), *available at* https://files.consumerfinance.gov/f/documents/cfpb_federal-student-loan-return-to-repayment-report_2024-01.pdf.

[7] *Id.* at 9.

1    Meanwhile, in connection with these return-to-repayment problems, Plaintiffs questioned
2    whether the Department's post-settlement reporting had been accurate. That is, Plaintiffs' Counsel
3    inquired why, if automatic relief group members had in fact received their Full Settlement Relief,
4    they were still getting billed by their servicers. *See* Ex. 8 (Email from Plaintiffs' Counsel to DOJ
5    dated Sept. 29, 2023). In a telephone call on October 4, 2023, the Department responded that it
6    would investigate the accuracy of its relief reporting data. *See* Ex. 9 (Oct. 6 email). Yet the
7    Department's next quarterly report showed no corrections or other evidence of such an
8    investigation. *See* Ex. 5 (Third Quarterly Report under Settlement Agreement in *Sweet et al. v.*
9    *Cardona* (Nov. 27, 2023)). Indeed, as late as January 24, 2024, the Department continued to
10   represent that its data were accurate. At that point, the Department claimed that 95% of borrowers
11   in the automatic relief group would receive Full Settlement Relief by the January 28, 2024,
12   deadline. Ex. 15 at 2 (Feb. 16 letter).

**B.    The Department Violates the Automatic Relief Group Deadline**

14   As the relief deadline approached, Plaintiffs' Counsel began hearing from increasing
15   numbers of Class Members in the automatic relief group who had not received their discharge,
16   refund, credit repair, or a combination thereof. Ex. 29 ¶¶ 7–8 (Loynd Decl.). Plaintiffs' Counsel
17   requested a meeting with the Department and DOJ to discuss whether the Department was going
18   to meet its mandated deadline. Ex. 12 (Email from Plaintiffs' Counsel to DOJ dated Jan. 17, 2024).
19   In a telephone call on January 24, 2024, the Department stated that there were approximately
20   11,500 Class Members entitled to discharges by January 28 who would not receive their discharges
21   on time, reportedly due to "complex" loan situations. *See* Ex. 13 at 1–2 (Notice of Settlement
22   Breach dated Feb. 2, 2024). The Department acknowledged, however, that it had also sent
23   discharge notices to the former, not the current, servicers of up to 40,000 additional Class Members
24   in the automatic relief group, and it had not verified whether this large group of Class Members
25   had in fact received discharges. *Id.* at 2. The Department stated that it "could not estimate" when
26   it would be able to track down the relief status for these 40,000 Class Members. *Id.*

27   On the January 24 call, Plaintiffs' Counsel also explained to the Department that there were
28   Class Members who had not yet received their discharges even though they didn't fit into any of

the Department's already-identified "complex" categories. This particularly included students with commercial FFEL loans (which are held by lenders outside the Direct Loan servicing system)— including named plaintiff Theresa Sweet.[8] *See id.* at 3.

The Department further admitted on January 24, 2024, that there were at least 5,000 Class Members in the automatic relief group who would not receive full refunds by the January 28 deadline, all of whom had Aidvantage as their servicer. *See id.* But information that Plaintiffs' Counsel had received from Class Members indicated that the problem was far more widespread than that number suggested. Between January 28, 2024, and February 2, 2024, Plaintiffs' Counsel heard from approximately 1,500 Class Members who did *not* have Aidvantage as their servicer and who either had not received any refund or had not received a refund in the amount they believed they were owed. *Id.* Plaintiffs' Counsel had also, by this point, received reports from nearly 1,200 Class Members that their Relevant Loan Debt was still appearing on their credit reports; the Department acknowledged that it had not taken steps to verify whether its servicers were accurately reporting to the credit bureaus. *Id.* at 3–4.

