BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

STUART J. ROBINSON
Senior Counsel
BENJAMIN T. TAKEMOTO
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 532-4252
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| THERESA SWEET et al., <br><br> Plaintiffs, <br><br> v. <br><br> MIGUEL CARDONA, *in his official capacity as Secretary of the United States Department of Education*, and <br><br> THE UNITED STATES DEPARTMENT OF EDUCATION, <br><br> Defendants. | Case No. 19-cv-03674-WHA <br><br> **DEFENDANTS' NOTICE IN ADVANCE OF HEARING** <br><br> **HEARING DATE: September 26, 2024** <br><br> (Class Action) <br> (Administrative Procedure Act Case) |

The Department of Education respectfully submits this notice in advance of the upcoming hearing (1) to provide a status update on relief to class members who attended schools listed in Exhibit C of the Settlement Agreement and (2) to propose a resolution to a dispute concerning how the Department will effectuate full settlement relief to class members in the streamlined decision groups (i.e., class members who are owed decisions on their borrower defense applications by certain dates listed in the Settlement Agreement). *See* Settlement Agreement ¶¶ IV.C, ECF No. 246-1.

**I.   Status Update for Exhibit C Class Members**

Since the last hearing, the Department and servicers have worked tirelessly to substantially comply with the August 31, 2024, deadline to provide full settlement relief to class members who attended Exhibit C schools. The Department is pleased to report the following approximate numbers as of September 25, 2024:

1. 99.8% of Exhibit C class members have received full discharges.
2. 98.03% of Exhibit C class members have been sent full refunds via check or EFT.

**II.  Streamlined Decision Group Relief Dispute**

Over the past few months, the Department has prioritized effectuating full settlement relief for Exhibit C class members, pursuant to the Settlement Agreement and the Court's orders. At the same time, the parties have discussed options for effectuating full settlement relief for members of the streamlined decision groups who are entitled to such relief—especially members in these groups with mixed consolidation loans. *See* Settlement Agreement ¶¶ IV.C. In particular, the parties have focused on members of Decision Group One (i.e., members who submitted applications between January 1, 2015, and December 31, 2017), *id.* ¶ IV.C.3.i. Members of that group who are entitled to full settlement relief should have received it by July 28, 2024, at the latest. *See id.* ¶ IV.C.9. While the Department believes that most of the approximately 31,400 Decision Group One borrowers who are entitled to relief have received their full relief, the Department is aware of approximately 3,500 borrowers who may not have received full settlement relief and is working to determine whether there are additional borrowers who have not received refunds owed or updated credit reporting.

On August 26, 2024, Plaintiffs wrote a letter to the Department that alleged a material breach of the Settlement Agreement with respect to members of Decision Group One. Plaintiffs asserted in part that

the Department failed to effectuate full settlement relief by July 28, 2024, for all Decision Group One members who are entitled to such relief, and proposed that the Department take the same approach for effectuating relief that it had for the Exhibit C population, including full discharge of current mixed consolidation loans. The Department responded on September 9, 2024, acknowledging that for Decision Group One members who are entitled to, but have not yet received, full settlement relief pursuant to Paragraph IV.C.9 of the Settlement Agreement, the Department is in material breach of the Agreement. The Department explained that the primary cause of the breach was the same as that which delayed full settlement relief to Exhibit C class members: mixed consolidation loans for which effectuating relief is particularly complex. The Department further explained, as it had in previous discussions with Plaintiffs, that it was working on an approach to provide full settlement relief to members of this population who are entitled to such relief, consistent with the Court's May 24, 2024, order requiring refund checks. The Department proposed the approach described below. The parties met and conferred on September 13, 2024, during which Plaintiffs continued to advocate for the more simplified Exhibit C approach for Decision Group One.

The Settlement Agreement sets forth an extended process for the parties to litigate disputes related to allegations of material breach. *See* Settlement Agreement ¶ V. However, the Department has agreed to waive those provisions with respect to Plaintiffs' claim that the Department failed to effectuate full settlement relief for Decision Group One so that the Court may resolve their dispute at the upcoming hearing. By resolving this dispute then, the Court would allow the Department to more quickly implement the ordered process and provide relief to class members.[1]

**III.    The Department's Proposal**

Like many Exhibit C borrowers, many decision group borrowers have consolidation loans. And as the Department has previously explained, discharging and providing refunds for payments on mixed consolidation loans—that is, consolidation loans made up of loans that are eligible for relief under the

---

[1] During the September 13, 2024, meet and confer, the parties agreed that it would be beneficial to raise this dispute to the Court during the September 26, 2024, hearing. The Department reached out to Plaintiffs on September 24, 2024, suggesting that the parties submit a joint filing setting forth each of their proposals on how to effectuate relief to Decision Group One. Plaintiffs declined, stating that it would be more efficient to discuss this issue at the hearing.

