BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

STUART J. ROBINSON
Senior Counsel
BENJAMIN T. TAKEMOTO
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 532-4252
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| THERESA SWEET, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>MIGUEL CARDONA, *in his official capacity as Secretary of the United States Department of Education*, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>                    Defendants. | Case No. 19-cv-03674-WHA<br><br>**DEFENDANTS' MOTION TO APPROVE SETTLEMENT RELIEF PROCESS**<br><br>**HEARING DATE:** December 12, 2024<br><br>(Class Action)<br>(Administrative Procedure Act Case) |

*Sweet v. Cardona*, No. 19-cv-3674, Defs.' Mot. Approve Settlement Relief Process

At issue in this motion is the question of how to proceed with effectuating full settlement relief for borrowers in Decision Group 3. *See* Status Conf. Tr. (instructing Defendants "to file a formal motion that lays out the new procedure and tries to explain why it would be more economical and why . . . it can be implemented in time to still meet those deadlines") (Sept. 26, 2024); Civil Minutes, ECF No. 434. As previewed in Defendants' September 25, 2024, Notice, ECF No. 433, and as discussed at the September 26, 2024, status conference, the Department proposes an alternative approach to that used for Exhibit C members and Decision Groups 1 and 2 members. As discussed in more detail below, the Department's proposal would provide more tailored relief to members of Decision Group 3. Under this new approach, the Department would discharge only the portion a mixed consolidation loan's principal balance attributable to eligible debt, based on a ratio of eligible to ineligible debt. The Department would then effectively waive all accrued interest, regardless of its relation to eligible debt.

The Department believes that it is possible to implement this process by July 28, 2025, which is when settlement relief for all relevant members of Decision Group 3 should be issued. And, significantly, this approach would provide full settlement relief to members of Decision Group 3 without disbursing the approximately $55 million in additional ineligible relief that would result from the Exhibit C approach. As the circumstances warranting the Exhibit C approach are not present here, a more tailored approach is appropriate. The Court should approve the Department's alternative approach.

## I.    Background and the Department's Proposal

The Settlement Agreement sets forth various deadlines to provide relief to various groups of borrowers. Over the past year, the Court and parties have focused on the Exhibit C group, which consists of class members whose loans are associated with schools listed in Exhibit C of the Settlement Agreement. These class members are entitled to automatic full settlement relief for loans associated with Exhibit C schools within one year of the Effective Date of the Settlement Agreement. *See* Settlement Agreement ¶ IV.A.1, ECF No. 246-1. As the Court is aware, the population of the Exhibit C Group is large, consisting of approximately 200,000 individuals. See Cordray Decl. ¶ 29, ECF No. 403-1.

For all other class members, the Agreement requires the Department to decide their borrower defense applications, according to certain streamlined procedures and timelines. *See id.* ¶ IV.C. The timelines are based on when an application was submitted, with the oldest applications being decided first,

and broken into five groups. The Department refers to these groups as Decision Groups 1, 2, 3, 4, and 5, corresponding to the numbers listed in the Settlement Agreement. The deadlines for issuing decisions for the five groups are staggered by 6 months, beginning July 28, 2024, and ending January 28, 2027. *Id.* ¶ IV.C.3. Class members whose applications are approved or who do not receive a timely decision are entitled to full settlement relief for the relevant loans—that is, loans that are the subject of an approved borrower defense application. *Id.* ¶ IV.C.8. Full settlement relief must be effectuated within one year after the date of the decision on the application. *Id.* ¶ IV.C.9.

Finally, the Settlement Agreement provides that individuals who submitted a borrower defense application after the Agreement's Execution Date (i.e., the date the class closed), but before the Final Approval Date, must receive a decision on their borrower defense application no later than 36 months after the agreement's Effective Date. *See id.* ¶ IV.D.1. According to the settlement, these individuals are "post-class applicants." *Id.* The Department refers to this group as the Post-Class Group. If a post-class applicant does not receive a timely decision, that applicant is entitled to full settlement relief, and the Department shall provide the post-class applicant with notice that the applicant will receive this relief within 60 calendar days following the expiration of the deadline for receiving a decision. *Id.* ¶ IV.D.2. If a post-class applicant does receive a timely decision, and that decision approves their borrower defense application such that the post-class applicant is entitled to relief, the Department must effectuate that relief no later than one year after providing the applicant written notice of the settlement relief decision. *Id.* ¶ IV.D.3.

