BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

STUART J. ROBINSON
Senior Counsel
BENJAMIN T. TAKEMOTO
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 532-4252
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| THERESA SWEET et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MIGUEL CARDONA, *in his official capacity as Secretary of the United States Department of Education*, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>　　　　　Defendants. | Case No. 19-cv-03674-WHA<br><br>**DECLARATION OF PHILLIP JUENGST**<br><br>**HEARING DATE:** December 12, 2024<br><br>(Class Action)<br>(Administrative Procedure Act Case) |

I, Phillip Juengst, do declare under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and accurate:

1. I am the Deputy Chief Operating Officer for Student Experience and Aid Delivery at the office of Federal Student Aid ("FSA") in the United States Department of Education ("Department").

2. I certify that I am duly qualified and authorized by the Department to make the statements contained in this Declaration about the implementation of the settlement agreement in this case. The statements contained herein are based on either my personal knowledge as an employee of the Department or on information reported to me by Department officials who created and/or are familiar with the pertinent records and communications with third-parties who are involved in the loan-servicing processes. Some of the statements contained herein are based on forecasts or predictions, which reflect my or other Department officials' good-faith assessments that are inherently subject to unknown future developments.

3. As the Deputy Chief Operating Officer, I oversee the management of loan servicing operations and discharge programs at FSA. Through my duties in this role and my discussions with our Department colleagues working on borrower defense issues, I am familiar with the Department's efforts to fulfill the Department's obligations set forth in the Settlement Agreement agreed to in this case

I. **Background on Borrowers Entitled to Relief Under the Settlement Agreement**

4. The *Sweet v. Cardona* Settlement generally divides borrower defense applicants into three groups. *See* Settlement Agreement ¶ IV.

5. The first group consists of the approximately 196,000 class members who submitted borrower defense applications to the Department for relief from federal student loans they took out to attend one of the 151 schools identified in the Agreement's Exhibit C (as amended) (often referred to as "Exhibit C borrowers").

   a. As explained to the Court, this provision of the Agreement reflects the parties' determination that borrowers "associated with those schools should be provided

presumptive relief under the settlement due to strong indicia regarding substantial misconduct by the listed schools, whether credibly alleged or in some instances proven, and the high rate of class members with applications related to the listed schools." ECF No. 246 at 17-18.

    b.    Under the Agreement, these class members are entitled to a discharge of their remaining student loans associated with the relevant Exhibit C school, a refund of amounts already paid to the Department toward those loans, and corresponding credit reporting relief. *See* Settlement Agreement ¶¶ II.S, IV.A. Such "full settlement relief" was required within one year after the Effective Date of the Agreement, i.e., by January 28, 2024. *Id*. ¶ IV.A.

6.    The second group consists of the remaining class members who submitted borrower defense claims on or before the date of the Agreement's execution. The Department refers to these groups as Decision Group 1, 2, 3, 4, and 5, corresponding to the numbers listed in the Settlement Agreement. The parties have referred to these class members as "Decision Group borrowers."

    a.    The Agreement provides that these class members will receive a streamlined adjudication within set timeframes—the first such deadline for adjudication being July 28, 2024, at the latest—and with certain presumptions in the borrower's favor. *See id*. ¶ IV.C.

    b.    The Agreement also provides that if the Department fails to meet the negotiated timetable for resolution of an application, it will provide that applicant with full relief (including both a discharge of remaining balances and a refund of past payments made to the Department). *See id*. ¶ IV.C.8.

    c.    The Agreement also provides that, for class members in the Decision Groups who receive decisions entitling them to settlement relief, the Department shall provide

full settlement relief no later than one year after the date that Defendants provide that Class Member Written Notice of the settlement relief decision. *See id.* ¶ IV.C.9.

d. Decision Group 1 contains 33,172 members. Depending on when the Department provided written notice of the settlement relief decision, members in this group who were entitled to full settlement relief after receiving initial settlement relief decisions should have received such relief by July 28, 2024, at the latest.

e. Decision Group 2 contains 11,553 members. Depending on when the Department provided written notice of the settlement relief decision, members in this group who were entitled to full settlement relief after receiving initial settlement relief decisions should receive such relief by January 28, 2025, at the latest.

f. Decision Group 3 contains 13,604 members. Depending on when the Department provides written notice of the settlement relief decision, members in this group who are approved for full settlement relief after receiving initial settlement relief decisions should receive such relief by July 28, 2025, at the latest.

g. Decision Group 4 contains 9,471 members. Depending on when the Department provides written notice of the settlement relief decision, members in this group who are approved for full settlement relief after receiving initial settlement relief decisions should receive such relief by January 28, 2026, at the latest.

h. Decision Group 5 contains 32,551 members. Depending on when the Department provides written notice of the settlement relief decision, members in this group who are approved for full settlement relief after receiving initial approval notices should receive such relief by July 28, 2026, at the latest.

