BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

STUART J. ROBINSON
Senior Counsel
BENJAMIN T. TAKEMOTO
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 532-4252
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| THERESA SWEET et al., <br><br> Plaintiffs, <br><br> v. <br><br> MIGUEL CARDONA, *in his official capacity as Secretary of the United States Department of Education*, and <br><br> THE UNITED STATES DEPARTMENT OF EDUCATION, <br><br> Defendants. | Case No. 19-cv-03674-WHA <br><br> **SUPPLEMENTAL DECLARATION OF PHILLIP JUENGST** <br><br> **HEARING DATE: December 12, 2024** <br><br> (Class Action) <br> (Administrative Procedure Act Case) |

1. I am the Deputy Chief Operating Officer for Student Experience and Aid Delivery at the office of Federal Student Aid ("FSA") in the United States Department of Education ("Department").

2. I certify that I am duly qualified and authorized by the Department to make the statements contained in this Declaration about the implementation of the settlement agreement in this case. The statements contained herein are based on either my personal knowledge as an employee of the Department or on information reported to me by Department officials who created and/or are familiar with the pertinent records and communications with third-parties who are involved in the loan-servicing processes. Some of the statements contained herein are based on forecasts or predictions, which reflect my or other Department officials' good-faith assessments that are inherently subject to unknown future developments. The Department's estimates reflect the non-speculative information available as of today.

3. As the Deputy Chief Operating Officer, I oversee the management of loan servicing operations and discharge programs at FSA. Through my duties in this role and my discussions with our Department colleagues working on borrower defense issues, I am familiar with the Department's efforts to fulfill the Department's obligations set forth in the Settlement Agreement agreed to in this case.

4. I previously executed an earlier Declaration in this case dated November 7, 2024.

5. I have reviewed Plaintiffs' Opposition to Defendant's Motion to Approve Settlement Relief Process ("Opposition"), ECF No. 446. Plaintiffs made several assertions that are either incorrect or require a response. The following are responses to those discrete assertions. This declaration was prepared to support Defendants' Reply.

6. In their Opposition, Plaintiffs suggest that the change request that would be required for the Department's proposed process would reduce the cost savings of the proposed process. *See* Pl.'s Opp'n 9–10 (claiming that this is "money that the Department did not factor into its 'cost savings' analysis, and that the Department might not even have, given the uncertain state of congressional appropriations"). However, while the Department has not yet determined the precise cost of the change request, it will be orders of magnitude less than $55 million and does not disturb the Department's conclusion that the proposed alternative will yield significant savings.

1

7. Similarly, Plaintiffs assert, "The Department also does not balance any alleged savings from its proposed plan against the costs of collection on loans that would remain, including its own operational and administrative costs as well as the costs of compensating student loan servicers and/or debt collectors on a per-account basis." *See id* at 10. However, the Department's cost of collection on Federal student loans is *de minimis* (approximately $360 in total collection costs per borrower) when compared to the $55 million that would be saved under the alternative approach.

8. In their Opposition, Plaintiffs claim that the Department's methodology for calculating costs with respect to Decision Group 3, "is not based on actual loan data, but on a rough heuristic of questionable validity." *Id.* This statement is incorrect. As I explained in my first declaration, the Department's analysis was based on actual data from all approved discharges in the Decision Group 3 population. That information regarding Decision Group 3 is available because those borrowers already received decision notices. 1st Juengst Decl. ¶¶ 20–21, ECF No. 443-1. Thus, the Department was able to and did calculate the ratio of eligible to ineligible debt for the terminal mixed consolidation loans for each approved borrower in Decision Group 3.

9. In their Opposition, Plaintiffs contend that the costs associated with the Department's alternative proposal "remains entirely speculative." Pls.' Opp'n at 11. The Department has acknowledged that some loans in Decision Group 3 may be uncollectable or forgiven under other programs such as Public Service Loan Forgiveness ("PSLF"). *See* 1st Juengst Decl. ¶ 27. However, the costs associated with those outcomes is unknown and is dependent on future actions by the borrower; for example, whether a borrower will continue working in a public service organization for a certain amount of time (to become eligible at some future date for PSLF) or will continue making payments on an outstanding loan (to become eligible at some future date for income driven repayment discharge). In addition, the future of loan forgiveness based on a borrower's time in some income-driven repayment ("IDR") plans is also uncertain, given an injunction preventing the Department from implementing parts of the Saving on a Valuable Education Plan and other IDR plans. *Missouri v. Biden*, 112 F.4th 531, 538 (8th Cir. 2024) ("The Government is, for any borrower whose loans are governed in whole or in part by the terms of the Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family

2

Education Loan (FFEL) Program, 88 Fed. Reg. 43820, enjoined from any further forgiveness of principal or interest, from not charging borrowers accrued interest, and from further implementing SAVE's payment-threshold provisions. This injunction will remain in effect until further order of this court or the Supreme Court of the United States.")

1  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and
2  correct.
3  Executed on November 27, 2024.

_____
PHILLIP JUENGST