BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| THERESA SWEET, et al., | |
| Plaintiffs, | Case No. 3:19-cv-03674-WHA |
| v. | **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR TEMPORARY RELIEF FROM JUDGMENT** |
| LINDA MCMAHON, *in her official capacity as Secretary of the United States Department of Education*, and | |
| THE UNITED STATES DEPARTMENT OF EDUCATION, | Date: December 11, 2025 |
| Defendants. | Time: 8:00 a.m. |
| | Place: Courtroom 12, 19th Floor |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

I.  Plaintiffs' Opposition Applies the Wrong Legal Standard ..........................................2

    A.  Rule 60(b)(5) Provides a Flexible, Not Hardened, Standard ............................2

    B.  The Court May Modify its Final Judgment Pursuant to an Equitable Rule 60(b)(5)
        Standard Rather than any Standard Described in the Agreement. ....................4

II.  Plaintiffs' Opposition Ignores Congress's Repeated Post-Judgment Rejections of the
     Department's Funding Requests Until July 2025, Gives Insufficient Weight to Congress's
     Recent Decision to Provide FSA Adequate Funding Resources, and Otherwise Provides
     No Persuasive Basis to Deny Defendants' Motion ........................................................5

III.  The Motion is Timely Because It was Filed Only Four Months After Congress Provided
      Sufficient Funding to Address Post-Class Applications ...............................................11

IV.  Plaintiffs' Requests for an Order to Promptly Provide Full Settlement Relief to Each
     Affected Post-Class Applicant on the Agreement's Schedule and an Order for Defendants
     to Pay Plaintiffs' Attorney Fees Are Not Properly Before the Court. ...........................14

CONCLUSION ................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Baker Botts LLP v. ASARCO LLC*,
    576 U.S. 121 (2015)...............................................................................................15

*Bay Marine Boatworks, Inc. v. S/Y Pursuit*,
    No. 3:20-cv-05399-WHO, 2022 WL 991751 (N.D. Cal. Apr. 1, 2022)..........................5

*Bellvue Manor Assocs. v. United States*,
    165 F.3d 1249 (9th Cir. 1999)...............................................................................3

*Braniff Airways, Inc. v. Civil Aeronautics Bd.*,
    379 F.2d 453 (D.C. Cir. 1967)..............................................................................13

*Brock v. Pierce Cnty.*,
    476 U.S. 253 (1986).............................................................................................10

*Brown v. Neeb*,
    644 F.2d 551 (6th Cir. 1981).................................................................................3

*Clark v. California*,
    739 F. Supp. 2d 1168 (N.D. Cal. 2010)..................................................................2

*Conservation Force, Inc. v. Jewell*,
    733 F. 3d 1200 (D.C. Cir. 2013)...........................................................................14

*Frew ex. Rel. Frew v. Hawkins*,
    540 U.S. 431 (2004).............................................................................................6

*Horne v. Flores*,
    557 U.S. 433 (2009)....................................................................................3, 4, 13

*In re Aiken County*,
    725 F.3d 255 (D.C. Cir. 2013)...............................................................................6

*In re Barr Laboratories, Inc.*,
    930 F.2d 72 (D.C. Cir. 1991)..............................................................................6, 7

*Phila. Welfare Rts. Org. v. Shapp*,
    602 F.2d 1114 (3d Cir. 1979)........................................................................*passim*

*Rhodes v. Stewart*,
    488 U.S. 1 (1988)...............................................................................................14

*Rufo v. Inmates of Suffolk Cnty. Jail*,
    502 U.S. 367 (1992)...........................................................................................3, 4

*Sweet v. Cardona*,
    641 F. Supp. 3d 814 (N.D Cal. 2022)................................................................... 10

*Tenn. Valley Auth. v. Hill*,
    437 U.S. 153 (1978)....................................................................................... 9

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
    592 U.S. 261 (2021)...................................................................................... 13

*United States v. Holtzman*,
    762 F.2d 720 (9th Cir. 1985)......................................................................... 11

**Rules**

Fed. R. Civ. P. 7(b)......................................................................................... 14

Fed. R. Civ. P. 54(d)(2).................................................................................. 15

Fed. R. Civ. P. 60....................................................................................... 1, 4, 11

**Regulations**

34 C.F.R. § 685.222(e).................................................................................... 9

**Other Authorities**

Dep't of Educ. Fiscal Year 2024 Budget Request,
    https://www.ed.gov/sites/ed/files/about/overview/budget/budget24/justifications/q-saa.pdf ............... 5

Dep't of Educ. Fiscal Year 2025 Budget Request,
    https://www.ed.gov/sites/ed/files/about/overview/budget/budget25/justifications/r-saa.pdf.......... 6, 12

# INTRODUCTION

The Court should grant Defendants' motion and modify the judgment to permit the Department of Education (the "Department") to adjudicate outstanding post-class applications on a timetable that is achievable considering Congress's post-judgment funding decisions. Plaintiffs' opposition does not contest the primary reasons justifying Rule 60(b)(5) relief. Principally, Plaintiffs do not dispute—or grapple with—Congress's repeated post-judgment denials of the Department's requests for funds sufficient to adjudicate the incredible number of post-class applications. Not until July 2025 did Congress change course and decide to provide the Department's Federal Student Aid ("FSA") office adequate funding. Nor do Plaintiffs meaningfully articulate how the Department could have achieved compliance before Congress provided it with adequate resources. Instead, Plaintiffs' approach to modification "over-emphasize[s] the interest of finality at the expense of achievability"—an approach that is not proper in this context. *Phila. Welfare Rts. Org. v. Shapp*, 602 F.2d 1114, 1120 (3d Cir. 1979).

