UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>LINDA MCMAHON, in her official capacity as Secretary of the United States Department of Education, and THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>     Defendants. | Case Number: 19-cv-03674-HSG<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT pursuant to Civil Local Rule 16-10(d).

**I.    Procedural History:**

Plaintiffs are a certified class of hundreds of thousands of federal student loan borrowers who sought relief from the Department of Education (Department) under the Higher Education Act's borrower defense (BD) provision, 20 U.S.C. § 1087e(h). *See generally* Complaint, ECF No. 1. The Defendants are the Department and the Secretary of Education in her official capacity.

*Litigation Background*

This history of this litigation is ably summarized in the Order Granting Settlement Approval, ECF No. 345. For context: In 2015, a series of state and federal investigations revealed widespread misconduct by Corinthian Colleges, Inc., a sprawling for-profit college chain with

more than 70,000 students. *See* U.S. Dep't of Educ., *U.S. Department of Education Fines Corinthian Colleges $30 Million for Misrepresentation* (Apr. 14, 2015), https://perma.cc/348D-5CKX. Corinthian quickly closed and filed for bankruptcy, leaving thousands with debt from schools that had misled them into enrolling. The closure of numerous other for-profit colleges followed. In the wake of this and other scandals, the Department faced a growing backlog of applications for BD relief. See ECF No. 345 at 2-3. Plaintiffs filed this class action lawsuit to challenge the Department's failure to timely process that backlog.

Following the District Court's certification of the class (ECF No. 46), the parties appeared to reach a settlement, under which the Department agreed to process all pending BD applications within the following eighteen months. The Court granted preliminary approval of this settlement in May 2020. ECF No. 103. However, in August 2020, Plaintiffs filed a motion for a subsequent case management conference, arguing that many of the Department's decisions adjudicating class member applications were "not final decisions on the merits as contemplated by the settlement agreement." . ECF No. 108. The parties litigated whether these decisions constituted legitimate "final decisions" on the merits of the applications. The district court then denied final approval of the settlement, concluding that there had been no "meeting of the minds" on the "rights and duties" the settlement imposed, such that there had been no actual agreement in the first place. ECF No. 146 at 10. In the Court's opinion, it noted that "[c]lass counsel [had] discovered that the Secretary had been issuing alarmingly-curt denial notices for several months," which "d[id] not explain the evidence reviewed or the law applied." *Id*. at 5, 8.

After another year and a half of litigation and discovery, including Plaintiffs filing a Supplemental Complaint (ECF No. 198) and another round of summary judgment briefing (ECF No. 245), the parties reached a new settlement. The Settlement Agreement was executed and submitted for preliminary approval on June 22, 2022. ECF Nos. 246, 246-1. The Court (Alsup, J.) granted final approval on November 16, 2022, ECF No. 345, and the Settlement Agreement became effective on January 28, 2023, ECF No. 382 at 10.

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

### *The Settlement Agreement*

The Settlement addresses three groups of borrower defense applicants. The first group, generally referred to as the Automatic Relief Group (ARG) or the Exhibit C group, consists of class members who applied for BD on or before June 22, 2022, and whose applications relate to one of the schools listed in Exhibit C to the settlement agreement. ECF No. 345 at 5. The motion for final approval explained that "indicia of misconduct" at these "schools, including the high volume of Class Members with applications related to the listed schools, led the Department to conclude that these Class Members were entitled to summary settlement relief without any further time-consuming individualized review process." ECF No. 323 at 11. These class members were to receive "Full Settlement Relief" by January 28, 2024. *See* ECF No. 382 at 10 (Effective Date of the Settlement Agreement is January 28, 2023); Settlement Agreement at 6, ¶ IV.A.1 (settlement relief must be effectuated for ARG within one year of Effective Date). The Settlement Agreement defines Full Settlement Relief as the "(i) discharge of all of a Class Member's Relevant Loan Debt, (ii) a refund of all amounts the Class Member previously paid to the Department toward any Relevant Loan Debt . . . , and (iii) deletion of the credit tradeline associated with the Relevant Loan Debt." Settlement Agreement at 4, ¶ II.S.

