EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS (*pro hac vice*)
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
NOAH ZINNER (SBN 247581)
nzinner@ppsl.org
PROJECT ON PREDATORY STUDENT
LENDING
769 Centre Street
Jamaica Plain, MA 02130
Tel.: (617) 390-2669

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> LINDA MCMAHON, in her official capacity as Secretary of the United States Department of Education, and <br><br> THE UNITED STATES DEPARTMENT OF EDUCATION, <br><br> *Defendants*. | Case No. 19-cv-03674-HSG <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT** <br><br> **HEARING DATE: March 26, 2026** <br><br> (Class Action) <br> (Administrative Procedure Act Case) |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. 1

II.   BACKGROUND ................................................................................... 1

III.  ARGUMENT ....................................................................................... 9

    A.    THE MOTION SHOULD BE DENIED AS PROCEDURALLY IMPROPER .... 9

        i.    The Motion Is Not Authorized by Any Federal or Local Rule ..................... 9

        ii.   The Relief Sought by the Department Is Not Available .............................. 11

    B.    THE MOTION FAILS ON ITS MERITS ........................................................... 15

        i.    The Motion Is Untimely ........................................................................ 16

        ii.   There Has Been No Significant Change in Fact or Law ............................. 17

        iii.  The Equities Favor Plaintiffs ................................................................. 18

        iv.   The Department's Claims of Error Are Unfounded ................................... 20

        v.    Relief Is Not Available Under Rule 60(b)(6) ............................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Alden v. AECOM Tech. Corp.*, No. 18-cv-03258, 2021 WL 2258505 (N.D. Cal. June 3, 2021) ................................................................................................................ 10

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ........................................................... 11

*Ashford v. Steuart*, 657 F.2d 1053 (9th Cir. 1981) (per curiam) ................................... 16

*Bateman v. U.S. Postal Serv.*, 231 F.3d 1220 (9th Cir. 2000) ...................................... 11

*Byrne v. Oregon One, Inc.*, No. 16-cv-01910, 2023 WL 2755301 (D. Or. Apr. 3, 2023) ........... 14

*Cassidy v. Tenorio*, 856 F.2d 1412 (9th Cir. 1988) ...................................................... 15

*Chafin v. Chafin*, 568 U.S. 165 (2013) ........................................................................ 11

*Coleman v. Brown*, 922 F. Supp. 2d 1004 (E.D. Cal. 2013) ................................ 15, 17, 18

*Conservation Nw. v. Sherman*, 715 F.3d 1181 (9th Cir. 2013) ..................................... 15

*Daria v. Sapient Inc.*, No. 17-cv-05453, 2018 WL 3109590 (N.D. Cal. June 25, 2018) ........... 10

*DeWeerth v. Baldinger*, 38 F.3d 1266 (2d Cir. 1994) ................................................... 14

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. 13-cv-04513, 2019 WL 2059661 (N.D. Cal. May 9, 2019) ................................................................ 9, 10

*Fed. Trade Comm'n v. AH Media Grp., LLC*, 339 F.R.D. 612 (N.D. Cal. 2021) ................. 14, 16

*Fed. Trade Comm'n v. Apex Capital Grp.*, No. 18-cv-9573, 2021 WL 7707269 (C.D. Cal. Sept. 3, 2021) ................................................................................................ 22

*Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461 (9th Cir. 2023) ..................................... 13, 14

*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) ....................................................... 15, 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672, 2017 WL 2438645 (N.D. Cal. June 6, 2017) ...................................... 10, 11

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501 (1986) .............. 15

*Maraziti v. Thorpe*, 52 F.3d 252 (9th Cir. 1995) ......................................................... 14

*Morse-Starrett Prods. Co. v. Steccone*, 205 F.2d 244 (9th Cir. 1953) ............................ 1, 22

*Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) ................. 22

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992) ........................................ 15

*S.E.C. v. Coldicutt*, 258 F.3d 939 (9th Cir. 2001) ........................................................................ 15

*San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1197 (E.D. Cal. 2009) ...................................................................................................................... 9, 10

*United States v. Asarco Inc.*, 430 F.3d 972 (9th Cir. 2005) ......................................................... 15

*Warren v. City of Chico*, No. 21-cv-00640, 2025 WL 974068 (E.D. Cal. Mar. 31, 2025) .......... 16

**Other Authorities**

Jessica Blake, "McMahon Breaks Up More of the Education Department" (Nov. 18, 2025), *Inside Higher Ed*, https://www.insidehighered.com/news/government/student-aid-policy/2025/11/18/mcmahon-breaks-more-education-department ............................................. 6

**Rules**

Civ. L. R. 7-9 .................................................................................................................. 9, 10, 20

Fed. R. Civ. P. 60(b)(5) ............................................................................................................. 13

Fed. R. Civ. P. 60(c)(1) .............................................................................................................. 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I. INTRODUCTION

With its most recent motion, the Department of Education ("Department") moves, for a second time in three months, for "temporary relief from judgment" under Federal Rule of Civil Procedure 60(b). *See* ECF No. 493 ("First 60(b) Motion"); ECF No. 514 ("Second 60(b) Motion"). The Department sends mixed messages about whether it intends the present motion as a request that the Court "reconsider" Judge Alsup's December 11, 2025, partial denial of its First 60(b) Motion, or whether it is filing a new motion for identical Rule 60(b) relief based on some allegedly changed circumstance since the denial of the first motion. *See, e.g.*, Second 60(b) Motion at 1. In either case, the Department's motion should be summarily denied.

Although the instant motion plainly seeks a second look at arguments previously raised and rejected, it conforms to neither the procedural requirements nor limited substantive scope of a motion for reconsideration. As a successive request for relief from judgment, deliberately ignorant of the Court's prior order, the Second 60(b) Motion lacks any basis in logic or fact. As with the practically identical prior motion, the Department cannot now demonstrate that there are any significant and unanticipated changes in the facts that would justify the extraordinary step of granting it relief from a court order entered mere weeks ago, holding it to the agreed-upon terms of a contract that it willingly entered into. The Department's tortured attempts to manufacture such a "change" are based on misrepresentations of the record. To the extent the Department takes issue with the Court's December 11 order, it can seek an appeal. *See Morse-Starrett Prods. Co. v. Steccone*, 205 F.2d 244, 249 (9th Cir. 1953) ("The procedure provided by rule 60(b) is not a substitute for an appeal."). It has yet to do so. Nor should the Department be allowed to preserve in perpetuity its ability to seek appellate review of this Court's earlier ruling by filing substantively identical, successive motions for relief. The motion should be denied.

## II. BACKGROUND

This case has been extensively litigated over the course of more than six years. The last two of these years have involved Court oversight of the implementation of the Settlement. This involvement was triggered by the Department's established failure to meet the Settlement's deadlines for providing relief to the class.

