BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| THERESA SWEET, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LINDA MCMAHON, *in her official capacity as Secretary of the United States Department of Education*, and <br><br> THE UNITED STATES DEPARTMENT OF EDUCATION, <br><br> Defendants. | Case No. 4:19-cv-03674-HSG <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(B)** <br><br> Date: March 26, 2026 <br> Time: 2:00 p.m. <br> Place: Courtroom 2, 4th Floor |

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

I.    **Post-Class Applicants Are Not Class Members.** ..................................2

    A.    **Plaintiffs Wrongly Rely on an Interlocutory Order that Was Superseded by the Final Judgment and is Thus No Longer in Effect.** ...................................................................................2

    B.    **Plaintiffs Have Repeatedly Represented to the Court that Post-Class Applicants are Not Class Members.**...................................4

II.    **By Not Identifying Any Support for the Court's Conclusion that the January 2026 Deadline Was Realistically Achievable Given Congress's Funding Choices, Plaintiffs Constructively Concede that the Court's Decision was Premised on Clear Error.**........................................................5

III.    **Rule 60(b) Authorizes the Court to Grant the Relief Requested in Defendants' Motion on the Grounds Defendants Present.**............................9

IV.    **The Provision of the Agreement that Defendants Seek to Modify Provides No Basis to Deny the Requested Relief.** ..................................11

V.    **Plaintiffs May Not Re-Litigate Issues that the Parties Already Addressed.** ..............14

VI.    **The All Writs Act Authorizes the Court to Administratively Stay the Notice Deadline.** ......................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2 **<u>Cases</u>**

3 *Abbott Lab'ys v. Gardner*,
4     387 U.S. 136 (1967)........................................................................................................ 13

5 *Benjamin v. Jacobson*,
    172 F.3d 144 (1999)....................................................................................................... 13
6
*California v. EPA*,
7     978 F.3d 708 (9th Cir. 2020) .............................................................................. 9, 11, 13

8 *Frew ex rel. Frew v. Hawkins*,
9     540 U.S. 431 (2004)......................................................................................................... 5

10 *Huntsman v. Southwest Airlines Co.*,
    No. 3:19-cv-00083-JSC, 2025 WL 3552243 (N.D. Cal. Dec. 11, 2025).......................... 3
11
*In re Tri-State Fin., LLC*,
12     885 F.3d 528 (8th Cir. 2018) ........................................................................................ 10
13
*Lakeview Dev. Corp. v. City of S. Lake Tahoe*,
14     915 F.2d 1290 (9th Cir. 1990) ...................................................................................... 13

15 *Landgraf v. USI Film Prods.*,
16     511 U.S. 244 (1994)....................................................................................................... 13

17 *Leslie Salt Co. v. United States*,
    55 F.3d 1388 (9th Cir. 1995) ........................................................................................ 10
18
*Medearis v. Or. Teamster Emps. Tr.*,
19     No. CV. 07-723-PK, 2009 WL 1788183 (D. Or. June 19, 2009) ..................................... 3

20 *Phelps v. Alameida*,
21     569 F.3d 1120 (9th Cir. 2009) ........................................................................................ 9

22 *Phila. Welfare Rts. Org. v. Shapp*,
23     602 F.2d 1114 (3d Cir. 1979).......................................................................... 5, 11, 14, 15

24 *Plyler v. Moore*,
    100 F.3d 365 (4th Cir. 1996) ........................................................................................ 13
25
*Rodriguez v. It's Just Lunch Int'l*,
26     No. 07-cv-9227 (SHS), 2018 WL 3733944 (S.D.N.Y. Aug. 6, 2018)............................... 3

27

28

*Rufo v. Inmates of Suffolk County Jail*,
    502 U.S. 367 (1992) ............................................................................................................ 5

*Sweet v. Cardona*,
    641 F. Supp. 3d 814 (N.D. Cal. 2022) ................................................................................ 3

*Thompson v. Sawyer*,
    678 F.2d 257 (D.C. Cir. 1982) ........................................................................................... 10

*United States v. Estrada-Lucas*,
    651 F.2d 1261 (9th Cir. 1980) ................................................................................. 4, 10, 15

*United States v. Healy*,
    376 U.S. 75 (1964) .............................................................................................................. 11

*United States v. O'Keefe*,
    128 F.3d 885 (5th Cir. 1997) ....................................................................................... 10, 14

**<u>Constitutional Provisions</u>**

U.S. Const. art. I ...................................................................................................................... 6

**<u>Statutes</u>**

5 U.S.C. § 702 ......................................................................................................................... 13

28 U.S.C. § 1651 ..................................................................................................................... 15

**<u>Rules</u>**

Fed. R. App. P. 4(a)(1)(B) ...................................................................................................... 14

Fed. R. Civ. P. 60(b) ...................................................................................................... 2, 3, 13

Local Rule 7-11 ....................................................................................................................... 15

**<u>Regulations</u>**

34 C.F.R. § 685.222 (2017) .................................................................................................... 10

**<u>Other Authorities</u>**

18B Wright & Miller's Fed. Prac. & Proc. § 4478 (3d ed. 2025) ............................................. 4

