EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS (*pro hac vice*)
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
NOAH ZINNER (SBN 247581)
nzinner@ppsl.org
PROJECT ON PREDATORY STUDENT
LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
Tel.: (617) 390-2669
Fax: (781) 218-9625

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated, | Case No. 19-cv-03674-HSG |
| *Plaintiffs*, | **NOTICE OF MOTION AND MOTION FOR COUNSEL FEES AND COSTS** |
| v. | |
| LINDA MCMAHON, in her official capacity as Secretary of the United States Department of Education, and | |
| THE UNITED STATES DEPARTMENT OF EDUCATION, | |
| *Defendants*. | |

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION ................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.   INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND .......................................................................................................... 4

III.  LEGAL STANDARD ................................................................................................... 9

IV.  ARGUMENT ............................................................................................................. 10

  A.   Plaintiffs Are Entitled to Reasonable Fees and Costs for Enforcement-Related Work
Performed Between September 27, 2024, and February 6, 2026 ............................................. 10

  B.   PPSL's Hours Are Reasonable .................................................................... 11

  C.   PPSL's Requested Rates Are Reasonable........................................................ 13

    1.   The Laffey Matrix Provides a Reasonable Rate Estimate ............................................ 13

    2.   The Requested Fees Are Minimal Compared to the Relief to the Class ...................... 15

  D.   PPSL's Costs Are Reasonable .......................................................................... 17

CONCLUSION.......................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bd. of Trs. v. Piedmont Lumber & Mill Co.*, No. 13-cv-0389, 2016 WL 4446993 (N.D. Cal. Aug. 24, 2016) ................................................................................................................... 21

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................... 12

*Brinker v. Normandin's*, No. 14-cv-03007, 2017 WL 713554 (N.D. Cal. Feb. 23, 2017) .......... 17

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ................................... 12

*Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369, 2020 WL 3414653 (N.D. Cal. June 22, 2020) ....................................................................................................................... 17

*Chang v. Wells Fargo Bank, N.A.*, No. 19-cv-01973, 2023 WL 6961555 (N.D. Cal. Oct. 19, 2023) ................................................................................................................. 18, 20

*Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049 (9th Cir. 2009) ................... 12

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001) ................................... 12

*In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667 (9th Cir. 2025)................... 13

*In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912 (N.D. Cal. 2005) ......................................................................................................... 16, 17, 18, 19

*In re Portal Software, Inc. Secs. Litig.*, No. 03-cv-5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ....................................................................................................................... 17

*Kim v. Allison*, 8 F.4th 1170 (9th Cir. 2021) ................................................................ 18

*Mancini v. Dan P. Plute, Inc.*, 358 F. App'x 886 (9th Cir. 2009) ................................. 12

*Pardi v. Tricida, Inc.*, No. 21-cv-00076, 2025 WL 2988737 (N.D. Cal. Oct. 23, 2025) ....... 13, 17

*Stiner v. Brookdale Senior Living, Inc.*, 17-cv-03962, 2025 WL 2998163 (N.D. Cal. Oct. 24, 2025) ....................................................................................................................... 18

*Taylor v. Shutterfly, Inc.*, No. 18-cv-00266, 2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) ......... 20

*Theme Promotions, Inc. v. News America Mktg. FSI, Inc.*, 731 F. Supp. 2d 937 (N.D. Cal. 2010) ....................................................................................................................... 17

**Other Authorities**

U.S. Census Bureau, Quick Facts: Raleigh, North Carolina,

    https://www.census.gov/quickfacts/fact/table/raleighcitynorthcarolina/INC110223 .............. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on May 7, 2026, at 2:00 p.m., in the courtroom of the Honorable Haywood S. Gilliam, Jr., Courtroom 2, 4th Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs will and hereby do respectfully move the Court for an order directing Defendants to pay to Plaintiffs their reasonable counsel fees and costs incurred as a result of Defendants' material breaches of the Settlement Agreement in this case, pursuant to Paragraphs V.B.1 and V.B.2 of the Settlement Agreement. This Motion is supported by the accompanying memorandum of points and authorities, the attached declarations and exhibits, the pleadings and other papers filed in this case, oral argument, and any other matters in the record or of which this Court takes notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The Settlement Agreement in this case contemplated, reasonably, that the Department of Education ("Department") would administer the delivery of Settlement relief to the Class by a series of deadlines that began more than a full year after final approval. Plaintiffs, the Class, and their counsel would have preferred that the Department successfully perform this purely administrative function without the need for intervention or oversight. However, the Department failed to meet its Settlement responsibilities from the very first deadline, and has materially breached the Settlement three times in the past two years. Each time, Plaintiffs have brought a successful claim for material breach, and each time, Plaintiffs have been required to engage in significant ongoing enforcement activities to protect Class Members' rights under the Settlement.

These activities have included systemic enforcement, such as negotiating and then litigating an administrative discharge process that enabled the Department to meet certain relief deadlines. They have also included enforcement on an individual level, requiring Plaintiffs' counsel to "look over the shoulder" of the Department in its handling of, to date, 14,709 individual complaints related to Settlement relief. Since March 2024, Plaintiffs' counsel (who live throughout the country) have attended 22 Court-ordered, in-person meet-and-confer sessions with the

Department and its loan servicers in Washington, D.C., and 14 hearings and status conferences before the District Court in San Francisco. Counsel have attended 60 meetings with the Federal Student Aid Ombudsman's Office to address Class Member complaints, ranging from two to seven hours long each time—and it would be nearly 70 meetings if not for the federal government shutdown in fall 2025 and the Department's recent recalcitrance to attend the weekly meetings.

