BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| THERESA SWEET, et al.,<br><br>     Plaintiffs,<br><br>  v.<br><br>LINDA MCMAHON, *in her official capacity as Secretary of the United States Department of Education*, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>     Defendants. | Case No. 4:19-cv-03674-HSG<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR FEES AND COSTS**<br><br>Date: May 7, 2026<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 4th Floor |

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND .....................................................................................................................2

I.      The Agreement's Substantive Provisions .................................................................2

II.     The Agreement's Fee Provisions ..............................................................................4

        A.      Paragraph V.B.1.i. Fees (Failure to Provide Required Notices of Full Settlement Relief) ....................................................................................4

        B.      Paragraph V.B.2.i. Fees (Failure to Issue Relief by Due Date) .................4

        C.      Paragraph V.B.3. Fees (Failure to Submit Timely Quarterly Reports) ...............5

        D.      The Agreement Disclaims Jurisdiction for Burdensome Supervision and Monitoring and Does Not Include Provisions Purporting to Authorize Fee Awards for any Such Efforts. ..........................................................................5

        E.      The Agreement Does Not Provide for Attorneys' Fees if Plaintiffs Prevail on a Claim for Anticipatory Breach Under Paragraph V.D.5 .......................6

IV.     Relevant Post-Judgment Proceedings .......................................................................6

        A.      The First Paragraph V.B.2 Proceeding was Resolved in April 2024 When the Court Issued an Order to Provide Full Settlement Relief to Automatic Relief Group Class Members on a New Schedule Set by the Court. .............................6

        B.      In June 2024, Defendants Acknowledged that Loan Servicers Would Be Unable to Meet the New Schedule Set by the Court as Applied to Complex Mixed Consolidation Loans and Defendants Propose a Modification of the Judgment, Which the Court Adopted. ..........................................................................7

        C.      On September 26, 2024, Defendants Acknowledged a Material Breach Regarding Decision Group One, Which was Resolved the Same Day When the Court Entered an Order to Provide Full Settlement Relief to Decision Group One Class Members on a New Schedule Set by the Court. ..................................................7

        D.      In November 2024, the Parties Execute a Settlement Agreement Resolving Attorneys' Fees and Other Litigation Expenses that Were or Could Have Been Incurred in Bringing Any Claim Pursuant to Section V on or Before September 26, 2024 ....................................................................................................8

        E.      Since September 2024, Defendants Have Remained in Substantial Compliance with the Agreement and Plaintiffs Have Not Brought Any Paragraph V.B Breach Claims. ....................................................................................................8

F.    In November 2025, Defendants Sought Relief from Judgment and Plaintiffs Failed to Prevail on a Cursory Claim for Anticipatory Breach Invoking Paragraph V.D.5 Included in their Opposition Papers. ...................................................................9

ARGUMENT ...........................................................................................................................10

I.    Plaintiffs' Motion Fails to Identify a Statutory Waiver of Sovereign Immunity. ..........................10

II.    The Tucker Act Vests the Court of Federal Claims with Exclusive Jurisdiction to Consider a Contract-Based Liability Claim against the United States. .......................................11

III.    The Agreement Provides No Basis for Recovery of the Fees and Costs Demanded Because They Were Not Incurred in Bringing Any Claim for Relief Under ¶¶ V.B.1, V.B.2, or V.B.3 of the Agreement. ..............................................................................15

    A.    Fees Are Only Available Under the Agreement if Plaintiffs Prevail on a Claim Under Paragraph V.B.1., V.B.2., or V.B.3. .........................................................15

        1.    Plaintiffs Have Not Prevailed on a Claim Under Paragraph V.B.1, V.B.2, or V.B.3 in the Time Period Covered by their Motion. ...............................16

        2.    The Agreement Does Not Impose Fee Liability on Defendants if Plaintiffs Prevail on an Anticipatory Breach Claim Arising Under Paragraph V.D.5, and Plaintiffs Never Prevailed on any Such Claim. ..................17

    B.    Even if Plaintiffs Prevailed on a Paragraph V.B.1, V.B.2, or V.B.3 Claim, Liability is Limited to Fees and Costs Incurred in Bringing the Claim. ...........................19

        1.    Fees for Supervision and Monitoring Defendants' Compliance with the Agreement or Court-Ordered Timetables Are Not Fees Incurred in Bringing a Claim for Breach. ...................................................................19

        2.    Plaintiffs' Requested Fees Are for Burdensome Supervision and Monitoring, Not Bringing Claims for Breach under Paragraph V.B. ...................20

        3.    Even if Plaintiffs Prevailed on an Anticipatory Breach Claim and it Did Entitle Them to Fees Under the Agreement (And Neither is True), They Would be Entitled to No More than One Hour's Worth of Attorneys' Fees. ...............................................................................................24

IV.    The Motion Is Untimely Insofar as it Seeks Recovery of Time Seeking Appealable Orders Entered Prior to February 2026. ...................................................................24

V.    Plaintiffs' Bill of Expenses are Not Compensable "Costs." ..............................................25

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

# TABLE OF AUTHORITIES

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975)............................................................................................. 11, 13

*American Petroleum Inst. v. EPA*,
72 F.3d 907 (D.C. Cir. 1996) ........................................................................................ 24

*Anderson v. United States*,
127 F.3d 1190 (9th Cir. 1997) ................................................................................... 1, 10

*Ardestani v. Immigr. & Naturalization Serv..*,
502 U.S. 129 (1991) ..................................................................................................... 11

*Arlington Cent. Sch. Bd. v. Murphy*,
548 U.S. 291 (2006) ..................................................................................................... 25

*Arulampalam v. Gonzales*,
399 F.3d 1087 (9th Cir. 2005) ...................................................................................... 11

*Astrue v. Ratliff*,
560 U.S. 586 (2010)...................................................................................................... 12

*Badgerow v. Walters*,
596 U.S. 1 (2022)....................................................................................................*passim*

*Collins v. Yellen*,
594 U.S. 220 (2021)................................................................................................ 14, 15

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
482 U.S. 437 (1987)...................................................................................................... 25

*Dep't of Educ. v. California*,
604 U.S. 650 (2025)...................................................................................................... 13

*Evans v. Jeff D.*,
475 U.S. 717 (1986)...................................................................................................... 12

*FAA v. Cooper*,
566 US 284 (2012)........................................................................................................ 11

*Hardisty v. Astrue*,
592 F.3d 1072 (9th Cir. 2010) ...................................................................................... 18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)...................................................................................................... 24

*Hiser v. Franklin*,
  94 F.3d 1287 (9th Cir. 1996) ............................................................................................. 23

*Holmes v. United States*,
  657 F.3d 1303 (Fed. Cir. 2011)......................................................................................... 12

*K.C ex rel. Erica C. v. Torlakson.*,
  762 F.3d 963 (9th Cir. 2014) ............................................................................................ 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)..................................................................................................... 11, 12

*Lackey v. Stinnie*,
  604 U.S. 192 (2025).................................................................................................... 15, 16

*Leroy v. City of Houston*,
  906 F.2d 1068 (5th Cir. 1990) .......................................................................................... 24

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) .......................................................................................... 12

*Munro v. United States*,
  303 U.S. 36 (1938)............................................................................................................. 11

*N. Side Lumber Co. v. Block*,
  753 F.2d 1482 (9th Cir. 1985) .......................................................................................... 12

*NAACP v. Civiletti*,
  609 F.2d 514 (D.C. Cir. 1979) .......................................................................................... 11

*National Institutes of Health v. American Public Health Association*,
  600 U.S. ---, 145 S. Ct. 2658 (2025)................................................................................. 14

*Nibali v. United States*,
  634 F.2d 494 (Ct. Cl. 1980) .............................................................................................. 11

*Pacito v. Trump*,
  --- F.4th ----, 2026 WL 620449 (9th Cir. Mar. 5, 2026) ....................................... 12, 13, 14

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010).............................................................................................................. 1

*Rimini Street Inc. v. Oracle USA, Inc.*,
  586 U.S. 334 (2019)....................................................................................................*passim*

*Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.*,
  489 U.S. 782 (1989)........................................................................................................... 16

*Tritz v. U.S. Postal Serv.*,
  721 F.3d 1133 (9th Cir. 2013) .......................................................................................... 13

*United Aeronautical Corp. v. U.S. Air Force,*
  80 F.4th 1017 (9th Cir. 2023) ......................................................................................... 12

*United States v. Chemical Found.,*
  272 U.S. 1 (1926) ................................................................................................... *passim*

*United States v. Dawkins,*
  629 F.2d 972 (4th Cir. 1980) ......................................................................................... 11

*United States v. U.S. Fidelity & Guar. Co.,*
  309 U.S. 506 (1940) ...................................................................................................... 10

*United States v. Worley,*
  281 U.S. 339 (1930) ...................................................................................................... 11

*West Va. Univ. Hosps., Inc. v. Casey,*
  499 U.S. 83 (1991) ........................................................................................................ 25

**Statutes**

28 U.S.C. § 1346(a) ........................................................................................................ 13

28 U.S.C. § 1920 ............................................................................................................ 25

28 U.S.C. § 2412 ............................................................................................................ 11

28 U.S.C. §§ 1821 ....................................................................................................... 2, 25

Fed. R. Civ. P. 54(a) ................................................................................................... 2, 24

Fed. R. Civ. P. 54(d)(2)(B)(ii) ....................................................................................... 11

**Administrative & Executive Materials**

Federal Rule of Civil Procedure 23(b)(2) ....................................................................... 23

Federal Rule of Civil Procedure 60(b) ..................................................................... 9, 10, 24

**Other Authorities**

The Project on Predatory Student Lending, *Sweet v. McMahon,*
  https://www.ppsl.org/cases/sweet-v-mcmahon ............................................................. 23

**INTRODUCTION**

Since at least Fall 2024, Defendants have been in substantial compliance with the terms of the parties' Settlement Agreement in this matter. Nevertheless, Plaintiffs have filed a motion seeking taxpayer financing to the tune of $1.5 million for counsel's efforts supervising and monitoring Defendants' substantial compliance with the Agreement, communicating with absent class members about Defendants' obligations, and frequent meetings with Department staff to review staff responses to individualized inquiries from absent class members. Unsurprisingly, that extraordinary demand violates the "general rule in our legal system"—"that each party must pay its own attorney's fees and expenses[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).

