# Exhibit 3

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 616-8098
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| THERESA SWEET et al.<br><br>      Plaintiffs,<br><br>  v.<br><br>LINDA MCMAHON, *in her official capacity as Secretary of Education*, and UNITED STATES DEPARTMENT OF EDUCATION,<br><br>      Defendants. | Case No. 19-cv-03674-HSG<br><br>**DECLARATION OF CHRISTIAN L. ODOM**<br><br>(Class Action)<br>(Administrative Procedure Act Case) |

Pursuant to 28 U.S.C. § 1746, I, Christian L. Odom, declare as follows:

1.    I am the Ombudsman within the Office of the Ombudsman in the Department of Education's ("Department") Federal Student Aid ("FSA") office.   I have served in that capacity since February 9, 2025.  Prior to my appointment as the Ombudsman, I served as Director of the Next Gen FSA Program Office at the office of Federal Student Aid.

2.    I certify that I am duly qualified and authorized by the Department to make the statements contained in this Declaration in support of the Defendants' opposition to the Plaintiffs' Motion for Counsel Fees and Costs (ECF No. 535).  The statements contained herein are based either on my personal knowledge as an employee of the Department or on information reported to me by Department officials and staff.

3.    The Office of the Ombudsman ("Office") is a final resource for individuals who have first sought help through other customer service avenues.  The Office reviews, processes and resolves complaints.  Most complaints received by the Office are from student aid borrowers concerning their federal student loans.  As the Ombudsman, I am knowledgeable about the Office staff's work generally as well as with respect to this case.

4.    I am aware that at a May 7, 2024 hearing, the Court requested the Department to provide the name of someone "to whom all these questions [from *Sweet* borrowers] can be referred."  ECF No. 412 at 35.  In response, the Department identified my predecessor, the then-Ombudsman.  *Id*. I am also aware that following a May 23, 2024 hearing, the Court ordered that the "ombudsman shall permit borrowers' counsel to access the ombudsman's office, to inspect records therein, and to otherwise 'look over the shoulder of the ombudsman' to ensure accountability and to support efforts to enforce judgment promptly."  ECF No. 414.

5.    During my tenure as the Ombudsman, my staff has met with Plaintiffs' counsel weekly.  Three meetings a month have been virtual two-hour meetings and one meeting a month is an in-person meeting lasting at least four and a half hours. Recently, Plaintiffs were informed that the Department would reduce the cadence of meetings to one virtual and one in-person meeting per month due to the fact that preparation for the meetings takes my staff away from actual case work – the work that is needed to review and resolve class member complaints.

6.      The meetings attended by Plaintiffs' counsel and the Office's staff follow a regular pattern. On the Thursday or Friday before the meeting, my staff provides two reports to Plaintiffs' counsel. One report gives an update of the number of emails received into the *Sweet* inbox (to which *Sweet* borrowers send their complaints), data on the types of complaints received), and the number of outstanding complaints associated with each servicer. The other report is a spreadsheet identifying each *Sweet* borrower who has complained, the topic of the complaint, a description of the issue, the type of loan involved, the primary servicer for the loan(s), the tasks to the servicers by my staff and the current disposition of the complaint. On the Friday or Monday before the meeting, Plaintiffs' counsel provides my staff with a spreadsheet of the complaints made to the Office that Plaintiffs' counsel wants to discuss at the meeting and prioritize resolving. Those spreadsheets identify on average approximately 30 new individual complaints each week.

7.      In the meetings, my staff goes through the spreadsheet provided by Plaintiffs' counsel line-by-line and they discuss each class member's complaint individually. My staff reports on what the complaint is and the status of the resolution of the complaint. The oral report at each meeting includes such information as which servicer is involved, whether servicers have responded to requests from my staff, whether emails have been sent to the complainant, amounts of refunds sent, and the status of discharges. Each oral report given in the meeting is specific to the borrower.

8.      Some examples of the reporting on individual cases that occurs during the meetings include the following:

    a.  My staff reports on borrower-specific refund issues, including whether refunds have been issued, the amounts and timing of those refunds, whether checks were canceled and reissued, whether payment histories

from servicers align with borrower records, and whether borrowers have confirmed receipt of funds.

b.  My staff reports on borrower complaints involving discharge and account status, including whether loans have been discharged, whether borrowers continue to receive billing statements after discharge, whether loans have been placed into forbearance where appropriate, and whether additional steps are required to complete relief.

c.  My staff reports on class membership and application-related issues, including whether borrowers qualify as class or post-class members, whether applications were timely submitted, whether supporting evidence exists in Department or contractor systems, and whether additional documentation must be obtained from the borrower.

d.  My staff reports on credit reporting issues, including whether credit tradelines have been deleted following discharge, whether prior servicer data has been transferred correctly, and whether further action with servicers is required to correct inaccurate reporting.

e.  My staff reports on communications and tasking to loan servicers, including requests for payment histories, refund verification, discharge processing, correction of servicing errors, reissuance of refunds due to address or processing issues, and escalation of unresolved matters through ongoing coordination with servicers.

