EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS (*pro hac vice*)
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
NOAH ZINNER (SBN 247581)
nzinner@ppsl.org
PROJECT ON PREDATORY STUDENT
LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
Tel.: (617) 390-2669
Fax: (781) 218-9625

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> LINDA MCMAHON, in her official capacity as Secretary of the United States Department of Education, and <br><br> THE UNITED STATES DEPARTMENT OF EDUCATION, <br><br> *Defendants*. | Case No. 19-cv-03674-HSG <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR COUNSEL FEES AND COSTS** |

**TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................................... 1

II.   ARGUMENT ................................................................................................................ 1

    A.    The Department Misreads the Settlement Agreement ....................................... 1

        1.    The Settlement's Enforcement Provisions Anticipated Ongoing Compliance
        Oversight................................................................................................................ 1

        2.    Plaintiffs Prevailed on Their Motion for Anticipatory Breach....................... 3

    B.    The Department Misrepresents the Post-Judgment Proceedings....................... 4

    C.    This Court Has Jurisdiction Over Plaintiffs' Motion for Counsel Fees............. 6

        1.    No Statutory Waiver Is Necessary When the Government Has Agreed by Contract to
        Pay Fees ................................................................................................................ 6

        2.    The Tucker Act Does Not Apply Here............................................................ 7

    D.    The Department's Remaining Arguments Fail ................................................... 11

        1.    The Fees Motion Is Timely ............................................................................. 11

        2.    Plaintiffs' Costs Are Compensable ................................................................ 12

CONCLUSION.............................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) ........................................ 6

*Anderson v. United States*, 127 F.3d 1190 (9th Cir. 1997) ......................................................... 7

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ........................................................................ 10

*Dep't of Educ. v. California*, 604 U.S. 650 (2025) .................................................................. 8

*Fed. Aviation Admin. v. Cooper*, 566 U.S. 284 (2012) ............................................................. 6

*Flanagan v. Arnaiz*, 143 F.3d 540 (9th Cir. 1998) ................................................................. 10

*Good v. United States*, 23 Cl. Ct. 744 (1991) ....................................................................... 11

*Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011) ........................................................ 10

*Jenkins v. Weinshienk*, 670 F.2d 915 (10th Cir. 1982) ............................................................. 9

*K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963 (9th Cir. 2014) .................................... 7, 9, 10, 11

*Kania v. United States*, 650 F.2d 264 (Fed. Cir. 1981) ............................................................ 8

*Lackey v. Stinnie*, 604 U.S. 192 (2025) ............................................................................... 6

*Lauritzen v. Lehman*, 736 F.2d 550 (9th Cir. 1984) ................................................................ 7

*Megapulse Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982) .......................................................... 8

*Munro v. United States*, 303 U.S. 36 (1938) .......................................................................... 6

*NAACP v. Civiletti*, 609 F.2d 514 (D.C. Cir. 1979) ................................................................ 6

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (mem.) ...................................... 8

*Nibali v. United States*, 225 Ct. Cl. 8 (1980) ........................................................................ 7

*North Side Lumber Co. v. Block*, 753 F.2d 1482 (9th Cir. 1985) ................................................. 8

*Pacito v. Trump*, 2026 WL 620449 (9th Cir. Mar. 5, 2026) ....................................................... 8

*Rouser v. White*, 825 F.3d 1076 (9th Cir. 2016) ................................................................. 4, 5

*Stovall v. United States*, 71 Fed. Cl. 696 (2006) .................................................................... 11

*Sweet v. McMahon*, No. 26-1136 (9th Cir. Feb. 27, 2026) ......................................................... 9

*Tritz v. U.S. Postal Serv.*, 721 F.3d 1133 (9th Cir. 2013) .......................................................... 9

*U.S. v. Chemical Found.*, 272 U.S. 1 (1926) .......................................................................... 7

*United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017 (9th Cir. 2023) ................................... 8

*United States v. U.S. Fidelity & Guar. Co.*, 309 U.S. 506 (1940) ................................................... 6

*White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445 (1982) ............................................... 8, 11

