**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

THERESA SWEET, *et al.*,

        *Plaintiffs*,

    v.

LINDA MCMAHON, in her official capacity
as Secretary of the United States Department
of Education, and

THE UNITED STATES DEPARTMENT OF
EDUCATION,

        *Defendants*.

Case No.: 19-cv-03674-HSG

**DECLARATION OF
NICOLE CAMARGO ALMEIDA, ESQ.,
IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR FEES AND COSTS**

I, Nicole Camargo Almeida, state as follows:

1.  I am submitting this declaration in relation to the above-captioned case.

2.  I am a staff attorney at the Project on Predatory Lending ("PPSL"), which represents Plaintiffs in this case. I am a member in good standing of the bar of the State of Illinois.

3.  The statements contained herein are true and accurate to the best of my knowledge. These statements are based on my personal observations and my review of the relevant records.

4.  I have been working at PPSL since December 2, 2024. I help monitor and implement Settlement relief to hundreds of thousands of class members in the above-captioned case. I have been part of the weekly meetings with the Ombudsman's Office since December 4, 2024.

**The Court's Order Granting Plaintiffs Access to Class Members' Records**

5.  At the hearing on Plaintiffs' Motion to Enforce the Settlement on April 24, 2024, Plaintiffs explained to the Court that class members had no way to verify their relief status because representatives of the Department were referring them to the servicers, and the servicers would then refer them back to the Department. Transcript of April 24, 2024, Hearing at 6:16–7:1. Furthermore, the Department's inaccurate or complete lack of reporting regarding *Sweet* relief

1

DECLARATION

obstructed the tracking and effectuation of relief and prevented all parties from certifying Settlement compliance. *See id*. at 10:5–12:6. Consequently, Plaintiffs' counsel were also unable to answer class members' questions because they did not have access to the relevant information. *See id*. at 8:23–9:5. The Court designated the then-FSA Ombudsman, Bonnie Latreille, to be the person to whom all class members' questions could be referred. *See* Minute Order, ECF No. 407.

6.    A month later, Plaintiffs' counsel reported to the Court that the Department continued to lack the necessary record-keeping to track *Sweet* relief. Transcript of May 23, 2024, Hearing at 7:2–15. At this point, there was no evidence that refund amounts were being calculated properly, applied properly, or sent out properly to class members. On the contrary, Plaintiffs' counsel learned that some class members' refunds were being improperly applied to the remaining loan balance, instead of being refunded to them via Treasury checks as required by the Settlement. *Id*. at 9:7–11:4. Plaintiffs also reported that in the two preceding weeks, the Omudsman's office had received 2,500 complaints from *Sweet* class members about missing relief, but only 74 class members had had their cases fully reviewed by the Ombudsman's office, and only eight had their cases resolved. *Id*. at 8:7–10. Meanwhile, Plaintiffs' counsel had no visibility into how the complaint process was operating. *Id*. at 8:19–22. It was in this context that Plaintiffs' counsel asked the Ombudsman's office to provide more information about *Sweet* complaints. *Id*. at 22:8–10. In response, the Court ruled that Plaintiffs' counsel had a right to inspect class members' records and were entitled to "look over the [Department's] shoulder" and work alongside the Department to ensure monitoring and implementation of the Settlement. *Id*. at 22:11–19; *see also* Minute Order, ECF No. 414 ("The Department of Education's Federal Student Aid ombudsman shall permit borrowers' counsel to access the ombudsman's office, to inspect records therein, and to otherwise look over the shoulder of the ombudsman to ensure accountability and to support efforts to enforce judgment promptly.").

