EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS (*pro hac vice*)
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
NOAH ZINNER (SBN 247581)
nzinner@ppsl.org
PROJECT ON PREDATORY STUDENT
LENDING
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
Tel.: (617) 390-2669
Fax: (781) 218-9625

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>   *Plaintiffs*,<br><br>   v.<br><br>LINDA MCMAHON, in her official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>   *Defendants*. | Case No. 19-cv-03674-HSG<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR COUNSEL FEES AND COSTS** |

Plaintiffs submit this brief in response to the Court's order, ECF No. 545, at the May 7, 2026, hearing on Plaintiffs' motion for counsel fees, ECF No. 535 (the "Fee Motion"). Plaintiffs maintain and do not waive their contention, set forth in prior briefing on the Fee Motion, that the instant request for fees is authorized by the Settlement Agreement and is consistent with the parties' prior dealings and the Court's prior orders concerning post-Settlement fees.[1]

The Equal Access to Justice Act (EAJA), codified at 28 U.S.C. § 2412, merely reinforces this Court's authority to award Plaintiffs attorneys' fees, whether by agreement or otherwise, as it has done twice already in this litigation.[2] Subsection (b) of EAJA, 28 U.S.C. § 2412(b), provides this Court with authority to "award reasonable fees and expenses of attorneys" under specific conditions, all of which are met here. *First*, Plaintiffs were the "prevailing party in [a] civil action brought . . . against . . . any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action." *Id.*; *see also* Settlement ¶ IV.B ("Defendants agree that Plaintiffs are the prevailing party in this action for purposes of a fee petition under the Equal Access to Justice Act."). The Department concedes that EAJA authorizes this Court to exercise jurisdiction over this Fee Motion. *See* Tr. of May 7, 2026, Hearing, at 9:21–10:2 ("[I]f plaintiffs had come forth in their motion and they said, we're invoking this [Settlement] provision, but we're also pairing it with the Equal Access to Justice Act . . . then we would agree

---

[1] In 2024, the Court granted Plaintiffs permission to file an application for counsel fees and costs. ECF No. 434 at 2. After the parties reached an agreement on fees, *see* ECF No. 541-2, Plaintiffs filed a notice with the Court in lieu of a fee petition; that notice specified that "Plaintiffs reserve their right to seek the Court's permission to apply for a further award of fees, costs, and expenses in the future, based on work performed and costs incurred after September 26, 2024, as a result of Plaintiffs' continued efforts to enforce the Settlement Agreement." ECF No. 442 at 2. After the next status conference, the Court ordered Plaintiffs to file a motion for fees, stating that the class representatives "must approve the proposal, as must the Court." ECF No. 444. Plaintiffs submitted an unopposed motion for approval of the agreement, ECF No. 445, which the Court granted, ECF No. 451.

[2] The Court ordered Plaintiffs to submit a petition pursuant to 28 U.S.C. § 2412(d) for attorneys' fees incurred prior to the entry of the Settlement, as contemplated by Part VI of that agreement, if the parties could not reach an agreement on fees. ECF No. 388. Because the parties did reach a fee agreement, no petition was entered on the docket. *See* ECF No. 391.

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR COUNSEL FEES AND COSTS
Case No: 19-cv-03674-HSG

1

that . . . there would have been a waiver of sovereign immunity permitting the Court to look into this.").

*Second*, Plaintiffs seek fees from Defendants "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). Two common-law exceptions to the "American Rule," which generally prohibits fee shifting, are applicable and thus bring the Fee Motion within the scope of awards authorized by EAJA. First, Defendants agreed in contract to be "liable" for "reasonable" fees in the event of breach. *See* Settlement ¶¶ V.B.1.i, V.B.2.i. Common law recognized that the "American Rule" could be displaced by "statutory authorization ***or contractual agreement to the contrary***." *Peraton Gov't Commc'ns, Inc. v. Hawaii Pac. Teleport LP*, No. 21-15395, 2022 WL 3543342, at *4 (9th Cir. Aug. 18, 2022) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 263–64 (1975)); *see also Verrilli v. City of Concord*, 548 F.2d 262, 266 (9th Cir. 1977) ("Of course, these [further] exceptions [to the American Rule] apply in the absence of a contractual agreement between the parties providing for attorneys' fees."). Prior to EAJA's 1980 enactment, Section 2412 expressly permitted a court to award a prevailing party its costs, but not attorneys' fees, in an action against the government. *See, e.g.*, *NAACP v. Civiletti*, 609 F.2d 514, 516 & n.3 (D.C. Cir. 1979). However, even before EAJA, the government could always agree to pay attorneys' fees as part and parcel of the Attorney General's authority to conduct litigation, as set forth in 28 U.S.C. Sections 516 and 519. EAJA's enactment merely affirms the authority of any court with jurisdiction over the underlying action to enforce such settlement provisions.

