BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA OAKLAND DIVISION**

| | |
|---|---|
| THERESA SWEET, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LINDA MCMAHON, *in her official capacity as Secretary of the United States Department of Education*, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendants. | Case No. 4:19-cv-03674-HSG<br><br>**DEFENDANTS' ADMINISTRATIVE MOTION TO CHANGE TIME (CIV L.R. 6-3)**<br><br>The Honorable Haywood S. Gilliam, Jr. |

## INTRODUCTION

Plaintiffs have filed two very complex motions: one, ECF No. 553 contending that the U.S. Department of Education ("ED" or the "Department") is in contempt of three court orders (the "Contempt Motion") and the other, ECF No. 552, asserting several breaches by ED of the parties' 2022 Settlement Agreement (the "Breach Motion"). Given the complexity of these motions and materials filed in support, the 14-day schedule in the Civil Local Rules affords insufficient time for ED to adequately respond.

In their contempt motion, Plaintiffs raise multiple issues wrongly claiming that ED is in contempt of court orders. For example, Plaintiffs wrongly claim that ED has violated a court order because of a change in the cadence of meetings held between Plaintiffs' Counsel and ED's Office of the Ombudsman. That office is required by statute to address complaints against universities, lenders, guaranty agencies, loan servicers, and other participants in the federal student loan system. 20 U.S.C. § 1018 (f)(3)(A). Since 2024, the Ombudsman's office has been hosting regular meetings (virtually and in person) with Plaintiffs' counsel in which a large group of caseworkers present to Plaintiffs' counsel about how they resolved individualized inquires addressing claims to certain relief under the Settlement Agreement. In the Contempt Motion, Plaintiffs argue that the Ombudsman is required by court order to hold these meetings on a weekly basis, after the Ombudsman determined to alter their cadence to biweekly in early 2026. Plaintiffs also argue, incorrectly, that ED is required by order to provide them with certain data.

In their simultaneously filed Breach Motion, Plaintiffs wrongly claim that ED is in material breach of its obligations to the class based on at least five discrete alleged failures ultimately affecting a very small percentage of overall class members. To be clear, Plaintiffs do not argue that ED has collected on any debt discharged under the terms of the Agreement. ED has released in perpetuity its right to collect on any such debt. All parties agree that any collection action would be invalid. Rather, Plaintiffs' motion is directed at refunds and accounting.

Given the factual and legal complexity of these dual motions, Defendants respectfully request a forty-five day extension of time, up to and including October 16, 2026, to file their oppositions. *Cf*. Fed. R. Civ. P. 12(a)(2).

## ACTION REQUESTED

Under Local Rule 7-3(a), Defendants' deadline to file each opposition is September 1, 2026. Defendants respectfully request a forty-five day extension of time, up to and including October 16, 2026, to prepare an opposition to each of Plaintiffs' motions, ECF Nos. 552-53. As described in the attached declaration, Plaintiffs refused to stipulate to any briefing schedule. This is Defendants' first extension request. The modification would require a change in the hearing date noticed on Tuesday, but because final judgment was entered in 2022, no other case schedule exists so this extension would not interfere with any other deadlines.

## LEGAL STANDARD

The Court may extend a deadline "for good cause[.]" Fed. R. Civ. P. 6(b)(1)(A). This requires "some justification for issuance of the extension." 4B Wright & Miller, Fed. Prac. & Proc.§ 1165 (4th ed. Apr. 2026 Update). An extension request "normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." *Id.*; *see Alexander v. Saul*, 5 F.4th 139, 154 (2d Cir. 2021) ("'[G]ood cause' in th[is] context . . . [i]s a 'non-rigorous standard'" (citation omitted)).

## GOOD CAUSE SUPPORTING THE MOTION

Good cause supports this motion. *First*, Defendants need an adequate opportunity to review and address Plaintiffs' incredibly voluminous filings. Plaintiffs simultaneously filed two separate motions supported by a total of 464 pages of material. Counsel needs adequate time to review, analyze, verify, and address the factual and legal claims contained within the nearly five hundred pages of material.

*Second*, and relatedly, the amount of time requested is reasonable to address all facets of Plaintiffs' two motions. For example, as described in more detail in the attached declaration, Defendants must collect and submit evidence—including evidence related to accounts of nearly 1000 borrowers—showing that they have not materially breached the Agreement nor have they violated any Court order. Declaration of Liam C. Holland ("Holland Decl.") ¶ 4-8.

Preparing such evidence takes time and resources. *Id.* ¶ 5. Counsel must work closely with declarants and other ED staff to make sure that all testimony is accurate. Rushing that process leads to errors and mistakes. That coordination among Executive Branch officials is difficult and time consuming,

especially considering the time needed for review by superiors at both the Department of Justice ("DOJ") and ED before filing. Thus, as the Federal Rules of Procedure recognize, *e.g.,* Fed. R. Civ. P. 12(a)(2), Fed. R. App. P. 4(a)(1)(B), the Federal Government is routinely provided with more time than other litigants to address litigation demands, especially complex motions.

That process may be even more complicated in this case. Holland Decl. ¶¶ 6-8. Insofar as the Agreement contemplates that ED must show not only that it has taken the required steps to effectuate relief, but also that the loan servicers—who are third parties to this action that DOJ does not represent—have taken certain steps, Agreement ¶ IV.F.1, Defendants' burden may be greater. There are several different loan servicer entities with unique systems of records that ED has no or limited access to. They include Aidvantage/Maximus Federal Services, Edfinancial, MOHELA, Nelnet, and ECSI. As described in more detail in the attached declaration, undersigned counsel had two meetings with the servicers' outside counsel to address Plaintiffs' latest allegations. Holland Decl. ¶¶ 6-8. As a result, servicers have provided ED with documentary evidence that ED believes shows that Plaintiffs' breach claims should be denied. DOJ, however, has not yet had an opportunity to review this material. Defendants need additional time to determine whether evidence from third parties to this action is necessary or whether they may rely on ED civil servants to verify the accuracy of the materials provided by the servicers before submission to the Court in opposition to Plaintiffs' motions.

