BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA OAKLAND DIVISION**

| | |
|---|---|
| THERESA SWEET, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LINDA MCMAHON, *in her official capacity as Secretary of the United States Department of Education*, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendants. | Case No. 4:19-cv-03674-HSG<br><br>**OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE**<br><br>Date: November 5, 2026<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 4th Floor |

# TABLE OF CONTENTS


INTRODUCTION ....1

BACKGROUND ....2

LEGAL STANDARD....2

ARGUMENT....2

I. The Department and Relevant Loan Servicers Have Taken All Steps Necessary to Effectuate Relief for May Data Class Members. ....2

II. Because Defendants Are in Substantial Compliance with ¶¶ IV.A.1 and IV.C.9, Plaintiffs' Claims Are Subject to a ¶ V.C Complete Defense of Immateriality. ....3

A. Defendants Have Substantially Performed Their Obligations to the Class. ....3

B. The Settlement Agreement Provides for a Complete Defense of Immateriality, Requiring Denial of Plaintiffs' Motion. ....4

C. Background Principles Confirm that ¶ V.C Immateriality is Evaluated at the Class Level. ....5

D. Even if Materiality Were Measured at the Individual Level, Plaintiffs Fail to Show Materiality with Respect to Any Individual. ....7

III. Plaintiffs' Other Breach Claims Are Without Merit. ....7

A. Administrative Process-Related Claims ....7

1. An Application to the Ombudsman's Office under the So-Called Administrative Process is a New Application for a New Informal Agency Action; It is Not a Part of the Court-Ordered So-Called Terminal Loan Methodology. ....7

2. Even Under Plaintiffs' Theory, Plaintiffs Have Not Shown a Material Breach Under ¶ V.B.2 Because They Provide No Proof That Any Individuals Who Have Submitted Administrative Process Applications Are Entitled to Further Relief. ....12

B. Defendants Have Not Breached the Agreement Insofar as Refund Checks Were Allegedly Fraudulently Cashed by Third Parties. ....13

C. The Department is Not in Breach of the Agreement for Failing to Refund Amounts Seized Under the Treasury Offset Program or Through Wage Garnishment After a Borrower Defaulted on a Commercially-Held Private Loan. ....14

D. The Agreement Does Not Authorize Micromanagement of Internal Agency Affairs. ....18

IV. Plaintiffs Fail to Establish Entitlement to an Injunctive Order Compelling Defendants to Take Further Actions for Each Allegedly Affected Individual on a New Schedule. ....18

A. 20 U.S.C. § 1082(a)(2) Precludes the Court from Entering Coercive Orders Against the Secretary of Education. ....19

B. Plaintiffs Have Not Shown That a Legal Remedy for Damages is Inadequate. ....19

C. Plaintiffs Fail to Show a Clear and Plainly Prescribed Right to Relief. ....20

D. Plaintiffs are Asking for *Sweet* Class Member Applications to "Jump the Line." ....21

E. The Court Should Not Compel Further Action Based on Claims So Tardy that It has Materially Prejudiced any Capacity to Process Refunds. ....22

V. Plaintiffs' Requested Reporting Orders are Not Appropriate. ....22

VI. Any Order Compelling Defendants to Act on a New Schedule Should Describe in Detail the Specific Acts the Department is Required to Take. ....23

VII. Insofar as Plaintiffs Are Seeking Discovery, Such an Order Would Be Inappropriate. ....24

## TABLE OF AUTHORITIES

### CASES

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967) ........ 22

*Akootchook v. United States*,
271 F.3d 1160 (9th Cir. 2001) ........ 6

*Aleman Food Servs, Inc. v. United States*,
994 F.2d 819 (Fed. Cir. 1993) ........ 16

*Am. Ass'n of Cosmetology Schs. v. Riley*,
170 F.3d 1250 (9th Cir. 1999) ........ 19

*Am. Fuji Seal, Inc. v. United States*,
34 Fed. Cl. 274 (1995) ........ 14

*Am. Science & Eng'g Inc. v. Califano*,
571 F.2d 58 (1st Cir. 1978) ........ 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 2

*Arata v. Nu Skin Int'l, Inc.*,
96 F.3d 1265 (9th Cir. 1996) ........ 6

*Astakhov v. USCIS*,
698 F. Supp. 3d 135 (D.D.C. 2023) ........ 20

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
20 F.4th 1231 (9th Cir. 2021) ........ 16

*Braniff Airways, Inc. v. Civ. Aeronautics Bd.*,
379 F.2d 453 (D.C. Cir. 1967) ........ 25

*Brass Smith, LLC v. RPI Indus., Inc.*,
827 F. Supp. 2d 377 (D.N.J. 2011) ........ 6

*Calvillo Manriquez v. Devos*,
345 F. Supp. 3d 1077 (N.D. Cal. 2018) ........ 19

*Christopher Vill., L.P. v. United States*,
360 F.3d 1319 (Fed. Cir. 2004) ........ 20

*Church of the Celestial Heart v. Bondi*,
No. 1:23-cv-00545-SAB, 2025 WL 1635932 (E.D. Cal. June 9, 2025) ................ 6

*City of New York v. U.S. Dep't of Def.*,
913 F.3d 424 (4th Cir. 2019) ................ 25

*Coker v. Sullivan*,
902 F.3d 84 (D.C. Cir. 1990) ................ 24

*Coleman v. Casey Cnty. Bd. of Educ.*,
686 F.2d 428 (6th Cir. 1982) ................ 6

*Coleman v. Newsom*,
131 F.4th 948 (9th Cir. 2025) ................ 4

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ................ 18

*Cooper v. Fed. Rsrv. Bank of Richmond*,
467 U.S. 867 (1984) ................ 5

*Council of and for the Blind of Del. Cnty. Valley, Inc. v. Regan*,
709 F.2d 1521 (D.C. Cir. 1983) ................ 20

*DSI Corp. v. Sec'y of Hous. & Urb. Dev.*,
594 F.2d 177 (9th Cir. 1979) ................ 13

*Faiella v. Fed. Nat'l Mortg. Ass'n*,
928 F.3d 141 (1st Cir. 2019) ................ 24

*FDA v. Wages & White Lion Invs., LLC*,
604 U.S. 542 (2025) ................ 25

*Franklin-Mason v. Mabus*,
742 F.3d 1051 (D.C. Cir. 2014) ................ 20

*Gabster v. Mesaros*,
220 A.2d 639 (Pa. 1966) ................ 22

*Gaines v. Thompson*,
74 U.S. 347 (1868) ................ 19

*Garcia v. Google*,
786 F.3d 733 (9th Cir. 2015) ................ 18

*Garcia v. Vilsack*,
563 F.3d 519 (D.C. Cir. 2009) ................ 20

*Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*,
263 F.3d 296 (3d Cir. 2001) ... 4

*Haaland v. Brackeen*,
599 U.S 255 (2023) ... 24

*Hallet v. Morgan*,
296 F.3d 732 (9th Cir. 2002) ... 6

*Hartzell v. Marana Unified Sch. Dist.*,
130 F.4th 722 (9th Cir. 2025) ... 18

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*,
467 U.S. 51 (1984) ... 17, 18

*Hiser v. Franklin*,
94 F.3d 1287 (9th Cir. 1996) ... 6

*Holmes v. United States*,
657 F.3d 1303 (Fed. Cir. 2011) ... 19, 20

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*,
778 F.3d 593 (7th Cir. 2015) ... 12

*Houghton v. South*,
965 F.2d 1532 (9th Cir. 1992) ... 7, 12

*Illinois v. Ferriero*,
60 F.4th 704 (D.C. Cir. 2023) ... 19, 20, 21, 22

*In re Barr Lab'ys*,
930 F.2d 72 (D.C. Cir. 1991) ... 21

*In re Cheney*,
406 F.3d 723 (D.C. Cir. 2005) ... 19

*Keepseagle v. Perdue*,
856 F.3d 1039 (D.C. Cir. 2017) ... 25

*Keepseagle v. Vilsack*,
815 F.3d 28 (D.C. Cir. 2016) ... 23

*LaBatte v. United States*,
899 F.3d 1373 (Fed. Cir. 2018) ... 20

*Lane v. Pena*,
518 U.S. 187 (1996) ... 23

*Larson v. Domestic & Foreign Com. Corp.*,
337 U.S. 682 (1949) ..... 24

*Lujan v. Defs of Wildlife*,
504 U.S. 555 (1992) ..... 24

*Maldonado v. Higher Educ. Loan Auth. of the State of Mo.*,
No. 24-cv-07850-VC, 2026 WL 682207 (N.D. Cal. Mar. 10, 2026) ..... 24

*Mashiri v. Dep't of Educ.*,
724 F.3d 1028 (9th Cir. 2013) ..... 19

*Miguel v. McCarl*,
291 U.S. 442 (1934) ..... 19

*Munoz v. Mabus*,
630 F.3d 856 (9th Cir. 2010) ..... 20

*Murthy v. Missouri*,
603 U.S. 43 (2024) ..... 24

*N. Star Alaska v. United States*,
14 F.3d 36 (9th Cir. 1994) ..... 20

*Nat'l Wildlife Fed'n v. United States*,
626 F.2d 917 (D.C. Cir. 1980) ..... 19

*Nelson v. Pima Cmty. Coll.*,
83 F.3d 1075 (9th Cir. 1996) ..... 12

*New York v. Meta Platforms, Inc.*,
66 F.4th 288 (D.C. Cir. 2023) ..... 22

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ..... 19, 24

*OPM v. Richmond*,
496 U.S. 414 (1990) ..... 17, 18

*Or. Nat. Res. Council v. Harrell*,
52 F.3d 1499 (9th Cir. 1995) ..... 19, 21

*Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Lab'ys, Inc., Civ. A.*,
No. 21-2530, 2023 WL 3983877 (D.N.J. June 13, 2023) ..... 2

