EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS (*pro hac vice*)
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
NOAH ZINNER (SBN 247581)
nzinner@ppsl.org
PROJECT ON PREDATORY STUDENT LENDING
769 Centre Street
Jamaica Plain, MA 02130
Tel.: (617) 390-2669
Fax: (781) 218-9625

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA SWEET, ALICIA DAVIS, TRESA APODACA, CHENELLE ARCHIBALD, DANIEL DEEGAN, SAMUEL HOOD, and JESSICA JACOBSON on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>LINDA MCMAHON, in her official capacity as Secretary of the United States Department of Education, and<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | Case No. 19-cv-03674-HSG<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>Date: November 5, 2026<br>Time: 2:00 p.m.<br>Location: Courtroom 2, 4th Floor<br><br>Assigned to Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS


I. ARGUMENT ........................................................................................................ 1

A. The Department Admits That It Has Not Effectuated Full Settlement Relief for All Eligible Class Members by the Applicable Due Dates. ................................................ 1

B. Failure to Provide Relief to Any Individual Class Member by the Applicable Due Date Constitutes a Material Breach of the Settlement. .......................................................... 3

1. *The Department Misreads the "Immateriality" Defense* ........................................ 3

2. *The Department Has Not Taken "All Steps Necessary" to Effectuate Relief* ......... 5

C. The Court Has Authority to Provide the Relief Requested. ........................................... 6

1. *Individual Lawsuits and Damages Remedies Are Foreclosed by the Settlement* ... 6

2. *An Order Under Paragraph V.B.2 Is Not in the Nature of Mandamus* ................. 8

3. *The Department Ignores the "Report" Clause* .................................................... 10

D. The Department's Arguments About Particular Enforcement Issues Are Incorrect at Best, Misrepresentations at Worst. ................................................................. 11

1. *The Administrative Process Is Part of Calculating Class Members' Refunds.* ... 11

2. *TOP/AWG Payments Toward FFEL Loans Are Refundable Payments.* ............. 13

3. *The Department's Remaining Arguments Are Unsupported and Unavailing* ..... 14

II. CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265 (9th Cir. 1996) ........ 11

*California v. Randtron*, 69 F. Supp. 2d 1264 (E.D. Cal. 1999), *aff'd*, 268 F.3d 891 (9th Cir. 2001), *opinion amended and superseded on denial of reh'g*, 284 F.3d 969 (9th Cir. 2002)...... 9

*Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025) ........ 10

*Christopher Village, L.P. v. United States*, 360 F.3d 1319 (Fed. Cir. 2004)........ 7

*Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867 (1984)........ 8

*Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521 (D.C. Cir. 1983) ........ 8

*Erheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ........ 9

*Garcia v. Google*, 786 F.3d 733 (9th Cir. 2015)........ 9

*Hiser v. Franklin*, 94 F.3d 1287 (9th Cir. 1996)........ 8

*Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011) ........ 7

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593 (7th Cir. 2015) ........ 4

*Houghton v. South*, 965 F.2d 1532 (9th Cir. 1992) ........ 4

*Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023) ........ 8

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355 (3d Cir. 2001) ........ 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 975 F.3d 770 (9th Cir. 2020) ........ 11

*Kinan v. Cohen*, 268 F.3d 27 (1st Cir. 2001)........ 9

*LaBatte v. United States*, 899 F.3d 1373 (Fed. Cir. 2018)........ 7

*Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917 (D.C. Cir. 1980) ........ 9

*Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075 (9th Cir. 1996)........ 5

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) ........ 8

*Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499 (9th Cir 1995) ........ 8

*Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Lab'ys, Inc.*, No. 21-2530, 2023 WL 3983877 (D.N.J. June 13, 2023) ........ 4

*Presidential Gardens Assocs. v. United States*, 175 F.3d 132 (2d Cir. 1999) ............................... 7

*Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028 (9th Cir. 2009)........................................... 14

*Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985)...................................................... 9

*Science & Eng'g, Inc. v. Califano*, 571 F.2d 58 (1st Cir. 1978)................................................... 8

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ................................................ 8

*Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024)....................................................................... 9

*Tiernan v. Devoe*, 923 F.2d 1024 (3d Cir. 1991)............................................................................. 4

*Vill. of Kaktovik v. Watt*, 689 F.2d 222 (D.C. Cir. 1982)............................................................. 9

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ................................................................. 9

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... 3, 4, 8

Plaintiffs' Motion to Enforce the Settlement (ECF 552, "Motion") is simple. In the Settlement Agreement in this case, the Department of Education ("Department") committed to provide Full Settlement Relief to all eligible Class Members by certain deadlines. The Department did not do so. That failure constitutes a breach of the Settlement as to each Class Member whose relief is incomplete and overdue. Pursuant to the Settlement's enforcement procedures, Plaintiffs seek an order from this Court requiring the Department to promptly provide the missing relief to each affected Class Member on a schedule set by the Court, and to report to Plaintiffs' Counsel and the Court on its progress of issuing that relief in a manner tailored to ensure accountability.