Given these major gaps, Plaintiffs' Counsel questioned how the Department could reliably assert that Full Settlement Relief would be effectuated by the deadline for 95% of the automatic relief group. The Department admitted that it did not know what the servicers really meant when they reported that relief had been "effectuated," and that it had not verified the servicers' claims that they were actually providing Full Settlement Relief to Class Members. *Id.* at 6.

On February 2, 2024, pursuant to Section V.D.1 of the Settlement Agreement, Plaintiffs served Defendants with notice of Plaintiffs' allegation that Defendants were in material breach of, *inter alia*, Section IV.A.1 of the Settlement Agreement for their failure to effectuate Full Settlement Relief by the applicable deadline.[9] *Id.* at 1.

---

[8] Ms. Sweet received her discharge on March 10, 2024, after Plaintiffs informed Defendants that they planned to file this motion on March 19.

[9] Plaintiffs also alleged material breaches of Section IV.G (failure to submit timely and complete quarterly reports) and Sections IV.A.3 and IV.C.7 (failure to maintain Class Members' Relevant Loan Debt in forbearance or stopped collection status). *See* Ex. 13 at 5–8. In a subsequent notice

1       **C.**      **The Parties Seek, But Fail to Reach, Consensus on Cure**

2            Pursuant to Section V.D.3 of the Agreement, the Department responded in writing to

3 Plaintiffs' notice on February 16, 2024. Ex. 15. In that response, the Department acknowledged

4 that "full settlement relief has not been implemented for all borrowers who are entitled to such

5 relief under Paragraph IV.A.1 of the Agreement by January 28, 2024." *Id.* at 1. The Department

6 also admitted that its previous estimate of 95% relief delivery was wildly inaccurate: in fact, it

7 stated, it could only confirm that 69% of automatic relief group members had received their

8 discharges by February 15, 2024. *Id.* at 2. The remaining 31% of the automatic relief group—

9 representing 60,401 Class Members—was divided nearly equally between those who definitely

10 had *not* received their discharges and those whose discharge status the Department was, so far,

11 unable to verify. *Id.* The Department also admitted that "there may be some [automatic relief

12 group] borrowers who have not yet received refunds to which they are entitled under the terms of

13 the Agreement," but did not offer any estimate of how many Class Members were in this situation.

14 *Id.* at 5–6. Finally, the Department acknowledged that "the relevant loan debt for some [automatic

15 relief group] borrowers has not yet been removed from their credit reports," but baselessly

16 disclaimed responsibility for its servicers' conduct with respect to credit reporting. *Id.* at 6; *see* Ex.

17 19 at 6 (Letter from Plaintiffs' Counsel to DOJ dated Mar. 13, 2024).

18            Despite these dispositive admissions, the Department maintained that it was "not prepared

19 at this time to issue a determination regarding material breach" of Section IV.A.1, and stated that

20 it would provide a "supplement" to its letter by March 1, 2024. Ex. 15 at 2–3. In other words,

21

22

23    on February 14, 2024, Plaintiffs alleged further violations of Section IV.G relating to the failure
to include eligible Class Members in the Department's counts of people entitled to Settlement
24 relief. *See* Ex. 14 (Second Notice of Settlement Breach dated Feb. 14, 2024). Through the meet
and confer process, the Parties are close to reaching consensus on how the Department can cure
25 the alleged breaches of the reporting requirements, and thus those allegations are not addressed in
the instant motion. Violations of the forbearance provisions do not, under the terms of the
26 Agreement, carry an independent remedy. *See* Agreement § V.B. As explained *infra*, however,
many of the harms to automatic relief group members that flow from those breaches can be
27 addressed by the remedy under Section V.B.2—*viz.*, completing full effectuation of relief as
quickly as possible.
28

having blown the deadline for delivering relief, the Department then failed to meet the Settlement-mandated deadline for determining its position on whether a material breach had occurred (it had).