Settlement Agreement and loans that are not eligible—involve complex and time-consuming processes. *See* Defs.' Resp. Pls.' Mot. Enforce 7–8, ECF No. 403. For the decision groups, loans that are eligible for relief are those that are the subject of an approved borrower defense application. *See* Settlement Agreement § IV.C. To address the mixed consolidation loan problem for the decision groups and balance the obligation to discharge only eligible debt under the settlement with the need to effectuate relief as soon as possible, the Department has developed an approach that is more tailored to the eligible loan debt, but admittedly more complex than the approach that the Department has been using for Exhibit C borrowers. The approach involves, for mixed consolidation loans, calculating a ratio of eligible to ineligible debt based on original loan disbursement amounts and using that ratio to discharge only the eligible portion of the loan's principal balance. The approach, for mixed consolidation loans that do not already have a zero balance, is summarized as follows:

1. The Department will calculate the percentage of eligible to ineligible debt based on the original loan disbursement amounts.
2. Servicers will apply that ratio to the principal amount of the borrower's terminal consolidation loan to estimate the amount of eligible debt in that loan and discharge that amount of the principal. Servicers will waive all accrued interest, whether related to eligible or ineligible debt. The borrower's new terminal loan balance will therefore reflect only the portion of the principal of the terminal loan that corresponds to the borrower's ineligible debt.
3. All borrower payments made on both intermediary and terminal loans, which are reflected in servicer databases or NSLDS, will be refunded in full via check or EFT. There will be no reduction in the refund amount paid to the borrower due to reallocation of payments, consistent with the Court's May 24, 2024, order.
4. For credit reporting, the tradelines for all relevant intermediary consolidation loans will be deleted. For the terminal loan, which now contains only ineligible debt, historical negative reporting will be removed, or if not possible, the tradeline will be deleted.

*Example*: Borrower A made $5,000 in payments across all *Sweet*-related intermediate mixed consolidation loans and their terminal loan. Borrower A's terminal loan is $12,000, reflecting a principal of $10,000 and $2,000 in interest. The Department determines that 60% of the borrower's total

disbursements come from loans related to *Sweet*-eligible schools (i.e., schools that are the subject of an approved borrower defense application) and 40% to non-*Sweet*-eligible disbursements. Of the $2,000 interest, $500 was accrued on *Sweet*-eligible debt, and $1,500 was accrued on non-*Sweet* eligible debt.

*Outcome*: Borrower A receives $5,000 in check/EFT refunds. For the terminal loan, 60% (or $6,000) of the principal is discharged, because that is the percentage of the loan reflected by *Sweet*-eligible debt. 40% (or $4,000) of the terminal loan principal remains and will be owed by the Borrower A. All $2,000 in historically accrued interest (both *Sweet* and non-*Sweet* related) is waived.

The Department has already taken steps to set up this process: it sent preliminary instructions to the servicers, received feedback from servicers, and determined that a formal change request is not necessary for this process. The Department estimates that, once the servicers have completed the implementation of this new process, including necessary coding, testing, training of their staffs, and monitoring, this process could be fully operationalized by the servicers in roughly eight to ten weeks. In the interim, the Department anticipates that the servicers would complete at least some of the relief manually. Assuming that the Department's approach is approved within the next week, the Department estimates that a substantial majority of Decision Group One members would receive full relief under this process by January 31, 2025, with the remainder complete by March 31, 2025. The Department further notes that, if approved by the Court, this process can be utilized for the remaining Decision Groups, who will benefit from the process already being established.

As noted above, this approach is more tailored to discharging only the eligible loan debt than the approach the Court approved for Exhibit C borrowers. It would not have been practicable to use this kind of approach for the Exhibit C borrowers, however, because the volume of borrowers still needing to receive full settlement relief was much greater, and there was only one deadline for the Exhibit C group, which had already passed. In contrast, because the Decision Group deadlines are iterative, *see* Settlement Agreement ¶ IV.C.3, and because each Decision Group is smaller than Exhibit C (e.g., Decision Group One comprises approximately 31,400 borrowers who are entitled to relief, whereas Exhibit C comprises 195,993 borrowers), the Department can tailor relief to the eligible loan debt in a way that was not practicable for Exhibit C borrowers. In addition, the provision of the Settlement Agreement that supported the Exhibit C approach, § IV.A.5, is particular to the Exhibit C group and does not apply to the Decision

1  Group.

2  Nor would the Department's timeline be substantially different from Plaintiffs'; Plaintiffs have requested that the Department provide relief to Decision Group One members under the Exhibit C approach by November 30, 2024, whereas the Department aims to provide relief to a substantial majority of Decision Group One members under its approach by January 31, 2025, with a tail for the most complex or unusual cases to be complete by March 31, 2025. The Department also notes that Plaintiffs were previously willing to agree to the process proposed here. *See* Letter from Rebecca Ellis et al. (March 1, 2024), ECF No. 397-3 (proposing that the Department "discharge[e] the full balance of consolidation loans *where servicers are unable to calculate the portion of the balance attributable to Exhibit C loans*") (emphasis added).

Dated: September 25, 2024

Respectfully Submitted,

BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Benjamin Takemoto*
STUART J. ROBINSON
Senior Counsel
BENJAMIN T. TAKEMOTO
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*