This past summer, as the July 31, 2024, deadline approached for providing relief to a certain number of Exhibit C members according to a revised schedule set by the Court, the Department informed the Court at a June 13, 2024, hearing that it was unable to meet the Exhibit C deadline. The Department sought the Court's guidance as between providing relief from the July 31, 2024, deadline or permitting the Department to take a more expedited approach, known as the Exhibit C approach, that would provide timely relief. *See* Hr'g Tr. 13–14 (June 13, 2024); Defs.' Notice (July 11, 2024), ECF No. 421. The Exhibit C approach was easier to implement because it included discharging the terminal consolidation loan in full, but that meant discharging some ineligible debt. The Court approved and ordered the Exhibit C approach, and the Department began to implement it. *See id.*; *see also* Minute Entry, ECF No. 416; Defs.'

*Sweet v. Cardona*, No. 19-cv-3674, Defs.' Mot. Approve Settlement Relief Process

2

Notice (July 11, 2024), ECF No. 421.

Having applied the Exhibit C approach, the Department has come into substantial compliance with respect to its obligations to Exhibit C class members. *See* Defs.' Notice 1 (Sept. 25, 2024); Hr'g Tr. 6 (Sept. 26, 2024) (Plaintiffs acknowledging that Defendants are in substantial compliance). However, at the September 26, 2024, hearing, the Department alerted the Court that the same complexities surrounding mixed consolidation loans existed with respect to the Decision and Post-Class Groups. For both groups, loans that are potentially eligible for relief are those that are the subject of a borrower defense application, but many of these borrowers have consolidation loans made up of eligible loans and ineligible loans. And, with the Decision Group 1 deadline of July 28, 2024, having passed, the Department indicated that it was aware of approximately 3,500 Decision Group 1 members who may not have received timely relief.

To avoid further delay and to set up a process for future deadlines, the Department waived the provisions of the Settlement Agreement that would permit the Department to litigate the Decision Group 1 material breach. Instead, the Department proposed an alternative, more tailored approach to provide relief to borrowers with mixed consolidation loans. Unlike the Exhibit C approach, which involves discharging the entire terminal loan, the alternative approach involves (again, for mixed consolidation loans) calculating a ratio of eligible to ineligible debt and using that ratio to discharge only the eligible portion of the loan's principal balance. The approach, for mixed consolidation loans that do not already have a zero balance, is summarized as follows:

    a.  The Department will calculate the percentage of eligible to ineligible debt based on the original loan disbursement amounts.

    b.  Servicers will apply that ratio to the principal amount of the borrower's terminal consolidation loan to estimate the amount of eligible debt in that loan and discharge that amount of the principal. Servicers will waive all accrued interest, whether related to eligible or ineligible debt. The borrower's new terminal loan balance will therefore reflect only the portion of the principal of the terminal loan that corresponds to the borrower's ineligible debt.

    c.  All borrower payments made on both intermediary and terminal loans, which are reflected in servicer databases or the National Student Loan Data System ("NSLDS"), will be refunded in full via check or EFT. There will be no reduction in the refund amount paid to the borrower

*Sweet v. Cardona*, No. 19-cv-3674, Defs.' Mot. Approve Settlement Relief Process

3

1    due to reallocation of payments, consistent with the Court's May 24, 2024, order. ECF No.

2    414.

3    d.    For credit reporting, the Department and/or its servicers will instruct the credit reporting

4    agencies to delete the tradelines for all relevant intermediary consolidation loans. For the

5    terminal loan, which now contains only ineligible debt, the Department and/or its servicers will

6    instruct the credit reporting agencies to remove historical negative reporting, or if not possible,

7    to delete the tradeline.

8    *Example*: Borrower A made $5,000 in payments across all *Sweet*-related intermediate mixed

9    consolidation loans and their terminal loan. Borrower A's terminal loan is $12,000, reflecting a principal

10   of $10,000 and $2,000 in interest. The Department determines that 60% of the borrower's total

11   disbursements come from loans related to *Sweet*-eligible schools (i.e., schools that are the subject of an

12   approved borrower defense application) and 40% to non-*Sweet*-eligible disbursements.

13   *Outcome*: Borrower A receives $5,000 in check/EFT refunds. For the terminal loan, 60% (or

14   $6,000) of the principal is discharged, because that is the percentage of the loan reflected by *Sweet*-eligible

15   debt. 40% (or $4,000) of the terminal loan principal remains and will be owed by  Borrower A. All $2,000

16   in historically accrued interest (both *Sweet* and non-*Sweet* related) is effectively waived.

17   The Department has shared instructions for implementing this approach with the servicers, which

18   have indicated that they are able to implement them, subject to certain assumptions recently provided to

19   the Department. *See* Juengst Decl. ¶¶ 28, 30.