7. The third group consists of borrowers who submitted borrower defense applications after the Agreement's execution but before this Court's final approval. *Id.* ¶ IV.D. These individuals are not class members. The Department refers to this group as the Post-Class Group.

   a. The Agreement provides that these applications will be adjudicated within three years of the Agreement's effective date, using normal adjudication procedures. *Id.* ¶ IV.D.1.

   b. As with the Decision Group borrowers, if an application is not adjudicated within the prescribed period, the applicant will receive full settlement relief. *Id.* ¶ IV.D.2.

   c. The Post-Class Group contains 205,448 members. Depending on when the Department provides written notice of the settlement relief decision, members in this group who are approved for full settlement relief should receive such relief by January 28, 2027, at the latest.

## II. Effectuation of Relief for Exhibit C Borrowers

8. In light of, among other factors, the volume and complexity of mixed consolidation loans, the Department did not effectuate full settlement relief for all Exhibit C borrowers by the applicable deadline.

9. As ordered by the Court, the Department began to implement a new process (the "Exhibit C relief approach") for effectuating full settlement relief for Exhibit C borrowers, whereby any Exhibit C borrower who still had a balance on their current consolidation loan as of June 6, 2024, would have the entire balance discharged, regardless of the composition of the underlying loans, and would have all payments on the current consolidation loan refunded (by check). Additionally, an Exhibit C borrower who had, as of June 6, 2024, already received an "adjustment" under a previous methodology that resulted in a zero balance on their current consolidation loan would retroactively receive a refund of all

payments made on the current consolidation loan (by check), if that amount had not already been refunded.

10. Utilizing this process, the Department effectuated full settlement relief for substantially all Exhibit C borrowers by August 31, 2024, as ordered by the Court.

### III. Effectuation of Relief for Decision Groups 1 and 2

11. In advance of the September 26, 2024 hearing, Plaintiffs alleged, and the Department acknowledged, that for Decision Group 1 members who are entitled to, but had not yet received, full settlement relief pursuant to Paragraph IV.C.9 of the Settlement Agreement, the Department is in material breach of the Agreement. At that hearing, the Court ordered the Department to apply the Exhibit C approach discussed above to Decision Groups 1 and 2.

12. As ordered by the Court, the Department is applying the Exhibit C relief approach to Decision Groups 1 and 2.

### IV. The Department's Proposal for Decision Group 3.

13. As the Department explained during the September 26, 2024, hearing, and in a notice filed the day before, the Department has prepared an alternative approach for delivering relief to class members with mixed consolidation loans that it proposes to use for Decision Group 3. This proposal differs from the measures taken for Exhibit C borrowers and Decision Groups 1 and 2. *See* Minute Order (June 13, 2024), ECF No. 416. The Department's alternative is designed to deliver appropriate relief to eligible borrowers in a way that avoids the delays associated the process that was used prior to the Exhibit C relief approach and that reduces the amount of ineligible relief that would be provided to class members through the Exhibit C relief approach. *See* Defs.' Notice in Advance of Hearing 1–2, ECF No. 433 ("September 25th Notice").

14. At this time, the Department is seeking permission to use this alternative approach for only Decision Group 3. The deadlines for those groups are sufficiently far away that it is not necessary to move now for a relief methodology for those groups.

15. The alternative approach that the Department proposes to use for Decision Group 3 borrowers with mixed consolidation loans is as follows:

   a. The Department will calculate the percentage of eligible to ineligible debt[1] based on the cumulative loan disbursement amounts.

   b. Servicers will apply that ratio to the principal amount of the borrower's terminal consolidation loan to estimate the amount of eligible debt in that loan and discharge that amount of the principal. Servicers will waive all accrued interest, whether related to eligible or ineligible debt. The borrower's new terminal loan balance will therefore reflect only the portion of the principal of the terminal loan that corresponds to the borrower's ineligible debt.

   c. All borrower payments made on both intermediary and terminal loans, which are reflected in servicer databases or NSLDS, will be refunded in full via check or EFT. There will be no reduction in the refund amount paid to the borrower due to reallocation of payments, consistent with the Court's May 24, 2024, order.

   d. For credit reporting, the Department and/or its servicers will instruct the credit reporting agencies to delete the tradelines for all relevant intermediary consolidation loans. For the terminal loan, whose disbursement has been reduced to reflect the ration of ineligible debt, the Department and/or its servicers will instruct the credit reporting agencies to remove historical negative reporting, or if not possible, to delete the tradeline.

16. Example: Borrower A made $5,000 in payments across all *Sweet*-related intermediate mixed consolidation loans and their terminal loan. Borrower A's terminal loan is $12,000, reflecting a principal of $10,000 and $2,000 in interest. The Department determines that

---

[1] "Eligible debt" refers to a loan that is subject to discharge, refund, and credit reporting relief in accordance with the *Sweet* Settlement Agreement.

*Sweet v. Cardona*, No. 19-cv-3674, Juengst Declaration
6

60% of the borrower's total disbursements are attributable to *Sweet*-eligible schools (i.e., schools that are the subject of an approved borrower defense application) and 40% to non-*Sweet*-eligible disbursements. Borrower A receives $5,000 in check/EFT refunds. For the terminal loan, 60% (or $6,000) of the principal is discharged, because that is the percentage of the loan attributable to *Sweet*-eligible debt. The remaining principal reflects 40% of the previous amount (or $4,000). No interest is added, effectively waiving the previous $2,000 in accrued interest, and the remaining balance is $4,000.