Plaintiffs do not dispute that the post-class applicant pool exceeds by more than 200,000 the number of applications that were submitted in any comparable five-month period before or after the settlement agreement, ECF No. 246-1 ("Agreement"), was executed—an at least 523% increase. And Plaintiffs do not dispute that the terminal loan methodology that the Court ordered in December 2024 must be applied to that enormous group—resulting in the discharge of some ineligible loans (and refunds of loan payments) for which a borrower has made no allegations of impropriety by the school. Plaintiffs do not dispute that this extraordinary consequence was not contemplated by the terms of the Agreement. They speculate that the approval rate for post-class applications will increase from the current rate of fifty percent. But they do not dispute that some portion of the 193,000 post-class applications—likely a substantial portion—that will remain pending by January 28, 2026, would have been denied, resulting in loan forgiveness for applicants that Congress has chosen not to grant itself. Again, in July 2025 Congress instead provided the Department with adequate resources to provide decisions on post-class applications, which is all the underlying substantive law requires. These undisputed points alone are sufficient to conclude that applying the Court's final judgment "prospectively is no longer equitable[.]" Fed. R. Civ. P. 60(b)(5).

Consider the consequences of failing to modify the judgment to account for achievability given Congress's post-judgment funding decisions. With a few small exceptions, post-class applicants would be treated more favorably than any group of borrowers before or since, including all prior settlement groups, because their applications would be approved regardless of any assessment of the merits. That would be particularly inequitable given that post-class applicants had not submitted borrower defense applications at the time the parties executed the Agreement and thus "did not experience the allegedly unlawful policies and procedures that Plaintiffs describe in their original and supplemental Complaints," Joint Mot. for Final Approval of Settlement at 12 n.3, ECF No. 323. Plaintiffs fail to explain why a borrower who submitted an unmeritorious application on November 15, 2022, should have her loans discharged while her former classmate who applied the following day should not.

Now that Congress has provided the Department with the resources required to address the enormous post-class applicant pool, the Court should modify the judgment to account for Congress's post-judgment funding decisions and preclude inequitable windfall benefits for this group of borrowers.[1]

## I.    Plaintiffs' Opposition Applies the Wrong Legal Standard.

### A.    Rule 60(b)(5) Provides a Flexible, Not Hardened, Standard.

Rule 60(b)(5) relief is available in a wide variety of circumstances based on equitable considerations. *See Clark v. California*, 739 F. Supp. 2d 1168, 1233 (N.D. Cal. 2010). In cases addressing "strict performance requirements of a complex ongoing remedial decree" imposed on public officials after a negotiated settlement, "and with financial incentives designed to encourage the achievement of those requirements[,]" a Rule 60(b)(5) motion is properly granted when the deadline "proved impossible of performance." *Phila. Welfare Rts. Org.*, 602 F.2d at 1120. A judgment "imposing mandatory affirmative duties for the future involves elements of prediction. Whether the prediction as to achievability is made as a result of litigation or, as here, in a negotiated settlement, it will always be speculative to some degree." *Id.* "Where an affirmative obligation is imposed by court order on the assumption that it is realistically achievable, the court finds that the defendants have made a good faith effort to achieve the object by the

---

[1] Combined with their opposition to Defendants' motion for temporary relief from judgment, Plaintiffs filed a motion to strike Defendants' motion. Pls.' Opp'n, ECF No. 502. Defendants anticipate filing an opposition to Plaintiffs' motion to strike within the time permitted by Civil Local Rule 7-3(a).

1    contemplated means, and the object nevertheless has not been fully achieved, clearly a court of equity has

2    power to modify the [judgment] in the light of experience." *Id*. at 1120-21.

3    Rather than apply this flexible standard, Plaintiffs oppose the motion claiming that current

4    circumstances are "entirely foreseeable." ECF No. 502 at 13. But that standard is essentially the same as

5    the one that the Supreme Court rejected in *Rufo v. Inmates of Suffolk Cnty. Jail*. *See* 502 U.S. 367 (1992).

6    *Id*. at 385 (rejecting claim that "modification should be allowed only when a change in facts is both

7    'unforeseen and unforeseeable'"—"Such a standard would provide even less flexibility than the exacting

8    *Swift* test"). Instead, the Court emphasized Rule 60(b)(5)'s flexible standard. *Id*. at 379-81.