The second group, generally referred to the Decision Group, consists of class members who applied for BD on or before June 22, 2022, but did not attend an Exhibit C school. These class members were divided into five tranches based on the date they applied, and the Department committed to providing them with decisions on their BD applications, using a set of streamlined decision criteria, according to a set of rolling deadlines. *See* ECF No. 345 at 5; Settlement Agreement at IV.C.1-3. If a class member's application was approved, they would receive Full Settlement Relief within one year of the date of their approval notice. Settlement Agreement at 11, ¶ IV.C.9. If the Department failed to issue a decision by the applicable due date, the borrower would likewise be entitled to Full Settlement Relief. *Id.* at 10-11, ¶ IV.C.8. As of the date of this Statement, all decision deadlines for the Decision Group have passed, and there is only one relief deadline remaining: approved Decision Group Five borrowers must receive Full Settlement Relief

by July 28, 2026. There are also additional decision/relief deadlines for borrowers who revise and resubmit. *See* ECF No. 492-1 at Table 4.

The third group, known as the Post-Class Applicants, consists of borrowers who submitted BD applications between the Settlement's execution date and the final approval date. Settlement Agreement at 11, ¶ IV.D.1. The Settlement gave the Department three years from the Effective Date to decide these applications, using the standards in the BD regulations published by the Department on November 1, 2016 (81 Fed. Reg. 75,926). As with the Decision Group, if the Department missed that deadline and failed to issue a timely decision to a Post-Class Applicant, that borrower would be entitled to Full Settlement Relief. Settlement Agreement at 11, ¶ IV.D.2. In the event of missing the decision deadline, the Department is required to "provide the affected Post-Class Applicant with notice that the applicant will receive this relief within 60 calendar days following the expiration of the applicable deadline." *Id.* Relief for Post-Class Applicants is due no later than one year after the date on their notice of relief. *Id.* ¶ IV.D.3.

### *The Intervenors*

Three weeks after the parties moved for preliminary approval of the Settlement Agreement, four schools moved to intervene in the case as of right or, alternatively, for permissive intervention. ECF Nos. 254 (American National University and Lincoln Educational Services Corporation), 261 (Everglades College, Inc.), 265 (Chicago School of Professional Psychology). The schools—each of which had been the subject of law enforcement investigations and/or highly publicized consumer protection lawsuits resulting in multimillion-dollar settlements—asserted that their inclusion on the Exhibit C list would cause them reputational harm. *See generally id*. The schools also asserted that they had a right to notice and an opportunity to be heard before the government settled claims against the Secretary of Education by discharging student loans the government itself had issued. *See generally id.*

The Court held that the schools had "not met their burden of demonstrating they can intervene as of right," but allowed them permissive intervention "for the sole and express purpose of objecting to and opposing the class action settlement." ECF 322 at 2. The intervenors filed

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

briefs opposing final approval and were heard at the final fairness hearing. ECF Nos. 324–26. In its final approval order, the Court carefully addressed—and rejected—each of the intervenors' objections. ECF No. 345 at 9–25.

Three of the four schools appealed the final approval order, and they further sought a stay pending appeal. ECF Nos. 347–350. The Court denied the schools' request for a stay because they had shown neither irreparable injury nor likelihood of success on appeal. ECF No. 382. The Ninth Circuit also denied a stay pending appeal, agreeing with the district court that the schools "fail[ed] to demonstrate a sufficient probability of irreparable harm." Order at 3, *Everglades College v. Cardona*, No. 23-15049 (9th Cir. Mar. 29, 2023), Dkt. No. 19. The schools sought an emergency stay in the Supreme Court five days later, *Everglades College v. Cardona*, No. 22A867 (U.S. S. Ct. Apr. 4, 2023), which was summarily rejected, *see* Order List: 598 U.S., Order in Pending Case No. 22A867 (Apr. 13, 2023).

The parties and the three remaining intervenors then proceeded to merits briefing and argument before the Ninth Circuit. On November 5, 2024, the panel issued its decision, with the majority finding that the intervenors could not maintain an appeal of the final approval order because the settlement did not cause them any "formal legal prejudice." *Sweet v. Cardona*, 121 F.4th 32, 38 (9th Cir. 2024). One intervenor—Everglades College—sought *en banc* review from the Ninth Circuit, *see Everglades College v. Cardona*, No. 23-15049 (9th Cir. Dec. 20, 2024), Dkt. No. 94-1, which was denied on May 21, 2025, *Everglades College v. McMahon*, No. 23-15049 (9th Cir.), Dkt. No. 106. Everglades filed a petition for certiorari with the Supreme Court on October 17, 2025, *Everglades College v. McMahon*, No. 25-492, and both Plaintiffs and the Department recently opposed, *see id.* (filings of Jan. 21, 2026). The petition is currently pending.