1

2

3

4

5

6

7

8

9

10

11

        In brief: Plaintiffs are a certified class of federal student loan borrowers who exercised their right under the Higher Education Act to apply for borrower defense to repayment. Their applications described how their schools misled them into enrolling and taking out loans, using deceptive tactics such as inflated graduation and job placement rates, misleading estimates of the cost of a degree, and false promises about what kinds of jobs and salaries they could expect after graduating. *See, e.g.*, Complaint, ECF No. 1, ¶¶ 243, 263, 283, 304, 323, 339, 360. In May 2019, Plaintiffs filed this lawsuit, alleging that the Department had failed to adjudicate their BD applications in violation of the Administrative Procedure Act (APA). *See generally id.* By the time of filing, many class members had already been waiting years for a resolution to their claims. *Id.* ¶ 8. The Court certified the class in October 2019.[1] *See* Order Granting Motion for Class Certification, ECF No. 46.

12

13

14

15

16

17

18

19

20

        In spring 2020, the parties appeared to have reached a settlement, under which the Department agreed to clear the BD application backlog within the next 18 months. *See* Order Denying Class Settlement, to Resume Discovery, and to Show Cause at 5, ECF No. 146. But soon after preliminary approval, Plaintiffs and the Court learned the Department was sending out tens of thousands of *pro forma* denial notices, rejecting BD applications without explanation. *Id.* at 5-6. The Court denied approval of the settlement, finding that the parties' disagreement over the legitimacy of these denial notices showed that there had been no "meeting of the minds" to begin with. *Id.* at 10. It also found that evidence of bad faith and agency pretext justified discovery beyond the administrative record. *See id.* at 11-15. In ordering this discovery, the Court observed:

21

22

23

24

> Here, time is of the essence. We don't enjoy the luxury of seeking simply to forestall harm — it descended upon the class long ago. Our borrowers live under the severe financial burden of their loans. They have waited for relief, or at least decision, for eighteen months. Many have waited much longer; and many are still waiting.

25

26

27

28

---

[1] The class definition, which applies for all purposes, "including settlement," is: "All people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*, No. 17-7106 (N.D. Cal.)." ECF No. 46 at 14. The federal government—not any private entity—is the ultimate counterparty to all loan obligations at issue in the case.

*Id.* at 15. Based on materials adduced in discovery, Plaintiffs filed a supplemental complaint in the spring of 2021, detailing how the Department had developed a "presumption of denial" policy that led to an overwhelming number of meritorious applications being summarily rejected, in violation of the APA and the Due Process Clase. *See generally* Supplemental Complaint, ECF No. 198. They sought further relief, including an order to show cause why all pending borrower defense applications ought not be granted immediately. *See* Plaintiffs' Motion for Summary Judgment at 33, ECF No. 245.

On June 22, 2022, while summary judgment motions were pending, the parties reached a negotiated settlement of Plaintiffs' claims. *See* Motion for Preliminary Approval, ECF No. 246; Settlement, ECF No. 246-1. The Court approved the Settlement on November 16, 2022, after a fairness hearing. *See* Final Approval Order, ECF No. 345; Final Judgment, ECF No. 346.

Under the Settlement, class members were divided into three groups. The first, commonly referred to in the litigation as the "Automatic Relief Group" or the "Exhibit C Group," consisted of borrowers who had submitted BD applications on or before June 22, 2022, in relation to one or more of the 151 schools listed on Exhibit C to the Settlement. *See* Settlement ¶¶ III, IV.A.1. As the parties explained in their motion for final approval, "indicia of misconduct" at these schools, along with a high volume of borrower defense applications from their former students, "led the Department to conclude that these Class Members were entitled to summary settlement relief without any further time-consuming individualized review process." Joint Motion for Final Approval of Settlement at 11, ECF No. 323.

The second group consisted of class members who had applied for BD on or before June 22, 2022, but in relation to a school *not* listed on Exhibit C. Settlement ¶ IV.C.1. These class members, known as the "Decision Group," were divided into tranches according to their application date, and the Settlement set staggered six-month deadlines for the Department to decide their applications (*i.e.*, the first tranche would receive decisions within six months of the Settlement's Effective Date, the second set within 12 months of the Effective Date, etc.). *Id.* ¶¶ IV.C.1, IV.C.3.

The third settlement group, and the only one at issue in the present motion, was labeled the "Post-Class Applicants." *Id.* ¶ IV.D.1. As the Court held in the Final Approval Order, Post-Class Applicants are class members, because they meet the court-ordered class definition. *See* Final Approval Order at 22. Post-Class Applicants are borrowers who applied for BD between June 23, 2022 (the day after the Settlement was executed) and November 16, 2022 (the date of final approval). Settlement ¶ IV.D.1. The Settlement requires that Post-Class Applicants receive decisions on their BD applications within three years of the Effective Date of the Settlement— namely, by January 28, 2026, eight days ago as of this filing. *See* Order re Motion to Stay Judgment Pending Appeal at 10, ECF No. 382 (Effective Date of the Settlement was January 28, 2023); Settlement ¶ IV.D.1 ("Defendants will issue a final decision on the merits of a Post-Class Applicant's application no later than 36 months after the Effective Date."). If the Department does not issue a decision to a Post-Class Applicant by that date, the class member "shall receive" Full Settlement Relief.[2] Settlement ¶ IV.D.2.

The parties have engaged in significant post-judgment motion practice in this case. In March 2024, Plaintiffs filed a Motion to Enforce the Settlement, alleging that the Department had failed to provide the required relief to over 50,000 members of the Automatic Relief Group by the deadline for that group. *See generally* Motion to Enforce Settlement, ECF No. 397. The Department acknowledged that it was in material breach. *See* Defendants' Response to Plaintiffs' Motion to Enforce at 1–2, ECF No. 403. A series of supervisory status conferences with Judge Alsup followed over the next year and a half, in which the Court set certain revised deadlines for delivering relief and oversaw whether the Department met its deadlines. *See* Minute Orders, ECF Nos. 407, 414, 416, 434, 439, 451, 456, 463, 470, 477, 485.

---

[2] "Full Settlement Relief" is defined in the Settlement Agreement as "(i) discharge of all of a Class Member's Relevant Loan Debt, (ii) a refund of all amounts the Class Member previously paid to the Department toward any Relevant Loan Debt (including, but not limited to, Relevant Loan Debt that was fully paid off at the time that borrower defense relief is granted), and (iii) deletion of the credit tradeline associated with the Relevant Loan Debt." *Id.* ¶ II.S. "Relevant Loan Debt," in turn, is defined as "Direct Loans or FFEL loans associated with the school that is the subject of the Class Member's borrower defense application," including principal, interest, and fees. *Id.* ¶ II.W.

1    In addition to these regular hearings, Judge Alsup also ordered the parties to meet biweekly
2    in person in Washington, D.C., for meet-and-confer sessions to resolve issues with the distribution
3    of settlement relief. *See* Minute Order, ECF No. 407; *see also* Minute Order, ECF No. 456
4    (changing cadence to monthly in early 2025). In order to effectuate the Court's orders that
5    Plaintiffs' counsel should "look over the shoulder" of the Federal Student Aid Ombudsman's
6    office and help resolve class member complaints, *see* Minute Orders, ECF Nos. 414, 444, the
7    parties also instituted weekly virtual meetings between Plaintiffs' counsel and a group of staff from
8    the Ombudsman's office, with a longer in-person meeting once a month to coincide with the in-
9    person meeting between Plaintiffs' counsel, the Department, and the servicers.