Dep't of Educ. Fiscal Year 2024 Budget Request,
    https://www.ed.gov/sites/ed/files/about/overview/budget/budget24/justifications/q-saa.pdf ............... 7

Dep't of Educ. Fiscal Year 2025 Budget Request,
   https://www.ed.gov/sites/ed/files/about/overview/budget/budget25/justifications/r-saa.pdf ................ 7

Reply in Support of Defendants' Motion for Relief Under Federal Rule of Civil Procedure 60(b)
4:19-cv-03674-HSG

# INTRODUCTION

The Court should grant Defendants' Rule 60(b) motion. First, Plaintiffs' argument that post-class applicants are class members is premised on an interlocutory order that was superseded by final judgment. Indeed, Plaintiffs' new position is inconsistent with a multitude of their representations in this action that post-class members are not members of the class. Because the Court clearly erred in balancing the equities of non-parties against Defendants' equities, this motion should be granted. Second, Plaintiffs identify no support for the Court's conclusion that the January 2026 deadline was realistically achievable given Congress's post-judgment funding decisions. Plaintiffs thus concede that the December 2025 order was premised on clear error for this reason as well.

Plaintiffs' remaining arguments against granting this motion are meritless. Rule 60(b) provides the Court with ample authority to grant this motion. Under the law of the case doctrine, parties may not relitigate disputes that the same court has already resolved. But a party may ask the Court to reconsider clear error. Moreover, Plaintiffs cite no authority—because there is none—that the very provision that Defendants ask the Court to modify under Rule 60(b)(5) provides Plaintiffs a basis to argue that the Court may not modify the same provision under Rule 60(b)(5).

I.     **Post-Class Applicants Are Not Class Members.**

Plaintiffs' opposition does not meaningfully dispute that the Court's December 2025 order would have been premised on clear error if the Court failed to balance the parties' equities in considering whether applying the judgment prospectively is no longer equitable. Pls.' Opp'n to Defs.' Mot. for Relief, ECF No. 525 at 20-21. Rather, they wrongly assert based on a superseded order that post-class applicants are members of the class and thus parties. *Id*. Plaintiffs are incorrect. Moreover, Plaintiffs' position is incompatible with a multitude of representations that they have made to the contrary throughout this action.

A.  **Plaintiffs Wrongly Rely on an Interlocutory Order that Was Superseded by the Final Judgment and is Thus No Longer in Effect.**

Plaintiffs' contention that post-class applicants are class members relies on a sleight of hand. ECF No. 525 at 20. Plaintiffs rely only on Judge Alsup's statements in his opinion approving the Settlement. *Id*. In those statements, Judge Alsup invoked the initial October 2019 class certification order, which was in effect at the time. ECF No. 46. That order had certified a class of

> All people who borrowed a Direct Loan or FFEL loan to pay for a program of higher education, who have asserted a borrower defense to repayment to the U.S. Department of Education, whose borrower defense has not been granted or denied on the merits, and who is not a class member in *Calvillo Manriquez v. DeVos*, No. 17-7106 (N.D. Cal.).

*Id*. at 14. This interlocutory order was later superseded by the parties' new definition of the class in the Agreement, which is incorporated in the Final Judgment. The Agreement is explicit: the "Class is closed as of the Execution Date," which was June 22, 2022. Settlement Agreement ¶ III.D, ECF No. 246-1 at 6 ("Agreement"). The post-class includes only individuals who submitted a "borrower defense application after the Execution Date (*i.e.*, the date the class closes), but before the" date that the Agreement was approved and Final Judgment was entered. *Id*. ¶ IV.D.1. at 11.

Courts have criticized open-ended class definitions as incompatible with Rule 23 principles.  For example, one court has explained that open-ended class definitions fail to account for the possibility that material facts may change; confuse potential class members as to whether their interests are, or are not, represented; run into issues of ascertainability, which requires the class definition to establish definite

boundaries; and may become unmanageable, particularly with respect to notice requirements *Rodriguez v. It's Just Lunch Int'l*, No. 07-cv-9227 (SHS), 2018 WL 3733944, at *6-7 (S.D.N.Y. Aug. 6, 2018)

Class action settlements thus commonly and appropriately modify open-ended class definitions to include a closure date. *E.g. Huntsman v. Southwest Airlines Co.*, No. 3:19-cv-00083-JSC, 2025 WL 3552243, at *3 (N.D. Cal. Dec. 11, 2025) ("The Settlement Agreement slightly modifies the class definition to clarify the end date for the class period is January 1, 2026."); *Medearis v. Or. Teamster Emps. Tr.*, No. CV. 07-723-PK, 2009 WL 1788183, at *2 (D. Or. June 19, 2009). Indeed, counsel for Plaintiffs explained as much during the Final Approval hearing: "[I]f we had not, in the settlement, agreed to close the class as of the execution date, everyone who is called a post-class applicant in the settlement would be a class member." Tr. of Proceedings, ECF No. 341 at 72:14-17.