The *Sweet* Class includes nearly 500,000 people. This is a massive number for an organization of Plaintiffs' counsel's size to handle, but for the Department, it is close a rounding error: there are over 47.5 million Americans who currently have federal student loans. Delivering Settlement relief should have been a manageable task for the Department. Yet instead, Plaintiffs have been forced to help the Department service its own loans. As a result of Plaintiffs' diligence in doing so, the Class has received full and timely relief that they otherwise would not have gotten from the government.

The Settlement provides that the Department "shall" be liable for Plaintiffs' "reasonable attorneys' fees and costs" incurred in bringing a successful claim of material breach. Settlement Agreement, ECF 246-1 ("Settlement") ¶¶ V.B.1.i, V.B.2.i. Indeed, the Department has acknowledged this obligation once before, in a fee settlement covering the period up to and including September 26, 2024. *See* Motion for Approval of Agreement re: Counsel Fees, ECF No. 445; Minute Order, ECF No. 451 (granting motion). Now, however, the parties have not been able to reach agreement on reimbursement for Plaintiffs' counsel's reasonable fees and costs incurred in enforcing the Settlement during the period from September 27, 2024, through February 5, 2026.[1] Accordingly, Plaintiffs respectfully move this Court to order the Department to make this contractually required payment, in the amount of $1,438,999.10 in fees and $107,983.71 in costs to be paid to Plaintiffs' counsel, the Project on Predatory Student Lending ("PPSL").

---

[1] Plaintiffs reserve their rights to seek reimbursement for fees and costs incurred on or after February 5, 2026, at a later time as appropriate.

These amounts are eminently reasonable. First, the number of hours PPSL spent on this case during the relevant period is proportional to (and in fact likely underestimates) the difficulty of ensuring that Defendants complied with the Settlement. In addition to litigation-related hours, PPSL has, in effect, acted as a settlement administrator in this case, devoting hundreds of hours to reviewing and attempting to resolve questions and complaints from Class Members about their settlement relief. PPSL's fee calculations are based on the Laffey Matrix, an accepted method for estimating the market rates for attorneys who, like PPSL, do not charge clients for their services. Courts in this District have found that the Laffey Matrix rate plus an adjustment for cost-of-living differences between different metropolitan areas is an appropriate measure of reasonable attorneys' fees. Moreover, PPSL's fee request represents a vanishingly small percentage of the value of the discharges and refunds effectuated under the Settlement thus far—obviously far below the presumptively reasonable level in class action cases involving lodestar cross-checks. And significantly, the fees and costs in this case are not subtracted from the relief owed to Class Members under the Settlement.

Second, PPSL's costs are largely the result of Court-ordered travel for status conferences and meet-and-confer sessions. The Court ordered the parties' counsel to meet frequently in person, and report back to the Court, because of the Department's repeated failures to meet deadlines required by the Settlement and set by the Court. This travel was an integral part of the Court's "order[s] requiring Defendants to promptly provide Full Settlement Relief to each affected Class Member on a timetable set by the Court," and for "Defendants [to] report to Plaintiffs' Counsel and the Court on its progress of issuing relief." Settlement ¶¶ V.B.1.i-ii, V.B.2.i-ii. PPSL is also requesting reimbursement for costs associated with counsel's client management systems that have been dedicated to this enforcement effort. PPSL is a small non-profit organization, and it has devoted a substantial majority of its technology systems to tracking Class Member contact information, managing Class Member communications, and ensuring the disbursement of relief.

Given the length and complexity of this enforcement process, the significant Court-ordered travel involved, and the success of Plaintiffs' enforcement efforts in delivering relief to the Class, these fee and cost requests are eminently reasonable.

## I. __BACKGROUND__

Paragraph V.B of the Settlement authorizes Plaintiffs to bring certain claims to enforce its terms. *See* Settlement ¶¶ V.B.1–4. As relevant here, Paragraph V.B.1 states:

> Plaintiffs may bring a claim alleging that Defendants have materially breached the Agreement if Defendants have (i) failed to issue to a Class Member or Post-Class Applicant by the due date established in Paragraph IV.C.3, IV.C.4, or IV.D.2, as applicable, a decision, as defined by Paragraph IV.C.2; and (ii) subsequently failed, within 30 calendar days following the expiration of the applicable deadline, to provide that Class Member with notice that they will receive Full Settlement Relief, as required by Paragraph IV.C.8 or IV.D.2, as applicable.

Paragraph V.B.2 similarly states:

> Plaintiffs may bring a claim alleging that Defendants have materially breached Paragraph IV.A.1, IV.C.9, IV.D.1, and/or IV.D.3 of the Agreement by failing to effectuate relief within the prescribed time periods for any individual who is entitled to receive relief pursuant those Paragraphs.

In both cases, "[s]hould Plaintiffs prevail" on a claim for material breach, "Defendants shall . . . be liable for Plaintiffs' reasonable attorneys' fees and costs incurred in bringing" that claim. *Id.* ¶¶ V.B.1.i, V.B.2.i.