Plaintiffs' motion should be denied. First, the motion fails to identify a statutory waiver of sovereign immunity. "[S]overeign immunity bars an award of attorneys' fees against the United States unless [a] statute expressly authorizes such an award." *Anderson v. United States*, 127 F.3d 1190, 1191 (9th Cir. 1997). "Congress alone has power to waive or qualify [the United States's] immunity" from litigation "costs or expenses." *United States v. Chemical Found.*, 272 U.S. 1, 20 (1926). It does not matter if a plaintiff "insists" that costs or expenses were "taken with the consent of counsel[.]" *Id.*

Second, the Tucker Act vests the United States Court of Federal Claims—not this Court—with exclusive jurisdiction to consider any contract-based claim for fees or costs. Insofar as Plaintiffs' claim to compensation is based on a contract alone (i.e., the parties' Settlement Agreement) rather than a statute or the Constitution, the exclusive-jurisdiction-conferring provisions of the Tucker Act control. Those provisions divest this Court of any ancillary jurisdiction to adjudicate a contract-based fees claim that may apply had the motion been brought against a litigant other than the United States.

Third, Plaintiffs are wrong on the merits because the fees and expenses demanded were incurred in supervising and monitoring Defendants' compliance with the Agreement and the Agreement does not impose on Defendants fee liability for time expended on those activities. Rather, the Agreement's terms provide that Defendants may be liable for only a discrete amount of fees and costs in three limited circumstances. In particular, if Plaintiffs "prevail" in obtaining the only relief available under one of the three provisions of Paragraph V.B of the Agreement that contemplate fee or cost liability, then Plaintiffs

are entitled only to reasonable "fees and costs incurred in bringing the claim." Settlement Agreement at 16, ¶ V.B, ECF No. 246-1 ("Agreement"). But Plaintiffs have not brought any claim under any of those three provisions since 2024 and the Court entered the only relief available, resolving the last of those claims, on September 26, 2024. All the fees and costs Plaintiffs seek were incurred after that date. Thus, the fees and costs Plaintiffs seek were not incurred in bringing a claim under any of the Agreement's fee-liability-generating provisions. And the Agreement does not contemplate fee recovery for time expended reviewing Defendants' reporting on their compliance with the Agreement or court-ordered timetables.

Fourth, Plaintiffs motion is untimely insofar as it seeks recovery of fees and costs incurred seeking post-judgment orders entered prior to February 2026. A motion for fees and costs must "be filed no later than 14 days after entry of" an "order from which an appeal lies" "[u]nless a statute or court order provides otherwise[.]" Fed. R. Civ. P. 54(a), (d)(2)(B)(i).

Finally, in no circumstance have Plaintiffs shown entitlement to any "cost" recovery under Paragraph V of the Agreement. The term "costs" is a term of art that should be construed consistently with the enumerated costs listed in 28 U.S.C. §§ 1821 and 1920. *Rimini Street Inc. v. Oracle USA, Inc.,* 586 U.S. 334, 340 (2019) (citation omitted). Because the expenses Plaintiffs seek to recover—transportation, meals, lodging, and salesforce software expenses—are not such "costs," Plaintiffs' request for an order requiring Defendants to compensate their attorneys for these expenses should be denied.

BACKGROUND

## I.      The Agreement's Substantive Provisions

The Agreement divided class members into two different groups. An "automatic relief group" is comprised of approximately 196,000 class members who received federal loans to attend one of 151 specific schools, referred to as "Exhibit C" schools. *See* Agreement at 6-7; ¶ IV.A. These class members were entitled to both a discharge of their remaining student loans associated with the school and a refund of amounts paid to the Department toward those loans. *See id.* These class members are entitled to automatic full settlement relief for loans associated with Exhibit C schools within one year of the Effective Date of the Agreement. *See id.* at 6, ¶ IV.A.1.[1]

---

[1] Although the Department's Borrower Defense Branch is responsible for adjudicating borrower

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

2

For all other class members, the Agreement requires the Department to decide their borrower defense applications according to certain streamlined procedures and timelines. *See id*. at 7-11, ¶ IV.C. The timelines are based on when an application was submitted, with the oldest applications being decided first, and broken into five groups. *Id*. at 9-10, ¶ IV.C.3. The Department refers to these groups as Decision Groups 1, 2, 3, 4, and 5, corresponding to the numbers listed in the Settlement Agreement. *Id*. Class members whose applications are approved or who do not receive a timely decision are entitled to full settlement relief for loans that are the subject of an approved borrower defense application. *Id*. at 10-11, ¶ IV.C.8. Full settlement relief must be effectuated within one year of the decision. *Id*. at 11, ¶ IV.C.9.

Finally, the Settlement Agreement provides that individuals who submitted a borrower defense application after the Agreement's Execution Date (i.e., the date the class closed), but before the Final Approval Date, must receive a decision on their borrower defense application no later than 36 months after the agreement's Effective Date. *See id*. at 11, ¶ IV.D.1.[2] According to the settlement, these individuals are "post-class applicants." *Id*. The Department refers to this group as the post-class group. If a post-class applicant does not receive a timely decision, that applicant is entitled to full settlement relief, and the Department shall provide the post-class applicant with notice that the applicant will receive this relief within 60 calendar days following the expiration of the deadline for receiving a decision. *Id*. at 11, ¶ IV.D.2. If a post-class applicant does receive a timely decision, and that decision approves their borrower defense application such that the post-class applicant is entitled to relief, the Department must effectuate that relief within one year after providing the applicant written notice of the settlement relief decision. *Id*. at 11, ¶ IV.D.3.

---

defense applications, *see* Declaration of James Bergeron, ECF No. 492-1, at least as a practical matter, tasks associated with processing each individual discharge after an application is approved or insofar as a borrower is otherwise entitled to relief under the Agreement are completed by loan servicers. Loan servicers are third party distinct legal entities from the Department who contract with the Department to administer student loans. Processing tasks associated with a discharge include updating loan servicer systems of records to show that a relevant loan balance has been zeroed out and contacting credit reporting agencies to instruct them to remove tradelines associated with a loan that the Department will not be collecting on. Servicers also determine whether a refund is owed and provide the Treasury with information about the amounts needed to be refunded to each individual class member, if appropriate.

[2] The Department has sought modification of the judgment to permit it until July 2027 to adjudicate these applications. Defendants' appeal of this Court's decisions on that issue is pending before the United States Court of Appeals for the Ninth Circuit. ECF No. 531.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

## II.    The Agreement's Fee Provisions

The Agreement's terms provide that Defendants may be liable for a reasonable amount of fees and costs incurred to address three discrete and limited circumstances.  Prior to bringing any of the claims that might result in liability for fees and costs under the Agreement, Plaintiffs' counsel must "submit written notice alleging a material breach of th[e] Agreement to counsel for Defendants," which must "state that Plaintiffs intend to seek an order from the Court pursuant to Paragraph V.B." Agreement at 18, ¶ V.D.1.

### A.  Paragraph V.B.1.i. Fees (Failure to Provide Required Notices of Full Settlement Relief)

First, Defendants may be liable for fees incurred in bringing a claim for an "order requiring Defendants to promptly provide Full Settlement Relief to each affected Class Member on a timetable set by the Court" under ¶ V.B.1.  Agreement at 15-16.  To bring a claim for such an order, Plaintiffs must make two showings: (1) Defendants "failed to issue to a Class Member or Post-Class Applicant by the due date established in Paragraph" IV a decision on his or her borrower defense application and (2) Defendants have "subsequently failed" within the time period required by the Agreement "to provide that Class Member with notice that they will receive Full Settlement Relief, as required by" portions of ¶ IV. *Id*., ¶ V.B.1.  "Should Plaintiffs prevail on this claim," then Defendants are "liable [only] for [certain] fees and costs incurred in bringing the claim" and nothing more. *Id*. at 16, ¶ V.B.1.i.