9. My staff reports on complex or unresolved borrower cases requiring additional investigation, including cases involving multiple or consolidated loans, mixed eligibility issues, technical problems with applications, identity or documentation issues, and

situations where cases must be reopened or referred for further internal or external review.  Some of the borrowers whose cases are reviewed are have only non-*Sweet* issues (*e.g.*, issues related to private loans or Perkins loans) or a combination of *Sweet* and non-*Sweet* issues.

10.     The meetings are highly detailed and operational in nature. They are not limited to general updates. Instead, they require my staff to be prepared to discuss numerous borrower-specific matters individually, including the history of the complaint, actions taken by the Office, responses from loan servicers, and the additional steps required to resolve the matter.

11.     The issues discussed in these meetings commonly include, among other things, refund issuance and reconciliation, discharge status, billing and servicing errors, credit reporting corrections, class membership and application-timing issues, and coordination with loan servicers to resolve discrepancies. Many of these issues require individualized factual review, comparison of borrower-provided information with servicer and Department records, and follow-up across multiple parties before a meaningful update can be provided.

12.     The purpose of these meetings is to facilitate the review and resolution of individual borrower complaints, including those identified by Plaintiffs' counsel for prioritization. The meetings are used to work collaboratively through borrower-specific issues, including identifying cases that may require additional review or follow-up to ensure that borrowers receive any relief to which they may be entitled under the settlement. These meetings include broad efforts to review, investigate, and resolve individual borrower inquiries, including cases where additional information must be developed or verified. Individual borrowers submit complaints to my staff, my staff addresses and resolves the complaint with the individual class member, and my staff then reports the outcome to class counsel at the meetings.  Most of the meeting time is spent reporting to the Plaintiffs' counsel on the resolution of these specific individualized issues.  The

complaints that my staff respond to, resolve and report on at the meetings come from then entire range of borrowers impacted by *Sweet* – Exhibit C automatic discharge class members, class members in all five of the decision groups, and borrowers who are post-class applicants – as well as, on occasions, borrowers who mistakenly believe they are impacted by *Sweet* but who are neither class member nor post-class applicants.

13.    The following examples illustrate the routine, borrower-specific nature of the issues addressed in these meetings, in which no violation of the Agreement is involved at all:

  a.    One absent class member has been issued a refund check multiple times but has not cashed the check. While the borrowers has complained about not receiving his refund, the check has been reissued on several occasions, and delivery has been complicated by the borrower's frequent international travel and lack of a consistent mailing address.

  b.    In another case, an absent class member inquired about the timeline for issuance of relief; however, the borrower was part of an automatic relief group, whose loans had already been discharged and who had already received a full refund.

  c.    Further, in another case an absent class member inquired about a refund; however, because the class member's payments were made on commercial FFEL loans, there is no refund due because the payments were not made to the Department, and therefore the payments are outside the scope of refund relief under the Sweet settlement. The class member is only entitled to a discharge.

d. In another case, an absent class member inquired about the status of settlement relief in 2025; however, the borrower had already received multiple refunds from more than one servicer in 2024, and Department records reflected a remaining loan balance of zero.

e. Lastly, in another case an individual inquired about eligibility for relief under the Sweet settlement; however, the individual submitted a borrower defense application after the relevant time period and is not covered by the settlement.

14. In addition to my knowledge about the work of the Ombudsman's office described above, I am also aware that on March 30, 2026, the Department sent notices to Exhibit C post-class applicants who did not receive an adjudication decision by January 28, 2026. I am further aware that the Department intends to comply with sending out notices by June 15, 2026 to any non-Exhibit C post-class applicant who does not receive an adjudication decision by April 15, 2026, unless an order from an appropriate court authorizes otherwise.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 3 , 2026.

CHRISTIAN ODOM
Digitally signed by CHRISTIAN ODOM
Date: 2026.04.03 22:35:16 -04'00'

Christian L. Odom
Ombudsman
Federal Student Aid Office
U.S. Department of Education