**Statutes**

28 U.S.C. § 1500 ................................................................................................................. 10

28 U.S.C. § 1821 ................................................................................................................. 12

28 U.S.C. § 1920 ................................................................................................................. 12

28 U.S.C. § 2412(b) .............................................................................................................. 7

42 U.S.C. § 1988(b) .............................................................................................................. 7

**Rules**

Fed. R. Civ. P. 54(d)(2) ....................................................................................................... 11

Fed. R. Civ. P. 59(e) ............................................................................................................ 11

## I.    <u>INTRODUCTION</u>

The Department of Education's arguments in opposition to Plaintiffs' motion for counsel fees and costs are aimed at obfuscating the simple truth of this situation: The Department agreed to pay Plaintiffs' counsel fees and costs incurred in bringing claims for breach of the Settlement, as set forth in the Settlement itself. Notwithstanding the Department's interpretive contortions to the contrary, the record unambiguously establishes that the Department has been in breach of the Settlement, in one way or another, every single day since January 29, 2024. Plaintiffs' counsel have followed the Court's orders in seeking to cure those breaches—over and through the Department's various objections, delays, and excuses.

The Department is wrong when it asserts that Plaintiffs must pursue their motion for fees in the Court of Federal Claims. The Settlement Agreement is incorporated in a final order of this Court, over which this Court maintains jurisdiction. Indeed, the Department relies on this Court's continued jurisdiction in the very appeal it is pursuing right now. The Ninth Circuit has held that district courts maintain ancillary jurisdiction over counsel fees motions in cases that have otherwise settled, and the Court of Federal Claims itself has recognized that it does not have jurisdiction where a settlement agreement is still being supervised by a federal district court. None of the Department's cases are to the contrary.

On a rolling basis since the breach finding, the Department has paid Plaintiffs' counsel fees and costs—including items it now refers to as "expenses"—on negotiated terms, acknowledging their clear obligations under the Settlement. The Department's newfound objection to honoring the terms of its agreement has no basis in the law or the facts.

## II.    <u>ARGUMENT</u>

### A.    The Department Misreads the Settlement Agreement

#### 1.    The Settlement's Enforcement Provisions Anticipated Ongoing Compliance Oversight

The Department's contention that "Plaintiffs' requested fees and costs were incurred in supervising and monitoring Defendants' compliance, not in bringing any claims for the only relief available under ¶ V.B," Opposition, ECF No. 540 at 15 ("Opp."), proves too much. Plaintiffs'

requested fees and costs were indeed incurred in supervising and monitoring Defendants' compliance with the Settlement—after the Court twice found, on Plaintiffs' motions, that the Department was in breach. In April 2024, after the Department admitted that it was in breach of the Settlement's deadline for providing Full Settlement Relief to the Automatic Relief Group (Settlement ¶ IV.A.1), the Court ordered the Department to provide relief according to a revised schedule. In September 2024, the Department admitted, and the Court found, that the Department was in breach of the Settlement's deadline for providing Full Settlement Relief to the first tranche of the Decision Group (¶ IV.C.9); the Court again ordered the Department to provide relief according to a revised schedule. The Court-ordered monitoring and enforcement work that Plaintiffs have been engaged in since September 2024 has been necessary to ensure that the Department's breaches are cured and that the relief schedules are honored, including for the successive tranches of the Decision Group.

Indeed, the Settlement itself contemplated that oversight would be necessary in the event of a breach. The Department ignores Paragraphs V.B.1.ii and V.B.2.ii of the Settlement, which each provide: "In the event of such a Court order [requiring Defendants to promptly provide Full Settlement Relief on a schedule set by the Court], Defendants will report to Plaintiffs' Counsel and the Court on its progress of issuing relief, as provided herein, to affected Class Members." The Court established a regular schedule of meetings between Plaintiffs' counsel and the Department, and status conferences with the Court, precisely in order to receive such "report[s]" on the process of remedying the Department's breaches. This work is exhaustive, critical, and ongoing. It is the direct result of and inextricably linked to Plaintiffs "bringing the claim[s]" of breach. Settlement ¶ V.B.2.i.