**The Start of the Weekly Meetings and the Court's Order Continuing the Weekly Meetings**

7.    The Ombudsman's complaint process remained a topic that the parties discussed with the Court at subsequent hearings. *See, e.g.*, Transcript of June 13, 2024, Hearing at 18–23 (discussing the need for servicer cooperation with complaint process and for additional resources in

2

DECLARATION

Ombudsman's group to address refund calculations); Transcript of July 11, 2024, Hearing at 4:20–5:12 (reporting updates on intermediate loan relief and complaint process); Transcript of September 26, 2024, Hearing at 6:24–7:3, 41:3–7 (reporting on pending Ombudsman complaints regarding incomplete Exhibit C relief). These *Sweet* complaints have been and remain the subject of consistent Court oversight.

8.   At a hearing on November 13, 2024, Plaintiffs reported that only between 25 and 50 percent of complaints to the Ombudsman's office had been resolved to date. Transcript of Nov. 13, 2024, Hearing at 7:15–8:3. The Court once again found that Plaintiffs' counsel had a right to be substantially involved in the complaint resolution process, prioritize cases, and inspect the Department's work. *Id*. at 8:6–7; Minute Order, ECF No. 444 ("And parties are now considering the backlog of class memers' complaints on the 'sweet@ed.gov' email address. The Court pointed out there is no reason why class counsel cannot roll up sleeves alongside the government to resolve them.").

9.   Prior to this point, Plaintiffs' counsel and the Ombudsman's team had been meeting once a month for five to seven hours to work on *Sweet* complaints. The parties, along with the servicers, separately met biweekly for two to three hours to address systemic issues affecting the effectuation of Settlement relief. Given the increasing number of unresolved cases, and in direct response to the Court's Nov. 14, 2024, court order, Plaintiffs' counsel and the Ombudsman's office agreed to meet every Wednesday for two hours with the goal of resolving the backlog of *Sweet* cases.

10. In a hearing on March 13, 2025, the Court explicitly ordered the weekly Ombudsman meetings to continue. During this hearing, Plaintiffs' counsel voiced our concerns about the recent Reduction in Force that targeted several members of the Ombudsman's office working on *Sweet* complaints. See Transcript of March 13, 2025, Hearing at 5:11–7:8, 9:7–11. We were concerned specifically about the thousands of cases that would have to be reassigned with fewer staff and the loss of expertise. In and around March 2025, the Ombudsman's office went from 62 people to 25, and multiple teams within the office were dissolved entirely. *See* "Worker Voices: Rachel Gittleman, U.S. Department of Education Employee (on administrative leave pending Supreme

3

DECLARATION

Court decicion)," National Employment Law Project (June 13, 2025), https://www.nelp.org/story/rachel-gittleman-employee-at-the-u-s-department-of-education-on-admin-leave-pending-supreme-court-decision/.

11. The Department assured the Court that they were allowing Plaintiffs to have oversight of *Sweet* complaint cases, as previously ordered by the Court. Mar. 13 Tr. at 14:9–11. When the Court learned that the parties had agreed to meet every week, the Court ordered that those weekly meetings, as well as the monthly in-person meetings between the parties and the servicers, should continue. *Id.* at 26:25–27:8.

**The Parties' Court-Ordered Collaborative Effort Has Resulted in Substantial Effectuated Relief**

12. Plaintiffs' close involvement in the *Sweet* complaint process has led thousands of class members to receive the correct relief under the Settlement, which they would not have received if Plaintiffs' counsel were not actively overseeing the resolution of these complaints.

13. Early in the enforcement process, as a result of class members reaching out to independently verify their relief, Plaintiffs' counsel was able to identify thirteen borrowers whose refunds were improperly reallocated to their loan balance. Plaintiffs' counsel brought this to the Department's and the Court's attention, and as a result, the Department reversed its unauthorized reallocation policy and began issuing proper refunds to class members. *See* Transcript of May 23, 2024, Hearing at 19:19–20:3.

14. During the government shutdown in October and November 2025, Plaintiffs' counsel continued to work on resolving *Sweet* complaints, to the extent possible without the Ombudsman's office intervention, and sent critical cases directly to the servicers, so that class members would not have to wait until the government returned to work.