Additionally, fees are authorized here by the common-law exception to the "American Rule" applicable "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). To find bad faith, the Court "may examine the government's actions that precipitated the litigation, as well as the litigation itself." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1180–81 (9th Cir. 2019) (collecting cases). "[B]ad faith may be demonstrated by showing that a defendant's obstinacy in granting a

plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation." *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983) (cleaned up). "[I]t is unnecessary to find that every aspect of a case is litigated by a party in bad faith in order to find bad faith by that party." *Rodriguez v. United States*, 542 F.3d 704, 712 (9th Cir. 2008).

This case has been colored by the Department's obstinacy and bad faith since before its inception. By the time the complaint was lodged, "borrowers had filed 272,721 [borrower defense] applications and 210,168 languished. *For eighteen months*, from June 2018 until December 2019 — *well into this suit* — the Secretary issued no decisions at all." ECF No. 146, Order Denying Class Settlement, to Resume Discovery, and to Show Cause ("November 2020 Order"), at 4. Then, in the spring and summer of 2020—after the parties had entered into a settlement agreement—the Department suddenly ramped up a practice of sending borrowers "alarmingly-curt denial notices." *See id.* at 5. The November 2020 Order found that the Department had been operating in bad faith and ordered discovery: "Pretext is the paradigm of agency bad faith. . . . [W]e are faced with a strong showing of agency pretext and the class has been prejudiced by delay enough. We need to know what is really going on." *Id.* at 12, 15.

After the current Settlement was approved in 2022, the Department continued to obfuscate what was "really going on." In Plaintiffs' first motion to enforce the Settlement, they detailed the inaccurate reporting that resulted in over 50,000 automatic relief group ("ARG") members not receiving Full Settlement Relief by the January 28, 2024, deadline. *See* ECF No. 397, Motion to Enforce Settlement Agreement ("First Enforcement Motion"), at 3–10. For example, although the Department had reported that 95% of the ARG had received Full Settlement Relief, in fact "it could only confirm that 69% of [ARG] members had received their discharges by February 15, 2024." *Id.* at 8. At the related hearing, the Court called out the Department's bad-faith conduct: "I feel like I got bamboozled on your settlement by you sneaking in those things that allow [you] to . . . get away with murder on the implementation. . . . And now you're saying, "Oh, you can't —

you know, we got caught but, I'm sorry, you can't do anything about it." Tr. of Apr. 24, 2024, Hearing at 22:22–24, 23:1–3. Similarly, at the hearing on Plaintiffs' second motion to enforce the Settlement,[3] the Court rejected the Department's attempt to limit the application of the "terminal consolidation method" to the ARG, observing the vexatiousness of the Department's position:

> [W]e have the Department, who came in some time ago — two years ago — and gave me deadlines that they promised to meet and did not. Promised to meet and did not. And it was almost scandalous how bad and how far behind you got. And, meanwhile, class members are desperate to know the answer. So you came up with a discharge procedure. It may not be the most economical for the government, but it worked. And it's in place. It has the advantage of being in place.

Tr. of Sept. 26, 2024, Hearing, at 43:4–11. Once again, the Court imposed oversight measures to cure these breaches and prevent future harm from the Department's delays. When, in November 2024, the Department filed a motion asking to stop using the terminal consolidation method for effectuating Settlement relief going forward, *see generally* ECF No. 443, the Court agreed with Plaintiffs that the Department proffered an inadequate "plan to get a plan," not a workable method for remedying its breaches, Tr. of Dec. 12, 2024, Hearing at 6:21–24, and pointed to "the record in this case of every deadline being blown. . . . [Y]ou don't have a good record," *id.* at 26:16–18.