In addition, forcing a hasty response to Plaintiffs' motions will undoubtedly undermine the ED civil service's capacity to focus on the proper execution of their work, including supervising the very loan discharges and refunds that both parties want effectuated. As the Supreme Court has noted, litigation demands exact "heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed at the proper execution of the work of the Government." *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009).[1] ED staff should be permitted to work with DOJ counsel to prepare a response

[1] For this reason, Administrative Procedure Act cases typically involve judicial review of a discrete agency action based on its administrative record. Further inquiry "into the workings of another branch of Government" is a "'substantial intrusion'" that "should normally be avoided." *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019). If courts were instead empowered to compel requirements with broad mandates, "they would necessarily be empowered, as well, to work out whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance . . . , injecting the judge into day-to-day agency management."

over a reasonable period, accommodating their need to balance their everyday work with the need to address litigation demands. Holland Decl. ¶ 10.

On top the evidentiary challenges, counsel for Defendants needs sufficient time to address the complex legal issues raised by Plaintiffs' motions. Plaintiffs' motions are presented in a unique post-judgment posture, making the legal questions that must be addressed in an opposition considerably more difficult and the associated research even more time consuming than if these motions were filed in a more typical stage of civil litigation. Plaintiffs' allegations necessarily raise complex legal questions about enforcement of individualized disputes arising under a settlement agreement that resulted in the dismissal of a Rule 23(b)(2) class's claims. Plaintiffs' requested relief in the contempt motion raises complex issues of sovereign immunity and the Court's authority to issue mandatory injunctive orders against federal officials in their official capacity. Defendants respectfully submit that permitting them the time requested to prepare a response will aid the Court in deciding the issues involved under the correct legal principles.

*Third*, granting this motion would serve judicial economy. Defendants dispute that Plaintiffs raise the type of material breach of Defendants' obligations to the class that is enforceable under Section V of the Agreement. But, again, much of Plaintiffs' motion may already be moot. Granting Defendants the time they request will help them confirm that many of the accounting tasks about which Plaintiffs complain in their motion to enforce are already completed, reducing the scope of the issues for the Court to decide. *See Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 114 (D.C. Cir. 2016) (emphasizing that an agency's "ability to moot challenges" is "fundamental to judicial economy[.]").

*Fourth*, the time requested to respond would be consistent with the practice of courts addressing similar motions. For example, in *Samma v. Department of Defense*, the Government sought sixty days to respond to a post-judgment motion to enforce an injunction entered in a Rule 23(b)(1)-(2) class action. No. 1:20-cv-1104 (D.D.C. Aug. 23, 2021), ECF No. 74. Judge Friedman granted the opposed motion. Order, *Samma*, No. 20-cv-1104 (D.D.C. Aug. 26, 2021), ECF No. 76. Given that the motions in this case are even more complicated, this Court should permit at least as fair an opportunity to compile a response.

*Fifth*, granting the request would promote fundamental fairness. Plaintiffs have possessed a vastly

---

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004).

superior timeline to formulate and draft these motions. Plaintiffs operated under no deadline before filing these motions, which involve settlement deadlines that passed in 2024, 2025, and early 2026 and putative compliance issues that Plaintiffs have been aware of more than half a year. For example, counsel for Defendants has been respectfully requesting that Plaintiffs' counsel articulate for ED's understanding the legal basis underlying their demand for lists of personally identifiable information of individual class members since March 2026. Holland Decl. Ex. B. But the first time they did so was by letter months later wrongly accusing ED of disobeying a court order having nothing to do with the issue. *See* Holland Decl. ¶ 14.

Plaintiffs may argue against any extension because they provided prior informal notice of their claims. But informal correspondence does not compare to the notice of a motion's basis provided by actual filings in complex litigation. In any event, Plaintiffs submitted materials in support of their motion that they failed to provide Defendants in response to Defendants' Paragraph V.D.3.i.a. request. Holland Decl. ¶ 15. And even if Plaintiffs' complied with that request, Plaintiffs cannot overcome the multitude of good reasons that Defendants provide for the reasonable period requested to respond to Plaintiffs' motions.

*Finally*, Plaintiffs would not be prejudiced by granting this motion, while denying it would severely prejudice the preparation of a defense. Plaintiffs have had no opportunity to rely on the noticed hearing date given that it was noticed only on Tuesday. Insofar as Plaintiffs' interest in opposing a reasonable schedule is litigation advantage, that is not the type of formal legal prejudice that a court may consider in the balance. Nor do absent class members face substantial prejudice if Defendants are permitted sufficient time to file an opposition. Insofar as some class members have yet to obtain a refund, "the 'mere delay in collecting'" what could be quantified in "'damages does not constitute undue prejudice.'" *3rd Eye Surveillance, LLC v. United States*, 172 Fed. Cl. 498, 504 (Fed. Cl. 2024). And the dispute over discharge status is a dispute over accounting. There is no dispute that ED has released in perpetuity its right to collect on any debt that forms the basis of Plaintiffs' NSLDS-data based claims. Plaintiffs do not contend that ED or the loan servicers have sought to collect on any such debt.

**CONCLUSION**

For the foregoing reasons, the Court should grant this administrative motion to change time.

Dated: August 20, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*