*Pacito v. Trump*,
169 F.4th 895 (9th Cir. 2026) ..... 20

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
457 F.3d 963 (9th Cir. 2006) ........................................................................................ 18

*Presidential Gardens Assocs. v. United States*,
175 F.3d 132 (2d Cir. 1999)........................................................................................ 20

*Quiros v. Amador*,
715 F. Supp. 3d 31 (D.D.C. 2023) ................................................................................ 21

*Ramona Two Shields v. United States*,
820 F.3d 1324 (Fed. Cir. 2016)...................................................................................... 2

*Rouser v. White*,
825 F.3d 1076 (9th Cir. 2016) ........................................................................................ 3

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) ...................................................................................... 17

*Samma v. Dep't of Def.*,
No. 1:20-cv-1104 (RDM), 2022 WL 1449404 (D.D.C. Mar. 22, 2022) ............................ 25

*Sanchez-Espinoza v. Reagan*,
770 F.2d 202 (D.C. Cir. 1985)...................................................................................... 19

*Sarmiento v. Fresh Harvest, Inc.*,
573 F. Supp. 3d 1378 (N.D. Cal. 2021) ........................................................................ 14

*Segobiano v. Citizens Savings Bank*,
136 F. Supp. 2d 948 (C.D. Ill. 2001) ............................................................................ 14

*Smart-Tek Servs., Inc. v. IRS.*,
829 F. App'x 224 (9th Cir. 2020) .................................................................................. 25

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........................................................................................ 20

*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024)...................................................................................................... 19

*Tanzin v. Tanvir*,
592 U.S. 43 (2020)........................................................................................................ 16

*Taylor v. Wolff*,
158 F.R.D. 675 (D. Nev. 1994)........................................................................................ 7

*Toussaint v. McCarthy*,
926 F.2d 800 (9th Cir. 1990) .......................................................................................... 4

*U.S. ex rel. Arant v. Lane*,
249 U.S. 367 (1919) ........ 22

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
689 F.2d 885 (9th Cir. 1982) ........ 5

*Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*,
23 F.4th 442 (5th Cir. 2022) ........ 13

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978) ........ 11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 5

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ........ 19

**STATUTES**

5 U.S.C. § 555(b) ........ 9, 11

5 U.S.C. § 702 ........ 19, 22

20 U.S.C. § 1082(a)(2) ........ 19, 22

31 U.S.C. § 3702(c)(1) ........ 14

31 U.S.C. § 3712(a)(1) ........ 14

20 U.S.C. §§ 1071-1087-4 ........ 15

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

31 C.F.R. § 245.3(a) ........ 14

34 C.F.R. § 30.27 ........ 16

34 C.F.R. § 34.6 ........ 16

34 C.F.R. § 682.200 ........ 17

34 C.F.R. § 682.404(g)(1)(ii) ........ 17

Fed. R. Civ. P. 7(b)(1) ........ 25

Fed. R. Civ. P. 56 ........ 2, 12

Fed. R. Civ. P. 65(d) ........ 23

Fed. R. Evid. 408(a)(2) ........ 18

**OTHER AUTHORITIES**

6 Newberg and Rubenstein on Class Actions § 18:17 (6th ed.) ........ 6

100 A.L.R.2d 670 (1965) ........ 13

*Pay*, Oxford English Dictionary, https://doi.org/10.1093/OED/1139292520 ........ 16

## INTRODUCTION

Defendants have been in substantial compliance with the parties' Settlement Agreement since at least fall 2024. Plaintiffs' assertion that Defendants are in material breach of that Agreement is meritless. What's more, their requested relief is vastly overbroad. The Agreement plainly states that the "only relief available from the Court" is an order requiring Defendants to take further action to provide Full Settlement Relief to each affected Class Member on a new timetable set by the Court. Settlement Agreement ¶ V.B.2, ECF No. 246-1 ("Agr."). But Plaintiffs seek not just that order, but also a thirteen-paragraph list of supervisory dictates, *see* ECF No. 552-3, that exceeds the Court's limited retained jurisdiction.

Plaintiffs have provided no grounds for the Court to issue a mandatory injunction under ¶ V.B.2 compelling the Department to take any further actions. Defendants comply with the Agreement when they and their loan servicers have taken all steps necessary to provide relief, consistent with the two-step court-ordered "terminal loan methodology" (insofar as it applies to a given loan). There can be no serious dispute on this record that Defendants and their loan servicers have done just that for the class members upon which Plaintiffs premise their ¶ V.B.2 claims.

Even if a handful of individual class members dispute, say, the amount of their refund based on their payment history, Plaintiffs' motion should be denied. Under ¶ V.C, immateriality is a complete defense to an alleged breach. And given Defendants' substantial performance with each distinct provision at issue, the scattered complaints of individual class members are plainly immaterial. Defendants have taken multiple hundreds of thousands of actions and provided more than $10 billion in debt relief and refunds. But Plaintiffs' motion is premised on claims involving, for example, about 122 individuals out of 196,000 governed by ¶ IV.A.1. The parties dispute whether the Agreement compels the Court to adjudicate individualized disputes by each class member about payment histories and refund amounts, or whether such a dispute must be raised in a separate individualized action. But even under Plaintiffs' theory of Section V, they must demonstrate that each individualized claim they raise in this Court represents a material breach of Defendants' obligations to the individual class member, and they do not make that showing for any allegedly affected class member.

Beyond these issues, the Agreement authorizes, but does not require, the Court to consider entry

of a mandatory injunctive order compelling Defendants to take additional action on a new schedule. But Plaintiffs fail to satisfy any of the criteria for obtaining such an order.

## BACKGROUND

On June 18, 2026, pursuant to Paragraph V.D.1 of the Agreement, Plaintiffs provided Defendants with their allegations that Defendants are in material breach of their obligations to the class under ¶¶ IV.A.1 and IV.C.9. Ex. 21, Decl. of Nicole Almeida ("Almeida Decl."), ECF No. 552-2 at 138-74. Plaintiffs' notice addressed several discrete issues but principally alleged that 1,051 class members—122 members of the Automatic Relief Group ("ARG") and about 929 class members from Decision Groups ("DG") One, Two, Three, and Four—identified in data provided on May 28, 2026 (the "May Data Class Members") "are still awaiting relief." *Id.* at 139-40. On July 2, 2026, Defendants responded. Ex. 22, Almeida Decl., ECF No. 522-2 at 175-84. The parties were unable to reach consensus, *see* Agr. ¶ V.D.3.ii, and on August 18, 2026, Plaintiffs filed a motion to enforce, ECF No. 552.

## LEGAL STANDARD

A class settlement is a contract, "the proper interpretation of which is a question of law[.]" *Ramona Two Shields v. United States*, 820 F.3d 1324, 1329 (Fed. Cir. 2016). A motion to enforce a settlement is evaluated under the summary judgment standard, *Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Lab'ys, Inc.*, Civ. A. No. 21-2530, 2023 WL 3983877, at *2 (D.N.J. June 13, 2023), under which the moving party must show "no genuine dispute as to any material fact and" that it "is entitled to [prevail] as a matter of law." Fed. R. Civ. P. 56(a). "[E]vidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ARGUMENT

### I. The Department and Relevant Loan Servicers Have Taken All Steps Necessary to Effectuate Relief for May Data Class Members.

With two exceptions, Defendants and their loan servicers have taken all steps necessary to effectuate relief for the May Data Class Members. The Agreement includes promises to effectuate relief for certain class members by certain deadlines, Agr. ¶¶ IV.A.1, IV.C.9, and "effectuating relief" is defined to impose obligations only on the Department and its loan servicers. Agr. ¶ IV.F.1. Therefore, the Court must examine the process associated with discharging loan debt and determine (1) whether Defendants

have taken all steps necessary and (2) whether the entities that service federally held debt have taken all steps necessary. *See* Agr. ¶ IV.F.1.

Plaintiffs' allegations that Defendants are in material breach of ¶¶ IV.A.1 and IV.C.9 as to the May Data Class Members, Ex. 21, Almeida Decl., should be rejected, whether on the merits or on mootness grounds. As described in the detailed Declaration of Colby Jennings ("Jennings Decl.") ¶¶ 66-84, the Department and the loan servicers have taken all steps necessary as to these class members, except for two borrowers serviced by MOHELA. MOHELA has reported that it expects to send the refund files for these two borrowers to the Department by October 6. *Id.* ¶ 83. The Department will then release the refunds to Treasury for issuance to the borrowers. *Id.*

Plaintiffs fail to show otherwise. ECF No. 552 at 6. Whatever their evidence may have shown as of May, [1] Plaintiffs fail to overcome Defendants' showing. Jennings Decl. ¶¶ 66-86. Thus, there is no basis to order the "only relief available from the Court"—an order compelling Defendants to take further action as to the allegedly affected Class Members on a new timetable. Agr. ¶ V.B.2.

## II. Because Defendants Are in Substantial Compliance with ¶¶ IV.A.1 and IV.C.9, Plaintiffs' Claims Are Subject to a ¶ V.C Complete Defense of Immateriality.