The Department's opposition (ECF 559, "Opp.") tries to make this complicated. It invokes standards from all corners of case law—summary judgment, mandamus, preliminary injunctions, even the Federal Tort Claims Act—that have nothing to do with this case's facts or procedural posture. It twists the actual facts and procedural history of the case until they are unrecognizable. The Department's own evidence demonstrates that there are Class Members who have not yet received Full Settlement Relief despite the applicable deadlines expiring. The Department's arguments, in short, are misleading, inaccurate, inapposite, or a combination of the three.

The Court should look past the Department's attempts to muddy the waters. As demonstrated in its opposition, the Department has now moved from its prior position of working with Plaintiffs to comply with the terms of the Settlement (and subsequent court orders) to arguing that it is no longer obligated to do so. Through this conduct, the Department has made clear that it will not complete its job unless and until this Court again orders it to do so on a revised timeline. Plaintiffs seek such an order, and the Settlement authorizes one. The motion should be granted.

## I. ARGUMENT

### A. The Department Admits That It Has Not Effectuated Full Settlement Relief for All Eligible Class Members by the Applicable Due Dates.

Paragraph V.B.2 of the Settlement states that "Plaintiffs may bring a claim alleging that Defendants have materially breached" the Settlement "by failing to effectuate relief within the prescribed time periods for ***any individual*** who is entitled to receive relief" (emphasis added). Plaintiffs have shown, and the Department's evidence supports, that hundreds of individuals have

not received the Full Settlement Relief to which they are entitled by the applicable deadlines.

First, the Department acknowledges that 1,051 Class Members had overdue relief as of May 2026, just as Plaintiffs alleged. *See* Declaration of Colby Jennings ¶¶ 67–69 (ECF 559-1, "Jennings Decl."). The Department now claims that it has completed relief for most of them—although it does not specify how many, because the Jennings Declaration switches between reporting on numbers of borrowers and numbers of loans. *See id.* ¶¶ 70-71, 79, 82. The declaration does, however, establish that 296 commercially held FFEL loans, associated with somewhere between one and 294 Class Members, remain outstanding, *id.* ¶ 70, even though Full Settlement Relief explicitly includes the discharge of FFEL loans.[1]

Second, the Department acknowledges that *none* of the Class Members who filed declarations in support of Plaintiffs' Motion can be confirmed to have received Full Settlement Relief. *See* Declaration of Christian Odom Ex. D (ECF 559-2, "Odom Decl."). At least eight of these declarants are *not* awaiting relief on commercially held FFEL loans, and thus are not included in Mr. Jennings's tally of undelivered relief. *See id.* Ex. D ¶¶ 7, 8, 12, 14, 16, 20, 21, 22. Mr. Odom also points out several other Class Members identified by Plaintiffs who likewise lack Full Settlement Relief and were not included in Mr. Jennings's FFEL count. *See id.* ¶ 44 tbl. 1. Mr. Odom likewise admits that not a single refund has yet issued under the Administrative Process. *Id.* ¶ 72. There are at least 583 Class Members awaiting the Administrative Process, another 283 who might need Administrative Process review, and 1,872 who are awaiting refund review outside the Administrative Process. *See* Declaration of Nicole Camargo Almeida ¶ 77 (ECF 552-2, "Almeida Decl."). This does not even count Administrative Process needs for Decision Group Four, members of which have not yet received notice of their eligibility to request it. *Id.* ¶ 25.

While Mr. Odom offers generalizations about "many" Class Member complaints to the Ombudsman's Office that, according to him, did not result in the identification of missing relief,

[1] *See* Settlement Agreement II.S ("Full Settlement Relief" defined to include "discharge of all of a Class Member's Relevant Loan Debt"); II.W ("Relevant Loan Debt refers to Direct Loans or FFEL loans associated with the school that is the subject of the Class Member's borrower defense application."). Two additional Class Members from this cohort of 1,051 might still be missing refunds. *See* Jennings Decl. ¶ 82.

*see* Odom Decl. ¶¶ 15–16, he does not provide any quantification of those claims. He does not identify numbers or types of outstanding complaints where he knows, for a fact, that Full Settlement Relief is complete. He offers, in short, no reason to doubt that a significant number of Class Members with pending Ombuds complaints, including requests for the Administrative Process, are in fact owed relief that they should have already received.

**B. Failure to Provide Relief to Any Individual Class Member by the Applicable Due Date Constitutes a Material Breach of the Settlement.**

From the above, a straightforward conclusion follows: Plaintiffs have established that the Department is in material breach of the Settlement under Paragraph V.B.2. The Department attempts to avoid this conclusion with a tortured reading of the Settlement that would render its promise to provide relief illusory.