In addition, the Department insisted that implementation errors resulting in Class Members facing collection activity from their servicers were "rare," despite Plaintiffs' Counsel having provided the Department with hundreds of names of Class Members who had complained about this very conduct. *Id.* at 7; *compare* Ex. 29 ¶ 6 (Loynd Decl.). The Department nonetheless "believe[d]" that the "overwhelming majority of class members whose loans have not yet been discharged are in the appropriate forbearance or stopped collection status," and thus disagreed that any material breach of the Agreement had occurred. Ex. 15 at 7. The Department did not provide substantiation of the basis for this belief.

The Parties first met and conferred on February 26, 2024. At that time, the Department argued that the determination of whether it had breached Section IV.A.1 should be made as of March 1, 2024, because the intervenors' stay motion had delayed implementation of the Agreement by approximately a month in February 2023. While Plaintiffs did not agree with this position, the Parties mutually acknowledged that the Department would be in material breach of the Agreement as to any Class Members in the automatic relief group who did not receive Full Settlement Relief by March 1, 2024. *See* Ex. 16 at 1 & n.1 (Letter from Plaintiffs' Counsel to DOJ dated Mar. 1, 2024). The Department also stated during the meet-and-confer session that it was not yet ready to offer a timeline for delivering the remaining relief to the automatic relief group, but it committed to providing an update by March 1. The Department continued to insist that it was not responsible for its servicers' conduct with respect to the credit reporting aspect of relief—despite the fact that the Settlement Agreement requires "*Defendants . . . and their loan servicers*" to "take[] all steps necessary" to "request[] the deletion of the relevant tradeline" for each Class Member's Relevant Loan Debt. Agreement § IV.F.1 (emphasis added); *see* Ex. 16 at 2 (Plaintiffs' Mar. 1 letter).

In a letter on March 1, 2024, the Department officially conceded that it was in material breach of Section IV.A.1. *See* Ex. 17 at 1 (Letter from DOJ to Plaintiffs' Counsel dated Mar. 1, 2024). Crucially, however, the Department stated that it still could not "reliably identify [a]

timeline" for providing Full Settlement Relief to all affected Class Members, and it did not provide any date by which it would identify a timeline—let alone give any indication of what that timeline might be. *Id.* at 2.

The Parties further met and conferred on March 5, March 18, and March 19, 2024, to attempt to reach consensus on how the Department could rectify its breach of Section IV.A.1. Plaintiffs' Counsel repeatedly emphasized that the most important factor in reaching an agreement would be the Department's commitment to "a strict and near-term deadline by which all Class Members in the automatic relief group will receive their Full Settlement Relief—with no exceptions." Ex. 16 at 4 (Plaintiffs' Mar. 1 letter). On March 13, 2024, Plaintiffs proposed a schedule that would have given the Department approximately ten more weeks—for a total of over four months since the original deadline—to complete the effectuation of relief. *See* Ex. 19 at 2. In a phone call on March 18, the Department countered with an offer to deliver relief to *some* Class Members by July 31, 2024—but even that proposal still would have left at least 20,000 members of the automatic relief group without a firm date by which to expect their already-overdue discharges and refunds. Likewise, on March 19, the Department stated that a proposed deadline encompassing the entire automatic relief group would be merely "aspirational."

Ultimately, because of the Department's unwillingness to commit to an acceptable timeline for the delivery of relief to all members of the automatic relief group, the Parties were unable to reach consensus. Thus, pursuant to Section V.B.2 of the Settlement Agreement, the Plaintiffs bring this enforcement action.

### D.      Harm to Class Members from Continued Delay

Class Members in the automatic relief group are continuing to suffer harm each day that relief goes undelivered. Many had already made significant life plans based on the original relief deadline—for instance, finding stable housing, paying for needed health and dental care, replacing broken-down cars, paying off suffocating private for-profit student loan debts, and helping children pay for college to give them the opportunity that their own predatory institution denied them. *See* Ex. 26 ¶ 10 (Decl. of Meghan Ratte); Ex. 21 ¶ 19 (Decl. of Laura Dadich); Ex. 22 ¶¶ 15, 16 (Decl. of Stella Johnson); Ex. 23 ¶¶ 14, 15 (Decl. of Christopher Matthews).