20   After considering this approach at the September hearing, the Court ordered the Department to

21   continue to apply the Exhibit C approach for members of Decision Groups 1 and 2, whose respective

22   deadlines for receiving full settlement relief are July 28, 2024, and January 28, 2025. *See* Civil Minutes

23   (Sept. 26, 2024). However, in light of the potential cost savings from applying the alternative approach,

24   the Court ordered further briefing on which approach to apply to the subsequent Decision and Post-Class

25   Groups. *See id.*

26

27

28

*Sweet v. Cardona*, No. 19-cv-3674, Defs.' Mot. Approve Settlement Relief Process

4

## II.    The Court Should Approve the Department's Alternative, More Fiscally Responsible Approach for Decision Group 3.

The Department's alternative approach is preferable to the Exhibit C approach for Decision Group 3[1] because it is both feasible and more tailored to eligible loan debt based on the terms of the Settlement Agreement. The Department has analyzed the cost of implementing the two approaches with respect to Decision Group 3. Based on that analysis, the Department estimates that the Exhibit C approach would result in approximately $153 million in discharges on terminal loans, compared to approximately $98 million in discharges on terminal loans using the Department's alternative approach. Although 26 percent of Decision Group 3 is eligible for discharge through other programs such as Public Service Loan Forgiveness, thereby making the effective cost differential less, the Department is still saving tens of millions of dollars as compared to the Exhibit C approach. These savings, *see* Juengst Decl. ¶ 26, strongly militate in favor of the alternative approach. Moreover, the provision of the Settlement Agreement that supported the Exhibit C approach, § IV.A.5 ("If the Department's borrower defense or loan data includes conflicting evidence which raises a substantial question as to whether a Class Member's Relevant Loan Debt is associated with a program, school, or School Group listed in Exhibit C, the question will be resolved in favor of the Class Member (*i.e.*, in favor of granting relief)."), is particular to the Exhibit C group and does not apply to any other groups, including Decision Group 3.

In terms of feasibility, the Department and servicers are committed to building the framework for applying the alternative approach and making a good faith attempt to using it to deliver full settlement relief to substantially all Decision Group 3 borrowers with mixed consolidation loans by July 28, 2025. *See* Juengst Decl. ¶ 32. As referenced above, the Department has already shared instructions with and received feedback from the servicers, who have indicated that they are capable of implementing this approach, subject to certain assumptions. *Id.* ¶ 28, 30.[2]

---

[1] The Department's proposal here focuses on Decision Group 3, not Decision Groups 4 and 5 or the Post-Class Group, and only moves for permission to use the alternative approach for Decision Group 3, given the change of Administration taking place in January 2025. The Department also notes that no material breach has been asserted with respect to any Decision Group other than Decision Group 1, and that the next deadline for full settlement relief after Decision Group 3 is not until January 28, 2026.

[2] The servicers have, however, recently provided additional information to the Department that changes the Department's previous determination that a formal change request was not necessary. Juengst Decl. ¶ 31.

*Sweet v. Cardona*, No. 19-cv-3674, Defs.' Mot. Approve Settlement Relief Process

To ensure that borrowers in Decision Group 3 receive timely relief before July 28, 2025, and in light of the fact that the alternative approach is new and untested, the Department further proposes that 150 days beforehand (i.e., by February 28, 2025), the Department will determine whether servicers will be able to timely effectuate relief for eligible Decision Group 3 borrowers with mixed consolidation loans using the alternative framework.  *See* Juengst Decl. ¶ 32. If the Department determines that substantial compliance with the Agreement's deadline is unlikely using the alternative approach, it will alert the Court of that determination, and the Court can then order the Department to instruct the servicers to employ the Exhibit C relief framework, which would provide sufficient time to ensure that relief is delivered to substantially all eligible class members in Decision Group 3 by July 28, 2025. *See* Juengst Decl. ¶ 32. The Department also notes that any borrower may appeal to the Ombudsman if they believe that relief is not complete or is incorrectly calculated.

In sum, the Department's alternative approach is not only feasible, it is far more fiscally prudent than the Exhibit C approach, which was developed in a different context, involving a larger population with a single impending deadline that had already been extended once. The Department emphasizes that under its proposal, Decision Group 3 borrowers will receive *at least* as much relief as that which they are entitled to pursuant to the Settlement Agreement, and the Department has devised a backstop to ensure the timely delivery of full settlement relief. The Court should approve the alternative approach.

Dated: November 7, 2024

Respectfully Submitted,

BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*Benjamin Takemoto*

STUART J. ROBINSON
Senior Counsel
BENJAMIN T. TAKEMOTO
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*
***Sweet v. Cardona***, No. 19-cv-3674, Defs.' Mot. Approve Settlement Relief Process
6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Sweet v. Cardona*, No. 19-cv-3674, Defs.' Mot. Approve Settlement Relief Process

7