17. I understand that Plaintiffs disagree with the Department's proposed alternative and instead favor the Department's applying the Exhibit C relief approach to all Decision Group 3 members, including full discharge of current mixed consolidation loans (i.e., discharge the full amount of the terminal loan and refund all payments on the terminal loan). *See* Tr. ¶¶ 14–15.

18. The Department's alternative proposal is more tailored to reduce the extent of discharges attributable to ineligible loan debt and would result in cost savings, as discussed below.

## V. Cost Estimates

19. The government will incur costs in implementing either the Exhibit C relief approach or the Department's alternative approach. As a general matter, the costs from either approach arise from the discharge of ineligible debt on the terminal loan, the waiver of accrued interest on the terminal loan, and any refunds on terminal loan payments attributable to ineligible debt. The costs associated with the waiver of interest and payment of refunds should be similar under either approach. Ultimately, however, the costs associated with the alternative approach are projected to be significantly lower because the Department is not discharging all debt on the terminal loan, but rather a portion of that debt based on the ratio described in paragraph 15, above.

### A. Methodology

20. The Department analyzed the cost of applying the Exhibit C relief approach and the Department's alternative approach to Decision Group 3 borrowers, who have already received decision notices.

21. Methodology to determine costs associated with the alternative approach:

    e. First, the Department identified borrowers in Decision Group 3 with approved borrower defense applications who had mixed consolidation loans.

    f. Second, the Department estimated the amount of ineligible debt held by those borrowers. It did so by referring to the school code(s) listed on the borrower defense applications, from which it was able to calculate ineligible debt.

    g. Third, the Department applied the ratio described in paragraph 15 above.

22. Methodology to determine costs associated with the Exhibit C approach:

    a. The Department utilized the first two steps described in paragraph 21 above.

    b. However, it assumed a 100% discharge of the terminal loan, rather than the ratio described in paragraph 15 above.

**B. Results**

23. Decision Group 3 consists of approximately 12,000 class members with approved applications. Approximately 2,000 of those borrowers have mixed consolidation loans.

24. Approximately 39% of Decision Group 3 student loans are from schools that are not the subject of the individual's borrower defense application and would not be eligible for relief under the settlement if the application were approved.

25. Based on this information, the Department calculated that the average member of Decision Group 3 with mixed consolidation loans would receive an additional $27,000 in relief under the Exhibit C approach as compared to the alternative approach. Such relief would be attributable to the discharge of ineligible debt. Note that this is an average: the amount of additional relief could vary depending on the borrower.

26. Costs arising from the Exhibit C approach would be approximately $153 million in discharges on terminal loans, compared to approximately $98 million in discharges on terminal loans using the Department's alternative approach. Thus the cost savings for the Decision Group 3 would be approximately $55 million.

27. Approximately 26% of the class members in Decision Group 3 may be eligible for forgiveness or discharge for independent reasons such as Public Servant Loan Forgiveness.

## VI. Implementation of the Department's Proposed Approach

28. Prior to the September 26, 2024 hearing, the Department prepared instructions for the servicers to implement the Department's proposed approach, if approved by the Court.

29. At the September 26, 2024 hearing, the servicers confirmed that they are able to implement the Department's proposed approach. *See* Tr. ¶¶ 30–33 (Sept. 26, 2024). The servicers explained that they could develop and apply the necessary processes to Decision Group 1 within approximately 14 to 16 weeks, based on certain assumptions about loan volume. *Id.*

30. The Department has continued to communicate with the servicers about the instructions. Since the September 26, 2024, hearing, the servicers have informed the Department of additional contingencies and assumptions regarding their ability to effectuate full settlement relief using the proposed alternative approach, including assumptions about the population of Decision Group 3 and the Department's stated priorities.

31. Additionally, since the September 26, 2024, hearing, the Department—based on new information from the servicers—has determined that a formal change request is in fact needed to begin implementation of the Department's proposed alternative approach. The Department had previously determined that a change request was not necessary, based on the information that the Department had at that time from the servicers. ECF No. 433 at 5.

32. Based on those discussions, the Department and loan servicers have agreed to the following, subject to approval from the Court:

   a. The Department and loan servicers will begin building the framework for applying the proposed alternative approach, to be applied to approved class members with mixed consolidation loans in Decision Group 3.

   b. To avoid the risk of not providing full settlement relief to substantially all appropriate members of Decision Group 3 by July 28, 2025, 150 days beforehand (i.e., February 28, 2025), the Department will determine whether servicers will be

able to timely effectuate relief for eligible Decision Group 3 borrowers with mixed consolidation loans using the alternative approach.

c. If the Department determines that substantial compliance is unlikely to occur before July 28, 2025, using the alternative approach, the Department will so notify the Court, providing sufficient time before July 28, 2025 for the Court to then order the Department to instruct the servicers to employ the Exhibit C relief approach for this population.

1  I declare under penalty of perjury that the foregoing is true and correct.

2  Executed on November 7, 2024.

Phillip Juengst