9    Moreover, although "the *Rufo* standard applies to all Rule 60(b)(5) petitions brought on equitable

10   grounds," *Bellvue Manor Assocs. v. United States*, 165 F.3d 1249, 1257 (9th Cir. 1999), the Supreme

11   Court has repeatedly emphasized with particularity the need for flexible access to Rule 60(b)(5) relief

12   from judgments running against public official defendants. "[P]ublic officials sometimes consent to, or

13   refrain from vigorously opposing, decrees that go well beyond what is required by federal law." *Horne v.*

14   *Flores*, 557 U.S. 433, 448 (2009). Settlement agreements with public officials may "bind [them] to the

15   policy preferences of their predecessors and may thereby 'improperly deprive future officials of their

16   designated legislative and executive powers.'" *Id*. at 449 (citation omitted). Rule 60(b)(5) thus provides

17   an important safety valve, under which "a flexible approach . . . is critical." *See id*. at 452.

18   Indeed, this Court has, at least implicitly, repeatedly acknowledged its flexible equitable discretion

19   to modify the terms of the judgment, which incorporated the terms of the Agreement. Most notably, the

20   Court has issued orders requiring Exhibit C terminal loan methodology outside of the limited context in

21   which it was developed and contrary to the terms of the Agreement. *See* Minute Entry, ECF No. 451 (Dec.

22   12, 2024). Plaintiffs are thus wrong insofar as they suggest that there is something unusual about appealing

23   to the Court's equitable discretion to seek relief from the terms of the Agreement, as incorporated into the

24   judgment.[2]

---

26   [2] Citing an unpublished district court opinion, Plaintiffs suggest that a more stringent standard may
     apply to contracts agreed to by the parties (regardless of incorporation into a judgment or order) than
27   consent decrees. ECF No. 502 at 9. Usurpingly, Plaintiffs do not elaborate as to why that would be the
     case. "A consent decree . . . is a contract that has been negotiated by the parties. It is also a court order
28   which can be changed by a court if circumstances warrant." *Brown v. Neeb*, 644 F.2d 551, 557 (6th Cir.

**B.    The Court May Modify its Final Judgment Pursuant to an Equitable Rule 60(b)(5) Standard Rather than any Standard Described in the Agreement.**

Relatedly, Plaintiffs miss the mark insofar as they are arguing that Defendants' Rule 60(b) motion is not properly before the Court or that the Court should apply some standard implied from the language of the Agreement. *See* ECF No. 502 at 2-4. First, the Agreement in no way precludes Defendants from seeking Rule 60(b) relief from this Court's judgment. Plaintiffs concede that "the Court retains subject matter jurisdiction over its final order incorporating the Settlement Agreement, and with that the power to modify the order." *Id*. at 3. That concession resolves this issue. Under Rule 60(b)(5), Defendants may appeal to equity to modify the final judgment, which incorporates the Agreement. ECF No. 492 at 9-11.

Plaintiffs also miss the mark in arguing that there "is certainly no legitimate basis for granting relief under Rule 60(b)(5)" insofar as Defendants' request for Rule 60(b)(5) relief from judgment does not meet the standard in Paragraph V.D.5 of the Agreement. ECF No. 502 at 4. Rule 60(b)(5)'s standard is whether "applying [the judgment or order] prospectively is no longer equitable"—it is not the standard described in Paragraph V.D.5 of the Agreement. Fed. R. Civ. P. 60(b)(5). Defendants did not purport to waive their right to seek Rule 60(b) relief in the Agreement.[3]

Any suggestion that Defendants waived—or could have validly waived—their right to seek Rule 60(b)(5) relief from judgment under its flexible standard would be entirely inconsistent with the important purposes of Rule 60(b)(5), particularly in cases involving public official defendants. *See supra* at p. 3. For similar reasons, Plaintiffs are incorrect to suggest that Agreement provisions provide the "preferred way" for seeking relief "for this precise situation." ECF No. 502 at 3. "[A] 'hardening' of the traditional flexible standard for modification[,]" *Rufo*, 502 U.S. at 379, would be inconsistent with the Supreme Court's directives that Rule 60(b)(5) must be applied pragmatically to permit for "successor officials . . . to bring new insights and solutions to problems of allocating revenues and resources." *Horne*, 557 U.S. at 449 (citation omitted). Rule 60(b)(5)—not the hardened standard imported from the Agreement's procedure for Plaintiffs to assert a claim for anticipatory breach—provides the appropriate standard for the Court to

1981). The same is true of the Agreement. ECF No. 492 at 9-11.

[3] The Agreement provides that the Court "lack[s] jurisdiction to imply any claims . . . under this Agreement[,]" including a claim that the terms of the Agreement implicitly waived Defendants' rights to seek Rule 60(b) relief from the final judgment under its equitable standard.  *See* ECF No. 246-1 at 15.

consider equity's demands given the post-judgment events discussed *infra*.

Indeed, the only case Plaintiffs cite for the notion that "the settlement is the preferred way" for Defendants to seek relief is inapposite because it involved a settlement agreement between a yacht owner and a boatyard. ECF No. 502 at 4 (citing *Bay Marine Boatworks, Inc. v. S/Y Pursuit*, No. 3:20-cv-05399-WHO, 2022 WL 991751, at *4 (N.D. Cal. Apr. 1, 2022)). The court's analysis had little to do with one party's attempt to "over-emphasize[] the interest of finality at the expense of achievability" in the context of "a complex ongoing remedial decree" designed to incentivize a public official to comply with statutory duties. *Phila. Welfare Rts. Org.*, 602 F.2d at 1120.