### *The Parties' Post-Judgment Motions*

**Plaintiffs' Statement of Post-Judgment Procedural History:**

Pursuant to the Settlement, Exhibit C borrowers received approval notices on January 28, 2023, and the Department and its loan servicers began processing relief. But as the January 28, 2024, relief deadline approached, Plaintiffs' counsel began hearing from increasing numbers of

Class Members in the automatic relief group who had not received their discharge, refund, credit repair, or a combination thereof. *See* ECF No. 397-4 at 37–38 (Decl. of Reilly Loynd). Plaintiffs' counsel raised their concerns with the Department, who eventually acknowledged that as of February 15, 2024—nearly three weeks after the relief deadline—only 69% of Exhibit C borrowers had received discharge of their relevant federal student loans. *See* ECF No. 397-3 at 110 (February 16, 2024, letter from Department of Justice to Plaintiffs' Counsel). The parties engaged in a meet-and-confer process on the Department's breach of the first relief deadline, as required by the Settlement, but failed to reach consensus on how to cure it. Plaintiffs thus filed a motion to enforce the settlement agreement on March 19, 2024. ECF No. 397 ("Motion to Enforce"), asking the Court to provide Full Settlement Relief to every Class Member in the automatic relief group by May 31, 2024, or such other date as the Court deemed appropriate, *id.* at 17. That same day, the Court ordered the Department to notify its loan servicers that their presence was required at the April 24, 2024, hearing on the Motion to Enforce. ECF No. 399.

At the April 24 hearing, the Department explained that complications from complex consolidation loans[1] had caused the delay in delivering relief and proposed new timelines for delivering relief to borrowers based on the complexity of their loans. *See* Transcript of April 24, 2024 Hearing, at 13:21–14:5. After hearing argument in April 2024, the Court entered a Minute Entry. ECF No. 407 (Minute Entry). The Minute Entry included an updated, graduated schedule for delivering relief to remaining Exhibit C borrowers; set a schedule of three status hearings in March, June, and July 2024 in which counsel for the parties and servicers were required to attend in-person; and required the Department, the servicers, and Plaintiffs' counsel to meet in person on a bi-weekly basis in Washington, D.C., to resolve issues as they arose in between those three

---

[1] Federal student loan borrowers are able to combine multiple loans from one or more schools into what is called a consolidation loan. Many class members started with a series of loans that were taken out to attend an Exhibit C school, which were serviced by one loan servicer, and then combined those loans together—with each other, with loans from other Exhibit C schools, and/or with loans from non-*Sweet* schools—into consolidation loans, which frequently were serviced by a different servicer. Consolidation loans can also themselves be consolidated, sometimes several more times. In this litigation, the parties have referred to consolidation loans that contain both BD-related and non-BD-related underlying loans as "mixed" or "complex" consolidation loans.

Page **6** of **19**

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

status hearings. ECF No. 407 (Minute Order). The Court also ordered the Department to respond to Class Members' questions and complaints through the FSA Ombudsman. *Id.*

At the status hearing in June 2024, the Court approved a process that the parties had negotiated to deal with complex consolidation loans. *See* Transcript of June 13, 2024, Hearing at 12:9–13:3, 15:15-25. In short, the Department would discharge the currently outstanding consolidation loan (the "terminal" consolidation loan) and provide refunds for payments on those loans without regard to whether some portion of the underlying loans came from a school that was not related to the class member's borrower defense claim. *Id.* The Department would then work backward to see whether the class member was entitled to an additional refund on payments made before the terminal consolidation loan was created. *Id.* at 16:3-18. The Department's other attempts at disentangling these consolidation loans had proven to be excessively slow and error-prone; the parties believed that the terminal consolidation loan process could deliver timely relief. *See id.* at 11:2–12:13. Using the terminal consolidation loan process, the Department was able to substantially (98.03%) complete Full Settlement Relief to Exhibit C class members by September 25, 2024. ECF No. 433 at 2.

In September 2024, the Department admitted that it was again in material breach of the Settlement, because it had failed to deliver timely relief to the first tranche of approved Decision Group applicants. *See* Transcript of Sept. 26, 2024, Hearing at 17:13-18. The Department, however, did not agree to use the terminal consolidation loan process for the Decision Group and maintained it could come up with another way of calculating relief—albeit one that would result in it missing the next Decision Group deadline as well. *Id.* at 42:7–43:22. Given the missed and approaching deadlines, the Court ordered the Department to use the terminal consolidation loan process for the first two tranches of the Decision Group, but allowed it to move for a change in procedure for the remaining three Decision Groups and the Post-Class. ECF No. 434.