10    In September 2024, the Department acknowledged that it had breached the relief deadline
11    for the first tranche of the Decision Group as well. *See* Minute Order, ECF No. 434. The
12    Department substantially met the deadlines for the next three tranches only after the Court ordered
13    the Department to follow the streamlined "terminal consolidation loan process" for loan discharge
14    and refunds for the remainder of the Decision Group and the Post-Class, *see id.*; Minute Order,
15    ECF No. 451; Transcript of Dec. 12, 2024 Hearing at 19:19-25, 23:20–24:21.[3]

16    Over the course of several Court-ordered meet-and-confer sessions and status conferences
17    throughout 2025, Plaintiffs repeatedly raised the question of whether the Department was on track
18    to meet its decision deadline for the Post-Class. The Department responded each time that it was
19    diligently working on Post-Class applications and that it understood that any Post-Class members
20    who didn't receive a decision by January 28, 2026, would automatically be entitled to Full
21    Settlement Relief. *See* Plaintiffs' Opposition to Defendants' Motion for Relief from Judgment at
22    6-8, ECF No. 502 ("Plaintiffs' First Opposition") (providing examples from February, March,
23    April, June, and August 2025).

24    After months of such representations to Plaintiffs and the Court, the Department abruptly
25    moved, on November 8, 2025, for relief from the Post-Class deadline under Federal Rule of Civil

26

27    ───────────────
[3] Counsel for the Department stated at the hearing on the First 60(b) Motion that the Department
28    was "not seeking to modify the Court's prior orders on, for example, terminal loan methodology."
Transcript of Dec. 11, 2025 Hearing at 56:10-11.

Procedure 60(b)(5). *See* First 60(b) Motion at 1. In that motion, the Department sought the same outcome it seeks now: a delay of the Post-Class decision deadline to July 28, 2027, *id.* at 1—a year and half from now, and *five years* after most of the Post-Class Applicants filed their BD applications. The Department set out an identical set of factual circumstances to what it now describes in its instant Motion, and made nearly identical arguments about why relief would be justified. For example, both motions rely on the Department's assertion that it is in the process of hiring contract attorneys to begin adjudicating Post-Class applications—attorneys who, the Department said in both motions, would not begin work until "late March or early April" at the soonest. *See* First 60(b) Motion at 20; Second 60(b) Motion at 22; Declaration of Richard Lucas ("Lucas Decl.") ¶ 10, ECF No. 514-1.[4] (The funds that are allegedly being used to hire them were appropriated on July 4, 2025. *See* First Rule 60(b) Motion at 20.)

Plaintiffs opposed. *See generally* ECF No. 502. In their opposition, Plaintiffs highlighted the numerous procedural defects in the First Rule 60(b) Motion: It violated the Settlement, which contains a procedure for altering deadlines in the case of "extraordinary circumstances," *id.* at 3 (quoting Settlement ¶ V.D.5), and was untimely, because the size of the Post-Class and the scale of the adjudication process was apparent to the Department no later than the date of final approval, *id.* at 6. Plaintiffs also argued that the motion failed on the merits because the equities favored the Plaintiffs, *id.* at 9–13; the Department's failure to meet the Post-Class decision deadline was the result of its own choices, *id.* at 13–15; the purported financial consequences of complying with the

---

[4] None of these contract attorneys have actually been hired. Rather, the Lucas Declaration states that the Department has issued a "Blanket Purchase Agreement" (a term it does not define) that will reportedly "allow the Department to issue task orders" that will, eventually, result in people being hired at some future point. Additionally, a Department representative averred in a declaration on November 14, 2025, that the Department "intends to post job openings in the next few weeks for eleven new [Borrower Defense Branch] attorneys whose duties will include, after adequate training, overseeing the contractors." Supplemental Declaration of James Bergeron ¶ 4, ECF No. 498-1. The Lucas Declaration does not contain any information about whether this has occurred— nor how this alleged hiring plan comports with the Secretary of Education's stated intention to dismantle the Department, which so far has included multiple rounds of mass firings. *See, e.g.*, Jessica Blake, "McMahon Breaks Up More of the Education Department" (Nov. 18, 2025), *Inside Higher Ed*, https://www.insidehighered.com/news/government/student-aid-policy/2025/11/18/mcmahon-breaks-more-education-department.

Settlement were overstated, *id.* at 15–20; and extraordinary circumstances did not exist to justify relief under Rule 60(b)(6), *id.* at 20. In support of their opposition, Plaintiffs submitted the results of a survey that counsel conducted in the preceding two weeks, in which over 20,000 Post-Class Applicants described the harm that a further delay in the decision deadline would cause them. *Id.* at 10–13; Declaration of Rebecca Ellis ¶¶ 23–31, ECF No. 502-1 ("Ellis Decl."). Plaintiffs also submitted declarations from 34 Post-Class Applicants who were still awaiting decisions. Ellis Decl. ¶ 32 & ECF Nos. 502-2–3 (Exhibits 2–35 to Plaintiffs' First Opposition).

The Court held a hearing on the First 60(b) Motion on December 11, 2025. After argument from both sides, Judge Alsup ruled from the bench. The Court observed that "[e]verybody knew how many" people there were in the Post-Class Applicant group "three years ago. That's not a surprise to anybody." Transcript of Dec. 11, 2025 Hearing ("Dec. 11 Tr.") at 74:25–75:1. The Court explained that this knowledge "then made it incumbent upon the Department of Education, who gave their word, to figure out a way to get [the Post-Class decisions] done." *Id.* at 75:7-9. Yet it turned out the Department had not been transparent: "Now, now we have learned . . . for the first time that the Department thinks it cannot get it done. Can't even come close, although . . . earlier this year, when we happened to ask 'How's it coming with the post-class group?' 'Hunky-dory, Judge. Hunky-dory.'" *Id.* at 75:10-15.

The Court explained that the Department could have moved through the Post-Class applications more efficiently if it had prioritized cases from schools that already had significant evidence of misconduct and large numbers of applications making similar allegations—but instead, it had chosen to begin with schools that had *less* evidence and *fewer* applications. *Id.* at 76:1-16; *see id.* at 49:1–52:8. The Court also pointed out that the Department had chronically understaffed the group charged with adjudicating BD applications, including failing to replace employees who were forced out or fired in early 2025. *Id.* at 76:17–78:2, 78:10-14. The evidence, the Court concluded, did not support the Department's claim that it had lacked adequate resources to do the job—and even if that had been true, "the Department of Education should have come to me a long time ago and raised this problem instead of telling me it's all hunky-dory." *Id.* at 77:22–78:5. Meanwhile, Post-Class members were suffering ongoing harm:

1
2
3
4

> They have a great interest in this because the student loan has been hanging over their head for how many years? How many decades? Wrecking their credit. Yes, forbearance exists, but credit wrecked. It's just not right. Congress didn't want that. Congress wanted these things adjudicated. So there is that huge equity working in favor of the class.