Plaintiffs' reliance on Judge Alsup's statements at the approval stage is misleading because the Agreement, as incorporated into the Final Judgment, did not take effect until January 23, 2023.[1] Judge Alsup's order granting final approval was issued before that date, on November 16, 2022, when the Final Judgment had yet to bind class members and supersede the original class certification order. ECF Nos. 46, 345.

Relatedly, the "law of the case" doctrine, *see* ECF No. 525 at 21, provides no basis to conclude that post-class applicants are class members under the class definition that is now in effect. First, "[a]ctual decision of an issue is required to establish the law of the case." 18B Wright & Miller's Fed. Prac. & Proc. § 4478 (3d ed. 2025). "Law of the case does not reach a matter that was not decided." *Id.* And the Court's November 2022 opinion only interpreted the original October 2019 "class certification order [which had] set no cut-off date for membership[.]" *Sweet v. Cardona*, 641 F. Supp. 3d 814, 833 (N.D. Cal. 2022). The Court only construed "the class definition as recited in that order[.]" *Id.* Plaintiffs are wrong to suggest that the Court construed the modified definition included the Settlement Agreement and Final Judgment that is now in effect. *Supra* at pp. 2-3.

---

[1] The Effective Date was the date upon which the Final Judgment approving the Agreement became non-appealable, or, in the event of an appeal by a Class Member based upon a timely filed objection to the Agreement, upon final resolution of said appeal. Agreement ¶ II.K at 3 (defining "Effective Date").

Second, even if the Court *did* construe the definition of the class that is now in effect—which it did not—law of the case does not preclude a new determination if there is "clear error in the original ruling[.]" *United States v. Estrada-Lucas*, 651 F.2d 1261, 1263 (9th Cir. 1980). Because the plain language of the Agreement, as incorporated in the Final Judgment, is entirely clear that the "Class is closed as of the Execution Date[,]" *i.e.*, June 22, 2022, Agreement ¶ III.D at 6, an interpretation of that language to hold that post-class applicants are class members would be clear error. Again, Plaintiffs' counsel has already explained that "if we had not, in the settlement, agreed to close the class as of the execution date, everyone who is called a post-class applicant in the settlement would be a class member." ECF No. 341 at 72:14-17.

**B. Plaintiffs Have Repeatedly Represented to the Court that Post-Class Applicants are Not Class Members**.

Plaintiffs' contention that post-class applicants are class members is incompatible with positions that they have taken throughout this action.  First, Plaintiffs agreed to and represented in the parties' Settlement Agreement that the "Class is closed as of the Execution Date," *i.e.*, June 22, 2022. Agreement ¶ III.D. at 6. Plaintiffs thus may not now argue, as they do in their opposition, that "Post-Class Applicants *are* members of the class," ECF No. 525 at 20, because that is inconsistent with the parties' representations in the Agreement that the Class is closed as of June 22, 2022. Based on their prior statements, the Court should find that Plaintiffs have waived such arguments.

If that were somehow not enough, Plaintiffs repeatedly represented that post-class applicants are not class members in the joint motion for preliminary approval of the Agreement, the joint motion for final approval of the Agreement, and their opposition to a stay. *See* ECF No. 246 at 4 ("The above described settlement relief will be provided to borrowers who submitted a borrower defense application (thereby becoming class members) on or before June 22, 2022, the date on which the Settlement Agreement was fully executed and on which the class closed."); ECF No. 246 at 8 n.4 ("Post-Class Applicants are not members of the Class, and are not releasing any claims under the Agreement."); ECF No. 323 at 12 n.3 ("Post-Class Applicants, although not within the class definition and thus not formally part of the Rule 23 analysis . . ."); ECF No. 323 at 12 n.3 ("Meanwhile, Post-Class Applicants do not

release any claims under the Agreement, so they have legal recourse if the Department engages in unlawful procedures in the course of adjudicating their applications" outside of this lawsuit); ECF No. 361 at 19 ("The parties anticipated that non-class members—including some of the thousands of borrowers classified as Post-Class Applicants—would weigh in on the Settlement and might pursue an appeal.").

Again, at the Final Approval hearing, counsel for Plaintiffs argued:

> And as to the post-class applicants, I would just build slightly on what [Government counsel] said, which is that if we had not, in the settlement, agreed to close the class as of the execution date, everyone who is called a post-class applicant in the settlement would be a class member. And so even though we are not including them in the settlement class, even though we are not actually settling any claims they may have, we wanted to include provisions that would make sure they're treated fairly[.]"

ECF No. 341 at 72:13-21. Because post-class applicants are not class members, the Court erred in failing to balance Plaintiffs' equities in the treatment of post-class applicants against Defendants' equities in the Rule 60(b) analysis, and Plaintiffs don't dispute this latter point.

## II.     By Not Identifying Any Support for the Court's Conclusion that the January 2026 Deadline Was Realistically Achievable Given Congress's Funding Choices, Plaintiffs Constructively Concede that the Court's Decision was Premised on Clear Error.