### *First Material Breach*

Plaintiffs' efforts to enforce the Settlement began two and a half years ago, in September 2023. At that time, the Settlement's Automatic Relief Group was awaiting its relief deadline of January 28, 2024. *See* Settlement ¶ IV.A.1 ("Defendants will effectuate Full Settlement Relief" for Automatic Relief Group members "[n]o later than one year after the Effective Date"); Order re Motion to Stay Judgment Pending Appeal at 10, ECF No. 382 (Effective Date of the Settlement was January 28, 2023). Plaintiffs became aware of systemic issues with servicers returning Automatic Relief Group members to repayment status on their Settlement-related loans, which indicated that the Department was not—as it had previously represented—on track to meet the relief deadline. *See* Plaintiffs' Motion to Enforce Ex. 7, ECF No. 397-3. Throughout the fall of

2023, Plaintiffs repeatedly requested that Defendants take steps to ensure that they would meet the approaching deadline. *See id.*, Ex. 8–12.

The Department did not meet the deadline. In February 2024, Plaintiffs sent Defendants two Notices of Material Breach. *See id.*, Exs. 13–14. The Department soon conceded that it had materially breached Paragraph IV.A.2 by failing to deliver Full Settlement Relief to all members of the Automatic Relief Group by the January 28, 2024, deadline. *See* Plaintiffs' Motion to Enforce at 13, ECF No. 397. On March 19, 2024, Plaintiffs filed a Motion to Enforce the Settlement. *See generally id.* In that motion, Plaintiffs stated that they would seek reasonable attorneys' fees and costs pursuant to Paragraph V.B.2. *Id.* at 17.

At the April 24, 2024, hearing on Plaintiffs' Motion to Enforce, the Court ordered the Department to provide relief according to a revised schedule and ordered the parties and loan servicers to meet biweekly, in person, either in Washington, D.C. for meet-and-confer sessions or in San Francisco for status conferences, to monitor progress and resolve compliance issues as they arose. Minute Order, ECF No. 407. The Court indicated at that hearing that Plaintiffs' counsel would be entitled to fees and costs. Transcript of April 24, 2024, Hearing at 32:15–19.

At the next month's status hearing, the Court ordered the biweekly meetings to continue, and further ordered that Plaintiffs' counsel should "look over the shoulder of the [Federal Student Aid] ombudsman to ensure accountability and to support efforts to enforce judgment promptly." Minute Order, ECF No. 414. Pursuant to this order, the parties instituted regular meetings between Plaintiffs' counsel and Ombudsman's Office staff to review and resolve class member complaints about their failure to receive timely relief and other issues arising under the Settlement.

As a result of these status conferences and meetings, the parties were able to resolve a number of issues with the disbursement of Settlement relief, and on September 26, 2024, the parties reported that the Department was in substantial compliance with respect to the Automatic Relief Group. Transcript of Sept. 26, 2024, Hearing at 6:5–13. At that point, the Court granted permission for Plaintiffs to file an application for enforcement fees and costs incurred to date. Minute Order, ECF No. 434. The parties reached a compromise pursuant to Section VI.C of the Settlement on

1  fees and costs incurred through September 26, 2024, and Plaintiffs submitted an unopposed motion

2  for approval of that agreement, *see* ECF No. 445, which the Court granted, ECF No. 451.

3         That was not the end of the story, however.

4  ***Second Material Breach and Continued Relief Disbursement Issues***

5         Also at the September 26, 2024 hearing, the Department admitted, and the Court found,

6  that the Department was in material breach yet again, this time of its obligation to deliver timely

7  relief to the first tranche of the Decision Group. *See* Transcript of Sept. 26, 2024 Hearing at 17:15–

8  18; Minute Order, ECF No. 434. The regular status conferences and in-person meet-and-confer

9  sessions continued for the rest of 2024 and throughout 2025, as the parties worked to address that

10  breach and prevent further breaches for the remainder of the Decision Group. *See, e.g.*, Minute

11  Orders, ECF No. 434 (ordering continuation of biweekly meetings); ECF No. 439 (October 2024

12  status conference); ECF No. 444 (November 2024 status conference); ECF No. 456 (January 2025

13  status conference, permitting in-person Washington, D.C. meetings to be held once per month);

14  ECF No. 463 (March 2025 status conference, ordering in-person meetings to continue); ECF No.

15  470 (April 2025 status conference, ordering additional meetings between Plaintiffs' counsel and

16  servicers); ECF No. 477 (June 2025 status conference); ECF No. 485 (August 2025 status

17  conference); Declaration of Rebecca C. Ellis ¶¶ 35–41, ECF No. 502-1 (describing in-person

18  meetings of February, June, July, August, and September 2025, and virtual meeting of October

19  2025 due to the government shutdown).

20         In addition to the in-person meetings between the parties and servicers, the Court reiterated

21  in November 2024 that "class counsel [should] roll up sleeves alongside the government to

22  resolve" the backlog of class member complaints about missing relief. ECF No. 444. Notably,

23  these complaints included class members from the Automatic Relief Group who still had not

24  received their Full Settlement Relief, despite the Department's representations of substantial

25  compliance with respect to that group. See Exhibit A, Declaration of Rebecca C. Ellis, Esq., in

26  Support of Plaintiffs' Application for Fees and Costs ("Ellis Decl.") ¶ 15. Thus, in November 2024,

27  Plaintiffs' counsel began meeting with Ombuds staff weekly over teleconference, with in-person

28  Ombuds meetings also taking place when Plaintiffs' counsel traveled to Washington, D.C., for the

1    full group meetings. *See id.* ¶¶ 14, 18. In March 2025, the Court specifically ordered that these

2    weekly Ombuds meetings should continue. *See* Transcript of March 13, 2025, Hearing at 26:25–

3    27:8. The meetings continue to this day.