The Agreement provides that, in the event of a Court Order "requiring Defendants to promptly provide Full Settlement Relief to each affected individual on a schedule set by the Court" issued after Plaintiffs prevail on a claim under this provision, "Defendants will report to Plaintiffs' Counsel and the Court on [their] progress of issuing relief, as provided herein, to affected Class Members." *Id*. at 16, ¶ V.B.1.  The Agreement does not provide that Defendants are liable for Plaintiffs' attorneys' fees and costs incurred in supervising and monitoring any such reporting to Plaintiffs' counsel or the Court, or for any other supervision and monitoring activities. *Id*. at 16, ¶ V.B.1.ii.

### B.  Paragraph V.B.2.i. Fees (Failure to Issue Relief by Due Date)

Next, Defendants may be liable for fees incurred in bringing a claim for "an order requiring Defendants to promptly provide Full Settlement Relief to each affected individual on a schedule set by the Court" under ¶ V.B.2.  Agreement at 16, ¶ V.B.2.  To bring a claim for such an order, Plaintiffs must

show that Defendants have "fail[ed] to effectuate relief within the prescribed time periods for any individual who is entitled to receive relief pursuant" to portions of ¶ IV. *Id*. "Should Plaintiffs prevail on this claim," Defendants are "liable [only] for [certain] fees and costs incurred in bringing the claim" and nothing more. *Id*.

The Agreement provides that, "[i]n the event of a Court Order" "requiring Defendants to promptly provide Full Settlement Relief to each affected individual on a schedule set by the Court" issued after Plaintiffs prevail on a claim under this provision, "Defendants will report to Plaintiffs' Counsel and the Court on [their] progress of issuing relief, as provided herein, to affected Class Members." *Id*. The Agreement does not provide that Defendants are liable for Plaintiffs' attorneys' fees and costs incurred in supervising and monitoring any such reporting to Plaintiffs' counsel or the Court, or for any other supervision and monitoring activities. *Id*. at 16, ¶ V.B.2.ii.

**C. Paragraph V.B.3. Fees (Failure to Submit Timely Quarterly Reports)**

Finally, Defendants may be liable for fees incurred by Plaintiffs in bringing a claim for "an order requiring Defendants to submit [required Quarterly reports] on a monthly basis from the point of the order forward." Agreement at 17, ¶ V.B.3. To bring a claim for such an order, Plaintiffs must show that Defendants have "fail[ed] to submit a timely and complete quarterly report to Plaintiffs' Counsel via electronic mail within 90 calendar days after the deadline for the report according to the timelines specified" in the Agreement. *Id*. "Should Plaintiffs prevail on this claim," then Defendants are "liable [only] for Plaintiffs' reasonable attorneys' fees and costs incurred in bringing the claim." *Id*.[3]

**D. The Agreement Disclaims Jurisdiction for Burdensome Supervision and Monitoring and Does Not Include Provisions Purporting to Authorize Fee Awards for any Such Efforts.**

The Agreement includes important provisions precluding burdensome compliance-related supervision and monitoring proceedings. For example, under Paragraph V.F., the parties agreed that the "Court shall have no jurisdiction to supervise, monitor, or issue orders in this Action, except to the extent

---

[3] The Agreement includes continuing jurisdiction provisions authorizing Plaintiffs to bring a "claim alleging that Defendants have materially breached" a portion of "the Agreement by collecting on a Relevant Loan after the Effective Date through involuntary collection activity against a Class Member or Post-Class Applicant while his or her application was or is pending or while the Class Member or Post-Class Applicant was or is awaiting the effectuation of relief." Agreement at 17, ¶ V.B.4. The Agreement does not provide for fees or costs liability associated with bringing such a claim. *Id*. at 17-18.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

that Plaintiffs invoke the Court's jurisdiction pursuant to the procedures set forth in this Paragraph V." *Id*. at 21, ¶ V.F.   Defendants did not agree that Plaintiffs may recover attorneys' fees and costs for supervision or monitoring efforts that the parties agreed the Court has no jurisdiction to address.  *Id*.

### E. The Agreement Does Not Provide for Attorneys' Fees if Plaintiffs Prevail on a Claim for Anticipatory Breach Under Paragraph V.D.5.

The Agreement includes a provision authorizing, in limited circumstances, Plaintiffs to "raise a claim of material breach of Paragraph IV with the Court prior to the expiration of the timelines provided in that Paragraph."  *Id*. at 20, ¶ V.D.5.  Unlike ¶¶ V.B.1, V.B.2, and V.B.3, ¶ V.D.5 does not include a provision authorizing Plaintiffs to recover fees or costs incurred for bringing the claim.  *Id*.

## IV. Relevant Post-Judgment Proceedings

### A. The First Paragraph V.B.2 Proceeding was Resolved in April 2024 When the Court Issued an Order to Provide Full Settlement Relief to Automatic Relief Group Class Members on a New Schedule Set by the Court.

Pursuant to the Settlement, automatic relief group "Exhibit C" borrowers received approval notices on January 28, 2023, and the Department instructed loan servicers to begin processing discharges.  But on February 2, 2024, Plaintiffs notified Defendants of their allegations that Defendants were in material breach of the Agreement affecting only automatic relief group "Exhibit C" borrowers.  *See* ECF No. 397-3 at 109.  The parties engaged in a meet-and-confer process on the issue.  As Defendants explained to Plaintiffs' counsel by letter dated February 16, 2024, the Department "sent a total of 251,549 discharge requests to the relevant servicers, accounting for all 195,993 Exhibit C borrowers."  *Id*.  But loan servicers, who are not parties to this action, had not completed the required tasks.

Nevertheless, Plaintiffs filed a motion to enforce the settlement agreement on March 19, 2024, ECF No. 397, asking the Court to order Defendants "to effectuate Full Settlement Relief for each and every member of the automatic relief group" by a certain date, Proposed Order at 2, ECF No. 397-1.  The motion stated that it is "a claim" under Paragraph "V.B.2" of the Agreement seeking "only to order the relief explicitly specified"—"a date certain by which" members "of the automatic relief group will receive Full Settlement Relief.  That is the remedy that Plaintiffs [were] seeking in the motion" consistent with Paragraph V.B.2.  ECF No. 397 at 13.  That same day, the Court ordered the Department to notify the loan servicers that their presence was required at a hearing on the motion.  ECF No. 399.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

The Court held a hearing on the motion on April 24, 2024. ECF No. 407. The Court adopted the Department of Education's proposed schedule for remedying the material breach with conditions, resolving Plaintiffs' first claim for relief under Paragraph V.B.2. *Id.*

**B. In June 2024, Defendants Acknowledged that Loan Servicers Would Be Unable to Meet the New Schedule Set by the Court as Applied to Complex Mixed Consolidation Loans and Defendants Propose a Modification of the Judgment, Which the Court Adopted.**

At a hearing on June 13, 2024, as the deadline approached for providing relief to a certain number of the automatic relief group members according to the revised schedule set by the Court, the Department informed the Court that it would be unable to meet the new automatic relief group deadline. Plaintiffs did not raise a claim for breach related to this issue. Rather, the Department sought the Court's guidance as between providing relief from the July 31, 2024, deadline or permitting the Department to take an alternative approach that would permit servicers to process relief more quickly. *See* Tr. of Proceedings held on June 13, 2024 ("June 2024 Hr'g Tr.") at 13–14, ECF No. 420; Defs.' Notice in Advance of July 11, 2024 Hearing ("Defs.' Notice") , ECF No. 421. The alternative approach was easier to implement because it included discharging the terminal consolidation loan in full, but that meant discharging some ineligible debt. The Court approved and ordered the Exhibit C approach, and the Department began to implement it. *See id.*; *see also* Minute Entry, ECF No. 416; *See* Defs.' Notice.

**C. In September 2024, Defendants Acknowledged a Material Breach Regarding Decision Group One, Which was Resolved on September 26, 2024, When the Court Entered an Order to Provide Full Settlement Relief to Decision Group One Class Members on a New Schedule Set by the Court.**

On August 26, 2024, Plaintiffs wrote a letter to the Department that alleged a material breach of the Agreement with respect to members of Decision Group One. *See* ECF No. 433 at 1. The Department responded on September 9, 2024, acknowledging that for Decision Group One members who are entitled to, but have not yet received, full settlement relief pursuant to Paragraph IV.C.9 of the Settlement Agreement, the Department was in material breach of the Agreement. *Id.* at 2. Specifically, the deadline for effectuating relief to Decision Group One members was July 28, 2024, but approximately 3,500 out of 31,400 Decision Group One borrowers had not received relief by September 25, 2024. *Id.* at 1. The Department agreed that the Court may resolve the parties' dispute with respect to Plaintiffs' claim that the

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

Department failed to effectuate full settlement relief for Decision Group One at the September 26, 2024 hearing. *Id*. at 2.