Additionally, the Court has and had authority to make its oversight orders as part of its inherent power to conduct enforcement proceedings. The Department, ironically, cites the Settlement's provision that the "Court shall have no jurisdiction to supervise, monitor, or issue orders in this Action, except to the extent that Plaintiffs invoke the Court's jurisdiction pursuant to the procedures set forth in this Paragraph V." Settlement ¶ V.F; *see* Opp. 20. Plaintiffs did, of course, invoke this Court's jurisdiction pursuant to the procedures in Paragraph V. Under that

jurisdiction, the Court ordered Plaintiffs' counsel to do exactly what they did, and what they are now seeking compensation for, in pursuit of a resolution to their motions.

### 2. Plaintiffs Prevailed on Their Motion for Anticipatory Breach

In their opposition to the Department's first Rule 60(b) motion, Plaintiffs moved to enforce the Settlement based on an anticipatory claim of breach of Paragraph IV.D.2. ECF No. 500 at 20. Plaintiffs explained that, because the Department admitted that it would not render decisions to a majority of Post-Class Applicants by January 28, 2026, "[i]t is clear from the Department's motion that a material breach of [the adjudication deadline] will occur on January 29, 2026," and foreseeable that a material breach of the notice deadline would occur on March 29, 2026. *See id.* At the close of the December 11, 2025, hearing, this Court granted Plaintiffs' motion. Tr. of Dec. 11, 2025, Hearing at 82:11–13 (Court: "And the request to enforce is granted, subject to the caveat that I've given about the limited relief that I would give to the Government."). The Department's contention to the contrary is simply unsupported by the record. Plaintiffs' opposition to Defendants' second Rule 60(b) motion was then an effort to preserve Plaintiffs' success in the Court's December 2025 ruling.

Similarly, the Department's claim that "no provision authorizes fee recovery if Plaintiffs succeed in bringing an anticipatory breach claim under ¶ V.D.5," Opp. 18, depends on a deliberate misreading of the Settlement. Paragraph V.D.5 enables Plaintiffs to "raise a claim of material breach of Paragraph IV with the Court prior to the expiration of the timelines provided in that Paragraph." A claim brought pursuant to this paragraph is thus, by its terms, an anticipatory Paragraph V.B.1 claim. And because it is a Paragraph V.B.1 claim, "Defendants [are] liable for Plaintiffs' reasonable attorneys' fees and costs incurred in bringing" it.[1]

---

[1] Had the Department followed the Settlement's procedures under Paragraph V.D.5, then this order of operations might have been clearer to them. Instead, the Department ignored its obligations and brought multiple Rule 60(b) motions. This choice on the Department's part is not determinative of whether Plaintiffs "prevailed" on their motion for anticipatory breach.

**B.** **The Department Misrepresents the Post-Judgment Proceedings**

The Department suggests that any steps it took to implement the Settlement since September 2024 were, essentially, acts of voluntary compliance. Opp. 8–9, 16. They were not. The premise that Plaintiffs' first motion for breach was "resolved in April 2024" (Opp. 6) and the second motion for breach was "resolved on September 26, 2024" (Opp. 7) is flatly contradicted by the record. If that were true, the Court certainly would not have held regular oversight hearings and required the parties to meet regularly in person for nearly two years (and counting) to cure those breaches. And if those oversight mechanisms had not been in place, Plaintiffs could and would have brought further motions for breach, because the Department continued to fail to deliver timely Settlement relief (as further detailed *infra*). The Court, quite reasonably, ordered ongoing enforcement proceedings following Plaintiffs' two motions instead of encouraging the less effective, less efficient option of *seriatim* motion practice. The Court's orders certainly did not suggest that it considered the Department's multiple breaches to be resolved, or that Plaintiffs' counsel should not be entitled to fees associated with their work to resolve these breaches.