15. Through class members' initiative, Plaintiffs' counsel has been able to identify systemic issues to flag for resolution by the Ombudsman's office, such as FSA website technical issues, U.S. Postal Service issues involving the designated P.O. Box for borrower defense cases filed on paper, class members being incorrectly taken out of administrative forbearance status, incorrect

4

DECLARATION

loan dates listed on notices of relief, and misinformation being given by servicer and FSA chat and phone representatives.

16. Plaintiffs' counsel has also been an essential part of the *Sweet* complaints resolution process. In addition to tracking each individual case, we help investigate cases about lost borrower defense applications, misidentified borrower defense applications, how to deliver relief to class members residing outside the United States, incomplete discharges and incorrect refund amounts, incorrect credit reports, and ensuring *Sweet* relief for class members who received other types of relief first (e.g., Public Service Loan Forgiveness, Income-Driven Repayment, group discharge, etc.). We make every effort to individually respond to class members who email us, even if only to reiterate that their relief is complete and explain why they might not be receiving a refund, or to remind them that the deadline for their relief has not passed yet.

17. Each month between July 2024 and October 2024, and then each week starting in November 2024 (except during the October-November 2025 government shutdown), the Ombudsman's office has provided Plaintiffs' counsel with reporting on the number of open *Sweet* complaints and the number of resolved complaints. The following table reflects data from the first report of each month.

| Plaintiff Report | Closed Cases | Total Cases | Cases Resolved (since last report) | Percent Resolved |
|---|---|---|---|---|
| 07/05/24 | 37 | 4,148 | n/a | <1% |
| 08/02/24 | 62 | 4,496 | 25 | 1.4% |
| 09/06/24 | 118 | 5,334 | 56 | 2.2% |
| 10/11/24 | 140 | 5,729 | 22 | 2.4% |
| 11/01/24 | 154 | 6,991 | 14 | 2.2% |
| 12/04/24 | 489 | 7,389 | 335 | 6.6% |
| 01/08/25 | 769 | 7,756 | 280 | 9.9% |
| 02/05/25 | 2,416 | 8,077 | 1,647 | 30% |
| 03/06/25 | 2,492 | 9,181 | 76 | 27% |

DECLARATION

| Plaintiff Report | Closed Cases | Total Cases | Cases Resolved (since last report) | Percent Resolved |
|---|---|---|---|---|
| 04/02/25 | 2,651 | 10,147 | 159 | 26% |
| 05/07/25 | 3,252 | 12,752 | 601 | 26% |
| 06/04/25 | 3,606 | 12,929 | 354 | 28% |
| 07/02/25 | 3,948 | 13,059 | 342 | 30% |
| 08/06/25 | 4,322 | 13,384 | 374 | 32% |
| 09/3/25 | 4,558 | 13,568 | 236 | 34% |
| 11/19/25[1] | 4,987 | 13,771 | 429 | 36% |
| 12/03/25 | 5,224 | 14,000 | 237 | 37% |
| 01/07/26 | 5,610 | 14,199 | 386 | 39% |
| 02/11/26 | 5,990 | 14,417 | 380 | 42% |
| 03/04/26 | 6,146 | 14,586 | 156 | 42% |
| 04/06/26 | 7,078 | 15,462 | 932 | 46% |

18. As the table above shows, the court-ordered meetings between Plaintiffs' counsel and the Ombudsman's office helped accelerate the resolution of *Sweet* cases through the in-depth tracking of each case and communication with class members and servicers.

19. The pace of resolved cases increased after the weekly meetings started in November 2024. The number of resolved cases each month jumped from an average of 30 cases resolved per month to an average of 585 resolved cases per month in the subsequent four months.

20. The percentage of closed cases declined in and immediately following March 2025, when approximately half of the Ombudsman's Office staff was terminated or pressured into resignation or retirement.

21. Nonetheless, through the continued efforts of Plaintiffs' counsel and the remaining staff, the number of resolutions increased in the later months of 2025 and into 2026.