The bad faith culminated in the two unsuccessful Rule 60(b) motions filed by the Department in November 2025 and January 2026. As detailed in Plaintiffs' briefing on those motions and the Fee Motion, throughout 2025 the Department repeatedly informed Plaintiffs and this Court that it understood its obligations under the Settlement and was committed to following the parties' agreement with respect to the Post-Class. *See* Order Denying Defendants' Motion for Relief Under Fed. R. Civ. P. 60(b) at 2–3, ECF No. 529. At the December 11, 2025, hearing on the Department's first Rule 60(b) motion, the Court noted the Department's lack of candor and delay: "[I]f that was really true, the Department of Education should have come to me a long time ago and raised this problem instead of telling me it's all hunky-dory. So . . . I don't accept that rationale." Tr. of Dec. 11, 2025, Hearing at 78:3–6. At the close of the hearing, the Court declined

---

[3] The parties presented the second enforcement motion at the previously scheduled September 26, 2024, hearing without formal briefing. *See* Tr. of Sept. 26, 2024, Hearing at 9:14–20.

to grant Plaintiffs' motion for further discovery, but left the question open and ordered the preservation of all relevant records—suggesting that a finding of bad faith could be on the horizon. *Id.* at 81:10–12; *see also Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) ("[W]e have recognized a narrow exception to the general rule against inquiring into the mental processes of administrative decisionmakers. On a strong showing of bad faith or improper behavior, such an inquiry may be warranted and may justify extra-record discovery." (cleaned up)).

It is clear that the Department has been obstinate in granting Class Members their "clear legal rights" and has necessitated resort to lengthy and protracted legal battles. *Int'l Union of Petroleum & Indus. Workers*, 707 F.2d at 428. And it is clear that the type of post-settlement enforcement activities that form the basis for the Fee Motion are compensable under Section 2412(b). For instance, in *Lee v. Holder*, No. 04-cv-0449, 2009 WL 3064794 (W.D. Wash. Sept. 24, 2009), the district court awarded plaintiffs' counsel fees under Section 2412(b) and its "inherent powers" to compensate for class action settlement enforcement activity, *id.* at *1. The court observed that "Plaintiffs' counsel have spent almost three and a half years monitoring defendants' activities to ensure that the [government] accurately identified class members and processed their applications . . . as required by the Settlement Agreement between the parties," and found that "defendants acted in bad faith and repeatedly forced plaintiffs to seek judicial assistance and incur additional attorney's fees." *Id.* Here, too, Plaintiffs' counsel have spent years following a court-ordered oversight structure, *see* ECF No. 535 at 1–2 (detailing Plaintiffs' involvement in 96 court-ordered meetings and hearings since March 2024), to ensure that all eligible borrowers are accurately included in the class and receive the relief that was promised, *see* ECF No. 541-1, Decl. of Nicole Camargo Almeida, ¶¶ 15, 17. The Department's bad faith gave rise to this litigation, delayed settlement relief, and required the tireless work of Plaintiffs' counsel simply to get the Department to do what it had promised in the Settlement to do. This further justifies a fee award under Section 2412(b). *See Rodriguez*, 542 F.3d at 712.

Dated:  May 14, 2026                Respectfully submitted,

                                    */s/ Rebecca C. Eisenbrey*
                                    EILEEN M. CONNOR (SBN 248856)
                                    econnor@ppsl.org
                                    REBECCA C. ELLIS (*pro hac vice*)
                                    rellis@ppsl.org
                                    REBECCA C. EISENBREY (*pro hac vice*)
                                    reisenbrey@ppsl.org
                                    NOAH ZINNER (SBN 247581)
                                    nzinner@ppsl.org
                                    PROJECT ON PREDATORY STUDENT
                                    LENDING
                                    769 Centre Street
                                    Jamaica Plain, MA 02130
                                    Tel.: (617) 390-2669

                                    *Attorneys for Plaintiffs*