### A. Defendants Have Substantially Performed Their Obligations to the Class.

Plaintiffs are wrong to argue that Defendants have failed to substantially perform their obligations to the class under ¶¶ IV.A.1 and IV.C.9. ECF No. 552 at 18-19. Defendants have not merely taken "significant steps," *id.* at 18, they have taken hundreds of thousands if not millions of actions, Jennings Decl. ¶¶ 66 (By May, the Department confirmed discharges for 2.1 million loans under each provision.).

Disregarding these substantial efforts, Plaintiffs focus on complaints concerning a tiny sliver of class members. ECF No. 552 at 18. But Defendants have indisputably supervised the provision of full relief to the overwhelming majority governed by each of the "distinct provisions" invoked by Plaintiffs. *See Rouser v. White*, 825 F.3d 1076, 1081-82 (9th Cir. 2016); Jennings Decl. ¶¶ 66-84. Paragraph IV.A.1

[1] Plaintiffs rely on data that came with a disclaimer that "'not complete' borrowers [may] have already received their full refund . . . or an overpayment." *E.g.,* Ex. 1, Almeida Decl. at 63 (ECF pagination). Thus, the data does not show that each borrower has not received a refund or has not had their loan discharged. *See* Jennings Decl. ¶¶ 68, 85-95. And Plaintiffs never adduced evidence showing that these borrowers are not FFEL borrowers with private debt not serviced by the Department for whom the Department and its loan servicers have taken all steps necessary to effectuate relief. *See id.* ¶¶ 37-40, 70; Decl. of Richard Cordray ("Cordray Decl."), ECF No. 403-1 ¶¶ 63-68; Agr. ¶ IV.F.1.

addresses the effectuation of that relief for 196,993 ARG class members. *Id.* ¶ 67. Any (now resolved) delay by the Department or its loan servicers affecting 122 of those class members (or 0.06%) does not undermine Defendants' substantial performance of their obligations to the class under ¶ IV.A.1. Similarly, any (now resolved) delay as to 1,000 of 62,230 class members under ¶ IV.C.9 (or about 1.6%), *id.*, does not undermine Defendants' substantial performance, *cf. Toussaint v. McCarthy*, 926 F.2d 800, 802 (9th Cir. 1990) (A "rate of unintentional . . . error of 5/780 does not" justify supervision.).[2]

**B. The Settlement Agreement Provides for a Complete Defense of Immateriality, Requiring Denial of Plaintiffs' Motion.**

Plaintiffs' claimed breaches of ¶¶ IV.A.1 or IV.C.9 are immaterial under ¶ V.C. A material breach is "the converse" of "substantial performance." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.* 263 F.3d 296, 317 n.8 (3d Cir. 2001) (quoting *Farnsworth on Contracts* § 8.16 at 496).

Plaintiffs err in contending that the "complete defense" of immateriality bargained for under ¶ V.C is defined at the individual class member level. ECF No. 552 at 16-18.[3] Plaintiffs' position is premised on their ¶ V.B.2 authority merely to *allege* that breaches as to individual class members are material. *Id.*

Plaintiffs' reading is incorrect. Although Plaintiffs bargained for authorization to *allege* such a breach as to one individual, Agr. ¶ V.B.2, the parties did not agree that a failure to timely deliver relief to one individual *constitutes* a material breach of a relevant paragraph. Rather, the difference in language between Plaintiffs' authority to allege, if they wish, individual issues under ¶ V.B.2 and Defendants' authority under ¶ V.C to press a complete defense that they have not materially breached their obligations to the class requires the Court to determine, exercising sound discretion, "[w]hether the issues" "should be expanded to encompass the individual claims of additional class members"—"a matter of judicial

[2] Plaintiffs conflate the standard for immaterial breaches of contract with the standard in *Coleman v. Newsom*, 131 F.4th 948 (9th Cir. 2025), for contempt. *See* ECF No. 552 at 18. Plaintiffs do not claim in this motion that Defendants are in contempt of any order. The summary judgment burden-shifting framework therefore applies, *see supra* at p. 2.

[3] As they unpersuasively try to address in a footnote, Plaintiffs have never argued that immaterial breaches of Defendants' obligations to the class were cognizable under ¶ V.B.2 and indeed had previously praised the Department's substantial compliance with deadlines. *See* ECF No. 552 at 17-18 n.9. Plaintiffs' change in position comes after Defendants explained in fee litigation earlier this year that Defendants are not liable for fees unless Plaintiffs prevail on a motion under ¶ V.B. *See* Opp'n to Pls.' Mot. for Fees and Costs, ECF No. 540.

administration" to be decided by the Court. *See Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 881 (1984). Defendants bargained for the right under a separate clause to claim that any breach of their obligations to the class "is not material" without any reference to individualized claims, permitting them to invoke this discretion. Agr. ¶ V.C.

Following Plaintiffs' arguments to their logical conclusion would mean that they are entitled to file thousands of individualized motions to enforce—essentially motions for summary judgment—raising claims by one class member disputing a refund sum or another disputing which loan should have been discharged. That is not a plausible understanding of the different language in ¶ V.B.2 and ¶ V.C.

Defendants' interpretation is supported by "both the language and purpose of the Settlement." ECF No. 552 at 19. As for language, the Court would be enforcing the very text in ¶ V.C that Defendants negotiated to include. As for purpose, Defendants executed the Agreement to avoid the "inconvenience and expense of protracted litigation," Agr. at 2, which would be undermined if Plaintiffs were permitted to refocus the issues from a class-wide perspective to a series of individualized disputes over, for example, refund amounts. The Agreement "cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant [Agreement] embodies . . . those opposing purposes[.]" *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 893 (9th Cir. 1982) (citation omitted).

**C. Background Principles Confirm that ¶ V.C Immateriality is Evaluated at the Class Level.**

Defendants' position is confirmed by background principles. First, a court addressing a (b)(2) class's claims may only enter an injunction providing relief to the whole class, not to address mini-trials over individualized claims, for example, disputing a refund amount. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). "[C]laims for *individualized* relief . . . do not satisfy the Rule." *Id.* "[A]dditional proceedings are ordinarily required to determine the scope of individual relief for [(b)(2) class] members[.]" *Cooper*, 467 U.S. at 876. Plaintiffs' theory is "tantamount to" authorizing "every member of the class be permitted to intervene to litigate the merits of his individual claim[.]" *Id.* at 880.

Second, after entry of Rule 23(b)(2) relief, class members with individualized disputes are not "in dire straits." *See* ECF No. 552 at 18. Individualized disputes related to class-wide relief "generally cannot be brought into the class suit" at all—that suit was supposed to have "aggregate[d] litigation about

common issues[.]" 6 Newberg and Rubenstein on Class Actions § 18:17 (6th ed.). Rather, individualized disputes are resolved in individualized cases. "[L]imiting class adjudication as close[ly] as possible to matters common to [class representatives] frequently requires that nonparticipating members of the class remain free to pursue individual actions[.]" *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) (citation omitted). If one hundred thousand class members had to address their individualized claims in this lawsuit, "the action would [be] unmanageable[,]" *id*. at 1292, and would "undermine the efficiency of the aggregate resolution of the common claims[,]" 6 Newberg and Rubenstein on Class Actions § 18:17 (6th ed.). The need for "subsequent individual[ized] . . . suits recognizes and respects this reality." *Hiser*, 94 F.3d at 1292. Thus, individual class members did not "release any claim based on an act or omission . . . occurring after the Effective date," including disputes over implementation. Agr. § VII. Joining individualized claims into a class action "would destroy the efficiency of having class actions and reduce the benefit" of them. *See Akootchook v. United States*, 271 F.3d 1160, 1165 (9th Cir. 2001).

Third, "[s]ubstantial compliance" is a defense to a motion to enforce an injunction, such as one that may have been entered under Rule 23(b)(2) had the case been litigated. *Hallet v. Morgan*, 296 F.3d 732, 750 (9th Cir. 2002). The Department did not bargain away this standard by executing the Agreement to avoid "inconvenience and expense of protracted litigation[.]" Agr. at 2. Again, Plaintiffs preserved the right only to *allege* that individualized claims can constitute a material breach; Defendants may press a complete defense that a claim is not material under ¶ V.C consistent with these background principles.

Finally, "ancillary jurisdiction" "'is a doctrine of discretion, not of plaintiff's right.'" *Coleman v. Casey Cnty. Bd. of Educ.*, 686 F.2d 428, 430 (6th Cir. 1982) (citation omitted). Any agreement that a "court should exercise continuing jurisdiction is not binding on the court," *Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1269 (9th Cir. 1996),[4] which may later "decide to terminate or divest itself entirely of jurisdiction over the" agreement. *Brass Smith, LLC v. RPI Indus., Inc.*, 827 F. Supp. 2d 377, 383 (D.N.J. 2011). Defendants' right under ¶ V.C claim that a breach is not material provides a framework for the Court to consider whether "it would be inappropriate" to address individualized issues in this suit rather

[4] *See also Church of the Celestial Heart v. Bondi*, No. 1:23-cv-00545-SAB, 2025 WL 1635932, at *2 (E.D. Cal. June 9, 2025).

than in individualized ones. *Taylor v. Wolff*, 158 F.R.D. 675, 676 (D. Nev. 1994).[5]

**D. Even if Materiality Were Measured at the Individual Level, Plaintiffs Fail to Show Materiality with Respect to Any Individual.**

Plaintiffs are wrong to contend that "materiality is measured on the level of the individual[.]" ECF No. 552 at 17-18. Regardless, they fail to establish materiality as to any class member because they provide no evidence showing any allegedly missing relief in the context of the putative affected class member's overall relief received. *See* Decl. of Christian L. Odom ("Odom Decl.") ¶¶ 44, 51. As one example, Plaintiffs claim that Defendants are in material breach as to one individual based on $45 out of $40,014.35 in relief provided. Odom Decl. ¶ 44. Even under Plaintiffs' theory, the Court should only order Defendants to take further action on a new schedule as to affected class members subject to an individualized material breach. Plaintiffs bear the burden of showing materiality, which is an element of the breach claim. Agr. ¶ V.B.2; *Houghton v. South*, 965 F.2d 1532, 1536-37 (9th Cir. 1992). This includes all the individuals affected by the legal issues in the subsequent section.