***1. The Department Misreads the "Immateriality" Defense***

The Department first suggests that once it has provided relief to most Class Members, it cannot be held responsible for providing timely relief to the rest. *See* Opp. 3–6. The Department couches this facially absurd argument in the language of materiality, claiming that while Plaintiffs can allege a breach as to "any individual," the Department can rebut those allegations by showing substantial compliance with its obligations "to the class," thus rendering any individual breaches "immaterial." *Id.* at 3–4. That is not what the parties agreed to.

As Plaintiffs have already explained, *see* Mot. at 16–19, there is no "substantial compliance" defense to a claim of breach under the Settlement.[2] And for good reason: if the Department could rebut an allegation of material breach *as to an individual* with an argument of substantial compliance *as to the class*, it would permit the Department to withhold relief from any individual Class Member once it reached some unspecified threshold of relief completion. That would render illusory Paragraph V.B.2's ability to enforce the right to timely relief for "*any individual who is entitled to receive relief*" under the Settlement. "Immateriality" within the

[2] The Department responds to this fact by arguing that "'[s]ubstantial compliance' is a defense to a motion to enforce an injunction, such as one that may have been entered under Rule 23(b)(2) had the case been litigated." Opp. 6. Of course, this case was not litigated to judgment—that is why the parties are here on a motion to enforce a settlement agreement.

meaning of Paragraph V.C must therefore be read with respect to each Class Member.

But the Department does not even try to explain how its breaches with respect to Class Members who are missing relief are immaterial *to those Class Members*.[3] Instead, the Department tries to shift that burden to Plaintiffs, through a convoluted argument that this Motion is somehow the equivalent of a motion for summary judgment. *See* Opp. 2, 4 n.2, 5, 12. It is not. The Department badly misreads the case law it cites: *Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Laboratories, Inc.*, No. 21-2530, 2023 WL 3983877 (D.N.J. June 13, 2023), the only case the Department cites for its supposed summary judgment standard (Opp. 2), is an out-of-circuit district court decision that involved a settlement the court had never before considered until one of the parties re-opened a voluntarily dismissed case and requested enforcement. *Id.* at *1–2. Under those circumstances, the court analogized between "summary enforcement" of the settlement and summary judgment on the merits, because "both deprive a party of his right to be heard in the litigation." *Id.* at *2. Here, of course, the Court approved the Settlement under Fed. R. Civ. P. 23 after both parties, as well as multiple non-parties, had been heard at length. *See generally* Order Granting Final Approval, ECF 345. Moreover, the case on which *Ortho-Clinical* relied, *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991), concerned the legal standard where there are disputes of material fact as to the ***validity*** of a settlement. No one disputes the existence or terms of the *Sweet* Settlement, or even the fact that some Class Members haven't yet received Full Settlement Relief—this dispute is solely about what the Court should order under the Settlement's breach provisions. Neither of these cases comes anywhere close to establishing that allegations of breach must be proved to the standard of a "directed verdict." Opp. 12.[4]

---

[3] The Department makes a single gesture in this direction, arguing that one Class Member is owed only $45 out of more than $40,000 in refunds. Opp. 7. The Odom Declaration, however, includes many more examples of larger relief gaps, both in absolute dollar amount and percentage missing. *See, e.g.*, Odom Decl. ¶ 44 tbl. 1 (identifying Class Members owed discharges or refunds from $503.72 to $23,183.16); *id.* Ex. D (identifying multiple Class Members who have received zero percent of their refunds and are owed amounts ranging from 'unknown' to $13,379).

[4] The cases cited at Opp. 12 & n.10 fare no better; in fact, they are somehow even less relevant than *Ortho-Clinical* and *Tiernan*. *Houghton v. South*, 965 F.2d 1532 (9th Cir. 1992), is about the standard for overcoming qualified immunity. *Hotel 71 Mezz Lender LLC v. National Ret. Fund*, 778 F.3d 593 (7th Cir. 2015), is an appeal of a *sua sponte* summary judgment ruling in a UCC

Notwithstanding its attempt to invent a new legal standard of review, the Department remains in sole possession, custody, and control of the information it claims is necessary to determine which Class Members are still missing Full Settlement Relief (*see* Opp. 12). It is misleading for the Department to claim that Plaintiffs have not provided evidence of missing relief when (1) as explained above, its own evidence confirms that Plaintiffs identified hundreds of cases of missing relief, and (2) the Department, in a deliberate break from procedures established pursuant to previous Court orders and oversight, now refuses to provide the data necessary to identify other instances of missing relief. *See* Mot. 11–12; Pls.' Motion for Contempt and Sanctions at 3–4, ECF 553 ("Contempt Mot.").

***2. The Department Has Not Taken "All Steps Necessary" to Effectuate Relief***

The Department tries to transform the Settlement's instruction that it must take "all steps necessary" to effectuate Full Settlement Relief (Settlement ¶ IV.F.1) into a shield, arguing that once it takes *some* steps toward delivering relief, it need not know or care whether that relief gets delivered to Class Members. *See* Opp. 2–3, 24. But the Department has, definitionally, not taken "all steps necessary" to effectuate relief when that relief has not actually been effectuated.