1      Class Members also continue to suffer compounding consequences from the Department's

2   delay the longer it continues. Automatic relief group Class Members whose loans were not

3   discharged by the January 28 deadline have received conflicting information from the

4   Department's student loan servicers on their entitlement to relief, and in at least some cases have

5   received collection notices for loans that should have been cancelled. *See* Ex. 28 ¶ 23 (Decl. of

6   Christina Shaw) ("The November 3 email from EdFinancial also stated that they knew I was

7   covered by borrower defense and 'there are no payments due during this process.' But recently,

8   on March 17, 2024, I received a bill from EdFinancial stating that I owe them a monthly payment

9   of $323.03 which is supposedly due on April 16, 2024."); Ex. 27 ¶ 10 (Decl. of Julie Sams).

10      The Department's failure to deliver Full Settlement Relief also has resulted in the continued

11  reporting of settlement loan balances on Class Members' credit reports. *See* Ex. 28 ¶ 20 (Shaw

12  Decl.); Ex. 26 ¶ 9 (Ratte Decl.); Ex. 20 ¶ 9 (Decl. of Malissa Aaronson); Ex. 22 ¶ 13 (Johnson

13  Decl.); Ex. 24 ¶ 16 (Decl. of Michael McDonald). The continued reporting of a balance due on

14  loans required to be discharged under the Settlement has serious and ongoing repercussions for

15  Class Members—who find themselves paying a higher cost for credit, or denied credit entirely,

16  because of these accounts' impact on their debt-to-income ratio. *See* Ex. 24 ¶ 18 (McDonald Decl.)

17  ("I am trying to find a home for myself and my child that's closer to where I work, but both the

18  rent and home prices are higher in that area. Because of my student loan debt—more than half of

19  which is from the University of Phoenix—I can't get any kind of loan without a co-signer. I cannot

20  buy a car on my own, much less a house. I've been told no by every mortgage lender in my area;

21  in many cases, they won't even run a full credit check once they see how high my debt-to-income

22  ratio is."); Ex. 26 ¶ 10 (Ratte Decl.); Ex. 21 ¶ 18 (Dadich Decl.); Ex. 25 ¶ 13 (Decl. of Katelin

23  Mundy).

24  **III.    ARGUMENT**

25          **A.    The Court Has Jurisdiction to Decide This Motion**

26      If the parties to a case "wish to provide for the court's enforcement of a dismissal-

27  producing settlement agreement, they can seek to do so." *Kokkonen v. Guardian Life Ins. Co. of*

28  *Am.*, 511 U.S. 375, 381 (1994) (emphasis omitted); *see Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265,

1    1268–69 (9th Cir. 1996) (applying *Kokkonen* to class action settlement). "Indeed, a district court

2    must have 'power to enforce' its order approving a settlement 'to protect the integrity of a complex

3    class settlement over which it retained jurisdiction.'" *In re Volkswagen "Clean Diesel" Mktg.,*

4    *Sales Practices & Product Liab. Litig.*, 975 F.3d 770, 775 (9th Cir. 2020) (quoting *In re Prudential*

5    *Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 367–68 (3d Cir. 2001)).

6           Here, the Court stated in its Final Judgment: "The Court should retain jurisdiction to

7    monitor and oversee implementation of the settlement as set forth in the settlement agreement."

8    ECF No. 346. This is sufficient to establish the Court's jurisdiction over this motion. *See*

9    *Kokkonen*, 511 U.S. at 381 (courts have jurisdiction to enforce settlement agreement "if the parties'

10   obligation to comply with the terms of the settlement agreement ha[s] been made part of the order

11   of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the

12   settlement agreement) or by incorporating the terms of the settlement agreement in the order.").