## II. Plaintiffs' Opposition Ignores Congress's Repeated Post-Judgment Rejections of the Department's Funding Requests Until July 2025, Gives Insufficient Weight to Congress's Recent Decision to Provide FSA Adequate Funding Resources, and Otherwise Provides No Persuasive Basis to Deny Defendants' Motion.

Plaintiffs' argument that the equities favor denying Rule 60(b)(5) relief is premised on their mistaken narrative that the Department is responsible for the staffing resources available to process the enormous post-class application pool during the post-judgment period. *See* ECF No. 502 at 13-15. But Plaintiffs do not dispute that, following final judgment, the Department sought implementation funding from Congress for "consecutive years thereafter." Declaration of James Bergeron ("Bergeron Decl.") ¶ 7, ECF No. 492-1. Specifically, the Department repeatedly "highlighted the need for additional attorneys to effectively manage the borrower defense program." *Id*. For example, in March 2023, the Department sought $21.0 million for additional staffing to provide decisions on approximately 250,000 claims received at the budget request date and to meet relevant deadlines. *Id*. The Department's request was explicit that the funds were "need[ed] to meet the terms of the *Sweet* settlement."[4] Congress did not fulfill that request. Bergeron Decl. ¶ 7. Because Congress provided none of the requested funding for FY24, the Department sought for FY25 $56 million to hire "approximately three hundred attorneys . . .and have them work exclusively on these applications for a full year." *Id*. Again, the Department was explicit that the request "will enable FSA to satisfy the Department's legal obligations from the settlement in *Sweet v. Cardona* and applicable regulations and to support the timely adjudication of individual and group

---

[4] Dep't of Educ. Fiscal Year 2024 Budget Request at 42, https://www.ed.gov/sites/ed/files/about/overview/budget/budget24/justifications/q-saa.pdf.

borrower defense claims."[5] The Department explained to Congress that the volume of *Sweet* post-class "applications that must be adjudicated by January 28, 2026 . . . far exceeds the number of applications that were expected to be covered by the settlement when the Department made the agreement in June 2022[.]"[6] The Department reiterated that its "anticipated staffing levels, at that time [the Agreement was entered], did not account for subsequent years' appropriations remaining at existing levels, providing no increase despite increasing costs."[7] Yet again, Congress rejected the funding request. Bergeron Decl. ¶ 7.

The Department's limited capacity to process post-class applications during much of the post-judgment implementation period is thus not some misfeasance that can be equitably balanced against granting the Government's motion. Rather, it reflects the Executive's duty to comply with its obligations—whether arising from statute or settlement agreement—only insofar "as there is appropriated money available[.]" *See In re Aiken County*, 725 F.3d 255, 259 (D.C. Cir. 2013).[8] And the Court may not presume, as Plaintiffs seemingly do, *see* ECF No. 502 at 14, that "[a]gency officials not working" on post-class applications have "just been 'twiddl[ing] their thumbs.'" *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) (citation omitted). To the contrary, "public servants . . . must be presumed to have a high degree of competence in deciding how best to discharge their governmental responsibilities." *See Frew ex. Rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004). Here, the Department made repeated requests that Congress provide additional resources so that the Department could meet its obligations. When Congress denied the Department's FY24 request for $21 million, the Department increased its ask to $56 million in FY25, such that it may be able to catch up on lost time by rapidly hiring 300 attorneys. This demonstrates that agency officials were acutely aware of the staffing challenges and took concerted action to try to meet the January 2026 deadline.

---

[5] Dep't of Educ. Fiscal Year 2025 Budget Request at 40, https://www.ed.gov/sites/ed/files/about/overview/budget/budget25/justifications/r-saa.pdf.

[6] *Id.*

[7] *Id.*

[8] Defendants reject Plaintiffs' characterization of Defendants' arguments as "rel[ying] on a pernicious underlying assumption that Post-Class Applicants are not part of 'the public' or taxpayers' whom the Department sees itself as serving." ECF No. 502 at 9-10. The substantive law at issue directs Defendants to serve post-class applicants by properly adjudicating their borrower defense applications and Congress repeatedly rejected Defendants' requests for the resources necessary to do so pursuant to the timetable set forth in the Agreement.

1    Nowhere in their papers do Plaintiffs rebut Defendants' declarations by describing in concrete

2    terms any feasible way that the Department could have managed its resources to address the enormous

3    post-class applicant pool amid Congress's repeated post-judgment funding rejections. Plaintiffs entirely

4    fail to "back up [their] insinuation that the [Department] could [have] act[ed] more efficiently if it tried."

5    *Barr Laboratories*, 930 F.2d at 76. Contrary to Plaintiffs' assertions, when "circumstances largely beyond

6    the defendants' control"—like Congress's funding denials—put achievement of a processing "timetable

7    beyond reach," Rule 60(b)(5) is the appropriate mechanism for adjusting those timetables in light of those

8    post-judgment events. *See Phila. Welfare Rts. Org.*, 602 F.2d at 1121.