The Department did file such a motion, and the Court held a hearing on the Department's proposal in December 2024. After argument, the Court determined that the Department had not made the necessary showing to support its claim that its new proposed process would be either

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

feasible or timely. *See* Transcript of Dec. 12, 2024, Hearing at 23:17–24:15. The Court ordered that the terminal consolidation loan process should be used for all remaining Decision Groups and the Post-Class, although it denied the Department's motion without prejudice to the Department re-filing it by January 31, 2025, "with a better record." ECF No. 451. The Department did not re-file its motion.

The parties continued to attend regular status hearings and in-person meet-and-confer sessions throughout 2025 (although the Washington, D.C., meetings were eventually moved to a monthly instead of biweekly basis). In order to effectuate the Court's orders that Plaintiffs' Counsel should "look over the shoulder" of the Ombudsman's office and help resolve class member complaints, *see* ECF Nos. 414 and 444, the parties also instituted weekly virtual meetings between Plaintiffs' counsel and a group of staff from the Ombudsman's office, with a longer in-person meeting once a month to coincide with the in-person meeting between Plaintiffs' counsel, the Department, and the servicers (which the services and their counsel, with the Court's authorization, ECF No. 477, now attend virtually).

On November 6, 2025, the Department filed its first Rule 60(b) Motion for Relief from Judgment seeking to delay the deadline for Post-Class decisions by 18 months, to July 28, 2027. *See generally* ECF No. 492. The Department did not meet and confer with Plaintiffs before filing this motion, instead asserting that the Settlement's meet-and-confer process requirements did not apply. *See id.* at 10–11. Plaintiffs opposed, and the Court held a hearing on December 11, 2025.

After argument, the Court ruled from the bench. It granted in part and denied in part the Department's motion. *See* Transcript of Dec. 11, 2025, Hearing at 79:19–81:6. With respect to Post-Class applications related to Exhibit C schools, the Court held that the original deadline of January 28, 2026, would remain in place. *Id.* at 79:20-22. With respect to Post-Class applications from non-Exhibit C schools, however, the Court granted the Department an extension until April 15, 2026, to decide those applications, with an option to move for further extension if the Department could show significant and good-faith progress on the adjudications. *Id.* at 80:9-25.

The Department has not, to date, filed a notice of appeal of the December 11 order. Nor did the Department seek a stay of that order, either from the District Court or the Ninth Circuit.

On January 22, 2026, the Department filed a second Rule 60(b) Motion for Relief from Judgment, asking this Court to reconsider Judge Alsup's December 11 order. ECF No. 514. That motion also contained within it a request for administrative relief for a "stay [of] Defendants' deadline for issuing notice to post-class members" of their entitlement to relief. *Id.* at 23. Pursuant to Local Rule 7-11(b), Plaintiffs filed an opposition specifically to that request for administrative relief on January 23, 2026. ECF No. 515. Plaintiffs' main brief in opposition to the second Rule 60(b) motion is due on February 5, 2026. That motion is currently scheduled to be heard on March 26, 2026. *See* ECF No. 514 at 1.

Additionally, the Department filed two administrative motions on January 29, 2026: one requesting that its second Rule 60(b) motion be decided without hearing or, in the alternative, for the hearing date to be advanced, ECF No. 517, and the other requesting an extension of the Department's deadline to file a notice of appeal of the December 11 order, ECF No. 518. Plaintiffs filed oppositions to both administrative motions on January 30, 2026. ECF Nos. 519, 520.

**Defendants' Statement of Post-Judgment Procedural History:**

<u>Plaintiffs' Post-Judgment Motions</u>

Pursuant to the Settlement, Exhibit C borrowers received approval notices on January 28, 2023, and the Department and third-party loan servicers began processing discharges. But on February 2, 2024, Plaintiffs notified Defendants of their allegations that Defendants were in material breach of the Agreement. *See* ECF No. 397-3 at 109. The parties engaged in a meet-and-confer process on the issue. As Defendants explained to Plaintiffs' counsel by letter dated February 16, 2024, the issues turned on the practical realities of federal student loan administration. *See id* at 110. Insofar as "discharge" is construed to mean not only the Department's recognition of a borrower defense to repayment, but also the removal of information about loan balances described in the systems of records of third-party loan servicers, the Department can do little more than instruct loan servicers to take action removing those balances from their systems of records.