*Id.* at 79:2–8.

Under these circumstances, the Court found, the Department's proposed 18-month delay was "just totally unacceptable." *Id.* at 78:19. Accordingly, the Court denied the Department's motion in part and granted it in part. As to Post-Class members whose BD applications related to Exhibit C schools, the Court ruled that the original January 28, 2026, decision deadline would continue in force. *Id.* at 79:19-22. For these applications, the schools listed were "already highly suspect": "[t]hese are the schools that the attorney generals in various states have already singled out as fraudulent." *Id.* at 80:5-7. This would allow the Department to make faster work of the applications. *See id.* at 51:7–52:8, 80:4–5.

For Post-Class members whose applications did not relate to Exhibit C schools, the Court granted the motion, albeit with a shorter extension than the Department had requested: to April 15, 2026, with the option to request a further extension upon a showing of effective and good-faith efforts to finish that set of decisions. *Id.* at 80:13-25. The Court explained that its ruling was designed "to put some incentive on the Government to act in good faith, prioritize where it will do the most good." *Id.* at 81:4–6. Finally, the Court ordered the Department to preserve evidence relating to the issue of Post-Class adjudications, *id.* at 81:11–20, and granted Plaintiffs' motion to enforce the Settlement as to the Post-Class decision deadline, subject to the rest of the ruling as described above, *id.* at 82:11–13.

At the close of the December 11 hearing, Judge Alsup stated that he would not be issuing a written order, and advised the Department, "[I]f you want to appeal, I think you should appeal pronto." *Id.* at 82:25–83:1. The Department did not file a notice of appeal, nor seek a stay of the December 11 order from either the District Court or the Court of Appeals. Instead, the Department filed the instant motion six days before the January 28 deadline, asking this Court to overturn Judge Alsup's order.

1    **III.    ARGUMENT**

2        **A.    The Motion Should Be Denied as Procedurally Improper**

3            **i.    The Motion Is Not Authorized by Any Federal or Local Rule**

4        Although the Department styles its motion as one for "relief under Rule 60(b)," Second

5    60(b) Motion at 1, it is self-evidently a motion for reconsideration of Judge Alsup's order of

6    December 11, 2025. *See, e.g.*, *id.* at 5 (describing the "Issue[] to Be Decided" as "[w]hether the

7    Court should reconsider its decision" of December 11); *id.* at 13 ("Defendants respectfully ask the

8    Court to reconsider its decision on Defendants' first motion for Rule 60(b) temporary relief from

9    judgment."); *id.* at 14 ("The Court Should Reconsider the Decision Because it is Premised on

10   Manifest Legal Error"); *id.* at 17 ("The Court Should Reconsider the Decision Because it is

11   Premised on Manifest Errors of Fact"); *id.* at 22 ("The Court Should Reconsider the Decision

12   Because the Department is Continuing in Good Faith . . ."); *id.* at 24 ("For the foregoing reasons,

13   the Court should grant Defendants' motion for reconsideration . . . .").

14       Motions for reconsideration are not expressly authorized by the Federal Rules. *See*

15   *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. 13-cv-04513, 2019 WL 2059661, at *1

16   (N.D. Cal. May 9, 2019); *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 624 F.

17   Supp. 2d 1197, 1207 (E.D. Cal. 2009), *aff'd sub nom. San Luis & Delta-Mendota Water Auth. v.*

18   *United States*, 672 F.3d 676 (9th Cir. 2012). In this District, a local rule provides a path for seeking

19   reconsideration, but *only* for pre-judgment interlocutory orders. *See* Local Rule 7-9(a) ("Before

20   the entry of a judgment adjudicating all of the claims . . . in a case, any party may make a motion

21   . . . requesting that the Judge grant the party leave to file a motion for reconsideration of any

22   interlocutory order."). The Department admits that it did not seek leave, as required by this Local

23   Rule, but argues that the Rule does not apply here. *See* Second 60(b) Motion at 24. The Department

24   is correct, but for the wrong reasons.[5]

25   _____

26   [5] If Local Rule 7-9 did apply, the Department would fail to satisfy it, on multiple counts. First, as
     noted, the Department did not seek leave of Court to file its motion, as required by L.R. 7-9(a).
27   Second, the Department "repeat[s] . . . oral or written argument[s]" that it previously made "in
     support of or in opposition to" the order "which [it] now seeks to have reconsidered," in violation
28

1    "Here, no party disputes that final judgment has already been entered." *Evolutionary*

2    *Intelligence*, 2019 WL 2059661, at *1. "Indeed, the order [the Department] seeks this court to

3    reconsider denied [its] request to [amend] that very judgment." *Id.* Accordingly, Local Rule 7-9

4    "does not provide [the Department] an avenue to file its present motion." *Id.*; *see also, e.g.*, *In re*

5    *Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672, 2017 WL

6    2438645, at *2 (N.D. Cal. June 6, 2017) (rejecting request to file motion for reconsideration under

7    L.R. 7-9 because the order sought to be reconsidered "followed, and related to, the final judgment

8    of the . . . class claims," which meant "the order is not an interlocutory order and is immediately

9    appealable under § 1291"). And absent the circumstances that would trigger Local Rule 7-9, the

10   Department cannot file a motion for reconsideration, because no other rule authorizes one.

11   Courts have sometimes stated that they will "construe[]" post-judgment motions for

12   reconsideration as motions for relief from judgment under Rule 60(b) or motions to alter or amend

13   the judgment under Rule 59(e). *San Luis & Delta-Mendota Water Auth.*, 624 F. Supp. 2d at 1207.

14   But that construction applies in situations where a party is seeking reconsideration *of the judgment*

15   at issue—not reconsideration of an order that already denied their first motion for relief from

16   judgment. *See, e.g.*, *id.* at 1200, 1207–08 (construing "motion for reconsideration" of summary

17   judgment ruling as a Rule 60(b) motion); *Alden v. AECOM Tech. Corp.*, No. 18-cv-03258, 2021

18   WL 2258505, at *1 (N.D. Cal. June 3, 2021), *aff'd*, No. 21-16002, 2023 WL 2552619 (9th Cir.

19   Mar. 17, 2023) (same, construing as Rule 59(e) motion); *Daria v. Sapient Inc.*, No. 17-cv-05453,

20   2018 WL 3109590, at *1 (N.D. Cal. June 25, 2018) (construing "motion for reconsideration" of

21   dismissal for lack of jurisdiction as Rule 60(b) motion). Plaintiffs have found no case law holding

22   that a party can file successive motions for Rule 60(b) relief, each requesting relief from the

23   previous Rule 60(b) ruling. Indeed, such an outcome would be absurd, as it would lead to endless

24   relitigation of disputes that the same court has already resolved.