In their opening brief, Defendants articulated clear errors of fact underlying the Court's conclusion that the January 2026 deadline was realistically achievable given Congress's post-judgment funding decisions. *See* Defs.' Notice of Mot., ECF No. 514 at 17-21. Recall that for Rule 60(b)(5) modifications— in this context dealing with modification of "strict performance requirements of a complex ongoing remedial decree, and with financial incentives designed to encourage the achievement of those requirements" initially made "on the assumption that [the requirement was] realistically achievable"—a court considers whether the requirement "proved in practice to be unattainable." *Phila. Welfare Rts. Org. v. Shapp*, 602 F.2d 1114, 1120-21 (3d Cir. 1979).[2] On that basis "clearly a court of equity has power to modify [an] injunction" including a judgment made "as here, in a negotiated settlement[.]" *Id*. Accordingly, the Court appropriately considered whether processing all post-class applications by January 2026 was realistically achievable. *See id*. And the Court found (albeit erroneously) that the January 2026

---

[2] The Supreme Court has cited *Shapp* with approval in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 380 (1992) and *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004).

1    deadline was attainable. *See, e.g.,* Dec. 11, 2025 Tr. at 77:25-78:2 ("Tr.") ("I don't accept the rationale

2    that only after the passage of the Big Beautiful Bill was there enough money to get this job done."); *id.* at

3    79:21-23 ("Exhibit C must be adjudicated by the original deadline of the 28th of January, six weeks from

4    now. I think it can be done. Don't tell me holidays.").

5           Rather than explain the basis for how the Borrower Defense Branch could have plausibly

6    processed 251,000 applications in three years with its existing resources, Plaintiffs deny that the Court

7    "made [any] such finding" at all. ECF No. 525 at 21. But the transcript speaks for itself, as the Court did

8    not explain any basis for why he was rejecting the Department's rationale. And Plaintiffs have never

9    asserted that it was plausible for the Department to adjudicate all the remaining 251,000 applications in

10   the time provided. Because the decision is not supported by facts in the record, it is clearly erroneous.

11          Plaintiffs' contention that the Court instead premised its decision only on the Department's "lack

12   of candor about the lack of progress that had been made in the prior months and years," ECF No. 525 at

13   21 (citing Tr. at 78:3-14), is incorrect. Again, the Court stated that it did not "accept the rationale that only

14   after passage of the Big Beautiful Bill was there enough money to get this job done[,]" rejecting

15   representations made by agency officials in both the Biden and Trump administrations. Tr. at 77:25-78:2.

16   *See* ECF No. 514 at 19. The portion of the transcript Plaintiffs cite begins with the Court's follow-up to

17   that statement. Specifically, Plaintiffs cite the Court's statement that "if [the representations made by the

18   agency in both administrations are] really true, the Department of Education should have come to me a

19   long time ago and raised this problem[.]" Tr. at 78:3-4 (cited at ECF No. 525 at 21).

20          That statement is not some alternative basis for the Court's decision; it was the Court's only

21   explanation for its refusal to accept that the agency lacked adequate funding resources to complete

22   processing by January 2026. But the fact that the Department had not petitioned the Court earlier is not a

23   rational basis to conclude that the Department's representations were false. The Court did not explain the

24   nature of the order that the Department should have come to the Court to request. Rather than petitioning

25   the Court, the Department repeatedly petitioned Congress for funding, consistent with the constitutional

26   design. *See* U.S. Const. art. I; *See also* Reply in Supp. of Defs.' Mot. for Temporary Relief from J., ECF

27   No. 503 at 5-7. The Court cannot issue an order appropriating funds to the Department. U.S. Const. arts.

28

I, III. Defendants doubt that the Court was suggesting that they should have petitioned for Rule 60(b) relief from judgment prior to Congress's decision to provide the Department with adequate funding resources in July 2025. Had the Department done so, it would have been doing nothing more than presenting the Court with a problem without a solution.  Without implementing new funding resources, the Borrower Defense Branch indicated that it has capacity to process 18,000 post-class applications annually. *See* Suppl. Decl. of James Bergeron, ECF No. 498-1 ¶ 3. At that processing rate, it would have taken nearly fourteen years to process the 251,000 post-class applications.[3]

In Plaintiffs' cited transcript pages, the Court stated that the Department had represented something as being "hunky-dory." Tr. at 78:5. Neither the Court nor Plaintiffs have identified any representation in the record that the Department would process all post-class applications by January 2026. As Defendants explained, ECF No. 503 at 13, Government litigation counsel had represented that the Department is committed to honoring the judgment—in other words, the Department will send required notices and provide relief (unless they secure modification or relief on appeal).[4] Government litigation counsel did not represent that the Department had the capacity to process all post-class applications by January 2026. *Id*. On the contrary, the Department publicized in two budget requests to Congress that it could not do so absent additional funding.[5] And Plaintiffs' counsel had not only constructive but actual knowledge of that representation. Indeed, Plaintiffs' counsel brought it to the Court's attention. Transcript at 10:3-7 (Mar. 13, 2025) ("In its fiscal year 2025 budget, FSA had said that in order to complete the adjudication of post-class applications on time, it would need $56 million to hire 300 contract attorneys.").