4    ***The Department's Post-Judgment Motions and Third Material Breach***

5           In November 2024, the Department filed a motion asking to stop using the parties' agreed-

6    to, Court-approved "terminal consolidation method" for effectuating Settlement relief for future

7    Decision Group tranches. *See generally* Defendants' Motion to Approve Settlement Relief

8    Process, ECF No. 443. Plaintiffs opposed, pointing out that this methodology had been a key tool

9    for enabling the Department to come into compliance on the Automatic Relief Group and Decision

10    Group 1. *See* Plaintiffs' Opposition to Motion to Approve Settlement Relief Process at 1, ECF No.

11    446. By contrast, the Department's proposal was unlikely to enable it to meet upcoming relief

12    deadlines, thus creating an unreasonable risk of further material breaches. *Id.* at 1–2, 8–9.

13           The Court held a hearing on December 12, 2024, and agreed with Plaintiffs that the

14    Department had merely proffered an inadequate "plan to get a plan," not a workable method for

15    effectuating relief. Transcript of Dec. 12, 2024 Hearing at 6:21–24. The Court denied the motion

16    and ordered the Department to use the "terminal consolidation method" for all remaining Decision

17    Groups and the Post-Class.[2] *Id.* at 23:20–23; Minute Order, ECF No. 451.

18           Then, throughout 2025, Plaintiffs repeatedly questioned whether the Department was on

19    track to meet the Post-Class decision deadline of January 28, 2026. And in response, the

20    Department repeatedly reiterated that it understood its obligations under the Settlement and was

21    committed to following the parties' agreement. *See* Order Denying Defendants' Motion for Relief

22    Under Fed. R. Civ. P. 60(b) at 2–3, ECF No. 529. Yet on November 6, 2025, the Department filed

23    a motion under Rule 60(b) seeking an 18-month delay of the Post-Class deadline. *See generally*

24    Defendants' Motion for Temporary Relief from Judgment, ECF No. 492.

25

26

27

28

---

[2] The Court denied the motion without prejudice to the Department re-filing its request by January 31, 2025, "with a better record," ECF No. 451, but the Department did not re-file.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs opposed. *See generally* Plaintiffs' Opposition to Defendants' Motion for Relief from Judgment ("Plaintiffs' 60(b) Opposition"), ECF No. 502. As support for their opposition, Plaintiffs conducted, on short notice, a survey of Post-Class Applicants that garnered over 20,000 responses in less than two weeks. *See* Declaration of Rebecca C. Ellis ¶¶ 23, 30, ECF No. 502-1. Plaintiffs also interviewed a selection of survey respondents and submitted 34 sworn declarations by Post-Class Applicants, informing the Court about the harm these Class Members were suffering and would suffer if the deadline were pushed back. *See id.* ¶ 32; ECF Nos. 502-2, 502-3.

Plaintiffs also, as part of their opposition, alleged that the Department had materially breached Paragraph V.D.5 of the Settlement, which provides specific meet-and-confer procedures in the event that Defendants claim they are "reasonably prevented from or delayed in fully performing any of the obligations set forth in Paragraph IV . . . due to extraordinary circumstances beyond Defendants' control." Settlement ¶ V.D.5; *see* Plaintiffs' 60(b) Opposition at 3–4, 20. The Department had admittedly not followed these procedures. *See* Plaintiffs' 60(b) Opposition at 4. Plaintiffs further alleged that the Department was in anticipatory material breach of Paragraph IV.D.2, explaining:

> Pursuant to Paragraph V.D.5, where the parties are unable to agree "as to whether extraordinary circumstances exist [to justify a deadline extension] or what the appropriate length of an extension is"—which is the case here—then "Plaintiffs may raise a claim of material breach of Paragraph IV with the Court prior to the expiration of the timelines provided in that Paragraph." It is clear from the Department's motion that a material breach of this provision will occur on January 29, 2026.

*Id.* at 20 (alterations in original).

The Court held a hearing on December 11, 2025, at which it denied in part and granted in part the Department's motion. The Court ruled that the original deadline would remain in place for Post-Class members whose BD applications related to Exhibit C schools. Transcript of Dec. 11, 2025 Hearing at 79:19–22. For Post-Class members whose applications did not relate to Exhibit C schools, the Court granted the motion, albeit with a shorter extension than the Department had requested: to April 15, 2026, with the option to request a further extension upon a showing of effective and good-faith efforts to finish that set of decisions. *Id.* at 80:13-25. Finally, the Court

granted Plaintiffs' motion to enforce the Settlement (subject to the rest of the ruling as described above), *id.* at 82:11–13, and ordered the Department to preserve evidence relating to the issue of Post-Class adjudications, *id.* at 81:11–20.