At the September 26, 2024 hearing, the Court resolved this breach by issuing "an order requiring Defendants to promptly provide Full Settlement Relief to each affected individual on a [new] schedule set by the Court." Agreement at 16, ¶ V.B.2. Specifically, the Court set December 20, 2024, as the new deadline for providing Full Settlement Relief for Decision Group One. ECF No. 434.[4]

**D. In November 2024, the Parties Execute a Settlement Agreement Resolving Attorneys' Fees and Other Litigation Expenses that Were or Could Have Been Incurred in Bringing Any Claim Pursuant to Section V on or Before September 26, 2024.**

On November 5, 2024, the parties executed a settlement agreement "in full and complete satisfaction of Plaintiffs' claim for attorneys' fees, costs, and litigation expenses incurred up to and including September 26, 2024, based on all of Defendants' material breaches of the Settlement Agreement as of that date." Ex. 1 ¶ 1. The November 2024 settlement agreement resolved and satisfied "all claims for attorneys' fees and other litigation expenses in connection with all facets of the Agreement during" the period up to and including September 26, 2024, "including fees and/or expenses relating to any claims or causes of action [for breach] that were or could have been raised in a motion to enforce pursuant to Section V of the Agreement." *Id*. ¶ 3. Believing doing so was necessary, the Court approved the agreement by order on December 12, 2024. ECF No. 451.

**E. Since September 2024, Defendants Have Remained in Substantial Compliance with the Agreement and Plaintiffs Have Not Brought Any Paragraph V.B Breach Claims.**

On September 25, 2024, the Department reported substantial compliance with their obligation to ensure that relief is effectuated for automatic relief group class members, which were the affected Class Members at issue in Plaintiffs' March 2024 claims brought under Paragraph V.B.2 of the Agreement. *See* Defs.' Notice at 1; Tr. of Proceedings held on September 26, 2024 ("Sept. 2024 Hr'g Tr.") at 6, ECF No. 438 (acknowledging that Defendants are in substantial compliance). On March 13, 2025, the Department reported substantial compliance with their obligation to ensure that relief is effectuated for Decision Group One class members, which were the affected class members at issue in the acknowledged breach resolved

---

[4] The Court ordered January 28, 2025, as the Full Settlement Relief Deadline for Decision Group Two. ECF No. 434. But this was the preexisting deadline as provided in the Agreement. *See* Sept. 2024 Hr'g Tr. at 14:10-11, 25:3-4.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

on September 26, 2024.  *See* Tr. of Proceedings held on March 13, 2025 ("Mar. 2025 Hr'g Tr.") at 14:19-20, ECF No. 466; *id*. at 4:19-23 (acknowledging that Defendants are in substantial compliance).

The Department has remained in substantial compliance with its obligation to provide relief to the remaining Decision Groups.  *See* Joint Status Report, ECF No. 505.  Plaintiffs have brought no claims for breach under ¶¶ V.B.1 or V.B.2 regarding the automatic relief group or Decision Group One since September 2024.  Plaintiffs have never brought any such claim with respect to the other decision groups or the post-class applicants.

**F.  In November 2025, Defendants Sought Relief from Judgment and Plaintiffs Failed to Prevail on a Cursory Claim for Anticipatory Breach Invoking Paragraph V.D.5 Included in their Opposition Papers.**

In November 2025, the Department moved for partial relief from the judgment under Federal Rule of Civil Procedure 60(b); that motion requested that the district court extend the adjudication deadline for post-class applications until July 28, 2027.  ECF No. 492.  The Department explained that because the Court had retained jurisdiction to enforce the settlement agreement as part of its final judgment, the Court retained equitable authority to modify the settlement like any other court order.  *See id.* at 9-10.

In their opposition, Plaintiffs included a one-half-page argument raising an anticipatory breach claim under ¶ V.D.5.  Pls.' Opp'n & Mot. to Strike Defs.' Mot. for Relief ("Pls.' Opp'n") at 20, ECF No. 502.  Plaintiffs claimed that (1) Defendants failed to follow "procedures established by the Settlement for situations in which the Department contends that it is unable to fully perform its obligations under the Settlement" and (2) that Defendants would violate "Paragraph IV.D.2, in an anticipatory breach."  *Id*. at 20.  Paragraph IV.D.2 of the Agreement provides that "[i]f a Post-Class applicant has not received a timely decision" on her borrower defense application "that applicant shall receive Full Settlement Relief. Defendants shall provide the affected Post-Class Applicant with notice that the applicant will receive this relief with 60 calendar days following the expiration of the applicable deadline."  Agreement at 11, ¶ IV.D.2. Plaintiffs did not seek an order requiring Defendants to promptly provide Full Settlement Relief to each affected Class Member on a new timetable set by the Court.  *Id*. at 21.  Indeed, Plaintiffs did not seek any change in the legal relationship between Defendants and the post class and instead asked only that the Court reenter the already existing "original agreed-upon schedule" set forth in the Settlement

Agreement. *Id*.

On December 11, 2025, the Court granted in part and denied in part Defendants' motion. Tr. of Proceedings held on Dec. 11, 2025 ("Dec. 2025 Hr'g Tr.") at 82:3-8, ECF No. 512. Specifically, the Court denied the motion insofar as it relates to the January Tranche, the post-class members whose borrower defense applications address loans for attendance at Exhibit C-listed schools. As for other applications (the "April Tranche"), the Court extended the adjudication deadline for post-class applicants until April 15, 2026. The Court did not find that Defendants were in material breach of the Agreement or would breach the Agreement.[5]

On March 30, 2026, Defendants provided the required ¶ IV.D.2 notice to the January tranche of post-class applicant borrowers who did not receive a timely adjudication as required by the now-modified ¶ IV.D.1. Ex. 3, Declaration of Christian L. Odom ("Odom Decl.") ¶ 14. Defendants remain in compliance with ¶ IV.D.2. of the Agreement. *Id*.

**ARGUMENT**

**I.     Plaintiffs' Motion Fails to Identify a Statutory Waiver of Sovereign Immunity.**

Plaintiffs have not identified a statutory waiver of sovereign immunity. Because only Congress may waive the sovereign immunity of the United States, "sovereign immunity bars an award of attorneys' fees against the United States unless a statute expressly authorizes such an award." *Anderson*, 127 F.3d at 1191. "It is a corollary to immunity from suit on the part of the United States . . . that [sovereign immunity] cannot be waived by officials. If the contrary were true, it would subject the government to suit in any court in the discretion of its responsible officers. This is not permissible." *United States v. U.S. Fidelity & Guar. Co.*, 309 U.S. 506, 513 (1940). "Congress alone has power to waive or qualify [the United States's] immunity" from litigation "costs or expenses." *Chemical Found.*, 272 U.S. at 20. It does not matter if a plaintiff "insists" that costs or expenses were "taken with the consent of counsel[.]" *Id*. A Government "attorney ha[s] no power to waive conditions or limitations imposed by statute in respect of

---

[5] The Court stated that the "request to enforce is granted, subject to the caveat that I've given about the limited relief that I would give to the Government." Dec. 2025 Hr'g Tr. at 82:11-13. But there was no such motion pending. Plaintiffs had filed a motion to strike Defendants' motion, which was voluntarily withdrawn during the hearing and then formally denied by the Court. *Id*. at 46:25, 82:2.

suits against the United States." *Munro v. United States*, 303 U.S. 36, 41 (1938).

As a result, it is well established that "a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *FAA v. Cooper*, 566 US 284, 290 (2012) (citation omitted); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 267-68 (1975) (A claim that "attorneys' fees should be awarded against the Government . . . must be expressly provided for by statute[.]"); *United States v. Worley*, 281 U.S. 339, 344 (1930) ("[I]n the absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses.").[6]

Plaintiffs must specify the statute entitling them to fees in their motion.  Fed. R. Civ. P. 54(d)(2)(B)(ii).  Although several statutes "render[] the United States liable for attorney's fees for which it would not otherwise be liable" and "thus amount[] to a partial waiver of sovereign immunity[,]" *Ardestani v. Immigr. & Naturalization Serv.*, 502 U.S. 129, 137 (1991), Plaintiffs' motion identifies no such statutory authority.  Rather, Plaintiffs' motion relies only on the terms of the Agreement.  Notice of Mot. & Mot. for Counsel Fees ("Fees Mot.") at 10, ECF No. 535.  But Plaintiffs must pair the Agreement's provisions with a statutory waiver of sovereign immunity to award fees.  And even assuming they could identify a waiver, fees would have to be limited to the terms and conditions of that statute.  *See Arulampalam v. Gonzales*, 399 F.3d 1087, 1089 (9th Cir. 2005).

Because the motion identifies no statutory waiver of immunity, the motion should be denied.

## II.   The Tucker Act Vests the Court of Federal Claims with Exclusive Jurisdiction to Consider a Contract-Based Liability Claim against the United States.

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Plaintiffs bear the burden of establishing this Court's jurisdiction to consider their claim to fees and costs.  *Id*.