These breaches were not one-offs. The Department's repeated assertion that it was in "substantial compliance" with the Settlement from September 25, 2024, onwards, Opp. 8–9, is unavailing, because its ongoing breaches were not *de minimis*. *See Rouser v. White*, 825 F.3d 1076, 1082 (9th Cir. 2016) ("[A] party is deemed to have substantially complied with an obligation only where any deviation is unintentional and so minor or trivial as not substantially to defeat the object which the parties intend to accomplish," and even "taking significant steps toward compliance comes nowhere near satisfying this exacting standard" (cleaned up)). Indeed, Judge Alsup bristled at the Department's characterization of its compliance with the Settlement's requirements as "substantial." Tr. of Sept. 26, 2024, Hearing at 38:21-22 ("But you used those weasel words: 'substantial, entail.'"). Even today, the Department admits that there are at least 1,399 Class Members who have not received Full Settlement Relief despite their relief deadlines having passed—and that is *in addition to* the over 8,000 complaints pending today with the Ombudsman's office. *See* Exhibit 1, Declaration of Nicole Camargo Almeida ¶¶ 24, 34; Settlement ¶ IV.A.1 (Department must "effectuate Full Settlement Relief for **each and every Class Member**" who

attended an Exhibit C school within one year of the Effective Date (emphasis added)); *id.* ¶ IV.C.9 (Department must "effectuate relief for ***any Class Member*** entitled to settlement relief pursuant" to the Decision Group process no later than one year after the date of the approval notice (emphasis added)); *id.* ¶ V.B.2 ("Plaintiffs may bring a claim alleging that Defendants have materially breached Paragraph IV.A.1 [and/or] IV.C.9 . . . of the Agreement by failing to effectuate relief within the prescribed time periods ***for any individual*** who is entitled to receive relief pursuant those Paragraphs" (emphasis added)).[2] And even this level of compliance, which falls short of the Ninth Circuit's definition of "substantial," *see Rouser*, 825 F.3d at 1082, was only achieved through a years-long enforcement and monitoring effort by Plaintiffs' counsel pursuant to the Court's orders on Plaintiffs' Motions to Enforce.[3]

At 60 meetings with the FSA Ombudsman's office, Plaintiffs' counsel has raised thousands of complaints from Class Members who did not receive the Full Settlement Relief they were due and worked with the Ombudsman's office to resolve them. *See* Declaration of Rebecca Ellis, ECF No. 535-1 ¶¶ 15, 18; Camargo Almeida Decl. ¶¶ 12, 15–16. While the Department cites five instances in which a complaint allegedly led to a determination that Settlement relief was already

---

[2] The Department's repeated references to "absent" class members (*e.g.*, Opp. 1, 23) are both legally irrelevant and factually wrong. As to the former, the Settlement makes no distinction between the named Plaintiffs and any other Class Member. And as to the latter, a Class Member is not "absent" when they have individually reached out and are personally known to the Department and Plaintiffs' counsel as a person who has not received the relief mandated by the Settlement.

[3] To the extent Plaintiffs have, in some status conferences and status reports, acceded to the Department's representations of "substantial compliance," *see, e.g.*, Tr. of Sept. 24, 2024 Hearing at 6:10–11, the context makes clear that those representations were meant to indicate progress, not the final word on the Department's breaches, *see id.* at 6:14–8:6 (Plaintiffs' counsel discussing continued issues with delivery of relief and explaining that "it seems that progress is being made, but those [issues] are still outstanding"). As the Ninth Circuit explained in *Rouser*, a plaintiff can maintain a claim for breach of an agreement even if the defendant has, at times, substantially complied with some, but not all, of its obligations. *See* 825 F.3d at 1082–83 (questioning "how defendants could possibly show substantial compliance with all key obligations in a consent decree by only complying with some of those obligations"). Likewise here, Plaintiffs' intermittent agreement that the Department was in substantial compliance with some Settlement obligations was not an agreement that there were no live issues for enforcement.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR COUNSEL FEES AND COSTS
Case No: 19-cv-03674-HSG

5

complete,[4] *see* Decl. of Christian Odom, ECF No. 540-3 ¶ 13, the only way to find out whether a Class Member did or did not receive their Settlement relief *is to investigate the complaint*. Before Plaintiffs successfully moved to enforce the Settlement, these complaints simply were not being addressed. *See* Camargo Almeida Decl. ¶¶ 17, 19.