---

[1] The Department did not send any reports in October 2025 due to the government shutdown.

6

DECLARATION

22. Without these ongoing enforcement efforts, thousands of class members would not have their relief yet. Through our (until recently) weekly check-ins with the Ombudsman's office, we are able to follow up on years-old cases and complex cases that require a lot of internal discussion and investigation for the Department to resolve.

23. Despite this progress, though, there are still many thousands of unresolved complaints.

24. As of the last report Plaintiffs' counsel received from the Department on April 6, 2026, there remain 8,384 pending cases (with more always being added). Of those, 7,905 cases have been pending for over six months, and 6,752 cases have been pending for over a year. Eleven cases have been open since April 2024.

25. As of this date, Plaintiffs' counsel are tracking 138 open cases that we specifically raised with the Ombudsman's office that are awaiting action from servicers. The oldest of these cases was brought to the Ombudsman's team's attention by Plaintiffs' counsel in February 2025, more than a year ago. Another nine have been pending since at least June 2025.

26. As of this date, Plaintiffs' counsel are tracking 101 open cases that we specifically raised with the Ombudsman's office that are awaiting action from Ombuds or another unit within the Department of Education. The three oldest of these have been awaiting action since July 2024.

27. As of this date, Plaintiffs' counsel are tracking 71 open cases that we specifically raised with the Ombudsman's office where class members have not been refunded for garnishments from their tax refunds to pay their *Sweet*-related loans. The Department has acknowledged that these class members are owed refunds but has not delivered them, despite Plaintiffs' counsel raising this issue at least once a month since fall 2024.

28. As of this date, Plaintiffs' counsel are tracking 51 open cases that we specifically raised with the Ombudsman's office where the resolution of the case reportedly requires further guidance from the Department's Office of General Counsel. Forty-two of these cases have been pending since at least May 2025.

29. The above is not a complete accounting of all the open cases that Plaintiffs' counsel have raised to the Ombudsman's office and are currently tracking.

7

DECLARATION

30. In February 2026, the Department informed Plaintiffs' counsel that it would not attend the weekly Ombuds meetings anymore, but would instead only participate biweekly.

31. Plaintiffs' counsel reminded the Department that the weekly meetings were a matter of Court order. *See* Transcript of March 13, 2025, Hearing at 26:25–27:8.[2] But the Department has nonetheless refused to attend four weekly meetings as of this date, and we anticipate they will refuse to attend another in the coming week.

**Other Settlement Completion Data**

32. At the parties' monthly in-person Settlement implementation meetings, the Department typically provides Plaintiffs' counsel with data showing how many people in each Settlement group have not received their discharges and refunds.

33. These numbers are separate from the number of Ombudsman complaints—they represent people who are known to be missing relief according to the Department's own data, rather than people who have self-reported problems with their relief.

34. As of February 26, 2026, the Department reported that the following numbers of Class Members had not yet received Full Settlement Relief: 439 people in the Automatic Relief Group; 409 people in Decision Group 1; 203 people in Decision Group 2; 155 people in Decision Group 3; and 193 people in Decision Group 4; for a total of 1,399 Class Members.[3]

---

[2] "MR. TAKEMOTO [Department of Justice]: Your Honor had ordered that plaintiffs be able to look over the shoulder of the Ombuds Office.
THE COURT: Yeah.
MR. TAKEMOTO: And we have informally scheduled meetings to that effect. And we've increased the frequency -- I forget when -- but it was some time ago to weekly meetings. And we've given plaintiffs' counsel access to –
THE COURT: Okay. I want that to continue. And I want your monthly meetings to continue."

[3] The relief deadline has not yet passed for Decision Group 5.

8

DECLARATION

I swear under penalty of perjury that the foregoing is true and correct.

Executed on:   April 10, 2026

COOK COUNTY, ILLINOIS

*Nicole Camargo Almeida*

NICOLE CAMARGO ALMEIDA

9

DECLARATION