## III. Plaintiffs' Other Breach Claims Are Without Merit.

**A. Administrative Process-Related Claims**

**1. An Application to the Ombudsman's Office under the So-Called Administrative Process is a New Application for a New Informal Agency Action; It is Not a Part of the Court-Ordered So-Called Terminal Loan Methodology.**

That the Ombudsman's office has yet to adjudicate new applications for further refunds as part of the "administrative process" does not place Defendants in breach of Agreement deadlines. *See* ECF No. 552 at 6-9.[6] Because this process is not a part of the so-called "terminal loan methodology," neither court ordered nor Agreement deadlines govern the time necessary to consider these applications.

[5] Contrary to Plaintiffs' mischaracterization, ECF No. 552 at 19 (mischaracterizing position as "no obligation to provide complete and timely relief to individual class members"), the issue is whether any breach is sufficiently material to be supervised in the class suit rather than addressed in an individualized one. *See infra* at pp. 19-20. "By May 2026, the Department had confirmed that discharges (in the amount of nearly $10 billion) for 2,150,375 loans for the ARG" and DG 1-4 "class members had been completed." Jennings Decl. ¶¶ 66. Relief has been provided to the very class members upon which Plaintiffs base their breach claims. *Id.* ¶¶ 66-84. And, even if a small number of class members are still awaiting relief, Defendants have never denied that they will continue to work toward effectuating that relief. Jennings Decl. ¶ 94.

[6] This process is described in further detail in the Declaration of Christian Odom ¶¶ 52-72.

Plaintiffs concede that, pursuant to the Court's orders, Tr. at 15:19, ECF No. 420, Minute Entry, ECF No. 451, Defendants comply with relevant deadlines by implementing so-called "terminal loan methodology." *See* ECF No. 552 at 7. The dispute is whether the administrative process is "part and parcel of [that] methodology[.]" *Id*. Plaintiffs are mistaken to claim that it is. In fact, the administrative process is a new administrative proceeding that considers a request for further refunds after completion of the terminal loan methodology process required by the Court's orders. Odom Decl. ¶¶ 52-72.

In 2024, Defendants materially breached the relief deadline for the ARG. The Department explained that the deadlines in the original agreement were premised on "a series of miscommunications and misjudgments"—especially as to "consolidated loans[.]" *See* Cordray Decl. ¶ 96. Many borrowers had refinanced loans with debt eligible for discharge and refund under the Agreement into one or several new consolidation loans—often packaged with ineligible debt. *See id*. ¶¶ 23-24. The traditional process for discharging eligible loan debt under the Agreement "require[d] multiple steps, including actions from the eligible loan's servicer followed by additional actions from the servicer(s) involved with the origination and servicing of the borrower's Consolidation Loan[s]." *Id*. ¶¶ 50-61.

After being advised of the administrability issues, Plaintiffs demanded that the Department discharge an incredible additional sum—the entire balance of class member consolidation loans. *See* Ex. 13, Notice of Settlement Breach, ECF No. 397-3 at 122 (ECF Pagination). Eventually, the Department agreed to modify the judgment requiring the so-called "Terminal Loan Methodology" to comply with the relief effectuation deadlines, but only with respect to the ARG. Jennings Decl. ¶ 48-55.

The June 2024 proceedings confirm that this terminal loan methodology has only two steps, excluding the administrative process. Specifically, Plaintiffs' counsel explained that "the first step for these mixed consolidation loans will be that the Department is going to discharge the entire remaining balance, regardless of what components went into that consolidation loan to begin with." ECF No. 420 at 12:14-17. In the second step, the "Department will then cut refund checks for all amounts that class members had paid toward this current consolidation loan that's been discharged." *Id*. at 12:21-23. The Government explained that this process "would greatly simplify and shorten the process," providing "greater finality[.]" *Id*. at 14:1-3. Because this procedure required modification of the terms of the final

judgment, the parties obtained court approval. *Id.* at 15:17-19.

Plaintiffs are wrong to argue that the administrative process is a part of the two-step terminal loan methodology. Only after the Court approved the two-step terminal loan methodology did Plaintiffs refer to a potential subsequent proceeding whereby class members might return to the Department to "request an accounting of their past payments" and "get whatever refund" may not have been "accounted for by the refunds on the current consolidation loans." *Id.* at 16:7-10. The parties never agreed, nor did the Court order, that this procedure was a part of the two-step terminal loan methodology approved to address the ARG deadline. Plaintiffs do not identify a single comment by the Government or the Court ever agreeing with that notion. Indeed, Plaintiffs' counsel rejected the Court's inquiry as to whether it needed to approve the potential process. *Id.* at 18:11-12. ("In our view, no, Your Honor. We think the Department has authority to do all of this.").

That statement was consistent with the Government's position that any new request for a new informal agency order regarding refunds may be made in accordance with 5 U.S.C. § 555(b).[7] The Ombudsman has a "reasonable time" to address any such request. 5 U.S.C. § 555(b). If the administrative process were instead governed by the Agreement, it would have had to have been approved. Agr. ¶ XV.B.

Subsequent proceedings culminating in the Court's order—over Defendants' objection—that the Department implement Full Settlement Relief utilizing the terminal loan methodology for all other groups, *see* ECF No. 451, confirm that the administrative process is not part of that methodology. Rather, the Government explained the methodology as

> any Exhibit C borrower who still had a balance on their current consolidation loan as of June 6, 2024, would have the entire balance discharged, regardless of the composition of the underlying loans, and would have all payments on the current consolidation loan refunded (by check). Additionally, an Exhibit C borrower who had, as of June 6, 2024, already received an 'adjustment' under [the methodology described in the Cordray Declaration, ECF No. 403-1] that resulted in a zero balance on the current consolidation loan would retroactively receive a refund of all payments made on the current consolidation loan (by check), if that amount had not already been refunded.

[7] That provision of the APA provides that: "So far as the orderly conduct of public business permits, an interested person may appear before an agency['s] . . . responsible employees for the presentation, adjustment, or determination of an issue [or] request . . . in connection with an agency function." 5 U.S.C. § 555(b).

Decl. of Phillip Juengst ¶ 9, ECF No. 443-1. Unsurprisingly, none of the parties' filings described the administrative process as being part of the so-called terminal loan methodology. Defs.' Mot. to Approve Settlement Relief Process, ECF No. 443; Pls.' Opp'n to Defs.' Mot. to Approve Settlement Relief Process, ECF No. 446. Rather, under the administrative process, borrowers request even more refunds by initiating a new administrative proceeding *after* the terminal loan methodology provides them with what are potentially windfall benefits at great expense to the Government. Odom Decl. ¶ 67; Declaration of James Bergeron ¶¶ 32, ECF No. 492-1.

Plaintiffs do not cite any agreement with the Government stating that the administrative process "was part" of terminal loan methodology. ECF No. 552 at 7. Rather, they rely on their own unilateral statements during status conferences that the Court did not approve, none of which, in any event, state that the administrative process is part of the terminal loan methodology. *Id.*[8]

Plaintiffs' contention that the administrative process is part of the so-called terminal loan methodology is also a logically implausible understanding of the Court's intent. The Court ordered Defendants to use terminal loan methodology to meet deadlines enforceable under Section V because the Defendants could not meet them using the traditional process due to the administrative complexity of adjusting terminal consolidation loan balances. As Plaintiffs previously argued, utilizing "more time-consuming" and "complex process[es] of relief calculations" than terminal loan methodology "while still meeting its agreed-upon deadlines" would be impossible. ECF No. 446 at 1-2. It is thus implausible that the terminal loan methodology includes an entire subsequent administrative process that Plaintiffs

[8] Specifically, they rely on their own statements in June 2024 (addressed *supra* at pp. 8-9), September 2024, and November 2024. ECF No. 552 at 7 (citing Ellis Decl. Ex. 16 (ECF No. 420 at 15:14-25), Ex. 17 (ECF No. 438 at 12:3-17), Ex. 18 at 5:10–6:15 (ECF No. 448 at 5:10-6:15)). In September 2024, counsel did not represent that the administrative process was part of the terminal loan methodology. ECF No. 438 at 12:3-17. And even if she did, Government litigation counsel immediately disclaimed her representations. *Id.* at 17:2-3 (stating that there "were a lot of characterizations that I just heard that I would disagree with"). In fact, the Government explained that terminal loan methodology does not address intermediate loans: "[W]hat we've been calling the 'Exhibit C approach,'" is an approach under which—as its name conveys—"*we focus on the terminal loan*" and not the intermediate loans. *Id.* at 18:3-4 (emphasis added); *see also id.* at 21-22 ("[W]hat we did for Exhibit C borrowers is focus on the terminal loan—the end loan in that process—and instruct the servicers to discharge that loan and also to issue refunds in the form of a check on all payments that were made on that—on that loan."). In November 2024, Plaintiffs' counsel indicated (correctly) that the administrative process addressed "additional" refunds on top of those required by the two-step terminal loan methodology process. *See, e.g.*, ECF No. 448 at 5:12, 6:3, 6:6-7.

correctly described as "complicated and labor intensive[.]" ECF No. 420 at 16:17. Plaintiffs previously explained to the Court that the administrative process would not be governed by the Agreement's deadlines or Court-ordered deadlines but would instead take place during some subsequent "tail period beyond" the Agreement's deadlines enforceable under Section V. *See* ECF No. 420 at 16:17-18. That is because it is a new application to the Department that the agency may address over a "reasonable time." 5 U.S.C. § 555(b). But there is no basis for the Court to supervise the administrative process in this case, which raises no unreasonable delay claims as to these new applications for additional refunds.