The Department's declarations show that, after Plaintiffs served their notice of material breach (and in some cases after the Motion was filed), additional "steps" were taken to deliver relief to some Class Members, and as a result of those steps, more of the required relief was in fact delivered. *See* Jennings Decl. ¶¶ 73–78, 83 (describing additional meetings with and instructions to servicers); Odom Decl. ¶¶ 44, 48 & Ex. D (describing additional research and instructions to servicers). It is thus clear from the Department's own evidence that the Department failed to take "all steps necessary" toward remedying the situation until Plaintiffs threatened Court intervention. Mr. Odom likewise identifies specific additional "steps" that must be taken to complete relief that is still due to a number of Class Members. *See* Odom Decl. ¶ 44 tbl. 1. Such "steps" are undoubtedly required for other Class Members awaiting Ombuds review of their cases as well.

---

case. *Nelson v. Pima Community College*, 83 F.3d 1075 (9th Cir. 1996), concerns a summary judgment ruling on an employment discrimination claim.

The Jennings Declaration similarly undermines the Department's claim that "all steps necessary" to complete overdue discharges of FFEL loans means simply sending a message to the guaranty agencies ("GAs") and then hoping for the best. *See* Opp. 3 n.1. Mr. Jennings avers that "the GAs have thus far cooperated with the Department's requests to carry out the steps needed to address borrowers with FFEL loans." Jennings Decl. ¶ 37. There is no reason to believe, based on this record, that the GAs would change their practices and refuse to cooperate with the Department to expedite overdue discharges.

**C. The Court Has Authority to Provide the Relief Requested.**

The Settlement specifically provides that, if Plaintiffs prevail on a claim that the Department failed to deliver Full Settlement Relief to eligible Class Members by the applicable deadlines, then the Court shall issue an "order requiring Defendants to promptly provide Full Settlement Relief to each affected individual on a schedule set by the Court," and "[i]n the event of such a Court order, Defendants will report to Plaintiffs' Counsel and the Court on its progress of issuing relief." Settlement ¶ V.B.2.i–ii. A timeline and reporting are precisely what Plaintiffs seek here. And the history of this case shows that such orders have been successful: for quite some time, Judge Alsup's Settlement enforcement orders averted the need for Plaintiffs to bring a motion to enforce every time a Class Member (or even hundreds of Class Members) didn't receive relief on the timelines established in the Settlement.[5] The Department's arguments that the Settlement does not authorize this result are disconnected from both the text of the Settlement and the law.

***1. Individual Lawsuits and Damages Remedies Are Foreclosed by the Settlement***

The Department's suggestion that, instead of following the enforcement procedures laid out in the Settlement, Class Members must file their own individual lawsuits to enforce their Settlement rights (Opp. 6–7 & n.5, 19–20) is contrary to both the Settlement itself and basic class

[5] As these orders show, the "reporting" does not have to be in the form of a Court filing to be effective—the parties' monthly in-person meetings and ombuds meetings are forms of Defendants reporting to Plaintiffs on their progress of issuing relief to borrowers, and the parties were able to resolve many problems in those meetings. However, as recent developments have shown, these practices only function to the extent that the Department accepts its obligation to follow the orders and act cooperatively. *See generally* Contempt Mot.

action procedure. As to the former, Paragraph IX.A states:

> Plaintiffs hereby covenant not to commence any action, claim, suit, or administrative proceeding against Defendants related to the non-performance, failed performance, or otherwise unsatisfactory performance in fulfilling their duties and responsibilities under this Agreement; provided, however, that Plaintiffs may initiate an action against Defendants pursuant to the continuing jurisdiction of the Court to compel Defendants' performance of their obligations under this Agreement, but only as expressly articulated in this Agreement in Paragraph V, above.

The Settlement thus clearly prohibits separate suits to enforce its terms.

Nor can the Department, with a straight face, argue that there are damages remedies available for Settlement violations. *See* Opp. 19–20. In addition to the paragraph quoted above, the Settlement explicitly reserves the Paragraph V remedies as the sole remedies for the Department's failure to deliver relief. *See* Settlement ¶¶ V.B ("The only claims permissible to enforce this Agreement are as follows . . . ."); V.D ("The exclusive procedure for bringing a claim to enforce the terms and conditions of this Agreement shall be as follows . . . ."). The presumption of damages in *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (cited at Opp. 19), is thus conclusively rebutted by the plain language of the Settlement.