13          The pending appeal by the Intervenors does not affect the Court's jurisdiction in these

14   circumstances. Although, as a general matter, "an appeal to the circuit court deprives a district

15   court of jurisdiction as to any matters involved in the appeal," that rule "should not be applied in

16   those cases where the district court, as here, has a continuing duty to maintain a status quo, and

17   where, as the days pass, new facts are created by the parties and the maintenance of the status quo

18   requires new action." *Hoffman by & for N.L.R.B. v. Beer Drivers & Salesmen's Local Union No.*

19   *888*, 536 F.2d 1268, 1276 (9th Cir. 1976); *see also Oceana, Inc. v. Ross*, 359 F. Supp. 3d 821, 827

20   (N.D. Cal. 2019) ("[A]lthough the Court does not have jurisdiction to decide the merits of the issue

21   that is currently on appeal, 'a district court has continuing jurisdiction in support of its judgment,

22   and until the judgment has been properly stayed or superseded, the district court may enforce it.'"

23   (quoting *Armstrong v. Brown*, 857 F.Supp.2d 919, 948–49 (N.D. Cal. 2012))); *E. Bay Sanctuary*

24   *Covenant v. Barr*, 391 F. Supp. 3d 974, 978 (N.D. Cal. 2019), *aff'd*, 964 F.3d 832 (9th Cir. 2020),

25   *and aff'd sub nom. E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962 (9th Cir. 2020) (noting

26   that this "longstanding exception to the divestiture rule" is codified via Fed. R. Civ. P 62(d)). In

27   this case, the Settlement Agreement became effective on January 28, 2023, and it has not been

28   stayed. *See supra*. Maintenance of the status quo thus means ensuring that the Department is

following the Agreement. Doing so will not alter the status of the Parties nor reflect on the issues raised in the appeal. *See E. Bay Sanctuary Covenant*, 391 F. Supp. 3d at 978–79 (collecting cases).

The Parties' Settlement Agreement provides that this Court "shall retain jurisdiction only to review claims set forth" in the applicable section. Agreement § V.A.  One of the enumerated "claims permissible to enforce this Agreement" is "a claim alleging that Defendants have materially breached Paragraph IV.A.1 . . . of the Agreement by failing to effectuate relief within the prescribed time periods for any individual who is entitled to receive relief pursuant those Paragraphs." *Id.* § V.B.2. This motion is such a claim.

The Agreement further provides that "the Court shall retain jurisdiction only to order the relief explicitly specified for each particular claim and only where Defendants have not provided that relief pursuant to the procedures specified in this Section." *Id.* § V.A. As detailed *supra*, despite the Parties' good-faith participation in a meet-and-confer process, the Department has not provided or agreed to provide the contemplated remedy for its admitted breach of Section IV.A.1—that is, a date certain by which each and every member of the automatic relief group will receive Full Settlement Relief. That is the remedy that Plaintiffs are seeking in this motion.

**B.    Plaintiffs Are Entitled to Relief Under Section V.B.2 of the Agreement**

**i.    Defendants Have Materially Breached Section IV.A.1**

Defendants concede that they have materially breached Section IV.A.1 by failing to deliver Full Settlement Relief to all members of the automatic relief group by the deadline of January 28, 2024. Ex. 17 at 1 (DOJ's Mar. 1 letter).

**ii.    Defendants Have Not Provided the Contemplated Relief**

The primary form of relief contemplated by the Agreement for a violation of Section IV.A.1 is for the Department to "promptly provide Full Settlement Relief to each affected individual." Agreement § V.B.2.i. As detailed *supra*, the Department did not even provide a proposal for a relief timeline until the day before the instant motion was filed, and that proposal failed to include all members of the automatic relief group. The timeline offered hours before the instant motion was filed was described by the Department and DOJ as "aspirational." Further delay and uncertainty are unacceptable.

1        Setting a firm, final date for the delivery of relief is crucial for affected Class Members.

2  This Court has already recognized the gravity of the harm that Class Members face as a result of

3  the Department's delay: over *three years ago*, this Court observed, "Here, time is of the essence.