9    Plaintiffs' failure to articulate concretely how the Department could have managed its resources

10   to achieve compliance with the January 2026 deadline amid Congress's post-judgment repeated funding

11   rejections is unsurprising. As Defendants have explained, the post class size is immense and represents a

12   523% increase in applications from over any comparable five-month period. ECF No. 492 at 14. The

13   Department had no basis to know it was agreeing to adjudicate such an enormous number of applications

14   by January 2026 when it executed the Agreement. *Id*. And the Agreement explicitly required the

15   Government to submit it to the Court for preliminary and final approval without change. *Id*. at 15-16.

16   Worse, Plaintiffs' analysis entirely ignores Congress's decision in July 2025 to finally provide

17   FSA sufficient funding to process post-class applications. Again, Plaintiffs do not dispute that, in July

18   2025, Congress finally provided FSA with additional funding "to support administrative costs associated

19   with the servicing and oversight of federal student loans." Bergeron Decl. ¶ 34. Specifically, Congress

20   "appropriated an additional *$1 billion* for FSA" in July 2025, in addition to its annual appropriation. *Id*.

21   (emphasis added). The Court should respect Congress's exercise of its delegated powers in this area by

22   modifying the final order to permit the Department to adjudicate outstanding post-class applications on a

23   timetable that is achievable considering Congress's post-judgment funding decisions.

24   Rather than explain how the current timetable was achievable given Congress's post-judgment

25   funding rejections, Plaintiffs instead seek to cast doubt on the Department's good faith plan for spending

26   the new resources Congress provided in July. First, Plaintiffs speculate that there could be "hiccups" in

27

28

the hiring plan. ECF No. 502 at 14.[9] But that is no basis for denying Defendants' motion. Any "prediction as to achievability . . . will always be speculative to some degree." *See Phila. Welfare Rts. Org.*, 602 F.2d at 1120. Those considerations merely imply that the Court should continue to revisit a complex remedial prospective decree as long as the public official defendant is acting reasonably towards its aims, not that modifications should be denied. *See id*. Undoubtedly, Defendants' anticipated compliance with its proposed new timetable is considerably less speculative than the timetable for post-class application processing the Plaintiffs agreed to when they executed the Agreement.

Second, Plaintiffs assert that the Department's "plan" for spending the resources that Congress allocated in July on processing post-class applications "is not actually better" than its original plan. ECF No 502 at 14.[10] But that assertion makes little sense. The Department was unable to implement any spending plan for the enhanced funds it had requested from Congress for FY24 and FY25 because Congress rejected those funding requests. Bergeron Decl. ¶¶ 7-9.[11]

Plaintiffs are also incorrect in asserting that the Department does not need to conduct further fact-finding for any school on Exhibit C to the Settlement Agreement that is also the subject of a post-class application. ECF No. 502 at 14. As Plaintiffs are aware, the Exhibit C schools are those schools for which the Department had sufficient indicia of wrongdoing such that the Department was willing to use its

---

[9] Plaintiffs are wrong to suggest that there is no plan for onboarding the second half of the 450 contract attorneys that the Department plans to hire. Pls.' Resp. at 1, ECF No. 501. The Department anticipates onboarding "additional attorneys weekly" after onboarding begins in March 2026 "until the remaining 225 contract attorneys have been onboarded." Supp. Decl. of James Bergeron ¶ 6, ECF No. 498-1.

[10] Plaintiffs mischaracterize Defendants' processing efforts when they assert that under Defendants' proposal, "*no* Post-Class Applicants would receive a decision by . . . January 26, 2026[.]" ECF No. 501 at 2. Under existing staffing resources, FSA's borrower defense branch is processing applications at a "steady pace of approximately 1,500 post-class adjudications per month." Bergeron Decl. ¶¶ 21, 29, 31. "At the adjudication rate of approximately 1,500 adjudications per month, the Department estimates that it will adjudicate another 4,500 applications" by January 26, 2026. *Id*. ¶ 31. Should the Court grant an extension such that the Department could continue to adjudicate post-class applications after January 28, 2026, it intends to do so. Defendants' submissions reflect additional processing capacity beginning later in 2026 made possible by additional contract staff due to new funding resources.

[11] Plaintiffs point out that FSA has a new Acting Chief Operating Officer ("Acting COO"). Pls.' Resp. at 1 n.1, ECF No. 501. The fact that a new Acting COO has been appointed does not impact any of the forward-looking statements in either of Mr. Bergeron's Declarations. Department leadership-including new FSA leadership—is committed to executing the plans outlined in the Bergeron Declarations. Furthermore, FSA's leadership reports to the Office of the Under Secretary. In his role as Deputy Under Secretary, Mr. Bergeron oversees FSA leadership along with the Under Secretary and the Secretary.

Reply in Support of Defendants' Motion for Temporary Relief from Judgment
3:19-cv-03674-WHA

settlement and compromise authority to grant full relief to class members who took out loans to attend those schools. *See* Joint Mot. for Preliminary Settlement Approval at 3, ECF No. 246. Thus, a school could be included on Exhibit C even if fact-finding was not yet completed. By contrast, pursuant to a different provision of the Agreement, *see* Agreement ¶ IV.D.1, the post-class applications must be adjudicated under a 2016 regulation requiring fact-finding. 34 C.F.R. § 685.222(e)(3) (2016) (the Department resolves a borrower defense "through a fact-finding process conducted by the Department official").