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

*See id*. In February 2024, the Department explained that it "sent a total of 251,549 discharge requests to the relevant servicers, accounting for all 195,993 Exhibit C borrowers." *Id*. Nevertheless, Plaintiffs filed a motion to enforce the settlement agreement on March 19, 2024, ECF No. 397, asking the Court to order Defendants "to effectuate Full Settlement Relief for each and every member of the automatic relief group" by a certain date, ECF No. 397-1 at 2, even though the Department had already requested that third-party loan servicers effectuate the required discharges, ECF No. 397-3 at 110, and those servicers are not parties to this action. That same day, the Court ordered the Department to notify its loan servicers that their presence was required at a hearing that took place on April 24, 2024. ECF No. 399.

After the hearing, the Court entered a Minute Entry. ECF No. 407 (Minute Entry). The Minute Entry included an updated schedule for delivering relief to remaining Exhibit C borrowers; set a schedule of three status hearings in March, June, and July 2024 in which counsel for the parties and servicers were required to attend in-person; and required the Department, the servicers, and Plaintiffs' counsel to meet in person on a bi-weekly basis in Washington, D.C., to resolve issues as they arose in between those three status hearings. *Id*. The Minute Entry also provided that "Questions from borrowers to be resolved at these meetings may be directed to Bonnie Latreille at the following email address: address: bonnie.latreille@ed.gov and plaintiffs counsel." *Id*.

When the revised schedule for delivering relief to Exhibit C borrowers was not met, the Department suggested a streamlined approach to accelerate the provision of such relief to those specific class members with mixed consolidations loans—which has come to be known as the Exhibit C terminal loan methodology. *See, e.g.*, Defs.' Notice, ECF No. 421 (July 11, 2024) ("Defs.' Notice"); Defs.' Mot. to Approve Settlement Relief Process, ECF No. 443. This approach was easier to implement because it included discharging the terminal consolidation loan in full. While quicker, the relief provided has been overbroad and provides a windfall benefit to certain borrowers because it requires discharging ineligible debt that is not the subject of an eligible

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

borrower defense application. *Id*. The Court first approved and ordered this methodology to be applied to Exhibit C borrowers and borrowers in Decision Groups 1 and 2. *See* Defs.' Notice; Minute Entry, ECF No. 416 (June 13, 2024), Minute Entry, ECF No. 434 (Sep. 26, 2024). Eventually, despite concerns raised by Defendants about the fiscal responsibility of continuing to apply the Exhibit C terminal loan methodology outside of the limited context in which it was developed, the Court ordered that the methodology "be used for Decision Group Three, Decision Group Four, Decision Group Five, and the Post-Class Applicants." Minute Entry, ECF No. 451 (Dec. 12, 2024).

The Department has come into substantial compliance with its obligation to provide relief to the Exhibit C Group, and has substantially met the decision deadlines for all five Decision Groups. *See* Decl. of James Bergeron ¶ 30 ("Bergeron Decl."), ECF No. 492-1.

Defendants' Post-Judgment Motions

The post-class applicant pool exceeds by more than 200,000 the number of applications that were submitted in any comparable five-month period before or after the Settlement Agreement was executed—an at least 523% increase. In response to the enormous size of the post-class, the Department repeatedly sought implementation funding from Congress to gain sufficient staffing resources to adjudicate all post-class applications by January 28, 2026. But Congress repeatedly rejected the Department's funding requests. It was not until July 2025 that Congress changed course and provided FSA with adequate funding. Shortly after Congress appropriated $1 billion to FSA in July 2025, the Department worked to develop and finalize budget plans and conducted market research to hire contract attorneys. Then the Government expeditiously moved for modification of the Court's final judgment to account for achievability given Congress's post-judgment funding decisions. Specifically, on November 6, 2025, the Department filed a Rule 60(b) Motion for Relief from Judgment seeking a reasonable additional time period to process post-class applications—until July 28, 2027. *See generally* ECF No. 492. Plaintiffs opposed, and the Court held a hearing on December 11, 2025.