25

26

27   of L.R. 7-9(c)—conduct that a District Court "shall" sanction. *Id.* Third, the Department could not

28   satisfy any of the conditions of L.R. 7-9(b), for the same reasons that its plea for relief fails, as
     explained *infra*.

If the Department wanted to challenge Judge Alsup's December 11 order, its remedy would be through appeal. *See In re Volkswagen "Clean Diesel"*, 2017 WL 2438645, at *1; *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000) ("We review for an abuse of discretion the district court's denial of a Rule 60b motion."). Indeed, the Department's arguments for why this Court should reconsider Judge Alsup's order generally track the appellate standard for abuse of discretion. *See Bateman*, 231 F.3d at 1223 ("A district court abuses its discretion by denying relief under Rule 60(b) when it makes an error of law or relies on a clearly erroneous factual determination."); *compare* Second 60(b) Motion at 14 (asserting error of law); *id.* at 17 (asserting error of fact). Yet instead of pursuing an appeal, the Department waited until Judge Alsup retired and a new judge was assigned to this case to file an improper motion for reconsideration, misleadingly styled as a Rule 60(b) motion, in a blatant play for a second bite at the apple. At the same time, it has moved for an extension of its deadline to appeal the December 11 order, *see* ECF No. 518, in an apparent bid to preserve its ability to appeal should its second bite come up mealy. And these maneuvers are all in service of seeking relief that is not available to the Department (*see infra* Part III.B). The Court should reject the Department's effort to manipulate the judicial process.

### ii.  The Relief Sought by the Department Is Not Available

#### 1.  The Motion Should Be Denied as Moot

An issue becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (issue is moot when it is "no longer 'live'"). The Post-Class decision deadline for applications relating to Exhibit C schools was January 28, 2026. That date has passed. With that passage, all Exhibit C Post-Class Applicants who didn't receive a decision have a vested right to relief under the Settlement. The Department thus cannot now seek a delay of the deadline, nor shirk its obligation to provide that relief.

1        The Department tries to avoid this obvious conclusion by ignoring the decision deadline[6]

2 and instead attaching importance to a separate deadline for providing Post-Class Applicants with

3 notice of their entitlement to Full Settlement Relief. *See* Second 60(b) Motion at 23–24. But the

4 plain language of the Settlement makes clear that the time for sending notice is a red herring.

5        Paragraph IV.D.1 of the Settlement states: "Defendants ***will*** issue a final decision on the

6 merits of a Post-Class Applicant's application ***no later than*** 36 months after the Effective Date"

7 (emphasis added). The Effective Date of the Settlement was January 28, 2023. *See* Order re Motion

8 to Stay Judgment Pending Appeal at 10, ECF No. 382. Thirty-six months after that date was

9 January 28, 2026. The deadline is straightforward.

10        The next paragraph lays out what happens if the Department misses the deadline: "If a

11 Post-Class Applicant has not received a timely decision as required under Paragraph IV.D.1, that

12 applicant ***shall*** receive Full Settlement Relief." Settlement ¶ IV.D.2 (emphasis added). The plain

13 language of the Settlement is mandatory: a Post-Class Applicant's entitlement to Full Settlement

14 Relief vests as soon as January 28, 2026, passes without their receiving a decision. That event has

15 now occurred for, by the Department's count, approximately 170,000 Post-Class Applicants. *See*

16 Second 60(b) Motion at 4.

17        Paragraph IV.D.2 then continues: "Defendants shall provide the affected Post-Class

18 Applicant with notice that the applicant will receive this relief within 60 calendar days following

19 the expiration of the applicable deadline." This provision is intended to keep Post-Class Applicants

20 apprised of their rights under the Settlement. It mirrors similar notice provisions elsewhere in the

21 Settlement. *See, e.g.*, Settlement ¶ IV.A.3 (requiring Defendants to "provide Written Notice of

22 [Automatic Relief Group relief] to each qualifying Class Member no later than 90 calendar days

23 after the Effective Date"); *id.* ¶ IV.B.1 (requiring Defendants to "provide Written Notice to

24

25

26 ───────────────

[6] Plaintiffs refer to January 28, 2026 as "the decision deadline" herein for brevity's sake,

27 understanding that these arguments specifically relate to Post-Class Exhibit C borrowers, and there is a second decision deadline upcoming for Post-Class applications relating to non–Exhibit C

28 schools.

[certain] Class Members that their [earlier *pro forma*] denials have been rescinded and that their borrower defense applications are again under consideration").

The following paragraph establishes the deadline for delivering settlement relief: "Defendants will effectuate relief for any Post-Class Applicant entitled to settlement relief pursuant to Paragraphs IV.D.1 and IV.D.2 no later than one year after the date that Defendants provide that applicant Written Notice of the settlement relief decision." *Id.* ¶ IV.D.3. The effect of the Paragraph IV.D.2 written notice, therefore, is to set the date by which the Department must complete **effectuating** relief—that is, the date by which all Relevant Loan Debt must be discharged, applicable refunds issued, and related tradelines deleted from the borrower's credit report. *See id.* ¶ IV.F.1 (defining effectuation of relief). The written notice deadline does not have any effect on a Post-Class Applicant's **entitlement** to Full Settlement Relief.

In short, the Department cannot continue making substantive decisions on Exhibit C Post-Class Applicants' BD applications after the decision deadline of January 28, 2026. The Settlement explicitly forecloses that possibility.[7] The passing of the deadline thus fully obviated the Department's ability to seek the relief it asks for now. The motion is moot.

### 2. The Settlement No Longer Has Prospective Effect for Post-Class Exhibit C Borrowers

Rule 60(b)(5) authorizes relief from a judgment where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). "Because virtually every court order causes at least some reverberations into the future, the fact that a court's action has continuing consequences does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)." *Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 466–67 (9th Cir. 2023) (cleaned up). Instead, the "standard

---

[7] To the extent the Department appears to request a delay of the 60-day notice period (*see* Second 60(b) Motion at 23–24), the only effect of doing so would be to delay the delivery of Settlement relief that is unquestionably owed. The Department does not offer any explanation or argument for why such a delay would be justified. Perhaps, under its blinkered reasoning, Plaintiffs would be unable to obtain the relief already owed to Post-Class Applicants so long as the Department never sends notices and thus never fixes a date certain by which it must complete the relief. But in any event, Plaintiffs oppose any delay of the notice deadline as well. Absent further Court order, if the Department fails to deliver the required notice by March 29, 2026, Plaintiffs will move for enforcement of the Settlement pursuant to Paragraph V.B.1.

used in determining whether a judgment has prospective application is whether it is [1] executory or [2] involves the supervision of changing conduct or conditions." *Id.* at 467 (quoting *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995)). Courts have found that there is no prospective effect for judgments that are already final (regardless of whether the effects of those judgments continue to be felt) or for money judgments (even where they have yet to be paid). *See, e.g.*, *Fed. Trade Comm'n v. AH Media Grp., LLC*, 339 F.R.D. 612, 618–19 (N.D. Cal. 2021) (order requiring continued payment of money is not "prospective," but merely offers a "present remedy for a past wrong"); *Hewitt*, 68 F.4th at 467 (equitable money judgment that "merely involves the court in 'enforcing an ordered transfer'" of funds does not constitute supervision of changing conduct or conditions (quoting *DeWeerth v. Baldinger*, 38 F.3d 1266, 1275–76 (2d Cir. 1994))).