---

[3] Because the Department's processing capacity was dedicated to class member applications during the initial period of settlement implementation, Decl. of James Bergeron, ECF No. 492-1 ¶ 20, it is likely that the Department would have needed until after 2036 to process the number of post-class applications it had received absent additional funding resources.

[4] To state a claim for an alleged failure to provide relief for class members who did not receive a decision by the decision due date, Plaintiffs would have to show (1) that Defendants failed to issue a decision on an application by the due date *and* (2) Defendants subsequently failed to provide the class member the required notice that they will receive settlement relief.  Agreement ¶ V.B.1.  Defendants have not materially breached these provisions and do not anticipate doing so. Defendants will send the required notices absent relief permitting otherwise.

[5] Dep't of Educ. Fiscal Year 2024 Budget Request at 42, https://www.ed.gov/sites/ed/files/about/overview/budget/budget24/justifications/q-saa.pdf; Dep't of Educ. Fiscal Year 2025 Budget Request at 40, https://www.ed.gov/sites/ed/files/about/overview/budget/budget25/justifications/r-saa.pdf .

Thus, insofar as the Court's order was premised only on a belief that the Department had represented it had resources to process post-class applications by January 2026, it is clearly erroneous.[6]

Finally, the Court's failure to consider that the Department may not premise post-class application decisions on attendance at an Exhibit C school warrants reconsideration.  ECF No. 514 at 20-21. Plaintiffs do not meaningfully contest that the Court premised its belief that the January 2026 deadline was realistically achievable as to applicants who attended an Exhibit C school on its view that Exhibit C schools are "already highly suspect." Tr. at 80:5.  *See* ECF No. 525 at 21-22. And Plaintiffs do not meaningfully contest that the Court entirely failed to consider the procedures that the Department is required to use in adjudicating post-class borrower defense applications. *See id*. Rather, Plaintiffs double-down on their baseless position that the Exhibit C list provided a basis for expediting borrower defense applications associated with Exhibit C schools. *Id*. That is not true.

Neither Plaintiffs nor the Court have explained how "common evidence of school misconduct," *id*. at 22, expedites the time necessary to adjudicate a borrower defense application. Even assuming such "common evidence," *id*., exists in "Department records[,]" 34 C.F.R. § 685.222(e)(3)(i)(A) (2017), that only increases the volume of evidence that exists in each administrative record that the Department must consider when adjudicating each individualized claim.  *See id*. § 685.222(e).

Moreover, Plaintiffs' opposition seems to assume that Department records include common evidence of misconduct for Exhibit C schools. But that assumption is inconsistent with the Court's December 2025 findings that the evidence of misconduct for Exhibit C schools exists in the records of "attorney generals in various states." Tr. at 80:6. That "the attorney generals in various states have already singled out" Exhibit C schools "as fraudulent" does not mean that common evidence of misconduct for these schools that would support a meritorious borrower defense application exists in Department records. *Id*. at 80:6-7.

---

[6] Plaintiffs' citations to the transcript also include a statement by the Court that the Department "had it within its ability, instead of firing people, to keep people and keep them on the job to work these people—all of your cases." Tr. at 78:10-12. But "no BDB attorneys were terminated due to the agency-wide reduction-in-force ("RIF") that was initiated in March 2025." ECF No. 492-1 ¶ 9. Plaintiffs cite nothing in the record showing that Department permanently dismissed staff trained to process borrower defense applications.

Plaintiffs' assumption that Department records include common evidence of misconduct for Exhibit C schools is not consistent with the parties' Joint Motion for Preliminary Approval of the Settlement. ECF No. 246. In that filing, the parties explained that the Exhibit C list was based principally on "alleg[ations]" of misconduct as well as "the high rate of class members with applications related to the listed schools." *Id*. at 3. While these bases were sufficient for settlement purposes, none are concrete evidence of misconduct justifying approval of a borrower defense application. The parties indicated that there was concrete evidence of misconduct in only "some instances" of schools on the list. *Id*.

Even if these institutions did engage in misconduct, misconduct alone is insufficient for most claims. Post-class borrowers invoking a school's substantial misrepresentation, for example, must demonstrate that they relied on such misconduct. 34 C.F.R. §§ 685.222(d), 685.222(e)(1)(i)(B) (2017). The 2016 borrower defense regulations, which apply to these post-class borrowers, do not automatically assume that borrowers rely on every misrepresentation an institution has made. *Id*. Doing so would provide borrowers who were never misled or harmed with loan forgiveness at the expense of the taxpayers. As such, the Department cannot use "common evidence" to categorically process borrower defense applications in batches.

### III. Rule 60(b) Authorizes the Court to Grant the Relief Requested in Defendants' Motion on the Grounds Defendants Present.

Contrary to Plaintiffs' assertions, ECF No. 525 at 9-10, Rule 60(b) provides the Court with ample authority to modify a judgment after concluding that applying it prospectively is no longer equitable, including by reconsidering an earlier post-judgment decision that is premised on manifest errors of law or fact. First, Rule 60(b)(5) establishes a "pliable standard" that "codifies the courts' traditional authority, inherent in the jurisdiction of the chancery, to modify or vacate the prospective effect of their decrees." *California v. EPA*, 978 F.3d 708, 713 (9th Cir. 2020) (citation omitted). Moreover, "Rule 60(b)(6) is a grand reservoir of equitable power[.]" *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009) (citation omitted). "[I]t affords courts the discretion and power 'to vacate [or modify] judgments whenever such action is appropriate to accomplish justice.'" *Id*. (citation omitted).