After Judge Alsup retired, and just a week before the January 28 deadline, the Department filed a new Rule 60(b) motion, seeking the same 18-month extension that Judge Alsup had just recently denied. *See* Defendants' Motion for Relief Under Federal Rule of Civil Procedure 60(b) at 1, ECF No. 514. The Department also filed administrative motions seeking for its new motion to be decided on the papers and to extend its deadline to appeal Judge Alsup's December 11 order. *See* ECF Nos. 517, 518. Plaintiffs opposed the second Rule 60(b) motion and responded to the Department's administrative motions to point out various ways in which they were procedurally deficient. *See* ECF Nos. 515, 519, 520, 525. On February 24, 2026, this Court ruled without a hearing, denying the Department's second Rule 60(b) motion and ordering that "[n]o further Rule 60(b) motions will be entertained." ECF No. 529 at 7.[3]

## II.    LEGAL STANDARD

"Courts in the Ninth Circuit calculate a reasonable attorney fee using the lodestar method, multiplying 'the number of hours . . . reasonably expended . . . by a reasonable hourly rate.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.,* 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). A "reasonable" hourly rate is "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In the Ninth Circuit, the "relevant legal community" is the litigation forum. *Mancini v. Dan P. Plute, Inc.*, 358 F. App'x 886, 888 (9th Cir. 2009) (citing *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009)).

"Once the prevailing attorney offers evidence of a market rate, there is a presumption of reasonableness." *Id.* at 889. The "touchstone" of a reasonableness analysis is "the benefit to the class—class counsel can only reap rewards if they have delivered results for class members.'"

---

[3] The Department has since filed a notice of appeal of both Judge Alsup's December 11 order and the February 24, 2026 order. *See* ECF No. 531.

*Pardi v. Tricida, Inc.*, No. 21-cv-00076, 2025 WL 2988737, at *9 (N.D. Cal. Oct. 23, 2025) (quoting *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025)).

## III.  ARGUMENT

### A.  Plaintiffs Are Entitled to Reasonable Fees and Costs for Enforcement-Related Work Performed Between September 27, 2024, and February 6, 2026

As detailed above, the Department admitted twice, and the Court found once, that the Department was in material breach of the Settlement. At all times between September 27, 2024, and February 6, 2026, the Department either was in active material breach or required significant oversight from Plaintiffs and the Court to avoid falling back into material breach.

The requested fees and costs were "incurred in bringing" Plaintiffs' claims to enforce the Settlement and in helping to cure the Department's breaches. *See* Settlement ¶¶ V.B.1.i, V.B.2.i. The covered period began the day after the Department admitted to the Court that it was in material breach of its obligation to deliver timely relief to the first tranche of the Decision Group, and includes hundreds of hours spent remedying that breach and ensuring that relief was delivered to Decision Group members.

The Court specifically ordered that, as part of the effort to cure the Department's breaches, Plaintiffs' counsel must meet with the Department regularly in person, travel to regular status hearings, and collaborate with the Federal Student Aid Ombudsman's Office to resolve Class Member complaints. Plaintiffs' counsel has done so. It has also received and addressed thousands of complaints during this time; each week, Plaintiffs' counsel reviews those complaints, responds to those that do not require intervention from the Ombudsman's Office, and meets with Ombuds staff to address those that require further investigation.[4] *See* Ellis Decl. ¶¶ 14–20.

The Class has received substantial and timely relief because of Plaintiffs' counsel's diligence in identifying breaches, bringing them to the Court's attention, and working with the Department and servicers to resolve them. Before Plaintiffs' first enforcement motion, the

---

[4] Weekly meetings with the Ombudsman's Office were not held during the government shutdown from October 1 through November 12, 2025. During this time, Plaintiffs' counsel continued to review Class Member complaints and send cases to the Ombudsman's Office. Ellis Decl. ¶ 19.

Department had failed to deliver timely relief to approximately a third of the Automatic Relief Group and was well on its way to missing the relief deadline for the first Decision Group. Now, according to the Department's most recently reported data, relief for the Automatic Relief Group is 99.9% complete; relief for Decision Groups One, Two, and Three is over 98% complete; and relief for Decision Group Four (whose relief deadline was on January 28, 2026) is 96.6% complete. *See* Joint Status Report at 13, ECF No. 522.

Meanwhile, Plaintiffs also successfully defended against three motions by the Department that would have, if granted, resulted in further delays of relief to the Class. The covered period includes Plaintiffs' successful efforts to ensure that the terminal consolidation method would be used for all Class Members and to defend the Post-Class decision deadline twice. Each of these efforts required not just briefing and argument (a significant undertaking in itself), but also gathering information from Class Members to support Plaintiffs' advocacy, fielding Class Member questions about the motions' implications for Settlement relief, and ensuring that the Department complied with the Court's orders once the motions were denied.

The success of PPSL's three affirmative enforcement motions, as well as its successful defense of the Settlement against Defendants' post-judgment motions, is evident in the record. Thus, all of PPSL's Settlement enforcement work during this time period, as reflected in the billing records appended hereto, was performed as a result of Plaintiffs "prevail[ing]" on claims for material breach, as described in Paragraph V.B.1.i and V.B.2.i of the Settlement.

### B.    PPSL's Hours Are Reasonable

PPSL is requesting reimbursement for 1,702.1 attorney hours and 222.7 paralegal hours, spanning a time period of approximately 16 months. *See* Ellis Decl. ¶ 36 & Ex. 2. Given the size of the class, the complexity of the litigation, and PPSL's available resources, these hours are eminently reasonable.