---

[6] *See also Nibali v. United States*, 634 F.2d 494, 496 (Ct. Cl. 1980) ("[I]t is a long-standing rule of law that [a] court is without authority to award attorney fees against the United States without specific statutory authority"); *United States v. Dawkins*, 629 F.2d 972, 975 (4th Cir. 1980) ("Attorneys' fees may be assessed against the United States only when it has waived its sovereign immunity by statute."); *NAACP v. Civiletti*, 609 F.2d 514, 516 (D.C. Cir. 1979) ("With respect to awards of attorney's fees, the policy against implied waivers of federal sovereign immunity is embodied in 28 U.S.C. § 2412[] which has been consistently construed as immunizing the United States against attorney's fees awards absent clear or express statutory authority to the contrary." (footnote omitted))

This Court lacks jurisdiction to consider this claim given Plaintiffs' failure to identify a statutory basis for the fee award. "The Tucker Act gives the United States Claims Court"—not this Court— "exclusive jurisdiction" over "any claim against the United States founded . . . upon any express or implied contract with the United States[.]" *N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1484, 1485 n.5 (9th Cir. 1985) (citation omitted). To determine whether a claim for relief falls under the Tucker Act, the Ninth Circuit has adopted a two-part test. *Pacito v. Trump*, --- F.4th ----, 2026 WL 620449, at *18 (9th Cir. Mar. 5, 2026). First, the Court must analyze "the source of the rights upon which the plaintiff bases its claims." *Id*. (quoting *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023)). "Second, and relatedly [courts] look to 'the type of relief sought.'" *Id*. (citation omitted). "If the 'rights and remedies are *statutorily or constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does[.]'" *Id*. (citation omitted). Both parts of the test show that the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over Plaintiffs' claim to recover $1.5 million to pay their attorneys' fees and expenses.

*Source of the rights*. Plaintiffs' claim to fee and expense recovery are plainly contractually— rather than statutorily or constitutionally—based. Plaintiffs' motion cites only two paragraphs of the Agreement as the source of the alleged right. Fees Mot. at 10. And when a party "seeks . . . enforcement of [a] settlement agreement," the claim is a "contract dispute." *Kokkonen*, 511 U.S. at 378, 381. *See also Holmes v. United States*, 657 F.3d 1303, 1311-12 (Fed. Cir. 2011).

*The type of relief sought*. The second part of the test "considers 'the type of relief sought.'" *Pacito*, 2026 WL 620449, at *20 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). Here, Plaintiffs' motion seeks an order compelling "Defendants to pay to [their attorneys] the amount of $1,438,999.10" and "$107,983.71." Fees Mot. at 18.[7] But "the APA's limited waiver of [sovereign] immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of

---

[7] Although the motion seeks an order compelling Defendants to pay Plaintiffs' attorneys, the Agreement suggests that the any claim to fees would be "payable to the litigant" and not to "his [or her] attorney[s]." *Cf. Astrue v. Ratliff*, 560 U.S. 586, 589 (2010) (construing the Equal Access to Justice Act). *See* Agreement at 16 (referring to Defendants' liability *for Plaintiffs*' . . . fees and costs" (emphasis added); *see also Evans v. Jeff D.*, 475 U.S. 717, 730-32 (1986) (concluding that plaintiffs in a class action settlement could waive fees).

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

what" Plaintiffs seek here.  *See Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025).  Again, an order compelling the United States pay a plaintiff money "stemming from an agreement with the United States . . . 'falls within the scope of the Tucker Act.'"  *Pacito*, 2026 WL 620449, at *20 (citation omitted).[8]

The Little Tucker Act confirms that this Court lacks subject matter jurisdiction.  That statute vests the "district courts"—including this one—with "original jurisdiction, concurrent with the United States Court of Federal Claims," of any "claim against the United States . . . founded . . . upon any express or implied contract with the United States" provided that the claim is "not exceeding $10,000 in amount[.]" 28 U.S.C. § 1346(a).  Plaintiffs' claim against the United States founded only upon the Agreement for $1.5 million is plainly foreclosed by the $10,000 Little Tucker Act cap.

The exclusive-jurisdiction-conferring provisions of the Tucker Act displace any authority suggesting that this Court might otherwise retain ancillary jurisdiction to adjudicate Plaintiffs' contract-based claim to $1.5 million.  Absent a statute providing otherwise, "a district court's ancillary jurisdiction over an attorney's fees dispute is inherent and broader than its ancillary jurisdiction to enforce a settlement agreement."  *K.C ex rel. Erica C. v. Torlakson.*, 762 F.3d 963, 968 (9th Cir. 2014).  But Plaintiffs err insofar as they fail to recognize that the Tucker Act has divested this Court of jurisdiction—including ancillary jurisdiction—to adjudicate any contract-based claims that Plaintiffs are entitled to recover $1.5 million in fees and expenses.  "[T]he Tucker Act and Little Tucker Act create a presumption of exclusive jurisdiction in the Court of Federal Claims" that "can be overcome" only "by an independent statutory grant of jurisdiction to another court."  *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1137 (9th Cir. 2013). And the Court's otherwise-inherent ancillary jurisdiction is not "an independent statutory grant of jurisdiction[.]"  *Id.*[9]

A policy objection to two-track litigation would be insufficient to overcome Congress's decision

---

[8] There is little doubt that a fees and costs claim is one for monetary compensation.  *See Alyeska Pipeline*, 421 U.S. at 249 (referring to founding-era Supreme Court caselaw characterizing "the inclusion of attorneys' fees as damages" (and rejecting claims that those damages are recoverable under the American Rule)).

[9] The Court could undoubtedly entertain a claim that Plaintiffs "are the 'prevailing party' under [a] relevant federal statute" that authorizes a fee award against the United States.  *See Torlakson.*, 762 F.3d at 968.  But Plaintiffs are "'contending . . . that some provision' of the Settlement Agreement [itself] or 'its components[] obligates' Defendants to pay attorneys' fees for the monitoring of post-settlement compliance" which lies outside that authority.  *Id*.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

to vest the Court of Federal Claims with exclusive jurisdiction over contract-based claims. As Justice Barrett's controlling opinion in *National Institutes of Health v. American Public Health Association*, 600 U.S. ---, 145 S. Ct. 2658 (2025) explained, "[t]wo track litigation results from '[t]he jurisdictional scheme governing actions against the United States' which 'often requires . . . plaintiffs to file two actions in different courts to obtain complete relief in connection with one set of facts.'" *Id*. at *2662 (Barrett, J.) (citation omitted). "Suits against the United States are 'available by grace and not by right,' and the relief available is subject to the conditions Congress sets." *Id*. (citation omitted).

Nor does the Agreement vest this Court with jurisdiction to adjudicate any contract-based claim for $1.5 million for attorneys' fees and costs. The Agreement is clear that "the Court shall retain jurisdiction *only* to review claims set forth in this Section V, and only in the manner explicitly provided[.]" Agreement at 15, ¶ V.A. Paragraph V.B provides for only four types of claims that this Court may consider and limits the orders that this Court may issue. The only orders available, depending on the claim, are (1) "an order requiring Defendants to promptly provide Full Settlement Relief to each affected Class Member on a timetable set by the Court" (the "only relief available from the Court" under Paragraphs V.B.1. and V.B.2.); (2) "an order requiring Defendants to submit their reports on a monthly basis from the point of [a Paragraph V.B.3.] order forward" (the "only relief available from the Court" under Paragraph V.B.3.); and (3) "an order requiring the Department to refund the payment(s) collected" after an involuntary collection claim (the "only relief available from the Court" under Paragraph V.B.4). Paragraphs V.B1.i and V.B.2.i provide that Defendants "shall also be liable for Plaintiffs' reasonable attorneys' fees and costs incurred in bringing the claim." *See, e.g.* Agreement at 16, ¶ V.B.1.i. But consistent with the Tucker Act, the Agreement plainly does not provide the Court with jurisdiction to issue orders compelling Defendants to compensate Plaintiffs for fees and cost liability arising from the Agreement alone. Unlike the language in the first sentence of ¶¶ V.B.1.i and V.B.2.i, which discusses "relief available from the Court," the second sentence addressing fee and cost liability does not authorize this Court to award any relief. *Cf. Badgerow v. Walters*, 596 U.S. 1, 11 (2022) ("'[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act,' we generally take the choice to be deliberate." (*quoting Collins v. Yellen*, 594 U.S. 220, 248 (2021)). Indeed,

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

14

elsewhere in the Agreement, the parties were even more explicit that the "Court relinquishes jurisdiction over all claims, causes of actions, motions, suits, allegations, and other requests for relief in this Action that are not expressly stated in this Paragraph V," such as a motion for counsel fees and costs arising under the Agreement.  Agreement at 20, ¶ V.E.

### III.   The Agreement Provides No Basis for Recovery of the Fees and Costs Demanded Because They Were Not Incurred in Bringing Any Claim for Relief Under ¶¶ V.B.1, V.B.2, or V.B.3 of the Agreement.

Even if this Court were to determine that it has jurisdiction to consider Plaintiffs' motion, the Court should deny it because the fees and expenses demanded were incurred in supervising and monitoring Defendants' compliance with the Agreement and the Agreement does not impose on Defendants liability for time expended on those activities.  Rather, the Agreement's terms provide that Defendants may be liable for fees and costs only if Plaintiffs "prevail" in obtaining the only relief available under one of the provisions of ¶ V.B contemplating fee or cost liability.  *Id*. at 16-17, ¶ V.B.  If Plaintiffs obtain such an order then Plaintiffs are entitled only to reasonable "fees and costs incurred in bringing the claim."  *Id*.  But Plaintiffs have not brought or prevailed on any claim under ¶¶ V.B.1, V.B.2, or V.B.3 in the time period covered by their motion.  Plaintiffs' requested fees and costs were incurred in supervising and monitoring Defendants' compliance, not in bringing any claims for the only relief available under ¶ V.B.  The last claim for relief that Plaintiffs brought under ¶ V.B was resolved when the Court entered an order on September 26, 2024, to provide Full Settlement Relief to Decision Group One Class Members on a new schedule set by the Court.  ECF No. 434.