There are currently 8,384 pending *Sweet* complaints with the Ombudsman's office—of which over 6,000 have been pending for more than a year. *Id.* ¶ 24. As of the date of this filing, Plaintiffs' counsel are tracking over 350 open cases of missing relief that they specifically raised for Ombuds resolution. *See* Camargo Almeida Decl. ¶¶ 25–28; Tr. of Mar. 13, 2025, Hearing at 7:9–15 ("[W]e've been talking for months now about how to refund amounts that were taken from people's taxes through the Treasury Department -- the Treasury Offset Program. We've been speaking with a representative from the General Counsel's Office at Ed about how to resolve this tax offset refund issue.").

**C.    This Court Has Jurisdiction Over Plaintiffs' Motion for Counsel Fees**

**1.    No Statutory Waiver Is Necessary When the Government Has Agreed by Contract to Pay Fees**

The Department's argument that Plaintiffs must identify a statutory source of authority for their fee request is, frankly, bizarre. The Department itself acknowledges that "Plaintiffs' claim to fee and expense recovery are [sic] plainly contractually—rather than statutorily or constitutionally—based." Opp. 12. Yet the cases cited by the Department concern the assignment of fees and costs *in the absence* of a signed agreement between the parties,[5] and thus are plainly

---

[4] In one of the cited cases, the borrower apparently never received complete relief—he did not receive his refund check, which the Ombudsman blames on the Class Member traveling too often. Odom Decl. ¶ 13(a).

[5] Many of the Department's citations are to cases that do not concern counsel fees at all, but are instead generic references to sovereign immunity principles. *See, e.g.*, *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012); *United States v. U.S. Fidelity & Guar. Co.*, 309 U.S. 506, 513 (1940); *Munro v. United States*, 303 U.S. 36, 41 (1938). Moreover, the Department fails to note that both *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 243, 270 (1975), and *NAACP v. Civiletti*, 609 F.2d 514 (D.C. Cir. 1979) (both cited at Opp. 11), were superseded by statute. *See Lackey v. Stinnie*, 604 U.S. 192, 199 (2025) (*Alyeska Pipeline* superseded by Civil

inapplicable here. *See, e.g.*, *U.S. v. Chemical Found.*, 272 U.S. 1, 20–21 (1926) (following judgment for defendants, no authorization in statute to charge government plaintiff for costs of transcripts); *Anderson v. United States*, 127 F.3d 1190, 1191–92 (9th Cir. 1997) (following judgment for plaintiffs, no statutory authorization for award of attorneys' fees under the Federal Tort Claims Act); *Nibali v. United States*, 225 Ct. Cl. 8, 9–10 (1980) (same, Civil Service Reform Act). The need for a statutory hook likewise may apply in cases where a settlement agreement is silent about counsel fees for breach claims. *See, e.g.*, *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 969 (9th Cir. 2014) (plaintiffs' counsel sought fees for settlement enforcement work not based on a provision of the settlement, but on the basis of plaintiff being the "prevailing party" under the Americans with Disabilities Act and the Individuals with Disabilities Education Act).[6]

Here, though, the Settlement is unequivocal: "Should Plaintiffs prevail on" one of the specified claims for breach of the Settlement, the Department "shall also be liable for Plaintiffs' reasonable attorneys' fees and costs incurred in bringing the claim." Settlement ¶¶ V.B.1.i, V.B.2.i, V.B.3. The Department does not point to a single case in which a court held that such a settlement provision was invalid, and Plaintiffs are aware of none. In November 2024, the Department paid attorneys' fees and costs to Plaintiffs' counsel under these very provisions, with no question as to their legitimacy. *See* ECF No. 445.

### 2. The Tucker Act Does Not Apply Here

The fact that Plaintiffs' request for fees is based on the language of the Settlement does not, however, mean that this request must be lodged in the Court of Federal Claims. "The contract liability which is enforceable under the Tucker Act . . . does not extend to every agreement,

Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988(b)); *Lauritzen v. Lehman*, 736 F.2d 550, 554 n.4 (9th Cir. 1984) (*Civiletti* superseded by Equal Access to Justice Act, 28 U.S.C. § 2412(b)).