Plaintiffs' contention that the administrative process is governed by the deadlines for effectuating relief using the terminal loan methodology is entirely inconsistent with their demands to and correspondence with the Department regarding the issue. For example, in a letter dated June 18, 2024, Plaintiffs demanded a different deadline from the deadlines for effectuating relief. Specifically, counsel demanded that a deadline of "180 days following expiration of the last-occurring 90-day deadline" for effectuating relief under the Agreement." Odom Decl. ¶ 54. If the administrative process was part of the terminal loan methodology, then there would be no need for a separate deadline for the administrative process and effectuating relief under terminal loan methodology. *See id.*[9]

Unsurprisingly, "the Department did not agree to any such deadline." *Id.* The Government never agreed to forfeit the Ombudsman's statutory entitlement to a reasonable time, 5 U.S.C. § 555(b), to address administrative process applications. It would have been wholly inappropriate for lawyers to "dictat[e] to the [Ombudsman] the methods, procedures, and time dimension of the needed inquiry[.]" *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 545 (1978) (citation omitted). Indeed, the nonbinding document that Plaintiffs contend to be the "procedure for the 'administrative process,'" Almeida Decl. ¶ 24, includes no deadline for resolving applications, Ex. 13 to Almeida Decl. Thus, the statutory default of a reasonable time, which an applicant may seek to enforce in a new action against the Department in a proper forum, provides the time period for addressing these applications, not the deadline for addressing the two-step terminal loan discharge process enforceable under Section V as Plaintiffs

[9] Even if the Department had agreed to Plaintiffs' demand, which it did not, that deadline would not yet have passed. Odom Decl. ¶ 54. "The 'last-occurring 90-day deadline' is October 26, 2026[.]" *Id.*

contend in their motion.

**2. Even Under Plaintiffs' Theory, Plaintiffs Have Not Shown a Material Breach Under ¶ V.B.2 Because They Provide No Proof That Any Individuals Who Have Submitted Administrative Process Applications Are Entitled to Further Relief.**

Even if the Court accepted Plaintiffs' mistaken theory that ¶ V.B.2 could provide a basis for relief despite timely refunds of amounts paid on a terminal loan balance, Plaintiffs do not show that any class members are entitled to additional refunds.

The ¶ V.B.2 elements require Plaintiffs to show that Defendants have not "effectuate[d] relief within the prescribed time periods for . . . individual[s]" "entitled to receive relief" under the referenced provisions. Agr. ¶ V.B.2. As to refunds, Plaintiffs must show that, for each allegedly affected class member, Defendants did not "determin[e] if the Class Member" "is entitled to any refund, and if so," did not issue "refund check(s) for payment of that refund[.]" Agr. ¶ IV.F.1(2).

Plaintiffs fail to make this showing. They provide no "evidence which would entitle [them] to a directed verdict[,]" *Houghton*, 965 F.2d at 1536 (citation omitted), showing that each alleged affected class member is owed additional refunds.[10] Plaintiffs entirely fail to cite any "parts of materials in the record" supporting their claim that the allegedly affected class members are owed refunds on amounts paid on intermediate consolidation loans. Fed. R. Civ. P. 56(c)(1)(A). Rather, Plaintiffs appear to assume that every individual who has, *pro se*, petitioned the Ombudsman's office for relief under the administrative process is entitled to an unspecified additional refund. But a petition to the Ombudsman's office is akin to a complaint raising an allegation, it is not itself evidence of anything. *See* Odom Decl. ¶¶ 56-57. An administrative process application "does not mean that the borrower is necessarily entitled to an additional refund." *Id.* ¶ 56. Indeed, in analyzing some cases, the Ombudsman determined that "the underlying loan had already been discharged or refunded" and "in others there were no relevant payments to refund[.]" *Id.* ¶ 64. And Plaintiffs' vague reference to "perhaps thousands" of Class Members does not

[10] Plaintiffs bear the burden of "lay[ing] out the elements of the" breach claim and "cit[ing] the facts which it believes satisfies these elements, and demonstrat[ing] why the record is so one-sided as to rule out the prospect of a finding in favor of" Defendants. *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). "[M]ere allegation and speculation" does "not create a factual dispute" that Defendants have materially breached their obligations to issue refunds owed any class member based on their intermediate mixed consolidation loan theory. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

appear to be supported even by applications to the Ombudsman's office. Their motion provides no basis for the Court to set a deadline for Defendants to take any further action for any affected class members because they have not established which class members are affected class members to which a new deadline would apply. *See* Odom Decl. ¶¶ 64 (indicating that "in some cases the underlying loan had already been discharged or refunded" and "in others there were no relevant payments to refund").

### B. Defendants Have Not Breached the Agreement Insofar as Refund Checks Were Allegedly Fraudulently Cashed by Third Parties.

Plaintiffs provide no basis for the Court to issue an order entering a schedule to reissue refunds to class members whose refunds were allegedly fraudulently cashed by third parties. *First*, Plaintiffs fail to tie this issue to the elements of a claim under ¶ V.B.2. Specifically, they must show that Defendants failed to effectuate relief by failing to "determine[e] if the Class Member . . . is entitled to any refund, and if so," failing to "issu[e a] refund check(s) for payment of that refund[.]" Agr. ¶ IV.F.1. But Plaintiffs do not dispute that Defendants issued a refund check to these borrowers. Rather, they complain that Defendants should "reissue refund checks" that were already issued and cashed. ECF No. 552 at 16. But Defendants did not agree to insure against tortious interference by third parties. *See* Agr. ¶ IV.F.

*Second*, "the great weight of authority" provides that "a payee" is "entitled to recover against a collecting bank" that "cash[es] a check bearing a forged or unauthorized indorsement of the payee" rather than from the drawer of the check. 100 A.L.R.2d 670 § 2 (1965). Plaintiffs' claims against the United States in this action as the drawer of the checks are thus brought against the wrong party. *See id.*

*Third*, and relatedly, insofar as Plaintiffs are alleging that a forged indorsement of any check resulted from the Department's or its employees' negligence, *see* ECF No. 552 at 10,[11] "[t]ort claims against the United States are exclusively cognizable under the Federal Tort Claims Act," *DSI Corp. v. Sec'y of Hous. & Urb. Dev.*, 594 F.2d 177, 180 (9th Cir. 1979). This Court did not retain ancillary jurisdiction to entertain claims under that statute. *See* Agr. § V; *see also Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 453 (5th Cir. 2022) (holding that "fraud" and other "tort claim[s] arising from or related to [a] settlement" are not cognizable under "retained power to 'enforce [a] settlement'").

[11] Plaintiffs complain that the Department insufficiently notified affected class members "that the Treasury Department ha[d] mailed them a Settlement refund check." ECF No. 552 at 10.

*Finally*, Plaintiffs' claims are foreclosed by 31 U.S.C. §§ 3712(a)(1), 3702(c)(1), and the regulatory counterpart, 31 C.F.R. § 245.3(a). Under this statute, any "claim on account of a Treasury check shall be barred unless it is presented to the agency that authorized the issuance of such check within 1 year after the date of issuance[.]" 31 U.S.C. § 3702(c)(1). Courts strictly enforce this statute, concluding that "it was intended to have broad application." *Am. Fuji Seal, Inc. v. United States*, 34 Fed. Cl. 274, 277 (1995). *See Segobiano v. Citizens Savings Bank*, 136 F. Supp. 2d 948, 950 (C.D. Ill. 2001). Thus, construing the Agreement to require an investigation outside the time limits provided for under 31 U.S.C. §§ 3712(a)(1), 3702(c)(1), and 31 C.F.R. § 245.3(a) would be unenforceable. *See Sarmiento v. Fresh Harvest, Inc.*, 573 F. Supp. 3d 1378, 1389 (N.D. Cal. 2021) ("Contracts that are contrary to express statutes or to the policy of express statutes . . . are illegal contracts." (citation omitted)).

Plaintiffs' contention that the Department did not "let" class members "know that the Treasury Department ha[d] mailed them a Settlement refund check[,]" ECF No. 552 at 10, fails to identify any provision of the Agreement that Defendants breached. Defendants provided notice of the terms of the Agreement, including terms providing for refunds by check and the anticipated schedule, under the procedures approved by the Court under Rule 23. *See* Decl. of Marc Piccolo, ECF No. 335-1. And the parties carefully negotiated additional circumstances requiring additional "Written Notice" (a defined term) to class members beyond that required by Rule 23. *See, e.g.,* Agr. ¶¶ IV.A.3, IV.C.2, IV.C.6.[12] Rather than dispute whether Defendants complied with these terms, Plaintiffs without a legal basis assert that Defendants should have provided even more notice. Almeida Decl. ¶ 56.

### C. The Department is Not in Breach of the Agreement for Failing to Refund Amounts Seized Under the Treasury Offset Program or Through Wage Garnishment After a Borrower Defaulted on a Commercially-Held Private Loan.