The cases the Department cites are not to the contrary. In *LaBatte v. United States*, 899 F.3d 1373 (Fed. Cir. 2018), for instance, the district court relinquished jurisdiction over a settlement except as to the distribution of money from a fund, *see id.* at 1377, and the settlement did not contain any language barring individual damages claims based on other types of breaches, as Paragraph IX.A does here, *see id.* at 1378. The posture is even further afield in *Presidential Gardens Assocs. v. United States*, 175 F.3d 132 (2d Cir. 1999), which concerned an action in which the United States sued and then settled with property developers under the National Housing Act for the recovery of misused funds, *see id.* at 136–39. Once again, the settlement at issue did not contain any provisions barring claims for money damages, nor specifically provide for any post-judgment procedures. Other cases the Department cites bear even less resemblance to the facts or law at issue here: they do not involve settlements at all, or APA claims, or class claims. *See, e.g.*, *Christopher Village, L.P. v. United States*, 360 F.3d 1319, 1327–28 (Fed. Cir. 2004) (claim for breach of contract between landlord and HUD must be heard in Court of Claims); *Science & Eng'g,*

*Inc. v. Califano*, 571 F.2d 58, 62 (1st Cir. 1978) (same, for patent contract between researcher and Department of Health, Education & Welfare); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (setting out standard for equitable relief under California's Unfair Competition Law in diversity action in federal court); *Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1525 (D.C. Cir. 1983) (affirming dismissal for failure to state a claim).

More generally, the Department confuses the standard for certification of a class with the standard for material breach of the Settlement. *See* Opp. 5–6, 20. The question whether this Settlement complies with Fed. R. Civ. P. 23(b)(2) has long since been settled. It does. *See* Order Granting Final Approval, ECF 345 at 21. Having agreed to provide specific measures of relief to eligible Class Members, and to be accountable to Plaintiffs via the Paragraph V procedures when it fails to do so, the Department cannot now claim that fulfilling its Settlement obligations raises individualized issues that are inappropriate for resolution in a class action proceeding.[6] The moment for such an argument was prior to settlement in June or November 2022, not now.

***2. An Order Under Paragraph V.B.2 Is Not in the Nature of Mandamus***

The Department again attempts to distract from the relevant issues by arguing that any order directing it to comply with the Settlement is a mandatory injunction subject to the standards of mandamus. Opp. 18–19. Once again, the Department is far off base. None of the cases the Department cites have anything to do with enforcement of a settlement that was signed by the government and approved by a court. Most involve cases where a litigant explicitly sought mandamus relief and litigated that request to judgment. *See, e.g.*, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 60–61 (2004); *Illinois v. Ferriero*, 60 F.4th 704, 709–10 (D.C. Cir. 2023); *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1502 (9th Cir 1995); *Nat'l Wildlife Fed'n v. United*

[6] *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867 (1984), is wholly inapposite. That case did not concern a class settlement; rather, it asked whether individual plaintiffs could maintain separate discrimination claims against their employer after a court had found in favor of the employer on a class basis in a pattern-or-practice claim. *See id.* at 880; *see also Hiser v. Franklin*, 94 F.3d 1287, 1289 (9th Cir. 1996) (cited at Opp. 6) (inmate's access-to-courts claim was not barred by res judicata based on earlier class action that addressed similar, but not identical, claims about prison conditions). Here, there are no further or separate claims to litigate—there is only the Department's obligation to deliver on its promises.

*States*, 626 F.2d 917, 922–23 (D.C. Cir. 1980). Others involve litigants seeking preliminary injunctions. *See, e.g.*, *Starbucks Corp. v. McKinney*, 602 U.S. 339, 342 (2024); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 310–11 (1982); *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015). Some are fully out of left field. *See Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985) (analyzing interaction between sovereign immunity waivers in Alien Tort Statute and APA).

What these cases have in common is that none of them feature a situation where the government agreed, in a binding Settlement, to take the exact actions that it now resists taking, and where that Settlement was incorporated into a final judgment with continuing jurisdiction for enforcement. The government, like any party, must honor the terms of a settlement agreement, and the Court can enforce those terms. *See, e.g.*, *California v. Randtron*, 69 F. Supp. 2d 1264, 1268 (E.D. Cal. 1999), *aff'd*, 268 F.3d 891 (9th Cir. 2001), *opinion amended and superseded on denial of reh'g*, 284 F.3d 969 (9th Cir. 2002) ("A federal district court has the power to enforce the terms of a settlement agreement if the agreement either (1) is incorporated into the court's final judgment; or (2) provides expressly for continuing jurisdiction over disputes arising out of the settlement."); *Kinan v. Cohen*, 268 F.3d 27, 33 (1st Cir. 2001) ("[W]e reject the government's argument, unfortunately made to us, that while [plaintiff] is bound by his agreement to dismiss the action, the government is not bound by its undertakings in the agreement. The government is bound and must pay the sum it agreed to and honor the other terms."); *Vill. of Kaktovik v. Watt*, 689 F.2d 222, 234 (D.C. Cir. 1982) (Greene, J., concurring in part and dissenting in part) ("There is no question that a settlement agreement is a contract which, like any other contract, may not be unilaterally rescinded. . . . That principle applies to the government as to any other party . . . ." (citing *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977))); *cf. Erheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d Cir. 2010) ("It is essential that the parties to class action settlements have complete assurance that a settlement agreement is binding once it is reached." (citation omitted)).