4  We don't enjoy the luxury of seeking simply to forestall harm — it descended upon the class long

5  ago." ECF No. 146 at 15.

6        Now, more than 16 months after the Court's final approval of settlement, tens of thousands

7  of Class Members continue to wait for relief. For these borrowers, the timely delivery of Full

8  Settlement Relief on January 28, 2024—loan cancellation, credit repair, and refunds—was not a

9  luxury but a necessity. In addition to the real and significant harms discussed above, Class

10  Members struggle with the bitterly ironic proposition that, under a Settlement intended to remedy

11  years of unjustified and inexplicable delay, they must now wait indefinitely for the Department to

12  deliver relief. For many borrowers, this added uncertainty and delay is heartbreaking:

- "I have paid thousands of dollars over more than a decade toward worthless credits from Katherine Gibbs/SBI. Learning that my federal loans would be forgiven and refunded under this settlement was a great relief, but now the wait to see whether and when my relief will actually arrive is causing me renewed stress. Being able to finally put this matter to rest would help me sleep better at night." Ex. 21 ¶ 20 (Dadich Decl.).

- "These loans from the University of Phoenix for a worthless education have been a burden on me for a decade now. When I heard that they would be discharged, I thought the stress would finally be over. But instead, I now have a new source of stress, wondering if or when the government is going to keep its promise." Ex. 24 ¶ 20 (McDonald Decl.).

- "All I want is a chance of undoing some of the damage and harm that DeVry caused to my family and me and to get the relief that I am entitled to get. I am exhausted from worrying and stressing about finances. I am exhausted from the dark thoughts that come and go while remembering I have a family I am fighting to provide for." Ex. 25 at 17 (Mundy Decl.).

24        Requiring the Department to complete the effectuation of relief in a timely manner will

25  also resolve the servicing errors that Class Members have experienced—with respect to both

26  unlawful collections and inaccurate credit reporting. *See, e.g.*, Ex. 28 ¶¶ 19–23 (Shaw Decl.); Ex.

27  27 ¶¶ 9–11 (Sams Decl.). Delivering Full Settlement Relief in its entirety will mean that Class

Members' loans will be off the servicers' books and the servicers will have completed the process of clearing their credit.

Class Members need the effectuation of Full Settlement Relief to be completed so that they can move on with their lives. Under the circumstances, members of the automatic relief group cannot wait for the Department to gather "additional information" for some unspecified period of time before it commits to a new deadline for *all* group members. Ex. 18 at 2 (DOJ's Mar. 8 letter).

Therefore, pursuant to Section V.B.2.i of the Agreement, Plaintiffs request that this Court issue "an order requiring Defendants to promptly provide Full Settlement Relief to each affected individual on a schedule set by the Court." Plaintiffs respectfully propose that such an order would be best effectuated if the Court were to designate a single individual within the government to oversee the Department's compliance—in particular, an individual who has not previously been involved in overseeing the Department's botched handling of the Settlement. That person could be, for example, the student loan ombudsperson from either Federal Student Aid, *see* 20 U.S.C. § 1018(f), or the Consumer Financial Protection Bureau, *see* 12 U.S.C. § 5535.

### iii.   Defendants Should Provide Detailed Reports on Their Progress

Section V.B.2.ii of the Agreement provides that, "[i]n the event of" the Court issuing an order imposing a relief timeline on the Department, "Defendants will report to Plaintiffs' Counsel and the Court on its progress of issuing relief, as provided herein, to affected Class Members." Plaintiffs request that this Court, should it impose a schedule under Section V.B.2.i, also set parameters for Defendants' reporting requirements under this subsection.