Nor are Plaintiffs correct to suggest that "the Department's proposed delay would cause" post-class applicants "immediate, irreparable, life-changing harm." ECF No. 502 at 10. If the Defendants' motion is granted, the status quo for post-class applicants—including forbearance and suspended collection activity—will not change. Under the 2016 regulation pursuant to which the post-class applications are being adjudicated, *see* Agreement ¶ IV.D.1, the Department must grant forbearance for any loan not in default—and must suspend collection activity on any defaulted loan—that is the subject of a borrower defense application. 34 C.F.R. § 685.222(e)(2)(i), (ii) (2016). Thus, with limited exceptions at the election of the borrower, all post class borrowers will remain in forbearance and there will be no action taken to collect on their loans during any extension granted by the Court.[12] And granting the motion in no way suggests that all post-class applicants will eventually be "placed back into repayment" at some unspecified later date. ECF No. 502 at 10. Rather, only those who submitted an application that is denied may be required to continue making payments, which is exactly what the underlying substantive law requires. Insofar as Plaintiffs are arguing that post-class applicants with meritless applications have a cognizable equitable interest in receiving not only a final decision denying their application but also loan forgiveness that Congress has never provided due to the triggering of the Agreement's automatic discharge provisions, they are mistaken. *See Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978) (explaining that equitable balancing does not permit courts to override policy decisions reflected in statutes); *Phila. Welfare Rts. Org.*, 602 F.2d at 1121 ("The payment provision was included not to provide a windfall to

---

[12] The only exceptions under the regulations are (a) a borrower with a loan not in default who declines the forbearance and chooses to continue making payments, and (b) a defaulted loan borrower who chooses to continue making payments under a rehabilitation or other repayment agreement. 34 C.F.R. § 685.222(e)(2)(i)(A), (ii)(C) (2016).

1    unidentified class members, but to provide a financial incentive for the achievement of [deadlines] which,

2    although diligently pursued, proved in practice to be unattainable"); *Sweet v. Cardona*, 641 F. Supp. 3d

3    814, 833 (N.D Cal. 2022) (explaining that post-class members are entitled only to a decision on their

4    application within a reasonable time "on pain of"—*i.e.*, the penalty for shortcoming being—"automatic

5    discharge").

6         Moreover, as many as half of post-class applicants may have submitted a meritless application, if

7    prior experience holds. Bergeron Decl. ¶ 33. Despite disputing that prediction, ECF No. 502 at 17,

8    Plaintiffs do not deny that a substantial number of post-class applications would likely be denied if the

9    Department is permitted additional time to adjudicate them. Triggering the automatic discharge provisions

10   in January 2026 would thus have massive implications for the public fisc—in the Department's view, to

11   the tune of $12 billion. Bergeron Decl. ¶ 32.[13] The Court should not disregard that interest when weighing

12   the equities. "[T]he protection of the public fisc is a matter that is of interest to every citizen, and we have

13   no evidence that Congress wanted to permit the Secretary's inaction to harm that interest any more than

14   it would permit such inaction to injure an individual [post-class member]." *Cf Brock v. Pierce Cnty.*, 476

15   U.S. 253, 262 (1986).

16        And post-class applicants are in a meaningfully different position than class members who were

17   divided into the other settlement groups. Post-class applicants had not submitted borrower defense

18   applications at the time the parties executed the Agreement and thus "did not experience the allegedly

19   unlawful policies and procedures that Plaintiffs describe in their" pleadings. Joint Mot. for Final Approval

20   at 12 n.3, ECF No. 323. That consideration is also relevant to any equitable interest balancing analysis.

21        Weighed against the alleged public interest in granting full settlement relief to post-class applicants

22   who have submitted unmeritorious applications is the Defendants' "good faith effort to achieve"

23   compliance with the Agreement's timetables and other obligations. *See Phila. Welfare Rts. Org.*, 602 F.2d

24   at 1120. The Department has substantially complied with its settlement obligations to the class. Bergeron

25   Decl. ¶ 30. And FSA made a good faith effort to achieve compliance for the post class by committing

26

27        [13]  Those implications are exacerbated by this Court's December 2024 decision, over the
     Department's objection, to apply a terminal loan methodology that provides post-class borrowers with
28   considerably more relief than the Government agreed to in the Agreement. ECF No. 492 at 18-20.

available resources toward processing their applications. Bergeron Decl. ¶¶ 7, 9, 31. But "[a]bsent increased funding from Congress, FSA was unable to increase the number of attorneys adjudicating borrower defense applications to the extent needed to meet the deadlines in the Settlement Agreement" for the post-class. *Id*. ¶ 8.

In sum, the Department has made a good faith effort to achieve compliance within the confines of its limited resources but Congress's repeated funding denials placed achievement out of reach. Those facts provide good reasons to grant Defendants' motion and reconsider the propriety of the existing timetable. *See Phila. Welfare Rts. Org.*, 602 F.2d at 1121.

### III.    The Motion is Timely Because It was Filed Only Four Months After Congress Provided Sufficient Funding to Address Post-Class Applications.