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

After argument, the Court ruled from the bench. It granted in part and denied in part the Department's motion. *See* Transcript of Dec. 11, 2025, Hearing at 79:19–81:6. With respect to post-class applications related to Exhibit C schools, the Court held that the original deadline of January 28, 2026, would remain in place. *Id.* at 79:20-22. With respect to post-class applications from non-Exhibit C schools, however, the Court granted the Department an extension until April 15, 2026, to decide those applications, with an option to move for further extension if the Department could show sufficient progress on its mass hiring plan. *Id.* at 80:9-25.

On January 22, 2026, the Department filed a second Rule 60(b) Motion for Relief from Judgment, asking this Court to reconsider Judge Alsup's December 11 order. ECF No. 514. Because the motion is time sensitive, Defendants respectfully requested a decision on or before March 2, 2026. *Id*. at 23. Defendants indicated that, if the Court needs additional time to address the motion, it may consider administratively staying Defendants' March 30 deadline for issuing notice to post-class members under the Agreement. Plaintiffs construed that paragraph as a motion arising under Local Rule 7-11(b) and Plaintiffs filed an opposition specifically to that request on January 23, 2026. ECF No. 515. Plaintiffs are wrong to consider that request as arising under Local Rule 7-11(b). Rather, in Defendants' view, the power of the Court to issue an order staying the notice deadline exists by virtue of the all writs statute, 28 U.S.C. § 1651, which authorizes the Court to "issue all writs necessary or appropriate in aid of [its] jurisdiction[]" to meaningfully consider Defendants' request for Rule 60(b) relief before it becomes futile. Plaintiffs' opposition to Defendants' second Rule 60(b) motion is due on February 5, 2026.

Additionally, the Department filed two administrative motions on January 29, 2026: one requesting that its second Rule 60(b) motion be decided without hearing or, in the alternative, for the hearing date to be advanced, ECF No. 517,[2] and the other requesting an extension of the Department's deadline to file a notice of appeal of Judge Alsup's December 11 order, ECF No.

---

[2] Defendants were required to notice the motion for March 26, 2026, because that was the next date available on the Court's hearing calendar.

Page **12** of **19**

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

518. Plaintiffs filed oppositions to both administrative motions on January 30, 2026. ECF Nos. 519, 520.

**II.      Proposals for the Remainder of the Case Process:**

Pending before the court are the Department's motions (1) for relief under Rule 60(b), (2) for a ruling without a hearing or for a specially set hearing date on its Rule 60(b) motion, and (3) for an extension of the deadline to appeal the December 11, 2025, order.

**Plaintiffs' Statement:**

1. Ongoing Enforcement Proceedings

The Department has ongoing obligations under the Settlement Agreement to deliver settlement relief and, for a certain group of Post-Class Applicants, decisions on their applications. As of the parties' most recent in-person meeting on January 22, 2026, relief for the Automatic Relief Group was 99.9% completed; relief for Decision Group One was at 98+% completion; relief for Decision Group 2 was at 98+% completion; relief for Decision Group Three was at 98+% completion; and relief for Decision Group Four (whose relief deadline was on January 28, 2026) was at 96.6% completion;. Relief data for Decision Group 5 (whose relief deadline is on July 28, 2026) is not yet available, according to the Department. Relief for approved Post-Class Applicants and those Exhibit C Post-Class Applicants who did not receive a decision by the January 28, 2026, deadline will be due within one year of the date those borrowers receive notice of their approval or their entitlement to relief due to expiration of the deadline, respectively (and in any event, no later than March 29, 2027, *see* Settlement Agreement, ECF No. 246-1, ¶¶ IV.D.2-3). Post-Class Applicants whose borrower defense applications do not relate to an Exhibit C school are due to receive decisions by April 15, 2026; if they do not receive decisions by that date, they will be entitled to Full Settlement Relief.

Plaintiffs believe that the ongoing meet-and-confer schedule ordered by the Court has proven critical to facilitating the implementation of the Settlement. Plaintiffs request that the Court (1) continue requiring representatives from Plaintiffs' counsel, the Department, and the Department of Justice to meet in person once per month in Washington, D.C., with representatives

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

from the servicers to attend virtually; and (2) continue requiring representatives of Plaintiffs' counsel and the Federal Student Aid Ombudsman's Office to meet virtually once per week, and in person once per month in Washington, D.C., to collaborate on resolving class members' complaints.