It is true that, as a general matter, the Settlement in this case has had prospective effects, as a class action settlement where the Court explicitly retained continuing jurisdiction. *See, e.g.*, *Byrne v. Oregon One, Inc.*, No. 16-cv-01910, 2023 WL 2755301, at *3 (D. Or. Apr. 3, 2023). However, when it comes to the specific question of whether Rule 60(b)(5) authorizes the relief the Department now seeks, its obligation to deliver decisions to Post-Class Applicants by January 28, 2026, was a fixed, certain, non-contingent obligation from the moment of final approval. The Settlement outlines the limited and exclusive circumstances that the parties contemplated as excusing performance of the obligation. *See* Settlement ¶ V.D.5 (describing process for Defendants to assert that they were "reasonably prevented from or delayed in fully performing any of the obligations set forth in Paragraph IV, above, due to extraordinary circumstances beyond Defendants' control"); First 60(b) Motion at 10–11 (admitting that Defendants did not invoke or follow the Paragraph V.D.5 process); Settlement ¶ XIII.C (providing that "[t]his Agreement shall be voidable by Plaintiffs"—but *not* by Defendants—"if a condition of impossibility occurs, as described in Paragraph XII"). And if there were any doubt, the fact that the January 28 deadline has passed certainly eliminates any prospective effect with respect to decisions on Post-Class applications relating to Exhibit C schools. As of midnight on January 29, 2026, every Post-Class Exhibit C borrower who had not received a decision became vested with the right to receive Full

1   Settlement Relief. *See supra*. The Department's obligation to those borrowers is now legal, not

2   equitable, and the Department cannot seek relief in equity to avoid this vested obligation.

3   **B.      The Motion Fails on Its Merits**

4   Even if the Second 60(b) Motion were a proper motion for Rule 60(b) relief—which it is

5   not, as explained above—it would fail. The moving party bears the burden of establishing that

6   Rule 60(b) relief is justified. *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988). This is a

7   heavy burden. "Relief from a court order should not be granted . . . simply because a party finds

8   'it is no longer convenient to live with the terms' of the order." *S.E.C. v. Coldicutt*, 258 F.3d 939,

9   942 (9th Cir. 2001) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992)).

10  In cases involved government consent decrees, on which the Department primarily relies,

11  courts have held that "[o]rdinarily, the party may not rely on 'events that actually were anticipated

12  at the time it entered into a decree'" to argue for Rule 60(b)(5) relief. *Coleman v. Brown*, 922 F.

13  Supp. 2d 1004, 1027 (E.D. Cal. 2013) (three-judge panel) (quoting *Rufo*, 502 U.S. at 385). Rather,

14  under Rule 60(b)(5), the movant must "establish that a significant change in facts or law warrants

15  revision of the decree and that the proposed modification is suitably tailored to the changed

16  circumstance." *Flores v. Rosen*, 984 F.3d 720, 740–41 (9th Cir. 2020) (quoting *Rufo*, 502 U.S. at

17  393); *see also United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (burden falls on the

18  moving party to demonstrate a "significant and unanticipated change in factual conditions

19  warranting modification" of an order).

20  But a consent decree "is a hybrid; it is both a settlement and an injunction," and this "dual

21  character . . . has resulted in different treatment for different purposes." *Conservation Nw. v.

22  Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013) (quoting *Local No. 93, Int'l Ass'n of Firefighters

23  v. City of Cleveland*, 478 U.S. 501, 519 (1986)). In its Final Approval Order, the Court in this case

24  specifically recognized that the Settlement here was different in kind from a consent decree that

25  "permanently and substantially amends an agency rule." Final Approval Order at 13 (quoting

26  *Conservation Nw.*, 715 F.3d at 1187 (emphasis omitted)). Instead, the Settlement is a contract that

27  sets out the parties' agreement on "a process for resolving the enormous backlog of [borrower

28  defense] claims." *Id.* Because the Settlement is "a contract agreed to by the parties[,] . . . it is

certainly arguable that a more stringent standard should apply." *Warren v. City of Chico*, No. 21-cv-00640, 2025 WL 974068, at \*5 (E.D. Cal. Mar. 31, 2025); *see also AH Media Grp.*, 339 F.R.D. at 618 (fact that a party voluntarily stipulated to an order may weigh against Rule 60(b)(5) relief).

Nonetheless, the Department's motion fails under any standard.

### i.  The Motion Is Untimely

Rule 60(c)(1) provides that "[a] motion under Rule 60(b) must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam).

Here, the Department cannot meet the timeliness standard. Judge Alsup's December 11 order left the status quo in place for the majority of the Post-Class. That status quo was established by a three-year-old final judgment incorporating a contract that the Department signed in June 2022. As Plaintiffs explained in response to the Department's nearly identical motion two months ago, the Department has known at least the rough size of the Post-Class since the fall of 2022—before Judge Alsup signed the final approval order. *See* Plaintiffs' First Opposition at 5–6 (approximate size of the Post-Class was 179,000 borrowers as of September 20, 2022) (quoting Joint Motion for Final Settlement Approval, ECF No. 323, at 14). Since at least February 2023, the Department has known the exact size of the Post-Class. *Id.* at 6. From April 2024 through August 2025, the Department attended regular status conferences to report on its progress implementing the Settlement, and at no point in all that time did the Department ever indicate that it would request an extension of the Post-Class decision deadline. *See* Ellis Decl. ¶¶ 35–38 (describing Plaintiffs' counsel's requests for updates on Post-Class adjudications). To the contrary, the Department assured Plaintiffs and the Court that it was making progress and understood its obligations under the Settlement. *See, e.g.*, Transcript of June 26, 2025 Hearing, at 13:6–7, 13:10–13 (The Court: "[A]re you going to make the [January 28, 2026] deadline?" DOJ: "We have every incentive to make the deadline. I think, as both plaintiffs' counsel and you have said, if we don't, everyone who has not received a decision will be entitled to full settlement relief."). The Court

1  denied as unnecessary Plaintiffs' request for an order requiring the Department to comply with the

2  Post-Class deadline and prohibiting any requests for extension: "I'm not going to issue an order.

3  It's already an order; right? It's already an order. That's in your settlement agreement that I reduced

4  to an order." *Id.* at 13:15–17.