Defendants do not dispute that parties may not invoke Rule 60(b) to "relitigat[e] disputes that the

same court has already resolved." ECF No. 525 at 10. But that principle is grounded in the law of the case doctrine, which "merely expresses the practice of courts generally to refuse to reopen what has been decided, [and is] not a limitation [on courts'] power. *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (citation omitted). "[L]aw of the case . . . does not preclude reconsideration of erroneous decisions." *Thompson v. Sawyer*, 678 F.2d 257, 270 (D.C. Cir. 1982). Under the doctrine, it is not improper for a court to depart from a prior holding based on "clear error in the original ruling[.]" *Estrada-Lucas*, 651 F.2d at 1263. For this reason, Defendants did not merely take a mulligan and re-file their original Rule 60(b) motion. Rather, they presented argument targeted to the manifest errors of law and fact in the Court's December 2025 decision on the motion. ECF No. 514 at 13-21. At a minimum, Defendants were entitled to a reasonable and reasonably explained exercise of the Court's traditional authority at equity to modify the prospective effect of the judgment based on a balance of the parties' equities. The manifest errors of law and fact identified in Defendants' opening brief precluded such a decision. This Court may and should correct for those errors.

There is nothing untoward about filing this motion after "Judge Alsup retired and a new judge was assigned to this case." ECF No. 525 at 11. On the contrary, "reconsideration of errors may be especially appropriate where the predecessor judge cannot perform the task himself." *Thompson*, 678 F.2d at 270. *See also In re Tri-State Fin., LLC*, 885 F.3d 528, 533 (8th Cir. 2018) ("To the extent that a trial judge can alter a previous ruling, so too can a successor judge.") (citation omitted).

Moreover, Plaintiffs are wrong to suggest that Defendants' sole "remedy would be through appeal." ECF No. 525 at 11. Courts have rejected the "proposition that a district court judge cannot reconsider matters previously decided by another district court judge, and that the [only] proper method for resolution of this situation is appeal to a higher court." *United States v. O'Keefe*, 128 F.3d 885, 891 (5th Cir. 1997). "Under the law of the case doctrine and general principles of comity, a successor judge has the same discretion to reconsider an order as would the first judge[.]" *Id*. Contrary to Plaintiffs' assertions, motions for reconsideration are important tools to prevent a potential waste of judicial and party resources associated with taking an unnecessary appeal. *See id*. at 891 n.6 (Court was "not inclined to find" that "parties lose the option of filing a motion for reconsideration" after "a judge has to recuse

himself" and is replaced "because reconsideration may obviate the need to appeal."); *see also United States v. Healy*, 376 U.S. 75, 80 (1964) (Depriving "the Government of the opportunity to petition a lower court for the correction of errors might . . . actually prolong the process of litigation—since plenary consideration of a question of law here ordinarily consumes more time than disposition of a petition for rehearing[.]").

### IV.    The Provision of the Agreement that Defendants Seek to Modify Provides No Basis to Deny the Requested Relief.

Plaintiffs provide no support for their incorrect argument that the January 2026 deadline precludes the Court from modifying the January 2026 deadline. ECF No. 525 at 11-14. "Where an affirmative obligation is imposed by court order on the assumption that it is realistically achievable, the court finds that the defendants have made a good faith effort to achieve the object by the contemplated means, and the object nevertheless has not been fully achieved, clearly a court of equity has power to modify [it] in the light of experience." *Phila. Welfare Rts. Org.*, 602 F.2d at 1120-21. Based on that authority, Defendants are asking the Court to modify the judgment to permit them until July 2027 to adjudicate post-class applications. Oddly, Plaintiffs rely on the very provision of the Agreement that Defendants are asking the Court to modify as a basis to argue that the Court may not grant Defendants relief. ECF No. 525 at 11-13. Unsurprisingly, they provide no authority for that argument. A court of equity can issue an order modifying a judgment's deadline after it has passed to prevent Defendants from enduring prospective irreparable harm if the judgment is not modified. *See California*, 978 F.3d at 713. Courts routinely issue orders extending litigation deadlines after the original deadline has passed. The Court's power to enter Rule 60(b) relief in this context works the same way.

Plaintiffs are wrong to argue that the judgment no longer has prospective effect. ECF No. 525 at 13-15. The Agreement obligates Defendants to guarantee post-class applicants Full Settlement Relief within one year of providing them with written notice that they will receive Full Settlement Relief. Those mandatory injunctive-in-nature obligations are prospective because the judgment requires Defendants to effectuate them in the future. At the earliest and absent judicial relief, notices to the post-class applicants are not due until March 30, 2026, with relief being due one year later. Plaintiffs' statements that

Defendants' claims are moot and an order granting Defendants' motion would have no effect could only be true if all the notices had already gone out and Full Settlement Relief for all post-class applicants had already been effectuated, in which case Plaintiffs surely would not be forcefully opposing this motion.