The hours totals comprise time spent, among other things: preparing for and attending meet-and-confer sessions, status conferences, hearings, and Ombudsman meetings; briefing and arguing Defendants' post-judgment motions and Plaintiffs' third motion to enforce; communicating with Class Members; monitoring and investigating Class Member complaints;

providing Class Members with informational resources; and obtaining and analyzing Defendants' data relating to Settlement relief. *See id.* ¶ 35(d) & Ex. 2. For activities that involved more than one timekeeper (*e.g.*, meetings, calls, and hearings), PPSL has requested reimbursement for a maximum of two timekeepers per activity, with one being the most senior attorney present and the other being the person present with the lowest billing rate, either attorney or paralegal as applicable. *Id.* ¶ 35(e)-(f) & Ex. 2. Including time for all participating staff would yield another 177.2 hours, most of which would be billed at senior or mid-level attorney rates. *Id.* ¶ 39. Plaintiffs have screened for and eliminated attorney and paralegal time that was potentially duplicative or attenuated from enforcement issues, and has not included the time required to prepare this motion for fees and costs. *Id.* ¶¶ 40–41. Finally, PPSL has reduced each attorney's rate for travel time to hearings and Court-mandated in-person meetings by 30%. *Id.* ¶ 34.

PPSL is a small non-profit organization. It currently has nine full-time employees, of whom six are attorneys, one is a paralegal, and two are staff who do not perform legal work. *Id.* ¶¶ 4–5. For approximately eight of the 16 months at issue in this fee request, PPSL did not have a full-time paralegal on staff. *Id.* ¶¶ 42–44. The *Sweet* litigation is, by far, PPSL's biggest case, both in terms of the size of the class and the amount of staff resources it consumes. *Id.* ¶ 8. The class in this case includes nearly 500,000 people—roughly the population of Raleigh, North Carolina.[5] In calendar year 2025, more than 40% of PPSL's client-associated work was performed for this case. *Id.*

Despite the *Sweet* case having a half-million Class Members receiving billions of dollars' worth of Settlement relief, there is no claims administrator. Indeed, until after its first Settlement breach, the Department did not even provide a mechanism for Class Members to find out the status of their delayed Settlement relief or to notify the Department of errors in its delivery. Through Settlement enforcement proceedings, Plaintiffs informed the Court that the Department was

---

[5] *See* Initial Report Under Settlement Agreement at 1, ECF No. 492-2 (290,832 Class Members in the Automatic Relief Group and Decision Group); Declaration of Rebecca C. Ellis ¶ 20, ECF No. 502-1 (208,310 Post-Class Applicants); U.S. Census Bureau, Quick Facts: Raleigh, North Carolina, https://www.census.gov/quickfacts/fact/table/raleighcitynorthcarolina/INC110223 (last visited Feb. 17, 2026) (population estimate of 499,825).

leaving thousands of emails from Class Members in limbo with no response—leading to the Court's order for Plaintiffs' counsel to get involved in the Ombudsman's process. *See* Transcript of May 23, 2024 Hearing at 8:7–22, 22:8–23:9; Minute Order, ECF No. 414. As a result, it has largely been left to Plaintiffs' counsel to inform Class Members about the meaning of the Settlement, the nature of Settlement relief, and the status of effectuation of relief on both a group and individual basis. These tasks have required a great deal of time and attention from PPSL's attorneys.

Further, PPSL's fee request does not (and cannot) include the significant amount of non-legal organizational resources that PPSL has devoted to the *Sweet* Settlement. For an organization of PPSL's size, these efforts have been both significant in scale and remarkably effective. For example, efforts by PPSL's communications team to help keep Class Members informed of their rights and PPSL's enforcement efforts led to 82,000 views of the *Sweet* case page on PPSL's website in 2025; 76,000 views of the website's FAQ for *Sweet* Class Members; and robust attendance at three webinars designed to provide updates about the litigation and Settlement relief. Ellis Decl. ¶¶ 71–73. PPSL's Director of Operations and Deputy Executive Director, both non-legal staff, undertake significant responsibilities for supporting the *Sweet* Class. *See id.* ¶¶ 70–75. In the context of these and other activities, PPSL's fee request underestimates the amount of time and resources that PPSL has spent on Settlement implementation during the relevant time period.

**C.     PPSL's Requested Rates Are Reasonable**

**1.     The Laffey Matrix Provides a Reasonable Rate Estimate**

Because PPSL is a non-profit that does not charge its clients, PPSL does not have a "current" or "customary" hourly rate. PPSL has therefore used the Laffey Matrix, with an adjustment for local cost-of-living difference, to calculate fees. Courts in this District have recognized the Laffey Matrix as a reliable source of reasonable prevailing rates.

In *In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912 (N.D. Cal. 2005), the court addressed a motion for counsel fees after settlement of a securities fraud class action. *Id.* at 913–14. In that case, counsel had requested a percentage of a common fund, and the court performed a lodestar cross-check to investigate the reasonableness of that request. *Id.* at 915,

919–20. The court considered counsel's reported current billing rates, *id.* at 920, but concluded that it had to "find some objective source" for comparison to decide whether those rates were "reasonable." *Id.* at 921. It thus turned to the Laffey Matrix.[6] *Id.* Noting that the Laffey Matrix is based on Washington, D.C.–area rates, the court used Judicial Salary Plan pay rates to estimate the cost-of-living difference between the Washington, D.C. area and the San Francisco Bay area, which led the court to add 9% to the Laffey rates. *Id.* at 921–22. The court used these locality-adjusted Laffey rates as a basis to calculate counsel's reasonable fees to perform the lodestar cross-check. *Id.* at 922.