### A. Fees Are Only Available Under the Agreement if Plaintiffs Prevail on a Claim Under Paragraph V.B.1., V.B.2., or V.B.3.

The terms of the Agreement permit fee recovery only if Plaintiffs "prevail" on a claim under Paragraph V.B.1, V.B.2 or V.B.3.  Each paragraph provides that if Plaintiffs' "prevail on th[e]" specific "claim" then the "only relief available from the Court shall be" a specific order and "Defendants shall also be liable for" specific fees and costs incurred.  Agreement at 16-17, ¶ V.B.  Thus, prevailing on a relevant ¶ V.B claim is a necessary predicate to fee liability under a fee generating provision of ¶ V.B.

"Prevail" is a term of art in the attorney fee context.  *Lackey v. Stinnie*, 604 U.S. 192, 199-200 (2025).  It requires, "at a minimum" that the plaintiff "be able to point to a resolution of the dispute which

changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 792 (1989) (citation omitted). And the "change in legal relationship" between the parties must "be judicially sanctioned and enduring." *Lackey*, 604 U.S. at 202. A defendant's voluntary actions in response to a claim are insufficient. *Id*. at 202-03.

### 1. Plaintiffs Have Not Prevailed on a Claim Under Paragraph V.B.1, V.B.2, or V.B.3 in the Time Period Covered by their Motion.

Plaintiffs do not show that they have "prevail[ed]" on any claim for the only relief available under ¶¶ V.B.1, V.B.2, or V.B.3 at any point during the relevant period. Plaintiffs' papers do not identify even a single instance after September 2024 in which Plaintiffs notified Defendants of a claim under those provisions that Defendants could have responded to with "voluntary actions[.]" *See id*.; *see also* Agreement at 18, ¶ V.D.1 ("Prior to asserting" a Paragraph V.B claim "Plaintiffs' Counsel shall submit written notice alleging a material breach of this Agreement to counsel for Defendants").

In any event, responding to a claim of breach under ¶¶ V.B.1. or V.B.2. with voluntary conduct would have been insufficient. *Lackey*, 604 U.S. at 202. Rather, prevailing would have required a "change in legal relationship [that is] judicially sanctioned and enduring[,]" *id*. at 202—here: the "only relief available from the Court"—"an order requiring Defendants to promptly provide Full Settlement Relief to each affected Class Member on a [new] timetable set by the Court[,]" Agreement at 16, ¶ V.B. The Court has not done so in response to a claim of breach under ¶¶ V.B.1. or V.B.2. after September 26, 2024.[10]

If that were not enough to show that Plaintiffs did not prevail on either claim for relief, consider the elements needed to obtain such an order under both provisions. Start with a ¶ V.B.1 claim. To prevail such a claim, Plaintiffs would have had to bring a motion to enforce showing that "Defendants have (i)

---

[10] In December 2025, the Court issued an order modifying the deadline for Defendants to issue decisions on borrower defense applications for a small subset of post-class applicants. Dec. 2025 Hr'g Tr. 82:3-8. But the Court's order was not entered in response to a claim for breach raised by Plaintiffs under ¶¶ V.B.1. or V.B.2. Rather, the Court's order modifying the decision deadline was entered pursuant to Defendants' motion under Rule 60(b). As discussed below, Plaintiffs' opposition to that motion included a conclusory argument for anticipatory breach, but that provision does not contemplate fee recovery and Plaintiffs did not prevail on it in any event. *See infra* at pp. 17-19. Moreover, neither ¶¶ V.B.1 nor V.B.2 authorize the Court to enter an order changing an adjudication decision deadline. Rather they only authorize the Court to enter "an order requiring Defendants to promptly provide Full Settlement Relief to each affected Class Member on a timetable set by the Court." Agreement at 16, ¶ V.B. The Court's order did not change the period for providing Full Settlement Relief to post class applicants. That deadline remains "no later than one year after the date that Defendants provide th[e] applicant Written Notice of the settlement relief decision." *Id*. at 11, ¶ IV.D.3.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

failed to issue to a Class Member or Post-Class Applicant by the due date established in" the relevant portion of Paragraph IV a decision on a borrower defense application and "(ii) subsequently failed, within [60[11]] calendar days following the expiration of the applicable deadline, to provide that Class Member with notice that they will receive Full Settlement Relief, as required by" the relevant portion of Paragraph IV.  Agreement at 15-16, 19, ¶¶ V.B.1, V.D.3.  But at no point since September 2024 have Plaintiffs even alleged a material breach with respect to such notice and relief deadlines, much less brought a motion to enforce under ¶ V.D.3, and the Court has not found that Defendants have failed to provide notice to a Class Member that they will receive Full Settlement Relief as required.  Rather, Defendants have substantially complied with the notice provisions throughout the relevant period.

Next, consider the elements that Plaintiffs would have had to show to obtain relief under ¶ V.B.2.  Under that provision, Plaintiffs would have had to bring a motion to enforce showing that "Defendants have materially breached" certain provisions of "the Agreement by failing to effectuate relief within the prescribed time periods for any individual who is entitled to receive relief pursuant [to] those Paragraphs." *Id*. at 16, 19, ¶¶ V.B.2, V.D.3.ii.  But at no point since September 2024 have Plaintiffs even alleged a material breach with respect to such relief deadlines, much less brought a motion to enforce under ¶ V.D.3, and the Court has not found that Defendants have failed to effectuate relief within the prescribed time periods for any individual who is entitled to receive relief pursuant to the Agreement.  On the contrary, Defendants have been in substantial compliance with the terms related to the provision of required relief.

### 2. The Agreement Does Not Impose Fee Liability on Defendants if Plaintiffs Prevail on an Anticipatory Breach Claim Arising Under Paragraph V.D.5, and Plaintiffs Never Prevailed on any Such Claim.

Nor are Plaintiffs entitled to fees associated with any putative anticipatory breach claim raised under Paragraph V.D.5.  In their opposition to Defendants' first motion for relief under Rule 60(b), Plaintiffs asserted an anticipatory breach claim pursuant to ¶ V.D.5.  Pls.' Opp'n at 20.  Paragraph V.D.5 authorizes Plaintiffs to "raise a claim of material breach of Paragraph IV with the Court prior to the expiration of the timelines provided in that Paragraph."  Agreement at 20, ¶ V.D.5.  The Agreement does

---

[11] Section V refers to a 30-day notice period. That appears to be an error given that the substantive provisions in Section IV provide for a 60-day notice period.  Plaintiffs have acknowledged that it is a 60-day period.  ECF No. 525 at 13 n.7.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

not impose fee liability upon Defendants if Plaintiffs prevail on a claim brought under this provision. *Id*. But Plaintiffs did not prevail on any ¶ V.D.5 claim in any event.

*First*, prevailing on a ¶ V.D.5 claim would provide no basis for a fee award because that provision does not allow fee recovery. Again, the fee recovery provisions are limited to claims of breach arising under ¶¶ V.B.1.i, V.B.2.i, and V.B.3. *Id*. at 15-21, § V. No provision authorizes fee recovery if Plaintiffs succeed in bringing an anticipatory breach claim under ¶ V.D.5. *See id*. at 19-20, ¶ V.D.5.[12]

*Second*, Plaintiffs did not prevail on any anticipatory breach claim raised under ¶ V.D.5. Plaintiffs invoked ¶ V.D.5 to claim that Defendants would breach ¶ IV.D.2. *See* Pls.' Opp'n. Paragraph IV.D.2 provides that "If a Post-Class Applicant has not received a timely decision"—*i.e.* a decision by January 28, 2026, "that applicant shall receive Full Settlement Relief. Defendants shall provide the affected Post-Class Applicant with notice that the applicant will receive this relief within 60 calendar days following the expiration of the applicable deadline." Agreement at 11, ¶ IV.D.2. As addressed during the motion hearing, "[b]ecause the Department can comply with th[is provision of] the agreement by" providing that notice of relief on this deadline, Plaintiffs have not established an anticipatory breach of the Agreement by pointing to the adjudication decision deadline alone. Dec. 2025 Hr'g Tr. at 55:4-16. "[T]he Department is able to discharge all of the" loans associated with "applications that have not been decided by January" 28, 2026 under the timelines provided for under Paragraph IV.D.2. *Id*. at 53:22-23. Unsurprisingly, the Court never found that Defendants breached any provision of the Agreement. *Cf. Hardisty v. Astrue*, 592 F.3d 1072, 1077 (9th Cir. 2010) ("[A]ttorneys' fees should [not] be awarded with respect to positions of the United States challenged by the claimant but unaddressed by the reviewing court.").[13] Indeed, on March 30, 2026, Defendants provided such notice for post-class applicants who

---

[12] Nor may the Court infer such claim for relief. Agreement at 15, ¶V.A. ("The Court shall lack jurisdiction to imply any claims, or authority to issue any other relief, under this Agreement"); *id*. at 20, ¶V.E. ("The Court relinquishes all jurisdiction over all claims, causes of actions, motions, suits, allegations and other requests for relief in this Action that are not expressly stated in this Paragraph V.").