[6] In a footnote, the Department tortures *K.C.* until it is unrecognizable. *See* Opp. 13 n.9. In *K.C.*, the Ninth Circuit observed that the plaintiffs were "*not* seeking to implement any aspect" of their settlement agreement and were *not* "contending . . . that some provision of their settlement agreement . . . obligates [d]efendants to pay attorneys' fees." 762 F.3d at 969 (cleaned up) (emphasis added). This posture is what made it necessary for the court to consider statutory sources of authority for a fee award. *See id.* The Department twists this language to say the opposite of what it means.

understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds." *Kania v. United States*, 650 F.2d 264, 268 (Fed. Cir. 1981). Rather, "Congress undoubtedly had in mind as the principal class of contract case" justiciable under the Tucker Act those "where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." *Id.* at 268. The Settlement Agreement in this case is not, of course, a contract for the purchase or sale of goods or services such as private parties might make.[7] It is a litigation settlement resolving claims of the government's violation, in its sovereign capacity, of the Administrative Procedure Act (APA) and the Fifth Amendment's Due Process Clause. *See* Supplemental Complaint ¶¶ 435–455, ECF No. 198. Contrary to the Department's suggestion, Opp. 13 n.8, a counsel fees request in connection with APA and constitutional claims is not the same as a breach of contract claim against the government for money damages. *See White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 451–52 (1982) (attorneys' fees "are not compensation for the injury giving rise to an action").

There is no dispute here that this Court retained jurisdiction over Plaintiffs' claims for breach of the Settlement.[8] *See* Settlement Agreement ¶ V.A; Final Judgment, ECF No. 346 ("The

---

[7] This immediately distinguishes *Sweet* from *North Side Lumber Co. v. Block*, 753 F.2d 1482 (9th Cir. 1985) (contracts for sale of lumber) (cited at Opp. 12). The Department's other cases are likewise distinguishable, for a variety of reasons. In *Pacito v. Trump*, 2026 WL 620449 (9th Cir. Mar. 5, 2026), the court determined that the cooperative agreements at issue were not "contracts" for purposes of the Tucker Act. *See id.* at *17–19. The *Megapulse* case on which *Pacito* relies, in turn, set out a test to determine whether an APA case is a "'disguised' breach-of-contract claim." *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (quoting *Megapulse Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). The Department does not, nor can it, argue that Plaintiffs' underlying APA claims here were contractual in nature. Finally, in *Department of Education v. California*, 604 U.S. 650, 651 (2025) (per curiam), and *National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658 (mem.) (cited at Opp. 13–14)—both non-precedential "shadow docket" decisions—the contractual obligations at issue were grant agreements that the government had summarily terminated, not, as the Department misleadingly suggests, anything "'along the lines of what' Plaintiffs seek here," Opp. 12–13 (purporting to quote *California*, 604 U.S. at 651).

[8] The Department itself has so argued in its recent Rule 60(b) motions and its pending appeal. *See* ECF No. 492 at 1 ("The Court approved [the Settlement] agreement . . . and retained jurisdiction

Court should retain jurisdiction to monitor and oversee implementation of the settlement as set forth in the settlement agreement."). The Ninth Circuit has specifically found that, in circumstances such as these, the district court retains ancillary jurisdiction over a claim for attorneys' fees incurred in enforcing a settlement. *K.C.*, 762 F.3d at 966. In so ruling, the court noted that such jurisdiction "rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety. Incident to the disposition of the principal issues before it, a court may decide collateral matters necessary to render complete justice." *Id.* at 967 (quoting *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982)). "There is no debate," the Ninth Circuit held, "that a federal court properly may exercise ancillary jurisdiction over attorney fee disputes collateral to the underlying litigation." *Id.* at 968 (quotation omitted). Indeed, "a district court's ancillary jurisdiction over an attorney's fees dispute is inherent and broader than its ancillary jurisdiction to enforce a settlement agreement." *Id.*