Plaintiffs are wrong to assert that the Agreement necessarily makes borrowers who default on commercially-held loans "eligible for refund" of "payments seized from [their] tax refunds through the Treasury Offset Program ('TOP') or from their paychecks through Administrative Wage Garnishment

[12] For example, in addition to the Rule 23 class notice, Defendants provided all ARG class members with additional written notice "specify[ing] that the Class Member will receive Full Settlement Relief, as defined in this Agreement," Agr. ¶ IV.A.3, to include a refund check, where appropriate, *id.* ¶ IV.F.

('AWG')." ECF No. 552 at 9. For months, the Department has been carefully investigating the scope of this issue to determine whether an accommodation is appropriate. Jennings Decl. ¶¶ 96-103. But the Settlement Agreement does not address it. On the contrary, the relevant language entitles borrowers to refunds only of payments made by "the Class Member . . . to the Department," which does not include TOP/AWG. Agr. ¶ II.S. This is consistent with the dichotomy reflected throughout the Agreement between the treatment of Department-held loans and commercially-held ones.

To better understand this dichotomy, some unpacking is in order. Federal student loan programs can be broken down into two broad categories. Under modern programs, "the federal government lends money directly to students[.]" Cordray Decl. ¶ 11. Under the "Federal Family Education Loan ('FFEL') Program, 20 U.S.C. § 1071-1087-4," "non-federal lenders made loans to students and parents which are guaranteed by entities" called Guaranty Agencies ("GAs") "reinsured by the federal government and serviced by commercial servicers." *Id.* "No new FFEL loans have been made since 2010, though a considerable amount of FFEL loan debt remains outstanding." *Id.*

Given that commercial FFEL loans involved debt held by "private banks," not "the Department," ECF No. 552 at 9, the Department does not administer borrower defense claims against these loans in the same way as debt held by the Department. "Historically, FFEL borrowers who qualify for a borrower defense discharge generally were required to consolidate their FFEL loans into a new direct consolidation loan" issued by the Department "to receive the discharge," given that their loan was held by a private commercial lender, not the Government. Cordray Decl. ¶ 27. As part of the Agreement, however, the Department agreed to a process under which "the Department sends a request to the GA that insures the loan, which asks the GA to purchase the loan from the commercial lender that holds the loan." *Id.* ¶ 63. Although not legally required to do so, GAs generally "fulfill[] the Department's request by paying off the loan" and then the Department reimburses the GA. *Id.* ¶ 64. This process, when the GA and the commercial lender cooperate, results in the loan holder's balance being discharged without requiring the class member to open a new consolidation loan issued by the Department. *See id.* ¶ 65.

The Agreement reflects this dichotomy between privately-held commercial FFEL loans and loans held by the Department. Although the Government agreed to refund all payments "the Class Member

previously paid to the Department," Agr. ¶ II.S, "payments made to parties other than the Department are not covered by relief under the settlement. Thus, borrowers with FFEL loans eligible for discharge do not receive refunds[,]" Cordray Decl. ¶ 66, as Plaintiffs do not dispute, ECF No. 552 at 9.[13]

Plaintiffs argue for a loophole that is fundamentally at odds with the dichotomy reflected in the Agreement. Under their theory, class members who made good faith payments on FFEL loan debt would not receive any refunds, but class members who defaulted, resulting in tax offsets and wage garnishments, would get refunds of unpaid but "seized" amounts. *Id.* There are several problems with that theory.

*First*, "the plain language of the contract," which resolves "questions of contract interpretation," does not support it. *Aleman Food Servs, Inc. v. United States*, 994 F.2d 819, 822 (Fed. Cir. 1993). Defendants must refund only "amounts the Class Member previously paid to the Department[.]" Agr. ¶ II.S. The word "pay" means "[t]o give, transfer, or hand over (money, or its equivalent) in . . . discharge of an obligation; to deliver (a sum or amount owed)." *Pay*, Oxford English Dictionary, https://doi.org/10.1093/OED/1139292520. But an involuntary seizure of amounts that would otherwise have been paid by the Government to the borrower (Treasury Offsets) or by an employer to the borrower (wage garnishment) does not fit naturally into this definition.

Indeed, "background presumptions" undermine Plaintiffs' interpretation. *Cf. Tanzin v. Tanvir*, 592 U.S. 43, 52 (2020). Relevant regulations distinguish between offsets and payments. For example, 34 C.F.R. § 30.27 addresses the question "When does the Secretary enter into a repayment agreement rather than an offset?" Similarly, the Department's regulations provide an opportunity for borrowers to "enter into a written repayment agreement with us to repay the debt" "[b]efore starting garnishment[.]" *Id.* § 34.6(b). These provisions indicate that payments (repayments) are distinct from offsets or garnishment.

*Second*, Plaintiffs' construction would "create[] bizarre outcomes." *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1240 (9th Cir. 2021). Again, their interpretation treats borrowers who defaulted on their loans more beneficially than borrowers who made good faith payments to their private lenders. Moreover, their interpretation would require the Department to somehow verify the accuracy of

[13] *See* ECF No. 552 at 9 ("[P]ayments on commercially held FFEL loans are not entitled to refunds of those payments under the Settlement because the payments were made to private banks.").

claims that, for example, a borrower is entitled to a refund of amounts garnished from wages nearly 40 years ago in 1988. *See* ECF No. 552-2 at 222 ¶ 10. The better reading is that the "paid to the Department" language was intended to refer to refunds of amounts that were paid on debt held by the Department on Direct Loans after Congress transitioned to that program in 2010.

*Finally*, Plaintiffs' reading is premised on the assertion that every defaulted FFEL loan was "transferred to the Department's Default Resolution Group" and thus amounts "seized" were ultimately transferred directly "to the Department." ECF No. 552 at 9. To support that assertion, Plaintiffs rely only on hearsay testimony, Almeida Decl. ¶ 59, which is insufficient to show that each allegedly affected class member's seized tax return amounts or garnished wage amounts were seized by the Department.

The Ninth Circuit has explained the process, summarizing regulations in this area. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1030 (9th Cir. 2009). After "a borrower defaults on a [private FFEL] loan," and the lender files a claim with and is reimbursed by the GA, the GA "is then assigned the loan by the lender," *id.*; *see also* Cordray Decl. ¶ 14.b—the loan is not necessarily "transferred to the Department's Default Resolution Group" and thus held by the Department, as Plaintiffs assert, ECF No. 552 at 9.[14]

The *Rowe* plaintiff's garnished wages were not transferred to the Department, but rather to the private GA. *See* 559 F.3d at 1030. Any "recovered loan proceeds" from the GA's garnishment were placed "in its reserve fund" held "on behalf of the Secretary." *Id.* at 1033. The Department may have been entitled to an equitable share of those funds—between 70% and 84%—depending on the time during which the wage garnishment or offset occurred. 34 C.F.R. § 682.404(g)(1)(ii). But the point is that the parties could not plausibly have intended the phrase "amounts the Class Member previously paid to the Department," Agr. ¶ II.S, to address this administratively complex issue, let alone to address it on the constricted relief deadlines in the Agreement. Rather, again, this language was intended to reflect the administrable dichotomy between loans held by the Department and commercial FFEL loans.[15]

---

[14] The GA is defined "as '[a] state or private nonprofit organization that has an agreement with the Secretary under which it will administer a loan guarantee program under the" Higher Education Act. *Rowe*, 559 F.3d at 1030 (quoting 34 C.F.R. § 682.200). A GA is not the Department. *Id.*

[15] Plaintiffs may not rely on any 2024 oral suggestion to the contrary, *see* Almeida Decl. ¶ 59, for several reasons. First, Plaintiffs may not premise a claim for additional "payment[s] from the Treasury" on statements by a Government employee. *OPM v. Richmond*, 496 U.S. 414, 419-34 (1990); *Heckler v.*

Despite the best reading of the Agreement, the Department—as another of many examples of its good faith and based on the parties' shared interests—has begun to explore the feasibility of refunding these additional amounts to affected borrowers. Jennings Decl. ¶¶ 96-103. Insofar as Plaintiffs invoke the Department's good faith to prove the validity of their reading of the Agreement's language, their efforts are in fundamental tension with Federal Rule of Evidence 408. Plaintiffs may not invoke a "statement made during compromise negotiations about" their reading of the Agreement. Fed. R. Evid. 408(a)(2). The Court should consider the perverse incentives created if everything that the Department voluntarily agrees to do or consider in the context of this action became enforceable by the Court.

**D. The Agreement Does Not Authorize Micromanagement of Internal Agency Affairs.**

Plaintiffs are wrong to argue that the Agreement compels the Secretary to "delegate[] authority to the Ombudsman's office[.]" ECF No. 552 at 11. They cite no provision of the Agreement compelling any such delegation. *See id.* And Plaintiffs have not demonstrated the elements of a material breach of Defendants' obligations as to each of the thirteen individuals that they identified in their notice of breach related to this issue.[16] *See supra* at pp. 7, 12-13; Odom Decl. ¶¶ 39-47.