The Department committed to effectuating Full Settlement Relief for all eligible Class Members. It cannot argue that a court order to do exactly that, entered pursuant to procedures that it consented to, is subject to an inapposite set of legal standards that the parties did not incorporate into the Settlement. "[B]y entering into the" Settlement, "in their quest to dismiss the underlying

action with prejudice, Defendants likely waived their . . . argument" that the remedies Plaintiffs seek are barred by limitations on the Court's ability to require Department action; "[i]ndeed, well before Defendants agreed to be bound by the [Settlement], they had raised this exact argument before the district court on at least two separate occasions," then "later abandoned this argument to obtain the benefits of settlement." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1056 (7th Cir. 2025); *see* Defs.' Mot. for Summ. J. at 15–16, ECF 63 (raising anti-injunction argument); Defs.' Opp. to Pls.' Mot. for Summ. J. at 25–27, ECF 249 (same). To the extent the Department might have ever succeeded in resisting an order to deliver relief to Class Members on mandamus or anti-injunction grounds, the Settlement "is a textbook example of an intentional relinquishment of" that argument. *Castañon-Nava*, 161 F.4th at 1056 (quotation omitted).

#### *3. The Department Ignores the "Report" Clause*

The Department complains that an order to report on its progress of delivering relief would "exceed the bounds of the Court's limited retention of jurisdiction to enforce the Agreement." Opp. 22. But such reporting is explicitly provided for under Paragraph V.B.2, which states that, once the Court finds the Department in breach and orders a schedule, "Defendants will report to Plaintiffs' Counsel and the Court on its progress of issuing relief." Settlement ¶ V.B.2.ii.[7] Such "report[ing]" is precisely what Judge Alsup ordered when he required the Department to appear for in-person meetings with Plaintiffs' Counsel and regular status conferences with the Court, and when he issued several orders for the Department to provide information in connection with those meetings and hearings. If the Department took issue with this understanding of the "reporting" provision, the time to protest was more than two years ago when those orders were entered. The Department's course of performance shows it understood and complied with those orders until its commitment to cooperation with Plaintiffs on Settlement effectuation plummeted in early 2026.[8]

---

[7] The clause does not limit the Court to ordering reporting in the form already required under Paragraph IV.G. *See* Opp. 23. Indeed, such a reading would impermissibly render Paragraph V.B.2.ii surplusage, because the Department must make the IV.G reports regardless of whether it has been found in breach.

[8] For a more detailed discussion of these events, see Plaintiffs' Reply in Support of Motion for Contempt and Sanctions, filed simultaneously herewith.

*See* Almeida Decl. ¶¶ 30–81.

Moreover, the Court's prior orders, just like the reporting orders that Plaintiffs seek now, are appropriate as an exercise of the Court's inherent authority to ensure compliance with its judgment.[9] *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 975 F.3d 770, 775 (9th Cir. 2020) (federal district court has authority to enforce its order approving a settlement "to protect the integrity of a complex class settlement over which it has retained jurisdiction" (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 367–68 (3d Cir. 2001))); *see also* Mot. 15–16.

### D. The Department's Arguments About Particular Enforcement Issues Are Incorrect at Best, Misrepresentations at Worst.

#### *1. The Administrative Process Is Part of Calculating Class Members' Refunds.*

To be clear, the relevance of the Administrative Process is not the mechanics of the process itself, but that it was the process the parties agreed on to deliver Full Settlement Relief to Class Members with intermediate mixed consolidation loans. The Department's belated realization that it lacks complete and reliable payment histories for many of these loans made the calculation of refunds time-consuming or, often, impossible for this set of Class Members. *See* Almeida Decl. ¶¶ 24–25, 78–79 & Ex. 13; Declaration of Rebecca C. Ellis in Support of Plaintiffs' Reply Briefs ¶ 20 ("Ellis Decl."), filed herewith. The Department's failure to institute this negotiated policy means that Full Settlement Relief for affected borrowers is presumptively incomplete.