Specifically, Plaintiffs request that the Court order the Department to file such reports at 14-day intervals, beginning 14 days after this Court's order on this motion. These reports should include (but need not be limited to) the numbers of Class Members in the automatic relief group who:

1.   Are confirmed to have received each of the following categories of relief:

  a.   Discharges of all Relevant Loan Debt;

  b.   All refunds to which they are entitled; and

     c.  A request sent from their current loan servicer(s) to all credit reporting agencies to remove the credit tradeline for all Relevant Loan Debt from their credit reports.

2.    Are confirmed to have *not* received each of the following categories of relief:

     a.  Discharges of all Relevant Loan Debt;

     b.  All refunds to which they are entitled; and

     c.  A request sent from their current loan servicer(s) to all credit reporting agencies requesting removal of the credit tradeline for all Relevant Loan Debt from their credit reports.

3.    Have not had their relief status confirmed by the Department as to each of the following categories of relief:

     a.  Discharges of all Relevant Loan Debt;

     b.  All refunds to which they are entitled; and

     c.  A request sent from their current loan servicer(s) to all credit reporting agencies requesting removal of the credit tradeline for all Relevant Loan Debt from their credit reports.

4.    For Class Members in categories (2) and (3), including all subcategories, how many Class Members are serviced by each of the federal loan servicers.

5.    For Class Members in categories (2)(a) and (3)(a), how many are confirmed by the Department to currently have their Relevant Loan Debt (including consolidation loans that contain Relevant Loan Debt) in a status of forbearance, stopped collections, or $0 monthly payments under any of the available income-driven repayment plans.

     a.  For any Class Members in categories (2)(a) and (3)(a) who are *not* currently in such status, how many of them are serviced by each of the federal loan servicers.

The reports should also include a description of the steps the Department has taken to verify that these reported numbers are accurate. That description and the veracity of the data should be attested to under oath by a senior Department official, such as the Chief Operating Officer of Federal Student Aid or another senior official with supervisory authority over the process of effectuating settlement relief. At Plaintiffs' request, the Department should be required provide to Plaintiffs' Counsel (with appropriate confidentiality safeguards) the names, contact information,

and current servicer of Class Members in any of the above categories so that Plaintiffs can provide updated information directly to Class Members and/or seek confirmation of their relief status.

### C.  Plaintiffs' Counsel Are Entitled to Reasonable Fees and Costs

The Settlement Agreement provides that, "[s]hould Plaintiffs prevail on [a] claim" that Defendants have violated Section IV.A.1 of the Agreement, "Defendants shall also be liable for Plaintiffs' reasonable attorneys' fees and costs incurred in bringing the claim." Agreement § V.B.2.i. Should this Court grant the instant motion, Plaintiffs request that the Court order Defendants to pay Plaintiffs' reasonable fees and costs, in an amount to be determined.

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order requiring Defendants to (i) provide Full Settlement Relief to each Class Member in the automatic relief group by May 31, 2024, or such other date as the Court deems appropriate; (ii) satisfy reporting requirements consistent with that goal as set forth above; and (iii) pay Plaintiffs' Counsel's reasonable fees and costs incurred in bringing this motion.


Dated: March 19, 2024                    Respectfully submitted,

                                          *Rebecca C. Eisenbrey*

                                          Eileen M. Connor (SBN 248856)
                                          econnor@ppsl.org
                                          Rebecca C. Ellis (*pro hac vice*)
                                          rellis@ppsl.org
                                          Rebecca C. Eisenbrey (*pro hac vice*)
                                          reisenbrey@ppsl.org
                                          PROJECT ON PREDATORY STUDENT
                                          LENDING
                                          769 Centre Street, Suite 166
                                          Jamaica Plain, MA 02130
                                          Tel.: (617) 390-2669

                                          Joseph Jaramillo (SBN 178566)
                                          HOUSING & ECONOMIC RIGHTS
                                          ADVOCATES
                                          3950 Broadway, Suite 200
                                          Oakland, California 94611

Tel: (510) 271-8443
Fax: (510) 280-2448

*Attorneys for Plaintiffs*