Defendants' motion is timely because it was "made within a reasonable time[.]" Fed. R. Civ. P. 60(c)(1). That standard "depends on the facts of each case." *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985). The Court should "determine whether the [Plaintiffs were] prejudiced by the delay . . . and whether [Defendants] had a good reason for failing to take the action sooner[.]" *Id*. "Leniency also is appropriate when the challenged judgment is prospective." *Id*.

First, Plaintiffs' brief identifies no prejudice—neither personal prejudice to them, to the class members they represent, or to the third-party post-class membership—from the timing of Defendants' motion. ECF No. 502 at 4-9. The judgment requires Defendants to provide full settlement relief to certain third parties[14] if Defendants fail to issue decisions on their applications by January 2026. There is more than sufficient time for the Court to consider Plaintiffs' opposition before that future deadline.

Second, the motion's timing reflects Congress's July 2025 decision to provide FSA with adequate funding to process post-class applications. Shortly after Congress appropriated $1 billion to FSA, the Department worked to develop and finalize budget plans with the Office of Management and Budget and conducted market research for contract attorneys. *See* Bergeron Decl. ¶ 36. Then, Defendants moved

---

[14] Citing the Court's Order Granting Final Approval, Plaintiffs assert that "Post-Class Applicants are members of the *Sweet* class." ECF No. 502 at 6 n.4. But that is not accurate. The Court merely explained that "the class definition *as recited in [the original] class certification order*" encompasses post-class borrowers. *Id*. (emphasis added) (quoting Order Granting Final Approval at 22, ECF No. 345). And the Agreement provides that the "Class is closed as of the Execution Date," *i.e.*, June 22, 2022. Agreement ¶ III.D. The Court's order approving that Agreement thus superseded the definition in the earlier class certification order. ECF Nos. 345-46.

Reply in Support of Defendants' Motion for Temporary Relief from Judgment
3:19-cv-03674-WHA

expeditiously to file the present motion only about four months after the funding was signed into law. *See* ECF No. 492 at 20-21; Bergeron Decl. ¶ 34. FSA could not have developed its plan that forms the basis of the motion—to hire approximately 450 new attorneys to adjudicate post-class applications—absent this funding. *See* ECF No. 492 at 20-21; Bergeron Decl. ¶¶ 35-36. Again, prior to July 2025, FSA had sought adequate funding to process post-class applications for years and Congress repeatedly denied those funding requests. Bergeron Decl. ¶ 7.

Moreover, Plaintiffs ignore key considerations in asserting that the "Department has always had a "clear view of its obligations to the Post-Class[.]" ECF No. 502 at 5. The Department had no idea that the size of the post class would be 523% larger than any comparable period when the Agreement was signed.[15] The Department explained as much in its FY25 budget request to Congress, noting that "there are still over 250,000 applications that must be adjudicated by January 28, 2026" and that the "volume of applications far exceeds the number of applications that were expected to be covered by the settlement when the Department made the agreement in June 2022—which was due, in part, to the time period for new applications to be covered by the settlement lasting months longer than anticipated."[16]

Moreover, the Agreement is clear that the "Relevant Loan Debt" eligible for discharge under the Agreement's provisions is "loans associated with the school that is the subject of the Class Member's borrower defense application." Agreement ¶ II.W.[17] The Department did not understand that it would instead be responsible for discharging all debt of each applicant with a terminal consolidation loan—including both eligible and ineligible debt, as well as a refund of all payments made to the Department under any terminal consolidation loan—until the Court ordered as much over the Department's objection on December 12, 2024, less than a year ago. ECF No. 451. Defendants respect the Court's decision and do not seek to modify it as part of their Rule 60 motion. But they did not agree to that order, which could

---

[15] True, the Department was aware of the size of the post-class at the time the parties sought final settlement approval. *Id*. But the Agreement itself stated that the parties were required to submit it to the Court without change. ECF No. 492 at 15-16.

[16] Dep't of Educ. Fiscal Year 2025 Budget Request at 40, https://www.ed.gov/sites/ed/files/about/overview/budget/budget25/justifications/r-saa.pdf.

[17] The Agreement defines "Full Settlement Relief" as discharge of, and refunds of amounts paid toward, "Relevant Loan Debt." Agreement ¶ II.S.

Reply in Support of Defendants' Motion for Temporary Relief from Judgment
3:19-cv-03674-WHA

increase the monetary liability for missing the January 2026 deadline enormously. Bergeron Decl. ¶ 32.

The Court should also disregard Plaintiffs' mischaracterization of statements by Government litigation counsel. *See* ECF No. 502 at 6-8. No cited statement includes a representation that the Government was on track to process all post-class applications by January 2026. Nor does any cited statement include a representation that the Government would not seek Rule 60(b) relief. For example, Plaintiffs emphasize litigation counsel's statement that the Government "fully understands its obligations under the settlement agreement" and that the "Department is committed to honoring the settlement agreement." *Id.* at 7 (citation omitted). The Government reaffirms those statements. It understands its obligations under the Agreement and is committed to honoring the Agreement, as demonstrated by the fact that the Department has repeatedly sought implementation funding from Congress and has committed existing resources toward meeting the deadline. Bergeron Decl. ¶¶ 7-9, 34-37. But the Department's obligations in the Agreement are subject to modification under Rule 60(b). ECF No. 492 at 9-11. Embedding a policy of this nature in a settlement agreement approved by court order does not "immunize it from reexamination." *Horne*, 557 U.S. at 449 (citation omitted). That is especially so when a negotiated timetable "proved impossible of performance." *Phila. Welfare Rts. Org.*, 602 F.2d at 1120.