Plaintiffs note that the Court ordered these meetings as part of enforcement proceedings related to Defendants' repeated material breaches of the Settlement Agreement. The Department admitted to violations of Paragraphs IV.A.1 and IV.C.9 of the Settlement in April 2024 and September 2024, respectively, and in December 2025 the Court granted Plaintiffs' motion to enforce the settlement as to anticipatory breach of Paragraph IV.D.1. *See* ECF No. 403 at 1–2; Minute Order, ECF No. 434; Transcript of Dec. 11, 2025 Hearing at 82:11-13. Each time, Plaintiffs moved for relief pursuant to Paragraph V.B.2 of the Settlement, which enables them to obtain "an order requiring Defendants to promptly provide Full Settlement Relief to each affected individual on a schedule set by the Court." ECF No. 246-1 at 16. The Court did issue such orders, and instituted the regular meet-and-confer schedule to assist with the implementation of those orders. Plaintiffs are merely seeking to maintain the status quo.

2. Defendants' Pending Motions

Plaintiffs have filed responses to Defendants' pending administrative motions, *see* ECF Nos. 519, 520, and maintain, as stated therein, that Defendants' pending Rule 60(b) motion is not time-sensitive. Nonetheless, Plaintiffs are prepared to argue that motion at such time as the Court might order.

Plaintiffs will file their opposition to Defendants' pending Rule 60(b) motion this Thursday, February 5, 2026.

3. Defendants' Proposed Upcoming Motion

Defendants state *infra* that they intend to file "a Rule 60(b) motion to further modify the judgment with respect to post-class applications associated with non-Exhibit C schools." Plaintiffs do not take a position on this hypothetical motion at this time, except that Plaintiffs disagree with Defendants' contention that "the Court would be able to provide meaningful relief

as to this group after April 15, 2026." Unless and until this Court grants a motion to alter the April 15, 2026 decision deadline, the right to Full Settlement Relief will vest on April 16 for any Post-Class Applicants to whom the Department did not deliver a timely decision on the merits of their borrower defense application. As Plaintiffs explained in their Opposition to Defendants' Administrative Motion for Ruling Without Hearing, the notice deadline following the decision deadline is not relevant to any Post-Class Applicant's entitlement to relief. ECF No. 519 at 1–2.

**Defendants' Statement:**

1. *Motions Pending*

Pending before the Court are the Department's motions (1) for relief under Rule 60(b), (2) for a ruling without a hearing or for a specially set hearing date on its Rule 60(b) motion, and (3) for an extension of the deadline to appeal the December 11, 2025, order. Because the Defendants' pending Rule 60(b) motion is time sensitive, Defendants respectfully requested a decision on or before March 2, 2026, ECF No. 514 at 23, and have filed an administrative motion for a determination without hearing or a specially set hearing date, ECF No. 517. Should the Court desire a hearing on the motion, Defendants will be prepared to discuss scheduling a timely hearing date at the case management conference.

2. *Scheduling for Anticipated Motions Practice*

In addition to Defendants' pending motion for relief under Rule 60(b), Defendants anticipate filing a Rule 60(b) motion to further modify the judgment with respect to post-class applications associated with non-Exhibit C schools, consistent with the Court's December 2025 invitation. In December 2025, the Court extended the adjudication deadline for post-class applicants until April 15, 2026, "with the caveat that the subsequent judge is invited to give more time if the Government shows progress, satisfactory progress" on its plan to hire and train additional contract attorneys needed to address the post-class applicant pool. Tr. of Proceedings at 82:5-8 (Dec. 11, 2025).

Defendants would appreciate the Court's guidance as to when it would prefer to consider this motion. Defendants anticipate being able to provide a more detailed update on its mass hiring

plan as time progresses.  *See* ECF No. 514-1 ¶ 10 (referencing the Department's projections for onboarding and training new attorneys).  On the other hand, Plaintiffs must have sufficient time to review and file a response to the motion before it would become futile.  Because the April 15, 2026, date triggers a 60-day period for Defendants to provide written notice to post-class applicants without final decisions on their applications that they will receive Full Settlement Relief, Settlement Agreement at 11, ¶ IV.D.2, the Court would be able to provide meaningful relief as to this group after April 15, 2026, but Defendants would appreciate if they did not have to prepare notices that may not have to be distributed if the Court grants the motion.

       3.  *Plaintiffs' Requests for Further Supervision and Monitoring Orders*

In Plaintiffs' position statement, they request that the Court (1) continue requiring representatives from Plaintiffs' counsel, the Department, and the Department of Justice to meet in person once per month in Washington, D.C., with representatives from the servicers to attend virtually; and (2) continue requiring representatives of Plaintiffs' counsel and the Federal Student Aid Ombudsman's Office to meet virtually once per week, and in person once per month in Washington, D.C., to collaborate on resolving class members' complaints.