5          Given this background, the Department's First Rule 60(b) Motion was plainly untimely,

6  and its second attempt to achieve the same desired result fares no better. The Department was on

7  notice of the facts relevant to the current situation for years, the Post-Class has a strong interest in

8  finality, and the Post-Class would be deeply prejudiced by any alteration of the judgment.[8]

9                    **ii.  There Has Been No Significant Change in Fact or Law**

10         Rule 60(b)(5) requires the movant to establish that there has been "a significant change in

11  facts or law." *Flores*, 984 F.3d at 740–41. As Plaintiffs explained last time, the Department's

12  failure to adjudicate a significant percentage of Post-Class applications was an entirely foreseeable

13  consequence of the Department's own decisions, as it voluntarily entered into the Settlement and

14  then spent the better part of three years kicking the can down the road. Plaintiffs' First Opp. at 13–

15  15; *see Coleman*, 922 F. Supp. 2d at 1044 (Rule 60(b) relief not justified where "defendants are

16  fully responsible for" failure to achieve settlement goals, as defendants "prevent[ed] themselves

17  from achieving a long-term solution . . . without taking a number of steps that they could but [were]

18  unwilling to take"). Judge Alsup agreed, noting that "[e]verybody knew how many [Post-Class

19  Applicants] there were three years ago. That's not a surprise to anybody. . . . Now, that then made

20  it incumbent upon the Department of Education, who gave their word, to figure out a way to get it

21  done." Dec. 11 Tr. at 74:25–75:9.

22         Today, the Department's argument is even weaker than it was two months ago. There has

23  clearly been no significant change in fact or law since the December 11 ruling. Indeed, there has

---

[8] The Second 60(b) Motion is also untimely in another, new respect: The Department had ample time to submit this motion to Judge Alsup in December 2025. The alleged "errors" the Department describes would have been evident to it from the moment Judge Alsup issued the December 11 order. Its failure to do so only strengthens the inference that the Department delayed its motion practice—indeed, delayed it all the way past the relevant January 28 deadline—in an attempt to manipulate the judicial process.

been no change at all—the Department's own declarant establishes that the Department changed nothing about its approach to Post-Class applications in response to that Court order. *See* Lucas Decl. ¶¶ 8–10. The Department's own evidence thus gives away the game: The Department had no plans to even attempt to resolve a significant number of Post-Class applications before the January 28 deadline. Instead, it spent its time and resources trying to lay the groundwork for this Court to grant it the relief that Judge Alsup denied on the same facts and law. This Court should not countenance such dereliction of the Department's legal obligations. *Cf. Coleman*, 922 F. Supp. 2d at 1049 (Rule 60 relief not justified where agency's proffered alternative procedure "is not a plan for compliance; it is a plan for non-compliance").

### iii.  The Equities Favor Plaintiffs

If the equities were at issue (which they are not), they would strongly favor Plaintiffs. The Department makes the same fundamental mistake here as it did in its First 60(b) Motion: It relies on a provision that asks what is "equitable," while never once considering the effect that its proposed delay would have on the people most affected by it, the Post-Class Applicants themselves. Indeed, quite to the contrary, the Department's argument relies on a pernicious underlying assumption that at least half of all Post-Class Applicants should be presumed to have filed insufficient or even false BD applications. *See* Second 60(b) Motion at 3 (claiming that Department could save $6 billion by shirking the deadline—more than half of the Post-Class's total outstanding loan balances of $11.9 billion).[9]

In the briefing and hearing on the Department's First 60(b) Motion, Plaintiffs provided voluminous evidence of the negative effects that a further delay would have on Post-Class Applicants. A survey of more than 20,000 Post-Class Applicants showed that over 80% of respondents reported that they were concerned about being placed back into repayment; over 81% reported that a further delay would negatively affect their credit report, credit score, and/or debt-to-income ratio; and nearly 90% (18,443 people) reported that a further delay would cause them

---

[9] Plaintiffs explained at length in their previous opposition and at the December 11 hearing why the Department's estimates of the cost of Post-Class relief are grossly over-inflated. *See* Plaintiffs' First Opposition at 15–20; Dec. 11 Tr. at 36–40.

stress, anxiety, and/or other negative impacts to their mental and emotional health. Ellis Decl. ¶ 31. Respondents were also highly concerned about negative effects on their family's well-being (66.5%), being unable to afford an important purchase or cover an important expense (58.6%), suffering negative effects on their physical health (48.3%), and having their tax refunds or wages garnished because their loans had previously been in default (46.8%). *Id.* Over a quarter of respondents reported that having these loans outstanding was preventing them from going back to school or finishing their degree. *Id.* Just one percent (218 people) said a delay would have no effect on them. *Id.*

Plaintiffs also filed 34 declarations from Post-Class Applicants explaining the extent of the harm that would be caused by keeping these unresolved borrower defense applications hanging over their heads. Among other things, these Post-Class Applicants attested that:

- Credit reporting on their BD-related loans blocked them from access to reasonable options for housing, transportation, and other forms of credit, even to the point of experiencing homelessness, *e.g.*, ECF No. 502-2 at 7 (Ex. 3, Decl. of Sherri Mainhart ¶ 10), 11 (Ex. 4, Decl. of Beth Huegel ¶ 10), 15 (Ex. 5, Decl. of Erin Williams ¶ 9), 19 (Ex. 6, Decl. of Kimberly Oneill ¶ 8), 23–24 (Ex. 7, Decl. of Lauren Bartholomew ¶¶ 12–13), 29 (Ex. 8, Decl. of Meloney Garrett ¶ 8), 33 (Ex. 9, Decl. of Nina Mecham ¶ 11), 35–36 (Ex. 10, Decl. of Stacey Barton ¶ 8), 39 (Ex. 11, Decl. of Stephanie DiMaso ¶ 9), 42 (Ex. 12, Decl. of Mark Gomez ¶ 10);

- They were blocked from advancing in their careers because they did not know if they would be able to go back to school or pass a security clearance screening, *e.g.*, *id.* at 24–25 (Ex. 7, Bartholomew Decl. ¶¶ 15–18), 33 (Ex. 9, Mecham Decl. ¶ 11), 46 (Ex. 13, Decl. of Contessa Tracy ¶ 11), 51 (Ex. 14, Decl. of Sean Sanders ¶ 16), 54 (Ex. 15, Decl. of Akram Jaber ¶ 11), 58 (Ex. 16, Decl. of Alexandra Strong ¶ 9);

- They put off major needs such as home repairs, health insurance, and saving for retirement because they didn't know whether they would have to go back into repayment on their BD-related loans, *e.g.*, *id.* at 61 (Ex. 17, Decl. of Chandy Niles ¶ 9), 65 (Ex. 18, Decl. of Jennifer McMillian ¶ 8); ECF No. 502-3 at 2–3 (Ex. 19, Decl. of Lyndsay Pelchat ¶ 7), 7 (Ex. 20, Decl. of Margo Rutland ¶ 11), 11 (Ex. 21, Decl. of Richard Hancock ¶ 9); and

- The stress and uncertainty over these loans caused them physical and mental health symptoms such as loss of sleep, headaches, high blood pressure, flare-ups of chronic health conditions, anxiety, and depression, *e.g.*, 502-2 at 7 (Ex. 3, Mainhart Decl. ¶ 14), 19 (Ex. 6, Oneill Decl. ¶ 11), 54 (Ex. 15, Jaber Decl. ¶ 9); 502-3 at 3 (Ex. 19, Pelchat Decl. ¶¶ 10–11), 13–14 (Ex. 22, Decl. of Elizabeth Lahren ¶ 7), 17 (Ex. 23, Decl. of Federico Garza ¶ 9).