Plaintiffs are also wrong to argue that "the plain language of the Settlement makes clear that the time for sending notice is a red herring." ECF No. 525 at 12. The parties' agreement to delayed notice provisions affords the Court an opportunity to consider requests for emergency relief from having to send notices saying something like "we will provide you with relief unless the court says we have more time." Indeed, Plaintiffs' understanding of the Agreement is belied by the enforcement provisions, which intentionally preclude Plaintiffs from asserting a claim for breach before Defendants fail to send notices to class members, permitting Defendants to first seek relief from the Court before Plaintiffs may assert a claim for breach. Agreement ¶ V.A ("[T]he Court shall retain jurisdiction only to review claims set forth in this Section V[.]"); *id.* ¶ V.B.1. ("Plaintiffs may bring a claim alleging that Defendants have materially breached the Agreement if Defendants have (i) failed to issue to a Class Member or Post-Class Applicant by the [Paragraph IV] due date . . . a decision [on their borrower defense application], . . . *and* (ii) subsequently failed, within [60[7]] calendar days following the expiration of the applicable deadline, to provide that Class Member with notice that they will receive Full Settlement Relief[.]") (emphasis added). The fact that the Agreement itself precludes Plaintiffs from asserting a claim for breach until both the adjudication and the notice deadlines have passed entirely undermines their suggestion that these deadlines were intended to be divorced from one another. Because the notice deadline runs from the decision deadline, a Rule 60(b) order modifying the decision deadline to provide Defendants until July 2027 to adjudicate remaining post-class applications will necessarily modify the notice deadline in turn. Indeed, the Court has already done just that for non-Exhibit C school-related post-class applications, which now have an April 15, 2026 application processing deadline.

Plaintiffs' "vested right" argument, ECF No. 525 at 11, is independently incorrect. Defendants do not dispute that courts sometimes refer to judgments at law for money damages as providing for vested

---

[7] Section V refers to a 30-day notice period. That appears to be a scrivener's error given that the substantive provisions in Section IV provide for a 60-day notice period.

rights. But there is no waiver of sovereign immunity that would support this Court's issuance of a final judgment vesting that kind of right against the Government. 5 U.S.C. § 702 (waiving sovereign immunity only for equitable claims "seeking relief other than money damages"). Courts are clear that final judgments approving equitable-in-nature relief do not implicate vested-rights doctrine. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) ("[P]laintiff had no 'vested right' in [equitable-in-nature] decree[.]" (citation omitted)); *Benjamin v. Jacobson*, 172 F.3d 144, 164 (1999) ("Such right as a litigant may have to prospective relief is thus neither final nor 'vested'"); *Plyler v. Moore*, 100 F.3d 365, 374 (4th Cir. 1996) ("[A] judgment approving prospective relief is not a final judgment . . . for purposes of the vested-rights doctrine."); *see also Abbott Lab'ys v. Gardner*, 387 U.S. 136, 155 (1967) (confirming that "equitable defenses may be interposed" in cases for declaratory and injunctive relief arising under the Administrative Procedure Act ("APA")); *California*, 978 F.3d at 713 ("Historically, what made courts of equity different was that they could be 'flexible' and 'adjust their decrees, so as to meet most, if not all' of the exigencies to do justice for the parties.").[8]

Plaintiffs are also incorrect to assert that post-class applicants have any vested rights in the judgment or Agreement given that they are not parties to this case and the judgment does not have any preclusive effects upon them, as the parties explicitly agreed. Agreement ¶ VII at 21. *See* ECF No. 514 at 16. Post-class applicants can bring their own claims regarding their borrower defense applications. As Plaintiffs' counsel explained at the Final Approval hearing, "we are not actually settling any claims that [post-class applicants] may have" against the Department. ECF No. 341 at 72:19-20. So even if a vested-rights doctrine could apply to APA-based suits for injunctive-in-nature relief, that right would only vest in a judgment or settlement achieved by post-class applicants. Any adjudication of post-class claims in their own lawsuit wound undoubtedly supplant the provisions that address the post-class in the Agreement in this case. *See* ECF No. 323 at 12 n.3 ("Meanwhile, Post-Class Applicants do not release any claims

---

[8] Some courts have referred to vested rights or vested rights doctrine as an equitable doctrine. *See, e.g., Lakeview Dev. Corp. v. City of S. Lake Tahoe*, 915 F.2d 1290, 1295 (9th Cir. 1990) (referring to vested-rights doctrine as "a species of governmental estoppel"). Insofar as Plaintiffs mean to invoke this line of authorities, Defendants do not dispute that the Court may consider a party's reliance interests in the judgment as part of the Rule 60(b)(5) equitable balancing. But a doctrine rooted in equity would not provide for a hard rule entirely precluding modification.

under the Agreement, so they have legal recourse if the Department engages in unlawful procedures in the course of adjudicating their applications" outside of this lawsuit). The notion that the post-class has vested rights in the Agreement thus fails as a matter of logic as well as law.