Since *In re HPL*, multiple courts in this District have similarly relied on the Laffey Matrix with local area adjustments to determine reasonable rates for counsel fees. *See, e.g.*, *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369, 2020 WL 3414653, at *5 (N.D. Cal. June 22, 2020) (noting broad acceptance of Laffey Matrix as evidence of reasonable hourly rates); *Brinker v. Normandin's*, No. 14-cv-03007, 2017 WL 713554, at *2–3 (N.D. Cal. Feb. 23, 2017) (using locality-adjusted Laffey rates to assess reasonableness of requested rates); *Theme Promotions, Inc. v. News America Mktg. FSI, Inc.*, 731 F. Supp. 2d 937, 948–49 (N.D. Cal. 2010) (finding "the method of determining fees used in *In re HPL Technologies*," including locality-adjusted Laffey rates, to be well suited for complex litigation); *In re Portal Software, Inc. Secs. Litig.*, No. 03-cv-5138, 2007 WL 4171201, at *14–15 (N.D. Cal. Nov. 26, 2007) (using locality-adjusted Laffey rates).

The reasonableness of the locality-adjusted Laffey Matrix rates requested by PPSL here is reinforced by other recent fee awards in this District, which reached similar numbers while relying on other sources to determine reasonable hourly rates. *See, e.g.*, *Pardi*, 2025 WL 2988737, at *10 (finding that hourly rates of $970 to $1,625 per hour for partners, $535 to $640 per hour for associates, and $380 to $410 per hour for paralegals were "in line with prevailing rates in this district"); *Chang v. Wells Fargo Bank, N.A.*, No. 19-cv-01973, 2023 WL 6961555, at *8 & n.5

---

[6] The Laffey Matrix derives from *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984).

1    (N.D. Cal. Oct. 19, 2023) (approving as reasonable hourly rates of $825 to $1275 for partners,

2    $550 to $700 for associates, and $325 for paralegals).

3              In this context, Plaintiffs' requested hourly rates of $1,034 (June 1, 2024, to May 31, 2025)

4    and $1,111 (June 1, 2025, to present) for attorneys with more than ten years of experience, $915

5    and $984 for attorneys with eight to ten years of experience, $516 and $554 for attorneys with one

6    to three years of experience, and $282 and $302 for paralegals are reasonable.

7              **2.      The Requested Fees Are Minimal Compared to the Relief to the Class**

8              In most class action settlements, courts compare counsel's lodestar rates to the percentage

9    of the settlement fund that will be devoted to attorneys' fees. *See In re HPL*, 366 F. Supp. 2d at

10   915. Here, there is no common fund: as a Rule 23(b)(2) class action, the *Sweet* case does not

11   involve a fixed monetary settlement, but rather injunctive relief that requires the Department to

12   take certain actions with respect to Class Members' borrower defense applications. Often,

13   "injunctive relief is inherently difficult to monetize," and thus "courts tend to use the lodestar

14   method in injunctive relief class actions." *Stiner v. Brookdale Senior Living, Inc.*, No. 17-cv-

15   03962, 2025 WL 2998163, at *6 (N.D. Cal. Oct. 24, 2025) (quoting *Kim v. Allison*, 8 F.4th 1170,

16   1181 (9th Cir. 2021)). Plaintiffs propose using this lodestar method, as described above. It is worth

17   noting, however, that the actions the Department has taken under the Settlement have resulted, for

18   the vast majority of Class Members, in the discharge of their borrower-defense-related federal

19   student loans and, where applicable, refunds of student loan payments they made to the

20   Department. Thus, although the case does not involve a money judgment, the relief to the Class as

21   a result of the Settlement is at least partly measurable in monetary terms.

22             Plaintiffs do not have access to data regarding the total loan balances discharged under the

23   Settlement so far. But in the parties' Motion for Preliminary Approval, the Department estimated

24   that $7.5 billion in loans had been disbursed to members of the Automatic Relief Group and the

25   Decision Group to attend the schools listed on their borrower defense applications, with $6 billion

26   of those loans associated with the Automatic Relief Group. *See* Joint Motion for Preliminary

27   Approval at 2, 15, ECF No. 246. Overall, approximately 88.76% of Decision Group applications

28   were approved, Ellis Decl. ¶ 51, suggesting more than $1.3 billion in discharges for that group

(89% of $1.5 billion). Plaintiffs can estimate, based on data provided by the Department in the course of enforcement proceedings, that a total of approximately $1.015 billion in refunds has been issued to members of the Automatic Relief Group and Decision Groups 1, 2, 3, and 4. Ellis Decl. ¶ 53. (Plaintiffs do not yet have data for Decision Group 5, and relief has not yet issued for the Post-Class. *Id.* ¶ 54.) Without Plaintiffs' successful enforcement efforts, much of the relief detailed above would likely still be in limbo. Moreover, were it not for Plaintiffs' advocacy against the Department's belated attempts to delay the Post-Class decision deadline, over 170,000 Post-Class Applicants would still be waiting for a decision for another 18 months or more, let alone relief.