[13] The Court stated at the motion hearing that "the request to enforce is granted, subject to the caveat that I've given about the limited relief that I would give to the Government." Dec. 2025 Hr'g at 82:11-13. It is hard to understand what to make of that statement given that there was no such motion to enforce pending before the court. But the statement certainly includes no finding that Defendants breached the Agreement, nor could it, because Defendants did not violate the Agreement as described above. To the degree that Plaintiffs were arguing in the motion to strike that a breach occurred, that motion was voluntarily withdrawn during the hearing and then formally denied by the court. *Id*. at 46:25, 82:2.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

18

attended Exhibit C schools and for which Defendants were unable to adjudicate their applications. Odom Decl. ¶ 14. And the Department intends to send out notices by June 15, 2026, to any non-Exhibit C post-class applicant who does not receive an adjudication decision by April 15, 2026, explaining that Full Settlement Relief will be effectuated within one year of the notice unless an order from an appropriate court authorizes otherwise. *Id.*[14]

### B. Even if Plaintiffs Prevailed on a Paragraph V.B.1, V.B.2, or V.B.3 Claim, Liability is Limited to Fees and Costs Incurred in Bringing the Claim.

Even if Plaintiffs had prevailed on a ¶ V.B.1, V.B.2, or V.B.3 claim for the only relief available from the Court, fee and cost liability is limited. Specifically, Defendants are liable only for reasonable fees and costs "incurred in bringing the claim." Agreement at 16-17, ¶ V.B. In other words, Defendants are liable for fees and costs incurred as part of the "exclusive procedure for bringing a claim" pursuant to ¶ V.B described in ¶¶ V.D.1, V.D.2, V.D.3, and nothing more. *Id.* at 18-19, ¶ V.D. That begins with fees and costs incurred in addressing the mandatory "written notice alleging a material breach" and stating "that Plaintiffs intend to seek an order from the Court pursuant to Paragraph V.B," *see id.* at 18; ¶ V.D.1, and terminates if and when Plaintiffs prevail on the claim by obtaining "the only relief available from the Court" under ¶¶ V.B.1 or V.B.2, *id.* at 16, in response to a motion to enforce under ¶ V.D.3, *id.* at 19.

Because this process last concluded on September 26, 2024, the date that the Court resolved Defendants' breach of the Decision Group 1 relief deadline by issuing an order requiring Defendants to promptly provide Full Settlement Relief to each affected Decision Group 1 class member by December 20, 2024, ECF No. 434, Plaintiffs have not shown that they have incurred any fees and costs in bringing any claim under ¶¶ V.B.1 or V.B.2 since September 27, 2024, the time period covered by this motion.

#### 1. Fees for Supervision and Monitoring Defendants' Compliance with the Agreement or Court-Ordered Timetables Are Not Fees Incurred in Bringing a Claim for Breach.

Again, the Agreement is explicit that Plaintiffs may recover only the limited amount of fees and

---

[14] Plaintiffs also never prevailed on any claim that Defendants were required to invoke procedures under Paragraph V.D.5 to seek relief under Rule 60(b). *See* ECF No. 492 at 11 n.3; ECF No. 503 at 4-5. Indeed, Plaintiffs withdrew this argument during the motion hearing. Dec. 2025 Hr'g Tr. at 46:20-25 ("[W]ithdraw[ing]" motion to strike for "failing to comply with the settlement's procedures" because "there would be [no] value in striking this motion and doing it all over again in two months").

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

costs incurred in "bringing [a] claim" under ¶¶ V.B.1, V.B.2, or V.B.3.  Agreement at 15-16, ¶ V.B.  The Agreement does not include any provision under which Plaintiffs may be compensated for their attorneys' time and expenses incurred in supervising and monitoring Defendants' compliance with the Agreement's terms or compliance with any new schedule set by the Court after prevailing on any claim under ¶¶ V.B.1. or V.B.2.  On the contrary, the parties were explicit that the "Court shall have no jurisdiction to supervise, monitor, or issue orders in this Action, except to the extent that Plaintiffs invoke the Court's jurisdiction pursuant to the procedures" just discussed.  *Id*. at 21, ¶ V.F.

Paragraphs V.B.1.ii and V.B.2.ii provide that, after Plaintiffs prevail on a claim under ¶¶ V.B.1 or V.B.2, Defendants must "report to Plaintiffs' Counsel and the Court on its progress of issuing relief . . . to affected Class Members."  *Id*. at 16.  But the Agreement does not provide Plaintiffs any role under Paragraph V.B.1.ii or V.B.2.ii.  Unsurprisingly, the Agreement does not refer to fee and cost recovery for supervising and monitoring any such reporting.  Indeed, the parties—presumably intentionally—separated this reporting obligation from the fee-generating provision and placed it under a separately-numbered subparagraph.  Moreover, prevailing on a claim for breach is a necessary predicate to the additional reporting obligation under V.B.1.ii or V.B.2.ii.  Thus, Plaintiffs would have already prevailed in bringing a claim for breach for these latter obligations to take effect.  Reading "bringing the claim" to encompass the reporting requirement that occurs as a consequence of Plaintiffs already having prevailed on that very claim is not a plausible reading of the Agreement's language.

**2. Plaintiffs' Requested Fees Are for Burdensome Supervision and Monitoring, Not Bringing Claims for Breach under Paragraph V.B.**

Plaintiffs essentially concede that the demanded fees and costs were not actually incurred in bringing a claim under ¶¶ V.B.1 or V.B.2.  Rather, Plaintiffs gesture toward those provisions while instead asserting that the fees and costs were incurred almost entirely in bringing "claims to enforce the Settlement" outside the scope of the specific claims identified in ¶¶ V.B.1 or V.B.2 or otherwise "in helping to cure the Department's [putative] breaches."  Fees Mot. at 10.  But the Agreement does not authorize fee recovery for such conduct, whether helpful or not.  Rather, the Agreement's enforcement provisions are intentionally narrow in contemplating continuing enforcement jurisdiction in district court.  The attorney fee provisions are even more limited.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

20

As Plaintiffs concede, the "requested fees and costs" demanded here were incurred beginning "*the day after*" the Court entered the order contemplated by ¶ V.B.2. resolving Plaintiffs' last claim under that provision. *Id*. at 10; ECF No. 434. The Government already settled Plaintiffs' claims to fees and costs incurred in bringing any ¶ V.B.2 claim for the order entered on September 26, 2024, to promptly provide Full Settlement Relief to affected Decision Group One members. *See* Ex. 1; Fees Mot. at 17 n.8; ECF No. 434. So there is no basis to conclude that any fees and costs at issue in this motion were "incurred in bringing the claim" which was resolved by concession of the Government (eliminating the need for Plaintiffs to bring a motion to enforce under ¶ V.D.3) and entry of an order on September 26, 2024 requiring Defendants to provide Full Settlement Relief to Decision Group One class members by December 20, 2024. *See* Agreement ¶¶ V.B.2.i. Fees and costs incurred after the Court entered "the only relief available from the Court" to resolve such a ¶ V.B.2 claim are not contemplated by the terms of the Agreement. The only two deadlines which the Court extended based on the Plaintiffs' allegations of material breach were the January 28, 2024 relief deadline for Exhibit C class members and the July 28, 2024 relief deadline for the Decision Group 1 class members. The extended deadlines (August 31, 2024 and December 20, 2024, respectively) have long since passed and the Plaintiffs never alleged that Defendants materially breached either of those two extended deadlines. The Agreement does not contemplate that, once the Court determines that Plaintiffs have demonstrated a material breach of a deadline that Plaintiffs may then obtain years' worth of attorneys' fees for ongoing supervision and monitoring efforts.

True, the parties have attended many meetings and status conferences required by Court orders. Fee Mot. at 10. But even if the Court ordered those meetings and conferences and even if it did so under the belief that they may cure a prior breach or prevent a future one, that does not mean Plaintiffs' time participating in them was incurred in bringing a claim for breach under the fee-generating provisions of the Agreement. Plaintiffs prevail in bringing a claim under ¶¶ V.B.1 or ¶ V.B.2 upon entry of the "only relief available from the Court[,]" Agreement at 16, which changes the legal relationship between Defendants and the affected class members. *See supra* at pp. 15-17. The Agreement does not impose liability for time incurred curing breaches or preventing future breaches. Agreement at 16.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

Indeed, Judge Alsup was explicit that he was "having these hearings on a regular basis" to supervise and monitor Defendants' compliance—"so [the Court] can make sure [that the Department is] on schedule." Transcript of Proceedings (May 23, 2024), ("May 2024 Hr'g Tr.") at 4:8-10, ECF No. 423. There is no provision of the Agreement authorizing fee and cost recovery for that type of supervision and monitoring after Plaintiffs successfully prevail on a claim for breach under ¶ V.B.1 or V.B.2.

Moreover, the parties have been having regular meetings in Washington, D.C. and virtually in which the Department's Student Loan Ombudsman office reports to Class Counsel on the Department's responses to individualized inquiries and complaints raised by borrowers. Odom Decl. ¶¶ 5-13. But these meetings have nothing to do with bringing a claim under ¶¶ V.B.1. or V.B.2. Rather, they address routine individualized inquiries and questions raised by borrowers. Odom Decl. ¶¶ 5-13. The Department goes through lists of inquiries raised by borrowers, addressing for example, "whether refunds have been issued, the amounts and timing of those refunds, whether checks were cancelled and reissued," because, for example, a check was never cashed, "whether payment histories from servicers align with [a particular borrower's] records," and "whether borrowers have confirmed receipt of funds." *Id*. ¶ 8.