The Department comes close to recognizing that *K.C.* forecloses its jurisdictional argument, but it responds by making the circular assertion that "the Tucker Act has divested this Court of jurisdiction—including ancillary jurisdiction—to adjudicate any contract-based claims that Plaintiffs are entitled to recover" attorneys' fees. Opp. 13. For that to be true, the Department would have to show that the Tucker Act *actually does* deprive the federal district courts of jurisdiction to consider fee applications in cases over which they otherwise undoubtedly have subject matter jurisdiction. None of its cited cases do so. To the contrary: the primary case the Department cites for this argument, *Tritz v. U.S. Postal Service*, 721 F.3d 1133 (9th Cir. 2013), recognized that district courts and the Court of Federal Claims share concurrent jurisdiction over claims that the government has breached a litigation settlement (at least, where those claims demand money damages). *See id.* at 1137–39. As the Supreme Court has explained:

> It is often assumed that the Claims Court has exclusive jurisdiction of Tucker Act claims for more than $10,000. . . .That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the Claims Court. Rather, that

---

to oversee the settlement's implementation."); *id.* at 9–10; ECF No. 514 at 12–13; Emergency Motion for Stay Pending Appeal at 11, *Sweet v. McMahon*, No. 26-1136 (9th Cir. Feb. 27, 2026).

court's jurisdiction is 'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court. If, however, § 702 of the APA is construed to authorize a district court to grant monetary relief—other than traditional "money damages"—as an incident to the complete relief that is appropriate in the review of agency action, the fact that the purely monetary aspects of the case could have been decided in the Claims Court is not a sufficient reason to bar that aspect of the relief available in a district court.

*Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988).

So too here. This Court has continuing jurisdiction over this APA case, and an award of attorneys' fees is incidental to the complete relief to the Class contemplated by the Settlement. In fact, the case for jurisdiction here is even stronger than in *K.C.*, because in that case the settlement agreement had provided that the district court would retain continuing jurisdiction for two and a half years, which time had passed when plaintiffs' counsel sought additional fees. *See* 762 F.3d at 965–66. Here, by contrast, the Court's continuing jurisdiction is not time-limited; it continues to this day. *See* Settlement Agreement ¶ V.A. The Department does not, because it cannot, provide any support for the proposition that this Court retains jurisdiction over every aspect of Section V of the Settlement *except* the provisions relating to attorneys' fees. This Circuit's case law holds the opposite. *See Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998) ("The context of the retention of jurisdiction, a provision for future enforcement of a settlement order, implies that the retention was meant to be exclusive."); *K.C.*, 762 F.3d at 970 (requiring a "separate 'attorneys' fees only' lawsuit" would "interfere with the district court's powers to render a judgment that resolves the entire case and to effectuate its judgment").

Shunting one aspect of the Settlement to the Court of Claims is, in fact, arguably forbidden by 28 U.S.C. § 1500, which provides that the Court of Claims "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." Accordingly, in the rare instances where the Court of Claims has taken jurisdiction of cases alleging a breach of a litigation settlement agreement, it has only done so in circumstances where the district court hosting the original litigation did *not* retain continuing jurisdiction over enforcement. *See, e.g.*, *Holmes v. United States*, 657 F.3d 1303, 1308, 1316 (Fed. Cir. 2011) (cited at Opp. 12) (plaintiff alleged breach of settlement agreement with the

Navy regarding alleged employment law violations; court held Tucker Act jurisdiction existed over government's objections, in part because district court's period of supervisory jurisdiction had expired); *Stovall v. United States*, 71 Fed. Cl. 696, 701 (2006) (Claims Court would not have jurisdiction over an alleged settlement breach in "any case in which another court has retained jurisdiction to supervise implementation of a settlement"); *Good v. United States*, 23 Cl. Ct. 744, 745–46 (1991) (Claims Court lacked jurisdiction over alleged settlement breach where "the present grievance grows out of the employing agency's failure to honor a commitment fashioned under the auspices of the [Merit Systems Protection] Board," and thus "the redress of this grievance must similarly be sought from that body").