**IV. Plaintiffs Fail to Establish Entitlement to an Injunctive Order Compelling Defendants to Take Further Actions for Each Allegedly Affected Individual on a New Schedule.**

The Agreement provides for limited jurisdiction to consider an order compelling Defendants to take further actions on a new schedule but does not compel the Court to issue such an order upon any determination of breach. Agr. ¶ V.B.2.i. Rather, an order compelling Defendants "to take a [specific] affirmative action" on a new schedule "is treated as a mandatory injunction[.]" *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015). Injunction and mandamus are never awarded as of right, and the Court's

---

*Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984). Even before the Supreme Court held that claims premised in estoppel will not run against the Government, *see Richmond*, 496 U.S. at 419-34, the Court has always maintained that a written instrument would be required to make out such a claim. *Heckler*, 467 U.S. at 65 ("[E]stoppel cannot be erected on the basis of . . . oral advice" and that is "especially true when a complex program . . . is involved[.]").

[16] Plaintiffs now raise that number to seventeen but have not identified the other individuals. *See* Odom Decl. ¶ 45. Plaintiffs cannot raise a breach claim in this motion as to individuals that they failed to identify in their allegations initiating the breach process under ¶ V.D.1. *Cf. Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 744-45 (9th Cir. 2025); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).

consideration of these remedies is guided by traditional standards. *See Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982); *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207-08 (D.C. Cir. 1985). And a request for "a mandatory injunction against a federal official is analyzed as one requesting mandamus." *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 918 n.1 (D.C. Cir. 1980).[17]

Mandamus is "'drastic'" and "'is hardly ever granted[.]'" *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023) (citation omitted). The standard is met only "when '(1) the plaintiff's claim is clear and certain; (2) the duty is ministerial and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available.'" *Harrell*, 52 F.3d at 1508 (citation omitted). And Plaintiffs "must additionally show 'compelling equitable grounds.'" *Ferriero*, 60 F.4th at 714 (citation omitted).

Plaintiffs fall well short of meeting this heavy burden here. First, courts may not enter such an order against the Secretary. In any event, Plaintiffs fail to make the required showings.

**A. 20 U.S.C. § 1082(a)(2) Precludes the Court from Entering Coercive Orders Against the Secretary of Education.**

Congress has provided that no "injunction" or "other similar process" shall "be issued against the Secretary[.]" 20 U.S.C. § 1082(a)(2). The statute precludes orders that are "plainly coercive" "no matter what name" the order is "given." *Am. Ass'n of Cosmetology Schs. v. Riley*, 170 F.3d 1250, 1254 (9th Cir. 1999); *see also* 5 U.S.C. § 702(2) *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013) (holding that § 1082 precluded entry of mandamus). Plaintiffs have not established that their requested orders can be entered without violating this provision.

**B. Plaintiffs Have Not Shown That a Legal Remedy for Damages is Inadequate.**

Plaintiffs seek an order compelling Defendants to issue checks for unspecified class members. ECF No. 552-3 ¶ 5. But they fail to show that a breach of contract claim for damages is inadequate.

"[T]here is a presumption . . . that a damages remedy will be available upon the breach of [a settlement] agreement." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (citation

[17] *See also Miguel v. McCarl*, 291 U.S. 442, 452 (1934); *Gaines v. Thompson*, 74 U.S. 347, 352 (1868); *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005); *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995); *Calvillo Manriquez v. Devos*, 345 F. Supp. 3d 1077, 1109-10 (N.D. Cal. 2018).

omitted).[18] No provision "expressly disavow[s] money damages" necessary to conclude otherwise. *See id*. Rather, class members did not "release any claim based on" "conduct occurring after" January 28, 2023. Agr. § VII. And such a claim "is an 'adequate remedy' that precludes an APA waiver of sovereign immunity[.]" *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1327 (Fed. Cir. 2004) (citation omitted). "[S]eeking specific performance" "to avoid the Tucker Act's limitation on money judgments" is "not allowed[.]" *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 143 (2d Cir. 1999).[19]

Nor may Plaintiffs validly argue that damages suits would be inadequate because proceeding in this action would be more effective or efficient. *See Council of and for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1532 (D.C. Cir. 1983) (rejecting arguments that compelled administrative resolution would mean "sooner" results). *Id*. Proceeding in this action would mean "supervis[ing] the [agency's] handling of virtually every alleged [individualized] violation." *Id*. Thus, pursuing relief in this case does "not necessarily obviate the need to return to court," but it "empower[s] one district judge to act as [a] supreme supervisor" of thousands of individualized refund disputes. *Id*. Even if "one nationwide suit would be *more effective* than several" individualized "suits, that does not mean that the remedy provided by Congress"—here in the Tucker Act or Little Tucker Act—"is *inadequate*." *See id*.[20]

**C. Plaintiffs Fail to Show a Clear and Plainly Prescribed Right to Relief.**

Plaintiffs fail to show a clear right to relief. Under this standard, courts "deny mandamus even if a [Plaintiffs'] argument, through pack[ing] substantial force,'" is "not clearly mandated" by the relevant authority. *Ferriero*, 60 F.4th at 714 (citation omitted). But Plaintiffs' theories that the administrative

---

[18] *See also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *LaBatte v. United States*, 899 F.3d 1373, 1378-79 (Fed. Cir. 2018) (holding class member may bring damages claim alleging breach of class action settlement with limited retention of jurisdiction provision); *Am. Science & Eng'g Inc. v. Califano*, 571 F.2d 58, 62 (1st Cir. 1978).

[19] *See also Pacito v. Trump*, 169 F.4th 895, 925 (9th Cir. 2026) (describing standard for disguised breach of contract claim); *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1055 (D.C. Cir. 2014) (rejecting claim that *Kokkonen* authorizes a reduction in "the scope of the Court of Federal Claims' jurisdiction"); *Munoz v. Mabus*, 630 F.3d 856, 863-64 (9th Cir. 2010) (settlement agreements enforceable under Tucker Act); *N. Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir. 1994); *Astakhov v. USCIS*, 698 F. Supp. 3d 135, 144-46 (D.D.C. 2023) (holding that a damages suit in the Court of Federal Claims provided an adequate remedy foreclosing specific relief for a refund).

[20] *See also Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (An "alternative remedy need not provide relief identical to [the] relief" sought to be adequate.).

process is part of terminal loan methodology, that the Department must refund amounts seized from paychecks or tax returns from commercial FFEL borrowers, or that the Department must re-issue fraudulently cashed checks are not even the best reading of the Agreement. *Supra* at pp. 7-18.

In all events, any requested orders unsupported by any legal basis should be denied. *See Harrell*, 52 F.3d at 1508. For example, an order compelling production of personally identifiable information, ECF No. 552-3 ¶ 12, is not the "only relief available" on this motion, Agr. ¶ V.B.2.i. And the material Plaintiffs ask the Court to order Defendants produce is considerably different than what the parties negotiated in the Agreement's information-reporting provisions. Agr. ¶ IV.G. *Infra* at pp. 23, 25. Plaintiffs brief does not describe any authority under which they are entitled to this material, let alone authority under which Defendants' duty to produce is clear and indisputable. *Ferriero*, 60 F.4th at 715.

**D. Plaintiffs are Asking for *Sweet* Class Member Applications to "Jump the Line."**

Plaintiffs also fail to show compelling equitable grounds for relief. Courts do not consider whether putative "sluggishness has violated a" deadline "but whether [the Court] should exercise [its] equitable powers to enforce" it. *See In re Barr Lab'ys*, 930 F.2d 72, 74 (D.C. Cir. 1991). When "a judicial order putting" an applicant "at the head of the queue simply moves all others back one space and produces no net gain[,]" mandamus is inappropriate. *See id*. at 75. Courts "will not award" "an injunction that would cause the plaintiff's application to 'jump the line[.]'" *Ferriero*, 60 F.4th at 715 (citation omitted).

Consider an order that the Ombudsman's office issue final decisions on applications for refunds addressing intermediary consolidation loans under the "administrative process." ECF No. 552 at 6-9. The Ombudsman has placed each application under that process into the same queue as all other individuals who submit inquiries and complaints to his office, including both *Sweet* and non-*Sweet* borrowers. Odom Decl. ¶¶ 60-61, 68-71. The Ombudsman anticipates that caseworkers will be assigned and will address each application under a first-in-first-out process with inquiries and complaints from both *Sweet* and non-*Sweet* borrowers to be addressed without discrimination in favor of or against the *Sweet* administrative process applicant. *Id*. "[A]djudicating applications in the order they were filed" is a process that courts "regularly" find to be reasonable. *Quiros v. Amador*, 715 F. Supp. 3d 31, 41 (D.D.C. 2023).

### E. The Court Should Not Compel Further Action Based on Claims So Tardy that It has Materially Prejudiced any Capacity to Process Refunds.

Plaintiffs also fail to show compelling equitable grounds, *Ferriero*, 60 F.4th at 713-14, for an order compelling further action insofar as the Department has been materially prejudiced by extreme delay. Consider Loritza Melendez. ECF No. 552-2 at 221-23 (ECF pagination). She defaulted on a $5000 loan in 1985 and, in 1988, her wages were garnished. *Id.* ¶ 10. But she waited about 32 years, until August 2020, to raise a borrower defense claim. *Id.* ¶ 5. Laches precludes an order addressing such an old claim.

Laches may be asserted based on a "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *New York v. Meta Platforms*, *Inc.*, 66 F.4th 288, 295 (D.C. Cir. 2023) (citation omitted).[21] The Court should deny Plaintiffs' motion insofar as it seeks refunds based on debt so old that Plaintiffs cannot explain how the record of refunds owed can be reconstituted.[22] The Supreme Court has found shorter delays than Ms. Melendez's to satisfy the first part of the laches test. *See*, *e.g.*, *U.S. ex rel. Arant v. Lane*, 249 U.S. 367, 371–72 (1919). And Ms. Melendez's 32-year delay is a "grossly unreasonably time" that undeniably prejudiced the Department's capacity to ascertain any refund amount owed. *See Gabster v. Mesaros*, 220 A.2d 639, 641 (Pa. 1966) (holding that a thirty-year delay relieves a defendant from pleading specific prejudice); *see* Jennings Decl. ¶ 103.