Both the Jennings and Odom Declarations support Plaintiffs' point that the Administrative Process is part of delivering Full Settlement Relief and not, as the Department claims, a "new

---

[9] While it is true that a court's retention of ancillary jurisdiction is discretionary, *see* Opp. 6, there is no dispute here that the Court did exercise that discretion, *see* Final Judgment, ECF 346, and has never relinquished jurisdiction. Nor would relinquishing jurisdiction now be appropriate under *Arata v. Nu Skin International, Inc.*, 96 F.3d 1265 (9th Cir. 1996) (cited at Opp. 6), because here the Defendants have not "satisfied their obligations under" the Settlement, *id.* at 1269. *See also* Settlement ¶ XI ("Plaintiffs' claims in this Action are dismissed with prejudice, except that the Court shall retain limited jurisdiction for the sole purpose of enforcing the terms of this Agreement . . . Once Defendants have . . . effectuated all appropriate relief to Class Members and Post-Class Applicants, the Parties will file a notice with the Court. Upon the date of that notice, the Court's jurisdiction over this Action shall completely terminate.").

administrative proceeding" (Opp. 8). Both Mr. Jennings and Mr. Odom explain that when a Class Member has more than one instance of consolidation in their borrowing history, their payments during each consolidation phase included payments toward Relevant Loan Debt, and therefore those payments must be refunded. *See* Jennings Decl. ¶ 33 ("If the consolidation loan into which the [*Sweet*-]eligible loan was consolidated is not the borrower's current loan—that is, if the eligible loan was consolidated more than once, or even multiple times . . . then there are additional steps that must be taken for the process to be completed. Specifically, the steps . . . must be repeated by the consolidation originator/servicer of each consolidation loan until the requisite adjustments, refunds, and credit updates have been made . . . ."); Odom Decl. ¶ 55 ("The administrative process was intended to provide a methodology for determining whether payments made on such an intermediary loan included payments attributable to *Sweet*-eligible debt for which the borrower might be entitled to an additional refund."). Refunds on intermediate consolidation loans are thus an integral part of Full Settlement Relief as defined in the Settlement.

The Department mischaracterizes or flatly misstates multiple parts of the procedural history in this case in its effort to rewrite the Administrative Process as unrelated to the refunds that Class Members are owed. *See* Opp. 8–11. This is a new position, inconsistent with the Department's approach to Settlement relief until recently. For example, in a letter to Plaintiffs' Counsel on July 9, 2024, the Department included its views on the Administrative Process in a discussion of the "terminal loan" process, and wrote: "[T]he Department believes that the completion of the administrative process should constitute the final determination regarding the borrower's receipt of full settlement relief." Ellis Decl. Ex. 6 at 2. In a hearing on April 15, 2025, the Department's counsel affirmed that the parties were using "the Exhibit C approach that the Court ordered"—that is, the terminal consolidation discharge methodology along with the Administrative Process—to calculate refunds for Class Members with intermediate consolidation loans. Ellis Decl. ¶ 22, Ex. 7 at 22:3–22. The parties also discussed the Administrative Process in at least four other hearings, and the Department never once objected to a description of that process or maintained that it was unrelated to Full Settlement Relief. *See* Ellis Decl. Ex. 10 at 17:12–18:8; Ex. 11 at 4:14–5:6, 7:17 (DOJ Counsel: "I don't have anything to add"); Ex. 12 at 7:4–16, 12:3–11; Ex. 13 at 5:7–6:15.

Nor is it true, as the Department now argues, that the Court never approved the Administrative Process; it did, in the very transcript the Department cites (Opp. 8–9):

> [Plaintiffs' Counsel:] So what we're proposing here essentially, in the interest of time and efficiency, is instead of going from back to front, we go from front to back. So we start with the most recent loan; that's what gets discharged; that's what gets an immediate refund. And then, the part of the process that was sort of -- that was done incorrectly the first time for some people, that hasn't been done yet for others, that we know is more time consuming, more complicated, we put that second. So it's -- it is different but only sort of in the order of operations. And we think that the order of operations we're talking about today actually makes more sense.
>
> THE COURT: I'm okay with what you're saying.

Ellis Decl. Ex. 10 at 17:22–18:8.

***2. TOP/AWG Payments Toward FFEL Loans Are Refundable Payments.***

Here too, the Department for the first time reneges on a common-sense position that it consistently took during nearly two years of enforcement-related discussions with Plaintiffs. First, the notion that payments seized from Class Members via the Treasury Offset Program (TOP) or Administrative Wage Garnishment (AWG) are not "payments" on their loans is unsupported by the text of the Settlement, common sense, or even the definition that the Department proffers. When the government intercepts money that would ordinarily be paid to a borrower and instead applies those funds to reduce the balance on a student loan, that is surely a "transfer in discharge of an obligation" and a "deliver[y]" of a "sum or amount owed." Opp. 16 (cleaned up). There is no requirement in any source of authority that a "payment" must be voluntary.

Second, the Department's course of performance under the Settlement again belies its current position. The Department has regularly refunded TOP and AWG payments that were seized to pay the balances of Direct Loans. *See* Ellis Decl. ¶ 10. If the Department sincerely believed that TOP and AWG payments were non-refundable under a selective redefinition of the term "payment," then it presumably would have refused to pay those refunds.