Plaintiffs complain that "[n]ot once, in any [cited] hearing, did the Department suggest to the Court that it might move for an extension of the Post-Class deadline." ECF No. 502 at 8. But the March, April, and June hearings all took place before Congress acted in July to provide the Department with the funding necessary to address post-class applications—an act that forms the basis of the motion. And insofar as Plaintiffs are suggesting that Government counsel was obligated to disclose (at the August 2025 hearing) pre-decisional and deliberative Executive Branch communications about whether and how to spend the resources Congress provided to FSA in the One Big Beautiful Bill Act, they are mistaken. In fact, the law protects Executive Branch officials "from being 'forced to operate in a fishbowl'" in that manner. *Cf. U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (citation omitted). *See also Braniff Airways, Inc. v. Civil Aeronautics Bd.*, 379 F.2d 453, 462 (D.C. Cir. 1967) ("[A] party is not entitled to probe the deliberations of administrative officials, oversee their relationship with their assistants, or screen the internal documents and communications they utilize." (citation omitted)). Nor may an attorney reveal

confidential information related to the representation of a client, including pre-decisional deliberations about potential litigation motions. *See* Model Rules of Professional Conduct 1.6 (A.B.A. 2024).

### IV. Plaintiffs' Requests for an Order to Promptly Provide Full Settlement Relief to Each Affected Post-Class Applicant on the Agreement's Schedule and an Order for Defendants to Pay Plaintiffs' Attorney Fees Are Not Properly Before the Court.

In their opposition, Plaintiffs include a request that the Court "(i) order Defendants to promptly provide Full Settlement Relief to each affected Post-Class Applicant on a timetable . . . to follow the Settlements' original agreed-upon schedule; and (ii) order Defendants to pay Plaintiffs'" attorneys' fees and costs. ECF No. 502 at 21. The Court should disregard these requests for orders because (1) they have not been made by motion, (2) the first request is moot, and (3) the requests are insufficiently supported.

First, the Court should disregard these requests because a "request for a court order must be made by motion." Fed. R. Civ. P. 7(b). Because Plaintiffs have made no such motion, the Court should disregard them. Defendants are prejudiced by Plaintiffs' disregard of Rule 7(b), which has implications for, among other things, Defendants' time to respond and page limits imposed on the response.

Second, the Court should deny as moot Plaintiffs' request to order Defendants to "provide Full Settlement Relief to each affected Post-Class Applicant on a timetable set by the Court, with that timetable to follow the Settlement's original agreed-upon schedule[.]" ECF No. 502 at 21. A request for relief is moot when the Court has already issued relief. *See Conservation Force, Inc. v. Jewell*, 733 F. 3d 1200, 1204 (D.C. Cir. 2013) (Mootness "occurs when, among other things, the court can provide no effective remedy because a party has already 'obtained all the relief that [it has] sought.'" (citation omitted)). Here, the order that Plaintiffs request mirrors provisions of the Agreement, and the Court has already "incorporate[ed] the Settlement Agreement" into the judgment. ECF No. 502 at 3. Defendants are thus already currently compelled by the force of a court order to provide Full Settlement Relief "to each affected Post-Class Applicant" according to the "timetable [that] follow[s] the Settlement's original agreed-upon schedule." *Id*. at 21. Entry of the redundant order that Plaintiffs demand will do nothing to affect the behavior of Defendants toward the Plaintiffs or the post-class. *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). True, Defendants are seeking modification of the Court's judgment. But insofar as the Court agrees with Plaintiffs that Defendants' modification request should be denied, there is no need for a

redundant order on top of an order denying Defendants' motion.

Third, Plaintiffs' request for attorneys' fees and costs, ECF No. 502 at 21, violates Federal Rule of Civil Procedure 54(d)(2). Even if misconstrued as a fees motion,[18] the request must be denied because the motion fails to include the necessary contents of a motion for fees. Fed. R. Civ. P. 54(d)(2)(B). Among other requirements, it must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award" and "state the amount sought or a fair estimate of it[.]" *Id*. Plaintiffs' brief fails to satisfy any of the Rule 54(d) criteria. ECF No. 502 at 20. The law is clear that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (citation omitted).

## CONCLUSION

The Court should grant Defendants' motion and modify the judgment to allow them until July 28, 2027 to adjudicate post-class applications before requiring that post-class applications receive full settlement relief regardless of the merits of the applications.

Dated: November 28, 2025

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*

---

[18] Rule 54(d) emphasizes that such a claim "must be made by motion" except in circumstances not at issue here. Fed. R. Civ. P. 54(d)(2)(A). Again, the request is not made by motion and Plaintiffs have identified no applicable Rule 54(d) exception.