Plaintiffs' requested orders violate the Settlement Agreement, as incorporated into the Final Judgment.  In particular, the Court lacks jurisdiction to supervise, monitor or issue orders in this Action, except to the extent that Plaintiffs invoke the Court's jurisdiction pursuant to the procedures set forth in Paragraph V.  Settlement Agreement at 21, ¶ V.F.  And the type of supervision and monitoring orders that Plaintiffs demand is not any of the relief explicitly specified for each particular claim described in Paragraph V.  *Id*. at 15, ¶ V.A ("[T]he Court shall retain jurisdiction only to order the relief explicitly specified for each particular claim[.]").  Moreover, Plaintiffs are wrong to suggest that this Court has ever ordered all of the supervision and monitoring Plaintiffs now seem to demand in their position statement.  In particular, the Court has never ordered that the parties meet on a weekly basis.  After the Department's January 2024 breach of the agreement, the Court ordered the parties and servicers to meet bi-weekly in person "to make sure that progress is being made . . .." 4/24/2024 Tr. at 31; *see also* ECF 407.  At some

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

point in the months following that order, the parties and servicers stopped meeting bi-weekly in person and instead began to meet once per month in person. In March 2025, the Court ordered that the monthly in-person meetings should continue. ECF 463 (3/13/2025 Minute Order). As noted above, the servicers and their counsel now attend those meetings virtually. Defendants have not sought relief from the order to meet monthly in person with Plaintiffs' counsel.

Separately, the Court also ordered the Department to give Plaintiffs' counsel access to the Federal Student Aid Ombudsman's Office to "look over the shoulder of the ombudsman." ECF 414 (Minutes of 5/23/2024 hearing). The Court did not specify in that order how frequently access to the Ombudsman staff should be made available to Plaintiffs' counsel. Over time, the frequency of the meetings with the Ombudsman staff increased such that there have been generally three weekly virtual meetings with Ombudsman staff each month in addition to a lengthy in-person Ombudsman meeting every month. Such frequent meetings are a drain on staff time and interfere with the ability of staff to perform case work (*i.e.,* actually working through borrower complaints).

Rather than litigate these matters in the context of a joint case management statement, should Plaintiffs desire any further orders from the Court, the Court should direct them to file a motion. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."). That would provide Defendants with an opportunity to review the legal and factual basis for the requested order and provide a meaningful period for Defendants to formulate a written response, consistent with the Federal Rules of Civil Procedure. In the meantime, Defendants will not violate any order that has been issued in this action.

### III. Parties' Positions on ADR

**Plaintiffs' Statement:** The Settlement prescribes specific procedures for its enforcement in the event that the parties are unable to resolve disputes regarding implementation through the meet-and-confer process. To the extent the Court believes it would be helpful, Plaintiffs are willing to participate in a Mandatory Settlement Conference to discuss with the Court the processes for effectuating the final stages of Settlement.

**Defendants' Statement:** Final Judgment has already been entered in this action. Unless Plaintiffs are seeking modification of the judgment itself, the Settlement limits the procedures for enforcement and those procedures preclude jurisdiction to supervise Defendants, jurisdiction to monitor Defendants, or jurisdiction to issue orders—including orders compelling mediation—other than those specific orders provided for in Paragraph V. Settlement Agreement at 21, ¶ V.F; *id*. at 15, ¶ V.A ("[T]he Court shall retain jurisdiction only to order the relief explicitly specified for each particular claim[.]").

Dated: February 3, 2026

*/s/ Rebecca C. Ellis*
EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS (*pro hac vice*)
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
NOAH ZINNER (SBN 247581)
nzinner@ppsl.org
PROJECT ON PREDATORY STUDENT LENDING
769 Centre Street
Jamaica Plain, MA 02130
Tel.: (617) 322-2808

*Attorneys for Plaintiffs*

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*

JOINT CASE MANAGEMENT STATEMENT
Case Number: 19-cv-03675-HSG

**RULE 5-1(i)(3) ATTESTATION**

I, Liam C. Holland, attest pursuant to Rule 5-1(i)(3) of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California that I have obtained the concurrence in the filing of the above from Plaintiffs' counsel.

/s/ *Liam C. Holland*
LIAM C. HOLLAND