The harm has only grown more acute in the time since Plaintiffs filed their original opposition brief. Now, many of these Post-Class Applicants have obtained a vested right in Full Settlement Relief, due to the Department's failure to deliver decisions by the deadline—yet the Department is trying to throw that relief into uncertainty. Many borrowers have already lost faith in their government. *See, e.g.*, ECF No. 502-3 at 56 (Ex. 34, Decl. of Brittney Hardy ¶ 10) ("While I was in school, I was battling cancer. … It disgusts me to think of how I was deceived by a school that received government funding while I was fighting for my life. Meanwhile, the government doesn't seem to care about me."). The Department's attempts to avoid the agreement that it signed years ago add insult to injury and increase the distress borrowers face as they still wait for their long-awaited relief.

### iv.   The Department's Claims of Error Are Unfounded

The Department does not, and cannot, provide any authority for its implicit argument that this Court should review a previously assigned judge's order under, essentially, an abuse of discretion standard. As explained above, that is the role of the Ninth Circuit on appeal. But even if the Court were to review the Department's motion within the limited substantive scope of a proper motion for reconsideration, *see* L.R. 7-9(b), the Department's assertions of error are baseless. Its arguments are merely a weak excuse to air its disagreement with Judge Alsup's decision.

The December 11 order was not premised on any mistake, and in an attempt to create one, the Department has egregiously misrepresented Judge Alsup's reasoning and ignored all the context that surrounded it. First, the Department suggests that that Judge Alsup committed legal error by treating Post-Class Applicants as class members. Second 60(b) Motion at 14–17. But Post-Class Applicants *are* members of the class, a point that Judge Alsup made clear when approving the Settlement. *See* Final Approval Order at 22 ("[T]he class certification order set no cut-off date for membership, so the class definition as recited in that order clearly encompasses all of these borrowers [in the Post-Class group]."). If the Department disagreed with Judge Alsup's holding as

to the scope of the class, it could have filed a timely Rule 60(b) motion or a limited appeal back in 2022. As it did not do so, that holding is now the law of the case, and reliance on it is not error.

Next, the Department claims that Judge Alsup committed factual error by "finding" that it was possible for the Department to adjudicate all Exhibit C Post-Class applications by the January 28, 2026 deadline. Second 60(b) Motion at 17–19. Judge Alsup made no such finding. He admonished the Department to keep working until the deadline, and stated his belief that it was "possible" for the Department to meet that deadline. Dec. 11 Tr. at 79:20–80:8. But Judge Alsup also explained that any failure to meet the deadline would be the result of the Department's own choices, including its lack of candor about the lack of progress that had been made in the prior months and years. *Id.* at 78:3–14. And he was aware that if the Department failed to meet the deadline, any undecided Post-Class applications would be approved. *See id.* at 79:11–15 ("I do recognize that another equity going the other way is there is a chance that some applications would be automatically [approved] come January 28th and they shouldn't have been. If they were adjudicated on the merits, the student would not have won."). It is thus disingenuous at best to argue that the December 11 order was premised on a mistaken belief that the Department did not need an extension and would be able to meet the January 28, 2026, deadline. Rather, it is clear that the order was premised on a justified belief that an extension was not warranted. *See id.* at 78:3–7 ("[T]he student loan has been hanging over their head for how many years? How many decades? . . . It's just not right. Congress didn't want that. Congress wanted these things adjudicated.").

Finally, the Department complains that Judge Alsup committed factual error by "failing to consider" that Post-Class applications cannot be premised on a borrower's attendance at an Exhibit C school. Second 60(b) Motion at 20–21. But Judge Alsup did not suggest that the Department could, or should, approve all Exhibit C Post-Class applications on that basis. To the contrary, he acknowledged that not all such applications would be approved if or when adjudicated. *See* Dec. 11 Tr. at 76:8–10. But he observed, correctly, that all Exhibit C Post-Class applications would be

supported by common evidence of school misconduct, *id*. at 80:5–7—evidence that could aid the Department in its adjudication of these applications.[10]

### v.  Relief Is Not Available Under Rule 60(b)(6)

As a last-ditch effort, the Department briefly suggests that if the Court rejects its Rule 60(b)(5) argument, it should nevertheless provide relief under Rule 60(b)(6). Second 60(b) Motion at 13. To begin, the Department's mere passing reference to this provision is insufficient to carry its burden. But even if properly raised, the argument would fail.

"To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). It is long established that this provision was "not intended to benefit the unsuccessful litigant who long after the time during which an appeal from a final judgment could have been perfected first seeks to express his dissatisfaction. The procedure provided by rule 60(b) is not a substitute for an appeal." *Morse-Starrett*, 205 F.2d at 249.

For all of the reasons detailed above, the Department cannot satisfy this standard. "When a party makes a conscious and informed choice of litigation strategy, [that party] cannot seek extraordinary relief [under Rule 60(b)(6)] merely because his assessment of the consequences was incorrect." *Warren*, 2025 WL 974068, at *15 (alterations in original) (quoting *Fed. Trade Comm'n v. Apex Capital Grp.*, No. 18-cv-9573, 2021 WL 7707269, at *4 (C.D. Cal. Sept. 3, 2021)).

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion for Relief Under Federal Rule of Civil Procedure 60(b).

---

[10] The Court's observation in the Final Approval Order that the Department "does not consider inclusion on Exhibit C a finding of misconduct and that inclusion does not constitute evidence that could or would be considered in any action by the Department against a school," Final Approval Order at 16, plainly does not preclude the Department from relying on the common evidence that led to a school's inclusion on Exhibit C when adjudicating any borrower defense applications, including those of Post-Class Applicants, *contra* Second 60(b) Motion at 20–21.

1

2    Dated: February 5, 2026                    Respectfully submitted,

3
                                               _Rebecca C. Ellis_____
4
                                               Eileen M. Connor (SBN 248856)
5                                              econnor@ppsl.org
                                               Rebecca C. Ellis (*pro hac vice*)
6                                              rellis@ppsl.org
                                               Rebecca C. Eisenbrey (*pro hac vice*)
7                                              reisenbrey@ppsl.org
                                               Noah Zinner (SBN 247581)
8                                              nzinner@ppsl.org
                                               PROJECT ON PREDATORY
9                                              STUDENT LENDING
                                               769 Centre Street
10                                             Jamaica Plain, MA 02130
                                               Tel.: (617) 390-2669
11

12
                                               *Attorneys for Plaintiffs*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28