The *Shapp* court did not consider similar incentive provisions to provide putative vested rights. *See Phila. Welfare Rts. Org.*, 602 F.2d at 1121. In *Shapp*, the settlement provided for "incentive payments" to the plaintiff's members. *Id*. The court explained that enforcing these provisions when they cannot realistically be an "incentive for anything" would be "punitive[.]" *Id*. The same is true here.

## V.    Plaintiffs May Not Re-Litigate Issues that the Parties Already Addressed.

Plaintiffs wrongly accuse Defendants of seeking to endlessly relitigate disputes, ECF No. 525 at 10, and even suggest that Defendants' motion is sanctionable, *id*. at 10 n.5 (continued). But again, *see supra* at pp. 2, 10, law of the case permits a redetermination for "clear error in the original ruling[,]" *Estrada-Lucas*, 651 F.2d at 1263, to "obviate the need to appeal[,]"*O'Keefe*, 128 F.3d at 891 n.6.

Despite their accusations, Plaintiffs devote much of their own briefing to relitigating issues that were addressed when the parties briefed Defendants' first motion. ECF No. 525 at 15-22. First, Plaintiffs argue that the motion is untimely because Defendants knew the size of the post-class at the time the Agreement compelled them to seek final approval and Defendants should have then sought relief from judgment rather than implementation funding from Congress. ECF No. 525 at 16. But Defendants already addressed that argument, ECF No. 503 at 11-14, and the Court rejected it. Rather than finding the motion was untimely under Rule 60(c), the Court granted it in part. Tr. at 82:3-8.[9] Plaintiffs have not filed a motion seeking reconsideration on that issue, which is now law of the case.

Second, Plaintiffs' argument that a significant change of fact or law is required and that Defendants fail to show one, ECF No. 525 at 17-18, is wrong for the same reasons it was last time. ECF No. 503 at 2-9. By granting Defendants' motion in part, the Court rejected the notion that it may not issue Rule 60(b)(5)

---

[9] In a footnote without citation to authority, Plaintiffs argue that the present motion is untimely. ECF No. 525 at 17 n.8. But the motion was filed within the period for an appeal. Fed. R. App. P. 4(a)(1)(B). Plaintiffs' suggestion that the Government was required to file the motion over the holidays so that Judge Alsup could consider it before his retirement is in tension with the authorities indicating that a new judge has no bearing on these issues. *See supra* at pp, 10-11  Moreover, Judge Alsup acknowledged that issues regarding the deadlines in this case would live on beyond his retirement, expressly handing over to his successor a decision as to whether the April 15, 2026 deadline should be further extended.  Tr. at 80, 82.

relief for these reasons. Again, the Court granted Defendants' motion in part consistent with the court's reasoning in *Philadelphia Welfare Rights Organization v. Shapp*, 602 F.2d 1114, 1120-21 (3d Cir. 1979), but did so based on manifest errors of fact and law that compel reconsideration to the extent it was denied. Law of the case precludes Plaintiffs from re-litigating matters without identifying any clear error in the Court's original ruling. *Id.*

Third, Plaintiffs invoke the equities of the post-class. ECF No. 525 at 18-20. As Defendants explained, the equities of these non-parties—which are not as substantial as Plaintiffs suggest[10]—did not weigh in favor of denying Defendants' motion. ECF No. 503 at 9-11.

## VI.    The All Writs Act Authorizes the Court to Administratively Stay the Notice Deadline.

Defendants indicated that the Court may administratively stay the notice deadline if it needs until after March 2, 2026, to consider this motion. ECF No. 514 at 23. Plaintiffs filed a separate opposition to that paragraph, wrongly invoking Local Rule 7-11(b). ECF No. 515. The Court's authority to issue such an order arises under the all writs statute, 28 U.S.C. § 1651, not Local Rule 7-11(b).[11]

Dated: February 12, 2026                            Respectfully Submitted,

                                                    BRETT A. SHUMATE
                                                    Assistant Attorney General

                                                    MICHELLE R. BENNETT
                                                    Assistant Branch Director

                                                    */s/ Liam C. Holland*
                                                    LIAM C. HOLLAND
                                                    Trial Attorney
                                                    U.S. Department of Justice

---

[10] Granting this motion will not change the status quo for post-class applicants—including forbearance and suspended collection activity. ECF No. 503 at 9. No post-class applicant would be placed back into repayment status with respect to loans that are the subject of their post-class applications unless and until that application is denied, which is what the underlying substantive law requires. *Id.*

[11] Plaintiffs are wrong to suggest that the "only effect" of staying the notice deadline until the Court issues a decision on this motion "would be to delay the delivery of Settlement relief[.]"  ECF No. 525 at 13 n.7.  The effect of staying the notice deadline—if necessary for the Court to rule on this motion before March 2, 2026—would be to aid the Court's jurisdiction to consider Defendants' Rule 60(b) motion to modify the January 2026 deadline for adjudicating post-class applications.  If the Court grants this motion and makes the adjudication deadline July 2027, then Defendants would adjudicate all post-class applications before July 2027 and provide notice of decisions to post-class applicants as post-class applications are decided, with relief, as appropriate, to follow.

Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*