Even if one were to assume—generously to the Department—that it would have delivered about two-thirds of the discharges and half of the refunds in an accurate and timely manner without Plaintiffs' enforcement efforts (representing the rough percentage of relief complete for the Automatic Relief Group when Plaintiffs filed their first enforcement motion), Plaintiffs' successful litigation under the Settlement would still be responsible for the timely delivery of nearly $3 billion in Settlement relief (approximately $2.475 billion in discharges and $508 million in refunds). It is difficult to estimate how much of the pending discharge amount for the Post-Class is attributable to Plaintiffs' successful defense of the Settlement's Post-Class deadline, because there is no way to know how many of those applications would have been approved if timely reviewed, but it is indisputable that Plaintiffs' success forestalled significant further harm to Post-Class Applicants that would have occurred as a result of additional delay. *See* Plaintiffs' 60(b) Opposition at 10–13. Plaintiffs also do not attempt here to put a dollar value on the benefit to the Class of Plaintiffs' Court-ordered interventions with the Ombudsman's Office, which have led to the creation of a system for Class Members to raise and resolve complaints about missing relief that would not otherwise exist.

Although the scale of these numbers is not well suited to a typical lodestar cross-check,[7] the overall ratio is instructive. Dividing PPSL's requested fees by $2.983 billion yields 0.00051.

---

[7] For example, in *In re HPL*, counsel sought 15% of the common fund. 366 F. Supp. 2d at 918. The equivalent of 15% of the relief to the Class here would be hundreds of millions of dollars; 15% of even just the amount of refunds would equate to over $152 million in counsel fees.

In other words, PPSL is seeking the equivalent of *about five hundredths of one percent* of the amount of money these proceedings have been worth to the Class. This ratio highlights the reasonableness of Plaintiffs' request.[8] *See Chang*, 2023 WL 6961555, at *8 (when lodestar cross-check results in a "negative multiplier"—*i.e.*, counsel is requesting less than they would ordinarily receive in the cross-check calculation—it "further demonstrates the reasonableness of the fee request" (quoting *Taylor v. Shutterfly, Inc.*, No. 18-cv-00266, 2021 WL 5810294, at *9 (N.D. Cal. Dec. 7, 2021))).

Finally, it is worth emphasizing that even this tiny percentage will not actually be deducted from any relief owed to the Class. Again, this is not a common fund case. The amount of relief due to each Class Member depends solely on the balance of their relevant loans and the amounts they previously paid the federal government toward those loans. *See* Settlement ¶ II.S (definition of "Full Settlement Relief"). The amount of counsel fees to be paid to Plaintiffs based on successful enforcement motions is an independent obligation of Defendants under the Settlement. *See id.* ¶¶ V.B.1.i, V.B.2.i.

### D.    PPSL's Costs Are Reasonable

The $107,983.71 in requested costs account for (i) ground and air transportation, lodging, and food costs associated with attendance at Court-ordered meetings in Washington, D.C., and at status conferences and hearings in San Francisco from October 2024 through January 2026; (ii) litigation expenses, primarily transcripts of hearings; and (iii) costs associated with PPSL's client management systems that have been dedicated to Settlement enforcement efforts. Given the significant Court-ordered travel over the past sixteen months, the size of the Class, and the scope

---

[8] In this case to date, Plaintiffs' counsel have received $850,000 under the Equal Access to Justice Act (EAJA) for fees and costs incurred up to and including settlement, *see* Ellis Decl. ¶ 23, and $295,527 for fees and costs relating to their enforcement efforts between September 14, 2023, and September 26, 2024, *see id.* ¶ 27. In the former instance, Plaintiffs were authorized only to seek (below-market) EAJA fees, not "reasonable" fees. *See* Settlement ¶ VI.A. In the latter instance, PPSL negotiated this amount with Defendants in the interests of compromise and minimizing litigation; PPSL does not concede that this amount represents the full reasonable value of PPSL's services during the relevant period. Ellis Decl. ¶ 28. Regardless, even adding these prior amounts to Plaintiffs' instant fee request, the total would represent well under 0.1% of total Class relief, for extremely successful litigation over the course of nearly 7 years.

of Class Member communications, Plaintiffs' costs are reasonable. *See, e.g.*, *Bd. of Trs. v. Piedmont Lumber & Mill Co.*, No. 13-cv-0389, 2016 WL 4446993, at *3 (N.D. Cal. Aug. 24, 2016) (reasonable and recoverable expenses include electronic document management for discovery database, messenger fees, and conference call fees).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and order the Defendants to pay to PPSL the amount of $1,438,999.10 in attorneys' fees and $107,983.71 in costs.

Dated:  March 6, 2026                          Respectfully submitted,


                                               */s/ Rebecca C. Ellis*____
                                               EILEEEN M. CONNOR (SBN 248856)
                                               econnor@ppsl.org
                                               REBECCA C. ELLIS (*pro hac vice*)
                                               rellis@ppsl.org
                                               REBECCA C. EISENBREY (*pro hac vice*)
                                               reisenbrey@ppsl.org
                                               NOAH ZINNER (SBN 247581)
                                               nzinner@ppsl.org
                                               PROJECT ON PREDATORY STUDENT
                                               LENDING, INC.
                                               769 Centre Street
                                               Jamaica Plain, MA 02130
                                               Tel.: (617) 617-390-2669
                                               Fax: (617) 781-218-9625

                                               *Attorneys for Plaintiffs*