Under the relevant fee-liability-generating provisions, "the only relief available from the Court" was "an order requiring Defendants to promptly provide Full Settlement Relief to each affected Class Member on a [new] timetable set by the Court." Agreement at 16, ¶¶ V.B.1.i; V.B.2.i. Plaintiffs are transparent that they are seeking to recover fees and costs not for time expended in *bringing* a claim for such an order, but rather "hundreds of hours spent [purportedly] remedying" the 2024 Decision Group 1 "breach and ensuring that relief was delivered to [all] Decision Group members." Fees Mot. at 10. The Department believes that Plaintiffs' supervision and monitoring, while well intended, were unnecessary and at times unproductive, taking up the valuable limited time of the Department's Ombudsman's Office staff that would otherwise be directed at addressing borrower—including *Sweet* class member—complaints. Regardless, however, there is no provision of the Agreement authorizing fee recovery for time that class counsel spent putatively *remedying* a breach or oversight of the Department's compliance with any court-extended deadline—or original deadlines that the Department met. The Agreement is clear that it is the Department's role—not Plaintiffs'—to provide for relief on a new schedule set by the Court.

Agreement at 16 (contemplating an order "requiring *Defendants*" not Plaintiffs, "to promptly provide Full Settlement Relief" on a new schedule).

Plaintiffs' own submissions indicate that they are not seeking fee recovery for time spent bringing a claim under ¶¶ V.B.1. or V.B.2.  The most common time entry may be "addressing [absent] class member communications."  Ex. 2 to Decl. of Rebecca C. Ellis, ECF No. 535-1.  Plaintiffs provide no evidence, and there could not be any because any such evidence would be inconsistent with the timeframe of this litigation, *see* Ex. 2, that these class member communications were somehow used to bring a claim under ¶¶ V.B.1. or V.B.2.  They were not.  On the contrary, class counsel considers it to be their role to "share important case updates, clarify next steps, and address common questions" raised by class members.  The Project on Predatory Student Lending, Sweet v. McMahon, https://www.ppsl.org/cases/sweet-v-mcmahon (last visited Apr. 2, 2026).  While those efforts may well be commendatory, the Agreement does not include them among the very limited conduct for which Defendants may be liable for fees or costs.  As class counsel has explained, the "Settlement Agreement does not address a process for handling class member complaints."  Transcript of Proceedings, (Apr. 15, 2025) ("Apr. 2025 Hr'g Tr.") at 19:3-4, ECF No. 472.[15]  Clearly the Government did not agree to liability for fees and costs for Plaintiffs' efforts addressing individualized complaints by absent class members.  Plaintiffs' counsel describe themselves as acting as a "settlement administrator in this case."  ECF No. 535 at 3.  But the Agreement did not provide for a settlement administrator, the Court did not appoint Plaintiffs' counsel as a settlement administrator, and the Government did not agree that it would be liable for fees and costs of a settlement administrator.

---

[15] The class in this case was certified under Federal Rule of Civil Procedure 23(b)(2).  ECF No. 46 at 13.  It was certified on the view that "a single order compelling defendants to restart the processing of borrower defense claims" or a "plan setting forth a timeline for resolving the backlog of applications" applying to the class as a whole may be available.  *Id*.  Having obtained that type of class-wide relief already in this action, Plaintiffs are wrong to use this action and its judgment as a mechanism to resolve individualized absent class member complaints and to seek inherently individualized follow-on relief.  The Ninth Circuit is clear that an individual absent class member's follow-on claims for individualized relief presents a new controversy even if it involves compliance with a class-wide declaratory or injunctive order.  *See Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996).

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

**3. Even if Plaintiffs Prevailed on an Anticipatory Breach Claim and it Did Entitle Them to Fees Under the Agreement (And Neither is True), They Would be Entitled to No More than One Hour's Worth of Attorneys' Fees.**

Even if Plaintiffs were eligible for fee and cost recovery based on the ¶ V.D.5 claim asserted on page 20 of their combined motion to strike and opposition to Defendants' first motion for relief under Federal Rule of Civil Procedure 60(b)—which they are not—awarding $1.5 for bringing that claim would be entirely unreasonable. Plaintiffs' argument in favor of a breach required three paragraphs taking up twelve lines of text. Pls.' Opp'n at 20. Plaintiffs' argument that a breach occurred constituted about one-fortieth of the argument presented in their memorandum. *See id*. at 1-20. Thus, a reasonable fee award for bringing that claim would be no more than one hour of attorney time.[16] An attorney with many years of experience would not require than one hour to comprise those twelve lines of text.[17] And one-fortieth of the time counsel argued at the motion hearing is a rounding error.

**IV.    The Motion Is Untimely Insofar as it Seeks Recovery of Time Seeking Appealable Orders Entered Prior to February 2026.**

Plaintiffs motion is untimely insofar as it seeks fee and cost recovery of time and expenses spent seeking post-judgment orders entered prior to February 2026. A motion for fees must "be filed no later than 14 days after entry of" an "order from which an appeal lies" "[u]nless a statute or court order provides otherwise[.]" Fed. R. Civ. P. 54(a), (d)(2)(B)(i). This rule ensures "notice of the fee motion prior of the expiration of the time to appeal" which is "critical because the potential for substantial fee liability can influence the [appeal] decision[.]  10 Moore's Federal Practice § 54.151 (2026). But Plaintiffs seek to recover time and expenses for an expansive post-judgment period, including time spent obtaining several injunctive orders not contemplated by the Agreement, *e.g.,* ECF No. 414 (ordering Defendants to permit class counsel to "look over the should the ombudsman to ensure accountability"); ECF No. 463 (ordering

---

[16] For essentially the same reasons, the claimed hours are unreasonable and Defendants object to the hours expended. *See Hensley v. Eckerhart*, 461 U.S. 424, 436, 440 (1983).

[17] *Cf. American Petroleum Inst. v. EPA*, 72 F.3d 907, 912 (D.C. Cir. 1996) ("[I]tems of expense or fees that may not be unreasonable between a first class law firm and a solvent client[] are not always supported by indicia of reasonableness sufficient to allow [the Court] to tax the same against the United States"); *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) (referring to "the common sense truth that as between attorneys competent to handle a given task, generally the one who is entitled to higher hourly compensation because of greater experience and skill may reasonably be expected to accomplish the task in fewer hours").

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

"in-person monthly meetings"), and for which the appeal period has elapsed.

**V.   Plaintiffs' Bill of Expenses are Not Compensable "Costs."**

Plaintiffs are wrong to seek an order compelling Defendants to compensate them for nearly $108,000 in transportation, meals, lodging, and salesforce software expenses. *See* Ex. 3 to Decl. of Rebecca C. Ellis, ECF No. 535-1. None of these are "costs" as that term is used in Section V.

The term "'costs' is 'a term of art'" that should "not be construed as authorizing an award of litigation expenses beyond the six categories listed in [28 U.S.C.] §§ 1821 and 1920, absent an explicit . . . instruction" otherwise. *Rimini Street Inc. v. Oracle,* 586 U.S. 334, 340 (2019) (citation omitted). The Supreme Court has held that even the Copyright Act's broad reference to "full costs" did not allow a district court to award costs to a private party beyond those six categories specifically enumerated in the general costs statute.[18] There is no reason to doubt that the term "costs" in Section V of the Agreement refers to these same traditional "costs" given the lack of explicit instruction otherwise. *Id*. Plaintiffs have not shown entitlement to recovery of any "costs" as the term is used in these provisions.[19]

Plaintiffs' position that "costs" includes not only §§ 1821 and 1920 costs but also expenses is undermined by the language of the Agreement. The relevant provisions in Section V state that Defendants are liable for "fees and costs[,]" not expenses. Agreement at 16-17, ¶ V.B. And elsewhere in the Agreement, when the parties intended to include expenses, they said so expressly. *E.g.*, *id*. at 21 § VI. Because expenses are not recoverable under any provision of Section V, and because the expenses Plaintiffs seek to recover are not "costs," the Court should not enter an order requiring the United States to pay for them.

---

[18] The Court has repeatedly explained that courts may not tax costs beyond those enumerated in Section 1920 [and 28 U.S.C. § 1821] absent "plain evidence of congressional intent to supersede those sections." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). The Court has applied that default rule in holding that various statutes do not authorize shifting of costs in litigation involving private parties beyond those listed in Section 1920. *See West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991) (42 U.S.C. § 1988); *Arlington Cent. Sch. Bd. v. Murphy*, 548 U.S. 291 (2006) (IDEA).

[19] 28 U.S.C. § 1920 permits as "costs" only six enumerated categories of expenses: (1) fees of the clerk and marshal; (2) fees of the court reporter; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under § 1923; and (6) compensation of interpreters and court appointed experts. None of Plaintiffs' expenses fall into these categories.

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG

Dated: April 3, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*

Opposition to Plaintiffs' Motion for Fees and Costs
4:19-cv-03674-HSG