**D.      The Department's Remaining Arguments Fail**

**1.      The Fees Motion Is Timely**

The Department argues that Plaintiffs' fee request is time-barred by Fed. R. Civ. P. 54(d)(2), which requires a motion for counsel fees to be filed "no later than 14 days after the entry of judgment." Opp. 24. But that rule by its terms applies to final judgments; it does not govern fees for post-judgment proceedings, particularly where, as here, the parties signed a Settlement that specifically contemplated post-judgment enforcement fees. The Ninth Circuit's decision in *K.C.* establishes that a court can consider a post-judgment request for enforcement fees at any appropriate time "even after the underlying litigation has concluded"—there, plaintiffs' counsel moved for fees more than four years after the effective date of the settlement. 762 F.3d at 965–66, 968; *cf. White*, 455 U.S. at 453 (rejecting application of Fed. R. Civ. P. 59(e)'s 10-day time limitation to post-judgment motions for attorneys' fees, because forcing counsel to "enter[] fee motions in conjunction with nearly every interim ruling" in cases involving injunctive relief "would serve no useful purpose").

The Settlement Agreement here does not contain any time limitation on when Plaintiffs can seek fees under Sections V.B.1.i, V.B.2.i, or V.B.3. Moreover, the parties' course of performance has not indicated that they agreed to any such limitations. *See* ECF No. 445 at 3 ¶ 11 (agreement for payment of fees pursuant to Section V.B.2 covered "time spent . . . from September 2023 through September 26, 2024").

### 2.    Plaintiffs' Costs Are Compensable

Finally, the Department argues that the costs Plaintiffs' counsel included in their calculations are not compensable because they do not fit the narrow definition of "costs" in 28 U.S.C. §§ 1821 and 1920. Opp. 25. But the Settlement nowhere reflects an agreement among the parties to limit "costs" as used in Section V.B to that statutory definition. And once again, the parties' course of performance shows that they shared the opposite understanding: The November 2024 agreement compensating Plaintiffs' counsel for fees and costs pursuant to Section V.B.2 included compensation for "ground and air transportation, lodging, food, and other costs associated with attendance at court-ordered meetings in Washington, D.C., and at status conferences in San Francisco." ECF No. 445 at 4 ¶ 13. These are the same types of costs included in the current fee application. Additionally, for reasons explained in the Declaration accompanying Plaintiffs' motion (ECF 535-1 ¶¶ 58–69), Plaintiffs' counsel's costs for client management software are likewise inextricably tied to their Court-ordered Settlement enforcement work over the relevant time period.

* * *

Notably, the Department does not contest the reasonableness of PPSL's proposed hourly rates, nor does it lodge any serious challenge to the reasonableness of PPSL's hours. The Department states in a single sentence in a footnote that it believes "the claimed hours are unreasonable" but does not provide any reasoning nor any specific examples. Opp. 24 n.16. Thus, Plaintiffs respectfully submit that if the Court grants Plaintiffs' motion, it should grant the full amount of fees requested.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and order the Defendants to pay to PPSL the amount of $1,438,999.10 in attorneys' fees and $107,983.71 in costs.

Dated:  April 10, 2026                    Respectfully submitted,


                                          /s/ Rebecca C. Ellis_____
                                          EILEEN M. CONNOR (SBN 248856)
                                          econnor@ppsl.org
                                          REBECCA C. ELLIS (*pro hac vice*)
                                          rellis@ppsl.org
                                          REBECCA C. EISENBREY (*pro hac vice*)
                                          reisenbrey@ppsl.org
                                          NOAH ZINNER (SBN 247581)
                                          nzinner@ppsl.org
                                          PROJECT ON PREDATORY STUDENT
                                          LENDING, INC.
                                          769 Centre Street
                                          Jamaica Plain, MA 02130
                                          Tel.: (617) 617-390-2669
                                          Fax: (617) 781-218-9625

                                          *Attorneys for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR COUNSEL FEES AND COSTS
Case No: 19-cv-03674-HSG

13