## V. Plaintiffs' Requested Reporting Orders are Not Appropriate.

Plaintiffs' requested reporting orders exceed the bounds of the Court's limited retention of jurisdiction to enforce the Agreement. *See* ECF No. 552-3 ¶¶ 6-13. Under ¶ V.B.2:

> "[T]he only relief available from the Court shall be an order requiring Defendants to promptly provide Full Settlement Relief to each affected individual on a schedule set by the Court. . . . In the event of such a Court order, Defendants will report to Plaintiffs' Counsel and the Court on its [sic] progress of issuing relief, as provided herein, to affected Class Members.

Agr. ¶ V.B.2. The Agreement thus plainly permits only one order, including a new schedule. *Id.* Upon entry of the only order available, the Department must report to counsel and the Court on progress. *Id.*

[21] The putative waiver of sovereign immunity for equitable relief, *but see* 20 U.S.C. § 1082(a)(2), incorporates a "duty" to "deny relief" on "any" appropriate "equitable ground[.]" 5 U.S.C. § 702(1). That includes the "defense of laches." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 155 (1967).

[22] This issue is particularly relevant to requests for orders compelling refunds on amounts garnished or offset under the legacy FFEL program.

But the parties did not agree that the Court retained jurisdiction to consider requests for injunctive orders regulating any obligation to provide that reporting. *Id.* ¶¶ V.A, V.E. *See* ECF No. 558 at 2-3, 19-21 (contempt opp). Rather, the parties agreed that "the Court shall retain jurisdiction only to order the relief explicitly specified for each particular claim" and "shall lack jurisdiction . . . to issue any other relief[.]" Agr. ¶¶ V.A.[23] The Department has access to only certain data in its immediate custody and control. Jennings Decl. ¶¶ 11-14, 85-94. The Agreement contemplates that it will exercise discretion in complying with additional reporting liability in a manner that is feasible and not unduly burdensome. Insofar as Plaintiffs' requested orders are intended to compel Defendants to create a system to report information that is unavailable to the Department, the mandamus factors do not support an order compelling the Department to create a new system.

In any event, Plaintiffs demand orders that fall outside Defendants' liability. Defendants are liable—beyond quarterly reports, Agr. ¶ IV.G—to report further only as to "affected Class Members[,]" *id.* ¶ V.B.2.ii—*i.e.* only those to whom the Court finds Defendants breached their obligations. But Plaintiffs' demands include, for example, DG-5 members—individuals who are not even addressed in the motion at all, ECF No. 552-3 ¶ 11. ECF No. 552 at 6 n.3.[24]

### VI. Any Order Compelling Defendants to Act on a New Schedule Should Describe in Detail the Specific Acts the Department is Required to Take.

If the Court decides to enjoin Defendants to take action on a new schedule, the Court should describe in detail and not merely by referring to the Agreement, the specific "acts" that the Department is "required" to take and the specific affected class members for whom the Department must take them. Fed. R. Civ. P. 65(d). For example, the Department could send a new set of instructions to the loan servicers to eliminate discharged debt from their systems of records or to package refund files. Jennings Decl. ¶¶ 23, 37-39, 58, 60, 71. And Department staff could approve refund files for affected class members that

[23] *See also Keepseagle v. Vilsack*, 815 F.3d 28, 33, 36 (D.C. Cir. 2016) (Because district courts "enjoy no free-ranging 'ancillary' jurisdiction to enforce" settlements and "are instead constrained by the terms of the [agreement] and related order[,]" the Court must enforce an "exceedingly narrow[]" retention of jurisdiction provision. (citation omitted)); *cf. Lane v. Pena*, 518 U.S. 187, 197 (1996) ("[R]emedies are not those that are 'appropriate' but only those for which sovereign immunity has been expressly waived" (citation omitted)).

[24] Again, Defendants did not agree to court orders compelling information production other than that available under ¶ V.3—a claim that Plaintiffs do not bring in this motion.

it has received from a servicer and send them to the Treasury by a certain deadline. *See id*. But to enjoin the Secretary her subordinates—enforceable under threat of contempt—for the inactions of "some third party not before the court," despite the Department's explicit instructions would not only present Article III issues, *see Murthy v. Missouri*, 603 U.S. 43, 57 (2024), but raise the prospect that the Department's employees risk contempt despite taking all reasonably identifiable steps to effectuate relief.

Insofar as third parties in the federal student loan ecosystem—loan servicers, guaranty agencies, or private lenders—have failed to take necessary steps despite the Department having instructed or requested as much, there is no Article III basis to enter the only relief available. *See* Agr. ¶ V.B.2.i. Servicers must "process discharges after receiving specific lists of loans to discharge." *See Maldonado v. Higher Educ. Loan Auth. of the State of Mo.*, No. 24-cv-07850-VC, 2026 WL 682207, at *1 (N.D. Cal. Mar. 10, 2026). Because the entities that must update their systems—and update NSLDS—to account for discharge status, *see* Jennings Decl. ¶ 71, are "not parties to the case, the [Court may] afford relief only against the Secretary[.]" *Lujan v. Defs of Wildlife*, 504 U.S. 555, 568 (1992). But issuing mandatory injunctions against the Department after a servicer's inadequate response to instructions has "obvious difficulties [as to] proof of causation or redressability." *Id*. A plaintiff is normally responsible for identifying the "circumscribed" and "discrete" action an agency must take. *Norton*, 542 U.S. at 62. And third parties are not "obliged to honor an incidental legal determination th[is] suit produce[s]." *Lujan*, 504 U.S. at 569.[25] The Government is not liable for the conduct of institutional agents falling outside of the scope of their authority. *Faiella v. Fed. Nat'l Mortg. Ass'n*, 928 F.3d 141, 143 (1st Cir. 2019). "[F]ederal courts" do not usually "oversee the overseer." *Coker v. Sullivan*, 902 F.3d 84, 89 (D.C. Cir. 1990).[26]

## VII. Insofar as Plaintiffs Are Seeking Discovery, Such an Order Would Be Inappropriate.

The Court should not order Defendants to produce considerable materials not contemplated by the Agreement. ECF No. 552 at 11. First, an order compelling Defendants to produce materials is not the only relief available on this motion. Agr. ¶ V.B.2. If Plaintiffs believe they have a legal basis to compel

---

[25] *See also Haaland v. Brackeen*, 599 U.S 255, 292-93 (2023) ("[E]njoining the federal parties would not remedy the alleged injury, because" third parties "carry out the court-ordered placements").

[26] If the agent "is not doing the business which the sovereign has empowered [it] to do or [it] is doing it in a way which the sovereign has forbidden" then it "may be made the object of specific relief." *See Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949).

discovery, they should file a motion articulating the legal and factual basis. Fed. R. Civ. P. 7(b)(1).

Second, these demands undermine the parties' Agreement, which includes negotiated information-reporting provisions. Agr. ¶ IV.G. Plaintiffs' demands for other information, including a "class list, outcome data for [DGs] . . . and the Post-Class, and refund 'census' data[,]" ECF No. 552 at 11, differ from what the parties agreed on in this area. Agr. ¶ IV.G.

Third, Section V only authorizes requests for one order addressing additional information, *id.* ¶ V.B.3, and precludes "authority to issue any other relief," *id.* ¶ V.A. "Who would sign a [settlement] if district courts had free-ranging interpretive or enforcement authority untethered from the [agreement's] negotiated terms?" *See Keepseagle v. Perdue*, 856 F.3d 1039, 1049 (D.C. Cir. 2017) (citation omitted).

Finally, even if the Court retained jurisdiction to compel post-judgment discovery—which it did not—Plaintiffs do not meet the "high standard" needed "to warrant such a 'substantial intrusion' into the Executive's functioning." *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 578 (2025) (citation omitted). Plaintiffs may not "rummage through the internal processes of an administrative agency, searching for some irregularity, or the hint of one, on which to base a challenge." *Braniff Airways, Inc. v. Civ. Aeronautics Bd.*, 379 F.2d 453, 462 (D.C. Cir. 1967).

Defendants' declarations "are accorded a presumption of good faith" and "cannot be rebutted by purely speculative claims." *Smart-Tek Servs., Inc. v. IRS.*, 829 F. App'x 224, 225 (9th Cir. 2020) (citation omitted). Speculation that more data might "identify gaps"—no matter how minor—is insufficient. ECF No. 552 at 11-12. "[T]he administrative difficulty of implementing a policy" affecting a "massive" population is not the type of improper behavior justifying the pervasive oversight demanded. *Samma v. Dep't of Def.*, No. 1:20-cv-1104 (RDM), 2022 WL 1449404, at *3 (D.D.C. Mar. 22, 2022).

Plaintiffs are dissatisfied that the Department's databases are far from failproof, ECF No. 552 at 12, due to the complex nature of the federal student loan ecosystem, Jennings Decl. ¶¶ 86-95. But the Department's reliance on the best available data is not the type of bad faith or otherwise improper conduct justifying a searching inquiry. *Cf. City of New York v. U.S. Dep't of Def.*, 913 F.3d 424, 433-34 (4th Cir. 2019).

Dated: October 1, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 514-4964
E-mail: liam.c.holland@usdoj.gov

*Attorneys for Defendants*