Third, the Department has consistently represented to Plaintiffs' Counsel that it already determined FFEL TOP/AWG payments are refundable under the Settlement and it is investigating the mechanics of executing those refunds, not whether the refunds would be paid. *Contra* Opp. 15. For example, in the parties' first weekly Ombuds meeting in November 2024, the parties discussed

three cases of FFEL TOP payments, and in each case the Ombuds staff indicated that they would direct payment of a refund. Ellis Decl. ¶¶ 7–8. In a letter on April 14, 2025, DOJ counsel stated, with respect to FFEL TOP/AWG payments: "The Department of Education is committed to providing full relief to all class members." *Id.* ¶ 13, Ex. 3 at 6. Similarly, in another letter a month later, the Department's counsel stated that it was "targeting this week to provide you with some more specific information" about "the Department's plan to deliver TOP/AWG refunds to affected class members." *Id.* ¶ 14, Ex. 4 at 2–3. The promised update did not arrive.

And finally, the Department mischaracterizes *Rowe v. Education Credit Management Corp.*, 559 F.3d 1028 (9th Cir. 2009), in an effort to bolster its misleading description of what happens to TOP/AWG payments on FFEL loans. The *Rowe* court itself observed that AWG payments go into a GA's "reserve fund," and "the entirety of [the] reserve fund . . . is the property of the United States. Because the reserve funds are the property of the United States, the HEA grants the Secretary broad power to regulate the use of the funds." *Id.* at 1033. What is a payment to a fund that is held for the benefit of the Secretary of Education, if not "amounts the Class Member previously paid to the Department" (Settlement ¶ II.S.ii)? Moreover, *Rowe* does not mention TOP payments at all; those payments unambiguously never leave the federal government's hands, and thus have nothing to do with the GAs as intermediaries.

The fact that refunding FFEL TOP/AWG payments might be complicated, *see* Opp. 17, is not evidence that the parties meant to exclude those payments from the definition of Full Settlement Relief. Indeed, as the post-settlement proceedings in this case demonstrate, the effectuation of many types of discharges and refunds has proved to be complicated. That does not diminish the force of the Settlement's mandate that the Department must figure out how to do it.

### ***3. The Department's Remaining Arguments Are Unsupported and Unavailing***

None of the Department's other arguments hold water. ***First***, with respect to Plaintiffs' allegations regarding the Ombudsman's delegated authority (DA), the Odom Declaration admits that most of the Class Members identified by Plaintiffs as awaiting DA relief did in fact have undelivered discharges and/or refunds, and in a number of cases that relief is still pending. *See* Odom Decl. ¶ 44 & tbl. 1. As with the Administrative Process, then, the government's own

evidence establishes that Settlement breaches did and do exist as to these borrowers, and that the Department failed to take the steps the parties had agreed to for repairing these breaches (at least until Plaintiffs brought the matter before the Court).

***Second***, the issue of fraudulently cashed refund checks is not a federal tort claim. *See* Opp. 13. It addresses an error in the Department's implementation of relief, as the parties have done several times before. As with the FFEL TOP/AWG issue, the Department now reneges on its previously consistent position; the Department indicated to Plaintiffs' Counsel on many occasions over the course of two years that it was taking steps toward resolving this issue. *See* Ellis Decl. Ex. 3 at 6; Almeida Decl. ¶¶ 54–57, 60–63.

***Third***, the Department's argument that setting a timeline for relief delivery would unfairly allow *Sweet* Class Members to "jump the line" (Opp. 21) makes no sense in the context of a Settlement Agreement that is premised on firm deadlines. The Department agreed to deliver relief to *Sweet* Class Members by dates certain. If it fails to do so (it has), setting new deadlines is the outcome mandated by the Settlement. This is not unexpected, much less unfair.

***Fourth***, the doctrine of laches has no application here. *See* Opp. 22. The Settlement does not condition the availability of relief on when a Class Member made payments or how long their loans have been outstanding. The Department makes no textual argument otherwise.

***Fifth***, the loan servicers work for the Department, not the other way around. As the Jennings Declaration takes pains to point out, the servicers are under contract to the Department, must follow the Department's directives about what to do with *Sweet* loans, and in general have followed those directives (if sometimes slowly and with many errors). *See* Jennings Decl. ¶¶ 7, 41–49, 54, 57–58, 60, 72–78, 83. The Department's plaint that it cannot control what servicers do (Opp. 23–24) is not well taken.

## II. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court grant the Motion.

Dated: October 15, 2026

Respectfully submitted,

/s/ Rebecca C. Ellis_____
EILEEN M. CONNOR (SBN 248856)
econnor@ppsl.org
REBECCA C. ELLIS (*pro hac vice*)
rellis@ppsl.org
REBECCA C. EISENBREY (*pro hac vice*)
reisenbrey@ppsl.org
NOAH ZINNER (SBN 247581)
nzinner@ppsl.org
PROJECT ON PREDATORY STUDENT LENDING, INC.
769 Centre Street
Jamaica Plain, MA 02130
Tel.: (617) 390-2669
Fax: (781) 218-9625

*Attorneys for Plaintiffs*